CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LUCAS R., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALEX AZAR, Secretary of U.S. Department of Health and Human Services; *et al.*,<br><br>    Defendants. | Case No. CV 2:18-CV-05741<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing:   August 31, 2018<br>Time:      9:30 a.m.<br>Room:      1st St. Courthouse<br>           Courtroom 8C |

*Counsel for Plaintiffs, continued*
HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email:     hscooper@ucdavis.edu
           ccwhite@ucdavis.edu

LEECIA WELCH (Cal. Bar No. 208741)
NEHA DESAI (Cal. RLSA Bar No. 803161)
POONAM JUNEJA (Cal. Bar No. 300848)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email:     lwelch@youthlaw.org
           ndesai@youthlaw.org
           pjuneja@youthlaw.org

CRYSTAL ADAMS (Cal. Bar No. 308638)
National Center for Youth Law
1313 L St. NW, Suite 130
Washington, DC 20005
Telephone: (202) 868-4785
Email:     cadams@youthlaw.org

SUMMER WYNN (Cal. Bar No. 240005)
MARY KATHRYN KELLEY (Cal. Bar No. 170259)
JON F. CIESLAK (Cal. Bar No. 268951)
MEGAN L. DONOHUE (Cal. Bar No. 266147)
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 550-6000
Email:     swynn@cooley.com
           mkkelley@cooley.com
           jcieslak@cooley.com
           mdonohue@cooley.com

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS ................................................................... 3
       A.    Procedural and Legal Background ........................................... 3
       B.    Factual Background ................................................................. 5

III.   PROPOSED CLASS DEFINITION. ................................................... 9

IV.    THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A) ......... 10
       A.    Plaintiffs Satisfy the Numerosity and Impracticality of Joinder Requirement. ................................................................. 11
       B.    Plaintiffs Satisfy the Commonality Requirement. ................... 14
       C.    Plaintiffs Satisfy the Typicality Requirement. ....................... 15
       D.    Plaintiffs Satisfy the Adequacy of Representation Requirement. .......... 16

V.     THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(B)(2). ....................................................................... 18

VI.    CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.,*
    731 F.3d 952 (9th Cir. 2013) ............................................................................. 14, 15

*Aichele v. City of L.A.,*
    314 F.R.D. 478 (C.D. Cal. 2013) ................................................................................ 11

*Angela R. v. Clinton,*
    999 F.2d 320 (8th Cir. 1993) ..................................................................................... 18

*Aristotle P. v. Johnson,*
    721 F. Supp. 1002 (N.D. Ill. 1989) ............................................................................. 5

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001), *overruled on other grounds by Johnson
    v. California*, 543 U.S. 499 (2005) ..................................................................... 14, 15, 16

*Bentley v. United of Omaha Life Ins. Co.,*
    No. CV 15-7870-DMG, 2018 U.S. Dist. LEXIS 117107 (C.D. Cal.
    May 1, 2018) ........................................................................................................ 11, 18

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ............................ 3

*Braam v. Washington,*
    81 P.3d 851 (Wash. 2003) ......................................................................................... 18

*D.B. v. Cardall,*
    826 F.3d 721 (4th Cir. 2016) ....................................................................................... 5

*David C. v. Leavitt,*
    No. 93-C-206W (D. Utah) .......................................................................................... 18

*Flores v. Sessions,*
    862 F.3d 863 (9th Cir. 2017) .................................................................................. 2, 18

*Flores-Torres v. Mukasey,*
    548 F.3d 708 (9th Cir. 2008) ..................................................................................... 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
CV 2:18-CV-05741

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Hanberry v. Lee,*
   311 U.S. 32 (1940)..................................................................................17

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..........................................................15, 17

*Jordan v. County of Los Angeles,*
   669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S.
   810 (1982)...................................................................................11, 13

*L.J. v. Massinga,*
   838 F.2d 118 (4th Cir. 1988), *cert. denied*, 488 U.S. 1018 (1989) ......18

*L.V.M. v. Lloyd,*
   No. 1:18-cv-01453-PAC, 2018 U.S. Dist. LEXIS 107692 (S.D.N.Y.
   June 27, 2018)..............................................................................2

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) ..........................................................17

*M.B. v. Corsi,*
   No. 2:17-cv-4102-NKL, 2018 U.S. Dist. LEXIS 120329 (W.D. Mo.
   July 19, 2018) ........................................................................2, 5, 17

*Mathews v. Eldridge,*
   424 U.S. 319 (1976)..........................................................................5

*Ms L. v. ICE,*
   No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364 (S.D.
   Cal. June 26, 2018) .............................................................................2

*Orantes-Hernandez v. Smith,*
   541 F. Supp. 351 (C.D. Cal. 1982) ...............................................11, 17

*Parham v. J. R.,*
   442 U.S. 584 (1979)..........................................................................5

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ..........................................................16, 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
CV 2:18-CV-05741

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Perez-Olano v. Gonzalez*,
248 F.R.D. 248 (C.D. Cal. 2008)................................................................15, 17, 19

*Phillips v. Joint Legis. Comm.*,
637 F.2d 1014 (5th Cir. 1981) ...........................................................................13

*Reno v. Flores*,
507 U.S. 292 (1993)............................................................................................17

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ...........................................................13, 14, 15, 19

*Rodriguez v. Nike Retail Servs., Inc.*,
No. 5:14-cv-01508-BLF, 2016 WL 8729923 (N.D. Cal. Aug. 19,
2016) ...................................................................................................................14

*Sali v. Corona Reg'l Med. Ctr.*,
889 F.3d 623 (9th Cir. 2018) ...............................................................................3

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. Nov. 20, 2017)..............................................2, 18

*Singh v. Holder*,
638 F.3d 1196 (9th Cir. 2011) ...........................................................................18

*Sosna v. Iowa*,
419 U.S. 393 (1975)..............................................................................................3

*Sweet v. Pfizer*,
232 F.R.D. 360 (C.D. Cal. 2005)........................................................................15

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites,
Inc.*,
209 F.R.D. 159 (C.D. Cal. 2002).........................................................................9

*In re U.S. Financial Securities Litigation*,
69 F.R.D. 24 (S.D.Cal. 1975) ...........................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
CV 2:18-CV-05741

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Walters v. Reno,*

4

145 F.3d 1032 (9th Cir. 1998) .......................................................................... 14, 19

5

*Washington v. Harper,*

6

494 U.S. 210 (1990) ................................................................................................ 5

7

*We Are Am. v. Maricopa County Bd. of Supervisors,*

297 F.R.D. 373 (D. Ariz. 2013) ............................................................................ 17

8

9

*Wolph v. Acer Am. Corp.,*

272 F.R.D. 477 (N.D. Cal. 2011) .......................................................................... 10

10

*Yaffe v. Powers,*

11

454 F.2d 1362 (1st Cir. 1972) ........................................................................... 9, 11

12

*Zadvydas v. Davis,*

13

533 U.S. 678 (2001) ................................................................................................ 5

14

**Statutes**

15

6 U.S.C § 279 .......................................................................................................... 1, 9

16

8 U.S.C.

17

§ 1101 ..................................................................................................................... 3

18

§ 1232 ..................................................................................................................... 9

§ 1232(b)(5) ............................................................................................................ 2

19

§ 1232(c)(2)(A) ...................................................................................................... 4

20

Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 ............................................. 1

21

TVPRA

22

§ 235(c)(2)(A) ........................................................................................................ 4

23

§ 235(c)(5) ...................................................................................................... 2, 4, 14

24

William Wilberforce Trafficking Victims Protection Reauthorization Act

25

of 2008, 110 Pub. L. 457, 122 Stat. 5044 .................................................................. 2

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
CV 2:18-CV-05741

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Other Authorities**

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*
  § 1763 (3d ed. 2018) ........................................................................... 14
  § 1760 (3d ed. 2018) ............................................................................. 9

Federal Rule of Civil Procedure
  23(b)(2) ................................................................................. 2, 9, 18, 19
  23(c)(1)(A) ............................................................................................ 3

5 Jerold S. Solovy et al., *Moore's Federal Practice* § 23.24 (3d ed. 2018) ................ 16

Local Rules
  23 ...................................................................................................... 3, 9
  23-3 ........................................................................................................ 3
  23(a) ............................................................................................... 10, 18
  23(a)(1) ........................................................................................... 11, 13
  23(a)(2) ........................................................................................... 14, 15
  23(a)(3) ........................................................................................... 15, 16
  23(a)(4) ....................................................................................... 16, 17, 18
  23(b) .................................................................................................... 19
  23(b)(3) .................................................................................................. 9
  23(g) .................................................................................................... 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.   INTRODUCTION

In this action Plaintiffs challenge four policies and practices of the Office of Refugee Resettlement ("ORR") that prolong children's detention under ever-harsher conditions, creating a continuum of trauma that vulnerable children—many of whom arrive in the United States after having suffered horrific trauma in their countries of origin—are ill-equipped to endure.[1]

First, ORR "steps up" children from shelters to medium-secure, secure, and psychiatric facilities without even the most rudimentary procedural protections. Youth housed in shelters report being awakened in the small hours of the morning and soon thereafter finding themselves confined in juvenile halls or psychiatric facilities, where they suffer irreparable harm inherent to confinement.

Second, ORR routinely administers children psychotropic drugs without lawful authorization or other constitutionally required procedural protections. When youth object to taking such medications, ORR compels them. ORR neither requires nor asks for a parent's consent before medicating a child, nor does it seek lawful authority to medicate children without a parent's consent.

Third, ORR prolongs children's detention on the ground that their parents or other available custodians are or may be unfit, but affords neither detained children nor their proposed custodians any meaningful or timely opportunity to be heard regarding a proposed custodian's fitness.

Fourth, ORR blocks lawyers from representing detained children with respect to placement, administration of psychotropic medications, or release to available custodians, notwithstanding that Congress specifically directed ORR to "ensure, to the greatest extent practicable" that children who are or have been in its custody have

---

[1] In 2002, the Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), dissolved the Immigration and Naturalization Service ("INS") and transferred most of its functions to the Department of Homeland Security ("DHS"). Congress directed, however, that the ORR should have authority over the custody and release of unaccompanied minors detained pursuant to the INA. 6 U.S.C § 279.

1  legal representation in "legal proceedings or matters."  William Wilberforce

2  Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122

3  Stat. 5044, *codified in pertinent part* at 8 U.S.C. § 1232(b)(5) ("TVPRA").

4     Plaintiffs contend that the foregoing policies and practices violate the settlement

5  in *Flores v. Sessions*, No. 85-4544-DMG ("*Flores* Settlement") (Ex. 1[2]), the TVPRA,

6  the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and the

7  Freedom of Association Clause of the First Amendment to the U.S. Constitution. To

8  protect all class members' rights thereunder, Plaintiffs ask the Court to certify this

9  case as a class action under Federal Rule of Civil Procedure 23(b)(2).

10    Courts routinely certify lawsuits like this one as Rule 23(b)(2) class actions.

11 *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1205 (N.D. Cal. Nov. 20, 2017)

12 (certifying class action of immigrant children previously in ORR custody); *Ms L. v.*

13 *ICE*, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D.

14 Cal. June 26, 2018) (certifying class of immigrant children separated from their

15 parents); *L.V.M. v. Lloyd*, No. 1:18-cv-01453-PAC, 2018 U.S. Dist. LEXIS 107692, at

16 *25 (S.D.N.Y. June 27, 2018) (certifying class of immigrant children in ORR custody

17 in New York State and who have been housed in a secure or staff-secure facility);

18 *M.B. v. Corsi*, No. 2:17-cv-4102-NKL, 2018 U.S. Dist. LEXIS 120329, at *2 (W.D.

19 Mo. July 19, 2018) (certifying a class of foster children who are or may be

20 administered or prescribed psychotropic medications in state custody).[3] The result

21 here should be no different.

22

23 ---

24 [2] All references to Exhibits (e.g. "Ex. 1") are to the exhibits attached to the Notice of Lodgment filed in conjunction with this motion.

25 [3] Each of the named Plaintiffs, as well as their proposed class members, are also members of the *Flores* class.  (Ex. 1 ¶ 10 (consent decree protects "[a]ll minors who are detained in the legal custody of the INS.").)

26 As INS's successor-in-interest, the *Flores* Settlement is fully binding on ORR and will

27 remain so until 45 days after it publishes final regulations implementing the consent decree, which has yet to do. *Flores v. Sessions*, 862 F.3d 863, 869-70 (9th Cir. 2017).

28

There is little or no dispute that Defendants in fact pursue the policies and practices Plaintiffs challenge here. Nor is there is any doubt that ORR's challenged policies and practices impact hundreds, even thousands, of detained immigrant and asylum-seeking children each year. Resolving Plaintiffs' claims involves nearly pure questions of law. This case is inherently suitable for class treatment.[4]

## II.   STATEMENT OF FACTS

### A.   Procedural and Legal Background

On January 28, 1997, the Court approved the class-wide *Flores* Settlement. The consent decree sets standards for the custody, detention and release of children detained for alleged civil violations of the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq*.

The *Flores* Settlement requires ORR to minimize the detention of children and, thereby, the harm detention causes them. Paragraph 14 of the agreement requires ORR to release children from immigration-related custody "without unnecessary delay" so long as their continued detention is not required to secure availability for removal or

---

[4] Plaintiffs file this motion promptly in accordance with Fed. Rule of Civ. Proc. 23(c)(1)(A) ("*At an early practicable time* after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.") (Emphasis supplied)), and Local Rule 23-3 ("Within 90 days after service of a pleading purporting to commence a class action . . . the proponent of the class shall file a motion for certification.").

There are also practical reasons for the Court to certify a class promptly. Once a class is certified, mootness of the named Plaintiffs' claims does not moot the action so long as a case or controversy remains between the Defendant and the certified class. *Sosna v. Iowa*, 419 U.S. 393, 401-02 (1975).

Counsel for the proposed class intend to advocate vigorously for the release of the individual named Plaintiffs. Should Defendants release the named Plaintiffs before the Court certifies a class, this entire matter could become non-justiciable and ORR's policies and practices evade review indefinitely, although Plaintiffs would oppose such a determination. Prompt certification of a plaintiff class would ensure the continuing justiciability of this action and the Court's authority to protect unnamed class members.

The Court may grant certification so long as it has enough information to support a "reasonable judgment" that the requirements of Rule 23 have been met. *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 632 (9th Cir. 2018) (quoting *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)). As argued below, there is more than sufficient basis to support a reasonable judgment that this action is suitable for class treatment.

to protect safety. Paragraph 18 requires ORR to make "prompt and continuous efforts" toward family reunifications and to release children to suitable custodians without unnecessary delay. (Ex. 1 at 13.)

The *Flores* Settlement also mandates that when the government does keep children in custody, it must house them in non-restrictive facilities. Except in limited enumerated circumstances, Definition 6 and ¶ 19 of the *Flores* Settlement require ORR to place children in non-secure facilities holding a state license to care for dependent—as opposed to delinquent—children. (Ex. 1 at 5-6, 13.)

In the TVPRA, Congress likewise directed ORR to minimize the detention of children and hold them in the least restrictive setting practicable for howsoever long it does detain them.

Section 235(c)(2)(A) of the TVPRA, codified at 8 U.S.C. § 1232(c)(2)(A), requires ORR to "promptly" place detained children "in the least restrictive setting that is in the best interest of the child," generally, with "a suitable family member." It further bars ORR from placing a child "in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense."

The TVPRA further requires that "placement of a child in a secure facility shall be reviewed, at a minimum, on a monthly basis, in accordance with procedures prescribed by the Secretary, to determine if such placement remains warranted." TVPRA § 235(c)(2)(A).

Additionally, the TVPRA requires that ORR "ensure, to the greatest extent practicable" that children from non-contiguous countries who are or have been in its custody "have counsel to represent them in legal proceedings or matters and protect them from mistreatment." TVPRA § 235(c)(5).

The United States Constitution also protects the rights of immigrant children to freedom from unnecessary physical restraint, freedom from unauthorized or unnecessary administration of psychotropic medications, and to family unity, family

care, and family association. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)

("Freedom from imprisonment – from government custody, detention, or other forms

of physical restraint – lies at the heart of the liberty [the Fifth Amendment's Due

Process] Clause protects."); *Washington v. Harper*, 494 U.S. 210, 221 (1990)

(individuals "possess a significant liberty interest in avoiding the unwanted

administration" of psychotropic medications); *Parham v. J. R.*, 442 U.S. 584, 600

(1979) (finding "a child . . . has a substantial liberty interest in not being confined

unnecessarily for medical treatment"); *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir.

2016) ("Just as parents possess a fundamental right with respect to their children,

children also enjoy a familial right to be raised and nurtured by their parents.")

(internal citations and quotations omitted); *Corsi*, 2018 U.S. Dist. LEXIS 3232, at *37

("Plaintiffs have a substantial liberty interest in avoiding the unnecessary

administration of medical treatment.") (internal quotations omitted); *Aristotle P. v.*

*Johnson*, 721 F. Supp. 1002, 1006 (N.D. Ill. 1989) (recognizing children's

"constitutionally protected right to associate with their siblings"). Defendants may not

abridge these liberty interests without appropriate procedures to protect against

erroneous deprivation. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976).[5]

## B.   Factual Background

The named Plaintiffs are immigrant and asylum-seeking-children in ORR

custody whom ORR has stepped up, medicated without appropriate procedural

protections, including informed parental consent or other lawful authorization, refused

---

[5] The *Flores* class, which includes the named Plaintiffs here, recently moved to
enforce the *Flores* consent decree with respect to three of the four claims at issue in
this action: (1) step-ups without due process; (2) administration of psychotropic drugs
in violation of state law; and (3) declaring class members' proposed custodians unfit
without due process. On July 30, 2018, the Court granted in part and denied in part the
*Flores* plaintiffs' motion. Order re: Plaintiffs' Motion to Enforce Class Action
Settlement, *Flores v. Sessions*, No. 85-cv-4544, Dkt. No. 470.

The Court ruled that the *Flores* Settlement does not entitle class members to
procedural protections for substantive rights the consent decree confers. *Id.* at 4-6.
Plaintiffs' instant claims accordingly remain unresolved and suitable for class-wide
disposition here.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
CV 2:18-CV-05741

to release to available custodians without hearing, and denied access to legal counsel Congress has said they should have:

- ORR has detained Plaintiff Lucas R. since February 2018, nearly half a year now. (Compl. ¶ 21.) In April, ORR refused to release Lucas to his sister in Los Angeles and instead transferred him to the Shiloh psychiatric facility in Manvel, Texas, where he has been administered psychotropic drugs without the consent of his family or court order. (Compl. ¶¶ 21-27; Ex. 21 ¶¶ 4, 6; Ex. 22 ¶ 14.)

- Daniela Marisol T., a partially deaf sixteen-year-old girl, fled Honduras fearing for her life and arrived at the U.S.-Mexico border in August 2017. (Compl. ¶ 30.) For nearly a year now, ORR has detained Daniela Marisol at various facilities, including Shiloh and the David & Margaret facility in La Verne, California, in lieu of releasing her to her adult sister, who lives in Michigan. (*Id.* ¶¶ 35, 38.) ORR has medicated Daniela Marisol at several facilities, including Shiloh and David & Margaret, without her family's consent or court order. (*Id.* ¶ 35.)

- ORR assumed custody of Plaintiff Miguel Angel S. in May 2017. (Compl. ¶ 40.) For over a year now, it has refused to release Miguel Angel to his father and has instead detained him in a variety of facilities, including Yolo County Juvenile Hall and Shiloh, where ORR administered him multiple psychotropic medications, including Remeron, Trazadone, Seroquel, and Lexapro, all without his father's consent or court order. (Compl. ¶¶ 41, 47, 50.)

- Plaintiff Gabriela N., fleeing sexual violence and physical abuse in El Salvador, arrived alone at the U.S.-Mexico border in January 2017. (Compl. ¶ 51; Ex. 14 ¶ 2.) ORR has now detained her for nearly a year and a half at various facilities, including Shiloh, rather than release her to her grandfather's custody in Oakland, California. (Supp. Decl. of Gabriela N., June 8, 2018 PX15 ¶¶ 2, 7.) ORR has administered psychotropic drugs to Gabriela at multiple facilities without court order or her family's consent. (Compl. ¶ 56.)

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION CV 2:18-CV-05741**

• Jaime D., a thirteen-year-old orphaned boy, fled from Honduras, fearing he would be killed if he stayed there, and arrived at the U.S.-Mexico border with his six-year-old sister and ten-year-old aunt in April 2018. (Compl. ¶ 62; Ex. 20 ¶ 3.) ORR has detained him in lieu of releasing him to his adult aunt in Maryland. (Compl. ¶¶ 14, 62.) ORR has detained Jaime at various facilities, including Yolo County Juvenile Detention Center and the Children's Village staff-secure and shelter facilities in Dobbs Ferry, New York. (Compl. ¶ 67.)

Despite the law's mutiple demands that the immigration detention of children be minimized, none of the named Plaintiffs have been released despite having qualified custodians ready and willing to care for them. (Compl. ¶¶ 21, 26 (Lucas R.), 38-39 (Daniela Marisol T.), 47, 50 (Miguel Angel S.), 40, 59, 61 (Gabriela N.), 62, 65 (Jaime D.), 77-78.) Instead, ORR has raised sundry aspersions against each of the named Plaintiffs' family members, yet has provided neither the Plaintiff children nor their proposed custodians any meaningful opportunity to be heard regarding the custodians' fitness. (Compl. ¶¶ 82-83.) The named Plaintiffs remain in government custody, several in secure or psychiatric facilities that are ill-equipped to meet their needs, which both exacerbates their underlying trauma and results in new traumas that threaten their health and safety.  (Compl. ¶¶ 28 (Lucas R.), 32 (Daniela Marisol T.), 41 (Miguel Angel S.), 54 (Gabriela N.), 66 (Jaime D.), 76.)

During the many months ORR has detained the named Plaintiffs, ORR has also stepped each of them up to secure or psychiatric facilities without giving them meaningful advance notice of why they were being transferred, a meaningful opportunity to be heard, or the right to appeal the placement decision. (Compl. ¶¶ 24 (Lucas R.), 34 (Daniela Marisol T.), 45 (Miguel Angel S.), 56 (Gabriela N.), 64 (Jaime D.), 97-98.)

Thirteen-year-old Jaime was awoken one morning at 4 a.m. and put on an airplane in shackles to be moved across the country from New York to the Yolo Juvenile Detention Center in California, with no prior notice and no chance to

challenge the decision to move him.  (Compl. ¶ 64.)  Placements such as this are akin to incarceration in a jail or prison, and can be deeply traumatic and harmful to children. (Compl. ¶ 94; Ex. 12 ¶ 6 (youth pepper sprayed at Yolo; forced to wash chemicals out of his eyes with toilet water).[6])

ORR frequently, and as a matter of policy and practice, administers children, including named Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., and Gabriela N., psychotropic medications without basic procedures to protect against unnecessary or improper administration of these powerful drugs. (Compl. ¶¶ 27 (Lucas R.), 35 (Daniela Marisol T.), 41 (Miguel Angel S.), 56 (Gabriela N.), 114-15.) Among other things, ORR does not obtain informed consent from a parent or other legally authorized consenter before administering psychotropic medications to children. (Compl. ¶¶ 23 (Lucas R.), 35 (Daniela Marisol T.), 42 (Miguel Angel S.), 56 (Gabriela N.); Ex. 19 ¶ 9; Ex. 13 ¶¶ 19-20.) Instead, ORR typically has facility staff sign forms authorizing the administration of psychotropics to children in its custody, in complete derrogation of the prerogatives of parents, relatives, as well as state law. (Ex. 9 ¶ 5.[7])

ORR routinely obstructs children's access to counsel to assist them in challenging ORR's custody, release, placement, and medication decisions. (Compl. ¶¶ 122-24.) Between 2009 and 2013, ORR paid the Vera Institute of Justice ("Vera Institute") nearly $40 million to provide legal services, and the Vera Institute sub-contracted with legal aid programs to represent immigrant children. (Ex. 5.) Lawyers funded by the Vera Institute at these legal aid programs have been prohibited from

---

[6] ORR forms state that detained children, such as the named Plaintiffs, may request "reconsideration" of placement in a secure or Residential Treatment Center facility, but only *after* they have spent thirty days in one. (Ex. 4.)

[7] ORR also routinely compels children to take psychotropic medications. For example, Gabriela did "not want to take the medications, but [she] was told that if [she didn't] take them, [she] would be disciplined and the staff [would] restrict the little freedom" she had. (Ex. 16 ¶ 5.) Similarly, Shiloh staff told Lucas he had "to take the medications in order to be released," which he would have otherwise refused to take. (Ex. 21 ¶ 6.)

representing detained immigrant children, including the named Plaintiffs, with respect to ORR's placement, medication, and release decisions. (Ex. 6 ¶ 9; Ex. 7 ¶ 19 (ORR "hobbles free legal services providers who undertake to represent detained children."); Ex. 8 ¶ 22-24 (same).) None of the named Plaintiffs received legal counsel for issues related to step ups, administration of medications, or the fitness of available custodians before class counsel took their cases. (*See, e.g.*, Compl. ¶¶ 29 (Lucas R.), 39 (Daniela Marisol T.), 61 (Gabriela N.), 69 (Jaime D.).)

## III.   PROPOSED CLASS DEFINITION.

Rule 23 implicitly requires that a class be defined so that its membership is ascertainable. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc*., 209 F.R.D. 159, 163 (C.D. Cal. 2002).

In a Rule 23(b)(2) action for declaratory and injunctive relief, Plaintiffs need only establish that "the general outlines of the membership of the class are determinable at the outset of the litigation." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1760 (3d ed. 2018). Stated otherwise, the class must be sufficiently definite "that it is administratively feasible for the court to determine whether a particular individual is a member." *Id*. Unlike a Rule 23(b)(3) action seeking actual damages for individual class members, Plaintiffs need not precisely establish the actual membership of the class. *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). Plaintiffs propose certification of the following:

All children in the custody of the Office of Refugee Resettlement of the U.S. Department of Health and Human Services ("ORR") pursuant to 6 U.S.C. § 279 and/or 8 U.S.C. § 1232 —

    1)    who are or will be placed in a secure facility, medium-secure facility, or Residential Treatment Center ("RTC"), or continued in any such facility for more than thirty days, without being afforded notice and an opportunity to be heard before a neutral and detached decisionmaker regarding the grounds for such placement; or

9.

2)      whom ORR is refusing or will refuse to release to parents or other available custodians within thirty days of the proposed custodian's submitting a complete[8] family reunification packet on the ground that the proposed custodian is or may be unfit; or

3)      who are or will be prescribed or administered one or more psychotropic medications without procedural safeguards, including but not limited to obtaining informed consent or court authorization prior to medicating a child, involving a neutral decisionmaker in the initial determination of whether to prescribe psychotropics to a child in ORR custody, and involving a neutral decision-maker to conduct periodic reviews of those medications as treatment continues; or

4)      who are natives of non-contiguous countries and to whom ORR is blocking or will block legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs.

So defined, it is "administratively feasible to determine whether a particular person is a class member." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). The classes are therefore adequately defined.

**IV.  THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A).**

In order to be certified for class treatment, an action must satisfy the four requirements of Federal Rule of Civil Procedure 23(a). This action does so.

---

[8] The family reunification packet should be considered complete when ORR receives the completed and signed "Authorization for Release of Information," the completed and signed "Family Reunification Application" form, and the supporting documents listed on pages 8-10 of the Family Reunification Application, or else a statement from the potential sponsor explaining that one or more supporting documents cannot be provided and why. *See* Office of Refugee Resettlement, Family Reunification Application, available online at https://www.acf.hhs.gov/sites/default/files/orr/frp_3s_family_reunification_applicatio n_05_14_18.pdf (last visited Aug. 1, 2018).

10.

### A. Plaintiffs Satisfy the Numerosity and Impracticality of Joinder Requirement.

Rule 23(a)(1) requires that the class be "so numerous that joinder is impractical." "'Impracticability' does not mean 'impossibility,' only difficulty or inconvenience of joining all members of the class." *Aichele v. City of L.A.*, 314 F.R.D. 478, 487 (C.D. Cal. 2013) (internal quotation marks and formatting omitted). The numerosity requirement may be satisfied even if relatively few class members are involved. *See, e.g.*, *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (noting that the court was inclined to find this requirement "satisfied solely on the basis of [39] ascertained class members"). "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25-30 members." *Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107, at *12 (C.D. Cal. May 1, 2018) (internal quotation marks and citations omitted).

It is not necessary to determine the exact size of the class in order to satisfy Rule 23(a)(1), especially where it would be unreasonable to require the named plaintiffs to identify all class members. *In re U.S. Financial Securities Litigation*, 69 F.R.D. 24, 34 (S.D.Cal. 1975). Rather, "the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions in which the members of the class are often 'incapable of specific enumeration.'" *Yaffe*, 454 F.2d at 1366. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Further, "[t]he numerosity requirement is relaxed" where, as here, "the plaintiff is seeking an injunction or a declaratory judgment because certifying a class would avoid duplicative suits brought by other class members." *Bentley*, 2018 U.S. Dist. LEXIS 117107, at *12.

11.

Here, the members of the proposed class are clearly too numerous to join. Plaintiffs challenge policies and practices that affect hundreds of children annually. ORR data indicate that in FY2017 the agency took custody of 50,834 children. (Ex. 3 ¶ 10.) Many of these children are members of one or more of the four subclasses.

1)   ORR steps up over 800 youth to secure facilities, medium-secure facilities, or RTCs annually. (*Id.*[9]) All of these children fall within Plaintiffs' proposed "step-up" subclass because, as a matter of policy and practice, ORR gives none of these youth any procedural protection whatsoever against needlessly secure and overly restrictive placement. (Compl. ¶ 98.)

2)   As for Plaintiffs' proposed subclass comprising children ORR medicates without lawful authority, ORR data indicate that it places some 74 children annually in RTCs. (Ex. 3 ¶ 10.) ORR administers psychotropic drugs to all, or nearly all, children it places in such facilities. (Ex. 23 ¶ 3.) Additionally, ORR administers psychotropics to an unknown number of unidentified children and youth held in juvenile halls, staff-secure facilities, and even shelters. (*See, e.g.*, Ex. 16 ¶ 5; Ex. 12 ¶ 12; Ex. 11 ¶ 4.)

3)   The proposed subclass of children denied release because ORR thinks their parents or other available custodians are or may be unfit is also too numerous for joinder. The evidence shows that ORR routinely delays or denies the release of children ostensibly because it questions whether their parents or other available custodians will harm or neglect them following release. (*See e.g.*, Ex. 18 ¶ 9 (youth detained six months at Shiloh RTC; "I got the impression that the home investigator didn't think I made enough money to be able to support [my granddaughter] and myself."); Ex. 24 ¶ 8 (youth detained for one year and three months; "My case worker told me that the only reason that I haven't been released to my aunt . . . is because I don't have an official birth certificate[.] . . .

_____

[9] At any given time, ORR detains 25-40 youth in RTCs, 35-52 in juvenile halls, and 109-131 in staff-secure facilities. (Ex. 3 ¶ 10.)

1    My mother died before she could register me for [one].”); Ex. 25 ¶ 10 (minor

2    detained four months; “My case manager said the only reason that I haven’t

3    been released is that the government is now reviewing my case. They have not

4    told me how long it would take . . .”); Ex. 26 ¶ 5 (youth detained five months;

5    “My mom began trying to get me back . . . Someone came to inspect her house

6    and everything came out well. Neither of us understands why I am still here.”);

7    Ex. 27 ¶ 6 (youth detained ten months; “[M]y mom moved from Kansas to

8    Texas to be closer to me. . . . They continued to take long making the decision

9    to let me live with her. According to her, the government did a study of the

10   home, and everything went well.”).

11   4)   All children need a lawyer when ORR steps them up, unlawfully medicates

12        them, or refuses to release them to available custodians because it thinks them

13        unfit. This subclass is therefore likely as large as the first three proposed

14        subclasses combined, adjusted for overlapping membership in those subclasses.

15   The membership of all four proposed subclasses is also growing constantly

16   because ORR takes new children into custody daily, and it is impossible to identify

17   these future members of the the proposed class. When unknown and unnamed

18   individuals are certain to become class members in the future, joinder of their claims

19   “is inherently impracticable.” *Jordan*, 669 F.2d at 1320; *Phillips v. Joint Legis.*

20   *Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981) (finding joinder of unknown future class

21   members “certainly impracticable”); *see also Rodriguez v. Hayes*, 591 F.3d 1105,

22   1118 (9th Cir. 2010) (“The inclusion of future class members in a class is not itself

23   unusual or objectionable.”).

24   The proposed class comprises many hundreds or thousands of children,

25   including many who will become class members in the future and whose identities are

26   currently unknown. This action accordingly satisfies the numerosity requirement of

27   Rule 23(a)(1).

28

13.

**B.     Plaintiffs Satisfy the Commonality Requirement.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) "[N]ot every question of law or fact must be common to the class; 'all that Rule 23(a)(2) requires is a single significant question of law or fact.'" *Rodriguez v. Nike Retail Servs., Inc.*, No. 5:14-cv-01508-BLF, 2016 WL 8729923, at *9 (N.D. Cal. Aug. 19, 2016) (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)) (emphasis in original omitted); *see also Rodriguez*, 591 F.3d at 1122 ("[T]he commonality requirements asks [sic] us to look only for some shared legal issue or a common core of facts.").

The standard is even more liberal in a civil rights suit such as this one, in which the class proponents seek injunctive and declaratory relief against "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 1763 (3d ed. 2018); *see also Rodriguez*, 591 F.3d at 1122-24 (finding commonality satisfied in habeas class action involving challenges to prolonged immigration detention without bond hearing); *Walters v. Reno*, 145 F.3d 1032, 1045-46 (9th Cir. 1998) (finding commonality in case challenging notices of deportation proceedings).

Common questions of law or fact presented in this proposed class action include the following:

- Whether ORR's challenged policies and practices violate the *Flores* Settlement, the TVPRA, the Due Process Clause of the Fifth Amendment, and/or the Freedom of Association Clause of the First Amendment;
- Whether ORR administers psychotropic medications to children without the consent of a parent or other lawful authority and without constitutionally required safeguards;

14.

- Whether ORR affords children stepped up to RTCs, juvenile halls, or medium-secure facilities a meaningful opportunity to challenge their placement decisions;

- Whether ORR affords detained children, their parents or other available custodians any viable means to rebut ORR's views regarding a proposed custodian's fitness; and

- Whether ORR impedes lawyers Congress funds to represent proposed class members in ORR "matters" and "proceedings."

Any of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *Abdullah*, 731 F.3d at 957; *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008) ("Courts have found that a single common issue of law or fact is sufficient....") (citations omitted); *Sweet v. Pfizer*, 232 F.R.D. 360, 367 (C.D. Cal. 2005) ("there must only be one single issue common to the proposed class") (internal quotation marks and citation omitted).

That ORR might argue about whether a particular child needs psychotropic medications, secure confinement, or a better custodian, does not negate commonality. Such disputes are immaterial to whether more and better procedures are required to determine fairly and transparently whether ORR's position is justified.

## C. Plaintiffs Satisfy the Typicality Requirement.

Rule 23(a)(3) requires that the claims of the named plaintiffs be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Typicality exists "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Rodriguez*, 591 F.3d at 1124 (quoting *Armstrong*, 275 F.3d at 868). "The test of typicality is 'whether other members have the same or similar

injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Meeting this requirement usually follows from the presence of common questions of law, and courts have construed subdivisions (a)(2) and (a)(3) to be largely duplicative. *See* 5 Jerold S. Solovy et al., *Moore's Federal Practice* § 23.24 (3d ed. 2018).

As discussed above, the named Plaintiffs have suffered injuries from Defendants' policies and practices that are typical of class members.

1)   Each of the named Plaintiffs have been "stepped up" without any meaningful notice or opportunity to be heard.

2)   ORR has administered psychotropic drugs to Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., and Gabriela N. without affording them lawfully required procedural protections.

3)   For many months, ORR has refused to release any of the named Plaintiffs despite their having qualified custodians to care for them.

4)   ORR impeded legal representation of the named Plaintiffs for issues related to step-up, administration of medications, or release to available custodians.

Nor do the proposed class representatives have any interest that conflicts with those of the proposed class. The named Plaintiffs have identical legal theories and seek the same relief for themselves and for the class as a whole. The named Plaintiffs seek to vindicate the rights of unnamed class members, rights that are violated through the application of uniform policies and practices. *See, e.g.*, *Armstrong*, 275 F.3d at 869-70 (holding that the typicality requirement is met "[w]here the challenged conduct is a policy or practice that affects all class members" and the unnamed class members suffer similar injuries as the named plaintiffs). The typicality requirement of Rule 23(a)(3) is accordingly satisfied.

**D.    Plaintiffs Satisfy the Adequacy of Representation Requirement.**

The final requirement for class certification, set out in Rule 23(a)(4), is that the

named plaintiffs "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Relevant to this requirement are two questions: "(1) [D]o the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

In this case, the interests of the class representatives fully align with those of the proposed class. Their mutual goal is to declare Defendants' challenged policies and practices unlawful and to enjoin further violations. *Cf. Hanberry v. Lee*, 311 U.S. 32, 41-42 (1940). Where, as here, "the legal issues presented are the same for every potential plaintiff," the named "Plaintiffs' interests are substantively identical to those of the other potential class members." *Corsi*, 2018 U.S. Dist. LEXIS 120329, at *2 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, n.5 (2011)).

Plaintiffs and their counsel will vigorously prosecute this action. In both *Flores v. Sessions* and this action, Plaintiffs' counsel have demonstrated they will zealously advocate for the proposed class. Plaintiffs' counsel are unquestionably qualified to represent both named and unnamed class members. (Exs. 28, 29, 30, 31, 32.)

Plaintiffs' lead counsel is employed by a non-profit organization specializing in federal litigation on behalf of immigrants and refugees. (Ex. 29 ¶ 2.)  He has successfully litigated numerous class actions and individual cases in the federal courts involving the rights of immigrants and non-citizen children, including *Reno v. Flores*, 507 U.S. 292 (1993); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997); *We Are Am. v. Maricopa County Bd. of Supervisors*, 297 F.R.D. 373 (D. Ariz. 2013); *Perez-Olano*, 248 F.R.D. 248; *Orantes-Hernandez*, 541 F. Supp. 351.

Plaintiffs' attorneys also include the National Center for Youth Law (NCYL), a non-profit organization recognized for its wealth of experience specifically bringing class action lawsuits and other complex litigation on behalf of children in government custody, including to protect immigrant and refugee children and address mental health needs and treatment of children. (Ex. 30); *see also, e.g.*, *Flores v. Sessions*, No.

17.

85-4544-DMG (C.D. Cal.); *M.B. v. Corsi*, No. 17-4102-NKL (W.D. Mo.); *Braam v. Washington*, 81 P.3d 851 (Wash. 2003); *T.R. v. Quigley*, No. 09-1677-TSV (W.D. Wash.); *David C. v. Leavitt*, No. 93-C-206W (D. Utah); *Angela R. v. Clinton*, 999 F.2d 320 (8th Cir. 1993); *L.J. v. Massinga*, 838 F.2d 118 (4th Cir. 1988), *cert. denied*, 488 U.S. 1018 (1989).

Plaintiffs' attorneys also include the UC Davis Immigration Law Clinic and Civil Rights Clinic, law school clinical programs recognized for their complex federal litigation on behalf of detained immigrants, detained unaccompanied minors, and prisoners. (Ex. 28); *see, e.g.*, *Flores v. Sessions*, 862 F.3d 863, 881 (9th Cir. 2017) (finding the *Flores* Settlement Agreement was not superseded and upholding the right to a bond hearing for detained immigrant children); *Singh v. Holder*, 638 F.3d 1196, 1205,1208-09 (9th Cir. 2011) (holding the standard of proof required to detain immigrants in prolonged detention is clear and convincing evidence and finding immigrants had the right to simultaneous recordings of bond proceedings); *Flores-Torres v. Mukasey,* 548 F.3d 708, 711-12 (9th Cir. 2008) (holding habeas jurisdiction exists to challenge the legality of one's detention if the individual has a colorable claim to United States citizenship); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-98 (N.D. Cal. 2017) (enjoining the re-detention of unaccompanied minor children without procedural protections).

Finally, Plaintiffs are represented *pro bono* by Cooley LLP, a distinguished international law firm with broad experience in class action and other complex litigation, including *Saravia v. Sessions*, No. 17-cv-3615-VC (N.D. Cal.).[10] (Ex. 32.)

## V.   THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(B)(2).

In addition to satisfying the requirements of Rule 23(a), a certifiable class must

---

[10] For the same reasons, Plaintiffs' counsel likewise meet the requirements of Rule 23(g) for appointment as class counsel.  *See Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107, at *27 n.5 (C.D. Cal., May 1, 2018) (interpreting the Rule 23(a)(4) adequacy of representation requirement as analogous to Rule 23(g)'s requirements).

meet one of the requirements of Rule 23(b). This action falls squarely within Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[Rule] 23(b)(2) was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d at 1047.

An action is appropriate for class treatment under Rule 23(b)(2) when "'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125-26 (citation omitted) (finding that class of noncitizens detained during immigration proceedings met Rule 23(b)(2) criteria because "all class members' [sic] [sought] the exact same relief as a matter of statutory or, in the alternative, constitutional right"). "Identification of all class members is not necessary under Rule 23(b)(2)." *Perez-Olano*, 248 F.R.D. at 259. Rather, [t]he rule is appropriate ... where plaintiffs bring a class action on behalf of a 'shifting population.'" *Id*. (citation omitted). The classes that Plaintiffs seek to certify are quintessential Rule 23(b)(2) classes.

In this case, Defendants are pursuing policies and procedures which, *inter alia*, arbitrarily consign children to overly secure institutions, cause children to be medicated without due process, continue children in federal custody despite the availability of their parents or other custodians to care for them, and impede detained children from getting legal assistance Congress has said they should have.

The proposed classes are a creation of these challenged policies and practices, and the proposed injunctive and declaratory relief would benefit all class members. Certification under Rule 23(b)(2) is therefore appropriate. *See Parsons*, 754 F.3d at 689 (finding declaratory and injunctive relief proper as to class where "every [member] . . . is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice"); *Rodriguez*, 591 F.3d at 1126 (certifying Rule 23(b)(2) class of immigrant

1   detainees where "relief from a single practice is requested by all class members").

2        As noted, courts have repeatedly certified classes comprising persons subject to

3   challenged regulations, practices or policies. *Supra* at 2. Plaintiffs request that this

4   Court do the same.

5   **VI.   CONCLUSION**

6        For the foregoing reasons, the Court should grant this motion and certify the

7   class proposed herein, appoint the named Plaintiffs as class representatives, and

8   appoint Plaintiffs' counsel to serve as class counsel.

Dated: August 2, 2018.                    CARLOS HOLGUÍN
                                          Center for Human Rights &
                                          Constitutional Law

                                          HOLLY COOPER
                                          CARTER WHITE
                                          University of California Davis School
                                          of Law

                                          LEECIA WELCH
                                          NEHA DESAI
                                          POONAM JUNEJA
                                          CRYSTAL ADAMS
                                          National Center for Youth Law

                                          SUMMER WYNN
                                          MARY KATHRYN KELLEY
                                          JON CIESLAK
                                          MEGAN DONOHUE
                                          Cooley LLP

                                          */s/  Carlos Holguín*
                                          Carlos Holguín

                                          */s/  Leecia Welch*
                                          Leecia Welch

                                          */s/  Holly Cooper*
                                          Holly Cooper

                                          */s/ Summer Wynn*
                                          Summer Wynn

                                          *Attorneys for Plaintiffs*

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION CV 2:18-CV-05741**