CHAD A READLER
Acting Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BENJAMIN MARK MOSS
Trial Attorney
MARINA STEVENSON
Trial Attorney
ANDREW B. INSENGA
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
    P.O. Box 878
    Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 305-7816
    Fax: (202) 616-4950
    andrew.insenga@usdoj.gov
Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R., *et al.*,<br>Plaintiffs,<br><br>vs.<br><br>ALEX AZAR, Secretary of U.S. Dep't of Health and Human Services, *et al.*,<br>Defendants. | Case No.: 2:18-CV-05741-DMG-PLA<br><br>OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION<br><br>Hearing on Motion:<br>August 31, 2018 at 9:30am<br><br>Honorable Dolly Gee |

## INTRODUCTION

The government hereby opposes Plaintiff Lucas R.'s Motion for Preliminary Injunction, requesting release. Mot., ECF No. 29-1. The motion fails to demonstrate meet the requisite likelihood of success, regardless of the three other factors. In general, this Court lacks jurisdiction over this motion because it is effectively a habeas petition, but the Southern District of Texas is the only court with jurisdiction to issue the writ and grant appropriate relief. Moreover, any APA challenge (which Plaintiff does not even articulate) to ORR's process would fail for a lack of final agency action. The procedural due process concerns lack merit, as the government's interest in ensuring the child is released to an appropriate sponsor are paramount. Finally, the three final factors weight against the granting mandatory release: ORR has legitimate concerns about the suitability of Lucas R.'s half-sister and has already determined that Lucas R.s half-brother may be a suitable sponsor, provided he complies with certain actions conducive toward Lucas R.'s safety, ease of transition, and non-interruption of vital mental health care.

## FACTS

Plaintiff Lucas R. is a native and citizen of Guatemala. Mot., ECF No. 29-1 at 1. He arrived in the United States as an unaccompanied child. Compl. ¶ 10. He is currently in the custody of the Office of Refugee Resettlement (ORR) at Shiloh

Residential Treatment Center (RTC) located in Manvel, Texas.[1]  *See* Exhibit (Ex.) 45 ¶ 1, 2 (Declaration of James de la Cruz, Senior Field Program Specialist Supervisor).  He is twelve, fourteen, or fifteen years old: his birth certificate indicates that he is twelve; he says he is fourteen; and his half-sister claims Lucas R.'s mother did not initially register his birth until Lucas R. was two years old.  *Id*. at ¶ 2, 3.

Lucas R.'s mother passed away when he was young; the location of his father is unknown.  Ex. 45 ¶ 4.  Two half-siblings live in the United States:  a half-sister and half-brother (hereinafter referred to as "sister" and "brother".  *Id*. at ¶ 5.  Lucas R. has known his sister since she was young.  *Id.* at ¶ 5  Lucas R. told ORR that his aunt in Guatemala would use physical discipline on him, and the family in Guatemala confirmed they used such discipline on his sister.  *Id*. at ¶ 9.  He also reported to ORR that his sister would hit him when they were in Guatemala.  *Id*. at ¶ 5.  He reported that such hitting was not the sort that "happens . . . with siblings."  *Id.* at ¶ 14.  Lucas R. has a limited relationship with his brother, who migrated to the United States when Lucas R. was young.  *Id*. at ¶ 6.  He traveled to the United States over the course of a month to be with these siblings.  *Id*. at ¶ 7.

---

[1]  On July 30, 2018, this Court issued an Order in related case *Flores v. Sessions*, ordering all *Flores* class members to be transferred "out of Shiloh RTC unless a licensed psychologist or psychiatrist has determined or determines that a particular Class Member poses a risk of harm to self or others."  85-cv-4544-DMG (C.D. Cal.), ECF No. 470 at 14, 30.

ORR initially placed Lucas R. in the Southwest Key Hacienda del Sol (Southwest Key Sol) shelter in Arizona. Ex. 45 ¶ 8. While there, his mood became inconsistent, and he made statements about having death wishes and possibly having a plan to act on them. *Id*. He reported sleeping and eating issues and had difficulties with the staff and teachers. *Id*. He declined medication. *Id*.

On February 20, 2018, he first reported a thought of suicide: He told a youth care worker that he wanted to die and had similar thoughts while in Guatemala. Ex. 45 ¶ 10. This prompted a call to a Crisis Team, which took him to medical center for evaluation; there, a therapist recommended hospitalization for about a week. *Id*. at ¶ 11. However, on February 27, an emergency room doctor re-evaluated him, and he was discharged and returned to Southwest Key Sol. *Id.*

On March 6, he received outpatient care through an outside psychiatric practice group. Ex. 45 ¶ 12. A psychiatric mental health nurse practitioner evaluated Lucas R., diagnosing him with moderate depression and prescribing an anti-depressant, but Lucas R., while apparently accepting the medication at first, later declined to take it. *Id.* He was later seen by another pediatric group because of his refusal to take his medication. *Id.* On April 18, 2018, Lucas R. was taken back to the outside psychiatric practice group, and the psychiatric mental health nurse practitioner recommended that he be transferred to an RTC, where he was sent at the end of May. *Id*. at ¶¶ 12, 13.

Meanwhile, ORR began to investigate the potential for reunifying Lucas R. with his sister by conducting a home study of his sister's home beginning March 20, 2018.  Ex. 45 ¶ 14.  The study concluded that his sister was engaged and cooperative but minimized the concerns about the suicidal ideation.  *Id*.  Additionally, during an unscheduled later visit, the social worker determined that an individual was living there whom the sister had said had moved out.  *Id*.  The sister had said the individual had just arrived, but the social worker found evidence that this was inaccurate.  *Id*.  For example, the individual's car was blocked in by another vehicle; male clothes were in the laundry hamper; and other household members had delayed in opening the bedroom door for ten minutes after the brother requested.  *Id*.  The most significant concern was that Lucas R. disclosed past physical discipline and that was reported to the social worker.  *Id*.

ORR also recently concluded a home study for Lucas R.'s half-brother. Ex. 45 ¶ 17, 18.  The half-brother demonstrated a willingness to ensure that the child receives appropriate care and to begin counseling.  *Id.* at ¶18.  However, the case worker did recommend certain conditions be in place before Lucas R. is released, including video visits between Lucas R. and his brother, disclosure of all household members, and putting in place mental health services to ensure continued psychiatric care upon Lucas R.'s is released from ORR's custodianship. *Id.* at ¶ 19.

# **ARGUMENT**

The motion fails to demonstrate that a preliminary injunction should be granted. It is well-settled that a preliminary injunction is "an extraordinary and drastic remedy" which "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 529 U.S. 968, 972 (1997) (per curiam) (citations and quotations omitted). This Court may issue a preliminary injunction only when the movant demonstrates that: (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by an injunction. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). However, "when 'a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three [elements].'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotation marks omitted).

Because the function of a preliminary injunction is normally to maintain the status quo, there is "heightened scrutiny" for mandatory preliminary injunctions. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (Mandatory injunctions are "subject to a heightened scrutiny and should not be issued unless

the facts and law clearly favor the moving party."). "A mandatory injunction orders a responsible party to take action," and thus, "goes well beyond simply maintaining the status quo." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal citations and quotation marks omitted).  Accordingly, "mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases. . . ." *Id.* at 879 (quoting *Anderson v. United States*, 612 F.3d 1112, 1115 (9th Cir. 1979)). Because Plaintiffs are asking this Court to require the injunction they are seeking is a mandatory one and should subject to heightened scrutiny by this Court.

I. **The Motion fails to demonstrate a likelihood of success.**

   A. **The Court lacks statutory authority under the Flores Settlement, the Federal question statute, or habeas statute to grant the relief.**

The only relief Lucas R.'s motion for a preliminary injunction seeks is "his immediate release."  Mot., ECF No. 29-1  at 1.  Except for stray cites to the Flores Settlement, the Motion does not explain what provides this Court with authority to order ORR to release Lucas R. to a particular sponsor.  The Complaint cites the *Flores* Settlement, 28 U.S.C. § 1331, and 28 U.S.C. § 2241 in support of their claim for jurisdiction.  *See* Compl. ¶ 6.  However, this motion attempts to circumvent the requirements for filing a writ of habeas corpus.

First, the Flores Settlement does not separately grant this Court to jurisdiction to entertain this complaint and the motion based on the complaint.

OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION - 7

"Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). The Supreme Court and other courts have recognized that "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); se*e Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1294 (Fed. Cir. 2002) ("parties may not by contract bestow jurisdiction on a court"). As the *Flores* Settlement is in the nature of contract, it cannot separately give this Court jurisdiction to order the requested relief. Indeed, the Court has been in clear in stating that individual claims are not appropriate for resolution through enforcement of the settlement. *See Flores v. Sessions,* No. CV-85-4544 DMG, Docket Entry 470 at 5 (C.D. Cal. July 30, 2018).

Second, the "Federal question" statute, 28 U.S.C. § 1331, does not waive sovereign immunity. *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097-98 n.5 (9th Cir. 1994) ("Section 1331 . . . do[es] not waive the sovereign immunity of the United States); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) (§ 1331 not a waiver to sovereign immunity). Any waiver of sovereign immunity must be explicit. *Hiratani v. U.S. Dep't of Treasury*, 955 F.2d 47 (9th Cir. 1992). That statute, therefore, does not provide independent jurisdiction over the request for release to a sponsor.

Finally, the Court lacks authority to order habeas relief. A petition for habeas corpus must: (1) be against a proper defendant, and (2) brought in the district in which the warden has detained the individual. The motion for release runs into several problems. First, Lucas R. has named the incorrect respondent for habeas corpus relief. In *Rumsfeld v. Padilla*, the Supreme Court held that the proper respondent to a habeas petition is the "immediate physical custodian" over the petitioner. 542 U.S. 426, 430 (2004). The Court rejected the so-called "legal control test" that would allow suit over "some other remote supervisory official." *Id.* at 435. This rule applies in all "core" habeas petitions, which are all "challenges to present physical confinement." *Id*. at 435. In *Padilla*, the Supreme Court was reviewing a petition brought by a United States citizen who was detained in a Navy brig. *Id*. at 430. Padilla was detained by order of the President issued to Secretary of Defense. *Id*. Padilla sued the President, Secretary, and the head of the Navy brig. *Id*. at 432. Applying the rule, only the head of the Navy brig was the "immediate custodian." *Id*. That warden was "'the person' with the ability to produce the prisoner's body before the habeas court." *Id*. at 434 (quoting 28 U.S.C. §§ 2242, 2243).

Applying that rule here, the proper respondent for Lucas R. would be the individual who had immediate physical custody over him at the time the complaint was filed. The Defendants in this case are the heads of an agency and a sub-

agency. While they may have some manner of supervisory control, that supervision is insufficient under *Padilla:* There, the President and Secretary of Defense *specifically* ordered Padilla to be detained. 542 U.S. at 430. Here, Plaintiffs have failed to plead even that level of control. At a minimum, in the situation here where the facility where Lucas R is held is run under a federal grant from ORR, the Court should at least have jurisdiction over the "federal official [who] exercised more immediate control over a contract facility than the Attorney General or *another department head*, . . . *Padilla* requires a petitioner challenging present physical custody to name the more immediate official." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017) (emphasis added). That person would be the head of the facility or, possible, the ORR Federal Field Specialist with responsibility for that particular ORR facility. None of these individuals would be located within the Central District of California.

Finally, the Court lacks the authority under the habeas statute to review Lucas R.'s detention and order him released. "District courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). That means that a writ is "'issuable *only* in the district of confinement.'" *Id*. (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)) (emphasis added)). This motion is properly understood as a petition for a writ of habeas seeking the release and must be brought in the Southern District of

Texas. The Court lacks statutory authority to require any custodian to release Lucas R. because this action and motion have been filed in the wrong Federal District Court. Both Lucas R. and his custodian are located in Manvel, Texas. Mot., ECF No. 29-1 at 4. The federal official having immediate control over that facility, and therefore "the ability to produce" Lucas R., is located there. *See* 28 U.S.C. §§ 124(b), 2241(a); *see also Padilla*, 542 U.S. at 443; *see also Saravia*, 280 F. Supp. 3d at 1188 ("In light of the interpretation of *Padilla*, . . . [plaintiffs] have not named the proper respondents to their habeas petitions—the Federal Field Specialist (or perhaps the directors of the regional offices) charged with overseeing the contract facilities in which they presently are held."). Thus, the Southern District of Texas is the only district that could grant Lucas R. the relief he seeks—his immediate release.

Because this Court does not have jurisdiction to effect the requested relief, Lucas R.'s motion should be denied and he should be required to bring a properly styled habeas petition, independent of this putative class action, naming the appropriate respondent in the Southern District of Texas. *See also Padilla*, 542 U.S. at 451 (dismissing petition because it was brought in the incorrect district).

### B. As an APA claim, there is no final agency action.

Even assuming that Lucas R. wishes to present a challenge under the Administrative Procedures Act (APA) – which he does not do and should be

OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION - 11

grounds enough for denying the injunction – his claim under the APA is substantially hobbled. When reviewing agency action under the APA the Court can set aside agency action, findings, or conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Courts have stressed that this is a "deferential" standard, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007), that "presume[s] the validity of agency action," *Southwestern Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1352 (D.C. Cir. 1999), and bars courts from substituting their own judgment for that of the agency's. *See Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

There is no final agency action that is reviewable when considered as an action under the APA alleging a violation of the TVPRA or Constitution. In *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), the Supreme Court stated that two criteria must be satisfied for agency action to be final: First, the action must mark the "consummation" of the agency's decision-making process; it must not be of a merely tentative or interlocutory nature. Second, the action must be one by which "rights or obligations have been determined" or from which "legal consequences will flow."

Here, neither of these prongs are met: The ORR is in the process of determining the suitability of the sponsors. First, any complaint is interlocutory in

nature.  The Court looks "to see whether the agency 'has rendered its last word on the matter.'" *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 984 (9th Cir. 2006) (quoting *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001)).  Here, there is no "last word."  Instead, ORR is in the process of finding an appropriate resolution.

Lucas R. presents the claim as being based on "allegations regarding [the sister's] fitness.  Mot., ECF No. 29-1 at 2.  However, this matter does not center around his sister; rather, it is about placement of a child.  The concerns about the sister are only part of the process, and even that does not constitute a final decision.  Indeed, at present, ORR is considering the brother as a sponsor.  As the Ninth Circuit has stated, a court "will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary." *Sierra Club v. United States Nuclear Regulatory Comm'n*, 825 F.2d 1356, 1362 (9th Cir. 1987).  If ORR deems the brother to be an appropriate sponsor – and indeed, ORR has done so on a provisional basis, provided the brother takes steps appropriate to assure uninterrupted mental health services for Lucas—then this motion would be completely unnecessary.

Second*,* no "rights or obligations have been determined." *Bennett*, 520 U.S. at 178.  Again, this action is not about the sister's rights or obligations—it is about

the safety of the child. There has been no determination that the child cannot be released. As such, the APA does not provide authority to adjudicate any no-ripe TVPRA or Constitutional claim.[2]

C. **Due process concerns met: ORR's interest is heightened**

As a Constitutional claim, the ORR has provided for a proper process that has revealed legitimate concerns. Because Plaintiffs are asking this Court to require the injunction they are seeking is a mandatory one and should subject to heightened scrutiny by this Court.

In *Matthews v. Eldridge*, the Supreme Court set forth three factors that normally determine whether an individual has received the "process" that is "due" under the Constitution: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural

---

[2]  One further problem vexing Lucas R's motion for a preliminary injunction is that under the APA, the court's review is generally supposed to be limited to the record before the agency at the time it made its decision. *See, e.g., American Petroleum Tankers Parent, LLC v. U.S.,* 952 F.Supp.2d 252, 260 (D.D.C. 2013), citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). However, Lucas R. attempts to submit evidence that was never submitted to the agency. *See*, *e.g.,* Docket Entries 25-10 through 25-32. That is improper, as the Court's decision should be confined to the administrative record (generally reflected in Exhibits 46 through 61). Further, the Court is not free to substitute its own decision. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, making the addition of evidence impermissible as part of an APA challenge. Accordingly, such evidence should not be considered.

safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

The government's interest is acting as the child's custodian, and that undermines much of the complaints in the motion made largely by the half-sister. Plaintiff's private interests are complicated in this situation. Even if he does not desire to be in ORR's custodianship, there is also an interest that he not be placed in a home that is not suitable. The risk of erroneous deprivation through the process is also complicated, as the analysis is not focused on any loss to the sister.

The government's interest as the custodian of a child is particularly heightened. ORR's interest is in finding a home that is suitable to the child. This is not, as the motion suggests, a mere responsibility to be shirked and dumped on a local agency: "Should ORR doubt Madelyn's ability to care for Lucas, it is free to refer its concerns to local child protection officials." Mot., ECF No. 29-1 2. The desire to be in the custody of a relative, and the sister's desire, does not allow ORR to ignore legitimate Federal government interests.

Those concerns are high in this case. Lucas R. has expressed suicidal thoughts before and in custody with a specific plan. *See* Ex. 45 at ¶ 8. He is and will be in the need of assistance. See Ex. 45 at ¶ 16. ORR has legitimate concerns about the appropriateness of releasing the child to his sister: Lucas R. told the

facility that his sister has used physical punishment against him. While he may fear her less now that he is older, that does not negate the overall concerns. Further, the social worker raised legitimate concerns that the sister was not being candid about who was living in the home. Indeed, it seemed that there were distinct effort to conceal the presence of an individual in the house. Looked at as a whole, the government's interests and interests of the Plaintiff are not dissimilar. And the process by which ORR determines the suitability of a sponsor meets the flexible demands of due process.

## II. The final three factors of an injunction weigh against requiring ORR to release a child to a custodian whose actions raise legitimate concerns.

The final three factors do not favor granting a preliminary injunction mandating release: irreparable harm, harm to the opposing party, and weighing the public interest. To establish irreparable harm, the movant must first "demonstrate that irreparable injury is likely in the absence of an injunction;" it "will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury." *Park Village Apartment Tenants Association v. Foster*, 636 F.3d 1150 (9th Cir. 2011) (internal citation and quotation marks omitted). The final two factors—harm to the opposing party and weighing the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, these factors weigh against ordering ORR to release him to the sister. While ORR's goal is not to hold Lucas R. in residential treatment, the possibility to harm outside of its custody cannot be ignored. As discussed above, the government's and public's interest is heightened: The psychiatric staff that have evaluated Lucas R.'s mental health needs, and the social workers investigating her sutiability have legitimate concerns about the sister's appropriateness for a long-term. Lucas R. himself identified use of physical punishment, and the social workers observed actions suggesting a lack of candidness. ORR does not have any desire to indefinitely "detain" this child. It has a potentially appropriate sponsor that it is ongoing. The Court should not short-circuit that process through an inappropriate preliminary injunction.

As a matter of policy and judicial economy, the Court should decline to entertain Plaintiff's preliminary injunction motion. The motion inverts the fundamental purpose of preliminary injunctive relief, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Instead, Plaintiff asks this Court to alter the status quo by granting Plaintiff the very relief he hopes to obtain through this entire action—a judicial officer superseding HHS's process and procedures by performing an ad hoc evaluation of the merits of his requested custodian's fitness. *See* Compl. ¶ 128–30. Moreover, to grant this equitable relief, there needs to be no

adequate remedy. *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). But there is: habeas.

More importantly, the equities favoring Lucas R.'s release to his sister are diminished, and concomitantly, the equities tilt decidedly in the government's favor where a sponsor has been identified by Lucas R., his brother, and a home study has returned a favorable recommendation. Ex. 1 at ¶ 18. Indeed, given that the brother will be suitable, it appears that Lucas may be released under terms that will assure his safety, ease his period of transition, and secure uninterrupted mental health care to assist him. *Id.* at ¶ 19. This Court has already ruled that ORR's plans that are rationally related to the child's safety and health are entitled to some deference. *See Flores v. Sessions*, No. CV 85-4544 DMG at 26 (C.D. Cal. July 30, 2018) ("they appear to be reasonably calculated to protect Class members from 'harm or neglect' and to ensure that they have an adequate 'standard of care.'"). Given that Plaintiffs and Defendants concede that Lucas R. is in need of continued, uninterrupted mental health treatment, the equities favor ORR's current plan for the reunification of Lucas R. with his chosen sponsor, his brother, while assuring his safety, ease of transition, and uninterrupted mental health care.

## CONCLUSION

For the foregoing reasons, Lucas R.'s Motion for Preliminary Injunction should be denied.

                        Respectfully submitted,

CHAD A READLER
Acting Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BENJAMIN MARK MOSS
Trial Attorney
MARINA STEVENSON
Trial Attorney

   /s/  Andrew B. Insenga
ANDREW B. INSENGA
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Phone:  (202) 305-7816
Fax:  (202) 616-4950
andrew.insenga@usdoj.gov
Attorneys for DEFENDANTS