# EXHIBIT 45

1

UNITED STATES DISTRICT COURT

2

FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4  LUCAS R., *et al.*,
   Plaintiffs,

5                                    )   Case No.: 2:18-CV-05741-DMG-PLA

   vs.

6

   ALEX AZAR, Secretary of U.S. Dep't of

7  Health and Human Services, *et al.*,
   Defendants.

8

9

10        **DECLARATION OF JAMES S. DE LA CRUZ,**

11  James S. De La Cruz, pursuant to the provisions of 28 U.S.C. § 1746, declares,

12  under penalty of perjury, as follows:

13        1.      I am the Senior Field Program Specialist Supervisor for the Office

14  of Refugee Resettlement ("ORR"), an Office within the Administration for

15  Children and Families ("ACF"), Department of Health and Human Services

16  ("HHS"). The following statements are based on my review of HHS records

17  and information contained therein, and information supplied to me by current

18  HHS employees pertaining to Lucas R.  "Lucas R." is a pseudonym for an

19  unaccompanied alien child ("UAC") in care with ORR.

20

2.      Lucas R. is a 12- to 16-year-old boy currently residing in Shiloh

Residential Treatment Center ("RTC").  He is currently in sub-acute care within

Shiloh and visits with the psychiatrist at Shiloh each week for review.  He

presents with diagnoses of generalized anxiety disorder, post-traumatic stress

disorder, a history of major depressive disorder-recurrent severe without

psychotic feature, and borderline intellectual function disorder.

3.      It is unclear whether Lucas R. is 12, 14, 15, or 16 years old.  His

birth certificate and notice to appear show that he is 12; however, he has

reported that he is 14, 15, and 16; his half-brother -- his current sponsor – has

also reported he is 14.  Lucas R. has stated that his mother did not register his

birth until he was approximately 2 years old.

4.      Lucas R's mother passed away in home country when he was

young.  He has reported he does not remember his biological mother, never met

his biological father, and does not know his father's whereabouts.

5.      Lucas R. has a half-sister (referred to in this declaration as his

sister) and half-brother (referred to in this declaration as his brother) who reside

in Los Angeles, California.  He has known his sister since he was young.  Since

residing at Shiloh, Lucas R. has disclosed that his sister would hit him for

unknown reasons when they were in home country.  Lucas R. reported that he

last saw his sister approximately one year ago in home country.

OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION - 2

6.     Lucas R.'s brother also resides in Los Angeles, California.  Lucas R. does not have a significant relationship with his brother, because his brother migrated to the United States when Lucas R. was very young.  Lucas R. has had limited contact with his brother and has spoken with him every couple of months.

7.     Lucas R. has reported that he migrated to the United States to reunite with his sister and brother.  He has reported that he started his journey on January 15, 2018, that his trip lasted one month, and that he travelled with a guide by bus and slept in hotel rooms.

8.     ORR initially placed Lucas R. in the Southwest Key Hacienda del Sol shelter ("Southwest Key Sol") in Youngstown, Arizona on February 11, 2018.  While at Southwest Key Sol, Lucas R. began demonstrating inconsistency in affect and mood, and then started making statements pertaining to death wishes, ending his life and possibly having a plan to do so in shelter care.  He made several statements about suicide as well. He declined medication and presented concerns to a psychiatric nurse practitioner.  He reported disturbances in eating and sleeping and the shelter reported that he had difficulties with staff and teachers, and  that he would get annoyed or irritated quickly.  Shelter staff observed that he engaged well with peers and had a clean appearance and eye contact.

9.     While in care, Lucas R. also reported that his aunt in home country used physical discipline when caring for him, and that his sister also was physically disciplined.  The family in home country confirmed that they did use physical discipline with Lucas R's sister when she was younger.

10.     The first report concerning Lucas R's active thoughts of ending his life are from the Southwest Key Sol, dated February 20, 2018.  According to the reports, he disclosed to a youth care worker that he wanted to die, and he did not want to be here anymore.  He also disclosed thoughts of killing himself before he left his home country and that he had a plan in his home country and was planning on shooting himself.  He said he had a plan in the shelter as well.

11.     Lucas R's disclosures prompted a call to a Crisis Team, which recommended experts evaluate him.  Shelter staff transported him to Thunderbird Medical Center where a therapist recommended hospitalization of 6-7 days to complete a full evaluation.  The plan was to move Lucas R. to an adolescent or children's hospital, but on February 27, 2018, an Emergency Room doctor re-evaluated him, and he was discharged and returned to Southwest Key Sol.

12.     Lucas R. received a follow-up outpatient psychiatric consultation with "New Leaf," group practice in Glendale, Arizona that specializes in child and adolescent psychiatry.  He was seen by a psychiatric mental health nurse

1 practitioner and diagnosed with moderate depression and prescribed

2 medication, Sertraline 20mg and Melatonin.  He appears to have initially taken

3 his two medications.  He was later seen at Pleasant Pediatrics due to refusing to

4 take his Setraline.  On April 18, 2018, Lucas R. was again seen at New Leaf

5 group practice, and the psychiatric mental health nurse practitioner requested

6 for Lucas R to be transferred to residential treatment.

7       13.    Lucas R. transferred to Shiloh Residential Treatment Center at the

8 end of May 2018.

9       14.    At the time he transferred to Shiloh, Lucas R. was pursuing

10 reunification with his sister.  ORR arranged for a home study for his sister, and

11 that began on March 20, 2018, and involved multiple visits.  The home study

12 concluded with a negative recommendation.  The home study concluded that

13 while his sister presented as "engaging and cooperative," during some home

14 study visits she appeared to minimize Lucas R's suicidal thoughts, and stated he

15 would not have those thoughts when he reunified.  Further, during an

16 unannounced home visit, the social worker determined the presence of an

17 individual whom the sister had previously stated moved out of the home.  The

18 social worker determined evidence that such household member was still living

19 in the home and had spent the night.  For example, the individual's vehicle was

20 blocked in by another vehicle, even though the social worker was told by Lucas

OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION - 5

1  R's brother (in the home at the time) that this individual had just arrived.  The

2  social worker also found adult male clothing in the laundry hamper in another

3  room.  Other household members did not open the bedroom door until

4  approximately 10 minutes after Lucas R's brother requested they do so.

5  Finally, most significantly, in a Significant Incident Report, dated July 17,

6  2018, Lucas R. disclosed his sister had used physical discipline with him

7  previously in home country.  The Significant Incident Report states Lucas R

8  was asked whether such hitting was "hitting as it happens . . . . within siblings,

9  and he said no."  Lucas R. said that the case worker "could not understand the

10  reasons."  He later said his sister hit him until he was 12, but that he is now

11  grown. The shelter staff disclosed this report to child protective services, as

12  mandatory reporters under state law.

13       15.    Lucas R. is currently seeking reunification with his brother.  Shiloh

14  appears to have begun working with Lucas R's brother in June 2018.  The case

15  manager contacted the brother for proof of address, but the brother reported he

16  would be moving June 30, and that he would have a roommate.  The case

17  manager informed the brother that the shelter would need information on the

18  person over 18 in the household.  Lucas R.'s brother requested that forms be

19  sent to his email, and at the end of June, the case manager emailed a release of

20  information for the household member.  The case manager then followed up,

OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION - 6

1 | but the brother reported he could not open the attachment.  The sponsor asked

2 | for the case manager to schedule the fingerprint appointments so that they could

3 | assist him in downloading and filling out the forms.  The case manager

4 | contacted the sponsor later the same day and informed him there was an

5 | appointment available on June 28, 2018, and Lucas R's brother said he would

6 | contact the household member and see if that would work. The case manager

7 | then contacted the household member to ask if she was aware of the

8 | appointment, and the household member stated she was not aware.  The case

9 | manager explained that her information was given by Lucas R's brother, and

10 | then explained the fingerprint process and asked if she would be available.  The

11 | household member asked for additional time to consider the issue.  The case

12 | manager followed up a day later, but there was no answer.  The case manager

13 | again followed up four days later on July 3, 2018.  On July 13, 2018, the

14 | household member was fingerprinted.

15 |      16.    Lucas R. qualified for a mandatory home study under the

16 | Trafficking Victims Protection Reauthorization Act (TVPRA) given his mental

17 | health issues, such as PTSD, major depressive disorder and generalized anxiety,

18 | as well as disclosures in prior placement of thoughts of ending his life in home

19 | country.

20 |

17.     Lucas R.'s brother had a home study on or about the beginning of August.  A home study report dated August 6, 2018, concludes with a positive recommendation.

18.     The home study case worker reported that Lucas R's brother has demonstrated a willingness to sponsor Lucas R. by being compliant with the reunification process and providing as much information as possible to the home study worker.  The sponsor reported he would ensure that Lucas R. receives mental health services and that he was committed to ensuring Lucas R. overcomes his trauma history.  He agreed to start counseling after Lucas R. returns home.

19.     The case worker did recommend that certain conditions be in place prior to release. These are:

- •     Clinical family sessions (minimum of 5) to include video calls between the sponsor and the minor to reinforce building of rapport and familiarity with each other.

- •     Disclosure of all household members to the minor by the sponsor.

- •     Clinical session with sponsor and the minor to discuss the importance of medication management and possible side effects and consequences of discontinuing psychotropic medications without medical

1   consent.  Clinical session to all include discussion of reunification

2   expectation, household rules and discipline plan.

3       •       The sponsor to be provided with a list of mental health referrals,

4   crisis hotlines and emergency resources.

5       •       For the sponsor to make an appointment with a mental health

6   provider prior to the minor's release to ensure continued psychiatric care.

7       •       Post-release follow-up services to be initiated prior to the minor's

8   arrival in the home.

9       20.     As of August 8, 2018, Shiloh is withholding a release

10  recommendation.  At present, the criteria listed above still need to be met.  In

11  addition, fingerprint results for Lucas R's brother did not come back clear;

12  however, at present it does not appear these hits will disqualify Lucas R's

13  brother as a sponsor.  The brother's fingerprints have now expired (fingerprints

14  expire every 120 days); ORR must now determine if subsequent fingerprints

15  will be needed given the positive home study and Lucas R brother's

16  cooperation and willingness to care for Lucas R.  The other household member

17  (fingerprinted in mid-July) also has returned fingerprints with hits, but the hits

18  do not appear to be disqualifying.

19      21.     Further, based on the varying disclosures about Lucas R's age,

20  ORR is concerned about the validity of Lucas R's birth certificate.  ORR

1  requested a DNA test for Lucas R. and his brother.  Lucas R. already underwent

2  the testing, and his brother tested August 3, 2018.  Results are pending.

3      22.    Once DNA results are final, and Shiloh makes a recommendation,

4  a third-party case coordinator will review Shiloh's recommendation and make

5  an independent recommendation.  The case coordinator has a 24-hour turn-

6  around time to make the recommendation..

7      23.    The Federal Field Specialist will then review the case for a final

8  determination.

9

10

11

12  Dated: Washington D.C.

13  *August 8, 2018*

14

15  _____

16      James De La Cruz

17

18

19

20