CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Listing continues on next page*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LUCAS R., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>ALEX AZAR, Secretary of U.S. Department of Health and Human Services; *et al.*,<br><br>　　　　　Defendants. | No. CV 2:18-CV-05741-DMG-PLA<br><br>REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION<br><br>Hearing:　August 31, 2018<br>Time:　　9:30 a.m.<br>Room:　　1st St. Courthouse<br>　　　　　Courtroom 8C |

/ / /

*Counsel for Plaintiffs, continued*

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

LEECIA WELCH (Cal. Bar No. 208741)
NEHA DESAI (Cal. RLSA Bar No. 803161)
POONAM JUNEJA (Cal. Bar No. 300848)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email: lwelch@youthlaw.org
        ndesai@youthlaw.org
        pjuneja@youthlaw.org

CRYSTAL ADAMS (Cal. Bar No. 308638)
National Center for Youth Law
1313 L St. NW, Suite 130
Washington, DC 20005
Telephone: (202) 868-4785
Email: cadams@youthlaw.org

OUTLINE OF CONTENTS

I.     Introduction ................................................................................. 1

II.    This Court may enjoin ORR's continuing to confine Lucas pursuant to
       the *Flores* Settlement, the TVPRA, the APA, and the U.S. Constitution....... 2

       A.     This Court has jurisdiction to enjoin breaches of the Flores
              consent decree. ................................................................. 2

       B.     The Court may enjoin ORR to place Lucas with his sister
              independently of habeas corpus. ........................................ 5

       C.     ORR's refusing to release Lucas to Madelyn is final agency action
              subject to judicial review, as is its failure to reunify Lucas with his
              family for nearly half a year.............................................. 7

       D.     ORR has refused to place Lucas with Madelyn entirely without
              process or transparency— a *prima facie* denial of due process.......... 10

III.   Whether prohibitory or mandatory, Lucas satisfies all requirements for
       issuance of preliminary injunction. ............................................. 15

IV.    Conclusion................................................................................. 18

TABLE OF AUTHORITIES

**Cases**

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) ............................................................... 2

*Aristotle P. v. Johnson*,
  721 F. Supp. 1002 (N.D. Ill. 1989) ............................................. 10, 12

*Beltran v. Cardall*,
  222 F. Supp. 3d 476 (E.D. Va. 2016) ............................................ 7, 13

*Bogarin-Flores v. Napolitano*,
  2012 U.S. Dist. LEXIS 112964, 2012 WL 3283287 (S.D. Cal. Aug.
  10, 2012) ........................................................................................... 7

*Bracamontes-Reyes v. Sessions*,
  No. CV 18-01301-PHX-DLR (JZB), 2018 U.S. Dist. LEXIS 76756
  (D. Ariz. May 4, 2018) ....................................................................... 7

*Brock v. Pierce County*,
  476 U.S. 253 (1986) ........................................................................... 8

*Bunikyte, ex rel. Bunikiene v. Chertoff*,
  2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ................................. 3, 4

*Califano v. Sanders*,
  430 U.S. 99 (1977) ............................................................................. 9

*Colvin v. United States*,
  479 F.2d 998 (9th Cir. 1973) ........................................................... 14

*Flanagan v. Arnaiz*,
  143 F.3d 540 (9th Cir. 1998) ............................................................. 2

*Flores v. Johnson*,
  212 F. Supp. 3d 864 (C.D. Cal. 2015) ....................................... *passim*

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016) ............................................................. 3

*Flores v. Sessions*,
   862 F.3d 863 (9th Cir. 2017) .................................................. 4, 5, 10, 11

*Hernandez v. Campbell*,
   204 F.3d 861 (9th Cir. 2000) ................................................................ 6

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) .............................................................. 16

*Hook v. Arizona, Dep't of Corrections*,
   972 F.2d 1012 (9th Cir. 2014) .............................................................. 4

*Independence Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) ................................................................ 9

*Koby v. ARS Nat'l Servs.*,
   846 F.3d 1071 (9th Cir. 2017) .............................................................. 2

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) ........................................................................ 2, 3

*Lavapies v. Bowen*,
   687 F. Supp. 1193 (S.D. Ohio 1988) ................................................... 4

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ........................................................................... 2, 3

*Martens v. Thomann*,
   273 F.3d 159 (2d Cir. 2001) ................................................................ 4

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
   336 F.3d 1094 (D.C. Cir. 2003).......................................................... 9

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ......................................................................... 12

*Ms. L. v. United States Immigration & Customs Enf't*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ......................................... 16, 17

*Nadarajah v. Gonzales*,
   443 F.3d 1069 (9th Cir. 2006) .............................................................. 6

*Nettles v. Grounds*,
   830 F.3d 922 (9th Cir. 2016) (en banc) ............................................... 6

REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:18-CV-05741-DMG-PLA

*O'Connor v. Donaldson,*
    422 U.S. 563 (1975) ........................................................................ 12

*Preiser v. Rodriguez,*
    411 U.S. 475, 479 (1973) .................................................................. 6

*Rivera v. Holder,*
    307 F.R.D. 539 (W.D. Wash. 2015) .................................................. 7

*Rumsfeld v. Padilla,*
    542 U.S. 426 (2004) ................................................................. 5, 6, 7

*Saravia v. Sessions,*
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................. 6, 17, 18

*Telecommunications Research & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ............................................................ 9

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,*
    60 F.3d 27 (2d Cir. 1995) ............................................................... 16

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ................................................................. 10, 12

**Statutes**

5 U.S.C.
    § 555(b) ........................................................................................ 8, 9
    § 704 ............................................................................................... 8
    § 706 ............................................................................................... 9
    § 706(1) ........................................................................................... 8

8 U.S.C. § 1232(c)(2)(A) ....................................................... 5, 10, 12

28 U.S.C.
    § 1331 ......................................................................................... 9, 11
    § 2241 ......................................................................................... 6, 7
    § 2241 ............................................................................................. 6
    § 2255 ............................................................................................. 6
    § 2255 ............................................................................................. 6

42 U.S.C. § 1983 ................................................................................ 6

Administrative Procedure Act .................................................. *passim*

Civil Rights Act .................................................................................................... 6

**Other Authorities**

B. Holman & J. Ziedenberg, *The Dangers of Detention: The Impact of Incarcerating Youth in Detention and Other Secure Facilities* (Justice Policy Institute, ed.), www.justicepolicy.org/images/upload/06-11_rep_dangersofdetention_jj.pdf ........................................................... 10

Fed. R. Civ. P.
    60(b)............................................................................................................ 4
    71 ................................................................................................................ 4

Federal Rule of Civil Procedure 23(e)(2) ...................................................... 2

Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases* 30 (1995), www.ncjfcj.org/sites/default/files/ ........................................................ 12

RESTATEMENT (SECOND) OF CONTRACTS § 304 & cmt. a-b (1981) ............... 4

# I.  INTRODUCTION

Defendants' reasons for opposing the Court's enjoining ORR's confinement of Lucas in overly restrictive facilities, instead of a suitable custodian—his own sister—fall into two categories. First, Defendants raise a number of jurisdictional objections: (i) the Court has no jurisdiction to enforce Lucas's rights under the *Flores* Settlement; (ii) Lucas's exclusive legal recourse for the irreparable injury ORR is causing him is to petition for habeas corpus in Texas; and (iii) ORR's detention of Lucas for nearly six months in lieu of placing him with his sister is not sufficiently "final" to warrant the Court's intervention. Second, Defendants argue, ORR's suspicions about Madelyn's fitness are so substantial that its confining Lucas at the notorious Shiloh psychiatric facility is the least restrictive placement consistent with his best interests.

As will be seen, Defendants' jurisdictional objections are without merit. This Court has repeatedly exercised jurisdiction to enforce the *Flores* Settlement, and the Ninth Circuit has affirmed. Lucas's claims for equitable relief and habeas corpus are not mutually exclusive, and his claim that ORR has failed to place him in the least restrictive setting consistent with his best interests is cognizable in an action for equitable relief. ORR's decision refusing to release Lucas to Madelyn is wholly final, and even if it were not, its refusal to release him for nearly half a year is palpably unreasonable and actionable under the Administrative Procedure Act.

Finally, Defendants offer no competent evidence countering Plaintiff's evidentiary showing that Madelyn is perfectly competent to care for her brother. Most importantly, ORR wholly fails to controvert Lucas's evidence that ORR detention has irreparably harmed him and threatens his well-being far more than placing him with his sister possibly could. This Court should accordingly grant the instant motion and enjoin ORR to place Lucas with Madelyn forthwith.

**II.** **THIS COURT MAY ENJOIN ORR'S CONTINUING TO CONFINE LUCAS PURSUANT TO THE *FLORES* SETTLEMENT, THE TVPRA, THE APA, AND THE U.S. CONSTITUTION.**

### A. This Court has jurisdiction to enjoin breaches of the Flores consent decree.

Defendants first argue that the Court lacks jurisdiction to enforce the *Flores* Settlement. Their argument is without merit.

In *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), the Court held that a proceeding to enforce a settlement requires its own basis of jurisdiction. *Id.* at 378. "Such a basis for jurisdiction may be furnished by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Flanagan v. Arnaiz*, 143 F.3d 540, 544 (9th Cir. 1998).

This Court's jurisdiction to remedy violations of the *Flores* Settlement is indisputable. Both the *Flores* Settlement and the order approving it,[1] reserve jurisdiction in this Court to redress violations. *Flores* Settlement ¶ 37 ("This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement except for claims brought under Paragraph 24."); Order, Jan. 28, 1997, Exhibit 62 filed herewith.[2] In *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D.

---

[1] The Settlement resolves a certified class action, and the Court was accordingly required to find the agreement "'fair, reasonable, and adequate.'" *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (quoting Federal Rule of Civil Procedure 23(e)(2)).

[2] Paragraph 24 of the *Flores* Settlement provides for judicial review of class members' placement in any judicial district with venue. Paragraph 37 therefore retains jurisdiction in this Court to hear claims that ORR is violating any other provision of the consent decree, including those requiring prompt release of non-dangerous class members to qualified custodians. *Flores* Settlement ¶¶ 14 and 18. The *Flores* Settlement's forum-selection clause is presumptively valid. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) ("Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general.").

Cal. 2015), this court held it "has the inherent power to enforce the terms of the [*Flores*] Agreement because, with certain exceptions not relevant here, the Agreement 'provides for the enforcement, in this District Court, of the provisions of this Agreement. . . .' (*See* Agreement ¶ 37; Ps' First Set, Exh. 2 . . .)." *Id.* at 869. The Ninth Circuit affirmed. *Flores v. Lynch*, 828 F.3d 898, 903 (9th Cir. 2016) ("The [*Flores*] Settlement generally provides for the enforcement in the Central District of California, *id.* ¶ 37, but allows individual challenges to placement or detention conditions to be brought in any district court with jurisdiction and venue, *id.* ¶ 24(B).").[3] Defendants offer no reason to disregard these rulings or the plain text of the *Flores* Settlement.

Defendants nonetheless assert that "the Court has been clear in stating that individual claims are not appropriate for resolution through enforcement of the settlement." Opp. at 8, *citing* No. CV-85-4544 DMG, Docket Entry 470 at 5 (C.D. Cal. July 30, 2018). But the page Defendants cite says nothing about the Court's jurisdiction to enforce the Settlement or the propriety of individual actions asking that it do so.[4]

Next, Defendants are wrong to the extent they argue that Lucas may not enforce his Settlement rights in this action, but may only do so in *Flores v. Sessions*

---

[3] Defendants argue that the *Flores* Settlement cannot "confer subject-matter jurisdiction" on this Court. That misunderstands *Kokkonen* and its progeny, which hold that a settlement may extend a court's original jurisdiction to remedy violations of an agreement resolving the underlying action.

[4] The Court does elsewhere observe that "Plaintiffs do not request an order releasing these seven Class Members or any of the other Class Members identified in their motion. . . ." *id.* at 26, but that implies that the Court would indeed review individual violations of the *Flores* Settlement if asked to do so. *See also*, *Bunikyte, ex rel. Bunikiene v. Chertoff*, 2007 WL 1074070, at *4 (W.D. Tex. Apr. 9, 2007) (exercising jurisdiction in independent action to enforce *Flores* Settlement's placement provisions brought by individual unnamed class members held at ICE facility in Texas).

proper. Opp. at 7-8. Defendants offer no authority for this proposition, and the general rule is to the contrary:

> There are . . . many ways in which the performance of a class action settlement might be called into question before the district court: in a contempt proceeding (if the claim is that the district court's orders are not being complied with); in a new action for breach of contract (if the claim is that one or more parties are not living up to their obligations under the settlement stipulation); or in a motion for relief from judgment under Fed. R. Civ. P. 60(b) (if an amendment of the original judgment is being requested).

*Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001); *see also id.* ("We begin our discussion by noting that there is nothing in the Federal Rules of Civil Procedure styled a 'motion to enforce.'").[5]

The *Flores* Settlement itself nowhere limits enforcement to a motion brought in *Flores v. Sessions*. Rather, paragraph 37 of the agreement provides for enforcement "*in this District Court*, of the provisions of this Agreement. . . ." (Emphasis added.) Had the parties wished to restrict jurisdiction over alleged breaches of the agreement to *Flores v. Sessions* itself, they could easily have done so. They did not. This action

---

[5] Lucas is a member of the class the *Flores* consent decree protects, and as such he is entitled to enforce his rights thereunder. *E.g.*, *Bunikyte*, *supra*. Yet even assuming, *arguendo*, the agreement were a non-class settlement solely between the actual parties in *Flores*, the agreement clearly aims to benefit Lucas, and he would be entitled to enforce it as a third-party beneficiary. *See* RESTATEMENT (SECOND) OF CONTRACTS § 304 & cmt. a-b (1981); Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."); *Hook v. Arizona, Dep't of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 2014), (quoting *Lavapies v. Bowen*, 687 F. Supp. 1193, 1207 (S.D. Ohio 1988) ("Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree.")) (citations omitted).

is before "this District Court," and it therefore falls squarely within the jurisdiction the consent decree preserves.

### B. The Court may enjoin ORR to place Lucas with his sister independently of habeas corpus.

Defendants next argue that Lucas's exclusive path to placement with his sister is a petition for a writ of habeas corpus. Opp. at 7-8. Accordingly, Defendants argue, if Lucas wants a writ of habeas corpus, he must petition in Texas and name a local official as respondent. *Id*. Defendants' argument is without merit.

To begin, the present motion seeks to enjoin Lucas's placement as unlawfully restrictive. His claim that ORR's refusing to place him with Madelyn violates the TVPRA is not about "release" at all. Rather, it is about *placement* in the least restrictive setting consistent with his best interests. *See Flores v. Sessions*, 862 F.3d 863, 871 (9th Cir. 2017) (TVPRA requires ORR to "promptly" place detained a minor "in the least restrictive setting that is in the best interest of the child," generally, with "a suitable family member . . . ."); 8 U.S.C. § 1232(c)(2)(A).

That the least restrictive placement for Lucas is with Madelyn does not transform his TVPRA claim from one seeking lawful "placement" to one seeking "release." Indeed, Defendants appear to concede as much, noting that "this matter . . . is about the placement of the child" (Opp. at 13), and the Defendants' own authority suggests a habeas petition is *not* the proper vehicle to challenge Lucas's placement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 430 (2004) ("core" habeas rule is limited to "challenges to present physical confinement.").

Next, Lucas's First Claim for Relief alleges that Defendants "unreasonably and unnecessarily delay or refuse to release children . . . without affording detained minors or their proposed custodians a timely, prompt, or meaningful *opportunity to be heard* regarding such custodians' fitness." Complaint (ECF 1) ¶ 129 (emphasis added). This claim does *not* attack detention at all, but rather asserts that greater process is due, a claim that is clearly presentable in an action for equitable relief.

REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
No. 2:18-CV-05741-DMG-PLA

1    *Nettles v. Grounds*, 830 F.3d 922, 930 (9th Cir. 2016) (en banc) (§ 1983 "exclusive

2    vehicle for claims brought by state prisoners that are not within the core of habeas

3    corpus").[6]

4         But after enduring nearly half a year in ORR detention, the Court's ordering

5    ORR to provide Lucas more process now would be too little and too late. ORR has no

6    hearing procedure, and it cannot reasonably be expected to fashion one without

7    protracting Lucas's detention even more and causing him even greater irreparable

8

9    _____

   [6] In all events, the principles animating habeas relief as an exclusive remedy have no
10    application here.

   In *Preiser v. Rodriguez*, the Supreme Court held habeas corpus the exclusive means
11    by which a state prisoner may challenge "penal custody" in federal court. 411 U.S.

12    475, 479 (1973). The Court reasoned that allowing prisoners to sue under 42 U.S.C. §
   1983 would permit them to circumvent state court remedies, *id*. at 477 ("if a remedy
13    under the Civil Rights Act is available, a plaintiff need not first seek redress in a state

14    forum"), thereby raising thorny questions of "federal-state comity." *Id*. at 477, 491.
   Finally, the Court reasoned, Congress's enacting the specific habeas statute
15    manifested an intent to foreclose recourse to the more general civil rights statute. *Id*.

16    at 489-90.

17    The *Presier* court's concerns are entirely inapposite here: Lucas has never been
   convicted of or sentenced for any crime; no state actor is involved in this action; and
18    Lucas has no alternative state or federal remedies by which he might cure breaches of

19    the *Flores* consent decree, violations of the TVPRA, or ORR's denial of his due
   process rights.
20

21    28 U.S.C. §§ 2255 and 2241 posit the habeas statutory scheme for federal prisoners.
   Section 2255, the primary federal habeas statute, is available only to a federal
22    "prisoner in custody under sentence of a court established by Act of Congress . . ." 28

23    U.S.C. § 2255. "Generally, motions to contest the legality of a sentence must be filed
   under § 2255 in the sentencing court, while petitions that challenge the manner,
24    location, or conditions of a sentence's execution must be brought pursuant to § 2241
   in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000).
25

26    Although aliens may challenge detention via habeas corpus provided they are not
   under a final order of removal, *see, e.g., Nadarajah v. Gonzales*, 443 F.3d 1069, 1076
27    (9th Cir. 2006), nothing requires they do so. *E.g., Saravia v. Sessions*, 280 F. Supp.
   3d 1168, 1193 (N.D. Cal. 2017) (finding "pendent venue" over equitable claims to
28    preliminarily enjoin ORR against detaining juveniles without hearing).

injury. The Court may and should preliminarily enjoin ORR to place Lucas with Madelyn as a remedy for the injury ORR's opaque process has already caused. *Cf. Beltran v. Cardall*, 222 F. Supp. 3d 476, 489 (E.D. Va. 2016) (due process challenge to ORR's refusing to release child; court declines to delineate process due and orders immediate release instead).

Nothing requires Lucas to seek the relief this motion requests by habeas corpus alone.[7]

### C. ORR's refusing to release Lucas to Madelyn is final agency action subject to judicial review, as is its failure to reunify Lucas with his family for nearly half a year.

Defendants appear to concede the Court would have jurisdiction under the Administrative Procedure Act ("APA") to hold Lucas's placement violative of the TVPRA were ORR to have made a final decision against placing him with his family. Opp. at 12-13. But, Defendants contend, there is no final agency action subject to APA review because ORR might yet place Lucas with his brother. Opp. at 11-14.

---

[7] Even assuming, *arguendo*, habeas corpus were Lucas's exclusive means of challenging his placement, this motion would be properly cognizable in this Court. Plaintiffs' complaint alleges jurisdiction under the habeas corpus statute (ECF 1 ¶ 6), the Supreme Court has never held that the "immediate custodian" rules applies in immigration cases, *Padilla, supra*, 542 U.S. at 435 n.8, and the weight of authority in this circuit is that immigration detainees may bring habeas proceedings against the Attorney General or Secretary of Homeland Security. *See, e.g., Bracamontes-Reyes v. Sessions*, No. CV 18-01301-PHX-DLR (JZB), 2018 U.S. Dist. LEXIS 76756, at *4-5 (D. Ariz. May 4, 2018) (no "Ninth Circuit authority precluding Petitioner from naming the Attorney General, the Secretary of Homeland Security, or the ICE Phoenix Field Office Director as Respondents . . ."); *Rivera v. Holder*, 307 F.R.D. 539, 544 n.1 (W.D. Wash. 2015) ("immediate custodian" rule inapposite in immigration detention); *Bogarin-Flores v. Napolitano*, 2012 U.S. Dist. LEXIS 112964, 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012) (Attorney General and Secretary of Homeland Security proper respondents in § 2241 petition seeking release from immigration-related detention).

*A fortiori*, there is nothing improper in Plaintiffs' naming the Secretary of Health and Human Services and the Director of ORR as defendants and respondents in this action.

The uncontroverted evidence, however, demonstrates that ORR's decision against placing Lucas with Madelyn is *entirely* final. Madelyn R. ¶ 13 ("[T]he social worker told me that they had denied me [Lucas's] custody [and] nothing could be done, that the denial was a final decision."). And, of course, the consequences of that decision have already fallen concretely, disasterously, and with great finality on Lucas himself. *See post* and Supplemental Declaration of Dr. Amy Cohen, M.D., Aug. 16, 2018, Plaintiffs' Exhibit 63 filed herewith.

In any event, ORR has now had nearly half a year to screen alternate custodians, including Lucas's brother. Even assuming, *arguendo*, that ORR's decision declaring Madelyn unfit was not sufficiently final, its refusal to place Lucas with his family for months on end is itself reviewable under the APA.

Section 704 of the APA provides, "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. An agency has a duty to conclude a matter presented to it within a "reasonable time." 5 U.S.C. § 555(b). Accordingly, APA review includes "compel[ling] agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Brock v. Pierce County*, 476 U.S. 253, 260 n.7 (1986) (APA vests district courts with authority to "compel agency action unlawfully withheld or unreasonably delayed").

Although the APA does not itself confer subject matter jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 107 (1977), 28 U.S.C. § 1331 grants federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In combination with the APA and the TVPRA, 28 U.S.C. § 1331 vests the Court with full authority to compel ORR to place Lucas in the least restrictive setting consistent with his best interests and to do so without further delay. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099-1100 (D.C. Cir. 2003) ("[D]istrict court had jurisdiction under 28 U.S.C. § 1331 . . . to determine

whether the [agency] was in violation of § 555(b), and, if it was, to issue an appropriate order pursuant to § 706.").

Six factors are relevant to determining whether ORR's refusing to reunify Lucas with his family for nearly half a year is reasonable:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed."

*Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (citations omitted); *accord Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (adopting *Telecommunications Research & Action Center* test).

Examining these factors, ORR has now had nearly half a year to reunite Lucas with his family. It rejected Madelyn in April, 2018. ORR-DUCS Home Study Report, Apr. 12, 2018, PX at 21-64 ("Home Study"). Even if ORR reasonably did nothing to evaluate Lucas's brother before rejecting Madelyn, it has since had at least four months to do so. In standard child welfare practice, four months is an eternity. Decl. of James Owens, June 12, 2018, Exhibit 64, ¶ 6 ("Owens") (children's social workers typically "given one week to complete the assessment of a relative's home. The assessment covers both a physical assessment of the prospective home and the proposed caretaker.").

Next, the TVPRA directs that "an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be *promptly* placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A) (emphasis added). The TVPRA's "prompt" placement requirement mirrors the *Flores* Settlement's requirement that ORR release non-dangerous children to reputable custodians without unnecessary delay. *See Flores v. Sessions*, *supra*, 862 F.3d at 876. There is nothing prompt or reasonable about ORR's delay in placing Lucas with his family for nearly half a year.

Third, Defendants nowhere dispute that detention is *inherently* inimical to children's well-being. *See generally* B. Holman & J. Ziedenberg, *The Dangers of Detention: The Impact of Incarcerating Youth in Detention and Other Secure Facilities* (Justice Policy Institute, ed.), www.justicepolicy.org/images/upload/06-11_rep_dangersofdetention_jj.pdf.

Nor do they contest Lucas has (i) a fundamental right to freedom from detention, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); (ii) a substantial liberty interest in reunification with his sister, *Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1005 (N.D. Ill. 1989), or (iii) suffered grievously during ORR detention and will only suffer more with every day ORR confines him at the Shiloh psychiatric facility.

Finally, the Court's ordering ORR to place Lucas with his sister could not possibly prejudice "activities of a higher or competing priority."

In sum, the APA, the TVPRA, and 28 U.S.C. § 1331 fully empower this Court to order ORR to place Lucas in the least restrictive setting consistent with his best interests: that is, with Madelyn.

**D.    ORR has refused to place Lucas with Madelyn entirely without process or transparency— a *prima facie* denial of due process.**

Defendants next offer that "ORR has provided for a proper process that has revealed legitimate concerns." Opp. at 14. The assertion borders on frivolous.

In *Flores v. Sessions*, the court said the following about ORR's purported "proper process":

> ORR publishes a guide that describes its policies for determining whether to detain or release unaccompanied minors. These policies are posted on ORR's website but are not promulgated through any formal agency rule-making process and do not appear to have any binding effect. Under the policies, the initial decision about whether to release a minor to a particular sponsor is made by the local federal field specialist. If the field specialist denies release, the parent or legal guardian (but not, apparently, any other sponsor) has 30 days to request an appeal to the Assistant Secretary for Children and Families. . . . Perhaps most important, minors—as opposed to parents or guardians—can appeal a detention decision only "[i]f the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community."

862 F.3d at 871-72 (citations omitted).

Defendants nowhere refute Lucas's showing that ORR's declaring his sister unfit was *wholly* opaque and peremptory. Madelyn R. ¶ 13, *supra*.

Nor do Defendants deny that, viewed in light of accepted child welfare practices, ORR's "process" for declaring family members unfit—or more accurately, the utter lack of process—is singularly aberrational. Decl. of Cecilia Saco, PX at 138 ¶¶ 12, 13 (ECF 40-9) (standard child welfare practice requires families receive "detailed, written explanation of why they are being denied custody of a dependent minor"; social workers "make recommendations" which "families are entitled to contest and rebut"; no state child protection agency "empowered to issue final, unreviewable decisions regarding the suitability of family members to care for dependent children"); *accord*, National Council of Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases* 30 (1995), www.ncjfcj.org/sites/default/files/ resguide_0.pdf; *see also* Owens, *supra*, ¶ 3

REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:18-CV-05741-DMG-PLA

1   (involuntary placement in psychiatric facility "impermissible without a hearing."); *id*.

2   ¶ 8 (extended detention without trial of children not adjudicated delinquent

3   "inconsistent with child welfare practice requiring that children be placed in least

4   restrictive most family like setting.").

5         Critically, ORR never denies that Lucas has (i) a fundamental right to freedom

6   from detention, *Zadvydas, supra;* (ii) a substantial liberty interest in family unity and

7   association, *Aristotle P., supra*; (iii) a right to freedom from involuntary civil

8   committment without trial or proof of dangerousness, *O'Connor v. Donaldson,* 422

9   U.S. 563, 575 (1975); (iv) a right to placement in the least restrictive setting

10  consistent with his best interests, 8 U.S.C. § 1232(c)(2)(A); and (v) a right to release

11  to qualified custodians "without unnecessary delay," *Flores* Settlement ¶ 14.

12        Finally, applying the test for due process, *see Mathews v. Eldridge*, 424 U.S.

13  319 (1976), by evaluating: (1) the private interest that will be affected by the official

14  action; (2) the risk of an erroneous deprivation of such interest through the

15  procedures used, and the probably value, if any, of additional procedural safeguards;

16  and (3) the Government's interest, it is clear that ORR's process exhibits substantial

17  deficiencies.

18        Lucas's above-enumerated interests are clearly substantial. ORR's opaque,

19  outlier "process" for summarily disqualifying custodians poses a palpable risk of

20  error. *See e.g. Beltran*, 222 F. Supp. 3d. at 485 (deficiencies in ORR's procedures in

21  determining custodian fitness were exacerbated by putting onus on custodian to

22  change the agency's mind without any requiremetn that ORR justify its deprivation of

23  fundamental rights). And athough the Government has a legitimate interest in

24  protecting children, it has no interest in locking Lucas in a psychiatric facility without

25  notice or opportunity to be heard. ORR's sole interest in denying greater fairness and

26  transparency is its own administrative convenience, nothing more.

27        The remainder of Defendants' opposition to Lucas's showing that ORR has

28  denied him due process boils down to a claim that ORR's concerns about Madelyn's

fitness are valid. They are not. *See* Memorandum in Support of Preliminary Injunction (ECF 29-1) at 5-10.

To the contrary, ORR's own home study is remarkably positive regarding Madelyn's fitness to care for Lucas and her understanding of the need to provide for his mental health needs. Critically, the ORR investigator concluded that Madelyn "is able to provide an appropriate home environment for [Lucas]." Home Study, *supra*, at 49.[8]

---

[8] As discussed in Plaintiff's opening memorandum, ORR declared Madelyn unfit for two, and only two, reasons: (1) an adult male who might be living in Madelyn's home had not appeared for fingerprinting; and (2) Madelyn was insufficiently keen to provide Lucas mental health care following release. Home Study, *supra*, PX at 42, 62.

By way of *post hoc* rationalization, Defendants now offer a "Significant Incident Report" ("SIR") from July 2018, alleging a statement by Lucas that Madelyn "would hit him" in Guatemala. Defendants' Exhibit 50. Yet according to the SIR, Lucas also affirmed that "his relationship with his sister was fine," and that as far as Madelyn's hitting him *now* is concerned "he would be fine because he is now grown [and] there is no danger." *Id.* There are multiple reasons the Court should reject ORR's eleventh hour attempt to impugn Madelyn's fitness.

First, Defendants offer no actual evidence that Madelyn ever hit Lucas, or even that Lucas said she did. The individual to whom Lucas purportedly made his statement is identified in the SIR only by the initials, "GDIT." Defendants offer no declaration from "GDIT" or anyone else attesting to the truth of statements appearing in the SIR, nor anything authenticating of the SIR itself. Lucas's purported statements in the SIR are inadmissible double hearsay. *See Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973).

Next, ORR's new allegation is wholly inconsistent with its own home study, which praises Madelyn's *current* parenting skills, including her approach to discipline. Home Study, *supra*, PX at 35 (Madelyn "ensured her children were properly disciplined [and] used removal or privileges . . . and communication (i.e. advice) as forms of discipline."); 37 (Madelyn "currently disciplines her daughter" by communicating "about bad and good behavior and removes privileges such as toys."); PX 54 (same); 38 (Madelyn reported "understanding these types of [physical] abuse can traumatize a child"); 39 (Madelyn "will inform [Lucas] of her discipline methods . . . in order for [him] to be aware he will not be abused in her care."); 57 ("The sponsor is aware of [Lucas's] history of physical abuse and identified appropriate

Yet even assuming, *arguendo*, that Madelyn might not be an ideal custodian because she believes months of detention have contributed to Lucas's present psychological distress, or because some unfingerprinted adult might be living in her house, ORR's opposition to placing Lucas with her remains fatally counterfactual. If ORR is actually protecting Lucas, it must refute Plaintiff's showing that the conditions and treatment Lucas has endured at Shiloh are wholly inimical to his safety and well-being. Defendants do not even attempt this showing, and the evidence that Lucas is suffering irreparably in ORR custody is uncontroverted.

In her psychiactric evaluation of Lucas, and in her supplemental declaration filed herewith, Dr. Amy Cohen enumerates the myriad ways in which ORR's treatment of Lucas has worsened his psychological and physical health and well-being. Supplemental Declaration of Dr. Amy Cohen, M.D., Aug. 16, 2018, Plaintiffs' Exhibit 63 filed herewith. She points out that when ORR purportedly "hospitalized" him, it "simply confined Lucas in a room of their emergency department of a full seven days without any treatment or evaluation whatsoever. They never transferred him to a psychiatric treatment setting at all." *Id*. at ¶ 8. Dr. Cohen concludes with this indictment of the "care" Lucas is receiving in ORR custody:

> ORR's delivery of mental health care to Lucas has *failed to meet acceptable*
> *standards of competency,* and in fact appears to have *harmed him*. Chief among
> ORR's failings: misdiagnosing his mental health condition, administration of
> medication for inaccurate diagnosis and with failure to follow response to
> identified symptoms, failure to obtain informed consent from either Lucas or
> his designated family members, absence of any trauma-informed treatment,

disciplining methods . . ."); 60 ("The sponsor demonstrated having parental experience and motivation to care for" Lucas); 32 (Madelyn "aware physical abuse (i.e. hitting) is against the law [and] if physical abuse is occurring the government or a social worker will take away the child.").

Finally, both the SIR and the home study concur that Lucas *now* "feels safe, comfortable, and content to reunify" with Madelyn. *Id*., PX at 27.

*failure to take into account the deleterious effects of prolonged detention and family separation on Lucas's psychology/diagnosis*, and seizing upon his willingness to disclose his feelings and the reasons for those feelings to *deny him reunification with his family, transfer him to Shiloh and prolong even more the detention which is precipitating so much of his suffering*.

*Id*. at ¶ 10 (emphasis added).

Dr. Cohen declares that she recently spoke to Lucas again. As compared to a month ago, Dr. Cohen reports, Lucas is now "*far more isolated, untrusting and hopeless* . . . He feels completely alone, experiencing no sense of affiliation with anyone at Shiloh. *He has been forbidden to speak with his sister* and is deeply despondent about this. . . ." *Id*. at ¶ 14. She concludes that Lucas's "ongoing incarceration and isolation from his family is responsible for his deterioration and is truly placing him at *significantly greater risk*." *Id*. at ¶ 14 (emphasis supplied).

In sum, the uncontroverted record establishes that ORR's confining Lucas has and continues to cause him grave *actual* injury. Memorandum in Support of Preliminary Injunction (ECF 29-1) at 11-16. Speculative concerns about Madelyn's possible unfitness simply pale in comparison.

### III. WHETHER PROHIBITORY OR MANDATORY, LUCAS SATISFIES ALL REQUIREMENTS FOR ISSUANCE OF PRELIMINARY INJUNCTION.

Defendants lastly argue that Lucas's seeking to reunify with his family requires a mandatory injunction, and the facts and law must therefore clearly favor his position. Opp. at 6-7.[9] The short answer is they do.

---

[9] For the time being, the Ninth Circuit applies separate standards for injunctions depending on whether they are prohibitory, *i.e.*, aimed at preventing future conduct, or mandatory, *i.e.*, "they go beyond 'maintaining the status quo[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017). The Court of Appeals acknowledges that application of these different standards "is controversial" and has "'led to distinctions that are more semantic than substantive.'" *Id*. at 997-98 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)).

In *Ms. L. v. United States Immigration & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), the plaintiffs challenged ICE's practice of separating migrant families and placing their children in ORR custody. *Id.* at 1137-38. Plaintiffs requested classwide injunctive relief prohibiting blanket family separations going forward and requiring the Government to reunify separated families unless the parent is unfit or dangerous. *Id.* at 1137. As here, ICE argued in *Ms. L.* that the plaintiffs were required to meet the heightened standard for a mandatory injunction before the court could order it to reunify separated families. *Id.* at 1141 n.8. The court considered *only* whether the plaintiffs had a fair chance of prevailing on their claim that ICE's separating their families violated their substantive due process right to family integrity, *id.* at 1142, yet held the plaintiffs entitled to a mandatory preliminary injunction requiring ICE to reunify their families. *Id.* at 1141 n.8.

Similarly, in *Saravia, supra*, the court preliminarily enjoined ICE against re-arresting children ORR had previously released without affording them a hearing at which the children could contest cause for re-arrest. 280 F. Supp. 3d at 1205-06. The court considered *only* whether the plaintiff would likely prevail on a procedural due process claim. Again, the court held the plaintiff entitled to preliminary relief:

---

The instant motion is no exception. On the one hand, ORR is confining Lucas at Shiloh. On the other, this motion aims to prevent *future* injury: *i.e.*, ORR's prolonging Lucas's confinement, thereby depriving him of personal liberty, family association, and the least restrictive placement consistent with his best interests, and subjecting him to even greater irreparable injury in ORR's substandard psychiatric facility.

In short, the only way to prevent *future* unlawful conduct and the infliction of *future* irreparable injury is to enjoin the status quo. *Hernandez v. Sessions*, *supra*, at 998-99 (requiring "government conduct new bond hearings" can "be understood as merely prohibiting the government from continuing to detain individuals subject to bond amounts set through unconstitutional procedures").

As argued in the text, the distinction between mandatory and prohibitory injunctions is beside the point: Plaintiff qualifies for relief under either standard, whatever difference there may be between them.

1   Even assuming that implementation of the hearing process described above

2   constitutes a "mandatory" rather than a "prohibitory" injunction, A.H. is

3   entitled to the relief he seeks. . . . The detention of minors without due process

4   results in "extreme or very serious damage" to this vulnerable population that

5   is not "capable of compensation in damages."

6   *Id*. at 1201.

7   The case at bar is indistinguishable from *Ms. L.* and *Saravia*. If anything,

8   Lucas's case is even stronger, drawing force not only from the Due Process Clause,

9   but also from a specific statute—the TVPRA—*and* a consent decree—the *Flores*

10  Settlement—both of which make it *more* likely Lucas will prevail than were the

11  plaintiffs in *Ms. L.* or *Saravia*. Neither court shrunk from issuing "mandatory"

12  preliminary injunctions to save children from irreparable harm, and neither should

13  this Court.[10]

14

15

16  _____

17  [10] Defendants briefly complain that the Court's issuing a preliminary injunction
    would grant Lucas "the very relief he hopes to obtain through this entire action . . . ."
18  Opp. at 17. That is clearly not the case.

19  The relief Plaintiffs seek in this action is almost entirely *procedural*: that ORR must
    afford children greater transparency and fairness before declaring their available
20  custodians unfit, dispatching them to secure facilities, or forcing them to consume
    psychotropic drugs. Obviously, the Court's ordering ORR to place Lucas with
21  Madelyn would grant none of this relief.
22
    And even with respect to alterning Lucas's placement, nothing in the *Flores*
23  Settlement, at least, would prevent ORR from placing Lucas elsewhere were Madelyn
    actually to prove an unfit custodian. Paragraph 16 of the *Flores* Settlement provides:
24  "The INS may terminate the custody arrangements and assume legal custody of any
    minor whose custodian fails to comply with the agreement required under Paragraph
25  15." Paragraph 15 requires, *inter alia*, that a custodian agree to "provide for the
    minor's physical, mental, and financial well-being . . . ." Defendants have not shied
26  away from re-arresting class members in the past. *Saravia*, *supra*, 280 F. Supp. 3d at
    1177-79, 1202-03.
27

28

**IV.    CONCLUSION**

For the foregoing reasons, the Court should grant this motion and preliminarily enjoin ORR from continuing to detain Plaintiff Lucas in lieu of placement with Madelyn.

Dated: August 17, 2018.                           CARLOS HOLGUÍN
                                                                   Center for Human Rights &
                                                                   Constitutional Law

                                                                   HOLLY COOPER
                                                                   CARTER WHITE
                                                                   University of California Davis School of
                                                                   Law

                                                                   LEECIA WELCH
                                                                   NEHA DESAI
                                                                   POONAM JUNEJA
                                                                   CRYSTAL ADAMS
                                                                   National Center for Youth Law

                                                                   /s/ *Carlos Holguín*
                                                                   Carlos Holguín

                                                                   *One of the Attorneys for Plaintiffs*