# Exhibit 33

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Exhibit 33
Page 275

I, Candida Rugama, declare as follows:

1. This declaration is based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about these facts.

2. I write this declaration to support the release of ▆▆▆▆▆▆▆▆▆▆ ("▆▆▆▆▆") from the Office of Refugee Resettlement ("ORR") to the care and custody of her grandfather, ▆▆▆▆▆▆▆▆▆▆ ("Mr. ▆▆▆▆▆").

3. I have a Bachelor's Degree in Psychology and a Master's Degree in Social Work. I have a total of twenty-five years working with marginalized communities and undocumented families. I have vast knowledge related to working with children and families that have endured trauma, abuse, and neglect. I worked at San Mateo County Children and Family Services for a period of nineteen years as a direct social worker. As a direct social worker, my roles included Family Support Officer III, Social Worker III, and Team Decision Making Facilitator. During my time at San Mateo Country Children and Family Services, I specifically worked with adolescents and undocumented families as well as on Special Immigration Status (SJIS) cases. During my tenure as a Children and Families Social Worker, I received extensive training related to assessment, trauma, cultural humility and working with diverse populations.

4. During my tenure with Children and Family Services of San Mateo County, I investigated hundreds of reports of child abuse and neglect. Such investigations typically included evaluating children's relatives and their homes in an effort to determine whether a child could be safely placed with family, rather than in taxpayer-funded foster or group homes.

5. I am a native Spanish-speaker. I am bicultural as well, and I was accordingly tasked with investigating many monolingual Spanish-speaking families.

6. I have been asked to give an opinion regarding the suitability of Mr. ▆▆▆▆▆ to care for his granddaughter, ▆▆▆▆▆, whom I understand is currently being detained by

ORR at St. Michael's Home for Children in Houston, Texas. I have reviewed ORR's home study report of Mr. ▇. This report was provided by the National Center for Youth Law, representing the plaintiffs in *Lucas R. v. Azar*. On July 17, 2018, I visited the home of Mr. ▇ in Oakland, California. I spoke with Mr. ▇ at length, and, following standard child welfare practices and standards, evaluated his suitability to serve as a custodian for ▇. Based on my observations of Mr. ▇ home and our extensive conversations, it is my professional opinion that ▇ should be released to him immediately. I strongly disagree with the conclusions in ORR's home study and address each of the concerns raised by ORR below.

7. Mr. ▇ is a humble, gentle man who has survived many difficulties in his life. Despite these difficulties, he has demonstrated tremendous resilience and built a life for himself in the United States. Mr. ▇ received limited formal education in El Salvador and experiences some difficulty in expressing himself verbally. At first impression, this could seem like Mr. ▇ is not knowledgeable about certain things or does not care to answer certain questions. However, as I engaged with Mr. ▇ throughout the course of our interview and asked many clarifying questions, it soon became clear that Mr. ▇ is sincerely committed to caring for ▇ and is willing to provide her with whatever supports she needs to succeed. Mr. ▇ loves ▇ and is deeply concerned with her well-being.

8. Mr. ▇ is highly motivated to care for ▇ and seek the services that he needs to support her overall well-being. While Mr. ▇ played a limited role in parenting his own three children when they were young, he has since developed strong relationships with each of his children. He is in regular contact with each of his three children. Mr. ▇ told me that he has already driven to the San Francisco Women's Building, a local community resource center, to research supportive services for ▇. Mr. ▇ is also willing to attend parenting classes and any other related classes in order to learn how to best support ▇ after release. During the interview, I provided Mr. ▇ with a list of community centers in Oakland. Later that same day,

1  Mr. ▆▆▆ drove to Casa del Sol community resource center and spoke with a
2  community worker regarding parenting classes and therapy for himself and ▆▆▆.
3  One of the most important factors in determining whether a potential custodian is an
4  appropriate caregiver for a child is whether the potential custodian is motivated and
5  willing to seek out services that will support the child. Mr. ▆▆▆ has demonstrated that
6  he is motivated and will seek out services to support ▆▆▆.

   9. Mr. ▆▆▆ is fully aware that parenting ▆▆▆ may come with challenges, but
it is clear that he has the capacity and support that he needs to effectively support
▆▆▆. Mr. ▆▆▆ recognizes that ▆▆▆ transition to the United States has been
traumatic and he hopes to help her acclimate. Mr. ▆▆▆ told me that when he is able to
talk to ▆▆▆ on the phone, he offers her hope and encouragement and tells her to
remain patient while he does what he can to have her released to his custody.

   10. Mr. ▆▆▆ is committed to cultivating the relational supports that ▆▆▆ needs
to thrive. Mr. ▆▆▆ friend and employer, Ms. ▆▆▆, has stated that she is willing
to be a source of support for ▆▆▆ as well. I spoke with Ms. ▆▆▆ directly, and she
described Mr. ▆▆▆ as a "hard worker, loyal, and a good friend to the family." Ms.
▆▆▆ told me that she went to get her fingerprints taken as a gesture of her commitment to
both ▆▆▆ and Mr. ▆▆▆. Furthermore, as Mr. ▆▆▆ and ▆▆▆ engage in
community supports such as classes and counseling, they will further widen their
community support network.

   11. Mr. ▆▆▆ has the commitment and capacity to support ▆▆▆ mental health
needs. Thus far, Mr. ▆▆▆ has not been given the opportunity to be part of ▆▆▆
mental health care and therefore has not been educated on her specific needs or diagnosis.
Without this involvement and information, it is unfair to state that Mr. ▆▆▆ is "unable
to articulate details of her diagnosis or potential issues and voices unrealistic
expectations." In my experience, even parents who are well-informed and educated may
still have difficulty conceptualizing the extent of their child's mental health condition and
deciphering technical terms. The most important protective factor is whether or not the

1  caregiver is willing to consistently access appropriate supports for their child and educate
2  themselves on their child's needs.
3      12. Mr. ▮ understands that ▮ has had a history of abuse and trauma and
4  knows that she needs specialized services and supports. He is aware that she has been
5  placed on psychotropic medications. As stated above, Mr. ▮ has sought out services
6  in his community and believes that the support of doctors and therapists will be very
7  important in helping ▮ to transition. Furthermore, Mr. ▮ is willing and
8  available to transport ▮ to appointments after school. Mr. ▮ has
9  demonstrated that he is willing and able to seek out and consistently access mental health
10 services for ▮ and education for himself.
11     13. Mr. ▮ is committed to supporting ▮ financially and has the means to
12 do so.  He has provided ▮ with financial support while she has been detained, and
13 has also routinely sent money back home to family in El Salvador. Mr. ▮ also has
14 the skills and ability to secure more hours in his current employment or obtain an
15 additional part-time job if necessary. He states that he will be able to support ▮
16 needs, and is happy to work more hours if he needs to do so.
17     14. Mr. ▮ has a stable and predictable work schedule. Mr. ▮ wakes up at
18 4:00 am to leave for work, where he picks up prepared food and delivers it until 7:00 am.
19 He then returns home and has several hours free before he returns to work from 11:30 am
20 until 2:30 pm. He has a strong relationship with his employer, Ms. ▮, and has the
21 ability to be flexible with his schedule when needed. Mr. ▮ told me that his
22 schedule will allow him to wake ▮ up and transport her to school each morning,
23 as well as pick her up from school in the afternoon. Furthermore, Mr. ▮ stated that
24 his availability in the afternoon means that he will be able to take ▮ to any
25 appointments that are helpful for her mental health and well-being.
26     15. Mr. ▮ health is stable. Mr. ▮ has been diagnosed with Chronic
27 Lymphotic Leukemia and has been consistently obtaining treatment for his condition.
28 Thus far, he has received five chemotherapy treatments and will receive one more before

Declaration of Candida Rugama

4

Exhibit 33
Page 279

finishing treatment. He told me that he is recovering well. Mr. ▇ has proactively identified a person to take care of ▇ should his health deteriorate. Ms. ▇, Mr. ▇ employer, has agreed to care for ▇ and support her.

16. Mr. ▇ has a stable and structured home environment. Mr. ▇ moved to a new home in order to have a separate room for ▇ y. Mr. ▇ has bought ▇ a new twin bed, bedding, and a dresser for her room. Mr. ▇ kitchen does not contain many dishes or cooking implements because he is employed as a food cart vendor and primarily eats at work. Mr. ▇ told me that he would be happy to buy dishes and have more food available at home for ▇ if she were to come and live with him. Additionally, while Mr. ▇ does have some flexibility in his work schedule, it is typically very consistent (4:00 – 7:00 am, 11:30 am – 2:30 pm). Furthermore, Mr. ▇ is very supportive of ▇ obtaining an education and states that he would accompany her to school every morning and pick her up from school every afternoon. Mr. ▇ and ▇ have a strong relationship. When Mr. ▇ and ▇ both lived in El Salvador, they spent a significant amount of time together. When Mr. ▇ moved to the United States, they kept in regular communication via weekly telephone calls and Mr. ▇ provided ▇ and her family with financial support. Since ▇ has been detained by ORR, she has continued to keep in regular contact with Mr. ▇ via telephone calls. Furthermore, ▇ mother, who lives in El Salvador, has officially designated Mr. ▇ as the adult she wishes to care for ▇

17. While Mr. ▇ acknowledges that he once struggled with alcoholism, he has worked hard to become sober. He has been sober for over 15 years, and credits his strong faith in God for helping him to overcome this addiction. Given this extensive period of sobriety, I do not consider Mr. ▇ prior substance use as concern or risk factor to ▇ well-being. In addition, Mr. ▇ has been fully cleared of past criminal charges for which he was wrongfully incarcerated for two years in El Salvador. ORR's Home Study confirms that Mr. ▇ "has provided documentation to support his

Declaration of Candida Rugama

5

Exhibit 33
Page 280

clearance of any criminal charges." Furthermore, Mr. ▮ left El Salvador years ago and does not have any association with individuals involved in criminal activity.

18. Mr. ▮ has the capacity to care for ▮ needs, and has demonstrated the willingness and motivation to seek out additional supports for ▮ mental health. He understands ▮ has experienced traumatic events throughout her life and as a result requires mental health supports. He assured me that if ▮ were to be released to him, he will provide her with transportation to mental health appointments, educate himself about the possible issues facing ▮, and get the appropriate services for both of them. Children need a stable environment in which to thrive, especially children who have certain mental health needs. In my opinion, Mr. ▮ will sufficiently support ▮ mental health needs. He has a strong connection with ▮ and sincerely wishes to provide her with care and comfort. I strongly recommend that ▮ be placed with Mr. ▮ immediately.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 9th day of August, 2018, at San Francisco, California.

*Candida Rugama*

CANDIDA RUGAMA