CHAD A. READLER
Acting Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BRIENA L. STRIPPOLI
Senior Litigation Counsel
BENJAMIN MARK MOSS
Trial Attorney
MARINA STEVENSON
Trial Attorney
ANDREW B. INSENGA
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
    P.O. Box 878
    Ben Franklin Station
    Washington, DC 20044
    Phone:  (202) 305-7816
    Fax:  (202) 616-4950
    andrew.insenga@usdoj.gov
Attorneys for DEFENDANTS

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R., *et al.*,<br>Plaintiffs,<br><br>v.<br><br>ALEX AZAR, Secretary of U.S. Dep't of Health and Human Services, *et al.*,<br>Defendants.<br>_____ | Case No.: 2:18-CV-05741-DMG-PLA<br><br>OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION RE: PLAINTIFF GABRIELA N.<br><br>Hearing on Motion:<br>September 21, 2018 at 9:30am<br><br>Honorable Dolly Gee |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................1

RELEVANT FACTS FOR GABRIELA N. ................................................................2

ARGUMENT ...............................................................................................................4

   I.   The Motion fails to demonstrate a likelihood of success ...............................5

      A.   This District is the improper venue for any of the
           complaints ...........................................................................................6

      B.   This action is duplicative of the ongoing Flores litigation,
           and Plaintiffs cannot re-negotiate the settlement in a
           separate lawsuit ................................................................................11

      C.   The Court lacks statutory authority under the
           Flores Settlement, or habeas to grant placement and
           release to a particular sponsor ........................................................13

      D.   Due Process concerns met: ORR's interest is heightened .................19

   II. The final three factors of an injunction weigh against requiring
      ORR to release a child to a custodian whose actions raise legitimate
      concerns ...........................................................................................................21

CONCLUSION .........................................................................................................24

CERTIFICATE OF SERVICE ..................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) ...........................................................................12

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970)...........................................................................................22

*Anderson v. United States*,
  612 F.3d 1112 (9th Cir. 1979) ...........................................................................5

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
  729 F.3d 937, 944 (9th Cir. 2013) .....................................................................4

*Bennett v. Spear*,
  520 U.S. 154 (1997)...........................................................................................17

*Bogarin-Flores v. Napolitano*,
  No. 12-CV-0399, 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012).......................10

*Carbo v. United States*,
  364 U.S. 611 (1961)............................................................................................8

*Dahl v. HEM Pharms. Corp.*,
  7 F.3d 1399 (9th Cir. 1993) ...........................................................................4, 5

*Flores v. Johnson*,
  212 F. Supp. 3d 864 (C.D. Cal. 2015) ..............................................................14

*Flores v. Lynch*,
  828 F.3d 907 (9th Cir. 2016) ............................................................................14

*Flores v. Lynch*,
  212 F. Supp. 3d. 907 (C.D. Cal. 2015 ..............................................................14

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .............................................................................4

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)...................................................................................14

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952)...................................................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)........................................................................... .15, 16

*Kontrick v. Ryan*,
   540 U.S. 443 (2004)...................................................................................14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) .......................................................................5

*Matthews v. Eldridge*,
   424 U.S. 319 (1976)...................................................................................19

*Mazurek v. Armstrong*,
   529 U.S. 968 (1997).....................................................................................4

*Nat'l Ass'n of Home Builders v. EPA*,
   675 F. Supp. 2d 173 (D.D.C. 2009)..............................................................8

*Nken v. Holder*,
   556 U.S. 418 (2009)...................................................................................21

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004)......................................................................................17

*Park Village Apartment Tenants Association v. Foster*,
   636 F.3d 1150 (9th Cir. 2011) ...................................................................21

*Pit River Home and Agric. Coop. Ass'n v. United States*,
   30 F.3d 1088 (9th Cir. 1994) .....................................................................16

*Plack v. Cypress Semiconductor*,
   864 F. Supp. 957 (N.D. Cal. 1994).............................................................12

*Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013) ..................................................................4

*Reuben H. Donnelley Corp. v. F.T.C.*,
    580 F.2d 264 (7th Cir. 1978) ..............................................................9, 10

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004).................................................................. *passim*

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) .....................................8, 9, 18

*Stanley v. University of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) .............................................................22, 23

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)...............................................................................22

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008)...................................................................................4

## **STATUTES**

5 U.S.C. § 706(1) ................................................................................17

5 U.S.C. § 706(2) ................................................................................17

28 U.S.C. § 124(b) ...............................................................................9

28 U.S.C. § 1331 .............................................................................13, 16

28 U.S.C. § 1391(e)(1).........................................................................10

28 U.S.C. § 2241 ..................................................................................13

28 U.S.C. § 2241(a) ...........................................................................8, 9

# **INTRODUCTION**

The government opposes Plaintiff Gabriela N.'s Motion for Preliminary Injunction, requesting release.  Mot, ECF No. 48-1.  The motion—like all of Plaintiffs' filings—fails to meaningfully address the basic questions about this lawsuit.  The motion fails to show a likelihood of success because this District is the inappropriate venue for their complaints.  To the extent this is an action to enforce or re-negotiate the *Flores* Settlement, this action is duplicative.  The *Flores* settlement is neither a grant of jurisdiction nor a cause of action outside of that lawsuit.  Because this motion is effectively a habeas petition, the Southern District of Texas—where both Gabriela and the immediate custodian are located—is the only court with authority to issue the writ and grant appropriate relief.  The procedural due process concerns fail to appreciate the government's interest in ensuring the child is released to an appropriate sponsor.  Thus, Plaintiffs failed to demonstrate a likelihood of success.

Finally, the three final factors weigh against granting an injunction ordering mandatory release:  The Office of Refugee Resettlement (ORR) has legitimate concerns about the suitability of Gabriela's grandfather as her sponsor, including a history of alcohol abuse, and health and work concerns that may impact his ability to provide for Gabriela's extensive mental health needs.  Notably, Gabriela's child advocate and her immigration attorney—the individuals whose sole interest is

Gabriela—agrees that her proposed placement in the unaccompanied refugee minor program is in her best interest.

### RELEVANT FACTS FOR GABRIELA N.

Plaintiff Gabriela is a seventeen-year-old native and citizen of El Salvador. Def. Exhibit 62, Declaration of James S. de la Cruz, at ¶ 2.  Gabriela was abused in El Salvador by her mother and stepfather, and she came to the United States as a result.  Def. Ex. 62 at ¶ 7.  She arrived in the United States as an unaccompanied alien child and is currently in the custody of ORR at Catholic Charities St. Michael's Home for Children in Houston, Texas.  Def. Ex. 62 at ¶ 2.  Due to suicidal ideation, she had been "stepped up" for a period to the Shiloh Residential Treatment Center.  Def. Ex. 62 at ¶ 4.  However, after her psychiatric symptoms improved sufficiently so that she stabilized, she was "stepped down" to St. Michael's.  Def. Ex. 62 at ¶ 4.

Gabriela's grandfather, Isaac N., has applied to be her custodian in the United States.  Def. Ex. 62 at ¶ 5.  Because of Gabriela's mental health concerns, ORR conducted a home study in February 2018, and the case worker twice reached a negative conclusion on the placement.  Def. Ex. 62 at ¶ 6.  The case worker detailed a history of physical and verbal abuse by family members in her home country and of sexual abuse by gang members.  Def. Ex. 62 at ¶ 7.  Gabriela revealed a number of consensual sexual contacts with gang members, which may

indicate she is the victim of trafficking.  Def. Ex. 62 at ¶ 7.  Given the history of

abuse and mental health concerns, the case worker determined that Gabriela will

need significant support when released from ORR's custodianship.  Def. Ex. 62 at

¶ 7.  While the case worker found that the grandfather cared for his granddaughter,

the case worker found several concerns that have not been mitigated, including his:

- history of incarceration in El Salvador (though the grandfather asserts that he was exonerated of a kidnapping) and associations with convicted criminals;

- extensive period of alcohol abuse and a failure to provide proof of rehabilitation to support his claim of longstanding sobriety;

- ongoing cancer treatments with an unclear prognosis;

- lack of parenting experience, support system, and limited finances;

- questionable work schedule, which may adversely impact his ability to adequately serve as a sole caregiver and meet Gabriela's needs.

Def. Ex. 62 at ¶ 7-8.

Since declining placement with the grandfather, Gabriela's "unaccompanied

refugee minor program" (URM) application has been expedited.  Def. Ex. 62 at

¶ 10.  The ORR Federal Field Specialist, the child's advocate with the Young

Center for Immigrant Children's Rights in Houston, Texas, and her immigration

attorney are in agreement that Gabriela's release to such a URM placement prior to

her upcoming18th birthday would be in her best interests.  Def. Ex. 62 at ¶ 10.  The

1   hope is to find a placement close to where the grandfather lives to maintain that

2   family connection.  Def. Ex. 62 at ¶ 10.

3                                    **ARGUMENT**

4          The motion fails to demonstrate that a preliminary injunction should be

5   granted.  It is well-settled that a preliminary injunction is "an extraordinary and

6   drastic remedy" which "should not be granted unless the movant, by a clear

7   showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 529 U.S. 968,

8   972 (1997) (per curiam) (citations and quotations omitted).  This Court may issue a

9   preliminary injunction only when the movant demonstrates that:  (1) there is a

10  substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be

11  irreparably injured if an injunction is not granted; (3) an injunction will not

12  substantially injure the other party; and (4) the public interest will be furthered by

13  an injunction.  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

14  However, "when 'a plaintiff has failed to show the likelihood of success on the

15  merits, [the court] need not consider the remaining three [elements].'"  *Garcia v.*

16  *Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des*

17  *Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir.

18  2013)) (internal quotation marks omitted).

19         Because the function of a preliminary injunction is normally to maintain the

20  status quo, there is "heightened scrutiny" for mandatory preliminary injunctions.

*Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (Mandatory

injunctions are "subject to a heightened scrutiny and should not be issued unless

the facts and law clearly favor the moving party.").  "A mandatory injunction

orders a responsible party to take action," and thus "goes well beyond simply

maintaining the status quo."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH

& Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal citations and quotation marks

omitted).  Accordingly, "mandatory injunctions 'are not granted unless extreme or

very serious damage will result and are not issued in doubtful cases. . . ."  *Id.* at

879 (quoting *Anderson v. United States*, 612 F.3d 1112, 1115 (9th Cir. 1979)).

Because Plaintiffs are asking this Court to require the injunction, they are seeking

is a mandatory one and should subject to heightened scrutiny by this Court.

**I.      The Motion fails to demonstrate a likelihood of success.**

The motion filed by Gabriela fails to answer fundamental questions about

how she can ultimately succeed in this action.  This motion and the Plaintiffs'

filings as a whole fail to meaningfully explain how this District has venue over any

alleged cause of action.  The motion fails to explain why this action is not merely

duplicative of *Flores* or merely an inappropriately filed group of petitions for a

writ of habeas corpus.  The motion fails to explain how its individualized analysis

comports with this case supposedly being a class action.  The motion fails to

answer the most basic of legal questions:  Under what standard of review would

this Court ultimately be reviewing the unclear issues raised.  If Plaintiffs devolve

this action into a "battle of experts," then the governments concerns cannot simply

be ignored.  Ultimately, the motion's reliance on a complex and sympathetic

situation does not make up for its failure to address fundamental and threshold

legal questions.

### A.     This District is the improper venue for any of the complaints

The motion fails to demonstrate a likelihood of success, because this District

is the improper venue.  As discussed in Defendants' pending motion to dismiss,

this District is the improper venue for any of the complaints raised in this action.[1]

*See* Mot. to Dismiss, ECF No. 52.  The Complaint incorrectly asserts that this

Court is the proper "venue" under Paragraph 37 of the *Flores* Settlement for their

claims in this putative class action.  Compl. ¶ 8.  To the contrary, Paragraph 37

only allows a *Flores* class member to enforce in this Court any purported violation

of the provisions of *that* Settlement.  *Flores* Settlement ¶ 37.  That is not a

sweeping grant of venue.

Paragraph 24B of the *Flores* Settlement specifically addresses where proper

venue lies for individual claims.  It provides that a minor who disagrees with

aspects of their placement or treatment "may seek judicial review in any United

---

[1]     In order to avoid wasting the Court's time and resources, Defendants'
arguments on venue and on the duplicative nature of this action are truncated
versions of the arguments in the motion to dismiss.

States District Court *with jurisdiction and venue* over the matter to challenge that placement determination or to allege noncompliance." *Flores* Settlement ¶ 24B (emphasis added). In such a case, "the United States District Court is limited to entering an order solely affecting the individual claims of the minor bringing the action." *Id.* This Court is not the venue for the Plaintiffs' individual complaints in this case.

Aside from individual claims under Paragraph 24B which, as noted, does not apply in this case—any claim based on the *Flores* Settlement must be brought in that action. This Court is not the venue for *every* possible lawsuit by an individual member or multiple members of the existing *Flores* class. Plaintiffs must, therefore, demonstrate venue under an applicable statute.

Plaintiffs' superficial assertions of venue for any issue outside of *Flores* do not meet their burden to demonstrate that this District is the proper venue under the venue statute. Plaintiffs suggest that this District is the proper venue because "acts complained of herein occurred in this district, Defendants have offices in this district." Compl. ¶ 8. The Complaint fails to state what event—and what "substantial" event under the statute—occurred in this District. Otherwise, Federal defendants do not "reside" in every possible district or else there would be no need for the statue to establish venue through other means.

First, the Complaint's bald assertion that some "relevant" event occurred in this District lacks any support.  Compl. ¶ 8.  Plaintiffs challenge the purported "unlawful policies and practices" of Defendants.  Compl. ¶ 1.  However, they fail to illustrate how any "policy or practice" occurred in this District.  To the extent polices are challenged, an action is generally appropriate where the agency's decision-making activities took place, in the District of Columbia.  *See*, *e.g.*, *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) ("In cases brought under the APA, courts generally focus on where the decision making process occurred to determine where claims arose.").

To the extent that release under the habeas statute is sought, then no relevant event occurred in this District.  This motion is properly understood as a petition for a writ of habeas seeking release, and Gabriela must bring such an action in the Southern District of Texas.  "District courts are limited to granting habeas relief 'within their respective jurisdictions.'"  *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)); *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017) (following *Padilla* to find the official tasked with enforcing contract for UAC facilities was most "immediately responsible" official).  That means that a writ is "'issuable *only* in the district of confinement.'" 542 U.S. at 442 (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)) (emphasis added)).  Both Gabriela and her federal custodian are located in

Houston, Texas.  Mot., ECF No. 48-1 at 2-5 (outlining Gabriela's placement history, with *each* placement being somewhere within Texas).  The federal official having immediate control over that facility, and therefore "the ability to produce" Gabriela is located there.  *See* 28 U.S.C. §§ 124(b), 2241(a); *see also Padilla*, 542 U.S. at 443; *Saravia*, 280 F. Supp. 3d at 1188 ("In light of the interpretation of *Padilla*, . . . [plaintiffs] have not named the proper respondents to their habeas petitions—the Federal Field Specialist (or perhaps the directors of the regional offices) charged with overseeing the contract facilities in which they presently are held.").  Thus, under whatever theory dominates Plaintiffs' complaint, this District is not the site of any "substantial" event.

Second, the Defendants do not "reside" in this District.  A Federal government agency generally resides where it is headquartered:  Washington, DC.  *See Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978).  In addressing the expansion of the venue rules, the Seventh Circuit recognized that it cannot simply find venue simply because an agency has an office in that district:  "To hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [the other routes to venue] superfluous.  With the vast growth of the federal bureaucracy, federal agencies undoubtedly have offices in most, if not all, judicial districts.  *Id*.  The Seventh Circuit concluded that there "is nothing inequitable in limiting the residence of a federal agency to the

District of Columbia.  That has been the settled law for decades." *Id*.  In that case, the Seventh Circuit ultimately concluded that the local district was not the appropriate venue to sue the Federal Trade Commission, despite that Agency having a local office in the district.  *Id*. at 266-67.

Plaintiffs rely on Defendants having some unspecified office in this district.  Compl. ¶ 8.  That assertion is insufficient.  If that were the standard, then venue to challenge any agency policy would be appropriate in nearly every district in the United States.  Such a reading would render superfluous the other routes to venue: where plaintiffs reside or where pertinent events or omissions occurred.  *See* 28 U.S.C. § 1391(e)(1).

Plaintiffs' reply in the first preliminary injunction relies on cases in the immigration detention context.  To the extent they would again rely on these cases, they are irrelevant.  For example, in *Bogarin-Flores v. Napolitano*, the court found the head of DHS was the proper respondent when the warden of the detention facility could not order release.  No. 12-CV-0399, 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012).  But in this context, the agency officials, grantee facilities, or independent contractors are the ones attempting to find an appropriate sponsor placement for Gabriela.  Plaintiffs do not identify anyone in this District with that authority.  This argument does not, therefore, demonstrate proper venue.

Third, the institutional Plaintiffs—located in Los Angeles—do not provide this Court with venue as they are not members of the proposed class.  The filings here assert four possible classes of individuals, but all four classes contain the phrase "All children in the custody. . . ."  Compl. ¶ 70; Mot. for Class Cert., ECF No. 25, at 9.  These institutions are not "children."

If the class action were entirely new, then one of the above jurisdictions or Washington DC, would be a proper venue.  Otherwise, as discussed further below, as an action to enforce or re-negotiate the *Flores* Settlement, then the proper route is to raise such issues in that litigation.  *See* Compl. ¶ 2 (asserting this is "an adjunct and supplement to *enforce* their rights under the *Flores* Settlement") (emphasis added); Mot. for Class Cert., ECF No. 25, at 2 (plaintiffs "contend[] that the foregoing policies and practices violate the [*Flores*] settlement").  As this District is an improper venue for anything outside of *Flores*, Gabriela is unlikely to succeed on the merits of her request for release and placement.

## B.      This action is duplicative of the ongoing *Flores* litigation, and Plaintiffs cannot re-negotiate the settlement in a separate lawsuit

Plaintiffs seek to re-write or re-bargain the *Flores* Settlement by way of a separate cause of action alleging violations of *Flores*.  They cannot do so merely by filing a *different* litigation.

The Ninth Circuit has held that "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in

the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). "[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689. Two causes of action are considered the same if they "share a common transactional nucleus of facts" and rely on "substantially the same evidence." *Id.*

This putative class action is duplicative and inappropriate. Filing a "successive, identical class action qualifies as abusive regardless of whether class certification was granted or denied in an earlier case; both scenarios entail unnecessary duplication." *Plack v. Cypress Semiconductor*, 864 F. Supp. 957, 959 (N.D. Cal. 1994). "A class action identical in scope to an earlier certified class action is unnecessary because the class members' claims are already being litigated in the earlier action." *Id.* "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *Adams*, 487 F.3d at 692-93 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

Here, there is no doubt that the classes are the same. The filings repeatedly concede that the "named Plaintiffs are . . . members of the class protected under the

settlement in *Flores*."  Compl. ¶ 2; *see* Mot. for Class Cert., ECF No. 25, at 2 n.3, 5

n.5.  Moreover, as the Court is aware, Plaintiffs alleged very similar claims in the

*Flores* litigation.  *See Flores*, July 31, 2018 Order, ECF No. 409, at 1.  In many

ways, the *Flores* litigation has mooted many of the claims in this case, as this

Court granted extensive relief applicable to the *Flores* class pursuant to the *Flores*

Settlement.  *See id*. at 30-32.  Ultimately, this action repeats claims previously

raised or that could be raised in *Flores*, and the Court should dismiss this action as

duplicative.

### C.  The Court lacks statutory authority under the *Flores* Settlement, or habeas to grant placement and release to a particular sponsor

Outside of venue issues, the Court lacks authority to order release.  The only

relief Gabriela's motion for a preliminary injunction seeks is her immediate release

from ORR custody to be placed with her grandfather.  Mot., ECF No. 48-1 at 1.

Plaintiffs suggest that they merely want the Court to order "placement," but the

predicate for a placement is release.  Placement equals release.

The Complaint cites the *Flores* Settlement, 28 U.S.C. § 1331, and 28 U.S.C.

§ 2241 in support of their claim for jurisdiction.  *See* Compl. ¶ 6.  However, these

authorities do not create jurisdiction in this Court over the cause of action.  First,

the *Flores* Settlement does not separately grant this Court jurisdiction to entertain

this complaint.  The Court may not grant what amounts to a motion for a writ of

habeas corpus simply because the Plaintiff is a member of the *Flores* Class.  "Only

Congress may determine a lower federal court's subject-matter jurisdiction."

*Kontrick v. Ryan*, 540 U.S. 443, 452 (2004).  The Supreme Court and other courts

have recognized that "no action of the parties can confer subject-matter jurisdiction

upon a federal court."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,

456 U.S. 694, 702 (1982).  As the *Flores* Settlement is in the nature of contract, it

cannot separately give this Court jurisdiction to order the requested relief.  Indeed,

the Court has been clear in stating that individual claims are not appropriate for

resolution through enforcement of the settlement.  *See Flores v. Sessions,* No. CV-

85-4544 DMG, Docket Entry 470 at 5 (C.D. Cal. July 30, 2018).

Plaintiffs argue that "[t]his Court has repeatedly affirmed its jurisdiction to

enforce the Flores Settlement . . . ."  Mot., ECF No. 48-1 at 15 (citing *Flores v.*

*Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015), *clarified sub nom. Flores v. Lynch*,

212 F. Supp. 3d 907 (C.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*,

828 F.3d 898 (9th Cir. 2016)).  However, the Court in that decision was reviewing

a "motion to enforce the Agreement."  *Flores*, 212 F. Supp. 3d at 868.  It was not

reviewing an individual request for release and placement.

Plaintiffs made a similar claim in a prior preliminary injunction motion for

another plaintiff:  Lucas R.  That motion failed to identify the basis for the Court's

authority or identify any meaningful standard by which the agency's actions should

be judged.  On reply, Plaintiffs attempted to manufacture a jurisdictional basis.
This current motion suffers from the same defects.[2]

The reply to Defendant's opposition in Lucas R. relied on Paragraphs 24 and
37 of the Flores Settlement for this authority.  *See* Reply to Def. Opp. to
Preliminary Injunction, ECF No. 53, at 2-5.  That reliance is misplaced.  As
discussed above, Paragraph 37 grants this Court authority within the *Flores* case to
enforce the Settlement.  Flores Settlement ¶ 37.  Paragraph 24 permits individual
challenges to be brought in any district court with jurisdiction and venue.  *Id*. ¶ 24.
Paragraph 24 permits individual challenges regarding placement in various
facilities during ORR custody, or the treatment provided during such custody, not
placement with a sponsor.  These motions must be filed in an appropriate District.

Plaintiffs' reply misunderstands the jurisdictional problem under *Flores*.
The Court has jurisdiction within *Flores* over the systemic allegations—but if
raised outside of *Flores*, then Plaintiffs must demonstrate jurisdiction.  Plaintiffs
rely on a superficial understanding of the Supreme Court's decision on diversity
jurisdiction in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).
That case only undermines the claim that the *Flores* Settlement is a separate
jurisdictional grant.  *Kokkonen* involved a state cause of action that was removed

---

[2]     Defendants rely on the prior reply in order to minimize the impact of
Plaintiffs' inefficient litigation tactics in what purports to be a class action.

to a Federal District court on the basis of *diversity* jurisdiction.  *Id*. at 376-77.  The parties subsequently came to an agreement of the claim and the lower court dismissed the lawsuit in its entirety.  *Id*. at 377.  One party subsequently tried to enforce the agreement in Federal court when the other party allegedly violated the agreement.  *Id*.  The Supreme Court rejected the District Court's decision that it had jurisdiction:  "Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and *hence requires its own basis for jurisdiction*."  *Kokkonen*, 511 U.S. at 378 (emphasis added).  Hence, the systemic allegations have no jurisdictional basis *outside* of *Flores*.

Second, the "Federal question" statute, 28 U.S.C. § 1331, does not separately waive sovereign immunity.  *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097-98 n.5 (9th Cir. 1994) ("Section 1331 . . . do[es] not waive the sovereign immunity of the United States).  That statute, therefore, does not provide independent jurisdiction over the request for *release* to a sponsor. In their reply to Defendants' opposition to the first preliminary injunction, Plaintiffs asserted for the first time that the Complaint relies on Section 1331 for a

claim under the APA.  Reply to Opp. to Prelim. Inj, ECF No. 53, at 8-9.  However, this motion does not raise an APA claim.[3]

Finally, for reasons similar to the venue concerns, the Court lacks authority to order habeas relief.  A petition for habeas corpus must:  (1) be against a proper defendant, and (2) brought in the district in which the warden has detained the individual.  The motion for release runs into several problems.  First, Gabriela has named the incorrect defendant for her habeas corpus relief.  In *Padilla*, the Supreme Court held that the proper defendant to a habeas petition is the "immediate physical custodian" over the petitioner.  542 U.S. at 430.  The Court

---

[3]    As the motion does not raise an APA claim and Plaintiffs may not manufacture a claim in a reply, the motion fails to demonstrate a likelihood of success.  Mot., ECF No. 48-1 (omitting discussion of APA).  The Court—and Defendants—are left guessing about the nature of this claim.  Plaintiffs have been unclear as to what they seek:  a final answer on a *specific* sponsorship request or a final answer on the *ongoing* placement process.  They have not explained if they ask the Court to "compel agency action unlawfully withheld or unreasonably delayed," under 5 U.S.C. § 706(1); or to review a final action under 5 U.S.C. § 706(2).  They have suggested they are asking for both, with little explanation.  *See* Reply to Opp. to Prelim. Inj, ECF No. 53, at 8-9.

If Gabriela is challenging a perceived delay under 5 U.S.C. § 706(1), then she cannot succeed in her request for placement.  The Court "can compel the agency to act, but has no power to specify what the action must be."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004).  So, the Court can only order the agency to issue a decision, but it cannot order what action must be taken

If Gabriela is challenging a general placement issue under 5 U.S.C. § 706(2), then is no final agency action under *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  No one has determined that the child *cannot* be released, and ORR is making efforts to release Gabriela in accord with its legal duties.

rejected the so-called "legal control test" that would allow suit over "some other remote supervisory official." *Id.* at 435.

Applying that rule here, the proper defendant for Gabriela would be the individual who had immediate physical custody over her at the time the complaint was filed.  The Defendants in this case are the heads of an agency and a sub-agency.  While they may have some manner of supervisory control, that supervision is insufficient under *Padilla*:  There, the President and Secretary of Defense *specifically* ordered Padilla to be detained.  542 U.S. at 430.  Here, Plaintiffs have failed to plead even that level of control.  At a minimum, in the situation here where the facility where Gabriela is held is run under a federal grant from ORR, the Court should at least have jurisdiction over the "federal official [who] exercised more immediate control over a contract facility than the Attorney General or *another department head*, . . . *Padilla* requires a petitioner challenging present physical custody to name the more immediate official." *Saravia*, 280 F. Supp. 3d at 1187 (emphasis added).  That person would be the head of the facility or, if possible, the ORR Federal Field Specialist (FFS) or ORR FFS Specialist Supervisor with responsibility for that particular ORR facility.  None of these individuals would be located within the Central District of California.

Because this Court does not have authority to provide the requested relief, Gabriela's motion fails to demonstrate a likelihood of success.  She should be

required to bring a properly styled habeas petition, independent of this putative

class action, naming the appropriate respondent in the Southern District of Texas.

*See Padilla*, 542 U.S. at 451 (dismissing petition because it was brought in the

incorrect district).

### D.   Due process concerns met:  ORR's interest is heightened

As a constitutional claim, the Plaintiff's claim fails because ORR has

provided for a proper process that has relieved legitimate concerns.  Because

Plaintiffs are seeking mandatory relief—the injunction they seek is a mandatory

one—the motion should subject to heightened scrutiny by this Court.

In *Matthews v. Eldridge*, the Supreme Court set forth three factors that

normally determine whether an individual has received the "process" that is "due"

under the Constitution:  (1) the private interest that will be affected by the official

action; (2) the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional procedural

safeguards; and (3) the Government's interest, including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail.  424 U.S. 319, 335 (1976).

The government's interest is acting as the child's custodian and ensuring her

safety if she is released to another custodian.  This undermines the concerns raised

in the motion largely by Plaintiff's grandfather—his concerns are not relevant to

the case at hand.  *See* ECF 48-1 at 7-8 ("[T]o this day Isaac has no way to know the actual basis for the denial and certainly has not had an opportunity to dispute the decision other than *through filing this lawsuit*.").  Gabriela's private interests are complicated in this situation.  Even if she does not desire to be in ORR's custodianship, there is also an interest that she not be placed in a home that is not suitable.  The risk of erroneous deprivation through the process is also complicated as the analysis is not focused on any loss to the grandfather.

The government's interest as the custodian of a child is particularly heightened.  ORR has a strong and important interest in finding a long-term placement that is suitable to the overall best interests of the child.  Gabriela's desire to be in the custody of a relative, and the grandfather's desire to take custody, does not allow ORR to ignore legitimate Federal government interests that are designed to protect the safety of the child in this situation.  In this regard, the government's interests and interests of the Plaintiff are not dissimilar.  And the process by which ORR determines the suitability of a sponsor meets the flexible demands of due process.

Similarly, the motion asserts that detention is indefinite.  Mot., ECF No. 53, at 14.  That assertion is hyperbolic:  ORR has never expressed any intent to maintain custody of Gabriela indefinitely.  The current hope is to place her within

1    the URM in a location near her grandfather.  Ultimately, if ORR's concerns are not

2    satisfied, then ORR will cease to be her custodian when she turns eighteen.

3    **II.    The final three factors of an injunction weigh against requiring ORR to
     release a child to a custodian whose actions raise legitimate concerns.**

4            The final three factors do not favor granting a preliminary injunction

5    mandating release:  irreparable harm, harm to the opposing party, and weighing the

6    public interest.  To establish irreparable harm, the movant must first "demonstrate

7    that irreparable injury is likely in the absence of an injunction;" it "will not issue if

8    the person or entity seeking injunctive relief shows a mere possibility of some

9    remote future injury."  *Park Village Apartment Tenants Association v. Foster*, 636

10   F.3d 1150 (9th Cir. 2011) (internal citation and quotation marks omitted).  The

11   final two factors—harm to the opposing party and weighing the public interest—

12   "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S.

13   418, 435 (2009).

14           Here, these factors weigh against ordering ORR to release Gabriela to the

15   grandfather.  While ORR's goal is not to hold Gabriela at St. Michael's Home for

16   Children, the possibility of harm outside of its custody cannot be ignored.  As

17   discussed above, the government and public's interest is heightened.  The

18   psychiatric staff that have evaluated Gabriela's mental health needs are continuing,

19   though abated given the "step down."  The social workers investigating her

20   grandfather's suitability have legitimate concerns about his appropriateness for

Gabriela's placement with him:  The grandfather has serious health concerns due to a cancer diagnosis, a history of association with convicted criminals and substance abuse, a questionable work schedule, and a lack of understanding of Gabriela's significant mental health needs.[4]  ORR does not have any desire to indefinitely detain this child.  It has a potentially appropriate placement that all *relevant* parties agree is in her best interest.  The Court should not short-circuit that process by granting a preliminary injunction—effectively making a determination that ignores the possible placement with URM that her child advocate, immigration attorney, and the case workers agree is in her best interest.

As a matter of policy and judicial economy, the Court should decline to entertain Plaintiff's preliminary injunction motion.  The motion inverts the fundamental purpose of preliminary injunctive relief, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Instead, Gabriela asks this Court to alter the status quo by granting her the very relief she hopes to obtain through this entire action—a judicial officer reviewing HHS's process and procedures by

---

[4]    Plaintiffs' motion incorrectly suggests as an *evidentiary* matter that ORR's "unsworn" home studies cannot defeat sworn declarations.  Mot., ECF. No. 53, at 13 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)).  *Adickes* dealt with the standards for motions for summary judgment.  398 U.S. at 158 n.17.  This is not such a motion.  Any home study is not a mere "unsworn" statement.  It would be an admissible government record.  Whatever the legal standard to be applied, Plaintiffs may dispute the weight of evidence, but not its admissibility.

performing an ad hoc and *highly individualized* evaluation of the merits of her requested custodian's fitness.  *See* Compl. ¶ 128-30.  Moreover, to grant this equitable relief there needs to be no adequate remedy.  *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).  But there is an adequate remedy: a properly filed habeas petition.

More importantly, the equities favoring Gabriela's release to her grandfather are diminished, and concomitantly, the equities tilt decidedly in the government's favor where an appropriate placement has been determined and both Gabriela's child advocate and her immigration attorney agree that this placement—as opposed to placement with her grandfather—is in *her* best interest.  Indeed, given the position of her advocate and immigration attorney, there is a good chance that Gabriela N. will be released under terms that will assure her safety, ease her period of transition, and secure uninterrupted mental health care to assist her.

This Court has already ruled that ORR's plans that are rationally related to the child's safety and health are entitled to some deference.  *See Flores v. Sessions*, No. CV 85-4544 DMG at 26 (C.D. Cal. July 30, 2018) ("they appear to be reasonably calculated to protect Class members from 'harm or neglect' and to ensure that they have an adequate 'standard of care.').  Plaintiffs and Defendants agree that Gabriela is in need of continued, uninterrupted mental health treatment. As the custodian with a complex legal duty, the equities favor ORR's current plan

of placing Gabriela with the unaccompanied minor refugee program while assuring

her safety, ease of transition, and uninterrupted mental health care.

## **CONCLUSION**

For the foregoing reasons, Gabriela's Motion for Preliminary Injunction

should be denied.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BRIENA L. STRIPPOLI
Senior Litigation Counsel
BENJAMIN MARK MOSS
Trial Attorney
MARINA STEVENSON
Trial Attorney

   /s/  Andrew B. Insenga
ANDREW B. INSENGA
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Phone:  (202) 305-7816
Fax:  (202) 616-4950
andrew.insenga@usdoj.gov
Attorneys for DEFENDANTS

August 29, 2018

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on August 29, 2018, I caused the foregoing to be filed via the CM/ECF system.  That system caused a copy to be served on Plaintiffs' counsels of record.

CHAD A. READLER
Acting Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BRIENA L. STRIPPOLI
Senior Litigation Counsel
BENJAMIN MARK MOSS
Trial Attorney
MARINA STEVENSON
Trial Attorney

   /s/  Andrew B. Insenga
ANDREW B. INSENGA
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Phone:  (202) 305-7816
Fax:  (202) 616-4950
andrew.insenga@usdoj.gov
Attorneys for DEFENDANTS