1   CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
    Center for Human Rights & Constitutional Law
2   256 South Occidental Boulevard
    Los Angeles, CA 90057
3   Telephone: (213) 388-8693
    Email: crholguin@centerforhumanrights.org
4
    *Listing continues on next page*
5
    *Attorneys for Plaintiffs*
6

7

8                   UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

10

11  LUCAS R., *et al.*,                    No. CV 2:18-CV-05741-DMG-PLA

12              Plaintiffs,                 **REPLY TO OPPOSITION TO MOTION
                                            FOR PRELIMINARY INJUNCTION
13          v.                              RE: PLAINTIFF GABRIELA N.**

14  ALEX AZAR, Secretary of U.S.           Hearing: September 21, 2018
    Department of Health and Human         Time:    9:30 a.m.
15  Services; *et al.*,                     Room:    1st St. Courthouse
                                                     Courtroom 8C
16              Defendants.

17  / / /

18

19

20

21

22

23

24

25

26

27

28

1    *Counsel for Plaintiffs, continued*

2    HOLLY S. COOPER (Cal. Bar No. 197626)
     Co-Director, Immigration Law Clinic
3    CARTER C. WHITE (Cal. Bar No. 164149)
     Director, Civil Rights Clinic
4    University of California Davis School of Law
     One Shields Ave. TB 30
5    Davis, CA 95616
     Telephone: (530) 754-4833
6    Email:   hscooper@ucdavis.edu
              ccwhite@ucdavis.edu
7
     LEECIA WELCH (Cal. Bar No. 208741)
8    NEHA DESAI (Cal. RLSA Bar No. 803161)
     POONAM JUNEJA (Cal. Bar No. 300848)
9    National Center for Youth Law
     405 14th Street, 15th Floor
10   Oakland, CA 94612
     Telephone: (510) 835-8098
11   Email:   lwelch@youthlaw.org
              ndesai@youthlaw.org
12            pjuneja@youthlaw.org

13   CRYSTAL ADAMS (Cal. Bar No. 308638)
     National Center for Youth Law
14   1313 L St. NW, Suite 130
     Washington, DC 20005
15   Telephone: (202) 868-4785
     Email:   cadams@youthlaw.org
16
     SUMMER WYNN (Cal. Bar No. 240005)
17   MARY KATHRYN KELLEY (Cal. Bar No. 170259)
     JON F. CIESLAK (Cal. Bar No. 268951)
18   MEGAN L. DONOHUE (Cal. Bar No. 266147)
     Cooley LLP
19   4401 Eastgate Mall
     San Diego, CA 92121-1909
20   Telephone: (858) 550-6000
     Email:   swynn@cooley.com
21            mkkelley@cooley.com
              jcieslak@cooley.com
22            mdonohue@cooley.com

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     PLACEMENT WITH ISAAC IS IN GABRIELA'S BEST INTERESTS. ........................ 2

III.    THIS COURT MAY ENJOIN ORR'S CONTINUING CONFINEMENT OF
        GABRIELA.................................................................................................. 4

        A.      Venue is proper in this District. ................................................ 4

        B.      This action is not duplicative of Flores. .................................... 6

        C.      The Court may enjoin ORR to place Gabriela with her grandfather
                independently of a writ of habeas corpus. ................................. 8

IV.     ORR'S REFUSAL TO PLACE GABRIELA WITH ISAAC DENIES HER DUE
        PROCESS................................................................................................... 12

V.      GABRIELA SATISFIES ALL REQUIREMENTS FOR A PRELIMINARY
        INJUNCTION, WHETHER PROHIBITORY OR MANDATORY. ......................... 14

VI.     CONCLUSION ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adab v. United States Citizenship & Immigration Servs.*,
   No. 14-cv-04597-CAS, 2015 WL 6249563 (C.D. Cal. Feb. 9, 2015) ..................... 5

*Adams v. Cal. Dep't of Health Servs.*,
   487 F.3d 684 (9th Cir. 2007) ........................................................................ 6

*American Ass'n of Naturopathic Physicians v. Hayhurst*,
   227 F.3d 1104 (9th Cir. 2000) ...................................................................... 4

*Argueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996) .......................................................................... 8

*Aristotle P. v. Johnson*,
   721 F. Supp. 1002 (N.D. Ill. 1989) ............................................................. 12

*Beltran v. Cardall*,
   222 F. Supp. 3d 476 (E.D. Va. 2016) ............................................. 7, 12, 13

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................................... 10

*Bogarin-Flores v. Napolitano*,
   No. 12-cv-0388 JAH(WMc), 2012 WL 3283287 (S.D. Cal. Aug. 10,
   2012) ............................................................................................................ 12

*Bracamontes-Reyes v. Sessions*,
   No. CV 18-01301-PHX-DLR (JZB), 2018 U.S. Dist. LEXIS 76756
   (D. Ariz. May 4, 2018) ................................................................................ 12

*Bunikyte, ex rel. Bunikiene v. Chertoff*,
   No. A–07–CA–164–SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ................. 9

*Califano v. Sanders*,
   430 U.S. 99 (1997) ....................................................................................... 11

*Californians for Renewable Energy v. United States Envtl. Prot. Agency*,
   No. C 15-3292SBA, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ..................... 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Flores v. Johnson*,
212 F. Supp. 3d 864 (C.D. Cal. 2015) ....................................................... 8

*Flores v. Sessions*,
862 F.3d 863 (9th Cir. 2017) ........................................................ 1, 9, 10

*Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ............................................................ 4

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) ........................................................... 14

*Hook v. State of Az., Dep't of Corr.*,
972 F.2d 1012 (9th Cir. 1992 ) .......................................................... 9

*Keshish v. Allstate Ins. Co.*,
No. CV 12-03818-MMM, 2012 WL 12887075 (C.D. Cal. Oct. 19,
2012) ................................................................................... 10

*Kokonnen v. Guardian Life Insurance Co. of America*,
511 U.S. 375 (1994) ................................................................. 9, 10

*L.V.M. v. Lloyd*,
No. 18 Civ. 1453 (PAC), 2018 U.S. Dist. LEXIS 107692 (S.D.N.Y.
June 27, 2018) .......................................................................... 7

*Lavapies v. Bowen*,
687 F. Supp. 1193 (S.D. Ohio 1988) ..................................................... 9

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ...................................................................... 8

*Maldanado v. Lloyd*,
No. 18 Civ. 3089 (JFK), 2018 U.S. Dist. LEXIS 75902 (S.D.N.Y.
May 4, 2018) ........................................................................... 7

*Martensen v. Koch*,
942 F. Supp. 2d 983 (N.D. Cal. 2013) .................................................... 6

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003) ........................................................ 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mathews v. Eldridge,*
424 U.S. 319 (1976)..................................................................................... 13

*Melendres v. Arpaio,*
695 F.3d 990 (9th Cir. 2012) ........................................................................ 15

*Moore v. City of East Cleveland, Ohio,*
431 U.S. 494 (1977)..................................................................................... 12

*Ms. L. v. United States Immigration & Customs Enforcement,*
310 F. Supp. 3d 1133 (S.D. Cal. 2018) ........................................................ 16

*Nadarajah v. Gonzales,*
443 F.3d 1069 (9th Cir. 2006) ...................................................................... 12

*Nettles v. Grounds,*
830 F.3d 922 (9th Cir. 2016) ........................................................................ 11

*O'Connor v. Donaldson,*
422 U.S. 563 (1975)..................................................................................... 13

*Preiser v. Rodriguez,*
411 U.S. 475 (1973)..................................................................................... 12

*Rivera v. Holder,*
307 F.R.D. 539 (W.D. Wash. 2015) ............................................................. 12

*Rodriguez v. Cal. Highway Patrol,*
89 F. Supp. 2d 1131 (N.D. Cal. 2000)............................................................ 6

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004)..................................................................................... 12

*Santos v. Smith,*
260 F. Supp. 3d 598 (W.D. Va. 2017)............................................................ 7

*Saravia v. Sessions,*
280 F. Supp. 3d 1168 (N.D. Cal. 2017)...........................................7, 12, 16, 17

*Schad v. Arizona,*
501 U.S. 624 (1991) (plurality opinion) ....................................................... 13

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sidney Coal Co. v. Social Sec. Admin.*,
  427 F.3d 336 (6th Cir. 2005) ................................................................ 5

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) .................................................................... 14

*Winter v. Nat'l Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................ 14

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ............................................................................ 12

**Statutes**

8 U.S.C. § 1232(c)(2)(A) .......................................................... 10, 13, 15

28 U.S.C.
  § 1331 .................................................................................................. 11
  § 1391(e)(1)(B) .................................................................................. 5, 6
  § 1391(e)(1)(C) .................................................................................. 5, 6

42 U.S.C. § 675(5)(C)(iv) ........................................................................ 3

Administrative Procedure Act ("APA") ......................................... 10, 11

Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") ........... *passim*

**Other Authorities**

Fed. R. Civ. P. 71 .................................................................................... 9

National Council of Juvenile and Family Court Judges, *Resource
  Guidelines: Improving Court Practice in Child Abuse & Neglect
  Cases* 30 (1995) ................................................................................ 13

Restatement (Second) of Contracts § 304 & cmt., a-b (1981) ................ 9

1

## I.   INTRODUCTION

2        Defendant Office of Refugee Resettlement ("ORR") has detained seventeen-
3  year-old Plaintiff Gabriela N. for more than nineteen months, separating her from her
4  family, exacerbating her significant trauma history, and precipitating an alarming
5  deterioration of her mental state.  In refusing to place Gabriela with her grandfather,
6  Isaac N., Defendants deny her the opportunity for a fresh start in a stable, loving home
7  with a family member who has demonstrated his fitness as a custodian and his
8  commitment to supporting and reuniting with his granddaughter.  Contrary to
9  Defendants' erroneous statements, those close to Gabriela – her mother, her
10 immigration attorney, and her child advocate – agree that release from ORR custody
11 and placement with Isaac is in Gabriela's best interests.  Prolonging her detention and
12 forcing her to await ORR's preferred placement will result in further harm.

13        In opposing Gabriela's motion for a preliminary injunction, Defendants rehash
14 arguments raised elsewhere that this Court may not grant Gabriela the relief she seeks
15 in this action and in this motion.  As Plaintiffs have argued, venue is proper in this
16 district and this action should not be dismissed as duplicative of *Flores v. Sessions.*
17 Moreover, this Court has jurisdiction to remedy the violations of the *Flores*
18 Settlement, the William Wilberforce Trafficking Victims Protection Reauthorization
19 Act of 2008 ("TVPRA"), and the Constitution that Gabriela has alleged, independent
20 of any entitlement to habeas relief.  Furthermore, Defendants fail to refute Gabriela's
21 overwhelming showing that, in failing to place her with Isaac, ORR has denied her
22 due process of law.

23        Gabriela satisfies each requirement for the preliminary injunction she seeks.
24 Plaintiffs respectfully request that this Court grant the instant motion and order ORR
25 to place Gabriela immediately with her grandfather.  Plaintiffs further request that the
26 Court take this matter under submission as it has with Plaintiff Lucas R.'s preliminary
27 injunction motion in lieu of delaying Gabriela's hearing until September 21, 2018.

28

**REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:18-CV-05741-DMG-PLA**

## II.   PLACEMENT WITH ISAAC IS IN GABRIELA'S BEST INTERESTS.

Defendants argue that the Court should not order ORR to place Gabriela with Isaac because her "child advocate and her immigration attorney—the individuals whose sole interest is Gabriela—agrees [sic] that her proposed placement in the unaccompanied refugee minor ["URM"] program is in her best interest," rather than placement with her grandfather.  Opposition at 2, 3, 23.  This is incorrect.[1]

To the contrary, Gabriela's immigration attorney, Paola Perez, unambiguously supports Gabriela's wish to be placed with Isaac.  Ex. 35, Declaration of Paola Perez, at ¶¶ 2, 14.  In her opinion, "[a]bove all, [Gabriela], like all children, needs to be in a loving, stable, safe home, ideally with family." *Id.* ¶ 5.  Ms. Perez, who has "developed a strong connection" with Gabriela and "a good understanding of what she needs," raised family reunification with Gabriela's case manager at Shiloh multiple times, but the case manager repeatedly informed her that "reunification was not an option" for Gabriela.  *Id.* ¶¶ 4, 6, 8.  Ms. Perez's "recommendation for [Gabriela] to enter the URM program was only based on [Ms. Perez's] understanding that she had no family to whom she could be released."  *Id.* ¶ 11.  "Had [Ms. Perez] known that [Gabriela] had a stable and loving family member to whom she could be released, [she] would have advocated for release to family," rather than the inferior URM option.  *Id.* ¶ 12.

Similarly, contrary to Defendants' statements, Gabriela's independent child advocate, the Young Center for Immigrant Children's Rights in Houston, Texas, agrees that "it is in [Gabriela's] best interests to be promptly released to the care of her grandfather," Isaac, rather than placed in a URM program.  Ex. 36 at 1.  The Young

---

[1] For support, Defendants cite the Declaration of James S. de la Cruz, the Senior Field Program Specialist Supervisor for ORR, whose statements are based on his review of Department of Health and Human Services ("HHS") records and information supplied by HHS employees.  Def. Ex. 62 at ¶ 1.  Mr. de la Cruz's declaration offers no explanation of or documentary support for his statement about the opinions of Gabriela's immigration attorney and child advocate, and there is no indication that he interviewed either individual in order to confirm the accuracy of his statement.  *See id.* ¶¶ 1, 15.

Center supports Gabriela's transfer to a URM program only if it would be a "significantly faster" path to release, not as an alternative to prompt placement with Isaac. *Id.* The Center based a prior recommendation that Gabriela be placed in a URM program on the understanding that her grandfather was too ill to care for her; having received updated information, the Center now recommends placement with Isaac, observing that "[w]hile [Gabriela] would have access to a range of services in URM custody, she would lack one thing that organizational placements can never provide–daily connection to family, community and identity." *Id.* at 4.

Even Gabriela's case manager at St. Michael's Home for Children in Houston, Texas, where she is currently detained, has told Gabriela "multiple times that she would like to recommend that [Gabriela] be released so that [she] can live with [Isaac], but [the] case manager says the government refuses to let [Gabriela] live with him." Ex. 37 at 1 ¶ 5.

These voices join those of Gabriela's mother, who has designated Isaac as the individual she wishes to take custody of Gabriela, Ex. 30 at 253 ¶ 4; Gabriela's therapist, Ms. Avila, who described Isaac approvingly as "attentive," "caring," and a person who supported "healthy and positive choices," Ex. 7 at 111-12 ¶¶ 11-12; Candida Rugama, an experienced social worker who completed a comprehensive home study and recommended that Gabriela be placed with Isaac immediately, Ex. 33 at 281 ¶ 18; and Dr. Amy Cohen, a child psychiatrist whose report states emphatically that Gabriela "should be released immediately to the care of her grandfather," to give her the opportunity she deserves "to live her life among loved ones, to build upon her strengths, to find a healthy peer group and her place as a member of a real community," Ex. 34 at 313. Significantly, they are also consistent with seventeen-year-old Gabriela's wishes. *Cf.* 42 U.S.C. § 675(5)(C)(iv) (in the child welfare context, requiring that any permanency plan for a child fourteen or older be developed and revised in consultation with the child). In her words, "I still desperately want to live with my grandfather. I love him, and I know that he would take care of me." Ex.

3.

1  37 at 1 ¶ 5.

2      The relevant people with knowledge of Gabriela, including her immigration

3  attorney and her child advocate – whose opinions Defendants invite the Court to credit

4  because they are "individuals whose sole interest is Gabriela" – uniformly agree that it

5  is in Gabriela's best interests that ORR immediately release her from the prolonged

6  detention that has caused her so much harm and place her with her grandfather, Isaac.

7  Defendants attempt to escape the clear conclusion, supported by the overwhelming

8  weight of the evidence, that the safest place for Gabriela is with Isaac through a

9  cursory recital of the concerns articulated in ORR's home study, *see* Opp. at 3.[2]

10  Plaintiffs have already comprehensively rebutted each of these concerns, *see* Motion

11  at 10-14; this effort is unavailing.

12  **III.  THIS COURT MAY ENJOIN ORR'S CONTINUING CONFINEMENT OF GABRIELA.**

13      **A.  Venue is proper in this District.**

14      Defendants contend that Plaintiffs cannot succeed in this action, and therefore

15  Gabriela cannot prevail in her motion for a preliminary injunction, because this

16  District is the improper venue.[3]  Opp. at 6.  As Plaintiffs have explained in their

17  Opposition to Defendants' Motion to Dismiss, ECF No. 67, at 4-12, venue is not at

18  issue in this litigation.  Defendants waived any objection to venue by failing to raise it

19  in opposition to Plaintiffs' first Motion for a Preliminary Injunction, on behalf of

20  Plaintiff Lucas R.  *See American Ass'n of Naturopathic Physicians v. Hayhurst*, 227

21  F.3d 1104, 1106-08 (9th Cir. 2000) (requiring parties to raise threshold defenses,

22  ───────────

[2] Defendants assert that ORR's home study would be an admissible government
23  record, not a mere unsworn statement.  Opp. at 22 n.4.  At this juncture, the weight of
the evidence, rather than its admissibility, is what matters.  *Herb Reed Enterprises,*
24  *LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to
the urgency of obtaining a preliminary injunction at a point when there has been
25  limited factual development, the rules of evidence do not apply strictly to preliminary
injunction proceedings.").  Regardless of their admissibility, the unsworn and
26  confusing statements in ORR's home study do not trump the clear, sworn declarations
of two highly qualified child welfare experts establishing that Isaac is more than fit to
27  care for Gabriela.
[3] Following Defendants' lead, Plaintiffs incorporate truncated versions of arguments
28  more fully briefed in opposition to Defendants' Motion to Dismiss.  *See* Opposition at
6 n.1.

REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:18-CV-05741-DMG-PLA

1   including improper venue, at the first available opportunity).

2           Even had Defendants not waived their venue objections, venue would be proper

3   in the Central District of California pursuant to 28 U.S.C. § 1391(e)(1)(C) because the

4   two organizational Plaintiffs named in the Complaint reside in this District.  *See*

5   *Sidney Coal Co. v. Social Sec. Admin.*, 427 F.3d 336, 345-46 (6th Cir. 2005) ("[T]he

6   residency requirement of 28 U.S.C. § 1391(e)[(1)(C)] is satisfied if at least one

7   plaintiff resides in the district in which the action has been brought.); *Californians for*

8   *Renewable Energy v. United States Envtl. Prot. Agency*, No. C 15-3292SBA, 2018

9   WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018) (finding venue proper where some but

10  not all plaintiffs resided in the district because "the clear weight of federal authority

11  holds that venue is proper in a multi-plaintiff case if *any* plaintiff resides in the

12  District"); *see also* Compl. ¶¶ 15, 17 (alleging that both organizational Plaintiffs'

13  principal places of business are within the Central District of California).  Defendants'

14  argument that the organizational Plaintiffs cannot support venue because they are not

15  putative class members is without foundation; nothing in the venue statute links the

16  venue inquiry to the claims or relief requested by the various plaintiffs.  *See*

17  *Californians for Renewable Energy*, 2018 WL 1586211, at *6 (the fact that some, but

18  not all, plaintiffs resided in the district was, "standing alone, sufficient to establish that

19  venue is proper – irrespective of whether their claims and claims of the remaining

20  Plaintiffs are related").

21          Independently, venue is proper in this District under 28 U.S.C. § 1391(e)(1)(B)

22  because named Plaintiffs Daniela Marisol T. and Lucas R. suffered a considerable

23  portion of the statutory and due process violations alleged in the Complaint within this

24  District.  *See Adab v. United States Citizenship & Immigration Servs.*, No. 14-cv-

25  04597-CAS (AGRx), 2015 WL 6249563, at *4 (C.D. Cal. Feb. 9, 2015) (courts in

26  immigration-related challenges find the "substantial part of the events or omissions"

27  test "satisfied where an office in the relevant district took significant action . . . , even

28  if significant actions were also undertaken elsewhere").  Because venue is proper for

REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:18-CV-05741-DMG-PLA

named Plaintiffs Daniela Marisol T. and Lucas R., it is also proper for the other named Plaintiffs, including Gabriela N., whose claims allege parallel violations. *See Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) (although the alleged civil rights violation occurred in different districts for different plaintiffs, because a substantial part of the events affecting one plaintiff occurred in the Northern District, venue was also proper as to named plaintiffs making similar claims).

Moreover, this Court has discretion to hear all claims in this matter, including Gabriela's request for a preliminary injunction, under the pendent venue doctrine if even one claim is properly before it. *Martensen v. Koch*, 942 F. Supp. 2d 983, 998 (N.D. Cal. 2013) ("[T]he pendent venue doctrine . . . holds that if venue is proper on one claim, the court may find pendent venue for claims that are closely related."). Even assuming that venue were not proper for the entire action pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C), because venue is proper for the claims of the organizational Plaintiffs, Lucas R., and Daniela Marisol T., the Court should exercise its discretion to adjudicate the remaining claims, including Gabriela's.

Because Defendants have waived their venue objections and, in any event, venue is proper in this District, venue is no barrier to the relief Gabriela seeks.

### B. This action is not duplicative of Flores.

Defendants next rely on their argument that the case as a whole should be dismissed as duplicative of the *Flores* litigation because it alleges the same causes of action and seeks the same relief against the same parties as *Flores. See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 55 U.S. 880, 904 (2008). It does not. *See* Opp. to Mot. to Dismiss at 12-16.

Contrary to Defendants' argument, children in ORR custody have rights beyond those guaranteed by the *Flores* Settlement, and they may assert them in an independent action. Plaintiffs' position is supported by this Court's order that class

1   members' constitutional rights and TVPRA rights, which Congress enacted eleven

2   years after the *Flores* Settlement and which incorporates rights that exceed the scope

3   of the Settlement, cannot be asserted through the vehicle of a motion to enforce the

4   *Flores* Settlement.  The Court noted, in that forum, "Plaintiffs are entitled to only such

5   relief as is explicitly or implicitly authorized by the *Flores* Agreement;"  *Flores*, ECF

6   No. 470 at 3-4.  Indeed, ORR argued that *Flores* class members should seek

7   procedural protections "in separate litigation . . . ."  *Flores,* ECF No. 425 at 17, 30.

8         For this reason, lawsuits across the country now challenge ORR's treatment of

9   *Flores* class members under the TVPRA and the Constitution, independent of the

10   *Flores* Settlement.  *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal.

11   2017); *Beltran v. Cardall*, 222 F. Supp. 3d 476 (E.D. Va. 2016); *Santos v. Smith*, 260

12   F. Supp. 3d 598 (W.D. Va. 2017); *Maldanado v. Lloyd*, No. 18 Civ. 3089 (JFK), 2018

13   U.S. Dist. LEXIS 75902 (S.D.N.Y. May 4, 2018); *L.V.M. v. Lloyd*, No. 18 Civ. 1453

14   (PAC), 2018 U.S. Dist. LEXIS 107692 (S.D.N.Y. June 27, 2018).

15         This case raises claims and facts distinct from those raised in *Flores*.

16   Specifically, this case alleges: (1) that ORR violates due process rights by

17   unnecessarily delaying the release of children without a meaningful opportunity to be

18   heard regarding a sponsor's fitness; (2) that ORR violates due process rights by

19   placing children in secure facilities without a meaningful opportunity to be heard;

20   (3) that ORR violates due process rights by administering psychotropic medications to

21   children without proper authorization; and (4) that ORR violates due process rights by

22   blocking access to legal assistance relating to custody, medication, and release.  *See*

23   Complaint, ECF No. 1, at 39-41.  The Complaint further alleges violations of the

24   TVPRA, which did not even exist when *Flores* was filed or settled.

25         Moreover, even if issues implicating potential violations of the *Flores*

26   Settlement were duplicative of claims in *Flores*, those claims would be properly

27   before this Court because paragraph 37 of the *Flores* Settlement explicitly provides

28   for enforcement in this District.

Like Defendants' venue objections, the argument that this action should be dismissed as duplicative of *Flores* is therefore no barrier to the Court ordering that ORR place Gabriela with her grandfather.

### C. The Court may enjoin ORR to place Gabriela with her grandfather independently of a writ of habeas corpus.

Defendants next contend that the Court lacks authority to grant Gabriela the relief she seeks because this motion amounts to an improperly filed petition for a writ of habeas corpus. Defendants' position ignores both this Court's jurisdiction to enjoin breaches of the *Flores* Settlement and its power to enjoin TVPRA and due process violations, independently of any possible relief available to Gabriela via a writ of habeas corpus.

The Court-approved *Flores* Settlement reserves jurisdiction in this Court to redress violations of the Settlement, with the exception of minors' individual challenges to their placement "in a particular type of facility" or their allegations that licensed programs in which they are placed do not conform to the Settlement's requirements. *Flores* Settlement, Ex. 1 ¶¶ 24, 37; *Flores v. Johnson*, 212 F. Supp. 3d 864, 869 (C.D. Cal. 2015), *aff'd sub nom Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) (holding that this Court "has the inherent power to enforce the terms of the [*Flores*] Agreement because, with certain exceptions not relevant here, the Agreement 'provides for the enforcement, in this District Court, of the provisions of this Agreement . . . .'"). Gabriela's claim that ORR is violating other provisions of the Settlement, including those requiring prompt release of class members to placement with qualified custodians, *see* Flores Settlement, Ex. 1 ¶¶ 14, 18, falls squarely within this Court's jurisdiction pursuant to paragraph 37.[4]

Defendants nonetheless assert that "the Court has been clear in stating that

---

[4] The *Flores* Settlement's forum-selection clause is presumptively valid. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) ("Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general.").

1  individual claims are not appropriate for resolution through enforcement of the

2  settlement."  Opp. at 14 (*citing* No. CV-85-4544 DMG, ECF No. 470 at 5 (C.D. Cal.

3  July 30, 2018)).  But the page Defendants cite says nothing about the Court's

4  jurisdiction to enforce the Settlement or the propriety of individual actions asking that

5  it do so.[5]

6  　　　To the extent Defendants argue that Gabriela may only enforce her rights under

7  the Settlement[6] in a motion to enforce *Flores*, Defendants point to no authority

8  supporting such a restriction.  The *Flores* Settlement nowhere limits enforcement to a

9  motion brought in *Flores v. Sessions*.  Rather, paragraph 37 provides for enforcement

10  "in this District Court, of the provisions of this Agreement . . . ."  This action is before

11  "this District Court" and therefore falls squarely within the jurisdiction the consent

12  decree preserves.

13  　　　Defendants' reading of *Kokkonen v. Guardian Life Insurance Co. of America*,

14  511 U.S. 375 (1994), as foreclosing the argument that the *Flores* Settlement confers

15  jurisdiction is in error.  In that case, a federal district court lacked jurisdiction to

16  enforce a settlement agreement where the resulting stipulation of dismissal "did not

17  reserve jurisdiction in the District Court to enforce the settlement agreement; indeed,

18
19  [5] The Court does elsewhere observe that "Plaintiffs do not request an order releasing
    these seven Class Members or any of the other Class Members identified in their
20  motion. . . ," *id*. at 26, but that implies that the Court would indeed review individual
    violations of the *Flores* Settlement if asked to do so.  *See also Bunikyte, ex rel.*
21  *Bunikiene v. Chertoff*, A–07–CA–164–SS, 2007 WL 1074070, at *4 (W.D. Tex. Apr.
    9, 2007) (exercising jurisdiction in independent action to enforce *Flores* Settlement's
22  placement provisions brought by individual unnamed class members held at an ICE
    facility in Texas).

23  [6] Gabriela is a member of the class the *Flores* consent decree protects and is therefore
    entitled to enforce her rights thereunder.  But even assuming that the agreement were
24  a non-class settlement solely between the parties in *Flores*, the agreement clearly aims
    to benefit Gabriela, and therefore she would be entitled to enforce it as third-party
25  beneficiary.  *See* Restatement (Second) of Contracts § 304 & cmt. a-b (1981);
    Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced
26  against a nonparty, the procedure for enforcing the order is the same as for a party.");
    *Hook v. State of Az., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992 ) (quoting
27  *Lavapies v. Bowen*, 687 F. Supp. 1193, 1207 (S.D. Ohio 1988) ("Under Rule 71, a
    non-party who establishes standing to proceed as a third-party beneficiary of a
28  settlement agreement or consent decree may pursue enforcement of that agreement or
    decree.")) (citations omitted).

it did not so much as refer to the settlement agreement." *Id.* at 377.  The Supreme Court explained that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381.  It went on to invite parties who wish to provide for court enforcement to seek such an order. *Id.* at 381-82.  The parties in *Flores* explicitly did so, and therefore this Court retains jurisdiction to enforce the Settlement.

Independently, this Court may enjoin ORR to comply with the TVPRA's mandate to promptly place Gabriela in the least restrictive setting consistent with her best interests.  *See Flores v. Sessions*, 862 F.3d 863, 871 (9th Cir. 2017) (TVPRA requires ORR to "promptly" place detained a minor "in the least restrictive setting that is in the best interest of the child," generally, with "a suitable family member . . . ."); 8 U.S.C. § 1232(c)(2)(A).  That the least restrictive placement for Gabriela is with Isaac does not transform her TVPRA claim into a habeas petition attacking her detention.

Echoing their Opposition to Plaintiffs' Motion for a Preliminary Injunction on behalf of named Plaintiff Lucas R., Defendants again appear to concede that Plaintiffs would have a valid claim under the Administrative Procedure Act ("APA") if there were a final agency action under *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Opp., ECF 71, at 27 n.3.[7]  The uncontroverted evidence demonstrates that ORR's decision against placing Gabriela with Isaac is *entirely* final.[8]  *See, e.g.*, Decl. of Paola Perez, Ex. 35 ¶ 8 ("The case manager repeatedly told me that reunification was not an

---

[7] Plaintiffs' arguments concerning the APA are properly raised on reply because they "respond[] directly to arguments raised in the opposition concerning matters addressed in the moving papers" and because Defendants have had an opportunity to, and in fact have, addressed them in their brief. *Keshish v. Allstate Ins. Co.*, No. CV 12-03818-MMM (JCx), 2012 WL 12887075, at *2 n.27 (C.D. Cal. Oct. 19, 2012).
[8] Defendants argue that there is no final agency action because "[n]o one has determined that the child *cannot* be released." Opp. at 17 n.3.  This misses the relevant inquiry.  ORR has conclusively determined that Gabriela will not be promptly placed with her grandfather, Isaac, which is manifestly the least restrictive placement consistent with her best interests.  This determination is final and reviewable.

REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:18-CV-05741-DMG-PLA

option."); Decl. of Gabriela N., Ex. 37 ¶ 5 ("[M]y case manager says the government refuses to let me live with him."); Decl. of Isaac N., Ex. 7 at 112 ¶ 12 ("[Gabriela's social worker] told me that ORR threw out my application").  Indeed, in Defendants' Opposition, they indicate that ORR has definitively "decline[d] placement with the grandfather" and suggest that the only available path forward for Gabriela's release before her eighteenth birthday is placement in a URM program.  Opp. at 3.

Although the APA does not itself confer subject matter jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 107 (1997), 28 U.S.C. § 1331 grants federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In combination with the APA and the TVPRA, 28 U.S.C. § 1331 therefore vests the Court with full authority to compel ORR to place Gabriela in the least restrictive setting consistent with her best interests, i.e., to place her with Isaac, and to do so without further delay.  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099-1100 (D.C. Cir. 2003) ("[D]istrict court had jurisdiction under 28 U.S.C. § 1331 . . . to determine whether the [agency] was in violation of § 555(b), and, if it was, to issue an appropriate order pursuant to § 706.").

Furthermore, Gabriela's first Claim for Relief alleges that Defendants "unreasonably and unnecessarily delay or refuse to release children . . . without affording detained minors or their proposed custodians a timely, prompt, or meaningful opportunity to be heard regarding such custodians' fitness."  Complaint, ECF No. 1, ¶ 129.  Like Gabriela's TVPRA claim, this claim does not attack Gabriela's detention; it asserts a due process claim properly presented in an action for equitable relief.  *See Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) (Section 1983 is the "exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus").  Given that Gabriela has already endured over a year and a half in ORR detention, a Court order requiring ORR to provide more process now would be too little too late; the Court may and should preliminarily enjoin ORR to place Gabriela with Isaac as a remedy for the injury that ORR's

11.

protracted and opaque process has already caused.  *Cf. Beltran*, 222 F. Supp. 3d at

489  (in a due process challenge to ORR's refusal to release a detained child, declining

to delineate process due and instead ordering immediate release).

In sum, this Court may grant Gabriela placement with her grandfather, Isaac.

Nothing requires Gabriela to seek such relief through the mechanism of a writ of

habeas corpus.[9]

## IV.    ORR'S REFUSAL TO PLACE GABRIELA WITH ISAAC DENIES HER DUE PROCESS.

Defendants nowhere contest that ORR's prolonged detention of Gabriela and

refusal to place her with Isaac implicates her constitutional rights to physical liberty,

family unity, and family association.  *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690

(2001); *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503-04 (1977) (plurality

op.); *Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1005-10 (N.D. Ill. 1989).

---

[9] Although aliens may challenge detention via habeas corpus provided they are not under a final order of removal, *see, e.g., Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), nothing requires them to do so.  *E.g., Saravia*, 280 F. Supp. 3d at 1193  (finding "pendent venue" for equitable claims to preliminarily enjoin ORR against detaining juveniles without hearing); *see also Preiser v. Rodriguez*, 411 U.S. 475, 479, 489-91 (1973) (holding that habeas corpus is the exclusive means for a state prisoner to challenge "penal custody" in federal court, based on concerns that are entirely inapposite in this context, including concerns about federal-state comity and preventing convicted prisoners from circumventing alternate remedies).

Even assuming, *arguendo*, that habeas corpus were Gabriela's exclusive means of challenging her placement, this motion would be properly cognizable in this Court. Plaintiffs' complaint alleges jurisdiction under the habeas corpus statute, Compl., ECF No. 1, ¶ 6, and the Supreme Court has never held that the "immediate physical custodian" rule on which Defendants lean applies in immigration cases.  *See Rumsfeld v. Padilla,* 542 U.S. 426, 435 n.8 (2004).  The weight of authority in this circuit is that immigration detainees may bring habeas proceedings against the Attorney General or Secretary of Homeland Security.  *See, e.g., Bracamontes-Reyes v. Sessions*, No. CV 18-01301-PHX-DLR (JZB), 2018 U.S. Dist. LEXIS 76756, at *4-5 (D. Ariz. May 4, 2018) (no "Ninth Circuit authority precluding Petitioner from naming the Attorney General, the Secretary of Homeland Security, or the ICE Phoenix Field Office Director as Respondents . . ."); *Rivera v. Holder*, 307 F.R.D. 539, 544 n.1 (W.D. Wash. 2015) ("immediate custodian" rule inapposite in immigration detention); *Bogarin-Flores v. Napolitano*, , No. 12cv0388 JAH(WMc), 2012 WL 3283287, at *2 (S.D. Cal. Aug. 10, 2012) (Attorney General and Secretary of Homeland Security proper respondents in § 2241 petition seeking release from immigration-related detention).

*A fortiori*, there is nothing improper in Plaintiffs' naming the Secretary of Health and Human Services and the Director of ORR as defendants and respondents in this action.

Defendants respond only to Plaintiffs' argument that ORR has provided neither Gabriela nor Isaac any meaningful process by which they can contest ORR's determination that Isaac is an unfit custodian. Defendants' conclusory assertion that "ORR has provided for a proper process that has relieved legitimate concerns," Opp. at 19, does nothing to refute Gabriela's showing that ORR's determination that Isaac is unfit was wholly opaque and peremptory. *See, e.g.*, Ex. 7 at 112 ¶ 12; Ex 2 at 49 ¶ 6. Nor do Defendants rebut Plaintiffs' showing that, viewed in light of accepted child welfare standards, ORR's "process" for declaring family members unfit—or, more accurately, the utter lack of process—is singularly aberrational and therefore presumptively unconstitutional. *See Schad v. Arizona*, 501 U.S. 624, 640 (1991) (plurality opinion) ("widely shared practice" is a "concrete indicator[] of what fundamental fairness and rationality require"); National Council of Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases* 30 (1995), http://www.ncjfcj.org/sites/default/files/resguide_0.pdf (requiring that a "preliminary protective hearing" "must take place promptly").

Applying the test prescribed in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires courts to evaluate (1) the private interests at stake; (2) the risk of an erroneous deprivation of liberty with and without additional safeguards; and (3) any countervailing interests, it is clear that ORR's process exhibits substantial deficiencies and Gabriela is therefore likely to prevail on her constitutional claim.

Gabriela has substantial constitutionally protected interests in physical liberty, family unity, and family association, discussed *supra*, as well as a right to freedom from involuntary civil commitment without trial or proof of dangerousness, *O'Connor v. Donaldson,* 422 U.S. 563, 575 (1975); a right to placement in the least restrictive setting consistent with her best interests, 8 U.S.C. § 1232(c)(2)(A); and a right to release to a qualified custodian "without unnecessary delay," *Flores* Settlement, Ex. 1 ¶ 14. ORR's opaque, outlier "process" for summarily disqualifying custodians creates a palpable risk of error. *See, e.g., Beltran*, 222 F. Supp. 3d at 485 (deficiencies in

ORR's procedures for determining custodian's fitness were exacerbated by putting the onus on the custodian to change the agency's mind without any requirement that ORR justify its deprivation of fundamental rights). And although ORR has a legitimate interest in protecting children, it has no interest in detaining Gabriela without notice or an opportunity to be heard. ORR's sole interest in denying greater fairness and transparency is its own administrative convenience, nothing more.

## V. GABRIELA SATISFIES ALL REQUIREMENTS FOR A PRELIMINARY INJUNCTION, WHETHER PROHIBITORY OR MANDATORY.

Defendants argue that reunifying Gabriela with her family would require a mandatory injunction, and that the facts and law must therefore clearly favor her position.[10] Opp. at 4-5. They do.

Gabriela has shown that she is likely to prevail on the merits of her claim that her continued detention by ORR is unlawful. The remaining factors – the likelihood of irreparable harm in the absence of preliminary relief, the balance of the equities, and the public interest, *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) – each also weigh in her favor.

Gabriela has demonstrated that her time in ORR's custody, including multiple

---

[10] For the time being, the Ninth Circuit applies separate standards for injunctions depending on whether they are prohibitory, i.e., aimed at preventing future conduct, or mandatory, i.e., "they go beyond 'maintaining the status quo[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017). The Court of Appeals acknowledges that application of these different standards "is controversial" and has "'led to distinctions that are more semantic than substantive.'" *Id.* at 997-98 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)).

The instant motion is no exception. On the one hand, ORR is confining Gabriela at St. Michael's. On the other, this motion aims to prevent *future* injury: i.e., ORR's prolonging Gabriela's confinement, thereby depriving her of personal liberty, family association, and the least restrictive placement consistent with her best interests, and subjecting her to even greater irreparable injury in ORR's substandard facility.

In short, the only way to prevent *future* unlawful conduct and the infliction of *future* irreparable injury is to enjoin the status quo. *Hernandez* , *supra*, at 998-99 (requirement that "government conduct new bond hearings" can "be understood as merely prohibiting the government from continuing to detain individuals subject to bond amounts set through unconstitutional procedures").

As argued in the text, the distinction between mandatory and prohibitory injunctions is beside the point: Plaintiff qualifies for relief under either standard, whatever difference there may be between them.

14.

1  misdiagnoses, unnecessary hospitalization, and harmful responses to her significant

2  trauma history have had, and continue to have, grave implications for her mental

3  health.[11]  Ex. 34 at 305, 309.  She is at risk every day that she remains in ORR's

4  custody.  Because ORR's only legitimate interest and, in fact, its only *stated* interest is

5  to protect her from harm and neglect, the parties' interests are aligned and weigh in

6  favor of releasing Gabriela to her grandfather and ending the detention that is causing

7  her so much harm.  Finally, "it is always in the public interest to prevent the violation

8  of a party's constitutional rights."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

9  2012) (citations omitted).  Each factor therefore weighs in Gabriela's favor.

10       Defendants ask the Court to consider the vague "possibility of harm outside of

11  [ORR's] custody," relying on the ORR home study and the supposed unanimous

12  opinion of Gabriela's child advocate, immigration attorney, and case workers that she

13  should be placed in a URM program, and not with her grandfather.  Opposition at 21-

14  23.  But, as explained *supra*, Plaintiffs have comprehensively rebutted each of the

15  concerns articulated in the home study, *see* Motion at 10-14.  In addition, contrary to

16  Defendants representations, those close to Gabriela, *including* her child advocate and

17  immigration attorney, strongly support her stated wish to reunify with her grandfather

18  and agree that immediately placing Gabriela with Isaac would be in her best interests.

19  Ex. 35 ¶¶ 2, 14; Ex. 36 at 1-5.  Finally, the suggestion that ORR may refuse to release

20  Gabriela to Isaac and prolong her detention in favor of a possible placement that may

21  or may not be available to her in the future ignores ORR's current responsibility to

22  place Gabriela in the least restrictive setting consistent with her best interests.  *See* 8

23  U.S.C. § 1232(c)(2)(A).  Gabriela should be placed with Isaac both because he can

24  provide her with the stable, loving support she needs and because what he offers is far

25  superior to continued detention.[12]

---

26  [11] Gabriela's trauma history compounds her vulnerability, but, as explained in
    Plaintiffs' Motion, it has long been recognized that even short periods of detention are
27  inimical to the well-being of any young person.  *See* Mot. at 8-9.
    [12] In Dr. Cohen's words, "there is something very troubling about a system in which
28  children are kept institutionalized and loving family members denied sponsorship

In similar cases, district courts in this circuit have protected children from ongoing harm in ORR custody by issuing mandatory injunctions.  In *Ms. L. v. United States Immigration & Customs Enforcement*, the plaintiffs challenged ICE's practice of separating migrant families and placing children in ORR custody.  310 F. Supp. 3d 1133, 1137-38 (S.D. Cal. 2018).  Plaintiffs requested classwide injunctive relief prohibiting blanket family separations going forward and requiring the Government to reunify separated families unless the parent is unfit or dangerous.  *Id*. at 1137.  As here, ICE argued in *Ms. L.* that the plaintiffs were required to meet the heightened standard for a mandatory injunction before the court could order it to reunify separated families.  *Id*. at 1141 n.8.  The court considered *only* whether the plaintiffs had a fair chance of prevailing on their claim that ICE's separating their families violated their substantive due process right to family integrity, *id*. at 1142, yet held the plaintiffs entitled to a mandatory preliminary injunction requiring ICE to reunify their families.  *Id*. at 1141 n.8.

Similarly, in *Saravia v. Sessions*, the court preliminarily enjoined ICE from re-arresting children ORR had previously released without affording them a hearing at which the children could contest the cause for re-arrest.  280 F. Supp. 3d at 1205-06.  The court considered *only* whether the plaintiff would likely prevail on a procedural due process claim.  Again, the court held the plaintiff entitled to preliminary relief:

> Even assuming that implementation of the hearing process described above constitutes a "mandatory" rather than a "prohibitory" injunction, A.H. is entitled to the relief he seeks. . . .  The detention of minors without due process results in "extreme or very serious damage" to this vulnerable population that is not "capable of compensation in damages."

*Id*. at 1201 (citations omitted).

The case at bar is indistinguishable from *Ms. L.* and *Saravia*.  If anything, Gabriela's case is even stronger, drawing force not only from the Due Process Clause, but also from a specific statute—the TVPRA—*and* a consent decree—the *Flores*

---

based on criteria which—were they applied to households throughout America—would find the vast majority of normal, healthy parents unacceptable."  Ex. 34 at 313.

Settlement—both of which make it *more* likely that Gabriela will prevail than the plaintiffs in *Ms. L.* or *Saravia*. Neither court shrunk from issuing "mandatory" preliminary injunctions to save children from irreparable harm, and neither should this Court.[13]

## VI. CONCLUSION

For the foregoing reasons, the Court should grant this motion and preliminarily enjoin ORR from continuing to detain Plaintiff Gabriela in lieu of placement with Isaac.


Dated: September 5, 2018.
      CARLOS HOLGUÍN
      Center for Human Rights &
      Constitutional Law

      HOLLY COOPER
      CARTER WHITE
      University of California Davis School of
      Law

      LEECIA WELCH
      NEHA DESAI
      POONAM JUNEJA
      CRYSTAL ADAMS
      National Center for Youth Law

      SUMMER WYNN
      MARY KATHRYN KELLEY

---

[13] Defendants briefly complain that the Court's issuing a preliminary injunction would grant Gabriela "the very relief she hopes to obtain through this entire action . . . ." Opp. at 22. That is clearly not the case.

The relief Plaintiffs seek in this action is almost entirely *procedural*: that ORR must afford children greater transparency and fairness before declaring their available custodians unfit, dispatching them to secure facilities, or forcing them to consume psychotropic drugs. Obviously, the Court ordering ORR to place Gabriela with Isaac would grant none of this relief.

And even with respect to altering Gabriela's placement, nothing in the *Flores* Settlement, at least, would prevent ORR from placing Gabriela elsewhere were Isaac actually to prove an unfit custodian. Paragraph 16 of the *Flores* Settlement provides: "The INS may terminate the custody arrangements and assume legal custody of any minor whose custodian fails to comply with the agreement required under Paragraph 15." Paragraph 15 requires, *inter alia*, that a custodian agree to "provide for the minor's physical, mental, and financial well-being . . . ." Defendants have not shied away from re-arresting class members in the past. *See Saravia*, 280 F. Supp. 3d at 1177-79, 1202-03.

1

2
JON F. CIESLAK
MEGAN DONOHUE
Cooley LLP

3
/s/ *Leecia Welch*

4
Leecia Welch

5
*One of the Attorneys for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18.