1

CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

2

3

4

5

*Listing continues on next page*

6

*Attorneys for Plaintiffs*

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

14

15

LUCAS R., *et al.*,

Case No.  CV 2:18-CV-05741

16

Plaintiffs,

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

17

v.

18

ALEX AZAR, Secretary of U.S.
Department of Health and Human
Services; *et al.*,

Hearing:    November 2, 2018
Time:       9:30 a.m.
Room:       1st St. Courthouse
            Courtroom 8C

19

20

Defendants.

21

22

23

24

25

26

27

28

*Counsel for Plaintiffs, continued*

HOLLY S. COOPER (Cal. Bar No. 197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (Cal. Bar No. 164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email:  hscooper@ucdavis.edu
        ccwhite@ucdavis.edu

LEECIA WELCH (Cal. Bar No. 208741)
NEHA DESAI (Cal. RLSA Bar No. 803161)
POONAM JUNEJA (Cal. Bar No. 300848)
National Center for Youth Law
405 14th Street, 15th Floor
Oakland, CA 94612
Telephone: (510) 835-8098
Email:  lwelch@youthlaw.org
        ndesai@youthlaw.org
        pjuneja@youthlaw.org

CRYSTAL ADAMS (Cal. Bar No. 308638)
National Center for Youth Law
1313 L St. NW, Suite 130
Washington, DC 20005
Telephone: (202) 868-4785
Email: cadams@youthlaw.org

SUMMER WYNN (Cal. Bar No. 240005)
MARY KATHRYN KELLEY (Cal. Bar No. 170259)
JON F. CIESLAK (Cal. Bar No. 268951)
MEGAN K. DONOHUE (Cal. Bar No. 266147)
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 550-6000
Email:  swynn@cooley.com
        mkkelley@cooley.com
        jcieslak@cooley.com
        mdonohue@cooley.com

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ......................................................................4
        A.      Procedural and Legal Background ..........................................4
        B.      Factual Background ................................................................6

III.    PROPOSED CLASS DEFINITION...................................................11

IV.     THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A).........13
        A.      Plaintiffs Satisfy the Numerosity and Impracticality of Joinder
                Requirement. ...........................................................................13
        B.      Plaintiffs Satisfy the Commonality Requirement. ...............16
        C.      Plaintiffs Satisfy the Typicality Requirement.....................18
        D.      Plaintiffs Satisfy the Adequacy of Representation Requirement............21

V.      THIS ACTION SATISFIES THE REQUIREMENTS OF RULE
        23(B)(2). ..............................................................................................23

VI.     CONCLUSION .....................................................................................25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
Cv 2:18-cv-05741

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013)..................................................................17, 18

*Aichele v. City of L.A.*,
  314 F.R.D. 478 (C.D. Cal. 2013) ..........................................................13

*Angela R. v. Clinton*,
  999 F.2d 320 (8th Cir. 1993)..................................................................22

*Aristotle P. v. Johnson*,
  721 F. Supp. 1002 (N.D. Ill. 1989)........................................................5

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005)............................................17, 18, 19

*Bentley v. United of Omaha Life Ins. Co.*,
  No. CV 15-7870-DMG, 2018 U.S. Dist. LEXIS 117107 (C.D. Cal. May 1, 2018) ....................................................................................14, 23

*Braam v. Washington*,
  81 P.3d 851 (Wash. 2003)......................................................................22

*Church of Scientology of California v. United States*,
  506 U.S. 9 (1992)....................................................................................21

*D.B. v. Cardall*,
  826 F.3d 721 (4th Cir. 2016)..................................................................5

*David C. v. Leavitt*,
  No. 93-C-206W (D. Utah) ......................................................................22

*Flores v. Sessions*,
  862 F.3d 863 (9th Cir. 2017)................................................................3, 23

*Flores v. Sessions*,
  No. 85-4544-DMG......................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Flores v. Sessions*,
   No. 85-cv-4544, Dkt. No. 470.................................................................6

*Flores-Torres v. Mukasey*,
   548 F.3d 708 (9th Cir. 2008)................................................................23

*Franco-Gonzales v. Napolitano*,
   No. CV 10-02211 DMG, 2011 WL 11705815 (C.D. Cal. Nov. 21,
   2011) .................................................................................................20

*Gerstein v. Pugh*,
   420 U.S. 103 (1975)............................................................................20

*Hanberry v. Lee*,
   311 U.S. 32 (1940)..............................................................................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).........................................................18, 22

*Jacobs v. Clark Cty. Sch. Dist.*,
   526 F.3d 419 (9th Cir. 2008)................................................................21

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S.
   810 (1982) .....................................................................................13, 16

*L.J. v. Massinga*,
   838 F.2d 118 (4th Cir. 1988), *cert. denied*, 488 U.S. 1018 (1989).........................22

*L.V.M. v. Lloyd*,
   No. 1:18-cv-01453-PAC, 2018 U.S. Dist. LEXIS 107692 (S.D.N.Y.
   June 27, 2018)......................................................................................2

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997)..............................................................22

*M.B. v. Corsi*,
   No. 17-4102-NKL (W.D. Mo.) ............................................................22

# TABLE OF AUTHORITIES
## (continued)

**Page**

*M.B. v. Corsi*,
No. 2:17-cv-4102-NKL, 2018 U.S. Dist. LEXIS 120329 (W.D. Mo.
July 19, 2018) ...........................................................................................2, 5, 22

*Mathews v. Eldridge*,
424 U.S. 319 (1976)...............................................................................................5

*Ms L. v. ICE*,
No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364 (S.D.
Cal. June 26, 2018) ...............................................................................................2

*Orantes-Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982)...............................................................14, 22

*Parham v. J. R.*,
442 U.S. 584 (1979)...............................................................................................5

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014).............................................................................19, 24

*Perez-Olano v. Gonzalez*,
248 F.R.D. 248 (C.D. Cal. 2008) ............................................................18, 22, 24

*Phillips v. Joint Legis. Comm.*,
637 F.2d 1014 (5th Cir. 1981).............................................................................16

*Pitts v. Terrible Herbst, Inc.*,
653 F. 3d 1081 (9th Cir. 2011).............................................................................20

*Reno v. Flores*,
507 U.S. 292 (1993)..............................................................................................22

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010)........................................................16, 17, 18, 24

*Rodriguez v. Nike Retail Servs., Inc.*,
No. 5:14-cv-01508-BLF, 2016 WL 8729923 (N.D. Cal. Aug. 19,
2016) ...................................................................................................................17

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Sali v. Corona Reg'l Med. Ctr.*,
   889 F.3d 623 (9th Cir. 2018)...................................................................................3

*Saravia v. Sessions*,
   280 F. Supp. 3d 1168 (N.D. Cal. Nov. 20, 2017) ..............................................2, 23

*Singh v. Holder*,
   638 F.3d 1196 (9th Cir. 2011)................................................................................23

*Sweet v. Pfizer*,
   232 F.R.D. 360 (C.D. Cal. 2005) ..........................................................................18

*T.R. v. Quigley*,
   No. 09-1677-TSV (W.D. Wash.) ...........................................................................22

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
   209 F.R.D. 159 (C.D. Cal. 2002) ..........................................................................11

*In re U.S. Financial Securities Litigation*,
   69 F.R.D. 24 (S.D. Cal. 1975)................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................................22

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998)..........................................................................17, 24

*Washington v. Harper*,
   494 U.S. 210 (1990)..................................................................................................5

*We Are Am. v. Maricopa County Bd. of Supervisors*,
   297 F.R.D. 373 (D. Ariz. 2013)..............................................................................22

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011) ...........................................................................13

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972) ..........................................................................12, 14

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Zadvydas v. Davis*,
  533 U.S. 678 (2001)................................................................5

**Statutes**

6 U.S.C § 279 ...............................................................1, 12

8 U.S.C.
  § 1232...................................................................12
  § 1232(b)(5)...............................................................2
  § 1232(c)(2)(A)...........................................................4

29 U.S.C.
  § 705...................................................................13
  § 794....................................................................5

Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 ...........................1

Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*.........................4

National Center for Youth Law ...............................................22

Rehabilitation Act of 1973 Section 504...............................2, 5, 6, 17

TVPRA ...................................................................2, 4, 5, 17
  § 235(c)(5)...............................................................5

William Wilberforce Trafficking Victims Protection Reauthorization Act
  of 2008, 110 Pub. L. 457, 122 Stat. 5044 ................................2

**Other Authorities**

8 CFR 236.3(n)..............................................................20

45 C.F.R.
  § 84.4(b)(1)(ii)...........................................................6
  § 84.4(b)(2)...............................................................6
  § 84.4(b)(4)...............................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

83 Fed. Reg.
    45486.................................................................................................................3
    45,504 (Sept. 7, 2018)...................................................................................20

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice &
Procedure*, § 1760 (3d ed. 2018)...............................................................12

7A Charles Alan Wright, Arthur R. Miller, *Federal Practice &
Procedure* § 1763 (3d ed. 2018)...............................................................17

Federal Rule of Civil Procedure
    23(b)(2)..............................................................................2, 12, 23, 24
    23(c)(1)(A) ...................................................................................................3

5 Jerold S. Solovy et al., *Moore's Federal Practice* § 23.24 (3d ed. 2018)................19

Office of Refugee Resettlement, Family Reunification Application,
    available online at
    https://www.acf.hhs.gov/sites/default/files/orr/frp_3s_family_reunific
    ation_application_05_14_18.pdf (last visited Aug. 1, 2018) .................12

Rule
    23.............................................................................................................3, 11
    23(A).....................................................................................................13, 23
    23(a)(1) .......................................................................................13, 14, 16
    23(a)(2) ................................................................................................16, 17
    23(a)(2) ........................................................................................................18
    23(a)(3) ................................................................................................18, 19
    23(a)(4) ................................................................................................21, 23
    23(b) .............................................................................................................23
    23(b)(3) ........................................................................................................12
    23(g) .............................................................................................................23
    23-3 ................................................................................................................3

U.S. Constitution
    First Amendment Association Clause ...................................................2, 17
    Fifth Amendment Due Process Clause ................................................2, 17

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

4

United States Constitution ............................................................................5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

In this action Plaintiffs challenge five policies and practices of the Office of Refugee Resettlement ("ORR") that prolong children's detention under ever-harsher conditions, creating a continuum of trauma that vulnerable children—many of whom arrive in the United States after having suffered horrific trauma in their countries of origin—are ill-equipped to endure.[1]

First, ORR "steps up" children from shelters to medium-secure, secure, and psychiatric facilities without even the most rudimentary procedural protections. Youth housed in shelters report being awakened in the small hours of the morning and soon thereafter finding themselves confined in juvenile halls or psychiatric facilities, where they suffer irreparable harm inherent to confinement.

Second, ORR routinely administers children psychotropic drugs without lawful authorization or other constitutionally required procedural protections. When youth object to taking such medications, ORR compels them. ORR neither requires nor asks for a parent's consent before medicating a child, nor does it seek lawful authority to medicate children without a parent's consent.

Third, ORR prolongs children's detention on the ground that their parents or other available custodians are or may be unfit, but affords neither detained children nor their proposed custodians any meaningful or timely opportunity to be heard regarding a proposed custodian's fitness.

Fourth, ORR blocks lawyers from representing detained children with respect to placement, administration of psychotropic medications, or release to available custodians, notwithstanding that Congress specifically directed ORR to "ensure, to the greatest extent practicable" that children who are or have been in its custody have legal

---

[1] In 2002, the Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 ("HSA"), dissolved the Immigration and Naturalization Service ("INS") and transferred most of its functions to the Department of Homeland Security ("DHS"). Congress directed, however, that the ORR should have authority over the custody and release of unaccompanied minors detained pursuant to the INA. 6 U.S.C § 279.

representation in "legal proceedings or matters."   William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457, 122 Stat. 5044, *codified in pertinent part* at 8 U.S.C. § 1232(b)(5) ("TVPRA").

Fifth, ORR segregates children who have or are perceived to have a behavioral, mental health, intellectual, and/or developmental disability, placing them in secure, medium secure and psychiatric facilities, instead of the most appropriate setting for their needs, thereby further prolonging their detention due to heightened administrative barriers to release from such facilities.

Plaintiffs contend that the foregoing policies and practices violate the settlement in *Flores v. Sessions*, No. 85-4544-DMG ("*Flores* Settlement") (Ex. 1[2]), the TVPRA, the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Freedom of Association Clause of the First Amendment to the U.S. Constitution, and Section 504 of the Rehabilitation Act of 1973. To protect all class members' rights thereunder, Plaintiffs ask the Court to certify this case as a class action under Federal Rule of Civil Procedure 23(b)(2).

Courts routinely certify lawsuits like this one as Rule 23(b)(2) class actions. *See, e.g., Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1205 (N.D. Cal. Nov. 20, 2017) (certifying class action of immigrant children previously in ORR custody); *Ms L. v. ICE*, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D. Cal. June 26, 2018) (certifying class of immigrant children separated from their parents); *L.V.M. v. Lloyd*, No. 1:18-cv-01453-PAC, 2018 U.S. Dist. LEXIS 107692, at *25 (S.D.N.Y. June 27, 2018) (certifying class of immigrant children in ORR custody in New York State and who have been housed in a secure or staff-secure facility); *M.B. v. Corsi*, No. 2:17-cv-4102-NKL, 2018 U.S. Dist. LEXIS 120329, at *2 (W.D. Mo. July 19, 2018) (certifying a class of foster children who are or may be administered or

---

[2] All references to Exhibits (e.g. "Ex. 1") are to the exhibits attached to the Notice of Lodgment filed in conjunction with this motion.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
CV 2:18-cv-05741

prescribed psychotropic medications in state custody).[3] The result here should be no different.

There is little or no dispute that Defendants in fact pursue the policies and practices Plaintiffs challenge here. Nor is there any doubt that ORR's challenged policies and practices impact hundreds, even thousands, of detained immigrant and asylum-seeking children each year. Resolving Plaintiffs' claims involves nearly pure questions of law. This case is inherently suitable for class treatment.[4]

---

[3] Each of the named Plaintiffs, as well as their proposed class members, are also members of the *Flores* class.  (Ex. 1 ¶ 10 (consent decree protects "[a]ll minors who are detained in the legal custody of the INS.").)

As INS's successor-in-interest, the Flores Settlement is fully binding on ORR and will remain so until 45 days after it publishes final regulations implementing the consent decree, which it has yet to do. Flores v. Sessions, 862 F.3d 863, 869-70 (9th Cir. 2017).

On September 7, 2018, the Departments of Homeland Security and Health and Human Services published proposed regulations that purport to implement the substance of the *Flores* Settlement, 83 Fed. Reg. 45486, but instead abrogate critical protections against, *inter alia*, needlessly protracted detention and unlicensed placement. The proposed regulations are accordingly inconsistent with the requirement of ¶ 9 of the *Flores* Settlement, which provides that Defendants' regulations "shall not be inconsistent with the terms of this Agreement."

In any event, the public comment period does not close until November 6, 2018, *id.*, and there is no telling when Defendants will thereafter publish final regulations.

[4] Plaintiffs file this motion promptly in accordance with Fed. Rule of Civ. Proc. 23(c)(1)(A) ("*At an early practicable time* after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.") (Emphasis supplied)), and Local Rule 23-3 ("Within 90 days after service of a pleading purporting to commence a class action . . . the proponent of the class shall file a motion for certification.").  Plaintiffs filed their first motion for class certification of the classes alleged in the Complaint on August 2, 2018.  (Dkt. No. 25-1)  On September 7, 2018 Plaintiffs filed a First Amended Complaint alleging an additional subclass.  (Dkt. No. 81.)  On September 10, 2018, the Court denied class certification without prejudice and ordered that a renewed Motion addressed the new subclass.  (Dkt. No. 85.)

The Court may grant certification so long as it has enough information to support a "reasonable judgment" that the requirements of Rule 23 have been met. *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 632 (9th Cir. 2018) (quoting *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)). As argued below, there is more than sufficient basis to support a reasonable judgment that this action is suitable for class treatment.

## II.   STATEMENT OF FACTS

### A.   Procedural and Legal Background

On January 28, 1997, the Court approved the class-wide *Flores* Settlement. The consent decree sets standards for the custody, detention and release of children detained for alleged civil violations of the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*

The *Flores* Settlement requires ORR to minimize the detention of children and, thereby, the harm detention causes them. Paragraph 14 of the agreement requires ORR to release children from immigration-related custody "without unnecessary delay" so long as their continued detention is not required to secure availability for removal or to protect safety. Paragraph 18 requires ORR to make "prompt and continuous efforts" toward family reunifications and to release children to suitable custodians without unnecessary delay.  (Ex. 1 at 12.)

The *Flores* Settlement also mandates that when the government does keep children in custody, it must house them in non-restrictive facilities. Except in limited enumerated circumstances, Definition 6 and ¶ 19 of the *Flores* Settlement require ORR to place children in non-secure facilities holding a state license to care for dependent— as opposed to delinquent—children.  (Ex. 1 at 5-6, 12.)

In the TVPRA, Congress likewise directed ORR to minimize the detention of children and hold them in the least restrictive setting practicable for howsoever long it does detain them.

Section 235(c)(2)(A) of the TVPRA, codified at 8 U.S.C. § 1232(c)(2)(A), requires ORR to "promptly" place detained children "in the least restrictive setting that is in the best interest of the child," generally, with "a suitable family member."  It further bars ORR from placing a child "in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense."

The TVPRA further requires that "placement of a child in a secure facility shall

be reviewed, at a minimum, on a monthly basis, in accordance with procedures prescribed by the Secretary, to determine if such placement remains warranted." TVPRA § 235(c)(2)(A).

Additionally, the TVPRA requires that ORR "ensure, to the greatest extent practicable" that children from non-contiguous countries who are or have been in its custody "have counsel to represent them in legal proceedings or matters and protect them from mistreatment." TVPRA § 235(c)(5).

The United States Constitution also protects the rights of immigrant children to freedom from unnecessary physical restraint, to freedom from unauthorized or unnecessary administration of psychotropic medications, and to family unity, family care, and family association. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Fifth Amendment's Due Process] Clause protects."); *Washington v. Harper*, 494 U.S. 210, 221 (1990) (individuals "possess a significant liberty interest in avoiding the unwanted administration" of psychotropic medications); *Parham v. J. R.*, 442 U.S. 584, 600 (1979) (finding "a child . . . has a substantial liberty interest in not being confined unnecessarily for medical treatment"); *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) ("Just as parents possess a fundamental right with respect to their children, children also enjoy a familial right to be raised and nurtured by their parents.") (internal citations and quotations omitted); *Corsi*, 2018 U.S. Dist. LEXIS 3232, at *37 ("Plaintiffs have a substantial liberty interest in avoiding the unnecessary administration of medical treatment.") (internal quotations omitted); *Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1006 (N.D. Ill. 1989) (recognizing children's "constitutionally protected right to associate with their siblings"). Defendants may not abridge these liberty interests without appropriate procedures to protect against erroneous deprivation. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319 (1976).

Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794,

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
Cv 2:18-cv-05741

protects immigrant children who have or are perceived to have a disability from being denied the benefits of or subjected to discrimination under programs and activities, like ORR's, that receive federal financial assistance and/or are conducted by federal agencies.  The Department of Health and Human Services regulations implementing Section 504 prohibit ORR from, *inter alia*, affording a qualified person with a disability "an opportunity to participate in or benefit from [an] aid, benefit, or service that is not equal to that afforded others." 45 C.F.R. § 84.4(b)(1)(ii).  The aids, benefits, and services provided by ORR "must afford [children with disabilities] equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).  ORR may not "utilize criteria or methods of administration" that either result in discrimination on the basis of disability or "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives" of ORR's programs and activities with respect to children with disabilities.  45 C.F.R. § 84.4(b)(4).[5]

## B.   Factual Background

The named Plaintiffs are immigrant and asylum-seeking-children who are or have been in ORR custody whom ORR has stepped up, medicated without appropriate procedural protections, including informed parental consent or other lawful authorization, refused to release to available custodians without hearing, denied access

---

[5] The *Flores* class, which includes the named Plaintiffs here, recently moved to enforce the *Flores* consent decree with respect to three of the five claims at issue in this action: (1) step-ups without due process; (2) administration of psychotropic drugs in violation of state law; and (3) declaring class members' proposed custodians unfit without due process. On July 30, 2018, the Court granted in part and denied in part the *Flores* plaintiffs' motion. Order re: Plaintiffs' Motion to Enforce Class Action Settlement, *Flores v. Sessions*, No. 85-cv-4544, Dkt. No. 470.

The Court ruled, absent a showing that Defendants are in contempt of the *Flores* consent decree, that the Settlement does not entitle class members to procedural protections for substantive rights the consent decree confers. *Id.* at 4-6. Plaintiffs' instant claims accordingly remain unresolved and suitable for class-wide disposition here.

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
Cv 2:18-cv-05741

to legal counsel Congress has said they should have, and held in restrictive and prolonged detention because of disability:

- ORR first detained Plaintiff Lucas R. in February 2018. (First Amended Complaint, Dkt. No. 81 ("Compl.") ¶ 24.) In April, ORR refused to release Lucas to his sister in Los Angeles and instead transferred him to the Shiloh psychiatric facility in Manvel, Texas due to his mental health needs, where he was administered psychotropic drugs without the consent of his family or court order. (Compl. ¶¶ 24-32; Ex. 21 ¶¶ 4, 6; Ex. 22 ¶ 14.)  Lucas R. languished in the Shiloh facility until September, when ORR finally consented to his release to his family in Los Angeles, where he now resides.  (Declaration of Leecia Welch ("Welch Decl.") ¶ 2.)  His release occurred only after he had been identified as an individual plaintiff and putative class representative in the instant class action and his mistreatment had been detailed in a motion to enjoin the government's unlawful treatment.  (Dkt. Nos. 1 & 29-1.)

- Daniela Marisol T., a partially deaf seventeen-year-old girl, fled Honduras fearing for her life and arrived at the U.S.-Mexico border in August 2017. (Compl. ¶ 37.) For nearly a year now, ORR has detained Daniela Marisol at various facilities, including Shiloh, where she was placed due to her mental health needs, and the David & Margaret facility in La Verne, California, in lieu of releasing her to her adult sister, who lives in Michigan. (*Id*. ¶¶ 42, 45.) ORR has medicated Daniela Marisol at several facilities, including Shiloh and David & Margaret, without her family's consent or court order. (*Id*. ¶ 42.)

- ORR assumed custody of Plaintiff Miguel Angel S. in May 2017. (Compl. ¶ 47.) For over a year now, it has refused to release Miguel Angel to his father and has instead detained him in a variety of facilities, including Yolo County Juvenile Detention Center and Shiloh, where he was placed due to his mental health needs, and where ORR administered him multiple psychotropic medications, including Remeron, Trazodone, Seroquel, and Lexapro, all without his father's consent or

court order. (Compl. ¶¶ 48, 54, 58.)

- Plaintiff Gabriela N., fleeing sexual violence and physical abuse in El Salvador, arrived alone at the U.S.-Mexico border in January 2017. (Compl. ¶ 59; Ex. 14 ¶ 2.) ORR has now detained her for over a year and a half at various facilities, including Shiloh, where she was placed due to mental health needs, rather than release her to her grandfather's custody in Oakland, California. (Supp. Decl. of Gabriela N., June 8, 2018 Ex. 15 ¶¶ 2, 7.) ORR has administered psychotropic drugs to Gabriela, including Prozac and Adderall, at multiple facilities without court order or her family's consent. (Compl. ¶ 63, 64.)

- Jaime D., a thirteen-year-old orphaned boy, fled from Honduras, fearing he would be killed if he stayed there, and arrived at the U.S.-Mexico border with his six-year-old sister and ten-year-old aunt in April 2018. (Compl. ¶ 70; Ex. 20 ¶ 3.) ORR has detained him in lieu of releasing him to his adult aunt in Maryland. (Compl. ¶¶ 14, 70.) ORR has detained Jaime at various facilities, including Yolo County Juvenile Detention Center and the Children's Village staff-secure and shelter facilities in Dobbs Ferry, New York. (Compl. ¶ 75.)

- Sirena P. arrived at the U.S.-Mexico border with her siblings in April 2018 and her father immediately sought custody from the Southwest Key Campbell shelter in Phoenix. (Compl. ¶ 78.) Despite two home studies and positive recommendations, ORR refused to release Sirena P. due to her mental health needs, while her siblings were reunited with their father. (*Id.*) Alone, Sirena P.'s mental health rapidly deteriorated. (Compl. ¶ 79.) ORR administered her multiple psychotropic drugs, including Hydroxyzine, Prozac, Abilify, and Zoloft, without her father's consent, and transferred her to Shiloh without notice. (Compl. ¶¶ 80-81.) In mid-September, she was finally released, after being named in the First Amended Complaint as an individual plaintiff and putative class representative.

- Autistic and developmentally delayed, Benjamin F. struggles to communicate

unless he is in the presence of his mother.  (Compl. ¶ 87.)  Despite this, he and his brother were inexplicably separated from her in July 2018 and placed in the St. PJ's Children's Home.  (Compl. ¶ 88.)  Shortly thereafter, his brother was released to their grandmother in Los Angeles, but ORR refused to do the same for Benjamin F., instead transferring him to Shiloh in August 2018 because of his disability.  ORR has administered psychotropic drugs to Benjamin F, including Guanfacine, Risperidone, and Lexapro without court order or his family's informed consent. (Compl. ¶¶ 89, 92.)  Benjamin languished at Shiloh until mid-September, when he was finally released to his grandmother in Los Angeles, where he now resides.  (Welch Decl. ¶ 3.)  His release was preceded by his participation in the First Amended Complaint as an individual plaintiff and putative class representative in the instant class action.  (Dkt. No. 81.)

Despite the law's multiple demands that the immigration detention of children be minimized, the named Plaintiffs have either been denied release altogether or unduly delayed in release despite having qualified custodians ready and willing to care for them. (Compl. ¶¶ 24, 29 (Lucas R.), 45-46 (Daniela Marisol T.), 54, 58 (Miguel Angel S.), 66-67, 69 (Gabriela N.), 70, 73, 76 (Jaime D.), 78, 84 (Sirena P.), 88, 94 (Benjamin F.); Welch Decl. ¶¶ 2-4.) Instead, ORR has raised sundry aspersions against each of the named Plaintiffs' family members, yet has provided neither the Plaintiff children nor their proposed custodians any meaningful opportunity to be heard regarding the custodians' fitness. (Compl. ¶¶ 108-109.) The named Plaintiffs remain detained in government custody or were unduly delayed in release, several in secure or psychiatric facilities that are ill-equipped to meet their needs, which both exacerbates their underlying trauma and results in new traumas that threaten their health and safety. (Compl. ¶¶ 34 (Lucas R.), 39 (Daniela Marisol T.), 48-49 (Miguel Angel S.), 62 (Gabriela N.), 74 (Jaime D.), 79 (Sirena P.), 90-91 (Benjamin F.), 102.)

During the many months ORR has detained the named Plaintiffs, ORR has also stepped each of them up to secure or psychiatric facilities without giving them

9.

meaningful advance notice of why they were being transferred, a meaningful opportunity to be heard, or the right to appeal the placement decision. (Compl. ¶¶ 31 (Lucas R.), 41 (Daniela Marisol T.), 52 (Miguel Angel S.), 64 (Gabriela N.), 72 (Jaime D.), 81 (Sirena P.), 90 (Benjamin F.), 123-124.)

Thirteen-year-old Jaime was awoken one morning at 4 a.m. and put on an airplane in shackles to be moved across the country from New York to the Yolo Juvenile Detention Center in California, with no prior notice and no chance to challenge the decision to move him. (Compl. ¶ 72.) Placements such as this are akin to incarceration in a jail or prison, and can be deeply traumatic and harmful to children. (Compl. ¶ 120; Ex. 12 ¶ 6 (youth pepper sprayed at Yolo; forced to wash chemicals out of his eyes with toilet water).[6])

ORR frequently, and as a matter of policy and practice, administers children, including named Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., Gabriela N., Sirena P. and Benjamin F., psychotropic medications without basic procedures to protect against unnecessary or improper administration of these powerful drugs. (Compl. ¶¶ 32 (Lucas R.), 42 (Daniela Marisol T.), 48 (Miguel Angel S.), 64 (Gabriela N.), 80 (Sirena P.), 89 (Benjamin F.), 140-41.) Among other things, ORR does not obtain informed consent from a parent or other legally authorized consenter before administering psychotropic medications to children. (Compl. ¶¶ 26 (Lucas R.), 42 (Daniela Marisol T.), 49 (Miguel Angel S.), 64 (Gabriela N.); 80 (Sirena P.), 89 (Benjamin F. Ex. 19 ¶ 9; Ex. 13 ¶¶ 19-20.) Instead, ORR typically has facility staff sign forms authorizing the administration of psychotropics to children in its custody, in complete derogation of the prerogatives of parents and relatives, as well as state law. (Ex. 9 ¶ 5.[7])

---

[6] ORR forms state that detained children, such as the named Plaintiffs, may request "reconsideration" of placement in a secure or Residential Treatment Center facility, but only *after* they have spent thirty days in one. (Ex. 4.)
[7] ORR also routinely compels children to take psychotropic medications. For example, Gabriela did "not want to take the medications, but [she] was told that if [she didn't] take them, [she] would be disciplined and the staff [would] restrict the little freedom"

ORR routinely obstructs children's access to counsel to assist them in challenging ORR's custody, release, placement, and medication decisions. (Compl. ¶¶ 148-49.) Between 2009 and 2013, ORR paid the Vera Institute of Justice ("Vera Institute") nearly $40 million to provide legal services, and the Vera Institute sub-contracted with legal aid programs to represent immigrant children. (Ex. 5.) Lawyers funded by the Vera Institute at these legal aid programs have been prohibited from representing detained immigrant children, including the named Plaintiffs, with respect to ORR's placement, medication, and release decisions. (Ex. 6 ¶ 9; Ex. 7 ¶ 19 (ORR "hobbles free legal services providers who undertake to represent detained children."); Ex. 8 ¶ 22-24 (same).) The named Plaintiffs received no legal counsel for issues related to step ups, administration of medications, or the fitness of available custodians before class counsel took their cases. (*See, e.g.*, Compl. ¶¶ 35 (Lucas R.), 46 (Daniela Marisol T.), 69 (Gabriela N.), 77 (Jaime D.), 85 (Sirena P.).)

As a matter of policy and practice, ORR steps up children who need mental health services and supports, or whom staff believe need such services and supports, to more restrictive placements, including children who require services that could be provided effectively in a shelter setting. (Compl. ¶¶ 158-61.) Children placed in such restrictive placements experience additional barriers to release. (Compl. ¶¶ 171-75; *see also* Compl. ¶¶ 31, 33 (Lucas R.), 48, 56 (Miguel Angel S.), 64-65 (Gabriela N.), 81, 83-84 (Sirena P.), 90, 93 (Benjamin F.).) For example, while ORR released Benjamin F.'s brother to his family, it sent nine-year-old Benjamin, a child with autism, to Shiloh, prolonging his detention due to his disability. (Compl. ¶¶ 91, 94.)

## III.   PROPOSED CLASS DEFINITION.

Rule 23 implicitly requires that a class be defined so that its membership is ascertainable. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites,*

---

she had. (Ex. 16 ¶ 5.) Similarly, Shiloh staff told Lucas he had "to take the medications in order to be released," which he would have otherwise refused to take. (Ex. 21 ¶ 6.)

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
Cv 2:18-cv-05741

*Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002).

In a Rule 23(b)(2) action for declaratory and injunctive relief, Plaintiffs need only establish that "the general outlines of the membership of the class are determinable at the outset of the litigation." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1760 (3d ed. 2018). Stated otherwise, the class must be sufficiently definite "that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* Unlike a Rule 23(b)(3) action seeking actual damages for individual class members, Plaintiffs need not precisely establish the actual membership of the class. *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). Plaintiffs propose certification of the following:

All children in the custody of the Office of Refugee Resettlement of the U.S. Department of Health and Human Services ("ORR") pursuant to 6 U.S.C. § 279 and/or 8 U.S.C. § 1232 —

1) who are or will be placed in a secure facility, medium-secure facility, or Residential Treatment Center ("RTC"), or continued in any such facility for more than thirty days, without being afforded notice and an opportunity to be heard before a neutral and detached decisionmaker regarding the grounds for such placement; or

2) whom ORR is refusing or will refuse to release to parents or other available custodians within thirty days of the proposed custodian's submitting a complete[8] family reunification packet on the ground that the proposed custodian is or may be unfit; or

---

[8] The family reunification packet should be considered complete when ORR receives the completed and signed "Authorization for Release of Information," the completed and signed "Family Reunification Application" form, and the supporting documents listed on pages 8-10 of the Family Reunification Application, or else a statement from the potential sponsor explaining that one or more supporting documents cannot be provided and why. *See* Office of Refugee Resettlement, Family Reunification Application, available online at https://www.acf.hhs.gov/sites/default/files/orr/frp_3s_family_reunification_application_05_14_18.pdf (last visited Aug. 1, 2018).

3)      who are or will be prescribed or administered one or more psychotropic medications without procedural safeguards, including but not limited to obtaining informed consent or court authorization prior to medicating a child, involving a neutral decisionmaker in the initial determination of whether to prescribe psychotropics to a child in ORR custody, and involving a neutral decision-maker to conduct periodic reviews of those medications as treatment continues;

4)      who are natives of non-contiguous countries and to whom ORR is blocking or will block legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs; or

5)      who have or will have a behavioral, mental health, intellectual, and/or developmental disability as defined in 29 U.S.C. § 705, and who are or will be placed in a secure facility, medium-secure facility, or Residential Treatment Facility because of such disabilities.

Defined in these precise terms, it is "administratively feasible to determine whether a particular person is a class member." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). The classes are therefore adequately defined.

## IV. THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A).

In order to be certified for class treatment, an action must satisfy the four requirements of Federal Rule of Civil Procedure 23(a). This action does so.

### A. Plaintiffs Satisfy the Numerosity and Impracticality of Joinder Requirement.

Rule 23(a)(1) requires that the class be "so numerous that joinder is impractical." "'Impracticability' does not mean 'impossibility,' only difficulty or inconvenience of joining all members of the class." *Aichele v. City of L.A.*, 314 F.R.D. 478, 487 (C.D. Cal. 2013) (internal quotation marks and formatting omitted). The numerosity requirement may be satisfied even if relatively few class members are involved. *See, e.g.*, *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (noting that the court was inclined to find this

requirement "satisfied solely on the basis of [39] ascertained class members"). "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25-30 members." *Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107, at *12 (C.D. Cal. May 1, 2018) (internal citations omitted).

It is not necessary to determine the exact size of the class in order to satisfy Rule 23(a)(1), especially where it would be unreasonable to require the named plaintiffs to identify all class members. *In re U.S. Financial Securities Litigation*, 69 F.R.D. 24, 34 (S.D. Cal. 1975). Rather, "the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions in which the members of the class are often 'incapable of specific enumeration.'" *Yaffe*, 454 F.2d at 1366. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Further, "[t]he numerosity requirement is relaxed" where, as here, "the plaintiff is seeking an injunction or a declaratory judgment because certifying a class would avoid duplicative suits brought by other class members." *Bentley*, 2018 U.S. Dist. LEXIS 117107, at *12.

Here, the members of the proposed class are clearly too numerous to join. Plaintiffs here challenge policies and practices that affect hundreds of children annually. ORR data indicate that in FY2017 the agency took custody of 50,834 children. (Ex. 3 ¶ 10.) Many of these children are members of one or more of the five subclasses.

1)   ORR steps up over 800 youth to secure facilities, medium-secure facilities, or RTCs annually. (*Id.*[9]) All of these children fall within Plaintiffs' proposed "step-up" subclass because, as a matter of policy and practice, ORR gives none of these youth any procedural protection whatsoever against needlessly secure and overly

---

[9] At any given time, ORR detains 25-40 youth in RTCs, 35-52 in juvenile halls, and 109-131 in staff-secure facilities. (Ex. 3 ¶ 10.)

1    restrictive placement. (Compl. ¶ 98.)

2    2)    As for Plaintiffs' proposed subclass comprising children ORR medicates without

3          lawful authority, ORR data indicate that it places some 74 children annually in

4          RTCs. (Ex. 3 ¶ 10.) ORR administers psychotropic drugs to all, or nearly all,

5          children it places in such facilities. (Ex. 23 ¶ 3.) Additionally, ORR administers

6          psychotropics to an unknown number of unidentified children and youth held in

7          juvenile halls, staff-secure facilities, and even shelters. (*See, e.g.*, Ex. 16 ¶ 5; Ex.

8          12 ¶ 12; Ex. 11 ¶ 4.)

9    3)    The proposed subclass of children denied release because ORR thinks their

10         parents or other available custodians are or may be unfit is also too numerous for

11         joinder. The evidence shows that ORR routinely delays or denies the release of

12         children ostensibly because it questions whether their parents or other available

13         custodians will harm or neglect them following release. (*See e.g.*, Ex. 18 ¶ 9

14         (youth detained six months at Shiloh RTC; "I got the impression that the home

15         investigator didn't think I made enough money to be able to support [my

16         granddaughter] and myself."); Ex. 24 ¶ 8 (youth detained for one year and three

17         months; "My case worker told me that the only reason that I haven't been released

18         to my aunt . . . is because I don't have an official birth certificate[.] . . . My mother

19         died before she could register me for [one]."); Ex. 25 ¶ 10 (minor detained four

20         months; "My case manager said the only reason that I haven't been released is

21         that the government is now reviewing my case. They have not told me how long

22         it would take . . ."); Ex. 26 ¶ 5 (youth detained five months; "My mom began

23         trying to get me back . . . Someone came to inspect her house and everything

24         came out well. Neither of us understands why I am still here."); Ex. 27 ¶ 6 (youth

25         detained ten months; "[M]y mom moved from Kansas to Texas to be closer to

26         me. . . . They continued to take long making the decision to let me live with her.

27         According to her, the government did a study of the home, and everything went

28         well.").

4)   All children need a lawyer when ORR steps them up, unlawfully medicates them, or refuses to release them to available custodians because it thinks them unfit. This subclass is therefore likely as large as the first three proposed subclasses combined, adjusted for overlapping membership in those subclasses.

5)   The subclass of children that ORR places in overly secure facilities due to a disability is also too numerous for joinder.  As discussed above, ORR places some 74 children annually in RTCs.  (Ex. 3 ¶ 10.)  These children are necessarily stepped up for an actual or perceived mental health need and are therefore subclass members.  In addition, there are an unknown number of unidentified children in secure or staff-secure facilities who are being unnecessarily segregated due to their disability and delayed in release.

The membership of all five proposed subclasses is also growing constantly because ORR takes new children into custody daily, and it is impossible to identify these future members of the proposed class. When unknown and unnamed individuals are certain to become class members in the future, joinder of their claims "is inherently impracticable." *Jordan*, 669 F.2d at 1320; *Phillips v. Joint Legis. Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981) (finding joinder of unknown future class members "certainly impracticable"); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010) ("The inclusion of future class members in a class is not itself unusual or objectionable.").

The proposed class comprises many hundreds or thousands of children, including many who will become class members in the future and whose identities are currently unknown. This action accordingly satisfies the numerosity requirement of Rule 23(a)(1).

### B.   Plaintiffs Satisfy the Commonality Requirement.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) "[N]ot every question of law or fact must be common to the class; 'all that Rule 23(a)(2) requires is a single significant question of law or

fact.'" *Rodriguez v. Nike Retail Servs., Inc.*, No. 5:14-cv-01508-BLF, 2016 WL 8729923, at *9 (N.D. Cal. Aug. 19, 2016) (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)) (emphasis in original); *see also Rodriguez*, 591 F.3d at 1122 ("[T]he commonality requirements asks [sic] us to look only for some shared legal issue or a common core of facts.").

The standard is even more liberal in a civil rights suit such as this one, in which the class proponents seek injunctive and declaratory relief against "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 1763 (3d ed. 2018); *see also Rodriguez*, 591 F.3d at 1122-24 (finding commonality satisfied in habeas class action involving challenges to prolonged immigration detention without bond hearing); *Walters v. Reno*, 145 F.3d 1032, 1045-46 (9th Cir. 1998) (finding commonality in case challenging notices of deportation proceedings); *Armstrong*, 275 F.3d at 868 (finding commonality where putative class members with different types of disabilities suffered similar harm).

Common questions of law or fact presented in this proposed class action include the following:

- Whether ORR's challenged policies and practices violate the *Flores* Settlement, the TVPRA, the Due Process Clause of the Fifth Amendment, the Freedom of Association Clause of the First Amendment, and/or Section 504 of the Rehabilitation Act;
- Whether ORR administers psychotropic medications to children without the consent of a parent or other lawful authority and without constitutionally required safeguards;
- Whether ORR affords children stepped up to RTCs, juvenile halls, or medium-secure facilities a meaningful opportunity to challenge their placement decisions;

- Whether ORR affords detained children, their parents or other available custodians any viable means to rebut ORR's views regarding a proposed custodian's fitness;
- Whether ORR impedes lawyers Congress funds to represent proposed class members in ORR "matters" and "proceedings;" and
- Whether ORR has a policy and practice of placing children in secure and medium-secure facilities or RTCs because of their actual or perceived disabilities.

Any of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *Abdullah*, 731 F.3d at 957; *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008) ("Courts have found that a single common issue of law or fact is sufficient . . . .") (citations omitted); *Sweet v. Pfizer*, 232 F.R.D. 360, 367 (C.D. Cal. 2005) ("there must only be one single issue common to the proposed class") (internal quotation marks and citation omitted).

That ORR might argue about whether a particular child needs psychotropic medications, secure confinement, or a better custodian, does not negate commonality. Such disputes are immaterial to whether more and better procedures are required to determine fairly and transparently whether ORR's position is justified.

## C.   Plaintiffs Satisfy the Typicality Requirement.

Rule 23(a)(3) requires that the claims of the named plaintiffs be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Typicality exists "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Rodriguez*, 591 F.3d at 1124 (quoting *Armstrong*, 275 F.3d at 868). "The test of typicality is 'whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).  Meeting this requirement usually follows from the presence of common questions of law, and courts have construed subdivisions (a)(2) and (a)(3) to be largely duplicative. *See* 5 Jerold S. Solovy et al., *Moore's Federal Practice* § 23.24 (3d ed. 2018).

As discussed above, the named Plaintiffs have suffered injuries from Defendants' policies and practices that are typical of class members.

1) Each of the named Plaintiffs have been "stepped up" without any meaningful notice or opportunity to be heard.

2) ORR has administered psychotropic drugs to Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., Gabriela N., Sirena P., and Benjamin F. without affording them lawfully required procedural protections.

3) For many months, ORR refused to release any of the named Plaintiffs despite their having qualified custodians to care for them.

4) ORR impeded legal representation of the named Plaintiffs for issues related to step-up, administration of medications, or release to available custodians.

5) ORR stepped up Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., Gabriela N., Sirena P., and Benjamin F. due to actual or perceived disabilities, thereby erecting additional barriers to their release.

The named Plaintiffs have identical legal theories and seek the same relief for the class as a whole. The named Plaintiffs seek to vindicate the rights of unnamed class members that are violated through ORR's uniform policies and practices. *See, e.g., Armstrong*, 275 F.3d at 869-70 (holding that the typicality requirement is met "[w]here the challenged conduct is a policy or practice that affects all class members" and the unnamed class members suffer similar injuries as the named plaintiffs). The typicality requirement of Rule 23(a)(3) is accordingly satisfied.

The three named Plaintiffs ORR has finally released from custody, Lucas R.,

Sirena P., and Benjamin F., may still serve as class representatives. First, their claims are "inherently transitory," both because these individuals "could . . . suffer repeated [harm]" and "because 'it is certain that other persons similarly situated' will have the same complaint." *Pitts v. Terrible Herbst, Inc.*, 653 F. 3d 1081, 1090 (9th Cir. 2011) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11 (1975)). While each of these plaintiffs is currently residing with a sponsor relative, ORR retains the authority under the *Flores* settlement to resume custody of these children if it determines that the custodian is no longer suitable. (Ex. 1 ¶¶ 15-16.) Thus, Lucas R., Sirena P., and Benjamin F. could each return to ORR's custody at any time and once again suffer its unlawful policies and practices.[10] In addition, ORR's detention of thousands of children makes it certain that other similarly situated children will be subject to the policies and practices Plaintiffs challenge and have the same complaints. "In such cases, the named plaintiff's claim is capable of repetition yet evading review, and the relation back doctrine is properly invoked to preserve the merits of the case for judicial resolution . . . . avoid[ing] the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved." *Id.* (internal citations and quotation marks omitted). *See also Franco-Gonzales v. Napolitano*, No. CV 10-02211 DMG (DTBx), 2011 WL 11705815 at *6 & n.7 (C.D. Cal. Nov. 21, 2011) (finding plaintiffs' claims for custody hearings while detained by DHS could go forward, even where three of the named plaintiffs had already received bond hearings, because they were inherently transitory claims that other similarly situated persons were certain to have in the future).

Second, the relation-back doctrine applies not only to claims that are inherently transitory, but also to claims that are "acutely susceptible" to selective mooting by the class opponent. *Pitts*, 653 F.3d at 1091 (holding defendant's attempt to pick off named

---

[10] Indeed, the new regulations proposed by DHS would amend 8 CFR 236.3(n) to specifically authorize the agency to reassume custody of children after release if there is a material change in circumstances. *See* Apprehension, Processing, Care and Custody of Alien Minors and Unaccompanied Alien Children, 83 Fed. Reg. 45,504 (Sept. 7, 2018).

plaintiff via settlement offer did not moot plaintiff's class action). Here, Lucas R., Sirena P., and Benjamin F. were only released *after* they were identified as plaintiffs in the instant action and, in Lucas R.'s case, after he sought a preliminary injunction requiring his release. It may be that ORR's decision to release these Plaintiffs was premised on a misguided litigation strategy that release might frustrate their effort to serve as class representatives, rather than adherence to its obligations under the law. If so, ORR is simply misreading the law, as the instant claims may still be certified and these Plaintiffs named as class representatives despite any change in circumstances.

Third, each Plaintiff seeks nominal damages in addition to injunctive relief. Because release has not completely resolved their claims, the released Plaintiffs maintain a live controversy before this Court. *See Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992) (availability of an additional partial remedy prevents individual claim from being moot); *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 426 (9th Cir. 2008) (due process claims for nominal damages based on past conduct were not mooted where students no longer attended schools at issue).

Thus, each of the named Plaintiffs who have been (or may be) released prior to a decision on class certification can still serve as class representatives. Independently, the remaining Plaintiffs, Daniela Marisol T., Miguel Angel S., Gabriela N., and Jaime D., have claims typical of the class and are proper class representatives.[11]

### D.   Plaintiffs Satisfy the Adequacy of Representation Requirement.

The final requirement for class certification, set out in Rule 23(a)(4), is that the named plaintiffs "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Relevant to this requirement are two questions: "(1) [D]o the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf

---

[11] To the extent that the Court perceives any problems with the adequacy of the current named plaintiffs, Plaintiffs can and should have the opportunity to identify and substitute new putative class representatives to address those concerns.

of the class?" *Hanlon*, 150 F.3d at 1020.

In this case, the interests of the class representatives fully align with those of the proposed class. Their mutual goal is for this Court to declare Defendants' challenged policies and practices unlawful and to enjoin further violations. *Cf. Hanberry v. Lee*, 311 U.S. 32, 41-42 (1940). Where, as here, "the legal issues presented are the same for every potential plaintiff," the named "Plaintiffs' interests are substantively identical to those of the other potential class members." *Corsi*, 2018 U.S. Dist. LEXIS 120329, at *2 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, n.5 (2011)).

Plaintiffs and their counsel will vigorously prosecute this action. In both *Flores v. Sessions* and this action, Plaintiffs' counsel have demonstrated they will zealously advocate for the proposed class. Plaintiffs' counsel are unquestionably qualified to represent both named and unnamed class members. (Exs. 28, 29, 30, 31, 32.)

Plaintiffs' lead counsel is employed by a non-profit organization specializing in federal litigation on behalf of immigrants and refugees. (Ex. 29 ¶ 2.)  He has successfully litigated numerous class actions and individual cases in the federal courts involving the rights of immigrants and non-citizen children, including *Reno v. Flores*, 507 U.S. 292 (1993); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997); *We Are Am. v. Maricopa County Bd. of Supervisors*, 297 F.R.D. 373 (D. Ariz. 2013); *Perez-Olano*, 248 F.R.D. 248; *Orantes-Hernandez*, 541 F. Supp. 351.

Plaintiffs' attorneys also include the National Center for Youth Law (NCYL), a non-profit organization recognized for its wealth of experience specifically bringing class action lawsuits and other complex litigation on behalf of children in government custody, including to protect immigrant and refugee children and address mental health needs and treatment of children. (Ex. 30); *see also, e.g.*, *Flores v. Sessions*, No. 85-4544-DMG (C.D. Cal.); *M.B. v. Corsi*, No. 17-4102-NKL (W.D. Mo.); *Braam v. Washington*, 81 P.3d 851 (Wash. 2003); *T.R. v. Quigley*, No. 09-1677-TSV (W.D. Wash.); *David C. v. Leavitt*, No. 93-C-206W (D. Utah); *Angela R. v. Clinton*, 999 F.2d 320 (8th Cir. 1993); *L.J. v. Massinga*, 838 F.2d 118 (4th Cir. 1988), *cert. denied*, 488

U.S. 1018 (1989).

Plaintiffs' attorneys also include the UC Davis Immigration Law Clinic and Civil Rights Clinic, law school clinical programs recognized for their complex federal litigation on behalf of detained immigrants, detained unaccompanied minors, and prisoners. (Ex. 28); *see, e.g., Flores v. Sessions*, 862 F.3d 863, 881 (9th Cir. 2017) (finding the *Flores* Settlement Agreement was not superseded and upholding the right to a bond hearing for detained immigrant children); *Singh v. Holder*, 638 F.3d 1196, 1205,1208-09 (9th Cir. 2011) (holding the standard of proof required to detain immigrants in prolonged detention is clear and convincing evidence and finding immigrants had the right to simultaneous recordings of bond proceedings); *Flores-Torres v. Mukasey*, 548 F.3d 708, 711-12 (9th Cir. 2008) (holding habeas jurisdiction exists to challenge the legality of one's detention if the individual has a colorable claim to United States citizenship); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-98 (N.D. Cal. 2017) (enjoining the re-detention of unaccompanied minor children without procedural protections).

Finally, Plaintiffs are represented *pro bono* by Cooley LLP, a distinguished international law firm with broad experience in class action and other complex litigation, including *Saravia v. Sessions*, 280 F. Supp. 3d at 1176.[12] (Ex. 32.)

## V.   THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(B)(2).

In addition to satisfying the requirements of Rule 23(a), a certifiable class must meet one of the requirements of Rule 23(b). This action falls squarely within Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole."

---

[12] For the same reasons, Plaintiffs' counsel likewise meet the requirements of Rule 23(g) for appointment as class counsel. *See Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107, at *27 n.5 (C.D. Cal., May 1, 2018) (interpreting the Rule 23(a)(4) adequacy of representation requirement as analogous to Rule 23(g)'s requirements).

MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION
Cv 2:18-cv-05741

Fed. R. Civ. P. 23(b)(2). "[Rule] 23(b)(2) was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d at 1047.

An action is appropriate for class treatment under Rule 23(b)(2) when "'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125-26 (citation omitted) (finding that class of noncitizens detained during immigration proceedings met Rule 23(b)(2) criteria because "all class members' [sic] [sought] the exact same relief as a matter of statutory or, in the alternative, constitutional right"). "Identification of all class members is not necessary under Rule 23(b)(2)." *Perez-Olano*, 248 F.R.D. at 259. Rather, [t]he rule is appropriate ... where plaintiffs bring a class action on behalf of a 'shifting population.'" *Id.* (citation omitted). The classes that Plaintiffs seek to certify are quintessential Rule 23(b)(2) classes.

In this case, Defendants are pursuing policies and procedures which, *inter alia*, arbitrarily consign children to overly secure institutions, cause children to be medicated without due process, continue children in federal custody despite the availability of their parents or other custodians to care for them, impede detained children from getting legal assistance Congress has said they should have and discriminate against children by placing them in overly secure facilities and prolonging their detention due to various disabilities.

The proposed classes are a creation of these challenged policies and practices, and the proposed injunctive and declaratory relief would benefit all class members. Certification under Rule 23(b)(2) is therefore appropriate. *See Parsons*, 754 F.3d at 689 (finding declaratory and injunctive relief proper as to class where "every [member] . . . is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice"); *Rodriguez*, 591 F.3d at 1126 (certifying Rule 23(b)(2) class of immigrant detainees where "relief from a single practice is requested by all class members").

As noted, courts have repeatedly certified classes comprising persons subject to

24.

challenged regulations, practices or policies. *Supra* at 2. Plaintiffs request that this Court do the same.

## VI.  CONCLUSION

For the foregoing reasons, the Court should grant this motion and certify the class proposed herein, appoint the named Plaintiffs as class representatives, and appoint Plaintiffs' counsel to serve as class counsel.

Dated:      September 28, 2018

CARLOS HOLGUÍN
Center for Human Rights &
Constitutional Law

HOLLY COOPER
CARTER WHITE
University of California Davis School of
Law

LEECIA WELCH
NEHA DESAI
POONAM JUNEJA
CRYSTAL ADAMS
National Center for Youth Law

SUMMER WYNN
MARY KATHRYN KELLEY
JON CIESLAK
MEGAN DONOHUE
Cooley LLP

/s/  *Carlos Holguin*
Carlos Holguin

187670911