# Exhibit 8

**Exhibit 8**
**Page 164**

DECLARATION OF MEGAN STUART

I, Megan Stuart, declare and say as follows:

1. I am an attorney licensed to practice in the state of New York. Since 2011, I have been employed by the Urban Justice Center and work for the Peter Cicchino Youth Project ("PCYP")

2. The Peter Cicchino Youth Project provides free civil and immigration legal services to homeless and incarcerated youth under 25 in New York, with a particular focus on LGBTQ youth. PCYP works to interrupt cycles of poverty and criminalization that prevent homeless and street-involved young people in New York City from living their lives to the fullest. We do so by providing holistic, client-centered legal services and case management. PCYP operates legal clinics in drop-in centers and youth programs where homeless youth congregate to access food, showers, laundry, medical care, social services, and community. To meet the needs of undocumented youth, we have partnerships with service providers and community activists who are able to connect homeless immigrant youth with us.

3. My immigration practice involves representing clients in a wide array of affirmative immigration applications, including Special Immigrant Juvenile Status, U Visas, Asylum, Green Card replacements, adjustment

**Exhibit 8**
**Page 165**

of status and naturalization as well as defensive applications for clients in removal proceedings.

4. PCYP clients are a mix of young people who were brought here as children or who fled their home country because of sexual orientation/gender identity-based persecution. Some of these clients have had no contact with immigration, while others are in removal proceedings and homeless.

5. In the course of my practice I have represented unaccompanied juveniles detained pursuant to the Immigration and Nationality Act (INA) and housed by the Department of Health and Human Services' Office of Refugee Resettlement (ORR) at Children's Village, Union County Juvenile Detention Center, Shenandoah, NOVA and Sandy Pines.

6. My representation of these youth includes both advocacy for release from detention and placement in the least restrictive setting possible as well as immigration representation, including applications for various immigration benefits and defense in removal proceedings.

7. Through this work, I have had regular occasion to observe, and am accordingly familiar with, the policies and practices of the ORR and United States Immigration and Customs Enforcement (ICE), toward the detention, release, and treatment of juveniles detained at Children's

- 2 -

**Exhibit 8**
**Page 166**

Village and Union County, which I am informed and believe are generally representative of ORR policies and practices nationwide.

8. The Union County facility in New Jersey and NOVA in Virginia, are secure detention facilities for adjudicated juvenile delinquents; to my knowledge, these facilities are neither licensed nor suited to house dependent, non-delinquent minors. The facilities are surrounded by a secure perimeter fence, and ingress and egress take place through sally ports. To my knowledge, juveniles detained at Union County and NOVA are never allowed outside the facility. Schooling takes place inside the locked gates of the facility; visitation is rare and tightly regulated.

9. In sum, juveniles held at the Union County facility live under palpably prison-like conditions, and those placed there by ORR or ICE are treated little differently from the adjudicated delinquents with whom ORR and ICE detainees are wholly commingled and have regular daily contact.

10. I am informed and believe that pursuant to the 2008 Trafficking Victims Protection Act (TVPRA) as well as the 1997 settlement in *Flores v. Lynch*, No. 85-4544 (C.D. Cal.), neither ORR nor ICE is permitted to place minors in secure juvenile facilities unless no less restrictive alternative is available and appropriate under the circumstances.

- 3 -

**Exhibit 8**
**Page 167**

11. I am further informed and believe that the *Flores* settlement requires ORR and ICE to minimize the detention of juveniles by releasing them to their parents and other reputable custodians except where a particular minor is an extraordinary flight-risk or to ensure his or her safety or the safety of others. In light of what I have observed in the abovementioned facilities, I believe ORR and ICE are clearly in breach of these requirements.

12. In multiple cases of youth detained in these facilities, I have advised ORR of the availability of less restrictive placements, including release to parents, guardians, or other appropriate custodians, yet in my experience ORR generally ignores such alternatives or rejects them without providing detained children, their parents or other proposed custodians, or their counsel a coherent explanation of why it believes release would be inappropriate, nor does ORR provide any meaningful opportunity to examine, much less explain or rebut, any evidence it may have to support having denied children's release. At best, ORR's policies and procedures for determining whether to release a juvenile are ad hoc and adhere neither to accepted standards of due process in immigration proceedings nor to those accepted in the context of child welfare.

- 4 -

**Exhibit 8**
**Page 168**

13. In my experience, ORR never provides a child denied release (i) a written explanation for refusing to release the minor from either Union County or Children's Village facility; a bond redetermination hearing before an immigration judge; a Form I-770; an explanation of the child's right to seek judicial review of ORR's release or placement decisions; or a list of free legal services providers. In effect, ORR affords detained juveniles no meaningful opportunity to be heard on the matter of their release, to see or explain any evidence ORR believes justifies their continued secure confinement, or to appeal ORR's custody or placement decisions administratively.

14. Among my clients whose experience is illustrative of the foregoing are E.S., Roberto Montealegre, and Sandra Igihozo.

15. Sandra Igihozo is a now 20- year-old native and citizen of Rwanda and a member of the class protected under the *Flores* settlement, who was previously detained at the Children's Village in New York.

16. Sandra, who had a stable middle-class childhood, fled Rwanda after she was tortured because of her sexual orientation. During her journey to join her family in Canada, Sandra was sexually assaulted.

17. Sandra was taken into custody by CBP in July 2013, and was placed at Children's Village a few days later. She entered ORR care pregnant and

- 5 -

**Exhibit 8**
**Page 169**

without family in the United States. In July 2013, ORR determined that Sandra would be detained in lieu of release on bond, recognizance, supervision or parole. In October 2013, I requested that the immigration court review ORR's no-release decision and the $20,000 bond set before her transfer to ORR. In a decision dated October 31, 2013, and affirmed December 19, 2013, the immigration court declined to redetermine bond because she believed that she only had jurisdiction over certain custody determinations made by the Attorney General, and not the Office of Refugee Resettlement. Sandra accordingly remained detained. A true and correct copy of this decision is attached as Exhibit A to this declaration.

18. During the pendency of the Bond redetermination motion, I also made a request on October 2, 2013 for ORR to release Sandra into the custody and care of a licensed youth shelter that had agreed to provide her foster care until her 21st birthday. On October 24, 2013, ORR field specialist Elcy Velez denied this request, advising via email that "ORR has no plans to release Sandra at this time." ORR provided no explanation for its decision, nor did it disclose—much less allow Sandra to explain or rebut—any evidence it may have had to support its decision. A true and correct copy of my request and ORR's denial thereof are attached as Exhibit B to this declaration.

- 6 -

**Exhibit 8**
**Page 170**

19. Between October and December 2013, I made several additional requests to ORR for Sandra to be released so that she could enter foster care, all of which were denied without any explanation of the reasons for the decision, the standards employed, or the evidence upon which the decision was based.

20. Sandra remained in ORR custody until January 10, 2014, 20 days before her 18th birthday. I believe the threat of a habeas petition is what motivated ORR and the Attorney General to release Sandra into URM care, though ORR never offered any explanation for reversing its decision to detain Sandra.

21. Despite the stress that months of detention imposed on Sandra and her child, Sandra was eventually able to become a Legal Permanent Resident.

22. In my experience, the Vera-funded legal service providers seem reluctant to aggressively advocate or take legal action when ORR refuses to release a minor or places them in an overly restrictive setting.

23. Although most Vera-funded providers are personally committed to representing immigrant youth with the utmost vigor, the current funding structure deters many from zealously advocating for unaccompanied minors with respect to ORR's often arbitrary detention decisions.

- 7 -

Exhibit 8
Page 171

24. Though I am uniquely situated in terms of capacity and expertise to represent youth in ORR detention, I have been told that because of my advocacy for my clients, Vera-funded providers are not to refer cases to me, or risk losing their funding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August 2016.

Megan Stuart

**Exhibit 8**
**Page 172**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
26 FEDERAL PLZ 12TH FL., RM1237
NEW YORK, NY  10278


URBAN JUSTICE CENTER
123 WILLIAM STREET 16TH FL.
NEW YORK, NY  10038

IN THE MATTER OF                FILE A 205-710-232      DATE: Oct 31, 2013
IGIHOZO, SANDRA

___ UNABLE TO FORWARD - NO ADDRESS PROVIDED

_ _ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE.  THIS DECISION
IS FINAL UNLESS AN APPEAL IS FILED WITH THE BOARD OF IMMIGRATION APPEALS
WITHIN 30 CALENDAR DAYS OF THE DATE OF THE MAILING OF THIS WRITTEN DECISION.
SEE THE ENCLOSED FORMS AND INSTRUCTIONS FOR PROPERLY PREPARING YOUR APPEAL.
YOUR NOTICE OF APPEAL, ATTACHED DOCUMENTS, AND FEE OR FEE WAIVER REQUEST
MUST BE MAILED TO:    BOARD OF IMMIGRATION APPEALS
                      OFFICE OF THE CLERK
                      5107 Leesburg Pike, Suite 2000
                      FALLS CHURCH, VA  20530

___ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE AS THE RESULT
OF YOUR FAILURE TO APPEAR AT YOUR SCHEDULED DEPORTATION OR REMOVAL HEARING.
THIS DECISION IS FINAL UNLESS A MOTION TO REOPEN IS FILED IN ACCORDANCE
WITH SECTION 242B(c)(3) OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C.
SECTION 1252B(c)(3) IN DEPORTATION PROCEEDINGS OR SECTION 240(c)(6),
8 U.S.C. SECTION 1229a(c)(6) IN REMOVAL PROCEEDINGS.  IF YOU FILE A MOTION
TO REOPEN, YOUR MOTION MUST BE FILED WITH THIS COURT:

                      IMMIGRATION COURT
                      26 FEDERAL PLZ 12TH FL., RM1237
                      NEW YORK, NY  10278

___ OTHER: _____

                      _____
                      COURT CLERK
                      IMMIGRATION COURT                        FF

CC: DISTRICT COUNSEL, NYC DISTRICT
    26 FEDERAL PLAZA, ROOM #1130
    NEW YORK, NY,  10278

Ex A1

Exhibit 8
Page 173



**U.S. Department of Justice**

Executive Office for Immigration Review
*Immigration Court*

*26 Federal Plaza, 12th Floor Room 1237*
*New York, New York 10278*

File: A205 710 232 - New York
---------------------------------------------x
In the Matter of
IGIHOZO, Sandra                          In Removal Proceedings
Respondent.
---------------------------------------------x

On behalf of Respondent:                 On behalf of DHS:
Megan Stuart, Staff Attorney             Fen Lu, Assistant Chief Counsel

**Decision on Motion for Bond Redetermination**

The respondent is a seventeen year old, female, who is a native and citizen of Rwanda. She is alleged to have entered the United States upon presentation of a false passport in an assumed name on or about July 13, 2013 at Dulles International Airport. On or about July 29, 2013, she was apprehended by U.S. Border Patrol Agents near the Canadian border. She explained to the agents that she was attempting to enter Canada. She was placed in custody and served with a Notice to Appear on that date. On the following day, she was served with Form I-286, informing her that DHS had made a determination that she be released from custody under bond in the amount of $20,000.[1]

The respondent was previously before Immigration Judge Gabriel C. Videla when, through counsel, she indicated she wished a bond redetermination. Judge Videla instructed counsel to file the motion by October 9, 2013, and the Department to reply by October 17, 2013. The Department did not respond. On October 17, 2013, the matter was assigned to me for consideration. I granted the Department an extension to respond, and they have filed a memorandum in opposition to the respondent's motion. The respondent has replied to that memorandum in opposition.

As more fully described in her pending motion, the respondent was forced to flee Rwanda after she was detained by the police and threatened with death when her sexual orientation

---

[1] The Record of Proceeding does not include Form I-286. However, respondent has supplied a copy of such document (Exhibit C to Reply to DHS Opposition), and the Form I-213 (Exhibit B to Emergency Motion filed by respondent) confirms that such determination was made at the time of her apprehension. Respondent indicated on Form I-286 that she requested a redetermination of this custody decision by an immigration judge.

**Exhibit 8**
**Page 174**

(lesbian) was discovered.  Her mother made arrangements with a step-cousin to take the
respondent to Canada, where she has family.  Unfortunately, en route to the United States, she
was raped by her step-cousin.  In the United States, she sought to escape from him and took a cab
to the US-Canadian border where she was apprehended and these proceedings were initiated. [2]
The respondent asserts that she is pregnant as a result of the rape by her step-cousin, and is due to
deliver a child approximately one month after her 18th birthday.

Respondent is currently housed at Children's Village in Dobbs Ferry, New York.  She
asserts that she is not comfortable in that setting, has no educational opportunities there, and
most of the children are much younger than she is.  In Rwanda, she had completed most of her
high school education and speaks three languages.  She has presented documentation to show
that she has been accepted into the Safe Horizon's Streetwork Project, and has offered a "detailed
release plan" written by that office's social worker.  However, the Office of Refugee
Resettlement ("ORR"), through its Federal Field Specialist, Elcy Valdez, has declined to allow
such placement and informed counsel for respondent, as recently as October 24, 2013,  that it has
"no plan to release Sandra at this time."

Respondent asserts that the immigration judge has authority to order the release of the
respondent.  DHS asserts that it does not.  I have carefully considered the memoranda and
evidence, and arguments made by both sides and have concluded that an immigration judge has
authority to review the decision of the DHS with respect to determinations relating to bond, but
that it has no authority to interfere with the care and custody of the minor child as determined by
ORR.

The respondent has offered an unreported decision of the Board of Immigration Appeals
to support her position.  That decision is supportive of my conclusion that I continue to have
jurisdiction with respect to bond, and could order the $20,000 bond reduced or that she be
released on conditional parole, but I can not require the Office of Refugee Resettlement to make
any particular determination regarding the placement of the respondent.  The Immigration
Judge's authority to determine conditions of custody under 8 C.F.R. 1236.1(d) extends only to
certain custody determinations by the Attorney General, not the Office of Refugee Resettlement.
I have no authority under the Homeland Security Act of 2002 to order the ORR to provide any
particular custody arrangements, or to require them to provide reasons for their custody
decisions.  The Director of ORR is charged with "coordinating and implementing the care and
placement of unaccompanied alien children who are in Federal custody by reason of their
immigration status."  6 U.S.C. 279(b)(a)(A).  The Director has jurisdiction to make placement
determinations, but that does not strip jurisdiction from the Immigration Judge to determine if
custody is warranted in the first place.  Clearly, the overriding consideration in separating the
custody decisions made by the Attorney General from those care and custody issues determined

_____

    [2]The respondent asserts that her baby is due in February (about a month after her 18th
birthday).  The respondent claims that she was raped by her step-cousin, Didier, while in Uganda.
The time-frame of these events is not clear, although it would seem that respondent became
pregnant in approximately May, 2013, nine months prior to her anticipated delivery in February,
2014.

**Exhibit 8
Page 175**

by ORR highlights the need for the expertise of those charged with the best placement of the child for the best interests of the child. The ORR has social workers and experts in these issues, whereas an immigration judge does not. In a hypothetical situation, I might conclude that a seven-year old child should not be detained in custody or be required to post a bond. However, it would be for ORR to decide where that child should be placed and by whom the child should be cared for. While I may feel quite confident, based on the representations of counsel for respondent, that the suggested placement with Safe Horizons appears suitable, apparently ORR does not, and there is no mechanism for me to override their determination as to this child's care and placement. The care of this very vulnerable child has been determined by ORR to be best served at Children's Village.

Having reached the conclusion that I lack the authority to override that determination, I note that DHS has determined that a $20,000 bond is necessary to ensure the respondent's appearance at hearings. The immigration judge does have jurisdiction to review that determination. Unless the DHS wishes to re-evaluate whether such bond, or any bond, is necessary, a hearing will be set solely for the purpose of considering that bond so that when it is determined that respondent may be placed in another setting, or she is over 18 and no longer subject to the care of ORR, the redetermination of the bond, to which she is entitled, will have been completed. The issue of the care and custody exercised by ORR will not be part of the hearing and the sole issues will be whether respondent's release would pose a danger to property or persons and whether she is likely to appear at any future proceedings.

ORDER: IT IS ORDERED that the motion for bond redetermination is Granted in part, and Denied in part.

Patricia A. Rohan
Immigration Judge

Dated: Oct. 31, 2013

THIS DOCUMENT WAS SERVED

|  | ALIEN/ATTY | TA'S |
|---|---|---|
| IN PERSON | ☐ | ☐ |
| VIA US MAIL | ☑ | ☑ |
| VIA FEDERAL EXPRESS | ☐ | ☐ |

DATE 10/31/13 JPR  CLK

Exhibit 8
Page 176

**U.S. Department of Justice**
Executive Office for Immigration Review
Office of the Immigration Judge

File A 079 238 898

In the Matter of

Iginozo, Sandra

In Removal Proceedings

Order of the
Immigration Judge

Supplemented Decision
on Bond Redetermination

I hereby incorporate, in its
entirety, my decision of October 31. 2013
I do not believe I have authority
to order the release or placement
of the respondent I would wish
that I had such authority, but
I do not. The DHS has withdrawn
any bond requirement. It is, in my
opinion, for ORR to find an
appropriate placement for her as soon
a possible given the respondent's
situation

Date: DEC 19 2013
Place: NYC

(Immigration Judge)

2. ALIEN'S COPY

ExA2

Exhibit 8
Page 177
FORM EOIR-21
MAR. 84

# URBAN JUSTICE CENTER

## PETER CICCHINO YOUTH PROJECT

October 2, 2013

The Childrens Village
1 Echo Hills Road
Dobbs Ferry, NY 10522

**Re: Pre 18 Release Plan**
**Sandra Igihozo, A# 205-710-232**

Dear Ms. Valdez, Ms. Claudio, and Ms. Roman,

My name is Gretchen Begley and I am a Case Manager at the Peter Cicchino Youth Project ("PCYP") of the Urban Justice Center. PCYP addresses the legal needs of homeless and street involved youth. I work with the Urban Justice Center's legal team as a social service provider to help released children transition into the community and towards independence. In order to facilitate this transition, I create and carry out individualized social service and education plans.

This plan is submitted in support of Sandra's pre-18 release from Children's Village.[1] As you know, Sandra is pregnant and has no long-term federal care options which means that she is in grave danger of being discharged into homelessness on her 18th birthday and in her third-trimester of pregnancy. Our primary concern, which I know you share, is that Sandra and her child have access to the best long-term care available so that they both have a change at a safe and supported life. Given this, the best long-term option for Sandra is for her to get into State Foster Care, which requires her release from Children's Village before her 18th birthday. Additionally, given that Sandra's life will undoubtedly get more difficult as her pregnancy advances, a release as soon as possible is in her best interest.

The plan detailed below considers Sandra's: A) future housing, B) education, C) medical care and mental health, D) immigration case, E) need for identification, and F) extracurricular enrichment opportunities.  Each component of this plan has been identified based upon my recent conversations with Sandra, her attorney Megan Stuart, and my experience working with numerous unaccompanied youth in New York City.  This plan has been discussed with Sandra and he has agreed to participate.  I have done my best to incorporate information regarding the programs and social service agencies I have identified for Sandra in order to provide context for the services available to unaccompanied children generally in the New York City area.

My proposed Plan for Sandra is as follows:

---

[1] Although it is certainly in Sandra's best interest to transition to foster care upon release from the Children's Village, I have been working concurrently on a pre/post18 plan for Sandra, so that, in the event Sandra does not transfer to Foster Care, his transition to the community is as smooth as possible.

ExB

**Exhibit 8**
**Page 178**

A. **Housing:**

Independent housing opportunities for youth like Sandra in New York City, are funded by the New York Department of Youth and Community Development ("DYCD"). Generally, DYCD housing services include three separate elements: 1) Crisis Shelters, 2) Transitional Independent Living, and 3) Borough-Based Drop-in Centers.

1. Crisis Shelters: Crisis Shelters offer emergency shelter for runaway and homeless youth up to the age of 21.[2] The shelters are the **entry-point** for the DYCD's Runaway and Homeless Youth system. These voluntary, short-term residential programs provide emergency shelter and crisis intervention services aimed at reuniting youth with their families or, if family reunification is not possible, arranging appropriate transitional and long-term placements. In other words, in order for a youth to enter a transitional and long-term housing placement in New York, he or she must first begin in a DYCD "Crisis Shelter", who have the ability to make a referral.

There are three Crisis Shelters in New York City that Sandra is eligible for: Streetworks and the Covenant House. Both programs are tasked with ensuring a youth's transition to long-term placement when other reunification options or placements do not exist. In order to ensure children transition to permanency as quickly as possible, DYCD limits the length of stay for a child in a Crisis Shelter to 30 days, with the possibility of a 30 day extension. Both Streetworks and Covenant House accept children on a first-come first serve basis, however, their intake procedures are different as follows:

    a. Streetworks (209 W. 125th. St., New York, NY 10027, Phone: 212.695.2220)
        i. I have contacted Streetworks about Sandra, and they have agreed to accept her into their crisis shelter. Letter from Streetworks, attached.
        ii. Generally, youth seeking acceptance into the Streetworks program must complete two intake interviews. The youth must come to the shelter from 10am-12pm on Monday, Tuesday, Thursday, or Friday. Streetworks only takes the first four youth who arrive on any given day for intake. It is best to arrive 15 minutes prior to the opening time. If Streetworks has a bed available once a youth completes the intake process, the youth is placed immediately. If however a bed is not available, youth are placed on the waitlist. A youth placed on the waitlist must call Streetworks daily in order to determine if and when a bed is available.

    b. Covenant House (460 W 41st St, New York, NY 10026)
        i. Covenant House will conduct an intake of a youth at any time, day or night. Youth will be placed immediately, if a bed is available. If a bed is not available, youth are referred to adult crisis shelters. Due to Urban

---

[2] Please note that the term "homeless and runaway" youth is broadly defined by the McKinney-Vento Act as a youth who has a primary nighttime residence a publicly or privately operated program, including transitional housing. The definition of homeless, as defined by the federal statute, is so broad that it deems children who are in ORR facilities "homeless" as well as children who are in independent living placements that provide housing to youth for years.

**Exhibit 8**
**Page 179**

Justice Center's long-standing relationship with the Covenant House, we frequently communicate directly with Covenant House Legal Director Nancy Downing when a client of ours is expected to arrive for intake. [3] We have already communicated with Nancy Downing about Client's case, and she is prepared to coordinate Client's placement at the Covenant House if and when necessary.

    c.  Ali Forney Center ("AFC") (321 W 125th St New York, NY)

        i.  AFC offers a scattered-site emergency housing program for LGBTQ youth with sites in Queens and Brooklyn. They offer temporary housing in safe, staff-supervised homelike apartments. LGBTQ youths are able to reside in our emergency housing program for up to six months while we assist them in moving on to more permanent housing. Currently AFC has 4 emergency housing apartments and a total of 49 beds.

Both the Covenant House and Streetworks provide the following services to their residents:

- Crisis Center
- Community Centers
- Street Outreach
- Transitional Housing Program
- Health Services
- Mental Health Services
- Mother & Child Programs
- Regional Training Centers
- Substance Abuse Services
- Vocational Training Institute

2. Transitional Independent Living: Transitional Independent Living (TIL) facilities provide homeless youth between the ages of 16 and 21 with support and shelter as they work to establish an independent life.  As mentioned above, a young person in need of long-term residential services must first visit a Crisis Shelter and obtain a referral to a Transitional Independent Living facilities.  Youth may stay in the Transitional Independent Living facilities for up to 18 months. Services offered at TILs include:

- Educational programs
- Vocational training
- Job placement assistance
- Counseling
- Basic life skills training

    a.  There are three long-term programs specifically designed for pregnant and parenting teens, however to be eligible for the program a youth needs to be referred from one of the Crisis Centers.

---

[3]*See* http://www.covenanthouse.org/homeless-charity/new-york

**Exhibit 8**
**Page 180**

      i.    Independence Inn mother-child program;
     ii.    Covenant House mother-child program
   iii.    Inwood house

3. Borough-Based Drop-in Centers: Drop-In Centers are located in each of the five boroughs of New York City, one per borough. The Drop-In Centers provide youth up to the age of 24 and their families with essentials like food, clothing and immediate shelter as well as access to counseling, support, and referrals to relevant services.  Drop-In Centers are open 6 days a week.  Drop-In Centers frequently have close connections to TIL programs, and in limited circumstances, may be able to conduct an intake for possible placement at a partner TIL.

## B. Education:

We would like to enroll Sandra into a traditional high school. We think she would succeed in a traditional educational environment because she is fluent in English and completed all but one month of high school in Rwanda. New York Law guarantees Sandra the right to an education and once she is released, we will take her  the local enrollment center so that she can be immediately placed into a high school.

## C. Medical Care and Mental Health:

Upon release, we will enroll Sandra into Child's Health Plus, New York Sate's low-income insurance plan for youth. Unlike traditional Medicaid, undocumented immigrants are eligible for insurance until they turn 19. We imagine that by the time Sandra is 19, she will have immigration status, thereby becoming eligible for Medicaid.

## D. Immigration Case:

Sandra and her attorney, Megan Stuart, will continue to work together on her immigration applications. Sandra is eligible for the following forms of relief, which she and Megan will peruse. I will escort Sandra to all immigration court appearances, the next of which is on October 17th at 1pm.

      i.    Asylum
          a.    Sandra is prima facie eligible for asylum because she was persecuted in Rwanda because of her sexual orientation. Sandra is working with Megan to develop her asylum application, which will be submitted before Sandra turns 18. Because an asylum application requires Sandra to re-live an extremely traumatic period in her life, it requires several meetings between Sandra and Megan.

     ii.    SIJS
          a.    Sandra is also prima facie eligible for SIJS. Upon release, Sandra and Megan will petition the appropriate family court for a special findings order that they can then submit to USCIS.

   iii.    U-Visa/T-Visa

**Exhibit 8**
**Page 181**

a. Sadly, Sandra is also eligible for a U  and/or T visa based upon the sexual assault from her relative who was entrusted with her care. Sandra and obtain the necessary certifications either by reporting the crime to law enforcement locally, or thu the family court. This process will be started in the next few weeks. Once the requisite certificates are obtained, Sandra and Megan will meet to write a supporting affidavit and then submit the application ASAP.

## E. <u>Identification:</u>

We want to ensure Sandra has all needed identification.  Youth under the age of 18 are able to obtain free picture identification at New York Parks and Recreation.   These identifications include membership to all Park and Recreation centers in NYC, and are only free for youth under 18 years of age.  Upon release, we will escort Sandra to obtain this ID. We believe the New York Parks and Recreation I.D. qualifies as a government issued I.D. because it is issued by NYC.  A Parks and Recreation center is located near our offices at 80 Catherine Street.  Sandra need only bring a birth certificate to become a member and obtain an I.D.

## F. <u>Extracurricular Activities:</u>

In order to ensure Sandra is has access to extracurricular programming and additional supportive services, after her release we will assist Sandra in becoming a member of the Door and Ali Forney Center. The Ali Forney Center is a drop-in space for LGBTQ youth who provides a variety of social services as well as a place for LGBTQQ youth to congregate and socialize. The Door a comprehensive youth empowerment organization.[4] The Door provides a wide range of services to meet the needs of New York City youth aged 12-21, including, but not limited to:

College Advisement & Tutoring
The Talent Search program provides the support and guidance you need to make your way to high school graduation, college and beyond.

Counseling
Counselors are here to listen and help with a range of issues, including anger management, crisis intervention, gender identity, and much more.

Creative Arts
Regularly scheduled, free creative arts classes include a range of performing and visual arts, music and dance.

English Language (ESOL)
The Door offers a flexible schedule of classes for young people who would like to learn English.

Foster Care
If you are in foster care, The Door can provide the additional support you may need to reach your goals.

---

[4] See http://www.door.org/about-door

**Exhibit 8**
**Page 182**

GED
The Door offers a variety of programs to help you get your GED and move on to a career,
college or a vocational/training program.

Health & Dental Services
The Adolescent Health Center (AHC) offers comprehensive health and dental services to all
Door members, regardless of ability to pay.

Jobs & Internships
Jobs & Internships programs give you the chance to explore different career paths and gain skills
to help you find the right job and keep it.

Leadership
The Door offers a range of opportunities to learn key leadership skills that will help you in
school, work and everyday life.

Legal & Immigration Services
The Legal Services Center provides different kinds of legal counsel, including support for
immigrant youth. Services are offered in English, Spanish, Mandarin and French.

LGBTQ
The Door provides a range of programs geared towards Lesbian, Gay, Bisexual, Transgender or
Questioning (LGBTQ) members.

Recreation
Games, workshops, and fitness and performance opportunities are offered on a daily basis.

Runaway and Homeless Youth
If you are homeless or have run away from home, The Door can help you find essentials like
food, clothing and shelter, as well as help with your specific needs.
Sexual Health & Birth Control
The Adolescent Health Center (AHC) offers a comprehensive list of services to meet your sexual
health and birth control needs.

Supportive Housing
In December of 2010, in partnership with Common Ground, The Door opened The Lee, a
supportive housing building located on the Lower East Side.  The Lee currently houses 55 young
people living in their own apartments, often for the first time.

In sum, Sandra is quickly approaching her 18th birthday and we would like to do as much as
possible to ensure that she is best situated for her transition to independent living in the
community should he not have access to foster care.  This requires that Sandra attend numerous
appointments and we truly appreciate your help in transporting Client so that he can have the
best chance possible upon release from the Children's Village.

Exhibit 8
Page 183

I look forward to working with you.  Thank you for your assistance.


Sincerely,


Gretchen Begley, MSW
Case Manager

**Exhibit 8**
**Page 184**



# COVENANT HOUSE NEW YORK

460 WEST 41ST STREET, NEW YORK, N.Y. 10036 • (212) 613-0300

December 18, 2013

Megan Stuart
Staff Attorney
Peter Cicchino Youth Project
Urban Justice Center
123 William Street, 16th Floor
New York, NY  10038

RE:    Sandra Igihozo (DOB: 01/30/1996)

Dear Attorney Stuart,

      This will confirm that Covenant House New York will accept Sandra Igihozo into our Crisis Center Program.  We are aware that Sandra is a minor and we will provide for her essential needs during her stay at Covenant House.  She will be placed in our Mother/Child program located at 427 West 52nd Street, New York, NY 10019.  Covenant House is a crisis intervention center for homeless and runaway youth, under 21 years of age.  We provide shelter, food, clothing, as well as a number of services including medical services, counseling services, employment and education services.  Caseworkers and a case manager work with each youth to develop a case plan, and to help each youth meet his/her goals with the longer term goal of becoming a self-sufficient adult.  If Sandra is in need of services that we do not offer, we will work with her to obtain services through an outside agency.

      Please be advised that because we are a licensed Runaway and Homeless Youth Program (licensed by NYS Office of Children and Family Services), we provide all services and must act in accordance with the New York State Runaway and Homeless Youth Act and the relevant Runaway and Homeless Youth Regulations.

      Please feel free to contact me should you need any additional information.  We look forward to having Sandra Igihozo in our Crisis Center Program, and assisting her in any way possible.  Thank you for your kind assistance in this matter.

Sincerely,

Nancy Downing
Director of Advocacy/Legal Services

ExC

**Exhibit 8**
**Page 185**



US Department of Health and Human Services                    Sponsor's Agreement to Conditions of Release

# OFFICE OF REFUGEE RESETTLEMENT
## Division of Unaccompanied Children's Services

| Name of Minor: Sandra Igihozo | Minor A #: 205-710-232 |
|---|---|
| Aliases (if any): | FINS #: |
| Name of Sponsor: Covenant House New York/Under 21 Date: 12/18/13 | |

Pursuant to Section 462 of the Homeland Security Act, the Office of Refugee Resettlement (ORR) will place the above-named minor into your care and custody, provided that you, as the minor's custodian, agree to:

- Provide for the physical, mental, and financial well-being of the minor.

- Ensure the minor's presence at all future proceedings before the Department of Homeland Security (DHS)/Immigration and Customs Enforcement (ICE) and the Executive Office for Immigration Review (EOIR).

- Ensure the minor reports for removal from the United States if so ordered.

- Notify DHS/ICE and EOIR within (5) five days of any change of residence.

- Notify DHS/ICE at least (5) five days prior to your own departure from the United States and indicate whether the departure is voluntary, pursuant to a grant of voluntary departure, or an order of removal.

- Notify DHS/ICE if dependency proceedings involving the minor are initiated and also notify the dependency court of any immigration hearings pending against the minor.

- Receive written permission from DHS/ICE if you decide to transfer custody of the minor to another person. Please note that in the case of an emergency (serious illness, destruction of home, etc), you may temporarily transfer physical custody of the minor to another person prior to securing permission from ICE, but you must notify ICE as soon as it becomes practical and no later than (72) seventy-two hours.

- Notify DHS/ICE as it becomes practical and no later than 72 hours of your learning that the minor has disappeared, has been threatened, or has been contacted in any way by an individual or individuals believed to represent an alien smuggling syndicate or organized crime.

**I Understand** that release of the above-named minor from the Office of Refugee Resettlement to my custody does not grant the minor any legal immigration status and that the minor must present himself/herself for immigration court proceedings.

**Check the circle that applies:**

○ I received a copy of the above-named minor's Notice to Appear, DHS Form I-862 (NTA).

● I was not provided a copy of the above-named minor's Notice to Appear, DHS Form I-862 (NTA).

### Sponsor's Agreement to Conditions of Release

I hereby acknowledge that I have read/had explained to me in my own language, and agree to these conditions of release of the above named minor into my custody. I further understand that DHS/ICE may refer the minor to ORR, and ORR may resume custody if I do not comply with the conditions of the release agreed to in this form.

_Nancy J Downing_ Director of Advocacy /Legal for     12/18/13
Signature of Sponsor                                  Date
_Covenant House New York /Under 21, Inc._

Notary Seal:        Subscribed to before me this
                    18th day of December, 2013.
                    _Alice Obida_
                                        ALICE OBIDA
                                   Notary Public, State of New York
                                        No. 31-4667734
Sponsor's Agreement to Conditions of Release, Rev. 3/21/05    Qualified in New York County
ORR R-420                                            Commission Expires 8-23-14
[OMB 0970-0278, valid through 06/30/2008)]

**Exhibit 8**
**Page 186**



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Sponsor Care Agreement, Rev. 04/30/2012

## OFFICE OF REFUGEE RESETTLEMENT
### Division of Children's Services
### SPONSOR CARE AGREEMENT

| Name of Minor: Sandra Igihozo | | Minor A #: 205-710-232 |
|---|---|---|
| Aliases (if any): | | Minor DOB: 01/30/1996 |
| Name of Sponsor: Covenant House New York / Under 21, Inc | Date: 12/18/13 | |

You have applied to the Office of Refugee Resettlement (ORR) to sponsor an unaccompanied alien child in the care and custody of the Federal Government pursuant to the *Flores v. Reno* Stipulated Settlement Agreement, No. 85-4544-RJK (Px) (C.D. Cal., Jan. 17, 1997), Section 462 of the Homeland Security Act of 2002 and Section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008.  If your sponsorship application is approved, you will receive an ORR *Verification of Release* form and will enter into a custodial arrangement with the Federal Government in which you agree to comply with the following provisions while the minor is in your care:

- Provide for the physical and mental well-being of the minor, including but not limited to, food, shelter, clothing, education, medical care and other services as needed.

- If you are not the minor's parent or legal guardian, make best efforts to establish legal guardianship with your local court within a reasonable time.

- Attend a legal orientation program provided under the Department of Justice/Executive Office of Immigration Review (EOIR)'s Legal Orientation Program for Custodians (Sponsors), if available where you reside.

- Depending on where the minor's immigration case is pending, notify the local Immigration Court or the Board of Immigration Appeals within five (5) days of any change of address or phone number of the minor, by using an Alien's Change of Address form (Form EOIR-33). In addition if necessary, file a Change of Venue motion on the minor's behalf. The Change of Venue motion must contain information specified by the Immigration Court. Please note that a Change of Venue motion may require the assistance of an attorney. For guidance on the "motion to change venue," see the Immigration Court Practice Manual at http://1.usa.gov/e0H9zL. For immigration case information please contact EOIR's immigration case information system at 1-800-898-7180. Visit EOIR's website for additional information at: http://www.justice.gov/eoir/formslist.htm

- Notify the Department of Homeland Security (DHS)/U.S. Citizenship and Immigration Services) within ten (10) days of any change of address, by filing an Alien's Change of Address Card (AR-11) or electronically, at http://1.usa.gov/Ac5MP

- Ensure the minor's presence at all future proceedings before the DHS/Immigration and Customs Enforcement (ICE) and the DOJ/EOIR. For immigration case information, contact EOIR's case information system at: 1-800-898-7180.

- Ensure the minor reports to ICE for removal from the United States if an immigration judge issues a removal order or voluntary departure order.  The minor is assigned to a Deportation Officer for removal proceedings.

- Notify local law enforcement or your state or local Child Protective Services if the minor has been or is at risk of being subjected to abuse, abandonment, neglect, or maltreatment or if you learn that the minor has been threatened, has been sexually or physically abused or assaulted, or has disappeared. Notice should be given as soon as it becomes practicable or no later than 24 hours after the event or after becoming aware of the risk or threat.

- Notify the National Center for Missing and Exploited Children at 1-800-843-5678 if the minor disappears, has been kidnapped, or runs away. Notice should be given as soon as it becomes practicable or no later than 24 hours after learning of the minor's disappearance.

- Notify ICE if the minor is contacted in any way by an individual(s) believed to represent an alien smuggling syndicate, organized crime, or a human trafficking organization. Provide notification as soon as possible or no later than 24 hours after becoming aware of this information. You can contact ICE at 1-866-341-2423.

- In the case of an emergency (serious illness, destruction of home, etc), you may temporarily transfer physical custody of the minor to another person who will comply with the terms of this *Sponsor Care Agreement.*

- If you are not the child's parent or legal guardian, in the event you are no longer able and willing to care for the minor and unable to temporarily transfer physical custody, and the minor meets the definition of an unaccompanied alien child, you should notify ORR at 202-401-5709.

- The release of the above-named minor from the Office of Refugee Resettlement to your care does not grant the minor any legal immigration status and the minor must present himself/herself for immigration court proceedings.

Exhibit 8
Page 188



U.S. Department of Health and Human Services

Office of Refugee Resettlement
Letter of Designation for Care of a Minor, 04/30/2012

## OFFICE OF REFUGEE RESETTLEMENT
### Division of Children's Services
### LETTER OF DESIGNATION FOR CARE OF A MINOR

The Office of Refugee Resettlement (ORR) takes custody of unaccompanied alien children ("UAC") referred by a Federal entity pursuant to the Flores v. Reno, Stipulated Settlement Agreement, No. 85-4544-RJK (Px) (C.D. Cal., Jan. 17, 1997), Section 462 of the Homeland Security Act of 2002, and Section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008. ORR has authority under the law to transfer custody of a UAC to a sponsor. Your child has been classified as a UAC pursuant to the Homeland Security Act of 2002 §462(g)(2). ORR strongly encourages parents and legal guardians to designate a sponsor for their child.  In the event that you are unavailable to sponsor your child, ORR asks that you designate a sponsor to care for your child (subject to ORR's approval).

I/We are the parent(s) or legal guardian(s) of, _____Sandra Igirihozo_____, born on 01, 30, 1996.

<i>(name of child)</i>          <i>(MM/DD/YYYY)</i>

I/We designate, Covenant House New York / Under 21, Inc., to sponsor our child.

<i>(name of sponsor)</i>

**I consent that the above named sponsor may:**

- Have temporary care-giving authority for my child, until such time as my child is returned to my physical custody; or his/her custody status is altered by a Federal, State, or local agency; or changed by a court of law
- Provide for medical, dental, and mental health care for my child
- Provide for my child's physical and mental well-being, including but not limited to providing, food, shelter, and clothing
- Enroll my child in  school
- Temporarily transfer physical custody of my child in the event of an emergency (serious illness, destruction of home, etc.) to another person who will comply with the *Sponsor Care Agreement.*

| Name of parent(s) or legal guardian(s) signing the form | |
|---|---|
| | (1)_____ |
| | (2)_____ |
| If one of the child's biological parents or other legal guardian is unable to consent please check why | ☐ Deceased          ☐ Mentally or physically unable to give consent |
| | ☐ Abandoned child          ☐ No longer has legal custody of child |
| | ☐ Child's other parent/legal guardian resides in another location *(ORR may send them a separate copy of this form to sign)*          ☐ Other *(ORR may request an explanation)* |
| Address of parent(s) or legal guardian(s) signing the form | |
| Parent(s) or legal guardian(s) signature* | (1)_____ _____(DATE) |
| | (2)_____ _____(DATE) |

\* Please note that by signing this form you are NOT terminating your parental or guardianship rights to your child. You maintain legal custody over your child pursuant to relevant Federal and State law. ORR encourages you to stay in close contact with your child and the child's sponsor in order to help make decisions for the child's care and for medical, educational, and other service. Please also note that if you do not designate a sponsor, ORR may transfer custody of your child to a sponsor identified by ORR.

<b>NOTARY SEAL:</b>

Letter of Designation for Care of a Minor, 04/30/2012
ORR UAC/FRP-9
ORR UAC Program Operations Manual 2012

**Exhibit 8**
**Page 189**



**Urban Justice Center**
123 William Street, 16th Floor, New York, NY 10038
Tel: (646) 602-5600 • Fax: (212) 533-4598
www.urbanjustice.org

December 9, 2013

Office of Refugee Resettlement
Department of Health and Human Services
370 L'Enfant Promenade, S.W.
Washington, D.C. 20447
*Via email to*:
Elcy Valdez Elcy.Valdez@acf.hhs.gov
David Fink David.Fink@ACF.HHS.gov

Re: IGIHOZO, Sandra
A 205-710-232

Dear Elcy and David:

I am writing today to demand the release of Sandra Igihozo by **Friday December 13, 2013.**

As you are well aware, a pre-18 release will allow Sandra to access state-foster care, which is the only way for Sandra to receive the care and support she needs to successfully transition into motherhood and adulthood. Foster care will ensure that Sandra receives the supportive services she needs to develop healthy coping skills for the traumatic events she suffered in Rwanda; on her journey to safety in the United States and the continued uncertainty that plagues her detention here in New York.

If Sandra is not released before her 18th birthday, she will face one of two brutal futures while she applies for lawful status. Upon her 18th birthday, Sandra will either be taken into ICE custody and placed in adult detention, or released from ORR and discharged into homeless while in her third trimester of pregnancy. The second possibility forces Sandra to survive without access to food, clothing, shelter and medical care. Both of these futures are bleak for both Sandra and her unborn child and place her health and life in imminent risk of harm.

Accordingly, I write to demand that Sandra be released to Covenant House, Streetworks or the Children's Village Sanctuary Program, all state-licensed programs. As outlined in the pre-18 release plan previously submitted, upon release, our social worker will facilitate Sandra's transition into foster care and will provide all other necessary social services. Failure to release Sandra violates the terms of the *Flores* settlement, which states that "[ORR] shall release a minor from its custody without unnecessary delay…"

ExD

*individual rights • social change*

**Exhibit 8**
**Page 190**



**Urban Justice Center**
123 William Street, 16th Floor, New York, NY 10038
Tel: (646) 602-5600 • Fax: (212) 533-4598
www.urbanjustice.org

In the alternate, I write to demand that you cease the unlawful detention of Sandra by Friday, December 13th. In our previous conversations, ORR and ICE have taken the position that Sandra is in the sole legal and physical custody of ORR. If this is true, then ORR has no authority to *detain (*rather than *care for*) Sandra. *See* Homeland Security Act § 462(b)(A)-(L), 6 U.S.C.A. § 279(b)(1)(A–L). According to the act, being in DHS custody is a statutory prerequisite for ORR's detention authority over unaccompanied children.

If you have any questions, please do not hesitate to contact me at 646-602-5643 or via email at mstuart@urbanjustice.org.

I look forward to your response,

Megan Stuart
Attorney for Sandra Igihozo

*Cc:*
Toby Biswas Toby.Biswas@ACF.hhs.gov

*individual rights • social change*

**Exhibit 8**
**Page 191**