JOSEPH H. HUNT
Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BRIENA L. STRIPPOLI
Senior Litigation Counsel
BENJAMIN MARK MOSS
Trial Attorney
ANDREW B. INSENGA
Trial Attorney
MARINA C. STEVENSON
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice - Civil Division
    P.O. Box 878
    Ben Franklin Station
    Washington, DC 20044
    Phone: (202) 305-3797
    Fax:   (202) 616-4950
    Marina.c.stevenson@usdoj.gov
Attorneys for DEFENDANTS

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R., et al.,<br>Plaintiffs,<br><br>    vs.<br><br>ALEX AZAR, Secretary of U.S. Dep't of<br>Health and Human Services, et al.,<br>Defendants | Case No.: 2-18-CV-05741<br><br>OPPOSITION TO PLAINTIFFS'<br>MOTION FOR CLASS<br>CERTIFICATION<br><br>Hearing on Motion to Dismiss and Class<br>Certification:<br>November 2, 2018<br><br>Honorable Judge Dolly Gee |

# **TABLE OF CONTENTS**

**INTRODUCTION** ………………………………………………………..**1**

**BACKGROUND** ........................................................................................**1**

  I. Plaintiffs' Amended Complaint ....................................................1

  II. The Flores litigation ......................................................................4

**ARGUMENT** ...........................................................................................**5**

  I. The proposed class is entirely duplicative of the *Flores* Class such that the Court should summarily decline to certify as a matter of law. .....................5

  II. The Court should deny Plaintiffs' Motion to Certify Class because they cannot meet the requirements of Federal Rule of Civil Procedure 23...........8

     A. Legal Standard.......................................................................9

     B. Plaintiffs fail to satisfy the class certification requirements. ..............11
       1. Plaintiffs fail to demonstrate commonality…………………...11
         a. Simply listing questions common to the class is insufficient  ……………………………………………13
         b. There are no questions of law or fact common to the class ……………………...........................................14
       2. Plaintiffs fail to demonstrate the named class members will fairly and adequately protect the interest of the class.................................21
         a. There is no indication that the identified Plaintiffs intend to prosecute the action on behalf of the class…….. 22
         b. The plaintiffs are inadequate to represent the class ………22

**CONCLUSION** ......................................................................................**25**

**CERTIFICATE OF SERVICE** ...........................................................**26**

# TABLE OF AUTHORITIES

## Cases

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)............................................................................12

*County of Riverside v. McLaughlin*,
    500 U.S. 44 (1991)..............................................................................22

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..................................................................... 10, 14

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013)..............................................................................22

*Gerstein v. Pugh*,
    420 U.S. 105 (1975)............................................................................23

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018)..........................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................ 5, 9, 10, 11, 12, 13, 14

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ...................................................... 5, 6, 7

*DG ex rel. Sticklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) .........................................................12

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...................................................... 10, 12

*Flores v. Sessions*,
    862 F.3d 863 (9th Cir. 2017) ...........................................................7, 8

*Flores v. Meese*,
    934 F.2d 991 (9th Cir. 1990) ...............................................................4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................... 11, 21

*Jamie S. v. Milwaukee Pub. Schools*,
    668 F.3d 481 (7th Cir. 2012) ............................................ 14, 15, 16, 21

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) .............................................................6

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ...............................................................9

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .................................................................5

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................9

*Ball v. Union Carbide Corp.*,
   212 F.R.D. 380 (E.D. Tenn. 2002) ......................................................8

*Lightfoot v. District of Columbia*,
   273 F.R.D. 314 (D.D.C. 2011)...........................................................12

*Nguyen Da Yen v. Kissinger*,
   70 F.R.D. 656 (N.D. Cal. 1976) ........................................................11

*Clardy v. Pinnacle Foods Grp., LLC*,
   No. 16-cv-04385, 2017 WL 57310 (N.D. Cal. Jan. 5, 2017) ................6

*In re Google AdWords Lit.*,
   No. 5:08-cv-3369 EJD, 2012 WL 28068 (N.D. Cal. Jan 5, 2012) .............. 11, 13

## Statutes

6 U.S.C. § 279 ..............................................................................................1
8 U.S.C. § 1232 ............................................................................................1
8 U.S.C. § 1232(c)(2)(A) ............................................................................17
8 U.S.C. § 1252 ............................................................................................4
29 U.S.C. § 705 ............................................................................................2

## Rules

Fed. R. Civ. P. 23(a)(4) ..............................................................................21
Fed. R. Civ. P. 23(b)(2)............................................................................9, 21
Federal Rule of Civil Procedure 23 .........................................................1, 8
Federal Rule of Civil Procedure 23(a) ...............................................8, 9, 24

# **INTRODUCTION**

Defendants oppose the pending Motion for Class Certification (Mot.).[1] ECF No. 97. The class, as defined in the Memorandum of Points and Authorities in Support of Motion for Class Certification (Mem.), ECF No. 97-1, and as represented by the named plaintiffs, should not be certified because it is wholly duplicative of the pre-existing *Flores* class. Moreover, Plaintiffs have failed to meet their burden of demonstrating the proposed class, to include the proposed sub-classes, meet the requirements of Federal Rule of Civil Procedure 23.[2]

# **BACKGROUND**

## I. **Plaintiffs' Amended Complaint**

Plaintiffs are unaccompanied alien minors of varying ages, circumstances, and situations—all current or former *Flores* class members—and two legal assistance organizations. First Am. Comp. ¶¶ 10–19. In their action, they seek to reconvene the *Flores* class members "in ORR custody pursuant to 6 U.S.C. § 279 and/or 8 U.S.C. § 1232" falling within six sub-classes.[3] Comp. ¶ 96. These proposed sub-classes are defined as *Flores* class members in ORR custody:

---

[1] This brief is filed on behalf of the agency and official-capacity Defendants. The undersigned do not represent any Defendant in his or her personal capacity.

[2] The Court should deny to certify the institutional plaintiffs because they are not—and never will be—members of the defined class of "[a]ll children in ORR's custody." First Am. Compl., ECF No. 81, ¶ 96.

[3] The Memorandum of Points and Authorities in Support of Motion for Class Certification (Mem.), ECF No. 97-1, does not define or one of the class's alleged in the complaint. *Compare* First Am. Compl. ¶ 96(f), *with* Mem. at 12–13.

- Who are or will be placed in a secure facility, medium-secure facility, or Residential Treatment Center ("RTC"), or continued in any such facility for more than thirty days, without being afforded notice and an opportunity to be heard before a neutral and detached decision[-]maker regarding the grounds for such placement; or

- Whom ORR is refusing or will refuse to release to parents or other available custodians within thirty days of the proposed custodian's submitting a complete family reunification packet on the grounds that the proposed custodian is or may be unfit; or

- Who are or will be prescribed or administered one or more psychotropic medications without procedural safeguards, including but not limited to obtaining informed consent or court authorization prior to medicating a child, involving a neutral decision[-]maker in the initial determination of whether the prescribe psychotropics to a child in ORR custody, and involving a neutral decision-maker to conduct periodic reviews of those medications as treatment continues; [4]

- Who are natives of non-contiguous countries and to whom ORR is blocking or will block legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs; or

---

Therefore, because the Motion does not seek to certify a sub-class defined as all children in ORR custody "who have, will have, or are perceived to have a behavioral, mental health, intellectual and/or developmental disability, and whose release has been, is, or will be denied or obstructed because of such disability or perceived disability," First Am. Compl. ¶ 96(f), the Court should, at a minimum, deny certifying this proposed sub-class.

[4] This Court recently Ordered that, in relevant part, pursuant to Texas law, prior to dispensing psychotropic drugs to *Flores* class members, must obtain informed written consent from a person legally authorized to give medical consent, and if they are unable to obtain consent, "they may not administer the psychotropic medication to the Class Member unless they obtain a court order authorizing them to do so under Texas law or there is an 'emergency . . . .'" *Flores v. Sessions*, No. 85-cv-0544, July 30, 2018 Order, ECF No. 470 at 32.

- Who have or will have a behavioral, mental health, intellectual, and/or developmental disability as defined in 29 U.S.C. § 705, and who are or will be placed in a secure facility, medium-secure facility, or Residential Treatment Facility because of such disabilities.

Mem. at 12–13.  They seek to present five general claims to this Court, that:  (1) ORR violates the *Flores* Settlement, various statutes, and due process by delaying the release of children to sponsors, including non-parental sponsors, without providing a meaningful opportunity to be heard regarding the sponsor's fitness, even before any final determination has been made; (2) ORR violates the *Flores* Settlement, various statutes, and due process by placing the Plaintiffs in various facilities without a meaningful opportunity to be heard before or after such placement; (3) ORR violates the *Flores* Settlement, various statutes, and due process with respect to the administration of psychotropic medications; (4) ORR violates the *Flores* Settlement, various statutes, and due process by allegedly blocking Federally funded contractors providing legal assistance to unaccompanied minors from representing such minors in matters relating to placement, medication, and release; and (5) ORR violates Section 504 of the Rehabilitation Act by placing some of the class members in Residential Treatment Centers, secure facilities or staff-secure facilities or by not releasing them as quickly as desired because of an alleged disability.  First Am. Comp. ¶ 179–94.

## II.     The Flores litigation

The original *Flores* case was based on various allegations about the former Immigration and Naturalization Service's (INS) practices about the detention of minor aliens.  One allegation was that "defendants make no effort to assess the qualifications of other adult relatives or friends regardless of how qualified and responsible such adults may be."  *See Flores v. Sessions*, No. 85-cv-0544, 1985 Comp. ECF No. 1, ¶ 6.  Another allegation was that the failure to provide "prompt, mandatory, neutral and detached review following arrest of the suitability of any available adult" violated the Due Process clause.  *Flores*, 1985 Comp. ¶, ECF No. 1, ¶ 69(b).  For purposes of the litigation, the certified class was defined as "all persons under the age of eighteen [] years who have been, are, or will be arrested and detained pursuant to 8 U.S.C. § 1252 by the INS . . . and who have been, are, or will be denied release from INS custody because a parent or legal guardian fails to personally appear to take custody of them.  *See Flores v. Meese*, 934 F.2d 991, 993 (9th Cir. 1990). In settling the matter, class members agreed that the *Flores* Settlement "constitutes a full and complete resolution of the issues raised in this action."  Preamble at 4.  The *Flores* Settlement created a rudimentary process to address each of the concerns in this current action.  Since the *Flores* Settlement came to fruition, class members have filed various motions to enforce its terms.

On July 31, 2018, the Court granted, in part, and denied, in part, the *Flores* class members' most recent Motion to Enforce.  *See Flores*, July 31, 2018 Order, ECF No. 409, at 27.  Pertinent here, the Court ordered ORR to follow Texas law in administering mental health medication to UACs detained in Texas – in particular,

the Shiloh Regional RTC. *Id*. at 24. Also, for release of minors to a sponsor, the

Court ordered ORR to cease requiring the approval of high-level officials and

ordered that ORR not apply a blanket rule that post-release services be in place

before a child is released to a sponsor. *Id*. at 27-31.

## ARGUMENT

**I.    The proposed class is entirely duplicative of the *Flores* Class such that the Court should summarily decline to certify as a matter of law.**

With respect to the named plaintiffs, Plaintiffs seek to re-write or re-bargain

the *Flores* Settlement by way of a separate cause of action ironically alleging

violations of *Flores*. However, the entire proposed class' interests and rights are

already represented in ongoing *Flores* litigation.[5]

The Ninth Circuit has held that "Plaintiffs generally have no right to

maintain two separate actions involving the same subject matter at the same time in

the same court and against the same defendant." *Adams v. Cal. Dep't of Health

Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). "[I]n assessing whether the second

_____

[5] The first-filed rule and claim-splitting doctrines preclude Plaintiffs from
certifying a class identical to *Flores*. As *Flores* class members, they cannot opt
out. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–62 (2011) (noting that
Rule 23(b)(2) contains no opt-out provision, in part because classwide-injunctive
relief that ends the offending conduct should indivisibly benefit either all or none
of the class members). As Plaintiffs admit, they are *Flores* class members. Mem.
at 3 n.3 Thus the well-established "first-filed" rule permits a district court to
decline jurisdiction over an action when a similar complaint has already been filed
in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th
Cir. 1982).

action is duplicative of the first, we examine whether the cause of action and relief

sought, as well as the parties or privies to the action, are the same." *Id.* at 689.

Two causes of action are considered the same if the "share a common transactional

nucleus of facts" and "rely on substantially the same evidence." *Id.*  In addition,

"[t]he parties in both cases need not be identical, only substantially similar."

*Clardy v. Pinnacle Foods Grp., LLC*, No. 16-cv-04385, 2017 WL 57310, at *3

(N.D. Cal. Jan. 5, 2017) (citing *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,

787 F.3d 1237, 1241 (9th Cir. 2015)).

    The proposed class action clearly "share[s] a common transactional nucleus

of facts," with the *Flores* litigation.  As Plaintiffs admit, "[e]ach of the named

Plaintiffs, as well as their propose class members, are also members of the *Flores*

class."  Mem. at 3 n.3, *see also* First Am. Compl. ¶ 10.  Moreover, as this Court is

well aware, Plaintiffs, as part of the *Flores* Class, have already presented, and in

many instances won, their claims within the *Flores* litigation.  *See*, *e.g.*, *Flores*,

July 30, 2018 Order, ECF No. 409, at 1, 30–31 (*Flores* class challenged the

Defendants' policies and/or practices with respect to placing proposed class

members, as represented in the *Flores* litigation in RTCs, staff-secure facilities,

and secure facilities, administering psychotropic drugs without obtaining a court

order or informed consent of a person authorized by state law to approve such

decisions; and prolonging detention in ORR facilities).  And the proposed class

"rel[ies] on substantially the same evidence" as it did in the *Flores* litigation, as it files *identical* declarations as were already filed and considered in *Flores*. *See* Mot., Ex. Nos. 16, 6, 7, 8, 10, 17.

This approach is impermissible under this Circuit's precedent, *see Adams*, 487 F.3d at 688, and runs counter to the Court's general policy favoring settlement, *see* L. Civ. R. 16-15 ("It is the policy of the Court to encourage disposition of civil litigation by settlement when such is in the best interest of the parties. The Court favors any reasonable means to accomplish this goal."). As a general policy matter, permitting the *Flores* Class to recertify under the auspice of the this litigation would chill the government's—and really any future defendant in a class action—from entering into any future settlement agreements to resolve class actions as this would set the precedent that Settlement Agreements may not be final. Thus, because this "successive, identical class action qualifies as abusive [as it] entails unnecessary duplication," consisting of class members and claims "identical in scope to an earlier certified class action," the Court should decline to certify the class because it "is unnecessary because the class members' claims [have been, and continue to be] litigated in the [*Flores*] action." *Adams*, 487 F.3d at 688. That the Plaintiffs want more than what they originally negotiated for

themselves does not permit them to reconvene the *Flores* class to attempt to create dueling settlement agreements controlling the same class.[6]

## II. The Court should deny Plaintiffs' Motion to Certify Class because they cannot meet the requirements of Federal Rule of Civil Procedure 23.

Even if the Court were to find that, despite being *Flores* Class members, the Plaintiffs class should be permitted to represent a substantively duplicate class, it should still deny Plaintiffs' motion because they do not meet the standards of Federal Rule of Civil Procedure 23.[7]

---

[6] As the Circuit recently stated, "[t]he *Flores* Settlement is the reflection of *both parties'* bargained-for positions." *Flores v. Sessions*, 862 F.3d 863, 879 (9th Cir. 2017) (emphasis added). "The process for detaining and releasing unaccompanied minors may result in a complicated set of determinations, but it is the one the government [and the members of this proposed class, by way of the *Flores* class] agreed to when [the parties] signed the Settlement in 1997." *Id.* The *Flores* class, to include those members in the proposed class, agreed to receive only the protections outlined in the *Flores* Settlement. Those bargained for protections already include a bond hearing where "minors in secure detention . . . [are afforded] an opportunity to contest the basis of [their] confinement." *Id* at 868.

[7] The institutional Plaintiffs—the Children Center and UCARE—are not members of the proposed class and thus cannot adequately represent the class per Rule 23(a) for obvious reasons – *i.e.,* the class is defined as "[a]ll children in ORR's custody," First Am. Compl. ¶ 96, and the institutions are not—and will never be— "children." Plaintiffs make no attempt to include them in the classes. *See* Mem. at 12–13. Thus, these proposed class members fail to satisfy the most basic requirements of Federal Rule of Civil Procedure 23(a) because they will never have: "questions of law or fact common to the class," nor with "the claims or defenses . . . typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a); *cf. Ball v. Union Carbide Corp.*, 212 F.R.D. 380, 390 (E.D. Tenn. 2002), *aff'd*, 376 F.3d 554 (6th Cir. 2004) (rejecting class, in part, when "at least two named plaintiffs are not even members of the plaintiffs' proposed class"). Indeed, it appears that the institutional plaintiffs have been added solely to ensure venue in this Court, as the named Plaintiffs cannot satisfy venue.

## A.      Legal Standard.

 "Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Rule 23(a), the party seeking certification must first demonstrate that:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  *Dukes*, 564 U.S. at 345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  The party seeking class certification also bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Here, Plaintiffs' seek to certify a class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, that that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Rule 23 "does not set forth a mere pleading standard." *Id.* at 350. Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (internal quotation omitted). "[I]t may be necessary for the [C]ourt to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff[s'] cause of action."[8] *Id.* (internal quotation omitted). Indeed, "evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. They typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (citations omitted).

---

[8] As a general matter, for the reasons articulated in the pending Motion to Dismiss, ECF No. 101, Defendants' oppose the proposed class because their claims generally fail as a matter of law or have been mooted by orders in the *Flores* litigation. Because the pleadings fail as a matter of law, there is no logical reason to certify the class to pursue dismissed legal claims.

**B.     Plaintiffs fail to satisfy the class certification requirements.**

Plaintiffs fail to meet their burden of demonstrating all of the requirements of Rule 23(a) and Rule 23(b)(2) are present.  The Court should therefore deny Plaintiffs' motion to certify a class.

**1.     Plaintiffs fail to demonstrate commonality.**

To obtain class certification, Plaintiffs must demonstrate that the proposed class is entitled to common relief.  *See* Fed. R.  Civ. P. 23(a)(2), (b)(2).  Regarding Rule 23(a)(2), the Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.  This requirement is likewise present in Rule 23(b)(2), the Rule under which Plaintiffs seek certification.  For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is available to the class as a while" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.  Accordingly, Plaintiffs have the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to declaratory relief.  *See In re Google AdWords Lit.*, No. 5:08-cv-3369 EJD, 2012 WL 28068 *15–16 (N.D. Cal. Jan 5, 2012) ("The question of which

advertisers a month the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries.").

Although "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality]," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), commonality cannot be established where there is a wide factual variation requiring individual adjudications of each class member's claims, *see Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 663–64 (N.D. Cal. 1976).

If, as is the case here, the factual differences have the likelihood of changing the outcome of the legal issue, then class certification may not be appropriate. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Satisfaction of Rules 23(a)(2) and (b)(2), therefore, requires two steps: (1) the identification of a common legal problem, *see Ellis*, 657 F.3d at 981; and, (2) a demonstration that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Dukes* 564 U.S. at 350 (the common legal problem "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" (emphasis added)). On both these factors, Plaintiffs fail in the burden to establish that certification of the class is warranted.

Further, Plaintiffs' "allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement." *See*, *e.g.*, *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 324 (D.D.C. 2011) (decertifying a class for failure to meet the commonality required by Rule 23(a)(2)) (quoting *DG ex rel. Sticklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010)).  Instead, the Court must examine the merits of the claims as necessary to determine whether there was a "common pattern or practice that could affect the class *as a whole*." *Ellis*, 657 at 983.

### a. Simply listing questions common to the class is insufficient.

Plaintiffs insufficiently attempt to demonstrate commonality by asserting the legal standards governing commonality and then listing six questions they claim are common to the proposed class without articulating how these questions will "generate common answers apt to drive resolution of the litigation." *See* Mem. at 17–18; *see Dukes*, 564 U.S. at 349–50 ("'What matters to class certification . . . is not the raising of common questions . . . , but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation.'") (internal quotations omitted).  In fact, Plaintiffs implicitly concede they cannot establish that each proposed class member would experience common facts that would give rise to each of these legal questions. *See* Mem. at 18 (asserting the legally unsupported argument "[t]hat ORR might argue about

whether a particular child needs psychotropic medications, secure confinement, or a better custodian, does not negate commonality"); *see In re Google AdWords Lit.*, 2012 WL 28068 at *15–16 (holding Plaintiffs have the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to declaratory relief).

Plaintiffs' attempt to meet their burden by simply raising questions asking whether ORR does or does not do something, especially where those questions are premised on particular factual assumptions that may well not apply to all class members, is not enough to satisfy the class certification requirements. *See Dukes*, 564 U.S. at 349 (finding that recitation of questions is "not sufficient to obtain class certification"). Plaintiffs must instead demonstrate that they and the proposed class members all necessarily suffer the same injury. *Dukes*, 564 U.S. at 349–50.

### b. There are no questions of law or fact common to the class.

Plaintiffs' "claims must depend on a common contention of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 254. "'Dissimilarities within the propose class are what have the potential to impede the generation of common answers.'" *Id.* at 350 (quoting *Nagareda, Class Cert.*, 84 N.Y.U L. Rev. at 132). A class definition

which entails individualized questions of fact and law, and which produces unique

answers respective of each claimant, does not meet the requirements for

commonality.  *See Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 498 (7th

Cir. 2012).  As Plaintiffs' implicitly concede, there is wide variation in the

evidence that ORR may rely on in informing its placement, release, and treatment

decisions.  *See* Mem. at 18.

### *Placement:*

With respect to secure, staff-secure, and Residential Treatment care,

Plaintiffs fail to recognize the distinctions between and among the various centers.

*See:* Office of Refugee Resettlement, Children Entering the United States

Unaccompanied, Guide to Terms (available at:

https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-

unaccompanied-guide-to-terms) (hereafter ORR Guide).  Staff-secure is defined as:

> [A] facility that maintains stricter security measures, such as higher
> staff to unaccompanied alien children ratio for supervision, than a
> shelter in order to control disruptive behavior and to prevent escape. A
> staff secure facility is for unaccompanied alien children who may
> require close supervision but do not need placement in a secure facility.
> Service provision is tailored to address an unaccompanied alien child's
> individual needs and to manage the behaviors that necessitated the
> child's placement into this more restrictive setting. The staff secure
> atmosphere reflects a more shelter, home-like setting rather than secure
> detention. Unlike many secure care providers, a staff secure care
> provider is not equipped internally with multiple locked pods or cell
> units; however, the staff secure provider may have a secure perimeter
> with a "no climb" fence."

*Id.*  This is in contrast to a secure facility which is defined in the ORR Guide as:

> Secure Care – A secure care provider is a facility with a physically
> secure structure and staff able to control violent behavior. ORR uses a
> secure facility as the most restrictive placement option for an
> unaccompanied alien child who poses a danger to self or others or has
> been charged with having committed a criminal offense. A secure
> facility may be a licensed juvenile detention center or a highly
> structured therapeutic facility.

*Id.*  A Residential Treatment Center is different from both of the prior categories as
it is designed for children who require intensive mental health services which
cannot be provided on an outpatient basis.  It is defined as:

> [A] sub-acute, time limited, interdisciplinary, psycho-educational, and
> therapeutic 24-hour-a-day structured program with community
> linkages, provided through non-coercive, coordinated, individualized
> care, specialized services and interventions.  Residential treatment
> centers provide highly customized care and services to individuals
> following either a community based placement or more intensive
> intervention, with the aim of moving individuals toward a stable, less
> intensive level of care or independence. ORR uses a RTC at the
> recommendation of a psychiatrist or psychologist or with ORR
> Treatment Authorization Request (TAR) approval for an
> unaccompanied alien child who poses a danger to self or others and
> does not require inpatient hospitalization.

*Id.*  By definition, such recommendations are highly individualized and depend on
the particular constellation of symptoms and behaviors presented by a child.

Plaintiffs make no distinctions between "step-ups" to all three of these very
different types of facilities and the procedures they request.  Moreover, Plaintiffs
fail to discuss whether they advantaged themselves of the procedures that already

do exist with respect to secure facilities and Residential Treatment Centers.  These procedures are listed in section 1.4.7 of the ORR Guide and state:

> After 30 days of placement in a secure or RTC facility, UAC may request the ORR Director, or the Director's designee, to reconsider their placement. The ORR Director, or designee, may deny the request, remand the request to the ORR/FFS for further consideration, or approve the request and order the youth transferred to a staff secure or other care provider facility.

Moreover, Plaintiffs fail to acknowledge the process provided by Congress in statute.  *See* 8 U.S.C. § 1232(c)(2)(A) (stating that the Secretary "prescribes" "procedures" for reviewing, on a monthly basis, the placement of a child in a secure facility).

**Release:**

The subclass Plaintiffs seek with respect to release is: children "whom ORR is refusing or will refuse to release to parents or other available custodians within thirty days of the proposed custodian's submitting a complete family reunification packet on the ground that the proposed custodian is or may be unfit."  But as this Court has acknowledged in the past, ORR "does not violate the *Flores* Agreement merely because it unilaterally determines the suitability criteria for potential sponsors." "*Flores Litigation*," CV 85-4544 DMG, ECF No. 470 (Jul. 30, 2018) at 25.  In addition, this Court acknowledged that the agency may have "legitimate suitability concerns or the proposed sponsors withdrew their requests."  The ORR Guide describes the process for evaluating a proposed sponsor.  *See* Section 2 of

the ORR Guide, available at: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.2.  As the Guide describes, "ORR begins the process of finding family members and others who may be qualified to care for an unaccompanied alien child as soon as the child enters ORR's care.  Parents, other relatives, or close family friends can apply to have the child released to their care." ORR Guide at § 2.2.  Along the way, there are numerous steps that are not decision points that a sponsor is or may be unfit, but rather requirements that must be fulfilled or criteria that must be met. *See e.g.,* § 2.2.4 (proof of identity required); § 2.2.5 (legal orientation for custodians); § 2.4.2 (home studies); § 2.5 (background checks, including fingerprints), § 2.7.6 (safety plan).  A sponsor's willingness and timeliness in complying with such standards necessarily will affect the length of time it takes for a minor to be released from custody.  And yet, Plaintiffs provide no explanation of how the class-wide relief would differentiate among these factors, particularly as they seek a remedy that would force a decision into a judicial process just thirty days after submitting a reunification package, and despite a sponsor's willingness to cooperate regarding subsequent home studies, background checks, safety plans, or even agreeing to ensure that a minor will appear for his or her immigration proceedings.

      The decision to release a *Flores* class member requires a *highly* individualized evaluation of a potential sponsor's ability to meet the individualized

needs of the *Flores* class member.  Just looking to the named Plaintiffs, there are wide variation in their individual circumstances, needs, and potential sponsor's adequacy.[9]  The potential-sponsors also vary in the relationship they pose with the minor.  For example, Sirena P. sought reunification with a parent whereas Lucas R. and Gabriela N. either did not know their sponsors prior to entering the United States, or later disclosed abuse by such sponsors.  *See* Opp'n to Mot for Prelim. Inj., ECF No. 44, Ex. 1 ¶ 5; *see also* ECF No. 100 ¶ 2 (Lucas R. released to half-brother), ¶ 4 (Benjamin R. released to grandmother), ¶ 5 (Daniela Marisol T.'s anticipated sponsor is her sister), ¶ 6 (Gabriela N. grandfather inadequate sponsor), ¶ 7 (Miguel Angel S.'s sponsor is not biologically related), ¶ 8 (Jamie D. seeking release to aunt).

There is simply no explanation from the Plaintiffs as to how, given all of these variables, they meet the commonality requirements with respect to this proposed sub-class.

### Rehabilitation Act:

With respect to the subclass claimed under the Rehabilitation Act, each of the six named Plaintiffs has a unique set of mental health and other individualized

---

[9] Gabriela N., a named Plaintiff, was also included in the *Flores* motion to enforce. This Court cited to Case Notes regarding the grandfather's home study, and the fact that he could not meet her "specific needs."  "*Flores Litigation*," CV 85-4544 DMG, ECF No. 470 (Jul. 30, 2018)

needs which must be taken into consideration in determining their placement while in ORR custody and their readiness for safe release to a suitable sponsor in the community.  ORR does not place any child in an RTC, in particular, without an individualized recommendation by a psychiatrist or psychologist that the child has significant mental health symptoms that cannot be addressed in an outpatient setting.  *See* ORR Guide 1.4.6 (Residential Treatment Centers).  Correspondingly, in assessing the appropriateness of release or step down of a child placed in an RTC, this Court recognized that a mental health professional needs to assess whether the child continues to pose a risk of harm to self or other community members.  "*Flores Litigation*," CV 85-4544 DMG, ECF No. 470 (Jul. 30, 2018).  As such, the subclass of children that Plaintiffs broadly allege are uniformly placed in overly secure facilities because of their disabilities cannot be said to be typical of a class.

### *Psychotropic Drug Prescriptions:*

This Court has already determined in the latest *Flores* enforcement action that applicable state child welfare laws must be followed closely by ORR facilities when prescribing psychotropic medications to minors.[10]  "*Flores Litigation*," CV

---

[10] The named Plaintiffs have already obtained considerable relief concerning the prescription of psychotropic medications at the Shiloh RTC in Manvel, Texas, which must comply with Texas State residential facility licensing standards, including provisions requiring informed consent of parents or other authorized persons.

85-4544 DMG, ECF No. 470 (Jul. 30, 2018) at 30–31.  For ORR facilities in other

states, the law of such states, not federal law, would determine psychotropic

medication protocols.  Thus, the location of a proposed class member—and

applicable state law—are not common among the proposed class.

As demonstrated *supra*, resolving the various "common questions"

necessarily entails individualized questions of fact and law, and will result in

unique answers respective of each proposed class member, and thus does not meet

the requirements for commonality.  *See Jamie S.*, 668 F.3d at 498; *see also*

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (holding a Rule 23(b)(2) class action

litigated on common facts may not be an "appropriate way," to resolve due process

claims, as due process is "flexible" and "calls for such procedural protections as

the particular situation demands").

### 2.    Plaintiffs fail to demonstrate the named class members will fairly and adequately protect the interest of the class.

Rule 23(a)(4) permits certification of a class action if "the representative

parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P.

23(a)(4).  Rule 23(a)(4) presents two questions:  "(1) do the named plaintiffs and

their counsel have any conflicts of interest with the other class members and (2)

will the named plaintiffs and their counsel prosecute the action vigorously on

behalf of the class?"  *See Hanlon*, 150 F.3d at 1020.

### a. There is no indication that the identified Plaintiffs intend to prosecute the action on behalf of the class.

Here, Defendants have no concern that plaintiffs' counsel will prosecute the action vigorously on behalf of the class. However, there is absolutely no attestation by the named plaintiffs that they intend to "prosecute the action vigorously on behalf of the class." *See generally*, Mot., ECF No. 97, Ex Nos. 10, 11, 12, 14, 16, 20, and 21. None of the named plaintiffs express their willingness or ability to prosecute this action, nor do they articulate their desire to be the faces of this case. There is no attestation that once they rare released from ORR custody they (or their sponsors) will be willing to make themselves available for depositions, discovery, or perhaps trial. And while some of the Plaintiffs have signed incomplete declarations with respect to their willingness and adequacy to pursue this case, most troubling, Benjamin and Sirena have filed nothing.

### b. The Plaintiffs are inadequate to represent the class.

There are substantial *unaddressed* concerns regarding the ability of at least some of the individual plaintiffs to serve as class representatives. For example, at least three plaintiffs have claims that are now moot inasmuch as they have been released from detention.[11] It is entirely unclear which of the identified plaintiffs

---

[11] The Supreme Court has recognized an exception to mootness in the class action context when "the named plaintiff's individual claim becomes moot *after*" the

represent each specific sub-class and if there are adequate representatives of each

proposed sub-class absent the released plaintiffs.  It is impossible for Defendants—

and likely this Court—to ascertain from Plaintiffs' scant analysis if they have

adequate representatives for each of the proposed sub-classes.  And it is not

Defendants' burden to understand who and how a class is represented at the class

certification stage.

      Moreover, based on the filing submitted in this case thus far, there is

absolutely **no adequate representative** of the sub-class of *Flores* members in

ORR's custody "to whom ORR *blocks* legal assistance in legal matters or

---

district court rules on class certification, *Genesis Healthcare Corp. v. Symczyk*, 569
U.S. 66, 74 (2013) (emphasis in original), but that rule does not apply here because
three of the named Plaintiffs were released from ORR custody, mooting their
claims, prior to any determination as to class certification.

      Nor are the putative class claims saved by the further exception for claims
that "are 'so inherently transitory that the trial court will not have enough time to
rule on a motion for class certification before the proposed representative's
individual interest expires.'"  *Genesis Healthcare Corp*, 569 U.S. at 76 (citation
omitted); *see County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (applying
exception in context of individuals held without probable cause determinations);
*Gerstein v. Pugh*, 420 U.S. 105, 110 n.11 (1975) (same).  Here, the issue of class
certification was fully briefed and pending the Court's resolution prior to Lucas
R.'s release.  But on September 7, 2018, Plaintiffs' elected to file an Amended
Complaint, necessarily prolonging any determination as to class certification.  In
amending their complaint, Plaintiffs added two new class members whose release
was well underway and near complete.  *See* ECF 100-1 ¶¶ 3 (Sirena P. released on
September 16, 2018), 4 (Benjamin F. released on September 15, 2018).  That
*Plaintiffs* chose to interrupt and delay the certification of the proposed class does
not render their claims "inherently transitory."

proceedings involving their custody, placement, release, and/or administration of psychotropic drugs," First Am. Compl. ¶ 96(e) (emphasis added).   Neither the First Amended Complaint nor the Motion to Certify Class identifies a single class member whom ORR has blocked from receiving legal services, *see*, *e.g.*, Motion, ECF No. 97, Ex. 11, ("I [Daniela Marisol] have met with a lawyer here in La Verne, California at the David & Margaret Shelter, but not sure what her name is."); Ex. 14 ("My [Gabriela N.] attorney is Paola, I think I met with her recently but I don't remember."); Ex. 16 (Gabriela N.'s July 12, 2018, update to her June 9, 2018 update, indicating that in the one month time, when "*Flores* counsel has called to speak with me on the phone," she spoke to the *Flores* counsel while her case manager sat in the same room wearing headphones); Ex. 12 (no allegations that Miguel Angel S. was blocked by ORR from talking to any lawyers or receiving legal representation); Ex. 20 (no allegation that Jamie D. was *blocked* by ORR from talking to counsel, only that he did not receive a list of free lawyers and does not currently have legal representation); Ex. 21 (no allegation that Lucas R. was *blocked* by ORR from talking to counsel); *compare* ECF 78-1 (August 31, 2018 Declaration of attorney Paola Perez that she was, and had been representing Gabriela N. *since March 9, 2018*, and engaging with her case manager as Shiloh *multiple time* about possibilities of release), *with* ECF. No. 97, Ex. 15 (June 8,

2018, Declaration of Gabriela N. that "I have asked to meet with attorneys, but the staff says that no one is here to help me").

Given this, the Court cannot say for sure whether "the representative parties will fairly and adequately protect the interest of the class," Fed. R. Civ. P. 23(a). For that reason alone, the class cannot be certified.

## CONCLUSION

Thus, for all of the above reasons, Plaintiffs' request that this Court certify a proposed class should be summarily denied.

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
BRIENA L. STRIPPOLI
Senior Litigation Counsel
BENJAMIN MARK MOSS
Trial Attorney
ANDREW B. INSENGA
Trial Attorney

   /s/  Marina C. Stevenson
MARINA C. STEVENSON
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Phone:  (202) 305-3797
Fax:  (202) 616-4950
marina.c.stevenson@usdoj.gov

Attorneys for DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that, on October 5, 2018, I caused the foregoing documents to be filed via the CM/ECF system, which caused a copy to be served on Plaintiff's counsel of record.

DATED:  October 5, 2018.                      Respectfully submitted,

                                    /s/  Marina C. Stevenson
                                  MARINA C. STEVENSON
                                  Trial Attorney
                                  Office of Immigration Litigation
                                  Civil Division
                                  U.S. Department of Justice
                                  P.O. Box 878
                                  Ben Franklin Station
                                  Washington, DC 20044
                                  Phone:  (202) 305-3797
                                  Fax:  (202) 616-4950
                                  Marina.c.stevenson@usdoj.gov