1  CENTER FOR HUMAN RIGHTS &
   CONSTITUTIONAL LAW
2  CARLOS R. HOLGUÍN (90754)
   256 South Occidental Boulevard
3  Los Angeles, CA 90057
   Telephone: (213) 388-8693
4  Email: crholguin@centerforhumanrights.org

5  *Attorneys for Plaintiffs*

6  *Additional counsel listed on signature page*

7

8            UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                 WESTERN DIVISION

11

12 | LUCAS R., by his next friend MADELYN R.; DANIELA MARISOL T., by her next friend KATHERINE L.; MIGUEL ANGEL S., by his next friend GERARDO S.; GABRIELA N., by her next friend ISAAC N.; JAIME D., by his next friend REYNA D.; SIRENA P., by her next friend EDUARDO P.; BENJAMIN F., by his next friend ISABELLA F.; SAN FERNANDO VALLEY REFUGEE CHILDREN CENTER, INC.; UNACCOMPANIED CENTRAL AMERICAN REFUGEE EMPOWERMENT, | Case No.  2:18-CV-05741 DMG PLA

**CLASS ACTION**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND ALTERNATIVE MOTION TO TRANSFER**

Date:  November 2, 2018
Room: 8C
Hearing:  9:30 a.m.

19

20                Plaintiffs,

21        v.                          Complaint Filed: June 29, 2018
                                      Trial Date: None Set
22 ALEX AZAR, Secretary of U.S.       Judge: Hon. Dolly M. Gee
   Department of Health and Human
23 Services; E. SCOTT LLOYD, Director,
   Office of Refugee Resettlement of the
24 U.S. Department of Health & Human
   Services,
25
                Defendants.
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

**Page**

I.    INTRODUCTION ................................................................ 1

II.   STATEMENT OF FACTS ................................................... 2

III.  LEGAL STANDARD ......................................................... 4

IV.  ARGUMENT...................................................................... 4

    A.    Venue is Proper in This District.................................. 4

        1.   Defendants have waived any objection to venue by failing to raise it in opposition to Plaintiffs' motion for preliminary injunction. .............................................................. 4

        2.   Venue is proper in this District, where multiple Plaintiffs reside. ..................................................... 5

        3.   Venue is also proper because a substantial portion of the events occurred in the Central District. .......................... 9

        4.   The Court has discretion to exercise pendant venue. .................. 13

    B.    Transfer to the District for the District of Columbia Is Unwarranted. .......................................................... 13

    C.    The Complaint States Valid Claims Upon For Relief. ........................... 16

        1.   Plaintiffs are *Flores* class members and may sue to enforce their rights under the *Flores* consent decree independently. ........ 16

        2.   Plaintiffs' claims that ORR systematically violates the TVPRA are fully cognizable. ..................................... 17

        3.   ORR's challenged policies and practices are final and directly violate the APA. .......................................... 19

        4.   Plaintiffs have stated cognizable claims that ORR's challenged policies and practices deny constitutional due process................................................................. 21

        5.   Plaintiffs adequately plead their Section 504 claim. ................... 24

V.    CONCLUSION ............................................................. 25

**OPPOSITION TO MOTION TO DISMISS FAC**
**CASE NO. 2:18-CV-05741 DMG PLA**

# Table of Authorities

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967)............................................................................ 19

*Adab v. United States Citizenship & Immigration Servs.*,
  No. 14-cv-04597-CAS(AGRx), 2015 WL 6249563 (C.D. Cal. Feb. 9,
  2015)................................................................................................ 11, 12

*Aftab v. Gonzalez*,
  597 F. Supp. 2d 76 (D.D.C. 2009).......................................................... 11

*Alexander v. Choate*,
  469 U.S. 287 (1985)............................................................................ 24

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)............................................................................ 17

*Allstar Mktg. Grp., LLC . Your Store Online, LLC*
  666 F. Supp. 2d 1109 (C.D. Cal. 2009)............................................ 14, 15

*American Ass'n of Naturopathic Physicians v. Hayhurst*,
  227 F.3d 1104 (9th Cir. 2000) .............................................................. 4, 5

*Anton Sport, Inc. v. Monkey Boy Graphix Inc.*,
  2008 WL 11339089 (D. Ariz. July 22, 2008)............................................ 14

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) .................................................................. 16

*Aristotle P. v. Johnson*,
  721 F. Supp. 1002 (N.D. Ill. 1989)........................................................ 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................ 4, 25

*Bautista-Perez v. Holder*,
  681 F. Supp. 2d 1083 (N.D. Cal. 2009)................................................... 5

**OPPOSITION TO MOTION TO DISMISS FAC**
**CASE NO. 2:18-CV-05741 DMG PLA**

**Table of Authorities**
(continued)

**Page(s)**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................... 4

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................................... 19

*C.S. v. Public Safety Acad. of San Bernardino*,
  No. 14-cv-941-RGK-DTB, 2014 WL 12591181 (C.D. Cal. Nov. 26,
  2014) ......................................................................................................... 25

*Californians for Renewable Energy v. United States Envtl. Prot. Agency*,
  No. C 15-3292 SBA, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ................. 5, 6

*Caltex Plastics, Inc. v. Great Pac. Packaging, Inc.*,
  2014 WL 4060144 (C.D. Cal. Aug. 12, 2014) ....................................... 14

*Cannon v. University of Chi.*,
  441 U.S. 677 (1979)................................................................................... 18

*United States ex rel. Cody v. Mantech Int'l Corp.*,
  2016 WL 10537807 (C.D. Cal. Feb. 9, 2016) ....................................... 15

*Crowder v. Kitagawa*,
  81 F.3d 1480 (9th Cir. 1996) ................................................................... 24

*D.B. v. Cardall*,
  826 F.3d 721 (4th Cir. 2016) ................................................................... 22

*Dunakin v. Quigley*,
  99 F. Supp. 3d 1297 (W.D. Wash. 2015) ............................................... 25

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
  959 F.2d 742 (9th Cir. 1991) ..................................................................... 8

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ..................................................................... 8

*In re Ferrero Litigation*,
  768 F. Supp. 2d 1074 (S.D. Cal. 2011) ................................................. 14

**Table of Authorities**
(continued)

**Page(s)**

*Florens Container v. Cho Yang Shipping,*
  245 F.Supp.2d 1086 (N.D. Cal. 2002).................................................. 14

*Flores v. Johnson,*
  212 F. Supp. 3d 864 (C.D. Cal. 2015) .................................................. 16

*Flores v. Lynch,*
  828 F.3d 898 (9th Cir. 2016) .............................................................. 16

*Flores v. Meese,*
  No. 85-cv-4544-DMG-AGR, ECF No. 470 ....................................*passim*

*Flores v. Sessions,*
  862 F.3d 863 (9th Cir. 2017) .............................................................. 18

*Flores v. Sessions,*
  No. CV-85-4544 DMG, Docket .......................................................... 17

*Fuji Photo Film Co., Ltd. v. Achiever Industries, Ltd. et al.,*
  No. CV 05-8044-JFW (VBKx), 2006 WL 8432101 (C.D. Cal. Mar.
  29, 2006) .......................................................................................... 13

*Goldberg v. Kelly,*
  397 U.S. 254 (1970).......................................................................... 21

*Gulf Ins. Co. v. Glasbrenner,*
  417 F. 3d 353 (2d Cir. 2005) .............................................................. 12

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982)............................................................................ 7

*Hawkins v. Davis,*
  No. 00–cv–01077–DDP–CWZ, 2000 WL 33936254 (C.D. Cal. Aug.
  10, 2000) .......................................................................................... 12

*Huezo v. Los Angeles Cmty. Coll. Dist,*
  No. 04-cv-9772 MMM-JWJ, 2007 WL 7289347.................................. 24

**Table of Authorities**
(continued)

**Page(s)**

*Hunt v. Washington State Apple Advert. Comm'n,*
    432 U.S. 333 (1977)...................................................................................... 8

*Ibrahim v. Chertoff,*
    No. 06–cv–2071–L–POR, 2007 WL 1558521 (S.D. Cal. May 25,
    2007) ...................................................................................................... 12

*Immigrant Assistance Project of Los Angeles County Federation of
    Labor (AFL-CIO) v. I.N.S.,*
    306 F.3d 842 (9th Cir. 2002) ...................................................................... 7

*Independent Living Ctr. of S. Cal. v. City of L.A.,*
    No. 12-cv-551-SJO-PJW, 2012 WL 13036779 (C.D. Cal. Nov. 29,
    2012) ...................................................................................................... 25

*INS v. Yueh-Shaio Yang,*
    519 U.S. 26 (1996).................................................................................... 20

*Kentucky Dep't of Corrections v. Thompson,*
    490 U.S. 454 (1989)............................................................................ 21, 23

*L.V.M. v. Lloyd,*
    318 F. Supp. 3d 601 (S.D.N.Y. 2018) ...................................................... 19

*Lax v. Toyota Motor Corp.,*
    65 F. Supp. 3d 772 (N.D. Cal. 2014)........................................................ 15

*Lindahl v. Office of Personnel Mgmt.,*
    470 U.S. 768 (1985).................................................................................. 19

*Lopez v. Sessions,*
    No. 18 Civ. 4189, 2018 U.S. Dist. LEXIS 98712 (S.D.N.Y. June 12,
    2018) ...................................................................................................... 20

*Lunney v. United States,*
    319 F.3d 550 (2d Cir. 2003) .................................................................... 20

*M.B. v. Corsi,*
    No. 2:17-cv-04102, 2018 U.S. Dist. LEXIS 3232 (W.D. Mo. 2018) ........ 22

**Table of Authorities**
(continued)

Page(s)

*M.B. v. Quarantillo,*
301 F.3d 109 (3d Cir. 2002) ...................................................................... 20

*Maldonado v. Lloyd,*
2018 U.S. Dist. LEXIS 75902 (S.D.N.Y. May 4, 2018) ........................... 20

*Martens v. Thomann,*
273 F.3d 159 (2d Cir. 2001) ...................................................................... 17

*Martensen v. Koch,*
942 F. Supp. 2d 983 (N.D. Cal. 2013) ....................................................... 13

*Mathews v. Eldridge,*
424 U.S. 319 (1976) .................................................................................... 23

*Meyer v. Nebraska,*
262 U.S. 390 (1923) .................................................................................... 21

*Mohammedi v. Scharfen,*
609 F. Supp. 2d 14 (D.D.C. 2009) ............................................................. 11

*Ms. L. v. U.S Immigration & Customs Enf't,*
302 F. Supp. 3d 1149 (S.D. Cal. 2018) ....................................................... 6

*Murphy v. Schneider Nat'l, Inc.,*
362 F.3d 1133 (9th Cir. 2004) ...................................................................... 4

*Navajo Nation v. Department Of The Interior,*
876 F.3d 1144 (9th Cir. 2017) .................................................................... 19

*OSU Student All. v. Ray,*
699 F.3d 1053 (9th Cir. 2012) ................................................................. 4, 5

*Pacific Pulp Molding, Inc. v. Burchfield,*
2015 WL 12672701 (S.D. Cal. Sept. 28, 2015) ........................................ 13

*Parham v. J. R.,*
442 U.S. 584 (1979) .............................................................................. 22, 23

**Table of Authorities**
(continued)

Page(s)

*Perry v. Sindermann,*
408 U.S. 593 (1972)...........................................................................21

*Pitts v. Terrible Herbst, Inc.,*
653 F. 3d 1081 (9th Cir. 2011) ........................................................11

*Portman v. County of Santa Clara,*
995 F.2d 898 (9th Cir. 1993) ............................................................21

*Presbyterian Church (U.S.A.) v. United States,*
870 F.2d 518 (9th Cir. 1989) ...........................................................19

*Ramirez v. United States Immigration & Customs Enf't,*
310 F. Supp. 3d 7 (D.D.C. 2018).....................................................20

*Rodgers v. Stater Bros. Markets,*
2017 WL 2268884 (S.D. Cal. 2017)..................................................15

*Rodriguez v. Cal. Highway Patrol,*
89 F. Supp. 2d 1131 (N.D. Cal. 2000)..............................................12

*Roling v. E\*Trade Sec., LLC,*
756 F. Supp. 2d 1179 (N.D. Cal. 2010)............................................14

*S & D Maint. Co. v. Goldin,*
844 F.2d 962 (2d Cir. 1988) .............................................................21

*San Bernardino Physicians' Servs. Med. Grp. v. County of San Bernardino,*
825 F.2d 1404 (9th Cir. 1987) ..........................................................21

*San Carlos Apache Tribe v. United States,*
417 F.3d 1091 (9th Cir. 2005) ..........................................................19

*Saravia v. Sessions,*
280 F. Supp. 3d 1168 (N.D. Cal. 2017)............................................20

*Sidney Coal Co. v. Social Sec. Admin.,*
427 F.3d 336 (6th Cir. 2005) ..............................................................6

-vii-

**Table of Authorities**
(continued)

**Page(s)**

*Toussaint v. McCarthy,*
    801 F.2d 1080 (9th Cir. 1986) ........................................................ 18, 21

*Trustees of Cent. Laborers' Welfare Fund v. Lowery,*
    924 F.2d 731 (7th Cir. 1991) .................................................................. 5

*U.S. Tower Corp. v. STS Int'l, Inc.,*
    No. 08–cv–0228–AWI–SMS, 2008 WL 2074463 (E.D. Cal. May 15,
    2008) ....................................................................................................... 12

*Unger v. Nat'l Residents Matching Program,*
    928 F.2d 1392 (3d Cir. 1991) ................................................................ 21

*Washington v. Harper,*
    494 U.S. 210 (1990) ........................................................................ 22, 23

*Western Radio Servs. Co. v. Glickman,*
    123 F.3d 1189 (9th Cir. 1997) .............................................................. 19

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ............................................................................... 22

*Zhang v. Chertoff,*
    No. 08–cv–02589–JW, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ................. 12

**Statutes**

5 U.S.C.
    § 702 ...................................................................................................... 18
    § 704 ...................................................................................................... 19
    § 706 ...................................................................................................... 19

8 U.S.C.
    § 1232(c)(2)(A) ................................................................................ 18, 23
    § 1232(c)(5) ...................................................................................... 18, 23

**Table of Authorities**
(continued)

Page(s)

28 U.S.C.
§ 1391(c)(2) ................................................................................. 6
§ 1391(e)(1) ................................................................................. 5
§ 1391(e)(1)(A) ......................................................................... 13
§ 1391(e)(1)(B) ................................................................. 1, 9, 12
§ 1391(e)(1)(C) ..................................................................... 1, 6
§ 1404 ................................................................................. 1, 14
§ 1406 ......................................................................................... 1
§ 1406(a) ................................................................................. 13

Administrative Procedure Act ......................................... *passim*

California Welfare & Institutions Code
§ 369.5(a)(1) ............................................................................. 9
§ 739.5(a)(1) ............................................................................. 9
§ 831 ....................................................................................... 10
§ 831(a) ................................................................................... 11

Rehabilitation Act, 29 U.S.C. § 794 ............................... 2, 24

TVPRA
§ 235(c)(2) ............................................................................. 22
§ 235(c)(2)(A) ....................................................................... 22
§ 235(c)(2)(B) ....................................................................... 20
§ 235(c)(5) ............................................................................. 22
§ 235(g) ................................................................................. 20

**Other Authorities**

Cal. Rule of Court, rule 5.640(b) ......................................... 9

5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND
PROCEDURE § 1391 (3d ed. 2004) ......................................... 5

# Table of Authorities
(continued)

Page(s)

Federal Rule of Civil Procedure

    12 ........................................................................................................................ 4, 5

    12(b)(3) ................................................................................................................... 4

    12(b)(5) ................................................................................................................... 5

    12(b)(6) ................................................................................................................... 4

    12(h) ................................................................................................................... 4, 5

    55 ........................................................................................................................... 5

Federal Rules of Evidence 403 .................................................................................. 11

# I.  INTRODUCTION

Venue is not a valid ground to dismiss or transfer this matter.  Defendants waived this defense when they failed to raise it in their first responsive pleading, a mistake their Motion to Dismiss simply ignores.  Regardless, venue is proper for two independent reasons: (1) two of the named Plaintiffs reside in this District; and (2) the Office of Refugee Resettlement ("ORR") took actions in this District that form a substantial part of the injuries suffered by four of the named Plaintiffs.  28 U.S.C. § 1391(e)(1)(B) & (C).  Because venue is proper for these Plaintiffs on these grounds, it is also proper for all other claims and Plaintiffs.  Indeed, the Court may exercise pendent venue to consider all claims by all plaintiffs, so long as one Plaintiff is properly before it.  The government does not argue otherwise.

Because venue is proper in this Court, there is no basis for transfer under 28 U.S.C. § 1406.  And even if Defendants were properly arguing for permissive transfer under Section 1404, none of the relevant factors favor transfer to the District of Columbia.  Even considering just the required deference to the Plaintiff's venue choice (even in a class action) and convenience to the parties, the Central District will better serve the interests of justice, as three of the proposed class representatives and two of the institutional plaintiffs reside in this District.  The government raises no legitimate reason why the District of Columbia would better serve this litigation.

Plaintiffs have also adequately stated each of their claims.  Plaintiffs are unnamed class members in *Flores* who have every right to enforce the consent decree in this independent action.  They also have a private right of action to challenge ORR policies and practices as violations of the TVPRA and substantive constitutional protections.  The Administrative Procedure Act, 5 U.S.C. §§ 101-913 ("APA") supplies any waiver of sovereign immunity these claims may require. In any event, ORR's challenged policies and practices are final agency actions subject to judicial review under the APA.  Due process protects Plaintiffs' liberty interests that spring from contractual, statutory and constitutional rights.  Finally, Plaintiffs allege in detail

ORR's violations of the Rehabilitation Act, 29 U.S.C. § 794, by segregating and prolonging detention of children due to their perceived or actual disabilities. Defendants' Motion to Dismiss should be denied.

## II.   STATEMENT OF FACTS

In this action, seven immigrant and asylum-seeking children and two organizations challenge unlawful ORR policies that are causing grave harm to hundreds of children who are confined in medium secure facilities, residential treatment centers, and secure facilities without due process; subjected to prolonged detention without the opportunity to be heard regarding available sponsors' fitness; administered powerful psychotropic medications without procedural safeguards; obstructed in accessing available legal assistance; and segregated and held in prolonged detention because of disability. (First Amended Complaint, Dkt. No. 59 ("FAC") ¶¶ 1-4.) They seek equitable relief on behalf of themselves and those similarly situated, and nominal damages. FAC ¶ 5.

Six of the named Plaintiffs have significant connections to the Central District of California.   San Fernando Valley Refugee Children Center, Inc. ("Children Center") has its principal place of business in North Hills, California.  FAC ¶17.)  Its "mission is to provide comprehensive social services, including mental health care, shelter, transitional living assistance and legal aid, to children, youth, and families who have come in search of refuge from persecution and endemic violence in the Northern Triangle of Central America (El Salvador, Honduras, and Guatemala)." (*Id*.)  Unfortunately, Defendants' "policies and practices … make it substantially more difficult for the Children Center to carry out its mission." (*Id*.)  For example, the additional trauma that Defendants' restrictive detention and involuntary medication inflicts on the children and youth that the Children Center serves "requires the Children Center to devote commensurately greater resources, particularly mental health resources, to assist such children and youth to recover." (*Id*.)  In addition, the greater resources the Children Center is required to devote to a single child means that

it is able to serve a smaller population, which directly affects its ability to raise funds, which "depends in part on the raw number of children and youth it helps." (*Id*. ¶ 18.)

Plaintiff Unaccompanied Central American Refugee Empowerment ("UCARE") also has its principal place of business in Los Angeles, California. (*Id*. ¶19.)   Its "mission is to advocate for and provide legal and social services to immigrant and refugee minors, many of whom are or have been in [Defendants'] custody." (*Id*.)   As part of its work, "UCARE arranges free representation and assistance to youth [in immigration proceedings]." (*Id*.)   "Defendants' challenged policies and practices deny or delay children's release," making UCARE's assistance and legal representation "substantially more difficult and render UCARE's work less effective." (*Id*.)

Named Plaintiff Daniela Marisol T. endured a placement in an ORR facility in La Verne, California, just outside of Los Angeles, in early 2018. (*Id*. ¶ 40.)   ORR gave her notice that the shelter was a secure or staff secure facility. (Declaration of Jonathan Mulligan ("Mulligan Decl."), Ex. 1.)   While there, she suffered numerous violations that form the basis for her claims, including the improper administration of psychotropic drugs contrary to California law. (FAC ¶¶ 37-42.)

ORR's actions within the Central District of California significantly and unnecessarily delayed Lucas R.'s placement with his sister and Next Friend Madelyn R., lengthening his stay in secure detention and resulting in continued improper administration of psychotropic drugs.   During the entirety of ORR's custody of Lucas R., Madelyn R. resided in Los Angeles, California. (*Id*. ¶ 28.)   It was there that ORR conducted a home study, and despite finding that Madelyn R. could provide a suitable home for Lucas R. within this District, determined that reunification between Lucas R. and his sister was not possible.   This decision was based solely on the fact that a visitor to the house (who was present during the home study but did not reside there) did not submit to ORR's demands that he appear for fingerprinting. (*Id*. ¶ 29.)

Similarly, ORR refused to promptly release Benjamin F. and Sirena P. to their

3.

families residing in this District, despite conducting home studies and providing positive recommendations for release to these guardians, due to their disabilities.  (*Id.* ¶¶ 15-16, 78, 88.)  In contrast, their non-disabled siblings were released.  (*Id.*  ¶¶ 78-91.)  Similarly, ORR failed to seek informed consent from Benjamin F.'s grandmother and Sirena P.'s father, before prescribing them psychotropic drugs.  (*Id.*  ¶¶ 80-89.)

## III.   LEGAL STANDARD

In a challenge to venue under Rule 12(b)(3) the court may look outside of the pleadings, but "must draw all reasonable inferences . . . and resolve all factual conflicts in favor of the non-moving party."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  Under Rule 12(b)(6), this Court must take all well-pled facts as true and "construe them in the light most favorable to plaintiffs." *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012).  The complaint must allege facts supporting a "plausible" claim, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## IV.   ARGUMENT

### A.   Venue is Proper in This District.

#### 1.   Defendants have waived any objection to venue by failing to raise it in opposition to Plaintiffs' motion for preliminary injunction.

"[C]ertain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived."  *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000).  Rule 12(h) provides that venue defenses are waived by failing to include them in a Rule 12 motion or in a responsive pleading.  Fed. R. Civ. P. 12(h).  "[A] party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses [personal jurisdiction, improper venue, insufficient process, or insufficient service] he then has and thus allow the court to do a reasonably complete

job." *Hayhurst*, 227 F.3d at 1107 (internal quotation and citation omitted).   Thus, if a defendant "raised *any* Rule 12 defenses in his first filing to the court, he was obliged to raise *all* of those specified in Rule 12(h)."   *Id.* (emphasis in original).

Here, Defendants' "first significant defensive move," 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1391 (3d ed. 2004), was responding to Plaintiffs' Motion for Preliminary Injunction Re: Plaintiff Lucas R. (Dkt. No. 44.)    In that filing, Defendants made a variety of arguments, but never raised venue as a defense.   Accordingly, Defendants have waived any objections to venue in this Court.   *See Hayhurst*, 227 F.3d at 1107-08 (finding defendant waived objection to personal jurisdiction by failing to include it in his first filing with the court—a Rule 55 motion); *Bautista-Perez v. Holder*, 681 F. Supp. 2d 1083, 1093 (N.D. Cal. 2009) (finding "Government waived [] venue objection by failing to raise it in opposition to Plaintiffs' motion for preliminary injunction") (citing Fed. R. Civ. P. 12(h)); *see also Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 733-34 (7th Cir. 1991) (finding waiver of defense under Rule 12(b)(5) based on defendant's conduct despite the fact that no formal pleading was filed).   Defendants' motion to dismiss for improper venue should be denied on this ground alone.

## 2.   Venue is proper in this District, where multiple Plaintiffs reside.

Even if the Court finds that Defendants have not waived their venue objections, the Motion to Dismiss should be denied because venue is appropriate in the Central District of California.   In civil actions against agencies, officers, or employees of the United States, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred … or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).   "If the case falls within one of these three categories, venue is proper." *Californians for Renewable Energy v. United States Envtl. Prot. Agency*, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018).   As relevant here, "the residency

OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA

1   requirement of [28 U.S.C. § 1391(e)(1)(C)] is satisfied if at least one plaintiff resides
2   in the district in which the action has been brought."   *Sidney Coal Co. v. Social Sec.*
3   *Admin.*, 427 F.3d 336, 345-46 (6th Cir. 2005).

4       **a.   The institutional Plaintiffs reside in this District.**

5       It is undisputed that Plaintiffs Children Center and UCARE—the two
6   institutional Plaintiffs—are located within this District.   (*See* Dkt. No. 51-1 at 14.)
7   For purposes of the venue statute, both Plaintiffs therefore reside within the Central
8   District of California.   *See* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue
9   and be sued in its common name under applicable law, whether or not incorporated,
10   shall be deemed to reside . . . if a plaintiff, only in the judicial district in which it
11   maintains its principal place of business"); *see also* FAC ¶¶ 17, 19 (alleging both
12   Plaintiffs' principal places of business are within the Central District of California).
13   Because at least one plaintiff resides in this District, it is sufficient to establish venue
14   for the entirety of the action.   *See Ms. L. v. U.S Immigration & Customs Enf't*, 302 F.
15   Supp. 3d 1149, 1158-59 (S.D. Cal. 2018) (in putative class action, finding venue
16   proper where one of the two named plaintiffs resided in the district); *Californians for*
17   *Renewable Energy*, 2018 WL 1586211, at *5 (finding venue proper where some but
18   not all plaintiffs resided in the district because "the clear weight of federal authority
19   holds that venue is proper in a multi-plaintiff case if *any* plaintiff resides in the
20   District") (emphasis in original).

21       **b.   The institutional Plaintiffs have standing and venue is
22           proper regardless of whether they are class members.**

23       Defendants insist that the Court should ignore the residence of the institutional
24   Plaintiffs because they are not members of the proposed class and have not suffered
25   injury in fact.   (Mot. at 3-4.)   But *nothing* in the venue statute looks at whether the
26   claims or relief requested by the resident plaintiffs is coterminous with the relief
27   alleged by the other plaintiffs.   *See, e.g., Californians for Renewable Energy*, 2018
28   WL 1586211, at *6 (denying motion to dismiss for lack of venue where some but not

all plaintiffs resided in the district, which is, "standing alone, sufficient to establish that venue is proper—irrespective of whether their claims and claims of the remaining Plaintiffs are related").

Indeed, Defendants' position directly contradicts binding case law.    In *Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v. I.N.S.*, for example, the Ninth Circuit considered a complaint brought by various individuals and institutional plaintiffs seeking relief on behalf of a class of undocumented immigrants.  306 F.3d 842, 849 (9th Cir. 2002).  Some of the plaintiffs were individual immigrants directly affected by the complained of policies; others "were organizations who alleged that they provided legal and other assistance to aliens seeking legalization . . . ."  *Id*.  Of the numerous plaintiffs named in the complaint, only two resided in the Western District of Washington, one individual plaintiff and one organizational plaintiff.   *Id*. at 868.   Nonetheless, the Ninth Circuit held that ***if either*** plaintiff could establish the jurisdictional requirements of the statute at issue, "venue in the Western District of Washington will be proper for all purposes."  *Id*. The Ninth Circuit did not consider whether the organizational plaintiff was directly included in the proposed class—it was not—and, importantly, did not attempt to parse the various claims requested.    Defendants' attempt to do so here contradicts established precedent and should be rejected.  The Court need look no further—venue is proper based on the residence of named Plaintiffs Children Center and UCARE.

Moreover, these institutional Plaintiffs have adequately alleged direct organizational standing because Defendants' policies and practices impair their ability to provide services and frustrate their missions. (*See* FAC ¶¶ 17-19.)[1]; *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that where the defendants' "practices have perceptibly impaired [the organizational plaintiff's] ability to provide

---

[1] Defendants' argument that these Plaintiffs have not suffered present injury-in-fact because they seek only prospective relief (Mot. at 5) is simply wrong.  Plaintiffs allege present injury and seek nominal damages for the same, in addition to prospective injunctive relief.  (FAC ¶¶ 18-19.)

[the services it was formed to provide] ... there can be no question that the organization has suffered the requisite injury in fact"); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (holding that organizational plaintiff had "direct standing to sue because it showed a drain on its resources from both a diversion of its resources and frustration of its mission"); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) ("The allegation that the [government's] policy frustrates these goals [of helping refugees obtain asylum and withhold deportation] and requires the organizations to expend resources … they otherwise would spend in other ways is enough to establish standing). Specifically, Children Center and UCARE allege that ORR's policies and practices inflict additional trauma on children and youth that they serve, who have been or will be in ORR custody, by delaying release and involuntarily medicating them. (FAC ¶¶ 17-19). This additional trauma requires the institutional Plaintiffs to devote greater resources to these children, thereby reducing the limited resources available for other children. (*Id.*) It is not speculative whether ORR's acts impair these Plaintiffs' ability to provide services and frustrate their mission (Mot. at 5), it is specifically alleged.

The institutional Plaintiffs also have representational standing to seek redress for injury to their members. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (a plaintiff has organizational standing where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit."). Despite Defendants' baseless assertion to the contrary (Mot. at 4, n.2), the institutional Plaintiffs allege that they serve children and youth subject to the wrongful ORR policies and practices alleged in the Complaint, that their purpose includes minimizing ORR's wrongful conduct to address their members' mental and physical health, and that because Children Center and UCARE seek prospective injunctive and nominal relief, direct participation by their members is not required. (FAC ¶¶ 17- 19).

8.

These Plaintiffs' have both direct and representational standing and venue exists by virtue of their residence in the Central District.

### 3. Venue is also proper because a substantial portion of the events occurred in the Central District.

Even if the government were correct in contesting venue over the claims of the institutional Plaintiffs, venue would remain proper because "a substantial part of the events or omissions giving rise to the claim occurred" here. 28 U.S.C. § 1391(e)(1)(B). Daniela Marisol T., Lucas R., Sirena P., and Benjamin F. suffered a considerable portion of the violations alleged in the Complaint within the Central District of California.

Daniela Marisol was transferred from Shiloh RTC into a facility within the Central District of California, the David and Margaret facility ("David and Margaret") in La Verne, California. (Mulligan Decl. Ex. 1.) ORR gave her notice that, like Shiloh, this was a secure or staff secure facility. (*Id.*) ORR detained Daniela Marisol at David and Margaret for more than three months, refused to release her to her sister Katherine, gave her no opportunity to challenge her placement, and supplied her no legal counsel, continuing the same statutory and constitutional deprivations she experienced at Shiloh RTC. In addition, ORR compelled Daniela Marisol to take psychotropic medications, Prozac and Seroquel, without any consent by a parent or guardian. (*Id.*, Ex. 2.)[2] Defendants nowhere deny that these critical events regarding Daniela Marisol's claims occurred in this District.

ORR's actions within the Central District of California also prevented Lucas R.'s release to his sister and Next Friend Madelyn R., lengthening his stay in secure

---

[2] In the absence of parental or guardian consent, California law requires that a juvenile court authorize the administration of psychotropic medications to dependent children. Cal. Welf. & Inst. Code §§ 369.5(a)(1), 739.5(a)(1); *see also* Cal. Rule of Court, rule 5.640(b); Judicial Council of California, Forms JV-220 & JV-220(B). The authorizations signed by Defendant ORR Director Scott Lloyd, however, did not adhere to these protections and instead authorized the "the care provider," i.e., David and Margaret, to dispense prescription medicine. (Mulligan Decl., Exs. 3 & 4.)

OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA

detention and resulting in ongoing improper administration of psychotropic drugs. During the entirety of ORR's custody of Lucas R., Madelyn R. has resided in Los Angeles, California. (*Id.* ¶ 28.) Within approximately ten (10) days of ORR's taking Lucas R. into its custody, Madelyn R. submitted a complete family reunification packet with required documentation from Los Angeles. (*Id.* ¶ 24.) It was there, six weeks after Madelyn R. requested custody, that ORR conducted a home study, found her home suitable, but demanded that all adults living in her home appear for fingerprinting. (*Id.* ¶ 29.) Madelyn R. advised the investigator that one of the adults present during the home study, her roommate's brother, did not reside there but was merely visiting. (*Id.*) All of the residents of Madelyn R.'s home duly appeared for fingerprinting. (*Id.*) One month later, ORR orally advised Madelyn R. that because her roommate's brother did not appear for fingerprinting, that it would not release Lucas R. to her custody. (*Id.*) ORR stated that its decision was final, did not provide any avenue to appeal and did not provide a written decision or explanation. (*Id.*) All of these events occurred in Los Angeles and gave rise to Lucas R.'s claim that ORR needlessly and unlawfully protracted his detention.

ORR's wrongful actions against Benjamin F. and Sirena P. similarly occurred within the Central District of California, where both of their families reside. (FAC ¶¶ 15-16.) It is here that ORR conducted a study of the home of Benjamin F.'s grandmother, Isabella (*id.* ¶ 88), to whom ORR then released Benjamin's non-disabled brother Mateo (*id.* ¶ 91), where ORR failed to seek Isabella's informed consent before prescribing psychotropic drugs (*id.* ¶ 89), and where ORR ultimately sent Benjamin F. to live (Dkt. No. 100-1 ¶ 4).[3] Similarly, Sirena P.'s father Eduardo

---

[3] Plaintiffs object to Defendant's declaration by James De La Cruz, Senior Field Program Specialist Supervisor for ORR. Dkt. No. 100-1. In the declaration, Mr. De La Cruz cited to information relating to a state court proceeding involving name plaintiff, Miguel Angel S., that is both inaccurate and confidential pursuant to California Welfare & Institutions Code § 831. California Welfare and Institutions Code § 831(a) states, "Confidentiality is integral to the operation of the juvenile justice system in order to avoid stigma and promote rehabilitation for all youth, regardless of immigration status." It further states that nothing authorizes the disclosure of

resided at all relevant times in Ontario, California (FAC ¶ 15), where ORR conducted

two home studies (*id*. ¶ 78), where ORR released Sirena P.'s sisters to reside (*id*.),

where ORR failed to seek Eduardo's informed consent before prescribing Sirena P.

psychotropic drugs (*id*. ¶ 80), and where Sirena P. resides now that ORR has finally

released her (Dkt. No. 100-1 ¶ 3.)[4]

These events are more than sufficient to establish venue.  Courts in immigration

challenges find the "substantial part of the events or omissions" test "satisfied where

an office in the relevant district took significant action … even if significant actions

were also undertaken elsewhere." *Adab v. United States Citizenship & Immigration

Servs*., No. 14-cv-04597-CAS(AGRx), 2015 WL 6249563, at *4 (C.D. Cal. Feb. 9,

2015) (citing *Mohammedi v. Scharfen*, 609 F. Supp. 2d 14, 18 (D.D.C. 2009) (finding

venue proper in Maryland where the plaintiff reported to the Baltimore USCIS office

for fingerprinting and an interview); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80

(D.D.C. 2009) (finding venue proper in the Northern District of Texas where an office

in that district processed an applicant's application by gathering evidence and

---

confidential juvenile information to federal officials absent a court order of the judge
of the juvenile court upon filing a petition. Cal. Welf. Inst. Code § 831(a). Here, Mr.
De La Cruz referenced alleged juvenile charges, court dates, and an alleged reference
to a state court judge's statements regarding Miguel Angel S.'s further detention.
First, the declaration's characterization of the judge's statements is not accurate and is
disputed by Plaintiffs. Second, the information is inadmissible under Federal Rules of
Evidence 403, because the probative value of this evidence is outweighed by its unfair
prejudice. Defendant is using evidence that was given to it in violation of state law
and its admission prejudices Plaintiff, Miguel Angel S., and would result in a Fifth
Amendment due process violation.

[4] Defendants argue that Benjamin F., Sirena P., and Lucas R.'s claims are moot due to
their release, preventing the Court from appointing them as class representatives or
considering their claims for venue purposes.  (Mot. at 9.)  Plaintiffs have elsewhere
established that these Plaintiffs' claims are not moot and that they may continue to
serve as class representatives. *See* Plaintiffs' Motion for Class Certification (Dkt. No.
97-1 at 19-21) (citing, *inter alia*, *Pitts v. Terrible Herbst, Inc.*, 653 F. 3d 1081, 1090
(9th Cir. 2011).  The recent declaration of ORR Representative James L. De La Cruz,
describing the release of these three children and the possibility that ORR may elect to
release the other named Plaintiffs (Dkt. No. 100-1), perfectly illustrates that the class
claims here are capable of repetition yet evade review.  Therefore, the release of
individual Plaintiffs does not prevent the Court from certifying a class or appointing
these Plaintiffs as class representatives.

11.

1  fingerprints, and communicated with the applicant); *Zhang v. Chertoff*, No. 08–cv–
2  02589–JW, 2008 WL 5271995, at *4 (N.D. Cal. Dec. 15, 2008) (transferring case to
3  this district because plaintiff filed petition with office located herein)).  The mere fact
4  that ORR has also taken actions regarding these Plaintiffs in other districts cannot
5  disqualify the Central District of California as an appropriate venue in this matter.

6       And Plaintiffs need not establish that the events in this District predominate or
7  that the chosen district is the best venue, merely that the events in question form a
8  substantial part of their claims.  *See Gulf Ins. Co. v. Glasbrenner*, 417 F. 3d 353, 356
9  (2d Cir. 2005); *Adab*, 2015 WL 6249563, at *5 (citing *U.S. Tower Corp. v. STS Int'l,
10  Inc*., No. 08–cv–0228–AWI–SMS, 2008 WL 2074463, at *2 (E.D. Cal. May 15,
11  2008); *Hawkins v. Davis*, No. 00–cv–01077–DDP–CWZ, 2000 WL 33936254, at *1
12  (C.D. Cal. Aug. 10, 2000) ("A substantial part of the events may arise, and venue may
13  be appropriate, in more than one judicial district."); *Ibrahim v. Chertoff*, No. 06–cv–
14  2071–L–POR, 2007 WL 1558521, at *5 (S.D. Cal. May 25, 2007) ("Petitioner is not
15  limited to the district where the most substantial events or omissions giving rise to the
16  action occurred.")).  Thus, Defendants' insistence that ORR policies or practices may
17  have been developed elsewhere is irrelevant; Plaintiffs need only allege that
18  Defendants applied their challenged policies and practices in this District, and
19  Plaintiffs' clearly did.

20      Because venue over the claims of Plaintiffs Daniela Marisol T., Lucas R.,
21  Sirena P. and Benjamin F. exists under 28 U.S.C. § 1391(e)(1)(B), venue is also
22  proper for the other named Plaintiffs who allege violations of the same practices and
23  policies.  *See Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal.
24  2000) (holding that even though the alleged civil rights violation occurred in different
25  districts for different plaintiffs, because a substantial part of the events affecting one
26  plaintiff occurred in the Northern District, venue was proper as to named plaintiffs

27
28

**OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA**

1 | making similar claims).[5]

2 | ### 4.    The Court has discretion to exercise pendant venue.

3 | Lastly, the government does not (and cannot) dispute that the Court has

4 | discretion to hear all claims in this matter under the pendent venue doctrine, as long as

5 | one claim is properly before it.  If all claims *arise out of the same transaction or*

6 | *occurrence* ("a common nucleus of operative facts"), a claim properly venued before

7 | the Court can support venue as to other claims.  *Martensen v. Koch*, 942 F. Supp. 2d

8 | 983, 998 (N.D. Cal. 2013) ("[I]f venue is proper on one claim, the court may find

9 | pendent venue for claims that are closely related" considering "judicial economy,

10 | convenience, avoidance of piecemeal litigation, and fairness to the litigants.").

11 | Here, there is no question that the institutional Plaintiffs have venue for their

12 | claims.  Additionally, because substantial events occurred in this District as to the

13 | claims brought by Lucas R., Daniela Marisol T., Sirena P. and Benjamin F., venue is

14 | proper for their claims.  Thus, all of the claims at issue in the Complaint, including the

15 | class action claims, are already properly before this Court for multiple reasons.

16 | Judicial economy, convenience, and the avoidance of piecemeal litigation all support

17 | this Court adjudicating the entire matter in this District.

18 | ### B.    Transfer to the District for the District of Columbia Is Unwarranted.

19 | Mandatory transfer under 28 U.S.C. § 1406(a) is appropriate only "where venue

20 | is improper in the transferor forum." *Fuji Photo Film Co., Ltd. v. Achiever Industries,*

21 | *Ltd. et al.*, 2006 WL 8432101, at *2, n.1 (C.D. Cal. Mar. 29, 2006). For the reasons

22 | above (*supra* § A), venue in this District is proper, and therefore, transfer under

23 | Section 1406(a) is not. *See e.g., Pacific Pulp Molding*, *Inc. v. Burchfield*, 2015 WL

24 | 12672701, at *8 (S.D. Cal. Sept. 28, 2015).

25 |

26 |

27 |

28 | [5] Plaintiffs' venue argument is not based on the residence of Defendants, 28 U.S.C. § 1391(e)(1)(A), thus their arguments on this issue (Mot. at 12-13) are irrelevant.

Even if Defendants' argument were for permissive transfer under 28 U.S.C. § 1404, their arguments are unavailing.[6]  First, Plaintiffs' choice of forum is entitled to great deference, even in a class action, where a representative plaintiff resides in the district and there is no evidence of forum shopping. *See Roling v. E\*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1185–86 (N.D. Cal. 2010)*; In re Ferrero Litigation*, 768 F. Supp. 2d 1074, 1078-79 (S.D. Cal. 2011). Three of the representative plaintiffs, Lucas R., Sirena P., and Benjamin F., all of whom maintain claims against the Defendants, presently reside in the Central District. (Dkt. No. 100-1.) And Defendants offer no argument or evidence that Plaintiffs engaged in forumshopping.

Second, the convenience of the parties favors this District. Defendants have not and cannot show "both that the original forum is inconvenient for [them] and that the plaintiff[s] would not be substantially inconvenienced by a transfer." *Anton Sport, Inc. v. Monkey Boy Graphix Inc*., 2008 WL 11339089, at \*4 (D. Ariz. July 22, 2008) (internal quotation and citation omitted) (party bringing motion to transfer bears this burden). At most, Defendants argue that the only relationship with this District is that of Plaintiffs' counsel. (Mot.  at 14:18-23.) But this is plainly incorrect, as Plaintiffs have significant ties to this forum and three of the representative plaintiffs—all minors with few means to litigate this matter outside of this forum—currently reside in Los Angeles with their Next Friends.

Third, Defendants have not established that the convenience of witnesses supports transfer, providing only vague generalizations that unidentified witnesses are located in the District for the District of Columbia.  *Florens Container v. Cho Yang*

---

[6] When considering a motion for transfer under Section 1404(a), the Court must weigh a variety of factors, including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative concerns. *Allstar Mktg. Grp., LLC . Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1130 (C.D. Cal. 2009). But transfer "is not appropriate unless the factors enumerated strongly favor venue elsewhere." *Caltex Plastics, Inc. v. Great Pac. Packaging, Inc*., 2014 WL 4060144, at \*2 (C.D. Cal. Aug. 12, 2014).  And Defendants cannot meet this burden.

*Shipping*, 245 F.Supp.2d 1086, 1093 (N.D. Cal. 2002) ("The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include.")  Defendants did not identify even a single witness who would be inconvenienced, let alone describe the relevance of their testimony.   To the extent these unnamed witnesses are federal employees, their convenience does not tip the balance. *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 779 (N.D. Cal. 2014) ("[T]he convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial").

Fourth, Defendants failed to state with particularity that the location, importance, and difficulty of transporting documentary evidence support transfer. *Rodgers v. Stater Bros. Markets*, 2017 WL 2268884, at *3 (S.D. Cal. 2017). Defendants merely assert that relevant records "would be located in [the Washington D.C.] area." (Mot. at 15:10-13.) This conclusory statement does not suffice. *Rodgers*, 2017 WL 2268884, at *3; *Lax*, 65 F. Supp. 3d at 780 (location of books and records given almost no weight given electronic discovery).

Fifth, the interests of justice favor venue in this District, which "include having a judge who is familiar with the applicable law try the case," *Allstar Mktg. Grp.*, 666 F. Supp. 2d at 1134, and litigating "in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute." *United States ex rel. Cody v. Mantech Int'l Corp.*, 2016 WL 10537807, at *5 (C.D. Cal. Feb. 9, 2016) (internal quotation and citation omitted). This Court has extensive familiarity and experience with the substantive rights at stake in this case. For three years, Judge Gee has presided over the *Flores* litigation, which shares much of the same "locus of operative facts"—ORR's deprivations of unaccompanied minors' constitutional and statutory rights—and calls for the application of similar law as does the instant action.   As Defendants acknowledge, the remaining factors are neutral and do not favor transfer. (Mot. at 15.)

OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA

**C.  The Complaint States Valid Claims Upon For Relief.**

　　**1.  Plaintiffs are *Flores* class members and may sue to enforce their rights under the *Flores* consent decree independently.**

Defendants next urge the Court to dismiss Plaintiffs' claims for violations of the *Flores* Settlement for failing to state a claim upon which relief may be granted. According to Defendants, these claims seek to "re-write" the *Flores* Settlement, Mot. at 17, which, they say, Plaintiffs may only do by way of a motion brought in *Flores* itself. Plaintiffs, however, are unnamed *Flores* class members. As such, they may sue independently to secure their rights under the agreement; nothing requires they do so only in *Flores* itself.[7]

This Court's jurisdiction to remedy systematic violations of the *Flores* Settlement is indisputable. Both the Settlement and the order approving it reserve jurisdiction in this Court to redress such violations. *Flores* Settlement ¶ 37 ("This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement except for claims brought under Paragraph 24.").[8] In *Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015), this Court held it "has the inherent power to enforce the terms of the [*Flores*] Agreement. . . .'" *Id*. at 869. The Ninth Circuit affirmed. *Flores v. Lynch*, 828 F.3d 898, 903 (9th Cir. 2016). The instant action falls squarely within the *Flores* Settlement's forum-selection provisions.[9] Plaintiffs' challenge to systematic violations of the *Flores* Settlement is properly before "this District Court."

---

[7] Far from "re-writing" the *Flores* Settlement, Plaintiffs' instant claims seek to secure ORR's compliance with the agreement's provisions regarding proper placement and prompt release, and allege separate and distinct causes of action.

[8] Paragraph 24 of the *Flores* Settlement provides for judicial review of *individual* class members' *placement* in any judicial district with venue. The agreement reserves jurisdiction in this Court to hear claims that ORR is (1) systematically violating the Settlement; or (2) violating an individual class member's settlement rights in any respect other than placement. *Flores* Settlement ¶ 37 ("The parties shall meet . . . prior to bringing any individual or class action to enforce this Agreement.").

[9] The agreement's forum-selection clause is presumptively valid. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

Nor do Plaintiffs improperly seek to litigate identical claims in two lawsuits. Plaintiffs herein are unnamed class members in *Flores*; as such, the Settlement vests them with an independent right to bring "individual *or class action*" challenges to ORR's compliance "in this District Court." *Flores* Settlement ¶ 37 (emphasis added). Nothing in the Settlement limits unnamed class members to bringing motions in *Flores* proper, nor is there any basis in law to imply such a limitation. *Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001) ("There are . . . many ways in which the performance of a class action settlement might be called into question before the district court: [including] . . . in *a new action for breach of contract. . . .*").[10]

## 2.   Plaintiffs' claims that ORR systematically violates the TVPRA are fully cognizable.

Defendants raise no objection to the adequacy of the FAC's allegations that ORR is violating the TVPRA in multiple ways. Instead, Defendants argue (1) that Plaintiffs have no private right of action under the TVPRA; and (2) that ORR's challenged policies and practices are not "final agency action" within the meaning of the Administrative Procedure Act. Neither argument withstands scrutiny.

Private rights of action to enforce federal law "must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 276 (2001). A statute need not expressly provide that individuals may sue to enforce its provisions, but may create a private right of action by implication. *See id.*

---

[10] This Court previously declined to prescribe procedural remedies for ORR's violations of the *Flores* Settlement's placement and release provisions. Order at 2-6, *Flores v. Sessions*, No. CV-85-4544 DMG, Docket Entry 470 (C.D. Cal. July 30, 2018) ("July 30 Order"). However, it did so for two principal reasons: First, because the *Flores* plaintiffs had not sought to hold ORR in contempt, *id.* at 3-4; and second, because on a motion to enforce, the *Flores* plaintiffs were not entitled to demand constitutionally due process as a remedy for contractual violations. *Id.* at 5. Nothing in the July 30 Order precludes Plaintiffs from presenting clear and convincing evidence that ORR is in contempt of the *Flores* consent decree here or from seeking constitutionally due process as a remedy for ORR's systematically violating the Settlement's placement and release provisions. *See* § IV.C.4.

In determining whether a statute impliedly authorizes private enforcement, courts consider four factors: (1) "whether the statute was enacted for the benefit of a special class of which the plaintiff is a member"; (2) whether the legislative history of a statute that benefits a special class nonetheless manifests "an explicit purpose to deny such cause of action . . ."; (3) whether implying a private remedy would "frustrate the underlying purpose of the legislative scheme[;]" and (4) "whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the States." *Cannon v. University of Chi.*, 441 U.S. 677, 689-709 (1979).

Here, Congress passed the TVPRA to expand protections for a vulnerable population: unaccompanied children. *Flores v. Sessions*, 862 F.3d 863, 880 (9th Cir. 2017) (In enacting the TVPRA, "Congress sought to improve the procedures governing the treatment of unaccompanied minors").  The specific provisions of the TVPRA Plaintiffs seek to enforce manifest an unmistakable intent to confer real, enforceable rights: "an unaccompanied alien child in the custody of [ORR] *shall* be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A) (emphasis added). "[ORR] *shall* ensure, to the greatest extent practicable . . . that all unaccompanied alien children . . . have counsel to represent them in legal proceedings or matters. . ." 8 U.S.C. § 1232(c)(5) (emphasis added); *cf. Toussaint v. McCarthy*, 801 F.2d 1080, 1098 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987) ("The use of the word, shall, [in connection with specific substantive predicates for action] constitutes the mandatory language needed to create a liberty interest.").  Plaintiffs' suing to enforce these rights would in no way "frustrate the underlying purpose" of the TVPRA; rather, it will further its purpose. Nothing in the enactment's text or legislative history suggests otherwise.[11]

---

[11] It hardly matters whether the TVPRA itself impliedly subjects ORR to suit. The APA waives sovereign immunity in almost every action seeking non-monetary relief against unlawful agency action by federal agencies and officials. 5 U.S.C. § 702. "The clear objective" of § 702 is to "waive sovereign immunity as a defense in actions

### 3.   ORR's challenged policies and practices are final and directly violate the APA.

Defendants next argue that ORR's challenged policies and practices are not actionable violations of the APA itself,[12] *see* 5 U.S.C. § 706 (authorizing court to set aside administrative action that is, *inter alia*, arbitrary or capricious), because they are not "final." Mot. at 21 *citing* 5 U.S.C. § 704.

Defendants' argument fails. Under § 706, agency action is "final" when two conditions are met: "first, . . . it must not be of a merely tentative or interlocutory nature. And second, the action must be one . . . from which legal consequences will flow." *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196-97 (9th Cir. 1997) (internal quotation omitted) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). There is nothing tentative about ORR's policy and practice to arbitrarily step up children to unlicensed placements, administer them psychotropic drugs without procedural protections, deny them release to qualified custodians, or deny them the assistance of counsel. Multiple courts have held that ORR's pursuing policies and practices indistinguishable from those at bar is "final" agency action under the APA.

In *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601 (S.D.N.Y. 2018), for example, children whose release ORR delayed pending its director's approval challenged ORR's policy as violating its duty to place children promptly in the least restrictive setting consistent with their best interests. *Id*. at 608-09. As it does here, ORR argued that its director-

---

seeking relief other than money damages." *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524 (9th Cir. 1989). "'[O]nly upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review.'" *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 778 (1985) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).  In sum, Plaintiffs "can sue under the APA to force compliance with [the TVPRA] without having a 'private right of action' under the statute." *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096 (9th Cir. 2005).

[12] None of the § 704 limitations on judicial review apply when a litigant sues for non-monetary relief against a federal agency's violating *another* federal statute—in this case is the TVPRA—or the U.S. Constitution. *Navajo Nation v. Department Of The Interior* , 876 F.3d 1144, 1172 (9th Cir. 2017).

approval policy was not sufficiently final to sustain APA review. The court disagreed: ORR's "release procedure and the director review policy indisputably define the rights or obligations of ORR staff and Plaintiffs; and legal consequences flow from them." *Id*. at 612 (citing *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)); *see also Lopez v. Sessions*, No. 18 Civ. 4189, 2018 U.S. Dist. LEXIS 98712, at *20-21 (S.D.N.Y. June 12, 2018) (DHS's failing to consider placing youth in less restrictive setting "final" agency action).[13]

Here, Plaintiffs allege that ORR pursues five discrete policies that deny children the protections the TVPRA confers in violation of the APA. FAC ¶¶ 179-94. Though Plaintiffs' TVPRA and constitutional claims are reviewable regardless, ORR's having adopted and applied these policies is final agency action directly reviewable for substantive violations of the APA. *M.B. v. Quarantillo*, 301 F.3d 109, 111-14 (3d Cir. 2002) (judicial review permitted where "an agency 'announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed. . . . ' [(quoting *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)]"). Defendants' Motion to Dismiss for want of "final" agency action should be denied.

---

[13] In multiple other cases, courts have discerned no impediment to reviewing whether ORR's policies and practices violate children's and youths' rights under the TVPRA or the U.S. Constitution. *E.g.*, *Ramirez v. United States Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 25-30 (D.D.C. 2018) (enforcing requirement of TVPRA § 235(c)(2)(B) that ICE consider placement in the least restrictive setting for youth who "age out" of ORR custody); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1199-1201 (N.D. Cal. 2017), *aff'd* __F.3d __, 2018 U.S. App. LEXIS 27779, at *11 (9th Cir. Oct. 1, 2018) (entering preliminary injunction based, *inter alia*, on TVPRA requirement that ORR place children in the least restrictive setting that is in their best interests); *see also cf.*, *Maldonado v. Lloyd*, 2018 U.S. Dist. LEXIS 75902, at *18 (S.D.N.Y. May 4, 2018) (holding ORR lacks authority to detain juvenile who is not unaccompanied within meaning of TVPRA § 235(g); *Saravia v. Sessions*, __F.3d __, 2018 U.S. App. LEXIS 27779, at *11 (9th Cir. Oct. 1, 2018) (affirming preliminary injunction as "entirely consistent with that statutory mandate" of TVPRA that ORR place unaccompanied children in the "'least restrictive setting that is in the best interest of the child.'").

**4.   Plaintiffs have stated cognizable claims that ORR's challenged policies and practices deny constitutional due process.**

Due process is denied where there exists (1) a constitutionally protected liberty or property interest; (2) the government's deprivation of said interest; and (3) a lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Here, Defendants argue only that the FAC fails to identify any substantive legal right subject to procedural due process. Opp. at 18. Defendants are wrong.

An interest meriting procedural protection may arise directly from the Constitution, *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923); from statute, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); or from contract, *San Bernardino Physicians' Servs. Med. Grp. v. County of San Bernardino*, 825 F.2d 1404, 1407-08 (9th Cir. 1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).

A statute creates a protected interest when it places "substantive limitations on official discretion." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). "The use of the word, shall, [in connection with specific substantive predicates for action] constitutes the mandatory language needed to create a liberty interest." *Toussaint,* 801 F.2d at 1098.

Contracts create protected liberty interests when their protections are akin to "a civil right . . ." *San Bernardino Physicians' Servs. Med. Grp.,* 825 F.2d at 1409; *see also Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991) (quoting *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 965-67 (2d Cir. 1988)) (contract gives rise to protected interests when it "confers a protected status, such as those 'characterized by a quality of . . . extreme dependence in the case of welfare benefits'").

Plaintiffs allege they have the following substantive rights meriting constitutionally due process:

OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA

- Contractual (*Flores* Settlement ¶¶ 14 & 18), statutory (TVPRA § 235(c)(2)(A)), and constitutional rights (based on personal liberty and family integrity) to prompt release to qualfied custodians. FAC ¶¶ 103-07.

- Contractual (*Flores* Settlement ¶ 19), statutory (TVPRA § 235(c)(2)(A)), and constitutional right (based on freedom from unnecessary physical restraint) to placement in a non-secure, properly licensed facility. FAC ¶¶ 117-22.

- Contractual (*Flores* Settlement ¶¶ 6-8), statutory (TVPRA § 235(c)(2)), and a constitutional right (based on substantive liberty interests) to freedom from the unncecessary administration of psychotropic drugs. FAC ¶¶ 132-37.

- A statutory (TVPRA § 235(c)(5)) right to the assistance of available counsel in legal matters or proceedings involving ORR's placement, release, and medication decisions. FAC ¶ 144.

That these substantive rights are entitled to procedural protection is abundantly clear. First, ORR's challenged policies and practices impair children's constitutional rights to freedom from unnecessary physical restraint, freedom from being unneccessarily administered psychotropic drugs, and family integrity. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Fifth Amendment's Due Process] Clause protects."); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (individuals "possess[] a significant liberty interest in avoiding the unwanted administration" of psychotropic medications); *Parham v. J. R.*, 442 U.S. 584, 600 (1979) (finding "a child . . . has a substantial liberty interest in not being confined unnecessarily for medical treatment"); *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (children "enjoy a familial right to be raised and nurtured by their parents.") (internal citation and quotation omitted); *M.B. v. Corsi*, No. 2:17-cv-04102, 2018 U.S. Dist. LEXIS 3232, at *37 (W.D. Mo. 2018) ("Plaintiffs have a substantial liberty interest in avoiding the unnecessary administration of medical treatment.") (internal quotations omitted); *Aristotle P. v.*

*Johnson*, 721 F. Supp. 1002, 1006 (N.D. Ill. 1989) (children have "constitutionally protected right to associate with their siblings").

Second, the TVPRA clearly places "substantive limits on [ORR's] official discretion." *Kentucky Dep't of Corrections*, 490 U.S. at 462. Regarding placement, for example, it mandates that the agency "shall . . . promptly place[] [a detained child] in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). ORR's peremptorily stepping up children to unlicensed facilities, where it leaves them to languish for months, self-evidently violates this substantive limit.[14]

Third, the protections the *Flores* Settlement confers are plainly akin to "civil rights," and they benefit a class—detained children—"characterized by a quality of extreme dependence." *See Flores* Settlement ¶¶ 11, 12 (describing plaintiff class as "particular[ly] vulnerabl[e]" minors). Like the TVPRA, the *Flores* Settlement creates substantive rights—to licensed placement, release to qualified custodians, and freedom from arbitrary psychotropic drugging—warranting procedural protection.

The FAC is replete with allegations that ORR denies Plaintiffs and their proposed class members the foregoing substantive rights without affording them any meaningful notice or opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319 (1976) (prescribing test for process due);  *see also Harper*, 494 U.S. at 216 (detailing procedures due when forcibly medicating adult prisoners with psychotropic drugs); *Parham v. J.R.*, 442 U.S. 584, 606-08 (1979) (detailing procedures due when civilly committing youth to psychiatric hospitals). Plaintiffs have accordingly alleged fully cognizable procedural due process claims.

---

[14]  The same is true with respect to ORR's obstructing children's access to legal counsel. The TVPRA commands that ORR "shall ensure, to the greatest extent practicable . . . that all unaccompanied alien children . . . have counsel to represent them in legal proceedings or matters. . . ." 8 U.S.C. § 1232(c)(5). ORR's hobbling available legal services providers from representing children in legal proceedings or matters involving ORR's placement, release, and medication decisions clearly undercuts the substantive right to counsel the TVPRA confers.

### 5.    Plaintiffs adequately plead their Section 504 claim.

Plaintiffs also allege facts sufficient to show that ORR excludes otherwise qualified youth from participation in, denies them the benefits of, and/or discriminates against them in its programs and activities solely by reason of their disabilities.[15] *See* 29 U.S.C. § 794; FAC ¶¶ 153-77, 191-94.

First, ORR steps up youth with actual or perceived mental health needs to more restrictive settings on the basis of their disabilities, unnecessarily segregating them from non-disabled peers and discriminating against them on the basis of disability in violation of Section 504.[16] For example, ORR stepped up Gabriela N. to Shiloh due to mental health needs, ostensibly including post-traumatic stress disorder, anxiety, major depressive disorder, and attention-deficit hyperactivity disorder.  FAC ¶¶ 62-63.

Second, ORR's methods of administration have the effect of discriminating against youth with disabilities and substantially impairing accomplishment of the objectives of its programs with respect to youth with disabilities in violation of Section 504 because, when youth are stepped up because of disability, it results in the prolonged separation of children from their families on the basis of disability. FAC ¶¶ 153-76.  ORR fails to make reasonable accommodations necessary to avoid discrimination on the basis of disability. FAC ¶ 177. For example, Benjamin F., a nine-year-old child with autism and a developmental disability, was placed at Shiloh and his release was delayed because of his disability (i.e., his mental and behavioral

---

[15] To the extent Defendants suggest that Plaintiffs must plead intent, *see* Mot. at 23, they ignore (1) the Rehabilitation Act's purpose to protect from "discrimination arising out of both discriminatory animus and 'thoughtlessness,' 'indifference,' or 'benign neglect[,]'" *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985)); and (2) the fact that Section 504 Plaintiffs need only prove intent if they seek compensatory damages, *see Huezo v. Los Angeles Cmty. Coll. Dist*, No. 04-cv-9772 MMM-JWJ, 2007 WL 7289347, at *1 n.1 ("Liability . . . can be established without a showing of discriminatory intent.").

[16] The FAC alleges that ORR discriminates against youth "in violation of Section 504," FAC ¶¶ 162, 176, and in turn quotes Section 504's prohibition on exclusion, denial of benefits, and discrimination "solely by reason of . . . disability." FAC ¶¶ 153, 163. Plaintiffs have therefore "legally state[d]," *see* Mot. at 23, that they are unnecessarily segregated and held in prolonged detention "solely by reason" of their disabilities.

1   health needs), while his nondisabled brother was released to their grandmother. FAC
2   ¶¶ 87, 90, 94.

3       At the pleading stage, the allegations that ORR's policies and practices result in
4   segregation and needlessly prolong detention of youth because of disability more than
5   suffice to meet Section 504's causation standard and "allow[] the court to draw the
6   reasonable inference" that ORR is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);
7   *see, e.g.*, *Independent Living Ctr. of S. Cal. v. City of L.A.*, No. 12-cv-551-SJO-PJW,
8   2012 WL 13036779, at *7 (C.D. Cal. Nov. 29, 2012) (sufficient to allege clients
9   "could not obtain public housing because of their disability" and defendants failed to
10  ensure compliance); *C.S. v. Public Safety Acad. of San Bernardino*, No. 14-cv-941-
11  RGK-DTB, 2014 WL 12591181, at *3-4 (C.D. Cal. Nov. 26, 2014) (sufficient to
12  allege plaintiff was subject to eligibility requirement that deprived him of programs
13  and activities as a result of disability and that the challenged policy disproportionately
14  impacts disabled students by segregating them from non-disabled peers); *see also*
15  *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1318 (W.D. Wash. 2015) ("[U]nnecessary
16  segregation of persons with mental disabilities is discrimination *per se* under . . .
17  Section 504[.]").

18  **V.   CONCLUSION**

19      For the reasons set forth above, Plaintiffs respectfully request that the Court
20  deny Defendants' Motion to Dismiss.

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA**

1
2

Dated:  October 5, 2018

CARLOS HOLGUÍN
Center for Human Rights &
Constitutional Law

3
4

HOLLY COOPER
CARTER WHITE
University of California Davis School of Law

5
6
7

LEECIA WELCH
NEHA DESAI
POONAM JUNEJA
CRYSTAL ADAMS
National Center for Youth Law

8
9
10

SUMMER WYNN
MARY KATHRYN KELLEY
JON CIESLAK
MEGAN DONOHUE
Cooley LLP

11

/s/  *Carlos Holguin*

12

Carlos Holguin

13

*Attorneys for Plaintiffs*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO MOTION TO DISMISS FAC
CASE NO. 2:18-CV-05741 DMG PLA**