UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 1 of 28 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS
[101] AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [97]**

On September 7, 2018, Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., Gabriela N., Jaime D., Sirena P., Benjamin F., San Fernando Valley Refugee Children Center, Inc., and Unaccompanied Central American Refugee Empowerment filed a First Amended Class Action Complaint for Declaratory, Injunctive, and Nominal Monetary Relief ("FAC") against Alex Azar, the Secretary of the U.S. Department of Health and Human Services ("HHS"), and E. Scott Lloyd, the Director of the Office of Refugee Resettlement ("ORR").  [Doc. # 81.]  The FAC alleges that ORR pursues certain policies and/or practices relating to the detention of undocumented immigrant or refugee minors that purportedly violate:  the consent decree entered in *Flores v. Sessions*, No. 85-4544-DMG (AGRx) (C.D. Cal.) [Doc. # 101] ("*Flores* Agreement"), the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), the Due Process Clause of the Fifth Amendment, and the Freedom of Association Clause of the First Amendment.  *See* FAC at ¶¶ 2–3, 4.a–d.  The FAC further claims that ORR pursues certain policies and/or practices that discriminate against undocumented minors on the basis of their actual or perceived disabilities, which allegedly violate Section 504 of the Rehabilitation Act.  *See id.* at ¶¶ 4.e–f, 192–94.

On September 28, 2018, Defendants filed a Motion to Dismiss or Transfer ("MTD") [Doc. # 101] and Plaintiffs filed a Motion for Class Certification.  [Doc. # 97.]  Both motions have since been fully briefed.  [Doc. ## 106, 107, 113, 114.]  For the reasons discussed in this Order, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' MTD and **GRANTS** Plaintiffs' Motion for Class Certification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | ***Lucas R., et al. v. Alex Azar, et al.*** | Page | 2 of 28 |
|---|---|---|---|

**I.**
**FACTUAL BACKGROUND**[1]

Plaintiffs Lucas R., Daniela Marisol T., Gabriela N., Miguel Angel S., Jaime D., Sirena P., and Benjamin F. (collectively, "Individual Plaintiffs")[2] are undocumented minors who are or recently were in ORR's custody.[3]  *See* FAC at ¶¶ 10–16.  Plaintiff San Fernando Valley Refugee Children Center ("Children Center") is a non-profit organization that has its principal place of business in North Hills, California.  *Id.* at ¶ 17.  The Children Center's mission is to provide comprehensive social services (*e.g.*, mental health care, shelter, transitional living assistance, and legal aid) to children, youth, and families who entered the country to seek refuge from persecution and endemic violence in El Salvador, Honduras, and Guatemala.  *Id.*  Plaintiff Unaccompanied Central American Refugee Empowerment ("UCARE") is an unincorporated consortium of non-profit agencies that has its principal place of business in Los Angeles, California; most of the non-profit agencies belonging to UCARE are incorporated in California.  *Id.* at ¶ 19.  UCARE's mission is to advocate for and provide legal and social services to immigrant and refugee minors, many of whom are or have been in ORR or Immigration and Customs Enforcement ("ICE") custody.  *Id.*  To the extent that ORR implements any policies or practices that deny or delay the release of minors in the agency's custody, such conduct denies or delays UCARE's member organizations' opportunity to serve those minors.  *See id.*  The Children Center's and UCARE's ability to raise funds depends in part on the raw number of children and youth to whom they provide services.  *See id.* at ¶¶ 18–19.  ORR has placed many minors in communities that the Children Center and UCARE serve (*e.g.*, in federal fiscal year 2018, ORR placed more than 1,100 alien minors in Los Angeles).  *See id.* at ¶ 20.

---

[1] The Court assumes the truth of the FAC's allegations solely for the purpose of deciding Defendants' MTD for lack of subject matter jurisdiction and failure to state a claim.  *See infra* Part II.A.  With regard to Defendant's MTD for lack of venue, the Court presumes that the FAC's averments are true to the extent they are not contradicted by extrinsic evidence.  *See id.*  Lastly, the FAC's averments may be considered in connection with Plaintiff's Motion for Class Certification to the extent that they are supported by extrinsic evidence or are undisputed.  *See infra* Part III.B.

[2] The Court previously granted the Individual Plaintiffs leave to proceed in this matter under pseudonyms. Order re *Ex Parte* Application for Leave to Proceed Using Pseudonyms [Doc. # 92].

[3] The TVPRA provides that HHS is responsible for the custody of all unaccompanied alien children.  *See* 8 U.S.C. § 1232(b)(1).  ORR is the division of HHS that has been entrusted with that responsibility.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1178 (N.D. Cal. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 3 of 28 |
|---|---|---|---|

Plaintiffs allege that ORR has adopted and implemented the following six policies and/or practices in violation the *Flores* Agreement, the TVPRA, the Due Process Clause, the Freedom of Association Clause, and/or Section 504 of the Rehabilitation Act:

(a)   ORR confines children in medium[-]secure facilities, residential treatment centers ("RTCs"), and secure facilities peremptorily, often on bare allegations they are dangerous or pose a flight risk, without affording them a meaningful opportunity to be heard regarding the reasons for such placement;

(b)   ORR prolongs children's detention on the ground that their parents or other available custodians are or may be unfit, while affording neither detained juveniles nor their proposed custodians a meaningful or timely opportunity to be heard regarding a proposed custodian's fitness;

(c)   ORR places children in [RTCs] and detention facilities in which it knows they will be administered powerful psychotropic medications for weeks, months, or years, without procedural safeguards, including seeking informed parental consent or other lawful authorization, even from parents present in the United States[;]

(d)   ORR blocks lawyers from representing detained children with respect to placement, non-consensual administration of psychotropic medications, or release to available custodians notwithstanding that Congress has allocated funds specifically to provide such lawyers to represent children who are or have been in ORR custody in "legal matters," including issues related to release and [placement in the least-restrictive setting];

(e)   ORR segregates children who have or are perceived to have a behavioral, mental health, intellectual, and/or developmental disability in secure facilities, medium[-]secure facilities, and RTCs, instead of the most integrated setting appropriate to their needs; and

(f)   ORR[] prolong[s] the detention of children who have or are perceived to have a behavioral, mental health, intellectual, and/or developmental disability by placing them in restrictive settings associated with heightened administrative barriers to release.

*See id.* at ¶¶ 4.a–e.

The FAC asserts five causes of action, which challenge ORR's policies and/or practices concerning the agency's:  (1) determinations of potential custodians' fitness; (2) placement of minors in RTCs, secure facilities, and medium-secure facilities; (3) administration of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 4 of 28 |
|---|---|---|---|

psychotropic drugs to minors; (4) decision to block minors' access to legal assistance in matters relating to custody, medication, and release; and (5) discrimination against undocumented minors on the basis of their disabilities. *See id.* at 54–57.

## II.
## LEGAL STANDARDS

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may raise either a facial or a factual challenge to a federal court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When resolving a facial attack, a court "presume[s] the truthfulness of the plaintiff's allegations" and determines whether they establish that subject matter jurisdiction is proper. *See id.* Defendants raise a facial attack to the Children Center's and UCARE's Article III standing to bring suit. *See* MTD at 10–14.[4]

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to challenge a complaint for improper venue. In considering such a motion, "[the] pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Once venue is challenged, a plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). If the Court determines that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also King v. Russell*, 963 F.2d 1301, 1304–05 (9th Cir. 1992) (holding that the decision to dismiss or transfer for improper venue is committed to the sound discretion of the district court).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than

---

[4] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 5 of 28 |
|---|---|---|---|

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

**B.      Motion for Class Certification**

A district court has broad discretion in making a class certification determination under Rule 23. *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23"). Nonetheless, a court must exercise its discretion "within the framework of Rule 23." *Navellier*, 262 F.3d at 941.

The following prerequisites must be met before a court may certify a class under Rule 23:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to Rule 23(a)'s prerequisites, a party moving for class certification must also satisfy one of the criteria of Rule 23(b). Rule 23(b)(2) authorizes certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

"The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). Certification is properly granted only if "after a rigorous analysis[,]" the district court concludes that Rule 23's requirements have been satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). In conducting this analysis, "[m]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 6 of 28 |
|---|---|---|---|

Rule 23 prerequisites for class certification are satisfied." *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1111 (9th Cir. 2014) (alteration in original) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

### III.
### DISCUSSION

#### A.   **Defendants' MTD**

Defendants' MTD raises the following arguments:  (1) the Children Center and UCARE lack Article III standing to bring suit; (2) the Court should dismiss or transfer this action on the basis of improper venue; and (3) the FAC fails to state claims for relief under the *Flores* Agreement, the TVPRA, the Administrative Procedure Act ("APA"), the Due Process Clause, and Section 504 of the Rehabilitation Act.  *See* MTD at 8, 23–30.  The Court addresses each of these arguments in turn.

#### 1.   **The Children Center's and UCARE's Article III Standing**

"The three well-known 'irreducible constitutional minim[a] of standing' are injury-in-fact, causation, and redressability." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "A plaintiff bears the burden of demonstrating that her injury-in-fact is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Defendants argue that the Children Center's and UCARE's alleged injuries are speculative.  Specifically, they contend that the FAC "assumes that some child in ORR custody may eventually use their services for which they may receive funds or for which they may have to provide extra treatment," and that these two organizational Plaintiffs "suffer no injury from the alleged delay" in the release of alien minors because the children "would eventually be served by the organization[s]." *See* MTD at 12.  Consequently, Defendants contend that Plaintiffs have failed to establish that ORR's policies and/or practices have negatively impacted the funding of these two organizations, which depends in part on the number of minors they serve.[5] *See id.* at 12–14.

---

[5] Defendants also suggest that the FAC fails to supply sufficient detail regarding "how these organizations raise their funds." *See* Reply re MTD at 8.  The Court rejects this argument because it is entirely plausible that the Children Center's and UCARE's donors would be inclined to provide additional funding if these organizations were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 7 of 28 |
|---|---|---|---|

The FAC alleges that "ORR has placed many unaccompanied children in the communities that the Children Center and UCARE serve" and "ORR placed more than 1,100 unaccompanied children in Los Angeles alone" in fiscal year 2018. *See* FAC at ¶ 20. Further, the FAC alleges that UCARE serves "immigrant and refugee minors . . . [who] are or have been in ORR" custody, and that ORR denies or delays their release. *See id.* at ¶ 19. These allegations plausibly demonstrate that ORR's conduct interferes with UCARE's ability to serve undocumented minors who are or have been in the agency's custody. *See Davidson*, 889 F.3d at 969–70 (holding that plausible allegations of future harm are sufficient to establish standing at the pleading stage). Further, Defendants' argument entirely neglects one crucial fact—*i.e.*, delays in obtaining funding have concrete financial consequences for UCARE. *See, e.g.*, *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, 970 F. Supp. 2d 687, 696 (E.D. Ky. 2013) (concluding that a delay in payment gives rise to an injury-in-fact). It follows that UCARE has pled an injury-in-fact that is fairly traceable to ORR's policies and/or practices that deny or delay the release of alien minors, and redressable by an order enjoining such conduct.

Additionally, the FAC avers that to accomplish its mission to provide comprehensive social services to refugee minors from Central America, the Children Center has been forced to divert its limited resources to remedying the mental and physical trauma these minors have suffered as a result of their prolonged detention and forced consumption of psychotropic medication while in ORR's custody. *See* FAC at ¶¶ 17–18. Plaintiffs claim that this diversion of resources has reduced the number of undocumented minors and youth the Children Center is able to assist, thereby inhibiting its ability to raise funds. *See id.* at ¶ 18. These assertions give rise to the plausible inference that ORR's policies and/or practices have caused the Children Center to suffer an injury-in-fact that would be mitigated if the agency ceased its allegedly unlawful conduct. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) ("An organization suing on its own behalf can establish an injury when it suffered 'both a diversion of resources and a frustration of its mission.'") (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002))).

In sum, the Court concludes that the Children Center and UCARE have sufficiently pled Article III standing.

---

able to serve more alien minors. *See* FAC at ¶¶ 18–19; *Public Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1196 (9th Cir. 2012) (if there is a facial challenge to standing, a court must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party" (quoting *Bernhardt v. Cty. of L.A.*, 279 F.3d 862, 867 (9th Cir. 2002)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | **Lucas R., et al. v. Alex Azar, et al.** | Page | 8 of 28 |
|---|---|---|---|

**2.     Venue**

Defendants argue that Plaintiffs have filed suit in an improper venue.  Under 28 U.S.C. section 1391(e)(1), a civil action against an officer of a federal agency may be brought in any judicial district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  For the purposes of this general venue statute, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business."  *See* 28 U.S.C. § 1391(c)(2).

It is undisputed that the Children Center is a California corporation that has its principal place of business in this district (*i.e.*, in North Hills, California), FAC at ¶ 17, and that UCARE is an unincorporated entity that has its principal place of business in this district as well (*i.e.*, in Los Angeles, California, *id.* at ¶ 19.[6]  Because several (but not all) Plaintiffs reside in this district, venue is proper under 28 U.S.C. section 1391(e)(1)(C).  *See Immigrant Assistance Project of L.A. Cty. v. Immigration & Naturalization Serv.*, 306 F.3d 842, 868 (9th Cir. 2002) ("A civil action . . . in which a defendant is an agency of the United States and in which no real property is involved, may be brought, *inter alia*, in any judicial district in which *a* plaintiff resides." (emphasis added)); *Railway Labor Executives Ass'n v. Interstate Commerce Comm'n*, 958 F.2d 252, 256 (9th Cir. 1991) (holding that "venue need be proper for only one plaintiff" under Section 1391(e)).

Defendants nonetheless insist that venue is improper because the Children Center and UCARE are not members of the putative classes (*i.e.*, children in ORR custody).[7]  *See* MTD at 10, 17, 20 n.3.  Yet, the Court has already concluded that these two Plaintiffs have Article III standing to raise their claims.  *See supra* Part III.A.1.  Furthermore, the Children Center and UCARE are properly joined in this action because all named Plaintiffs challenge the same policies and practices.  *See* FAC at ¶¶ 4–5, 17–20; *see also Immigrant Assistance Project*, 306

---

[6] The parties do not dispute that the Children Center and UCARE have the capacity to bring suit under applicable law.

[7] Plaintiffs argue that the Children Center and UCARE may serve as class representatives because "the children and the youth they serve are the functional equivalent of their members."  *See* Reply re Mot. for Class Cert. at 18–19.  This assertion is puzzling, given that the Children Center is a non-profit corporation that presumably does not have any "members," and UCARE's members are non-profit agencies.  *See* FAC at ¶¶ 17–19.  The Court need not resolve this issue because it concludes that the Individual Plaintiffs can serve as class representatives.  *See infra* Part III.B.3–4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 9 of 28 |
|---|---|---|---|

F.3d 842, 867–68 & n.20 (venue is proper under Section 1391(e) if *either* a putative class representative *or* an organization resided in the district); Fed. R. Civ. P. 20(a)(1) ("Persons may join in one action as plaintiffs if: . . . they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action."). Therefore, the Court shall not dismiss this action for improper venue.[8]

### 3. Claims Under the *Flores* Agreement

Defendants argue that the Court should dismiss as duplicative any claims alleging violations of the *Flores* Agreement. *See* MTD at 24–25. Plaintiffs counter that they are not required to litigate their *Flores* claims in that action because Paragraph 37 of the Agreement purportedly permits them to file an independent "individual or class action" in this District Court. *See* Opp'n re MTD at 27–28. Plaintiffs fail to recognize that the interests of judicial economy counsel against permitting them to enforce the *Flores* Agreement in this action.

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled in part on another ground by Taylor v Sturgell*, 553 U.S. 880, 884–85, 904 (2008). This prohibition on duplicative actions also extends to plaintiffs who are in privity with parties to the first suit. *See id.* at 689. Generally, "[d]ismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *See id.* at 693 (quoting *Kerotest Mfg. Co. v. C-O-Two Fore Equip. Co.*, 342 U.S. 180, 183 (1952)). Whether the dismissal is with or without prejudice is committed to the district court's sound discretion. *Id.* at 692.

---

[8] The Court need not address Defendants' motion to transfer this action because it is predicated on their claim that this district is an improper venue. *See* MTD at 20–23. To the extent Defendants contend that the action ought to be transferred to the District of Columbia pursuant to 28 U.S.C. section 1404(a), that argument fails because they do not provide any evidentiary support for the only factor they claim weighs in favor of transfer—*i.e.*, the convenience of the witnesses and location of books and records. *See* MTD at 22; *see also E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (holding that the proponent of the transfer "bears a heavy burden of showing a clear balance of inconveniences to it[,]" and that "[a]ffidavits or declarations are required to identify key witnesses and [provide] a generalized statement of their anticipated testimony").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 10 of 28 |
|---|---|---|---|

It is undisputed that the Individual Plaintiffs are members of the *Flores* Class, and that ORR is a party to that action.[9]   *See* FAC at ¶¶ 2–3, 21–22; *Taylor*, 553 U.S. at 894 ("Representative suits with preclusive effect on nonparties include properly conducted class actions . . . .").  There is also no dispute that the subject matter of Plaintiffs' *Flores* claims and the *Flores* Action are the same.  In their original Complaint, Plaintiffs admitted that the instant action is an "adjunct and supplement" to a motion to enforce that was filed in the *Flores* Action.  *See* Compl. at ¶ 2 [Doc. # 1].  In resolving that motion, the Court found that ORR breached the *Flores* Agreement by:  (1) detaining certain Class Members in Shiloh RTC in violation of Paragraphs 6, 7, 8, and 19 and Exhibit 1 of the Agreement, (2) failing to timely provide a written notice of reasons for placing a Class Member in a secure facility, staff-secure facility, or RTC in violation of Paragraph 24C of the Agreement, (3) placing certain Class Members in secure facilities in violation of Paragraph 21 of the Agreement, (4) administering psychotropic medication to Class Members at Shiloh RTC in violation of Paragraphs 6 and 9 and Exhibit 1 of the Agreement, and (5) undertaking certain policies that unnecessarily delay the release of Class Members to custodians in violation of Paragraphs 14 and 18 of the Agreement.  *See* Order re Pls.' Mot. to Enforce at 30–32, *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx) (C.D. Cal. July 30, 2018) [Doc. # 470].  Further, the parties in *Flores* continue to actively litigate whether ORR, ICE, and U.S. Customs and Border Patrol have complied with the Agreement, notwithstanding the fact that the Court issued the consent decree more than 20 years ago.  *See, e.g.*, Order Appointing Special Master/Independent Monitor, *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx) (C.D. Cal. Oct. 5, 2018) [Doc. # 494].

Because Plaintiffs' claims under the *Flores* Agreement should be litigated only in that action, the Court **DISMISSES** without prejudice Plaintiffs' first, second, third, and fourth causes of action to the extent that they seek enforcement of that Agreement.  Nonetheless, Plaintiffs may pursue due process claims predicated on Defendants' failure to provide sufficient procedural

---

[9] Although the Children Center and UCARE are not parties to the *Flores* Action, they are subject to the same defenses as the Individual Plaintiffs because the Children Center and UCARE seek to assert the contractual rights of *Flores* Class Members.  *See Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 840 (2013) ("[A] third party whose rights under a contract derive from those of a party to the contract [typically] cannot assert rights greater than those of the contracting party . . . ."); *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) ("[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (internal quotation marks omitted) (quoting *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992))).  In addition, while Defendant E. Scott Lloyd has not been sued in his individual capacity in the *Flores* Action, the only claim Plaintiffs bring against him in his personal capacity is one under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *see* FAC at ¶ 5, which authorizes damages claims for only *constitutional* violations (*i.e.*, not breaches of consent decrees), *see F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (holding that *Bivens* claims are available "[f]or certain constitutional violations").  The claim against Lloyd is therefore not subsumed within the *Flores* Action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 11 of 28 |
|---|---|---|---|

safeguards for alien minors to exercise their *Flores* rights because Plaintiffs cannot bring those claims in the *Flores* Action.[10]   *See* Opp'n re MTD at 32–33 (alleging that the *Flores* Agreement's protections are substantive rights protected by the Due Process Clause); Order re Pls.' Mot. to Enforce at 5, *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx) (C.D. Cal. July 30, 2018) (concluding that such claims have "no place in a motion to enforce the consent decree") [Doc. # 470]; *Adams*, 487 F.3d at 689 (noting that the duplicative claim analysis determines "whether the second suit raises issues that should have been brought in the first" (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000))).

### 4.      Plaintiffs' TVPRA and APA Claims

Defendants argue that Plaintiffs' claims under the TVPRA fail because they have not shown that the statute creates a private right of action.  *See* MTD at 25.  Relatedly, Defendants contend that Plaintiffs may not obtain a remedy under the APA because the FAC does not sufficiently allege the existence of a relevant "final agency action."[11]  *See id.* at 28–29; Reply re MTD at 17; *see also* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").  For the reasons discussed in this section, the Court concludes that the policies and/or

---

[10] Defendants apparently request the dismissal of *all* of Plaintiffs' claims on the ground that they are duplicative of those pending in the *Flores* Action. *See* Opp'n re Mot. for Class Cert. at 11 (asserting that the instant action is a "successive, *identical* class action" that includes "class members and claims *identical* in scope to an earlier certified class action" (emphasis added)). Yet, the Court specifically declared that the only claims that may be brought in the *Flores* Action are those arising under the Agreement. *See* Order re Pls.' Mot. to Enforce at 2–3, 5–6, *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx) (C.D. Cal. July 30, 2018) [Doc. # 470]. To the extent that Defendants intended to assert a *res judicata* defense, the Court rejects that argument because they failed to cogently raise or brief that point. *See* Fed. R. Civ. P. 7(b)(1)(B) ("A request for a court order must be made by motion. The motion must: . . . state with particularity the grounds for seeking the order.").

[11] Although Plaintiffs' first four causes of action assert that Defendants' policies violate the APA, the FAC does not clarify whether Plaintiffs intend to raise any standalone APA claims that are not predicated on violations of other federal statutes, the federal constitution, or the *Flores* Agreement. *See* FAC at ¶¶ 181, 184, 187, 190; *see also* Opp'n re MTD 30–31 (asserting in passing that "ORR's challenged policies and practices are final and directly violate the APA[,]" but failing to articulate a standalone APA claim). Accordingly, the Court will limit its inquiry to whether the FAC satisfies the procedural prerequisites to suit under the APA. *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (noting that the APA has an "omnibus judicial-review provision, which permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 12 of 28 |
|---|---|---|---|

practices identified in the FAC constitute final agency actions such that Plaintiffs may raise their TVPRA claims under the APA.[12]

"Agency action is 'final' if at least two conditions are satisfied: 'First, the action must mark the "consummation" of the agency's decisionmaking process[;] . . . it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."'" *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (quoting *Bennet v. Spear*, 520 U.S. 154, 178 (1997)).

The FAC identifies several ORR policies and/or practices, which concern (*inter alia*) the placement of undocumented minors; their release to proposed custodians; the forced consumption of psychotropic medication; and blocking lawyers from representing minors in connection with ORR's decisions regarding release, placement, and non-consensual administration of psychotropic medications. *See* FAC at ¶¶ 4.a–d. The FAC includes specific factual allegations demonstrating that these policies and/or practices are not tentative or interlocutory in nature, as ORR has already implemented them.[13] *See, e.g., id.* at ¶¶ 37–46 (alleging that ORR placed Daniela Marisol T. in Shiloh RTC without notice or an opportunity to be heard, refused to release her to a custodian or provide any administrative means to challenge that decision, and required her to take psychotropic medications without court or family member

---

[12] The FAC avers that "Plaintiffs have private rights of action against Defendants pursuant to . . . the Administrative Procedure Act," but it does not allege a cause of action under the TVPRA itself. *See* FAC at ¶ 9. Yet, Plaintiffs' Opposition to the MTD apparently argues that an implied private right of action exists under the TVPRA. *See* Opp'n re MTD at 29. Although Plaintiffs argue (*inter alia*) that "[n]othing in the enactment's text or legislative history suggests" that an implied private right of action would frustrate the underlying purpose of the TVPRA, they fail to cite any legislative materials in support of that proposition. *See id.* Notwithstanding Plaintiffs' failure to adequately show that the TVPRA creates a private right of action, the Court finds that, for the reasons discussed in this section, the APA still permits them to seek relief for violations of the TVPRA. *See* 5 U.S.C. § 706(2)(A) (providing that a court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law"). Additionally, for the reasons discussed in this section, Plaintiffs may assert their constitutional claims under the APA as well. *See* 5 U.S.C. § 706(2)(B) (providing that a court shall set aside agency action found to be "contrary to constitutional right, power, privilege, or immunity"); *Navajo Nation v. Dep't of Interior*, 876 F.3d 1144, 1168–72 (9th Cir. 2017) (holding that 5 U.S.C. section 704's "final agency action" requirement applies to causes of action brought under the APA, whereas it is not a condition of 5 U.S.C. section 702's waiver of sovereign immunity).

[13] The Court is not persuaded by Defendants' contention that these allegations are not sufficiently detailed to survive a motion to dismiss. *See* Reply re MTD at 17; *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quoting *Twombly*, 550 U.S. at 555)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | | Date | November 2, 2018 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 13 of 28 |
|---|---|---|---|

authorization); *id.* at ¶¶ 145–52 (averring that "ORR routinely bars [Vera Institute of Justice]-funded legal services providers from representing children in legal proceedings involving ORR's custody, release, placement, and medication decisions"). Moreover, the FAC avers that these policies and/or practices violate Individual Plaintiffs' and putative class members' rights under the TVPRA, the Due Process Clause, and the Freedom of Association Clause of the First Amendment. *See id.* at ¶¶ 2–3. Aside from their unpersuasive arguments that Plaintiffs did not adequately plead their procedural due process claims, *see infra* Part III.A.5, Defendants fail to even argue that such legal consequences do not flow from ORR's conduct. *See* Fed. R. Civ. P. 7(b)(1)(B). The Court thus rejects Defendants' contention that no private right of action exists by which Plaintiffs may obtain relief for ORR's violations of the TVPRA. *Cf. L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 612 (S.D.N.Y. 2018) (holding that ORR's policy of requiring director-level review before certain alien minors are released from custody was final agency action for the purposes of the APA because ORR had already adopted the policy and legal consequences flowed from it).

### 5.     **Plaintiffs' Procedural Due Process Theories**

Defendants contend that Plaintiffs' procedural due process claims should be dismissed because: (1) the FAC supposedly fails to identify any underlying substantive rights protected by the Due Process Clause, and (2) undocumented minors are not entitled to any procedural protections beyond those explicitly provided by Congress.[14] *See* MTD at 25–28. These contentions are entirely without merit.

"[P]rocedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A constitutionally protected substantive interest may arise from the federal constitution itself, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), a statute, *see Carver v. Lehman*, 558 F.3d 869, 874–75 (9th Cir. 2009), or a contract, *see San Bernardino Physicians' Servs. Med. Grp. v. Cty. of San Bernardino*, 825 F.2d 1404, 1407–08 (9th Cir. 1987); *see also Smith v. Sumner*, 994 F.2d 1401, 1406 (9th Cir. 1993) (a consent decree can give rise to a constitutionally protected interest). A statute may create a substantive interest protected by the Due Process Clause by using

---

[14] Although Defendants' MTD discusses certain legal principles relating to the *substantive* component of the Due Process Clause, it appears that Defendants challenge only Plaintiffs' *procedural* due process claims. *See* MTD at 25–26 ("The failure to plead a substantive right is fatal to the various procedural due process claims."); Reply re MTD at 18 ("Plaintiffs do not cite any legal authority to support their conclusory arguments that children in ORR custody are entitled to constitutional procedural protections concerning their placement in licensed facilities and the prescription of psychotropic drugs.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 14 of 28 |
|---|---|---|---|

"mandatory language" that imposes an obligation on government officials. *See Carver*, 558 F.3d at 872–73. Further, whether a contractual right is protected by the Due Process Clause depends upon "the security with which [the interest] is held under [the applicable] law and its importance to the holder." *See San Bernardino Physicians' Servs.*, 825 F.3d at 1409 (alteration in original) (quoting *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983)). A contractual provision may be of sufficient importance if it can be "easily characterized as a civil right." *See id.*

Here, the FAC alleges that ORR's policies and/or practices violate detained minors' constitutional rights to freedom from detention, familial association, and bodily integrity. *See* FAC at ¶¶ 106–08, 116, 122–23, 137, 142; *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."); *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established."); *cf. United States v. Loughner*, 672 F.3d 731, 744 (9th Cir. 2012) ("[I]nmates possess 'a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause . . . .'" (quoting *Washington v. Harper*, 494 U.S. 210, 221–22 (1980))).

Plaintiffs further allege that ORR's refusal to promptly release undocumented minors; its placement of children in secure facilities, medium-secure facilities, and RTCs; its decision to involuntarily medicate minors; and its interference with minors' access to counsel violate the agency's obligations under the TVPRA. *See* FAC at ¶¶ 104, 108, 118–121, 133, 140–42, 146–52. The provisions of the TVPRA upon which Plaintiffs rely use mandatory language to prescribe the agency's duties. *See* 8 U.S.C. § 1232(c)(2)(A) ("[A]n unaccompanied alien child in the custody of [ORR] *shall* be promptly placed in the least restrictive setting that is in the best interest of the child. . . . A child *shall not* be placed in a secure facility absent a determination that the child poses a danger to self or others or otherwise has been charged with having committed a criminal offense." (emphasis added)); *id.* § 1232(c)(5) ("[ORR] . . . *shall* ensure . . . that all unaccompanied alien children [from non-contiguous countries] have counsel to represent them in legal proceedings or matters and to protect them from mistreatment, exploitation, and trafficking." (emphasis added)).

Furthermore, the FAC relies upon provisions of the *Flores* Agreement that require the prompt release of alien minors to proposed custodians, the placement of children in non-secure licensed facilities, and adherence to all applicable state child welfare laws and regulations. *See* FAC at ¶¶ 103, 117, 132, 134; *Flores* Agreement at ¶¶ 6, 14, 18–19, Ex. 1 at ¶ A. These protections are secured by a consent decree and constitute civil rights because they are akin to the constitutional and statutory rights discussed above. *See Smith*, 994 F.2d at 1406 ("'[I]t would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 15 of 28 |
|---|---|---|---|

be passing strange if a consent decree, which possesses all the attributes of an ordinary contract plus the additional element of judicial approbation, were to be accorded some inferior status." (quoting *Rodi v. Ventetuolo*, 941 F.2d 22, 28 (1st Cir. 1991))).   Therefore, the Court concludes that Plaintiffs have satisfactorily identified the substantive rights underlying their procedural due process claims.

Defendants' second argument is inapt because it relies upon cases involving procedures for the admission or exclusion of aliens.  *See Shaughnessy v. United states ex re. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.  But an alien on the threshold of initial entry stands on a different footing:  'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" (citations omitted) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950))); *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) ("[The alien] has no . . . right [to procedural due process].  He presented himself at the San Ysidro port of entry without valid entry documents and *sought asylum*. . . . [T]hose, like [the alien], who have never technically 'entered' the United States have no such rights." (emphasis added)); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084 (9th Cir. 2011) ("We have . . . held that non-admitted aliens are not entitled to any procedure vis-á-vis *their admission or exclusion*." (emphasis added)).  Because these decisions relate to the admission or exclusion of aliens, they do not establish that the children in ORR's custody have no entitlement to additional procedures that limit the agency's authority to detain them, place them in certain restrictive settings, administer psychotropic medication to them against their will, or block their access to counsel.  *See, e.g., Hernandez v. Sessions*, 872 F.3d 976, 990 n.17 (9th Cir. 2017) ("Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' . . . it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority." (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972)).   In sum, the Court rejects Defendants' challenges to Plaintiffs' procedural due process claims.[15]

---

[15] Defendants argue for the first time in their reply brief that Plaintiffs fail to adequately "describe what procedures they think the Constitution actually requires."  *See* Reply re MTD at 18.  The Court will not consider this argument because Defendants failed to timely raise it.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 16 of 28 |
|---|---|---|---|

6.    **Claims Under Section 504 of the Rehabilitation Act**

Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." *See* 29 U.S.C. § 794(a).  Defendants contend that Plaintiffs' Section 504 claims should be dismissed because the FAC does not "identify facts that suggest ORR was motivated to take the actions challenged here 'solely by reason' of [their] alleged disabilities."  *See* MTD at 29–30.  Once again, Defendants' assertion is flatly contradicted by the FAC's allegations.

The FAC avers that ORR placed all but one of the Individual Plaintiffs (*i.e.*, Jamie D.) in Shiloh RTC "due to" their mental health needs.  *See* FAC at ¶¶ 31, 41, 48, 64, 81, 90.  In fact, Defendants admit that the agency transfers alien minors to RTCs "in order to treat intensive psychiatric and psychological needs."  *See* Reply re MTD at 19.  Benjamin F.'s experience illustrates the effects of this alleged policy and/or practice.  The FAC claims that ORR initially placed Benjamin F. and his brother, Mateo, in the same shelter facility.  *See* FAC at ¶¶ 86, 88.  ORR later placed Benjamin F. in Shiloh RTC because of his autism and developmental disabilities.  *See id.* at ¶¶ 87, 90.  Shortly after the transfer, Mateo was released from the agency's custody, but Benjamin remained at Shiloh RTC, presumably because medical personnel had not yet "declare[d] him psychologically sound . . . ."  *See id.* at 91, 93–94.  These asseverations plausibly state a claim that ORR has taken action against alien minors "solely by reason of" their disabilities.[16]

**B.    Plaintiffs' Motion for Class Certification**

Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), Plaintiffs move to certify five proposed classes that are comprised of all minors in ORR custody pursuant to 6 U.S.C. section 279 and/or 8 U.S.C. section 1232:

---

[16] Defendants also suggest that "merely placing a minor in [an RTC] for children with intensive mental health needs [does not] violate[] the Rehabilitation Act . . . ."  *See* Reply re MTD at 18.  Yet, the FAC alleges that children placed in RTCs are denied benefits offered to other undocumented minors in ORR custody.  *See, e.g.*, FAC at ¶ 130 ("[C]hildren placed in RTCs suffer the functional equivalent of indefinite civil commitment without due process of law.").  Accordingly, Plaintiffs have adequately pled a violation of the Rehabilitation Act, notwithstanding the fact that Defendants apparently disagree with their factual assertions.  *See Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 17 of 28 |
|---|---|---|---|

1. who are or will be placed in a secure facility, medium-secure facility, or RTC, or [whom ORR has continued to detain] in any such facility for more than thirty days, without being afforded notice and an opportunity to be heard before a neutral and detached decisionmaker regarding the grounds for such placement [(*i.e.*, the "step-up class")];

2. whom ORR is refusing or will refuse to release to parents or other available custodians within thirty days of the proposed custodian's submitting a complete family reunification packet on the ground that the proposed custodian is or may be unfit [(*i.e.*, the "unfit custodian class")];

3. who are or will be prescribed or administered one or more psychotropic medications without procedural safeguards, including but not limited to obtaining informed consent or court authorization prior to medicating a child, involving a neutral decisionmaker in the initial determination of whether to prescribe psychotropics to a child in ORR custody, and involving a neutral [decisionmaker] to conduct periodic reviews of those medications as treatment continues [(*i.e.*, the "drug administration class")];

4. who are natives of non-contiguous countries and to whom ORR is impeding or will impede legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs [(*i.e.*, the "legal representation class")]; and

5. who have or will have a behavioral, mental health, intellectual, and/or developmental disability as defined in 29 U.S.C. [section] 705, and who are or will be placed in a secure facility, medium-secure facility, or [RTC] because of such disabilities [(*i.e.*, the "disability class")].

*See* Notice of Mot. for Class Cert. at 3–4 [Doc. # 97].

Plaintiffs' Motion for Class Certification proceeds on the assumption that ORR has in fact adopted and uniformly implemented the policies and/or practices targeted by the proposed classes (*e.g.*, as a matter of policy or practice, ORR places alien minors in secure facilities, medium-secure facilities, and RTCs without affording them notice and an opportunity to be heard before a neutral and detached decisionmaker). *See* Mot. for Class Cert. at 11–12. Furthermore, the Individual Plaintiffs offer evidence indicating that they have been subjected to such policies and/or practices. *See infra* Part III.B.2–3. Defendants do not explicitly dispute that these policies and/or practices exist or attempt to controvert evidence suggesting that ORR has implemented them.[17] *See* Opp'n re Mot. for Class Cert. at 5–29. Accordingly, for the purposes

---

[17] Defendants claim that "[n]either the First Amended Complaint nor the Motion to Certify Class identifies a single class member whom ORR has blocked from receiving legal services . . . ." *See* Opp'n re Mot. for Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 18 of 28 |
|---|---|---|---|

of Plaintiffs' Motion for Class Certification, the Court assumes the existence of the policies and/or practices giving rise to the claims underlying the proposed classes. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). With that assumption in mind, the Court will determine whether Plaintiffs have satisfied the prerequisites of Federal Rule of Civil Procedure 23.

### 1.      Rule 23(a)(1):  Numerosity

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). "The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25–30 members." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). "In analyzing numerosity 'a court may make common-sense assumptions and reasonable inferences.'" *West v. Cal. Servs. Bureau*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quoting *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust*, No. CV 15-0224-YGR, 2016 WL 314400, at *6 (N.D. Cal. 2016)).

ORR's data shows that in fiscal year 2017, the agency admitted 873 minors to RTCs, secure facilities, or staff-secure facilities.[18]  *See* Mot. for Class Cert., Ex. 3 at ¶ 10 (Revised

---

Cert. at 28. For the reasons discussed *infra* Part III.B.2–3, the Court concludes that Plaintiffs have advanced sufficient evidence that ORR routinely blocks detained minors from obtaining legal services to challenge the agency's decisions regarding placement, release, and/or administration of psychotropic medication.

Defendants further claim that Section 1.4.7 of the ORR Guide permits a minor to ask the ORR Director or his designee to reconsider the minor's transfer to a secure facility or RTC within 30 days after placement, and they note that the TVPRA requires the agency to conduct monthly reviews of the placement of a minor in a secure facility. *See* Opp'n re Mot. for Class Cert. at 20–21 (citing ORR Guide § 1.4.7; 8 U.S.C. § 1232(c)(2)(A)). Nonetheless, Section 1.4.7 is no longer available in the online version of the ORR Guide, and Defendants have not offered a declaration showing that the provision still exists. ORR Guide, Placement in ORR Care Provider Facilities, https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.4.7 (last visited Oct. 23, 2018). More importantly, Defendants do not offer evidence that ORR affords minors placed in such facilities with notice of the reasons for the transfer, nor do they contend that the aforementioned procedures call for review by a neutral and detached decisionmaker. *See* Opp'n re Mot. for Class Cert. at 20–21.

[18] ORR previously admitted that staff-secure facilities are "medium-security facilities" under the *Flores* Agreement. Order re Pls.' Mot. to Enforce at 9, *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx) (C.D. Cal. July

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | **Lucas R., et al. v. Alex Azar, et al.** | Page | 19 of 28 |
|---|---|---|---|

Sualog Decl.) [Doc. # 97-6]. Since the Court assumes for the purposes of Plaintiffs' Motion that ORR consistently fails to provide notice and an opportunity to be heard before a neutral and detached decisionmaker in connection with such transfers, the Court concludes that the size of the step-up class is large enough to render joinder impracticable.

Next, Plaintiffs argue that ORR "routinely" delays or denies the release of minors to their proposed custodians on the grounds that they are unsuitable, *see* Mot. for Class Cert. at 25, an uncontested assertion that is consistent with the evidence discussed *infra* Part III.B.3. Given that 50,834 minors were admitted into ORR custody in fiscal year 2017 alone, common sense dictates that a sizeable number of minors sought or will seek release to proposed custodians and were or will be subjected to ORR's purportedly inadequate procedures for contesting the agency's suitability determinations.

Further, ORR's data shows that 74 minors were admitted to RTCs in fiscal year 2017. *See* Mot. for Class Cert., Ex. 3 at ¶ 10 (Revised Sualog Decl.) [Doc. # 97-6]. Because ORR's statistical reports show that it "administers psychotropic medications to . . . nearly every child . . . it places" in its RTCs, the drug administration class is sufficiently numerous to satisfy Rule 23(a)(1). *See* Mot. for Class Cert., Ex. 22 at ¶¶ 2–3 (Holguín Decl.) [Doc. # 97-27]; *see also* Mot. for Class Cert., Ex. 12 at ¶ 12 (Miguel Angel S. Suppl. Decl.) (ORR has confined Miguel Angel S. to Yolo Juvenile Detention Center, where he has been instructed to take medication for depression and anxiety) [Doc. # 105-1]. Defendants admit that alien minors are placed in RTCs if ORR determines that they "require intensive mental health services which cannot be provided on an outpatient basis," *see* Opp'n re Mot. for Class Cert. at 20, a concession that signifies that joinder of the members of the disability class would also be impracticable.

Lastly, Plaintiffs accurately note that the legal representation class is comprised of the step-up, unfit custodian, and drug administration classes because ORR has allegedly, as a matter of common practice, discouraged legal services providers from assisting undocumented minors in challenging those decisions. *See* Mot. for Class Cert. at 26. Thus, it stands to reason that the legal representation class comports with Rule 23(a)(1) as well.

## 2. Rule 23(a)(2): Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that

---

30, 2018) [Doc. # 470]. Plaintiffs likewise treat staff-secure facilities as "medium-secure facilities" for the purposes of the definition of the step-up class. *See* Mot. for Class Cert at 24 (citing Mot. for Class Cert., Ex. 3 at ¶ 10 (Revised Sualog Decl.) [Doc. # 97-6]).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 20 of 28 |
|---|---|---|---|

the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tele. of S.W. v. Falcon*, 457 U.S. 147, 157(1982)). In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law. *See id*. at 350. Rather, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See id*.

As noted above, Defendants do not dispute that ORR has instituted a policy and/or practice of transferring minors to secure facilities, medium-secure facilities, and RTCs without being afforded notice and an opportunity to be heard before a neutral and detached decisionmaker. They also do not contest that ORR consistently fails to provide parents and other proposed custodians with any formal means by which to challenge the agency's suitability determinations, or that ORR routinely administers psychotropic drugs to minors without first obtaining informed consent or court authorization. They likewise do not challenge Plaintiffs' assertion that ORR had adopted a policy and/or practice of placing children with actual or perceived behavioral, mental health, intellectual, and/or developmental disabilities in secure facilities, medium-secure facilities, and RTCs. It follows that whether such policies and/or practices violate the Due Process Clause, the Freedom of Association Clause, the TVPRA, and/or the Rehabilitation Act are common questions for all putative members of the step-up class, the unfit custodian class, the drug administration class, and the disability class.[19]

Defendants nonetheless insist that the step-up, unfit custodian, drug administration, and disability classes do not present common questions because "there is wide variation in the evidence that ORR may rely on in informing its placement, release, and treatment decisions." *See* Opp'n re Mot. for Class Cert. at 19. Defendants misapprehend the nature of Plaintiffs' claims. Plaintiffs seek an injunction barring Defendants from engaging in the aforementioned policies and/or practices in the absence of certain procedural safeguards. *See, e.g.,* FAC at 57–58. Plaintiffs do not request an order requiring Defendants to transfer *particular* putative class members to less restrictive settings, release them to proposed custodians, cease medicating them,

---

[19] Defendants point out that Plaintiffs' *Flores* claims relating to the administration of psychotropic drugs are governed by the child welfare laws of each state in which a particular putative class member is detained. *See* Opp'n re Mot. for Class Cert. at 24–25; Order re Pls.' Mot. to Enforce at 20–24, *Flores v. Sessions*, No. CV 85-4544-DMG (AGRx) (C.D. Cal. July 30, 2018) [Doc. # 470]. The parties have not addressed whether the differences in the various applicable state child welfare laws would affect the extent to which Plaintiffs' due process claims raise common questions. Should that issue arise, the Court may alter or amend its class certification order to further divide the drug administration class into appropriate subclasses. *See* Fed. R. Civ. P. 23(c)(1)(C). Until then, the Court will not address the issue *sua sponte* or presume that potential differences in state child welfare laws prevent Plaintiffs' federal due process claims from presenting common questions of law and fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 21 of 28 |
|---|---|---|---|

or stop detaining them in unduly restrictive settings that are allegedly ill-suited for their needs. That the policies and/or procedures concern the agency's individualized decisions does not change the fact that their legality is a common issue for all proposed class members. *Cf. Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("The putative class and subclass members . . . all set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified statewide policies and practices to which they are all subjected by [prison officials] expose them to a substantial risk of harm. . . . That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.").

Plaintiffs also offer evidence indicating that ORR has instructed legal aid programs not to represent minors in connection with ORR's placement, medication, and release decisions. Specifically, Plaintiffs point to evidence that HHS has contracted with the Vera Institute of Justice for the purposes of providing legal services to undocumented minors. *See* Mot. for Class Cert., Ex. 5 (HHS's contracts with Vera) [Doc. ## 97-8, 97-9]. They also offer declarations from attorneys who worked for Vera-funded legal aid programs, wherein they claim that ORR instructed those programs not to challenge ORR's confinement of alien minors or the conditions thereof. *See* Mot. for Class Cert., Ex. 6 at ¶¶ 4, 8–9 (Mixon Decl.) (attesting that ORR instructed Mixon not to challenge the agency's release and placement decisions) [Doc. # 97-10]; Mot. for Class Cert., Ex. 7 at ¶¶ 11, 19 (Williams Decl.) ("[B]oth ORR and Vera Institute informally discourage Vera-funded lawyers from taking legal action against ORR lest they cut off funds entirely for assisting unaccompanied minors. * * * [A]lthough ORR boasts of providing free legal services to detained minors, it hobbles free legal service providers who undertake to represent detained children.") [Doc. # 97-11]; Mot. for Class Cert., Ex. 8 at ¶¶ 14–24 (Stuart Decl.) (attesting that Vera-funded providers rarely challenge ORR's detention decisions, and that ORR has instructed such providers not to refer cases to Stuart because she initiated such a challenge) [Doc. # 97-12]. Because there are few free legal services available to minors in ORR custody other than Vera-funded providers, *see* Mot. for Class Cert., Ex. 6 at ¶¶ 8–10 (Mixon Decl.) [Doc. # 97-10], ORR's conduct will likely deprive most (if not all) such children of the opportunity to meaningfully challenge the agency's release, placement, and medication decisions. Thus, whether this policy or practice violates federal law (*e.g.*, the TVPRA) is a common question for nearly all detained children from non-contiguous countries who are placed in restrictive settings, denied release to their proposed custodians, or forced to take psychotropic medications. *See* FAC at ¶ 144 (asserting that 8 U.S.C. § 1232(c)(5), 6 U.S.C. § 279(b)(1)(A), and certain regulations relating thereto collectively require ORR to provide *pro bono* counsel to alien minors who are not from contiguous countries). Thus, the Court concludes that each of the five putative classes satisfy the commonality requirement of Rule 23(a)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 22 of 28 |
|---|---|---|---|

### 3.      Rule 23(a)(3):  Typicality

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (quoting *Hanon*, 976 F.2d at 508).  The typicality standard under Rule 23(a)(3) is "permissive":  "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

First, Plaintiffs have offered evidence showing that Lucas R., Miguel Angel S., Gabriela N., and Jaime D. were placed in a secure facility or an RTC without being given notice of the transfer or an opportunity to be heard before a neutral and detached decisionmaker.  *See* Mot. for Class Cert., Ex. 21 at ¶ 5 (Lucas R. Decl.) (when he was informed of the transfer to Shiloh RTC, the case worker told him that "someone else had already approved the transfer and [he] had to go") [Doc. # 105-1]; Mot. for Class Cert., Ex. 12 at ¶ 3 (Miguel Angel S. Suppl. Decl.) (he did not receive any written notice of his transfer to Yolo Juvenile Detention Center, and no one told him he could appeal that decision) [Doc. # 105-1]; Mot. for Class Cert., Ex. 14 at ¶¶ 5–6 (Gabriela N. Decl.) (she does not recall being told that she could appeal or challenge ORR's decision to place her in Shiloh RTC) [Doc. # 105-1]; Mot. for Class Cert., Ex. 20 at ¶¶ 6–8 (Jaime D. Decl.) (same as Miguel Angel S.'s experience) [Doc. # 105-1].  Further, Plaintiffs allege—and Defendants do not dispute—that ORR transferred Sirena P. to Shiloh RTC without notice.[20]  *See* Mot. for Class Cert. at 18.

Second, Plaintiffs proffer evidence showing that ORR refused to release Lucas R. and Gabriela N. to their respective proposed custodians without providing notice or an opportunity to be heard regarding their respective custodians' suitability.  *See* Mot. for Class Cert., Ex. 22 at ¶

---

[20] Plaintiffs assert in their reply brief that Daniela Marisol T. and Benjamin F. should also be representatives of the step-up class.  *See* Reply re Mot. for Class Cert. at 21.  The Court is unable to make that determination, however, because Daniela Marisol T.'s declarations provide little detail regarding the circumstances of her transfer to Shiloh RTC, *see* Mot. for Class Cert., Exs. 10–11 (Daniela Marisol T. Decls.) [Doc. # 105-1], and Plaintiffs have not supplied Benjamin F.'s declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 23 of 28 |
|---|---|---|---|

18 (Madelyn R. Decl.) (an ORR social worker told Madelyn R. that Lucas R. could not be released to her; the social worker said that the decision was final, and did not give Madelyn a written decision or an opportunity to appeal the denial) [Doc. # 105-1]; Mot. for Class Cert., Ex. 18 at ¶ 12 (Isaac N. Decl.) (a social worker at Shiloh RTC told Isaac that ORR "threw out" his sponsorship application for Gabriela N.; ORR never formally informed Isaac N. that it denied his application) [Doc. # 105-1].  The evidence also strongly suggests that ORR continued to detain these two Plaintiffs for more than thirty days after their proposed custodians had submitted information requested by ORR.[21]  *See* Mot. for Class Cert., Ex. 22 at ¶¶ 6–7 (Madelyn R. Decl.) [Doc. # 105-1]; Mot. for Class Cert., Ex. 18 at ¶¶ 8–9, 12, 15 (Isaac N. Decl.) [Doc. # 105-1].

Third, the record indicates that ORR has routinely administered psychotropic medications to Lucas R., Gabriela N., Daniela Marisol T., and Miguel Angel S. without obtaining informed consent or court authorization to do so.  Mot. for Class Cert., Ex. 21 at ¶ 6 (Lucas R. Decl.) (he takes one pill every day for anxiety; as far as he knows, the staff never asked for his family's permission before administering the medication) [Doc. # 105-1]; Mot. for Class Cert., Ex. 17 (Gabriela N.'s Medication Information and Reconciliation Form, which shows that she was ordered to take 20 milligrams of fluoxetine every evening) [Doc. # 105-1]; Mot. for Class Cert., Ex. 19 at ¶¶ 9–11 (Isaac N. Suppl. Decl.) (neither he (Gabriela N.'s grandfather) nor Gabriela N.'s mother ever gave written permission for Gabriela N. to receive medication, and Isaac N. did not receive any notice that ORR sought court approval) [Doc. # 105-1]; Mot. for Class Cert., Ex. 11 at ¶ 4 (Daniela Marisol T. Suppl. Decl.) (ORR makes her take three pills a day for anxiety) [Doc. # 105-1]; Opp'n re MTD, Ex. 4 at 13 (Authorization for Medical, Dental, and Mental Health Care Form) (purportedly authorizing a shelter facility to dispense prescription medication to Daniela Marisol T.) [Doc. # 112-4]; Mot. for Class Cert., Ex. 12 at ¶ 3 (Miguel Angel S. Suppl. Decl.) (he takes medication for depression and anxiety) [Doc. # 105-1]; Mot. for Class Cert., Ex. 13 at ¶¶ 17–21 (Gerardo S. Decl.) (ORR never obtained his written consent to administer medication to his son, Miguel Angel S., and Gerardo S. did not receive any notification that ORR sought court approval) [Doc. # 105-1].  Defendants also do not controvert Plaintiffs' claims that ORR administered psychotropic drugs to Sirena P. and Benjamin F. without their families' informed consent. *See* Mot. for Class Cert. at 18–19.

Fourth, as discussed *supra* in Part II.B.2, Plaintiffs have shown that ORR blocks Vera-funded legal service providers from challenging the agency's custody of unaccompanied minors and the conditions thereof.  Defendants counter that "[n]either the First Amended Complaint nor

---

[21] Plaintiffs assert that Daniela Marisol T. should also be named a representative of the unfit custodian class.  *See* Reply re Mot. for Class Cert. at 21.  The Court declines to do so at this time, because her declarations do not specify when her proposed custodian submitted the information requested by ORR.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 24 of 28 |
|---|---|---|---|

the Motion to Certify Class identifies a single class member whom ORR has blocked from receiving legal services[.]"[22]  *See* Opp'n re Mot. for Class Cert. at 28–29.  Nonetheless, ORR's alleged policy or practice of discouraging such programs from taking any legal action against the agency by its very nature inflicts a systemic injury—*i.e.*, it deprives detained minors of an opportunity to challenge placement, detention, and medication decisions.  Whether any of the Individual Plaintiffs were subjectively aware of that fact is beside the point.  Further, the claims belonging to Lucas R., Gabriela N., Daniela Marisol T., and Jaime D. are typical of those belonging to the legal assistance class because:  (1) they assert the same claims as the step-up class, the unfit custodian class, and/or the drug administration class; and (2) it is undisputed that these four Plaintiffs are from non-contiguous countries.[23]  *See* Mot. for Class Cert. at 17–18 (Daniela Marisol T. and Jaime D. are from Honduras) [Doc. # 97-1]; Mot. for Class Cert.. Ex. 21 at ¶ 2 (Lucas R. Decl.) (Lucas R. is from Guatemala) [Doc. # 105-1]; Mot. for Class Cert., Ex. 14 at ¶ 2 (Gabriela N. Decl.) (Gabriela N. is from El Salvador) [Doc. # 105-1].

Lastly, Plaintiffs contend—and Defendants do not dispute—that ORR transferred Lucas R., Gabriela N., Sirena P., and Benjamin F. to Shiloh RTC because of their mental health needs.  *See* Mot. for Class Cert. at 17–19, 21.  Defendants also do not contest that ORR placed Miguel Angel S. in Yolo County Juvenile Detention Center and Shiloh RTC because of his mental health needs.  *See* Mot. for Class Cert. at 17–18.

Because the aforementioned proposed class representatives have suffered injuries similar to those sustained by other members of their respective putative classes, the Court finds that Plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement.

### 4.      Rule 23(a)(4) and Rule 23(g):  Adequacy

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  Rule 23(a)(4) presents two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

---

[22] Although Defendants frame this issue as one of adequacy, the Court addresses it in connection with the typicality prong because it concerns whether Plaintiffs suffered an injury similar to that of the other putative class members.  *See* 1 Newberg on Class Actions § 3:32 (5th ed. 2018) ("The typicality prerequisite overlaps with the Rule 23(a)(4) requirement that class representation be adequate . . . .").

[23] The FAC alleges that Benjamin F. is a native and citizen of El Salvador (*i.e.*, a non-contiguous country).  *See* FAC at ¶ 16.  Because Plaintiffs did not make that assertion in their Motion for Class Certification or supply a supporting declaration from Benjamin F., that assertion is neither undisputed nor supported by the evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 25 of 28 |
|---|---|---|---|

behalf of the class?"  *See Hanlon*, 150 F.3d at 1020.  Similarly, Rule 23(g)(1) requires courts to consider several factors "pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]"

The Court has already found that the Individual Plaintiffs' claims are typical of those pertaining to their respective putative classes, *see supra* Part III.B.3, and there are no apparent conflicts of interest between the Individual Plaintiffs and the absent proposed class members. Defendants nonetheless contend that Lucas R.'s, Sirena P.'s, and Benjamin F.'s claims are moot because ORR released them.[24]  *See* Opp'n re Mot. for Class Cert. at 26–27 & n.11.  It is unlikely that these Plaintiffs' claims truly are moot because the *Flores* Agreement authorizes ORR to reassume custody over them under certain circumstances.  *See Flores* Agreement at ¶ 16; *see also Saravia*, 280 F. Supp. 3d at 1177–82 (noting that ORR had reassumed custody over three minors the agency initially released).

Even if Defendants have released these Plaintiffs, however, Lucas R., Sirena P., and Benjamin F. may still serve as class representatives.  The Ninth Circuit has held that "a named plaintiff's claim is 'transitory in nature and may otherwise evade review'" if a defendant employs a "tactic of 'picking off' lead plaintiffs to avoid a class action."  *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143 (9th Cir. 2016) (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011)).  Under those circumstances, "the named plaintiff may continue to represent the class until the district court decides the class certification issue."  *See id.* (quoting *Pitts*, 653 F.3d at 1092).  Here, Defendants did not release *any* of the Individual Plaintiffs until *after* the filing of the FAC on September 7, 2018.  *See* De La Cruz Decl. at ¶¶ 2–8 [Doc. # 123-1].  Additionally, Defendants did not release three of the named Plaintiffs until after they filed the instant Motion for Class Certification.  *See id.* at ¶¶ 6–8.  It follows that Plaintiffs' claims are inherently transitory and may evade review if the Court countenances Defendants' transparent attempts to thwart their Motion for Class Certification.[25]

---

[24] Plaintiffs concede that ORR also released Miguel Angel S. sometime in early to mid-October 2018.  *See* Reply re Mot. for Class Cert. at 20 n.9.  Additionally, on the day before the November 2, 2018 hearing on the instant motions, Defendants informed the Court that ORR also released Gabriela N., Daniela Marisol T., and Jaime D.  *See* De La Cruz Decl. at ¶¶ 3, 7–8 [Doc. # 123-1].  Thus, Defendants' contention regarding mootness applies with equal force to all of their claims as well.

[25] Defendants contend that Sirena P.'s and Benjamin F.'s requests for release were "well underway and near complete" when they were joined as Plaintiffs.  *See* Opp'n re Mot. for Class Cert. at 26–27 n.11.  The declaration they cite for that proposition, however, does not support it.  *See* De La Cruz Decl. at ¶¶ 2–4 [Doc. # 122-1].  Further, the Court is not persuaded by Defendants' contention that *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), prevents Plaintiffs from relying on the "inherently transitory" claim doctrine.  Since *Genesis* was decided, the Ninth Circuit reaffirmed the proposition that a defendant's litigation strategy can invoke that exception

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741 DMG (PLAx) | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 26 of 28 |
|---|---|---|---|

With regard to the second prong of the Rule 23(a)(4) analysis, Defendants contend in their Opposition that the Individual Plaintiffs are not adequate class representatives because none of them submitted declarations showing that they were willing and able to prosecute this action and make themselves available for depositions, discovery, and trial. *See* Opp'n re Mot. for Class Cert. at 26. Thereafter, Miguel Angel S. and Gabriela N. submitted declarations to that effect. *See* Reply re Mot. for Class Cert., Ex. 34 at ¶¶ 1–6 (Miguel Angel S. Suppl. Decl.) [Doc. # 119-1]; Reply re Mot. for Class Cert., Ex. 35 at ¶¶ 1–7 (Gabriela N. Suppl. Decl.) [Doc. # 119-2]. Moreover, Plaintiffs counter that Defendants do not "offer any legal authority that [this] objection disqualifies [the other Individual] Plaintiffs from serving as class representatives" and "[i]t would be nonsensical to assume that Plaintiffs . . . have no desire to seek redress for the injuries [ORR allegedly] caused them." *See* Reply re Mot. for Class Cert. at 20. The Court agrees with Plaintiffs, and declines Defendants' invitation to elevate form over substance. The Court thus concludes that all of the Individual Plaintiffs are adequate class representatives with regard to their respective classes as defined below.

Furthermore, the declarations of Plaintiffs' attorneys reveal that they have undertaken considerable efforts to investigate the claims in this action, they have extensive experience and knowledge regarding complex class litigation brought on behalf of immigrant children, and they have the necessary personnel and resources to prosecute this action to final judgment. *See* Mot. for Class Cert., Ex. 28 at ¶¶ 1–6 (Cooper Decl.) [Doc. # 97-32]; Mot. for Class Cert., Ex. 29 at ¶¶ 1–5 (Holguín Decl.) [Doc. # 97-33]; Mot. for Class Cert., Ex. 30 at ¶¶ 1–10 (Welch Decl.) [Doc. # 97-34]; Mot. for Class Cert., Ex. 31 at ¶¶ 1–9 (White Decl.) [Doc. # 97-35]; Mot. for Class Cert., Ex. 32 at ¶¶ 1–5 (Wynn Decl.) [Doc. # 97-36]. The Court therefore finds that Plaintiffs' counsel will fairly and adequately represent the interests of the five proposed classes. *See also* Opp'n re Mot. for Class Cert. at 26 ("Defendants have no concern that plaintiffs' counsel will prosecute the action vigorously on behalf of the class[es].").

**5.      Rule 23(b)(2):   Whether Injunctive or Declaratory Relief Is Appropriate for the Classes**

To obtain class certification under Rule 23(b)(2), the movant must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The rule does not require [courts] to examine the viability or bases of class members'

---

to mootness. *See Chen*, 819 F.3d at 1138 ("Although [the defendant] argues that *Pitts* is no longer good law after *Genesis* . . . we rejected that very argument in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) ('*Gomez*'), *aff'd*, 136 S. Ct. 663 (2016). *Pitts* therefore remains the law of the circuit.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 27 of 28 |
|---|---|---|---|

claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "'[I]t is sufficient' . . . that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *See id.* (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

As noted throughout Part III.B, *supra*, Defendants have largely refrained from disputing Plaintiffs' assertions that ORR consistently employs the policies and/or practices challenged by the five putative classes, and Plaintiffs' evidence corroborates their claims that ORR has engaged in such conduct.  In addition, Plaintiffs specifically request a declaration that these policies and/or practices are unlawful and an injunction barring Defendants from continuing to implement them.  Thus, class certification under Rule 23(b)(2) is appropriate.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court issues the following rulings:

1. Defendants' MTD is **GRANTED** only insofar as it seeks the dismissal without prejudice of Plaintiffs' claims to enforce the *Flores* Agreement, but not insofar as it requests the dismissal of Plaintiffs' claims that ORR failed to provide sufficient procedural safeguards for alien minors to exercise their *Flores* rights.  The remainder of Defendants' MTD is **DENIED**;

2. Defendants shall file an Answer to the FAC **within 60 days** of the date of this Order;

3. Plaintiffs' Motion for Class Certification is **GRANTED**.  The Court **CERTIFIES** five classes that are comprised of all minors in ORR custody pursuant to 6 U.S.C. section 279 and/or 8 U.S.C. section 1232:

   a. who are or will be placed in a secure facility, medium-secure facility, or RTC, or whom ORR has continued to detain in any such facility for more than 30 days, without being afforded notice and an opportunity to be heard before a neutral and detached decisionmaker regarding the grounds for such placement (*i.e.*, the "step-up class");

   b. whom ORR is refusing or will refuse to release to parents or other available custodians within 30 days of the proposed custodian's submission of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741 DMG (PLAx)** | Date | November 2, 2018 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Alex Azar, et al.* | Page | 28 of 28 |
|---|---|---|---|

complete family reunification packet on the ground that the proposed
custodian is or may be unfit (*i.e.*, the "unfit custodian class");

c.  who are or will be prescribed or administered one or more psychotropic
medications without procedural safeguards;[26]

d.  who are natives of non-contiguous countries and to whom ORR is impeding
or will impede legal assistance in legal matters or proceedings involving their
custody, placement, release, and/or administration of psychotropic drugs (*i.e.*,
the "legal representation class"); and

e.  who have or will have a behavioral, mental health, intellectual, and/or
developmental disability as defined in 29 U.S.C. [section] 705, and who are or
will be placed in a secure facility, medium-secure facility, or [RTC] because
of such disabilities (*i.e.*, the "disability class");

4.  The Court **APPOINTS** the following class representatives:

a.  Lucas R., Miguel Angel S., Gabriela N., Jaime D., and Sirena P. shall serve as
representatives of the step-up class;

b.  Lucas R. and Gabriela N. shall serve as representatives of the unfit custodian class;

c.  Lucas R., Daniela Marisol T., Gabriela N., Miguel Angel S., Sirena P., and Benjamin
F. shall serve as representatives of the drug administration class;

d.  Lucas R., Gabriela N., Daniela Marisol T., and Jaime D. shall serve as representatives
of the legal representation class; and

e.  Lucas R., Miguel Angel S., Gabriela N., Sirena P., and Benjamin F. shall serve as
representatives of the disability class; and

5.  The Court **APPOINTS** Carlos R. Holguín of the Center for Human Rights &
Constitutional Law; Leecia Welch, Neha Desai, and Poonam Juneja of the National
Center for Youth Law; Holly S. Cooper and Carter C. White of the University of
California Davis School of Law; and Summer Wynn, Mary Kathryn Kelley, Jon Cieslak,
and Megan Donohue of Cooley LLP as class counsel.

**IT IS SO ORDERED**.

---

[26] This class need not be defined by referring to certain examples of procedures ORR does not offer to
detained minors.