DECLARATION OF CARLOS HOLGUÍN

I, Carlos Holguín, declare and say as follows:

1. I am one of two attorneys who currently serve as class counsel for Plaintiffs in *Flores v. Sessions*. I execute this declaration in support of Plaintiffs' contention that the Office of Refugee Resettlement ("ORR") of the U.S. Department of Health and Human Services ("HHS") is in present violation of the Court's order of July 30, 2018 [Doc. #470], enforcing the *Flores* Settlement ("July 30 Order").

2. On December 3, 2018, Special Master Andrea Sheridan Ordin visited the Shiloh Residential Treatment Center ("Shiloh") in Manvel, Texas. Present during the visit in addition to Special Master Ordin were Judy Haron, Brittany Van Der Hof, and Michaela Vergara of HHR/ORR; Sarah Fabian, Office of Immigration Litigation; Dr. Luis Valdez, Dr. Javier Ruiz, Douglas Plaeger, and Dr. Brenda Gardner, of Shiloh RTC; and Dr. Amy Cohen and myself on behalf of Plaintiffs.

3. Paragraph 5 of the July 30 Order requires ORR "to comply with all Texas child welfare laws and regulations governing the administration of psychotropic medications to Class Members at Shiloh RTC." "[B]efore administering any psychotropic medication to Class Members at Shiloh RTC [ORR must]: (1) provide the disclosure required by 26 Texas Administrative Code section 748.2253 to a 'person legally authorized to give medical consent' as that term is defined under 26 Texas Administrative Code section 748.43(47), and (2) obtain the informed written consent of that person in accordance with 26 Texas Administrative Code sections 748.2001 and 748.2253." Finally, "[i]f Defendants are not able to obtain such informed written consent, then they may not administer the psychotropic medication to the Class Member unless they obtain a court order authorizing them to do so under Texas law. . ."

4. 26 Texas Administrative Code § 748.2001(b) provides: "You must obtain a written, signed, and dated consent, specific to the psychotropic medication to be administered, from the person legally authorized to give medical consent before

administering a new psychotropic medication to a child, . . ."

      5. During the visit, Ms. Haron stated that ORR had yet to seek or obtain a court order allowing Shiloh to medicate any child detained at Shiloh. Dr. Ruiz stated that 90 percent of the children then detained at Shiloh RTC were being administered psychotropic medications regardless. Dr. Valdez stated that Shiloh had obtained "consent" to administer psychotropics to all but one of these children. When I pointed out that parents had signed none of the consent forms ORR had submitted in support of its motion to reconsider independent monitoring [Doc. #506-4], Dr. Valdez stated that Shiloh's current practice is to have its case workers telephone parents and solicit their oral consent to Shiloh's medicating their children, but that Shiloh does not to require parents to sign medication consent forms. With respect to the child for whom Shiloh admitted having no consent to medicate, Dr. Valdez stated that staff had been attempting to obtain consent, but had been unable to do so. Dr. Ruiz stated that Shiloh was medicating this child regardless.

      6. Paragraph 1 of the July 30 Order requires ORR "to transfer all Class Members out of Shiloh RTC unless a licensed psychologist or psychiatrist has determined or determines that a particular Class Member poses a risk of harm to self or others." On October 26, 2018, Defendants filed the declaration of Marivic Fields in support of their motion to exclude the July 30 Order from independent monitoring. [Doc. #506-1.] Mr. Fields therein declares that he "was involved in ORR's efforts to comply with the July 30 Order" and that as "part of that effort [he] reviewed electronic records from the UAC Portal, an online database used by ORR and care providers, concerning each of the 27 unaccompanied alien children ("UAC") who were then in ORR legal custody and placed at Shiloh RTC." *Id*. at ¶ 4. Mr. Field's declaration was the sole evidence ORR provided to establish compliance with Paragraph 1 of the July 30 Order.

      7. During the Shiloh visit, however, Dr. Ruiz stated that he, after consultation with other Shiloh staff, determines whether particular children placed at Shiloh RTC

pose a risk of harm to themselves or others. Ms. Fabian stated that neither Mr. Fields or anyone else not employed by Shiloh RTC had determined whether children placed at Shiloh pose a danger to themselves or others. Both Dr. Valdez and Dr. Ruiz equated self-injurious, non-suicidal behavior with suicidality; both stated that Shiloh employs no standardized metric to determine whether a particular child poses a risk of harm. Dr. Valdez argued that standardized metrics are "not useful" and cross-culturally invalid, and that risk determinations are therefore best left to Dr. Ruiz. Dr. Valdez further stated that the only actual change that has occurred at Shiloh as a result of Paragraph 1 of the July 30 Order is that ORR sometimes allows Shiloh staff to speak with detained children's parents somewhat earlier than it did prior to the July 30 Order, and parents now sometimes furnish Shiloh case workers with information bearing on a child's risk of harm.

/ / /

8. Dr. Valdez also represented that children at Shiloh may decline to take psychotropic medications. When I advised that children had reported to Plaintiffs' counsel that their refusing medication would result in prolonging their detention, Dr. Ruiz replied that children at Shiloh are ineligible for release or transfer to a less restrictive placement until after he determines they are "stabilized." Dr. Valdez argued that it would be irresponsible for Shiloh to release a child to a parent or other custodian until they are stabilized, apparently on the assumption that children detained at Shiloh can obtain adequate mental health care nowhere else. Dr. Ruiz further stated that at least one child, whom he identified as "Angel," had been stabilized, but that he nevertheless remained detained at Shiloh, ostensibly because ORR was finding it difficult to find a less restrictive placement for him.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of December, 2018, at Santa Clarita, California.

_____
Carlos Holguín

/ / /