JOSEPH H. HUNT
Assistant Attorney General
United States Department of Justice
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
Office of Immigration Litigation
BRIENA L. STRIPPOLI
BENJAMIN MARK MOSS
W. DANIEL SHIEH
Senior Litigation Counsel
ANDREW B. INSENGA
SHERRY D. SOANES
MARINA C. STEVENSON
Trial Attorneys
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-8675
Facsimile: (202) 616-4950
benjamin.m.moss2@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R. *et al.*,<br><br>             Plaintiffs,<br><br>      v.<br><br>ALEX AZAR, Secretary of U.S. Dep't<br>of Health and Human Services, *et al.*,<br><br>             Defendants. | Case No.: 2-18-CV-05741 DMG (PLA)<br><br>ANSWER TO FIRST AMENDED<br>COMPLAINT |

Under Federal Rules of Civil Procedure 8 and 12, Defendant Alex Azar, Secretary of the United States Department of Health and Human Services and Jonathan Hayes, Acting Director of the Office of Refugee Resettlement ("ORR") of the United States Department of Health and Human Services in their official capacities, respectfully answer Plaintiffs' First Amended Complaint.

I.

INTRODUCTION

1.      The legal conclusions in Paragraph 1 require no response, and the statutes referenced speak for themselves.  To the extent this Paragraph contains any factual allegations, Defendants deny such.

2.      Defendants aver that Plaintiffs were in their legal custody, and that by law unaccompanied alien children are referred to the agency's care and legal custody.  The remaining allegations in Paragraph 2 are legal conclusions that require no response.  The Flores Settlement speaks for itself.

3.      The legal conclusions in Paragraph 3 require no response, and the Flores Settlement and TVPRA speak for themselves.

4.      The legal conclusions in Paragraph 4 require no response.  To the extent there are factual allegations which require a response, Defendants deny that they violated the Flores Settlement Agreement, the TVPRA, the Due Process

1

ANSWER TO FIRST AMENDED COMPLAINT

Clause of the Fifth Amendment of the U.S. Constitution, the Freedom of Association Clause of the First Amendment to the U.S. Constitution, and Section 504 of the Rehabilitation Act of 1973.

5.     The legal conclusions in Paragraph 5 require no response.  To the extent that there are factual allegations, Defendants aver that the First Amended Complaint alleges that Plaintiffs are seeking equitable relief on behalf of themselves and those similarly situated and has sued former ORR Director Defendant E. Scott Lloyd in his personal capacity.

II.

JURISDICTION AND VENUE

6.     The legal conclusions in Paragraph 6 require no response.

7.     The legal conclusions in Paragraph 7 require no response.

8.     The legal conclusions in Paragraph 8 require no response.  Upon information and belief, if Plaintiffs with proper standing reside within this district, Defendant admits that venue is proper under 28 U.S.C. § 1391(e); otherwise Defendants deny that venue is proper.

9.     The legal conclusions in Paragraph 9 require no response, and the Flores Settlement Agreement and the Administrative Procedure Act speak for themselves.  To the extent this Paragraph contains any factual allegations, Defendants deny such.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.

PARTIES

10.     Defendants admit that Plaintiff Lucas R. was an unaccompanied alien child who was transferred to ORR's legal custody, but aver that he was later released on or about or about September 8, 2018, from Shiloh Residential Treatment Center ("Shiloh RTC") in Texas, to his half-brother sponsor in Los Angeles, California.  Upon information and belief, Defendants admit that Lucas R. is from Guatemala, that he was born in 2005, that he is about thirteen years old, and that Madelyn R. is Lucas R.'s half-sister and a resident of Los Angeles, California.  Defendants admit the factual allegations in the fourth, fifth, and sixth sentences of Paragraph 10.  Any remaining factual allegations not admitted are denied.  The legal conclusions in Paragraph 10 require no response.

11.     Defendants admit that Plaintiff Daniela Marisol T. was an unaccompanied alien child who was transferred to ORR's legal custody, but aver that she was later released on or about October 19, 2018, from Bethany Christian Services, in Kentwood, Michigan, to Katherine L., in St. Paul, Minnesota.  Upon information and belief, Defendants admit that Daniela Marisol T. is from Honduras, was born in 2001, and is the half-sister of Katherine L., a resident of St. Paul, Minnesota.  Defendants deny the remaining factual allegations in sentence four of Paragraph 11.  Defendants admit that Katherine L. met ORR's requirement

3

for placement of Daniela Marisol T. into her custody.  Any remaining factual allegations not admitted are denied.  The legal conclusions in Paragraph 11 require no response.

12.   Defendants admit that Plaintiff Gabriela N. was an unaccompanied alien child who was transferred to ORR's legal custody, but aver that she was later released on or about October 2, 2018, from the St. Michael's Home for Children in Houston, Texas, to the Unaccompanied Refugee Minor ("URM") program in San Jose, California.  Upon information and belief, Defendants admit that Gabriela N. is from El Salvador, was born in 2000, and is the granddaughter of Isaac N., a resident of Oakland, California.  Defendants aver that at the time of her transfer to ORR's legal custody, Gabriela N. was an unaccompanied alien child, and she is now an adult.  Defendants admit the factual allegations in the last sentence of Paragraph 12.  Any remaining factual allegations not admitted are denied.  The legal conclusions in Paragraph 12 require no response.

13.   Defendants admit that Plaintiff Miguel Angel S. was an unaccompanied alien child who was transferred to ORR's legal custody, but aver that he was later released on or about October 11, 2018, from Yolo secure juvenile detention ("Yolo") in Woodland, California, to Gerardo S., in San Jose, California. Upon information and belief, Defendants admit that Miguel Angel S. is from Mexico and was born in 2001.  Defendants deny that Gerardo S. is Miguel Angel

4

ANSWER TO FIRST AMENDED COMPLAINT

1  S.'s biological father.  Defendants admit that Gerardo S. is a resident of San Jose,

2  California.  Defendants admit that Gerardo S. sought to be Miguel Angel S.'s

3

4  custodian, and aver that Miguel Angel S. was released from ORR's legal custody

5  into Gerardo S.'s care.  Any remaining factual allegations not admitted are denied.

6

7  The legal conclusions in Paragraph 13 require no response.

8      14.    Defendants admit that Plaintiff Jaime D. was an unaccompanied alien

9

10  child who was transferred to ORR's legal custody, but aver that he was later

11  released on or around October 20, 2018, from a shelter in Dobbs Ferry, New York,

12  to the custody of Reyna D., in Riverdale, Maryland.  Upon information and belief,

13

14  Defendants admit that Jaime D. is from Honduras, was born in 2004, and is the

15  nephew of Reyna D., who was a resident of Riverdale, Maryland at the time of

16

17  Jaime D.'s release to her.  Defendants admit that Reyna D. had sought to be Jaime

18  D.'s custodian.  Any remaining factual allegations not admitted are denied.  The

19

20  legal conclusions in Paragraph 14 require no response.

21      15.    Defendants admit that Plaintiff Sirena P. was an unaccompanied alien

22

23  child who was transferred to ORR's legal custody, but aver that she was later

24  released on or about September 16, 2018, from Shiloh RTC, in Texas, to the care

25  of Eduardo P. in Ontario, California.  Upon information and belief, Defendants

26

27  admit that Sirena P. is from Mexico, was born in 2003, and is the daughter of

28  Eduardo P., a resident of Ontario, California at the time of Sirena P.'s release to

5

him.  Defendants admit that Eduardo P. sought to be Sirena P.'s custodian.  Any remaining factual allegations not admitted are denied.  The legal conclusions in Paragraph 15 require no response.

16.   Defendants admit that Plaintiff Benjamin F. was an unaccompanied alien child who was transferred to ORR's legal custody, but aver that he was later released on or about September 15, 2018, from Shiloh RTC in Texas to Isabella F., in Los Angeles, California.  Upon information and belief, Defendants admit that Benjamin F. is from El Salvador, was born in 2008, and has a maternal grandmother named Isabella F.  Defendants admit that Benjamin F. has been categorized as on the autism spectrum and diagnosed as developmentally delayed with limited verbal abilities.  Defendants admit that Isabella F. was a resident of Los Angeles, California at the time of Benjamin F.'s release to her.  Any remaining factual allegations not admitted are denied.  The legal conclusions in Paragraph 16 require no response.

17.   Defendants admit that Plaintiff San Fernando Valley Refugee Children Center, Inc. ("Children Center") is a non-profit organization incorporated in the State of California, with its principal place of business in North Hills, California.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations in Paragraph 17, and demand strict proof thereof.

18.     Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations in Paragraph 18, and demand strict proof thereof.  The legal conclusion in last sentence of Paragraph 18 requires no response.

19.     Defendants admit that Plaintiff Unaccompanied Central American Refugee Empowerment ("UCARE") is an unincorporated consortium of non-profit agencies with its principal place of business in Los Angeles, California. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations in Paragraph 19, and demand strict proof thereof.  The legal conclusions in Paragraph 19 require no response.

20.     Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations in Paragraph 20, and demand strict proof thereof.  Defendants aver that statistics regarding the placement of unaccompanied alien minors to sponsors in Los Angeles County for Fiscal Year 2018 (through September 2018) is about 1,810.

21.     Defendants admit that Alex Azar is the Secretary of HHS and that he is sued in his official capacity.  The remaining legal conclusions require no response, and 6 U.S.C. § 279 speaks for itself.

22.     Defendants aver that pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jonathan H. Hayes, Acting Director of the Office of Refugee

7

Resettlement, in his official capacity, is automatically substituted as a defendant in place of former Defendant E. Scott Lloyd Director of ORR.   The remaining legal conclusions require no response.

23.    Defendants deny that they have breached any duties in pursuing the policies and practices challenged in this Amended Complaint.  The legal conclusions in Paragraph 23 require no response.

IV.

NAMED PLAINTIFFS' EXPERIENCES IN ORR CUSTODY

A.    Lucas R.

24.    Defendants admit that ORR assumed legal custody of Lucas R., and aver it was on or about February 11, 2018, but lack knowledge or information sufficient to form a belief about the truth of where he arrived.  Defendants admit the factual allegations in the second sentence of Paragraph 24.  Defendants admit that ORR received a reunification packet from Lucas R.'s sister Madelyn R., but deny that the packet contained "the required documentation."  Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations contained in sentences four, five and six of Paragraph 24.  Defendants deny the factual allegations contained in the last sentence of Paragraph 24.  The opinions and impressions in Paragraph 24 require no response, and to the extent a response is required, Defendants deny.

8

25.      Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations contained in the first sentence of Paragraph 25.  Since Plaintiffs have not attached the document in which the quoted language in the second sentence of Paragraph 25 purportedly appears, Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations contained in the second sentence of Paragraph 25.  The opinions and impressions in Paragraph 25 require no response, and to the extent a response is required, Defendants deny.

26.      Defendants admit that Lucas R. was diagnosed with depression while in ORR's legal custody and that he expressed concern that he might not be released to his family.  Defendants admit that a psychiatrist associated with Lucas R.'s care provider prescribed psychotropic drugs to Lucas R. to treat his depression, based upon the consent of the ORR Director to provide medical care, and that Lucas R. took the medications so prescribed, but that Defendants did not otherwise obtain a family member's informed consent or judicial authorization before these medications were prescribed to Lucas R.  As to the allegation that "ORR did not involve a neutral decision maker," the phrase "neutral decision maker" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the implication that the decision makers exercised a lack of neutrality, and admit that at the time, the medical authorization

9

of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.

The legal arguments and conclusions require no response.  Any remaining characterizations and innuendos are denied.

27.     To the extent that this allegation refers to all of Lucas R.'s medications, Defendants deny that they caused him stomach pain, and Defendants deny that Lucas R. refused to take all of his medications.  Defendants admit that one of Lucas R.'s medications may have caused him stomach pain.  Defendants admit that Lucas R. at times refused to take certain of his medications that were prescribed by licensed psychiatrists affiliated with grantee care providers; he willingly took certain psychotropic and other medications.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 27, and demand strict proof thereof.

28.     Defendants admit that ORR paid for a home study that began on March 20, 2018, for Lucas R.'s sister, Madelyn R. as mandated by the TVPRA. Defendants admit that a home study worker was sent to Madelyn R.'s home in Los Angeles, California.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in the second

ANSWER TO FIRST AMENDED COMPLAINT

sentence of Paragraph 28, and demand strict proof thereof.  Defendants deny the factual allegations contained in the last sentence of Paragraph 28.

29.     Defendants deny that the home study worker indicated Madelyn R.'s home to be suitable.  Defendants admit that ORR would have required the fingerprints of all adults residing with Madelyn R.  Defendants admit that Madelyn R. advised a home study worker that her roommate's brother did not live in the home, and admit that ORR would have required the fingerprints of all adults residing with Madelyn R.  Defendants deny that Madelyn R.'s roommate's brother was a visitor.  Defendants deny that all residents at the time of the home study appeared for fingerprinting, and admit that the brother of Madelyn R.'s roommate did not appear for fingerprinting.  Defendants deny that either ORR or the grantee care provider staff orally advised Madelyn R. that Lucas R. would not be released to her because her roommate's brother had failed to appear for fingerprinting.  The legal arguments and conclusions require no response.  Any remaining characterizations and innuendos are denied.

30.     Defendants admit the factual allegations in sentence one of paragraph 30.  Defendants admit that Lucas R. suffered from depression and wanted to be reunified with his family, and that he shared those feelings with staff.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations in the second sentence of Paragraph 30.  Defendants

11

admit that Lucas R. was hospitalized for a brief period.  Defendants admit that Lucas R. was in ORR's legal custody but deny that he was in "detention." Defendants deny the remaining factual allegations contained in Paragraph 30.  The legal arguments and conclusions, including the assertion regarding the word "prolonged," require no response.  Any characterizations and innuendos are denied.

31.     Defendants admit that ORR transferred Lucas R. to Shiloh RTC at the end of May 2018 based on the recommendation of a psychiatric mental health nurse practitioner.  Defendants deny that Lucas R. had no notice of this transfer, no opportunity to be heard, or a right to appeal.  Defendants deny the factual allegations contained in the third and fourth sentences of Paragraph 31. The legal arguments and conclusions require no response.

32.     Defendants deny that Lucas R. was prescribed and took Zoloft (Sertraline) while at Shiloh RTC.  Defendants admit that Zoloft's side effects may include those listed, but deny that Lucas R. experienced these effects because he was not prescribed this medication while at Shiloh RTC.  All characterizations and opinions are denied.

33.     Defendants admit that Lucas R. was diagnosed with "major depressive disorder" while at Shiloh RTC.  Defendants admit that Shiloh staff indicated that separation from his family was a "major stressor" for Lucas R.  Defendants deny

12

that Shiloh staff told Lucas R. that he would not be released until Shiloh medical personnel declared him psychologically sound.  Defendants aver that one of the discharge criteria for Lucas R. was for a licensed psychiatrist to indicate he could be "stepped down" because he would no longer posed a danger to himself. Defendants admit that Lucas R.'s care provider prescribed psychotropic drugs to Lucas R. to treat his depression, based upon the consent of the ORR Director to provide medical care, and that Lucas R. took the medications so prescribed, but that Defendants did not otherwise obtain a family member's informed consent or judicial authorization before these medications were prescribed to Lucas R.   All characterizations and opinions are denied, and legal conclusions need not be addressed.

34.   Denied.

35.   To the extent this allegation claims Defendants had a legal obligation to provide Lucas R. with legal counsel, this is a legal claim to which no response is required; regardless, Defendants deny any such obligation with respect to release, the administration of psychotropic medications, or placement at Shiloh. Defendants admit that ORR did not pay to provide Lucas R. with legal counsel with respect to release, the administration of psychotropic medications, or placement at Shiloh.  All characterizations and opinions are denied.  Defendants

13

aver that HHS did provide Lucas R. legal screenings and access to free legal

services as described in its policies.

36.     Defendants admit that it did not release Lucas R. to Madelyn R. on

September 4, 2018, because the home study worker determined Madelyn R.'s

home not to be suitable.  Defendants admits that it released Lucas R. on or about

September 8, 2018.  The legal conclusions and arguments require no response.  All

characterizations and opinions are denied.

B.     Daniela Marisol T.

37.     Defendants admit that ORR assumed legal custody of Daniela Marisol

T. on or about August 3, 2017.  Defendants admit that Daniela Marisol T. is

partially deaf.  Upon information and belief, Defendants admit that Daniela

Marisol T. was about age seventeen as of the filing of the First Amended

Complaint, arrived at the U.S.-Mexico border with her older, adult half-sister,

Katherine L., and her nephew, and that they alleged that they fled their home

country in fear of their lives.  Defendants lack knowledge or information sufficient

to form a belief about the truth of the remaining factual allegations in the first

sentence of Paragraph 37.  Defendants admit that Daniela Marisol T. was

transferred to ORR's custody and that ORR initially placed her in the International

Education Service (IES) Norma Linda Shelter in Los Fresnos, Texas, but deny the

characterizations and opinions in the third sentence of Paragraph 37.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants admit that treatment was recommended for Daniela Marisol T.'s hearing disability, and aver that she was evaluated for a possible hearing aid on or about April 4, 2018, and was fitted with a hearing aid on or about July 2018. Defendants admit that on August 22, 2018, Daniela Marisol T. was admitted to a psychiatric hospital because of acute psychiatric symptoms including suicidal and homicidal ideation, but deny that her hospitalization was because she was "so emotionally traumatized by [her] separation. Defendants deny the remaining factual allegations. The legal conclusions and arguments require no response. Any characterizations and innuendos are denied.

38.     Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations contained in the first sentence of Paragraph 38. Defendants admit that Katherine L. submitted a family reunification packet in order to become Daniela Marisol T.'s sponsor, but deny that she submitted the application while Daniela Marisol T. was in care at IES, Shiloh, or the David and Margaret shelter. Defendants deny the factual allegations contained in the third sentence of Paragraph 38, and aver Katherine L. initially declined sponsorship, reporting that she was unable to sponsor Daniela Marisol T. due to financial hardship. Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations regarding whether Katherine L. received "overwhelming community support." The remaining factual allegations

15

in Paragraph 38 are denied.  The legal conclusions and arguments require no response.  Any characterizations and innuendos are denied.

39.     Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations contained in the first and second sentences of Paragraph 39, and demand strict proof thereof.  Defendants deny the factual allegations in the third sentence of Paragraph 39.  Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations contained in the fourth sentence of Paragraph 39, and demand strict proof thereof. Defendants admit that Daniela Marisol T. was depressed and suicidal and was admitted to the Behavioral Health Center Renaissance where she exhibited symptoms of psychosis.  Any characterizations and innuendos are denied.

40.     Defendants admit the factual allegations contained in the first sentence of Paragraph 40.  Defendants deny that ORR declined to "treat [Daniela Marisol T.'s] deafness."  Defendants admit that it recommended that Daniela Marisol T. consult a specialist regarding her deafness "once [she was] reunified with family."  Defendants admit that Daniela Marisol T. did not receive a hearing aid while at Shiloh RTC, but deny that her hearing issue went untreated. Defendants admit Daniela Marisol T. did not receive her hearing aid while residing in Los Angeles County.  Defendants admit that while at the David and Margaret shelter, Daniela Marisol T. was evaluated by an audiologist and other physicians

16

ANSWER TO FIRST AMENDED COMPLAINT

with respect to her hearing, and that she was then measured for a hearing aid, and a hearing aid was ordered on her behalf.  Defendants admit that Daniela Marisol T. received a hearing aid on or about July 2018, after having been transferred from David and Margaret shelter to Bethany Christian Services in Kentwood, Michigan. The remaining factual allegations in Paragraph 40 are denied.  Any characterizations and innuendos are denied.

41.     Defendants admit that Daniela Marisol T. suffered from a breakdown on or about September 8, 2017, and was transferred to Shiloh RTC.  Defendants deny that ORR did not afford Daniela Marisol T. notice of her transfer, an opportunity to be heard, or a right to appeal.  Defendants deny that Katherine L. was required to show a $500 per month disposable income in order to support Daniela Marisol T.'s psychological and medical needs, and aver Katherine L. initially declined sponsorship on her own initiative, reporting that she was unable to sponsor Daniela Marisol T. due to financial hardship.  Defendants deny that ORR told Katherine L. that she did not have sufficient economic resources to sponsor Daniela Marisol T.  The remaining factual allegations in Paragraph 41 are denied.  Any characterizations and innuendos are denied.

42.     The legal conclusions and arguments in the first sentence of Paragraph 42 require no response.  Defendants admit that, in order to treat her significant psychiatric symptoms, including suicidal and homicidal ideation, clinicians at

17

ORR-funded shelters prescribed certain psychotropic medications to Daniela Marisol T. when she resided at Norma Linda shelter, Shiloh RTC, the David and Margaret shelter, and Bethany USCCB, based upon the consent of the Director of ORR, as the legal custodian.

Defendants admit that at various times while she was in ORR's legal custody, as a part of her psychiatric treatment, Daniela Marisol T. was prescribed the medications listed in Paragraph 42 by clinicians at ORR-funded grantee care providers.  Defendants admit that while in ORR's legal custody, Daniela Marisol T. received different diagnoses in the Diagnostic and Statistical Manual ("DSM") 5 based on her presenting psychiatric symptoms at the time, including those listed in Paragraph 42; as her mental health treatment progressed, Daniela Marisol T. no longer met the criteria for some of these diagnoses and others were ruled out.  As to the allegation that "ORR did not involve a neutral decision maker," the phrase "neutral decision maker" is a legal conclusion to which no response is required. To the extent a response may be deemed required, Defendants deny the implication that the decision makers exercised a lack of neutrality.  Defendants admit that Daniela Marisol T.'s grantee care provider did not obtain a family member's informed consent or judicial authorization before prescribing medications to her, and admit that at the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient

18

ANSWER TO FIRST AMENDED COMPLAINT

documentation and protocol for prescribing medications.  The remaining factual

allegations in Paragraph 42 are denied.  Any characterizations and innuendos are

denied.  The remaining legal conclusions and arguments require no response.

43.    Defendants admit that the U.S. Food and Drug Administration

("FDA") has acknowledged that antidepressants may increase the risk of suicidal

ideation or behavior in children, adolescents, and young adults and, therefore,

cautions that prescriptions of such medications for those who need them to manage

symptoms of depression require close monitoring.  Defendants admit that Daniela

Marisol T. was prescribed psychotropic medications while in ORR's legal custody

in order to treat her serious mental health symptoms, including suicidal ideation

and behavior which apparently began in her home country, and continued while in

ORR's legal custody.  The list of medications speaks for itself; Defendants deny

any characterizations of how the medications are prescribed.  Defendants lack

knowledge or information sufficient to form a belief about the truth of the factual

allegations contained in the third sentence of Paragraph 43 as they do not provide

any citations to the research which is purportedly summarized therein, and on that

basis deny those allegations.   Defendants admit that Daniela Marisol T. expressed

suicidal ideation before and during her time in ORR's legal custody and that she

was prescribed psychotropic medications to treat her serious mental health

19

symptoms, but deny that she was forced to take such medications against her will, or that her symptoms worsened while taking them.

44.     Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegations regarding Daniela Marisol T.'s belief that "she ha[d] to take the medication because facility staff ha[d] told her that she must in order to be released from government custody."

45.     Defendants lack knowledge or information sufficient to form a belief about whether "Katherine desperately want[ed] to provide her younger sister a loving and safe home, and she has done everything in her power to have Daniela Marisol released to her care."  Defendants deny that ORR told Katherine L. that, in order for Daniela Marisol T. to be released to her care, Katherine L. must move to a new house, have a separate private bedroom for Daniela Marisol T., and prove that she can pay over $500 per month for Daniela Marisol T.'s medical care.  Upon information and belief, Defendants admit that, although obtaining specified additional resources was not presented as a prerequisite to release, ORR is aware that Katherine obtained cash and in-kind community donations in an effort to be better equipped to provide for Daniela Marisol T.'s medical and other needs. Defendants admit that Katherine L. received a positive home study evaluation with a recommendation for post release services and that a psychologist working on behalf of Plaintiffs found that it was in Daniela Marisol T.'s best interest to be

20

reunited with her sister.   Defendants admit that ORR did not provide Katherine L. with any written decision as to whether she will be reunified with Daniela Marisol T. but continued to work with Katherine L. towards releasing Daniela Marisol T. to her.  Defendants deny that ORR denied Katherine L's sponsorship of Daniela Marisol T. in a manner that could not be challenged in a hearing, or appealed by some other means.  Defendants deny any legal conclusions or arguments in the last sentence of Paragraph 45.  Defendants deny any characterizations or innuendo.

46.     Defendants deny that Daniela Marisol T. is currently in ORR's legal custody, and aver that she was released on or about October 19, 2018, to the care of her sister sponsor, Katherine L., in St. Paul, Minnesota.  To the extent paragraph 46 contains legal arguments and conclusions, they require no response. Defendants admit that ORR did not pay to provide Daniela Marisol T. with legal counsel with respect to release, the administration of psychotropic medications, or placement.  Defendants aver that HHS did provide Daniela Marisol T. legal screenings and access to free legal services as described in its policies.

C.     Miguel Angel S.

47.     Defendants admit that on or about May 17, 2017, ORR assumed legal custody of Plaintiff Miguel Angel S. after he arrived at the U.S.-Mexico border. Defendants admit that ORR placed Miguel Angel S. at the Southwest Key shelter in southern California.  Defendants deny that staff initially told Miguel Angel S.

21

that he would be released to Gerardo S., his next friend, a man whom he considers to be his father, within three months.  Defendants aver that Gerardo S. is not biologically related to Miguel Angel S., but hereinafter for convenience will refer to him as his father.

48.     Defendants lack knowledge or information sufficient to form a belief about the truth of the factual allegation that "[a]s Miguel Angel's time in detention wore on, he felt anxious at the shelter and often feared he would never be released," but Defendants aver that, at the time, Miguel Angel S. made statements consistent with this allegation.

Defendants admit that on or about July 17, 2017, ORR transferred Miguel Angel S. to Shiloh RTC in Texas.  Defendants admit that this transfer was due to his significant mental health needs.  Defendants deny that ORR did not afford him notice of this transfer.  Defendants deny that ORR did not provide Miguel Angel S. an opportunity to be heard concerning this transfer.  Defendants deny that ORR did not provide Miguel Angel S. a right to appeal his July 17, 2017 transfer to Shiloh RTC.

Defendants admit that at Shiloh RTC, Miguel Angel S. was prescribed and took several psychotropic medications.  Defendants admit that while at Shiloh RTC, Miguel Angel S. was prescribed and took Remeron, Trazadone, Seroquel, and Lexapro.

22

ANSWER TO FIRST AMENDED COMPLAINT

Defendants admit that one or more of these medication may include these side effects:  stomach pain, dizziness, nausea, drowsiness, unusual weight gain, blurred vision, and insomnia, but deny any implication that Miguel Angel S. necessarily experienced any side effect.

49.     Defendants admit that Miguel Angel S. objected to taking medications but deny the implication that he was forced to do so.  Concerning the allegation that Miguel Angel S. objected to taking medications "because they made him feel itchy, dizzy, aggressive, nauseous, and caused him to gain an unusual amount of, weight in a short period of time," Defendants deny the allegation for lack of information sufficient to form a belief as to their truth, but Defendants aver that, at the time, Miguel Angel made statements consistent with this allegation.

Defendants deny that Shiloh staff insisted that he take the medication. Defendants aver that at the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.  Defendants admit that clinicians at Shiloh prescribed medications to Miguel Angel S. without obtaining Gerardo S.'s informed consent or judicial authorization.

50.     As to the allegation that "ORR did not involve a neutral decision maker," the phrase "neutral decision maker" is a legal conclusion to which no response is required.  To the extent a response may be deemed required,

23

Defendants deny the implication that the decision makers exercised a lack of neutrality, and admit that at the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.

51.    The allegation that "several staff members physically assaulted" Miguel Angel S. is a legal conclusion to which no response is a required.  To the extent a response may be deemed required, Defendants deny that while Miguel Angel S. was at Shiloh, several staff members physically assaulted him multiple times.  Defendants aver that in one instance, Miguel Angel S. reported that a staff member engaged him in physical contact; and that one or more physical altercations occurred at Shiloh, but these were caused by Miguel Angel S.

Defendants deny that on one occasion a staff member placed Miguel Angel S. in a headlock.  Defendants deny that during this altercation Miguel Angel S.'s earring was ripped out of his earlobe.

As to the allegation that this incident was painful, Defendants deny the allegation for lack of knowledge or information sufficient to form a belief as to its truth.

Defendants deny that a physician assistant witnessed this alleged altercation. Defendants deny that a physician assistant did not stop the purported incident from happening.

24

Defendants deny that Miguel Angel S. reported an alleged assault immediately to the grantee care provider doctor, but aver that he did report the physical contact and hurting his ear to the doctor afterwards.  Defendants deny that the doctor laughed in response, but aver that Miguel Angel S. later stated he felt the doctor was not listening, which infuriated Miguel Angel S.  Defendants deny that the doctor did nothing in response, and aver that Shiloh recorded no incident of an earring being ripped out of Miguel Angel S.'s ear.

Defendants lack sufficient information or knowledge, and on that basis deny that on one occasion two Shiloh staff members picked Miguel Angel S. up by his arms and pushed him up against a wall, but aver that Miguel Angel S. became physically and verbally aggressive after speaking with the doctor, and that staff members physically restrained Miguel Angel S. by holding his arms.  Defendants deny that one of the staff members pressed his forearm across Miguel Angel S.'s throat, making it hard for him to breathe.

Defendants deny that Miguel Angel S. reported the incidents alleged above to staff.  Defendants aver that no disciplinary action against staff was taken in response to these alleged instances, and aver that staff restrained Miguel Angel S. in order to protect his safety and the safety of others in the grantee care provider.

25

52.     The allegation that the incidents described above were "assaults" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the allegation.

Defendants admit that in March 2018, ORR transferred Miguel Angel S. to Yolo Juvenile Detention Center ("Yolo").  Defendants admit that this transfer occurred close in time when the alleged assaults occurred.  Defendants aver that Miguel Angel S. was "stepped up" to Yolo because of his participation in physical altercations against staff.

Defendants admit that ORR did not provide Miguel Angel S. with notice before he was transferred to Yolo, but aver that he was provided written notice after his transfer.

Defendants admit that ORR did not provide Miguel Angel S. with the opportunity to be heard before he was transferred to Yolo, but aver that he was provided this opportunity after his transfer.

Defendants deny that Miguel Angel S. was transferred to Yolo in retaliation for reporting the alleged incidents which the first amended complaint characterizes as assaults.

53.     Defendants deny that at Yolo, care provider staff attacked Miguel Angel S.  Defendants admit that staff used pepper spray, but aver that the use of pepper spray was part of security protocols.  As to the allegation that Miguel Angel

26

S. fears that Yolo staff will subject him to pepper spray in the future, Defendants deny the allegation for lack of knowledge or information sufficient to form a belief as to its truth.

Defendants admit that there was one occasion in which Yolo staff pepper sprayed Miguel Angel S. in his facial area, and aver that it is possible the spray contacted Miguel Angel S.'s eyes and ears.  Defendants deny that Miguel Angel S. used water from the toilet in his cell to wash pepper spray out his eyes, and aver that he took a decontamination shower minutes after the incident.  Defendants deny that staff cut off water to his sink.

As to the allegations that the pepper spray made Miguel Angel S.'s eyes feel like they were on fire, and that he lost hearing in one ear for several days, Defendants deny these allegations for lack of knowledge or information sufficient to form a belief as to their truth.

Defendants deny that Miguel Angel S. spent most of his time at Yolo locked in a cell.  As to the allegation that Miguel Angel S.'s room at Yolo was small, Defendants aver that Miguel Angel S. had several rooms at Yolo, and admit that they were all approximately 12 feet, 9 inches by 6 feet, 9 inches.   Defendants deny that Miguel Angel S. was only allowed out of his room at Yolo for short periods. As to the allegation that Miguel Angel S. felt trapped or tortured, Defendants deny

27

the allegation for lack of knowledge or information sufficient to form a belief as to

its truth.

54.     Defendants admit that Miguel Angel S.'s father, Gerardo S., applied

to be Miguel Angel S.'s sponsor around October 2017.  As to the allegations that

Miguel Angel S. and Gerardo S. have a very close relationship, and that Miguel

Angel S. wants to live with him, Defendants deny these allegations for lack of

knowledge or information sufficient to form a belief as to their truth, but aver that

Miguel Angel S. has made statements consistent with this allegation.

Defendants admit that Gerardo S. lives in an apartment with his brother.

Defendants admit that in October 2017 both Gerardo S. and his brother submitted

documents to the ORR grantee care provider, including birth certificates and

fingerprints.  Defendants admit  that Gerardo S. submitted to the ORR grantee care

provider all the documents that ORR required in order to make an assessment

concerning whether Gerardo S. would be a suitable sponsor for Miguel Angel S.,

but aver that the case required a home study under the TVPRA before release was

possible.  Defendants deny that Gerardo S.'s brother submitted to the ORR grantee

care provider all the documents that ORR required in order to make an assessment

concerning whether Gerardo S. would be a suitable sponsor for Miguel Angel S.

Defendants admit that Gerardo S. has a neighbor who lives across the

hallway, and aver Gerardo S. identified a neighbor as an adult caregiver who

ANSWER TO FIRST AMENDED COMPLAINT

would provide care and custody to his son in the event Gerardo S. had to leave the

country.  Defendants aver that the ORR grantee care provider requested that the

neighbor submit information to ORR, as required by its policies; the ORR grantee

care provider requested the same information from him as it did from Gerardo S.

and his brother; and the neighbor submitted this information in October 2017.

55.     Defendants admit that in December 2017, a home investigator visited

Gerardo S.'s apartment to perform a home study.  As to the allegation that "the

home study went well," Defendants admit this allegation to the extent supported by

the document cited, which is the best evidence of its contents.  Defendants admit

that the home investigator recommended that Miguel Angel S. be released to

Gerardo S.'s custody.  Defendants lack sufficient information to admit or deny that

the home investigator assured Gerardo S. that Miguel Angel S. would probably be

released in the first few weeks of January, and on that basis, deny the allegation.

Defendants deny that Gerardo S. heard nothing from ORR or Miguel Angel S.'s

case workers throughout January or February 2018, and aver that ORR continued

to have concerns about the safety risks posed by Miguel Angel S.'s behavior while

in ORR's legal custody.

56.     Defendants deny that at Shiloh RTC and Yolo Juvenile Detention

Center, Miguel Angel S. experienced barriers to release to his father, to the extent

that the word "barriers" suggests ORR may not consider the safety of both the

ANSWER TO FIRST AMENDED COMPLAINT

minor and the community when it makes release decisions.  Defendants lack

sufficient information to admit or deny whether, in March 2018, Gerardo S. was

told by an unspecified person that Shiloh RTC doctors would not approve Miguel

Angel S. for release and that he would remain in ORR's legal custody until they

do; on that basis, Defendants deny the allegation.  Defendants aver that in March

2018, Shiloh RTC noted that Miguel Angel S.'s mental health symptoms appeared

stable, but that his aggressive behavior was a cause for concern and required a

more secure placement.

Defendants admit that while Miguel Angel S. was at Shiloh, he displayed

serious mental health symptoms.  Defendants admit that Miguel Angel S.'s mental

health symptoms impacted the assessments made concerning his release to a

sponsor.  Defendants aver that the decision whether to release a child to a sponsor

is not controlled by any one factor, but rather is based on a variety of factors.

Defendants deny that Miguel Angel S.'s experiences while in ORR's legal custody

exacerbated his mental health symptoms.  Defendants deny the implication that

ORR inappropriately delayed Miguel Angel S.'s release.

Defendants admit that while in ORR's legal custody, Miguel Angel S.

experienced separation from family members.  The allegation that his separation

was prolonged is a legal conclusion to which no response is required; to the extent

a response may be deemed required, Defendants admit that Miguel Angel S. was in

30

ORR's legal custody for approximately 16 months, but deny any characterizations or innuendo.

Defendants admit that Miguel Angel S. was prescribed and took psychotropic medications; deny that the prescription of psychotropic medications while in ORR's legal custody occurred over Miguel Angel S.'s objection. Defendants aver that at times Miguel Angel S. declined to take psychotropic medication; and that care provider staff encouraged but did not force him to take his medication.

Defendants admit that Miguel Angel S. was prescribed psychotropic medications without a family member's informed consent and aver that the prescription of psychotropic medications to Miguel Angel S. while in ORR's legal custody occurred with the consent of the ORR Director and at the recommendation of his treating clinicians, which, at the time, was considered sufficient; and deny that ORR or care provider staff assaulted Miguel Angel S.

57.    Defendants deny that in early May 2018, Miguel Angel S.'s case worker at Yolo told Gerardo S. that he needed to provide proof of school enrollment and the name of a psychiatric clinic in order for Miguel Angel S. to be released, but aver that educating sponsors and UACs about community resources, including education and psychiatric support, is part of the ORR release process.

31

As to the allegation that "Gerardo has tried his best to comply with these requirements," that "the local school requires Miguel Angel to be physically present in order to be enrolled," and that "Gerardo has been unable to find a psychiatric clinic that will give Miguel Angel an appointment," Defendants deny these allegations for lack of knowledge or information sufficient to form a belief as to their truth.   Defendants aver that Gerardo S. has made statements consistent with these allegations.

Defendants admit that in late May 2018, Miguel Angel S.'s case worker told Gerardo S. that his fingerprint results had expired, and that Gerardo S., his brother, and his neighbor would need to submit their fingerprints again for updated results.

58.     Defendants deny that ORR refused to release Miguel Angel S. from its legal custody, and aver that Miguel Angel S. was released from ORR's legal custody on or about October 11, 2018.  Defendants admit that prior to being released from ORR's legal custody, Miguel Angel S. was in ORR's legal custody since approximately May 17, 2017.

Defendants deny that ORR did not provide Miguel Angel S. with written notification of a refusal to release him; ORR did not refuse to release him. Defendants deny that ORR did not provide Gerardo S. with written notification of a refusal to release Miguel Angel S.; ORR did not refuse to release him.

32

Defendants deny that ORR did not provide Miguel Angel S. with the opportunity to review the underlying evidence or appeal ORR's refusal to release Miguel Angel S. to his father; ORR did not refuse to release him.  Defendants deny that ORR did not provide Gerardo S. with the opportunity to review the underlying evidence or appeal ORR's refusal to release Miguel Angel S.; ORR did not refuse to release him.  Further, Defendants aver that upon transfer to Yolo, and every month thereafter, ORR informed Miguel Angel S. that he had the ability to request reconsideration of his placement in secure care by either the ORR Director, or a federal district court judge.  Yolo also informed Miguel Angel S. that he could request a bond hearing before an immigration judge, to determine the question of his dangerousness to himself or to the community.  Defendants aver that Miguel Angel S. initially requested a bond hearing, but his attorney later asked ORR not to file a motion requesting a bond hearing with the court.

Defendants deny the implication that ORR improperly caused Miguel Angel S.'s release to be delayed.

The allegation that a setting is a "least restrictive setting" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the allegation that ORR did not place Miguel Angel S. in the least restrictive setting in light of his needs and all the circumstances.

33

D.      Gabriela N.

59.     Defendants admit that on or about January 8, 2017, ORR assumed legal custody of Plaintiff Gabriela N.  Defendants admit that this occurred close in time to when "she had turned herself in at the U.S.-Mexico border."

As to the allegations that as a young girl living in El Salvador, Gabriela experienced extreme violence and did not feel safe at home, Defendants deny the allegations for lack of knowledge or information sufficient to form a belief as to their truth, and aver that Gabriela N. has made statements consistent with these allegations.

Defendants admit that ORR placed Gabriela N. at the Southwest Key Casita del Valle grantee care provider ("Casita del Valle shelter") in Clint, Texas. Defendants admit that in or around April 2017, Isaac N., Gabriela N.'s grandfather and next friend, requested Gabriela N.'s legal custody and submitted an application to serve as her custodian.  Defendants lack knowledge to admit or whether Gabriela N.'s mother appeared before a U.S. Consular official in El Salvador, but aver that she provided a notarized letter allegedly signed in El Salvador in April 2017 that purported to give custodial rights over Gabriela N. to her grandfather.

The allegation that Gabriela N.'s mother "execute[d] a formal designation pursuant to Paragraph 14D of the Flores settlement" is a legal conclusion to which

ANSWER TO FIRST AMENDED COMPLAINT

no response is required.  To the extent a response may be deemed required, Defendants admit the allegation.

      60.    As to the allegations that:

- Gabriela N.'s biological father is deceased;

- Gabriela N.'s stepfather physically abused her mother;

- Gabriela N.'s stepfather physically abused her sister;

- Gabriela N.'s sister is disabled;

- Gabriela N.'s sister suffers from paralysis from abuse from her stepfather and can no longer speak;

- Gabriela N. fled to the U.S. seeking safety, with the hope of living with her grandfather;

- Gabriela N. and her grandfather, Isaac N., have a close relationship, and she wants to live with him; and

- Isaac N. anticipated that ORR would release Gabriela N. to his custody,

in general, Defendants deny these allegations for lack of knowledge or information sufficient to form a belief as to their truth.  With respect to the allegation that Gabriela N. fled to the U.S. with the hope of living with her grandfather, Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations, and so deny them, but aver that Gabriela N. stated that she originally planned to live with cousins in New York State when she came to the

35

U.S., that this plan became infeasible, and that she subsequently had no further plan.  Defendants also aver that ORR helped identify Gabriela N.'s grandfather as a potential sponsor after another potential sponsor withdrew her application.

Defendants admit that Isaac N. submitted documents to ORR grantee care provider staff.  Defendants admit that the period during which Isaac N. submitted documents to ORR and participated in the sponsor assessment process began in approximately April 2017 and ended in approximately March 2018.

Defendants admit the allegation that ORR did not release Gabriela N. to her grandfather's custody; Defendants aver that ORR released Gabriela N. to the Unaccompanied Refugee Minor ("URM") program in San Jose, California, close to where her grandfather lives on or around October 2, 2018.

61.     As to the allegation that Gabriela N. took no medications for mental illness in El Salvador, Defendants deny the allegation for lack of knowledge or information sufficient to form a belief as to their truth.  Defendants admit that when she arrived at Casita del Valle shelter, staff noted that Gabriela N. appeared emotionally stable, receptive, and resilient.

62.     Defendants admit that while at the Casita del Valle shelter, Gabriela N. exhibited symptoms of depression and anxiety.  As to the allegation that Gabriela feared that ORR would never release her to her family, Defendants lack

ANSWER TO FIRST AMENDED COMPLAINT

knowledge or information sufficient to form a belief as to their truth, but aver that Gabriela N. has made statements consistent with this allegation.

Defendants admit that clinicians affiliated with ORR care providers prescribed, and Gabriela N. took, psychotropic medications.  Defendants admit that Gabriela N. was prescribed these medications to treat post-traumatic stress disorder, anxiety, major depressive disorder, and attention-deficit hyperactivity disorder ("ADHD").

Defendants admit that at the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications to Gabriela N. Defendants admit that ORR did not obtain Isaac N.'s or another adult family member's informed consent or judicial authorization before medications were initially prescribed to Gabriela N.

63.    Defendants admit that while at Casita del Valle shelter, Gabriela N. was prescribed and took Prozac.  Defendants admit that Prozac is a psychotropic medication.

64.    Defendants admit that on or about September 7, 2017, ORR transferred Gabriela N. to Shiloh RTC.  Defendants admit that this transfer occurred due to her significant mental health needs.

ANSWER TO FIRST AMENDED COMPLAINT

Defendants deny that ORR did not afford Gabriela N. notice of this transfer.
Defendants deny that ORR did not provide Gabriela N. an opportunity to be heard
concerning this transfer.  Defendants deny that ORR did not provide Gabriela N. a
right to appeal this transfer.

Defendants admit that staff at Shiloh prescribed and Gabriela N. took a
medication called Adderall.  Defendants admit that irritability and difficulty with
sleep initiation are potential side effects of taking Adderall, but deny that Gabriela
N. necessarily experienced these symptoms due to Adderall.

To the extent they lack sufficient knowledge, Defendants deny that Adderall
causes or worsens depression in a significant proportion of those who take it, and
deny that this was the case for Gabriela N.

Defendants admit that over the course of Gabriela N.'s stay at Shiloh, the
psychiatrist at Shiloh increased the dosage of Adderall.  Defendants admit that a
psychiatrist increased her dosage twice while Gabriela N. was at Shiloh.

As to the allegation that "ORR did not involve a neutral decision maker," the
phrase "neutral decision maker" is a legal conclusion to which no response is
required.  To the extent a response may be deemed required, Defendants deny the
implication that the decision makers exercised a lack of neutrality, and admit that
at the time, the medical authorization of the ORR Director, as well as the clinical

ANSWER TO FIRST AMENDED COMPLAINT

judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.

65.     As the first two sentences of allegation 65, and the allegation that Gabriela N. did not want to take medications, Defendants deny the allegations for lack of knowledge or information sufficient to form a belief as to their truth. Defendants admit that while in ORR's legal custody, Gabriela N. took the prescribed medications.

Defendants admit that Shiloh staff told Gabriela N. that ORR would not release her until Shiloh's psychiatrist determined that she was no longer a danger to herself.

Defendants deny that Gabriela N.'s experiences while in ORR's legal custody exacerbated her mental health symptoms and aver that she exhibited severe mental health symptoms before being in ORR's legal custody, including suicidal ideation and behavior.  Defendants deny the characterization that ORR inappropriately delayed Gabriela N.'s release.

Defendants admit that while in ORR's legal custody, Gabriela N. experienced separation from family members.  The allegation that her separation was prolonged is a legal conclusion to which no response is required; to the extent a response may be deemed required, Defendants admit that Gabriela N. was in ORR's legal custody for approximately 22 months.

ANSWER TO FIRST AMENDED COMPLAINT

66.     Defendants admit that in February 2018, a study was done of Isaac
N.'s home in Oakland, California because of Gabriela N.'s history of abuse and her
several significant mental health diagnoses.  Defendants admit that Isaac N. lived
alone at that location.  Defendants deny that Isaac N. later moved to a new
apartment after the home study.  Defendants admit that Isaac N. moved to the
apartment where the home study was conducted, and purchased a new bed for
Gabriela N., in preparation for her release.

67.     Defendants admit the first sentence of allegation 67 (concerning the
contents of the home study worker's report) to the extent supported by the
document cited, which is the best evidence of its contents.  Defendants admit that
the investigator questioned Isaac N.'s ability to support Gabriela N.'s education
and care for her financially.  Defendants admit that Isaac N. assured the
investigator that he would do everything required to provide for Gabriela N.
However, Defendants aver that the home study report submitted in February 2018
reached a negative conclusion about placement of Gabriela N. with her grandfather
due to his criminal history, history of alcohol abuse, health, and questionable work
schedule.  Defendants admit that later, Gabriela N.'s social worker at Shiloh told
Isaac N. that ORR was no longer considering him as a custodian for his
granddaughter.  Defendants aver that ORR ultimately released Gabriela N. to the

40

legal custody of an Unaccompanied Refugee Minor (URM) Program in San Jose, California, close to where her grandfather Isaac N. lives.

Defendants admit that ORR afforded neither Isaac N. nor Gabriela N. any hearing, right to administrative appeal, or other means to change its decision not to release Gabriela N. to her grandfather.  Defendants admit that ORR did not provide Isaac N. with a written decision or written explanation for denying his sponsorship of Gabriela N.  Defendants deny the characterization that ORR acted improperly in connection with its decisions concerning Gabriela N., and deny the characterization that ORR improperly caused Gabriela N.'s release to be delayed.

The allegation that a setting is a "least restrictive setting" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the allegation that ORR did not place Gabriela N. in the least restrictive setting in light of her needs and all the circumstances.

68.     As to the allegation that Gabriela N. is seventeen years old, Defendants deny the allegation for lack of knowledge or information sufficient to form a belief as to its truth.  Defendants aver that Gabriela N.'s age was estimated to be approximately seventeen years old as of the filing of the first amended complaint.  Defendants deny the allegation that Gabriela N. remains placed in ORR's legal custody; Defendants aver that on or around October 2, 2018, Gabriela N. was released to the custody of the URM program in San Jose, California.

41

Defendants admit that previously, Gabriela N. was placed at St. Michael's Home for Children.  Defendants admit that while at St. Michael's, Gabriela N. was prescribed and took Prozac and Adderall.  Defendants deny that St. Michael's staff administered Adderall to Gabriela N. without obtaining a new prescription from a psychiatrist.  Defendants admit that Gabriela N. later met with a psychiatrist, but deny the psychiatrist increased her Adderall dosage; rather, Defendants aver that the psychiatrist recommended continuing with the same Adderall dosage, and increasing Gabriela N.'s Prozac dosage.  Defendants deny the characterization that these occurrences were improper.

69.     Defendants admit that Gabriela N. was in ORR's legal custody from about January 8, 2017 to about October 2, 2018.  Defendants admit that Gabriela N. at one point stated that she desperately wanted to live with her grandfather and that he expressed that he wanted to care for her.  As to the allegations that Gabriela N. is miserable, and that her grandfather is ready and eager to care for her, Defendants deny these allegations for lack knowledge or information sufficient to form a belief as to their truth.  Defendants admit that Shiloh staff told Gabriela N. that ORR will not release her to her grandfather.

Defendants admit that ORR did not pay for legal counsel for Gabriela N. to represent her with respect to release, the prescription of psychotropic medications,

ANSWER TO FIRST AMENDED COMPLAINT

or her placement at Shiloh.  Defendants aver that HHS did provide Gabriela N. legal screenings and access to free legal services as described in its policies.

E.    Jaime D.

70.    Defendants admit that on or about April 8, 2018, ORR assumed legal custody of Plaintiff Jaime D.  Defendants admit that Jaime D. arrived at the U.S.-Mexico border with two relatives whom he identified as his sister and his aunt.

Defendants admit that ORR placed Jaime D. and his younger sister and aunt at the Cayuga Centers shelter in Bronx, New York.

Defendants admit that on or about April 10, 2018, Cayuga Centers identified Reyna D., Jaime D.'s aunt and Next Friend, as a potential sponsor, and sent her a Family Reunification Packet.  Defendants aver that Reyna D. submitted the packet with required documents within a few weeks, by mid-May.

Defendants admit that Reyna D. discussed ORR's requirements for becoming Jaime D.'s custodian in detail with his case manager at Cayuga Centers.

Defendants deny the following allegations for lack of knowledge or information sufficient to form a belief as to their truth:

- Reyna D. is Jaime D.'s only family in the United States.

- Jaime D. desperately wants to be released to Reyna D.'s care.

- Jaime's mother died when he was seven years old that his father died before he was born.

43

- Whether, and if so, when, Reyna D. began gathering the required documents to send to for purposes of the family reunification packet.

71.    Defendants deny the allegations in the first three sentences of allegation 71 for lack of knowledge or information sufficient to form a belief as to their truth.  Defendants admit that Jaime D. later changed his story about his life in his home country.

72.    Defendants admit that on or about April 18, 2018, ORR transferred Jaime D. to Yolo County Juvenile Detention Center in Woodland, California.  Defendants deny that ORR did not afford Jaime D. notice of this transfer.  Defendants deny that ORR did not provide Jaime D. an opportunity to be heard concerning this transfer.  Defendants deny that ORR did not provide Jaime D. a right to appeal his circa April 18, 2018 transfer to Yolo.

Defendants admit that on the day of Jaime D.'s transfer to Yolo, staff awakened him at 4:00 a.m.  Defendants admit that flying from New York to California is a flight across the country.  Defendants admit that while flying, Jaime D. was restrained.  Defendants admit that Jaime D.'s restraints were heavy and weighted, but deny that they were shackles.  Rather, Defendants aver that soft restraints were used.

Defendants admit that before being transferred to Yolo, for his own safety and that of his peers, Jaime D. was not given time to say goodbyes, including to his

44

younger sister or aunt.  For lack of knowledge or information sufficient to form a belief as to its truth, Defendants deny the allegation that Jaime D. was extremely worried that his younger sister and aunt would think he had abandoned him.

73.    Defendants admit that Yolo grantee care provider staff first contacted Reyna D. regarding her application for Jaime D.'s custody about a week after he arrived at Yolo.  Defendants admit that approximately two weeks later, Jaime D.'s case manager noted that Reyna D. had "provided all that [had] been asked of her." For lack of sufficient information, Defendants deny that the case manager's statement referred to a complete family reunification packet and fingerprint results, but aver that Reyna D. had submitted the reunification packet and fingerprint results by mid-May 2018.

Defendants admit that in late May 2018, Reyna D. completed a home study and interview with a home investigator.  Defendants admit that ORR found Reyna D. to be a suitable custodian for Jaime D.'s younger sister and aunt, and that ORR released the two girls to Reyna D.'s care on or about June 8, 2018.

74.    Defendants deny the allegations in the first sentence of allegation 74 for lack of knowledge or information sufficient to form a belief as to their truth. Defendants deny that throughout his time at Yolo, Jaime D. suffered physical abuse at the hands of older youth at Yolo.  Defendants aver that Yolo grantee care provider staff observed other minors trying to provoke Jaime D., due to his relative

45

youth and small stature, and noted his peer conflict and anger management skills as

areas for concern, but Defendants deny that staff ignored Jaime D.'s concerns.

Defendants deny that staff said that they did not believe Jaime D., and aver that

they recommended ORR transfer Jaime D. to a more diverse placement.

75.     Defendants admit that about two weeks after he was transferred to

Yolo, Jaime D.'s case manager noted that the Yolo staff were "all in agreement

that [Jaime] isn't appropriately placed in a secure setting."  For lack of sufficient

information, Defendants deny that Jaime D.'s case worker told him that he was too

young to be at Yolo, but admit that Yolo staff informed Jaime D. they hoped to

transfer him to another grantee care provider.  Defendants admit that Jaime D.

remained at Yolo for three weeks after this conversation.  Defendants admit that on

or about May 24, 2018, ORR transferred Jaime D. to Children's Village staff

secure grantee care provider in Dobbs Ferry, New York; however, Defendants

deny that all ORR staff-secure shelters necessarily meet the definition of "medium-

secure" facilities, as that term is used in the Flores settlement agreement.

76.     Defendants deny that Jaime D. remains at the Children's Village

grantee care provider, and aver that he was released to Reyna D. on or about

October 20, 2018.  Defendants deny that Jaime D. is thirteen years old; according

to ORR records, he is now fourteen.  For lack of knowledge or information

46

sufficient to form a belief as to their truth, Defendants deny the following

allegations:

- While at Children's Village, Jaime D. was increasingly anxious and worried

  that he will never be released to his aunt's care.

- As of the filing of the amended complaint, Reyna D. had not heard from

  Jaime D.'s case worker at Children's Village for almost a month.

  Defendants admit that before releasing Jaime D., ORR did not provide Jaime

or Reyna D. with formal written notification that it would not release Jaime.

  Defendants admit that before releasing Jaime D., ORR did not provide

Reyna D. with an opportunity to review the underlying evidence regarding ORR's

release decision or appeal ORR's refusal to release Jaime D. to her.  Defendants

aver, however, that ORR did provide Jaime D. the opportunity to challenge his

placements at the Yolo secure and Children's Village staff secure grantee care

providers, including through a bond hearing.

  The allegations that ORR unnecessarily delayed Jaime D.'s release and did

not place him in the "least restrictive setting" are legal conclusions to which no

response is required; to the extent a response may be deemed required, Defendants

deny the implication that Jaime D. was not placed in the least restrictive setting in

light of his needs and all the circumstances.  Regardless, Defendants deny the

implication that ORR inappropriately delayed Jaime D.'s release.  Defendants deny

47

ANSWER TO FIRST AMENDED COMPLAINT

the implication that ORR acted improperly or caused or is accountable for any delay in Jaime D.'s release in connection with ORR's performance of its statutory mandate.

77.    Defendants admit that ORR did not provide Jaime D. with legal counsel to represent him with respect to release or his placement at Children's Village, but aver that it did provide legal screenings and access to free legal services as described in its policies, and that Jaime D. in fact had legal representation while at Yolo and Children's Village.

F.    <u>Sirena P.</u>

78.    Defendants admit that on or about April 14, 2018, ORR assumed legal custody of Plaintiff Sirena P. after she arrived at the U.S.-Mexico border with her two siblings.  Defendants admit that ORR placed Sirena P. and her siblings at the Southwest Key Campbell shelter ("Campbell") in Phoenix, Arizona.

Defendants admit that shortly after these events, Eduardo P., Sirena P.'s father, requested Sirena P.'s custody and submitted a family reunification packet to the ORR grantee care provider staff.  Defendants admit that Sirena P.'s father has completed a home study and an addendum to the home study, and received positive recommendations for both.

Defendants admit that before the first home study was completed, ORR released Sirena P.'s siblings to her parents' custody.  Defendants aver that ORR

48

released Sirena P.'s siblings on or about May 9, 2018; but the first home study report was not complete until on or about May 23, 2018.  Defendants admit that at that time, ORR did not release Sirena P. from ORR's legal custody, citing her significant mental health needs.

79.     Defendants admit that Sirena P. was hospitalized twice in May 2018. Defendants lack knowledge or information sufficient to form a belief as to its truth, but admit that Sirena P. expressed that her mental health needs are fueled in part by the emotion she feels as a result of her ongoing separation from her parents. Defendants aver that Sirena P. has stated that her mental health needs are also fueled by missing her grandparents who remain in her country of origin ("COO") missing her best friend, who died in her COO approximately two years ago, and memories of having been bullied in school in her COO.   Defendants deny that the sole cause of her May 2018 hospitalizations was Sirena P. being upset about being separated from her parents.

80.     Defendants admit that while at Campbell or while hospitalized, Sirena P. was prescribed and took multiple psychotropic medications, including Hydroxyzine, Prozac, Abilify, and Zoloft.  Defendants admit that Sirena P. was initially prescribed medications without a family member's informed consent or judicial authorization, but aver that medications were prescribed with the consent of the ORR Director and at the recommendation of Sirena P.'s treating clinicians,

49

which, at the time, was considered sufficient.  Defendants aver that Shiloh later obtained consent from Sirena P.'s mother.

81.     Defendants admit that on or about June 4, 2018, ORR transferred Sirena P. to Shiloh RTC in Manvel, Texas.  Defendants admit that this transfer occurred due to her significant mental health needs.   Defendants admit that ORR transferred Sirena P. to Shiloh without providing a formal opportunity to be heard before being transferred but aver that she was later provided an opportunity to appeal the decision to transfer her.

Defendants admit that on the day of Sirena P.'s transfer to Shiloh, staff awakened her at 3:00 a.m.  Defendants admit that Sirena P. was transferred to Shiloh.

As to the allegation that the transfer to Shiloh occurred against Sirena P.'s wishes, Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.  Defendants aver, however, that Sirena P. has made statements consistent with this allegation.

82.     Defendants admit that while at Shiloh, Sirena P. struggled with anxiety, depression, and hopelessness at first.  Defendants aver that during her time at Shiloh, Sirena P.'s mental health symptoms improved dramatically as a result of her treatment.  As to the allegation that Sirena P.'s Admission Assessment indicated that her major stressors included "[s]eparation from family" and

50

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"[f]rustration with lengthy reunification process," Defendants admit this allegation
to the extent supported by the document cited, which is the best evidence of its
contents.

Defendants admit that Shiloh clinicians prescribed and Sirena P. took
Buprorion, a psychotropic medication.  Defendants admit that Shiloh personnel
did not initially obtain "informed consent, the informed consent of any other adult
family member, or judicial authorization" before prescribing Buprorion to Sirena.
Defendants aver that Shiloh later obtained consent from Sirena P.'s mother.

83.      Defendants deny that Sirena P. remains at Shiloh.  Defendants aver
that Sirena P. was released from Shiloh to an approved sponsor on or about
September 16, 2018.  For lack of information or knowledge sufficient to form a
belief as to its truth, Defendants deny the allegation that Sirena P. "[wa]s
increasingly anxious and worried that she w[ould] never be released to her parents'
care."

Defendants admit that as of August 24, 2018, Sirena P.'s release was still
pending her doctor's recommendation, and aver that the doctor's recommendation
would influence the ORR federal field staff's final release decision.  Defendants
admit that while in ORR's legal custody, Sirena P. experienced separation from her
family.  Defendants admit that while in ORR's legal custody, Sirena P. was
prescribed and took psychotropic medication.

51

The allegation that Sirena P.'s separation from her family while in ORR's legal custody was prolonged is a legal conclusion to which no response is required; to the extent a response may be deemed required, Defendants admit that Sirena P. was in ORR's legal custody for approximately five months.

Defendants admit that while in ORR's legal custody Sirena P. was initially prescribed and administered psychotropic medications without a family member's informed consent, and aver that the medical authorization of the Director, as well as the clinical judgment of treating clinicians, as well as the subsequent consent from Sirena P.'s mother, was considered sufficient documentation and protocol for prescribing medications.  Defendants aver that Shiloh later obtained consent from Sirena P.'s mother.

Defendants admit that Sirena P.'s separation from her family was noted as a trigger to her mental health symptoms.  But to the extent that the word "experiences" implies that ORR acted improperly or caused or is accountable for Sirena P.'s health symptoms in connection with ORR's performance of its statutory mandate, Defendants deny the allegation.  Defendants deny that ORR action or inaction made approval of Sirena P.'s release to a sponsor less likely or delayed her release.

84.    The allegations that ORR unnecessarily delayed Sirena P.'s release and did not place her in the "least restrictive setting" are legal conclusions to which

ANSWER TO FIRST AMENDED COMPLAINT

no response is required; to the extent a response may be deemed required,

Defendants deny the implication that Sirena P. was not placed in the least

restrictive setting in light of her needs and all the circumstances.

Regardless, Defendants deny the characterization that ORR inappropriately

or unnecessarily delayed Sirena P.'s release.

Defendants admit that Sirena P.'s siblings were released to their parents.

Defendants admit that Sirena P. was placed at Shiloh.  Defendants deny the

characterization that Sirena P.'s release was delayed unnecessarily on the basis of

her mental health needs.

85.    Defendants admit that ORR did not fund legal counsel to represent

Sirena P. with respect to release or her placement at Shiloh, but aver that HHS did

provide Sirena P. legal screenings and access to free legal services as described in

its policies.

G.    Benjamin F.

86.    Defendants admit that on or about July 2, 2018, ORR assumed legal

custody of Benjamin F.  Defendants admit that Benjamin F. and his brother were

separated from their mother in the South Texas Family Residential Center, known

as Dilley, and were referred to ORR as unaccompanied. Defendants deny the

allegation that the reason for this separation is unable to be explained.

ANSWER TO FIRST AMENDED COMPLAINT

87.    Defendants admit that at the time he came into ORR's legal custody, Benjamin F. was believed to be nine years old, autistic, and developmentally delayed.  Defendants admit that at the time he came into ORR's legal custody, Benjamin F. struggled to speak and function when not in his mother's presence.

For lack of information or knowledge sufficient to form a belief as to their truth, Defendants deny that Benjamin F. found the separation from his mother to be traumatic or physically or emotionally challenging.  Defendants aver, however, that Benjamin F. has made statements consistent with those conclusions.

Defendants admit that Benjamin F.'s separation from his mother and placement into ORR's legal custody led to physical and emotional challenges.

Defendants deny the allegation that "none of" these challenges "are being addressed by ORR."

88.    Defendants admit that upon entering ORR's legal custody, Benjamin F. was initially placed at St. PJ's Children's Home with his brother, Mateo P. Defendants admit that subsequently, Isabella, Benjamin F.'s grandmother and Next Friend, began the process of completing a family reunification packet.  Defendants admit that grantee care provider staff communicated with Isabella, identifying additional information she needed to provide.  Defendants admit that Isabella responded to every request she received from grantee care provider staff.

ANSWER TO FIRST AMENDED COMPLAINT

Defendants admit that Isabella successfully submitted a completed family reunification packet to grantee care provider staff.  Defendants admit that ORR funded a home study of Isabella, which resulted in a positive recommendation.

Defendants deny the following allegations for lack of knowledge or information sufficient to form a belief as to their truth:

- The timing of when Isabella began the process of filling out the family reunification packet;

- Isabella's precise wishes, wants, and desires leading her to fill out the family reunification packet;

- Whether Isabella believed information provided by ORR to be confusing and conflicting.

89.     Defendants admit that Benjamin F. was prescribed and took multiple psychotropic medications, including Guanfacine and Risperidone, while he was at St. PJ's Children's Home.

For lack of information or knowledge sufficient to form a belief as to the allegation's truth, Defendants deny that the Guanfacine made Benjamin F. "severely" drowsy.  Defendants aver, however, that Benjamin F. gave indications of drowsiness.

The allegations that ORR did not involve a neutral decision maker is a legal conclusion to which no response is required.  To the extent a response may be

55

deemed required, Defendants deny the implication that the decision makers exercised a lack of neutrality.

Defendants admit that while in ORR's legal custody, Benjamin F. was prescribed medications without a family member's prior informed consent or judicial authorization, and aver that at the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.

90.     Defendants admit that on or about July 23, 2018, ORR transferred Benjamin F. to Shiloh RTC in Manvel, Texas.  Defendants admit that this transfer was due to his mental health needs.  Defendants admit that this transfer was also due to his behavioral needs.

Defendants admit that ORR did not afford him notice of this transfer, potentially due to his non-verbal condition.  Defendants admit that Benjamin F. did not have an opportunity to be formally heard concerning this transfer.

Defendants admit that Benjamin F.'s transfer to Shiloh RTC resulted in a separation from his older brother Mateo P.

The phrase "yet another" is Plaintiffs' characterization of their allegation, to which no response is required.

For lack of information or knowledge sufficient to form a belief as to the truth of the allegation, Defendants deny the allegation that the separation between

56

Benjamin F. and Mateo P. was "devastating."  Defendants aver, however, that

Benjamin F. has made statements consistent with that conclusion.

91.    For lack of information or knowledge sufficient to form a belief as to

the truth of the allegation, Defendants deny that Benjamin F.'s isolation and

trauma worsened at Shiloh.  Defendants aver, however, that Benjamin F. has made

statements consistent with that conclusion.

Defendants admit that shortly after Benjamin F. was transferred to Shiloh, in

August 2018, ORR released Mateo P. to his grandmother's care.

Defendants deny that Benjamin F. is currently at an ORR placement, and

aver that on or around September 15, 2018, Benjamin F. was released from ORR's

legal custody to the care of his maternal grandmother.

The allegation that Benjamin F. "languish[ed] in detention" is Plaintiffs'

characterization of the facts, to which no response is required.  To the extent a

response may be deemed required, Defendants deny that Benjamin F. was in

detention, and aver that he was in child welfare custody; Defendants deny the

allegation that Benjamin F. "languished."

For lack of information or knowledge sufficient to form a belief as to the

truth of the allegation, Defendants also deny that:

- Mateo P. currently lives with Isabella;

- Mateo P. finds living with Isabella to be comforting; and

57

- Mateo P. is capable of providing "daily protection and care" to Benjamin F., or that Benjamin F. considered these things to be lacking while they were separated.

92.    Defendants admit that at Shiloh, clinical staff prescribed and Benjamin F. took Guanfacine and Risperidone.  Defendants admit that within three weeks of Benjamin F.'s arrival at Shiloh, staff prescribed and Benjamin F. took a new psychotropic medication, Lexapro; Defendants aver that Lexapro was prescribed to treat symptoms of anxiety and irritability.  Defendants admit that within three weeks of Benjamin F.'s arrival at Shiloh, staff increased the dosages of both Guanfacine and Lexapro prescribed to him.

The allegation "as was the case at St. PJ's" is Plaintiffs' characterization of their allegations, to which no response is required.  Defendants have already responded, above, to Plaintiffs' allegations about Benjamin F.'s experiences at St. PJ's.

Defendants admit that at the time, the medical authorization of the Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.  As to the allegation that "ORR did not involve a neutral decision maker," the phrase "neutral decision maker" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the implication that the

ANSWER TO FIRST AMENDED COMPLAINT

decision makers exercised a lack of neutrality, and admit that at the time, the

medical authorization of the ORR Director, as well as the clinical judgment of

treating clinicians, was considered sufficient documentation and protocol for

prescribing medications.

93.     Because Benjamin F. has already been released from ORR's legal

custody (as noted in Defendants' response to allegation 91), Defendants deny the

allegation that "Benjamin will not be released from Shiloh . . . ."  Defendants admit

that before Benjamin F. was released from Shiloh, medical personnel evaluated

whether he was medically authorized for release.

Defendants admit that while in ORR's legal custody, Benjamin F.

experienced separation from family members, including his mother.  The

allegation that Benjamin F.'s separation was prolonged is a legal conclusion to

which no response is required; to the extent a response may be deemed required,

Defendants admit that Benjamin F. was in ORR's legal custody for approximately

two and a half months.

For lack of information or knowledge sufficient to form a belief as to its

truth, Defendants deny the allegation that Benjamin F.'s mother is the only person

with whom he communicates effectively verbally.  Defendants aver that Benjamin

F. has displayed indications that verbal communication is difficult.

59

Defendants admit that grantee care provider staff prescribed and Benjamin took psychotropic medications.  Defendants admit that ORR prescribed psychotropic medications to Benjamin F. without a family member's informed consent, and aver that at the time, the medical authorization of the Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.

Defendants deny that Benjamin F.'s experiences while in ORR's legal custody exacerbated his mental health symptoms.  Defendants deny the characterization that ORR inappropriately or unnecessarily delayed Benjamin F.'s release.  Defendants deny that ORR action or inaction made approval of Benjamin F.'s release to a sponsor less likely.  Defendants deny the implication that ORR acted improperly or caused or is accountable for Benjamin F.'s health symptoms in connection with ORR's performance of its statutory mandate.

94.     Defendants admit that Benjamin F.'s nondisabled brother has been released to his grandmother.  Defendants admit that Benjamin F. was placed at Shiloh.  Defendants admit that Benjamin F.'s release from ORR's legal custody was delayed at least in part based on his mental health needs, which necessitated a TVPRA home study as well as assessment of allegations of Benjamin's alleged abuse in his home country.  Defendants deny that Benjamin F.'s mental health needs were not met at Shiloh.

60

95.      Upon information and belief, Defendants admit that Benjamin F. was about nine years old when the First Amended Complaint was filed.  Defendants deny that Benjamin F. remains placed at Shiloh, and aver that on or around September 15, 2018, Benjamin F. was released from ORR's legal custody to the care and custody of his maternal grandmother.

For lack of information or knowledge sufficient to form a belief as to their truth, Defendants deny the allegations that while at Shiloh, Benjamin F. "where he [wa]s increasingly anxious and desperate to reunite with his brother and grandmother."  Defendants aver, however, that while at Shiloh, Benjamin F. displayed behaviors consistent with such conclusions.

Defendants deny the characterization that ORR inappropriately or unnecessarily delayed Benjamin F.'s release.

The allegation that while in ORR's legal custody Benjamin F. was not placed in the "least restrictive setting" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the characterization that Benjamin F. was not placed in the least restrictive setting in light of his needs and all the circumstances.

61

1

# V.

## CLASS ALLEGATIONS

96.     This allegation is Plaintiffs' characterization of their case to which no response is required.  Defendants do not concede that any of the proposed classes are properly certified as a class.

97.     Defendants admit that "the exact size of the proposed class is unknown . . . ."  Defendants deny that each proposed subclass, if properly certified, "likely includes hundreds of children."  The remaining statements in allegation 97 are legal conclusions to which no response is required.

98.     Defendants deny that "Defendants have acted and will continue to act on grounds generally applicable to the named Plaintiffs" because Defendants do not understand the meaning of this allegation.  Alternatively, Defendants deny this allegation.  The remaining statements in allegation 98 are legal conclusions to which no response is required.

99.     Defendants admit that proposed class members are predominantly indigent, non-English-speaking children.

Defendants deny that ORR actively obstructs lawyers from representing members of the proposed class in legal proceedings relating to custody, placement, or release.

62

Defendants lack information or knowledge sufficient to form a belief as to what the proposed class members understand or believe concerning their rights.

The remaining statements in allegation 99 are legal conclusions to which no response is required.

100.    Defendants lack information or knowledge sufficient to form a belief, and therefore deny, the allegation concerning whether "Defendants, their agents, employees, and predecessors and successors in office have acted and will continue to act on grounds generally applicable to the class," because Defendants do not understand what Plaintiffs mean by this allegation.  Alternatively, Defendants deny this allegation.

Defendants lack information or knowledge sufficient to form a belief concerning whether, as a factual matter, Plaintiffs will "vigorously represent the interests of unnamed class members."

The remaining statements in allegation 100 are legal conclusions to which no response is required.

101.    Defendants admit that Plaintiffs are represented by lawyers associated with non-profit public interest law firms and an international law firm, some of whom are or were involved in *Flores v. Whitaker*.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining statements in allegation 101, and therefore deny them.

63

VI.

102.   Defendants admit the allegations in the second and third sentences of paragraph 102 only to the extent supported by the sources cited, which are the best evidence of their contents, but otherwise deny the allegations to the extent not so supported.

Defendants admit that it is sometimes true that children held in government custody apart from their primary caregivers for long periods suffer profound and long-lasting injury.  Defendants deny that this is always the case.

Defendants admit that when a child has experienced trauma, a primary factor in recovering can be reunification with a parent or other trusted adult.

Defendants admit that without the presence of trusted caregivers, children are sometimes unable to cope with the psychological trauma and stress associated with custody.

103.   The allegations in paragraph 103 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants admit these allegations only to the extent supported by the authority cited, which is the best evidence of its contents, but otherwise deny the allegations to the extent not so supported.

104.   The allegations in paragraph 104 are legal conclusions to which no response is required.

64

105.    The allegations in paragraph 105 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants admit these allegations to the extent supported by the authorities cited, which is the best evidence of their contents.

106.    The allegations in paragraph 106 are legal conclusions to which no response is required.

107.    The allegations in paragraph 107 are legal conclusions to which no response is required.

108.    Deny.

109.    Defendants admit that the ORR Policy Guide, Children Entering the United States Unaccompanied, and available on the ORR webpage at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied, is issued without notice and comment rulemaking and does not appear in the Federal Register.   Defendants admit that that not all potential custodians will receive a formal hearing to challenge a denial, and that the formal appeal procedures to the Assistant Secretary for Children and Families applies with respect to parents and legal guardians.  Defendants admit that there is no absolute time limit to make the determination as to whether a potential custodian is suitable, as each case will differ based on its unique facts, but aver that release procedures contain explicit timeframes for parts of the release process.

65

ANSWER TO FIRST AMENDED COMPLAINT

As to the allegation that "ORR did not involve a neutral decision maker" in 109(d), the phrase "neutral decision maker" is a legal conclusion to which no response is required.  To the extent a response may be deemed required, Defendants deny the implication that the decision makers exercised a lack of neutrality, and admit that at the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications.  Defendants deny the remainder of the allegations of this paragraph.

110.   The allegations in paragraph 110 are legal conclusions to which no response is required.

111.   The phrase "a neutral and detached decisionmaker under defined and consistent legal standards" is a legal conclusion to which no response is required; to the extent a response may be deemed required, Defendants deny the implication that the decision makers exercised a lack of neutrality and deny that the decision makers did not follow "consistent legal standards."  The allegations concerning whether ORR provides "the right to" various procedures are legal conclusions to which no response is required.  Defendants admit that ORR provides for a formal appeals process before the Assistant Secretary when the denied sponsor is a parent or legal guardian, but does not provide the same formal appeal process for non-parental/guardian potential sponsors, where among other things witnesses can be

66

examined, evidence presented, and a neutral decisionmaker issues a written

decision.  Defendants admit that ORR does not appoint and fund counsel or

guardians ad litem for children in custody for such hearings, but aver that Child

Advocates are appointed in some cases to submit independent recommendations to

ORR, based on children's best interests.  Defendants otherwise deny the

allegations of this paragraph.

112.   Defendants deny the allegations in this paragraph.

113.   Defendants deny the allegations in this paragraph.

114.   Defendants deny the allegations in this paragraph.

115.   The allegations in paragraph 115 are legal conclusions to which no

response is required; to the extent a response may be deemed required, Defendants

deny them.

116.   Defendants deny the allegations in the second sentence of paragraph

116.  The remaining allegations in paragraph 116 are legal conclusions to which no

response is required; to the extent a response may be deemed required, Defendants

deny them.

117.   The allegations in paragraph 117 are legal conclusions to which no

response is required; to the extent a response may be deemed required, Defendants

admit these allegations to the extent supported by the authority cited, which is the

67

best evidence of its contents, but deny the allegations to the extent the cited

authority does not support such allegations.

118.   The allegations in paragraph 118 are legal conclusions to which no

response is required; to the extent a response may be deemed required, Defendants

admit these allegations to the extent supported by the authority cited, which is the

best evidence of its contents.

119.   The allegations in paragraph 119 are legal conclusions to which no

response is required; to the extent a response may be deemed required, Defendants

admit these allegations to the extent supported by the authority cited, which is the

best evidence of its contents, but deny the allegations to the extent the cited

authority does not support such allegations.

120.   The allegation that "federal law . . . recognizes that children and

communities are better off when children are not needlessly incarcerated" is a legal

conclusion to which no response is required; to the extent a response may be

deemed required, Defendants lack information to admit or deny this allegation as

no federal law is cited.

Defendants admit that as a matter of policy, it is desirable to release

unaccompanied alien children to the care of qualified sponsors as quickly as

possible whenever that can be done safely and in the best interests of the child.

ANSWER TO FIRST AMENDED COMPLAINT

Defendants deny the allegation that ORR incarcerates children, or that it does so "needlessly."

As to the allegation that "a vast body of research has established that detaining children interferes with healthy development, exposes youth to abuse, undermines educational attainment, makes children with mental health needs worse off, and puts children at greater risk of self-harm," and that "[r]esearch has demonstrated that incarceration also exacerbates pre-existing trauma," Defendants lack information to admit or deny these allegations, as Plaintiffs fail to cite to any such research.

Defendants deny the allegations in the third sentence of paragraph 120 for lack of knowledge or information sufficient to form a belief as to their truth.

121.   Defendants deny the allegations in the first sentence of paragraph 121 for lack of knowledge or information sufficient to form a belief as to their truth.

Defendants admit that, by definition, ORR often places children with "the greatest mental health needs" in RTCs, as such children have been determined by a licensed psychiatrist or psychologist to pose a risk of harm to self or others.  To be placed in an RTC under ORR policy, a licensed psychologist or psychiatrist must also determine that the child has not shown reasonable progress in the alleviation of his/her symptoms after time in outpatient treatment, and that the child continues

69

to present a continued and real risk of harm to self or others in the community

despite the implantation of short-term clinical interventions.

Defendants admit that in the course of fulfilling its statutory mandate, ORR

places children committed to its legal custody in grantee care providers, and that

such care providers are chosen to best meet children's needs, and that nevertheless,

some children do find the experience to be difficult.  Defendants deny that

placement in ORR grantee care providers is "profoundly injurious," and the

characterization that ORR unnecessarily prolongs federal legal custody.

Defendants admit that in some instances, grantee care provider clinical staff

determine that unaccompanied alien children should be placed in psychiatric

hospitals for an emergency evaluation or an RTC for longer term, intensive mental

health services when children's serious mental health needs warrant it.  Defendants

deny all remaining allegations of this paragraph.

122.   The allegations in paragraph 122 are legal conclusions to which no

response is required.

123.   Defendants admit that criteria for placement are included in the ORR

Guide, Children Entering the United States Unaccompanied, available at

www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied,

and that such Guide is not in the Code of Federal Regulations, and was not issued

with formal notice and comment rulemaking.  Defendants otherwise deny all other

70

factual allegations of this paragraph.  The remaining allegations in paragraph 123 are legal conclusions to which no response is required.

124.   Defendants admit that sections 1.1, 1.2, 1.3, and 1.4 of the ORR Policy Guide contain policies regarding the standards of how unaccompanied alien children are placed in different types of grantee care providers, and how they may administratively challenge a placement, that section 2.9 of the Policy Guide also explains "bond hearings" for unaccompanied alien children, and that the *Flores* Settlement Agreement at Paragraph 24 contains provisions for unaccompanied alien children to seek judicial review of certain placements (including those in an RTC, staff-secure, or secure grantee care provider), in which the standard of review for ORR's exercise of discretion shall be the abuse of discretion standard of review.  Defendants otherwise deny all other allegations of this paragraph.

125.   Defendants admit that ORR may sometimes place unaccompanied alien children in RTCs, secure facilities, and staff-secure grantee care providers, when such placements are the least restrictive setting appropriate for the particular child subject to considerations such as danger to self, danger to others, and escape risk, and that one ground for placing a child in an RTC, secure or staff-secure shelter may be that the child poses a danger to him- or herself or others, or is an escape risk (in the case of staff-secure grantee care providers).

71

Defendants deny that ORR considers whether an unaccompanied alien child is at "risk of flight" (i.e., at risk of not appearing for his or her immigration proceedings) in placement determinations, and that ORR regularly places children in secure or staff-secure care providers contrary to immigration judges' determinations.

The remaining allegations in paragraph 125 are legal conclusions to which no response is required.

126.   Defendants lack information or knowledge sufficient to form a belief as to the truth of Plaintiffs' allegations concerning what they believe to be the law in all fifty states and their subdivisions.  To the extent paragraph 126 makes allegations about the contents of the law, Defendants are not required to respond.

127.   The allegations in paragraph 127 are legal conclusions to which no response is required.  To the extent a response may be deemed required, Defendants deny them.  Regardless, Defendants do not concede that the premises of any of Plaintiffs' allegations are correct.

128.   Defendants deny all allegations of this paragraph, except to admit that ORR sometimes transfers an unaccompanied alien child from a secure or staff-secure grantee care provider to a less secure, non-restrictive care provider.

72

129.    Defendants deny the allegations of this paragraph.  The policy Plaintiffs refer to does not currently exist.  The Director review policy was enjoined as of 6/27/18.

Defendants deny that this policy prolongs children's detention for weeks or months notwithstanding that parents or other reputable custodians are available to care for them.

130.    Defendants deny the allegation that as a matter of policy and practice, ORR refuses to release children whom it has placed in RTCs until and unless RTC medical personnel declare the child mentally fit.

Defendants deny the allegation that ORR affords children no hearing or other meaningful procedural recourse when RTC medical personnel determine that release is not medically appropriate.

The remaining allegations in paragraph 130 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants denies them.

131.    Defendants deny the allegations contained in the first and second sentences of this paragraph, except to aver that based on all the circumstances of a child's and sponsor's situation (including the child's mental health condition, the sponsor's income, and the sponsor's medical condition), ORR may conclude that it cannot make the statutorily required finding that the sponsor is capable of caring

for the child's physical and mental well-being, and to admit that ORR requires fingerprinting of sponsors, and in some cases, household members, in accordance with its statutory mandate, and that fingerprint results can be viewed as expired, if the results were issued more than a certain time period prior.

The remaining allegations in paragraph 131 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants denies them.

132.   The allegations in paragraph 132 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants admit these allegations to the extent supported by the authority cited, which is the best evidence of its contents, but otherwise deny the allegations to the extent not supported by the authority cited.

133.   The allegations in paragraph 133 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants deny them.

134.   For lack knowledge or information sufficient to form a belief as to what Plaintiffs believe, Defendants deny the allegation concerning what Plaintiffs believe.  The remaining allegations in paragraph 134 are legal conclusions to which no response is required.

74

135.   The allegations in paragraph 135 are legal conclusions to which no response is required.

136.   The allegations in paragraph 136 are legal conclusions to which no response is required.

137.   The allegations in paragraph 137 are legal conclusions to which no response is required.

138.   Defendants admit that psychotropic medications are powerful drugs that act on the central nervous system and can affect cognition, emotions, and behavior.

Defendants admit that few psychotropic medications have been approved by the FDA as safe and effective to treat children.  However, Defendants aver that it is common practice for psychiatrists to prescribe these medications to juveniles for off-label reasons.

Defendants admit that careful oversight and monitoring is generally considered to be appropriate when children are given psychotropic medications.

The remaining allegations in paragraph 138 are statements of Plaintiffs' opinion; they are not facts which can be admitted or denied.  Defendants aver, however, that it is generally considered to be appropriate to prescribe psychotropic medications only in the usual course of professional medical practice and that

ANSWER TO FIRST AMENDED COMPLAINT

psychotropic medications should not be used as "chemical straitjackets to control behavior."

139.   Defendants deny the characterization that serious, long-lasting adverse effects are "common" for individuals given psychotropic medications.  Defendants deny that the full risks of giving psychotropic medications to children are not well understood.

Defendants admit that psychotropic medications may sometimes cause rare, serious side effects in adults which are irreversible.  Defendants admit that when psychotropic medications are prescribed to and taken by adults, rare, uncommon side effects may include psychosis, seizures, movement disorders, suicidal ideation, aggression, extreme weight gain, and organ damage.

Defendants admit that increasing the number of psychotropic drugs children take concurrently increases the likelihood of adverse reactions and long-term side effects.

Defendants admit that when children are prescribed psychotropic medications, careful monitoring is generally considered to be appropriate.

140.   Defendants admit that at the time of the First Amended Complaint, the medical authorization of the Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications, but otherwise deny the allegations in this paragraph.

ANSWER TO FIRST AMENDED COMPLAINT

141.   Defendants deny that as a matter of policy and practice, ORR fails to
provide any substantial procedural safeguards against unnecessary or unauthorized
administration of psychotropic drugs to children in its legal custody.

The remaining allegations in paragraph 141 are statements of Plaintiffs'
opinion; they are not facts which can be admitted or denied.  Defendants aver,
however, that it is generally considered to be appropriate to prescribe psychotropic
medications only in the usual course of professional medical practice.

142.   The allegation in paragraph 142 (referring to the allegation in
paragraph 141) that ORR did not include "a neutral decisionmaker's approval of
the initial decision to administer psychotropics to a child" includes the phrase
"neutral decisionmaker," a legal conclusion to which no response is required.  To
the extent a response may be deemed required, Defendants deny the implication
that the decision makers exercised a lack of neutrality, and admit that at the time of
the First Amended Complaint, the medical authorization of the ORR Director, as
well as the clinical judgment of treating clinicians, was considered sufficient
documentation and protocol for prescribing medications.

Defendants admit that publicly available internet sources include
information that one of the psychiatrists who currently prescribes psychotropic
medications to children at ORR's Shiloh RTC has received payments or perhaps

ANSWER TO FIRST AMENDED COMPLAINT

meals from drug companies that manufacture psychotropic drugs. Defendants otherwise deny the allegations in this paragraph.

143. The allegations in paragraph 143 are legal conclusions to which no response is required; to the extent a response may be deemed required, Defendants admit these allegations to the extent supported by the authority cited, which is the best evidence of its contents, but deny the allegations to the extent they are not supported by the authority cited.

144. The allegations in paragraph 144 are legal conclusions to which no response is required.

145. Defendants admit that HHS contracts with the Vera Institute of Justice ("Vera"), a non-profit organization, to coordinate the delivery of free legal services to unaccompanied alien children from non-contiguous countries who are or have been in ORR's legal custody.

Defendants admit that Vera subcontracts with non-profit legal aid providers to counsel and represent such children in applying for affirmative immigration benefits, such as asylum or Special Immigrant Juvenile Status, and in asserting other defenses against removal.

The remaining allegations in paragraph 145 are legal conclusions to which no response is required.

78

ANSWER TO FIRST AMENDED COMPLAINT

146.    For lack of information or knowledge sufficient to form a belief as to
its truth, Defendants deny the allegations in the first sentence of paragraph 146.

Defendants admit that Plaintiffs and the members of the proposed class are
almost uniformly indigent, and speak little or no English, but deny the remaining
of the factual allegations in the second sentence of this paragraph.

The remaining allegations in paragraph 146 are legal conclusions to which
no response is required.

147.    Defendants aver that the contracts ORR maintains with Vera speak for
themselves as to the legal services provided, and deny that ORR has no eligibility
standards for providing Vera funded legal services to children in ORR placements.
Defendants otherwise deny the allegations of this paragraph.

148.    Defendants deny that as a matter of policy and practice, ORR
routinely bars VIJ-funded legal services providers from representing
unaccompanied alien children from non-contiguous countries in legal proceedings
involving ORR's legal custody, release, placement, and medication decisions.

149.    The allegations in paragraph 149 are legal conclusions to which no
response is required.

150.    The allegations in the first sentence of this paragraph regarding a
"complex and foreign adversarial legal system" are Plaintiffs' opinion, not factual
allegations which can be admitted or denied.  The last sentence of this paragraph is

ANSWER TO FIRST AMENDED COMPLAINT

1   a statement of Plaintiffs' opinion; it is not a fact which can be admitted or denied.

2   The remaining allegations in paragraph 150 are legal conclusions to which no

3

4   response is required.  To the extent a further response to the allegations in this

5   paragraph may be deemed required, Defendants deny the allegations of this

6

7   paragraph.

8         151.   Defendants deny that ORR blocked Plaintiffs and those similarly

9   situated from receiving assistance in legal matters and proceedings involving

10

11   ORR's legal custody, placement, medication, and release decisions.  The

12   remaining allegations in paragraph 151 are legal conclusions to which no response

13

14   is required; to the extent a response may be deemed required, defendants deny the

15   allegations of this paragraph.

16

17         152.   Defendants deny that ORR blocks Vera funded legal services

18   providers from representing Plaintiffs and those similarly situated children in legal

19   proceedings involving ORR's legal custody, release, placement, or medication

20

21   decisions, and denies that all such day-to-day decisions are "legal proceedings."

22         The remaining allegations in paragraph 152 are legal conclusions to which

23

24   no response is required; to the extent a response may be deemed required,

25   Defendants deny them.

26

27

28

ANSWER TO FIRST AMENDED COMPLAINT

VII.

153. The legal arguments and conclusions in Paragraph 153 require no response.  The statute speaks for itself and requires no response.

154. The legal arguments and conclusions in Paragraph 154 require no response.  The regulation speaks for itself and requires no response.  To the extent a response is required, Defendants lack information as to whether each Plaintiff is a qualified individual within the regulation, but admit that at least some named Plaintiffs would be considered "qualified individuals."

155. The legal arguments and conclusions in Paragraph 155 require no response.  The statute and regulations speak for themselves and require no response.

156. The legal arguments and conclusions in Paragraph 156 require no response.  The regulations speak for themselves and requires no response.

157. The legal arguments and conclusions in Paragraph 157 require no response.  The regulation speaks for itself and requires no response.

158. The legal arguments and conclusions in Paragraph 158 require no response; to the extent a response is required, Defendants deny the allegations of this paragraph.

159. Defendants admit that as of the time of the First Amended Complaint, ORR has awarded grants to two RTCs in the United States, and that

81

unaccompanied alien children with significant mental health needs may be placed in RTCs as the least restrictive, and thus most appropriate, placement.  Otherwise, the legal arguments and conclusions in Paragraph 159 require no response.  To the extent that a response is required, Defendants deny the remaining allegations of this paragraph.

160. The legal arguments and conclusions in Paragraph 160 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

161. The legal arguments and conclusions in Paragraph 161 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

162. The legal arguments and conclusions in Paragraph 162 require no response.  The statute speaks for itself and requires no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

163. The legal arguments and conclusions in Paragraph 163 require no response.  The statute speaks for itself and requires no response

164. The legal arguments and conclusions in Paragraph 164 require no response.  The regulation speaks for itself and requires no response.  To the extent a response is required, Defendants lack information as to whether each Plaintiff is

ANSWER TO FIRST AMENDED COMPLAINT

a qualified individual within the regulation, but admit that at least some named Plaintiffs would be considered "qualified individuals."

165. The legal arguments and conclusions in Paragraph 165 require no response.  The statute and regulations speak for themselves and require no response.

166. The legal arguments and conclusions in Paragraph 166 require no response.  The regulations speak for themselves and requires no response.

167. The legal arguments and conclusions in Paragraph 167 require no response.  The regulation speaks for itself and requires no response.

168. The legal arguments and conclusions in Paragraph 168 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

169. The legal arguments and conclusions in Paragraph 169 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

170. The legal arguments and conclusions in Paragraph 170 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph, except to admit that unaccompanied alien children with significant mental health needs may be placed in RTCs as the most appropriate placement.

ANSWER TO FIRST AMENDED COMPLAINT

171. The legal arguments and conclusions in Paragraph 171 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph and, in particular, the causal effect implied by Plaintiffs.

172. The legal arguments and conclusions in Paragraph 172 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph and note that the policy Plaintiffs reference does not currently exist.

173. The legal arguments and conclusions in Paragraph 173 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph including the usage of the term, "mentally fit."

174. The legal arguments and conclusions in Paragraph 174 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

175. The legal arguments and conclusions in Paragraph 175 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

176. The legal arguments and conclusions in Paragraph 176 require no response.  The statute speaks for itself and requires no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

ANSWER TO FIRST AMENDED COMPLAINT

177. The legal arguments and conclusions in Paragraph 177 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

VIII.

IRREPARABLE INJURY

178. The legal arguments and conclusions in Paragraph 178 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

IX.

FIRST CLAIM FOR RELIEF

[DENIAL OF DUE PROCESS: DETERMINING CUSTODIANS' FITNESS]

179. Paragraph 179 requires no response as it does not contain any factual allegations.  To the extent a response is required, Defendants incorporate all responses to paragraphs 1-178.

180. The legal arguments and conclusions in Paragraph 180 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

181. The legal arguments and conclusions in Paragraph 181 require no response.  The Flores Settlement, statutes, the Due Process Clause of the Fifth Amendment of the United States Constitution, and the Freedom of Association

85

Clause of the First Amendment of the United States Constitution speak for themselves and require no response.  Further, insofar as this Amended Complaint seeks to enforce the Flores Agreement, those claims have been dismissed.   See ECF No. 126 at 27.  To the extent a response is required, Defendants deny the allegations of this paragraph.

## X.

## SECOND CLAIM FOR RELIEF

## [DENIAL OF DUE PROCESS: RESTRICTIVE PLACEMENT]

182. Paragraph 182 does not require any response as it does not contain any factual allegations.  To the extent a response is required, Defendants incorporate all responses to paragraphs 1-178.

183. The legal arguments and conclusions in Paragraph 183 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

184. The legal arguments and conclusions in Paragraph 184 require no response.  The Flores Settlement, statutes, and the Due Process Clause of the Fifth Amendment to the United States Constitution speak for themselves and require no response.  Further, insofar as this Amended Complaint seeks to enforce the Flores Agreement, those claims have been dismissed.   See ECF No. 126 at 27.  To the extent a response is required, Defendants deny the allegations of this paragraph.

86

XI.

THIRD CLAIM FOR RELIEF

[UNLAWFUL ADMINISTRATION OF PSYCHOTROPIC DRUGS]

185. Paragraph 185 does not require any response as it does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations of this paragraph.

186. The legal arguments and conclusions in Paragraph 186 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

187. The legal arguments and conclusions in Paragraph 187 require no response.  The Flores Settlement, statutes, and the Due Process Clause of the Fifth Amendment to the United States Constitution speak for themselves and require no response.  Further, insofar as this Amended Complaint seeks to enforce the Flores Agreement, those claims have been dismissed.   See ECF No. 126 at 27.  To the extent a response is required, Defendants deny the allegations of this paragraph.

# XII.

## FOURTH CLAIM FOR RELIEF

## [BLOCKING LEGAL ASSISTANCE IN MATTERS RELATING TO CUSTODY, MEDICATION, AND RELEASE]

188. Paragraph 188 does not require any response as it does not contain any factual allegations.  To the extent a response is required, Defendants incorporate all response to paragraphs 1-178.

189. The legal arguments and conclusions in Paragraph 189 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

190. The legal arguments and conclusions in Paragraph 190 require no response.  The Flores Settlement, statutes, regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution speak for themselves and require no response.  Further, insofar as this Amended Complaint seeks to enforce the Flores Agreement, those claims have been dismissed.   See ECF No. 126 at 27. To the extent a response is required, Defendants deny the allegations of this paragraph.

## XIII.

## FIFTH CLAIM FOR RELIEF

## [DISCRIMINATION ON THE BASIS OF DISABILITY]

191. Paragraph 191 does not require any response as it does not contain any factual allegations.  To the extent a response is required, Defendants incorporate all responses to paragraphs 1-178.

192. The legal arguments and conclusions in Paragraph 192 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

193. The legal arguments and conclusions in Paragraph 193 require no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

194. The legal arguments and conclusions in Paragraph 194 require no response.  The statute speaks for itself and requires no response.  To the extent a response is required, Defendants deny the allegations of this paragraph.

## XIV.

## PRAYER FOR RELIEF

Plaintiffs' prayer for relief requires no response.  To the extent a response is required, Defendants deny that Plaintiffs are entitled to any relief, and urge that this First Amended Complaint be dismissed without such.

89

All allegations that have not been specifically admitted are hereby denied.

In addition, Defendants assert the following affirmative defenses:

1.  Res Judicata

2.  Estoppel

3.  Waiver

WHEREFORE, Defendants respectfully request that the Court enter judgment dismissing the Plaintiffs' action in its entirety with prejudice; order that the Plaintiffs take nothing by way of their First Amended Complaint; and order such other and further relief as the Court deems just and proper.

///

///

///

90

ANSWER TO FIRST AMENDED COMPLAINT

1                                     Respectfully submitted,

2

3                                     JOSEPH H. HUNT
                                    Assistant Attorney General

4                                     Civil Division
                                    United States Department of Justice

5                                     ERNESTO H. MOLINA, JR.

6                                     Deputy Director
                                    Office of Immigration Litigation

7                                     BRIENA L. STRIPPOLI

8                                     BENJAMIN MARK MOSS

9                                     W. DANIEL SHIEH
                                    Senior Litigation Counsel

10                                     ANDREW B. INSENGA

11                                     SHERRY D. SOANES

12                                     MARINA C. STEVENSON
                                    Trial Attorneys

13

14                                    */s/ Benjamin Mark Moss*
                                    BENJAMIN MARK MOSS

15                                     Senior Litigation Counsel

16                                     Office of Immigration Litigation
                                    Civil Division

17                                     U.S. Department of Justice

18                                     P.O. Box 878

19                                     Ben Franklin Station
                                    Washington, D.C. 20044

20                                     Telephone: (202) 307-8675

21                                     Facsimile: (202) 307-8781
                                    benjamin.m.moss2@usdoj.gov

22

23 Dated:  January 9, 2019           Attorneys for DEFENDANTS

24

25

26

27

28

91

# <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 9, 2019, I caused the foregoing to be filed via the

CM/ECF system, which caused a copy to be served on Plaintiffs' record counsel.


Respectfully submitted,
       */s/  Benjamin Mark Moss*
BENJAMIN MARK MOSS
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-8675
Facsimile: (202) 307-8781
benjamin.m.moss2@usdoj.gov

92