UNITED STATES DISTRICT COURT

CENTRA DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al.,<br><br>         Plaintiffs,<br><br>    v.<br><br>ALEX AZAR, et al.,<br><br>         Defendants. | Case No.  2:18-CV-05741 DMG PLA<br><br>**STIPULATED PLAN REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br>Complaint Filed: June 29, 2018<br>Discovery Cutoff Date: Jan. 31, 2020<br>Pretrial Conference Date: June 9, 2020<br>Trial Date: July 28, 2020<br>Judge: Hon. Dolly M. Gee |

## I. PURPOSES AND LIMITATIONS

1. On September 7, 2018, Plaintiffs filed a First Amended Complaint against Defendants (Plaintiffs collectively with Defendants, the "Parties"). The Parties are presently conducting discovery, and respectfully request that the Court enter an Electronic Discovery Plan regarding the collection and production of Electronic Stored Information ("ESI").

2. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure.

3. This Order may be modified for good cause. The parties shall attempt to resolve any proposed modifications in good faith, and must begin a meet and confer process under Local Rule 37-1, *et*. *seq*., or under procedures otherwise laid out by the Court. If the Parties cannot resolve this dispute, they may proceed under the Federal and Local Rules of Civil Procedure addressing discovery disputes.

4. Costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations. Additionally, a party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will also be considered in cost-shifting determinations.

5. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

## II. SEQUENCE OF ESI DISCOVERY

The parties agree that discovery of ESI shall proceed in the following sequenced fashion:

To further the application of the proportionality standard set forth in Fed. R. Civ. P. 26(b)((1), requests for production of ESI and related responses should be

reasonably targeted, clear, and as specific as practicable. After receiving requests for document production, the Producing Party shall conduct a reasonable and good faith search for responsive documents and ESI as narrowed or enlarged by the Parties' future negotiations concerning search terms and custodians. A Producing Party will disclose to a Requesting Party the existence of those sources of ESI that it believes contain responsive information and that are not reasonably accessible, and, to the extent necessary, the Parties will meet and confer concerning such information that has been identified as not reasonably accessible. A Producing Party shall not have an obligation initially to search or produce from sources of ESI that it identifies as not reasonably accessible because of undue burden or cost and no such obligation will exist unless and until a showing of good cause is made by the Requesting Party that such searches and production are necessary pursuant to the Federal Rules of Evidence.

1. Search Protocol

The parties agree to meet and confer on search terms to locate and identify potentially responsive ESI that will be reviewed for possible production. Further, the parties agree to also discuss the potential sources that the search terms shall be run across during any meet and confer.

2. Rolling Production

A Producing Party shall have 30-days from agreement on search terms and sources to begin producing responsive documents, not withheld subject to objections or privilege, in accordance with this agreement. Such rolling production will be completed within 120-days of agreement on search terms and sources.

3. Preservation

The parties have or will fulfill their duty to preserve information which is potentially relevant to the claims and defenses in this case.

4. Standard for Addressing Privilege

   a. The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any

logging requirements and whether alternatives to document-by-document logs can be exchanged. A Producing Party shall produce such privilege logs within one week of each document production.

        b.     With respect to privileged or attorney work product information generated after the filing of the complaint, including activities undertaken in response to this litigation, that information is protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), and the parties are not required to include any such information in privilege logs.

        c.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

        d.     Nothing in this protocol nullifies or modifies the parties' agreement concerning the inadvertent disclosure of privileged information as agreed to by the parties in their approved Stipulated Order pursuant to Federal Rule of Evidence 502(d).  ECF Nos. 158, 159.

## III.  ESI FORMAT

    1.     For each ESI file produced, the parties agree to include the extracted full text (or the OCR data, if extracted full text is unavailable), subject to the normal capabilities of each party's document management and production software.

    2.     The parties will produce electronic documents in the following format:

        a.     All ESI rendered to images or paper documents scanned to images will be produced as single-page TIFFs (if black and white) or single-page JPEGs (if color). TIFFs should be 300 dpi, CCITT Group IV (2D Compression) images. JPEGS should be 300 dpi that are imaged in the same resolution as the source file. TIFF image files should be segmented into directories not to exceed 1,000 files per folder. Each TIFF will have the production number endorsed in the lower right hand corner of the document and any confidentiality designation endorsed on the lower left corner of the document. The Parties agree to respond in good faith to reasonable and specific

1  requests for the production of higher resolution or color images.

2        b.    The TIFF documents should be produced in a manner consistent
3  with the way in which the original document was stored in the ordinary course of
4  business, *i.e.*, in a manner that does not break up document families (such as email
5  and attachments), and the original ESI shall be preserved.

6        c.    Where production in TIFF format has rendered the document
7  unreadable, or where TIFF Rendering may not display all data, the Producing Party
8  shall produce the document in its original, native format, to the extent practical (e.g.,
9  certain spreadsheets, presentation files, and multimedia). Documents with privileged
10 information, however, will not be produced in native format, except spreadsheets,
11 which shall be provided as redacted natives with relevant metadata intact. Such native
12 redaction is possible through use of commonly available tools like Blackout. The
13 parties shall confer in good faith to identify those documents that require production
14 in native format. If a document is produced in native format, a corresponding
15 placeholder TIFF image will be added to the production set, with the text indicating
16 "FILE PRODUCED NATIVELY" displayed on the page, plus any endorsements
17 described above.

18       d.    Bates numbers should be endorsed on the face of the image.

19       e.    The parties will work in good faith to produce the following
20 metadata fields as part of one data load file (.dat) per production, to the extent such
21 metadata exists (and is relevant to the file type at issue).

| Field Name | Description |
| --- | --- |
| BEGBATES | Unique ID (Bates Number) listed on the first page of a document |
| ENDBATES | Unique ID (Bates Number) listed on the last page of a document |
| BEGATTACH | Unique ID (Bates number) for the first page of the Parent-Child Relationships for each document within the family. |

| Field Name | Description |
|---|---|
| ENDATTACH | Unique ID (Bates number) for the last page of the Parent-Child Relationships for each document within the family. |
| CUSTODIAN | The name of the primary owner of the file. This field should be populated as Last Name, First Name |
| ATTACH_COUNT | Number of files attached to a parent document. |
| AUTHOR | Name of the creator of an electronic document, where available |
| FROM | Display name of the sender of an email |
| TO | Email Recipient |
| CC | Email CC |
| BCC | Email BCC |
| SUBJECT | Email Subject line |
| SENT DATETIME | Email sent date and time |
| FILEEXTENSION | File extension |
| FILENAME | Filename of electronic document |
| LASTMODIFY DATETIME | Date and time electronic file was last modified or edited |
| LAST_EDIT_BY | Identity of person/user who last modified or edited an electronic file, where available |
| CONFIDENTIALITY | Confidentiality designation for each document, if any |
| NATIVE_PATH | Relative path to native file in production volume |
| TEXT_PATH | Relative path to document-level text files in production volume |
| MD5HASH | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |
| PARENTDATE | For parent emails, this field will be populated with the DateSent. |

| Field Name | Description |
|---|---|
|  | For e-attachments, this field will be populated with the DateSent of their parent email.<br><br>For other electronic documents, this field will be populated with the DateLastModified. |
| PARENTID | Unique ID (Bates number) of the parent document within a document family. |
| REDACTED | Indicates whether redactions have been applied to the document |

3. File Naming Conventions

a. Each placeholder image file shall be named with a unique Bates Number followed by the extension ".TIF".

b. Documents produced in Native format shall have their corresponding confidentiality designation referenced in the CONFIDENTIALITY field.

4. Document Unitization

If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.

5. Production of Spreadsheets and Presentation Files.

All spreadsheet and presentation files (*e.g.* Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique

Bates number. *See* Paragraph 13. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. Spreadsheets and presentation files that require redactions shall be produced in accordance to the specifications in Paragraph 7 below.

6. Duplicates.

Where a party has more than one identical copy of an electronic document (i.e., the documents have the same hash values), the Producing Party need only produce a single copy of that document, provided that the CUSTODIANS field contains the names of the custodians of the de-duplicated documents. Deduplication scope should occur globally and on a family-level. In other words, identical families shall be deduplicated across all custodians.

7. Redacted Documents.

Documents that contain redactions will be produced in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Paragraph 2(a)(iii) to the extent that such metadata fields are not part of the redaction, except spreadsheets, which shall be provided as redacted natives with relevant metadata intact, as described in Paragraph 2(c). Documents that require redaction will be noted as "Redacted" in the DAT file.  The Producing Party may withhold certain metadata fields for all redacted documents, and the Requesting Party may thereafter request that the Producing Party supplement the metadata fields in instances in which the redaction(s) appear over broad.

8. Bates Numbering.

Each TIFF/JPEG image shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image. No other legend or stamp will be placed on the document image other than a confidentiality legend where applicable.

9. Production Format.

A Producing Party may produce documents that it produces in an electronic form via Secure File Transfer or via encrypted CD-ROM, DVD, external hard drive,

or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Information that shall be identified on the physical Production Media shall include: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter.

10. Databases.

The parties shall meet and confer about the appropriate format for databases, should they need to be produced.

11. Production of Other Electronic Documents.

The parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing.

Dated: June 25, 2019

CARLOS HOLGUIN
Center for Human Rights &
Constitutional Law

HOLLY COOPER
CARTER WHITE
University of California Davis School of Law

LEECIA WELCH
NEHA DESAI
FREYA PITTS
CRYSTAL ADAMS
National Center for Youth Law

SUMMER WYNN
MARY KATHRYN KELLEY
JON CIESLAK
MEGAN DONOHUE
Cooley LLP

By: */s/ Carlos Holguin* (with consent)
Carlos Holguin (90754)
Attorneys for Plaintiffs
crholguin@centerforhumanrights.org

Dated:  June 25, 2019

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
ERNESTO MOLINA
JEFFREY ROBINS
Deputy Directors
BENJAMIN MARK MOSS
W. DANIEL SHIEH
Senior Litigation Counsel
MARINA STEVENSON
JONATHAN K. ROSS
YAMILETH G. DAVILA
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Department of Justice

By: */s/ Jeffrey S. Robins*
Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
United States Department of Justice
Attorneys for Official-Capacity Defendants

Dated:  June 25, 2019

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

By: */s/ David Pinchas* (with consent)
David Pinchas
Assistant United States Attorney
Attorneys for Federal Defendant E. Scott Lloyd

## CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I certify that all of the above signatories concur in this filing's content and have authorized the filing.

Dated:  June 25, 2019

*/s/ Jeffrey S. Robins*
Jeffrey S. Robins