UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

Case No.: **CV 18-5741-DMG (PLAx)**                                               Date: **August 1, 2019**

Title:   **Lucas R., et al. v. Alex Azar, et al.**

PRESENT:  THE HONORABLE    **PAUL L. ABRAMS**
                                    UNITED STATES MAGISTRATE JUDGE

| **Christianna Howard** | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**                **ATTORNEYS PRESENT FOR DEFENDANT:**

**PROCEEDINGS:**       (IN CHAMBERS)

The Court has reviewed the parties' submissions to chambers concerning their discovery dispute over whether the individual named plaintiffs in this action should be required to produce documents to defendants primarily relating to issues arising following their release from the custody of the Office of Refugee Resettlement ("ORR"). Those issues include medical records, appearances at immigration hearings, prescribed psychotropic medications, school and work records, physical residences, criminal records, social services received, and efforts by sponsors to become legal guardians.

Defendants generally argue that these documents are relevant to the factors that ORR considers when deciding the release of unaccompanied alien children to potential sponsors, as ORR has an obligation to protect them from traffickers and others who may be seeking to victimize these children. As such, they contend that they are required to consider harm to the children upon release to a sponsor, and that the presence of harmful conditions post-release would amount to a defense to plaintiffs' claims that delayed release violated their rights. Defendants further assert that discovery regarding quality of life and care post-release would allow the Court to "weigh ORR's evaluation of potential sponsors against the conditions [unaccompanied alien children] actually experience post-release," and could refute plaintiffs' contentions that ORR "should implement more procedures to guard against erroneous liberty interest deprivations, and could, for instance, counter Plaintiffs' claims that release is inappropriately delayed." Such discovery, defendants assert, would "get[] to the heart" of plaintiffs' claims that "ORR custody is always worse than release to the proposed sponsor." According to defendants, as plaintiffs must show that a sponsor's custody is far preferable to ORR custody, evidence of post-release care is relevant, and such discovery would allow defendants to address plaintiffs' claims that ORR is not achieving its goal of "safely and speedily releas[ing] children to suitable sponsors consistent with the law."

Plaintiffs counter that this action "concerns children's entitlement to due process as to governmental decisions made **while in Defendants' custody**" (emphasis in original), and that they are not contending that any of the named plaintiffs were released to unsafe or unqualified custodians. Rather, plaintiffs do contend, in part, that the children were not afforded a meaningful opportunity to be heard within 30 days of ORR's refusal to release them to parents or other available custodians, which resulted in them remaining in detention too long. They further generally assert that ORR confines children in certain restrictive facilities "without affording them a meaningful or timely opportunity to be heard regarding the reasons for such placement"; prolongs detention on

the ground that a proposed custodian is unfit, without affording a meaningful or timely opportunity to be heard regarding fitness; places children in facilities knowing psychotropic medications will be administered without procedural safeguards, including informed consent or other lawful authorization; blocks lawyers from representing children in these ORR matters; and segregates children with perceived disabilities into secure facilities instead of integrating them into settings appropriate to their needs, which also increases the barriers to their release. (First Amended Complaint ("FAC"), ECF 81 at ¶ 4, ¶ 178). As such, plaintiffs submit that the sought-after post-release information is not relevant to the issues that form the claims in this litigation. They also assert that the requested information is "sensitive and private." Plaintiffs further contend that they are not claiming that release to custodians, even if the custodian is not properly vetted, is always preferable to custody. Instead, they claim that the children are entitled to "constitutionally required due process when determining whether and to whom they should be released and to ensure prompt placement in the least restrictive setting in their best interest."

The Court will examine the issues in this Motion using the standard set forth in Federal Rule of Civil Procedure 26 ("Rule 26"). Rule 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Discovery need not be admissible in evidence to be discoverable. Id. However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Finally, the Court is mindful of the imperative that the Federal Rules of Civil Procedure be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added); see also Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (a court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").

The relief sought by plaintiffs in their FAC includes the issuance of an injunction enjoining defendants from (1) denying plaintiffs due process in evaluating the fitness of parents and other available custodians; (2) denying plaintiffs due process in placing them in certain facilities; (3) administering psychotropic drugs to plaintiffs in non-exigent circumstances without lawful consent; (4) blocking plaintiffs from receiving legal assistance in matters involving ORR's decisions regarding custody, placement or release; and (5) unnecessarily placing plaintiffs in restrictive settings on the basis of disability, and delaying and/or obstructing release on the basis of disability. The only damages they seek are nominal damages against defendant Lloyd. Indeed, the gravamen of this action is that children must be released from custody "without unnecessary delay" as long as detention is not required to secure availability for removal or to protect safety; that ORR must promptly place children in the "least restrictive setting that is in the best interest of the child" once a determination is made that a proposed custodian is capable of providing for the child's well-being; and that the children are entitled to certain due process when detention is unreasonably prolonged or release is refused based on questions about the potential custodian. Plaintiffs' contention is that ORR policies and practices do not afford any sort of procedural protections against prolonged detention when a proposed guardian is found to be unfit (FAC, ¶ 109); that children are placed by ORR in restrictive facilities without notice or any meaningful opportunity to be heard or associated safeguards (FAC, ¶ 124); that ORR does not have any procedural safeguards in place to prevent the unnecessary or unauthorized administration of psychotropic medications to children (FAC, ¶ 141); that ORR is

blocking legal service providers from representing plaintiffs in proceedings involving custody, release, placement, or medication decisions (FAC, ¶ 152); and that ORR "warehous[es]" youth with disabilities in secure facilities "instead of providing them appropriate mental health services in the most integrated setting appropriate to their needs" (FAC, ¶ 162). The relief sought and these assertions do not appear to implicate circumstances or events after release, or require an evaluation of the issues that defendants seek to explore in the subject discovery requests.

However, plaintiffs also allege, in part, that children who are held in government custody and apart from their primary caregivers for long periods "suffer profound and long-lasting injury," which can affect the child's "short- and long-term health," and that a "primary factory in recovering from such trauma is reunification with a parent or other trusted adult" (FAC, ¶ 102); that the "[s]chooling children receive during detention is often substandard, which places them at serious disadvantage when they enter school after having been detained for substantial periods" (FAC, ¶ 120); and that ORR "erroneously . . . placed [children] in overly restrictive settings that are not in their best interests; . . . [and] administered psychotropic medications." (FAC, ¶ 114). And, as pointed out by defendants, plaintiffs themselves in pursuing discovery from defendants have argued that evidence of abuse suffered by class members while in ORR custody is relevant to their claims of harm they face as a result of prolonged detention "when they are not timely and appropriately released to custodians." The Court finds that these various allegations do to a certain extent implicate several post-release issues, such as any post-release manifestation of physical or mental health injuries the children may have suffered as a result of being detained without due process, whether the schooling received by the children while in custody is inferior to that received once released, and whether medications administered in custody were administered "erroneously," i.e., whether the child has also been administered such medications upon release. Discovery on certain of these issues, as set forth below, is thus relevant and proportional to the needs of the case. Further, the protective order currently in place will protect the privacy interests of plaintiffs, and serve to alleviate both any "regret" plaintiffs may have for offering accounts of their experiences while in ORR custody and any chilling effect on advocacy for migrant children's rights. The Court further concludes, however, that the sought-after discovery *not* being ordered herein (including whether the named plaintiffs appear for their immigration hearings; whether plaintiffs' parents or guardians have consented to representation by plaintiffs' counsel; recordings of conversations with ORR employees; addresses; and civil or criminal citations) goes beyond the claims and defenses raised in this action, and would not be proportional to the needs of the case. When ORR assesses release or detention, it "uses the evidence at its disposal to determine if release is safe and suitable." That by its very nature does not include the far-reaching post-release data sought by defendants. Neither are plaintiffs contending, for the most part, that defendants are making incorrect decisions about whether custodians are proper or not; rather, the overriding basis of their complaint is that ORR decisions are delayed, made without due process, or not made at all.

Accordingly, the Court **grants** defendants' discovery requests, **in part**, and orders *all* named plaintiffs, **no later than August 12, 2019**, to produce all documents in their possession, custody or control responsive to **defendants' First Set of Requests for Production of Documents, Request Nos. 43**, **44(1)** (i.e., all documents reflecting communications between any named plaintiff and a past, current, or proposed sponsor regarding *medical and/or mental health* treatment within ORR care and custody), **46** (but excluding signed consent forms), **49**, and **51** (but limited to documents related to school records from *after* ORR release).

**It is so ordered**.

cc:      Counsel of Record

Initials of Deputy Clerk ___ch___