# EXHIBIT B

I, Dr. Julie DeAun Graves, declare as follows:

1.   This declaration is based on my personal knowledge, except as to those matters
based on information and belief, which I believe to be true. If called to testify in this case,
I would testify competently about these facts.

2.   My name is Julie DeAun Graves. I am a physician licensed to practice medicine in
the states of Florida, Maryland, New Jersey, Texas, Virginia, Wisconsin, and in the
District of Columbia. I am currently working in family medicine and public health private
practice as the Associate Director of Clinical Services at Nurx. I have been certified by
the American Board of Family Medicine since 1989.

3.   I am a public health physician, previously serving as Regional Medical Director for
the Texas Department of State Health Services for the Houston region, as Medical
Services Coordinator for the Texas Department of Aging and Disability Services, and as
a medical consultant to the Texas Medical Board. I managed the H1N1 influenza
outbreak for the Texas State Supported Living Centers and oversaw public health efforts
for the Houston region (population seven million) for Ebola virus, Zika virus, West Nile
virus, highly pathogenic avian influenza, tuberculosis outbreaks, and natural disasters.

4.   I obtained my medical degree and completed a surgical internship then family
medicine residency at the University of Texas Southwestern Medical School in Dallas,
Texas, then completed a fellowship in faculty development at the McLennan County
Medical Education and Research Foundation in Waco, Texas. I earned a Master's degree
in Public Health and a Doctor of Philosophy in Management, Policy, and Statistics at the
University of Texas School of Public Health. I have practiced family medicine and public
health since 1989, and in 2018-2019 I was Associate Professor and Vice-Chair for
Education at Georgetown University School of Medicine. At Nurx I care for patients
seeking contraception, HIV (human immunodeficiency virus) prevention, sexually
transmitted infection diagnosis and treatment, cervical cancer screening, and coronavirus
(SARS-CoV-2, the virus that causes COVID-19) testing and treatment. I am a former

---

Declaration of Dr. Julie DeAun Graves

1

member of the Public Health Committee of the Texas Medical Association and a former member of the Executive Board and current Governing Councilor of the American Public Health Association.

5.  During my over 30 years of medical practice I have cared for immigrant populations in Florida, Maryland, Texas, Wisconsin, and Washington, DC, and I am co-author of a research journal article about migrant workers' health. While serving as Regional Medical Director for the Texas Department of State Health Services I collaborated with Department of Health and Human Services Office of Refugee Resettlement (ORR) facilities on investigations and control of tuberculosis and measles cases among detainees and provided public health services to those detainees and their families. I am familiar with ORR facilities and the conditions faced by detained children and by the staff members who work there. In August of 2019 I volunteered with a Catholic Charities facility in Laredo, Texas and provided medical care to people just released from detention in Customs and Border Patrol (CBP) facilities. I observed the ill health, exhaustion, and malnutrition evident in these people. Additionally, because of my work as Medical Services Coordinator for the Texas Department of Aging and Disability Services overseeing health care in the State Supported Living Centers, which are congregate living settings, I am familiar with the risks to residents and staff from any infectious disease, and particularly those with high infectivity, such as this coronavirus SARS-CoV-2. I attach a copy of my curriculum vitae.

COVID-19

6.  COVID-19 is an illness caused by the SARS-CoV-2 virus, which is a novel coronavirus that was first detected in humans during the outbreak (now a pandemic) we are experiencing now. The Centers for Disease Control and Prevention reports that as of March 24, 2020 at 6:00 a.m, there are 46,481 cases reported in the United States, with cases reported in every state, and there are 593 reported deaths so far. See

1  www.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6.

2  On March 18, 2020, there were 7,038 cases reported and 150 deaths.

3      7.   The United States is in the early stages of the pandemic, and because there has

4  been insufficient testing for cases, the reported cases numbers are lower than actual cases,

5  despite the high probability that there are many more infected individuals in the

6  population. The spread of the virus is faster and more dangerous when people are in close

7  quarters. People with health conditions such as diabetes, asthma, emphysema, heart

8  disease, kidney disease, pregnancy, diabetes, cancer, HIV, and autoimmune diseases such

9  as lupus and rheumatoid arthritis are at higher risk for severe illness, complications, and

10  death from COVID-19. People over age 60 have higher death rates, but severe cases of

11  illness and deaths are reported in people of all ages, including children. The ratio of cases

12  of COVID-19 to deaths from this illness is much higher than for other contagious

13  diseases such as influenza. The SARS-CoV-2 virus damages the lung tissue, which

14  means that even those who recover need prolonged medical care and rehabilitation. They

15  are likely to have permanent disability from loss of lung capacity. The heart itself can be

16  infected, and kidneys and the nervous system can also be impacted and damaged

17  permanently.

18      8.   There is no vaccine and no treatment for COVID-19. We only have prevention as a

19  tool to stop the pandemic. If people remain in congregate settings, most of them plus the

20  staff who work with them will become infected, and many will die or have permanent

21  disability. COVID-19 is transmitted from person to person by breathing in expired air

22  that contains the droplets an infected person has coughed or the virus they have shed, or

23  by touching a surface with the virus on it, unless there is full personal protective

24  equipment: mask, gloves, gown, plus thorough hand washing before putting on the

25  equipment and after removing it. The only way to avoid transmission is for people to

26  distance themselves at least six feet from others (commonly referred to as "social

27  distancing" or "physical distancing"). People should not be in large buildings full of

28  many people, and people must practice frequent and thorough hand washing with

Declaration of Dr. Julie DeAun Graves

3

1    adequate soap and water. If we do not implement these two steps – physical distancing
2    and hand washing – the pandemic will only continue to spread and the number of deaths
3    will continue to increase.

4    9.   There is a national shortage of COVID-19 tests. Medical providers cannot test
5    everyone who they believe should be tested, and so are presuming that people with a
6    certain set of symptoms are positive. This is an appropriate and common situation with
7    new infectious diseases and is a widely recognized strategy in public health disease
8    control. Individuals and communities should not rely solely on the criteria of a positive
9    COVID-19 test to implement precautions or quarantine symptomatic persons. A public
10   health response requiring widespread preventive measure of physical distancing and
11   appropriate hand washing is our only tool to slow the spread of the virus.

12

13   HHS Facility Conditions

14   10.  I am advised that Department of Health and Human Service Office of Refugee
15   Resettlement (ORR) typically houses many dozens, and in some cases hundreds, of
16   children in congregate facilities, where they share toilets, sinks, and showers, eat
17   together, participate in recreation and classroom instruction together, sleep in common
18   rooms, and have inadequate space to permit recommended physical distancing. In my
19   opinion, under current pandemic conditions such congregate settings are inherently
20   unsafe and unsanitary, and they become increasingly dangerous in proportion to the
21   number of children whom ORR places in such facilities. Other commonly reported
22   conditions, such the frequency of rotating staff members, further increase the risk that
23   children will contract COVID-19.

24   11.  Congregate care facilities holding large numbers of people are particularly
25   dangerous during a pandemic. Physical distancing of six feet between all people is
26   essential to preventing the spread of COVID-19 disease. The virus is transmitted in
27   respiratory droplets and can hang in the air for several minutes – due to its tiny size (one
28   micron diameter) and its very light weight. The virus also can live on metal, glass,

plastic, concrete, and other surfaces for up to ten days and maintain its infectivity. Consistently maintaining the appropriate distance of six feet in addition to adequate cleaning of all surfaces is not possible in such facilities.

Immigrant Population Vulnerabilities

12. Immigrants, particularly recently arrived children, are at particular risk of contracting COVID-19. Common health problems afflicting children in different forms of immigration custody (CBP, ICE, and ORR) include malnutrition, asthma, heart disease, immunosuppression, inadequate vaccination, diarrheal illness, sleep disorders, post-traumatic stress disorder, exhaustion, and seizure disorders. People with these health issues are among those at high risk for serious illness and death if they contract COVID-19. People with post-traumatic stress disorder have weakened immune systems and increased vulnerability to infection.

ORR Guidance re: COVID-19

13. I have read and analyzed the March 13, 2020 "COVID-19 Interim Guidance for ORR Programs" (ORR Guidance). While the document states that it "is based on the Centers for Disease Control and Prevention (CDC) recommendations," the policies contravene multiple CDC recommendations and are inadequate to protect children forced to live in congregate settings against COVID-19 illness.

14. Most importantly, the ORR Guidance makes no mention of social or physical distancing between children or staff, nor of limiting the gathering of groups of children or staff. As discussed above, there is widespread consensus in the public health community that social distancing is critical to preventing the further spread of COVID-19.

15. The CDC has repeatedly called for the American public to limit social interactions and avoid gatherings in groups of more than 10 people.

16. The ORR Guidance nowhere mentions that children should have independent access to hand washing and sanitizing supplies. As discussed above, regular handwashing with water and soap is critical to preventing the further spread of COVID-19.

17. The ORR Guidance sets out no plan to manage spread of the disease when more children need to be quarantined than isolation rooms can accommodate.

18. The ORR Guidance does not provide information on managing the spread of disease among particularly vulnerable children, such as those with heart disease, diabetes, asthma or other chronic respiratory disease, or those with compromised immune systems. The Guidance directs no special measures to protect these populations. The same protocols apply to all children whether or not they have an increased risk of serious illness or death.

19. The ORR Guidance does not provide a screening or testing protocol for children not deemed to be "at risk" but still exhibiting COVID-19 symptoms. If a child has a fever, this would likely be caught by ORR's twice-daily temperature check requirement. However, if a child has a cough or shortness of breath and is not defined as "at risk" due to no known COVID-19 exposure, then that may be a missed case that allows the virus to spread.

20. It is my expert opinion that the policies expressed in the ORR Guidance are inadequate and contrary to current CDC guidelines as well as public health practice being adopted during the current pandemic. We are currently in an emergency situation. Even if ORR issues more stringent guidance in the upcoming days or weeks, it will likely be too late, especially for facilities located in areas of high community transmission, such as New York and California.

CDC COVID-19 Guidance for Correctional and Detention Facilities

21. I have reviewed the CDC "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities" (CDC Detention

Facility Guidance) issued March 23, 2020, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The CDC Detention Facility Guidance highlight many ways in which people in detention facilities and congregate environments are at a higher risk of contracting COVID-19.

22. The CDC Detention Facility Guidance acknowledges that "(i)ncarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced." Further, it states that "(t)here are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members."

23. The CDC Detention Facility Guidance instructs facilities to "implement social distancing strategies to increase the physical space between incarcerated/detained persons (ideally six feet between all individuals, regardless of the presence of symptoms," but acknowledges that "not all strategies will be feasible in all facilities." Social distancing does not work when it is only followed part of the time. The CDC's "Interim U.S. Guidance for Risk Assessment and Public Health Management of Healthcare Personnel with Potential Exposure in a Healthcare Setting to Patients with Coronavirus Disease (COVID-19)" issued on March 7, 2020 states that "(d)ata are insufficient to precisely define the duration of time that constitutes a prolonged exposure. However, until more is known about transmission risks, it is reasonable to consider an exposure greater than a few minutes as a prolonged exposure. Brief interactions are less likely to result in transmission; however, clinical symptoms of the patient and type of interaction (e.g., did the patient cough directly into the face of the HCP) remain important" and "(e)xamples of brief interactions include: briefly entering the patient room without having direct contact with the patient or their secretions/excretions, brief conversation at a triage desk with a patient who was not wearing a facemask."  Repeated interactions, even brief, that occur throughout the day in

these facilities, are each an independent opportunity for transmission of infection. Because it is not known whether people who have recovered from infection develop immunity to subsequent infections with COVID-19, and because transmission may occur when the infected person has no symptoms, each interaction between a staff member and a detainee and each interaction between two individual detainees or two individual staff members is an independent opportunity with the same risk of infection. The risks are additive with each interaction.

24.   The CDC Detention Facility Guidance states that "The ability of incarcerated/detained persons to exercise disease prevention measures (e.g., frequent hand washing) may be limited and is determined by the supplies provided in the facility and by security considerations." Facilities are instructed to provide no-cost access to liquid soap (or bar soap), running water, and hand drying supplies.

25.   Detention facilities are instructed to "(o)ffer the seasonal influenza vaccine to all incarcerated/detained persons (existing population and new intakes) and staff throughout the influenza seasons." Preventing influenza cases in these facilities can speed the detection of COVID-19 cases and reduce pressure on healthcare resources.

26.   Even if all of the recommendations made in the CDC Detention Facility Guidance are followed, the conditions of detention are such that detained children in ORR custody would still be at high risk of contracting COVID-19. Because this virus is transmitted through droplets, through the air, and on surfaces, and because people who do not have symptoms but are infected transmit the virus to others, even one infected person in a facility, either a detainee or a staff member, can infect the majority of people in the facility. This is worsened by the crowded conditions in the facilities.

27.   If we are to contain the spread of the COVID-19 virus, we must relocate as many people as possible out of congregate settings. If we prevent people from practicing adequate physical distancing from others and the other steps outlined above, institutional centers will become clusters in which high percentages of persons are infected with

Declaration of Dr. Julie DeAun Graves

8

COVID-19. Such clusters not only endanger those who are immediately infected, but the health of those residing in the communities in which congregate facilities are located.

Recommendations

28.  It is my professional opinion that all children held in ORR facilities should be moved immediately to settings with adequate opportunity for safe distance and adequate hand washing and sanitation, and be afforded a seasonal influenza vaccine immediately. Even if ORR facilities intend to meet the guidance put forth by the CDC on March 23, 2020, they are not uniformly meeting it now, and so people are at risk for serious illness, death, and disability today.

29.  The Office of Refugee Resettlement should immediately expedite the release of detained children to their sponsors. Once released, children should self-quarantine for 14 days in order to ensure that they are not exhibiting symptoms of COVID-19 and to ensure the safety of their new communities. Reducing the population of children in ORR facilities is critical to minimizing the risk for outbreaks in facilities and preventing the spread of the virus to children, ORR staff members, and communities across the United States.

30.  To the extent there is absolutely no other option but for children to remain detained in congregate settings, basic principles of public health require HHS to:

   a.  Allow each child enough space to maintain a distance of at least six feet from others;

   b.  Ensure that all children have free and consistent access to water, soap, and cleaning products;

   c.  Transfer children from high-density placements (facilities with 10 or more children) to low-density placements;

   d.  Ensure that symptomatic children are immediately removed from the general population and have prompt access to single-occupancy negative pressure rooms plus adequate medical care;

e. Ensure that facilities have plans in place if they have to quarantine more
children than there are single-occupancy rooms;

f. Provide staff and children with adequate personal protective equipment
including fit-tested N-95 masks and adequate instruction regarding proper
donning and doffing procedures. Require appropriate measures for children
who are not "at-risk" under ORR's definition but are still exhibiting symptoms
consistent with COVID-19 and those who are at high-risk for serious illness due
to pre-existing conditions or compromised immune systems.

31.  A principal objective of physical distancing and self-quarantine requirements is to
slow the spread of COVID-19 illness so as not to overwhelm available medical care
resources. I am advised that ORR may contract with congregate detention facilities in
rural areas, which typically have fewer medical resources than are to be found in large
towns and cities. An outbreak of COVID-19 disease in such facilities would quickly
overwhelm local health care resources, requiring ORR either to leave children untreated
or else transport them to distant hospitals and clinics, where they would risk spreading
the infection to more health care workers and the community in regions in which the
disease has yet to become prevalent. It is therefore in the public's interest to remove as
many children from congregate care as soon as possible.

32. Even if all of the above recommendations for HHS facilities are followed, the
inherent conditions of congregate detention are such that detained children would still be
at high risk for exposure to COVID-19. In order to contain the spread of the COVID-19
virus, and to protect children, the government must relocate as many people as possible
out of HHS facilities.

33. I declare under penalty of perjury that the foregoing is true and correct. Executed
on March 24, 2020 in North Bay Village, Florida.

Julie DeAun Graves

Declaration of Dr. Julie DeAun Graves

10

**Julie D. Graves, M.D., M.P.H., Ph.D., F.A.A.F.P.**

**Current positions:**

Family medicine and public health physician in private practice

Associate Director of Clinical Services, Nurx

**Education:**

06/1979 Bachelor of Arts, Rice University, Houston, Texas
Majors: Biology, Health and Physical Education

06/1983 Doctor of Medicine
The University of Texas Southwestern Medical School, Dallas, Texas

12/1992 Master of Public Health
The University of Texas Health Science Center (UTHealth) School of Public Health, Houston, Texas
Concentration: Health Services Organizations
Thesis: Preferences for Perinatal Health Decisions: A Critical Appraisal

12/2011 Doctor of Philosophy
The University of Texas Health Science Center (UTHealth) School of Public Health, Houston, Texas
Division of Management, Policy, and Community Health
Major: Health Policy
Minors: Management, Biostatistics
Dissertation: Analysis of Policy Issues Surrounding the Electronic Medical Record

**Medical licensure:**

State: Texas

License No: G5110

Initial Date: 08/23/1983

Renewal/Expiration Date: 02/28/2020

State: Wisconsin

License No: 53273

Initial Date: 06/23/2009

Renewal/Expiration Date: 10/31/2021

State: Alabama

License No: 12408

Initial Date: 10/22/1985

Renewal/Expiration Date: 12/31/1986


State: Nebraska

License No: TX-G5110

Initial Date: 07/20/1985

Renewal/Expiration Date: 07/26/1985


State: Florida

License No: ME134326

Initial Date: 10/25/2017

Renewal/Expiration Date: 01/31/2022


State: District of Columbia

License No: MD045899

Initial Date: 02/26/2018

Renewal/Expiration Date: 12/31/2020


State: Maryland

License No: D84791

Initial Date: 02/16/2018

Renewal/Expiration Date: 09/30/2020

Case 2:18-cv-05741-DMG-PLA   Document 227-4   Filed 03/25/20   Page 14 of 29   Page ID
#:5058
Case 1:20-cv-00786   Document 1-13   Filed 03/21/20   Page 7 of 22

**Certifications**:

American Board of Family Medicine: Certificate Number 1070893973

Date certified: 07/1989
Dates of Re-certification:
Jul 14, 1989 - Jul 13, 1995
Jul 14, 1995 - Jul 12, 2001
Jul 13, 2001 - Aug 01, 2008
Aug 02, 2008 - Apr 09, 2017
Apr 10, 2017 -12/2027

Advanced Cardiac Life Support 5/1983-12/94, 01/1997-12/2001, 01/2003-12/2018

Advanced Trauma Life Support 01/2003-12/2019

Pediatric Advanced Life Support 01/2004-12/2017

**Languages Spoken**
English – mother tongue
Spanish – basic medical
German – basic

**Previous Academic Appointments and Activities**

03/2018-03/2019
Vice-Chair for Education, Department of Family Medicine, Georgetown University School of
Medicine

05/2017-12/2017
Associate Professor of Epidemiology, University of Medicine and Health Sciences, St. Kitts and Nevis

06/2015-08/2019
Adjunct Associate Professor of Management, Policy, and Community Health, The University of Texas
Health Science Center (UTHealth) School of Public Health

Lecturer: PH 3620, Principles and Practice of Public Health
Lecturer: PH 5220, Gender and Leadership

Preceptor: Occupational Medicine Residency program

Dissertation Committee member: PhD student Stella Okoroafor, MD, MPH (in process)

06/2015-05/17
Faculty, Texas Department of State Health Services Preventive Medicine Residency program

Infectious Diseases and Chronic Disease Preventive Lectures Series Coordinator

06/2014
Visiting Faculty, Tanzania Training Center for International Health

03/2013-08/2014
Associate Professor of Behavioral and Clinical Medicine and Public Health, University of Sint Eustatius School of Medicine

Course director: Epidemiology, Medical Ethics, Biostatistics

09/2012-08/2013
Adjunct Assistant Professor of Epidemiology, The University of Texas Health Science Center (UTHealth) School of Public Health

Dissertation Committee Member, DrPH student Christina Socias (completed)

Associate Professor of Behavioral and Clinical Medicine, American University of the Caribbean School of Medicine, Sint Maarten

Course director and principal faculty, Medical Ethics

Faculty, Introduction to Clinical Medicine

01/2012-09/2012
Assistant Professor of Family and Community Medicine, The University of Texas Health Science Center at San Antonio, Texas

06/2009-08/2009
Graduate Teaching Assistant, The University of Texas Health Science Center (UTHealth) School of Public Health

PH 3620 Principles and Practice of Public Health (on-line course)

11/2002-05/2005
Faculty physician, Austin Medical Education Programs, Family Medicine residency program, Austin, Texas

01/1995-12/1999
Clinical Assistant Professor of Family Medicine, Texas A&M University Brazos Valley Family Medicine residency program, College Station, Texas

Case 2:18-cv-05741-DMG-PLA   Document 227-4   Filed 03/25/20   Page 16 of 29   Page ID
#:5060
Case 1:20-cv-00786   Document 1-13   Filed 03/21/20   Page 9 of 22

11/1992-05/1995
Clinical Assistant Professor of Family Medicine, Baylor College of Medicine, Houston, Texas

Obstetrics fellowship co-coordinator

08/1989-08/1991
Assistant Professor of Family and Community Medicine, The University of Texas Houston Health
Science Center

Founding course director, Family Medicine Clinical Clerkship

Co-author, HRSA Primary care training grant


**Research Activities**

01/2012-09/2012
ReACH Scholar, Center for Research to Advance Community Health, University of Texas Health
Science Center at San Antonio
Project: Quality assurance using electronic health records
Principle Investigator: Barbara J. Turner, MD, MSED, MSCP
Internal funding.

01/2007-12/-2009
Research Associate, Health Policy Institute, University of Texas School of Public Health
Projects: Translational research applications of public policy analysis; Food oases
Principle investigators: Stephen Linder, PhD and Eduardo Sanchez, MD, MPH
Internal funding

01/1991-12/1992
Research Associate, Center for Health Policy Studies, University of Texas School of Public Health
Project: Health manpower analysis for primary care in Texas
Principle investigators: Virginia Kennedy, PhD and Frank Moore, PhD
Funding: Texas Higher Education Coordinating Board

08/1989-08/1991
Project staff, University of Texas Houston Health Science Center
Project: Cholesterol reduction with high rice fiber diets
Principle investigator: Mark E. Clasen, MD, PhD
Funding: National Rice Council

09/1988-06/1989
Principle investigator, McLennan County Medical Education and Research Foundation
Project: Obstetrical Practice by Texas Family Physicians
Funding: Texas Higher Education Coordinating Board

**Governmental Public Health Practice**

06/2017-3/2019
Consultant to Ministry of Health, St. Kitts and Nevis, for disaster preparedness and cannabis health effects

02/2015-05/2017
Regional Medical Director, Texas Department of State Health Services, Health Services Region 6/5S (Houston area, population 7 million)

01/2009-12/2011
Medical consultant, Texas Medicaid Office of Inspector General, Austin, Texas

01/2005-12/2012
Quality monitor and investigator, Texas Medical Board, Austin, Texas

09/2009-05/2011
Medical Services Coordinator for State Supported Living Centers, Texas Department of Aging and Disability Services, Texas (statewide)

Member, Institutional Review Board

05/2001-22/2002
Medical Consultant, Texas Department of Health, Children's Health and Infectious Disease Epidemiology and Surveillance, Austin, Texas (statewide)

Chair, Institutional Review Board, Texas Department of Health

06/1995-12/1999
Educational consultant, Texas WIC (Women, Infants, and Children) nutrition program

01/1994-12/1995
Utilization Review Physician, Lone Star Texas Medicaid managed care program

**Clinical Experience**

04/2005-02/2015 and 06/2017 – 3/2018
Private practice of family, hospitalist, and emergency medicine, Texas, Sint Maarten, Croatia, Carnival Cruises

09/2005 - 11/2005
Emergency Room Physician, U.S. Army MEDDAC, Wuerzburg, Germany Combat Support Hospital

01/2000-12/2001
Medical Director, Mother's Milk Bank at Austin (volunteer, co-founder)

09/1991-08/1992
Family physician, University of Houston student health service

09/1988-06/1989
Fellowship in Faculty Development, McClennan County Medical Education Research Foundation, Waco, Texas

06/1986-09/1988
Residency in Family Medicine, St. Paul Medical Center, Dallas, Texas

06/1985-05/1986
*Locum tenens* primary care and emergency medicine physician, CompHealth, Inc., Florida, Alabama, Nebraska, Texas

07/1984-05/1985
Residency training in Anesthesiology, University of Florida Shands Hospital, Gainesville, Florida

07/1983-06/1984
Internship in General Surgery, Parkland Memorial Hospital, Dallas, Texas


**Private Sector**

01/2009-12/2012
Principal, InGenius Strategies, LLC (health information technology consulting)

01/2005-12/2009
Consultant, Texas Medical Foundation Health Quality Institute (Medicare Quality Improvement Organization for Texas)

05/2005-08/2009
Chief Medical Officer, Practice IT, LLC (health information technology vendor)

01/1995-12/1996
Public policy advocacy, Texas Tobacco Education Project

**Honors and Awards:**

Outstanding Faculty, Texas Department of State Health Services Preventive Medicine Residency, 06/2017

Team Spirit Award, Texas Department of Health, 11/2002

C. Frank Webber Award for Excellence in Oncology, M.D. Anderson Cancer Center and the Texas Academy of Family Physicians, 05/1998

Fellow of the American Academy of Family Physicians, granted 09/1996

**Bibliography**

Textbook chapters

1. **Moy, Julie Graves**. "Cardiac Arrest", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

2. **Moy, Julie Graves**. "Advanced Trauma Life Support", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

3. **Moy, Julie Graves**. "Domestic Violence", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

4. **Moy, Julie Graves**. "The Limping Child", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

5. **Moy, Julie Graves**. "Sickle Cell Anemia", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

6. **Moy, Julie Graves**. "Lymphomas and Leukemias", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

7. **Moy, Julie** Graves. "Common Problems in the Newborn", in Swanson's Family Practice Review, 6th Edition. Philadelphia: Elsevier Mosby, 2008.

8. **Moy, Julie Graves**, Pfenninger, John. "Peripheral Nerve Blocks and Field Blocks," in Pfenninger JL, Fowler GC (eds.). Procedures for Primary Care Physicians. St. Louis, Missouri: Mosby, 1994, 2002.

9. **Moy, Julie Graves**. "Induction of Labor," in Rakel RE. Conn's Current Therapy. WB Saunders, 1997.

10. **Moy, Julie Graves**. "Development of Clinical Guidelines," in Mengel M, Fields S (eds.). Guide to Clinical Expertise. New York: Plenum Press, 1996.

11. **Moy, Julie Graves.** "Bites and Stings," in Taylor RB (ed.). Family Medicine: Principles and Practice. New York: Springer-Verlag, 1994.

12. **Moy, Julie Graves.** "Nasogastric Tube and Salem Sump Insertion," in Pfenninger JL, Fowler GC (eds.). Procedures for Primary Care Physicians. St. Louis, Missouri: Mosby, 1994.

13. **Moy, Julie Graves**. "Informed Consent," in Pfenninger JL, Fowler GC (eds.). Procedures for Primary Care Physicians. St. Louis, Missouri, Mosby, 1994.

14. Duiker SS, **Moy, Julie Graves**. "Dyspareunia," in Griffith HW, Dambro M (eds.). The Five-Minute Clinical Consult. Philadelphia: Lea and Febiger, 1993 – 1997.

15. **Moy, Julie Graves**, Duiker, SS. "Sexual Dysfunction in Women", in Griffith HW, Dambro M (eds.). The Five-Minute Clinical Consult. Philadelphia: Lea and Febiger, 1993, 1994, 1995.

16. Duiker SS, **Moy, Julie Graves**. "Community Intervention Strategies in Preventive Cardiology," in Fuentes F (ed.). Preventive Cardiology Computer Modules, Houston: University of Texas Houston Health Science Center, 1991.


Peer-reviewed publications

1. Nguyen DT, Teeter LD, **Graves J**, Graviss EA. Characteristics Associated with Negative Interferon-γ Release Assay Results in Culture-Confirmed Tuberculosis Patients, Texas, USA, 2013–2015. Emerging Infectious Diseases. Volume 24, Number 3—March 2018.

2. Liu EL, Morshedi B, Miller BL, Isaacs SM, Fowler RL, Chung W, Blum R, Ward B, Carlo J, Hennes H, WEbseter F, Perl T, Noah C, Monaghan R, Tran AH, Benitez F, **Graves J**, Kibbey C, Kelin KR, Swienton RE. Dallas MegaShelter Medical Operations Response to Hurricane Harvey. Disaster Medicine and Public Health Preparedness. 2017 Dec 6:1-4.

3. Wiseman R, Weil L, Lozano C, Johnson T, Jin S, Moorman AC, Foster MA, Mixcon-Hayden T, Khudyahov Y, Kuhar DT, **Graves JG**. Healthcare-associated Hepatitis A Outbreak, Texas, 2015. MMWR, April 29, 2016 / 65(16);425–426.

4. Socias C, Liang Y, Delclos G, **Graves J**, Hendrickson E, Cooper S. The Feasibility of Using Electronic Health Records to Describe Demographic and Clinical Indicators of Migrant and Seasonal Farmworkers. Journal of Agromedicine, 21:71-81, 2016.

5. **Moy, Julie Graves**. Texas State-wide Health Information Technology Policy in 2007: Regional and constituency-specific initiatives move forward, but risk failure without coordination and funding from state government. Texas Medicine 105(1):55-63, 2009.

6. **Moy, Julie Graves.** Spirometry in Urgent Care. Urgent Care, May 2007.

7. Holleman W, Holleman MC, **Moy, Julie Graves**. Continuity of Care and Ethics in Managed Care. Archives of Family Medicine, 1999;8.

8. Mullen PD, Pollack KI, Titus JP, Sockrider MM, **Moy, Julie Graves**. Smoking Cessation Practices of Texas Obstetricians. Birth, 1998; 25:25-30.

9. Roberts R, Bell H, Wall E, **Moy, Julie Graves**, Hess G, Bower G. Trial of Labor or Repeat Caesarean Section: The Woman's Choice. Archives of Family Medicine. 1997;6:120-125.

10. Holleman W, Holleman MC, **Moy, Julie Graves**. Managed Care and Ethics: A Match Made in Heaven or Strange Bedfellows? The Lancet 1997; February 8.

11. **Moy, Julie Graves**, Realini JP. Guidelines for Preventive Therapy with Estrogen and Progesterone for Postmenopausal Women. Journal of the American Board of Family Practice 1993;6:153-162.

12. Berg AO, **Moy, Julie Graves.** Policy Review: Guidelines for the Diagnosis and Treatment of Asthma. Journal of the American Board of Family Practice 1992;5:629-634.

13. **Moy, Julie Graves,** Clasen ME. The Patient with Gonococcal Infection. Primary Care 1990;17:59-83.

14. **McCraney, Julie Graves.** The Status of Obstetrical Practice by Texas Family Physicians. Texas Medicine 1989;86:53-6.


Monographs, non-refereed publications, government reports, and published abstracts

1. **Moy, Julie Graves,** Sanchez E. Food Oases: A White Paper. University of Texas School of Public Health Institute for Health Policy. May 2008.

2. **Moy, Julie Graves**. Texas End-of-Life Care Law. Texas Medical Association, 2005.

3. Kaye CI, Cody JD, Canfield M, Martinez J, Van de Putte L, **Moy, Julie Graves,** Borg M, Stanley S, Wang J, Visio P. The Development of the Texas State Genetics Plan and a Plan for Integrated Data Infrastructure for Genetic Service. University of Texas Health Science Center at San Antonio and Texas Department of Health, 2002

4. **Moy, Julie Graves**. Medical Ethics and Professionalism. Texas Medical Association, February 1999, updated 2004.

5. **Moy, Julie Graves**. Family Physicians on the Internet. Texas Family Physician 1996, January/February.

6. **Moy, Julie Graves**. Catastrophe Theory and Chaos: A Means to Understand What Happens in the Clinical Setting. North American Primary Care Research Group Annual Meeting, San Diego, California, November 1993. Abstract.

7. Grimes R, Brimlow D, **Moy, Julie Graves**. HIV/AIDS Interdisciplinary Clinical Preceptorships: Design, Implementation, and Evaluation. American Public Health Association, 1991. Abstract.

8. Grimes R, **Moy, Julie Graves**. Clinical Mini-Residency for Primary Care Medical School Faculty. AIDS Education and Training Centers Annual Meeting, San Francisco, California, December 14, 1991.

9. **Moy, Julie Graves**, Fowler GC. Sexually Transmitted Disease. Home Study Self-Assessment Program, number 149. American Academy of Family Physicians, October 1991.

10. **Moy, Julie Graves**. Impact of Medicare Reform upon Family Medicine Research. Society of Teachers of Family Medicine Research News 1990:3:1-3.

11. **McCraney, Julie Graves.** The Role of the Family Physician in the Management of Breastfeeding. Texas Family Physician 1989, May/June.

12. **McCraney, Julie Graves**. The Resource-Based Relative Value Scale. Texas Family Physician 1989, March/April.

13. **McCraney, Julie Graves**. A Resident Considers AIDS. Texas Family Physician 1988, May/June.


Letters to the Editor

1. **Moy, Julie Graves**. Flu Season Offers Opportunities to Keep Patients Healthy and out of the Hospital. Travis County Medical Association Journal, 2003; 49:18-19.

2. **Moy, Julie Graves**. Putting babies "back to sleep". Journal of the American Medical Association. 1999 March 17:281 (11): 983.

3. **Moy, Julie Graves**, Rourke J. Physician's Breastfeeding Course in Texas. Academy of Breastfeeding Medicine News and Views 1996:2(1).

4. **Moy, Julie Graves**. Who Practices in the ER? Health Affairs. March 2008 27:2w84-w95.


Service on State and National Panels and Committees:

Health Policy Panel Membership

1. Texas Department of Health Panel on Infant Feeding (co-author, Texas Department of Health Position Statement on Infant Feeding) 1997

2. National Heritage Insurance Company Medical Affairs Committee on Pilot Managed Care Program for Texas Medicaid Program 1994

3. National Institutes of Health Consensus Panel on Treatment of Cervical Dysplasia, Bethesda System Classification Development Team (Report published in the Journal of the American Medical Association 1994: 271, Kurman et al.) 1994

4. Rand Corporation / Health Care Financing Administration Medicaid Necessity, Outcomes, and Appropriateness Study on Pediatric Asthma 1992

5. Texas Department of Human Services Physician Payment Advisory Committee 1990

6. March of Dimes National Committee on Perinatal Health (co-author, Toward Improving the Outcomes of Pregnancy, monograph published by March of Dimes, 1993)

7. Texas Department of Human Services Indigent Care Advisory Committee 1989

Case 2:18-cv-05741-DMG-PLA   Document 227-4   Filed 03/25/20   Page 23 of 29   Page ID
#:5067
Case 1:20-cv-00786   Document 1-13   Filed 03/21/20   Page 16 of 22

Policy Reviews for American Academy of Family Physicians Task Force on Clinical Policies
1990-94

1. Agency for Health Care Policy and Research Pressure Sore Panel

2. National Heart, Lung, and Blood Institute Panel on Treatment of Asthma During Pregnancy
and Lactation

3. National Heart, Lung, and Blood Institute Guidelines for the Diagnosis and Treatment of
Asthma

4. American Academy of Ophthalmology Policy on Strabismus

5. Expert Panel on Preventive Services paper on Iron Supplementation During Pregnancy

6. Expert Panel on Preventive Services paper on Testing for D Isoimmunization in Pregnancy

7. American Academy of Pediatrics practice parameter on Treatment of Acute Asthma Exacerbation in
Children

8. American Academy of Pediatrics practice parameter on Hyperbilirubinemia in the Newborn
Service on Medical School Committees:

Member, Practice Council, The University of Texas Health Science Center (UTHealth) School of
Public Health at Houston, 2014 -present

Member, Council on Education for Public Health (CEPH) Expanded Steering Committee, The
University of Texas Health Science Center (UTHealth) School of Public Health at Houston,
2016.

Member, Curriculum Committee, The University of Texas Health Science Center Medical School,
1990

Vice-chair, Institutional Review Board, University of Medicine and Health Sciences, St. Kitts and
Nevis, 2017


Editorial Review for Medical Journals:

2018-present   Peer Reviewer, American Family Physician

2017-present   Peer Reviewer, Texas Public Health Association Journal

2001-2016      Peer Reviewer, Journal of Family Practice

2010-2017      Peer Reviewer, Family Practice Management

1997           Peer Reviewer, Feminist Economics

| 1995-1998 | Editorial Review Board, Journal of Human Lactation |
| 1994-1997 | Peer Reviewer, American Family Physician |
| 1993-2013 | Peer Reviewer, Texas Medicine |
| 1992-1997 | Peer Reviewer, Archives of Family Medicine |
| 1992-1995 | Peer Reviewer, Family Medicine |
| 1990-1993 | Editorial Committee, Texas Medicine |
| 1988-1989 | Editor, Texas Family Physician "Resident Forum" |

Presentations at Scientific Meetings:

1. Garrison R, **Graves J.** An Analysis of Barriers to Care for Patients Requiring Rabies Post-exposure Prophylaxis in Texas Department of State Health Services Region 6/5S. Texas Public Health Association 93rd Annual Meeting. March 27, 2017, Fort Worth, Texas

2. Ramsey J, Mayes B, **Graves J.** Demographics of Child Fatality in Rural Southeast Texas. Texas Public Health Association 93rd Annual Meeting. March 27, 2017, Fort Worth, Texas (poster)

3. Jones R, Abrego D, Deeba R, Varghese C, LaBar C, Mayes B, **Graves J.** Public Health Prevention Needs for Domestic Minor Sex Trafficking in Rural Southeast Texas Counties. Texas Public Health Association 93rd Annual Meeting. March 27, 2017, Fort Worth, Texas

4. **Graves J.** Vector-borne Disease Public Policy. South Texas Tropical Medicine and Vector Borne Disease conference. February 24, 2017. South Padre Island, Texas

5. Martinez D, Jin S, Milligan S, Haynie A, Arenare B, Wiseman R, Weil L, Lozano C, Johnson T, **Graves J.** Investigation of a healthcare associated Hepatitis A cluster in and nearby Harris County, Texas. Council of State and Territorial Epidemiologists Annual Meeting. June 2017. Anchorage Alaska (poster).

6. Lin H, Weil L, Evans D, Shaw D, Rosen G, **Graves J.** Regional Epidemiology Coordination Plan: effective use during a multijurisdictional outbreak investigation. Texas Public Health Association 92nd Annual Education Conference, April 2016, Galveston, Texas

7. Rosen G, Lin H, Swanson K, Shaw D, Weil L, Evans D, **Graves J.** Local challenges to state policy: Evaluating the interim guidance for monitoring and movement of persons with potential Ebola Virus exposure in Southeast Texas --October-December, 2014. American Public Health Association Annual Meeting, October 2015, Chicago, Illinois.

Case 2:18-cv-05741-DMG-PLA   Document 227-4   Filed 03/25/20   Page 25 of 29   Page ID
#:5069
Case 1:20-cv-00786   Document 1-13   Filed 03/21/20   Page 18 of 22

8. **Graves J.** Health Information Technology Policy in Germany, Switzerland, and Austria: Lessons for US Policy Makers. American Public Health Association Annual Meeting, San Diego, California, October 2012

9. **Graves J,** Sanchez E. Meeting the Health Needs of the Emerging Majority: Applying Lessons Learned from Border Health Programs to Eliminate Health Disparities throughout the U.S. American Public Health Association Annual Meeting, San Diego, California, October 2008

10. **Graves J,** Aday L. Decision Analysis and Preferences for Perinatal Health States. Agency for Health Care Policy and Research Third Primary Care Conference. Atlanta, Georgia, January 1993

11. **Moy, Julie Graves**, Susman J, Berg A. Critiquing Clinical Policies. Society of Teachers of Family Medicine Annual Meeting, San Diego, California, April 1993

12. **Moy, Julie Graves,** Schindler J, Duiker SS. Teaching Ambulatory Care in the Urban Setting, American Association of Medical Colleges Southern Group for Educational Affairs, Houston, Texas, April 1991

13. **Moy, Julie Graves**, Clasen ME, Donnelly J. Implementation of a Required Third year Clerkship in Family Medicine after Legislative Directive. Society of Teachers of Family Medicine Predoctoral Education Conference, San Antonio, Texas, February 1991.

14. **Moy, Julie Graves**, Goertz R. Legislative Directive for a Third year Family Medicine Clerkship. Society of Teachers of Family Medicine, Seattle Washington, May 1990.

15. Conard S, Dahms L, **McCraney, Julie Graves.** Stress in Residency: External Causes, Manifestations, and Impairment in Family Medicine as Compared to Other Specialties. Texas Academy of Family Physicians, Austin, Texas, September 1988, first place; also at American Academy of Family Physicians, Los Angeles, October 1988.


Invited Lectures

1. The US Health Care System in Transition. University of Medicine and Health Sciences Health Policy Lecture Series. July 13, 2017. Basseterre, St. Kitts and Nevis.

2. Legislative Issues Regarding Syndromic Surveillance. Texas Health Information Management Systems Society Legislative Conference. April 12, 2017, Austin, Texas.

3. Cross-Jurisdictional Coordination for Super Bowl LI Planning. Local Health Authorities Symposium. Texas Public Health Association 93rd Annual Meeting. March 27, 2017, Fort Worth, Texas

4. Texas Syndromic Surveillance System. Health Information Management Systems Society, Austin Chapter, August 9, 2016

5. A Congressional Forum on the Zika Virus and a Discussion of an Action Plan for Houston and Harris County. Good Neighbor Health Clinic, Houston, March 10, 2016.

6.  Telemedicine for Children with Special Health Care Needs. Caring for Children with Special Health Care Needs in Medicaid Managed Care, Texas Health and Human Services Commission, Austin, Texas, March 8, 2002. With Nora Taylor Belcher

7.  Medicaid and Managed Care. Women in Government Forum on Medicaid, Austin, Texas, September 16, 1995.

8.  Managed Care and Managed Competition. Southeast Texas Chapter of the International Patient Education Council, University of Texas MD Anderson Cancer Center, June 2, 1993.

9.  AIDS and Adolescents: HIV Policy Concerns. National Conference of State Legislatures Women's Network, Mobile, Alabama, May 20, 1993.

10.  Vaginal Birth after Cesarean. Visiting Professor in Perinatal Health, University of Kansas School of Medicine Perinatal Conference, Kansas City, Kansas, April 3, 1992.

11. The Development of Medical Specialties in America. History of Medicine Lectures, University of Texas Houston Health Science Center, April 25, 1991.

Presentations at Professional Development Courses

1. Analysis of Policy Issues Surrounding the Electronic Medical Record. Grand Rounds. University of Texas Health Science Center at San Antonio. October 14, 2011. One hour Category I credit.

2. Barriers to Preventive Care for Women with Disabilities. Center for Health Disparities Annual Conference, University of North Texas Health Science Center, Ft. Worth, Texas, May 8, 2010. One hour Category I credit.

3. Clinical Indicators in Medicare's Hospital Quality Improvement Project. Houston, Texas. January 13, 2006. One hour Category I credit.

4. Recent Changes to Texas End-of-Life Care Law. St. David's Medical Center, Austin, Texas. October 12, 2004. One hour Category I credit, one hour Texas Ethics credit.

5. Aggressive Treatment of Type II Diabetes: What's New in Type II Diabetes and Improving Chronic Disease Management Care with a Systems Approach. Texas Academy of Family Physicians. El Paso, Texas, May 2002. Two hours Category I credit.

6. Update in Medical Ethics and Professionalism. Central Texas Continuing Education Consortium. Austin, Texas, October 1999. One hour Category I credit.

7. Breastfeeding Update. Grand Rounds. Columbia Bayshore Medical Center, Pasadena, Texas, July 16, 1998. One hour Category I credit.

8. Breastfeeding in Special Circumstances. American Academy of Family Physicians Annual Session September 17, 1997, Chicago IL, 1 hour prescribed credit. Taught again in Annual Session in 1998.

9. Breastfeeding Update. Presbyterian Hospital Combined Obstetrics/Pediatrics conference, April 1997, 1 hour AMA Category I credit.

10. Intensive Course in Breastfeeding: Lactation Management Workshop for Physicians. April 24, 1996, Houston, Texas. Four hours AAFP credit. Taught again Harlingen, Texas; Tyler, Texas; San Antonio, Texas, Dallas, Texas, Sugar Land, Texas in 1996, 1997, with Linda Zeccola, Tom Hale, Joanie Fischer, and Maryelle Van Landen

11. Intensive Course in Breastfeeding. March 11, 1996, Midland, Texas. Four hours continuing nursing education credit. Taught again in Gallup, New Mexico and Boise, Idaho.

12. Breastfeeding: Improving the Support System. Hermann Hospital/UT Houston Medical School Annual Perinatal Conference, Houston, Texas June 1996, 1 hour AMA credit.

13. Breastfeeding Update. Women's Hospital, Houston, Texas, September 1996, 1 hour AMA Category I.

14. Breastfeeding: Enlightening the Myths. Abilene Perinatal Conference, October 1996, 1 hour AMA Category I credit.

15. Family Oriented Prenatal Care. Baylor College of Medicine Advances in Family Medicine. January 20, 1995. 1/2 hour prescribed credit.

16. American Academy of Family Physicians Clinical Policies Training Course. San Diego, California, April 1993. 9.5 hours prescribed credit, with Hanan Bell

17. Preference/ Utility Assessment in Outcomes Research. Agency for Health Care Policy and Research Third Primary Care Conference, Atlanta, Georgia, January 10, 1993. 1 hour prescribed credit.

18. Hormone Replacement Therapy. Clinical Recommendations Update at American Academy of Family Physicians Scientific Assembly, Orlando Florida, October 1993. 2 hours prescribed credit.

19. Problems and Solutions in Integrating Clerkship Teaching with Residency Education. McLennan County Medical Education and Research Foundation Program Management Conference, Austin, Texas, May 18, 1990. 1 hour prescribed credit, with Donald Koester

20. The Status of Obstetrical Practice by Texas Family Physicians: Implications for Residency Training. McLennan County Medical Education and Research Foundation Program Management Conference, Austin, Texas, February, 1989. 1 hour prescribed credit.

21. The Genogram in Prevention. University of Texas Houston Health Science Center/ Texas Academy of Family Physicians Prevention for the Nineties Conference, Houston, Texas, October 30, 1989. 1 hour prescribed.

Case 2:18-cv-05741-DMG-PLA   Document 227-4   Filed 03/25/20   Page 28 of 29   Page ID
#:5072
Case 1:20-cv-00786   Document 1-13   Filed 03/21/20   Page 21 of 22

Professional Organizations:

American Public Health Association 1992-present
2020-2023     Governing Councilor
2015-2016     Joint Policy Committee member; Co-chair, 2016
2016          Executive Board member, ex officio
2014-2017     Submission Review for Annual Scientific Meeting
2012-2016     Science Board member; Chair, 2016
Medical Care Section (Mentoring Chair 2018)
International Health Section

Florida Public Health Association 2019-present

Florida Medical Association 2019-present

Travis County Medical Society 1995-2014
1998-2001     Committee on Legislation; Chair 1999-2000
1996-1999     Alternate Delegate to Texas Medical Association

Harris County Medical Society 1989-1995 and 2015-2016
2015-2016     Committee on Communication and Public Health
2015-2016     Emergency Care Committee, *ex officio*
1995          Delegate to Texas Medical Association
1994-1995     Board of Medical Legislation
1990-1995     Committee on Membership and Medical Precepts
1992-1993     Executive Board, Central Branch
1991-1994     Alternate Delegate to Texas Medical Association
1991          Medical Student Committee
1991          Chair, Young Physicians Section
2015–present  Committee on Communications and Public Health

Texas Medical Association 1987-2016
1995-2001     TexPAC (political action committee) Board of Directors
1994          Task Force on Hospital Staff-County Medical Society Relations
1993-1994     *ad hoc* Committee on Practice Parameters
1998          Council on Public Health
1991-1992     *ad hoc* Committee on International Medical Graduate Issues
1990-1994     TexPAC (political action committee) Vice-chairman
1990-1991     Young Physicians Governing Council
1989          Chairman, McLennan County MediCaring Task Force
1989-1991     Committee on Manpower
1989          Council on Socioeconomics
1987-1988     Committee on Health Insurance

American Medical Association 1987-1999, 2006-2008, 2010 -2011
1991          Executive Committee and Founding Member, Women's Caucus
1989-1994     Medical Schools Section, Delegate for University of Texas Health Science Center,
              Houston

American Academy of Family Physicians 1987-present
1993-1999      Peer Reviewer, Home Study/Self-Assessment Program
1991-1995      Task Force on Clinical Policies for Patient Care; Executive Committee
1993-1994      Vaginal Birth after Caesarean Section Policy Team

Texas Academy of Family Physicians 1987-2016
1997 -1998      Task Force on Governance
1997            Task Force on Computers
1996            Task Force on Health System Reform
1997            Committee on Public Health and Scientific Affairs Chairman, 1995-1997
1994-1996      Committee on Legislation and Public Policy Vice-chair, 1996
1990            Vice-Chairman, Student Affairs Committee


Names used due to marriage:

Julie Graves 1957-1984 and 2012 - present
Julie Graves McCraney 1984 - 1999
Julie Graves Moy 1999 – 2012


Address

8000 West Drive, #314
North Bay Village, FL 33141

Email:
drjuliegraves@gmail.com

Telephone

512-689-8001