# EXHIBIT M
# PART 2

Please note that care providers cannot require a sponsor to use their own travel agent if the sponsor is able to make alternative arrangements that would promptly discharge the child within a substantially similar time period.

Care provides must consult with their assigned Project Officer if they have any questions or concerns about using program funds to purchase air travel.

## 2.8.3 Closing the Case File

📖 **See Section 2.8.3 of the UAC Policy Guide**

### PROCEDURES

After the care provider exits the UAC from its program, the UAC's electronic record in the UAC Portal remains open. **After 45 days,** the UAC's electronic record in the Portal is closed.

## 2.8.4 Safety and Well-being Follow Up Call

📖 **See Section 2.8.4 of the UAC Policy Guide**

### PROCEDURES

Safety and Well-Being Follow Up Calls must be made for all UAC released to an individual sponsor. The purpose of the Safety and Well-Being Follow Up Call is to determine whether the child is still residing with the sponsor, is enrolled in or attending school (unless the child is 18 years old at the time of the call), is aware of upcoming court dates, and is safe (see **Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information**).

| Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information |
| --- |
| The EOIR Hotline—**1-800-898-7180**—can help case managers, sponsors, and UAC check the date for an upcoming hearing and provide other details related to an immigration case. The service is available in English and Spanish.

Callers enter the UAC's A number and are given the option to 1) find out the next court date (press "1"), 2) case processing information (press "2), or 3) find out whether a decision has been reached in a case (press "3"). |

1. **30 calendar days after release of a UAC**, the care provider's designated staff person calls the sponsor and the UAC to conduct the call. The care provider must make a minimum of 3 attempts to speak with both the sponsor and the UAC unless the phone is disconnected. The care provider must make all call attempts within the 7 days following the 30 day mark of the UAC's release. The care provider must not begin marking calls prior to that 30 day mark and must make the call even if the sponsor or the UAC reaches out to them independently. ⏰☎📖

2. During the call, the designated staff confirms that the sponsor still resides at the address on the *Verification of Release* form. If the sponsor has moved, the staff person documents if an updated address is provided in the UAC case file and reminds the sponsor to file a change of address with DHS. The designated staff also notifies the PRS provider about the new address if the case was designated for PRS. ☎👆✉

3. The designated staff makes every effort to speak to the sponsor and UAC separately on the following topics:

   Sponsor Topics
   - Is the child still residing with the sponsor?
   - Is the child demonstrating any behavioral issues?
   - Do you have any concerns regarding the UAC?
   - Is the sponsor aware of upcoming court dates?
   - Did the sponsor attend an LOPC presentation?
   - Has the sponsor been contacted and asked to pay fees or wire money related to the release of the child? (See **Appendix 2.1 How to Protect PII and Create Password Protected Files**)
   - (If the case was release with PRS) Did PRS provider contact the sponsor?

   UAC Topics
   - Is the child still residing with the sponsor?
   - Does the child feel safe?
   - Is the child enrolled in and/or attending school? (Unless the child has aged out) What school does he/she go to? What grade is he/she in?
   - Is the child aware of upcoming court dates?
   - Has the child been contacted and asked to pay fees or wire money related to their release?
   - (If the case was release with PRS) Did PRS provider contact the child?
   - Is the child being forced to work without pay or being forced to work to pay his/her share for rent and utilities or repay a debt? ☎

**Child May be in Immediate Danger**

1. If the follow up call indicates that the child may be in immediate danger (i.e., in immediate danger of serious harm), the designated staff does the following:
   - Calls 9-1-1 **immediately**.
   - Stays on the phone with the child until authorities arrive.
   - Reports any emergency involving 9-1-1 to the ORR National Call Center Help Line at 1 (800) 203-7001.
   - Complies with mandatory reporting laws, state licensing requirements, and federal laws and regulations for reporting to local child protective agencies and/or law enforcement.
   - If the sponsor is the perpetrator of the allegation, flags the sponsor and provides explanation as to why the sponsor is being flagged in the UAC Portal.
   - Emails notification to the FFS who approved the release (and the PRS provider, if applicable) and includes UAC name and A number; UAC date of release; sponsor/child contact phone number; sponsor address; previous ORR placement; summary of call; actions taken (including information on reporting the incident and any associated case numbers). 🕐☎🖱🖰✉

2. The FFS who is notified that the child may be in immediate danger **immediately** elevates the incident to the FFS supervisor, reviews the allegation, and ensures that the incident was reported to the appropriate authority to investigate. (The FFS also elevates any identified safety trends or issues to the FFS supervisor, such as an indication that the sponsor is involved in trafficking UAC.) If the care provider's designated staff did not report the allegation correctly, the FFS provides technical assistance. 🕐✉

3. If the care provider notifies the Intakes Hotline that the follow up call indicates that the child may be in immediate danger and was reported to 9-1-1, ORR intakes **immediately** notifies the FFS supervisor (or on-call FSS supervisor if after hours). The FFS supervisor **immediately** informs the senior FFS supervisor. 🕐☎

**Child May Be Unsafe**

1. If the follow up call indicates that the child may be unsafe (but not in immediate danger) the designated staff completes the steps in #1 above under Child May Be in Immediate Danger with the exception of dialing 9-1-1 and contacting the ORR Intakes Hotline. ☎🖰✉

2. The FFS who is notified that the child may be unsafe, reviews the allegation and ensures that it was properly reported and, if it wasn't, provides technical assistance. ✉

GOV-00024897

**Child May Have Been Sexually Abused or Harassed While in ORR Care**

1. If the follow up call by the care provider indicates that the child may have been sexually abused or harassed while in ORR care, the staff must:
    - Report the incident to the appropriate entities in accordance with mandatory reporting laws, state licensing requirements, and ORR policies and procedures. (See **Section 4.10: Sexual Abuse Reporting and Follow-Up of the UAC Policy Guide.)**
    - Complete a Sexual Abuse Significant Incident Report (SA/SIR) and report it to ORR in accordance with **Section 4.10: Sexual Abuse Reporting and Follow-Up.**
    - If the sponsor is the perpetrator of the allegation, flag the sponsor and provide explanation in the UAC Portal.
    - Email notification to the PO overseeing the shelter and to the FFS who approved the release and includes UAC name and A number; UAC date of release; sponsor/child contact phone number; sponsor address; previous ORR placement; summary of call; actions taken (including information on reporting the incident and any associated case numbers). 🕮☎🖰🖂

2. The FFS who received the notification that the child may have been sexually abused or harassed while in ORR care reviews the allegation and ensures that the incident was reported to the appropriate authority to investigate and follows up with the care provider where the alleged incident occurred to determine if the incident was previously reported and/or investigated while the UAC was in ORR care. If the allegation was **not** reported, the FFS provides technical assistance to help the care provider report the allegation, forwards the email notification to the ORR SA/SIR mailbox (**psac@acf.hhs.gov**) and ensures that it is appropriately investigated. 🖰🖂

**Additional Support Services or LOPC Appointment**

If the follow up call indicates that the sponsor and/or child would benefit from additional support or services or the sponsor has not attended an LOPC presentation, the care provider's designated staff refers the sponsor to the ORR National Call Center (800-203-7001) and emails the Call Center (**information@orrncc.com**) with the UAC name and A number; sponsor's name; sponsor/child contact phone number; sponsor address; date of referral; and reason for referral. ☎🖂

**Documenting the Call Outcome**

The care provider's designated staff documents the results of the call in the case management notes of the UAC's case file and in the *SWB Call Follow Up Report*. See **Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report**. 🖰🕮

**Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report**

**CARE PROVIDER:** In addition to documenting the safety and well-being follow-up in case management notes, the care provider is also responsible for documenting data points for all calls in this report.

The care provider submits the completed SWB Follow-Up Call Report to its assigned FFS, CFS, and the designated CFS Report Compiler for its region **no later than 2:00pm EST on the 8th of every month for UAC released two months earlier** (e.g., if the report is due October 8th, it would include entries for all UAC who were released in August). If the 8th falls on a weekend or holiday, the report will be due the next business day.

**ASSIGNED CFS:** The assigned CFS uses the SWB Call CFS Quality Control Checklist and the UAC Portal discharge report provided by the Data Team to perform a quality control check and work with the care provider to reconcile any data discrepancies. The assigned CFS submits final SWB Follow-Up Call Reports for their assigned programs to the CFS Report Compiler **no later than 5:00pm EST on the 9th of every month**. If the 9th falls on a weekend or holiday, the report will be due the next business day.

**CFS REPORT COMPILER:** The designated CFS Report Compiler 1) cuts and pastes data (using paste value function) from the program reports for their region into the master report, located in ORR Connect, 2) completes the CFS Notes tab, and 3) performs a final quality control check. The designated CFS Report Compiler performs these steps **no later than 5:00pm EST on the 10th of every month**. If the 10th falls on a weekend or holiday, the report will be due the next business day.

# 2.8.5 Post-Release Services for UAC with Zika Disease or Infection

📖 **See Section 2.8.5 of the UAC Policy Guide**

# 2.8.6 Release for Children with Legal Immigration Status

📖 **See Section 2.8.6 of the UAC Policy Guide**

## PROCEDURES

1. **If a care provider determines that a UAC has legal status, the case manager notifies the FFS immediately for consultation.** If a legal service provider, attorney of record, or a child advocate notifies the case manager that the UAC is on track to be granted

legal status, the case manager notifies the FFS of the need for a Post Legal Status Plan. The legal service provider, attorney or record, or child advocate works with the case manager and the FFS to develop the Post Legal Status Plan. See **Quick Glance: Milestones for Planning and Releasing Children with Legal Status**. ⏱✉

---

## Quick Glance: Milestones for Planning and Releasing Children with Legal Status

While abiding by attorney-client confidentiality standards, LSP or attorney of record for the child works with ORR to communicate information that may affect the child's legal status, including grant of SIJ status or notification of eligibility for benefits. The following milestones trigger the need for a Post Legal Status Plan for release.

- Child is eligible for Special Immigrant Juvenile (SIJ) status. This means a U.S. state juvenile court: makes the child dependent on the court (or places the child under the legal custody of a state agency or other individual appointed by the state); declares that the child cannot be reunited with one or both of his or her parents due to abuse, abandonment or neglect; and declares that it is not in the best interests of the child to be returned to his country of citizenship.
- UAC LSP files Form I-589, Application for Asylum and Withholding of Removal, with the local USCIS Asylum Office and has received notification of the interview date and time.
- UAC LSP files Form I-589, Application for Asylum and Withholding of Removal, in the immigration court at a master calendar hearing. This means the Immigration Judge has already set the merits hearing date (final court date).
- The UAC has filed a T visa with USCIS and attended the biometrics appointment (fingerprints) at a local USCIS office.
- The UAC has filed a U visa with USCIS and attended the biometrics appointment (fingerprints) at a local USCIS office.
- The child has been assigned a pro bono attorney.
- The child's attorney sends notice that the child has achieved a milestone.

---

2. The legal service provider, attorney of record, or child advocate works with the case manager and the FFS to develop the Post Legal Status Plan based on the template below. See **Fig. 2.19 Post Legal Status Plan Template.** The case manager emails the plan to the FFS supervisor for approval. The plan is tailored to the needs and pending legal status of the child. ⏱✉📄

---

## Fig. 2.19 Post Legal Status Plan Template

| Post Legal Status Plan | | |
|---|---|---|
| UAC name and A #: | FFS name: | Date: |
| Name of legal service provider (LSP) or attorney of record: | | |

GOV-00024900

| |
|---|
| **Name of child advocate, if applicable:** |
| **Describe the UAC's current immigration status (include reference to specific milestones or notices):** |
| **What is the expected release date for this UAC and what is his/her expected immigration status upon release? [insert date and information]** |
| **Describe the release plan based on the UAC's available options for release (i.e., release to a sponsor, licensed nonprofit, transfer to state care until age 18, URM, etc.):** |
| **Date of FFS supervisor approval:**<br>**Date of UAC release:**<br>**Insert entity/program/ that took custody of minor:** |

3. The FFS supervisor approves the plan and notifies the FFS. The FFS notifies the case manager. ✉

4. The case manager works with the FFS and with all relevant parties on the logistics for release of the minor from care as soon as the minor achieves legal status. ✉/☎▤✋

5. The case manager emails the parties included in the sample email below on notifications regarding minors who achieve legal status **24 hours prior to release of a minor from ORR care** and includes a copy of the *Discharge Notification Form*. The care provider follows standard operating procedures on items and documents that accompany UAC upon release, such as personal belongings, health records, original documents (birth certificates), medication supply. ⏰✉▤

| ✉ **Email Template: Notifications Regarding Minors with Legal Status** | |
|---|---|
| **From:** | Case Manager |
| **To:** | LSP or Attorney of Record, Child Advocate, if applicable |
| **Cc:** | FFS, CFS, PO |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Discharge Notification for [include last four digits of UAC A#] |

| | |
|---|---|
| **Body:** | See encrypted attachment with minor's information. Password will be sent shortly. |
| | On [insert date of release] [Insert UAC last name, last four digits of A number] will be released to [insert entity with responsibility for minor]. This release was due to the following change in legal status for the minor: [describe]. |
| **Attachments:** | *Discharge Notification Form* |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

6.  The case manager follows standard operating procedures for release and for closing out the case files. 🕮✉🗐🗐

# 2.9 Bond Hearings for Unaccompanied Alien Children

📖 **See Section 2.9 of UAC Policy Guide**

## OVERVIEW

Consistent with the United States Court of Appeals for the Ninth Circuit decision in *Flores v. Sessions*, unaccompanied alien children have the opportunity to seek a bond hearing before an immigration judge.

## PROCEDURES

Care providers must notify UAC of the opportunity for a bond hearing based on the procedures below. This section also covers procedures for processing requests and preparing for *Flores* Bond Hearings and includes Quick Glance guides summarizing those procedures.
See **Appendix 2.11 ORR HQ Bond Hearing Procedures**

**Providing Notice at Admission and Orientation**

1.  The care provider staff provides the UAC with the *Legal Resource Guide* **within 24 hours of the UAC's admission into the care provider's care and conducts an orientation for the UAC within 48 hours of UAC's admission**.

The *Legal Resource Guide* includes the *Request for a <u>Flores</u> Bond Hearing* for **secure, staff secure, and Residential Treatment Center facilities <u>only</u>**. ⊕ 📄

**NOTE:** A child in any other placement type (e.g., shelters, foster care) is only provided the *Request for a <u>Flores</u> Bond Hearing* if the UAC requests the form.

2. The care provider staff person providing the forms reads the contents of the form to the UAC in a language the child understands. The care provider staff person explains that the UAC should consult with an attorney (such as the ORR-funded Legal Service Provider) for any legal advice or questions regarding *Flores* bond hearings.  The care provider staff person informs the UAC that they may request a *Flores* bond hearing immediately, or that they can request one at a later time (including after consulting with an attorney). 📄

3. The UAC reviews the *Request for a <u>Flores</u> Bond Hearing* and checks off the appropriate boxes, and signs/dates the form. The care provider maintains the *Request* in the UAC's case file, unless the UAC declines to sign or fill out the document in which case the care provider notes in the UAC's case file that the child declined to sign or fill out the form. If the child later requests the *Request for a <u>Flores</u> Bond Hearing* the care provider must provide the form. 📄

### Providing Subsequent Notice

1. In addition to providing notice at admission/orientation, the case manager provides the notice for:
   - Any child in any placement type if a UAC asks for a *Request for a <u>Flores</u> Bond Hearing* **any time after** the Admission and Orientation process. ⊕ 📄
   - Any child in any placement type, if a child is **denied** release based on a finding that the child is a danger to the community. 📄

   In these cases, the case manager provides the *Request for a <u>Flores</u> Bond Hearing* when informing the UAC that his or her sponsorship has been denied. ⊕

2. The case manager informs the UAC that they may request a *Flores* bond hearing immediately, or that they can request one at a later time (including, after consulting with an attorney). The case manager explains that the UAC should consult with their attorney (if applicable) for any legal advice or questions regarding bond hearings. ⊕📖

3. The UAC reviews the *Request for a <u>Flores</u> Bond Hearing* and checks off the appropriate boxes, and signs/dates the form. The care provider maintains the

*Request* in the UAC's case file, unless the UAC declines to sign or fill out the document in which case the care provider notes in the UAC's case file that the child declined to sign or fill out the form. If the child later requests the *Request for a Flores Bond Hearing* the care provider must provide the form.

**NOTE:** It is important for ORR's record keeping that the UAC provides the date he or she signs the *Notice* document.

| Quick Glance: Bond Hearing Notifications | | |
|---|---|---|
| **When Required** | **Timeframe** | **Methods** |
| UAC placed in secure, staff secure, and RTC. | **Admissions and Orientation: Within 24-48 hours of the UAC's admission into the care provider's care.** | Oral notification with signed acknowledgment of *Request for a Flores Bond Hearing* by UAC. |
| UAC placed in other shelter types who request the notice. | At time of request. | *Request for a Flores Bond Hearing* with signed acknowledgment by UAC. |
| For any UAC in any placement type, if ORR denies release based upon danger to the community. | When informing UAC of denial of sponsorship. | *Request for a Flores Bond Hearing* with signed acknowledgment by UAC; includes notification that UAC may contact an attorney with questions. |

### Processing Bond Hearing Requests

1. After a child has completed a *Request for a Flores Bond Hearing* and requested a *Flores* Bond Hearing, the case manager completes the *ORR Motion Requesting Flores Bond Hearing for Unaccompanied Alien Child –Secure or Staff-Secure Custody* or *ORR Motion Requesting Flores Bond Hearing for Unaccompanied Alien Child (Non-Secure) Shelter Care*, depending on the child's placement type.

2. The case manager notifies ORR of the request at **ORRBondHearings@acf.hhs.gov  within 1 business day** (absent exigent circumstances) of the child making the request, using the email template below, and attaches both the *Request for a Flores Bond Hearing* and the *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child Secure or Staff-Secure Custody/(Non-Secure) Shelter Care.* 

## ✉ **Email Template: Bond Hearing Request**

| | |
|---|---|
| **From:** | Care Provider |
| **To:** | **ORRBondHearings@acf.hhs.gov** |
| **Cc:** | FFS, local Legal Service Provider or Attorney of Record |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] [last four digits of UAC A#] Bond Hearing Request |
| **Body:** | The above named UAC A# (XXX-XX1-234) has requested a bond hearing. The UAC is placed at [name of care provider facility]. |
| | The UAC is/is not represented by an attorney [if represented include attorney's name and contact information]. |
| | Password will be sent shortly. |
| **Attachments:** | *Request for a Flores Bond Hearing; ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child Secure or Staff-Secure Custody/(Non-Secure) Shelter Care* |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

### Preparing for *Flores* Bond Hearing Requests

1. Within **1 business day** of receiving notice that the hearing has been scheduled, ORR HQ notifies the minor's attorney (if applicable) and care provider of the date and time and location of the court. 🕐✉

2. The care provider and FFS respond to ORR HQ requests for information and evidence in a timely manner. See **Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community**. 🕐✉🗐

## Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community

- Juvenile court or criminal records
- Police records
- Intakes referral and placement records in the UAC Portal

- Placement Tool
- Initial Intakes Assessment
- UAC Assessment/UAC Case Review
- Relevant clinical notes
- Psychological records/reports
- Significant Incident Reports, as applicable
- 30 day Case Review(s)
- Other documents, if relevant

### *Flores* Bond Hearing Proceedings

1. The care provider follows standard immigration court transport procedures for transporting the UAC to their scheduled *Flores* bond hearing *if* there is a hearing scheduled. See **Section 3.3.14 Transportation Services**. 📖

2. The *Flores* bond hearing proceedings commence. After conclusion the immigration judge issues an order and delivers it to the ORR Representative. The ORR Representative keeps the original order for filing at HQ, and provides a copy to the care provider point of contact. 🗐

3. The care provider saves a copy of the order in the UAC's case file (the deadline to appeal is 30 days). If the UAC was not present at the hearing, the care provider verbally informs the UAC of the decision. ⊗

# Appendix 2.1 How to Protect PII and Create Password Protected Files

ORR expects all care providers, staff and contractors to protect personally identifiable information (PII) that is transmitted via email. Files that are uploaded to the secure UAC Portal do **not** need to be password protected.

PII should be included in the subject line or body of an unencrypted email to the extent necessary for users to access the information for authorized purposes. PII should be redacted as much as possible in unprotected emails. For example, only use initials or the last four digits of an alien registration number.  Neither the subject line nor the body of an unencrypted email should contain more than one type of sensitive PII.  For example, a name and an alien registration number should not both be used.

Any document that contains PII must be password protected. The password for the document must be emailed separately. When encrypting files for attachments, all care providers, staff and contractors should use a standard password that is universally used by all parties involved in the process. Care providers should contact their PO or their FFS for questions about this password. (Do not password protect any emails.)

Emails containing PII must never be sent to personal email accounts.

## What is PII?

**Personally Identifiable Information (PII)** – Information within an IT system or online collection: (1) that directly identifies an individual (e.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.), or (2) by which an agency intends to identify specific individuals in conjunction with other data elements (i.e., indirect identification). (These data elements may include a combination of gender, race, birth date, geographic indicator, and other descriptors.)

Please note that Alien Numbers are PII.

## How to Protect PII

Password protect all **attachments** and send the ORR UAC universal acceptance password by separate email. Do not include PII in the name of the attached document (i.e., no full names or Alien Numbers in the name of the document).

Use the following format to limit any identifying information regarding sponsors and UAC in the subject line of emails: sponsors, use initials in subject line; UAC, last four digits of A number.

When sending follow-up emails do not include PII.

## How to Password Protect Word Files

In the 2007 Microsoft Office system: Set a password in a Word document (To encrypt your file and set a password to open it):

1. Click the Microsoft Office Button , point to Prepare, and then click Encrypt Document.

2. In the Encrypt Document dialog box, in the Password box, type the standard UAC password and then click OK.
   (By default, this feature uses AES 128-bit advanced encryption. Encryption is a standard method used to help make your file more secure.)

3. In the Confirm Password dialog box, in the Reenter password box, type the password again and then click OK.

4. To save the password, save the file.

Remove password protection from a Word document

1. Use the password to open the document.

2. Click the **Microsoft Office Button**, point to **Prepare**, and then click **Encrypt Document**.

Defendants' Prod. Vol. 5                                                                                24908

GOV-00024908

3.  In the **Encrypt Document** dialog box, in the **Password** box, delete the encrypted password, and then click **OK**.

4.  Save the file.

**Password Protection for MS Word and Excel Files 2007:**
**https://support.office.com/en-us/article/Password-protect-documents-workbooks-and-presentations-ef163677-3195-40ba-885a-d50fa2bb6b68**

**Password Protection WinZip:**
**http://kb.winzip.com/help/help_actions_encrypt.htm**

## How to Password Protect Adobe Files

**Step 1:** Navigate to the main <u>Adobe website</u> and click the yellow **Free 30-day trial** button in the upper-left corner. Then, select a save location for the resulting file and follow the on-screen installation wizard to install the program as you would any other piece of software.

**Step 2:** Launch Adobe Acrobat, click the **File** menu in the upper-left corner, and select *Open*. Afterward, choose the PDF file you want to password protect from its respective save location and click the **Open** button.

**Step 3:** Click the **File** menu again when viewing the open document, followed by **Properties** and **Security.**



**Step 4:** Click the drop-down menu to the right of **Security Method,** then select **Password Security** from the resulting list of options.



**Step 5:** A window should appear prompting you for a password. Check the box beside **Require a password to open the document** and enter the UAC standard password into the corresponding text field.

## Appendix 2.2 How to Report Potential Fraud Schemes

*This information is also included in Section 5.7 of the UAC MAP.*

### OVERVIEW

**Types of Fraud Incidents**

There are criminals who target relatives of unaccompanied children entering the United States by demanding money from sponsors and/or family members, claiming the money will cover processing, reunification, and travel expenses needed to allow the children to be reunited with their families. They may also assert that these funds will enable the UAC to be released quicker to the prospective sponsor. **ORR DOES NOT CHARGE ANY FEE TO PROSPECTIVE OR APPROVED SPONSORS AS A CONDITION OF RELEASE OF AN UNACCOMPANIED CHILD. ANY DEMAND FOR PAYMENT OF FEES IS NOT AUTHORIZED BY ORR AND SHOULD NOT BE PAID.**

For example, an individual claiming to represent a charitable/non-profit organization may contact a potential sponsor and say that s/he can assist in processing and reuniting an unaccompanied child with his or her family. In this scenario, the individual falsely tells the potential sponsor that s/he needs to pay a fee to obtain the release of the child from ORR custody. Similarly, this individual may ask the potential sponsor to wire money to unknown persons in different cities.

This type of fraud is a serious crime and ORR fully cooperates with local and federal law enforcement for the investigation and prosecution of any individual(s) participating in the fraud scheme. If the fraud scheme involves care provider staff, ORR instructs the care provider to contact local law enforcement and to follow its local licensing guidelines regarding reports of inappropriate employee behavior. The care provider should also inform its local licensing agency that the case was referred to HHS/OIG and local law enforcement for investigation. Care providers should have internal protocols in place to address fraud schemes. A care provider facility must take disciplinary action including termination of any staff for criminal behavior, including fraud.

Care providers must take steps to:

1) Prevent these or other fraudulent practices by notifying all potential sponsors that ORR, its care providers, volunteer agencies, and grantees/contractors do not collect or require fees for any services related to the release of unaccompanied children from HHS custody.

2) Care providers should have written confirmation from staff members acknowledging the "Fraud Scheme" policy to be placed in employee files.

3) Immediately ensure the safety of children and sponsors by reporting any attempts to extort money or otherwise take advantage of unaccompanied children and sponsors to ORR, HHS/OIG, local law enforcement, state licensing, if Care Provider staff are involved.

## PROCEDURES

### Checking for Potential Fraud Schemes

1. The case manager includes the script that is noted in **2.2.2 Contacting Potential Sponsors** and informs all potential sponsors:

   - To report any suspicious calls or other contact received (e.g., emails, letters, instant messages) to the care provider facility and ORR directly.

   - Call the ORR National Call Center Help Line at **1 (800) 203-7001**. Sponsors may call the help line to inform ORR if a person defrauds or attempts to defraud them of money.

   Case managers should document any information they provide to a sponsor regarding the reporting of suspicious contacts, to include the sponsor's identity, date, time and the information provided.

2. Prior to every release, the case manager asks the sponsor if they have been contacted and asked to pay fees/money related to the release of the UC. If the answer is yes, gathers the following information, and documents the information that the potential sponsor provides on the *Sponsor Information* section:

   - UC full name, alien number, and date of birth

   - Time and date of the report

   - Name of the ORR care provider facility and care provider address (include city/state)

   - Name, telephone number and location of the sponsor;

   - Name, phone number, and other contact information given by the person/program who filed the report

   - Description of the event
     - Date and time of the alleged incident
     - If money was asked for from the sponsor
     - Whether money was actually paid by the sponsor
     - Amount and method of any payment made (e.g., wire transfer, money order)

- o If sponsor retained receipt/proof of payment application such as PayPal, Apple Pay, Google Wallet, etc., a copy should be provided.
- o Identifying information for receiving account of any payment made to include account name, account number, routing number, or other account identifiers.
- o Name and description of any individuals or organizations involved in the incident
  - If the sponsor was contacted by someone, name, phone number, and other contact information of the person/program who contacted the sponsor
  - Location where the alleged incident occurred (include location name, address, city, state)
  - Provide any additional identifying details such as places of birth, countries of citizenship, and alien numbers
  - Detail how the individual or organization is involved in the incident
  - o Name and alien number (if applicable) of any potential witnesses
- Any other details for which the caller has information. For example, if the sponsor was requested to wire funds, have the sponsor provide detailed information about the wire (name and address of recipient and whether it was money gram, western union, etc…). Many times the name and location of the caller is different than the name and address on the wire.
- Actions taken (including reports made to other individuals or entities and any associated case numbers)

### Reporting Potential Fraud Schemes

1. **Within 4 hours of the significant incident (or within 4 hours of the care provider becoming aware of the incident,** the case manager completes a Significant Incident Report (SIR) in the UAC Portal with all of the information gathered. 🕑 📋

2. The case manager notifies ORR based on the email template below and includes a copy of the SIR and notification email in the UAC's case file. ✉

| ✉ Email Template: Care Provider Notification to ORR of Potential Fraud Scheme | |
|---|---|
| **From:** | Case Manager |
| **To:** | **SIRHotline@acf.hhs.gov** |
| | Project Officer |
| | FFS Supervisor |
| | FFS |

|  | CFS<br>Case Coordinator |
|---|---|
| **Subject:** | Report of Significant Incident [include the event number (e.g., "Event 12345")] |
| **Body:** | Use Synopsis of Event from the UAC Portal and do not include UAC's full name or alien number |
| **Attachments:** | • *SIR*<br>• Relevant supporting documentation |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

3. The case manager reports the fraud allegation to local law enforcement and obtains and saves an incident report number or copy of the incident report from local law enforcement.

4. If care provider staff is involved, the case manager reports to state licensing and obtains and saves an incident report number or copy of the incident report.

5. The FFS reviews the fraud allegation in the SIR and ensures that the SIR is clearly written with all required information. (If SIR is missing information, the missing information will be submitted in an SIR Addendum.)

6. **Within 1 business day of receiving the SIR**, the FFS reports all types of fraud schemes, whether attempted or successfully perpetrated to HHS Office of the Inspector General (OIG) at **UAC@oig.hhs.gov** based on the email template below and instructs the case manager to save a copy of the reporting email to the UAC case file. ⊕✉

| ✉ **Email Template: ORR Notification to HHS OIG of Potential Fraud Scheme** | |
|---|---|
| **From:** | FFS |
| **To:** | **UAC@oig.hhs.gov** |
| **Subject:** | Report of Fraud [include the event number (e.g., "Event 12345")] |
| **Body:** | Use Synopsis of Event from the UAC Portal and do not include UAC's full name or alien number |
| **Attachments:** | • *SIR* |

- Relevant supporting documentation

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

7. If HHS OIG opens an investigation for the reported allegation, the FFS notifies the FFS supervisor, PO and CFS and these parties fully cooperate with the investigation. ✉

8. If the fraud scheme involves care provider staff, the FFS:

   - Follows up with HHS OIG **within 10 business days** to determine if the reported fraud allegation will be investigated further.

   - Instructs the care provider to follow their local licensing guidelines regarding reports of inappropriate employee behavior and to inform their local licensing agency that the case was referred to HHS OIG.

   - Provide the care provider with technical assistance.

   - If applicable, issues corrective action findings and requires the care provider to take appropriate action.

   - Ensure that program submit/have internal disciplinary protocols to address Fraud Scheme involving care provider staff.

GOV-00024915

## Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States

The chart below indicates the procedures and contact information for reporting suspected cases of document fraud by state. All reports should include any information about the suspect or the circumstances surrounding the fraud. The U.S. Department of Health and Human Services Office of the Inspector General should be copied in the correspondence with the state agency (**UAC@oig.hhs.gov**).

| State | Reporting Agency if Suspected Fraud |
|---|---|
| California | California Department of Motor Vehicles: Email **dlfraud@dmv.ca.gov**. |
| Maryland | Maryland Department of Transportation:  Email Eric Danz, the Director of Investigations and Security within the Office of Investigations and Internal Affairs, Maryland Motor Vehicle Administration, at **edanz@mdot.state.md.us**; CC: Paul Adams at **padams@mdot.state.md.us**. |
| Georgia | Georgia Department of Driver Services: Email **reportfraud@dds.ga.gov**, or call (678) 413-8766. |
| Florida | Florida Highway Safety and Motor Vehicles: Complete the "Fraud Investigation Request" form **by clicking here**, and email **Fraud@flhsmv.gov** or mail to Driver License Fraud Section, Room A327, Neil Kirkman Building, Tallahassee, Florida 32399-0570. |
| Virginia | Virginia Department of Motor Vehicles: Complete form LE 22 (use the search button to find), available at **https://www.dmv.virginia.gov/forms/default.aspx**, and email to **zerofraud@dmv.virginia.gov**. |
| New Jersey | New Jersey Motor Vehicle Commission Security & Investigations Office:  Email **TOCFRLAB@mvc.nj.gov** or call 609-777-3903. |
| New York | New York State Department of Motor Vehicles: Complete FI-17 Report of Unauthorized Use of License/Registration (must be notarized), available at **https://dmv.ny.gov/forms/fi17andfi17i.pdf**, and mail to New York State Department of Motor Vehicles, Division of Field Investigations, 6 Empire State Plaza, Albany NY 12228. Call the NYS DMV Division of Field Investigation with any questions, Tuesday, Wednesday, or Thursday from 9:00 a.m. to 4:00 p.m. at (518) 473-6464. |
| Texas | Texas Department of Public Safety, Intelligence & Counterterrorism: Email Erika Fisher, Texas Joint Crime Information Center, at **Erika.Fisher@dps.texas.gov**, or call (512) 462-6108. Include a brief synopsis of the event. |

# Appendix 2.4 Child Advocate Recommendation and Appointment Form

OMB Control No. 0970-0498
Expiration date: 7/31/2020



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (HHS)**
**OFFICE OF REFUGEE RESETTLEMENT (ORR)**
**DIVISION OF UNACCOMPANIED CHILDREN OPERATIONS (DUCO)**
**CHILD ADVOCATE RECOMMENDATION AND APPOINTMENT**

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 section 235(c)(6) authorizes the Secretary of Health and Human Services to appoint "independent child advocates for child trafficking victims and other vulnerable unaccompanied children." This appointment authority has been delegated to the Office of Refugee Resettlement (ORR). ORR will use this form to determine whether a Child Advocate shall be appointed and to document the Child Advocate's appointment for UAC in ORR/DUCO care and custody.

**SECTION 1** *(To be completed by the initial referrer)*
**A. UAC INFORMATION:**

| | | | |
|---|---|---|---|
| Name of UAC: | | A#: | |
| Date of Birth: | | Nationality: | |
| Language(s) spoken by UAC: | | Current location: | |
| Name of referrer: | | Date of UAC's arrival at care provider: | |
| Relationship of referrer to the UAC: | | Date of referral: | |

**B. CHECKLIST (PLEASE CHECK ALL THAT APPLY)**

- [ ] Is between the ages of 0-12
- [ ] Is placed in a residential treatment center or therapeutic facility
- [ ] Is pregnant or parenting
- [ ] Has a physical or mental disability
- [ ] Is a national from a country known to traffic children
- [ ] Has been identified as a possible child trafficking victim (Interim Assistance Letter, Eligibility Letter, etc.)
- [ ] Has a criminal or delinquency history and/or is placed in a staff secure care provider or secure care provider, and there are outstanding issues impacting the UAC's release or discharge plan
- [ ] Has been a victim of a crime
- [ ] Is not proficient in a language spoken by staff at the UAC's care provider, and for whom there is no accessible interpreter routinely available
- [ ] Will turn 18 in less than six (6) months of placement and for whom family reunification is unlikely
- [ ] Is identified as being eligible for legal relief
- [ ] Has a credible fear of returning to their country of origin and/or are seeking voluntary departure despite concerns about their safety in their home country
- [ ] Lacks appropriate legal representation, or for whom there is a good faith belief that the child's legal representative has ties to child trafficking or criminal activity

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .50/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

Defendants' Prod. Vol. 5

24917

GOV-00024917

☐ Is expected to have a protracted stay of over 120 days in ORR/DUCO custody

☐ Whose potential sponsor is undergoing a home study

☐ Is unable to make an independent decision

☐ Any other case where the UAC is considered to be exceptionally vulnerable. Explain here:

---

**SECTION 2** *(To be completed by the child advocate program)*

**A. Does your program recommend that ORR appoint a Child Advocate, and confirm that an individual Child Advocate is available for this UAC based on the criteria selected?**

☐ Yes          ☐ No

If No, explain here:

If more information needed, explain here:

**B. Name of child advocate program official making the recommendation**

Date

**C. Name of the individual Child Advocate identified for assignment**

**SECTION 3** *(To be completed by ORR/DUCO)*

A. Is the recommendation for the appointment of a Child Advocate approved for the above named UAC?

☐ Yes          ☐ No

If No, explain here:

*Signature of ORR/DUCO Division Director*          Oct 3, 2017

Date

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104-13) Public reporting burden for this collection of information is estimated to average .50/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

# Appendix 2.5 Sponsor Assessment Interviewing Guidance

## SPONSOR ASSESSMENT INTERVIEWING GUIDANCE

Case Managers and Clinicians must use the interview questions below when interviewing Sponsors in their assessment of a potential sponsor's suitability. Avoid reading the questions verbatim. Instead ask questions in a conversational manner and engage the sponsor. **During the interview, the interviewer must ask follow-up questions based on initial responses and obtain as much detail as possible.** Answers and information provided by sponsor must be documented in the *Sponsor Assessment.*

──────────────────── **INTERVIEW QUESTIONS** ────────────────────

### SPONSOR CULTURAL INFORMATION

*Use these questions to determine the Sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children. All responses must be documented in the Sponsor Cultural Information section of the Sponsor Assessment.*

- What languages and dialects do you speak?
- Are you spiritual or religious? *If yes-* What are your beliefs?
- What faith do you practice, if any?  How do you practice your faith?
- Are there traditions you have practiced, through your family or in your home country, which are important to you?  *If yes-* What are they?

- Are there religious or family traditions or practices that you expect the UAC to adhere to or participate in?
- Is there anything else you would like to share about your culture or background?

### FAMILY RELATIONSHIPS

*Use these questions to determine the sponsor's familial and other significant relationships in country of origin and in the U.S. All responses must be documented in the Family and Significant Relationships section of the Sponsor Assessment. If the Case Manager has already gathered information regarding the sponsor's family, it may not be necessary to ask some of these questions. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.*

**Family in Country of Origin**
- Do you have family in your home country?
  - Who are they and how often do you have contact with them?
  - How do you contact them (phone, social media, instant messaging)?

**Family in the U.S.**
- Do you have family in the U.S.?
  - Who are they and how often do you have contact with them?
  - Where does he/she live?
  - What is his/her name and age?
  - Do you have any relatives who are or were in ORR care? Do you know where they are?

**Spouse/Partner**
- Do you currently have a partner?
  - What is your partner/spouse's name and age?
  - Where is your partner/spouse living?
  - How long have you been together?
  - What is your relationship like with your partner/spouse?
  - Is your spouse/partner supportive of the ORR family reunification process?
  - Is the spouse/partner in agreement with taking in the UAC into the home?
  - Has the spouse/partner had any contact with the UAC?
  - Would the spouse/partner contribute with support of the UAC (e.g., supervision, babysitting, financial)?

**Children**
- Are you a parent to a child?
  - What is your child's name and age?
  - Where is your child?
  - Did your child come to the U.S. with you?
  - Who is the mother/father?
  - Who is currently caring for your child?
- How do you discipline your children?
- Have you or your spouse/partner ever had Child Protective Services involvement?
- Have you ever had any child or children removed from your custody? If so, why?
- Has any household member ever had a child or children removed from their custody? If so, why?

### HOUSEHOLD COMPOSITION

*Use these questions to determine the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease, or criminal convictions or charges. All responses must be documented in the Household Composition section of the Sponsor Assessment.*

- Who lives in the home?

- What will the sleeping arrangements be for the minor?

Sponsor Assessment Interviewing Guidance, Rev. 06/34/2019                                       Page 1 of 7
ORR UAC/5-1

- What is his/her name and age?
  - What is the household member's relationship to the minor?
  - What is the household member's relationship to you?
  - What has your relationship been like with him/her?
  - How long have you known him/her?
  - Will the household member be helping to care for the UAC or babysit?
  - Does the household member work and/or contribute financially to the household?
  - Does any person in your household have a serious contagious disease (e.g., TB, AIDS, hepatitis)? If so explain.
- Describe your home (e.g., Apartment, duplex, trailer, townhouse, running water, working electricity, swimming pool, pets, how many rooms, bathrooms).

- Do you currently share your bedroom?
  - Will the minor be sharing the room with anyone or will the minor have his/her own room?
- How do you expect the UAC to contribute to your household?
  - Financially, through wages
  - Child care
- Does anyone in the household have a serious, contagious disease? If yes, explain.
- Do any of the occupants have criminal convictions or charges, other than minor traffic violations? If yes, explain.

## PREVIOUS SPONSORSHIP ATTEMPTS

*Use these questions to determine if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, use these questions to assess the safety and well-being of previously released minor to confirm the provision of physical/mental well-being, appropriate home accommodations, adequate supervision, attendance to school, accompaniment to immigration court hearings, and provision of a caring and secure/protective environment. All responses must be documented in the Previous Sponsorship section of the Sponsor Assessment.*

**Sponsor's Previous Sponsorship Attempts**
- Have you ever attempted to sponsor a child from ORR, but decided to withdraw your application?
  - If yes, then why did you withdraw?
- Have you ever been denied sponsorship by ORR?
  - If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Household Members Previous Sponsorship Attempts**
- Has anyone who live in your home ever attempted to sponsor a child from ORR, but decided to withdraw their application?
  - If yes, then why did they withdraw?
- Were they ever denied sponsorship by ORR?
  - If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Former UAC's Safety and Well-Being**
- Did the sponsor undergo a home study? If so why?
- Is or has the child received Post Release Services?
- Is the child enrolled in or attending school?
- When is the child's upcoming court date?
- Do you have school enrollment records?
- Do you have physical proof that the minor is/has attended school and court?
- Did the sponsor attend an LOPC presentation?
- Have you been contacted and asked to pay fees or wire money related to the release of the child?

## PROOF OF IDENTITY

*Use these questions in conjunction with documentation provided by the sponsor to assess the Sponsor's identity. The interviewer must be cognizant of the Sponsor's familiarity with and connections with the reported country of origin; attitude; behavior; speech; affect; mood; thought process and thought content; perception; memory and concentration; and insight and judgment during the entirety of the interview. The interviewer's assessment of these elements must be documented in the Proof of Identity section of the Sponsor Assessment.*

**Life in Home Country**
- Where did you live before you arrived in the U.S.? (If U.S. Citizen modify question to: Where did you grow up in the U.S.?)
  - How long did you live there?
  - With whom did you live?
- What was your experience like there?

**The Journey (If not born in U.S.)**
- When did you first come to the U.S.?
  - How old were you when you first traveled to the U.S.?
- What brought you to the U.S.?
  - What were you planning on doing in the U.S.?
  - Where did you live?

Defendants' Prod. Vol. 5                                              24920

GOV-00024920

- Have you lived anywhere else? With whom? When and for how long?
- With whom did you live? Did you know them?
- When did you first leave home country?
  - How long did the trip take?

## PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP

*Use these questions in conjunction with documentation provided by the sponsor to determine the Sponsor's immigration status or U.S. citizenship. The interviewer's assessment of these elements must be documented in the Proof of Immigration Status or U.S. Citizenship section of the Sponsor Assessment.*

- Are you a U.S. citizen?
- Have you ever applied for immigration relief?
  - What type of relief did you apply for?
  - What is the status of your application?
  - Were you given any forms or documents?
- Have you ever been apprehended by a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?
- Have you had any other type of interaction with a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?

## PROOF OF RELATIONSHIP

*Use these questions in conjunction with documentation provided by the sponsor to probe the sponsor's familial and interpersonal relationship with the UAC in order to verify the type of relationship. All responses must be documented in the Proof of Relationship section of the Sponsor Assessment.*

- What is the sponsor's relationship with the child?
- Has the sponsor ever met the child?
- When did the sponsor first meet the child?
- When was the last time the sponsor saw the child?
- When was the last time the sponsor's partner saw the child?
- How frequently does the sponsor visit the child?
- Has the sponsor ever visited the child while he/she was living in his/her country of origin?
- When did the sponsor last visit the child's country of origin?
- How frequently does the sponsor visit the child's country of origin?
- How did the child and sponsor keep in contact? How often?
- Did the sponsor financially provide for the child? If so, amount and how often?
- Has the sponsor ever met a family member of the UAC? Can the family member be verified as related to the UAC?
- Has the child ever lived in the same home as the sponsor?
  - How long did the child live with the sponsor?
  - Did the sponsor ever act as a primary caregiver while living with the child?
  - How long did the sponsor act as the child's primary caregiver?
  - Where were the child's biological parents at the time?
  - Why were the child's biological parents unable to provide primary care for the child?
  - Did the child's biological parents ask/consent to the sponsor being the primary caregiver?
  - Who took responsibility for the following while the child lived with the sponsor: bathing and feeding the child, health care arrangements, supervising and disciplining the child, financial support for the child, and consoling/comforting the child?
  - Did the sponsor ever sexually or physically abuse the child, or through negligence allow others to sexually or physically abuse the child?
  - Did the sponsor ever abandon or mistreat the child?
- Why does the sponsor want to sponsor the UAC?
- Does the sponsor expect the UAC to work?

## PROOF OF ADDRESS

*Use these questions to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. . The interviewer must be cognizant of the sponsor's familiarity with and connections with the reported residence. The interviewer's assessment of these elements must be documented in the Proof of Address section of the Sponsor Assessment.*

- Where do you currently live in the U.S.?
  - How long have you lived there?
  - With whom do you live?
  - Do you live in a house or apartment complex?
  - How many bedrooms does the residence have?
  - Do you own where you live or rent?
  - What is the current sleeping arrangement?
  - Do you receive your mail at a different address?
- How many schools are in the area?
- What is the crime level in the area?
- How far away is the nearest hospital?
- What is and how far away is the nearest grocery store?
- Have you lived anywhere else in the U.S.?
  - Where did you live in the U.S.?
  - When and how long did you live there?
  - With whom did you live?

Defendants' Prod. Vol. 5

24921

GOV-00024921

## PROOF OF STABILITY

*Use these questions to assess the sponsor's ability to support and financially provide for the minor while in their care. The interviewer's assessment of these elements must be documented in the Proof of Stability section of the Sponsor Assessment.*

- Does the sponsor have a job?
- Does the sponsor have financial needs?
- Does the sponsor have adequate housing?

## SPONSOR CARE PLAN

*Use these questions to ensure that the sponsor's plan to care for the minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs. Discusses with the sponsor the UAC's criminal offenses, behaviors and concern(s) related to the victims, the community and to the UAC as well as the obligations of the UAC and sponsor to address causes of behavior and prevent recidivism by participating in post release services. Assists sponsor in identifying community service providers and programs, and encourages sponsor to become aware of and participate in applicable services such as parenting classes/services, gang prevention services, substance abuse services, other forms of psycho-education in preparation for UAC's release. All responses must be documented in the Sponsor Care Plan section of the Sponsor Assessment.*

**Care Plan**
- Tell me about your plans to address the UAC's educational needs.
  - What school will the minor be attending?
  - What do you know about the school enrollment process?
  - Who will transport the UAC to and from school?
  - Who will supervise the UAC before and after school?
- Are you aware of any special needs the UAC may have that may require special attention?
  - Does the minor have any medical or mental health issues currently?
  - Does the minor have any prior medical or mental health issues?
  - How were these needs addressed in home country or previous residence?
  - Tell me about your plans to address the UAC's medical and mental health care needs and counseling needs.
  - What are the medical services in your area?
  - What are the counseling services in you area?
- Tell me about the types of community resources and services that you plan to access to address the UAC's needs.
  - What types of community resources and services to you live near?
  - What community resources do you currently utilize?
  - What types of community resources have you identified for the UAC? (e.g., school, medical clinic, mental health services agency)
  - If you needed medical assistance, where would you go? How close is that medical service to your home?
- Tell me about the minor's personality, behavior, strengths, and overall functioning.
  - How would you describe the minor's personality?
  - How does the minor get along with adults and with other children?
  - What kind of feedback or discipline does the minor best respond to?
- How do you plan to manage the minor's behaviors?
- Describe the minor's special interests, talents, hobbies, including likes and dislikes.
- Does the minor have any criminal history or behavior issues that you are aware of?
- Did you read the Sponsor Handbook and watch the Sponsor Video?
- Will you accept assistance from Post-Release Service providers, if needed?

**Safety Plan**
- Explain how you plan to ensure the safety of the minor.
  - Are you aware of any abuse or any significant traumatic events?
  - Are you aware of any safety concerns for the UAC? Has anyone threatened the minor or their family? If so, what is the safety plan?
  - Are you aware of any history of gang involvement, violence, or juvenile justice history?

**Supervision Plan**
- Do you have family or friends nearby that will be helping to care for the minor? If yes, list name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.
- Explain how you plan to supervise the minor.

**Alternative Caregiver Plan (only for sponsors who are not U.S. citizens or Lawful Permanent Residents)**
- Who will care for the minor in the event that you need to leave the country? List name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.

## CRIMINAL HISTORY

*Use these questions to sponsor's self-disclosures of any criminal charges, sexual offenses or child abuse/neglect charges or arrests. Ask specific questions that may reveal possible disqualifying factors under Criteria for Release Denial. ❖ ORR Policy Guide, Section 2.7.4 Deny Release Request*

- Have you had any type of encounter with law enforcement (uniformed or not)?
- Have you ever been fingerprinted?

Sponsor Assessment Interviewing Guidance, Rev. 06/14/2019
ORR UAC/S-1

Page 4 of 7

Defendants' Prod. Vol. 5

24922

GOV-00024922

- ○ Have the police ever visited your home? If so, please provide details.
  - ○ Do you have any criminal history in your country of origin?
  - ○ Do you have any criminal history in the United States?
  - ○ Have you ever been arrested/hand cuffed?
  - ○ Have you ever been stopped by the police while driving a vehicle or as a passenger?
  - ○ Were you ever in a public place/park or car drinking or in possession of an open alcoholic container which resulted in the police being called or law enforcement approaching you for your information, incarceration or citation?
- Have you ever been arrested or charged with a crime? *If yes, for each charge ask:*
  - ○ What happened?
  - ○ When did this happen? How old were you?
  - ○ Where did this happen (country, state, city, local town/province/neighborhood)?
  - ○ Who were the victims (relation to UAC, names)?
  - ○ What was the outcome in court?
  - ○ Have you ever been assigned to a probation/parole officer?
- Are you on probation or parole? *If yes, ask:*
  - ○ When did probation/parole start?
  - ○ How long will it last and in what state or country?
  - ○ What are the conditions of your probation/parole (special classes, community service)?
  - ○ Do you know the name and number of your probation/parole officer?
- Have you ever been detained for drinking, driving under the influence of alcohol/drugs?
- Have you ever been held in juvenile detention or adult jail? *If yes, ask:*
  - ○ How many times?
  - ○ Where were you held?
  - ○ How long were you incarcerated?
  - ○ What were the dates of incarceration, as you can best remember?

- Have you experienced any violence or threats while in government custody (local, state, DHS custody, and OCS custody)? *If yes, ask:*
  - ○ What happened?
  - ○ Where did this happen?
  - ○ When did this happen?
- Have you ever had an argument with a paramour/partner/spouse that resulted in the police being called? If so, please provide details.
- Have you ever been involved in a gang? *If yes, ask:*
  - ○ What gang(s) and for how long?
  - ○ When and how did you become involved?
  - ○ What was your involvement in the gang?  Did you have specific roles or responsibilities?  What were these roles and responsibilities?
  - ○ Did the gang encourage or require criminal behavior?
  - ○ Do you have any gang tattoos?
  - ○ Were you trained to build and use weapons (guns, bombs, machetes)?
- Are any of your relatives involved in gang activities? *If yes, ask:*
  - ○ Which relative(s)?
  - ○ What gang(s) and for how long?
  - ○ What is their involvement in the gang?
- Have you ever committed a crime for which you were not caught? *If yes, ask:*
  - ○ What happened?
  - ○ When did this happen? How old were you?
  - ○ Where did this happen (country, state, city, local town/province/neighborhood)?
  - ○ Who were the victims (relation to UAC, names)?
- Have you ever caused bodily harm to another person(s) or animal(s)? *If yes, ask:*
  - ○ What happened?
  - ○ When did this happen? How old were you?
  - ○ Where did this happen (country, state, city, local town/province/neighborhood)?
  - ○ Who were the victims (relation to UAC, names)?
- Have you ever used a different name or date of birth?

### UAC JOURNEY AND APPREHENSION

*Use these questions to determine if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the UAC Assessment responses. All responses must be documented in the UAC Journey and Apprehension section of the Sponsor Assessment.*

**Life in Home Country**
- Where did the minor live before arriving in the U.S.?
  - ○ How long did the minor live there?
  - ○ With whom did the minor live with?
- Whose decision was for the UAC to live with the said certain individuals?
- Did the UAC attend school, work, or both?
- Did the UAC have any hobbies in home country? What were they?
- Has the UAC lived anywhere else?  With whom? When and for how long?
- Who was the UAC living with when he/she decided to leave his/her home country?

**The Journey**
- Do you know why the UAC decided to travel to the U.S. at this time?
  - ○ What is the UAC planning on doing in the U.S.?

- How did the UAC get to the U.S.?
  - ○ Did anyone arrange travel for the UAC? If yes – Who? Did you arrange the UAC's travel?
  - ○ Did the UAC travel with anyone (such as siblings, parents, family members, and children)? If so, do you know where they are now?
  - ○ Did you provide the UAC guidance about what steps to take when planning to enter the U.S.?
  - ○ Was a Coyote/foot guide/smuggler involved?
  - ○ What type of transportation was used?
  - ○ Were multiple people involved in the transportation during various legs of the journey?
  - ○ Did the UAC have to work or exchange favors to finance the trip?
  - ○ Were you in communication with the UAC during their journey?
  - ○ Did the UAC share with you any hardships during the journey?
  - Where was the UAC planning on living in the U.S. and with whom?

Sponsor Assessment Interviewing Guidance, Rev. 06/14/2019
ORR UAC/5-1

Page 5 of 7

- When did the UAC leave home country?
- Who paid for the UAC's trip to the U.S.?
  - How much did the UAC's journey cost?
  - Did you pay for the UAC's travel?
  - Does the UAC or UAC's family to owe money to cover the cost of the UAC's travel?
  - Do you know how the UAC or the UAC's family paid for the UAC's travel expenses?

- Did the UAC plan to come live with you? If not, then who? If so, then why?
- What arrangements have you made for the UAC?
- Did anyone arrange for the UAC to work after arriving to the US?
- Who arranged the work?
- What type of work is the UAC expected to be doing?
- Will the UAC be paid?
- Did the UAC's parents plan for the UAC to come live with you? If not, then who? If not, then why not? If so, then why?

**Additional Questions**
- Had the UAC been to the U.S. before this journey?
  - When did the UAC come to the U.S.?
  - Who did the UAC travel with then?
  - For how long was the UAC in the U.S.?
  - What brought the UAC here then?
  - Why did the UAC leave the U.S.?

## HUMAN TRAFFICKING

*Use these questions to assess for trafficking concerns in the sponsors country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time. All responses must be documented in the Human Trafficking section of the Sponsor Assessment.*

**Sponsor's Journey to the U.S. (if applicable)**
- When and why did you decide to travel to the U.S.?
- Who planned your journey?
- Did the arrangements change during the journey? If yes, how?
- Did anyone pay for your travel to the U.S.?
  - Does that person need to be paid back?
  - Is there a plan for that person to be paid back?
  - What do you believe will happen if that person is not paid back?
- Does your family or a family friend owe money to anyone for the journey? If yes, how much?
- Did you ever have to depend upon non family members to provide basic needs such as clothes, food, and housing?
- Did you experience any challenges, trauma, or abuse by family in home country?
- Where did you first live in the U.S. and with whom?
- Have you traveled back to your country of origin since your arrival to the U.S.?

**Coercion Indicators**
- Did anyone threaten you or your family?  Who made the threats? What happened?
- Were you ever physically harmed? Who harmed you? What happened?
- Was anyone around you ever physically harmed? Who was harmed? What happened?
- Were you ever held against your will? Who held you? Where? What happened?
- Did anything bad happen to anyone else in this situation or anyone else who tried to leave?  What happened exactly? How many other people were in this situation?
- Did anyone ever keep/destroy your documents?  Who did this and what documents?

**Debt Bondage/Labor Trafficking Indicators**
- Did you perform any work or provide any services?
- Who arranged the work?
- What type of work did you perform and where?
- How often did you have to work (hours per day, days per week, what times of day/night)?
- Did work conditions change over time?
- Is there a debt? Do you owe money? If yes, ask:
  - What is the amount of the debt?
  - Has any debt amount increased?
  - By how much?
  - When did it increase?
  - Why did it increase?
- Have you or your family ever been threatened over payment or work for the journey?  Who threatened you and how?
- What did you expect would happen if you left the job or stopped working?
- Were you ever made to work or do anything you did not want to do?
- Did you receive pay or did someone else keep the pay?
- Were you paid what was promised when you started working?
- Were expenses taken out of the pay?  What were the expenses for?
- How did you get to the work site?
- Where did you live while working? Describe your living arrangements.
- Was your freedom of movement ever restricted or closely monitored (e.g., with security cameras)?
- Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?
- Did anyone arrange for you to work after arriving in the U.S.? Who arranged the work? What type of work do you expect to be doing? Will you be paid?

Defendants' Prod. Vol. 5                                                                                                   24924

GOV-00024924

- Did anyone ever threaten to report you to the police/immigration? Who did this and what did they say exactly?
- Are you worried anyone might be trying to find you? Who?

**FRAUD**

*Use these questions to determine if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process. All responses must be documented in the Fraud section of the Sponsor Assessment.*

- Have you ever been contacted and asked to pay fees/money related to the release of the minor? *If yes and if applicable, ask:*
  - When did this happen (date and time)?
  - Where did this happen?
  - What name and contact information did the individual give you?
  - What specifically did they ask you to do?
  - Did you give any money to the individual? What amount?
  - How did you pay (e.g., wire transfer, money order)? Do you have proof of payment?

- Do you have any identifying information for the receiving account (e.g., account number, account name, routing number)?
- Please name and describe any individual or organizations involved in the incident.
- Are there any potential witnesses? Do you have contact and identifying information on them (e.g., name, phone number, address, SSN/A#)?
- Are there any other details you can provide?

Sponsor Assessment Interviewing Guidance, Rev. 06/14/2019
ORR UAC/5-1

Page 7 of 7

Defendants' Prod. Vol. 5

24925

GOV-00024925

Page318

## Appendix 2.6 Sponsor Assessment

OFFICE OF REFUGEE RESETTLEMENT
SPONSOR ASSESSMENT

### UAC BASIC INFORMATION

| | | | |
|---|---|---|---|
| First Name: | | Status: | ADMITTED |
| Last Name: | | AKA: | |
| Date of Birth: | | Gender: | select an item |
| A #: | | LOS: | |
| Age: | | Current Program: | |
| Country of Birth: | | Admitted Date: | |

### SPONSOR BASIC INFORMATION

| | | | |
|---|---|---|---|
| First Name: | | AKA: | |
| Last Name: | | A #: | |
| Date of Birth: | | Country of Birth: | |
| Age: | | Country of Residency: | |
| Gender: | select an item | Primary Sponsor: | ☐ Yes  ☐ No |

### SPONSOR CULTURAL INFORMATION

Use this section to document the sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children.

| | |
|---|---|
| Primary Language Spoken: | Religious Affiliation: |
| Other Languages Spoken: | |
| Additional cultural information: | |

### FAMILY RELATIONSHIPS

Use this section to document the sponsor's familial and other significant relationships in country of origin and in the U.S. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.

Genogram completed? *(Required for distant relative Cat 3 sponsors)*   ☐ Yes  ☐ No

**Family in Country of Origin**

Do you have family in your home country? *(If yes, describe below)*   ☐ Yes  ☐ No
Additional information on family in country of origin:

**Family and Family Friends in the U.S**

Do you have family or family friend in the U.S.? *(If yes, list below)*   ☐ Yes  ☐ No

| Name | Age | DOB | Gender | Relationship to Minor |
|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Do you have any relatives who are also in ORR care?   ☐ Yes  ☐ No
   *If yes, do you know where they are?*
Additional information on family and family friends in the U.S.:

Sponsor Assessment, Rev. 06/24/2019                                         Page 1 of 11
ORR UAC/S-5

GOV-00024926

**Spouse/Partner**

Do you have a partner? *(if yes, answer below questions)* ☐ Yes ☐ No

*What is your partner's name and age?*

*Do you live with your partner?* ☐ Yes ☐ No

*If no, where does your partner live?*

*Are you married to your partner?* ☐ Yes ☐ No

*Are you legally married or is the relationship a partnership or cohabitation?*

*What is your relationship like with your spouse?*

Have you ever been involved in a Dissolution of Marriage case? ☐ Yes ☐ No

*If yes, explain:*

Additional information on the sponsor's partner:

**Children**

Do you have any children *(if yes, list below)* ☐ Yes ☐ No

| Name | Age | Gender | Current Location | Status/Relationship |
|---|---|---|---|---|
| | | Click here to enter a date | Choose an item. | | |
| | | Click here to enter a date | Choose an item. | | |
| | | Click here to enter a date | Choose an item. | | |
| | | Click here to enter a date | Choose an item. | | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Did any of your children come to the U.S. with you? *(if not born in U.S.)* ☐ Yes ☐ No

Do you have any children living in your home country? ☐ Yes ☐ No

Have any of your children ever been in ORR care? ☐ Yes ☐ No

Who is caring for your children?

Additional information on the sponsor's children:

How do you discipline your children and how do you plan to discipline the minor?

Have you or your spouse/partner ever had Child Protective Services involvement? ☐ Yes ☐ No

*If yes, explain:*

Have you ever been involved in a child support case? ☐ Yes ☐ No

*If yes, explain:*

Do you provide court ordered financial support to your children? ☐ Yes ☐ No

*If yes, explain:*

Have you ever had a child removed from your custody? ☐ Yes ☐ No

*If yes, why? (Obtain documentation)*

Have any of your household members ever had a child removed from his/her custody? ☐ Yes ☐ No

*If yes, why? (Obtain documentation)*

**HOUSEHOLD COMPOSITION**

Use this section to document the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease, or criminal convictions or charges.

Does anyone else live in your home? *(if yes, list below)* ☐ Yes ☐ No

| Name | Age | DOB | Gender | Phone number | Valid Identity Document Number | Relationship to Sponsor | Employed | Voluntary or Required Consent | Background Check |
|---|---|---|---|---|---|---|---|---|---|

Sponsor Assessment, Rev. 05/24/2019
ORR UAC/S-5

Page 2 of 11

| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Describe your home:

Describe where the minor will sleep:

How do you expect the UAC to contribute to your household?

Does anyone in the household have a serious, contagious disease?   ☐ Yes ☐ No

*If yes, explain:*

Do any of the occupants have criminal convictions or charges, other than minor traffic violations?   ☐ Yes ☐ No

*If yes, explain:*

## PREVIOUS SPONSORSHIP

Use this section to document if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, document the status of this child's safety and well-being.

### Sponsor

Have you ever attempted to sponsor another child that is/was in ORR care?   ☐ Yes ☐ No
*(If yes, list below and answer the following questions)*

| Name | A # | DOB | Gender | Minor's Relationship to UAC | Current Location | ORR Release Decision | Date of Discharge | Discharge Program Name |
|---|---|---|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Have you ever attempted to sponsor a child from ORR, but decided to withdraw your application?   ☐ Yes ☐ No

*If yes, then why did you withdraw?*

Have you ever been denied sponsorship by ORR?   ☐ Yes ☐ No

*If yes, then why did ORR deny your sponsorship application?*

How many children did you sponsor?

Is the child still residing with you?   ☐ Yes ☐ No

*If no, explain:*

Did you undergo a home study?   ☐ Yes ☐ No

*If yes, why?*

Is/has the child received Post Release Services?   ☐ Yes ☐ No

Is this child enrolled in or attending school?   ☐ Yes ☐ No

Sponsor Assessment, Rev. 06/24/2019
ORR UAC/S-5

Page 3 of 11

When is the child's upcoming court date?

Did you attend an LOPC presentation? ☐ Yes ☐ No

Describe the UAC's current safety and well-being since release from ORR care to the sponsor:

## Household Members

Have any of your household members attempted to sponsor another child that is/was in ORR care? ☐ Yes ☐ No
*(If yes, list below and answer the following questions)*

| Name | A # | DOB | Gender | Sponsor's Relationship with UAC | Current Location | Child Release Position | Date of Discharge | Discharge Program Name |
|------|-----|-----|--------|-------------------------------|------------------|----------------------|-------------------|------------------------|
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Did he/she ever attempted to sponsor a child from ORR, but decided to withdraw your application? ☐ Yes ☐ No

   *If yes, then why did he/she withdraw?*

Has he/she ever been denied sponsorship by ORR? ☐ Yes ☐ No

   *If yes, then why did ORR deny his/her sponsorship application?*

How many children did he/she sponsor?

Is the child still residing with him/her? ☐ Yes ☐ No

   *If no, explain:*

Did he/she undergo a home study? ☐ Yes ☐ No

   *If yes, why?*

Is/has the child received Post Release Services? ☐ Yes ☐ No

Is the child enrolled in or attending school? ☐ Yes ☐ No

When is the child's upcoming court date?

Did he/she attend an LOPC presentation? ☐ Yes ☐ No

Describe the UAC's current safety and well-being since release from ORR care to the sponsor:

## PROOF OF IDENTITY

Use this section to document information and documents provided by the sponsor to establish the sponsor's identity and confirm that the sponsor's identity was verified. If the sponsor's identity was unable to be verified, provide an explanation under the "Additional information on identity" section below.

### Sponsor

Sponsor's identity is verified: ☐ Yes ☐ No

List proof of identity documents provided:

| Identity Document Type | Expiration date (if applicable) | Document verified by Government Agency | | Is there a... | |
|------------------------|--------------------------------|---------------------------------------|--|---------------|--|
| Choose an item. | Click here to enter a date. | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| Choose an item. | Click here to enter a date. | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| Choose an item. | Click here to enter a date. | ☐ Yes | ☐ No | ☐ Yes | ☐ No |

Sponsor Assessment, Rev. 05/24/2019
ORR UAC/5-5

Page 4 of 11

Defendants' Prod. Vol. 5
24929
GOV-00024929

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

**Household Members**

Household Members' identity is verified:  ☐ Yes  ☐ No

List proof of identity documents provided:

| Household Member Name | Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Expires ID |
|---|---|---|---|---|
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

**Adult Caregivers**

Adult Caregiver's identity is verified:  ☐ Yes  ☐ No

List proof of identity documents provided:

| Adult Caregiver Name | Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Expires ID |
|---|---|---|---|---|
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional information on identity:

### PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP

Sponsor Legal Status:     select an item

Sponsor's legal status verified with non-expired document(s):   ☐ Yes  ☐ No

List proof of immigration status or U.S. citizenship document(s) provided:

### PROOF OF RELATIONSHIP

Use this section to document information and documents provided by the sponsor to establish the sponsor's relationship to the UAC and to confirm that the relationship was verified. If the sponsor's relationship to the UAC was unable to be verified, provide an explanation under the "Explain how the sponsor is related to or knows the UAC and/or the UAC's family" section below.

Sponsor's Relationship to UAC:     select an item                    Sponsor Category:     select an item

Sponsor's Relationship to UAC is Verified:   ☐ Yes  ☐ No

List proof of relationship documents provided:

| Relationship Document Type | Issuance Date (if applicable) | Date Document Issued (if applicable) | Verified by Government Agency (if possible) | Expires ID |
|---|---|---|---|---|
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

Sponsor Assessment, Rev. 06/24/2019                                         Page 5 of 11
ORR UAC/S-5

Defendants' Prod. Vol. 5                                                                  24930

GOV-00024930

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Explain how the sponsor is related to or knows the UAC and/or the UAC's family:

## PROOF OF ADDRESS

Use this section to document information and documents provided by the sponsor to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. If the sponsor's address was unable to be verified, provide an explanation under the "Additional proof of address information" section below.

**What is your current address and contact information?** *(enter below)*

| | |
|---|---|
| Address: | Home Phone: |
| City: | Email: |
| State: | Work Phone: |
| Zip Code: | Fax: |

How long have you lived at the current address?

Describe the area/neighborhood where you reside?

Do you receive your mail at a different address?    ☐ Yes   ☐ No

*If yes, what is the address that you use to receive mail?*

Was address where the sponsor currently resides verified as a residence on Google Maps?    ☐ Yes   ☐ No
Was address where the sponsor currently resides verified as a residence on Google Earth?    ☐ Yes   ☐ No
Was address where the sponsor currently resides verified as a residence on Smarty Streets?    ☐ Yes   ☐ No

List proof of address documents provided:

| Address Document Type | Date Document Issued (if applicable) |
|---|---|
| Choose an item. | Click here to enter a date. |
| Choose an item. | Click here to enter a date. |
| Choose an item. | Click here to enter a date. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Where else have you lived in the U.S.?

| Address | City | State | Zip Code | Date Range Resided at Address | Reported at Initial or Within Past 3 Years |
|---|---|---|---|---|---|
| | | | | | ☐ Yes  ☐ No |
| | | | | | ☐ Yes  ☐ No |
| | | | | | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional proof of address information:

## PROOF OF STABILITY

Discuss with the sponsor, his/her ability to support and financially provide for the minor while in their care.

Does the sponsor have a job? *(if yes, answer the following questions)*    ☐ Yes   ☐ No

    Name of Employer:

    Location of Employment:

    Length of Time at present employer:

    Income:

    Work Hours/Schedule:

Does the sponsor have financial needs?    ☐ Yes   ☐ No

    *If yes, explain:*

Does the sponsor have adequate housing?    ☐ Yes   ☐ No

    *If yes, explain:*

Sponsor Assessment, Rev. 05/24/2019
ORR UAC/S-5

Page 6 of 11

## SPONSOR CARE PLAN

Use this section to document that the sponsor's plan to care for this minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs.

### Care Plan

Tell me about your plans to address the UAC's educational needs:

What school will the minor attend?

Does the sponsor know the school enrollment process?  ☐ Yes ☐ No

Who will transport the UAC to and from school?

Who will supervise the UAC before and after school?

Does the minor have any medical conditions that will need treatment that you are aware of?

Tell me about your plans to address the UAC's health care needs (if the UAC is pregnant or with child, also address the health care plans for the UAC's child).

Tell me about your plans to address the UAC's mental health care and counseling needs.

What are the medical services in your area?

What are the counseling services in your area?

Tell me about the types of community resources and services that you plan to access to address the UAC's needs

Is the potential sponsor familiar with community resources and services in the area?  ☐ Yes ☐ No

*(Case Manager assists sponsor in identifying community service providers and programs, and encourages sponsor to participate in applicable services such as parenting, gang prevention, substance abuse psycho-education in preparation for UAC's release)*

Does the minor have any criminal history or behavior issues that you are aware of?

Is there anything that would prevent the sponsor from enrolling in supportive services for the UAC's needs?  ☐ Yes ☐ No

Did the sponsor watch the Sponsor Video?  ☐ Yes ☐ No

Did the sponsor read the Sponsor Handbook?  ☐ Yes ☐ No

Will you accept assistance from Post-Release Service providers? (if applicable)  ☐ Yes ☐ No

### Safety Plan

Explain how you plan to ensure the safety of the minor:

### Supervision Plan

Does the sponsor have family or friends nearby that will be helping in caring for the minor?  ☐ Yes ☐ No
*(if yes, list the individual(s))*

| Name | SSN/A# | Age | DOB | Gender | Home Address | Relationship to UAC | Relationship to Sponsor | Employment |
|------|--------|-----|-----|--------|--------------|---------|-------------|------------|
|  |  |  | Click here to enter a date. | Choose an item. |  |  | Choose an item. | Choose an item. |
|  |  |  | Click here to enter a date. | Choose an item. |  |  | Choose an item. | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Explain how you plan to supervise the minor:

### Alternate Adult Caregiver Plan

Is the sponsor a U.S. citizen or a lawful permanent resident?  ☐ Yes ☐ No
*If no, list the adult caregiver identified who will assume responsibility for the child if sponsor becomes unavailable to care for the minor.*

| Name | KIDS & No. | Age | DOB | Gender | Home Address | Phone Number | Relationship to Sponsor | Background Check |
|---|---|---|---|---|---|---|---|---|
|  |  | Click here to enter a date. | Choose an item. |  |  | Click to add text. | Choose an item. | Click to add text. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

## CRIMINAL HISTORY

Use this section to document the sponsor's self-disclosure of any criminal charges, sexual offenses or child abuse/neglect charges or arrests.

Any criminal history? *(if yes, list below)*   ☐ Yes   ☐ No

List any felony convictions:

List any misdemeanor convictions:

List and describe any disclosed criminal activity:

List any probation/parole:

List any child abuse and neglect history:

History of Incarceration or Detention

| | Dates | Length of Incarceration/Detention | Reason |
|---|---|---|---|
|  | Click here to enter a date. |  |  |
|  | Click here to enter a date. |  |  |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional information on criminal history:

## UAC JOURNEY AND APPREHENSION

Use this section to document if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the UAC Assessment responses.

Describe the UAC's day to day life in home country:

Do you know why the UAC decided to travel to the U.S. at this time?

   *Did the potential sponsor mention any U.S. immigration policy or practice as a factor in the UAC's decision to travel to the U.S.?*   ☐ Yes   ☐ No

   *Did the potential sponsor mention economic, job, or educational opportunities as a factor in the UAC's decision to travel to the U.S.?*   ☐ Yes   ☐ No

When did the UAC leave his/her home country (month, day, and year)?

How long did the trip take?

Who paid for the UAC's trip to the U.S.?

How did the UAC get to the U.S.?

Where was the UAC planning on living in the U.S. and with whom?

Do you know if the UAC has ever been to the U.S. before?   ☐ Yes   ☐ No

   *If yes, when?*

## HUMAN TRAFFICKING

Use this section to document any trafficking concerns in the sponsor's country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time.

Sponsor Assessment, Rev. 05/24/2019
ORR UAC/S-5

Defendants' Prod. Vol. 5

24933

GOV-00024933

**Sponsor's Journey to the U.S.** *(if applicable)*
Use this section to document information regarding the sponsor's journey from their country of origin will be gathered here.

When and why did you first decide to travel to the U.S.?
Who planned/organized your journey?
Did the arrangements change during the journey?                    ☐ Yes  ☐ No
   *if so, how?*
Did anyone pay for your travel to the U.S.?                         ☐ Yes  ☐ No
   *Does that person need to be paid back?*                         ☐ Yes  ☐ No
   *Is there a plan for that person to be paid back?*               ☐ Yes  ☐ No  ☐ N/A
   *What do you believe will happen if that person if not paid back?*
Does your family or a family friend owe money to anyone for the journey?  ☐ Yes  ☐ No
   *if yes, how much?*
Did you ever have to depend upon non family members to provide basic needs   ☐ Yes  ☐ No
such as clothes, food, and housing?
Did you experience any challenges, trauma, or abuse by family in home        ☐ Yes  ☐ No
country?
Where did you first live in the U.S. and with whom?
Have you traveled back to your country of origin since your arrival to the U.S.?
Additional information on sponsor's journey to the U.S.:

**Coercion Indicators**
Use this section to assess for indicators of trafficking by force, fraud, or coercion in the sponsor's country of origin, during the sponsor's journey, and in the U.S.  This includes any pressure, threats, deception, or harm experienced by the sponsor or the sponsor's family members.

Did anyone threaten you or your family?                            ☐ Yes  ☐ No
   *if yes, explain:*
Were you ever physically harmed?                                   ☐ Yes  ☐ No
   *if yes, explain:*
Was anyone around you ever physically harmed?                      ☐ Yes  ☐ No
   *if yes, explain:*
Were you ever held against your will?                              ☐ Yes  ☐ No
   *if yes, explain:*
Did anything bad happen to anyone else in this situation or anyone else who   ☐ Yes  ☐ No
tried to leave?
   *if yes, explain:*
Did anyone ever keep/destroy your documents?                       ☐ Yes  ☐ No
   *if yes, explain:*
Did anyone ever threaten to report you to the police/immigration?  ☐ Yes  ☐ No
   *if yes, explain:*
Are you worried anyone might be trying to find you?                ☐ Yes  ☐ No
   *if yes, explain:*
Additional information on coercion indicators:

**Debt Bondage/Labor Trafficking Indicators**
Use this section to assess for indicators of debt bondage and labor trafficking in the sponsor's country of origin, during the sponsor's journey, and in the U.S.  This includes any information regarding contracts, commitments, arrangements, or debt the sponsor is aware of or responsible for repaying and whether the sponsor felt unsafe or scared in their working environment.

Did you perform any work or provide any services?                  ☐ Yes  ☐ No
   *Who arranged the work?*
   *What type of work did you perform and where?*
   *How often did you have to work?*
   *Did work conditions change over time?*
Is there a debt?                                                   ☐ Yes  ☐ No
   *What is the amount of the debt?*
   *Has the debt amount ever increased?*                           ☐ Yes  ☐ No
      *By how much?*

Sponsor Assessment, Rev. 05/24/2019                                          Page 9 of 11
ORR UAC/S-5

GOV-00024934

*When did it increase?*

*Why did it increase?*

Have you or your family ever been threatened over payment or work for the journey?    ☐ Yes  ☐ No

*If yes, who threatened you and how?*

What did you think would happen if you left the job or stopped working?

Were you ever made to work or do anything you did not want to do?    ☐ Yes  ☐ No

*If yes, explain:*

Did you receive pay or did someone else keep the pay?

Were you paid what was promised when you started working and were those promises kept?

Were expenses taken out of the pay?    ☐ Yes  ☐ No

*If yes, what expenses?*

How did you get to the work site?

Where did you live while working?

Was your freedom of movement ever restricted or closely monitored?

Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?

Did anyone arrange for you to work after arriving in the U.S.?

*If yes, explain:*

Additional information on debt bondage/labor trafficking indicators:

**TVPRA**

Use this section to document whether the case requires a TVPRA-mandated home study based information gathered in this assessment and from any other relevant sources.

Based on the sponsor assessment, does the sponsor present signs of being abused, maltreated, exploited, or trafficked?    ☐ Yes  ☐ No

*If yes, provide a short summary:*

*Referred to OTIP?*    ☐ Yes  ☐ No

Based on the sponsor assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?    ☐ Yes  ☐ No

If "Yes" is checked, the case must be referred for a mandatory home study

*If yes, provide a short summary:*

### FRAUD

Use this section to document if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process.

Have you ever been contacted and asked to pay fees/money related to the release of the minor?    ☐ Yes  ☐ No

*If yes, explain:*

Have you ever been contacted and asked to pay fees/money related to the release of a minor you previously sponsored or attempted to sponsor and not reported it to ORR?    ☐ Yes  ☐ No

*If yes, explain:*

### ADDITIONAL INFORMATION

Use this section to report any additional information that may be pertinent to the sponsor's assessment that has not been covered in the sections above or that require further elaboration.

### CASE MANAGER'S ASSESSMENT OF SPONSOR AND CONCLUDING REMARKS

Use this section to provide a thorough assessment of the sponsor's ability to safely care for the UAC, provide for the UAC's individual needs, and ensure the safety and well-being of the UAC.

### CERTIFICATION

Sponsor Assessment, Rev. 05/24/2019                                                      Page 10 of 11
ORR UAC/S-5

| | |
|---|---|
| Signature: _____ | Title: |
| Print Name: | Date: |

Defendants' Prod. Vol. 5

24936

GOV-00024936

# Appendix 2.7 Sponsor Check Coversheet



## PSC/DCS/HHS Mailing Address
Program Support Center (PSC)
Division of Children's Services (DCS)
Department of Health and Human Services (HHS)
Parklawn Building, 5600 Fishers Lane, Room 02F70,
Rockville, MD 20857    Tel: (301) 443-8571

### SUBMIT TO: SponsorCheck.os@hhs.gov

Date: _____    Facility: _____
From: _____    Email: _____
Position: _____    Phone #: _____

Includes (please check):
☐ ORR Authorization for Release of Information – 5 PAGES
☐ Paper Fingerprints (2 Per Person) Mail Courier: _____ Tracking Number: _____
☐ Digital Prints Transmitted  Date: _____   Location: _____
☐ Copy of Photo ID
◉ Sponsor or ◯ Household Member (HHM)

Sponsor/HHM Name (Name Transmitted): _____

Sponsor/HHM DOB: _____    Sponsor/HHM Alien #: _____

Relationship to UAC: _____   Category: ◯ One ◯ Two ◯ Three

Facility: _____

Case Manager's Name: _____

Federal Field Specialist's Name: _____

Number of Minor(s): _____   Minor's Name: _____

Minor's DOB: _____   Minor's Alien #: _____

### Contact Information (Check One)

| Security Specialist | Region | Cases | Email |
|---|---|---|---|
| ☐ Damian Kramer | Eastern/Western | (A – F) | Damian.Kramer@psc.hhs.gov |
| ☐ Rachael Ames | Eastern/Western | (G – M) | Rachael.Ames@psc.hhs.gov |
| ☐ Isaiah Kohn | Eastern/Western | (N – Z) | Isaiah.Kohn@psc.hhs.gov |
| ☐ Niroshi Wijeweera | Eastern/Western | AGE OUT | Niroshi.Wijeweera@psc.hhs.gov |
| ☐ Natasha Betancourt-Pagan | Central | (A – F) | Natasha.Betancourt-Pagan@psc.hhs.gov |
| ☐ Mac Junior son Eta-Fogam | Central | (G – M) | Macjuniorson.Eta-Fogam@psc.hhs.gov |
| ☐ Nicholas Biagini | Central | (N – Z) | Nicholas.Biagini@psc.hhs.gov |
| ☐ Johanna Villegas | Central | AGE OUT | Johanna.Villegas@psc.hhs.gov |

Comments:

### PSC/DCS USE BELOW – DO NOT FILL
Received:      Date: _____   Time: _____   Carrier: _____
Tracking Information: _____
Relationship to UAC: ☐ Sponsor   ☐ HHM   ☐ PNIP
DFS Initial: _____ Date and Time Scanned: _____
Results: ☐ Referred to FFS _____ ☐ Appears Clear _____ ☐ 1st Unclassifiable _____ ☐ 2nd Unclassifiable
Query ID: _____   Immigration Status: ☐ USC   ☐ Appears Legal   ☐ Poss. Imm. Issues
LESC Immigration Status/Comments: _____
Missing Information/Documents: _____
_____
_____

☐ AGE OUT (Date: _____ )        ☐ MINOR DISCHARGED

Rev 3/14/2019

# Appendix 2.8 CA/N Check Coversheet



**PSC/DCS CA/N Check Coversheet**
Fax: (301) 480-0292

Date: _____  Facility: _____
From: _____  Email: _____
Position: _____  Fax #: _____
Phone #: _____

Includes (please check off):
- ☐ ORR/DCS Authorization for Release of Information -- 5 PAGES
- ☐ Copy of Sponsor ID
- ☐ Sponsor or _____ Household Member (Check which applies)
- ☐ Other _____

Sponsor's Name: (Name Transmitted) _____
Sponsor's DOB: _____
Sponsor's Alien # (if any): _____
Sponsor's Category (Check one):   ☐ One       ☐ Two       ☐ Three
Relationship to UAC: _____

Facility: _____
Case Manager's name: _____
Federal Field Specialist's Name: _____

(Number of Minors: ___) Minor's Alien #: _____
Minor's Name: _____
Minor's DOB: _____

### Contact Information
(Check One)

| Security Specialist | Region | Telephone | Email |
|---|---|---|---|
| ☐ Karen Morales Ceron | Eastern | (301) 443-1249 | Karen.MoralesCeron@psc.hhs.gov |
| ☐ Kemba Arthur | Central (A-L) | (301) 443-1245 | Kemba.Arthur@psc.hhs.gov |
| ☐ Sandra Sanchez | Central (M-Z) | (301) 443-9592 | Sandra.Sanchez2@psc.hhs.gov |
| ☐ Edmand Coyoy | Western | (301) 443-0037 | Edmand.Coyoy@psc.hhs.gov |

**PSC/DCS/HHS Mailing Address**
Program Support Center (PSC)
Division of Children's Services (DCS)
Department of Health and Human Services (HHS)
Parklawn Building
5600 Fishers Lane, Room 02E-70
Rockville, Maryland 20857
Tel.: (301) 443-8571

Comments:  One page for each Sponsor
_____
_____
_____

# Appendix 2.9 Background Check Submission Requirements

***All background check submissions must adhere to the following standards.***

ORR and PSC/DCS **reject** background check submissions that include errors or omissions. If ORR or PSC/DCS rejects the original submission care providers must resubmit the request which significantly delays the release process.

## Send All Requests Via Email

Care providers must email fingerprint check requests to **SponsorCheck.os@hhs.gov** and CA/N check requests to **CANchecks.os@hhs.gov**. ORR does not accept documents that are faxed or mailed (EXCEPT paper fingerprint cards and original CA/N check state forms, if required).

PSC/DCS **does not** accept any documents or requests directly from background check subjects (e.g., Sponsors and Household Members) or digital fingerprint sites. Subjects and/or digital fingerprint sites must submit all documents to the Case Manager, who reviews the documents for completeness and accuracy prior to submission to PSC.

PSC/DCS **does not** accept paper fingerprint cards directly from background check subjects. Subjects must submit paper fingerprint cards to the Case Manager, who reviews the documents for completeness and accuracy prior to submission to PSC/DCS. In extenuating circumstances, PSC/DCS **does** accept paper fingerprint cards directly from digital fingerprint sites (see **Appendix 2.14 Fingerprinting Guidance**).

## Review and Inspect Sponsor Documents

Each background check request email must contain a complete *Coversheet*, *Authorization for Release of Information (ARI)* (with a May 14, 2018, revision date or later), and a copy of acceptable photo identification. See **ORR Policy Guide Section 2.2.4**, for a list of acceptable documents. Do not include any other supporting documents (e.g. proof of address, birth certificates) with the request.

## Send Only Complete, Accurate and Legible Documents

Care providers **must** ensure:

- That all fields in the *Coversheet* and *ARI* are complete and accurate and that all five pages of the *ARI* are included. The sponsor **must sign** the *ARI*.
- That the copy of the photo ID is readable - that the subject's picture is clear, and that the information on the ID is legible.
- For paper fingerprint submissions, verify in advance of submission that the sponsor has completed the descriptor/identifier and signature fields (see **Appendix 2.13 Fingerprint Card**). The Case Manager must also include the five page signed *ARI* and photo ID in order for PSC to match the cards to the original email request.

- For CA/N Checks, that all fields in the state forms are complete and accurate and that PSC/DCS instructions were followed.

PSC/DCS rejects copies of documents that are too dark or too light; and, those with partial, missing, or incomplete information. If the sponsor's handwriting is illegible, include the information that is unclear typed on a separate page. While pictures of documents are acceptable, PSC/DCS rejects images that are unclear or blurred.

## Include Address History on the *ARI*

The *ARI* must provide all addresses where the subject **resided in the past five years**. For non-U.S. addresses the subject enters the country in which they resided in the "City (Country)" column of the address table in the *ARI* and complete the "From date" and "To date" columns.

## Update the UAC Portal and Cancel Unnecessary Background Check Requests

Create subject records in the UAC Portal after identifying a sponsor or household member. Enter a check mark on the "Check Requested?" column next to the types of checks requested to allow PSC/DCS to record the results. These steps must be completed **before** the background check request is emailed to PSC/DCS.

Email notification to PSC **within one business day** if a background check requires cancellation.

## Request Background Checks for Individuals Who Have Previously Completed Background Checks

In cases where an individual has previously completed a background check, the case manager must still formally request the background check from PSC/DCS with all required paperwork (this includes a **new** *Coversheet*, a **new** *ARI*, and copy of a government issued photo ID).

PSC/DCS automatically checks to see if the potential sponsor, household member, or adult caregiver has previously sponsored a UAC and if he/she has completed any of the following background checks:

- FBI National Criminal History Check (Fingerprint Check)
- CA/N Check
- FBI/BSU Civil Name Check

PSC/DCS will forward the results of an existing check to the case manager and/or FFS if it has been 270 days or less since the background check was completed. In these cases, the individual will not need to be fingerprinted again nor will a new CA/N check request need to be sent to the state. If the background check is older than 270 days, PSC/DCS is required to conduct a new check which will require new fingerprints and/or submission of a new CA/N Check request to the state.

# Appendix 2.10 Release Request Completion Guidance

*Use a fillable version of this available on the UAC Portal.*



**Administration for Children & Families**
Office of Refugee Resettlement

## Release Request Completion Guidance

The purpose of this guidance document is to provide Case Managers, Case Coordinators, and FFS with a clear understanding of what ORR expects to be documented in a *Release Request* and a structured way of entering this information so that it is easily understood. Note that some of the items in the template below (e.g., Letter of Designation) may not apply to all cases and should be deleted if not applicable. Likewise, there may be additional information needed to make a release decision for more complicated cases. In those instances, the additional information may be entered with the caveat that it must be written clearly and concisely without re-summarizing information that is available in the UAC Portal or the UAC's case file.

The *Release Request* is a summary of the information in the UAC Portal, which shows who the sponsor is, if there are any concerns, how the concerns are mitigated, whether all reunification requirements were completed, whether it appears to be a safe release and what is being recommended in the case. Documents supporting the Case Manager's recommendation are:

- Family Reunification Packet
- UAC Assessment
- Sponsor Assessment
- UAC Case Review
- ISP, if applicable
- Background Check Results
- Home study Recommendation, if applicable
- SIR Summary, if applicable

For Case Managers, it is recommended that the templates below for *Provide Details on Relationship Including Official Documentation* and *Comments* be pasted into and edited in a Word document before copying the information into the *Release Request* in the UAC Portal. The templates for those two sections are long and it will be easier for the Case Manager to ensure that they have not missed any items if they are editing in a Word document. Because their sections are short, Case Coordinators and FFS may paste their templates directly into the *Release Request* in the UAC Portal and edit them there.

### Sponsor Information

**SPONSOR/UAC RELATIONSHIP:** [Ms./Mr.] [sponsor full name] [sponsor age, category, relationship with child – e.g. age 65, Category 2A, Grandmother] requests sponsorship of [UAC full name] [A# [###-###-###], [UAC gender], age [UAC age]]. [Ms./Mr.] [sponsor last name] currently resides in [city, state]. *[INCLUDE IF APPLICABLE]* The sponsor is also attempting to sponsor the UAC's sibling [UAC full name] [A# [###-###-###], [UAC gender], age [UAC age] who is in ORR custody at [ORR placement name].

*[DESCRIBE STEPS TAKEN TO VERIFY THE SPONSOR/UAC RELATIONSHIP. THIS INCLUDES BIRTH CERTIFICATE TRAILS (ALL CATS), FAMILY TREES (CAT 3), AND DOCUMENTATION PROVING A PRIMARY CAREGIVER RELATIONSHIP (CAT 2A THAT ARE NOT A GRANDPARENT, SIBLING, HALF-SIBLING, OR STEP-SIBLING THROUGH LEGAL MARRIAGE). DO NOT REFER TO THE SPONSOR AS AN UNVERIFIED RELATIVE; INSTEAD DOCUMENT THE BIRTH CERTIFICATE TRAIL AND STATE THAT YOU WERE NOT ABLE TO CONCLUSIVELY PROVE THE RELATIONSHIP. IF THERE IS NO EVIDENCE OTHER THAN STATEMENTS TO VERIFY THE RELATIONSHIP, THEN PROVIDE INFORMATION ABOUT FAMILY SESSION AND COMMUNICATION OBSERVATIONS AND CLINICIAN RECOMMENDATIONS AND CONCLUSION ABOUT THE RELATIONSHIP. (e.g., Ms. Lopez is Maria's unverified paternal aunt who reports living next to Maria's family for 10*

ORR UAC/B-5 [Rev. 06/24/2019]                                                    Page 1 of 4

## Release Request Completion Guidance
### Office of Refugee Resettlement

*years in home country. Proof of Address was provided in order to verify the claim that they lived next to each other in home country. Maria's birth certificate did not have her father's name. However, Maria's mother and father have verbally and in writing stated that Ms. Lopez is Maria's aunt. Family Skype sessions were completed on March 3, 2016 and March 7, 2016, and another is scheduled for March 18, 2016. The plan is to have these ongoing until the minor is approved for release. The Clinician reports that there was a lot of positive interaction during the sessions and they discussed the UAC attending school and old memories of family gatherings. Maria's parents provided a letter of designation for Ms. Lopez.}]*

## Case Manager Recommendation

**FRP AND SUPPORTING DOCUMENTS:**
*[INCLUDE A BRIEF PARAGRAPH ABOUT THE DAILY LIFE OF THE UAC IN COUNTRY OF ORIGIN INCLUDING WHO HE LIVED WITH, INFORMATION ABOUT SCHOOL, WHY HE OR SHE TRAVELED TO THE US, WHO TRAVELED WITH THE UAC, AND IF HE OR SHE HAS A DEBT THAT IS EXPECTED TO BE PAID BACK BY THE MINOR OR FAMILY.]*

The Case Manager received and reviewed [Ms./Mr.] [sponsor last name]'s family reunification packet, which includes: *[ONLY LIST OUT WHAT WAS ACTUALLY RECEIVED AND REVIEWED AS REQUIRED BY ORR POLICY AND PROCEDURES TO RELEASE A UAC TO THIS CATEGORY OF SPONSOR]*
--Sponsor ID: *[LIST TYPE OF ID(S)]*
--Household Member ID: *[LIST TYPE OF ID(S)]*
-- *[INCLUDE IF APPLICABLE]* Adult Caregiver ID: *[LIST TYPE OF ID(S) AND EXPIRATION DATE, IF APPLICABLE]*
--Proof of ability to provide housing, food, education. : The sponsor adequately demonstrated that he/she is able to support the minor financially.
--Proof of Address: [type of document] received on [mm/dd/yyyy]. Verified through Smarty Streets on [mm/dd/yyyy]. Verified through Google Maps on [mm/dd/yyyy].
--Proof of immigration/citizenship status: *[LIST TYPE OF DOCUMENT(S) PROVIDED OR REASON WHY NO DOCUMENTS WERE PROVIDED]*
-- *[INCLUDE IF APPLICABLE]* Letter of Designation: Received on [mm/dd/yyyy].
--LOPC Packet: Sent on [mm/dd/yyyy].
--Sponsor Handbook: Sponsor confirmed reading Sponsor Handbook on [mm/dd/yyyy].

**CRIMINAL:**
--As of [mm/dd/yyyy], for [Ms./Mr.] [sponsor last name] *[DELETE ANY BULLETS BELOW THAT DO NOT APPLY]*
     --Public Records Check:  [Clear/Not Clear]
     --Sex offender Check:  [Clear/Not Clear]
     --Fingerprint Check:  Fingerprints taken: [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results: [Clear/Referred to the FFS] *[IF RESULTS WERE REFERRED TO THE FFS, THEN STATE WHETHER THE FFS INSTRUCTED THAT IT WAS SAFE TO MOVE FORWARD WITH SPONSOR AS FOLLOWS: The FFS informed this case manager that the sponsor has criminal record information that [does/does not] allow for the UAC to be safely released to the sponsor.]*
     --CA/N Check: Requested [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results: [Clear/Record Was Found]. *[IF RECORD FOUND, LIST CHARGES AND DATES]*
--As of [mm/dd/yyyy], for [Ms./Mr.] [adult household member / adult caregiver full name], [relationship to sponsor]: *[LIST THE NAME OF EVERY ADULT HOUSEHOLD MEMBER AND ADULT CAREGIVER THAT THE CHECKS WERE COMPLETED FOR]*
     -- Public records check:  [Clear/Not Clear]
     -- Sex offender check:  [Clear/Not Clear]
     -- CA/N Check: Requested [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results:  [Clear/Record Was Found]. *[IF RECORD FOUND, LIST CHARGES AND DATES]*
--There are no other household members in the residence.
--Self-Disclosure: This Case Manager asked the sponsor if he/she has any criminal history on [mm/dd/yyyy]. Sponsor responded: [Yes/No]. *[IF YES, LIST CHARGES AND DATES]*

ORR UAC/R-5 [Rev. 06/24/2019]                                                                                        Page 2 of 4

GOV-00024942

### Release Request Completion Guidance
Office of Refugee Resettlement

--Evidence of Rehabilitation: *[IF APPLICABLE, LIST DOCUMENTS AND EVIDENCE THAT SHOW REHABILITATION]*
--*[INCLUDE BULLET IF A HOME STUDY WAS CONDUCTED]* Due to the concerns regarding [applicable reason for home study, including who the perpetrator of the abuse is and where the abuse occurred], ORR referred the case for a TVPRA/ORR mandated/or discretionary home study. *[USE THE FOLLOWING SENTENCE IF THE HOME STUDY REASON INVOLVES PHYSICAL OR SEXUAL ABUSE: "[Ms./Mr.] [sponsor last name]* was not the perpetrator of the abuse and the perpetrator does not reside with [him/her]."] The home study worker concluded the home study with a positive recommendation on [mm/dd/yyyy]. *[SUMMARIZE ANY RECOMMENDATIONS MADE BY THE HOME STUDY PROVIDER AND IF THE SPONSOR MET THE RECOMMENDATIONS OR WILL WITH THE ASSISTANCE OF THE POST RELEASE SERVICE PROVIDER.]*
--*[INCLUDE IF THERE WERE CONCERNS THAT WERE MITIGATED] LIST THE CONCERNS AND HOW THEY WERE MITIGATED. [THIS WOULD BE WHERE YOU MENTION SIRS, MENTAL HEALTH OR MEDICAL ISSUES AND SPONSOR CRIMINAL HISTORY]. MENTION WHAT DOCUMENTATION WAS RECEIVED [COURT DOCUMENTS, POLICE REPORTS, MEDICAL REPORTS, SCHOOL DOCUMENTS, DNA TESTING, ETC.] AND STEPS THAT WERE TAKEN TO MITIGATE ANY OF THESE CONCERNS [FAMILY SESSION, PSYCHOLOGICAL OR PSYCHIATRIC EVALUATION, COUNSELING SESSIONS, SAFETY PLANNING, DNA TESTING, ETC.]*

**BIRTH CERTIFICATES:** All birth certificates needed to prove the sponsor-UAC relationship were received on [mm/dd/yyyy]. Sponsor is confirmed to be the UAC's [type of relationship]. Birth certificates received are: *[LIST BIRTH CERTIFICATES PROVIDED [E.G., UAC, SPONSOR, UAC'S UNCLE, SPONSOR'S SON/UAC'S BROTHER, FAMILY FRIEND]] [STATE WHETHER THE BIRTH CERTIFICATE OF THE SPONSOR MATCHES THE OFFICIAL ID OF THE SPONSOR.]*

**PRIOR SPONSORSHIP:** CHOOSE ONE: [Verified on mm/dd/yyyy that the sponsor did not previously sponsor or attempt to sponsor a child.] OR [Verified on (mm/dd/yyyy) that the sponsor previously sponsors/attempted to sponsor a child.] *[IF APPLICABLE, PROVIDE DETAILS ON COMPLIANCE WITH ORR REQUIREMENTS AS IT RELATES TO THE PREVIOUS SPONSORSHIP.]*

**PRIOR ADDRESS:** Verified on [mm/dd/yyyy] that the sponsor's address (was/was not) used in a previous case. *[IF APPLICABLE, LIST CONCERNS AND MITIGATING FACTORS.]*

**CONTACT WITH PRIMARY CAREGIVER IN COO:** Spoke with [name of caregiver] on [mm/dd/yyyy]. [Name of caregiver] [was/was not] able to verify information provided by the UAC and the sponsor. *[IF APPLICABLE, LIST CONCERNS AND MITIGATING FACTORS.]*

**SPONSOR RESOURCES:** The following emergency contact information was provided to the sponsor: 911, ORR Parent and Sponsor Hotline, information regarding health care and vaccinations, Department of Family and Protective Services (in state of residence), and National Human Trafficking Resource Center.

**RELEASE RECOMMENDATION:** *[INCLUDE THE RELEASE RECOMMENDATION FOR A STRAIGHT RELEASE, RELEASE WITH PRS, RELEASE WITH A POSITIVE HOME STUDY RECOMMENDATION, OR DENIAL.]*

**HOMESTUDY AND PRS:** *[LIST THE REASONS FOR RECOMMENDING HOME STUDY, AND/OR, POST RELEASE SERVICES. THE RELEASE REQUEST NEEDS TO STATE WHAT THE REASON FOR THE HOME STUDY WAS, WHAT KIND OF HOME STUDY (TVPRA OR DISCRETIONARY) IF THERE ARE ANY SPECIAL RECOMMENDATIONS/CONDITIONS FROM THE HOME STUDY PROVIDER AND IF THEY WERE COMPLETED.]*

### Case Coordinator Recommendation To Be Entered into the Portals Release Request

The Case Coordinator [concurs/does not concur] with the Case Manager's release recommendation.

*[IF THE CC DOES NOT CONCUR WITH THE RECOMMENDATION, NOTE THE DISCREPANT INFORMATION IDENTIFIED AND PROVIDE BRIEF JUSTIFICATION SUPPORTING A DEFERRING RECOMMENDATION WITHOUT RE-SUMMARIZING INFORMATION THAT IS ALREADY AVAILABLE IN THE UAC PORTAL AND UAC CASE FILE.]*

ORR UAC/R-5 [Rev. 06/24/2019]                                                                 Page 3 of 4

**Release Request Completion Guidance**
Office of Refugee Resettlement

**ORR Decision To Be Entered into the Portals Release Request**

The FFS [concurs/does not concur] with the Case Manager's and Case Coordinator's release recommendation.

*[IF THE FFS DOES NOT CONCUR WITH THE RECOMMENDATION, NOTE THE DISCREPANT INFORMATION IDENTIFIED AND PROVIDE BRIEF JUSTIFICATION SUPPORTING A DENIAL RECOMMENDATION WITHOUT RE-SUMMARIZING INFORMATION THAT IS ALREADY AVAILABLE IN THE UAC PORTAL AND UAC CASE FILE.]*

ORR UAC/R-5 [Rev. 06/24/2019]                                    Page 4 of 4

# Appendix 2.11 ORR HQ Bond Hearing Procedures

**Processing Bond Hearing Requests**

1. Immediately upon receipt of the care provider email including signed *Request for a Flores Bond Hearing* and completed *Motion* documents, ORR HQ staff complete the following steps:

    - Logs receipt of the request on an internal Bond Hearing Request Tracker on SharePoint.

    - Saves copies of the *Request* and *Motion* documents in a shared electronic folder accessible to ORR/DPP.

    - Creates a bond hearing file for the UAC in which to save all correspondence and documentation associated with the case, and stores it in a shared electronic folder accessible to ORR/DPP. (ORR HQ staff track the case and communications, updating the bond hearing file as appropriate).

2. **Within 15 business days of receiving the care provider email,** in consultation with the ORR Representative arguing the case, ORR HQ staff file the *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child –Secure or Staff-Secure Custody* or *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child (Non-Secure) Shelter Care* (depending on the child's placement type); pre-trial brief (for cases where ORR believes the UAC is a danger); supporting evidence; and, motion for telephonic hearing (if appropriate) with the local immigration court having jurisdiction over the case. **Alternatively,** ORR staff may file the *Motion* to the court and later file a pre-trial brief with supporting evidence in order to expedite scheduling a hearing that would otherwise be delayed while the ORR Representative prepares the pre-trial brief. ☺ If a UAC in shelter care who is not a danger to the community requests a bond hearing, the ORR HQ staff provides a No Concern form letter along with the ORR Motion explaining to the immigration court that ORR does not consider the UAC a danger.

    **NOTE**: The child or the child's attorney may make an oral motion in immigration court, or file a *Motion* document with the immigration court directly requesting a *Flores* bond hearing. In these cases, ORR HQ staff will receive notice from the court itself (as opposed to the care provider) and file correspondence as indicated in Step 1. The assigned ORR Representative will either prepare a pre-file brief, with supporting evidence or file a No Concern Letter; and, file a motion for telephonic hearing (if appropriate) in response to properly served motions on ORR by the court or attorney of record.

3. After filing the motion with the immigration court, ORR HQ staff notifies the Care Provider Point of Contact; FFS and the child's attorney or local legal service provider if the child is unrepresented, that the motion has been filed with EOIR. ✉

4. The local immigration court informs ORR and the child's attorney of record (if applicable) or the care provider if the child is unrepresented that a bond hearing is scheduled. 🗃
   If ORR does not receive a notice that a hearing has been scheduled with the local immigration court within 10 business days of filing the motion, ORR HQ staff contact the local immigration court's Court Administrator to determine whether a bond hearing has been scheduled. 🕐

5. **Within 1 business day of receiving notice that the hearing has been scheduled**, ORR HQ notifies the minor's attorney (if applicable) and care provider of the date and time and location of the hearing.

| Quick Glance: Processing Bond Hearing Requests | | |
|---|---|---|
| **Care Provider Staff** | **ORR HQ Staff** | **EOIR/Immigration Court** |
| **1** Completes the *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child* (using the form corresponding with the child's placement level) | **3** Creates a bond hearing file for the UAC; Files *Motion* and supporting materials with the appropriate court **within 15 business days of receiving the request** (filing the No Concern letter as needed); Serves a copy of the filing on the UAC's attorney (if applicable) or on the care provider if the UAC is unrepresented. | **4** Notifies ORR HQ that a hearing has been scheduled, providing the time and location. |
| **2** Notifies ORR by email, attaching the *Request* and *Motion* documents, **within 1 business day** of the UAC request for a bond hearing | | |
| | **5** Contacts the local court administrator if there has been no notice of a scheduled hearing within **10 business days** of the ORR HQ Staff confirmation email. | |

| | **6** Notifies Care Provider FFS and UAC's attorney (if applicable) that a hearing has been scheduled, provides the time and location and the location of the hearing within **1 business day** of receiving the notice from the immigration court. | |
|---|---|---|

## Preparing for *Flores* Bond Hearings and Filing with the Immigration Court (ORR)

1. The ORR Representative works with the other ORR and care provider staff to gather evidence relevant to a finding that a UAC is a **danger to the community**. Evidence may include placement documents; SIRs; police reports/court records, clinical notes, psychological reports/records, etc. **prior to the hearing**. See Quick Glance: Documents Relevant to Finding Danger to the Community. 🗎

   **NOTE:** The ORR Representative should collect primary, original (copies of originals are acceptable) and documents that are relevant evidence that the child is a danger to the community. The ORR Representative saves this evidence in the bond hearing file and may attach it to submissions to the immigration court.

   **NOTE:** UAC in shelter care may not require an actual hearing before the immigration judge, if ORR does not find that the child is a danger to the community. In these circumstances, the ORR HQ staff processing the motions will send the No Concern letter stating as such to the immigration court, attached to the UAC's motion for a bond hearing.

| **Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community** |
|---|
| • Juvenile court or criminal records |
| • Police records |
| • Intakes referral and placement records in the UAC Portal |
| • Placement Tool |
| • Initial Intakes Assessment |
| • UAC Assessment/UAC Case Review |
| • Relevant clinical notes |
| • Psychological records/reports |
| • Significant Incident Reports, as applicable |
| • 30 day Case Review(s) |

| • Other documents, if relevant |
|---|

2. ORR HQ staff submit the following materials when filing *Flores* bond hearing motions (filings must be organized in accordance with Immigration Court rules, as explained in the Immigration Court Practice Manual):

   a. Motion Requesting Bond Hearing;

   b. *Motion Requesting a Telephonic Hearing* if applicable (i.e., if the hearing is not in the Arlington, VA court and/or the attorney will not appear in person); and

   c. Pre-hearing brief with supporting exhibits (from materials collected in the bond hearing file) if ORR is contesting bond, or No-concern letter if ORR does not find the UAC to be a danger

3. In addition to serving the court, per Immigration Court rules, the ORR HQ staff must also serve a physical copy of all materials to the UAC's attorney (or to the UAC care of the care provider if the UAC is unrepresented). As a courtesy, ORR HQ staff emails scanned copies of these materials to the UAC's attorney (or to the FFS to provide to unrepresented UACs). ✉📠

### Quick Glance: Preparing for Bond Hearings

| ORR HQ Staff | HHS HQ staff and/or Attorney |
|---|---|
| **1** Receives notice of *Flores* bond hearing request from care provider, logs the request in the internal tracker, saves copies of the *Request* and *Motion* documents on the shared drive, and creates a bond hearing file for the UAC on the shared drive. | **3** Communicates with ORR and care provider staff to collect evidence supporting ORR's position in the hearing, saving all documents to the bond hearing file. |
| **2** Notifies the assigned ORR Representative of the bond hearing case | **4** Prepares pre-trial brief and exhibits. |
| **5** In coordination with ORR representative, assembles all materials for submission to the court, obtaining ORR representative signatures as appropriate, and mails the document to the appropriate court and to the UAC's attorney (or to the UAC care of the care provider if the UAC is unrepresented). | |

GOV-00024948

### *Flores* Bond Hearing Proceedings

1. The care provider follows standard immigration court transport procedures for transporting the UAC to their scheduled *Flores* bond hearing *if* there is a hearing scheduled. See **Section 3.3.14 Transportation Services**. 📖

2. The *Flores* bond hearing proceedings commence. After conclusion the immigration judge issues an order.  The ORR representative keeps the original order for filing at HQ, and provides a copy to the care provider point of contact.

3. If ORR loses the case, ORR reserves the right to appeal. OGC handles all appeals for ORR.

# Appendix 2.12 Legal Status Definitions

| IMMIGRATION STATUS/U.S. CITIZENSHIP STATUS | DEFINITION |
|---|---|
| Asylee | Sponsor was granted or has a pending case for asylum, Withholding of Removal, or Convention Against Torture protections. |
| Conditional Permanent Resident | Sponsor has a valid, non-expired Permanent Resident Card (i.e., green card) that is valid for a 2-year period. |
| Continued Presence | Sponsor has remained in the U.S. longer than allowed by their Visa without DHS ICE permission. |
| DACA | Sponsor is a Deferred Action for Childhood Arrivals (DACA) recipient. |
| Humanitarian Parole | Sponsor was paroled into the U.S. on humanitarian grounds. |
| Legal Permanent Resident | Sponsor has a valid, non-expired Permanent Resident Card (i.e., green card) that is valid for a 10-year period. |
| Non Immigrant Status | Sponsor received temporary admission into the U.S. and has a valid, non-expired Visa (e.g., exchange visitors, students, temporary workers, religious workers, business visitors tourists, victims of criminal activity or trafficking, spouse or child or a lawful permanent resident) or the sponsor received a visa-waiver from certain participating countries who can travel to the U.S. for tourism or business for 90 days or less without needing a visa. |
| Order of Removal | Sponsor was issued an Order of Removal with a 30-day window to appeal, an Order of Removal *in absentia*, or a final Order of Removal. |
| Refugee | Sponsor was admitted as a refugee with a pending or approved application for refugee status. |
| SIJS | Sponsor was granted Special Immigrant Juvenile Status. |
| Temporary Protected Status | Sponsor was granted Temporary Protected Status. |
| U.S. Citizen | Sponsor is a United States citizen through birth, naturalization, acquisition, or derivation. |
| Under Removal Proceedings | Sponsor was served an NTA to appear in front of an Immigration Judge to potentially initiate removal proceedings. |
| Other | Sponsor has an immigration status that does not fall under any of the above categories. |

| Without Status | Sponsor does not have an immigration or U.S. citizenship status. The sponsor entered without inspection, is present in the U.S. without being admitted or paroled, and/or did not enter through a border inspection station or port of entry. The sponsor does not have an order of removal and is not under removal proceedings. |
|---|---|
| Unknown – Likely With Status | Sponsor's immigration or U.S. citizenship status could not be determined. However, based on expired documentation and/or conversations with the sponsor, it is likely that the sponsor has an immigration or U.S. citizenship status. |
| Unknown – Likely Without Status | Sponsor's immigration or U.S. citizenship status could not be determined. However, based on expired documentation and/or conversations with the sponsor, it is likely that the sponsor is without status. |
| Unknown | Sponsor's immigration status or U.S. Citizenship could not be determined and it is unclear whether the sponsor is with or without status. |

GOV-00024951

## Appendix 2.13 Fingerprint Card

The subject of the fingerprint check must complete all fields highlighted in yellow for two fingerprint cards. The minor's full name and A# must be entered under "Reason Fingerprinted." The agency or vendor taking fingerprints from the subject must roll prints for all boxes and sign and date each fingerprint card (areas highlighted in blue).

GOV-00024952

## Appendix 2.14 Fingerprinting Guidance

**DIGITAL FINGERPRINTS**

1. The case manager assists the potential sponsor, adult household member, and/or adult caregiver in scheduling a fingerprint appointment at an ORR digital fingerprint site to occur **within 3 business days of receiving the signed *ARI* and government issued photo ID.** Unless the ORR digital site indicates that they only accept walk-ins, the case manager **must make an appointment**.⊕

2. The case manager must provide the ORR digital fingerprint site the following information and documents when making an appointment:

   - Completed and signed *ARI*
   - Copy of government issued photo ID
   - Case manager name, email, phone number, and care provider program name
   - Subject phone number, relationship to UAC, and whether they are the sponsor, household member, or adult caregiver
   - UAC name and A#
   - Reason for expedited processing, if applicable

   **NOTE:** If the individual who is being fingerprinted requires in-person assistance from the ORR digital fingerprint site completing the *FRP* and/or *ARI*, the case manager must notate that assistance is requested (see **Quick Glance: Assistance Completing the *FRP* at ORR Digital Fingerprint Sites**).

3. The case manager instructs the individual being fingerprinted to bring at least one form of government issued photo ID to the appointment.

   **NOTE:** ORR strongly prefers that the case manager schedule the fingerprint appointment for potential sponsors, adult household members, and adult caregivers. However, if that is not possible then the individual may contact the ORR digital fingerprint site directly to make an appointment. In those instances, digital site staff will instruct the individual to bring a completed *ARI*, at least one form of government issued photo ID, and their case manager's contact information to the appointment.

   **NOTE:** If a situation arises in which paper fingerprint cards must be used, the ORR digital fingerprint site will send the following directly to PSC/DCS via an express mail courier.

   - Two original fingerprint cards (ORR no longer collects Social Security Numbers and this field should be blacked out – see **Appendix 2.13 Fingerprint Card)**

- Copy of the *Sponsor Check Coversheet* (completed by the ORR digital fingerprint site)
- Copy of the *Authorization for Release of Information*
- Copy of the subject's government issued photo ID

The ORR digital fingerprint site will also email a copy of the *Sponsor Check Coversheet*, which will include the courier name and tracking number, to the case manager.

This does not take the place of the case manager's responsibility to email the required paperwork to PSC/DCS following the procedures in **2.5.1 Criteria for Background Check Requirements**.

ORR digital fingerprint sites take digital fingerprints <u>and</u> complete paper fingerprint cards for UAC who are aging out in three days or more to minimize the chances of unclassifiable fingerprints. ✉🗐

---

### Quick Glance: Assistance Completing the *FRP* at ORR Digital Fingerprint Sites

Some ORR digital fingerprint sites offer in-person assistance completing the *FRP* and/or *ARI* to potential sponsors, adult household members, and adult caregivers.

If the case manager believes the potential sponsor, adult household member, or adult caregiver would benefit from in-person assistance completing the *FRP* and/or *ARI*, they may request this service from any ORR digital fingerprint that offers it when making an appointment.

ORR digital fingerprint site staff assist the individual(s) being fingerprinted in completing the *FRP* and/or *ARI* and email legible copies of these documents to the case manager the same day of the appointment.

The ORR digital fingerprint site does not email copies of these document to PSC/DCS on behalf of the case manager to request a Fingerprint Check. PSC/DCS does not accept documents or requests directly from ORR digital fingerprint sites. All documents are submitted from the digital site to the Case Manager who reviews the documents for completeness and accuracy prior to submission to PSC/DCS.

---

## PAPER FINGERPRINT CARDS

If distance or other limitations prevent the individual(s) from traveling to an ORR digital fingerprint site, the individual may have paper fingerprints taken at any local law enforcement agency or U.S. government agency.

1. The case manager sends the following items to the individual being fingerprinted via an
   express mail service (e.g., UPS, FedEx, USPS Priority Mail):

   - Two paper fingerprint cards (ORR no longer collects Social Security Numbers and
     this field should be blacked out)

   - A prepaid priority mail service envelope addressed to the case manager

2. The individual has their fingerprints taken on both paper fingerprint cards, completes all
   fields at the top of the fingerprint cards (except the Social Security Number field), signs
   both fingerprint cards, and mails them back to the case manager.

3. The case manager checks to ensure that all required fields were completed (see
   **Appendix 2.13 Fingerprint Card**) and mails the original fingerprint cards with legible
   copies of the *ARI*, *Sponsor Check Coversheet*, and government issued photo ID to
   PSC/DCS for **next morning** delivery. The case manager must include the name of the
   courier and the tracking number on the *Sponsor Check Coversheet* when they email the
   Fingerprint Check request to PSC/DCS (see **2.5.1 Criteria for Background Check
   Requirements**).

# Appendix 2.15 Prior Sponsorship Information Request

## Prior Sponsorship Information Request

**Current Minor Information:**
Name:
A#:
Facility:

**Requesting previous sponsorship information by**: (Highlight)
- Back Up Sponsor
- Sponsor

**Previously Sponsored Minor Information:**
Name:
A#:
Facility:
Discharge Date:

I would like to request the following documents. (Highlight)

| Sponsor | Back Up Sponsor |
|---|---|
| <ul><li>UC Assessment (UC Portal)</li><li>Release Request (UC Portal)</li><li>FRP & supporting documents</li><li>Latest Case Review</li><li>Sponsor Assessment</li><li>30 Day Follow Up Note (applies for minor released after 8/15/17)</li><li>PRS Acceptance (if applicable)</li><li>Home Study Report (if applicable)</li><li>Background Checks</li></ul> | <ul><li>30 Day Follow Up Note (applies for minor released after 8/15/17)</li><li>FRP & supporting documents</li><li>Release Request (UC Portal)</li></ul> |

# Release Request Completion Guidance

The purpose of this guidance document is to provide Case Managers, Case Coordinators, and FFS with a clear understanding of what ORR expects to be documented in a *Release Request* and a structured way of entering this information so that it is easily understood. Note that some of the items in the template below (e.g., Letter of Designation) may not apply to all cases and should be deleted if not applicable. Likewise, there may be additional information needed to make a release decision for more complicated cases. In those instances, the additional information may be entered with the caveat that it must be written clearly and concisely without re-summarizing information that is available in the UAC Portal or the UAC's case file.

The *Release Request* is a summary of the information in the UAC Portal, which shows who the sponsor is, if there are any concerns, how the concerns were mitigated, whether all reunification requirements were completed, whether it appears to be a safe release and what is being recommended in the case. Documents supporting the Case Manager's recommendation are:

- Family Reunification Packet
- UAC Assessment
- Sponsor Assessment
- UAC Case Review
- ISP, if applicable
- Background Check Results
- Home study Recommendation, if applicable
- SIR Summary, if applicable

For Case Managers, it is recommended that the templates below for *Provide Details on Relationship Including Official Documentation* and *Comments* be pasted into and edited in a Word document before copying the information into the *Release Request* in the UAC Portal. The templates for those two sections are long and it will be easier for the Case Manager to ensure that they have not missed any items if they are editing in a Word document. Because their sections are short, Case Coordinators and FFS may paste their templates directly into the *Release Request* in the UAC Portal and edit them there.

## Sponsor Information

**SPONSOR/UAC RELATIONSHIP:** [Ms./Mr.] [sponsor full name] (sponsor age, category, relationship with child – e.g. age 65, Category 2A, Grandmother) requests sponsorship of [UAC full name] (A# [###-###-###], [UAC gender], age [UAC age]). [Ms./Mr.] [sponsor last mane] currently resides in [city, state]. *[INCLUDE IF APPLCIABLE]* The sponsor is also attempting to sponsor the UAC's sibling [UAC full name] (A# [###-###-###], [UAC gender], age [UAC age] who is in ORR custody at [ORR placement name].

*[DESCRIBE STEPS TAKEN TO VERIFY THE SPONSOR/UAC RELATIONSHIP. THIS INCLUDES BIRTH CERFICITATE TRAILS (ALL CATS), FAMILY TREES (CAT 3), AND DOCUMENTATION PROVING A PRIMARY CAREGIVER RELATIONSHIP (CAT 2A THAT ARE NOT A GRANDPARENT, SIBLING, HALF-SIBLING, OR STEP-SIBLING THROUGH LEGAL MARRIAGE). DO NOT REFER TO THE SPONSOR AS AN UNVERIFIED RELATIVE; INSTEAD DOCUMENT THE BIRTH CERTIFICATE TRAIL AND STATE THAT YOU WERE NOT ABLE TO CONCLUSIVELY PROVE THE RELATIONSHIP. IF THERE IS NO EVIDENCE OTHER THAN STATEMENTS TO VERIFY THE RELATIONSHIP, THEN PROVIDE INFORMATION ABOUT FAMILY SESSION AND COMMUNICATION OBSERVATIONS AND CLINICIAN RECOMMENDATIONS AND CONCLUSION ABOUT THE RELATIONSHIP. (e.g., Ms. Lopez is Maria's unverified paternal aunt who reports living next to Maria's family for 10*

GOV-00024957

*years in home country. Proof of Address was provided in order to verify the claim that they lived next to each other in home country. Maria's birth certificate did not have her father's name. However, Maria's mother and father have verbally and in writing stated that Ms. Lope is Marai's aunt. Family Skype sessions were completed on March 3, 2016 and March 7, 2016, and another is scheduled for March 18, 2016. The plan is to have these ongoing until the minor is approved for release. The Clinician reports that there was a lot of positive interaction during the sessions and they discussed the UAC attending school and old memories of family gatherings. Maria's parents provided a letter of designation for Ms. Lopez.]]*

## Case Manager Recommendation

**FRP AND SUPPORTING DOCUMENTS:**
*[INCLUDE A BRIEF PARAGRAPH ABOUT THE DAILY LIFE OF THE UAC IN COUNTRY OF ORIGIN INCLUDING WHO HE LIVED WITH, INFORMATION ABOUT SCHOOL, WHY HE OR SHE TRAVELED TO THE US, WHO TRAVELED WITH THE UAC, AND IF HE OR SHE HAS A DEBT THAT IS EXPECTED TO BE PAID BACK BY THE MINOR OR FAMILY.]*

The Case Manager received and reviewed [Ms./Mr.] [sponsor last name]'s family reunification packet, which includes: *[ONLY LIST OUT WHAT WAS ACTUALLY RECEIVED AND REVIEWED AS REQUIRED BY ORR POLICY AND PROCEDURES TO RELEASE A UAC TO THIS CATEGORY OF SPONSOR]*
--Sponsor ID: *[LIST TYPE OF ID(S)]*
--Household Member ID: *[LIST TYPE OF ID(S)]*
-- *[INCLUDE IF APPLICABLE]* Adult Caregiver ID: *[LIST TYPE OF ID(S) AND EXPIRATION DATE, IF APPLICABLE]*
--Proof of ability to provide housing, food, education. : The sponsor adequately demonstrated that he/she is able to support the minor financially.
--Proof of Address: [type of document] received on [mm/dd/yyyy]. Verified through Smarty Streets on [mm/dd/yyyy]. Verified through Google Maps on [mm/dd/yyyy].
--Proof of immigration/citizenship status: *[LIST TYPE OF DOCUMENT(S) PROVIDED OR REASON WHY NO DOCUMENTS WERE PROVIDED]*
-- *[INCLUDE IF APPLICABLE]* Letter of Designation: Received on [mm/dd/yyyy].
--LOPC Packet: Sent on [mm/dd/yyyy].
--Sponsor Handbook: Sponsor confirmed reading Sponsor Handbook on [mm/dd/yyyy].

**CRIMINAL:**
--As of [mm/dd/yyyy], for [Ms./Mr.] [sponsor last name]: *[DELETE ANY BULLETS BELOW THAT DO NOT APPLY]*
    --Public Records Check:  [Clear/Not Clear]
    --Sex offender Check:  [Clear/Not Clear]
    --Fingerprint Check:  Fingerprints taken: [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results: [Clear/Referred to the FFS] *[IF RESULTS WERE REFERRED TO THE FFS, THEN STATE WHETHER THE FFS INSTRUCTED THAT IT WAS SAFE TO MOVE FORWARD WITH SPONSOR AS FOLLOWS: The FFS informed this case manager that the sponsor has criminal record information that [does/does not] allow for the UAC to be safely released to the sponsor.]*
    --CA/N Check: Requested [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results: [Clear/Record Was Found]. *[IF RECORD FOUND, LIST CHARGES AND DATES]*
--As of [mm/dd/yyyy], for [Ms./Mr.] [adult household member / adult caregiver full name], [relationship to sponsor]: *[LIST THE NAME OF EVERY ADULT HOUSEHOLD MEMBER AND ADULT CAREGIVER THAT THE CHECKS WERE COMPLETED FOR]*
    -- Public records check:  [Clear/Not Clear]
    -- Sex offender check:  [Clear/Not Clear]
    -- CA/N Check: Requested [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results:  [Clear/Record Was Found]. *[IF RECORD FOUND, LIST CHARGES AND DATES]*
--There are no other household members in the residence.
--Self-Disclosure: This Case Manager asked the sponsor if he/she has any criminal history on [mm/dd/yyyy]. Sponsor responded: [Yes/No]. *[IF YES, LIST CHARGES AND DATES]*

--Evidence of Rehabilitation: *[IF APPLICABLE, LIST DOCUMENTS AND EVIDENCE THAT SHOW REHABILITATION]*
--*[INCLUDE BULLET IF A HOME STUDY WAS CONDUCTED]* Due to the concerns regarding [applicable reason for home study, including who the perpetrator of the abuse is and where the abuse occurred], ORR referred the case for a TVPRA/ORR mandated/or discretionary home study. [*USE THE FOLLOWING SENTENCE IF THE HOME STUDY REASON INVOLVES PHYSICAL OR SEXUAL ABUSE:* "[Ms./Mr.] [sponsor last name] was not the perpetrator of the abuse and the perpetrator does not reside with [him/her.]"] The home study worker concluded the home study with a positive recommendation on [mm/dd/yyyy]. *[SUMMARIZE ANY RECOMMENDATIONS MADE BY THE HOME STUDY PROVIDER AND IF THE SPONSOR MET THE RECOMMENDATIONS OR WILL WITH THE ASSISTANCE OF THE POST RELEASE SERVICE PROVIDER.]*
--*[INCLUDE IF THERE WERE CONCERNS THAT WERE MITIGATED] LIST THE CONCERNS AND HOW THEY WERE MITIGATED. (THIS WOULD BE WHERE YOU MENTION SIRS, MENTAL HEALTH OR MEDICAL ISSUES AND SPONSOR CRIMINAL HISTORY). MENTION WHAT DOCUMENTATION WAS RECEIVED (COURT DOCUMENTS, POLICE REPORTS, MEDICAL REPORTS, SCHOOL DOCUMENTS, DNA TESTING, ETC.) AND STEPS THAT WERE TAKEN TO MITIGATE ANY OF THESE CONCERNS (FAMILY SESSION, PSYCHOLOGICAL OR PSYCHIATRIC EVALUATION, COUNSELING SESSIONS, SAFETY PLANNING, DNA TESTING, ETC.)]*

**BIRTH CERTIFICATES:** All birth certificates needed to prove the sponsor-UAC relationship were received on [mm/dd/yyyy]. Sponsor is confirmed to be the UAC's [type of relationship]. Birth certificates received are: *[LIST BIRTH CERTIFICATES PROVIDED (E.G., UAC, SPONSOR, UAC'S UNCLE, SPONSOR'S SON/UAC'S BROTHER, FAMILY FRIEND)] [STATE WHETHER THE BIRTH CERTIFCIATE OF THE SPONSOR MATCHES THE OFFICAL ID OF THE SPONSOR.]*

**PRIOR SPONSORSHIP:** *CHOOSE ONE:* [Verified on mm/dd/yyyy that the sponsor did not previously sponsor or attempt to sponsor a child.] OR [Verified on (mm/dd/yyyy) that the sponsor previously sponsors/attempted to sponsor a child.] *[IF APPLICABLE, PROVIDE DETAILS ON COMPLIANCE WITH ORR REQUIREMENTS AS IT RELATES TO THE PREVIOUS SPONSORSHIP.]*

**PRIOR ADDRESS:** Verified on (mm/dd/yyyy) that the sponsor's address (was/was not) used in a previous case. *[IF APPLICABLE, LIST CONCERNS AND MITIGATING FACTORS.]*

**CONTACT WITH PRIMARY CAREGIVER IN COO:** Spoke with [name of caregiver] on [mm/dd/yyyy]. [Name of caregiver] [was/was not] able to verify information provided by the UAC and the sponsor. *[IF APPLICABLE, LIST CONCERNS AND MITIGATING FACTORS.]*

**SPONSOR RESOURCES:** The following emergency contact information was provided to the sponsor: 911, ORR Parent and Sponsor Hotline, information regarding health care and vaccinations, Department of Family and Protective Services (in state of residence), and National Human Trafficking Resource Center.

**RELEASE RECOMMENDATION:** *[INCLUDE THE RELEASE RECOMMENDATION FOR A STRAIGHT RELEASE, RELEASE WITH PRS, RELEASE WITH A POSITIVE HOME STUDY RECOMMENDATION, OR DENIAL.]*

**HOMESTUDY AND PRS:** *[LIST THE REASONS FOR RECOMMENDING HOME STUDY, AND OR, POST RELEASE SERVICES. THE RELEASE REQUEST NEEDS TO STATE WHAT THE REASON FOR THE HOME STUDY WAS, WHAT KIND OF HOME STUDY (TVPRA OR DISCRETIONARY) IF THERE ARE ANY SPECIAL RECOMMENDATIONS/CONDITIONS FROM THE HOME STUDY PROVIDER AND IF THEY WERE COMPLETED.]*

## Case Coordinator Recommendation To Be Entered into the Portals Release Request

The Case Coordinator [concurs/does not concur] with the Case Manager's release recommendation.

*[IF THE CC DOES NOT CONCUR WITH THE RECOMMENDATION, NOTE THE DISCREPANT INFORMATION IDENTIFIED AND PROVIDE BRIEF JUSTIFICATION SUPPORTING A DEFERRING RECOMMENDATION WITHOUT RE-SUMMARIZING INFORMATION THAT IS ALREADY AVAILABLE IN THE UAC PORTAL AND UAC CASE FILE.]*

## ORR Decision To Be Entered into the Portals Release Request

The FFS [concurs/does not concur] with the Case Manager's and Case Coordinator's release recommendation.

*[IF THE FFS DOES NOT CONCUR WITH THE RECOMMENDATION, NOTE THE DISCREPANT INFORMATION IDENTIFIED AND PROVIDE BRIEF JUSTIFICATION SUPPORTING A DENIAL RECOMMENDATION WITHOUT RE-SUMMARIZING INFORMATION THAT IS ALREADY AVAILABLE IN THE UAC PORTAL AND UAC CASE FILE.]*

Defendants' Prod. Vol. 5                                                                                   24960

GOV-00024960

# SPONSOR ASSESSMENT INTERVIEWING GUIDANCE

Case Managers and Clinicians must use the interview questions below when interviewing Sponsors in their assessment of a potential sponsor's suitability. Avoid reading the questions verbatim. Instead ask questions in a conversational manner and engage the sponsor. **During the interview, the interviewer must ask follow-up questions based on initial responses and obtain as much detail as possible.** Answers and information provided by sponsor must be documented in the *Sponsor Assessment*.

## INTERVIEW QUESTIONS

### SPONSOR CULTURAL INFORMATION

*Use these questions to determine the Sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children.  All responses must be documented in the Sponsor Cultural Information section of the Sponsor Assessment.*

- What languages and dialects do you speak?
- Are you spiritual or religious?  *If yes-* What are your beliefs?
- What faith do you practice, if any?  How do you practice your faith?
- Are there traditions you have practiced, through your family or in your home country, which are important to you?  *If yes-* What are they?
- Are there religious or family traditions or practices that you expect the UAC to adhere to or participate in?
- Is there anything else you would like to share about your culture or background?

### FAMILY RELATIONSHIPS

*Use these questions to determine the sponsor's familial and other significant relationships in country of origin and in the U.S. All responses must be documented in the Family and Significant Relationships section of the Sponsor Assessment. If the Case Manager has already gathered information regarding the sponsor's family, it may not be necessary to ask some of these questions. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.*

**Family in Country of Origin**
- Do you have family in your home country?
  - Who are they and how often do you have contact with them?
  - How do you contact them (phone, social media, instant messaging)?

**Family in the U.S.**
- Do you have family in the U.S.?
  - Who are they and how often do you have contact with them?
  - Where does he/she live?
  - What is his/her name and age?
  - Do you have any relatives who are or were in ORR care? Do you know where they are?

**Spouse/Partner**
- Do you currently have a partner?
  - What is your partner/spouse's name and age?
  - Where is your partner/spouse living?
  - How long have you been together?
  - What is your relationship like with your partner/spouse?
  - Is your spouse/partner supportive of the ORR family reunification process?
  - Is the spouse/partner in agreement with taking in the UAC into the home?
  - Has the spouse/partner had any contact with the UAC?
  - Would the spouse/partner contribute with support of the UAC (e.g., supervision, babysitting, financial)?

**Children**
- Are you a parent to a child?
  - What is your child's name and age?
  - Where is your child?
  - Did your child come to the U.S. with you?
  - Who is the mother/father?
  - Who is currently caring for your child?
- How do you discipline your children?
- Have you or your spouse/partner ever had Child Protective Services involvement?
- Have you ever had any child or children removed from your custody?  If so, why?
- Has any household member ever had a child or children removed from their custody?  If so, why?

### HOUSEHOLD COMPOSITION

*Use these questions to determine the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease; or criminal convictions or charges. All responses must be documented in the Household Composition section of the Sponsor Assessment.*

- Who lives in the home?
- What will the sleeping arrangements be for the minor?

- o What is his/her name and age?
- o What is the household member's relationship to the minor?
- o What is the household member's relationship to you?
- o What has your relationship been like with him/her?
- o How long have you known him/her?
- o Will the household member be helping to care for the UAC or babysit?
- o Does the household member work and/or contribute financially to the household?
- o Does any person in your household have a serious contagious disease (e.g., TB, AIDS, hepatitis)? If so explain.
- Describe your home (e.g., Apartment, duplex, trailer, townhouse, running water, working electricity, swimming pool, pets, how many rooms, bathrooms).

- o Do you currently share your bedroom?
- o Will the minor be sharing the room with anyone or will the minor have his/her own room?
- How do you expect the UAC to contribute to your household?
  - o Financially, through wages
  - o Child care
- Does anyone in the household have a serious, contagious disease? If yes, explain.
- Do any of the occupants have criminal convictions or charges, other than minor traffic violations? If yes, explain.

## PREVIOUS SPONSORSHIP ATTEMPTS

*Use these questions to determine if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, use these questions to assess the safety and well-being of previously released minor to confirm the provision of physical/mental well-being, appropriate home accommodations, adequate supervision, attendance to school, accompaniment to immigration court hearings, and provision of a caring and secure/protective environment. All responses must be documented in the Previous Sponsorship section of the Sponsor Assessment.*

**Sponsor's Previous Sponsorship Attempts**
- Have you ever attempted to sponsor a child from ORR, but decided to withdraw your application?
  - o If yes, why did you withdraw?
- Have you ever been denied sponsorship by ORR?
  - o If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Former UAC's Safety and Well-Being**
- Did the sponsor undergo a home study? If so why?
- Is or has the child received Post Release Services?
- Is the child enrolled in or attending school?
- When is the child's upcoming court date?
- Do you have school enrollment records?
- Do you have physical proof that the minor is/has attended school and court?
- Did the sponsor attend an LOPC presentation?
- Have you been contacted and asked to pay fees or wire money related to the release of the child?

**Household Members Previous Sponsorship Attempts**
- Has anyone who live in your home ever attempted to sponsor a child from ORR, but decided to withdraw their application?
  - o If yes, then why did they withdraw?
- Were they ever denied sponsorship by ORR?
  - o If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

## PROOF OF IDENTITY

*Use these questions in conjunction with documentation provided by the sponsor to assess the Sponsor's identity. The interviewer must be cognizant of the Sponsor's familiarity with and connections with the reported country of origin; attitude; behavior; speech; affect; mood; thought process and thought content; perception; memory and concentration; and insight and judgment during the entirety of the interview. The interviewer's assessment of these elements must be documented in the Proof of Identity section of the Sponsor Assessment.*

**Life in Home Country**
- Where did you live before you arrived in the U.S.? (If U.S. Citizen modify question to: Where did you grow up in the U.S.?)
  - o How long did you live there?
  - o With whom did you live?
- What was your experience like there?

**The Journey (If not born in the U.S.)**
- When did you first come to the U.S.?
  - o How old were you when you first traveled to the U.S.?
- What brought you to the U.S.?
  - o What were you planning on doing in the U.S.?
  - o Where did you live?

GOV-00024962

- Have you lived anywhere else?  With whom?  When and for how long?
  - With whom did you live? Did you know them?
- When did you first leave home country?
  - How long did the trip take?

## PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP

*Use these questions in conjunction with documentation provided by the sponsor to determine the Sponsor's immigration status or U.S. citizenship. The interviewer's assessment of these elements must be documented in the Proof of Immigration Status or U.S. Citizenship section of the Sponsor Assessment.*

- Are you a U.S. citizen?
- Have you ever applied for immigration relief?
  - What type of relief did you apply for?
  - What is the status of your application?
  - Were you given any forms or documents?
- Have you ever been apprehended a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?
- Have you had any other type of interaction with a U.S. immigration official?
  - What happened?
  - Were  you given any forms or documents?

## PROOF OF RELATIONSHIP

*Use these questions in conjunction with documentation provided by the sponsor to probe the sponsor's familial and interpersonal relationship with the UAC in order to verify the type of relationship. All responses must be documented in the Proof of Relationship section of the Sponsor Assessment.*

- What is the sponsor's relationship with the child?
- Has the sponsor ever met the child?
- When did the sponsor first meet the child?
- When was the last time the sponsor saw the child?
- When was the last time the sponsor's partner saw the child?
- How frequently does the sponsor visit the child?
- Has the sponsor ever visited the child while he/she was living in his/her country of origin?
- When did the sponsor last visit the child's country of origin?
- How frequently does the sponsor visit the child's country of origin?
- How did the child and sponsor keep in contact? How often?
- Did the sponsor financially provide for the child? If so, amount and how often?
- Has the sponsor ever met a family member of the UAC? Can the family member be verified as related to the UAC?)
- Has the child ever lived in the same home as the sponsor?
  - How long did the child live with the sponsor?
  - Did the sponsor ever act as a primary caregiver while living with the child?
  - How long did the sponsor act as the child's primary caregiver?
  - Where were the child's biological parents at the time?
  - Why were the child's biological parents unable to provide primary care for the child?
  - Did the child's biological parents ask/consent to the sponsor being the primary caregiver?
  - Who took responsibility for the following while the child lived with the sponsor: bathing and feeding the child, health care arrangements, supervising and disciplining the child, financial support for the child, and consoling/comforting the child?
  - Did the sponsor ever sexually or physically abuse the child, or through negligence allow others to sexually or physically abuse the child?
  - Did the sponsor ever abandon or mistreat the child?
- Why does the sponsor want to sponsor the UAC?
- Does the sponsor expect the UAC to work?

## PROOF OF ADDRESS

*Use these questions to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. . The interviewer must be cognizant of the sponsor's familiarity with and connections with the reported residence. The interviewer's assessment of these elements must be documented in the Proof of Address section of the Sponsor Assessment.*

- Where do you currently live in the U.S.?
  - How long have you lived there?
  - With whom do you live?
  - Do you live in a house or apartment complex?
  - How many bedrooms does the residence have?
  - Do you own where you live or rent?
  - What is the current sleeping arrangement?
  - Do you receive your mail at a different address?
  - How many schools are in the area?
  - What is the crime level in the area?
  - How far away is the nearest hospital?
  - What is and how far away is the nearest grocery store?
- Have you lived anywhere else in the U.S.?
  - Where did you live in the U.S.?
  - When and how long did you live there?
  - With whom did you live?

GOV-00024963

## PROOF OF STABILITY

*Use these questions to assess the sponsor's ability to support and financially provide for the minor while in their care. The interviewer's assessment of these elements must be documented in the Proof of Stability section of the Sponsor Assessment.*

- Does the sponsor have a job?
- Does the sponsor have financial needs?
- Does the sponsor have adequate housing?

## SPONSOR CARE PLAN

*Use these questions to ensure that the sponsor's plan to care for the minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs. Discusses with the sponsor the UAC's criminal offenses, behaviors and concern(s) related to the victims, the community and to the UAC as well as the obligations of the UAC and sponsor to address causes of behavior and prevent recidivism by participating in post release services. Assists sponsor in identifying community service providers and programs, and encourages sponsor to become aware of and participate in applicable services such as parenting classes/services, gang prevention services, substance abuse services, other forms of psycho-education in preparation for UAC's release. All responses must be documented in the Sponsor Care Plan section of the Sponsor Assessment.*

**Care Plan**
- Tell me about your plans to address the UAC's educational needs.
  - What school will the minor be attending?
  - What do you know about the school enrollment process?
  - Who will transport the UAC to and from school?
  - Who will supervise the UAC before and after school?
- Are you aware of any special needs the UAC may have that may require special attention?
  - Does the minor have any medical or mental health issues currently?
  - Does the minor have any prior medical or mental health issues?
  - How were these needs addressed in home country or previous residence?
  - Tell me about your plans to address the UAC's medical and mental health care needs and counseling needs.
  - What are the medical services in your area?
  - What are the counseling services in your area?
- Tell me about the types of community resources and services that you plan to access to address the UAC's needs.
  - What types of community resources and services to you live near?
  - What community resources do you currently utilize?
  - What types of community resources have you identified for the UAC? (e.g., school, medical clinic, mental health services agency)
  - If you needed medical assistance, where would you go? How close is that medical service to your home?
- Tell me about the minor's personality, behavior, strengths, and overall functioning.
  - How would you describe the minor's personality?
  - How does the minor get along with adults and with other children?
  - What kind of feedback or discipline does the minor best respond to?

- How do you plan to manage the minor's behaviors?
- Describe the minor's special interests, talents, hobbies, including likes and dislikes.
- Does the minor have any criminal history or behavior issues that you are aware of?
- Did you read the Sponsor Handbook and watch the Sponsor Video?
- Will you accept assistance from Post-Release Service providers, if needed?

**Safety Plan**
- Explain how you plan to ensure the safety of the minor.
  - Are you aware of any abuse or any significant traumatic events?
  - Are you aware of any safety concerns for the UAC? Has anyone threatened the minor or their family? If so, what is the safety plan?
  - Are you aware of any history of gang involvement, violence, or juvenile justice history?

**Supervision Plan**
- Do you have family or friends nearby that will be helping to care for the minor?  If yes, list name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.
- Explain how you plan to supervise the minor.

**Alternative Caregiver Plan (only for sponsors who are not U.S. citizens or Lawful Permanent Residents)**
- Who will care for the minor in the event that you need to leave the country? List name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.

## CRIMINAL HISTORY

*Use these questions to sponsor's self-disclosures of any criminal charges, sexual offenses or child abuse/neglect charges or arrests. Ask specific questions that may reveal possible disqualifying factors under Criteria for Release Denial. ➔ ORR Policy Guide, Section 2.7.4 Deny Release Request*

- Have you had any type of encounter with law enforcement (uniformed or not)?
- Have you ever been fingerprinted?

- o Have the police ever visited your home? If so, please provide details.
- o Do you have any criminal history in your country of origin?
- o Do you have any criminal history in the United States?
- o Have you ever been arrested/hand cuffed?
- o Have you ever been stopped by the police while driving a vehicle or as a passenger?
- o Were you ever in a public place/park or car drinking or in possession of an open alcoholic container which resulted in the police being called or law enforcement approaching you for your information, incarceration or citation?

- Have you ever been arrested or charged with a crime?  *If yes, for each charge ask*:
- o What happened?
- o When did this happen? How old were you?
- o Where did this happen (country, state, city, local town/province/neighborhood)?
- o Who were the victims (relation to UAC, names)?
- o What was the outcome in court?
- o Have you ever been assigned to a probation/parole officer?

- Are you on probation or parole?  *If yes, ask*:
- o When did probation/parole start?
- o How long will it last and in what state or country?
- o What are the conditions of your probation/parole (special classes, community service)?
- o Do you know the name and number of your probation/parole officer?

- Have you ever been detained for drinking, driving under the influence of alcohol/drugs?

- Have you ever been held in juvenile detention or adult jail?  *If yes, ask*:
- o How many times?
- o Where were you held?
- o How long were you incarcerated?
- o What were the dates of incarceration, as you can best remember?

- Have you experienced any violence or threats while in government custody (local, state, DHS custody, and DCS custody)?  *If yes, ask*:
- o What happened?
- o Where did this happen?
- o When did this happen?

- Have you ever had an argument with a paramour/partner/spouse that resulted in the police being called? If so, please provide details.

- Have you ever been involved in a gang?  *If yes, ask*:
- o What gang(s) and for how long?
- o When and how did you become involved?
- o What was your involvement in the gang?  Did you have specific roles or responsibilities?   What were these roles and responsibilities?
- o Did the gang encourage or require criminal behavior?
- o Do you have any gang tattoos?
- o Were you trained to build and use weapons (guns, bombs, machetes)?

- Are any of your relatives involved in gang activities? *If yes, ask*:
- o Which relative(s)?
- o What gang(s) and for how long?
- o What is their involvement in the gang?

- Have you ever committed a crime for which you were not caught? *If yes, ask*:
- o What happened?
- o When did this happen? How old were you?
- o Where did this happen (country, state, city, local town/province/neighborhood)?
- o Who were the victims (relation to UAC, names)?

- Have you ever caused bodily harm to another person(s) or animal(s)? *If yes, ask*:
- o What happened?
- o When did this happen? How old where you?
- o Where did this happen (country, state, city, local town/province/neighborhood)?
- o Who were the victims (relation to UAC, names)?

- Have you ever used a different name or date of birth?

## UAC JOURNEY AND APPREHENSION

*Use these questions to determine if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the UAC Assessment responses. All responses must be documented in the UAC Journey and Apprehension section of the Sponsor Assessment.*

### Life in Home Country
- Where did the minor live before arriving in the U.S.?
- o How long did the minor live there?
- o With whom did the minor live with?

- Whose decision was for the UAC to live with the said certain individuals?

- Did the UAC attend school, work, or both?

- Did the UAC have any hobbies in home country? What were they?

- Has the UAC lived anywhere else?  With whom?  When and for how long?

- Who was the UAC living with when he/she decided to leave his/her home country?

### The Journey
- Do you know why the UAC decided to travel to the U.S. at this time?
- o What is the UAC planning on doing in the U.S.?

- How did the UAC get to the U.S.?
- o Did anyone arrange travel for the UAC? If yes – Who? Did you arrange the UAC's travel?
- o Did the UAC travel with anyone (such as siblings, parents, family members, and children)? If so, co you know where they are now?
- o Did you provide the UAC guidance about what steps to take when planning to enter the U.S.?
- o Was a Coyote/foot guide/smuggler involved?
- o What type of transportation was used?
- o Were multiple people involved in the transportation during various legs of the journey?
- o Did the UAC have to work or exchange favors to finance the trip?
- o Were you in communication with the UAC during their journey?
- o Did the UAC share with you any hardships during the journey?
- Where was the UAC planning on living in the U.S. and with whom?

- When did the UAC leave home country?
- Who paid for the UAC's trip to the U.S.?
  - How much did the UAC's journey cost?
  - Did you pay for the UAC's travel?
  - Does the UAC or UAC's family to owe money to cover the cost of the UAC's travel?
  - Do you know how the UAC or the UAC's family paid for the UAC's travel expenses?

- Did the UAC plan to come live with you? If, not, then who? If so, then why?
- What arrangements have you made for the UAC?
- Did anyone arrange for the UAC to work after arriving to the US?
- Who arranged the work?
- What type of work is the UAC expected to be doing?
- Will the UAC be paid?
- Did the UAC's parents plan for the UAC to come live with you? If, not, then who? If not, then why not? If so, then why?

**Additional Questions**
- Had the UAC been to the U.S. before this journey?
  - When did the UAC come to the U.S.?
  - Who did the UAC travel with then?
  - For how long was the UAC in the U.S.?
  - What brought the UAC here then?
  - Why did the UAC leave the U.S.?

## HUMAN TRAFFICKING

*Use these questions to assess for trafficking concerns in the sponsors country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time. All responses must be documented in the Human Trafficking section of the Sponsor Assessment.*

**Sponsor's Journey to the U.S.** *(if applicable)*
- When and why did you decide to travel to the U.S.?
- Who planned your journey?
- Did the arrangements change during the journey? If yes, how?
- Did anyone pay for your travel to the U.S.?
  - Does that person need to be paid back?
  - Is there a plan for that person to be paid back?
  - What do you believe will happen if that person is not paid back?
- Does your family or a family friend owe money to anyone for the journey? If yes, how much?
- Did you ever have to depend upon non family members to provide basic needs such as clothes, food, and housing?
- Did you experience any challenges, trauma, or abuse by family in home country?
- Where did you first live in the U.S. and with whom?
- Have you traveled back to your country of origin since your arrival to the U.S.?

**Coercion Indicators**
- Did anyone threaten you or your family? Who made the threats? What happened?
- Were you ever physically harmed? Who harmed you? What happened?
- Was anyone around you ever physically harmed? Who was harmed? What happened?
- Were you ever held against your will? Who held you? Where? What happened?
- Did anything bad happen to anyone else in this situation or anyone else who tried to leave? What happened exactly? How many other people were in this situation?
- Did anyone ever keep/destroy your documents? Who did this and what documents?

**Debt Bondage/Labor Trafficking Indicators**
- Did you perform any work or provide any services?
- Who arranged the work?
- What type of work did you perform and where?
- How often did you have to work (Hours per day, days per week, what times of day/night)?
- Did work conditions change over time?
- Is there a debt? Do you owe money? *If yes, ask:*
  - What is the amount of the debt?
  - Has any debt amount increased?
  - By how much?
  - When did it increase?
  - Why did it increase?
- Have you or your family ever been threatened over payment or work for the journey? Who threatened you and how?
- What did you expect would happen if you left the job or stopped working?
- Were you ever made to work or do anything you did not want to do?
- Did you receive pay or did someone else keep the pay?
- Were you paid what was promised when you started working?
- Were expenses taken out of the pay? What were the expenses for?
- How did you get to the work site?
- Where did you live while working? Describe your living arrangements.
- Was your freedom of movement ever restricted or closely monitored (e.g., with security cameras)?
- Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?
- Did anyone arrange for you to work after arriving in the U.S.? Who arranged the work? What type of work do you expect to be doing? Will you be paid?

GOV-00024966

- Did anyone ever threaten to report you to the police/immigration? Who did this and what did they say exactly?
- Are you worried anyone might be trying to find you? Who?

## FRAUD

*Use these questions to determine if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process. All responses must be documented in the Fraud section of the Sponsor Assessment.*

- Have you ever been contacted and asked to pay fees/money related to the release of the minor? *If yes and if applicable, ask:*
  - When did this happen (date and time)?
  - Where did this happen?
  - What name and contact information did the individual give you?
  - What specifically did they ask you to do?
  - Did you give any money to the individual? What amount?
  - How did you pay (e.g., wire transfer, money order)? Do you have proof of payment?
- Do you have any identifying information for the receiving account (e.g., account number, account name, routing number)?
- Please name and describe any individual or organizations involved in the incident.
- Are there any potential witnesses? Do you have contact and identifying information on them (e.g., name, phone number, address, SSN/A#)?
- Are there any other details you can provide?

Defendants' Prod. Vol. 5

24967

GOV-00024967

# OFFICE OF REFUGEE RESETTLEMENT
# SPONSOR ASSESSMENT

## UAC BASIC INFORMATION

| | | |
|---|---|---|
| First Name: | Status: | ADMITTED |
| Last Name: | AKA: | |
| Date of Birth: | Gender: | select an item |
| A #: | LOS: | |
| Age: | Current Program: | |
| Country of Birth: | Admitted Date: | |

## SPONSOR BASIC INFORMATION

| | | |
|---|---|---|
| First Name: | AKA: | |
| Last Name: | A #: | |
| Date of Birth: | Country of Birth: | |
| Age: | Country of Residency: | |
| Gender: select an item | Primary Sponsor: ☐ Yes ☐ No | |

## SPONSOR CULTURAL INFORMATION

Use this section to document the sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children.

Primary Language Spoken:                      Religious Affiliation:

Other Languages Spoken:

Additional cultural information:

## FAMILY RELATIONSHIPS

Use this section to document the sponsor's familial and other significant relationships in country of origin and in the U.S. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.

Genogram completed? *(Required for distant relative Cat 3 sponsors)*          ☐ Yes   ☐ No

### Family in Country of Origin

Do you have family in your home country? *(If yes, describe below)*          ☐ Yes   ☐ No

Additional information on family in country of origin:

### Family and Family Friends in the U.S.

Do you have family or family friend in the U.S.? *(If yes, list below)*          ☐ Yes   ☐ No

| Name | Age | DOB | Gender | Relationship to Sponsor |
|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Do you have any relatives who are also in ORR care?          ☐ Yes   ☐ No

   *If yes, do you know where they are?*

Additional information on family and family friends in the U.S.:

Defendants' Prod. Vol. 5                                                           24968

GOV-00024968

**Spouse/Partner**

| Do you have a partner? *(if yes, answer below questions)* | ☐ Yes  ☐ No |
|---|---|
| *What is your partner's name and age?* | |
| *Do you live with your partner?* | ☐ Yes  ☐ No |
| *If no, where does your partner live?* | |
| *Are you married to your partner?* | ☐ Yes  ☐ No |
| *Are you legally married or is the relationship a partnership or cohabitation?* | |
| *What is your relationship like with your spouse?* | |
| Have you ever been involved in a Dissolution of Marriage case? | ☐ Yes  ☐ No |
| *If yes, explain:* | |
| Additional information on the sponsor's partner: | |

**Children**

| Do you have any children *(If yes, list below)* | ☐ Yes  ☐ No |
|---|---|

| Name | Age | DOB | Gender | Current Location | Name of Mother/Father |
|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | | |
| | | Click here to enter a date. | Choose an item. | | |
| | | Click here to enter a date. | Choose an item. | | |
| | | Click here to enter a date. | Choose an item. | | |

*ADD OR DELETE ROWS AS NEEDED  (you will need to copy dropdowns, date fields, etc. into your new row)*

| Did any of your children come to the U.S. with you? *(If not born in U.S.)* | ☐ Yes  ☐ No |
|---|---|
| Do you have any children living in your home country? | ☐ Yes  ☐ No |
| Have any of your children ever been in ORR care? | ☐ Yes  ☐ No |
| Who is caring for your children? | |
| Additional information on the sponsor's children: | |
| How do you discipline your children and how do you plan to discipline the minor? | |
| Have you or your spouse/partner ever had Child Protective Services involvement? | ☐ Yes  ☐ No |
| *If yes, explain:* | |
| Have you ever been involved in a child support case? | ☐ Yes  ☐ No |
| *If yes, explain:* | |
| Do you provide court ordered financial support to your children? | ☐ Yes  ☐ No |
| *If yes, explain:* | |
| Have you ever had a child removed from your custody? | ☐ Yes  ☐ No |
| *If yes, why? (Obtain documentation)* | |
| Have any of your household members ever had a child removed from his/her custody? | ☐ Yes  ☐ No |
| *If yes, why? (Obtain documentation)* | |

**HOUSEHOLD COMPOSITION**

Use this section to document the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease; or criminal convictions or charges.

| Does anyone else live in your home? *(If yes, list below)* | ☐ Yes  ☐ No |
|---|---|

| Name | Age | DOB | Gender | Phone Number | Valid Identity Document Present | Relationship to Sponsor | Employed | Dependent on Sponsor Income | Background Checks |
|---|---|---|---|---|---|---|---|---|---|

GOV-00024969

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐ Yes ☐ No | Choose an item. | ☐ Yes ☐ No | ☐ Yes ☐ No | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Describe your home:

Describe where the minor will sleep:

How do you expect the UAC to contribute to your household?

Does anyone in the household have a serious, contagious disease?   ☐ Yes  ☐ No

*If yes, explain:*

Do any of the occupants have criminal convictions or charges, other than minor traffic violations?   ☐ Yes  ☐ No

*If yes, explain:*

## PREVIOUS SPONSORSHIP

Use this section to document if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, document the status of the child's safety and well-being.

### Sponsor

Have you ever attempted to sponsor another child that is/was in ORR care?   ☐ Yes  ☐ No

*(If yes, list below and answer the following questions)*

| Name | A No. | DOB | Gender | Sponsor's Relationship to UAC | Current Location | ORR Release Decision | Date of Discharge | Discharge Program Name |
|---|---|---|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Have you ever attempted to sponsor a child from ORR, but decided to withdraw your application?   ☐ Yes  ☐ No

*If yes, then why did you withdraw?*

Have you ever been denied sponsorship by ORR?   ☐ Yes  ☐ No

*If yes, then why did ORR deny your sponsorship application?*

How many children did you sponsor?

Is the child still residing with you?   ☐ Yes  ☐ No

*If no, explain:*

Did you undergo a home study?   ☐ Yes  ☐ No

*If yes, why?*

Is/has the child received Post Release Services?   ☐ Yes  ☐ No

Is the child enrolled in or attending school?   ☐ Yes  ☐ No

Defendants' Prod. Vol. 5                                                          24970

GOV-00024970

When is the child's upcoming court date?

Did you attend an LOPC presentation?  ☐ Yes  ☐ No

Describe the UAC's current safety and well-being since release from ORR care to the sponsor:

## Household Members

Have any of your household members attempted to sponsor another child that is/was in ORR care?  ☐ Yes  ☐ No
*(If yes, list below and answer the following questions)*

| Name | A No. | DOB | Gender | Sponsor's Relationship to UAC | Current Location | ORR Release Decision | Date of Discharge | Discharge Program Name |
|------|-------|-----|--------|-------------------------------|------------------|---------------------|-------------------|------------------------|
| | | | Choose an item. | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. |
| | | | Choose an item. | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. |
| | | | Choose an item. | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Did he/she ever attempted to sponsor a child from ORR, but decided to withdraw your application?  ☐ Yes  ☐ No

    *If yes, then why did he/she withdraw?*

Has he/she ever been denied sponsorship by ORR?  ☐ Yes  ☐ No

    *If yes, then why did ORR deny his/her sponsorship application?*

How many children did he/she sponsor?

Is the child still residing with him/her?  ☐ Yes  ☐ No

    *If no, explain:*

Did he/she undergo a home study?  ☐ Yes  ☐ No

    *If yes, why?*

Is/has the child received Post Release Services?  ☐ Yes  ☐ No

Is the child enrolled in or attending school?  ☐ Yes  ☐ No

When is the child's upcoming court date?

Did he/she attend an LOPC presentation?  ☐ Yes  ☐ No

Describe the UAC's current safety and well-being since release from ORR care to the sponsor:

## PROOF OF IDENTIFY

Use this section to document information and documents provided by the sponsor to establish the sponsor's identity and confirm that the sponsor's identity was verified. If the sponsor's identity was unable to be verified, provide an explanation under the "Additional information on identity" section below.

### Sponsor

Sponsor's identity is verified:  ☐ Yes  ☐ No

List proof of identity documents provided:

| Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Picture ID |
|------------------------|--------------------------------|----------------------------------------|------------|
| Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

GOV-00024971

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

**Household Members**

Household Members' identity is verified:   ☐ Yes  ☐ No

List proof of identity documents provided:

| Household Member Name | Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Picture ID |
|---|---|---|---|---|
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

**Adult Caregivers**

Adult Caregiver's identity is verified:   ☐ Yes  ☐ No

List proof of identity documents provided:

| Adult Caregiver Name | Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Picture ID |
|---|---|---|---|---|
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| | Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional information on identity:

## PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP

Sponsor Legal Status:   select an item

Sponsor's legal status verified with non-expired document(s):   ☐ Yes  ☐ No

List proof of immigration status or U.S. citizenship document(s) provided:

## PROOF OF RELATIONSHIP

Use this section to document information and documents provided by the sponsor to establish the sponsor's relationship to the UAC and to confirm that the relationship was verified. If the sponsor's relationship to the UAC was unable to be verified, provide an explanation under the "Explain how the sponsor is related to or knows the UAC and/or the UAC's family" section below.

Sponsor's Relationship to UAC:   select an item          Sponsor Category:   select an item

Sponsor's Relationship to UAC is Verified:   ☐ Yes  ☐ No

List proof of relationship documents provided:

| Relationship Document Type | Expiration Date (if applicable) | Date Documents Issued (if applicable) | Verified by Government Agency or Consulate | Picture ID |
|---|---|---|---|---|
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

GOV-00024972

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Explain how the sponsor is related to or knows the UAC and/or the UAC's family:

## PROOF OF ADDRESS

Use this section to document information and documents provided by the sponsor to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. If the sponsor's address was unable to be verified, provide an explanation under the "Additional proof of address information" section below.

What is your current address and contact information? *(enter below)*

| | |
|---|---|
| Address: | Home Phone: |
| City: | Email: |
| State: | Work Phone: |
| Zip Code: | Fax: |

How long have you lived at the current address?

Describe the area/neighborhood where you reside?

Do you receive your mail at a different address?  ☐ Yes  ☐ No

*If yes, what is the address that you use to receive mail?*

Was address where the sponsor currently resides verified as a residence on Google Maps?  ☐ Yes  ☐ No

Was address where the sponsor currently resides verified as a residence on Google Earth?  ☐ Yes  ☐ No

Was address where the sponsor currently resides verified as a residence on Smarty Streets?  ☐ Yes  ☐ No

List proof of address documents provided:

| Address Document Type | Date Document Issued (if applicable) |
|---|---|
| Choose an item. | Click here to enter a date. |
| Choose an item. | Click here to enter a date. |
| Choose an item. | Click here to enter a date. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Where else have you lived in the U.S.?

| Address | City | State | Zip Code | Same Range Resided at Address | Resided at Address Within Past 5 Years |
|---|---|---|---|---|---|
| | | | | | ☐ Yes  ☐ No |
| | | | | | ☐ Yes  ☐ No |
| | | | | | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional proof of address information:

## PROOF OF STABILITY

Discusses with the sponsor, his/her ability to support and financially provide for the minor while in their care.

Does the sponsor have a job? *(If yes, answer the following questions)*  ☐ Yes  ☐ No

    Name of Employer:

    Location of Employment:

    Length of Time at present employer:

    Income:

    Work Hours/Schedule:

Does the sponsor have financial needs?  ☐ Yes  ☐ No

    *If yes, explain:*

Does the sponsor have adequate housing?  ☐ Yes  ☐ No

    *If yes, explain:*

## SPONSOR CARE PLAN

Use this section to document that the sponsor's plan to care for the minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs.

### Care Plan

Tell me about your plans to address the UAC's educational needs:

What school will the minor attend?

Does the sponsor know the school enrollment process?  ☐ Yes  ☐ No

Who will transport the UAC to and from school?

Who will supervise the UAC before and after school?

Does the minor have any medical conditions that will need treatment that you are aware of?

Tell me about your plans to address the UAC's health care needs *(If the UAC is pregnant or with child, also address the health care plans for the UAC's child).*

Tell me about your plans to address the UAC's mental health care and counseling needs.

What are the medical services in your area?

What are the counseling services in your area?

Tell me about the types of community resources and services that you plan to access to address the UAC's needs.

Is the potential sponsor familiar with community resources and services in the area?  ☐ Yes  ☐ No

*(Case Manager assists sponsor in identifying community service providers and programs and encourages sponsor to participate in applicable services such as parenting, gang prevention, substance abuse psycho-education in preparation for UAC's release)*

Does the minor have any criminal history or behavior issues that you are aware of?

Is there anything that would prevent the sponsor from enrolling in supportive services for the UAC's needs?  ☐ Yes  ☐ No

Did the sponsor watch the Sponsor Video?  ☐ Yes  ☐ No

Did the sponsor read the Sponsor Handbook?  ☐ Yes  ☐ No

Will you accept assistance from Post-Release Service providers? (if applicable)  ☐ Yes  ☐ No

### Safety Plan

Explain how you plan to ensure the safety of the minor:

### Supervision Plan

Does the sponsor have family or friends nearby that will be helping in caring for the minor?  ☐ Yes  ☐ No
*(If yes, list the individual(s))*

| Name | DOB | AKA | SSN | Gender | Home Address | Phone Number | Relationship to Sponsor | Background Check |
|---|---|---|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | | | Choose an item. | Choose an item. | |
| | | Click here to enter a date. | Choose an item. | | | Choose an item. | Choose an item. | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Explain how you plan to supervise the minor:

### Alternate Adult Caregiver Plan

Is the sponsor a U.S. citizen or a lawful permanent resident?  ☐ Yes  ☐ No
*If no, list the adult caregiver identified who will assume responsibility for the child if sponsor becomes unavailable to care for the minor.*

GOV-00024974

| Name | SSN/A R# | Age | DOB | Gender | Home Address | Phone Number | Relation and Spouse | Background Checks |
|------|----------|-----|-----|--------|--------------|--------------|---------------------|-------------------|
| | | | Click here to enter a date. | Choose an item. | | | Choose an item. | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

## CRIMINAL HISTORY

Use this section to document the sponsor's self-disclosures of any criminal charges, sexual offenses or child abuse/neglect charges or arrests.

**Any criminal history?** *(If yes, list below)*  ☐ Yes  ☐ No

List any felony convictions:

List any misdemeanor convictions:

List any probation/parole:

List and describe any disclosed criminal activity:

List any child abuse and neglect history:

History of Incarceration or Detention

| Crime | Date | Length of Sentence/Detainment | Location |
|-------|------|-------------------------------|----------|
| | Click here to enter a date. | | |
| | Click here to enter a date. | | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional information on criminal history:

## UAC JOURNEY AND APPREHENSION

Use this section to document if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the UAC Assessment responses.

Describe the UAC's day to day life in home country:

Do you know why the UAC decided to travel to the U.S. at this time?

    *Did the potential sponsor mention any U.S. immigration policy or practice as a factor in the UAC's decision to travel to the U.S.?*  ☐ Yes  ☐ No

    *Did the potential sponsor mention economic, job, or educational opportunities as a factor in the UAC's decision to travel to the U.S.?*  ☐ Yes  ☐ No

When did the UAC leave his/her home country (month, day, and year)?

How long did the trip take?

Who paid for the UAC's trip to the U.S.?

How did the UAC get to the U.S.?

Where was the UAC planning on living in the U.S. and with whom?

Do you know if the UAC has ever been to the U.S. before?  ☐ Yes  ☐ No

    *If yes, when?*

## HUMAN TRAFFICKING

Use this section to document any trafficking concerns in the sponsor's country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time.

**Sponsor's Journey to the U.S.** *(if applicable)*

Use this section to document information regarding the sponsor's journey from their country of origin will be gathered here.

When and why did you first decide to travel to the U.S.?

Who planned/organized your journey?

Did the arrangements change during the journey?                    ☐ Yes  ☐ No

*If yes, how?*

Did anyone pay for your travel to the U.S.?                         ☐ Yes  ☐ No

*Does that person need to be paid back?*                       ☐ Yes  ☐ No

*Is there a plan for that person to be paid back?*             ☐ Yes  ☐ No  ☐ N/A

*What do you believe will happen if that person if not paid back?*

Does your family or a family friend owe money to anyone for the journey?  ☐ Yes  ☐ No

*If yes, how much?*

Did you ever have to depend upon non family members to provide basic needs   ☐ Yes  ☐ No
such as clothes, food, and housing?

Did you experience any challenges, trauma, or abuse by family in home        ☐ Yes  ☐ No
country?

Where did you first live in the U.S. and with whom?

Have you traveled back to your country of origin since your arrival to the U.S.?

Additional information on sponsor's journey to the U.S.:

**Coercion Indicators**

Use this section to assess for indicators of trafficking by force, fraud, or coercion in the sponsor's country of origin, during the sponsor's journey, and in the U.S.  This includes any pressure, threats, deception, or harm experienced by the sponsor or the sponsor's family members.

Did anyone threaten you or your family?                             ☐ Yes  ☐ No

*If yes, explain:*

Were you ever physically harmed?                                    ☐ Yes  ☐ No

*If yes, explain:*

Was anyone around you ever physically harmed?                       ☐ Yes  ☐ No

*If yes, explain:*

Were you ever held against your will?                               ☐ Yes  ☐ No

*If yes, explain:*

Did anything bad happen to anyone else in this situation or anyone else who  ☐ Yes  ☐ No
tried to leave?

*If yes, explain:*

Did anyone ever keep/destroy your documents?                        ☐ Yes  ☐ No

*If yes, explain:*

Did anyone ever threaten to report you to the police/immigration?   ☐ Yes  ☐ No

*If yes, explain:*

Are you worried anyone might be trying to find you?                 ☐ Yes  ☐ No

*If yes, explain:*

Additional information on coercion indicators:

**Debt Bondage/Labor Trafficking Indicators**

Use this section to assess for indicators of debt bondage and labor trafficking in the sponsor's country of origin, during the sponsor's journey, and in the U.S. This includes any information regarding contracts, commitments, arrangements, or debt the sponsor is aware of or responsible for repaying and whether the sponsor felt unsafe or scared in their working environment.

Did you perform any work or provide any services?                   ☐ Yes  ☐ No

*Who arranged the work?*

*What type of work did you perform and where?*

*How often did you have to work?*

*Did work conditions change over time?*

Is there a debt?                                                    ☐ Yes  ☐ No

*What is the amount of the debt?*

*Has the debt amount ever increased?*                          ☐ Yes  ☐ No

*By how much?*

Defendants' Prod. Vol. 5                                                            24976

GOV-00024976

*When did it increase?*

*Why did it increase?*

Have you or your family ever been threatened over payment or work for the journey?  ☐ Yes  ☐ No

*If yes, who threatened you and how?*

What did you think would happen if you left the job or stopped working?

Were you ever made to work or do anything you did not want to do?  ☐ Yes  ☐ No

*If yes, explain:*

Did you receive pay or did someone else keep the pay?

Were you paid what was promised when you started working and were those promises kept?

Were expenses taken out of the pay?  ☐ Yes  ☐ No

*If yes, what expenses?*

How did you get to the work site?

Where did you live while working?

Was your freedom of movement ever restricted or closely monitored?

Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?

Did anyone arrange for you to work after arriving in the U.S.?

*If yes, explain:*

Additional information on debt bondage/labor trafficking indicators:

## TVPRA

Use this section to document whether the case requires a TVPRA-mandated home study based information gathered in this assessment and from any other relevant sources.

Based on the sponsor assessment, does the sponsor present signs of being abused, maltreated, exploited, or trafficked?  ☐ Yes  ☐ No

*If yes, provide a short summary:*

*Referred to OTIP?*  ☐ Yes  ☐ No

Based on the sponsor assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?  ☐ Yes  ☐ No

If "Yes" is checked, the case must be referred for a mandatory home study.

*If yes, provide a short summary:*

## FRAUD

Use this section to document if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process.

Have you ever been contacted and asked to pay fees/money related to the release of the minor?  ☐ Yes  ☐ No

*If yes, explain:*

Have you ever been contacted and asked to pay fees/money related to the release of a minor you previously sponsored or attempted to sponsor and not reported it to ORR?  ☐ Yes  ☐ No

*If yes, explain:*

## ADDITIONAL INFORMATION

Use this section to report any additional information that may be pertinent to the sponsor's assessment that has not been covered in the sections above or that require further elaboration.

## CASE MANGER'S ASSESSMENT OF SPONSOR AND CONCLUDING REMARKS

Use this section to provide a thorough assessment of the sponsor's ability to safely care for the UAC, provide for the UAC's individual needs, and ensure the safety and well-being of the UAC.

## CERTIFICATION

| Signature: | _____ | Title: | |
| Print Name: | | Date: | |

Defendants' Prod. Vol. 5

24978

GOV-00024978