# EXHIBIT N



# Children Entering the United States Unaccompanied

Published: January 30, 2015

(https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-0)

**Introduction (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-0)**

**Guide to Terms (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms)**

**Record of Posting and Revision Dates (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-record-of-posting-and-revision-dates)**

**Section 1: Placement in ORR Care Provider Facilities**

**1.1 Summary of Policies for Placement and Transfer of Unaccompanied Alien Children in ORR Care Provider Facilities (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.1)**

**1.2 ORR Standards for Placement and Transfer Decisions (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2)**
   **1.2.1 Placement Considerations (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.1)**
   **1.2.2 Children with Special Needs (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.2)**
   **1.2.3 Safety Issues (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.3)**
   **1.2.4 Secure and Staff Secure Care Provider Facilities (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.4)**
   **1.2.5 Unaccompanied Alien Children Who Pose a Risk of Escape (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.5)**
   **1.2.6  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.6)ORR Long Term Foster Care (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.6)**

   **1.2.7 Placing Family Members (Siblings and Children of Unaccompanied Alien Children) (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2.7)**

**1.3 Referrals to ORR and Initial Placement  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.3)**
   **1.3.1 Request for Information from the Referring Federal Agency (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.3.1)**
   **1.3.2 ORR Placement Designation (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.3.2)**

**OFFICE OF REFUGEE RESETTLEMENT**
An Office of the Administration for Children & Families

# Children Entering the United States Unaccompanied: Section 2

Safe and Timely Release from ORR Care

Published: January 30, 2015

**Categories:** Unaccompanied Children's Services

## 2.1 Summary of the Safe and Timely Release Process

The Office of Refugee Resettlement (ORR) has policies and procedures in place to ensure unaccompanied alien children in ORR care are released in a safe, efficient, and timely manner. ORR's policies require the release of unaccompanied alien children to parents, guardians, relatives, or individuals designed by the child's parents, referred to as "sponsors." Safe and timely release (also known as "family reunification") must promote public safety and ensure that sponsors are able to provide for the physical and mental well-being of children.

ORR evaluates potential sponsors' ability to provide for the child's physical and mental well-being, as required by law. ORR also protects children from smugglers, traffickers, or others who might seek to victimize or otherwise engage the child in criminal, harmful or exploitative activity. The process for the safe and timely release of an unaccompanied alien child from ORR custody involves several steps, including: the identification of sponsors; sponsor application; interviews; the assessment (evaluation) of sponsor suitability, including verification of the sponsor's identity and relationship to the child (if any), background checks, and in some cases home studies; and post-release planning.

*Revised 6/18/19*

## 2.2 Sponsor Application Process

ORR begins the process of finding family members and others who may be qualified to care for an unaccompanied alien child as soon as the child enters ORR's care. Parents, relatives, or close family friends may apply to have the child released to their care.

*Revised 6/18/19*

### 2.2.1 Identification of Qualified Sponsors

The ORR **care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)**, the ORR funded facility that cares for the child, interviews the child as well as parents (see the section below on how ORR confirms relationship with child), legal guardians, and/or family members to identify qualified custodians ("sponsors"). If a child is either too young or there are other factors that prohibit the care provider from obtaining potential sponsor information from the unaccompanied alien child, the care provider may seek assistance from the child's consulate in collaboration with the **ORR Federal Field Specialist (ORR/FFS) (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** or from a reputable family tracing organization. Finding a sponsor for the child is an ongoing process that continues during the unaccompanied alien child's stay in ORR care and custody in the event that the primary potential sponsor or primary release plan is not approved.

ORR releases children to a sponsor in the following order of preference:[1] parent; legal guardian; an adult relative (brother, sister, aunt, uncle, grandparent or first cousin); an adult individual or entity designated by the parent or legal guardian (through a signed declaration or other document that ORR determines is sufficient to establish the signatory's parental/guardian relationship); a licensed program willing to accept legal custody; or an adult individual or entity seeking custody when it appears that there is no other likely alternative to long term ORR care and custody. ORR has grouped UAC cases into the following categories.[2]

- **Category 1:** Parent or legal guardian (This includes qualifying step-parents that have legal or joint custody of the child or teen)
- **Category 2A:** An immediate relative--a brother; sister; grandparent **or** other close relatives (aunt, uncle, first cousin) who previously served as the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage, and half-siblings).
- **Category 2B:** An immediate relative-- including aunt, uncle, or first cousin who was not previously the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage).
- **Category 3:** Other sponsor, such as distant relatives and unrelated adult individuals
- **Category 4:** No sponsors identified

Although ORR gives preference to a parent or legal guardian when determining release plans, there are instances when ORR does not release an unaccompanied alien child to a parent or legal guardian. These include:

- There has been a court ordered termination of parental rights over the child.
- There is substantial evidence that the child would be at risk of harm if released to the parent or legal guardian.

In some cases, an unaccompanied alien child enters the United States with her biological child. In those cases, ORR identifies a sponsor for the unaccompanied alien child as well as for the infant or toddler. In most instances, it is in the best interest of the unaccompanied alien child and her biological child to be released to the same sponsor. For case processing purposes, the sponsor is assigned the same category for the infant as for the UAC mother. This is true even if the potential sponsor would be assigned a different category (based on their relationship status) if he or she were to sponsor the infant alone.

*Revised 6/18/19*

## 2.2.2 Contacting Potential Sponsors

The child's **care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)** is responsible for implementing safe screening methods when contacting and communicating with potential sponsors. These methods are to ensure that a potential sponsor does not pose a risk to the unaccompanied alien child, to other children in the care provider facility or to care provider staff.

Safe screening methods include:

- Use of appropriate interpreters
- Identity of the sponsor is obtained
- Verification of family relationships
- Coordination with the unaccompanied alien child's parents, legal guardians, or closest relatives prior to contacting non-relative adult potential sponsors
- Screening for exploitation, abuse, trafficking, or other safety concerns
- Engaging the child to communicate openly with care provider staff about his or her own sense of safety

*Posted 1/27/15*

## 2.2.3 The Family Reunification Application

All potential sponsors must complete an application in order for a child to be released to them from ORR custody (the "Family Reunification Application").

Within 24 hours of identification of a potential sponsor for a child or youth, the care provider or the ORR National Call Center sends the sponsor a package with the application and related documents (called the Family Reunification Packet or FRP).

The application package includes the following documents:

- Family Reunification Packet Cover Letter
- Authorization for Release of Information
- Family Reunification Application
- Sponsor Care Agreement
- A flyer with contact information on organizations offering a Legal Orientation Program for Custodians (LOPC)
- A flyer with contact information for the UAC Sexual Abuse Hotline
- Fingerprint instructions
- Sponsor Handbook
- Letter of Designation for Care of a Minor (If parent or legal guardian wishes to specify)
- Sponsor Declaration
- A flyer warning sponsors of potential fraud schemes

The care provider is available to help the potential sponsor complete the application. The care provider also informs potential sponsors that they may submit additional information to support the application and reminds potential sponsors of the deadlines for completing the forms. The sponsor may also receive assistance in completing the application at some fingerprinting locations.

*Revised 6/18/19*

## 2.2.4 Required Documents for Submission with the Application for Release

In addition to completing and signing the Family Reunification Application (FRA) and the Authorization for Release of Information, potential sponsors must provide documentation of identity, address, and relationship to the child they seek to sponsor.[3] Potential sponsors must also submit documentation verifying the identity of the children they seek to sponsor, and evidence verifying the identity of all adults residing with the sponsor and all adult caregivers identified in a sponsor care plan. In addition to their use as evidence of the foregoing, all documentation submitted under this section is used as part of the overall sponsor assessment process. See **Section 2.4 Sponsor Assessment Criteria and Home Studies (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.4).** As a result, ORR may in its discretion require potential sponsors to submit additional documentation beyond the minimums specified below.

**Proof of Sponsor Identity**

To verify their identity, all potential sponsors must submit original versions or legible copies of government-issued identification documents. They may present either one selection from List A or two or more documents from List B. If a potential sponsor presents selections from list B, at least one selection must contain a legible photograph. Expired documents are acceptable for the purpose of establishing identity.

**LIST OF ACCEPTABLE DOCUMENTS**

| LIST A |
|---|
| U.S. Passport or U.S. Passport Card |
| Permanent Resident Card or Alien Registration Receipt Card (Form I-551) |
| Foreign Passport that contains a photograph |
| Employment Authorization Document that contains a photograph (Form I-766) |
| U.S. Driver's License or Identification Card |

OR

| LIST B |
|---|
| U.S. Certificate of Naturalization |
| U.S. Military Identification Card |
| Birth Certificate |
| Marriage Certificate |
| Court order for name change |
| Foreign national identification card |
| Consular passport renewal receipt that contains a photograph |
| Mexican consular identification card |
| Foreign driver's license that contains a photograph |
| Foreign voter registration card that contains a photograph |
| Canadian border crossing card that contains a photograph |
| Mexican border crossing card that contains a photograph with valid Form I-94 |
| Refugee travel document that contains a photograph |
| Other similar documents |

**Proof of identify of adult household members and adult care givers identified in a sponsor care plan**

All potential sponsors must submit documentation verifying the identity of non-sponsor adults in their household or in a sponsor care plan. For all such adults, potential sponsors must submit at least one identification document that contains a photograph. The document may be from either List A or List B above, and may be an original version or a legible copy of the document. Expired documents are acceptable for the purpose of establishing identity. In addition, potential sponsors may submit an original version or legible copy of an ORR Verification of Release Form, but only to verify the identity of adults under the age of 21, and only if the form contains a photograph. ORR will not accept a Verification of Release as proof of identity if it does not contain a photograph, and/or is for anyone 21 and older.

**Proof of Immigration Status or U.S. Citizenship**

All potential sponsors must submit at least one original version or legible copy of a non-expired government-issued document to prove their immigration status or U.S. citizenship, if applicable. For administrative purposes, ORR considers any potential sponsor who provides an expired document or is unable to provide any documents to be without status. ORR does not provide individual immigration status information to DHS.

ORR may use the macro-level information related to immigration status or presumed immigration status for statistical reporting. ORR uses individual potential sponsor immigration status information to determine whether a sponsor care plan is necessary in the event the sponsor is required to leave the United States (see **Section 2.6 Sponsor Immigration Status and Release of Unaccompanied Alien Children**).

**LIST OF ACCEPTABLE DOCUMENTS**

| PROOF OF IMMIGRATION STATUS |
|---|
| Valid visa |
| Legal permanent resident card (green card) |
| Notice to Appear |
| Other Federal government issued documentation providing immigration status information |

**OR**

| PROOF OF U.S. CITIZENSHIP |
|---|
| U.S. passport |
| U.S. birth certificate |
| Naturalization certificate |
| Citizenship Certificate |
| State Department Form 240 – Report of Birth Abroad of a Citizen of the United States |
| Court order |
| Other government issued document sufficient to prove U.S. citizenship |

**Proof of Address**

All potential sponsors must submit at least one form of documentation verifying their current address. Acceptable forms of documentation include original versions or legible copies of:

- A current lease or mortgage statement dated within the last two months before submission of the FRA;
- A utility bill, addressed in the sponsor's name and dated within the last two months before submission of the FRA;
- A bank statement dated within the last two months before submission of the FRA;
- A payroll check stub issued by an employer, dated within the last two months before submission of the FRA;
- A piece of mail from a county, state, or federal agency (with the exception of ORR) with the sponsor's name and residential address and dated within the last two months before submission of the FRA;
- A notarized letter from a landlord on the business stationary of the real property owner confirming the sponsor's address; and
- Other similar documents reliably indicating that the sponsor resides at the claimed address, dated within the last two months before submission of the FRA.

ORR may use alternative methods to verify address. For example, ORR may send a letter containing specific instructions to the address given by the sponsor, and provide a timeline by which the sponsor must comply with the instructions.

**Proof of Child's Identity**

The potential sponsor or child's family must provide the unaccompanied alien child's birth certificate or a legible copy of the child's birth certificate.

**Proof of Sponsor-Child Relationship**

The potential sponsor must provide at least one form of evidence verifying the relationship claimed with the child.[4] Acceptable documents include original versions or legible copies of:

- Birth certificates;
- Marriage certificates;
- Death certificates;
- Court records;
- Guardianship records;
- Hospital records;
- School records;
- Written affirmation of relationship from Consulate; and
- Other similar documents.

**Category 2A potential sponsors providing evidence of "primary caregiver"**

Category 2A sponsors who are not grandparents or adult siblings must prove they are or were the UAC's primary caregiver. A primary caregiver is defined as any person who is primarily entrusted with the child's care and who lives with the child.

 If the potential sponsor has any guardianship documents or other documents from a state or foreign government they must submit this with the Family Reunification Application. ORR also accepts sworn affidavits from potential sponsors in addition to corroborating interviews the Case Manager has with the child, potential sponsor, and other family members to establish whether the potential sponsor was a primary giver to the child.

**Category 3 potential sponsors without a bona fide pre-existing relationship**

Category 3 potential sponsors who are unable to provide verifiable documentation of a familial relationship with the unaccompanied alien child must submit evidence that reliably and sufficiently demonstrates a bona fide social relationship with the child and/or the child's family that existed before the child migrated to the United States. Care providers must attain sufficient corroboration to be confident that they have received needed verification of the relationship between the potential sponsor and the child or child's family. If a Category 3 potential sponsor does not submit evidence that reliably and sufficiently demonstrates a bona fide preexisting social relationship between the potential Category 3 sponsor and the child and/or the child's family, ORR may take this into account when determining the suitability of the case for release. In such cases ORR may require that the potential Category 3 sponsor, the UAC, and the child's family, establish ongoing regular contact while the child is in ORR care, prior to a release recommendation.

**Criminal History**

If a potential sponsor has been charged with or convicted of any crime or investigated for the physical abuse, sexual abuse, neglect, or abandonment of a minor, he or she must provide related court records and police records, as well as governmental social service records or proof of rehabilitation related to the incident.

If a sponsor, household member, or adult caregiver provides any false information in the application of release and/or accompanying documents or submits fraudulent documents for the purposes of obtaining sponsorship of the child, ORR will report the incident to HHS/Office of the Inspector General (OIG) and to U.S. Immigration and Customs Enforcement's Homeland Security Investigations (HSI). Fraudulent documents include documents on which the address, identity, or other relevant information is false or documents that have been manufactured or altered without lawful authorization. ORR will deny release if it is determined that fraudulent documents were submitted during the application of release process.

*Revised 7/03/19*

## 2.2.5 Legal Orientation Program for Custodians

All potential sponsors of children and youth under the care of ORR should attend a presentation provided by the Legal Orientation Program for Custodians (LOPC). The purpose of this program is to inform potential sponsors of their responsibilities in ensuring the child's appearance at all immigration proceedings, as well as protecting the child from mistreatment, exploitation, and trafficking, as provided under the Trafficking Victims Protection Reauthorization Act of 2008. The program also provides information about possible free legal counsel (pro bono legal services) for the youth or child during the immigration court process.

The Office of Legal Access Programs (OLAP), within the Executive Office for Immigration Review (EOIR) at the U.S. Department of Justice, manages the LOPC and contracts with legal service organizations around the country to provide LOPC services to potential sponsors in their local communities or in metropolitan areas served by the program. EOIR is the entity in the federal government that is also responsible for adjudicating immigration cases by fairly, expeditiously, and uniformly interpreting and administering the nation's immigration laws.

The unaccompanied alien child's **case manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)** is responsible for informing potential sponsors about all procedures related to the child's case-- including attendance at an LOPC presentation. The Family Reunification Packet (FRP) that goes to each potential sponsor includes an *Authorization for Release of Information* that the sponsor must sign before the case manager may schedule an appointment for LOPC services. All potential sponsors should submit the *Authorization for Release of Information* immediately and prior to submitting the complete FRP to ensure timely scheduling of their LOPC session.

Upon receipt of the *Authorization*, the case manager schedules an appointment for a potential sponsor to attend a presentation with one of the LOPC providers around the country. Alternatively, the case manager contacts the **LOPC National Call Center at (888) 996-3848** and arranges for the Call Center to schedule an LOPC appointment for the potential sponsor or mail an LOPC Information Packet to the sponsor.

When evaluating family members and other potential sponsors, ORR considers whether they have attended an LOPC presentation.  Attendance at an LOPC presentation is a factor in the release assessment.

*Revised 12/4/17*

## 2.2.6 Additional Questions and Answers about this Topic

**Q: Will sponsors receive the Family Reunification Packet through the mail or electronically?**
A: Case managers will work with sponsors to identify the best way to get the packets to them, whether electronically or by fax transmission or postage paid overnight mail.

**Q: Do sponsors need assistance from an attorney or a paid representative to complete the packet?**
A: No. The unaccompanied alien child's case manager will be able to help the potential sponsor complete the form and explain the process.

**Q: Is it possible for an unaccompanied alien child's spouse to be a sponsor?**
A: ORR considers release to an unaccompanied alien child's adult spouse on a case by case basis.

State laws on statutory rape are not the standard in assessing whether a youth has been sexually abused for the purposes of #3. Care providers use the definition from the ORR rule concerning sexual abuse and harassment; however, for the purposes of determining when a home study is required, the perpetrator is limited to a parent, legal guardian, caregiver or other adult with a special relationship to the child.

**Under what circumstances is a child's health or welfare considered to have been significantly harmed or threatened?**

Care providers assess the totality of the circumstances in determining whether a child's health or welfare has been significantly harmed or threatened. In evaluating a specific case, care providers take into consideration not only the definitions of physical and sexual abuse listed

above, but also the circumstances surrounding the incident and any behaviors that the child or youth exhibits as a result of the abuse. Circumstances to consider include but are not limited to: the amount of time that has passed since the abuse, the period of time in which the abuse occurred, the cultural context in which the abuse occurred, the age of the child or youth at the time of the abuse, and the relationship between the youth and the perpetrator.

Care providers take into consideration the situations and behaviors listed below, but do not make a determination based solely on the presence or absence of one of them.

- The child experiences on-going medical issues from physical injuries.
- The child exhibits negative or harmful behaviors, thoughts or emotions, such as, but not limited to, excessive hostility or aggression towards others, fire setting, cutting, depression, eating disorders suicidal ideation or substance abuse.

In evaluating difficult cases, the care provider should consult with their ORR/FFS.

*Revised 1/9/17*

### 2.4.3 Additional Questions and Answers on This Topic

**Q: What happens if a new sponsor is identified during the sponsor assessment process?**
A: If there are multiple potential sponsors, the ORR-funded care provider will exhaust all efforts to facilitate a release to a parent or legal guardian while also contacting and evaluating other potential sponsors concurrently. ORR has release order preferences and will evaluate sponsors concurrently in accordance with the preference orders to determine the best placement for the child.

*Posted 1/27/15*

### 2.5 Sponsorship Assessment Background Check Investigations

One of ORR's priorities is ensuring the safe release of unaccompanied alien children to an appropriate sponsor. Consistent with ORR's mission and in compliance with requirements found at 8 U.S.C. 1232(c)(3)(A) to perform an independent finding that a potential sponsor has not engaged in any activity that would indicate a potential risk to the child, ORR requires a background check of all potential sponsors and their adult household members.

To begin the  background check process, the potential sponsor and adult household members must first complete the Authorization for Release of Information form (if applicable), submit fingerprints (if required)  and provide a copy of a valid government issued photo identification. Adult caregivers identified in a sponsor care plan also require background checks, as outlined in the chart at section 2.5.1. The type of background checks performed on a sponsor and adult household members is dependent in part on the sponsor's relationship, if any, with the child. See section **2.2.1 Identification of Qualified Sponsors** for a description of sponsor categories.

All potential sponsors and adult household members undergo a public records background check of criminal history and sex offender registry databases. Sponsors in Categories 2B and 3, as well as some Category 1 and 2A sponsors, adult household members, and adult caregivers identified in a sponsor care plan require fingerprint background checks that are processed through Federal partners.

ORR transmits fingerprint submissions (if required) to the U.S. Department of Justice's (DOJ) Federal Bureau of Investigation (FBI) to perform criminal history checks.[7] After completing these checks, the FBI submits the results to the Department of Health and Human Services/Program Support Center (HHS/PSC). HHS/PSC interprets the results and notifies ORR that the biometric and biographic checks conducted by DOJ are complete. HHS/PSC also provides copies of the results to ORR.

In some cases, ORR requires sponsors, adult household members, and adult caregivers to undergo a background check search of state child abuse and neglect (CA/N) registries maintained by individual states. In these cases, HHS/PSC works with the relevant state agency or directs the subject of the check to request results from the relevant state agency in compliance with state law and regulation.

*Revised 6/18/19*

### 2.5.1 Background Check Requirements

The following table lists the types of background checks performed, and explains when they are performed, based on the potential sponsor's relationship to the unaccompanied alien child and other release considerations. The table only indicates the minimum requirements for the background check process for

sponsors and others. ORR may require additional checks, verifications, or procedures for sponsors and others in any category if there are any unresolved issues or questions related to the well-being of the child.

| Type of Background Check | Purpose | Persons Checked | When Performed |
|---|---|---|---|
| Public Records Check | Identifies arrests or convictions of sponsors, adult household members, or others. If a check reveals a criminal record or safety issue, it is used to evaluate the sponsor's ability to provide for a child's physical and mental well-being. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases |
| Sex Offender Registry Check, conducted through the U.S. Department of Justice National Sex Offender Public Website | Identifies sponsors and others that have been adjudicated as sex offenders through a national search and, if available, a local public registry search. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases |
| FBI National Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member (as applicable) has a criminal history, has a profile in DHS IDENT, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Category 1 and Category 2A. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| | | Potential Sponsors in Categories 2B and 3. | In all cases. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| Child Abuse and Neglect (CA/N) Check, obtained on a state by state basis as no national CA/N check repository exists | Checks all localities in which the sponsor or household member has resided in the past 5 years. | Potential Sponsors in Categories 1-3 | In cases that require a home study, and cases where a special concern is identified. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In any case where a sponsor is required to undergo a CA/N check. |
| State Criminal History Repository Check and/or Local Police Check | Assists in locating police or arrest records, or other criminal offense details, as needed. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Used on a case-by-case basis when there is an unresolved criminal arrest or issue that is still in process. |

*Revised 6/18/19*

### 2.5.2 Results of Background Checks on Release Decisions

ORR uses the results from background checks to determine whether release to a potential sponsor is safe. A potential sponsor may be denied based on the results of a background check, and a release decision may remain undecided until ORR obtains the results of a potential sponsor's criminal history or child abuse and neglect reports.

The biometric and biographical information, including fingerprints, are shared with FBI to investigate criminal history through the National Criminal Information Center and may be used consistent with their authorities. Biometric and biographical information may be shared with federal, state or local law enforcement or state child welfare agencies, as necessary, to conduct criminal history searches or search for adverse child welfare findings.

**Criminal History and Adverse Child Welfare Finding Results**
In the event that a background check of a potential sponsor or, if applicable, adult household member, reveals criminal history or a safety risk, the care provider and ORR evaluate this information and request the potential sponsor to provide any additional information that may demonstrate the potential sponsor's ability to provide for the child's physical and mental well-being.

If release is not barred by **Section 2.7.4**, the decision to release a child or youth to a sponsor in these circumstances is based on all the following considerations:

- The severity of the criminal and/or child abuse/neglect history;
- The length of time that has passed since the criminal act or child abuse/neglect allegation occurred;
- The relationship of the potential sponsor and other adult household members to the child or youth; and
- The evidence, if any, of rehabilitation since the criminal act or child abuse/neglect allegation occurred.

In cases where the proposed sponsor or an adult household member has been charged with, but not convicted of, a crime, ORR may postpone a final release decision until the legal issue is resolved.

In cases where ORR has released a child and later obtains derogatory information on a sponsor or sponsor household member, ORR determines whether the information if known prior to release would have led to a denial of sponsorship or presents some other high risk child welfare concern. In these instances ORR contacts state CPS and/or local law enforcement (as necessary) with jurisdiction over the sponsor's home and provides them with ORR's findings. ORR may contact the sponsor in certain situations to inform them of child welfare concerns post release in these instances, especially where it concerns an individual in the sponsor's home.

**Summary Table of Results of Background Checks and Next Steps**
The following table shows procedures following the results of background checks.

| BACKGROUND CHECK RESULTS | NEXT STEPS |
| --- | --- |
| No arrest record; check completed | Proceed with release decision-making process. See Section **2.7 Recommendations and Decisions on Release**. |
| Criminal arrest record and/or substantiated adverse child welfare findings; check completed | Determine whether release is barred. See Section 2.7.4 Deny Release Request. If release is not barred, elevate safety issues for third party review. For any findings that could affect safe release, care provider and/or ORR will obtain additional documents to determine current situation (e.g., sponsor is on probation, criminal charges are resolved, etc.). Final release decision shall take into account the criminal records and all other relevant information that is available. |
| Criminal history pending results; check not complete | ORR/FFS will provide instructions to care provider |
| CA/N pending results | ORR may choose to release a child pending CA/N results if there are no significant child welfare concerns associated with the sponsor or an adult in the sponsor's home, with the UAC or other children. |

*Revised  6/18/19*

### 2.5.3 Commonly Asked Questions on the ORR Background Check Process

Q1: Where can a sponsor get his or her fingerprints taken?
A1: ORR funds a network of digital fingerprint providers at locations that are not affiliated with law enforcement entities. Sponsors may also go to any local police department for paper fingerprinting services in the event a digital fingerprint provider is not conveniently located near a sponsor's location. Fingerprinting services are not available at ORR headquarters or at HHS/PSC offices.

Q2: Are potential sponsors required to disclose to the care provider that they have a record of a criminal charge or child abuse?
A2: Yes. The sponsor must immediately advise the care provider of this situation and gather detailed documentation of the charges, dispositions, police reports, and evidence of rehabilitation.

Q3: What happens if a public records or sex offender registry check returns disqualifying findings for a sponsor, adult household member, or adult caregiver identified in the sponsor care plan?
A3: The Case Manager informs the sponsor, and provides the sponsor with a copy of the results. The sponsor and household member/adult caregiver may dispute the results, and provide further evidence or information that a check was not performed correctly (e.g., the wrong date of birth was used, the individual's name was spelled incorrectly, etc.). The Case Manager reruns the check using the corrected information. If further information is required, such as additional background checks, the Case Manager contacts the sponsor and household member/adult caregiver to obtain the information, or make other arrangements so that the safety risk to the unaccompanied alien child is mitigated (e.g., taking steps so that the household member no longer resides in the sponsor's home, identifying a new adult caregiver, etc.).

Q4: What happens if an adult household member refuses to cooperate with a background check?
A4: ORR may deny release when an adult household member refuses to cooperate with a background check. In such cases, ORR considers the totality of the circumstances, including the adult household member's refusal and all other relevant and available information to determine whether the release

process may continue. ORR determines the best interests of a child and does not release any child to a sponsor until ORR has determined that it is safe to do so.

Q5: Do background checks expire?
A5: Yes. The FBI National Criminal History Check, Child Abuse and Neglect (CA/N) Check, and State Criminal History Repository Check and/or Local Police Check all expire 270 days from the day results are received. The Public Records Check and Sex Offender Registry Check expire 90 days from the day ORR receives results. ORR requires new background checks if the previous results have expired prior to ORR approving the child's release; this includes obtaining a new set of fingerprints (re-fingerprinting) when applicable.

Q6: Does ORR share the results of the FBI fingerprint checks with other parties?
A6: ORR does not release the results of the FBI fingerprints to outside organizations or individuals, or to ORR care providers. The FBI searches DHS databases that may contain overlapping records. The FBI system automatically initiates a notification to the DHS system if a particular record has been searched.

Q7: Can DHS use information gathered from the ORR background check process to enforce immigration policies against potential sponsors or others?
A7: Until September 30, 2019, DHS is restricted from using a background check subject's information for immigration enforcement actions such as placing a subject in detention, removal, referring the individual for a decision on removal, or starting removal proceedings. Generally stated, they include: certain felonies; an association with a business that employs minors and does not pay a legal wage or prevents the minor from going to school; or an association with prostitution.  The felonies include: (A) an aggravated felony as defined in 8 U.S.C. 1101(a)(43)); (B) child abuse; (C) sexual violence or abuse; or (D) child pornography. An aggravated felony, is defined at 8 U.S.C. § 1101(a)(43), and includes a listing of 21 different kinds of crimes.

If the subject of a background check is concerned about having been charged or convicted of a crime, Case Managers make a request that the subject talk to an attorney about whether their criminal history would fit the definition.

*Revised 6/18/19*

## 2.6 Sponsor Immigration Status and Release of Unaccompanied Alien Children

ORR uses immigration status information to determine whether a sponsor care plan is necessary in the event the sponsor is required to leave the United States. ORR does not disqualify potential sponsors based solely on their immigration status or for law enforcement purposes.

If the sponsor has an outstanding order of removal, or a pending order of removal that is related to an underlying criminal act, the decision to release a child or youth to a sponsor in these circumstances is based on the considerations described in Section 2.5.2.  ORR bars release to any unrelated individual who has an outstanding order of removal.

How does ORR obtain information about immigration status?
During the sponsor assessment process, case managers ask sponsors about their immigration status and ask them to provide documentation sufficient to prove their immigration status (see Section 2.2.4 Required Documents for Submission with the Application for Release).

What is in a sponsor care plan?
A sponsor care plan identifies the individual that will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child (see Section 2.7.6 Issues Related to Recommendations and Decisions).

*Revised 6/18/19*

## 2.7 Recommendations and Decisions on Release

ORR care providers must make a recommendation to release a child to a potential sponsor after the care provider has evaluated the sponsor, completed the background checks, and collected necessary documentation to prove the sponsor's identity and relationship to the child or youth. The recommendation must take into consideration all relevant information, including the report and recommendations from a home study, if conducted; laws governing the process; and other factors in the case. The ORR care provider makes a recommendation for release if the care provider concludes that the release is safe and the sponsor can care for the physical and mental well-being of the child.

- The care provider **Case Manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)**and the **Case Coordinator  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)**must make a recommendation to the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** on the release of the unaccompanied alien child to a particular sponsor. If the Case Manager and Case Coordinator cannot agree on a particular recommendation, or if the case is particularly complicated, they may refer the case directly to an ORR/FFS for guidance on how to proceed.
- After receiving the recommendation, the **ORR/FFS  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)**or other **ORR/Headquarters staff**