# EXHIBIT A

I, Dr. Julie DeAun Graves, declare as follows:

1. This declaration is based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about these facts.

2. This declaration serves to supplement my prior declaration in this case, submitted on March 24, 2020 (Exhibit C).

3. My name is Julie DeAun Graves. I am a physician licensed to practice medicine in the states of Florida, Maryland, New Jersey, Texas, Virginia, Wisconsin, and in the District of Columbia. I am currently working in family medicine and public health private practice as the Associate Director of Clinical Services at Nurx. I have been certified by the American Board of Family Medicine since 1989. The rest of my qualifications were set forth in paragraphs 3-5 of my prior declaration.

4. I have reviewed the Defendants' Opposition to Plaintiffs' Ex Parte Application for a Temporary Restraining Order (Dkt. No. 227), Exhibit Q (Sualog Declaration), and Exhibit AA (Cohn Declaration).

5. In Exhibit AA, Dr. Cohn states that "Moving UAC children outside of custody likely increases risk of exposing UAC to COVID-19 relative to remaining in custody, given that they are currently housed in well-controlled environments and may be transferred to areas where there is widespread community transmission, or to homes where there may be persons who have been exposed." Cohn Dec. ¶ 22. This is incorrect. There is no question that requiring children to remain detained in congregate care facilities is more dangerous than the travel required to release children to their sponsors. While there is level of risk in traveling at this time, the risk of exposure in congregate care environments is much higher. All of the risks of exposure during travel – such as persons coming within six feet and transmitting the virus through respiratory droplets – also apply to congregate care environments, because multiple staff members are constantly entering and exiting the facility and there is

potential for them to expose children to the virus. **These children are at risk every single time a staff member or visitor walks into the facility – because any one of them could be an asymptomatic carrier of COVID-19.** Even if ORR facilities faithfully adhere to the screening protocols that that are outlined on pages 6-10 of the Government's brief, there is still a risk that a staff member is an asymptomatic carrier. Children will be significantly safer in a home environment, where they can truly avoid public spaces and practice appropriate social distancing.

6. In Exhibit U, Ms. Sualog states that "Any UAC exhibiting symptoms consistent with COVID-19, such as coughing, fever, or difficulty breathing, at any point during their time in ORR care are to be immediately isolated and referred for evaluation by a licensed medical provider…" Sualog Decl. ¶ 23. This response is too late – if a child is not quarantined when there is an initial exposure, then there is much higher likelihood that the virus spreads around the facility, especially when everyone is in such close contact and social distancing is not possible.

7. In Exhibit U, Ms. Sualog states that "Care-provider facilities are required to consult with their Federal Field Specialist ("FFS"), or delegee, if a UAC will be traveling to a jurisdiction with widespread community transmission of COVID-19 or that is subject to a community-wide "lock down," such as California. In such cases, release should be postponed until it is determined to be safe for the UAC to travel to their destination." Sualog Dec. ¶ 33. As stated above, requiring children to remain detained in congregate care facilities is more dangerous than the travel required to release children to their sponsors. It is possible to safely effectuate children's release to sponsors by carefully planning travel and taking the necessary precautions for the child and accompanying staff member during transit. It is also important to note that this is a pandemic, the virus is currently spreading rapidly throughout the United States, and we do not have any clear idea on when it will be contained. If ORR refuses to release children to states that have widespread community transmission, they will

soon be in the position of refusing the release of children to sponsors *in every state*, *indefinitely*, leaving them at risk in congregate care facilities.

8. In Exhibit AA, Dr. Cohn states that "Fortunately, the vast majority of individuals who become infected with COVID-19 will experience only mild symptoms, and there have been very few reports of serious illness among children and adolescents globally." Cohn Dec. ¶ 25. While children may make up a minority of known COVID-19 infected persons at this time, children with COVID-19 have experienced serious medical complications that required ventilators and extended hospitalization. Additionally, children with pre-existing medical conditions such as asthma and diabetes are at heighted risk for serious complications, and the Government's brief does not identify any special measures that are being taken to protect these children.

9. I declare under penalty of perjury that the foregoing is true and correct. Executed on March 27, 2020 in North Bay Village, Florida.

_Julie Graves_
Julie DeAun Graves

---

Declaration of Dr. Julie DeAun Graves

3