JEFFREY B. CLARK
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
ERNESTO H. MOLINA, JR.
Deputy Director
CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General
W. DANIEL SHIEH
BENJAMIN M. MOSS
Senior Litigation Counsel
NANCY K. CANTER
ANTHONY J. MESSURI
JONATHAN K. ROSS
Trial Attorneys
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-9802
Daniel.Shieh@usdoj.gov
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lucas R., *et. al.*,<br><br>                    *Plaintiffs*,<br><br>                v.<br><br>Alex M. Azar,<br>Secretary of U.S. Dep't of Health and<br>Human Services, *et al*.<br><br>                    *Defendants*. | Case No.: 18-cv-05741-DMG-PLA<br><br>**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br>Hearing Date: Dec. 11, 2020<br>Time: 3:00PM PT<br>Location: Courtroom 8C, 8th Floor<br>350 West 1st Street<br>Los Angeles, CA 90012<br><br>Honorable Dolly M. Gee<br>United States District Judge |

1

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| **Defendants' Uncontroverted Facts: Custody/Release** ||
| 1. It is ORR's practice to seek the safe and timely release of unaccompanied alien children (UACs) in its care. | Antkowiak Dep. 202:4-19; Sualog Dep. 80:4-14; Vergara Dep. 215:18-22; Biswas 30(b)(6) Dep. 147:7-21; Dr. Earner Dep. 117:1-21; Dr. Mohn Dep. 116:17-22; Antkowiak Decl. ¶ 38; Biswas Decl. ¶ 63; ORR Juvenile Coord. Rep. at 1. |
| 2. It is ORR's practice to affirmatively determine potential sponsors are able to provide for the physical and mental well-being of children before release. | Biswas Dep. 173:25-174:19; Biswas 30(b)(6) Dep. 130:5-11, 131:13-15, 152:8-24, 155:14-20; Sualog Dep. 110:5-11; Vergara Dep. 193:6-9, 194:8-17; Dr. Ryan Dep. 92:16-24, 94:3-8; Dr. Earner Dep. 119:8-12; Antkowiak Decl. ¶ 55; Biswas Decl. ¶ 64; ORR Juvenile Coord. Rep. at 1. |
| 3. It is ORR's policy and practice to seek the safety of UACs in its custody and to protect them from trafficking and other forms of exploitation, abuse, and neglect upon release from ORR's care and custody. | ORR Guide §§ 1.2.3, 2.1, 2.2.5, 3.1, 3.3.3; Biswas 30(b)(6) Dep. 147:7-14, 438:25-440:14; Sualog Dep. 160:7-25, 198:9-199:3; Husted Dep. 33:6-12, 79:13-20; Padilla Dep. 248:24-249:22; Dr. Ryan Dep. 246:11-247:7; Antkowiak Decl. ¶ 39. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 4. The majority of UACs referred to ORR custody are apprehended after crossing the border between ports of entry without lawful admission. | Antkowiak Decl. ¶ 50; Southwest Border Data. |
| 5. ORR's system of care is unique from the domestic child welfare context in that it provides care to an exclusively immigrant, minor population who enter ORR custody unaccompanied, and are in custody solely by reason of their lack of lawful immigration status. | Sualog Dep. 80:4-14; Antkowiak Decl. ¶ 50; Biswas Decl. ¶ 87; 2016 Senate Staff Rep.; Dr. Earner Dep. 101:12-15, 252:9-12. |
| 6. UACs in ORR custody are uniquely vulnerable to trafficking and exploitation because many migrants engage with criminal gangs and organizations to facilitate the border crossing and are required to repay smuggling fees. | Dr. Earner Expert Rep. ¶¶ 25-27; Dr. Earner Dep. 120:9-22, 123:14-125:8, 125:13-25; Antkowiak Decl. ¶ 52. |
| 7. Neither ORR nor the grantee care providers have any financial incentive to keep children in care longer than appropriate, as care providers are paid on a funded capacity basis regardless of whether they have minors in custody or not. | Dr. Mohn Dep. 180:2-14; Dr. Ryan Dep. 195:25-196:3; Dr. Mohn Expert Rep. ¶¶ 15-19; Antkowiak Decl. ¶ 40; Cooperative Agmt (GOV-00126506-126535). |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 8.  ORR has established grantee relationships with a variety of state licensed grantee facilities where UACs reside and are cared for until they can be released to a sponsor. | ORR Guide §§ 3.1, 3.3.14, 4.4.1, 5.3.2, 5.5; *see* Cooperative Agmts. |
| 9.  ORR does not directly own or operate any facilities where UACs reside and are cared for, but rather operates under cooperative agreements, which are governed by grant regulations. | ORR Guide § 3.1; De La Cruz Dep. 22:3-11; Biswas Decl. ¶ 28. |
| 10. ORR has a zero-tolerance policy for all forms of sexual abuse, sexual harassment, and inappropriate sexual behavior at all care provider facilities that house UACs, and ORR maintains broad reporting requirements for all care provider facilities. | ORR Guide § 4.10.6. |
| 11. ORR requires care provider facilities to conduct incident reviews of all allegations of sexual abuse and sexual harassment that occur in ORR care and custody. | ORR Guide § 4.11.1. |
| 12. ORR does not maintain custody post-release, is not funded by Congress to do so, and has neither the ability nor the responsibility to formally track incidents | Sualog Dep. 198:9-199:24; 223:14-19; Dr. Earner Dep. 237:6-11; Antkowiak Decl. ¶ 50. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| of abuse or neglect by sponsors to whom UACs are released. | |
| 13. It is ORR's practice that federal field specialists (FFS) approve UAC transfer and release decisions; oversee care providers to ensure all services are properly provided and implemented; serve as a local liaison to community stakeholders (including other federal agencies, local legal service providers, communities, child advocates, etc.); provide guidance, direction, and technical assistance to grantee care providers; make final decisions as to whether home studies are conducted and/or post-release services are provided; and coordinate all aspects of a child's case with care provider staff, case coordinators, and stakeholders. | Biswas Dep. 56:9-12, 65:23-66:9, 87:22-25, 121:2-7, 127:7-128:3, 209:17-21, 231:11-15; Biswas 30(b)(6) Dep. 205:13-15, 218:8-14, 404:6-13; Fink Dep. 23:9-14; Sualog Dep. 163:3-18; David Dep. 7:17-8:23; Cook Dep. 49:7-18; Biswas Decl. ¶ 70; ORR Juvenile Coord. Rep. at 4. |
| 14. It is ORR's policy and practice that grantee care facilities employ case managers who are approved by ORR and are required to take 40-hours of annual training on all aspects of the UAC program. | ORR Guide §§ 2.3.2, 3.1, 4.5; ORR Juvenile Coord. Rep. at 4; Cooperative Agmt.; Biswas Decl. ¶¶ 14, 17. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 15. It is ORR's practice that case managers coordinate the completion of UAC assessments, complete individual service plans, assess potential sponsors, communicate with potential sponsors, make transfer and release recommendations, and coordinate the release of children from ORR custody. | Biswas Dep. 253:12-254:4; Biswas 30(b)(6) Dep. 34:11-15, 128:11-18, 322:17; Contreras Dep. 58:7-20; David Dep. 53:25-54:3; Antkowiak Dep. 63:19-64:3; Eich Dep. 181:17-24; Vasquez Dep. 78:7-79:11, 79:22-80:3; Dr. Ryan Dep. 247:25-248:11; Antkowiak Decl. ¶ 56; Biswas Decl. ¶ 67; ORR Juvenile Coord. Rep. at 4. |
| 16. It is ORR's practice that the case coordinator, a third party contractor, integrates all areas of assessment from the case manager, child advocates, where applicable, and other stakeholders into a release plan that provides for the child's physical and mental well-being. | Biswas Dep. 53:11-20; Biswas 30(b)(6) Dep. 118:12-24, 403:18-22; Murray Dep. 63:7-11, 124:6-12, 135:20-136:13, 212:19-213:18; *see also* GDIT Contract. |
| 17. It is ORR's policy and practice that the UAC's views of the sponsor are taken into consideration when assessing a potential sponsor. | *Flores* Settlement ¶ 17; Biswas Dep. 98:5-12, 140:14-141:11, 142:12-19; Padilla Dep. 76:24-77:5; Heath Dep. 241:18-242:5; Biswas Decl. ¶ 80. |
| 18. It is ORR's practice that case managers provide weekly summaries to UACs on | Biswas Dep. 98:13-99:7; Husted Dep. 71:1-3; Dr. Earner Dep. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| the child's case and provision of services. | 203:9-19; Sualog Dep. 105:19-106:7; Antkowiak Decl. ¶ 61. |
| 19. It is ORR's policy and practice that potential sponsors must verify the identity of all adults residing with the sponsor and all adult caregivers identified in a sponsor care plan. | ORR Guide § 2.2.4; Biswas Dep. 129:3-12; Biswas 30(b)(6) Dep. 212:8-15, 361:11-17; ORR Juvenile Coord. Rep. at 3. |
| 20. It is ORR's practice that ORR immediately begins the process of finding family members and others who may be qualified to care for the UAC when the child enters ORR's care. | Meyerstein Dep. 106:25-107:2; Biswas Dep. 112:17-113:14; Biswas 30(b)(6) Dep. 122:6-10; Biswas Decl. ¶ 66; ORR Juvenile Coord. Rep. at 2. |
| 21. It is ORR's practice that if there are multiple potential sponsors, the ORR grantee care provider will evaluate all potential sponsors concurrently. | Biswas 30(b)(6) Dep. 415:14-17, 415:22-416:19; Husted Dep. 147:15-25, 148:1-2; ORR Juvenile Coord. Rep. at 2. |
| 22. It is ORR's practice that within 24 hours of identifying a potential sponsor, the case manager is required to explain to the potential sponsor the requirements of the sponsorship process, and the case manager must remain in regular and frequent contact with the potential sponsor. | Biswas Dep. 253:12-254:4; Biswas 30(b)(6) Dep. 231:20-232:18, 234:4-15; Contreras Dep. 59:25-60:7; Eich Dep. 146:3-147:19; Padilla Dep. 246:19-247:10; Antkowiak Decl. ¶ 55; Biswas Decl. ¶ 82; ORR Juvenile Coord. Rep. at 2. |
| 23. It is ORR's policy and practice that within 1 calendar day of a sponsor's | ORR Guide § 2.7; ORR MAP § 2.7; Biswas 30(b)(6) Dep. |

7

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| completion of the FRP documentation, the case manager is required to submit a release recommendation. | 231:20-232:18, 234:8-15; Antkowiak Decl. ¶ 58; Biswas Decl. ¶ 69. |
| 24. It is ORR's policy and practice that the release process is collaborative in nature and necessitates coordination between care provider staff, nongovernmental third-party reviewers (case coordinators), ORR staff, other federal agencies, legal service providers, stakeholders, and child advocates, where applicable. | ORR Guide § 2.3; Biswas Dep. 16:12-23, 56:16-19, 253:12-254:3; Antkowiak Dep. 225:4-13; Sualog Dep. 154:1-8; Trevino Dep. 382:6-383:17; Murray Dep. 240:21-241:16; Contreras Dep. 29:18-23, 62:5-63:4, 177:1-178:14; Eich Dep. 41:2-23; Heath Dep. 169:13-170:4; Fields Dep. 198:16-25; Smith Dep. 206:17-208:1; Nathan-Pineau Dep. 66:10-68:1, 79:13-25, 80:1-6; Dr. Earner Dep. 146:23-147:13, 192:4-12, 237:1-22; Dr. Mohn Dep. 126:2-18, 188:18-189:8; Biswas Decl. ¶ 70; ORR Juvenile Coord. Rep. at 3. |
| 25. In the release process, case managers and FFS can consult with FFS Supervisors, members of ORR's Division of Policy and Procedure, and the Deputy Director of ORR. | De La Cruz Dep. 61:8-63:18, 232:15-233:1; Vergara Dep. 26:7-19; Fink Dep. 23:15-21; Biswas Decl. ¶ 16. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 26. In the release process, FFS Supervisors monitor the cases of the FFS whom they supervise and assist them on tasks that require additional supervision and oversight. | De La Cruz Dep. 26:9-27:5, 61:8-63:18; Antkowiak Dep. 225:4-13; Vergara Dep. 26:7-19, 260:20-261:12; Trevino Dep. 114:13-17; Heath Dep. 20:12-23. |
| 27. It is ORR's practice that the case manager provides weekly status updates to the case coordinator and FFS on the UAC's release status. | ORR Juvenile Coord. Rep. at 3; Antkowiak Dep. 225:4-13; Biswas 30(b)(6) Dep. 239:17-24; Dr. Ryan Dep. 250:10-251:2; Biswas Decl. ¶¶ 18, 83. |
| 28. It is ORR's practice that in the sponsor assessment and release process, case managers communicate with potential sponsors, gather information and documentation, and assess sponsors to formulate a recommendation to the case coordinator and the FFS. | Biswas Dep. 253:12-254:4, 262:5-9; Biswas 30(b)(6) Dep. 122:11-17, 129:22-25; David Dep. 51:24-52:15, 60:8-19; Dr. Mohn Dep. 160:1-4; Antkowiak Dep. 63:19-64:3; Biswas Decl. ¶¶ 18, 67; ORR Juvenile Coord. Rep. at 3. |
| 29. It is ORR's policy and practice that in the sponsor assessment and release process, case coordinators are required to review assessment information on a UAC and the potential sponsor to make an independent recommendation concerning release. | ORR Guide §§ 2.3, 2.7; Biswas Dep. 16:12-23, 53:11-20, 57:5-58:21, 65:19-22, 107:10-108:14, 255:9-256:5; Sualog Dep. 163:3-18; Murray Dep. 31:19-23; Biswas Decl. ¶ 19. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 30. ORR will reconsider release denials based upon changed circumstances or new information. | David Dep. 62:2-12; Sualog Dep. 184:5-186:5; Biswas Dep. 254:2-255:8, 265:4-266:8; Husted Dep. 102:11-24; Vergara Dep. 168:13-22, 215:18-22, 218:1-20; Vasquez Dep. 210:6-211:4; Biswas Decl. ¶ 76. |
| 31. Home studies can be mandated by the TVPRA or requested by a case manager and recommended by a case coordinator on a case-by-case basis. | ORR Guide § 2.4.2; ORR MAP § 2.4.2; Biswas Decl. ¶¶ 72-74. |
| 32. ORR allows the UAC and a potential sponsor to review a negative home study recommendation. | David Dep. 100:1-101:7; Padilla Dep. 139:4-20; Husted Dep. 100:14-22; Contreras Dep. 169:6-25; Eich Dep. 196:6-197:1; Vasquez Dep. 207:13-23; Biswas Decl. ¶ 75. |
| 33. ORR allows a sponsor to provide additional information in support of sponsorship after a negative home study recommendation and/or before ORR renders a release decision. | David Dep. 101:8-102:2; Padilla Dep. 143:12-144:11, 246:19-247:10; Husted Dep. 100:14-22; Vergara Dep. 167:12-169:22, 171:1-11, 215:18-22; Sualog Dep. 185:3-186:5; Trevino Dep. 217:8-12, 219:2-22; Murray Dep. 241:17-242:2; Contreras Dep. 169:6-25; Eich Dep. 196:6-197:1; |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| | Vasquez Dep. 209:2-15; Biswas Decl. ¶ 76. |
| 34. Delays in the release process are most often attributable to the UAC's lack of an available sponsor, or the potential sponsor being unresponsive and/or failing to provide the required documentation. | Padilla Dep. 117:2-5, 247:16-25; Fields Dep. 73:20-74:8; Heath Dep. 238:25-239:15; Dr. Ryan Expert Rep. ¶ 48; Dr. Mohn Expert Rep. ¶ 45; Biswas Decl. ¶ 68. |
| 35. Preparing for and appearing at additional administrative hearings would take ORR and grantee care provider staff away from their day-to-day responsibilities and delay their ability to pursue releases. | Dr. Earner Dep. 133:8-23; Dr. Ryan Dep. 277:14-25; Antkowiak Decl. ¶ 53. |
| **Defendants' Uncontroverted Facts: Step-Up** | |
| 36. It is ORR's policy and practice to place a UAC in the least restrictive setting that is in the best interest of the child based on consideration of child welfare factors set forth in ORR Guide § 1.2.1. | 8 U.S.C. § 1232(c)(2)(A); ORR Guide § 1.2.1; Biswas Dep. 47:7-48:5; De La Cruz Dep. 158:2-9, 233:22-234:14; ORR Juvenile Coord. Rep. at 26, 27; Dr. Mohn Dep. 132:19-133:1; Antkowiak Decl. ¶¶ 7-8. |
| 37. Staff-secure facilities are for children who require close supervision but do not require placement in a secure facility. | ORR Guide § 1.2.4; ORR Guide to Terms; ORR Juvenile Coord. Rep. at 26-27; Biswas 30(b)(6) |

11
Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
|  | Dep. 12:16-22; Antkowiak Decl. ¶ 12; Biswas Decl. ¶ 30 |
| 38. It is ORR's policy and practice that staff-secure facilities provide a heightened level of staff supervision with a 1:4 caregiver to child ratio, increased communication, and services to control problem behavior and prevent escape. | ORR Guide § 1.2.4; Biswas 30(b)(6) Dep. 12:16-19, 28:17-22; De La Cruz Dep. 121:20-122:7, 217:2-7; Vergara Dep. 88:18-20, 89:8-23; Antkowiak Dep. 146:2-6, 157:1-5; ORR Juvenile Coord. Rep. at 26-27; Antkowiak Decl. ¶ 12. |
| 39. The staff-secure atmosphere reflects a shelter facility: they are not equipped internally with multiple locked pods or cell units, physical restraints, or employ other security devices typically found in secure settings. | ORR Juvenile Coord. Rep. at 27; ORR Guide to Terms; Cook Dep. 113:5-14; Dr. Ryan Dep. 260:19-261:16; Dr. Earner Dep. 93:1-12; Antkowiak Decl. ¶ 12. |
| 40. In almost all states, staff-secure facilities have the same state licensing requirements as shelters. | Biswas Dep. 234:24-25; Biswas 30(b)(6) Dep. 12:16-18, 28:17-22, 29:5-8; De La Cruz Dep. 136:4-8; Antkowiak Dep. 146:2-6; ORR Juvenile Coord. Rep. at 27; Antkowiak Decl. ¶ 12; Biswas Decl. ¶ 30. |
| 41. It is ORR's policy and practice that secure facilities are for youth who require the strictest level of supervision, | ORR Guide § 1.2.4; Cook Dep. 109:7-16; Antkowiak Decl. ¶ 11. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| and must have access to specialized services for UACs with substance abuse problems, anger management issues, mental health issues, and/or other special behavioral needs. | |
| 42. It is ORR's policy and practice that ORR may place a child in a secure facility only if the child poses a danger to self or others, has been charged with or convicted of a criminal offense, or is chargeable with such an offense. | ORR Guide § 1.2.4; Biswas 30(b)(6) Dep. 12:19-22, 265:18-266:21, 437:23-438:24; Fink Dep. 106:16-22, 118:21-25; Cook Dep. 124:20-24; ORR Juvenile Coord. Rep. at 28; Antkowiak Decl. ¶ 11. |
| 43. There are child welfare experts who hold the view that secure settings are not the preferred treatment environment, but are necessary for the safety and well-being of children. | Dr. Ryan Expert Rep. ¶ 36; Dr. Earner Dep. 96:18-97:10. |
| 44. A residential treatment center is a sub-acute, time limited, interdisciplinary, psycho-educational, and therapeutic 24-hour-a-day structured program with community linkages, is provided through individualized care, specialized services and interventions, and differs significantly from involuntary, acute inpatient psychiatric hospitalization. | ORR Guide to Terms; ORR Juvenile Coord. Rep. at 28; Vergara Dep. 202:12-20; Cook Dep. 113:14-114:4; De La Cruz Dep. 47:14-21; Antkowiak Decl. ¶ 14; Biswas Decl. ¶ 32. |

13
Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 45. Residential treatment centers provide highly-customized care and services to individuals following either a community based placement or more intensive intervention, with the aim of moving individuals toward a stable, less intensive level of care or independence. | ORR Guide to Terms; ORR Juvenile Coord. Rep. at 28; Sualog Dep. 76:13-18; Vergara Dep. 88:18-89:23, 105:5-12; De La Cruz Dep. 236:21-25; Dr. Lubit Dep. 51:21-52:9, 86:19-24; Antkowiak Decl. ¶ 13; Biswas Decl. ¶ 34. |
| 46. It is ORR's practice that a child may be placed at a residential treatment center only if a licensed psychologist or psychiatrist determines that the child is danger to themself or others, and that the child requires therapeutic-based intensive supervision as a result of mental health symptoms. | Meyerstein Dep. 232:4-16, 233:7-15, 235:9-237:10; Biswas Dep. 189:17-191:9, 217:6-8, 219:18-220:5; Biswas 30(b)(6) Dep. 13:5-11, 14:20-15:5, 267:16-20; Fink Dep. 127:13-17, 147:10-25, 248:10-16; De La Cruz Dep. 211:12-23, 236:21-25; Sualog Dep. 76:13-18; Vergara Dep. 104:14-23, 105:5-12; ORR Juvenile Coord. Rep. at 27-28; Antkowiak Decl. ¶ 14; Biswas Decl. ¶ 34. |
| 47. It is ORR's practice that a child may remain in a residential treatment center placement only if a licensed psychiatrist or psychologist determines that the child | Biswas Dep. 199:22-200:6; Biswas 30(b)(6) Dep. 13:7-11; Fink Dep. 122:3-18; ORR Juvenile Coord. Rep. at 27, 28; |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| continues to be a danger to themselves or others. | Antkowiak Decl. ¶ 29; Biswas Decl. ¶ 47. |
| 48. ORR's two residential treatment centers, Shiloh and MercyFirst, are based on a group home model where residents sleep without locked doors and there is a higher staff-to-minor ratio than in shelters, and are accredited by an accrediting organization. | Meyerstein Dep. 223:23-225:1; Sualog Dep. 51:20-52:5; Antkowiak Decl. ¶ 13; ORR Juvenile Coord. Rep. at 28. |
| 49. It is ORR's policy and practice that when ORR transfers a UAC from one facility to another, or determines a more restrictive level of placement remains warranted, it does so only after a consultation process occurs between the case manager, the case coordinator, and the FFS. | ORR Guide § 1.4.2, *see also id.* § 1.4; Biswas Dep. 65:23-66:9, 104:16-105:9, 199:22-200:6; Sualog Dep. 45:11-16; De La Cruz Dep. 247:8-248:9; Vergara Dep. 110:13-111:4; Contreras Dep. 98:19-99:25; ORR Juvenile Coord. Rep. at 26, 27, 30; Antkowiak Decl. ¶ 15; Biswas Decl. ¶¶ 39, 45. |
| 50. It is ORR's practice that when assessing a possible transfer, care providers must consider information from assessment tools, interviews, the location of the UAC's sponsor or family in the United States, applicable records, and information from stakeholders such as | Biswas Dep. 209:17-25; Biswas 30(b)(6) Dep. 71:13-17, 112:16-113:4; Contreras Dep. 61:20-62:20, 147:14-21; De La Cruz Dep. 247:8-248:9; Trevino Dep. 358:23-25; Heath Dep. 213:7-18; Smith Dep. 94:6-95:7; ORR |

15

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| the UAC's legal service provider, attorney of record, or child advocate. | Juvenile Coord. Rep. at 30; Antkowiak Decl. ¶ 23. |
| 51. It is ORR's policy and practice that in assessing whether a step-up is appropriate or remains warranted, the case manager, case coordinator, and FFS staff the case and confer to determine whether the UAC's behavior, criminal history, or self-disclosures require placement in a more restrictive environment, using the factors identified in the ORR Guide. | ORR Guide § 1.4.2; Biswas Dep. 53:21-25, 104:16-105:9; Biswas 30(b)(6) Dep. 117:4-7; Vergara Dep. 87:4-16, 110:13-111:4; ORR Juvenile Coord. Rep. at 27, 30; Contreras Dep. 98:19-99:25; Padilla Dep. 81:1-17; Ray Dep. 76:8-17, 150:1-11; Antkowiak Decl. ¶¶ 15-16, 24; Biswas Decl. ¶ 45. |
| 52. It is ORR's policy and practice that step-ups may occur when a more restrictive level of care is in the best interests of the child and necessary for the safety of the child and others. | ORR Guide § 1.4; ORR Juvenile Coord. Rep. at 26; Padilla Dep. 81:15-19; Murray Dep. 118:5-9; Fink Dep. 40:13-41:6; Smith Dep. 109:14-17; Antkowiak Decl. ¶ 18. |
| 53. In the placement process, case managers, case coordinators, and FFS can consult with the FFS Supervisor for Special Populations, the Senior Advisor for Child Well-Being, the Senior FFS Supervisor, the Division of Health and Unaccompanied Children, members of the ORR Division of Policy and | Fink Dep. 16:1-6, 17:13-23, 23:15-21, 24:16-25:1, 78:2-20, 134:16-25, 168:1-16, 174:14-175:6; De La Cruz Dep. 232:15-233:1; Biswas Decl. ¶ 35. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| Procedure, and the Deputy Director of ORR on step-up decisions. | |
| 54. It is ORR's policy and practice that when a UAC is stepped up to a more restrictive setting, he/she is provided with a Notice of Placement in Restrictive Setting (NOP) of the grounds for their placement in a language that he/she understands within a reasonable time (48 hours) either before or after the placement. | ORR Guide § 1.4.2; Ray Dep. 73:22-74:14, 86:9-87:3; De La Cruz Dep. 154:1-16; Biswas Dep. 68:23-69:15, 224:17-225:7, 229:25-230:7, 239:2-11; Biswas 30(b)(6) Dep. 65:2-6, 78:21-79:5, 126:17-127:24, 330:17-331:8, 335:2-10; Fink Dep. 83:15-24; Eich Dep. 161:3-162:1; ORR Juvenile Coord. Rep. at 5, 30; Antkowiak Decl. ¶ 26; Biswas Decl. ¶¶ 40-42. |
| 55. It is ORR's practice that when UACs are represented by counsel, ORR provides the NOP to counsel on demand. | De La Cruz Dep. 250:5-251:12; Biswas Dep. 233:13-20; Biswas 30(b)(6) Dep. 70:10-71:6, 272:20-23; Antkowiak Decl. ¶ 27; Biswas Decl. ¶ 44. |
| 56. It is ORR's policy and practice that the NOP explains to a UAC their ability to challenge their placement before the ORR Director or in federal court. | ORR Guide § 1.4.2; ORR MAP § 1.4.2; David Dep. 159:9-16; Contreras Dep. 116:1-22; Ray Dep. 84:24-85:11; Antkowiak Decl. ¶ 26; Biswas Decl. ¶ 58. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 57. It is ORR's policy and practice that the assigned case manager at the ORR grantee care facility will review the NOP with the UAC in a language the UAC understands, which the minor is asked to sign and date. | ORR MAP § 1.4.2; Biswas 30(b)(6) Dep. 65:2-20, 79:1-14, 80:18-81:7, 81:17-82:8, 83:12-23; Contreras Dep. 81:23-82:11, 116:1-22; Vasquez Dep. 145:6-15, 145:22-25, 146:15-19; Ray Dep. 98:8-99:1, 196:11-23, 197:9-14; ORR Juvenile Coord. Rep. at 30, Antkowiak Decl. ¶ 28. |
| 58. It is ORR's policy and practice that ORR separately reviews each NOP at least once every 30 days through an internal monitoring panel to ensure the NOPs are compliant with ORR policy and that the placement decisions continue to meet ORR criteria for placement in a restrictive setting. | ORR Guide § 1.4.2; Fink Dep. 28:20-29:13, 84:2-7, 87:14-19; Biswas Dep. 29:23-31:7, 31:20-23, 34:2-7; Biswas 30(b)(6) Dep. 32:5-12, 33:14-34:9, 53:16-54:14, 86:23-87:5, 259:20-260:1, 313:12-20, 308:7-14; Ray Dep. 70:8-71:1; Biswas Decl. ¶ 51; ORR Juvenile Coord. Rep. at 30. |
| 59. In November 2018, when ORR first started doing its compliance reviews through the monitoring panel, there were noncompliant cases, but since then, the reviews have resulted in almost 100 percent compliance for secure placements. | Ray Dep. 109:24-113:7, 115:6-116:4, 164:15-21; Biswas Decl. ¶ 52. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 60. It is ORR's policy and practice that at least every 30 days, care provider staff, in collaboration with the case coordinator and FFS, reviews the placement of a UAC who is placed in a secure, staff-secure, or residential treatment center facility to determine whether a new level of care is more appropriate. | ORR Guide § 1.4.2; Biswas Dep. 198:11-14, 221:3-10; Biswas 30(b)(6) Dep. 30:14-19, 31:11-17, 32:5-13, 33:14-34:9, 51:23-52:7, 356:3-7; David Dep. 148:11-149:5; Smith Dep. 146:6-15; Contreras Dep. 136:15-25, 137:6-25; Fink Dep. 83:15-84:1, 137:1-138:4; Heath Dep. 126:2-8; ORR Juvenile Coord. Rep. at 21, 30; Antkowiak Decl. ¶¶ 15-16, 20-21. |
| 61. Prior to a UAC's 30-day Restrictive Placement Case Review, the case manager meets with the UAC to discuss their behavior and needs, inform them of their upcoming 30-day review, and provide the reason for whether continued placement in a more restrictive setting is warranted. | Biswas 30(b)(6) Dep. 54:16-55:4, 64:15-20, 74:7-75:6, 88:21-25, 92:16-93:2; Vergara Dep. 116:13-21, 117:13-22; Contreras Dep. 137:17-25; Vasquez Dep. 145:6-15, 145:22-25; Heath Dep. 73:10-74:16, 75:16-20, 76:9-13, 77:11-14, 216:8-217:11; Smith Dep. 97:2-16; Biswas Decl. ¶ 48. |
| 62. It is ORR's practice that upon conducting the 30-day review, if it is determined that continued placement in a secure, staff-secure, or residential treatment center facility is appropriate, | Biswas 30(b)(6) Dep. 69:2-6, 70:17-21; David Dep. 158:20-159:3; Vergara Dep. 221:20-25; Eich Dep. 162:10-15;  Fink Dep. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| care provider staff document the basis for continued placement in a new NOP and provides the information to the UAC, along with the UAC's attorney of record, legal services provider, or child advocate upon request by these parties. | 196:23-197:5, Smith Dep. 39:1-20; Antkowiak Decl. ¶ 27. |
| 63.A UAC may challenge placement or release at an ORR grantee care facility by seeking judicial review in federal district court. | *Flores* Settlement Agreement ¶ 24B; Biswas Dep. 225:9-14; David Dep. 159:9-16; Contreras Dep. 116:1-6, 118:13-18; Biswas Decl. ¶ 61. |
| 64.It is ORR's policy and practice that a UAC placed in a secure facility or a residential treatment center can challenge that placement by requesting review by the ORR Director or the ORR Director's designee after 30 days of placement. | ORR Guide § 1.4.7; Biswas 30(b)(6) Dep. 77:23-78:7; David Dep. 159:9-16; Antkowiak Decl. ¶ 9; Biswas Decl. ¶ 57. |
| 65.It is ORR's practice that a UAC may request a bond hearing where an immigration judge will assess whether the UAC poses a danger to the community, and are notified of this shortly upon entering the shelter and during their review of the NOP. | Biswas Dep. 183:20-23, 225:9-14; Biswas 30(b)(6) Dep. 106:3-7; Castaneda Dep. 81:12-23; ORR Juvenile Coord. Rep. at 31; *Flores* Settlement Agreement ¶ 24A; Biswas Decl. ¶¶ 53-55. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
| --- | --- |
| 66. While ORR is not bound by the immigration judge's bond hearing determination, ORR takes the immigration judge's decision into consideration in determining whether the UAC should be stepped down. | Biswas Dep. 225:9-14; Biswas 30(b)(6) Dep. 106:8-13; Biswas Decl. ¶ 53. |
| 67. UACs seeking to challenge a placement decision in a secure or residential treatment center facility may also seek administrative review by ORR's Placement Review Panel (PRP), beginning 30 days after the child's initial placement. | ORR Juvenile Coord. Rep. at 31, 32; Biswas Decl. ¶ 59. |
| 68. The PRP comprises three ORR staff members with several years of experience as professionals in the fields of child welfare, mental health, and related policy. | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |
| 69. Before the PRP is conducted, the UAC (or the UAC's attorney) is given the opportunity to review ORR's evidence in support of continued placement at a residential treatment center or secure facility. | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |
| 70. The UAC (or the UAC's attorney) can provide the PRP with a written | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| statement concerning continued placement at a residential treatment center or secure facility. | |
| 71. It is ORR's policy and practice that the UAC (or the UAC's attorney) can request a hearing concerning continued placement at a residential treatment center or secure facility. | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |
| 72. In matters pending before the PRP, where the child does not have an attorney, ORR encourages the grantee care program to seek assistance for the child from a contracted legal service provider or child advocate. | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |
| 73. In matters pending before the PRP, where the child does not have an attorney, ORR arranges for ORR's Juvenile Coordinator to act as an advocate for the child, if needed. | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |
| 74. In matters pending before the PRP, after reviewing the evidence, statements, and holding a hearing if the child (or child's attorney) requested one, the PRP provides the child a written decision regarding placement. | ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 75. ORR seeks to avoid unnecessary delay in stepping up a UAC who requires a more restrictive placement due to potential harm the delay in step-up could cause to the UAC or others at the current facility. | Biswas 30(b)(6) Dep. 325:12-20, 267:21-268:9; De La Cruz Dep. 249:12-250:4; Dr. Lubit Expert Rep. ¶ 3(b); Antkowiak Decl. ¶¶ 33-34. |
| 76. Residential treatment centers are better equipped to care for youths with more serious psychiatric problems given their greater staff training levels and higher staff-to-child ratios. | Dr. Lubit Expert Rebuttal Rep. ¶ 75; Antkowiak Decl. ¶¶ 13-14. |
| 77. Requiring a hearing before being moved to a restrictive placement would likely result in delay and could increase the risk of harm to the individual and others. | Dr. Lubit Expert Rep. ¶ 61; Antkowiak Decl. ¶¶ 33, 35-36. |
| 78. To delay step-up when it is necessary for the safety of the child and others is contrary to the way care is given to children in the U.S. in general and could increase the risk of harm to the individual and others. | Dr. Lubit Expert Rep. ¶ 61; Antkowiak Decl. ¶¶ 33-34. |
| 79. There are child welfare experts who hold the view that ORR's practice of having each child's case jointly reviewed on a regular basis by a team of | Dr. Ryan Expert Rep. ¶¶ 46-47; Dr. Ryan Dep. 172:4-173:4, 174:19-176:6, 210:5-18, 212:2-6, 249:14-250:9, 255:5-256:3, |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| program staff and supervisors in consultation with ORR federal representatives ensures that placements and transfers reflect sound clinical practice, and that it is unclear what problems would be solved by requiring ORR to consult with a child's attorney of record whenever placement and release decisions are considered. | 277:14-25; Dr. Earner Dep. 133:8-23, 134:3-8, 141:17-142:10, 146-23-147:14, 192:4-12; Dr. Lubit Expert Rep. ¶ 54. |
| 80. Congress has not funded attorneys to represent ORR in hearings challenging routine decisionmaking, and in contrast with the Department of Homeland Security, which funds approximately 1,100 attorneys and 350 personnel to support such attorneys in immigration proceedings, ORR has traditionally funded two attorneys. | Antkowiak Decl. ¶ 37. |
| **Defendants' Uncontroverted Facts: Legal Representation** | |
| 81. It is ORR's policy and practice that children in ORR's care and custody are provided with legal services information, including the availability of pro bono services, a know-your-rights presentation, a legal screening, a legal resource guide (which provide a state- | ORR Guide § 3.3; Biswas 30(b)(6) Dep. 68:20-22, 101:24-102:11, 375:20-376:5, 399:6-10, 400:13-18; Castaneda Dep. 85:14-86:15; Contreras Dep. 80:18-81:3; De La Cruz Dep. 218:17-219:7; Sualog Dep. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| by-state listing of attorneys), and the right to be represented by counsel at no expense to the government. | 116:4-13, 121:10-14; Eich Dep. 99:15-23; Dr. Earner Dep. 225:25-226:9; Biswas Decl. ¶ 88; ORR Juvenile Coord. Rep. at 11. |
| 82. It is ORR's policy and practice to encourage all potential sponsors to attend a Legal Orientation Program for Custodians (LOPC). | ORR Guide § 2.2.5; ORR Juvenile Coord. Rep. at 2-3. |
| 83. The purpose of the LOPC is to inform potential responsibilities in ensuring the child's appearance at all immigration proceedings, as well as protecting the child from mistreatment, exploitation, and trafficking. | ORR Guide § 2.2.5; ORR Juvenile Coord. Rep. at 2-3. |
| 84. The LOPC provides information about possible free legal counsel (pro bono legal services) for the child during the immigration court process. | ORR Guide § 2.2.5; ORR Juvenile Coord. Rep. at 2-3. |
| 85. ORR requires case managers to provide case updates to a child's attorney of record or legal service provider while the child is placed at a residential treatment center, staff-secure, or secure placement. | Biswas 30(b)(6) Dep. 69:7-13, 70:22-71:6; Castaneda Dep. 47:21-48:9, 81:15-82:8; Contreras Dep. 112:1-16, 147:14-21; Smith Dep. 94:6-13, 147:22-148:9; Sualog Dep. 134:22-25; Vergara Dep. 221:20-25. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 86. It is ORR's policy and practice that ORR grantee care provider facilities provide attorneys with the ability to meet with children in ORR's care and custody. | ORR Guide § 3.3.10; Biswas 30(b)(6) Dep. 100:24-101:3; Contreras Dep. 147:14-21; De La Cruz Dep. 218:21-219:7; Sualog Dep. 126:13-127:22. |
| 87. It is ORR's policy and practice that attorneys representing UACs have unlimited telephone access to the children. | ORR Guide § 3.3.10; ORR Juvenile Coord. Rep. at 11; Castaneda Dep. 85:14-86:4, 87:25-88:3; Wood Dep. 146:21-147:14; Sualog Dep. 138:19-139:5; Fink Dep. 273:25-274:9, 277:10-25; Biswas Decl. ¶ 92. |
| 88. ORR allows children to contact an attorney if they wanted to consult with an attorney regarding their placement decision. | Fink Dep. 273:2-20, 273:25-274:9, 277:10-25; Biswas 30(b)(6) Dep. 443:15-444:8; Smith Dep. 147:22-148:9; Eich Dep. 209:12-15; Biswas Decl. ¶ 91. |
| 89. ORR allows children to contact an attorney if they want to consult with an attorney regarding being released from ORR custody. | Fink Dep. 273:21-274:9, 277:10-25; Biswas 30(b)(6) Dep. 443:15-444:8; Biswas Decl. ¶ 91. |
| 90. It is ORR's policy and practice that ORR allows ORR-funded legal providers to use non-ORR funds to | Sualog Dep. 118:2-10; Biswas 30(b)(6) Dep. 443:15:444:8; Eich Dep. 209:12-15, 210:9-13; Stuart |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| challenge ORR decisions, and such actions have been brought against ORR. | Dep. 75:10-13; Mixon Dep. 154:2-8; Nathan-Pineau Dep. 75:19-76:11, 125:16-127:11, 129:6-10, 130:10-20; Biswas Decl. ¶ 93; ORR Juvenile Coord. Rep. at 11. |
| 91. It is ORR's practice that ORR-funded legal providers may represent a child who wishes to seek a *Flores* bond hearing if representation has already been iniated for immigration proceedings. | Biswas Dep. 184:17-21; Nathan-Pineau Dep. 36:1-6. |
| 92. Mandating ORR-funded legal representation to challenge ORR placement, release, and medication decisions would divert valuable program resources currently used to connect children with legal service providers for other purposes (such as seeking immigration relief) and used to fund other essential activities. | Antkowiak Decl. ¶¶ 37, 53. |
| 93. ORR continues to work with attorneys after they have challenged ORR decisionmaking for UACs. | Biswas 30(b)(6) Dep. 443:18-23; David Dep. 158:20-159:8; De La Cruz Dep. 219:11-16; Castaneda Dep. 81:15-82:8; Eich Dep. 210:9-13, 214:1-4; Heath Dep. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| | 49:21-50:19; Smith Dep. 45:21-46:5; Trevino Dep. 382:25-383:9; Wood Dep. 76:18-77:1, 77:12-20; Williams Dep. 122:23-123:2, 123:5-9; Biswas Decl. ¶ 93. |
| 94. ORR does not to cut funding for ORR-funded legal service providers for using non-ORR funding to challenge ORR decisionmaking for UACs. | Biswas 30(b)(6) Dep. 443:24-444:2; Williams Dep. 96:20-97:9; Mixon Dep. 133:16-21, 150:23-151:4; Biswas Decl. ¶ 93. |
| **Defendants' Uncontroverted Facts: Supporting Data** | |
| 95. Care providers and children in care are actively monitored, and ORR runs numbers on specific care providers to determine location, average length of care, and how a particular care provider compares to other care providers: a pattern of inexplicably long length of care could lead to non-renewal or termination of the grant. | Antkowiak Decl. ¶¶ 41-43. |
| 96. Data from June 2019 through March 2020 demonstrates that a child's average length of time in ORR's care and custody was 48.4 days. | ORR Juvenile Coord. Rep. at 22. |
| 97. Data from June 2019 through May 2020 demonstrates that a child's average | ORR Juvenile Coord. Rep at 22. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| length of time in ORR's care and custody was 54 days. | |
| 98. In fiscal year 2020 (through June 2020), ORR has made a total of 14,421 UAC placements. | Antkowiak Decl. ¶ 31. |
| 99. In fiscal year 2020 (through June 2020), ORR has placed a total of 156 UAC in staff-secure facilities. | Antkowiak Decl. ¶ 31. |
| 100.  In fiscal year 2020 (through June 2020), ORR has placed a total of 24 UAC in residential treatment centers. | Antkowiak Decl. ¶ 31. |
| 101.  In fiscal year 2020 (through June 2020), ORR has placed a total of 56 UAC in secure facilities. | Antkowiak Decl. ¶ 31. |
| 102.  A separate analysis of the data provided in *Flores* similarly indicates that only a small percentage of children placed in ORR's care and custody are stepped up. | Dr. Ryan Expert Rep. ¶ 35; Dr. Ryan Dep. 102:5-11, 244:2-12. |
| 103.  Approximately 14% of all children placed in domestic child welfare systems are stepped up to a more restrictive level of setting than the shelter level. | Dr. Ryan Expert Rep. ¶ 35; Dr. Ryan Dep. 102:12-103:15. |
| 104.  A separate analysis of the *Flores* data indicates that 86% of all children who | Dr. Ryan Expert Rebuttal Rep. ¶ 19; Dr. Ryo Expert Rep. at 9. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| are placed in ORR's care and custody and who are stepped up to a more restrictive setting than the shelter level were stepped up only after they had been in ORR's care and custody for more than two months. | |
| **Defendants' Uncontroverted Facts: Named Plaintiffs** | |
| 105.  On February 14, 2018, Lucas R. received a know-your-rights presentation from a non-profit, independent group, a list of pro bono legal service providers, and attorneys conducted a legal screening of Lucas R. and found he likely was not eligible for immigration legal relief. | De La Cruz LR Decl. ¶ 12; GOV-00010486; GOV-00010498; GOV-00009343, GOV-00009501. |
| 106.  Southwest Key Sol began working with Lucas R.'s half-sister, Madelyn (who had entered the U.S. one year before) to apply as a sponsor and by March 1, 2018, she had submitted a partially complete application, but her household member, at that time, had not submitted his forms to investigate his background (until at least April 19, 2018). | De La Cruz LR Decl. ¶¶ 13, 32; GOV-00010520, GOV-00010527, GOV-00010529; GOV-00010594-10595, GOV-00010615-10616, GOV-00010620-10625. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 107. In mid-March, a TVPRA-mandated home study was recommended for Lucas R. by the case manager and third-party case coordinator, and was ordered by the ORR FFS on March 17, 2018. | De La Cruz LR Decl. ¶ 21; GOV-00010563-10564. |
| 108. A home visit was conducted by a third-party non-profit home study agency for Madelyn R., with the initial visit taking place on March 22, 2018, a follow-up visit on March 30, 2018, and a third home visit on April 5, 2018, and a negative recommendation was on issued April 12, 2018, with which both the case coordinator and FFS were in agreement. | De La Cruz LR Decl. ¶¶ 22-23; GOV-00010500-10501, GOV-00010581-10583. |
| 109. On May 21, 2018, Lucas R. was placed at Shiloh Residential Treatment Center at the recommendation of a qualified medical professional, and with the consultation and recommendation of ORR and shelter staff. | De La Cruz LR Decl. ¶¶ 33-45; GOV-00009222-9223, GOV-00009228, GOV-00009304-9305, GOV-00010638. |
| 110. At Shiloh, Lucas R. received a know-your-rights presentation and legal screening for possible legal relief from the Cabrini Center 10 days after arrival on May 31, 2018, had his own attorney | De La Cruz LR Decl. ¶ 45; GOV-00009338, GOV-00009428, GOV-00009760, GOV-00009762. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| of record who entered an appearance for him as of August 9, 2018, and he had multiple meetings with counsel. | |
| 111.  On June 11, 2018, Lucas R.'s half-brother was identified as a potential sponsor for Lucas R. and a family reunification packet was sent to the potential sponsor. | De La Cruz LR Decl. ¶ 47; GOV-00009506, GOV-00009591. |
| 112.  Lucas R. stated during the course of this litigation: "Plaintiff answers that he was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody.  Plaintiff further answers that to the best of his knowledge and recollection no lawyer ever represented him with respect to custody, medication, placement, or release at any time while he was in ORR custody." | Plaintiff Lucas R.'s Answers at 7-8. |
| 113.  On his first day in ORR custody, Jaime D. received a know-your-rights presentation, was legally screened by legal service provider, and was provided | GOV-00008821-8836 |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| a list of pro bono legal service providers. | |
| 114.   On or around April 9, 2018, Jaime D. met with a clinician for an individual mental health session, where he reported he had no history of violence towards others and made no mention of any gang involvement. | Fink JD Decl. ¶ 7; GOV-00008809. |
| 115.   On or around April 11, 2018, during an assessment, Jaime D. disclosed that he was a part of a gang in Honduras, and provided a detailed statement that while in Honduras, he killed four gang members, sold and consumed marijuana, and was observed writing gang symbols on the wall. | Fink JD Decl. ¶ 8; GOV-00008786, GOV-00008793, GOV-00008800, GOV-00008875-8876, GOV-00008879-8881. |
| 116.   On the same day Jaime D. made these disclosures, a case manager at Cayuga Centers shelter recommended that Jaime D. be transferred to a secure facility due to the risk he posed to himself and others, and the case coordinator concurred, noting that Jaime D.'s disclosures of a violent criminal history warranted an immediate transfer to | Fink JD Decl. ¶¶ 9-10; GOV-00008810, GOV-00008786, GOV-00008793-8794. |

33
Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| guarantee the safety of the minor and others. | |
| 117.  On or around April 16, 2018, an ORR FFS approved Jaime D.'s transfer to Yolo County Juvenile Detention Center, a secure facility, in Woodland, California due to these disclosures. | Fink JD Decl. ¶ 11; GOV-00008794. |
| 118.  On or around April 19, 2018, Jaime D. received an NOP, which was provided to him in English and Spanish and contained the reasoning for his placement at Yolo, and which he signed acknowledging receipt, and he attended a know-your- rights presentation on April 25, 2018. | Fink JD Decl. ¶ 15; GOV-00008522-8525, GOV-00008594. |
| 119.  On or around April 24, 2018, after residing at Yolo for about a week, Jaime D. changed his story about his life in his home country, and reported that he had never been in a gang or murdered anyone, and that he made up the story because he believed it would help him remain in the United States. | Fink JD Decl. ¶ 18; GOV-00008666-8667. |
| 120.  On or around May 3, 2018, after Jaime D. had recanted his account of committing violent acts in his home | Fink JD Decl. ¶ 24; GOV-00008667. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| country, his case manager noted that Yolo staff agreed he should not be in a secure facility. | |
| 121.  On or about May 14, 2018, a case manager submitted a formal request that Jaime D. be transferred to a less restrictive setting, which the case coordinator concurred with on May 16, 2018, and which an ORR FFS approved that same day. | Fink JD Decl. ¶ 25; GOV-00008701-8702. |
| 122.  On or about May 24, 2018, Jaime D. arrived at Children's Village  staff-secure. | Fink JD Decl. ¶ 28; GOV-00008699-8700. |
| 123.  Jaime D. stated in a sworn interrogatory response: "Plaintiff answers that he was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody.  Plaintiff further answers that to the best of his knowledge and recollection no lawyer ever represented him with respect to custody, medication, | Plaintiff Jaime D.'s Answers at 7-8. |

35
Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| placement, or release at any time while he was in ORR custody." | |
| 124.  Daniela Marisol T. provided a signed acknowledgment that she had received a know-your- rights presentation, was legally screened by legal service provider Pro-Bar on August 8, 2016, and provided a list of pro bono legal service providers. | Vergara DMT Decl. ¶ 22; GOV-00001839, GOV-00001847-1892, GOV-00001985, GOV-00002374. |
| 125.  On or around September 8, 2017, Daniela Marisol T. was placed at Shiloh at the recommendation of a qualified medical professional, and with the consultation and recommendation of ORR and shelter staff. | Vergara DMT Decl. ¶¶ 32, 36; GOV-00002145-2148, GOV-00002151-2152, GOV-00003122. |
| 126.  At Shiloh, Daniela Marisol T. Daniela received a know-your-rights presentation, a copy of a list of pro bono legal service providers in Texas, and was referred to a child advocate on October 4, 2017. | Vergara DMT Decl. ¶ 44; GOV-00003189-3194, GOV-00003216-3222, GOV-00003282. |
| 127.  On February 22, 2018, Daniela received a second know-your-rights presentation from Immigration Defenders Law Center, was provided a list of legal service providers, and on | Vergara DMT Decl. ¶ 58; GOV-00002948-2950, GOV-00002964. |

36

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| February 27, 2018, she received a legal screening and was found likely to be eligible for legal relief, including Special Immigrant Juvenile Status and Asylum. | |
| 128.  On March 13, 2018, Daniela was informed she had been assigned a child advocate, whom she met with at the shelter on April 14 and May 12, 2018. | Vergara DMT Decl. ¶ 58; GOV-00002965, GOV-00002966, GOV-00002968. |
| 129.  Daniela Marisol T. stated during the course of this litigation: "Plaintiff answers that she was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody.  Plaintiff further answers that to the best of her knowledge and recollection no lawyer ever represented her with respect to custody, medication, placement, or release at any time while she was in ORR custody." | Plaintiff Daniela Marisol T.'s Answers at 7-8. |
| 130.  On July 17, 2017, following a psychological evaluation, Miguel Angel | Fink MAS Decl. ¶¶ 16-17; GOV-00011218-11220. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| S. was recommended and approved for a transfer for a step-up to Shiloh Residential Treatment Center due to his mental health and behavioral issues. | |
| 131.  Miguel Angel S.'s mood escalated in January 2018 and after he engaged in verbal and physical aggression against his peers and staff, Shiloh staff and the FFS met to discuss Shiloh's recommendation that Miguel Angel S. be transferred up to a higher level of case. | Fink MAS Decl. ¶¶ 23, 26; GOV-00011476, GOV-00011589, GOV-00011527-11528. |
| 132.  Miguel Angel S. was approved for transfer from Shiloh to Yolo on March 23, 2018 and, on October 11, 2018, was released from ORR custody into the custody of his sponsor. | Fink MAS Decl. ¶¶ 26, 38; GOV-00011306. |
| 133.  On January 19, 2017, Gabriela N. was provided a know-your-rights presentation by a legal services provider, Diocesan Migrant & Refugee Services, Inc. | Vergara GN Decl. ¶ 20; GOV-00006152. |
| 134.  Isaac N. applied as a sponsor for Gabriela N. but had never previously been Gabriela N.'s primary caregiver | Vergara GN Decl. ¶¶ 79, 86; GOV-00006628, GOV-00006641-6642, GOV-00006548-6549. |

| Uncontroverted Fact | Supporting Evidence |
| --- | --- |
| and she had not seen him in approximately 14 years. | |
| 135.  Isaac N. had a serious medical condition. | Vergara GN Decl. ¶ 86; GOV-00006626, GOV-00006641-6642, GOV-00006548-6549. |
| 136.  Isaac N.'s household members refused to provide IDs or fingerprints. | Vergara GN Decl. ¶ 80; GOV-00007610. |
| 137.  Isaac N. disclosed prior kidnapping charges against him in his home country of El Salvador, and did not immediately provide the requested exonerating documentation. | Vergara GN Decl. ¶ 81; GOV-00007276, GOV-00007618. |
| 138.  In February 2018, ORR ordered a mandatory TVPRA home study, due to Gabriela N.'s disclosures of abuse in her home country. | Vergara GN Decl. ¶ 86; GOV-00006543-6544. |
| 139.  Isaac N. received a negative home study recommendation stating that he was not a suitable sponsor. | Vergara GN Decl. ¶ 86; GOV-00006639-6642. |
| 140.  On August 21, 2017, Gabriela N. was evaluated by a psychiatrist from Texas Tech University Psychiatry, and the psychiatrist recommended that she be placed in an residential treatment center to target her therapeutic needs. | Vergara GN Decl. ¶ 38; GOV-00007656, GOV-00007724, GOV-00007372-7373. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 141.  While placed at Shiloh, Gabriela N. received a know-your-rights presentation, received legal screenings, and met with attorneys. | Vergara GN Decl. ¶ 59; GOV-00006151, GOV-00006527, GOV-00006813-6820. |
| 142.  Gabriela N. stated during the course of this litigation:  "Plaintiff answers that she was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody.  Plaintiff further answers that to the best of her knowledge and recollection no lawyer ever represented her with respect to custody, medication, placement, or release at any time while she was in ORR custody." | Plaintiff Gabriela N.'s Answers at 7-8. |
| 143.  While Sirena P. was at a Southwest Key facility, she was recommended and approved for placement at Shiloh Residential Treatment Center due to mood instability, self-injurious behavior, and suicidal ideation, which made her a danger to herself. | De La Cruz SP Decl. ¶¶ 11-17; GOV-00014399, GOV-00014401, GOV-00014406, GOV-00014408, GOV-00014410, GOV-00014653, GOV-00015040. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 144. On June 4, 2018, Sirena P. was transferred to Shiloh upon the recommendation of a licensed psychiatrist and the approval of the ORR FFS, and ORR informed her father, Eduardo P., of the transfer. | De La Cruz SP Decl. ¶ 21; GOV-00014426-14427, GOV-00014450-14460, GOV-00013742-13743, GOV-00013748; Eduardo P. Dep. 29:25-30:1-2. |
| 145. Benjamin F. was initially placed in the St. PJ's Children's Home shelter and shortly after entering, exhibited symptoms suggesting a need for a higher level of placement. | De La Cruz BF Decl. ¶¶ 5, 8, 18-19, 23-30; GOV-00000681-686; GOV-00000834, GOV-00000925-937. |
| 146. On July 23, 2018, Benjamin F. was placed at Shiloh Residential Treatment Center at the authorization of a qualified medical professional, and with the consultation and recommendation of shelter staff. | De La Cruz BF Decl. ¶¶ 31, 32, 34; GOV-00000017-18. |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

## KEY TO CITATION REFERENCES

| Declarations | |
|---|---|
| Declaration of Attorney W. Daniel Shieh (DX-00) | |
| Antkowiak Decl. (DX-09) | Declaration of Stephen Antkowiak, September 17, 2020 |
| Biswas Decl. (DX-10) | Declaration of Toby Biswas, September 15, 2020 |

| Depositions | |
|---|---|
| Antkowiak Dep. (DX-01) | Deposition of Stephen Antkowiak, October 28, 2019 |
| Biswas Dep. (DX-15) | Deposition of Toby Biswas, November 13, 2019 |
| Biswas 30(b)(6) Dep. (DX-02) | Rule 30(b)(6) Deposition of Toby Biswas, February 18-19, 2020 |
| Castaneda Dep. (DX-34) | Deposition of Jose Castaneda, November 21, 2019 |
| Contreras Dep. (DX-22) | Deposition of Carina Contreras, January 23, 2020 |
| Cook Dep. (DX-21) | Deposition of Melissa Cook, November 18, 2019 |
| David Dep. (DX-20) | Deposition of Natasha David, October 24, 2019 |
| De La Cruz Dep. (DX-16) | Deposition of James De La Cruz, March 10, 2020 |
| Dr. Earner Dep. (DX-06) | Deposition of Dr. Ilze Earner, August 10, 2020 |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| | |
|---|---|
| Eduardo P. Dep. (DX-57) | Deposition of Eduardo P., November 4, 2019 |
| Eich Dep. (DX-23) | Deposition of Whitney Eich, February 27, 2020 |
| Fields Dep. (DX-27) | Deposition of Captain Marivic Fields, February 24, 2020 |
| Fink Dep. (DX-19) | Deposition of David Fink, February 12, 2020 |
| Heath Dep. (DX-26) | Deposition of Yesenia Heath, February 26, 2020 |
| Husted Dep. (DX-12) | Deposition of Karen Husted, April 25, 2019 |
| Dr. Lubit Dep. (DX-32) | Deposition of Dr. Roy Lubit, August 4, 2020 |
| Meyerstein Dep. (DX-17) | Deposition of Dr. Shaanan Meyerstein, February 11, 2020 |
| Mixon Dep. (DX-39) | Deposition of Justin Mixon, January 18, 2019 |
| Dr. Mohn Dep. (DX-07) | Deposition of Dr. Sid Mohn, August 5, 2020 |
| Murray Dep. (DX-25) | Deposition of Nidia Murray, December 17, 2019 |
| Nathan-Pineau Dep. (DX-29) | Deposition of Nithya Nathan-Pineau, August 20, 2019 |
| Padilla Dep. (DX-03) | Deposition of Judette Padilla, March 3, 2020 |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Ray Dep. (DX-33) | Deposition of Faith Ray, October 23, 2019 |
| --- | --- |
| Dr. Ryan Dep. (DX-08) | Deposition of Dr. Joseph Ryan, July 31, 2020 |
| Smith Dep. (DX-28) | Deposition of Elicia Smith, November 22, 2019 |
| Stuart Dep. (DX-38) | Deposition of Megan Stuart, July 9, 2019 |
| Sualog Dep. (DX-04) | Deposition of Jallyn Sualog, August 21, 2019 |
| Trevino Dep. (DX-18) | Deposition of Stephanie Trevino, March 5, 2020 |
| Vasquez Dep. (DX-24) | Deposition of Ruth Esther Vasquez, March 2, 2020 |
| Vergara Dep. (DX-05) | Deposition of Micaela Vergara, June 9, 2020 |
| Williams Dep. (DX-40) | Deposition of Lorilei Williams, July 2, 2019 |
| Wood Dep. (DX-37) | Deposition of Bernadine Leslie Wood, April 26, 2019 |

| Expert Reports | |
| --- | --- |
| Dr. Earner Expert Rep. (DX-13) | Expert Report of Dr. Ilze Earner, June 19, 2020[1] |
| Dr. Lubit Expert Rep. (DX-35) | Expert Report of Dr. Roy Lubit, June 19, 2020[1] (filed under partial seal) |

44

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Dr. Lubit Expert Rebuttal Rep. (DX-36) | Expert Rebuttal Report of Dr. Roy Lubit, July 17, 2020[1] (filed under partial seal) |
| Dr. Mohn Expert Rep. (DX-14) | Expert Report of Dr. Sid Mohn, June 17, 2020[1] |
| Dr. Ryan Expert Rep. (DX-30) | Expert Report of Dr. Joseph P. Ryan, June 19, 2020[1] |
| Dr. Ryan Expert Rebuttal Rep. (DX-31) | Expert Rebuttal Report of Dr. Joseph P. Ryan, June 19, 2020[1] |
| Dr. Ryo Expert Rep. (DX-61) | Expert Report of Dr. Emily Ryo, June 16, 2020, p. 9 |

[1]*Defendants are able to submit a full copy of all documents reviewed by the respective experts in preparing their reports should the Court determine that said documents would aid in the resolution of this motion.*

| Exhibits | |
| --- | --- |
| 2016 Senate Staff Rep. | 2016 Senate Staff Report *available at*: https://www.hsgac.senate.gov/imo/media/doc/Majority%20&%20Minority%20Staff%20Report%20-%20Protecting%20Unaccompanied%20Alien%20Children%20from%20Trafficking%20and%20Other%20Abuses%202016-01-282.pdf |
| Cooperative Agmts. | *The Cooperative Agreements were produced in discovery, bear Bates nos. GOV-00126305-001263374 (BCFS), GOV-001263375-00126406 (Friends of Youth), GOV-00126407-00126438 (Pioneer Human Services), GOV-00126439-00126470 (Heartland Human Care* |

45
Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| | *Services), GOV-00126471-00126505 (Morrison Child and Family Services), and GOV-00126506-00126535 (Pioneer Human Services), and are available should the Court determine it would aid in the resolution of this Motion.* |
|---|---|
| *Flores* Settlement | *Flores v. Reno* Settlement Agreement of 1997 *available at:* https://www.aclu.org/sites/default/files/assets/flores_settlement_final_plus_extension_of_settlement011797.pdf |
| GDIT Contract | *The GDIT Contract was produced in discovery, bears Bates nos. GOV-00015219-15450, and is available should the Court determine it would aid in the resolution of this Motion.* |
| ORR Facts and Data | ORR Facts and Data *available at:* https://www.acf.hhs.gov/orr/about/ucs/facts-and-data |
| ORR Guide | ORR Guide: Children Entering the United States Unaccompanied *available at*: www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied |
| ORR Guide to Terms | ORR Guide to Terms *available at*: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms |
| ORR Juvenile Coord. Rep. (DX-11) | ORR Juvenile Coordinator Annual Report, *previously filed Flores v. Barr*, Case No. 2:85-cv-04544-DMG-AGR, ECF No. 837, Attachment C. |
| ORR MAP (DX-60) | Excerpts from The UAC Manual of Procedures |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

|  | *Entire sections of the ORR MAP were produced in discovery, bear Bates nos. GOV-00016596-16671 (Section 1), GOV-00207375-207708 (updated Section 2), and GOV-00016812-16998 (Sections 3-6), and are available should the Court determine it would aid in the resolution of this Motion.* |
|---|---|
| Southwest Border Data | U.S. Border Patrol Southwest Border Apprehensions by Sector Fiscal Year 2020 *available at* https://www.cbp.gov/newsroom/stats/sw-border-migration/usbp-sw-border-apprehensions |
| UAC Data FY 2020 | Latest UAC Data – FY2020 *available at:* https://www.hhs.gov/programs/social-services/unaccompanied-alien-children/latest-uac-data-fy2020/index.html |

| Documents Pertaining to Specific Plaintiffs | |
|---|---|
| **Lucas R.** | |
| De La Cruz LR Decl. (DX-41) | Declaration of James De La Cruz re Class Representative Lucas R., September 18, 2020[2] |
| Lucas R.'s Answers  (DX-42) | Plaintiff Lucas R.'s Responses to Defendants' Revised First Set of Interrogatories, July 24, 2019 |
| Lucas R. Case File Excerpts (DX-43) | Case File Excerpts[2] |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Jaime D. | |
|---|---|
| Fink JD Decl. (DX-44) | Declaration of David Fink re Class Representative Jaime D., September 16, 2020[2] |
| Jaime D.'s Answers (DX-45) | Plaintiff Jaime D.'s Responses to Defendants' Revised First Set of Interrogatories, July 29, 2019 |
| Jaime D. Case File Excerpts (DX-46) | Case File Excerpts[2] |
| Daniela Marisol T. | |
| Vergara DMT Decl. (DX-47) | Declaration of Micaela Vergara re Class Representative Daniela Marisol T., September 18, 2020[2] |
| Daniela Marisol T.'s Answers (DX-48) | Plaintiff Daniela Marisol T.'s Responses to Defendants' Revised First Set of Interrogatories, July 25, 2019 |
| Daniela Marisol T. Case File Excerpts (DX-49) | Case File Excerpts[2] |
| Miguel Angel S. | |
| Fink MAS Decl. (DX-50) | Declaration of David Fink re Class Representative Miguel Angel S., September 16, 2020[2] |
| Miguel Angel S. (DX-51) | Case File Excerpts[2] |
| Gabriela N. | |
| Vergara GN Decl. (DX-52) | Declaration of Micaela Vergara re Class Representative Gabriela N., September 23, 2020[2] |

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

| Gabriela N.'s Answers (DX-53) | Plaintiff Gabriela N.'s Responses to Defendants' Revised First Set of Interrogatories, June 29, 2019 |
|---|---|
| Gabriela N. (DX-54) | Case File Excerpts[2] |
| **Sirena P.** | |
| De La Cruz SP Decl. (DX-55) | Declaration of James De La Cruz re Class Representative Sirena P., September 22, 2020[2] |
| Sirena P. (DX-56) | Case File Excerpts[2] |
| **Benjamin F.** | |
| De La Cruz BF Decl. (DX-58) | Declaration of James De La Cruz re Class Representative Benjamin F., September 21, 2020[2] |
| Benjamin F. (DX-59) | Case File Excerpts[2] |

[2]*Due to the sensitive nature of the information contained in this Exhibit, Defendants submit this Exhibit as part of the separately filed Application for Leave to File Under Seal Documents Submitted in Support of Motion for Summary Judgment.*

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

## Conclusions of Law

1. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2. The moving party has the initial burden of demonstrating the absence of any genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

3. A fact is material if it may affect the outcome of the case. *Anderson et al. v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

4. "Once the moving party carries its initial burden," the non-moving party must provide evidence that "set[s] forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d. at 1076 (quoting Fed. R. Civ. P. 56(e)).

5. At summary judgment, the Court should draw evidentiary inferences in the light most favorable to the non-moving party. *King Cty. v. Rasmussen*, 299 F.3d 1077, 1083 (9th Cir. 2002).

6. But the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

7. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

8. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

9. To create a genuine issue of material fact, a party must rely on facts, not unsupported statements. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009).

10. "[O]nly admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

11. To defeat a motion for summary judgment, the non-moving party must present "evidence on which the [factfinder] could reasonably find for the" non-moving party. *Liberty Lobby*, 477 U.S. at 252.

12. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

13. "Under the doctrine of claim preclusion [*res judicata*], final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

14. "Claim preclusion [*res judicata*] requires three things: (1) identity of claims; (2) a final judgment on the merits; and (3) the same parties, or privity between the parties." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

15. In assessing whether there is an identity of claims, the Court considers: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017).

16. The *Flores* Settlement has been treated as a consent decree and a final judgment on the merits. *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016).

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

17. The Court weighs three factors in assessing whether the procedures the government provides satisfies procedural-due-process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

18. Claim preclusion or *res judicata* "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Western Radio v. Glockman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (emphasis added); *see also Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("[T]he doctrine of res judicata (or claim preclusion) 'bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action.'" (internal citations omitted)).

19. The Trafficking Victims Protection Reauthorization Act (TVPRA), 8 U.S.C. § 1232(c)(2)(A), provides that "an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child."

20. The TVPRA, 8 U.S.C. § 1232(c)(3)(A), provides that "an unaccompanied alien child may not be placed with a person or entity unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being."

21. The TVPRA, 8 U.S.C. § 1232(c)(5), provides that HHS must "ensure, to the greatest extent practicable and consistent with section 292 of the Immigration and

Nationality Act (8 U.S.C. § 1362), that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security, and who are not [from contiguous countries], have counsel to represent them in legal proceedings or matters and protect them from mistreatment."

22. A statute creates a protected liberty interest only when it: (1) establishes "'substantive predicates' to govern official decision-making," and (2) uses "'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989) (internal citations omitted).

23. "'[E]xpectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause' of the Fourteenth Amendment." *Carver v. Lehman*, 558 F.3d 869, 875 (9th Cir. 2009) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250–51 n. 12 (1983)).

24. A "consent decree, like a contract, must be discerned within its four corners." *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005).

25. An unaccompanied alien child can obtain release from custody by applying for and obtaining lawful immigration status; voluntarily departing the United States; or obtaining ORR approval for a sponsor to take custody of the minor. 8 U.S.C. §§ 1229c; 1232(a)(5)(D); 8 C.F.R. § 240.25; *cf. Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) ("An alien in Parra's position can withdraw his defense of the removal proceeding and return home to his native land, thus ending his detention immediately.  He has the keys in his pocket.").

26. A substantive-due-process right is one "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *United States v. Salerno*, 481 U.S. 739, 751 (1987) (internal quotations omitted).

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

27. The Fifth Amendment "forbids the government to infringe [on a substantive-due-process right] *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis in original).

28. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

29. "[T]he scope of the injunctive relief is limited by the class definition." *Al Otro Lado, Inc. v. McAleenan*, 423 F.Supp.3d 848, 878 (S.D. Cal. 2019).

30. "[T]he Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020) (internal quotations omitted).

31. "[T]he interest of parents in the care, custody, and control of their children" has been recognized as a "fundamental liberty interest," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), but that right is neither absolute nor unqualified, and in most cases, "the constitutionality of state actions that interfere with family integrity depends on the adequacy of the procedures available to contest them." *D.B. v. Cardall*, 826 F.3d 721, 741 (4th 2016).

32. There is no "substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019); *see, e.g., Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007) ("[D]eportations of parents are routine and do not of themselves dictate family separation. If there were such a right, it is difficult to see why children would not also have a constitutional right to object to a parent

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service"); *Gallanosa v. United States*, 785 F.2d 116, 120 (4th Cir. 1986) ("The courts of appeals that have addressed this issue have uniformly held that deportation of the alien parents does not violate any constitutional rights of the citizen children."); *Cortez–Flores v. INS*, 500 F.2d 178, 180 (5th Cir. 1974) ("[D]eportation of a parent does not deprive the child of any constitutional rights."); *Newton v. INS*, 736 F.2d 336, 342 (6th Cir. 1984) (stating that courts of appeals have "uniformly" held that the deportation of parents does not deprive their children of constitutional rights); *Flores–Quezada v. Gonzales*, 134 F. App'x 202, 203 (9th Cir. 2005) (unpublished) (holding that deportation does not result in deprivation of due process where a child would be denied the Arizona constitutional right to education); *Robles v. INS*, 485 F.2d 100, 102 (10th Cir. 1973) (rejecting the argument that it is unconstitutional to break up a family and deprive children of "their constitutional right to a continuation of the family unit").

33. The First Amendment protects an individual's right to associate with others in order to protect the individual's right to engage in group activities like speech, that are themselves protected under the First Amendment, and the right to band together to pursue a common goal. *Dawson v. Delaware*, 503 U.S. 159, 163 (1992); *IDK, Inc. v. Clark Cty.*, 836 F.2d 1185, 1193 (9th Cir. 1988); *Boy Scouts of America v. Dale*, 530 U.S. 640, 647-48 (2000).

Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment

Dated October 2, 2020

Respectfully submitted,

JEFFREY B. CLARK
Acting Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

ERNESTO H. MOLINA
Deputy Director

CHRISTOPHER A. BATES
Senior Counsel to the
Assistant Attorney General

*/s/ W. Daniel Shieh*
W. DANIEL SHIEH
BENJAMIN M. MOSS
Senior Litigation Counsel

NANCY K. CANTER
JONATHAN K. ROSS
ANTHONY J. MESSURI
Trial Attorneys
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-9802
*Counsel for Defendants*                 Email: Daniel.Shieh@usdoj.gov

56
Statement of Uncontroverted Facts and Conclusions of Law
in Support of Motion for Summary Judgment