# DX-18

Deposition of Stephanie Trevino, March 5, 2020

```
                                                         Page 1
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                    WESTERN DIVISION

 4

 5    LUCAS R., et al.,     )

 6             Plaintiffs,  )  Case No.

 7       vs.                )  2:18-CV-05741 DMG PLA

 8    ALEX AZAR, Secretary  )

 9    of U.S. Department    )

10    of Health and Human   )

11    Services, et al.,     )

12             Defendants.  )

13

14

15                    CONFIDENTIAL

16         DEPOSITION OF STEPHANIE TREVINO

17                  Chicago, Illinois

18              Thursday, March 5, 2020

19

20

21

22

23   Reported by:

24   ELIA E. CARRIÓN, CSR, RPR, CRR, CRC

25   JOB NO. 177122
```

```
                                                    Page 114
 1        A.    It's based on ORR policy and
 2   procedures.
 3        Q.    And what are they?
 4        A.    Ensuring there's a relationship
 5   between the sponsor and the minor.
 6        Q.    Okay.  Is that the only factor or
 7   criteria?
 8        A.    That's the one I remember, yes.
 9        Q.    But there are others?
10        A.    Yes.
11        Q.    What are the others?
12        A.    I cannot recall.
13        Q.    How do you monitor whether program
14   staff are following ORR policies or
15   procedures?
16        A.    I'm in close communication with the
17   facilities that I oversee.
18        Q.    Okay.  And what does that
19   communication involve?
20        A.    Ensuring that staff are familiar
21   with the policies.
22        Q.    How do you ensure that they're
23   familiar with the policies?
24        A.    By providing training.
25        Q.    Is there anything else you do to
```

```
 1      A.    Sometimes.
 2      Q.    When is the denial required because
 3   of a sponsor's felonies?
 4      A.    I cannot recall.
 5      Q.    Are there other circumstances where
 6   ORR policy requires denial?
 7      A.    I can't recall at this time.
 8      Q.    If you were to decide against
 9   release, would you give the sponsor an
10   opportunity to address any concerns that you
11   had about them?
12      A.    Yes.
13      Q.    What's an example of something that
14   a sponsor could address in order to change
15   your mind about denial?
16      A.    Well, the case manager is the one
17   that works with the sponsor to mitigate any
18   concerns.
19      Q.    So what are examples of the kinds
20   of things a case manager may try to mitigate
21   with a sponsor?
22      A.    I don't know.
23      Q.    How does the case manager know that
24   there are concerns that need to be mitigated?
25      A.    Sometimes those concerns are
```

```
 1        Q.   Sure.
 2        A.   All of the case managers try to
 3   mitigate concerns listed in the home study
 4   report.
 5        Q.   And that's because the facility
 6   leadership tells them to try and mitigate the
 7   concerns?
 8        A.   Yes.
 9        Q.   Do you ever tell case managers to
10   mitigate concerns?
11        A.   Yes.
12        Q.   What kind of concerns have you told
13   case managers to try and mitigate?
14        A.   I can't remember at this time.
15        Q.   What kinds of concerns that might
16   appear in a home study report have case
17   managers tried to mitigate?
18        A.   I can't recall at this time.
19        Q.   Is there a certain amount of time
20   that sponsors have to mitigate concerns that
21   have been raised?
22        A.   No.
23        Q.   How would you assess whether or not
24   the sponsor has sufficiently mitigated a
25   concern?
```

```
 1   based on?
 2       A.   On policy and procedures for
 3   step-ups.
 4       Q.   What do those policy and procedures
 5   require with respect to step-ups?
 6       A.   It depends on the step-up.
 7       Q.   How so?
 8       A.   Well, there's Staff Secure and
 9   there's secure -- Secure.
10       Q.   Okay.  So what do the policies
11   require with a step-up to Staff Secure?
12       A.   I don't remember.
13       Q.   What do the policies require with a
14   step-up to Secure?
15       A.   I don't remember.
16       Q.   Are you expected to be familiar
17   with the policies around step-ups?
18       A.   Yes.
19       Q.   If a child is stepped up to a new
20   facility, does their family have the
21   opportunity to challenge that decision?
22       A.   I don't know.
23       Q.   Do you ever communicate with the
24   child's attorney about step-up decisions?
25       A.   Yes.
```

Page 382

```
 1        Q.   That's not your job.  Who monitors
 2   that?
 3        A.   The project officer.
 4        Q.   Out of D.C.?
 5        A.   Yes.
 6        Q.   Let's talk for a minute about
 7   sponsor decisions or -- or a release
 8   decision.  If a child that's up for either
 9   release -- for release wanted to talk to you,
10   would you agree to talk to a child?
11        A.   Yes.
12        Q.   And if they gave you information,
13   would you use that information in the process
14   you go through to make a determination?
15        A.   Depending on the information.
16        Q.   So if it was information you found
17   that impacted a release decision, would you
18   use it?
19        A.   Yes.
20        Q.   How about a legal service --
21             (Court reporter clarification.)
22        A.   Yes.
23             MR. VERBY:  Sorry.  She's also
24        looking at me again.
25        Q.   If a legal service provider asked
```

```
 1   to speak with you about a particular release
 2   decision or -- would you agree to hear from
 3   that legal service provider?
 4        A.   Yes.
 5        Q.   And if that service provider
 6   provided you information you felt was
 7   pertinent to your decision, would you use
 8   that information?
 9        A.   Yes.
10        Q.   How about a sponsor?  If a sponsor
11   asked to speak with you about a particular
12   unaccompanied minor, would you agree to talk
13   to a sponsor?
14        A.   Yes.
15        Q.   And if you found that sponsor's
16   pertinent to your decision, would you use it?
17        A.   Yes.
18        Q.   I'd like you to look back at what's
19   been marked Exhibit No. 211, please.  Do you
20   have that one?
21        A.   Yes.
22        Q.   And that's the one that's labeled
23   "Site Visit Guide, KidsPeace Shelter,
24   August 12, 2019"?  Do I have that correct?
25        A.   Yes.
```

```
 1                 REPORTER'S CERTIFICATION

 2

 3              I, ELIA E. CARRIÓN, CSR, RPR, CRR,

 4    CRC, a Certified Shorthand Reporter in and

 5    for the state of Illinois, do hereby certify:

 6              That the foregoing witness was by

 7    me duly sworn; that the deposition was then

 8    taken before me at the time and place herein

 9    set forth; that the testimony and proceedings

10    were reported stenographically by me and

11    later transcribed into typewriting under my

12    direction; that the foregoing is a true

13    record of the testimony and proceedings taken

14    at that time.

15              That before the conclusion of the

16    deposition, the witness has requested a

17    review of this transcript pursuant to Rule

18    30(e)(1).

19              IN WITNESS WHEREOF, I do hereunto

20    set my hand of office at Chicago, Illinois,

21    this 18th day of March, 2020.

22
      _____
23
      ELIA E. CARRIÓN
24    C.S.R. Certificate No. 084.004641.

25
```