# DX-32

Deposition of Dr. Roy Lubit, August 4, 2020

Page 1

```
 1  UNITED STATES DISTRICT COURT
    CENTRAL DISTRICT OF CALIFORNIA
 2  WESTERN DIVISION
    ------------------------------------------X
 3  LUCAS R., et al.,

 4                       Plaintiffs,

 5           V.         Case No.
                        2:18-cv-05741 DMG PLA
 6
    ALEX AZAR, Secretary of U.S.
 7  Department of Health and Human services,
    et al.,
 8
                         Defendants.
 9  ------------------------------------------X

10

11

12

13            DEPOSITION OF ROY LUBIT

14            *****CONFIDENTIAL*****

15              (Via Videoconference)

16            Tuesday, August 4, 2020

17

18

19

20

21

22

23  Reported by:

24  Anita M. Trombetta, RMR, CRR

25  JOB NO. 182364
```

1  facilities.

2           In terms of -- I'm trying to think

3  of other cases.  In terms of Jaime D and having

4  been transferred to Yolo, I felt that, given

5  that he had said that he was a member of MS-13,

6  had killed four youths, and that he was acting

7  to show to other youths in the -- to give the

8  impression to other youths in the shelter that

9  he had been a member of MS-13, I felt that it

10 was appropriate for him to be stepped up

11 substantially; that there was -- presented a

12 risk of him hurting others, and particularly

13 important, a risk of really traumatizing other

14 kids to have someone be saying -- you know,

15 kids who may have had relatives killed and they

16 had been brutalized by MS-13, to have someone

17 say, "Hey, I was in MS-13.  I killed people."

18          I felt that was a -- that was

19 something that plaintiffs complained about, but

20 I felt it was a good decision.

21          Now, plaintiffs had said that

22 children could be treated just as well, if not

23 better, in -- without stepping up.  And it's

24 just not true.  The four-to-one versus

25 eight-to-one ratio of shelters versus RTCs

Page 52

1  makes a great deal of difference in terms of
2  the care the children are getting and where
3  they're safe and where their peers -- and the
4  safety of the peers.  There's just more
5  likelihood of self-harm or hurting others when
6  the ratio is lower than in a shelter, and
7  that's going to be bad for the child; it's
8  going to be bad for the other children around
9  that could be traumatized.
10             So I saw the arguments.  I saw the
11  cases.  And I dealt with -- I think I dealt
12  with every case that plaintiffs' experts had
13  talked about.  And I found that I disagreed
14  with each of their complaints.  And I would
15  assume that they would have picked the most
16  powerful examples they could find.
17        Q.   So it sounds like, from your review
18  of the 23 case files, you -- you would say you
19  saw no evidence whatsoever of any systemic
20  problems with ORR?
21        A.   I did not see any systemic problems
22  with ORR from the review of the 23 cases.
23        Q.   And can you explain, when you --
24  when you see no evidence of a systemic problem
25  in 23 cases, can you explain how that can be

1  say, "Okay; well, it's your father; you're

2  going to go to him; that's it"; without doing

3  some work with him so he would understand and

4  be able to deal with it in ways that are

5  helpful instead of destructive.

6       Q.   If that were the case, that the

7  parent was expressing their understanding and

8  acknowledgment of the mental health needs of

9  their child and how they would support their

10 child's mental health needs, would you still

11 have concerns about them leaving an RTC

12 placement?

13      A.   I would need to look at each of the

14 factors.  There are many things to look at to

15 see when an individual is going to be safe and

16 leave and go to a position where they continue

17 to make progress rather than go downhill.

18           There is also the issue that -- as I

19 was saying before -- that the RTC placement has

20 very intense treatment of three hours a week,

21 both individual and group combined; milieu

22 therapy; at least monthly psychiatric coverage.

23           You're not going to get anything

24 close to that outside of an RTC or hospital.

25           And so there is also the issue of,

Page 268

1  C E R T I F I C A T E

2

3  STATE OF NEW YORK    )

4                      ) ss.:

5  COUNTY OF KINGS     )

6           I, ANITA M. TROMBETTA, a Notary

7  Public within and for the State of New

8  York, do hereby certify:

9           That ROY LUBIT, the witness whose

10  deposition is hereinbefore set forth, was

11  duly sworn by me and that such deposition

12  is a true record of the testimony given by

13  such witness to the best of my ability.

14           I further certify that I am not

15  related to any of the parties to this

16  action by blood or marriage; and that I am

17  in no way interested in the outcome of this

18  matter.

19           IN WITNESS WHEREOF, I have hereunto

20  set my hand this 14th day of August, 2020.

21

22           _____
             ANITA M. TROMBETTA, RMR, CRR

23

24

25