# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX AZAR, Secretary of U.S. Dep't of Health and Human Services, *et al.*, <br><br> Defendants. | Case No.: 2-18-CV-05741 DMG (PLA) <br><br> DECLARATION OF DAVID FINK REGARDING CLASS REPRESENTATIVE JAIME D. |

## I.    Introduction

1. David Fink, under 28 U.S.C. § 1746, declares, under penalty of perjury, as follows. If asked to testify, I would testify under oath as follows.

2. The statements in this declaration are based on my personal knowledge, information acquired by me in the course of performing my official duties (such as my knowledge of ORR policies and procedures, including the ORR Guide[1]), and my review of HHS records and information contained therein (including Jaime D's case file).

3. My current position and experience are described in the Declaration I have submitted regarding class member, Miguel Angel S.

## II.    Placement and Unification Efforts for Jaime D.

4. Plaintiff Jaime D., born in Honduras in 2004, was an unaccompanied alien child who was transferred to ORR's legal custody on or around April 8, 2018 and released from custody on or around October 20, 2018. GOV-00008760, GOV-00008777-78, GOV-00009207.

### A. Cayuga Centers Shelter

5. On or around April 8, 2018, ORR placed Jaime D., along with his younger sister and aunt, at the Cayuga Centers shelter in Bronx, New York. GOV-00008760, 00008777-78.

6. On the day Jaime D. arrived at the Cayuga Centers shelter, he underwent an Initial Intakes Assessment. GOV-0008760-61. During this assessment, Jaime D.

---

[1] https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied

1

demonstrated no observable or reported medical concerns. GOV-00008760-61. He also reported no mental health concerns and displayed no observable emotional concerns. GOV-0008761. Further, he indicated that he was not taking any prescription medication. GOV-00008760.

7. On or around April 9, 2018, Jaime D. met with a clinician for an individual mental health session. GOV-00008809. During this session, Jaime D. reported ▮▮▮▮▮▮▮▮▮▮ GOV-00008809.

8. On or around April 11, 2018, during an assessment, Jaime D. disclosed that he was a part of the Mara Salvatrucha-13 (MS-13) gang in Honduras. GOV-00008786, GOV-00008793, GOV-00008800, GOV-00008875-76, GOV-00008879-81. He provided a detailed statement that while in Honduras, he killed four gang members and also sold and consumed marijuana. He named the price at which he sold each bag (approximately $25/bag), and said he would use the money to purchase clothing for himself. GOV-00008786, GOV-00008800, GOV-00008875-76, GOV-00008879-81. He said he committed these acts out of fear of being harmed if he did not comply. GOV-00008786, GOV-00008800, GOV-00008875-76, GOV-00008879-81. During these disclosures, Jaime D. "was observed to write '13' on the wall and then quickly erase it." GOV-00008876, GOV-00008879-81. In addition, in a conversation with Jaime D's aunt, she stated that while in home country Jaime D did not attend school and preferred to "hang out with his friends in the 'streets.'" GOV-00008877.

9. On the same day Jaime D. disclosed past gang involvement—including multiple murders—in Honduras, a case manager at Cayuga Centers shelter recommended that Jaime D. be transferred to a secure facility due to the "risk he pose[d] to himself and others." GOV-00008786, GOV-00008794. That same day, a General Dynamics Information Technology (GDIT), independent third-party case coordinator concurred with the transfer recommendation, noting that Jaime D.'s disclosures of a violent criminal history warranted an "immediate transfer to guarantee [the] safety of the minor, foster parent and program staff." GOV-00008793. In my experience, a step-up recommendation in such a circumstance would not be unusual, especially in a foster care program, where licensing or considerations for other foster children in the home might mean that they are not able to care for a minor with self-disclosed violent criminal history.

10. On or around April 16, 2018, while the transfer process was underway, Jaime D. had another ▮▮▮▮▮▮▮▮▮▮ GOV-00008810. During this session, Jaime D. discussed his ▮▮▮▮▮▮▮▮▮▮." GOV-00008810. Therein, Jaime D. acknowledged "▮▮▮▮▮▮▮▮▮▮ GOV-00008810. He ▮▮▮▮▮▮▮▮▮▮ GOV-00008810.

11. On or around April 16, 2018, an ORR federal field specialist approved Jaime D.'s transfer to Yolo County Juvenile Detention Center (Yolo), a secure facility, in Woodland, California, due to his "disclosure of gang involvement and committing multiple murders." GOV-00008794.

12. On or about April 17, 2018, Jaime D. "was observed writing M.S. 13 on a piece of paper[.]" GOV-00008880. When asked about this writing, Jaime D. "appeared guarded, and stated that he didn't want to talk about it." GOV-00008880.

## B. Yolo County Juvenile Detention Center

13. On the day of Jaime D.'s transfer to Yolo, Jaime D. was awakened at approximately 4:00 a.m. to ensure that he was able to depart Cayuga Centers shelter by 7:00 a.m. to make his scheduled flight. GOV-00008707.

14. Jaime D. was aware that he would be leaving Cayuga Centers shelter, at least two days prior to the date the transfer took place. GOV-00008810. Advance notice, particularly to a secure facility, may be provided, but typically close to the transfer, as a result of the need to ensure against runaway risk, disruption and risk to other minors in the program, and disruption and risk to both foster parents and staff in the program. In my experience, minors have attempted to run away during transfer, have put themselves and transport staff in harm's way, and have increased disruption and defiance. Jaime D. states he was restrained with "heavy shackles" during the flight to California. (First Amended Complaint ¶ 74). Jaime D.'s case file does not contain evidence on heavy shackles or documentation of restraints. ORR Policy permits use of soft restraints and documentation thereof. ORR Guide § 3.3.17. On or about April 18, 2018, Jaime D. arrived at Yolo. GOV-00008706-07,-GOV-00008786.

15. On or around April 19, 2018, Jaime D. received a Notice of Placement in a Restrictive Setting (NOP) form. GOV-00008522-25. The NOP form was provided to him in English and Spanish and contained the reasoning for his placement at Yolo. GOV-00008522-25. He acknowledged receipt of the NOP form by signing the document. GOV-00008523, GOV-00008525.

16. The NOP form provided to Jaime D. afforded him an opportunity to be heard concerning his transfer to Yolo and to appeal the secure placement decision. GOV-0008523, GOV-0008525. Specifically, the NOP form informed Jaime D. that he could seek reconsideration of his placement at Yolo from the ORR Director and that if he wanted more information on this process, he could ask his case manager. GOV-00008523, GOV-00008525. The NOP form also informed Jaime D. that at any time "[i]f you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you." GOV-00008523, GOV-00008525. Jaime D.'s case file contains no evidence that he sought reconsideration of his placement at Yolo with the ORR Director or asked a Federal District Court to review his placement. GOV-00008518-00009217.

17. On or around April 19, 2018, Jaime D. received a document titled, "Request for a *Flores* Bond Hearing." GOV-00008608-09 (Jaime D.'s signature acknowledging receipt of notice). This document informed Jaime D. that he had an opportunity to request that an immigration judge review whether he posed a danger to the community and that ORR "takes into consideration the immigration judge's decision when assessing your placement." GOV-0008608. This document also informed Jaime D. that if he would like to speak to an attorney

3

about a *Flores* bond hearing, "please inform staff at [Yolo] who will put you in touch with an attorney free of charge, or you may speak to your own attorney if you have one." GOV-00008608. Jaime D.'s case file contains no evidence that he sought or inquired about a *Flores* bond hearing during his placement at Yolo. GOV-00008518-00009217. While he did check the box noting that he withdrew his previous request for a *Flores* bond hearing, GOV-00008608, there is no evidence that he ever actually filed for such a request. Rather, the procedure of checking the withdrawal box is the way a minor indicates no bond hearing is requested.

18. On or around April 24, 2018, after residing at Yolo for nearly a week, Jaime D. changed his story about his life in his home country. GOV-00008666-67. While talking with a Yolo case manager, Jaime D. reported that he "ha[d] never been part of any gangs or caused any harm to anyone." GOV-00008666. He further reported that he "decided to make the information up of being a part of a gang and killing individuals as he thought it would help him remain in the [United States]."[2] GOV-00008666-67.

19. Jaime D. alleges that he suffered physical abuse from an older youth at Yolo. (First Amended Complaint ¶ 74).

20. ORR has policies and procedures requiring grantee care providers to prevent any kind of abuse to children in ORR care and custody. *See* ORR Guide §§ 3.3, 3.3.4, 4. This includes careful supervision of youth by staff, among other measures. ORR also has policies and procedures requiring grantee care providers to promptly report any allegations of abuse to children in ORR care and custody. *See* ORR Guide § 4, § 5.8. This includes the obligation to promptly complete a significant incident report. ORR Guide § 5.8. Furthermore, ORR "provides consistent oversight of all components of a care provider's program" including safety, security, and child protection, ORR Guide § 5.5.1, and has an Abuse Review Team "that quickly reviews allegations of abuse that are particularly serious or egregious in nature[,]" ORR Guide § 5.5.4. In my experience, these policies and procedures for preventing and reporting abuse are followed. In addition, ORR requires Yolo to be compliant with the Prison Rape Elimination Act which requires that children have access to an unrestricted phone to report abuse. Jaime D would have had access to that phone.

21. While Jaime D. alleges that he suffered physical abuse throughout his time at Yolo (First Amended Complaint ¶ 74), Jaime D.'s case file instead shows a total of two isolated instances where he was physically harmed by other youth, followed by responses from staff designed to address the problem and prevent future incidents. GOV-00008528, GOV-00008575. The first incident occurred on or around April 25, 2018, where "another youth hit [Jaime D.'s] right hand." GOV-00008528, GOV-00008575. "No redness or swelling [was] noted." GOV-00008528, GOV-00008575. Jaime D.'s hand "ha[d] full [range of movement]."

---

[2] As discussed below, Jaime D. later made statements that called into question the veracity of this recantation. Indeed, while he was at a subsequent placement, Children's Village staff secure, Jaime D. made gang affiliated hand signs directed at other residents, GOV-00008958-59, and showed residents "a graffiti of MS 13 that was on his drawer with pride and stat[ed] that is part of the MS 13," GOV-00008980-81.

4

GOV-00008528, GOV-00008575. The second incident occurred on or around April 30, 2018, where Jaime D. "report[ed] being kicked to the back of his right leg" by another youth. GOV-00008528, GOV-00008575. After the incident, Jaime D.'s "[g]ait [was] steady, [there was] no erythema, no discoloration, [and] skin [was] intact." GOV-00008528, GOV-00008575.

22. While Jaime D. also alleges that Yolo staff ignored his concerns of physical abuse (First Amended Complaint ¶ 74), Jaime D.'s case file demonstrates that Yolo staff promptly addressed the two instances where he was physically harmed. GOV-00008528, GOV-00008575. In response to the first incident, Yolo staff promptly responded to Jaime D. and evaluated him. GOV-00008528, GOV-00008575. Based on his symptoms, Jaime D. was provided and "[a]ccepted [i]ce, [but not] provide[d] [over-the-counter] Tylenol due to [him] being on scheduled Tylenol." GOV-00008528, GOV-00008575. A follow-up was scheduled, but no additional treatment was needed. GOV-0008528. In response to the second incident, Yolo staff promptly responded to Jaime D. and evaluated him. GOV-00008528, GOV-00008575. Based on Jaime D.'s symptoms, he was provide Tylenol by staff, as he requested. GOV-00008528, GOV-00008575. Yolo staff referenced potentially alerting the medical unit if Jaime D. did not feel pain relief thereafter, GOV-00008528, but the case file contains no reference to Jaime D. referencing any further pain.

23. Jaime D.'s case file indicates that his immature behavior, poor boundaries, anger management issues, and lack of coping skills caused issues with other youth at Yolo. GOV-00008581-89, GOV-00008655-64, GOV-00008667-68, GOV-00008672-76, GOV-00008702. Moreover, the case file also indicates that Jaime D. was, on occasion, instigated peer conflict . GOV-00008587-88 (on April 25, 2018, a mental health professional noted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOV-00008581-82, GOV-00008655. Yolo staff continuously attempted to address and mitigate these concerns, work with Jaime D. on these issues, and defuse situations with other youth. GOV-00008581-89, GOV-00008655-64, GOV-00008667-68, GOV-00008672-76, GOV-00008702, GOV-00008750-52, GOV-00008755-56. Also, Yolo staff repeatedly encouraged Jaime D. to seek support and assistance from staff when needed. GOV-00008586 (on April 26, 2018, a mental health professional ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOV-00008667 (on April 24, 2018, a case manager "encouraged [Jaime D.] to seek staff's support when needed, and reminded him that he is safe."), (on May 3, 2018, a case manager "reminded [Jaime D.] that he is very young and his peers may pick on him, but that it is important that he doesn't respond and inform staff immediately when this happens."), GOV-00008668 (on May 15, 2018, a case manager "reminded [Jaime D.] of the importance of avoiding peer negativity and informing staff when this is occurring. [Case manager] informed [Jaime D.] that staff in the unit will also be made aware of the continued issues [with other youth].").

24. On or around May 3, 2018, a little more than two weeks after Jaime D. was transferred to Yolo, and once Jaime D. had recanted his account of committing violent acts in his home country, his case manager noted that Yolo staff were "all

5

in agreement that he isn't appropriately placed in a secure setting." GOV-00008667. His case manager informed him that she would work to have him transferred to another grantee care provider. GOV-00008667. Shortly thereafter, his case manager began the process of seeking a less restrictive setting for Jaime D. and reached out to several programs for possible placement. GOV-00008667.

25. On or about May 14, 2018, a case manager submitted a formal request that Jaime D. be transferred to a less restrictive setting. GOV-00008701-02. On or about May 16, 2018, a GDIT case coordinator concurred with the request and, that same day, an ORR federal field specialist approved it. GOV-00008701-02.

26. On or about May 17, 2018, a Yolo case manager informed Jaime D. that he had been accepted for placement at Children's Village staff secure, a grantee care provider, in Dobbs Ferry, New York. GOV-00008668.

27. On or about May 24, 2018, Jaime D. was transferred from Yolo to Children's Village staff secure. GOV-00008699-GOV-00008700.

### C. Children's Village Staff Secure

28. On or about May 24, 2018, Jaime D. arrived at Children's Village staff secure. GOV-00008699-GOV-00008700.

29. On the day of his arrival at Children's Village staff secure, Jaime D. received a NOP form. GOV-00008922-23. The NOP form contained the reasoning for his placement at a staff secure facility. GOV-00008922-23. Jaime D. acknowledged receipt of the NOP form by affixing his signature to the document. GOV-00008923.

30. The NOP form informed Jaime D. that "[i]f you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you." GOV-00008923. Jaime D.'s case file contains no evidence that he asked a Federal District Court to review this placement. GOV-00008518-00009217.

31. On or around June 24, 2018, Jaime D. received another NOP form while at Children's Village staff secure. GOV-00008925-26. The NOP form contained the reasoning for his continued placement at a staff secure facility. GOV-00008925-26. He acknowledged receipt of the NOP form by affixing his signature to the document. GOV-00008926. This NOP form provided Jaime D. included the same language about federal court challenges. GOV-00008926.

32. Throughout his time at Children's Village staff secure, Jaime D. "continue[d] to accrue In-House Behavioral Reports" GOV-00008901, GOV-00008909, GOV-00008913, GOV-00008928. Such incidents included, but were not limited to: destruction of property, physical aggression, flashing gang affiliated hand signs, making MS-13 graffiti, and claiming gang affiliation. GOV-00008955-62, GOV-00008966-71, GOV-00008978-81.

33. Nevertheless, prior to Jaime D.'s thirtieth day of placement at Children's Village staff secure, a case manager at the facility and a GDIT case coordinator

began discussing transferring him to a shelter-level grantee care provider facility to enable him to "concentrate more on those challenges that have impeded him from successfully stabilizing and therefore demonstrating readiness for release [from ORR's legal custody]." GOV-00008901, GOV-00008909.

34. On or about July 18, 2018, a Children's Village staff secure case manager recommended that Jaime D. be transferred to a shelter-level grantee care provider. GOV-00008921-22. That same day, a GDIT case coordinator concurred with the request and an ORR federal field specialist approved the transfer to Children's Village shelter in Dobbs Ferry, New York. GOV-00008921-22, GOV-00008982.

35. On or about July 19, 2018, Jaime D. was discharged from Children's Village staff secure and transferred to Children's Village shelter. GOV-00008982-84.

### D. Children's Village Shelter

36. On or about July 19, 2018, Jaime D. arrived at Children's Village shelter. GOV-00008983-84, GOV-00008987.

37. While at Children's Village shelter, Jaime D. continued to act out, "punch[ing] [a] bedroom door causing the glass to break." GOV-00009191-92.

38. On or around October 20, 2018, Jaime D. was released to the custody of Reyna D. in Riverdale, Maryland. GOV-00009207.

### E. ORR Placed Jaime D. in the Least Restrictive Setting

39. As shown above, each of the facilities where Jaime D. was placed represented, at the time of placement, the least restrictive setting appropriate for his needs.

40. The decision to transfer Jaime D. from Cayuga Centers was based upon disclosure of past gang involvement—including four murders—in Honduras. Based on this disclosure, a case manager at Cayuga Centers shelter concluded that Jaime D. "pose[d] [a risk] to himself and others." GOV-00008786, GOV-00008794. A GDIT case coordinator concurred with this decision, noting that an "immediate transfer [is necessary] to guarantee [the] safety of the minor, foster parent and program staff," GOV-00008793, and an ORR federal field specialist approved the decision, GOV-00008794. Jaime D.'s transfer to a secure facility was consistent with ORR policy. *See* ORR Guide § 1.2.1, 1.2.4, 1.4, 1.4.2.

41. The decision to transfer Jaime D. from Yolo to Children's Village staff secure was appropriate because he demonstrated that he warranted placement in a less restrictive setting than Yolo. GOV-00008701-02. When stepping Jaime D. down from the secure placement, it was appropriate to transfer Jaime D. to a staff secure placement rather than to a shelter because of his self-disclosed gang involvement and because he demonstrated that he was ready for a step-down from a secure facility. GOV-00008701-02, GOV-00008923-24. Furthermore, a staff secure placement, with a higher staff-minor ratio, was appropriate in light of the

7

fact that during Jaime D.'s short time at Yolo, he stated on one occasion that he ███████████████ which resulted in him being placed on precautionary ███████████████ GOV-00008756-57. Jaime D.'s transfer to a staff secure facility was consistent with ORR policy. See ORR Guide § 1.2.1, 1.2.4, 1.4, 1.4.2.

42. While Jaime D. was in ORR's legal care and custody, he received legal screenings and access to free legal services as described in ORR's policies. GOV-00008763, GOV-00008821-36, GOV-00008594, GOV-00008611-43, GOV-00008705, GOV-00008890, GOV-00008917-20, GOV-00008989; see ORR Guide § 3.1, 3.3. In addition, Jaime D. had legal representation while placed at Yolo, Children's Village staff secure, and Children's Village shelter. GOV-00008593, GOV-00008596-99, GOV-00008702, GOV-00008921, GOV-00008928, GOV-00008989, GOV-00009184-87, GOV-00009199, GOV-00009205, GOV-00009213.

### F. ORR Worked to Release Jaime D. to a Safe Adult Sponsor

43. The family unification process begins the day a child enters ORR's legal custody and care. See ORR Guide § 2.2.

44. On or about April 9, 2018, within a day of Jamie D.'s placement at Cayuga Centers shelter, a case manager at the facility contacted his proposed sponsor, Reyna D. GOV-00008803, GOV-00008807. The case manager discussed with Reyna D. ORR's requirements for becoming Jaime D.'s custodian. GOV-00008807.

45. That same day, a Cayuga Centers shelter case manager sent Reyna D. a Family Reunification Packet (FRP) and began the sponsor assessment process. GOV-00008807.

46. While Jaime D. was placed at Cayuga Centers shelter, between April 8, 2018, and April 18, 2018, his case manager completed several criminal checks necessary to move the unification process along. GOV-00008804.

47. At the time of Jaime D.'s transfer to Yolo, on or about April 18, 2018, GOV-00008786, GOV-00008801-02, Reyna D. had not submitted a completed FRP or any supporting documentation, GOV-00008786, GOV-00008793.

48. Less than a week after Jaime D.'s arrival at Yolo, a Yolo case manager contacted Reyna D. regarding her attempt to become Jaime D.'s proposed sponsor. GOV-00008676.

49. While Jaime D. was placed at Yolo, between April 18, 2018 and May 24, 2018, a Yolo case manager was repeatedly in contact with Reyna D. attempting to move the unification process forward and requesting required documentation. GOV-00008667-78, GOV-00008672-76, GOV-0008702. As a result of these efforts, by mid-May 2018, Reyna D. had submitted the FRP with required documents and completed fingerprinting. GOV-00008711-48, GOV-00008667.

50. While the Yolo case manager was attempting to move the unification process forward through communication with Reyna D., Yolo staff were continuously and without undue delay attempting to move the unification process forward with assistance from Cayuga Centers shelter staff, GDIT case coordinators, and ORR-affiliated personnel. GOV-00008531, GOV-00008673, GOV-00009045-47. This included, but was not limited to: obtaining and submitting Reyna D.'s completed fingerprints for review, uploading the completed FRP with required documents to the UAC Portal, and scheduling a sponsor assessment. GOV-00008531, GOV-00008673, GOV-00009045-47.

51. While a sponsor assessment for Reyna D. was scheduled for May 26, 2018, the assessment was not completed by this date, in part, "due to [Reyna D.'s] availability." GOV-00008531.

52. On or about May 24, 2018, as noted above, Jaime D. was transferred from Yolo and arrived at Children's Village staff secure. GOV-00008699-GOV-00008700.

53. While Jaime D. was placed at Children's Village staff secure, between May 24, 2018, and July 19, 2018, staff at this facility were in contact with Reyna D. attempting to get additional documentation to move the unification process along. GOV-00008921, GOV-00008929.

54. The case manager at Children's Village staff secure was also and without undue delay attempting to move the unification process forward in consultation with staff at Jaime D.'s previous grantee providers, GDIT case coordinators, and ORR-affiliated personnel. GOV-00008912, GOV-00008921, GOV-00008928. This included, but was not limited to: obtaining documentation in Yolo's possession, waiting for background checks to clear, and assessing whether a home study was warranted. GOV-00008912, GOV-00008921, GOV-00008928.

55. In mid-July 2018, a Children's Village staff secure case manager recommended Reyna D. for a home study, which was ultimately approved. GOV-00008901-02, GOV-00008912, GOV-00009205-06. The home study was recommended based on several factors, including but not limited to: Jaime D. had never physically met Reyna D., Jaime D.'s disclosure of past gang involvement and murders, to assess Reyna D.'s awareness of Jaime D.'s ▮▮▮▮▮ n Honduras and his behavioral challenges with previous caregivers, and to assess Reyna D.'s ability and readiness to provide Jaime D. with basic needs. GOV-00008901-02, GOV-00008912, GOV-00009197-98. The home study request was consistent with ORR policy. *See* ORR Guide § 2.4.1, 2.4.2.

56. On or about July 19, 2018, Jaime D. was stepped down from a staff secure facility and arrived at Children's Village shelter. GOV-00008985.

57. While at Children's Village shelter, staff at this facility were regularly in contact with Reyna D. and without undue delay attempting to move the unification process forward. GOV-0009175-81, GOV-00009197-98, GOV-00009200-01, GOV-00009204-05, GOV-0009213-16. In fact, a Children's Village shelter case manager "conducted weekly phone/video calls with [Reyna D.] [about the] care plan" in an attempt to further move along Jaime D.'s release from ORR's legal

custody and care. GOV-00009197-98.

58. Additionally, Children's Village shelter staff were continuously and without undue delay attempting to move the unification process forward in consultation with staff at Jaime D.'s previous placements, GDIT case coordinators, and ORR-affiliated personnel. GOV-00009042, GOV-00009048-50, GOV-00009186-87, GOV-00009204-05, GOV-00009214-16. This included, but was not limited to: obtaining documentation from Jaime D.'s prior grantee care providers, assessing whether Reyna D. needed to submit updated fingerprints, and obtaining information regarding Reyna D.'s home study. GOV-00009042, GOV-00009048-50, GOV-00009186-87, GOV-00009204-05.

59. During Jaime D.'s time at Children's Village shelter, the unification process was delayed approximately ten days due to Reyna D. declining, on the advice of counsel, to get re-fingerprinted prior to obtaining a work permit. GOV-00009048-50, GOV-00009205, GOV-00009213.

60. On or about August 26, 2018, Reyna D. had a home study conducted at her residence. GOV-00009145-52. On or about August 29, 2018, a home study written report was completed and, on or about September 4, 2018, a home study caseworker recommended that Jaime D. be released to the care and custody of Reyna D. GOV-00009145-52.

61. On or about October 18, 2018, a Children's Village shelter case manager recommended that Jaime D. be released to Reyna D. GOV-00009204-05. That same day, an ORR FFS senior field supervisor approved Jaime D.'s release to Reyna D. GOV-00009206.

62. On or around October 20, 2018, Jaime D. was released to the custody of Reyna D., in Riverdale, Maryland. GOV-00009207.

### G. Jaime D.'s UAC Case File

63. In my work as a Federal Field Specialist Supervisor, I have become familiar with how ORR and its grantee care providers create and maintain case files of unaccompanied alien children (UAC case files). In connection with my employment responsibilities, I have viewed many UAC case files and UAC case file documents.

64. In accordance with ORR policies, ORR and its grantee care providers maintain comprehensive, accurate, and up-to-date case files as well as electronic records on unaccompanied alien children. *E.g.*, ORR Guide § 5.6.2. These UAC case files include a wide variety of information concerning an individual UAC, including: "the child's name, alien number, date of services, and Federal fiscal year. The file documents all services provided, information about the child or youth's progress, barrier's to the child's progress, and the outcome of the case." ORR Guide § 5.6.2. As further detailed in the ORR Guide, UAC case files also include UAC information, admission documents, legal information, assessments (including medical records containing statements made for and reasonably pertinent to medical diagnosis or treatment, and describing medical history, past or present symptoms or sensations, the symptoms' inception, or their general cause),

educational services, case management records, clinical services, incident reports, and discharge/exit information. *See id.*

65. Also in accordance with ORR policies, ORR and its grantee care providers have procedures to maintain, protect, and review UAC case files for completeness and accuracy. *See* ORR Guide § 5.6.3.

66. UAC case files are made at or near the time by—or from information transmitted by—someone with knowledge; they are also kept in the course of a regularly conducted activity. Making UAC case files is a regular practice of the operations of ORR and its grantee care providers.

67. The UAC case file (or excerpts thereof) Bates stamped GOV-00008518 through GOV-00009217 is a true and correct copy of (or excerpts from) the UAC case file of Jaime D., which was created and maintained in accordance with the procedures described above.

68. I declare under penalty of perjury that the foregoing is true and correct.


Dated: DATE 9.16.2020

CITY Atlanta, GA


_____

David Fink