# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R. *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>ALEX AZAR, Secretary of U.S. Dep't of Health and Human Services, *et al*.,<br><br>        Defendants. | Case No.: 2-18-CV-05741 DMG (PLA)<br><br>DECLARATION OF MICAELA VERGARA REGARDING CLASS REPRESENTATIVE DANIELA MARISOL T. |

## I.    Introduction

1.    Micaela Vergara, under 28 U.S.C. § 1746, declares, under penalty of perjury, as follows. If asked to testify, I would testify under oath as follows.

2.    The statements in this declaration are based on my personal knowledge, information acquired by me in the course of performing my official duties (such as my knowledge of ORR policies and procedures, including the ORR Guide[1]), my review of HHS records and information contained therein (including Gabriela N.'s case file).

3.    I have held the position of Federal Field Specialist Supervisor since October 2018. In this capacity, my job duties include: supervising assigned FFS to ensure they monitor and report on quality of care and best practices in provision of program services to unaccompanied alien children (UAC); providing daily supervisory oversight for Field Staff; ensuring adherence to ORR's policies and procedures; and providing assistance to FFS staff in drafting individual learning action plans and developing skills. I also collaborate with the ORR Intakes Team and FFS teams in assigned and other regions to improve the intake process, and communicate regularly with government agencies and other local stakeholders regarding the referral process to ORR and other issues.

4.    Prior to assuming my current position, I held the position of Federal Field Specialist (FFS), and in that capacity I was primarily responsible for: decision-making regarding unification of UACs in ORR care and custody with their families; provision of Federal oversight of local Houston-based programs that care

---

[1] https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied

for children in ORR custody; tracking and monitoring trends affecting specialized populations of UACs in ORR care; and assisting in the monitoring of programs to ensure that they meet both state licensing requirements and federal performance standards. I also provided technical assistance on policy and procedure standards; consulted regularly with program clinicians and administrators providing care to children with complex medical and mental health needs; and debriefed with staff directly involved with these cases.

5.   I have prior clinical experience working in various social service agencies and medical facilities. I worked as a clinician for a domestic foster care agency, provided medical social work services in a community medical provider office, and also was a contract employee for a private practice providing therapy to children and families.

6.   I have a Bachelors of Arts from Saint Mary's College of Notre Dame, and a Master of Social Work degree from the University of Houston.

7.   I have been a Licensed Clinical Social Worker (LCSW) in the State of Texas since 2005. I have full clinical licensure and am also certified to provide clinical supervision to social workers with a basic Master in Social Work (MSW) working towards obtaining a Clinical Social Work license in Texas. I have worked as a Masters-level Social Worker since 2002.

8.   I have professional experience in medical, domestic foster care, and in private practice settings. I also have training in play therapy, Parent Child Interactive Therapy (PCIT), and trauma-focused therapies.

9.   As a Licensed Clinical Social Worker (LCSW) in Texas, I must receive 30 continuing education units (CEUs) every two years in order to maintain my clinical licensure. Therefore, every year I attend various social work trainings on topics that include: immigrant issues; mental health; trauma-focused interventions; and various other social work-related topics. Most recently, in May and June 2020, I attended 6 virtual trainings which were offered to ORR staff and grantees by expert mental health professionals in the Substance Abuse and Mental Health Services Administration's (SAMHSA) National Child Traumatic Stress Network in collaboration with ORR, as well as HHS experts; topics included:  trauma-informed care during the COVID-19 crisis, understanding the impact of COVID-19 on children with preexisting mental health needs and strategies for helping them cope, psychotropic medications for UAC, tools for promoting wellness and relieving stress, and coping with secondary traumatic stress in working with UAC. Additionally, in June 2019, I also traveled to Central America for a social work course on topics such as: migration; mental health; health care; domestic violence; and issues pertaining to women and children in that geographic region.

10.  Under ORR policy, when making step-up and release decisions, information provided from a child's stakeholders, including the child's attorney, are taken into consideration. *See* ORR Guide § 1.4, 2.3, 2.3.1, 2.7. I follow these policies in making such decisions. In addition, I am open to communicating with UAC counsel, and will consider any input they offer.

11.     ORR "has policies and procedures in place to ensure unaccompanied alien children in ORR care are released in a safe, efficient, and timely manner."  See ORR Guide § 2.1.  "Safe and timely release (also known as 'family reunification') must promote public safety and ensure that sponsors are able to provide for the physical and mental well-being of children."  *Id.*

12.     ORR's "policies for placing children and youth in its custody into care provider facilities are based on legal requirements as well as child welfare best practices in order to provide a safe environment and place the child in the least restrictive setting appropriate for the child's needs."  *See* ORR Guide § 1.1.  ORR's "[c]are providers must make every effort to place and keep children and youth in a least restrictive setting."  *See* ORR Guide § 1.4.1.

## II.     Placement and Unification Efforts for Daniela Marisol T.

### A.     Daniela Marisol T.'s Journey from Honduras to the United States, Initial Placement at International Education Service (IES) Casa Norma Linda Shelter, and Psychiatric Hospitalizations

13.     As Plaintiffs' experts Drs. Cruise and Rasmussen have explained, "UACs suffer from a number of specific mental health problems" arising out of "adversities and traumatic event exposures," to include events "pre-migration" to the United States.  Expert Report of Drs. Cruise and Rasmussen at 5.  Named Plaintiff Daniela Marisol T. faced such adversities and traumas prior to entering ORR custody.  Before beginning her journey to the U.S., Daniela Marisol T., who was born in Honduras on July 28, 2001, endured "a series of several traumatic events in her life that may have contributed to her psychological decompensation."  GOV-00003261.

14.     Daniela experienced ███████████████████████████████████████████████ ███████████████████████ GOV-00001286, GOV-00003118, GOV-00003122, GOV-00003279, GOV-00003348.  Daniela Marisol T.'s father ███████████████ ███████████████████████████████████ GOV-0003122, GOV-00003125. Her paternal grandmother ███████████████████ █████. GOV-00003453.  Daniela also ███████████████████████████████████████ GOV-00003348.

15.     Daniela Marisol T. reported that what she believes was an ███████████████ ████████████ GOV-0003122.  She also disclosed that in her home country of Honduras she had ██████████████████████████████████████████████████████ ████████ GOV-00003122.  Daniela also ███████████████████████████ ████████████████ GOV-00002897. She also reported that ███████████████ ████████████████████████████████████████████ *Id.* Daniela also ███████████████████████████████████████████████████

GOV-00002922.  Additionally, she admitted ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████
GOV-00002897.

16.   In the weeks just prior to beginning her journey to the U.S., Daniela was having
      difficulties ████████████████████.  GOV-00003122.  Reportedly, ████████████
      ████████████████████████████████  GOV-00002837, GOV-00002915.

17.   Despite Daniela's significant history of trauma and serious mental health struggles in her
      home country, she did not receive any mental health treatment there, and reported no
      outpatient or inpatient psychiatric treatment.  GOV-00002368.  Daniela also was not
      prescribed any psychotropic medications.  *Id.*

18.   Daniela Marisol T. left her home country on or about June 17, 2017 and traveled
      towards the U.S., but was deported back to Mexico before attempting on June 24,
      2017 to reach the U.S. again. Daniela eventually entered the U.S. on or around
      August 1 or 2, 2017, and arrived at the U.S.-Mexico border with her older, adult
      half-sister Katherine L. and her nephew. FAC ¶ 37, GOV-00001359, GOV-
      00001816, GOV-00001993, GOV-00002561, GOV-00002915, GOV-00003122,
      GOV-00003210-13.

19.   Before entering ORR custody, Daniela Marisol T. was deemed by the Department
      of Homeland Security (DHS) to be an unaccompanied alien child (UAC) and was
      then transferred to ORR's legal custody on or around August 3, 2017.  GOV-
      00001816-17.

20.   On or around August 3, 2017, ORR placed Daniela at the International Education
      Service (IES) Norma Linda Shelter in Los Fresnos, Texas.  GOV-00001816-17,
      GOV-00001830-31 (Placement Authorization). That day, ORR conducted an Initial
      Intakes Assessment of Daniela Marisol T. in Spanish.  *Id.* During the interview,
      Daniela reported no physical or medical problems.  *Id.* ████████████████████
      ████████████████████ Daniela denied having any prior mental health
      issues, history of self-harm, or current thoughts of self-harm.  *Id.*  Daniela also told
      the interviewer she felt safe in ORR's custody and that she did not have any fears
      about being harmed by others or about her housing arrangement at the Casa Norma
      Linda shelter.  *Id.*   An Initial Medical Exam (IME) was also completed of Daniela
      the next day on August 4, 2017. During the IME, Daniela denied any mental health
      or behavioral issues, and did not disclose that she had any history of ████████████
      ████████████  GOV-00002933-35.

21.   A Placement Authorization, and an Authorization for Medical, Dental, and Mental
      Health Care were signed on August 4, 2017 by the ORR Director and an authorized
      representative of the shelter. GOV-00002803-04. At the time, the medical
      authorization of the ORR Director, as well as the clinical judgment of treating

clinicians, was considered sufficient documentation and protocol for prescribing medications to Daniela.

22. As part of the admissions process, Daniela Marisol T. provided a signed acknowledgment that she had received a presentation on her legal rights as a UAC, to include her right to access counsel. GOV-00001985. She was legally screened by legal service provider Pro-Bar on August 6, 2017. GOV-00002374. Daniela was also provided a list of pro bono legal service providers. GOV-00001839, GOV-00001847-92.

23. When she entered into ORR custody, Daniela Marisol T. had no established treatment history or plan from which to draw to meet her needs. While placed at Casa Norma Linda shelter, however, an Individual Service Plan (ISP) was developed for Daniela. *See, e.g.*, GOV-00002375-83 (August 30, 2017); GOV-00001826-27 (Preliminary Service Plan).  Daniela's ISP included individual counseling twice weekly and on an as needed basis "to practice positive coping skills and emotional regulation," as well as group counseling, educational, medical, and recreational services. GOV-00002374. Daniela signed acknowledgement that her ISP was reviewed with her, and that she agreed with the plan. GOV-00002383, GOV-00002385.  Due to her abuse history she qualified for a mandatory home study under the TVPRA.  GOV-00002375.

24. Several days after her placement in the Casa Norma Linda shelter, Daniela disclosed ██████████████████████████████████████████████████████████████ ███████████████████████████████. GOV-00002368; *see also* GOV-00002542-60 (hospital records).  She also disclosed ██████████████████████████ ████████████████████████████████████ GOV-00002368, GOV-00003122.

25. Just 5 days after being placed in ORR's care and custody, Daniela Marisol T. was psychiatrically hospitalized on August 8, 2017 in Behavioral Hospital at Renaissance, because ████████████████████████████████████████████ ███████████ GOV-00002368; *see also* GOV-00002893-914 (hospital records). Daniela had stated ██████████████████████████████████████████████ ████████████████████. GOV-00002897. A shelter note stated ████████ ██████████████ GOV-00002599.  According to hospital records, █████████ ████████████████████████████████████████████████████████████████ ████████████████████ GOV-00002545; *see also* GOV-00002371. At the hospital, Daniela was prescribed Prozac, Abilify, and Vistaril (as needed) by Dr. ████ ███ in order to treat her symptoms of depression, psychosis, anxiety, and aggression. GOV-00002368, GOV-00002498, GOV-00002869-70.

5

Declaration of Micaela Vergara



On August 11, 2017, Daniela was diagnosed with ██████████ ██████████ by Dr. ██. GOV-00002368.

26.  As a follow-up to her hospitalization, on August 18, 2017, Daniela also had a comprehensive outpatient evaluation with H████ Z███ M████, APRN, of JNC Behavioral Services in Brownsville, Texas (in the same outpatient practice as psychiatrist Dr. T███). *See* GOV-00002813-2818.  Daniela's symptomology as noted in the evaluation included: ██████████████████████████ GOV-00002813. Daniela reported that she had experienced ██████████████ GOV-00002813. Also, at the time, Daniela's ██████████████ GOV-00002815.  Daniela also disclosed that she was asked to send naked pictures of herself on Facebook, although she did not do so.  Daniela was diagnosed with ██████████████ Daniela's Abilify (mood stabilization) and Prozac 20 mg (depression) prescriptions were continued, the PRN medication Vistaril (aggression) was removed, and Clonidine was added (PTSD and sleep).  GOV-00002816; *see also* GOV-00002368, GOV-00002741. Daniela had the opportunity to discuss her treatment plan which included not only medication but also psychotherapy, and likewise "had a detailed discussion about the side effects of the medications prescribed" as well as the benefits and alternatives.  GOV-00002816.  It was also noted that her ██████████████ GOV-00002814.  This evaluation contradicts Daniela's allegations, FAC ¶¶ 39 and 43, that she did not have mental health issues in her home country and that they resulted from her experience of being in ORR custody, being separated from her family, or being prescribed psychotropic medications.

27.  Despite receiving inpatient psychiatric treatment and outpatient psychiatric follow up and counseling while she was placed at Casa Norma Linda shelter, Daniela Marisol T.'s mental health steadily deteriorated.   Daniela was once again hospitalized on August 22, 2017 at Behavioral Hospital at Renaissance because she had been ██████████████. GOV-00002368; *see also* GOV-00002190-93 (SIR & Addenda); GOV-00002446-73 (Psychiatric Evaluation at hospital).  Notably, ██████████████ GOV-00002820. While Daniela reported ██████████████ GOV-00002368, GOV-00002592.

Declaration of Micaela Vergara



Daniela stated ███████ ████████████████████ *Id.* She also ███████████████████████████████████████ GOV-00002592. On August 23, 2017, at the hospital, Daniela was diagnosed with ████ ███████████████████████████████████████████ GOV-00002446. At the hospital, she was prescribed Prozac 20 mg for depression, Abilify 5 mg for mood stability, and Vistaril 50 mg/3x daily as needed for aggression (removing Clonidine). GOV-00002368, GOV-00002400, GOV-00002408, GOV-00002667-68. Daniela expressed that stressors were not only being in a shelter, but also █████████████████████████████ GOV-00002447.

28.  In a hospital progress note dated August 24, 2017, Dr. █████, a psychiatrist, recommended that Daniela be transferred to a residential treatment center because of the severity of her symptoms. GOV-00002826-27.

29.  On August 25, 2017, Daniela was released from the hospital and placed on one-to-one supervision but just two days later, on August 27, Daniela reported to her clinician, █████████████████████████████ GOV-00002368, GOV00002187-89 (SIR & Addendum). She told her clinician that she had been ██████████████████████████████████████ GOV-00002372. Daniela said that she was in ███████████████████████████████████████████████████ ████████████████████████ GOV-00002187.   Daniela also stated that ████████ █████████████████████████████████████████████████ GOV-00002187-89. Crisis mental health screening was done later that day by Tropical Texas Behavioral Health but Daniela did not qualify for inpatient hospitalization as she denied ████████████████████████████████. GOV-00002372; *see also* GOV-00002187-89 (SIR and Addendum).

30.  On September 1, 2017, Daniela saw Dr. T█████ once again for a follow-up psychiatric appointment and he continued her Prozac 20 mg prescription, discontinued Abilify 5 mg, Vistaril 50 mg and Clonidine, and added Risperdal .5 mg and Benadryl 25 mg.  GOV-00002398, GOV-00002634, GOV-00002669-71. Her diagnosis at the time was █████████████████████████████████ ██████████ GOV-00002637.

31.  Daniela alleged in the complaint that, according to her sister Katherine L. when she lived in Honduras with her family, "she did not seem to have mental health issues." FAC ¶ 37.  This assertion is wholly unsupported by the case record.  As discussed above, Daniela Marisol T.'s serious mental health symptoms and difficulties began in Honduras, years before she ever came to the U.S. and entered ORR custody. Daniela struggled ██████████████████████████████████████████

██████████████████████████████████████  *See, supra,* ¶¶ 15, 24. Daniela's multiple traumatic experiences in Honduras led to these issues.  Additionally, as explained further below, initially Katherine L., Daniela's sister-sponsor hesitated as to whether she had sufficient financial resources to be able to provide Daniela Marisol T. the care and support that she needed to address her needs.  GOV-00003398.  In contrast, ORR provided Daniela Marisol T. with the care and support that she needed.

32.   Daniela alleged that the separation from her family was so traumatic that she was psychiatrically hospitalized. FAC ¶ 39. Once again, the case record does not support this assertion. ████████████████████████████████████████████████ ORR concluded that Daniela Marisol T. needed intensive treatment that she could only find at a residential treatment center, not at the Norma Linda shelter or by living with her family.  GOV-00002369. Daniela's symptoms would make her unsafe for a community or basic care setting. Given Daniela's serious mental health needs and the threat of immediate harm she presented to herself and others, and upon the recommendation of a licensed psychiatrist Dr. ████ ██  and the approval of the ORR Federal Field Specialist, ORR made arrangements to transfer Daniela Marisol T. to the Shiloh Treatment Center.  GOV-00002145-48, GOV-00002151-52.

33.   Daniela Marisol T. also alleged that she became suicidal while being forced to take antidepressants and drug combinations, implying that the medications actually *caused* her suicidality.  FAC ¶¶ 42-43. This assertion is not supported by the case record. As noted above, Daniela had suicidal ideation not only while in ORR care, but also in her home country of Honduras years before she ever journeyed to the U.S.  *See, supra,* ¶ 24.  In fact, Daniela disclosed ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ GOV-00002372.  While psychiatrically hospitalized, Daniela also ████████████████████████████████████████████ ████████  GOV-00002865. And, there is no indication in the record that Daniela's symptoms were exacerbated by the medications that she was prescribed for her serious mental health needs, but rather, as discussed below, notes in her medical chart indicate that her symptoms improved over time with appropriate mental health care, including medication. *See, infra,* ¶ 57.  Moreover, Daniela's allegation that she was "forced" to take medication is without support in the case record; rather, as noted (*see, supra,* ¶ 26), she was educated at length on the benefits and risks of medication, did not express that she did not want to take it, and in fact complied with her medication regimen. Although she experienced some mild side effects at times such nausea/stomach pain and drowsiness (*see* GOV-00002110, GOV-00002112, GOV-00002757-59), Daniela also reported feeling better with mental health treatment that included medication.   GOV-00002371, GOV-00002552, GOV-00002598 ████████████████████████████████████████

34. Daniela alleged that she was not given notice of her transfer to Shiloh RTC. *See* FAC ¶ 41. To the contrary, a case management note dated September 7, 2017 at Casa Norma Linda shelter indicated that the case manager, lead clinician and Daniela's assigned clinician met with her to notify her about and explain the reasons for the transfer. GOV-00002581. The clinician reportedly ███████████████ ████████████████████████████████████████████ *Id.* Daniela told her case manager that she was sad to leave the shelter but was grateful to have created a good relationship with her. GOV-00002111. The same day, the case manager also informed Daniela's mother in their home country that she would be transferred to another facility due to her mental health. Daniela's mother said that she understood the reasons why Daniela was being transferred. GOV-00002110.

35. Daniela was transferred to Shiloh with prescriptions of Prozac 20 mg, Risperdal, and Benadryl 20 mg. GOV-00002181.

## B. Shiloh Residential Treatment Center

36. On or around September 8, 2017, Daniela Marisol T. was placed at Shiloh Residential Treatment Center in Manvel, Texas. GOV-00003122. Shiloh RTC is accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), licensed by the State of Texas, and recognized as treating minors both with emotional disorders, as well as developmental and intellectual disorders – particularly autism. Daniela was referred to Shiloh for a 30-day psychiatric evaluation following: ███████████████ ███████████████████████████████ *Id.* She was referred to Shiloh as an emergency admission because she exhibited behaviors that were an immediate danger to herself that could not be served at the shelter level. *Id.*

37. An Admission Assessment was done of Daniela Marisol T. at Shiloh on September 15, 2017, which included background information about her psychological and emotional history leading up to her placement at the RTC which Daniela had revealed over time to her clinician during her shelter stay. GOV-00003122-28.

38. The Admission Assessment noted that, "Due to her mental and emotional functioning, the least restrictive environment necessary to care for [Daniela Marisol T.'s] needs is in a highly structured residential subacute treatment setting. She should initially have trained staff to provide one-on-one supervision to monitor her as her mood stabilizes. She should receive counseling to address the traumatic events of the past and to explore her symptoms and learn coping skills to refrain from suicidal and self-injurious ideation and attempts. She should receive psychiatric services to monitor her symptoms and manage medication." GOV-

00003128. In an initial psychiatric assessment by Dr. Ruiz on September 5, 2017, Daniela received the following diagnoses: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ GOV-00003126. While placed at Shiloh, Daniela was to receive the following treatment services:  weekly medication monitoring, or as needed, 2 hours of individual therapy, and 1 hour of group therapy.  GOV-00003128.  Later on January 9, 2018, Daniela's diagnosis was clarified to rule out ██████████████.  GOV-00003314.

39.   Based on her diagnoses, Daniela was found to have an ADA disability.  GOV-00003428.

40.   A comprehensive Individual Service Plan (ISP) was developed for Daniela Marisol T. at Shiloh which included individualized goals and objectives in areas such as: health care, psychiatric treatment; medication administration; medication education; behavior; individual counseling; group counseling; academics; social skills development; recreation and leisure; community recreation and leisure; life skills training; sexual health education; religious services; family communication; case coordination; and discharge planning. GOV-000000003227-75 (Individual Service Plan (ISP), dated October 6, 2017); *see also* GOV-00003224-3226 (Initial Staff Briefing and Preliminary Service Plan).  The Initial Service Planning meeting was held with treatment team members on October 6, 2017.  GOV-00003275.  Daniela signed her approval of the ISP that day. GOV-00003275.  *Id.* Daniela's ISP was reviewed with her every 30 days by a multi-disciplinary team of clinical, administrative and other staff, and an independent case coordinator. *See* Service Plan Reviews at: GOV-00003276-84 (October 5, 2017); GOV-00003285-95 (November 2, 2017); GOV-00003296-3304 (November 30, 2017); GOV-00003305-13 (December 28, 2017); GOV-00003314-23 (January 25, 2017). Initially, while Daniela was in the subacute level of care at Shiloh and on 1:1 supervision, her case was reviewed weekly.  *See* Subacute Case Review at: GOV-00003327-30 (September 14, 2017); GOV-00003343-46 (September 21, 2017); GOV-00003347-50 (September 28, 2017); GOV-00003351-54 (October 12, 2017); GOV-00003355-58 (October 19, 2017); GOV-00003359-62 (October 26, 2017); GOV-00003363-65 (November 1, 2017); GOV-00003366-69 (November 16, 2017); GOV-00003370-72 (November 23, 2017).  Under ORR Guide § 1.4.6, in order for minors such as Daniela to remain at Shiloh per the 30-day review, a psychiatrist or psychologist has to continually determine that they are in need of that level of care and are a danger to self or others.

41.   While placed at Shiloh, Daniela met with her Case Manager on a weekly basis to discuss the status of her case, including her progress towards her treatment goals and objectives, and plans for her reunification with family.  *See* UAC Weekly Case Reviews, GOV-00003331-42.

42.   Daniela Marisol T. received individual counseling (twice weekly) and group

counseling (once weekly) while placed at Shiloh. *See* GOV-00003495-3514 (individual) and GOV-00003515-51 (group), respectively. She also received psychiatric services for weekly medication monitoring (or as needed). *See* GOV-00003923-77 (psychiatric records). Daniela received medical services (GOV-00003861-81), and dental services (GOV-00003988-90). She also received individualized educational services. *See* educational records, GOV-00003431-48. She was administered educational testing in Spanish, *see* GOV-00003446-48. While placed at Shiloh, Daniela was able to participate in recreation and other activities. GOV-00003648-54.

43. A Placement Authorization, and an Authorization for Medical, Dental, and Mental Health Care were signed on September 8, 2017 by the ORR Director and an authorized representative of the care provider (Shiloh), Daniela Marisol T.'s Case Manager. GOV-00002803-04, GOV-00003135-36, GOV-00003140-42. The Case Manager also signed a Consent to Medical Care, and a Consent to Administer Prescription and Non-prescription (OTC) Medications on behalf of Daniela. GOV-00003140-42. At the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications to Daniela. Following a July 2018 Court Order in the *Flores* litigation, Shiloh obtains written consent from parents or legal guardians before prescribing medication; likewise, Shiloh obtains written consent from parents or legal guardians to place children in the RTC.

44. During orientation at Shiloh and in a subsequent session, Daniela Marisol T. acknowledged in writing that she received training regarding prevention of sexual abuse and sexual harassment. *See* GOV-00003143-48 (Spanish). Daniela also received a Know Your Rights legal presentation, *see* GOV-00003203, and copy of a list of pro bono legal service providers in Texas. GOV-00003189-94, GOV-00003216-22. The Cabrini Center provided a Good Faith Letter on October 2, 2017 which stated that Daniela is believed to be eligible for asylum benefits. GOV-00003311. Daniela was also referred to a child advocate on October 4, 2017. GOV-00003282.

45. Daniela Marisol T.'s Psychiatric Treatment Plan dated September 12, 2017, which set forth her individual goals and objectives for her treatment at Shiloh, indicated that her General Assessment of Functioning (GAF) score at the time of admission was 40. GOV-00003238, GOV-00003975. Daniela's psychiatric treatment plan listed the following as goals, among others: "behavior no longer dangerous to self or others"; "reduction of symptoms allows [Daniela] to function in less restrictive environment"; "behavior no longer requires an intensively structured environment." GOV-00003240. On September 8, 2017, Daniela also signed a Safety Contract, which is an agreement between her counselor, the service director, and the staff at Shiloh to help keep her and others safe. GOV-00003244.

46. At intake, Daniela Marisol T.'s already existing medications of Fluoxetine (Prozac) 20 mg, Risperidone (Risperdal) .5 mg, and Benadryl 20 mg which had been prescribed by Dr. T███ were initially continued as Shiloh obtained data on

her functioning.  GOV-00003276.  Adderal XR 30 mg was added for ADHD
symptoms.  GOV-00003277.  Shiloh's psychiatrist, Dr. Ruiz, noted on September
21, 2017, that Daniela was not sleeping well and that she would wake up to eat
because her appetite had increased.  GOV-00003276. . Dr. Ruiz noted Daniela's
weight gain of 7 lbs. since she began Risperidone and decided to recommend that
Daniela change to Seroquel 100 mg at bedtime (gradually stopping Risperidone
.25 mg over 4 days), noting that she denied auditory or visual hallucinations at the
time.  *Id.*  Side effects were explained to Daniela.  *Id.*  Daniela's Prozac dosage
was also increased to 30 mg every morning. *Id.* Daniela's Seroquel dosage was
increased twice from 100 to 150 mg, 100 to 200 mg, and then from 200 to 300 mg
due to symptoms of ███████████████████████████████████  GOV-
00003285-86, GOV-00003296-97, GOV-00003305-06.  Daniela was also given
banophen 50 mg ███████████████████████.  GOV-00003296.

47.    During orientation at Shiloh RTC, Daniela Marisol T. received notice of why she
was placed there ██████████████████████████████
███████████.  GOV-00003329.  Daniela's placement continued to be reviewed at
least every 30 days (and sometimes weekly) to determine if she continued to
require the same restrictive level of care, in accordance with the TVPRA. Records
show that Daniela was informed about and participated in this meetings, as
evidenced by her signature on the service plan and subacute case review forms.
*See* GOV-00003275 (Individual Service Plan (ISP), October 6, 2017); Service
Plan Reviews: GOV-00003284 (October 5, 2017), GOV-00003295 (November 2,
2017), GOV-00003304(November 30, 2017), GOV-00003313 (December 28,
2017), and GOV-00003323 (January 24, 2017); Subacute Case Reviews: GOV-
00003330 (September 24, 2017); GOV-00003346 (September 21, 2017), GOV-
00003358 (October 19, 2017), GOV-00003362 (October 26, 2017), GOV-
00003365 (November 1, 2017), GOV-00003369 (November 16, 2017), and GOV-
00003372 (November 23, 207).  *See also* 30 Day Case Reviews: GOV-00003392-
98 (October 9, 2017), GOV-00003400-08 (November 7, 2017), GOV-00003410-
18 (December 7, 2017), GOV-00003420-29 (February 5, 2018).

48.    Daniela Marisol T. alleges that she was "forced" to take medications while at Shiloh.
FAC ¶ 42. The case record does not support this allegation.  Daniela's individualized
service plan, which Daniela participated in developing with a multi-disciplinary
team, included goals and objectives for medication education.  GOV-00003243. It
was also reported that she was responding well to her medication regimen.  GOV-
00003286. There is not support in the case record for Daniela's allegation that "she
ha[d] to take the medication because facility staff ha[d] told her that she must in
order to be released from government custody."  FAC ¶ 44.  In my experience,
Shiloh does not force children to take medicine.  To the contrary, the psychiatrist
and other clinical staff at Shiloh take care to explain to children how medication
may benefit them, and the possible risks involved, or side effects.

49.    As Daniela developed a therapeutic relationship with her clinician at Shiloh, she
began to disclose details about her prior abuse and trauma history which she had not

been comfortable revealing in earlier sessions.  In ███████████████████████
█████████████████████████████████████████████████████
███████████████████████████ GOV-00003348. ███████████
███████████████████

        *Id.*

50.     In the highly structured and therapeutic environment of the RTC, with close management of her medication regimen, Daniela did not experience the same severe mental health symptoms that she had in the shelter setting which necessitated multiple psychiatric hospitalizations.  Initially, however, while Daniela was in the subacute level of care at Shiloh, she experienced ██████████████████████
███████████████████████████████████████████████████████
██████████████████████████████ GOV-00003347-49.  By October 31, 2017, a note in Daniela's case plan indicated that Shiloh staff were beginning to consider a transition to a lower level of care (from subacute to RTC care).  GOV-00003285.  That transition occurred on or about November 23, 2017.  GOV-00003370.  However, a psychiatric note dated December 12, 2017 stated that Daniela █████████████████████████████████████████████████████
████████████████████████████████████████████████; Dr. Ruiz increased her Seroquel dosage to 300 mg as a result, and Daniela was also placed on 1:1 supervision. GOV-00003305.  A note in the December 28, 2017 service plan from Daniela's therapist ████████████████████████████████████
█████████████████████████████████████████████████████
GOV-00003308.  A psychiatric note on January 9, 2018 states that Daniela ███████
████████████████████████████████████████ GOV-00003314. Daniela's psychiatrist recommended on January 9, 2018 that she could safely be stepped down to a lower level of care.  Daniela's case was submitted for transfer on January 12, 2018.  GOV-00003320.

51.     A therapy note dated January 15, 2018, from Daniela Marisol T.'s clinician at Shiloh stated that Daniela was ██████████████████████████████████████████
█████████████████████████████████████████████████████ GOV-00003421.

52.     Daniela Marisol T.'s mental health functioning improved considerably when she was placed at Shiloh RTC.  Shortly after Daniela's placement at Shiloh, on September 12, 2017, Daniela's psychiatrist stated that her General Assessment of Functioning was 40 and, later, on January 9, 2018 it was 65 and Daniela's psychiatrist recommended step-down to a shelter setting.  GOV-00003238, GOV-00003473.  Daniela was discharged from Shiloh on February 17, 2018 and was placed at the less restrictive David and Margaret shelter.  *See* GOV-003469-73 (Discharge Summary).

### C. David and Margaret Shelter

53.     On or around February 17, 2018, Daniela Marisol T. was placed at David and Margaret shelter in La Verne, California.

54.     While placed at the David and Margaret shelter, Daniela had the opportunity to meet with her case manager on at least a weekly basis in order to discuss the status of her case.  *See* GOV-00002964-69.  Daniela also received weekly individual and group therapy services, as well as medical and dental services, and educational and recreational activities.  GOV-00002972-3019 (individual therapy progress notes); GOV-00003020-41 (group therapy progress notes); and GOV-00003068-73 (Case Review, dated May 18, 2018).

55.     On the date of her admission, Daniela signed acknowledgement that she received training regarding the prevention of sexual abuse and harassment.  GOV-00002951-55 (Spanish).

56.     In her initial individual therapy sessions, Daniela and her clinician discussed the development and implementation of the UAC Care and Safety Plan for Daniela due to Daniela's ███████. A safety contract was developed with Daniela's agreement and discussed with other appropriate parties. GOV-00002973.  Although Daniela was ███████ GOV-00002975-77. As she grew comfortable with her clinician and the shelter, Daniela also ███████ GOV-0002982-83. By March 7, 2018, Daniela was taken off 1:1 protective watch ███████. GOV-00002986.  Case records show that Daniela ███████ GOV-00003073.

57.     In marked contrast to Daniela's allegations in the complaint that she was "forced" to take psychotropic medication or that she became suicidal while taking it, *see* FAC ¶ 43, Daniela reported ███████ GOV-00002973; *see also* GOV-00003118 (noting that Daniela was ███████ ; GOV-00003101

Declaration of Micaela Vergara

GOV-00002975

); GOV-00002986-87

. There is likewise no indication in Daniela's case file record that she shared her alleged belief, *see* FAC ¶ 44, that "she has to take the medication because facility staff have told her that she must in order to be released from government custody." Rather, Daniela knew and acknowledged that the medication was helping her.   GOV-00002975.   Further, in a psychiatric consultation appointment with Dr. H█ on February 26, 2018, Daniela's existing Fluoxetine (Prozac) prescription was increased from 30 mg to 40 mg since being placed in the shelter and her Seroquel dosage remained consistent at 300 mg. GOV-00003102.  Daniela ████████████████████████ GOV-00002985.

58.     On February 22, 2018, Daniela received a Know Your Rights presentation from Immigration Defenders Law Center.  GOV-00002948; *see also* GOV-00003042 (Authorization to Release Confidential Information).  Daniela also was provided a list of legal service providers.  GOV-00002949-50.  Several days later on February 27, 2018 Daniela received a legal screening and was found likely to be eligible for legal relief, including SIJS and Asylum. GOV-00002964.  On March 13, 2018, Daniela also received the news that she had been assigned a child advocate. GOV-00002965.  Daniela had meetings with her advocate at the shelter on March 31, April 14, and May 12 and 19, 2018. GOV-00002966, GOV-00002968.

59.     Given that Daniela did not at the time have a family member who was willing and able to serve as a viable sponsor for her, and a legal service provider had identified her as likely being eligible for legal relief, *see supra* ¶ 58, her case manager initiated the long term foster care (LTFC) referral process for her on April 5, 2018 by submitting the referral to the case coordinator.  GOV-00002966; *see also* GOV-00001285-88 (LTFC screening tool).  During the month of April, several LTFC programs indicated that they were unable to accept Daniela.  GOV-00002966-67. By April 30, 2018, however, Daniela was accepted by the Bethany Christian Services (USCCB) LTFC program.  The FFS approved Daniela's transfer that day. GOV-00002967.

60.     The transfer request explained that Daniela, who generally adjusted well to the shelter and did not engage in aggressive behavior or self-harm, or express suicidal or homicidal ideation, would benefit from long-term support in an LTFC program for her psychiatric diagnoses.  GOV-00003101-02.  Daniela was able to participate in an extended pre-placement call with the case manager from Bethany Christian Services which lasted more than 45 minutes, and during which Daniela was able to ask questions about the program.  GOV-00002968.  In individual therapy, Daniela



GOV-00003016; *see also* GOV-00002987 Daniela was also GOV-00003018. Further, Daniela's clinician reported that GOV-00001287.

61. Daniela was transferred to Bethany Christian Services long-term foster care program on May 23, 2018. GOV-00003101-03.

### D. Bethany Christian Services, Bellaview Girls Group Home

62. On or around May 23, 2018, Daniela Marisol T. was placed at the long-term foster care program at Bethany Christian Services (Bethany) in Kentwood, Michigan, in the licensed residential group home for girls, Bellaview. GOV-00001226-27, GOV-00001280-83, GOV-00001674. Daniela's mother in Honduras was in agreement with the placement, and agreed to her continued receipt of services. GOV-00001364. Bellaview provides girls with access to recreational activities, cultural orientation, religious activities, and an opportunity for a supportive peer environment. GOV-00001359. This program is the least restrictive setting offered to adolescents in ORR care and offers adolescent girls like Daniela who have experienced trauma the opportunity for individualized and therapeutic care and access to the community. *Id.* While in this program, Daniela attended public high school in the community where she received an education assessment, intensive English as a Second Language (ESL) instruction, and daily recreational activity. GOV-00001361. Daniela is able to speak with her biological family for at least 20 minutes/weekly. *Id.*

63. A Placement Authorization, and an Authorization for Medical, Dental, and Mental Health Care were signed on May 23, 2018 by the ORR Director and an authorized representative of the care provider, Daniela Marisol T.'s Case Manager. GOV-00001229-30. A Psychotropic Medication Informed Consent Form was also signed by the case manager. GOV-00001682-83. At the time, the medical authorization of the ORR Director, as well as the clinical judgment of treating clinicians, was considered sufficient documentation and protocol for prescribing medications to Daniela.

64. Daniela Marisol T. signed her acknowledgement of receipt of Bethany's grievance policies and procedures. GOV-00001255-59 (English and Spanish), GOV-00001261 (grievance form). Daniela also signed acknowledgement of Bethany's Zero Tolerance Policy in accordance with the Prison Rape Elimination Act

(PREA). GOV-00001346.

65.   Daniela seemed to adjust well to her new placement at Bethany "as evidenced by her excitement to arrive and her positive phone interactions with her family members." GOV-00001499.

66.   On May 23, 2018, Bethany initiated a comprehensive Individual Service Plan (ISP) for Daniela Marisol T., which included the following: individual and group counseling services (once/weekly and 3x/weekly, respectively), activity therapy (once/weekly), medical services, education, recreation and leisure, case management, legal orientation, and vocation services. *See, e.g.*, GOV-00001328-29, GOV-00001339; *see also* GOV-00001357-71 (Initial Service Plan). Of note is that Daniela was to participate in Trauma-Focused Cognitive Behavioral Therapy (TF-CBT) in individual therapy as soon as she felt ready to open up and process her trauma history. *See* GOV-00001359-60. Daniela was learning about dialectical behavior therapy (DBT) skills and the Sanctuary Model of Care. *Id.*

67.   Upon intake, Daniela received a list of legal service providers in Michigan. GOV-00001464-71 (Spanish and English). Daniela was paired with an attorney from the Michigan Immigrant Rights Center. GOV-00001344. She had the opportunity to meet with the attorney on June 6, 2018. *Id. Flores* counsel also submitted a G-28 form for Daniela on July 20, 2018. GOV-00001472-75.

68.   Daniela Marisol T. reportedly had a couple of behavior-related reports while placed at Bethany. On June 21, 2018, Daniela was one of two UACs engaged in ███████ GOV-00001330-31, GOV-00001354-55. Daniela was suspended for missing class, upon further investigation that included the review of the school's security camera video the youth was ███████. The incident was reported to local law enforcement in the event that ███████. On July 7, 2018, another report involved Daniela biting two other UAC while playing at the YMCA pool. GOV-00001352-53.

69.   During a psychiatric appointment on June 12, 2018, Daniela had a psychiatric evaluation with Dr. M███. Daniela ███████ to Dr. M███, and ███████. Dr. Mahesh worked with Daniela and agreed to lower her dosage of her medication but recommended that she be encouraged to take her medications. Daniela was prescribed Prozac 30 mg and Seroquel 200 mg at the time; Dr. Mahesh decreased her Prozac to 20 mg to counter symptoms of ███████, and increased her Seroquel to 300 mg to ███████. GOV-00001507, GOV-00001680-83, GOV-00001398. On August 22, 2018, Daniela's Seroquel dosage was later reduced to 150 mg and Trazodone 50 mg was added. GOV-00001340. ███████ ███████ GOV-00001341. There is no support in the case record, however, for Daniela's allegation that, *see* FAC ¶ 43, she was

17

Declaration of Micaela Vergara

"forced" to take psychotropic medication.  In fact, Daniela often refused to take her medication and was not compelled to take it.  GOV-00001685-92.  Daniela also expressed to her Child Advocate that "[s]he understands the role that her medication plays in helping her address her mental health and believes in its role in helping her manage her behaviors." GOV-00001302.

70.   As discussed below, *see infra* ¶ 89, Daniela was interested in being unified with her sister Katherine. While she expressed some feelings of depression and anxiety during the reunification process, she shared with her clinician that ███████████ ███████████████████████████████████████████████████ GOV-0001570. She also was pleased ███████████████████████████████████ ██████████████████████████████████████████████████████ *Id.*

71.   On or about October 19, 2018, ORR released Daniela Marisol T. from Bethany Christian Services to her half-sister Katherine L., in St. Paul, Minnesota. GOV-00001584.

### III.   ORR Placed Daniela Marisol T. In The Least Restrictive Setting Appropriate For Her Needs

72.   Each of the facilities where Daniela Marisol T. was placed represented, at the time of placement, the least restrictive setting appropriate for her needs.  As Daniela Marisol T.'s needs evolved, different levels of placement became appropriate, and Daniela Marisol T. was moved to a different setting to accommodate her current needs.

73.   When Daniela Marisol T. first came into ORR custody on August 3, 2017 she was placed in the least restrictive setting at the Casa Norma Linda shelter.  Although Daniela ███████████████████████████████████████████████████████ ████████████████████████████████████████████, her mental health functioning quickly deteriorated during the first month she was in care. Daniela's severe mental health needs █████████████████████ ████████████████████████████ which necessitated two psychiatric hospitalizations in August 2017, required that she be stepped up to Shiloh Residential Treatment Center for her safety and others on September 8, 2017.  *See*, *supra*, ¶¶ 36, 38.

74.   It was necessary for Daniela Marisol T. to remain in a highly structured RTC until such time as she was no longer a danger to herself or others and could be stepped down to a less restrictive shelter setting, the David and Margaret Shelter in La Verne, California.  *See*, *supra*, ¶ 52.

75.   Given that Daniela Marisol T. did not at the time have a family member who was willing and able to serve as a viable sponsor for her, a referral was made for her to a long term foster care (LTFC) program, Bethany Christian Services in Kenwood, Michigan, that could support her ongoing mental health needs and enabled her to attend school in the local community.  *See*, *supra*, ¶¶ 59-61.

76.   Under ORR policy and in practice, UACs are given legal screenings and access to free legal services. *See* https://www.acf.hhs.gov/orr/about/ucs/services-provided; *see also* ORR's Legal Services Guide, available at https://www.acf.hhs.gov/sites/default/files/orr/english_legal_service_providers_gu ide_with_form_508.pdf (English and Spanish). While Daniela Marisol T. was in ORR's care and custody, as noted above, she received legal screenings and access to free legal services as described in ORR's policies. *See*, *supra*, ¶¶ 22, 44, 58, and 67. In addition, Daniela had legal representation while at and Bethany's LTFC program. *See*, *supra*, ¶ 67.

### IV.   ORR Worked To Release Daniela Marisol T. To A Safe Adult Sponsor

77.   Daniela Marisol T. entered the U.S. with her older (half) sister, Katherine L., and her sister's son. Katherine L. and her child were released to live with the child's father. But, he would not take Daniela. GOV-00002117-19, GOV-00003398. Daniela's brother was also deemed not to be an acceptable sponsor for Daniela because he was living with a number of males, in light of her history of ███████████████. GOV-00002118.

78.   Daniela Marisol alleged in the complaint that "[her psychological state] was further exacerbated when caseworkers told Daniela Marisol that she was not going to be released to her sister." FAC ¶ 39. This assertion is not supported by the case file record. Case notes from the time Daniela was placed at the Casa Norma Linda shelter show instead that Katherine, not caseworkers, told Daniela that she might not be able to be her sponsor. GOV-00003398. As noted above, Daniela did ████████████████████████████████ ████████████████████████████████████████████████████████ *See*, *supra*, ¶ 29; GOV-00002372.

79.   When Daniela Marisol T. was placed at Shiloh RTC, a note dated September 12, 2017 states that the case manager had been unable to reach Katherine L. to discuss sponsorship of Daniela. GOV-00003398. On September 15, 2017, in a meeting with her clinician at Shiloh, Daniela ████████████████████████████████ ████████████████████████████████ GOV-00003344. Several days later, on or around September 18, 2017, on her own initiative, Katherine L. called the case manager and stated that she declined to pursue sponsorship for Daniela due to financial hardship. GOV-00003398. In addition, on September 19, 2017, Daniela's mother told the case manager that there are no other potential sponsors for Daniela in the U.S. *Id.*; *see also* GOV-00003345 (Subacute Case Review, dated September 21, 2017) ("Case manager and [Daniela] discussed reunification process. [Daniela] does not have a viable sponsor. [Daniela] reported that there are no family members that [sic] would be willing to sponsor. [Daniela's] brother and her sister are not willing to sponsor due to financial hardship."). Daniela Marisol T. stated, however, that she did not want to return to her home country.

*Id.* A psychiatric note on September 26, 2017 indicated █████████████ ████████████████████████████████████████████████████ GOV-00003276.

80.  By December 2017, Daniela reported ████████████████████████ ███████ However, in meetings on December 8 and 11 with her case manager at Shiloh RTC to discuss her case, she acknowledged understanding that she did not have a viable sponsor at the time.  GOV-00003331-32.  The case manager encouraged Daniela to speak with her clinician to learn appropriate coping mechanisms.  *Id.*

81.  Daniela was stepped down to the David and Margaret shelter on February 17, 2018.  Her new case manager at that facility reached out once again to Daniela's sister, Katherine L., in order to discuss the possibility of sponsorship with her. The case manager explained the unification process and sponsorship requirements. GOV-00002964.  Katherine stated, however, that she could not sponsor Daniela because "she just arrived in the U.S. and cannot provide for [her]." *Id.*  She also stated that she was unable to provide required documentation. *Id.* On February 26, 2018, Daniela's case manager explained to her that because she had no viable sponsor she would be exploring long-term foster care (LTFC) opportunities for her. *Id.*

82.  On March 7, 2018, Katherine provided the case manager with contact information for two brothers who might be interested in sponsorship of Daniela.  However, neither brother turned out to be a suitable or willing sponsor for her.  One of the brothers stated in a conversation with the case manager on March 20 that he was unable to sponsor Daniela because of his living arrangements and sponsorship requirements.  GOV-00002965.  The other brother lived in a house full of males and would not be an appropriate sponsor.  *Id.*

83.  With no family members who were viable sponsorship options at the time, in subsequent meetings on March 27 and April 3, 2018, Daniela and her case manager continued to discuss the possibility of LTFC.  Daniela told her case manager that she was looking forward to LTFC and was "eager to pursue her education." While seeking a LTFC placement, Daniela continued to keep in phone contact with family members, including her mother in Honduras, as well as her sister Katherine and her brothers.  GOV-00002966-68.

84.  While Daniela Marisol T. was placed in LTFC at Bethany, her case manager reached out on June 27 and July 3, 2018 to her sister Katherine L. to see if she was interested in unification with Daniela.  GOV-00001515.  Katherine told the case manager that she was "concerned about the financial burden that this could have on her."  *Id.* The case manager told Katherine that "she would look into what types of assistance is offered for sponsors and would get back to her as soon as possible." *Id.*

85.  Daniela Marisol T. alleged in the complaint that ORR has placed arbitrary, expensive, and excessive conditions on Daniela Marisol's release, which

preemptively dissuaded Katherine from applying to be her sponsor.  FAC ¶ 41.  I have reviewed Daniela's allegations (FAC ¶ 41) that unspecified individuals required Katherine L. "to show a $500 per month disposable income in order to support Daniela Marisol's psychological and medical needs" and that "ORR told her she could not qualify to sponsor Daniela Marisol."  I have found no evidence in the case record that these allegations are true.

86.    To the contrary, the case record shows that Daniela's case manager at Bethany's LTFC program worked closely with Katherine to help facilitate her completion of the unification process. *See* GOV-00001522 (7/26/18 note) (attempted call to potential sponsor, left voicemail message); GOV-00001526 (7/31/18 note) (contacted Katherine to check status of her move, left voicemail message); GOV-00001528 (8/3/18 note) (contacted Katherine to discuss unification process; case manager had tried to reach her previously without response; an appointment was set for 8/10 for to conduct sponsor assessment); GOV-00001531 (8/8/18 note) (contacted Katherine to confirm 8/10 appointment to review paperwork sent by *Flores* counsel); GOV-00001532 (8/9/18 note) (discussed need for valid ID to enable background checks); GOV-00001533-34 (8/10/18)(completed sponsor assessment with Katherine during 1.5 hour-long phone call); GOV-00001519 (8/16/18 note) (checked in on progress with the reunification packet; Katherine expressed that she was working with *Flores* counsel to complete it); GOV-00001540 (8/20/18 note) (call from sponsor regarding address verification form); GOV-00001542 (8/21/18 note) (follow-up call regarding ID); GOV-00001544 (8/23/18 note) (confirmed that sponsor had mailed fingerprints); GOV-00001551 (9/5/18 note) (discussion of home study results, Katherine "stated that her brother would mostly likely be able to provide a financial support letter and that she visited a counseling center that will provide services for [Daniela]"); GOV-00001557 (9/13/18 note) (discussion of need for an alternate caregiver for Daniela; Katherine was uncertain whether she would be able to identify someone due to requirements for fingerprinting and background checks, but said she would reach out to her brother to see if he would be willing to be the alternate caregiver); GOV-00001557 (9/14/18 note) (Katherine's brother was unwilling to be the alternate caregiver; a family friend agreed to serve as one); GOV-00001558 (9/14/18 note) (discussion of process and guidelines with alternate care provider); GOV-00001563 (9/19/18 note) (case manager's supervisor contacted sponsor who reported that her identified alternative caregiver was no longer willing to complete the required background checks); GOV-00001563 (9/20/18) (follow-up call regarding identification of alternative caregiver); GOV-00001564 (9/21/18) (possible alternative caregivers identified); GOV-00001565 (9/24/18) (possible alternative caregivers identified by *Flores* team; CA/N check sent to wrong address); GOV-00001566 (9/24/18) (attempted call to *Flores* counsel regarding alternative care provider paperwork); GOV-00001568 (9/26/18) (updated sponsor on reunification process); GOV-00001578 (10/10/18) (discussion of remaining steps of reunification process, and about setting up appointments for Daniela's care); GOV-00001579 (10/12/18 note) (informed sponsor that release request was

completed and that there were two steps of approval to go through before release); GOV-00001583 (10/19/20 note) (informed sponsor of travel arrangements that had been made for Daniela to travel to Minnesota).

87. Daniela did initially express some frustration in sessions with her clinician about the reunification process.  On August 7 and 8, 2018, for instance, Daniela met with her clinician and said



GOV-00001530-31; *see also* GOV-0001521-22 (7/24/18 note) (                    ); GOV-00001552 (9/6/18)

. As Daniela's case manager was working with Katherine on the reunification plan, she gave Daniela regular updates about her sister's progress towards the reunification steps. *See* GOV-00001545 (8/27/18 note) (discussed case status); GOV-00001551 (9/14/18 note) (discussed remaining steps for reunification process); GOV-00001560 (9/17/18 note) (discussed concerns and questions about case); GOV-00001567 (9/26/18 note) (discussed case updates); GOV-00001574 (10/4/18 note) (discussed case updates); GOV-00001578 (10/12/18 note) (discussed reunification plan).

88. Daniela Marisol T. also alleges (*see* FAC ¶ 11) that ORR previously refused to release her to Katherine L. "on the ground that Katherine is or may be unfit due to not having a separate bedroom for [her] and not having adequate income to support [her] medical expenses."   The case file record likewise does not support this allegation.  To the contrary, what Daniela Marisol T.'s case records reflect is that ORR did not make any such fitness determination, and staff worked with Katherine L. to try to assist her with becoming a sponsor who could assure that Daniela's physical and mental health needs were met.  *See*, *supra*, ¶ 86; *see*, *infra*, ¶ 89.

89. Also of significant concern to ORR is that Katherine alleged Daniela had no psychological issues back in their home country and "she was always happy by nature", *see* FAC ¶ 39 and GOV-00001296, although, as noted above, *supra* ¶¶ 15, 24,

. *But cf.* GOV-00001301

Daniela's clinician at Bethany's LTFC program took steps to encourage the relationship between Daniela and her sister, and provide Katherine with the psycho-education she needed in order to be informed about Daniela's mental health needs.  GOV-00001560. On September 17, 2018, Daniela's clinician met via face time with Daniela and her sister to regarding her safety plan. Daniela

*Id.* T

*Id.*

*Id.* The clinician stated

*Id.*

Both sisters expressed an openness to seeking services if they need help. *Id.* Katherine also told Daniela's Child Advocate that she was committed to ensuring that Daniela's mental health needs were met. GOV-00001303-04.

90. ORR is aware that Katherine obtained cash and in-kind community donations in an effort to be better equipped to provide for Daniela Marisol T.'s medical and other needs. GOV-00001293, GOV-00001301. Katherine also moved to her own apartment in order to be able to sponsor Daniela. GOV-00001301.

91. Katherine L. received a positive independent home study evaluation with a recommendation for post-release services and a psychologist working on behalf of Plaintiffs found that it was in Daniela Marisol T.'s best interests to be reunited with her sister. GOV-00001290-99, GOV-00001588-92. Daniela's child advocate also made the recommendation that it would be in her best interests to be reunified with Katherine. GOV-00001300-05.

92. When her case manager called her on October 19, 2018 to discuss her reunification discharge that day and wish her well, Daniela "expressed gratitude to the [case manager] for working on her case and helping her reunify with her sister." *See* GOV-00001584 (10/19/18 note). Later that day, ORR released Daniela Marisol T. from Bethany Christian Services to her Katherine L., in St. Paul, Minnesota. Katherine contacted the case manager to let her know that Daniela arrived safely. GOV-00001584.

93. As shown above, ORR and its grantee care providers worked diligently to release Daniela Marisol T. to a safe adult sponsor without undue delay.


**V.** **ORR Provided Daniela With A Hearing Aid To Treat Her Partial Deafness.**

94. Daniela Marisol T. is partially deaf. FAC, ¶ 37.

95. When she was first placed in ORR's custody and care on August 3, 2017, Daniela Marisol T. did not have a hearing aid.

96. On or about August 4, 2017, a day after being placed in ORR custody at Casa Norma Linda shelter, it was documented in a Medical Incident Form that Daniela Marisol T. had "pain on her right ear that comes and goes." Daniela also stated that "she can't hear from her right ear" and that "when she walks she feels dizzy." GOV-00002750-51. ORR ensured that Daniela received a hearing test that day in the office of pediatrician Dr. ███ R████ in Brownsville, Texas. GOV-00002765. Dr. R████ diagnosed Daniela with deafness (hearing loss) in the right ear. GOV-00002807. On or about August 28, 2017, Dr. R████ recommended that an Ear, Nose and Throat (ENT) specialist be consulted for a loss of hearing evaluation and treatment once Daniela was reunified with her family. GOV-00002809; *see also* GOV-00002806-12 (progress notes and ENT referral), GOV-00002625.

Declaration of Micaela Vergara

97.     The next day on August 29, 2017, Daniela was accepted to Shiloh RTC because her serious mental health needs could not be met at the shelter level of care. On August 30, a Nurse Practitioner in Dr. R█████'s office, ████████, medically cleared Daniela for her new placement at Shiloh and reiterated the recommendation that Daniela consult with an ENT regarding her deafness once reunited with her family.  GOV-00002808.  In an addendum to that note dated August 31, 2017, ████████, PA-C in the same office stated that Daniela should be referred to an ENT "now or once reunified, whichever comes first." GOV-00002809. In Daniela's Admission Assessment at Shiloh, which was dated September 8, 2017, it was noted that she failed her hearing screening in her right ear. GOV-00003124; *see also* GOV-00003277 (right ear clogged) (Initial Medical Exam, 9/27/17).

98.     On or around February 21, 2018, after Daniela Marisol T. had been stepped down to the David and Margaret shelter she was seen by Dr. D██████ to establish care. GOV-00003068.  Daniela was evaluated by Dr. S███, an Ear, Nose and Throat (ENT) specialist, on February 28, 2018 for an evaluation. *Id.* She was referred to an audiologist for an audiological evaluation on March 14, 2018, the results of which Daniela reviewed with Dr. S███ in a follow-up appointment on March 21. Daniela had an appointment with the audiologist for a hearing aid consult on April 4, 2018. *Id.*  She was then measured for a hearing aid on May 19, 2018, and a hearing aid was ordered on her behalf. GOV-00003068, GOV-00001360.

99.     While Daniela Marisol T. was placed at Bethany Christian Services in Kentwood, Michigan, the hearing aid was ready, and Daniela Marisol T. received the hearing aid. FAC ¶ 40.  However, a medical note indicated that Daniela "[h]as hearing aids [but] refuses to wear them."  GOV-00001779, GOV-00001778-83 (Medical Passport for the Michigan Department of Human Services, dated 8/21/18).

100.    Thus, Plaintiffs are incorrect to allege, FAC ¶ 40, that "ORR declined to treat her deafness . . . ."  GOV-00003068.

## VI.      Daniela Marisol T.'s UAC Case File

101.    In my work as a Federal Field Specialist Supervisor, I have become familiar with how ORR and its grantee care providers create and maintain case files of unaccompanied alien children (UAC case files).  In connection with my employment responsibilities, I have viewed many UAC case files and UAC case file documents.

102.    In accordance with ORR policies, ORR and its grantee care providers maintain comprehensive, accurate, and up-to-date case files as well as electronic records on unaccompanied alien children.  *E.g.*, ORR Guide § 5.6.2.  These UAC case files include a wide variety of information concerning an individual UAC, including: "the child's name, alien number, date of services, and Federal fiscal year. The file documents all services provided, information about the child or youth's progress, barriers to the child's progress, and the outcome of the case."  ORR Guide § 5.6.2. As further detailed in the ORR Guide, UAC case files include UAC information,

admission documents, legal information, assessments (including medical records containing statements made for and reasonably pertinent to medical diagnosis or treatment, and describing medical history, past or present symptoms or sensations, the symptoms' inception, or their general cause), educational services, case management records, clinical services, incident reports, discharge/exit information. *See id.*

103.   Also in accordance with ORR policies, ORR and its grantee care providers have procedures to maintain, protect, and review UAC case files for completeness and accuracy.  ORR Guide § 5.6.3.

104.   UAC case files are made at or near the time by—or from information transmitted by—someone with knowledge; they are also kept in the course of a regularly conducted activity.  Making UAC case files is a regular practice of the operations of ORR and its grantee care providers.

105.   The UAC case file (or excerpts thereof) Bates stamped GOV-00001218 through GOV-00003990 is a true and correct copy of (or excerpts from) the UAC case file of Daniela Marisol T., which was created and maintained in accordance with the procedures described above.

106.   I declare under penalty of perjury that the foregoing is true and correct.

Dated:   September 18, 2020

HOUSTON, TEXAS

_____
Micaela Vergara