UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS R. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX AZAR, Secretary of U.S. Dep't of Health and Human Services, *et al.*, <br><br> Defendants. | Case No.: 2-18-CV-05741 DMG (PLA) <br><br> DECLARATION OF JAMES S. DE LA CRUZ REGARDING CLASS REPRESENTATIVE SIRENA P. |

## I. Introduction

1. I, James S. De La Cruz, under 28 U.S.C. § 1746, declare, under penalty of perjury, as follows. If asked to testify, I would testify under oath as follows.

2. The statements in this declaration are based on my personal knowledge, information acquired by me in the course of performing my official duties (such as my knowledge of ORR policies and procedures, including the ORR Guide[1]), and my review of HHS records and information contained therein (including the case file for Sirena P.).

3. My current position and experience are described in the Declaration I have submitted regarding Plaintiff, Lucas R.

## II. Placement and Unification Efforts for Sirena P.

### A. Sirena P.'s Journey from Mexico to the United States, Initial Placement at Southwest Key Campbell, and Hospitalizations

4. As Plaintiffs' experts Drs. Cruise and Rasmussen have explained, "UACs suffer from a number of specific mental health problems" arising out of "adversities and traumatic event

---

[1] https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied

exposures," to include events "pre-migration" to the United States. Expert Report of Drs. Cruise and Rasmussen at 5. Sirena P. faced such adversities and traumas prior to entering ORR custody. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pl.'s Responses to Df.'s Amended 1st Set of Reqs. for Admission to Pl.'s ("Sirena P. RFA Responses") at 70:27-28; Eduardo P. Dep. at 19:5-13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Eduardo P. Dep. at 19:21-23. ▮▮▮▮▮▮▮▮▮▮ Id. at 30:16-17.

5. ▮▮▮▮▮▮▮▮▮▮ Sirena P. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at 58:3-4, 57:17-18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at 58:5-14; Eduardo P. Dep. at 40:22-41:2. ▮▮▮▮▮▮ Sirena P. RFA Responses at 59:23-27; Eduardo P. Dep. at 41:6-8. ▮▮▮▮▮▮▮▮▮▮ Eduardo P. Dep. at 31:24-32:2. ▮▮▮▮▮▮ Id. at 32:25-33:1. When she entered into ORR custody, Sirena P. had no established treatment history or plan from which to draw to meet her needs.

6. On or about April 8, 2018, Sirena P. left her home in Mexico along with her two siblings and aunts and headed for the United States-Mexico border. GOV-00013750, GOV-00013742. Sirena P.'s father testified ▮▮▮▮▮▮▮▮▮▮▮▮ Eduardo P. Dep. at 25:19-20. Sirena P. told ORR that her brother ▮▮▮▮▮▮ GOV-00015180. Sirena P. and her two siblings arrived in the

United States on or about April 11, 2018. GOV-00013742, GOV-00013750. ORR took custody of Sirena P. at the Southwest Key Campbell ("SWK") shelter the evening of April 14, 2018. GOV-00013742.

7. The following morning, on April 15, 2018, ORR conducted an Initial Intakes Assessment of Sirena P. in Spanish. GOV-00013750-52. During the interview, Sirena P. reported no physical or medical problems. *Id.* Sirena P. reported that she had never seen a doctor or stayed in a hospital. GOV-00013751. Sirena P. denied having any prior mental health issues, history of self-harm, or current thoughts of self-harm. *Id.* Sirena P. also told the interviewer she felt safe in ORR's custody and that she did not have any fears about being harmed by others or about her housing arrangement at SWK. GOV-00013751.

8. As part of the admissions process, Sirena P. provided a signed acknowledgment that she had received a presentation on her legal rights as a UAC, to include her right to access counsel. GOV-00015101. Sirena P.'s allegation that ORR did not provide her with legal representation for her release or stay at Shiloh is unfounded. FAC, ¶ 85. Sirena P. was not only aware of and apprised of her right to counsel, she actually exercised such rights. Sirena P. worked with an attorney to prepare a declaration in connection with this litigation while she was being treated at Shiloh. Lucas R._Experts_111600-01.

9. The same day as her initial intake interview, Sirena P. gave SWK staff a signed acknowledgement of SWK's Spanish and English language complaint procedure. GOV-00014383-84. The procedure stated the shelter's "intent on providing quality care" and invited Sirena P. to "share with us any complaints or grievances you may have during your stay." *Id.* The procedure further provided instructions regarding the written submission of grievances to the Program Director or Assistant Program Director. *Id.*

10. Sirena P.'s case file contains no evidence that she ever filed a complaint while housed at either SWK or Shiloh. To be clear, though she had access to and actually used counsel, Sirena P. never filed any written complaints regarding any aspect of her treatment by ORR or its contractors. In fact, Sirena P. provided positive feedback regarding ORR. With respect to her stay at SWK, Sirena P. testified "she didn't want to leave" that facility because she "had friends" there and "had gotten used to being there." Lucas R._Experts_11600. Sirena P. also stated that she "liked the shelter [(SWK)] much more than Shiloh" and that she "liked the staff, my case manager, [and] my counselor" at SWK. Lucas R._Experts_11601.

11. Sirena P. reported having no health issues during initial sessions with her SWK clinician. During an April 17, 2018 session, Sirena P. "reported having a stable life and relationship with her maternal grandparents and siblings in Mexico." GOV-00014399. She also denied any history of mental health issues, suicidal ideations, or thoughts of self-harm. *Id.*

12. On April 21, 2018, SWK staff observed Sirena P. a█████████████ █████ GOV-00014401. SWK staff brought Sirena P. to a clinician. *Id.* Sirena P. then revealed ███████████████████████ *Id.* Sirena P. told her clinician about her ███████████████████████ while living in Mexico. *Id.* Sirena P. also revealed that ███████████████ *Id.* Sirena P. reported these ███████████████████████ *Id.* ███████████████████████ The clinician conducted ███████ ███████████████████████ GOV-00015040. The clinician instructed Sirena P. ███████████ ███ GOV-00014401. By the end of the session, Sirena P. ███████████ *Id.*



13. On April 24, 2018, SWK staff reported that Sirena P. ███ ███ GOV-00014402. Sirena P. ███ ███ Id. Sirena P. told her clinician ███ ███ Id. Though she was aware she would soon be reunifying with her parents, Sirena P. still reported ███ Id. In this regard, Sirena P. told her clinician ███ Id. Sirena P. reported ███ Id. By the end of the session, with the clinician providing active listening, validation, and support, Sirena P. reported ███ Id. The same day, the clinician conducted a family counseling session with Sirena P.'s father and mother. GOV-00014403. During a family session the following day, Sirena P. and her father discussed ███ GOV-00014404. Eduardo expressed gratitude to SWK for caring for his daughter. Id.

14. Sirena P.'s mental health continued to deteriorate. On April 27, 2018, Sirena P. again ███ She told her clinician that ███ GOV-00014406. The clinician instructed Sirena P. on breathing exercises ███ Id. Sirena P. also mentioned ███ Id. ███ Id.

15. On May 2, 2018, Sirena P. ███ Sirena P. ███ GOV-0014408. Sirena P. told her clinician ███ Id. The clinician reminded

5
Declaration of JAMES S. DE LA CRUZ

███████████████████████████████████████████████ *Id.*
Sirena P. ███████████████████████████████████ *Id.* Sirena P. and her clinician next called Eduardo to discuss a safety plan for care after reunification. *Id.*

16. ███████████████████████████████████ Sirena P. was hospitalized during the night of May 3, 2018. GOV-00014047. The following day, Sirena P.'s clinician notified Eduardo. Eduardo did not object to his daughter's hospitalization, but rather expressed gratitude for the update and asked to be kept informed. GOV-00014410.

17. At the hospital, Sirena P.'s doctor diagnosed her as ███████████████ ███████████████████████████████████████████████ GOV-00014653. During her stay in the hospital, Sirena P. revealed that ███████████████████████████████████████ ██████████████ *Id.* She also reported ████████████████████ ███████████████████████████████████████████████ *Id.* The doctor prescribed Prozac to treat Sirena P. GOV-00014671.

18. ORR released Sirena P.'s siblings into Eduardo P.'s custody on May 9, 2018, GOV-00015181, long after ORR learned of Sirena P.'s mental health struggles. Given the seriousness of Sirena P.'s condition, she remained in ORR custody. There was no discriminatory intent as Sirena P. implies at paragraph 84 of Plaintiffs' First Amended Complaint ("FAC"); rather Sirena P.'s care and wellbeing were at the forefront of ORR's approach. *See* ORR Guide § 3.4.8 (for their own safety, "unaccompanied alien children who have serious physical or mental health issues . . . may not be transferred or moved until they have been medically cleared by a physician or ORR is consulted.").

19. Sirena P. engaged ███████████████████████████████

May 10, 2018. ORR's records include ███████████████ GOV-00014449-GOV-00014452. *See also* GOV-00014580 (Minor ██████████ on 5/12/2018; As of 5/17/2018 report that minor has ██████████ since her arrival from hospital); GOV-00014424 (██████ on 5/12/2018 minor ██████ On 5/14/2018, minor ██████ GOV-00014435 (On 5/16/2018 minor had incident where she ██████████); GOV-00014574 (5/23/2018 taken to office as ██████████); GOV-00014438 (On 5/24/2018 taken to clinician's office, after ██████████; GOV-00014421 (5/28/2018 ██████; GOV-00014439 ██████. Sirena P. was re-admitted to the hospital on May 28, 2018, based on ██████████ GOV-00014452

20. Sirena P. alleges her "mental health needs are fueled solely by the agony she feels as a result of her ongoing separation from her parents" while in ORR custody. FAC ¶ 79. That assertion is not supported by the record. As discussed above, ██████████ Sirena P. struggled ██████████ *See, e.g.*, GOV-00014401. Sirena P.'s circumstances in Mexico led to that. Further, while in ORR custody, Sirena P. expressed some hesitation about being released to her father-sponsor. GOV-0014408. ORR provided Sirena P. with the care and support she needed. Sirena P. testified that she "liked"

SWK, to include the staff, her case manager, and counselor. Lucas R._Experts_11601-02.

21. ███████████████████████████████████████ ORR concluded that Sirena P. needed intensive treatment that she could only find at a residential treatment center, not at the SWK shelter or by living with her family. Given Sirena P.'s condition and the threat of immediate harm she presented to herself, and upon the recommendation of a licensed psychiatrist and the approval of the ORR Federal Field Specialist, GOV-00014426-27; GOV-00013748, ORR transferred Sirena P. to the Shiloh Treatment Center on June 4, 2018. GOV-00013742.



███████████████████████████ Eduardo P. Dep. 29:25-30:1-2. ███████████

███████████████████████████████████████ Id. at 29:7-9 (███████

███████████████████████████████████████

███████████████████████████████████████ Id. at 29:2-6.

### B. Shiloh Treatment Center

22. Sirena P. was admitted to the Shiloh Treatment Center on June 4, 2018. GOV-00013742. Sirena P.'s June 5 Shiloh admission assessment recognized her need to be "████████████████████████████████████████████████████████████" GOV-00013747. According to her initial assessment, "[d]ue to [Sirena P.'s] current mental and emotional function, the least restrictive environment necessary to care for her needs is in a highly structured residential subacute treatment setting" such as Shiloh. GOV-00013748.

23. Sirena P. received extensive treatment at Shiloh, including "behavior management, educational services, and weekly group counseling." GOV-00013935. While Sirena P. ████████████████████████████████ she eventually "met her treatment

goals" "[f]ollowing months of progress." *Id.* Following treatment which included medication, and upon discharge to her father-sponsor Eduardo P. on September 16, 2018, Sirena P.'s "thinking was clear and organized" ███████████████ GOV-00013936.

24. Plaintiffs allege that Sirena P. "struggle[d] with anxiety, depression, and hopelessness" at Shiloh and that she became "increasingly anxious" there. FAC, ¶¶ 82-83. Actually, her case file indicates that Sirena P.'s Global Assessment of Functioning ("GAF") scores improved at Shiloh. Her initial, June 5, 2018 GAF score was 35 on a scale from 0-100.[2] GOV-00013747. By June 26, her GAF score improved to 50. GOV-00013772. When ORR released Sirena P. into her father-sponsor's custody on September 16, Sirena P.'s GAF score was 75. GOV-00013936.

25. At various times, Sirena P. reported favorably on the conditions at Shiloh. During her June 5 initial assessment, Sirena P. confirmed she felt safe in her current room assignment. GOV-00013864. Sirena P. reiterated the fact that she felt safe in her Shiloh accommodations again on June 25, GOV-00013867, July 17, GOV-00013870, and August 16, GOV-00013873. All of this is inconsistent with Sirena P.'s allegations that the conditions at Shiloh exacerbated her mental health condition. FAC, ¶ 83. Shiloh provided Sirena P. with essential care at a critical time.

### C. ORR Worked To Release Sirena P. To A Safe Adult Sponsor

26. The family unification process begins the day a child enters ORR's legal custody and care. *See* ORR Guide § 2.2. ORR and its grantee care providers made prompt and continuous efforts to unify Sirena P. with a safe adult sponsor without unnecessary delay, as

---

[2] International Ass'n of Analytical Psychology, *Global Assessment of Functioning (GAF) Scale,* https://iaap.org/wp-content/uploads/2020/01/GAF-Scale.pdf.

further elaborated below. Additionally, as elaborated below, during Sirena P.'s time in ORR's custody and care, ORR and its grantee care providers ensured that the child was placed in the least restrictive setting that was in Sirena P.'s best interest.

27. As noted, Sirena P. entered ORR custody on April 14, 2018. GOV-00013742. On April 26, 2018, ORR completed an initial assessment of Sirena P.'s potential sponsor, her father Eduardo P. GOV-00015117-27. Sirena P.'s potential sponsor was promptly referred for home study on May 3, a caseworker conducted a home visit on May 18, and completed an initial report on May 23. GOV-00015177. The home visit occurred between Sirena P.'s two hospitalizations.

28. While Eduardo received a positive sponsor recommendation, GOV-00015206, the report noted that he needed to "make steps to ensure[] health care services" prior to Sirena P.'s release. GOV-00015208. The positive sponsor recommendation was premised on Eduardo's agreement to "comply with all [post-release] recommendations" and for Sirena P. to "continue taking her medicine." Id.

29. With Sirena P. receiving crucial treatment at Shiloh, ORR requested a follow-up home visit on July 6, 2018 in view of Sirena P.'s ███████████ which was now categorized as a TVPRA Mandatory Home Study based on disability. GOV-00014074. The follow-up visit occurred on July 17 and a report issued on July 24. Id.; GOV-000147048. Eduardo again received a positive recommendation premised on his willingness to abide by ORR's post-release recommendations, including the need "to administer medication once released" and to obtain "refill[s] of medications" as needed. GOV-000147048.

30. After Sirena P. finished her course of treatment at Shiloh, ORR released her into Eduardo's custody on September 16, 2018. GOV-00013935. At discharge, Sirena P. was taking

Wellbutrin XL (Bupropion XL) with instructions to "not stop taking or change medication without a physician's order" and to closely monitor her condition. GOV-00013936-37.

31.  As shown above, ORR and its grantee care providers worked diligently to release Sirena P. to a safe adult sponsor without undue delay. Sirena P.'s stay at Shiloh related to stabilizing her mental health to facilitate her eventual release to her sponsor-father.

### D. ORR's Efforts to Care For Sirena P. in the Least Restrictive Setting

32.  Sirena P. entered ORR custody on April 14, 2018. GOV-00013742. Beginning on April 21, Sirena P. exhibited significant mental health issues. Those problems led to two separate hospitalizations in May 2018. It was not until June 4, more than a month-and-a-half after Sirena P. entered ORR custody, that she was transferred to Shiloh. The transfer was due to Sirena's individual mental health condition, which, despite the shelter's efforts, was too serious to be treated at SWK, and, as indicated in her records and noted above, ultimately improved during her stay at Shiloh.

33.  While Sirena P. received treatment at Shiloh, and consistent with section 1.4.2 of ORR's UAC Policy governing restrictive setting placements, ORR reviewed Sirena P.'s status every thirty days in order to ensure her placement was appropriate given her condition. *See* GOV-00013733-34 (Notice of Placement in a Restrictive Setting dated June 21, 2018); GOV-00013737-38 (Notice of Placement in a Restrictive Setting dated July 19, 2018); GOV-00013724-25 (Notice of Placement in a Restrictive Setting dated August 27, 2018). On review of Sirena P.'s file, Defendant's expert Dr. Donna Londino concluded Sirena P.'s length of stay at Shiloh was appropriate given her medical circumstances. Londino Report at 59:25-26. Contrary to Sirena P.'s allegations, there was no undue delay her case. FAC, ¶ 84. Ultimately, after her condition improved, ORR released Sirena P. into her father-sponsor's custody. ORR released Sirena P. consistent with paragraphs 14-17 of the *Flores* Settlement Agreement and section

235(c)(2)(A) of the Trafficking Victims Protection Act, 8 U.S.C. § 1232(c)(2)(A), which require ORR to confirm the sponsor's suitability and the conditions under which the UAC will live on release from ORR's custody, the latter being of particular concern to ORR given Sirena P.'s mental health care needs.

### E. Licensed Medical Professionals Recommended and ORR Custodians Authorized Medications for Sirena P.

34. ORR provided written consent to medicate Sirena P. to the hospital that provided her mental health care. GOV-00014598. After her initial hospitalization, Sirena P.'s doctor prescribed Prozac. GOV-00014663. On June 4, 2018, simultaneous to her transfer to Shiloh, ORR gave Shiloh written consent to provide Sirena P. with any necessary medical care and medications. GOV-00013698. A licensed psychiatrist prescribed Sirena Wellbutrin (Bupropion XL). As described above, Sirena P.'s condition improved at Shiloh, in conjunction with taking the prescribed medications, leading to her eventual release to her father Eduardo P.

35. Sirena P. alleges that ORR gave her psychotropic drugs without the informed consent of Eduardo or other family members. FAC, ¶ 80. At all relevant times, Sirena P. was in ORR custody, which acted as her guardian with respect to her medical care. ORR authorized the medications at issue. Further, as noted above, ███████████████████████████████ ███████████████████████████████ Eduardo P. Dep. at 29:2-6. ███████████████ ███████████████████████████████ *Id.* at 29:5-8.

36. Sirena P. alleges that Sirena P.'s case file indicates that her father did not agree to use of psychotropic medications. A Service Plan Review dated June 27, 2018 reports that on June 12, 2018, Sirena P., her clinician, her father, and her father's wife discussed the "[s]ervices being provided at Shiloh" and "psychotropic medication [was] discussed and reviewed." GOV-

00013807. "No issues were noted" and the "[f]amily responded well and appeared supportive of [Sirena P.'s] needs." *Id.* Nevertheless, Sirena P. alleges that Shiloh gave her psychotropic medication without parental or familial consent. FAC ¶ 82.

37. Sirena P. also implies that the drug Wellbutrin (Bupropion XL) increased her levels of "anxiety, depression, and hopelessness." FAC, ¶ 82. Again, Sirena P.'s condition improved at Shiloh. Further, with respect to medications, Sirena P. ███████████ ███████████████████████████████████ Eduardo P. Dep. at 39:3-4. Contrary to Sirena P.'s allegations of harm, her father Eduardo P. testified that ████ ██████████████████████████████ Eduardo P. Dep. at 38:22-23. As Eduardo explained further, ███████████████████████████████████ ██████████████ *Id.* at 38:24-25. Defendants' expert Dr. Roy Lubit opined that ORR's use of psychotropic medications was appropriate. Lubit Report at 5-8. Regardless, Shiloh's current policies require parental consent both for placement and use of psychotropic medications.

### F. Sirena P.'s UAC Case File

38. In my work with ORR, I have become familiar with how ORR and its grantee care providers create and maintain case files of unaccompanied alien children (UAC case files). In connection with my employment responsibilities, I have viewed many UAC case files and UAC case file documents.

39. In accordance with ORR policies, ORR and its grantee care providers maintain comprehensive, accurate, and up-to-date case files as well as electronic records on unaccompanied alien children. *E.g.*, ORR Guide § 5.6.2. These UAC case files include a wide variety of information concerning an individual UAC, including: "the child's name, alien number, date of services, and Federal fiscal year. The file documents all services provided, information about the child or youth's progress, barrier's to the child's progress, and the outcome

of the case." ORR Guide § 5.6.2. As further detailed in the ORR Guide, UAC case files include UAC information, admission documents, legal information, assessments (including medical records containing statements made for and reasonably pertinent to medical diagnosis or treatment, and describing medical history, past or present symptoms or sensations, the symptoms' inception, or their general cause), educational services, case management records, clinical services, incident reports, and discharge/exit information. *See id.*

40. Also in accordance with ORR policies, ORR and its grantee care providers have procedures to maintain, protect, and review UAC case files for completeness and accuracy. ORR Guide § 5.6.3.

41. UAC case files are made at or near the time by—or from information transmitted by—someone with knowledge; they are also kept in the course of a regularly conducted activity. Making UAC case files is a regular practice of the operations of ORR and its grantee care providers.

42. The UAC case file (or excerpts thereof) Bates stamped GOV-00013693 through GOV-00014370 and GOV-00014371 to -00015218 is a true and correct copy of (or excerpts from) the UAC case file of Sirena P. which was created and maintained in accordance with the procedures described above.

43. I declare under penalty of perjury that the foregoing is true and correct.

Dated:   DATE: September 22, 2020
         CITY: Washington D.C.

_____
JAMES S. DE LA CRUZ