# Exhibit 58

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

I, [redacted], declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about these facts.

2. I am 16 years old. I came by myself to the United States from Honduras on April 19, 2017. I was fleeing violence and hoped I would live a better life with my cousin here. I have been detained at three different ORR facilities. I am currently detained at Northern Virginia Juvenile Detention Center (NoVA) in Alexandria, Virginia.

3. When I first arrived at the border, I was taken to a Southwest Key shelter in Phoenix, Arizona, where I stayed for approximately two days.

4. One morning at 4:00am, officials came and took me from the shelter and transferred me to Yolo County Juvenile Detention Center (Yolo) in California. I didn't know why the staff was forcing me to leave the shelter; I hadn't caused any trouble when I was there. No one told me where I was going or why. The staff just told me to pick up my things and go. At first, I thought I was going to see my family because they didn't tell me what was happening or where I was going, but they just took me to Yolo instead. I asked the staff why I had been transferred. I wanted to challenge the transfer and tell the staff that I didn't want to be at Yolo, but I was not given any prior notice of the transfer or any opportunity to challenge the transfer. I still don't know why I was transferred to Yolo.

5. While at Yolo, I did not receive a thirty-day review of the status of my detention. I was not provided a written or oral explanation of why I continued to be detained there. I was never told whether I had the right to challenge my detention.

6. Being detained at Yolo was a physically and emotionally devastating experience that I still think about. I was subjected to physical abuse from staff on countless occasions. The staff hurt me so many times, I can't even remember the details of every incident. The staff were really rough with me. They would throw me on the ground, and my body would be bruised afterward. On five different occasions, the staff shackled my





Plaintiff's Confidential
Personal Information/Confidential

arms behind my back for thirty minutes each time. It was very painful. One time, an officer sprayed me with pepper spray from three feet away, and I couldn't see for a long time. Everything was white. When I went to the nurse, the nurse refused to help me. The nurse did not even give me water to wash the spray out of my eyes. I tried to use a little bit of water from the sink in my bedroom, but there wasn't enough water to wash my eyes out. The pain lasted for about forty minutes.

7. After being detained at Yolo for six or seven months, I was transferred to NoVA in November 2017. I was told that I was being transferred because I had been behaving well, and I would be able to go outside at NoVA. Like my transfer from shelter to Yolo, when I was transferred to NoVA, I was not given prior notice of the transfer or any opportunity to challenge the transfer. The staff me that I continue to be detained here because of my behavior. I was never told whether I had the right to challenge my detention.

8. At NoVA, I have been in constant fear of my life. I have been subjected to physical abuse from staff and other youth at NoVA. I have received death threats from other youth. For example, some of the other youth have threatened to hurt me if I refuse to join them in harassing or harming other youth. I have told the staff about these threats and have requested the staff to stay near me, but the staff have not done enough to protect me. On one occasion, a staff member physically assaulted me and hurt my shoulder and thumb. The staff scream at me and try to provoke me so that I will get in trouble.

9. I have also seen staff members harm other youth. One time, a staff member punched a youth with a mental disability in the eye in an attempt to control the youth. Afterward, the staff member wrestled the youth to the floor. If I had been in that youth's shoes, I would not have wanted to have been treated that way. I don't think staff should treat youth with mental disabilities that way. I also know that a number of other youth bully a youth with mental disabilities. They hit him often, and the staff refuse to move him to another unit away from the youth who bully him. I don't like that the bullies hurt him. I'm afraid I could be bullied and physically assaulted too.

10. In November 2017, my cousin has applied to be my sponsor so that I can live with him. He is like a father to me and we speak regularly. He usually visits me at NoVA every two weeks. My mom, who lives in Honduras, wants my cousin to be my sponsor. My cousin has done everything the government has asked of him, including providing fingerprints and receiving a positive home study report. The home study occurred several months later than it was supposed to. The government and staff have not communicated clearly about the reunification process. I don't know whether my cousin knows what's going on with the process. The reunification process is taking too long. I feel like the government has delayed my release for no legitimate reason.

11. At Yolo, I took an antidepressant, which I was told would help control my depression and anger. At NoVA, I continue to take that antidepressant in addition to two medications that are supposed to help me concentrate in class. I don't want to take any more medications because they don't help me. I have told the staff that I want to stop taking the medications, but they tell me I can't stop taking them. They tell me that if I stop taking the medications, they will write a bad report about me. As far as I know, the staff did not ask my cousin for permission to give me the medications.

12. I try hard to be on my best behavior and avoid trouble. When I am released from detention, I plan to get a good education and live with my cousin.

13. I really want to live with my cousin. I know I would feel happier and safer if I were living with him.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 6th day of June, 2018, at Alexandria, Virginia.

[redacted]

[redacted]





Plaintiff's Confidential
Personal Information/Confidential

# CERTIFICATE OF TRANSLATION

I, MARIA IGNACIA KLOPF, hereby certify that I am proficient in both Spanish and English, and that I accurately translated the foregoing statement and read it back to [redacted] in its entirety in Spanish on June 6, 2018.

Maria Ignacia Klopf

Maria Klopf