1  CENTER FOR HUMAN RIGHTS
   & CONSTITUTIONAL LAW
2  CARLOS R. HOLGUÍN (90754)
   256 South Occidental Boulevard
3  Los Angeles, CA 90057
   Telephone: (213) 388-8693
4  Email: crholguin@centerforhumanrights.email

5  *Attorneys for Plaintiffs*

6  *Additional counsel listed on following pages*

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12  LUCAS R., et al.,                    Case No.  2:18-CV-05741 DMG PLA

13              Plaintiffs,              **STATEMENT OF UNCONTROVERTED
                                         FACTS AND CONCLUSIONS OF LAW IN**
14         v.                            **SUPPORT OF PLAINTIFFS' MOTION FOR
                                         PARTIAL SUMMARY JUDGMENT**
15  ALEX AZAR, et al.,
                                         Date:      Dec. 11, 2020
16              Defendants.              Time:      3:00 p.m.
                                         Place:     Courtroom 8C, 8th Floor
17
18                                       Complaint Filed: June 29, 2018
19                                       Pretrial Conference Date: March 2, 2021
                                         Trial Date:  March 30, 2021
20                                       Judge: Hon. Dolly M. Gee
21
22
23
24
25
26
27
28

CooleyLLP
ATTORNEYS AT LAW
LOS ANGELES

**REDACTED VERSION OF DOCUMENT
TO BE FILED UNDER SEAL**

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
DAISY O. FELT (307958)
JONATHAN P. MULLIGAN (CAL RLSA NO. 803383)
MONICA J. JULIAN (265075)
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email:  hscooper@ucdavis.edu
          ccwhite@ucdavis.edu
          dofelt@ucdavis.edu
          jmulligan@ucdavis.edu
          mjulian@ucdavis.edu

NATIONAL CENTER FOR YOUTH LAW
LEECIA WELCH (208741)
NEHA DESAI (CAL. RLSA NO. 803161)
POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email:  lwelch@youthlaw.org
          ndesai@youthlaw.org
          pjuneja@youthlaw.org
          fpitts@youthlaw.org
          mwroe@youthlaw.org
          madamson@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
BRENDA SHUM *(ADMITTED PRO HAC VICE)*
CRYSTAL ADAMS (308638)
1313 L St. NW, Suite 130
Washington, DC 20005
Telephone: (202) 868-4785
Email:  bshum@youthlaw.org
          cadams@youthlaw.org

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  COOLEY LLP
   SUMMER J. WYNN (240005)
2  MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
   REBECCA L. TARNEJA (293461)
3  ALEXANDRA R. MAYHUGH (300446)
   JAYME B. STATEN (317034)
4  1333 2nd Street, Suite 400
   Santa Monica, CA  90401
5  Telephone:   (310) 883-6400
   Facsimile:   (310) 883-6500
6  Email:  swynn@cooley.com
            mmcmahon@cooley.com
7            rtarneja@cooley.com
            amayhugh@cooley.com
8            jstaten@cooley.com

9  *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Pursuant to Local Rule 56-1, Plaintiffs hereby submit this Statement of Uncontroverted Facts and Conclusions of Law in Support of their Motion for Partial Summary Judgment. The evidence cited references Exhibits attached to the Declaration of Alexandra R. Mayhugh, all of which were filed concurrently with Plaintiffs' Motion for Partial Summary Judgment.

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 1. | The harm that detention causes for children is uniformly recognized by scholars and researchers. | Ex. 133[1] [Joanne M. Chiedi, *Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody*, OFFICE OF INSPECTOR GENERAL (Sept. 2019) ("Office of Inspector General Mem.")] at 1991; Ex. 56 [Expert Report of Drs. Ryan Matlow and Nancy Ewen Wang ("Matlow & Wang Expert Rep.")] at 1381–86; Ex. 51 [Expert Report of Drs. Keith Cruise and Andrew Rasmussen ("Cruise & Rasmussen Expert Rep.")] at 1314 ("[l]onger time in detention is associated with increasing distress and provides more opportunity for increasing mental health and behavioral problems"); Ex. 53 [Expert Report of Judge Leonard Edwards ("Edwards Expert Rep.")] at 1329–33; Ex. 55 [Expert Report of Dr. Donna Londino ("Londino Expert Rep.")] at 1370, ¶ 56 ("correlated negative adjustment responses to the length of stay are inherent to the UAC population" and "the development of symptoms in |

---

[1] All exhibits cited are attached to the Declaration of Alexandra R. Mayhugh in Support of Plaintiffs' Motion for Partial Summary Judgment filed concurrently herewith.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| | | response to the stressor of prolonged stay is concerning"); Ex. 52 [Expert Report of Dr. Ilze Earner ("Earner Expert Rep.") at 1318, ¶ 53 (reporting Office of Refugee Resettlement ("ORR") staff observations that children with longer lengths of stay "did show signs of deteriorating mental health"); *see also* Ex. 135 [Julie M. Linton et al., *Detention of Immigrant Children*, PEDIATRICS (Mar. 13, 2017)] at 1999 ("[E]xpert consensus has concluded that even brief detention can cause psychological trauma and induce long-term mental health risks for children.") |
| 2. | "According to facility staff, longer stays resulted in higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation." | Ex. 133 [Office of Inspector General Mem.] at 1991 |
| 3. | Research shows that even a short amount of time in detention is seriously harmful to children, particularly those who have already experienced trauma in their home countries or during their journey to the United States. | Ex. 56 [Matlow & Wang Expert Rep.] at 1380–81, 1383, 1389 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

2

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 4. | Stress from detention can have long-term effects in children. | Ex. 56 [Matlow & Wang Expert Rep.] at 1380–85 ("Chronic and prolonged stress exposure alters hormonal and physiological systems, with long-term consequences for neurological development and immune functioning."); *see* Ex. 27 [Deposition Transcript of Shaanan Meyerstein ("Meyerstein Dep. Tr.")] at 303:16–25[2] |
| 5. | Class Representative Gabriela N. experienced verbal abuse and harassment and suicidal ideation while in the custody of ORR. As a result of her suicidal ideation, she was hospitalized on August 3, 2017. | ECF No.[3] 62-2 [Decl. of Gabriela N., Feb. 2018] ¶ 9 ("The staff yell at us all the time. The staff don't really care about us; they live totally different lives from us."); ECF No. 62-3 [Decl. of Gabriela N., Jun. 8, 2018] ¶ 7 ("The staff [were] so mean; they tease[d] me an tr[ied] to embarrass me.") ECF No. 50-32 [Decl. and Verified Report of Dr. Amy Cohen, M.D. In Support of Preliminary Injunction Re: Plaintiff Gabriella N.] at 21 ██████████ ███████████████████ ██████████████████ ECF No. 62-18 at 2 ("Minor disclosed suicidal thoughts on 8/02/2017, related to increased frustration over her case as well and extended stay in the program.") |
| 6. | Class Members have been physically abused in ORR custody. | Ex. 6 [Defendants' Second Set of Responses to Plaintiffs' Requests for Admission ("RFA 2nd Set")] RFA No. 43 at 516–17 |
| 7. | Class Members have been sexually abused in ORR custody. | Ex. 6 [RFA 2nd Set] Nos. 44, 53–55, 58 at 517–18, 522–26 |

[2] All citations to deposition transcripts refer to the original transcript pagination.
[3] All citations to ECF reference page numbers as marked by EFC.

CooleyLLP
Attorneys At Law
Los Angeles

3

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 8. | While in ORR custody, children experience separation from their parents, siblings, grandparents, and other family members. | Ex. 5 [Defendants' First Set of Responses to Plaintiffs' Requests for Admission ("RFA 1st Set")] Nos. 15–17 at 475–79 |
| 9. | Separating children from their family is inimical to their well-being. | Ex. 56 [Matlow & Wang Expert Rep.] at 1380–83; *id.* at 1389 ("In our interviews with children, many have exhibited symptoms of sadness, despair, helplessness, and chronic anxiety and worry directly related to . . . their separation from family and community. . . .") |
| 10. | In February 2018, ORR detained Plaintiff Lucas R. at the Hacienda del Sol facility ("HdS") in Youngtown, Arizona. | ECF No. 40-1 [HdS Admission Record] at 2 |
| 11. | On February 20, 2018, ORR hospitalized Lucas R., purportedly due to suicidal ideation. According to the emergency room report, Lucas R. had "[suicidal ideation] x8 days since being moved to southwest key . . . 'and being removed from family.'" | ECF No. 40-3 [Banner Thunderbird Medical Center Emergency Room Report] at 2 |
| 12. | The emergency room report from Lucas R.'s February 20, 2018 admission further states that Lucas "denie[d] [suicidal ideation] at this time [and] just state[d] he is sad and depressed being away from his family in Guatemala [sic]." | ECF No. 40-3 [Banner Thunderbird Medical Center Emergency Room Report] at 2 |

CooleyLLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 13. | Upon being returned to HdS, a nurse practitioner placed Lucas R. on sertraline (brand name: Zoloft), a psychotropic drug with severe potential side effects. The medication caused Lucas stomach pain, and he periodically resisted taking it. | ECF No. 40-2 [Southwest Key Psychiatric Report]; Ex. 81 [Decl. of Lucas R, Jun. 8, 2018 ("Lucas R. Decl.")] ¶ 4 ("I refused to take the medication two or three times, and I think it probably hurt my case.") |
| 14. | No one from the shelter or ORR asked Lucas's sister, Madelyn, for her consent to administer Lucas R. psychotropic drugs. | ECF No. 37-13 [Decl. of Madelyn R., July 19, 2018 ("Madelyn R. Decl.")] ¶ 14 |
| 15. | ORR transferred Lucas R. to Shiloh Residential Treatment Center ("Shiloh"). | ECF No. 33 [ORR Transfer Request and Tracking Form, May 21, 2018] at 37–38 |
| 16. | At Shiloh, ORR continued to confine him and medicate him without his or his family's consent until he was finally released to his brother on September 4, 2018. | Ex. 81 [Lucas R. Decl.] ¶¶ 4, 7, 8]; ECF No. 37-13 [Madelyn R. Decl.] ¶ 14; Ex 15 [Deposition Transcript of ██████████ ("A.C. Dep. Tr.")] at 12:3–15 |
| 17. | While in ORR custody, Lucas R. had trouble sleeping and psychological issues until reunified with his brother. | Ex. 15 [A.C. Dep. Tr.] at 31:16–22, 44:17–20 |
| 18. | Defendants admit "that Sirena P.'s separation from her family was noted as a trigger for her mental health symptoms." | ECF No. 144 [Defendants' Answer to First Amended Complaint ("Answer")] ¶ 83 |
| 19. | Defendants admit "that Benjamin F.'s separation from his mother and placement into ORR's legal custody led to physical and emotional challenges." | ECF No. 144 [Answer] ¶ 87 |

Cooley LLP
Attorneys At Law
Los Angeles

5

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 20. | Without the presence of family members or otherwise trusted caregivers, children are sometimes unable to cope with the psychological trauma and stress associated with custody. | ECF No. 144 [Answer] ¶ 102; Ex. 27 [Meyerstein Dep. Tr.] at 302:21–303:19; Ex. 21 [Deposition Transcript of Isabella F. ("Isabella F. Dep. Tr.")] at 56:12–57:23, 59:2–7; Ex. 15 [A.C. Dep. Tr.] at 31:16–22, 44:7–20; Ex. 22 [Deposition Transcript of Maviric Fields ("Fields Dep. Tr.") ] at 180:19–22, 181:11–25 |
| 21. | ORR denies that there is "a greater risk of harm to children who reside for longer period of times in the legal custody of ORR (and the physical custody of a grantee care provider), as compared to release to any and all potential sponsors." | Ex. 6 [RFA 2nd Set] No. 154 at 541 |
| 22. | "[T]he best practice in child welfare would be to discharge the [child] within 30 days of admission. In ordinary cases, ORR generally does not recommend keeping [a child] in care for longer than 60 days." | Ex. 83 at 1537 |
| 23. | As of March 13, 2020, ORR had 3,622 minors in custody, 1,193 of whom were in congregate settings after having been detained for 30 days or more. | *Flores et al., v. Barr et al.*, No. 85-4544-DMG (Px) (C.D. Cal. Mar. 28, 2020), ECF No. 740 [Order re Plaintiffs' *Ex Parte* Application] at 9. |
| 24. | Children may remain in ORR custody for a year or more. | Ex. 5 [RFA 1st Set] No. 36 at 492; Ex. 19 [Deposition Transcript of Natasha David ("David Dep. Tr.")] at 72:22–73:13; Ex. 16 [Deposition Transcript of Carina Contretas ("Contreras Dep. Tr.")] at 160:6–13 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

6

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 25. | ORR detained Class Representative Gabriela N. for approximately 633 days. | ECF No. 62-6 [Initial Intake Form] at 2 (noting arrival date of Jan. 8, 2017]; Ex. 101 at 1802 ███████; Ex. 141 at 2036 (███; Ex. 140 at 2031 ████); Ex. 102 at 1806–07 |
| 26. | ORR detained Class Representative Lucas R. for approximately 208 days. | Ex. 143 at 2045 ████; Ex. 142 at 142 ████) |
| 27. | ORR has detained at least one Class Member in congregate care for at least 1,570 days, or more than four years. | Ex. 122 at 1923 |
| 28. | ORR's Policy Guide mandates "that children are released timely and safely from ORR custody to parents, other family members, or other adults (often referred to as 'sponsors'). . . ." | Joint Stipulation of Facts for Motion and Cross-Motion for Partial Summary Judgment ("Joint Stip.") ¶ 5; Ex. 1 [Policy Guide, Children Entering the United States Unaccompanied, Office of Refugee Resettlement ("ORR Policy Guide")] § 2.1 at 34 |
| 29. | ORR is required to make "prompt and continuous efforts" toward family reunification and release children to custodians "without unnecessary delay." | Ex. 8 [*Flores* Settlement Agreement] ¶¶ 14, 18 at 573–74, 576 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 30. | ORR's written policies govern the release of children to potential custodians or sponsors, which include parents or legal guardians (Category 1 sponsors), immediate relatives (Category 2A/B sponsors), or more distant relatives and individuals designated by the child's parent (Category 3 sponsors). | Joint Stip. ¶ 3; Ex. 1 [ORR Policy Guide] §§ 2.1, 2.2.1 at 34–35 |
| 31. | Cases with no identified sponsors are referred to as Category 4. | Joint Stip. ¶ 3; Ex. 1 [ORR Policy Guide] § 2.2.1 at 34–35 |
| 32. | Case Managers, Case Coordinators, and Federal Field Specialists ("FFS") all participate in the release of children to family members and other potential sponsors, referred to as the "family reunification process." | Ex. 3 [The UAC Manual of Procedures (UAC MAP) ("ORR MAP")] § 2.2 at 140–42; Ex. 1 [ORR Policy Guide] § 2.3 at 39 |
| 33. | ORR's Policy Guide provides that "Case Managers perform a variety of duties, including coordinating the completion of assessments of unaccompanied alien children, completing individual service plans, assessing potential sponsors, making transfer and release recommendations, and coordinating the release of a child or youth from ORR care and custody." The Policy Guide also provides: "The Case Manager's role is also to ensure that information is gathered or shared with the appropriate staff and stakeholders during the sponsor assessment process." | Joint Stip. ¶ 8; Ex. 1 [ORR Policy Guide] § 2.3.2 at 39–40 |

Cooley LLP
Attorneys At Law
Los Angeles

8

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 34. | ORR's Policy Guide provides that Case Coordinators are "non-governmental contractor field staff assigned to one or more care providers primarily to review unaccompanied alien children cases and provide transfer and release recommendations to ORR staff." | Joint Stip. ¶ 94 |
| 35. | FFS "are ORR's field staff located regionally throughout the country and are assigned to a group of [ORR] care providers within a particular geographic region." | Joint Stip. ¶ 6 |
| 36. | ORR's Policy Guide defines "Care Provider" as "any ORR funded program that is licensed, certified or accredited by an appropriate State agency to provide residential care for children, including shelter, group, foster care, staff-secure, secure, therapeutic or residential treatment care for children." | Joint Stip. ¶ 4; Ex. 1 [ORR Policy Guide], Guide to Terms at 19. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

9

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 37. | ORR's Policy Guide provides that "[ORR/FFS] have the authority to approve all unaccompanied alien children transfer and release decisions; oversee care providers to ensure all services are properly provided and implemented; and serve as a local liaison to community stakeholders, including other Federal agencies, local legal service providers, communities, Child Advocates, etc. ORR/FFS also provide guidance, direction, and technical assistance to care providers. ORR/FFS also make final decisions as to whether home studies are conducted and/or post-release services are provided. ORR/FFS coordinate all aspects of a child's case with care provider staff, Case Coordinators, stakeholders, and other Federal agencies." | Joint Stip. ¶ 7; Ex. 1 [ORR Policy Guide] § 2.3.1 at 39 |
| 38. | Although Case Managers are the first of three actors involved in release decisions, they also have unilateral authority to declare a potential sponsor "non-viable," which ends the vetting process. | Ex. 30 [Deposition Transcript of Michelle Ortiz ("Ortiz Dep. Tr.")] at 110:24–113:2 ("And the aunt was told she was not a viable sponsor because they didn't have the same last name. . . . Once transferred to the permanent facility, the child was released within two weeks . . . .") |
| 39. | ORR's Policy Guide provides that "[a]ll potential sponsors must complete an application in order for a child to be released to them from ORR custody (the 'Family Reunification Application')." | Joint Stip. ¶ 37; Ex. 1 [ORR Policy Guide] § 2.2.3 at 35–36 |

CooLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

10

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 40. | ORR's Policy Guide provides that the "care provider also informs potential sponsors that they may submit additional information to support the application and reminds potential sponsors of the deadlines for completing the forms." | Joint Stip. ¶ 39; Ex. 1 [ORR Policy Guide] § 2.2.3 at 35–36 |
| 41. | Potential sponsors also undergo a background check and may be required to submit fingerprints. | Ex. 1 [ORR Policy Guide] § 2.5 at 44; Ex. 3 [ORR MAP] § 2.5 at 177 |
| 42. | Under certain circumstances ORR policy requires a home study before releasing a child—for example, ORR requires a home study if a child is 12 years and under and the proposed sponsor is a non-relative. | Ex. 1 [ORR Policy Guide] § 2.4.2 at 42–44 |
| 43. | ORR's MAP provides that Case Managers may recommend a discretionary home study of a proposed custodian prior to release. | Joint Stip. ¶ 13; Ex. 3 [ORR MAP] § 2.4.2. at 172–77 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 44. | Home studies can significantly prolong the time children spend in ORR custody. | Ex. 24 [Deposition Transcript of Yesenia Heath ("Heath Dep. Tr.")] at 158:12–159:1, 159:18–25, 161:11–13 (On average, it takes 30 days to complete a home study), 252:10–19; Ex. 28 [Deposition Transcript of Nidia Murray ("Murray Dep. Tr.")] at 197:7–198:9; Ex. 14 [Deposition Transcript of Jose Castaneda ("Castaneda Dep. Tr.")] at 167:9–15; Ex. 50 [Heath Dep. Ex. 172] at 1310 ( ███████████ Ex. 99 at 1771 (" ██████████ ); *id.* at 1777 ( ██████████ ); *id.* at 1774 ( ██████████ ); *id.* at 1791 (" ██████████ ) |
| 45. | ORR staff can order a discretionary home study and the only requirements for doing so are that the sponsor be potentially viable and that the ORR staff "have a reasonable expectation that the results of the home study process . . . will provide additional information, other than what has already been gathered via the sponsor assessment process, which will mitigate concerns." | Joint Stip. ¶ 13; Ex. 3 [ORR MAP] § 2.4.2 at 172–77; Ex. 19 [David Dep. Tr.] at 77:1–16 |

Cooley LLP
Attorneys At Law
Los Angeles

12

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 46. | FFS make the final decision as to whether a discretionary home study of a child's proposed custodian will be required. | Joint Stip. ¶ 11 |
| 47. | An FFS can authorize an extension of the time it takes to complete a home study. | Joint Stip. ¶ 12 |
| 48. | ORR's policy of requiring all household members to submit fingerprints in the event of a home study can cause "significant[] delay[]" in releasing children to available custodians. | Ex. 20 [Deposition Transcript of Whitney Eich ("Eich Dep. Tr.")] at 46:22–48:13, 184:11–185:8 (it could take "[p]otentially five weeks" to receive fingerprint results). |
| 49. | When Lucas R.'s sister, Madelyn, learned of his arrest, she asked ORR to release Lucas R. to her. Madelyn gave ORR all the documents it requested and applied to be his sponsor. | ECF No. 37-13 [Madelyn R. Decl.] ¶ 6 |
| 50. | On or about March 15, 2018, ORR arranged a home study to assess Madelyn's suitability as a custodian for Lucas R. | ECF No. 40-4 [Decl. of A.C.] at 4, ¶ 4; ECF No. 37-13 [Madelyn R. Decl.] at 7, ¶ 10 |
| 51. | Following the March home study, ORR's home investigator recommended against releasing Lucas R. to Madelyn. | ECF No. 37-13 [Madelyn R. Decl.] ¶¶ 10–13 |
| 52. | Prior to making release decisions, ORR may also conduct additional assessments of minors in custody, such as psychological evaluations. | Ex. 3 [ORR MAP] § 2.4.2 at 172–77 |
| 53. | ORR has no written standards on when it will require a Class Member to undergo a psychological evaluation as a prerequisite to release. | Ex. 16 [Contreras Dep. Tr.] at 175:11–23 |

Cooley LLP
Attorneys At Law
Los Angeles

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 54. | Notwithstanding the lack of written standards, ORR's practice is to delay releasing children detained at Shenandoah Valley Juvenile Center ("SVJC") to available custodians until they have had a psychological evaluation, which takes at least 30 days to complete. | Ex. 17 [Deposition Transcript of Melissa Cook ("Cook Dep. Tr.")] at 209:5–211:23 |
| 55. | ORR's Policy Guide provides that "Case Managers communicate with potential sponsors, gather necessary information and documentation, talk to any relevant stakeholders, and assess sponsors to formulate a recommendation to the Case Coordinator." | Joint Stip. ¶ 42; Ex. 1 [ORR Policy Guide] § 2.3 at 40 |
| 56. | ORR's Policy Guide provides that "Case Coordinators concurrently review all assessment information on an unaccompanied alien child and sponsor to also make a recommendation." | Joint Stip. ¶ 43; Ex. 1 [ORR Policy Guide] § 2.3 at 40 |
| 57. | ORR's Policy Guide provides that "the ORR/FFS makes a final release decision." | Joint Stip. ¶ 44; Ex. 1[ORR Policy Guide] § 2.3 at 39; *id.* § 2.7 at 47 |
| 58. | ORR's Policy Guide contains limited guidance to Case Managers, Case Coordinators, and FFS concerning family reunification decisions—consisting of a short list of factors such as "[t]he sponsor's understanding of the . . . child's needs, as identified by ORR and the care provider." | Ex. 1 [ORR Policy Guide] § 2.4.1 at 41 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 59. | ORR's Policy Guide contains no guidance on how to weigh information collected from proposed sponsors or the short list of factors included in the Policy Guide before making release decisions. | Ex. 1 [ORR Policy Guide] §§ 2.2.4, 2.4.1 at 36–38, 41 |
| 60. | ORR's written policies do not require Case Managers to consider the impacts of prolonged detention on a child's welfare in making a release decision. | Ex. 37 [Deposition Transcript of Jallyn Sualog ("Sualog Dep. Tr.")] at 214:17–21; Ex. 28 [Murray Dep. Tr.] at 232:11–20; Ex. 1 [ORR Policy Guide] §§ 2.4–2.7 at 41–50; Ex. 3 [ORR MAP] §§ 2.4–2.7 at 168–212 |
| 61. | ORR's written policies do not require that any particular standard be applied in determining whether a proposed custodian is capable of caring for the physical and mental wellbeing of a child. | Ex. 1 [ORR Policy Guide] § 2 at 34–56; Ex. 3 [ORR MAP] § 2 at 139–277; Ex. 5 [RFA 1st Set] No. 22 at 480–81 ("ORR does not use an 'evidentiary' standard….") |
| 62. | ORR does not use an evidentiary standard in making release decisions. | Ex. 4 [RFA 1st Set] No. 22 at 480–81; *see also* Ex. 36 [Deposition Transcript of Megan Stuart ("Stuart Dep. Tr.")] at 57:2–8 (release decisions "at the whim of the FFS") |
| 63. | None of ORR's limited guidance to Case Managers, Case Coordinators, and FFS concerning family reunification decisions is published in the Federal Register or a Notice of Proposed Rulemaking. | Ex. 11 [Deposition Transcript of 30(b)(6) Witness, Michael E. Bartholomew ("Bartholomew (30)(b)(6) Dep. Tr.")] at 43:11–44:6; *Flores v. Sessions*, 862 F.3d 863, 871–72 (9th Cir. 2017) |

Cooley LLP
Attorneys At Law
Los Angeles

15

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 64. | ORR's release decisions are based on factual determinations. | Ex. 1 [ORR Policy Guide] § 2.7.1 at 48 (FFS may approve release "after a thorough assessment of the sponsor, the sponsor's family unit, and the needs of the child or youth" if "he/she determines," *inter alia*, "that the release is a safe release"); *id*., § 2.7.4 at 48 (FFS may deny release to a potential sponsor if, *inter alia*, "[t]he physical environment of the home presents risks to the child's safety and well-being" or "[r]elease . . . would present a risk to [the child], the sponsor, household, or the community"); *see also id*. § 2.5 at 44 (describing background check process) |
| 65. | ORR's written policies set no limit on how long it may take to decide to release a child to an available custodian. | Ex. 5 [RFA 1st Set] No. 4 at 469–70 |
| 66. | "[I]t may take several months before ORR reaches a conclusion concerning whether a proposed sponsor is capable of providing for a child's physical and mental well-being and is otherwise suitable." | Ex. 5 [RFA 1st Set] No. 19 at 479_001-002; *see* Ex. 14 [Castaneda Dep. Tr.] at 154:2–16, 167:9–24 |
| 67. | Case Managers have at times unnecessarily delayed issuing recommendations regarding children's release to available custodians. | Ex. 25 [Deposition Transcript of Karen Husted ("Husted Dep. Tr.")] at 43:19–46:2 |
| 68. | ORR has delayed releasing children to available and fit sponsors until they have shown "good behavior" for some amount of time. | Ex. 28 [Deposition Transcript of Nithya Nathan-Pineau ("Nathan-Pineau Dep. Tr.")] at 55:17–56:24 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

16

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 69. | Some children designated as Category 4 may have had identified sponsors that were denied or deemed non-viable by ORR. | Ex. 116 at 1894–95 ███████████ ); *id.* at 1896 ( ███████████ ); Ex. 100 at 1799 ( ███████████ ) |
| 70. | ORR's written policies do not require providing children with a written denial of a proposed custodian's release request, unless the sole reason for the denial is a concern that the unaccompanied alien child is a danger to themself or the community. | Joint Stip. ¶ 17 |
| 71. | ORR does not require that children be provided notice of the reasons for denying release to a proposed sponsor unless the sole reason for continued detention is that ORR believes the child to be a danger to themself or the community. | Ex. 5 [RFA 1st Set] No. 25 at 470–71; Ex. 1 [ORR Policy Guide] §§ 2.7.7, 2.7.8 at 49–50 |
| 72. | ORR's written policies do not require that proposed custodians other than a parent or legal guardian (*i.e.*, Category 1 sponsor) be provided written notice that their release request has been denied. | Joint Stip. ¶ 18 |
| 73. | ORR's written policies do not require that ORR give children any opportunity to offer input designed to rebut a conclusion that a proposed custodian's release request should be denied. | Ex. 1 [ORR Policy Guide] § 2.7 at 47–48; Ex. 3 [ORR MAP] § 2.7.4 at 48–49 |
| 74. | ORR does not provide children a hearing before a neutral factfinder before denying release. | Ex. 5 [RFA 1st Set] No. 30 at 489–90 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 75. | ORR's written policies do not provide all proposed custodians an opportunity to inspect or rebut the evidence it relies on to declare them unfit. | Ex. 1 [ORR Policy Guide] § 2.7.7 at 49–50; Ex. 3 [ORR MAP] § 2.7.7 at 209–11 (comparing denial notification requirements between different categories of sponsors). |
| 76. | ORR's written policies do not require that ORR provide proposed custodians a hearing before a neutral factfinder before deciding whether to grant the proposed custodian's release request. | Ex. 1 [ORR Policy Guide] §§ 2.7–2.7.7 at 49–50 |
| 77. | ORR's written policies fail to provide children an opportunity to appeal or otherwise challenge adverse decisions regarding release in all but the most limited circumstances. | Ex. 1 [ORR Policy Guide] § 2.7.8 at 50; Ex. 5 [RFA 1st Set] No. 8 at 472–73; *see also* ECF No. 37-13 [Madelyn R. Decl.] ¶ 13 ("She told me nothing could be done, that the denial was a final decision. They didn't give me an opportunity to appeal the denial, or to ask that the decision be changed.") |
| 78. | ORR's written policies limit children's rights to appeal an adverse decision only if the sole reason for the denial is a concern that the child is a danger to themself or the community and the denied sponsor is not already appealing the decision. | Joint Stip. ¶ 29; Ex. 1 [ORR Policy Guide] § 2.7.8 at 50 |
| 79. | ORR's written policies do not require that ORR provide proposed custodians other than parents and legal guardians an appeal or other administrative recourse from a finding by ORR that a proposed custodian is unfit. | Ex. 1 [ORR Policy Guide] § 2.7.8 at 50; Ex. 5 [RFA 1st Set] Nos. 6, 9 at 471–74 |

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 80. | Even for parents and legal guardians, ORR's written policies do not require that ORR provide a hearing on an appeal or other challenge to an adverse decision within any time certain. | Ex. 5 [RFA 1st Set] No. 10 at 474; Ex. 1 [ORR Policy Guide] § 2.7.8 at 50 |
| 81. | ORR denies that the principal reason it fails to provide adequate procedural protections is due to any greater expense or administrative inconvenience. | Ex. 5 [RFA 1st Set] No. 73 at 496–97 |
| 82. | In at least one case, a Case Manager at one ORR facility rejected a child's aunt as a proposed sponsor because they did not share the same last name. Once the child was transferred to a new facility, the new Case Manager expressed no concerns about the aunt's last name and approved release within two weeks. | Ex. 30 [Ortiz Dep. Tr.] at 110:23–112:7 |
| 83. | In another case, a Case Manager rejected a child's sister as a proposed sponsor because the sister and child did not share the same last name. | Ex. 74 [M.R.M. Decl.] ¶ 7 |
| 84. | Class Member A.N.P.C.'s case worker informed her that release to her proposed sponsor was denied because A.N.P.C. did not have an official birth certificate. | ECF No. 37-14 [A.N.P.C. Decl.] ¶ 8 |

CooleyLLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 85. | Class Representative Gabriela N.'s proposed custodian, Isaac, was not provided written notice of his rejection or the reasons for that rejection. | Ex. 138 [Isaac N. Decl.] ¶ 11 ("I contacted ORR to ask for orientation information and completed the orientation last month. I have not heard anything from ORR since then. I have never received the results of the home study."); *id.* ¶ 12 ("ORR has never officially told me that they are looking at other sponsors or that my application has been rejected.") |
| 86. | Class Representative Lucas R. did not know the reasons why his sister and proposed custodian, Madelyn, was rejected, and was not provided a written explanation of the reasons for the rejection. | Ex. 81 [Lucas R. Decl.] ¶ 9 |
| 87. | Madelyn, Lucas R.'s sister and proposed custodian, was not provided any written explanation for why she was rejected. | ECF No. 37-13 [Madelyn R. Decl.] ¶ 13 |
| 88. | The limited appeal rights granted to proposed custodians who are parents or legal guardians are rarely exercised. | Ex. 5 [RFA 1st Set] No. 28 at 485–87 ("a relatively low proportion of proposed sponsors elect to pursue an administrative appeal process") |
| 89. | From January 1, 2017 to May 17, 2019, no proposed custodians requested an administrative appeal of a denial of request for release. | Ex. 5 [RFA 1st Set] No. 28 at 485–87; Ex. 7 [Defendants' Supplemental Responses to Plaintiffs' Requests for Admission ("RFA Supp. Response")] No. 28 at 560 |
| 90. | From January 1, 2017 to May 17, 2019, only one administrative appeal was filed by a child through his attorney. | Ex. 5 [RFA 1st Set] No. 28 at 485–87; Ex. 7 [RFA Supp. Response] No. 28 at 560 |
| 91. | From January 1, 2017 to May 17, 2019, there were no reversals on administrative appeal of adverse suitability determinations. | Ex. 5 [RFA 1st Set] No. 29 at 487–88; Ex. 7 [RFA Supp. Response] No. 29 at 5660 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

20

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 92. | Contrary to child welfare practices across the country, ORR's policies do not provide for a neutral factfinder. | Ex. 53 [Edwards Expert Rep.] at 1340 |
| 93. | Contrary to child welfare practices across the country, ORR's policies do not include any form of evidentiary hearing at which children participate in the decision-making and present their own evidence and arguments. | Ex. 53 [Edwards Expert Rep.] at 1341 |
| 94. | Contrary to child welfare practices across the country, ORR's policies do not afford children the opportunity to meaningfully challenge the denial of a sponsor because ORR is not required under its policies to disclose the evidence it relies upon in denying a sponsor's application. | Ex. 53 [Edwards Expert Rep.] at 1341–42 |
| 95. | Contrary to child welfare practices across the country, ORR's policies do not require that children's interests be represented by counsel or any other advocates. | Ex. 53 [Edwards Expert Rep.] at 1341 |
| 96. | Contrary to child welfare practices across the country, ORR's policies do not include timelines that allow the case to keep moving toward resolution. | Ex. 53 [Edwards Expert Rep.] at 1341 |
| 97. | Contrary to child welfare practices across the country, ORR's policies do not universally afford children the right to appeal adverse decisions denying reunification with their sponsors. | Ex. 53 [Edwards Expert Rep.] at 1342 |

Cooley LLP
Attorneys At Law
Los Angeles

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 98. | ORR's Policy Guide requires care providers to conduct a "Well Being Follow Up Call" 30 days after a child is released to a sponsor.  If the care provider believes the child is unsafe, it must comply with mandatory reporting laws for reporting to local child protective agencies and/or law enforcement | Joint Stip. ¶ 15; Ex. 1 [ORR Policy Guide] § 2.8.4 at 53 |
| 99. | Following reports to state or local child protection agencies that children released from ORR custody have been abused or neglected, state or local protection agencies can take steps to try to protect those children from abuse or neglect following release from ORR custody. | Joint Stip. ¶ 16 |
| 100. | ORR does not know or otherwise try to track how frequently, if at all, sponsors abuse or neglect children after they are released from ORR custody. | Ex. 37 [Sualog Dep. Tr.] at 219:1–19 |
| 101. | ORR includes within its in-network system the following types of care provider facilities: shelter, short-term foster care, long-term foster care, group homes, therapeutic group homes, staff-secure, therapeutic staff-secure, secure and residential treatment centers ("RTC"). | Ex. 93 [*Flores* Census Data] at 1633–1745 (see column J under Census tab listing different types of ORR "Program Types") |
| 102. | There are two types of placement decisions: (1) initial placement into an ORR care provider and (2) transfer placement between ORR care providers. | Ex. 1 [ORR Policy Guide] § 1.1 at 22 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

22

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 103. | A child can be initially placed in a restrictive setting. | Ex. 1 [ORR Policy Guide] §§ 1.3.2, 1.2.4 at 24–25, 27;  Ex. 2 [ORR MAP] § 1.3.2 at 69; Ex. 26 [Deposition Transcript of Dr. Donna Lynn Londino ("Londino Dep. Tr.")] at 246:22–25; Ex. 34 [Deposition Transcript of Dr. Emily Ryo ("Ryo Dep. Tr.")] at 97:16–19 |
| 104. | ORR "steps up" Class Members. | Ex. 5 [RFA 1st Set] No. 74. |
| 105. | A "step-up" is a transfer to a more restrictive level of care. | Joint Stip. ¶ 47 |
| 106. | A "step-down" is a transfer to a less restrictive level of care. | Joint Stip. ¶ 58 |
| 107. | According to ORR policy, ORR may place a child in a shelter facility, foster care, group home, staff-secure or secure care facility, RTC, or other special needs care facility. | Ex. 1 [ORR Policy Guide] §§ 1.1, 1.2 at 22–23 |
| 108. | ORR also places children in therapeutic staff-secure facilities, therapeutic group homes, and out-of-network ("OON") facilities, some of which are RTCs. | Ex. 93 [*Flores* Census Data] at 1633–1745 (column J under Census tab listing different types of ORR "Program Types"); *id.* at 1746 (listing OON placements); Ex. 24 [Heath Dep. Tr.] at 103:18–25; Ex. 23 [Deposition Transcript of David R. Fink ("Fink Dep. Tr.")] at 37:22–38:19, 61:10–15; Ex. 20 [Eich Dep. Tr.] at 124:24–125:12; Ex. 13 [Deposition Transcript of 30(b)(6) Witness, Toby R.M. Biswas ("Biswas 30(b)(6) Dep. Tr.")] at 13:1–21; Ex. 5 [RFA 1st Set] No. 79 at 499–501; Ex. 26 [Londino Dep. Tr.] at 152:23–153:1 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 109. | ORR policy provides definitions for "shelter care," "transitional foster care," "long-term foster care," "group home," "staff-secure care," "secure care," and "residential treatment center, but does not define "other special needs care facility," "therapeutic staff-secure," "therapeutic group home," or "out-of-network" facility. | Ex. 1 [ORR Policy Guide] Guide to Terms at 19–21 |
| 110. | ORR MAP refers to OON RTC placements as Treatment Authorization Request ("TAR") RTC placements. | Ex. 2 [ORR MAP] § 1.4.6 at 99–101; Ex. 95 at 1754 (email from Toby Biswas to David Fink stating "See MAP section 1.4.6 which explains the procedures for administering and documenting the NOP in the case of out-of-network (TAR based) placements") |
| 111. | The ORR Policy Guide provides that "ORR only places an unaccompanied alien child in a secure facility if the child: [1] poses a danger to self or others; or [2] has been charged with or convicted of a criminal offense, or is chargeable with such an offense." | Joint Stip. ¶ 60; Ex. 1 [ORR Policy Guide] § 1.2.4 at 24–25 |

Cooley LLP
Attorneys At Law
Los Angeles

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 112. | The ORR Policy Guide provides that "[i]n determining whether to place a youth in a staff secure facility, ORR considers if the child: [1] has been unacceptably disruptive to the normal functioning of a shelter care provider facility such that transfer is necessary to ensure the welfare of the UAC or others; [2] is an escape risk; [3] has reported gang involvement (including prior to placement into ORR custody) or displays gang affiliation while in care; [4] has non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses as described above; or [5] is ready for step-down from a secure facility." | Ex. 1 [ORR Policy Guide] § 1.2.4 at 24–25 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

25

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| | | |
|---|---|---|
| 113. | ORR's Policy Guide provides that a child "may only be placed into an RTC if the youth is determined to be a danger to self or others by a licensed psychologist or psychiatrist. . . . In addition, ORR will consider transfer to an RTC only if a licensed psychologist or psychiatrist has determined the following: [1] The unaccompanied alien child has not shown reasonable progress in the alleviation of his/her mental health symptoms after a significant period of time in outpatient treatment. (Note: the amount of time within which progress should be demonstrated varies by mental health diagnosis). [2] The child's behavior is a result of his/her underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting. [3] The unaccompanied alien child requires therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent him or her from independent participation in the daily schedule of activities. [4] The child presents a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions (such as medications, a brief psychiatric hospitalization, intensive counseling, behavioral management techniques, 24 hour supervision, supportive services or therapeutic services)." | Joint Stip. ¶ 54; Ex. 1 [ORR Policy Guide] § 1.4.6 at 30 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 114. | ORR policy does not provide placement criteria for therapeutic staff-secure facilities, therapeutic group homes, or OON facilities. | Ex. 1 [ORR Policy Guide] § 1 at 22–33 (providing placement criteria for secure, staff-secure and RTCs, but not therapeutic staff secure, therapeutic group homes or out-of-network facilities) |
| 115. | The longer ORR detains a child, the more likely he or she will be "stepped up" to a secure, staff-secure, therapeutic staff secure, OON facility, or RTC. | Ex. 57 [Expert Report of Dr. Emily Ryo ("Ryo Expert Rep.")] at 1398–1401; Ex. 56 [Matlow & Wang Expert Rep.] at 1388 ("Such children are likely to deteriorate and escalate behaviors and symptoms, often leading to step-up to more restrictive placement . . . with high cost both to the child and to the system."); Ex. 29 [Nathan-Pineau Dep. Tr.] at 110:17–111:2; Ex. 35 [Ryo. Dep. Tr.] at 100:14–19, 102:7–18 |
| 116. | Unnecessarily stepping up children may be contrary to their best interest and detrimental to their long-term psychological well-being. | Ex. 6 [RFA 2nd Set] Nos. 169–70 at 542–44 |
| 117. | Secure juvenile detention facilities are the most restrictive facilities to which ORR steps up Class Members. | Joint Stip. ¶ 50 |
| 118. | RTCs are highly restrictive psychiatric facilities, which are similarly restrictive as secure facilities. | Ex.13 [Biswas 30(b)(6) Dep. Tr.] at 14:5–9 (secure and RTCs are generally the same level of restriction); Ex. 24 [Heath Depo. Tr.] at 135:9–12 (RTCs and secure facilities are the most restrictive settings for placement). |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 119. | Formerly, ORR maintained three in-network secure juvenile detention centers: Yolo County Juvenile Center ("Yolo") in Woodland, California, Shenandoah Valley Juvenile Center ("SVJC") in Staunton, Virginia, and Northern Virginia Juvenile Detention Center ("NOVA") in Alexandra, Virginia. ORR's grant with Yolo ended in January 2020. ORR's grant with NOVA ended in September 2017. Currently, the only secure juvenile center facility in which ORR places Class Members is SVJC. | Joint Stip. ¶ 51 |
| 120. | ORR currently maintains two in-network RTCs: MercyFirst Residential Treatment Center in Syosset, New York, and Shiloh Resident Treatment Center in Manvel, Texas. | Joint Stip. ¶ 52 |
| 121. | OON facilities, are often RTCs that are similarly restrictive as in-network RTCs. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 14:5–15; Ex. 23 [Fink Dep. Tr.] at 61:10–15; Ex. 18 [Deposition Transcript of James De La Cruz, Mar. 10, 2020 ("De La Cruz Dep. Tr.")] at 125:4–16 |
| 122. | Therapeutic staff-secure facilities are more restrictive than shelters. | Ex. 23 [Fink Dep. Tr.] at 37:22–38:8; Ex. 24 [Heath Dep. Tr.] at 108:7–109:6; Ex. 20 [Eich Dep. Tr.] at 124:24–125:12 |
| 123. | Staff-secure facilities are more restrictive than shelters. | Joint Stip. ¶ 53 |
| 124. | Staff-secure facilities may have fences around them. | Ex. 23 [Fink Dep. Tr.] at 53:24–54:17; Ex. 128 at 1957; Ex. 129 at 1960–61; Ex. 130 at 1966–69 |

Cooley LLP
Attorneys At Law
Los Angeles

28

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 125. | Therapeutic group homes are more restrictive than shelters. | Ex. 23 [Fink Dep. Tr.] at 38:9-12, 57:7-10; Ex. 28 [Murray Dep. Tr.] at 140:23–141:4 (classifying therapeutic group homes and therapeutic staff-secure facilities as equally restrictive); Statement of Uncontroverted Fact ("SUF") ¶ 122, *supra* ("Therapeutic staff-secure facilities are more restrictive than shelters.") |
| 126. | Foster care programs, where children reside with a foster family, are one of the least restrictive settings in which ORR places Class Members. | Joint Stip. ¶ 56 |
| 127. | ORR considers a secure facility to be a juvenile detention center or a highly structured therapeutic facility. | Joint Stip. ¶ 58 |
| 128. | Secure facilities are like jails or prisons but for minors. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 29:25–30:13; Ex. 24 [Heath Dep. Tr.] at 60:11–14; Ex. 18 [De La Cruz Dep. Tr.] at 209:1–7; Ex. 82 [Y.A.M.S. Decl.] ¶ 27 ("Yolo County Detention is a juvenile jail where we are kept in cells, forced to wear uniforms and treated like criminals. The detention center makes me feel like an animal."); *id.* ¶¶ 29–30 ("I sleep in a locked jail cell. The beds are thin mattresses on top of a block of cement and we don't get pillows…We are allowed outside to see the sun one hour per day…") |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 129. | ORR's Policy Guide provides that secure facilities "have a secure perimeter, major constraining construction inside the facility, and procedures typically associated with correctional facilities." | Joint Stip. ¶ 57; Ex. 1 [ORR Policy Guide] § 1.2.4 at 24 |
| 130. | Class Members stepped up to secure facilities have been pepper sprayed. | ECF No. 144 [Answer] ¶ 53; Ex. 94 at 1750 |
| 131. | Yolo and SVJC secure are locked facilities with 24-hour surveillance and monitoring. | Joint Stip. ¶ 61 |
| 132. | Shiloh RTC is a locked facility with 24-hour surveillance and monitoring. | *Flores v. Session*, No. 2:85-cv-04544-DMG-AGR, July 30, 2018 Order ECF 470 at 13; Ex. 70 [K.S.G.P. Decl.] ¶ 2; Ex. 69 [K.N.A.T. Decl. Dec, 2017] ¶ 3; Ex. 76 [M.Y.R.M. Supp. Decl.] ¶ 2 |
| 133. | Children who ORR steps up to secure juvenile detention facilities or RTCs report feeling compelled to take psychotropic medications against their will. | Ex. 59 [A.M.R.A. Decl.] ¶ 5; Ex. 62 [D.S.J.L. Decl.] ¶ 8; Ex. 63 [E.G.G.J. Decl.] ¶ 5; Ex. 65 [J.M.R.R. Decl.] ¶¶ 18–19; Ex. 66 [J.S.C.M. Decl.] ¶ 19; Ex. 68 [K.N.A.T. June 2018 Decl.] ¶ 6; Ex. 73 [M.M.H. Decl.] ¶ 8; Ex. 77 [N.B.C.R. Decl.] ¶ 6; Ex. 82 [Y.A.M.S. Decl.] ¶¶ 11–21; Ex. 72 [M.H.S. Decl.] ¶ 5; Ex. 81 [Lucas R. Decl.] ¶ 6; Ex. 58 [A.D.A. Decl.] ¶ 11; Ex. 60 [C.J.A.L. Decl.] ¶ 11; Ex. 79 [P.D.O.P. Decl.] ¶¶ 12–13; Ex. 61 [D.D.R.O. Decl.] ¶ 7 |
| 134. | Children stepped up to Shiloh RTC report being forced to take psychotropic medication or seeing other children forced to take psychotropic medication. | Ex. 62 [D.S.J.L. Decl.] ¶ 11; Ex. 82 [Y.A.M.S. Decl.] ¶ 22; Ex. 63 [E.G.G.J. Decl.] ¶ 6; Ex. 70 [K.S.G.P. Decl.] ¶ 8; Ex. 69 [K.N.A.T. Dec. 1, 2017 Decl.] ¶ 11; Ex. 67 [K.L.F. Decl.] ¶ 14; Ex. 75 [M.Y.R.M. Decl.] ¶ 3. |

Cooley LLP
Attorneys At Law
Los Angeles

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 135. | Children stepped up to therapeutic staff-secure facilities may be required to undergo sex offender treatment. | Ex. 24 [Heath Dep. Tr.] at 119:24–122:15 |
| 136. | Secure or staff secure placements have led to deterioration of children's mental health. | Ex. 35 [Deposition Transcript of Elicia F. Smith ("Smith Dep. Tr.")] at 144:10–13; Ex 24 [Heath Dep. Tr.] at 186:14–187:7; Ex. 24 [Heath Depo. Ex. 170] at 6030; Ex. 22 [Fields Dep. Tr.] at 176:3–13, 179:16–20, 180:10–18, 231:11–15; Ex. 17 [Cook Dep. Tr.] at 192:5–193:11; Ex. 103 at 1818; Ex. 120 at 1915; Ex. 121 at 1918 ("███████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ ."); Ex. 122 at 1924. |
| 137. | Children remain in restrictive placements despite ORR's having found them suitable for step-down. | Ex. 6 [RFA 2nd Set] No. 199 at 555–56; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 348:12–24, 390:24–391:4; Ex. 28 [Murray Dep. Tr.] at 158:6-21; Ex. 14 [Castaneda Dep. Tr.] at 66:2–17; Ex. 22 [Fields Dep. Tr.] at 148:18–23; Ex. 39 [Deposition Transcript of Micaela Vergara ("Vergara Dep. Tr.")] at 129:15–130:17, 257:6–10; Ex. 18 [De La Cruz Dep. Tr.] at 163:7–164:5; *see also* Ex. 2 [ORR MAP] § 1.4.2 at 90–91; Ex. 46 [Heath Dep. Ex. 169] at 1270 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 138. | Failing to step-down children who are ready for step-down can be detrimental to their long-term psychological well-being and is contrary to their best interests. | Ex. 6 [RFA 2nd Set] Nos. 172–73 at 544–46; Ex. 24 [Heath Dep. Tr.] 215:7–10 |
| 139. | Children in restrictive placements are generally ineligible for step-down directly to long-term foster care. | Ex. 1 [ORR Policy Guide] § 1.2.6 at 25; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 371:8–372:3 (no prohibition but not aware of this happening), 390:24–391:16; Ex. 17 [Cook Dep. Tr.] at 179:1–3; Ex. 35 [Smith Dep. Tr.] at 95:8–22; Ex. 24 [Heath Dep. Tr.] at 214:3–7; Ex. 46 [Heath Dep. Ex. 169] at 1270 (following statement with respect to minor F.J.M. who was placed in a therapeutic staff secure facility: "Denied from LTFC") |
| 140. | The average length of care of unaccompanied children who were in secure, staff-secure, or RTC care is longer than the average length of care of unaccompanied children who were never stepped up. | Joint Stip. ¶ 64 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

32

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 141. | The average time to reunification was higher for custody periods with step-ups to secure, staff-secure, therapeutic, RTCs, and OONs (*i.e.*, average of 183.8 days) than custody periods without step-ups (*i.e.*, average of 52.6 days). | Ex. 57 [Ryo Expert Rep.] at 1396–97 (providing step-up definition used in report); *id.* at 1398, 1401–02 (summary and analysis regarding time to reunification for custody periods with and without step-ups); *id.* at 1405 (Appendix D. Time to reunification for custody periods with and without step-ups); Ex. 34 [Ryo Dep. Tr.] at 106:6–23, 108:4–109:7; *see also* Ex. 5 [RFA 1st Set] No. 81 at 502–03 (admitting average length of care for children who were in secure and staff secure is longer than average length of care for children who were never in secure or staff secure care) |
| 142. | From November 2017 to March 13, 2020, children spent the following average lengths of time in ORR custody before reunification: (1) average of 52.9 days for shelter only placements; (2) average of 176.5 days for children who spent time detained in a staff-secure facility; (3) average of 184.6 days for children who spent time detained in a therapeutic group home; (4) average of 185.9 days for children who spent time detained in a secure facility; (5) average of 236.3 days for children who spent time detained in a RTC; (6) average of 246.3 days for children who spent time in a therapeutic staff-secure facility; and (7) average of 327.2 days for children who were detained in out-of-network placements. | Ex. 57 [Ryo Expert Rep.] at 1402–03, 1406–07 (Appendix E. Time to reunification by placement type); Ex. 34 [Ryo Dep. Tr.] at 81:19–82:6, 110:2–25 |

Cooley LLP
Attorneys At Law
Los Angeles

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 143. | ORR has detained at least one Class Member in restrictive placements for a total period of over four years. | Ex. 122 at 1923 (███████████████████████████████████████████████████ ) |
| 144. | Children who ORR steps to secure, staff-secure, therapeutic staff-secure, RTCs, and OONs are less likely to be reunified with proposed custodians than children who are not stepped up. | Ex. 57 [Ryo Expert Rep.] at 1404; Ex. 34 [Ryo Dep. Tr.] at 33:17–20, 116:4–117:24 |
| 145. | Children who ORR places in therapeutic group homes are less likely to be reunified with proposed custodians than children who were only ever in shelter placement. | Ex. 57 [Ryo Expert Rep.] at 1404; Ex. 34 [Ryo Dep. Tr.] at 116:4–117:24 |
| 146. | Children who ORR steps up to secure, staff-secure, therapeutic staff-secure, RTCs and OONs are more likely to voluntarily depart the United States than children whom it does not step-up. | Ex. 57 [Ryo Expert Rep.] at 1404 |
| 147. | Children who ORR places in therapeutic group homes are more likely to voluntarily depart the United States than children who only ever spent time in ORR shelters. | Ex. 57 [Ryo Expert Rep.] at 1404 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 148. | ORR does not release children directly from restrictive placements to Unaccompanied Refugee Minor ("URM") programs. | Ex. 17 [Cook Dep.] 270:18–271:3; Ex. 111 at 1859; Ex. 107 at 1839; Ex. 97 at 1761 ("ORR is rarely able to place minors into the URM program out of a staff secure placement"); Ex. 105 at 1830; Ex. 24 [Heath Dep. Tr.] at 214:8–215:6; Ex. 46 [Heath Dep. Ex. 169] at 1271 (stating the following with respect to minor F.M.J., "URM application sent 12/17 and 2/17. Drug history and staff secure therapeutic so not likely to get URM."); *id.* (stating the following with respect to minor F.J.M. who is placed at Friends of Youth McEachern therapeutic staff secure, "Pending URM placement" but "URM won't accept due to mental health needs.") |
| 149. | A child may be more likely to be accepted by a local URM program after the child has been stepped down to a less restrictive placement. | Joint Stip. ¶ 63 |
| 150. | ORR and case staff exercise discretion to determine whether a child is "stable" enough to step-down. | Ex. 39 [Vergara Dep. Tr.] at 113:17–22, 120:4–12, 222:17–23; Ex. 24 [Heath Dep. Tr.] at 210:8–10; Ex. 16 [Contreras Dep. Tr.] at 143:7–22; Ex. 35 [Smith Dep. Tr.] at 159:21–161:6; Ex. 26 [Londino Dep. Tr.] at 269:1–16; SUF 176 *infra* ("Although ORR uses the criteria whether a child is a "danger to self or others" to determine step-up or step-down eligibility, ORR employs no standardized metric to determine whether a child meets this standard, *i.e.*, the child is a danger to self or others.") |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---------------------|---------------------|
| 151. | ORR policy does not provide standardized metrics to determine whether a particular Class Member is adequately stabilized to merit step-down. | Ex. 1 [ORR Policy Guide] § 1 at 22–33 (providing no standardized metric to assess step down eligibility); *see also* Ex. 6 [RFA 2nd Set] No. 198 at 555; Ex. 16 [Contreras Dep. Tr.] at 143:11–22 |
| 152. | As a matter of practice, ORR and its care providers require that children have at least 30 days of good behavior before they may be stepped down. | Ex. 14 [Castaneda Dep. Tr.] at 145:9–18; Ex. 35 [Smith Dep. Tr.] at 156:8–158:7; Ex. 24 [Heath Dep. Tr.] at 199:10–13, 204:13–17, 206:14–208:1; Ex. 49 [Heath Dep. Ex. 171] at 1305 ("The minor does not qualify for a step down at this time, as the minor has not completed his 30 days without an SIR."); *id.* at 1303 (FFS Supervisor directing programs to accept lateral transfer); Ex. 16 [Contreras Dep. Tr.] at 141:18–143:5; Ex. 17 [Cook Dep. Tr.] at 181:10–182:15 |
| 153. | ORR evaluates a child's "good behavior" on, among other things, the number of SIRs the child has received. | Ex. 16 [Contreras Dep. Tr.] at 138:4–7; Ex. 26 [Londino Dep. Tr.] at 236:22–237:11 |
| 154. | The behavior that triggers an SIR varies from program to program. | Ex. 10 [Bartholomew Dep. Tr.] at 83:18–22, 85:9–14; Ex. 23 [Fink Dep. Tr.] at 73:5–9 |
| 155. | The step-down process can take several weeks and sometimes even several months. | Ex. 28 [Murray Dep.Tr.] at 190:16–18; 191:5–192:18, 193:10–17, 196:1–17; Ex. 33 [Deposition Transcript of Faith Ray ("Ray Dep. Tr.")] at 166:23–167:7; Ex. 39 [Vergara Dep. Tr.] at 129:15–130:17, 257:6–10 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

36

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 156. | ORR generally requires home studies or home study addendums of proposed custodians of children it detains in restrictive placements. | Ex. 35 [Smith Dep. Tr.] at 138:17–139:3, 139:22–140-1; Ex. 17 [Cook Dep. Tr.] at 238:15–23; Ex. 28 [Murray Dep. Tr.] at 198:4-21, 211:23-212:11; Ex. 39 [Vergara Dep.] at 159:7-19; Ex. 24 [Heath Dep.] 145:15-18; Ex. 92 at 1610; Ex. 104 at 1822 (minor being stepped up to who was placed in secure was referred for a home study shortly before step up);  Ex. 106 at 1833; Ex 109 at 1845; Ex. 112 at 1865; Ex. 137 [F.R.A. Declaration] ¶ 14; Ex. 113 at 1872; Ex. 114 at 1879–80; Ex. 115 at 1887; Ex. 118 at 1904; Ex. 119 at 1910; Ex 127 at 1951 |
| 157. | ORR's written policies and procedures govern ORR's placement and transfer decisions. | Ex. 1 [ORR Policy Guide] § 1 at 22 (title "Placement in ORR Care Provider Facilities"); id. § 1.1 at 22 (heading, "Summary of Policies for Placement and Transfer of Unaccompanied Alien Children in ORR Care Provider Facilities"); Ex 2 [ORR MAP] § 1 at 58 (Manual of Procedures on "Placement in ORR Case Provider Facilities"); id. § 1.1 at 62 ("Summary of Procedures for Placement and Transfer of UAC") |
| 158. | None of ORR's policies or practices concerning step-ups or step-downs is formally published in the Federal Register or a Notice of Proposed Rulemaking. | Ex. 5 [RFA 1st Set] No. 2 at 468; ECF 144 [Azar Answer] ¶¶ 109, 123; Ex. 11 [Bartholomew 30(b)(6) Dep. Tr.] at 43:11–44:6 |
| 159. | ORR's online Policy Guide and ORR MAP are not always consistent. | Ex. 24 [Heath Dep. Tr.] at 92:6–14, 294:19–295:4; Ex. 11 [Bartholomew 30(b)(6) Dep. Tr.] at 46:15–47:4; Ex. 32 [Deposition Transcript of Mae C. Quinn ("Quinn Dep. Tr.")] at 17:9–14, 169:23–170:4 |

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 160. | ORR frequently changes the policies and procedures set out in its Policy Guide and MAP. | Ex. 24 [Heath Dep. Tr.] at 28:19–20, 90:16–18; Ex. 28 [Murray Dep. Tr.] at 59:7–8; *see* Ex. 132 (reflecting changes to ORR Policy Guide); Ex. 136 (reflecting to changes to ORR MAP) |
| 161. | Case Managers are tasked with recommending that children be stepped up and stepped down. | Ex. 35 [Smith Dep. Tr.] at 76:13–24, 78:17–22; Ex. 31 [Deposition Transcript of Judette Padilla ("Padilla Dep. Tr.")] at 84:1–7; Ex. 28 [Murray Dep. Tr.] at 103:22–104:2; Ex. 19 [David Dep. Tr.] at 149:19–150:1; Ex. 33 [Ray Dep. Tr.] at 82:3–4 |
| 162. | Case Managers compile the information and evidence ORR uses to decide whether children will be stepped up or stepped down. | Ex. 2 [ORR MAP] § 1.4 at 79; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 276:9–16, 281:8–282:1; Ex. 35 [Smith Dep. Tr.] at 49: 20–50:3 |
| 163. | Case Coordinators rely almost exclusively on written documentation compiled and provided by Case Managers in formulating their recommendations regarding step-up or step-down. | Ex. 35 [Smith Dep. Tr.] at 80:15–22; Ex. 24 [Heath Dep. Tr.] at 81:23–82:25; Ex. 28 [Murray Dep.] 46:6–47:3, 104:14-25, 117:16–23, 119:2–24, 131:14–21 |
| 164. | ORR's written policy does not mandate that Case Coordinators interview children before they make a recommendation on step-up or step-down. | Joint Stip. ¶ 66 |
| 165. | In practice, Case Coordinators rarely speak with children before making step-up and step-down recommendations. | Ex. 28 [Murray Depo. Tr.] at 67:10–68:8, 69:2–3, 70:18–22, 136:10–13, 137:7–14 |
| 166. | FFS are ORR staff members. | Joint Stip. ¶ 67 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 167. | FFS make final step-up and step-down decisions without further review by any other official, even when the FFS's decisions depart from a Case Manager's, Clinician's and/or Case Coordinator's recommendation. | Ex. 1 [ORR Policy Guide] §§ 1.4, 2.3.1 at 28, 39; Ex. 2 [ORR MAP] § 1.4 at 79, 84–85; *id.* § 1.4.6 at 100–01; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 282:24–284:13; Ex. 23 [Fink Dep. Tr.] at 23:9–14, 106:10–15, 169:10–15, 170:1–11, 177:19–22; Ex. 20 [Eich Dep. Tr.] at 154:1–6; Ex. 18 [De La Cruz Dep. Tr.] at 21:6–8, 59:4–60:21, 132:23–133:21, 200:3–7; Ex. 31 [Padilla Dep. Tr.] at 84:1–86:18; Ex 37 [Sualog Dep. Tr.] at 52:9–53:4; Ex. 33 [Ray Dep. Tr.] at 76:8–17, 83:2–11, 127:21–128:1; Ex. 35 [Smith Depo. Tr.] at 46:16–47:16, 97:17–20; Ex. 16 [Contreras Dep. Tr.] at 69:16–22; Ex. 84 at 1562, 1566, 1568; Ex. 85 at 1573, 1575 |
| 168. | FFS rely exclusively on information and evidence provided by Case Managers in making step-up and step-down decisions. | Ex. 35  [Smith Dep. Tr.] at 99:12–17, 100:4–8, 149: 9–25; Ex. 24 [Heath Dep. Tr.] at 83:5–10, 86:16–21; Ex. 20 [Eich Dep. Tr.] at 170:15–19 |
| 169. | The information and evidence FFS rely on in making step-up and step-down decisions is not always accurate. | Ex. 24 [Heath Dep. Tr.] at 211:5–12 |
| 170. | ORR's written policy does not require FFS to interview children before making a final step-up and step-down decision. | Joint Stip. ¶ 68 |
| 171. | An FFS did not interview Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., or Benjamin F. before stepping them up to Shiloh RTC. Notes in their case files show they met with their Case Managers to discuss their case. | Joint Stip. ¶ 69 |

Cooley LLP
Attorneys At Law
Los Angeles

39

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 172. | An FFS did not interview Class Representative Jaime D. before stepping him up to Yolo secure. Jaime D. met with his Case Manager to discuss his case. | Joint Stip. ¶ 70 |
| 173. | ORR's policy does not require FFS to communicate with a child's potential custodian before making a step-up or step-down decision. | Joint Stip. ¶ 71 |
| 174. | ORR policies do not require an FFS to consult with an FFS Supervisor or anyone else regarding step-up except for placement into OON facilities. | Ex. 23 [Fink Dep. Tr.] at 23:15–21, 169:5–25; Ex. 1 [ORR Policy Guide] § 1.2 at 22–23; Ex. 2 [ORR MAP] § 1.4, at 89; Ex. 18 [De La Cruz Dep. Tr.] at 58:19–59:3, 133:16–21, 135:14–24, 137:12–17; Ex. 35 [Smith Dep. Tr.] at 83:11–84:1 |
| 175. | FFS have not received formal training on the differences between therapeutic staff-secure, staff-secure, and RTC placements. | Ex. 35 [Smith Dep. Tr.] at 37:21–24; Ex. 23 [Fink Dep. Tr.] at 55:1–5; Ex. 39 [Vergara Dep. Tr.] at 97:11–25 |
| 176. | Although ORR uses the criteria whether a child is a "danger to self or others" to determine step-up or step-down eligibility, ORR employs no standardized metric to determine whether a child meets this standard, *i.e.*, the child is a danger to self or others. | Ex. 24 [Heath Dep. Tr.] at 96:19–22, 97:23-25, 98:1-4; Ex. 1 [ORR Policy Guide] § 1.2.1 at 23 (placement consideration "danger to self" and "danger to the community"); *id.* § 1.2.4 at 24 (secure placement criteria includes "danger to self or others"); *id.* § 1.4.2 at 29 ("[s]tep downs may occur when ORR, in its discretion, determines the UAC no longer poses a danger to himself or others"); *id.* § 1.4.6 at 30 (RTC placement criteria – danger to self or others) |

Cooley LLP
Attorneys At Law
Los Angeles

40

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 177. | ORR employs no evidentiary standard in deciding whether a child should be stepped up or stepped down. | Ex. 1 [ORR Policy Guide] § 1 (no evidentiary standard articulated for step-up or step-down decisions); Ex. 5 [RFA 1st Set] No. 97 at 508–09; Ex. 6 [RFA 2nd Set] No. 112 at 531; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 74:7-11, 76:23–77:22 |
| 178. | ORR provides no guidance on how to weigh placement considerations under ORR Policy Guide § 1.2.1. | Ex. 1 [ORR Policy Guide] § 1.2.1 at 23 (absence of guidance or direction on how to weigh these factors); Ex. 2 [ORR MAP] § 1.2.1 at 65 (same) |
| 179. | ORR does not require that a child be provided prior notice that he or she may be stepped up or the reasons for step-up. | Joint Stip. ¶ 73 |
| 180. | Class Representatives Lucas R. Gabriela N., Daniela Marisol, Sirena P., Jaime D., and Benjamin F. were stepped up without being provided written notice of the basis for restrictive placement prior to step-up. | Joint Stip. ¶ 74 |
| 181. | ORR does not require that a parent or other potential custodian receive prior written notice that a child is going to be stepped up. | Ex. 1 [ORR Policy Guide] § 1 (absence of any reference to notice to a child's parent or potential sponsor); Ex. 2 [ORR MAP] § 1.4 at 88 (only referring to verbal notification to "UAC's approved contacts"); Ex. 31 [Padilla Dep. Tr.] at 89:12–24 |
| 182. | Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P, Jaime D., and Benjamin F.'s potential sponsors were not provided written notice of the basis for restrictive placement prior to the child being stepped-up. | Joint Stip. ¶ 75 |

Cooley LLP
Attorneys At Law
Los Angeles

41

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 183. | ORR requires that children be given a form notice of placement ("NOP") within 48 hours following step-up to a secure, staff secure or in-network RTC placement. The NOP is the means by which ORR informs a child of the reason for step-up. | Ex. 2 [ORR MAP] § 1.2.4 at 65; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 65:2–6, 79:1–5, 330:17–22; Ex. 35 [Smith Dep. Tr.] at 129:7–15; Ex. 19 [David Dep. Tr.] at 145:3–10, 147:10–20; Ex. 23 [Fink Dep. Tr.] at 83:19–24; Ex. 16 [Contreras Dep. Tr.] at 116:1–3 |
| 184. | ORR's procedures do not require that a child receive a NOP within 48 hours of placement in TAR or RTC facilities (*i.e.*, out-of-network facilities). | Ex. 2 [ORR MAP] § 1.2.4 at 65; *id.* § 1.4.6 at 100–01 (no reference to the same "within 48-hour" language). |
| 185. | A child placed in a therapeutic group home does not receive a NOP. | Ex. 2 [ORR MAP] § 1.2.4 at 65–66 (no mention of whether a child in a therapeutic group home would receive a NOP); Ex. 23 [Fink Dep. Tr.] at 151:5–8 |
| 186. | The NOP is supposed to inform a child in a restrictive setting of the reason for the placement and their right to challenge the placement. | Ex. 41 [Ray Dep. Ex. 115] at 122728; *see* Ex. 1 [ORR Policy Guide] § 1.2.4 at 24 ("ORR provides the youth notice of the reasons for placement in a secure or staff secure facility."); Ex. 18 [De La Cruz Dep. Tr.] at 154:1–16; Ex. 33 [Ray Dep. Tr.] at 85:5–11 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 187. | The NOP states that: "ORR will review your placement at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement. For more information on the process, please ask your case manager. If you believe you have not been properly placed or that you have been treated improperly, you may also ask a Federal District court to review your case. You may call a lawyer to assist you." | Joint Stip. ¶ 76 |
| 188. | Stepped up children do not always receive a NOP within 48 hours after arrival at a restrictive placement. | Ex. 16 [Contreras Dep. Tr.] at 119:17–20; Ex. 33 [Ray Dep. Ex. 119]; Ex. 126 at 1948 ( ); Ex. 123 at 1928 ( ; Ex. 124 at 1934, 1936 ; Ex. 125 at 1940, 1943 ; Ex. 29 [Nathan-Pineau Dep. Tr.] at 60:1–10 |

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 189. | Stepped up children do not consistently know or understand the reasons for restrictive placement. | Ex. 24 [Heath Depo. Tr.] at 283:21–284:15; Ex. 70 [K.S.G.P. Decl.] ¶ 2; Ex. 82 [Y.A.M.S. Decl.] ¶ 42; Ex 65 [D.S.J.L. Decl.] ¶ 4; Ex. 44 [Ray Dep. Ex. 119] at 1264 (noting non-compliance issue of "[n]ot citing evidence for placement basis in NOP") |
| 190. | Stepped up children are not consistently informed and sometimes do not understand that they may contest restrictive placement. | Ex. 33 [Ray Dep. Tr.] at 89:14–90:4, 92:8–93:5, 94:17–95:3, 95:18–96:1, 212:16–213:15, 216:7-25; 218:12-23; Ex. 40 [Ray Dep. Ex. 113] at 1120 ("No staff were aware of minor's right to challenge secure placement . . . No one has been communicating this right to minors"); Ex. 24 [Heath Dep. Tr.] at 283:21-284:15; Ex. 65 [J.M.R.R. Decl.] ¶ 4; Ex. 67 [K.L.F. Decl.] ¶ 8; Ex. 62 [D.S.J.L. Decl.] ¶ 4 |
| 191. | ORR's written policy does not require that a child's NOP be provided to the child's parents or other potential sponsors. | Joint Stip. ¶ 77 |
| 192. | ORR's policy does not require that the NOP include documents or other evidence supporting the step-up decision. | Ex. 13 [Biswas Dep. Tr.] at 69:16–70:9; *see* Ex. 1 [ORR Policy Guide] § 1.2.4 at 24 (no reference to including these documents or evidence); Ex. 2 [ORR MAP] § 1.2.4, at 65–66 (same); *id.* § 1.4.2 at 91 (same); *id.* § 1.4.2, Fig. 1.12 at 94 (evidence used for 30-day review available upon demand by UAC's attorney); *id.* at 123–24 |
| 193. | ORR's policy does not afford children an opportunity to challenge a step-up prior to placement in a restrictive setting. | Ex. 5 [RFA 1st Set] No. 93 at 506–07; Ex. 1 [ORR Policy Guide § 1 at 22–33; *id.* § 1.4.7 at 30; Ex. 19 [David Dep. Tr.] at 143:10-14; Ex. 55 [Londino Expert Rep.] ¶ 14 at 1369 |

Cooley LLP
Attorneys At Law
Los Angeles

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 194. | In practice, ORR does not provide an opportunity to challenge a step-up prior to placement in a restrictive setting. | ECF 144 [Answer] ¶¶ 52, 81, 90; Ex. 79 [P.D.O.P. Decl.] ¶ 4; Ex. 66 [J.S.C.M. Decl.] ¶ 6-7; Ex. 60 [C.J.A.L. Decl.] ¶ 7; Ex. 61 [D.D.R.O. Decl.] ¶ 3; Ex. 64 [H.A.R.M. Decl.] ¶ 5 |
| 195. | Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., and Benjamin F. were stepped up to an RTC, and Jaime D. was stepped up to secure juvenile detention without being provided an evidentiary hearing to challenge the step-up decision. | Joint Stip. ¶ 79 |
| 196. | ORR's policy does not allow children to present evidence on their own behalf before they are stepped up. | Ex. 1 [ORR Policy Guide] § 1 at 22–33; Ex. 5 [RFA 1st Set] No. 99 at 510–12; Ex. 29 [Nathan-Pineau Dep. Tr.] at 17:8–14; Ex. 36 [Stuart Dep. Tr.] at 100:13–22 |
| 197. | ORR's policy does not provide children with the opportunity to inspect or rebut adverse evidence before step-up. | Ex. 1 [ORR Policy Guide] § 1 at 22–33; Ex. 35 [Smith Dep. Tr.] at 97:21–99:17; Ex. 36 [Stuart Dep. Tr.] at 100:13-22; Ex. 33 [Ray Dep. Tr.] at 202:10–22; Ex. 24 [Heath Dep. Tr.] at 85:16–23, 86:2–9; Ex. 19 [David Dep. Tr.] at 176:2–14 |
| 198. | Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., and Benjamin F. were stepped up to an RTC, and Jaime D. was stepped up to secure juvenile detention without being provided an opportunity to inspect or rebut adverse evidence in an evidentiary hearing regarding step-up or placement in a restrictive setting. | Joint Stip. ¶ 80 |

CooleyLLP
Attorneys At Law
Los Angeles

45

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 199. | ORR does not provide children the opportunity to cross-examine witnesses in an evidentiary hearing regarding step-up or placement in a restrictive setting. | Joint Stip. ¶ 81 |
| 200. | Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., and Benjamin F. were stepped up to an RTC, and Jaime D. was stepped up to secure juvenile detention without being provided an opportunity to cross-examine witnesses in an evidentiary hearing regarding step-up or placement in a restrictive setting. | Joint Stip. ¶ 82 |
| 201. | ORR does not permit children to request reconsideration or otherwise challenge step-up until after they have spent 30 days in a secure facility or RTC. | Ex. 5 [RFA 1st Set] No. 99 at 510–12; Ex. 6 [RFA 2nd Set] No. 105 at 528–29; *id.* No. 120 at 536; Ex. 1 [ORR Policy Guide] § 1.4.7 at 30; Ex. 2 [ORR MAP] at Appendix 1.3 Notice of Placement in Restrictive Setting 123–24; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 77:23–78:7; Ex. 24 [Heath Dep. Tr.] at 140:3–11; Ex. 19 [David Dep. Tr.] at 157:12–19; Ex. 55 [Londino Expert Rep.] ¶ 14 at 1369 |
| 202. | ORR policy does not afford children an opportunity to request reconsideration or otherwise challenge step-up to staff-secure, therapeutic staff-secure facilities or therapeutic group homes. | Ex. 1 [ORR Policy Guide] § 1.4.7 at 30 (only referring to ORR director review option for secure and RTC placements); Ex. 2 [ORR MAP] § 1.4.7 at 102 (same); Ex. 24 [Heath Dep. Tr.] at 133:20–134:11 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 203. | Stepped up children rarely seek reconsideration or otherwise challenge step-up through ORR's director review process. | Ex. 13 [Biswas 30(b)(6) Dep.] 94:5–14; Ex. 24 [Heath Dep. Tr.] at 130:13–19, 137:24–138:5; Ex. 35 [Smith Dep. Tr.] at 132:11–18; Ex. 14 [Castaneda Dep. Tr.] at 81:12–82:20; Ex. 19 [David Dep. Tr.] at 160:7–18; Ex. 23 [Fink Dep. Tr.] at 155:2–12 |
| 204. | The request for reconsideration by the ORR Director does not include a hearing with the right to present evidence or confront adverse evidence. | Ex. 1 [ORR Policy Guide] § 1.4.7 at 30 (no mention of right to request hearing or any form of hearing with right to present evidence or confront evidence); *compare with id.* § 2.7.8 at 50 (when appealing a denial of release to a parent or legal guardian, policy is clear that the person challenging the decision can request a hearing with an opportunity to present evidence and testimony) |
| 205. | Although a child who ORR steps up may request a *Flores* bond hearing before an immigration judge, the outcome of the bond hearing has no determinative outcome on the child's level of placement in ORR custody. | Ex. 6 [RFA 2nd Set] No. 105 at 528–29 ("ORR…takes into consideration the immigration judge's decision"); Ex. 1 [ORR Policy Guide] § 1.4.2 at 28–29 (same); *id.* § 2.9 at 54 ("An immigration judge does not rule on any of the following…the unaccompanied alien child's placement…while in ORR custody."); Ex. 29 [Nathan-Pineau Dep. Tr.] at 47:9–23; Ex. 42 [Ray Dep. Ex. 116] at 1257 ("The judge's determination does not automatically change the child's placement in a particular care provider facility) |

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---------------------|---------------------|
| 206. | Stepped up children rarely, if ever, seek federal court review of restrictive placement without the assistance of counsel. There were only 9 instances of habeas petitions found within the Defendants hundreds of thousands of produced documents. | Ex. 86 at 1579; Ex. 87 at 1583; Ex. 88 at 1586; Ex. 89 at 1589; Ex. 90 at 1593; Ex. 91 at 1596; Ex. 108 at 1842–43 (███████████ ██████████████); Ex. 110 at 1851 (████████████████); Ex. 98 at 1764 (subject line "BDAC habeas case") |
| 207. | All 50 states and the District of Columbia require a hearing before a neutral factfinder before a child can be detained in a secure facility. | Ex. 54 [Expert Report of Professor Jessica Heldman ("Heldman Expert Rep.")] at 1356–57 |
| 208. | A majority of states also require a hearing before a neutral factfinder before a child can be detained in a staff-secure facility. | Ex. 54 [Heldman Expert Rep.] at 1356–57 |
| 209. | ORR's Policy Guide requires that stepped up children receive a placement review at least once every thirty days they spend in a restrictive placement. | Joint Stip. ¶ 84; Ex. 1 [ORR Policy Guide] § 1.4.2 at 28 ("At least every 30 days, the care provider staff, in collaboration with the Case Coordinator and the ORR/FFS, reviews the placement of a UAC") |
| 210. | ORR's Policy Guide provides that step-downs may occur when ORR, in its discretion, determines the UAC no longer poses a danger to himself or others, or no longer presents an escape risk (for staff secure step downs only). | Joint Stip. ¶ 49; Ex. 1 [ORR Policy Guide] § 1.4.2 at 29 |
| 211. | Stepped up children may receive a placement review earlier than 30 days only if an FFS approves the request. | Ex. 1 [ORR Policy Guide] § 1.4.2 at 28 ("FFS may allow the review to take place earlier than 30 days") |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 212. | ORR sometimes fails to provide children with a 30-day placement review. | Ex. 44 [Ray Dep. Ex. 119] at 1264 (citing non-compliance issue of "[n]ot providing a NOP every 30 days"); Ex. 45 [Ray Dep. Ex. 120] at 1266 (email from policy analyst Faith Ray to FFS on 11/28/18 regarding a UAC who had not had a case review since 6/30/18) |
| 213. | Stepped up children are not permitted to participate in or submit evidence for 30-day placement reviews. | Ex. 1 [ORR Policy Guide] § 1; Ex. 2 [ORR MAP] § 1; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 54:16–22, 92:2–7; Ex. 16 [Contreras Dep. Tr.] at 147:11–13; Ex. 6 [RFA 2nd Set] No. 114 at 532–33 ("Defendants admit that unaccompanied alien children do not have the opportunity to present witnesses or evidence before they are stepped down to a less restrictive setting") |
| 214. | Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., Jaime D., and Benjamin F. participated in case management meetings with their Case Managers, but they were not a part of the case staffing meetings that occurred between Case Managers, Clinicians, Case Coordinators, and the FFS to discuss their cases. | Joint Stip. ¶ 87 |
| 215. | ORR does not require that children be allowed an opportunity to inspect the evidence ORR personnel will consider in conducting 30-day placement reviews. | Ex. 1 [ORR Policy Guide] § 1.4.2 at 28–29; Ex. 2 [ORR MAP] § 1.4.2 at 90–95; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 76:2–12; 73:25–74:6 |

CooLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

49

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 216. | ORR does not allow children an opportunity to cross-examine witnesses who supply information considered in determining whether they will be stepped down. | Ex. 1 [ORR Policy Guide] § 1 at 22–33; *id.* § 1.4.2 at 28–29; Ex. 2 [ORR MAP] § 1 at 90–95; Ex. 6 [RFA 2nd Set] No. 116 at 534–35 |
| 217. | Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., Jaime D., and Benjamin F. were not provided an opportunity to cross-examine witnesses in an evidentiary hearing regarding eligibility for step-down. | Joint Stip. ¶ 89 |
| 218. | ORR has erroneously stepped up children to restrictive placements. | ECF No. 144 [Answer] ¶ 75; Ex. 33 [Ray Dep. Tr.] at 148:16–22, 152:14–153:22; 157:10–158:17, 162:7–10, 163:14–164:12; 166:23–167:7; Ex. 43 [Ray Dep. Ex. 117] at 1261–62; Ex. 139 [Ray Dep. Ex. 118] at 2028 ("the NOP was so vague and did not contain enough information to know if [minor] is an actual danger to self or others"); Ex. 44 [Ray Dep. Ex. 119]; Ex. 16 [Contreras Dep. Tr.] at 71:3–12, 75:11–76:1, 76:18–77:3, 77:5–78:1, 80:2–17, 105:5–106:22, 113:12–114:17; Ex. 22 [Fields Dep. Tr.] at 123:5–16, 172:7–15; Ex. 23 [Fink Dep. Tr.] at 40:13–17, 153:8–13; Ex. 24 [Heath Dep. Tr.] at 98:5–16, 99:3–7; Ex. 14 [Castaneda Dep. Tr.] at 74:13-76:7, 88:21–90:9; Ex. 27 [Meyerstein Dep. Tr.] at 225:19–226:6; Ex. 20 [Eich Dep. Tr.] at 108:7–109:5; Ex. 96 at 1757 ("some of the minors were inappropriately placed in secure") |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 219. | ORR has erroneously refused children step-down from restrictive placement. | Ex. 16 [Contreras Dep. Tr.] at 155:1–5; ECF No. 144 [Answer] ¶ 75; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 348:12–24, 393:1–7; Ex. 33 [Ray Dep. Tr.] at 170:19–23; Ex. 35 [Smith Dep. Tr.] at 82:20–83:5, 162:16–163:8; Ex. 24 [Heath Dep. Tr.] at 212:16–23; Ex. 18 [De La Cruz Dep. Tr.] at 162:3–16, 163:7–164:5; Ex. 17 [Cook Dep. Tr.] at 197:21–25; Ex. 28 [Murray Dep. Tr.] at 193:10–17, 156:18–23, 158:6–21, 170:3–7, 184:20-189:4, 192:18–193:4; Ex. 47 [Murray Dep. Ex. 162] ("I have several cases at yolo that are in need of RTC but our RTC keep rejecting them."); Ex. 16 [Contreras Dep. Tr.] at 151:17–152:8; Ex. 22 [Fields Dep. Tr.] at 148:8–23; Ex. 39 [Vergara Dep. Tr.] at 129:15–130:17, 257:6–10 |
| 220. | ORR policies and practices for placing children in restrictive settings are inconsistent with accepted state and federal child welfare practice. | Ex. 54 [Heldman Expert Rep.] at 1350 |
| 221. | ORR's placement of children in RTCs is more financially expensive than placing them in shelters. | Joint Stip. ¶ 90 |
| 222. | ORR steps up relatively few children. | Joint Stip. ¶ 91 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 223. | As of March 13, 2020, 14 of the total 3,621 children in ORR in-network care were detained in a secure facility, 17 were placed in an RTC, 30 were placed in a staff-secure facility, 6 were placed in a therapeutic staff-secure facility, and 13 were placed in therapeutic group homes. | Ex. 93 at Ex. 93 at Census Tab, at Row J at 1630–1745 (Program_Type) (number of children detained in ORR custody as of March 13, 2020) |
| 224. | As of March 13, 2020, 11 children were placed in out-of-network RTCs. | Ex. 93 at Out of Network Placements Tab, at Row A at 1746 (children placed in OON RTC as of March 13, 2020) |
| 225. | ORR denies that the principal reason it does not afford Class Members greater procedural protections against unnecessary step-ups is because it would entail greater expense and administrative inconvenience. | Ex. 6 [RFA 2nd Set] No. 107 at 529–30 |
| 226. | Plaintiff Class Members are typically indigent, speak little or no English, and have little or no knowledge of the United States' legal system. | ECF No. 144 [Answer] ¶ 146; Ex. 6 [RFA 2nd Set] No. 141 at 538-39 |
| 227. | ORR is required to ensure "to the greatest extent practicable" that children from noncontiguous countries have counsel to represent them "in legal proceedings or matters and protect them from mistreatment." | 8 U.S.C. § 1232(c)(5) |
| 228. | ORR and care provider facilities are required to provide children with information about the availability of free legal assistance and their right to be represented by counsel. | Ex. 1 [ORR Policy Guide] § 2.2.5 at 38-39; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 400:13–18 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 229. | The U.S. Department of Health and Human Services ("HHS") contracts with the Vera Institute of Justice ("VIJ"), a non-profit organization, to coordinate the delivery of free legal services to children who are or have been in ORR custody. | Ex. 6 [RFA 2nd Set] No. 138 at 537 |
| 230. | ORR has a legal services contract with VIJ that funds limited scope direct representation for children in immigration-related matters. | Joint Stip. ¶ 97 |
| 231. | VIJ in turn subcontracts with non-profit legal aid providers to counsel and represent children in immigration proceedings. | Ex. 6 [RFA 2nd Set] No. 138 at 537 |
| 232. | VIJ is a contractor whose scope of work is to implement regional programs providing limited scope legal services to children. | Joint Stip. ¶ 98 |
| 233. | The vast majority of Class Members are represented, if at all, by legal service providers under subcontract with VIJ. | Ex. 30 [Ortiz Dep. Tr.] at 77:7–18; Ex. 29 [Nathan-Pineau Dep. Tr.] at 61:5–62:2 |
| 234. | ORR does not require Case Coordinators to communicate with Class Members' legal counsel. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 118:3–11; Ex. 37 [Sualog Dep. Tr.] at 130:23–131:21 |
| 235. | In practice, children's counsel rarely, if ever, communicate with Case Coordinators or FFS. | Ex. 28 [Murray Dep. Tr.] at 124:1–25; Ex. 30 [Ortiz Dep. Tr.] at 32:11-22; Ex. 29 [Nathan-Pineau Dep. Tr.] at 22:16–23:9; Ex. 24 [Heath Dep. Tr.] at 50:20–51:10; Ex. 25 [Husted Dep. Tr.] at 176:4–25 |

CooleyLLP
Attorneys At Law
Los Angeles

53

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 236. | Although ORR policy provides that "Case Manager[s] inform[] other stakeholders of the progress" toward releasing a child, it does not require Case Managers to inform children's lawyers of such progress. Instead, ORR policies say that "other stakeholders" "may include local legal service providers and attorneys of record." | Ex. 1 [ORR Policy Guide] § 2.3.2 at 39-40 |
| 237. | In practice, Case Managers have discretion to communicate—or not—with Class Members' lawyers. In some facilities, children's lawyers do not even know who a client's Case Manager is. | Ex. 37 [Sualog Dep. Tr.] at 101:8–21; Ex. 30 [Ortiz Dep. Tr.] at 28:4–30:22; Ex. 29 [Nathan-Pineau Dep. Tr.] at 20:4–25 |
| 238. | ORR does not require FFS to communicate directly or regularly with children's legal counsel. | Ex. 37 [Sualog Dep. Tr.] at 119:1–16; Ex. 38 [Deposition Transcript of Stephanie Treviño, Mar. 5, 2020 ("Treviño Dep. Tr.")] at 100:10–13 |
| 239. | In practice, FFS exercise discretion to communicate or not with children's lawyers. | Ex. 24 [Heath Dep. Tr.] at 50:20–23, 86:13–15, 241:15–17; Ex. 38 [Treviño Dep. Tr.] at 95:21–23; Ex. 25 [Husted Dep. Tr.] at 176:22–25; Ex. 35 [Smith Dep. Tr.] at 46:12–47:3; Ex. 29 [Nathan-Pineau Dep. Tr.] at 18:1–15 |
| 240. | ORR leaves it up to facilities and clinicians to communicate or not with children's legal counsel. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 181:3–13; Ex. 17 [Cook Dep. Tr.] at 66:1–17 |
| 241. | Case Managers do not regularly provide children's legal representatives with evidence relied upon in recommending for or against release, nor do children's lawyers receive a copy of the Case Manager's recommendation for or against release. | Ex. 30 [Ortiz Dep. Tr.] at 37:4–38:7 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

54

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 242. | Case Managers sometimes allow children's counsel to submit affirmative evidence in support of release or non-restrictive placement and sometimes they do not. | Ex. 30 [Ortiz Dep. Tr.] at 31:11–21, 140:2–9 |
| 243. | ORR does not permit children's lawyers to see a Case Coordinator's recommendation regarding a client's release. | Ex. 30 [Ortiz Dep. Tr.] at 38:3–7 |
| 244. | FFS are under no obligation to receive evidence regarding a client's release or placement from children's legal counsel, and they rarely, if ever, do so. | Ex. 29 [Nathan-Pineau Dep. Tr.] at 18:1–7 |
| 245. | In practice, Class Members' legal representatives are sometimes permitted to provide information about potential custodians for their clients to Case Managers and sometimes they are not. | Ex. 30 [Ortiz Dep. Tr.] at 31:11–21, 140:2–9 |
| 246. | As a matter of policy and practice, ORR does not regularly provide children's legal representatives a copies of FFS decisions for or against releasing the legal representatives' clients to available custodians. | Ex. 30 [Ortiz Dep. Tr.]  at 38:3–7 |
| 247. | If a child's counsel wishes to see the evidence and information ORR has for restrictive placement, she or he must formally request a copy of the client's file. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 272:14–23 |
| 248. | ORR has no limit on how long it may take to disclose a child's file after counsel requests it and will not release it to counsel until after its headquarters office approves release. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 276:17–277:16; Ex. 37 [Sualog Dep. Tr.] at 139:19–140:19 |

Cooley LLP
Attorneys At Law
Los Angeles

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 249. | In practice, children's counsel may wait several weeks or months before ORR produces a client's file. | Ex. 29 [Nathan-Pineau Dep. Tr.] at 16:13–21; Ex. 30 [Ortiz Dep. Tr.] at 41:18–23 |
| 250. | When it does produce a client's file, ORR gives children's counsel a version from which the names and contact information of third parties, including those of a child's potential custodians and witnesses to events ORR alleges justify restrictive placement, have been redacted. | Ex. 16 [Contreras Dep. Tr.] at 228:11–16; Ex. 29 [Nathan-Pineau Dep. Tr.] at 19:23–21:11; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 278:1–9 |
| 251. | ORR allows Class Members' legal representatives no role in the course of its deciding to place or continue a child in staff-secure, residential treatment, or secure facilities. | Ex. 6 [RFA 2nd Set] No. 146 at 539; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 71:7–17; Ex. 23 [Fink Dep. Tr.] at 155:13–17; Ex. 19 [David Dep. Tr.] at 154:5–8; Ex. 29 [Nathan-Pineau Dep. Tr.] at 15:9–21 |
| 252. | ORR affords children's legal representatives no right to submit evidence material to release or non-restrictive placement to Case Coordinators. | Ex. 28 [Murray Dep. Tr.] at 123:14–20 |
| 253. | ORR does not affirmatively disclose its evidence for placing or continuing clients in staff-secure, residential treatment, or secure facilities to children's counsel. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 272:14–23; Ex. 29 [Nathan-Pineau Dep. Tr.] at 14:14–21 |
| 254. | ORR does not disclose a child's psychological report to his or her legal representative before relying on it to step-up a child to a secure or psychiatric facility. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 70:5–21 |

Cooley LLP
Attorneys At Law
Los Angeles

56

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 255. | ORR policy does not require that a child's lawyer be informed that his or her client is being stepped up until transfer to a restrictive placement has been completed, or nearly so. | Ex. 12 [Deposition Transcript of Toby Biswas ("Biswas Dep. Tr.")] at 233:13–20; Ex. 29 [Nathan-Pineau Dep. Tr.] at 13:15–14:13; Ex. 30 [Ortiz Dep. Tr.] at 71:23–72:4 |
| 256. | ORR often wakes children in the middle of the night or early in the morning, sending them to psychiatric facilities, juvenile halls, and medium-secure facilities—*i.e.*, unlicensed facilities—without any prior notice or an opportunity to be heard. | Ex. 80 [Jaime D. Decl.] at ¶¶ 6–7; Ex. 81 [Lucas R. Decl.] at ¶ 5; Ex. 78 [Sirena P. Decl.] at ¶ 4 |
| 257. | ORR has identified no reason for failing to advise Class Members' legal representatives that their clients are to be stepped up prior to transfer. | Ex. 35 [Smith Dep. Tr.] at 93:1–4; Ex. 9 [Deposition Transcript of Stephen Antkowiak ("Antkowiak Dep. Tr.")] at 159:10–160:4 |
| 258. | ORR policy does not require that a child's lawyer be informed that it will keep a client in a restrictive placement until after a "30-day review" is complete, and then, only if counsel inquires. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 70:5–16; Ex. 16 [Contreras Dep. Tr.] at 148:3–9; Ex. 19 [David Dep. Tr.] at 158:20–159:6 |
| 259. | ORR does not require that Class Members' legal representatives be informed that their clients are being administered psychotropic drugs. | Ex. 29 [Nathan-Pineau Dep. Tr.] at 70:1–8 |
| 260. | ORR has identified no burden that would result were Class Members' legal representatives to have access to Case Coordinators, which it has permitted in at least some instances in the past. | Ex. 37 [Sualog Dep. Tr.] at 136:1–23; Ex. 29 [Nathan-Pineau Dep. Tr.] at 23:20–24:24 |

Cooley LLP
Attorneys At Law
Los Angeles

57

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 261. | Children's legal counsel have no access to the persons who perform home studies of potential custodians, even though such home studies may be determinative in deciding whether ORR releases a child. | Ex. 37 [Sualog Dep. Tr.] at 210:24–11:3; Ex. 30 [Ortiz Dep. Tr.] at 122:4–7; Ex. 29 [Nathan-Pineau Dep. Tr.] at 83:8–84:6; ECF No. 37-13 [Madelyn R. Decl.] ¶¶ 10–13 |
| 262. | As a matter of policy and practice, ORR leaves it up to Case Managers to provide children's legal representatives with information about potential custodians. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 122:11–24; Ex. 16 [Contreras Dep. Tr.] at 228:11–16; Ex. 29 [Nathan-Pineau Dep. Tr.] at 19:23–21:11 |
| 263. | ORR's written policies do not guarantee children's counsel's involvement in release and placement decisions. | *See generally* Ex. 1 [ORR Policy Guide] |
| 264. | ORR's written policies do not guarantee the right to an interpreter. | *See generally* Ex. 1 [ORR Policy Guide]; Ex. 53 [Edwards Expert Rep.] at 1341 |
| 265. | ORR provided Plaintiffs Lucas R., Daniela Marisol T., Gabriela N., Jaime D., and Sirena P. no legal assistance with respect to release, administration of psychotropic medications, or restrictive placement. | ECF No. 144 [Answer] ¶¶ 35, 46, 69, 77, 85 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 266. | HHS's Administration for Children and Families ("ACF")—of which ORR is a subordinate entity—states, "Numerous studies and reports point to the importance of competent legal representation for parents, children, and youth in ensuring that salient information is conveyed to the court, parties' legal rights are protected and that the wishes of parties are effectively voiced." The ACF exhorts "all child welfare agencies . . . to work together to ensure parents, children and youth . . . receive high quality legal representation at all stages of child welfare proceedings." | Ex. 134 [ACF, High Quality Legal Representation for All Parties in Child Welfare Proceedings Policy] at 1994-95 |
| 267. | In responding to Plaintiffs' Requests for Admission, Defendants failed to identify any state or local jurisdiction that denies children appointed counsel in proceedings to determine whether they may be detained, whether their parents are fit, whether they may be placed in secure juvenile detention facilities or psychiatric treatment centers, or whether they may be administered psychotropic medications. | Ex. 6 [RFA 2nd Set] Nos. 178–82 at 547-52 |

CooleyLLP
Attorneys At Law
Los Angeles

59

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 268. | ORR's policies and practices regarding the role of counsel in release, step-up, and step-down decisions require Class Members' legal representatives to devote more time and resources to piece together the reasons for clients' restrictive placement or continued detention than they otherwise would. This reduces the ability of children's lawyers to advocate for release or transfer to a less restrictive setting. | Ex. 30 [Ortiz Dep. Tr.] at 51:7–52:23 |
| 269. | Apart from possibly delaying release, ORR has identified no governmental interest that would be adversely affected were FFS required to have regular communication with Class Members' legal representatives. | Ex. 37 [Sualog Dep. Tr.] at 136:24–138:18 |
| 270. | ORR has not promulgated a regulation nor issued any formal interpretation of "legal proceedings or matters" as that phrase is used in the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5). | Ex. 13 [Biswas 30(B)(6) Dep. Tr.] at 398:3–399:4; Ex. 37 [Sualog Dep. Tr.] at 114:4–9 |
| 271. | ORR prohibits legal services providers from using federal funds appropriated in furtherance of the TVPRA to represent children with respect to (i) release to available custodians, (ii) restrictive placement, and (iii) the appropriateness of their taking psychotropic drugs. | ECF No. 144 [Answer] ¶ 111; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 400:1–12 |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 272. | ORR views its Congressional appropriation for legal services funding as funding immigration-related legal services. ORR does not view the appropriation as funding other attorney work to represent children with respect to (i) release, (iii) step-up or step-down, and/or (iii) the administration of psychotropic medications. | Joint Stip. ¶ 99 |
| 273. | Some facilities permit Case Managers to communicate regularly with Class Members' legal representatives, regularly share potential custodians' contact information with children's legal representatives, and freely disclose the basis for any delay in release. | Ex. 30 [Ortiz Dep. Tr.] at 59:5–60:4 |
| 274. | Case Managers are not federal employees but are employed by "care providers": *i.e.*, private facilities with which ORR enters into cooperative agreements to place and care for children in ORR legal custody. | Joint Stip. ¶ 92; Ex. 1 [ORR Policy Guide] § 2.3.2 at 39-40 |
| 275. | Case Managers, Case Coordinators, and FFS all routinely review psychological reports before step-up to a restrictive setting is approved. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 275:7–276:16 |

Cooley LLP
Attorneys At Law
Los Angeles

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

| ¶ | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 276. | *Flores* Bond hearings put the onus to initiate the hearing and the burden of proof on the unaccompanied child. | Evidence: Ex. 1 (ORR Policy Guide] § 2.8 at 54-55 ("unaccompanied alien children have the opportunity to seek a bond hearing with an immigration judge…The burden is on the requestor to demonstrate that the child can be released because he or she is not a danger to the community.") |

## CONCLUSIONS OF LAW

1.     Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2.     To obtain a permanent injunction, a plaintiff must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant; and (4) that the permanent injunction being sought would not hurt public interest. *See, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–313 (1982); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

3.     The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (internal quotation marks omitted).

4.     A constitutionally protected liberty or property interest can arise from the Constitution, statute, or contract, including a consent decree. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (Constitution); *Carver v. Lehman*, 558 F.3d

CooleyLLP
Attorneys At Law
Los Angeles

62

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

869, 874–75 (9th Cir. 2009) (statute); *Smith v. Sumner*, 994 F.2d 1401, 1406 (9th Cir. 1993) (consent decree); *see* ECF No. 141 [Class Cert. Order] at 13-15.

5.      Plaintiffs have liberty interests to be free from detention, to familial association, and to be placed in the least restrictive setting—interests guaranteed by the Constitution, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), and the settlement in *Flores v. Barr*, 85-cv-4544-DMG (C.D. Cal.) ("FSA").

6.      "Freedom   from   imprisonment—from   government   custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (recognizing Fifth Amendment liberty interest for immigrant detainees in civil custody); *see also Foucha v. Louisiana*, 504 U.S. 71, 75-80 (1992) ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); *Vitek v. Jones*, 445 U.S. 480, 494 (1980) ("[T]he stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitutes the kind of deprivations of liberty that requires procedural protections.").

7.      "The substantive due process right to family integrity or to familial association is [also] well established." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (holding that parents and children have a well-elaborated constitutional right to live together without government interference). Numerous courts have also held that a child's right to familial association is not limited to parents. *See Moore v. City of East Cleveland*, 431 U.S. 494, 504 (1977) ("The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."); *J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559, 585 (E.D.

CooleyLLP
Attorneys At Law
Los Angeles

63

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

Va. 2018) (rejecting argument that child's interest in family unity is unique to parents, and finding "siblings, aunts or uncles, grandparents, or first cousins" are family "captured in ORR's second-level category of would-be sponsors" and also "constitutionally significant").

8.    The TVPRA creates a protected liberty interest to be "promptly" placed "in the least restrictive setting that is in the best interest of the child," generally with "a suitable family member" or other available guardian or entity. 8 U.S.C. § 1232(c)(2)(A) ("[A]n unaccompanied alien child . . . ***shall*** be promptly placed in the least restrictive setting that is in the best interest of the child.") (emphasis added). The TVPRA also prescribes ORR's duty to place children in non-secure facilities: "A child ***shall not*** be placed in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." *Id.* (emphasis added); *see Carver*, 558 F.3d at 872–73 (statute creates constitutionally protected interest if it contains "explicitly mandatory language"); ECF No. 141 at 13-14.

9.    The FSA creates protected liberty interests in the right to expeditious release from detention and the right to family reunification. (*See* ECF No. 141 at 14-15 (finding FSA protections "are secured by a consent decree and constitute civil rights because they are akin to . . . constitutional and statutory rights").) Paragraph 14, for example, mandates that, where detention is not necessary to secure a minor's timely appearance or ensure safety of the minor or others, "***[ORR] shall release a minor from its custody without unnecessary delay***, in the following order of preference, to: A. a parent; B. a legal guardian; C. an adult relative (brother, sister, aunt, uncle, or grandparent) . . . E. a licensed program willing to accept legal custody; F. an adult individual or entity seeking custody . . . ." (Ex. 8 [FSA] ¶ 14 (emphasis added).) Similarly, Paragraph 18 provides that "[ORR] . . . ***shall make and record the prompt and continuous efforts*** on its part toward family reunification and the release of the minor pursuant to

CooleyLLP
Attorneys At Law
Los Angeles

64

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

Paragraph 14 above." (*Id*. ¶ 18 (emphasis added).) The right to prompt release from detention is not tethered to the degree of relation of the prospective sponsor.

10.     The FSA also creates a constitutionally protected liberty interest in non-secure, licensed facilities: "Except as provided in Paragraphs 12 or 21, such minor ***shall*** be placed temporarily in a licensed program until such time as release can be effected . . . or until the minor's immigration proceedings are concluded, whichever occurs earlier." (Ex. 8 [FSA] ¶ 19 (emphasis added).) Further, "[a] licensed program . . . ***shall*** be non-secure as required under state law" and "licensed by an appropriate State agency to provide  . . . care services for dependent children." (*Id*. ¶ 6 (emphasis added).) This Court has already determined that RTCs and juvenile detention centers are ***not*** "licensed programs" within the meaning of the FSA. *See Flores v. Sessions*, No. 2:85-cv-4544-DMG (AGRx), ECF No. 470 at 11-14 (C.D. Cal. July 30, 2018).

11.     Courts have long applied the *Mathews v. Eldridge* balancing test to "assess whether the government has provided 'the core due process protection of a meaningful hearing.'" *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 797 (6th Cir. 2018). But where, as here, the government's decision depends on factual findings and plaintiffs are ***denied the opportunity to be heard at all***, the court need weigh the interests at stake under the *Mathews* balancing test. *See id*. at 797 (concluding that procedures "violate long-standing principles of procedural due process that predate the *Mathews* test.").

12.     At a minimum, due process requires notice and "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (plurality); *Saravia v. Sessions*, 905 F.3d 1137, 1144 (9th Cir. 2018); *Doe v. Gallinot*, 657 F.2d 1017, 1024 (9th Cir. 1981); *see also Bowman Transp. v. Arkansas Best Freight Sys*., 419 U.S. 281, 288 n. 4 (1974) ("[T]he Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation."); *Goldberg v. Kelly*, 397 U.S. 254, 269

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

(1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.").

13.    ORR's refusal to permit children and their custodians the opportunity to inspect and rebut evidence material to ORR's decision-making before a neutral factfinder offends the most "basic tenet[s]" of due process. *See Hicks*, 909 F.3d at 797 (collecting cases); *see also Zerezghi v. U.S. Citizenship and Immigr. Serv.*, 955 F.3d 802, 810–12 (9th Cir. 2020); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1075 (9th Cir. 2015).

14.    The Administrative Procedure Act ("APA") regulates federal administrative proceedings in "every case of adjudication required by statute to be determined on the record after [the] opportunity for an agency hearing." 5 U.S.C. § 554(a). The Supreme Court has determined that the APA applies with equal, if not more, force when a hearing is required by the Constitution. *See Wong Yang Sung v. McGrath,* 339 U.S. 33, 50 (1950), *superseded in part by statute on other grounds Ardestani v. I.N.S.*, 502 U.S. 129 (1991).

15.    The Government's decisions denying release of Plaintiffs to proposed custodians and to initially place or step-up or step-down minors directly implicates Plaintiffs' liberty interests in freedom from detention and rights to familial association. And because these decisions depend on factual findings, due process requires, at a minimum, notice and a hearing.

16.    Where the Constitution requires a hearing, as it does here, the APA prescribes the procedures that must be provided. *See Wong Yang Sung*, 339 U.S. at 51, 53; 5 U.S.C. §§ 554, 556, 557.

17.    ORR's policies with respect to determining custodians' fitness and restrictive placement fail to afford these basic protections. Accordingly, the Court should order ORR to afford detained children prompt in-person hearings consistent with the procedures mandated by the APA.

CooLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

66

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

18.  Plaintiffs are also entitled to procedural safeguards under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

19.  Plaintiffs' interests in freedom from detention and familial association are substantial. *See, e.g.*, *Schall v. Martin*, 467 U.S. 253, 265 (1984); *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011); *Foucha*, 504 U.S. at 80; *Beltran v. Cardall*, 222 F. Supp. 3d 476, 482 (E.D. Va. 2016).

20.  The prejudice and risk of an erroneous deprivation of a child's liberty without adequate procedural safeguards is high. Given the substantial interests at play, and the inherent harms of detention, children are entitled to robust procedural protections.

21.  For ORR's policies and procedures with respect to custodial vetting, at least the following procedural protections are necessary to guard against the risk of erroneous deprivation of Plaintiffs' substantial interests in freedom from detention and familial association:

      a.  adequate notice and an opportunity to be heard;

      b.  clear standards for determining custodial fitness;

      c.  timelines to ensure prompt release;

      d.  right to counsel; and

      e.  interpreters.

Because these safeguards would reduce the risk of erroneous, prolonged, and harmful detention, this factor weighs heavily in favor of granting relief.

22.  For ORR's policies and procedures with respect to restrictive placement, at least the following procedural protections are necessary to guard against the risk of erroneous deprivation of Plaintiffs' substantial interests in freedom from detention, familial association, and the right to least restrictive placement:

      a.  adequate notice and an opportunity to be heard;

      b.  clear standards to initially place, step-up, or step-down children;

      c.  counsel to challenge restrictive placements;

CooleyLLP
ATTORNEYS AT LAW
LOS ANGELES

67

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

1        d.  automatic hearings before a neutral factfinder;

2        e.  interpreters; and

3        f.  periodic hearings on placement decisions.

4  Because these safeguards would reduce the risk of erroneous, prolonged, and

5  harmful detention, this factor weighs heavily in favor of granting relief.

6        23.    The government's interest is "to place a child in a home suited to the

7  child's welfare and needs," and "that goal [i]s best served by 'procedures that

8  promote an accurate determination of whether [custodians] can and will provide a

9  normal home.'" *J.E.C.M.*, 352 F. Supp. 3d at 586 (quoting *Santosky*, 455 U.S. 745).

10  Plaintiffs' interests in being free from detention and to familial association far

11  outweigh the government's interests, fiscal, administrative or otherwise. *See Beltran*,

12  222 F. Supp. 3d at 482; *see also Flores-Chavez v. Aschcroft*, 362 F.3d 1150, 1161

13  (9th Cir. 2004); *Rivera v. Cty. Of Los Angeles*, 2011 WL 2650006, at *13 (C.D. Cal.

14  July 5, 2011).

15        24.    Plaintiffs have a right to counsel stemming from the TVPRA and the

16  Constitution.

17        25.    The TVPRA obliges ORR to "ensure, to the greatest extent

18  practicable . . . that all unaccompanied alien children who are or have been in

19  [its] custody . . . have counsel to represent them in ***legal proceedings or matters***

20  and ***protect them from mistreatment*** . . . ." 8 U.S.C. § 1232(c)(5) (emphases

21  added).

22        26.    ORR's decision-making with respect to detention of children,

23  placement of children in high-security facilities, and administration of

24  psychotropic medication to children without parental consent constitute "legal

25  proceedings or matters" within the meaning of the TVPRA  Indeed, such matters

26  are all routinely disputed and litigated. *See, e.g.*, *Quilloin v. Walcott*, 434 U.S.

27  246, 255 (1978) ("We have little doubt that the Due Process Clause would be

28  offended if a State were to force the breakup of a natural family . . . without some

CooleyLLP
Attorneys At Law
Los Angeles

68

Statement of Uncontroverted Facts
and Conclusions of Law
Case No. 2:18-CV-05741 DMG PLA

showing of unfitness") (internal quotation marks omitted); *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) (considering ORR's process for denying children's release); *Flores v. Sessions*, No. 2:85-cv-4544-DMG-AGR, ECF No. 470, at 20-24 (C.D. Cal. July 30, 2018) (considering whether ORR medicating children without informed parental consent violates consent decree); *id.* at 15-20 (considering whether ORR's transferring children to restrictive placement violates consent decree). Accordingly, Plaintiffs have a statutorily guaranteed right to legal representation in release, placement, and medication decisions.

27.     Plaintiffs also have a right to counsel as a matter of due process. *See J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011) (children "as a class" "lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them"); *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (right to counsel in removal proceedings); *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004) (minors in removal proceedings "are entitled to trained legal assistance so their rights may be fully protected ….").

28.     ORR violates Plaintiffs' right to counsel by denying effective assistance of counsel.

29.     Congress specifically gave children whom ORR detains the right to legal representation in legal matters and to protect them from mistreatment:

> The Secretary of Health and Human Services *shall ensure, to the greatest extent practicable* and consistent with section 292 of the Immigration and Nationality Act (8 U.S.C. 1362), that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security . . . have counsel to represent them in *legal proceedings or matters* and *protect them from mistreatment*, exploitation, and trafficking.

8 U.S.C. § 1232(c)(5) (emphasis added); *see also* Homeland Security Act of 2002, § 462(b) Pub. L. No. 107-296, 116 Stat. 2135 (2002) ("[T]he Director of

CooleyLLP
Attorneys At Law
Los Angeles

69

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

1  the Office of Refugee Resettlement shall be responsible for . . . developing a plan

2  to be submitted to Congress on how to ensure that qualified and independent

3  legal counsel is timely appointed to *represent the interests* of each child . .

4  . .") (emphasis added).

5      30.    Accordingly, the Court should order ORR to allow legal services

6  providers to use federal funds to represent children in release, placement, and

7  medication decisions.

8      31.    Federal courts have jurisdiction to review final agency decisions and

9  compel a federal officer to perform a duty owed to a plaintiff. 5 U.S.C. §§ 702 *et seq.*

10  A Court "shall . . . hold unlawful and set aside agency action" where the action is:

11  (i) contrary to a constitutional right; or (ii) "otherwise not in accordance with law."

12  5 USC §§ 706 (2)(A), (2)(B); *see also id.* § 706(1) (courts have authority to "compel

13  agency action unlawfully withheld").

14      32.    ORR's custodial vetting and restrictive placement policies and

15  procedures deny children basic due process rights. As such, they violate the

16  Constitution and should be set aside. *See* 5 USC § 706(2)(B); *Asse Intern., Inc. v.*

17  *Kerry*, 803 F.3d 1059, 1073 n.12 (9th Cir. 2015).

18      33.    ORR's custodial vetting and restrictive placement policies and

19  procedures are "otherwise not in accordance with law" under 5 U.S.C. §§ 706(1),

20  (2)(A) because they result in unnecessary delay of children's release, denied

21  family reunification, and improper placement in high security settings, all of

22  which violate the express provisions of the TVPRA. *See* 8 U.S.C. §

23  1232(c)(2)(A). ORR's obstruction of children's counsel's involvement in

24  decisions relating to release, placement, and administration of psychotropic

25  medication likewise violate the express provisions of the TVPRA. 8 U.S.C. §

26  1232(c)(5).

27      34.    Plaintiffs' deprivation of liberty constitutes irreparable harm. *See*

28  *Garcia Ramirez v. ICE* --- F. Supp. 3d ----, 2020 WL 3604041, 148 (D.D.C. July 2,

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

70

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA

2020) (holding that "deprivations of physical liberty are the sort of actual and imminent injuries that constitute irreparable harm"); *see also Saravia*, 905 F.3d at 1143. In light of the substantiality of the interests involved and the minimal burden that would be imposed on the government to revise its policies and procedures, a permanent injunction would not hurt the public interest, but instead promote it. *Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1147 (9th Cir. 2020).

Dated:  October 2, 2020                         COOLEY LLP


                                               By: */s/ Summer J. Wynn*
                                               Summer J. Wynn (240005)
                                               Attorneys for Plaintiffs
                                               Email:  swynn@cooley.com

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    71

STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW
CASE NO. 2:18-CV-05741 DMG PLA