# Exhibit 1

Exhibit 1
Page 16

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 2 of 262 Page ID
#:9480

 **Visit coronavirus.gov** for the latest Coronavirus Disease (COVID-19) updates.
**View ACF COVID-19 Responses and Resources**

# OFFICE OF REFUGEE RESETTLEMENT
An Office of the Administration for Children & Families

## Children Entering the United States Unaccompanied: Introduction

Published: January 30, 2015

### Introduction

The Office of Refugee Resettlement (ORR) Unaccompanied Alien Children's Program provides a safe and appropriate environment to children and youth who enter the United States without immigration status and without a parent or legal guardian who is able to provide for their physical and mental well-being (referred to as "unaccompanied alien children"). In most cases, unaccompanied alien children are apprehended by U.S. Department of Homeland Security (DHS) immigration officials and then transferred to the care and custody of ORR.

ORR funds residential care providers that provide temporary housing and other services to unaccompanied alien children in ORR custody. These care provider facilities are State licensed and must meet ORR requirements to ensure a high level quality of care. They provide a continuum of care for children, including placements in ORR foster care, group homes, shelter, staff secure, secure, and residential treatment centers. The care providers provide children with classroom education, health care, socialization/recreation, vocational training, mental health services, access to legal services, and case management.

ORR and its care providers work to ensure that children are released timely and safely from ORR custody to parents, other family members, or other adults (often referred to as "sponsors") who can care for the child's physical and mental well-being. Unaccompanied alien children remain in ORR's care and custody until they are released to a parent or other sponsor in the United States, are repatriated to their home country, obtain legal status, or turn 18 years old, at which time they are transferred to the custody of DHS.

### How to Use this Guide

The ORR Guide to Children Entering the United States Unaccompanied is a summary of ORR policies for the placement, release and care of unaccompanied alien children in ORR custody. The guide is for members of the public and other stakeholders and is organized into five main sections.

These include:

1. Section One: Placement in ORR Care Facilities: Includes discussion of placement considerations; issues around special needs and safety, long term care, and related topics.
2. Section Two: Safe and Timely Release from ORR Care: How ORR finds, contacts, and and assesses potential sponsors; policies on background checks; effect of immigration status on sponsor eligibility; the release preference policy; and release planning.
3. Section Three: Review of required services including health care services, legal services, post release services, and unusual circumstances.
4. Section Four: Preventing, Detecting, and Responding to Sexual Abuse and Harassment: How care providers must implement ORR national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of unaccompanied alien children.
5. Section Five: Program Management: Includes record-keeping, staffing and training, monitoring and other policies to ensure programs are compliant with ORR requirements and standards.

ORR envisions this product as a living document that may be updated as new policies are updated or incorporated into the program.

The Guide to Terms references commonly used concepts and other terms that may be used less frequently but have statutory standing and may be of interest to stakeholders.

**Exhibit 1**
**Page 17**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 3 of 262 Page ID
#:9481

Exhibit 1
Page 18

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 4 of 262 Page ID #:9482

⚠ **Visit coronavirus.gov for the latest Coronavirus Disease (COVID-19) updates.**
**View ACF COVID-19 Responses and Resources**



# OFFICE OF REFUGEE RESETTLEMENT
An Office of the Administration for Children & Families

# Children Entering the United States Unaccompanied: Guide to Terms

Published: March 21, 2016

**Care Provider** – A care provider is any ORR funded program that is licensed, certified or accredited by an appropriate State agency to provide residential care for children, including shelter, group, foster care, staff-secure, secure, therapeutic or residential treatment care for children.

**Case Manager** – The Case Manager is the care provider staff that coordinates assessments of unaccompanied alien children, individual service plans, and efforts to release unaccompanied alien children from ORR custody. Case Managers also ensure all services for children and youth are documented and maintain case files for unaccompanied alien children.

**Case Coordinators (CC)** – CC are ORR non-governmental contractor field staff who act as a local ORR liaison with care providers and stakeholders and who are responsible for making transfer and release recommendations. ORR/CC are assigned to care providers on the basis of an ORR/CC to bed ratio; therefore, an individual ORR/CC may be assigned to one or several care providers and a care provider with a large bed capacity may have more than one ORR/CC.

**Child Advocate** – A Child Advocate is an independent third party who is appointed by ORR for select unaccompanied alien children to make recommendations to various stakeholders regarding the best interest of a child.

**Clinician** – The Clinician is the care provider staff that provides clinical and/or counseling services for unaccompanied alien children and provides oversight for the unaccompanied alien child's mental and emotional health.

**Escape Risk** – Escape risk is the level of risk that an unaccompanied alien child will attempt to escape from custody.

**Extended Care Group Home** – An extended care group home is a type of residential care provider that provides a group home setting in which the unaccompanied alien child may attend public school. Unaccompanied alien children who may be in ORR custody for an extended period may be eligible for this type of placement.

**Family Reunification** – Family reunification is an older term used in the Flores Settlement Agreement to refer to the process of releasing an unaccompanied alien child to the care of a parent, relative or other sponsor.

**Family Reunification Packet (FRP)** – The family reunification packet is an application and supporting documentation completed by potential sponsors who wish to have an unaccompanied alien child released from ORR to their care. ORR uses the application and supporting documentation, as well as other procedures, to determine the sponsor's ability to provide for the unaccompanied alien child's physical and mental well-being.

**Group Home** – A group home is a care provider facility that offers a group home setting and that specializes in caring for specific populations (e.g., teen mothers). A group home, which is run by 24-hour staff or house parents, typically houses 4 to 12 unaccompanied alien children.

**Home Study** – A home study is an in-depth investigation of the potential sponsor's ability to ensure the child's safety and well-being. The process includes background checks of the sponsor and adult household members, a home visit(s), a face-to-face sponsor interview and possibly interviews with other household members, and post-release services. A home study is conducted for any case in which the safety and well-being of the unaccompanied alien child is in question and on any case that meets the mandatory Trafficking Victims Protection Reauthorization Act of 2008 home study categories.

**Home Study Provider** – A home study provider is a non-governmental agency funded by ORR to conduct home studies.

**Exhibit 1**
**Page 19**

Case 2:18-cv-05741-DMG-PLA   Document 272-1   Filed 10/02/20   Page 5 of 262   Page ID #:9483

**Individual Service Plan (ISP)** – An individual service plan is a plan prepared by the care provider for an individual unaccompanied alien child that identifies placement and case outcome goals, and delineates services, action steps, and individuals responsible for tasks to achieve the goals.

**Influx** – An increase in the number of unaccompanied alien children that exceeds the standard capabilities of responsible Federal departments and agencies to process and transport them timely and/or to shelter them with existing resources.

**Influx Care Facility** – A type of care provider facility that is opened to provide temporary emergency shelter and services for unaccompanied alien children during an influx or emergency. Influx care facilities may be opened on Federally owned or leased properties, in which case, the facility would not be subject to State or local licensing standards; or, at facilities otherwise exempted by the State licensing authority.

**Legal Guardian** – A legal guardian is a person who was appointed charge or custody of a child in a court order recognized by U.S. courts.

**Legal Service Provider (LSP)** – A legal service provider is an ORR funded contractor, sub-contractor, grantee or sub-grantee that coordinates legal services and pro-bono representation for unaccompanied alien children in ORR custody.

**Long Term Foster Care (LTFC)** – Long term foster care is ORR-funded community based foster care placements and services to which eligible unaccompanied alien children are transferred after a determination is made that the child will be in ORR custody for an extended period of time. Unaccompanied alien children in ORR long term foster care typically reside in licensed foster homes, attend public school, and receive community based services.

**Medical Coordinator** – A medical coordinator is care provider staff who makes medical and dental appointments on behalf of unaccompanied alien children in care, and maintains logs on an unaccompanied alien child's health related information.

**ORR/DCS HHS Processing Center (HPC)** - An ORR designated facility to initially screen and vaccinate children prior to their placement into an Influx Care Facility or standard shelter during an influx period.

**ORR/Federal Field Specialist (ORR/FFS)** - Field staff who act as the local ORR liaison with care providers and stakeholders. An ORR/FFS is assigned to multiple care providers within a determined region and serves as the regional approval authority for unaccompanied alien children transfer and release decisions.

**ORR/Headquarters Staff (ORR/HQ)** - ORR staff that work at headquarters and are typically assigned to one of the following teams: ORR/Intakes Team, which receives referrals of unaccompanied alien children from Federal agencies for placement of unaccompanied alien children and who designate the initial placement of unaccompanied alien children into ORR care provider facilities; ORR/Medical Services Team, responsible for adjudicating Treatment Authorization Requests (TARs) and providing consultation and technical assistance in relation to the unaccompanied alien children program procedures on medical services to ORR staff and  grantees; and ORR/Project Officer Team, responsible for the programmatic, and technical aspects of applications and grants and monitoring facilities.

**Placements** – The term placements includes initial placement of an unaccompanied alien child into an ORR care provider facility, as well as the transfer of an unaccompanied alien child within the ORR network of care.

**Post-Release Services** – Post-release services are synonymous with follow-up services. They are services provided to an unaccompanied alien child based on the child's needs after he/she leaves ORR care. Post-release service providers coordinate referrals to supportive services in the community where the unaccompanied alien child resides and provide other child welfare services, as needed. Post-release services can occur until the minor attains 18 years of age. Post-release services can occur in combination with a home study or independently. Participation in Post Release Services is a voluntary choice by the sponsor and unaccompanied alien child.

**Post-Release Service Provider** – A post-release service provider is an agency funded to connect the sponsor and unaccompanied alien child to community resources for the unaccompanied alien child and for other child welfare services, as needed, following the release of the unaccompanied alien child from ORR custody.

**Referred Placement** – A referred placement occurs when an unaccompanied alien child is referred to ORR by any department or agency of the Federal government for placement into ORR custody.

**Release** – A release is the ORR approved release of an unaccompanied alien child from the care and custody of ORR to the care of a sponsor.

**Residential Treatment Center (RTC)** – A residential treatment center is a sub-acute, time limited, interdisciplinary, psycho-educational, and therapeutic 24-hour-a-day structured program with community linkages, provided through non-coercive, coordinated, individualized care, specialized services and interventions. Residential treatment centers provide highly customized care and services to individuals following either a community based placement or more intensive intervention, with the aim of moving individuals toward a stable, less

**Exhibit 1**
**Page 20**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 6 of 262 Page ID #:9484

intensive level of care or independence. ORR uses a RTC at the recommendation of a psychiatrist or psychologist or with ORR Treatment Authorization Request (TAR) approval for an unaccompanied alien child who poses a danger to self or others and does not require inpatient hospitalization.

**Secure Care** – A secure care provider is a facility with a physically secure structure and staff able to control violent behavior. ORR uses a secure facility as the most restrictive placement option for an unaccompanied alien child who poses a danger to self or others or has been charged with having committed a criminal offense. A secure facility may be a licensed juvenile detention center or a highly structured therapeutic facility.

**Shelter Care** – A shelter is a residential care provider facility in which all of the programmatic components are administered on-site, in the least restrictive environment.

**Significant Incident Report (SIR)** – A significant incident report is a report completed by care providers to report and document any significant incidents related to unaccompanied alien children.

**Special Needs Minor** – A special needs minor is an unaccompanied alien child whose mental and/or physical condition requires special services and treatment. An unaccompanied alien child may have special needs due to a disability as defined in section 3 of the Americans with Disabilities Act of 1990, 42 U.S.C. §12102, as amended.

**Sponsor** – A sponsor is an individual (in the majority of cases a parent or other relative) or entity to which ORR releases an unaccompanied alien child out of Federal custody.

**Staff Secure Care** – A staff secure care provider is a facility that maintains stricter security measures, such as higher staff to unaccompanied alien children ratio for supervision, than a shelter in order to control disruptive behavior and to prevent escape. A staff secure facility is for unaccompanied alien children who may require close supervision but do not need placement in a secure facility. Service provision is tailored to address an unaccompanied alien child's individual needs and to manage the behaviors that necessitated the child's placement into this more restrictive setting. The staff secure atmosphere reflects a more shelter, home-like setting rather than secure detention. Unlike many secure care providers, a staff secure care provider is not equipped internally with multiple locked pods or cell units.

**Standard ORR Facility** – ORR shelters that include shelter care, secure care, staff-secure, a residential treatment center, or long term foster care (does not include Influx Care Facilities or HPCs).

**Therapeutic Foster Care** – Therapeutic foster care is a foster family placement funded by ORR for unaccompanied alien children whose exceptional needs cannot be met in regular family foster care homes and consists of intensive supportive and clinical services in the homes of specially trained foster parents. Foster care programs work in collaboration with foster parents to provide interventions, treatment, protection, care, and nurturance to meet the medical, developmental, and/or psychiatric needs of unaccompanied alien children. The unaccompanied alien child typically attends public school and receives community based services.

**Transitional Foster Care** – ORR transitional foster care is synonymous with ORR short term foster care. Transitional foster care is an initial placement option for unaccompanied alien children under 13 years of age, sibling groups with one sibling under 13 years of age, pregnant/parenting teens, or unaccompanied alien children with special needs. Unaccompanied alien children are placed with foster families in the ORR network of care but may attend school and receive most service components at the care provider site.

**Transfer** – A change of placement of an unaccompanied alien child from one ORR care provider to another ORR care provider.

**Unaccompanied Alien Child (UAC)** – UAC is the term used and defined in the Homeland Security Act of 2002, which created the Unaccompanied Alien Children's program at ORR. A UAC is a child who has no lawful immigration status in the United States; has not attained 18 years of age; and with respect to whom: 1) there is no parent or legal guardian in the United States; or 2) no parent or legal guardian in the United States available to provide care and physical custody.

**Unaccompanied Alien Child** – An unaccompanied alien child is the term ORR uses to refer to a child that meets the definition in the Homeland Security Act of 2002 as a UAC.

**Unaccompanied Refugee Minors Program (URM)** – The URM program is the ORR-funded foster care services program available pursuant to 8 U.S.C. § 1522(d) that establishes legal responsibility, under State law, to ensure that unaccompanied minor refugees and other eligible children (such as children granted asylum, Special Immigrant Juvenile Status, T or U status) receive the full range of assistance, care, and services that are available to all foster children in the State.

Last Reviewed: January 8, 2019

**Exhibit 1**
**Page 21**

 **Visit coronavirus.gov** for the latest Coronavirus Disease (COVID-19) updates.
View ACF COVID-19 Responses and Resources

# OFFICE OF REFUGEE RESETTLEMENT
An Office of the Administration for Children & Families

---

# Children Entering the United States Unaccompanied: Section 1
Placement in ORR Care Provider Facilities

Published: January 30, 2015

### 1.1 Summary of Policies for Placement and Transfer of Unaccompanied Alien Children in ORR Care Provider Facilities

The majority of unaccompanied alien children come into ORR custody because they were apprehended by border patrol officers with the Department of Homeland Security (DHS) while trying to enter the United States without legal authorization. DHS (and in rare circumstances other federal agencies) may refer unaccompanied alien children to ORR's care 24 hours a day, 7 days a week.

ORR has procedures in place to obtain background information on the unaccompanied alien child from the referring Federal agency to assess whether the unaccompanied alien child is a danger to self or others, whether there are any known medical and/or mental health issues, and whether other special concerns or needs are known, and then to designate an available care provider. ORR uses this information to determine an appropriate placement in the least restrictive setting for the unaccompanied alien child.

ORR policies for placing children and youth in its custody into care provider facilities are based on legal requirements as well as child welfare best practices  in order to provide a safe environment and place the child in the least restrictive setting appropriate for the child's needs. ORR may place a child in a **shelter facility (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Shelter Care), foster care or group home (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Group Home) (which may be therapeutic (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Therapeutic Foster Care)), staff-secure (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Staff Secure Care) or secure care facility (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Secure Care), residential treatment center (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Residential Treatment Center),** or other special needs care facility.

There are two types of placement decisions:  (1) the initial placement into an **ORR care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)** facility or setting and (2) transfer placement between ORR care providers. Although the circumstances and procedures for initial placement and transfer vary, ORR applies the same child welfare principles in its decision making process.

The referring Federal agency generally transports the unaccompanied alien child to the ORR care provider.
ORR takes custody of the unaccompanied alien child when the child or youth physically arrives at the designated ORR care provider.

*Posted 1/27/15*

### 1.2 ORR Standards for Placement and Transfer Decisions

ORR policies for placing children and youth in its custody into care provider facilities are based on child welfare best practices in order to provide a safe environment and place the child in the least restrictive setting appropriate for the child's needs. ORR may place a child in a **shelter facility (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Shelter Care), foster care or group home (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide** (may be therapeutic (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide

**Exhibit 1**
**Page 22**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 8 of 262 Page ID #:9486

terms#Therapeutic Foster Care)), **staff secure (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Staff Secure Care)** or **secure care (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Secure Care) facility, residential treatment center (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Residential Treatment Center),** or other special needs care facility.

There are two types of placement decisions: the initial placement into an **ORR care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)** facility or other setting and transfer placement between ORR care providers. Although the circumstances and procedures for initial placement and transfer vary, ORR applies the same child welfare model to both types of care delivery.

ORR makes every effort to place children and youth within the ORR funded care provider network. However, there may be instances when ORR determines there is no care provider available within the network to provide specialized services needed for special needs cases. In those cases, ORR will consider an alternative placement. An ORR Supervisor and ORR Project Officer must approve these placements.

ORR must approve all transfers and releases while a child or youth is in its custody, except in emergency situations where a care provider may temporarily transfer placement of an unaccompanied alien child. In these emergency situations the care provider must notify ORR of the transfer within 8 hours.

*Posted 1/27/15*

## 1.2.1 Placement Considerations

As mandated by law, ORR places an unaccompanied alien child in the least restrictive setting that is in the best interests of the child.

When making a placement determination or recommendation, ORR and care providers consider the following factors as they pertain to the child or youth:

- Trafficking or other safety concerns
- Any special needs or issues requiring specialized services (for example, a child with language needs, mental health or medical concerns, or a youth who is pregnant or parenting)
- Possibility of heightened vulnerability to sexual abuse due to prior sexual victimization
- Prior sexual abusiveness
- Identification as lesbian, gay, bisexual, transgender, questioning or intersex, or gender non-conforming appearance or manner
- Location of potential sponsor and family sponsorship options
- Siblings in ORR custody
- Immigration issues (for example, legal representation needs, immigration proceedings)
- Behavior
- Criminal or juvenile background
- Danger to self
- Danger to the community
- Escape risk
- Age
- Gender
- Length of stay in ORR custody
- Location where the child or youth was apprehended

*Posted 1/27/15*

## 1.2.2 Children with Special Needs

Whenever possible, ORR places a child with special needs in a facility serving the general population but that is able to provide services and treatment for special needs. In all instances, ORR strives for a least restrictive setting in the best interests of the child.

For children in the following special situations, ORR gives priority for transitional foster care placements to:

- Children who are under 13 years of age
- Sibling groups with one sibling under 13 years of age
- Teens who are pregnant or are parenting
- Children or youth with other special needs

*Posted 1/27/15*

**Exhibit 1**
**Page 23**

**1.2.3 Safety Issues**

The safety and well-being of a child or youth is a primary consideration in placement decisions. Issues related to safety include a child or youth being fearful of others, such as specific individuals who would seek to harm or exploit the child (e.g., smugglers, traffickers, drug cartels, or other organized crime groups), and a child or youth who is a material witness or a victim of crime. ORR collaborates with law enforcement officials on the placement of an unaccompanied alien child who has information that may be relevant to a criminal proceeding (e.g., "material witness").

*Posted 1/27/15*

**1.2.4 Secure and Staff Secure Care Provider Facilities**

ORR has two levels of care for unaccompanied alien children who are assessed to be a danger to themselves or others, have a criminal history, or require close supervision. Staff secure facilities provide a heightened level of staff supervision, increased communication, and services to control problem behavior and prevent escape. Secure facilities are for youth who require the strictest level of supervision. Secure care providers have a secure perimeter, major restraining construction inside the facility, and procedures typically associated with correctional facilities.

ORR may place youth in a staff secure or a secure setting either at initial placement or through a transfer to another facility from the initial placement. ORR provides the youth notice of the reasons for placement in a secure or staff secure facility.

If a child has a severe mental health issue in addition to serious behavioral concerns or criminal/delinquent history warranting placement into a restrictive level of care, ORR may place the youth in a residential treatment center (RTC) or other therapeutic setting. ORR provides the youth notice of the reasons for placement in a RTC or therapeutic setting.

**Secure Care Facility**

ORR only places an unaccompanied alien child in a secure facility if the child:

1. poses a danger to self or others; or
2. has been charged with or convicted of a criminal offense, or is chargeable with such an offense.

In determining whether to place a youth in secure care, ORR considers if the unaccompanied alien child:

- Has been charged with a crime, is chargeable with a crime, or has been convicted of a crime; or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; and assesses whether the crimes or delinquent acts were:
  - isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, status offenses, etc.); or
  - petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace).

- Has committed, or has made credible threats, to commit a violent or malicious act while in ORR custody;
- Has committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;
- Has engaged in conduct that has proven to be unacceptably disruptive of the normal functioning of a staff secure facility in which the youth is placed such that transfer may be necessary to ensure the welfare of the UAC or others;
- Has self-disclosed violent criminal history in ORR custody that requires further assessment; or
- Has a history of or displays sexual predatory behavior, or has engaged in inappropriate sexual behavior.

**Staff Secure Facility**

A staff secure facility is a licensed child care facility for UAC who require close supervision, but do not require placement in a secure care provider facility.

In determining whether to place a youth in a staff secure facility, ORR considers if the child:

- has been unacceptably disruptive to the normal functioning of a shelter care provider facility such that transfer is necessary to ensure the welfare of the UAC or others;
- is an escape risk;
- Has reported gang involvement (including prior to placement into ORR custody) or displays gang affiliation while in care;
- has non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses as described above; or

**Exhibit 1**
**Page 24**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 10 of 262 Page ID #:9488

- Is ready for step-down from a secure facility. For details on the criteria for step-down from a secure facility, see section **1.4.2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.4.2)**.

*Revised 10/10/18*

## 1.2.5 Unaccompanied Alien Children Who Pose a Risk of Escape

ORR does not place a child or youth in secure care solely because he or she may pose a risk of escape from ORR custody. However, ORR may place a child in a staff secure facility solely because he or she poses a risk of escape. In all cases, ORR must assess whether an unaccompanied alien child is an escape risk in order to make an informed placement decision.

Indicators of escape risk include:

- The unaccompanied alien child has displayed behaviors indicative of escape or has expressed intent to escape.
- The unaccompanied alien child is within one month of turning 18 years of age.
- The unaccompanied alien child has previously escaped or attempted to escape from detention or government custody.
- An unaccompanied alien child with an immigration history that includes:
  - A final order of removal (UAC has a legal duty to report for deportation);
  - A prior breach of a bond;
  - Failure to appear before Department of Homeland Security or the immigration courts;
  - Previous repatriation (return to the home country) through a grant of voluntary departure or a final order of removal from an immigration judge.

*Revised 6/12/17*

## 1.2.6 ORR Long Term Foster Care

An unaccompanied alien child may be placed in a long term care setting, such as community based foster care or extended care group homes. A child is a candidate for long term care if he or she:

- Is expected to have a protracted stay of four months or more in ORR custody because he or she does not have a viable sponsor, AND
- A legal service provider has identified the child or youth as potentially eligible for immigration relief (unless waived by ORR),[1] AND
- Is under the age of 17 and 6 months at the time of placement.

ORR also considers a long term care placement on a case-by-case basis for an unaccompanied alien child who will have a longer stay due to other circumstances.

ORR considers the following when making long term placement decisions:

- The child's mental, emotional, behavioral, and physical health needs
- The child's ability and commitment to live in a family and community-based setting
- The child's age
- Availability of an appropriate placement that meets the individual's needs

Unaccompanied alien children who are ineligible for long term placement include:

- An unaccompanied alien child with a moderate to high escape risk
- An unaccompanied alien child with a history of significant criminal activity or violence who may pose a threat of harm to self, others (including the foster family), or community
- A child or youth who is seeking voluntary departure

However, a child or youth with past behavioral or safety concerns but who does not pose a threat to self, others (including the foster family) or the community may be considered for long term foster care after demonstrating safe behavior in a non-secure setting.

*Revised 10/15/15*

## 1.2.7 Placing Family Members (Siblings and Children of Unaccompanied Alien Children)

Under most circumstances, ORR places siblings together and unaccompanied alien children who are parents with their children. The following cases would be an exception to family grouping:

**Exhibit 1**
**Page 25**

- The unaccompanied alien child wishes otherwise (evaluated on a case-by-case basis)
- The placement would be contrary to the developmental, treatment, or safety needs of the unaccompanied alien child or his or her children
- There is an unusual or emergency situation

In addition to the ones listed above, there are other exceptional circumstances that would prevent unaccompanied alien youth from residing with their children in the same care provider facility. These circumstances include an unaccompanied alien child who is a parent who:

- Requires specialized placement in a setting that cannot provide appropriate care for an infant or young child; for example, a residential treatment center or hospital
- Does not want his or her child to reside in the same place
- Is the subject of open or substantiated allegations of abuse or neglect against his or her child

If siblings or children of an unaccompanied alien child must be placed separately, the care provider tries to maintain regular ongoing contact, unless a mental health or child welfare professional deems the contact harmful, or unless the contact is contrary to the wishes of the UAC.

The separation of an unaccompanied alien child from his or her siblings or from his or her child requires prior authorization of ORR.

*Posted 1/27/15*

## 1.3 Referrals to ORR and Initial Placement

Unaccompanied alien children may be referred by Federal agencies to ORR's care at any time. **ORR's Intakes Team (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Headquarters Staff)** operates 24 hours a day, 7 days a week, year round to accept referrals and find a placement for children and youth within ORR's network of care providers.

*Posted 1/27/15*

### 1.3.1 Request for Information from the Referring Federal Agency

As a first step, ORR requests background information from the referring Federal agency to assess whether the unaccompanied alien child is a danger to self or others, whether there are any known medical and/or mental health issues, and whether other special concerns or needs are known. ORR uses this information to determine an appropriate placement for the child or youth in the least restrictive setting.

ORR requests the following information from the referring agency:

- How the referring agency made the determination that the minor is an unaccompanied alien child.
- Health related information including, but not limited to, if the unaccompanied alien child is pregnant or parenting and whether there are any known physical or mental health concerns. If there are significant medical concerns (i.e., the unaccompanied alien child is not fit for travel), ORR requests that the referring Federal agency medically clear the child before ORR will designate placement. In its discretion, ORR may designate placement for unaccompanied alien children who are pending medical clearance.
- Whether the child has any medication or prescription information, including how many days' supply of the medication will be provided with the child or youth when transferred into ORR custody.
- Biographical and biometric information, such as name, gender, alien number, date of birth, country of birth and nationality, date(s) of entry and apprehension, place of entry and apprehension, manner of entry, and the unaccompanied alien child's current location.
- Any information concerning whether the child or youth is a victim of trafficking or other crimes.
- Whether the unaccompanied alien child was apprehended with a sibling or other relative.
- Identifying information and contact information for a parent, legal guardian, or other related adult providing care for the child or youth prior to apprehension, if known.
- If the unaccompanied alien child was apprehended in transit to a final destination, what the final destination was and who the child or youth planned to meet or live with at that destination, if known.
- Whether the unaccompanied alien child is an escape risk, and if so, the escape risk indicators.
- Any information on a history of violence, juvenile or criminal background, or gang involvement known or suspected, risk of danger to self or others, State court proceedings, and probation.
- Any special needs or other information that would affect the care and placement for the child or youth.

**Exhibit 1**
**Page 26**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 12 of 262 Page ID
#:9490

### 1.3.2 ORR Placement Designation

The ORR/Intakes Team identifies appropriate and available bed space at a **care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)**, the ORR funded facility or other setting that provides care for the child, and contacts the care provider to confirm availability. ORR attempts to identify and designate a placement for the unaccompanied alien child within 24 hours of the initial referral whenever possible.

In cases where a child or youth may present a danger to self or others, ORR staff use a standardized checklist (the "Intakes Placement Checklist") to input all available information on the unaccompanied alien child's history and condition.

The ORR/Intakes Team uses the Intakes Placement Checklist if the unaccompanied alien child has:

- A juvenile or adult criminal history, including involvement in human trafficking or smuggling
- Prior acts of violence or threats in government custody
- Gang/cartel involvement
- Prior escape(s) or attempted escape(s) from government custody
- Mental health concerns
- Sexual predatory behavior

Based on the responses, the Intakes Team member recommends a level of care for the unaccompanied alien child. The ORR/Intakes Team reviews the Intakes Placement Checklist with an **ORR/FFS Supervisor (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)**. The ORR/FFS Supervisor makes a final placement decision on the level of care, and the Intakes Team designates the unaccompanied alien child's placement.

For placement of an alien unaccompanied alien child with medical or mental health issues, the ORR/Intakes Team consults with the ORR/FFS, the **ORR/Medical Services Team (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Medical Coordinator)**, or an ORR Supervisor on the placement. As discussed in Section 1.4.6 Residential Treatment Center Placement, a UAC with serious mental health issues may only be placed into a Residential Treatment Center (RTC) if the youth is determined to be a danger to self or others by a licensed psychologist or psychiatrist.

*Revised 10/10/18*

### 1.3.3 Care Provider Placement Acceptance

After ORR requests a placement in a particular facility, the care provider may only deny ORR's request for placement based on the following reasons:

- Lack of available bed space.
- Placement of the unaccompanied alien child would conflict with the care provider's State or local licensing rules.
- Placement of an unaccompanied alien child with a significant physical or mental illness for which the referring Federal agency does not provide a medical clearance and/or medications that would conflict with the care provider's State or local licensing requirements.

ORR may follow up with a facility about a placement denial, if needed, to find a solution to the reason for the denial.

*Posted 1/27/15*

### 1.3.4 Transfer of Custody to ORR

The referring Federal agency generally transports the unaccompanied alien child to the ORR care provider. ORR takes custody of the unaccompanied alien child when the child physically arrives at the designated ORR care provider.

Upon arrival, the care provider requests from the referring Federal agency the unaccompanied alien child's prescriptions and medications, as applicable; personal belongings, and any necessary Department of Homeland Security (DHS) or other Federal agency documentation.
If exceptional circumstances prevent the referring Federal agency from providing complete documentation, the care provider may not deny or delay admitting the child or youth.

If a care provider receives a child or youth with special concerns that were not reported in the referral, the care provider must contact ORR immediately.

**Exhibit 1**
**Page 27**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 13 of 262 Page ID
#:9491

**1.3.5 Initial Placements in the Event of an Emergency or Influx**

Historically, ORR has experienced periods when DHS apprehends a significantly greater number of unaccompanied alien children than at other times of the year. These periodic intervals are called an "influx." In addition to an influx, a natural disaster or other emergency may prevent the prompt (within 24 hours), initial placement of unaccompanied alien children in care provider facilities.

ORR has procedures in place to make sure that care providers are available to accommodate these influx intervals and make initial placements as quickly as possible while successfully providing the range of services that ORR requires for every unaccompanied alien child.

ORR annually reviews its contingency plans based on the actual and anticipated number of unaccompanied alien children referrals to monitor available resources in light of expected needs.

For more information, see **1.7 Placement and Operations During an Influx**.

*Revised 5/5/16*

## 1.4 Transfers within the ORR Care Provider Network

Because an unaccompanied alien child's placement needs can change, the care provider conducts ongoing assessments of his or her needs throughout the child or youth's stay in ORR custody. Care providers also take into consideration information from the referring Federal entity, child assessment tools, interviews, location of the child's sponsor or family in the U.S., records from local, State, and Federal agencies, and information from stakeholders, including the child's legal service provider, attorney of record or Child Advocate, as applicable, when making transfer recommendations.

If an alternate placement would better meet the child's individual needs, care providers must promptly make transfer recommendations —within 3 days of identifying the need for a transfer for routine transfers and immediately in urgent situations.

The **Case Coordinator (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)** identifies the most appropriate care provider based upon the individual's needs and the bed capacity within the ORR network.

Once the Federal Field Specialist approves a transfer request, the referring and receiving care providers coordinate logistics, including the transfer date (generally within 3 days). The referring care provider notifies all designated stakeholders of the transfer (for example, the child's attorney).

*Revised 4/22/16*

**1.4.1 Least Restrictive Setting**

Care providers must make every effort to place and keep children and youth in a least restrictive setting. For children who are initially placed in a least restrictive setting, care providers must provide support services and effective interventions, when appropriate, to help keep a child in the setting.

If a child or youth is placed in a restrictive setting, care providers provide services to facilitate the unaccompanied alien child's successful transfer to a less restrictive setting to allow the child to move when he or she is ready.

*Posted 1/27/15*

**1.4.2 30 Day Restrictive Placement Case Review**

At the time of referral, the ORR/Intakes Team in collaboration with an ORR/FFS Supervisor uses a standardized Intakes Placement Checklist to determine the initial placement of an unaccompanied alien child with a juvenile or criminal background, violent offenses, serious behavioral concerns, and/or potential for escape. See 1.3.2. ORR Placement Designation.

At least every 30 days, the care provider staff, in collaboration with the Case Coordinator and the ORR/FFS, reviews the placement of a UAC into a secure, staff secure, or RTC facility to determine whether a new level of care is more appropriate. The ORR/FFS may allow the review to take place earlier than 30 days, particularly if new information indicates an alternative placement is more appropriate. The care provider staff documents the basis for continued placement in a secure staff secure, or RTC facility in the UAC's case file and provides the information to the youth's attorney of record, legal service provider, or Child Advocate, on demand. The FFS consults with Supervisory ORR staff for UAC who have resided in a secure or RTC care facility for over 90 days.  The FFS consults with Supervisory ORR staff regarding the placement every 30 days thereafter until the UAC is stepped down or discharged.  A UAC may only remain in a RTC placement if a licensed psychiatrist or psychologist has determined that they are a danger to themselves or others.  See 1.4.6. Residential Treatment Center Placements.

Exhibit 1
Page 28

An unaccompanied alien child does not require a review of a secure, staff secure, or RTC placement if he or she is in custody for less than one month from the date of the initial placement designation to the date of his/her 18th birthday. Children and youth who are in ORR care less than 30 days do not require a review of their placement.

**Step-ups and Step-downs**

Step-ups and step-downs refer to the transfers within the ORR network of care to a more restrictive level of care or to a less restrictive level of care, respectively.

Step-ups may occur when a more restrictive level of care is needed for the safety of the UAC or others. The care provider Case Manager, Case Coordinator and ORR/FFS staff the case to determine whether the UAC's behavior, criminal history, or self-disclosures require placement in a more restrictive environment, using the factors identified in section **1.2.4 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.4.2)**.

If a UAC self-discloses criminal or violent history to other UAC or to care provider staff, ORR investigates the veracity of the claim with the assistance of the care provider. ORR may contact federal, state and local law enforcement to determine the veracity of the self-disclosed criminal history and request assistance in contacting foreign law enforcement agencies where alleged crimes or incidents took place outside of the United States. ORR may also work with mental health professionals and other specialists as appropriate to determine whether the UAC's claims are credible.

Step-downs may occur when ORR, in its discretion, determines the UAC no longer poses a danger to himself or others, or no longer presents an escape risk (for staff secure step downs only). ORR also takes into consideration the immigration judge's decision in a bond hearing about the youth's level of danger when assessing the youth's placement and conditions of placement. See, **2.9. Bond Hearings for Unaccompanied Alien Children (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.9)**. In making a step-down decision, ORR considers criteria identified in making a secure placement and takes into consideration any mitigating factors based on an assessment of the UAC's current functioning and behavior, previous conduct, self-disclosures, and criminal/delinquent history. The care provider documents the underlying assessment used to make this determination in the UAC's case file.

UAC determined to have sexual predatory behavior may not be stepped down below staff secure unless the ORR/FFS and the receiving care provider can document specific steps to protect other UAC, staff, and the community.

If the care provider and ORR/FFS determine that a new level of care is appropriate, the care provider must use the ORR process for transferring the youth to another care provider. The care provider must notify within a reasonable period of time DHS, the youth's attorney of record, legal service provider, and/or Child Advocate and, if applicable, apply for a change of address or change of venue for a timely and safe transport.

The care provider documents the basis for stepping up or stepping down a UAC into or from a secure or staff secure care provider in the UAC's case file and provides the information to the youth's attorney of record, legal service provider, or Child Advocate, on demand.  When a UAC is stepped up to a more restrictive setting (secure, staff-secure or RTC facility), he/she is provided with a *Notice of Placement in Restrictive Setting* in a language that he/she understands within a reasonable time either before or after ORR's placement decision.

*Revised 10/10/18*

**1.4.3 Long Term Care**

In some cases, unaccompanied alien children stay in ORR custody for 4 months or more. ORR considers a stay of 4 months or longer to be an "extended stay" case. Extended stay cases generally occur due to the following combination of factors:

- The child or youth has no viable sponsor AND
- A legal service provider or attorney has screened the child or youth as eligible for immigration relief, OR
- Another reason prevents return of the unaccompanied alien child to the home country, such as the child's country of origin is in a state of emergency, indicating that the child will likely not be repatriated for an extended period of time.

If there is an indication that an unaccompanied alien child may fall into this extended stay category, the care provider makes a recommendation to ORR regarding long term care placement. Care providers try to minimize the number of transfers for a child or youth in order to facilitate continuity of relationships with caregivers.

Care providers continue to assess a child or youth placed in long term care to ensure that best efforts are being made to move the unaccompanied alien child toward release from ORR custody into a more permanent arrangement.

*Posted 1/27/15*

**Exhibit 1**
**Page 29**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 15 of 262 Page ID #:9493

### 1.4.4 Transfer to Long Term Foster Care

Foster care providers must ensure that each child is placed in a licensed foster home and consider the child's cultural and linguistic needs when making placements.

Prior to a transfer to long term foster care, the care providers must notify all stakeholders. Of particular importance, the long term foster care provider informs the legal service providers from the referring placement as well as those in the receiving placement to ensure arrangements are made for legal services, including representation, for the child in the new jurisdiction.

Notifications to stakeholders are required of any transfer in the ORR care provider network.

*Posted 1/27/15*

### 1.4.5 Group Transfers

Group transfers may occur because of changes in a care provider's bed capacity, through changes in program requirements that would eliminate a care provider from the list of approved facilities, or through an emergency event or natural disaster. ORR tries to minimize the number of transfers resulting from bed capacity limitations. ORR considers the circumstances of the individual unaccompanied alien child's case, including the progress of the sponsorship effort and the status of the legal case, when identifying children and youth for group transfers.

*Revised 4/22/16*

### 1.4.6 Residential Treatment Center Placements

Care providers request a transfer to an RTC for an unaccompanied alien child who has a psychiatric or psychological issue that cannot be addressed in an outpatient setting.

A UAC may only be placed into an RTC if the youth is determined to be a danger to self or others by a licensed psychologist or psychiatrist. In assessing dangerousness, ORR uses the criteria for secure placement in section 1.2.4. In addition, ORR will consider a transfer to an RTC only if a licensed psychologist or psychiatrist has determined the following:

- The unaccompanied alien child has not shown reasonable progress in the alleviation of his/her mental health symptoms after a significant period of time in outpatient treatment. (Note: the amount of time within which progress should be demonstrated varies by mental health diagnosis).
- The child's behavior is a result of his/her underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting.
- The unaccompanied alien child requires therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent him or her from independent participation in the daily schedule of activities.
- The child presents a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions (such as, medications, a brief psychiatric hospitalization, intensive counseling, behavioral management techniques, 24 hour supervision, supportive services or therapeutic services).

*Revised 10/10/18*

### 1.4.7 Requesting Reconsideration of a Secure or RTC Placement Designation

After 30 days of placement in a secure or RTC facility, UAC may request the ORR Director, or the Director's designee, to reconsider their placement. The ORR Director, or designee, may deny the request, remand the request to the ORR/FFS for further consideration, or approve the request and order the youth transferred to a staff secure or other care provider facility.

*Posted 6/12/17*

## 1.5 Placement Inquiries

Individuals looking for an unaccompanied alien child who may be in ORR custody may contact the **ORR National Call Center**, **at 1 (800) 203-7001**, and leave a message that includes the unaccompanied alien child's information, caller's name, contact information, and relationship to the child or youth.(This hotline is operated by an ORR grantee.)

*Revised 9/06/16*

### 1.5.1 ORR National Call Center

The ORR National Call Center staff reviews the information to see if the unaccompanied alien child is currently in ORR custody. The call center staff contacts the caller and notifies him or her whether or not the child or youth is in ORR custody, taking safety issues into consideration, as described below.

**Exhibit 1**
**Page 30**

If the unaccompanied alien child is in ORR custody, the call center staff does not provide information to the caller regarding where the child or youth is located or with which care provider until communication is deemed safe and appropriate.

The steps in the process include:

- The call center staff notifies the corresponding care provider with the caller's name, contact information and relationship to the unaccompanied alien child.
- The care provider determines whether the individual is a safe and approved contact. As deemed appropriate and following ORR's procedures, the care provider may facilitate communication between the caller and the unaccompanied alien child.
- The care provider contacts the individual and informs him/her that the unaccompanied alien child is safe and in ORR custody.

*Posted 1/27/15*

## 1.6 Determining the Age of an Individual without Lawful Immigration Status

The Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) instructs HHS to devise age determination procedures for individuals without lawful immigration status in consultation with the U.S. Department of Homeland Security (DHS). ***To carry out the TVPRA provision, HHS and DHS worked jointly to develop the age determination policies and procedures in this section.***

Typically, DHS is the agency that apprehends individuals without lawful immigration status, including unaccompanied alien children (UAC), while HHS is the agency responsible for the care and custody of UAC transferred to its care. HHS authority to provide care and custody applies only to individuals who have not attained 18 years of age.

Each agency acknowledges the challenges in determining the age of individuals in custody. These challenges include, but are not limited to:

- Unavailable documentation;
- Contradictory or fraudulent identity documentation and/or statements;
- Physical appearance of the individual; and
- Diminished capacity of the individual.

The TVPRA requires the age determination procedures, at a minimum, to take into account multiple forms of evidence. Accordingly, under these procedures, each case must be evaluated carefully based on the totality of all available evidence, including the statement of the individual in question.

*Revised 8/31/15*

### 1.6.1 Unaccompanied Alien Children in HHS Custody

HHS may make age determinations of UAC when they are in HHS custody on a reasonable suspicion that a child in HHS custody is 18 years or older.

In the event there is conflicting evidence regarding the age of an unaccompanied alien child in HHS custody, the HHS funded care provider case worker shall immediately notify the HHS Federal Field Specialist (FFS). The FFS will make the age determination based on his/her review of the multiple forms of evidence collected by the care provider. Until the age determination is made, the unaccompanied alien child is entitled to all services provided to UAC in HHS care and custody.

There may be occasions when an unaccompanied alien child's age is questioned at the time of admission to an HHS funded care provider facility during the intakes process. In those cases, the case manager does not complete the intakes process, but consults with the HHS FFS to make the age determination.

*Revised 8/31/15*

### 1.6.2 Instructions

Case managers should seek the following as evidence when conducting age determinations. Information from each category is not required.

Documentation:

- Official government-issued documents, including birth certificates. If the unaccompanied alien child in question is not in possession of original documentation, or if the authenticity of the original documentation is in question, government officials of the unaccompanied alien child's home country must be consulted in order to verify the validity of the documentation.
- Other reliable records (e.g., baptismal certificates, school records, medical records) that indicate the unaccompanied alien child's date of birth.

**Exhibit 1**
**Page 31**

Statements by individuals (including the unaccompanied alien child) determined to have personal knowledge of the unaccompanied alien child's age, and who HHS concludes can credibly attest to the age of the unaccompanied alien child:

- Statements provided by the unaccompanied alien child regarding his or her age or birth date. (An unaccompanied alien child's uncorroborated declaration regarding age is not used as the sole basis for an age determination.)
- Statements from the unaccompanied alien child's parent(s) or legal guardian(s), if such persons can be identified and contacted.
- Statements from other persons.
- Information from another government agency (Federal, State, local or foreign)
- State/local arrest records.
- Child welfare agency records.

Medical Age Assessments:

Medical Age Assessments include both the use of imaging technology, such as radiography, and physical examinations. Regarding these assessments:

- A medical professional experienced in age assessment method(s) must perform the examination, taking into account the individual's ethnic and genetic background.
- Dental and skeletal (bone) maturity assessments using radiographs may be used to determine age, but only in conjunction with other evidence.
- As no current medical assessment method can determine an exact age, best practice relies on the estimated probability that an individual is 18 or older. The examining doctor must submit a written report indicating the probability percentage that the individual is a minor or an adult.

ORR Response to Medical Age Assessments:

- The FFS supervisor must review the determination regarding the age submitted by the examining doctor.
- If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, and this evidence has been considered in conjunction with the totality of the evidence, ORR may refer the individual to DHS. The 75 percent probability threshold applies to all medical methods and approaches identified by the medical community as appropriate methods for assessing age.
- The FFS compiles all pertinent information (e.g., how reasonable suspicion was raised that the subject is over 18, the information referenced, the individuals or agencies consulted, statements and conclusions) and documents it in a memorandum for review and approval by the FFS Supervisor.
- The FFS then will forward the memo to the care provider facility case manager to be included in the unaccompanied alien child's case file and to the ICE Detention and Removal Office (DRO) Field Office Juvenile Coordinator (FOJC) for inclusion in the unaccompanied alien child's A-file.

At any time, an unaccompanied alien child in ORR care or his/her designated legal representative may present new information or evidence that he/she is 18 or older for re-evaluation of an age determination. New information will be reviewed and evaluated by the FFS and, if necessary, the FFS Supervisor, in a timely manner and shared with the DRO FOJC to determine if the current placement is appropriate. If the new information or evidence indicates that an individual who is presumed to be an unaccompanied alien child is actually an adult, then HHS will coordinate with the assigned FOJC to immediately transfer the individual to an adult DRO facility.

*Revised 7/05/16*

**1.7 Placement and Operations During an Influx [REPEALED]**
*Policies related to influx care facilities are found at Section 7 of this Policy Guide*
**1.7.1 Activation of HPCs[REPEALED]**
**1.7.2 Placement into HPCs [REPEALED]**
**1.7.3 Placement into Influx Care Facilities [REPEALED]**
**1.7.4 Admission and Orientation for HPCs and Influx Care Facilities [REPEALED]**
**1.7.5 Medical Services [REPEALED]**
**1.7.6 HPC and Influx Care Facility Services [REPEALED]**
**1.7.7 Transportation During Influx [REPEALED]**
**1.7.8 Federal Staffing Plan [REPEALED]**

**Exhibit 1**
**Page 32**

**Footnotes**

1. Other circumstances which would result in a longer stay, such as the child's country of origin is in a state of emergency, indicating that the child will likely not be repatriated for an extended period of time.

---

**<Back (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied) - Next> (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2)**

---

Last Reviewed: September 18, 2019

**Exhibit 1**
**Page 33**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 19 of 262 Page ID #:9497

⚠ **Visit coronavirus.gov** for the latest Coronavirus Disease (COVID-19) updates.
View ACF COVID-19 Responses and Resources

# OFFICE OF REFUGEE RESETTLEMENT

An Office of the Administration for Children & Families

---

## Children Entering the United States Unaccompanied: Section 2

Safe and Timely Release from ORR Care

Published: January 30, 2015

**Categories:** Unaccompanied Children's Services

### 2.1 Summary of the Safe and Timely Release Process

The Office of Refugee Resettlement (ORR) has policies and procedures in place to ensure unaccompanied alien children in ORR care are released in a safe, efficient, and timely manner. ORR's policies require the release of unaccompanied alien children to parents, guardians, relatives, or individuals designed by the child's parents, referred to as "sponsors." Safe and timely release (also known as "family reunification") must promote public safety and ensure that sponsors are able to provide for the physical and mental well-being of children.

ORR evaluates potential sponsors' ability to provide for the child's physical and mental well-being, as required by law. ORR also protects children from smugglers, traffickers, or others who might seek to victimize or otherwise engage the child in criminal, harmful or exploitative activity. The process for the safe and timely release of an unaccompanied alien child from ORR custody involves several steps, including: the identification of sponsors; sponsor application; interviews; the assessment (evaluation) of sponsor suitability, including verification of the sponsor's identity and relationship to the child (if any), background checks, and in some cases home studies; and post-release planning.

*Revised 6/18/19*

### 2.2 Sponsor Application Process

ORR begins the process of finding family members and others who may be qualified to care for an unaccompanied alien child as soon as the child enters ORR's care. Parents, relatives, or close family friends may apply to have the child released to their care.

*Revised 6/18/19*

#### 2.2.1 Identification of Qualified Sponsors

The ORR **care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)**, the ORR funded facility that cares for the child, interviews the child as well as parents (see the section below on how ORR confirms relationship with child), legal guardians, and/or family members to identify qualified custodians ("sponsors"). If a child is either too young or there are other factors that prohibit the care provider from obtaining potential sponsor information from the unaccompanied alien child, the care provider may seek assistance from the child's consulate in collaboration with the **ORR Federal Field Specialist (ORR/FFS) (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** or from a reputable family tracing organization. Finding a sponsor for the child is an ongoing process that continues during the unaccompanied alien child's stay in ORR care and custody in the event that the primary potential sponsor or primary release plan is not approved.

ORR releases children to a sponsor in the following order of preference:[1] parent; legal guardian; an adult relative (brother, sister, aunt, uncle, grandparent or first cousin); an adult individual or entity designated by the parent or legal guardian (through a signed declaration or other document that ORR determines is sufficient to establish the signatory's parental/guardian relationship); a licensed program willing to accept legal custody; or an adult individual or entity seeking custody when it appears that there is no other likely alternative to long term ORR care and custody. ORR has grouped UAC cases into the following categories.[2]

- **Category 1:** Parent or legal guardian (This includes qualifying step-parents that have legal or joint custody of the child or teen) **Exhibit 1**

**Page 34**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 20 of 262 Page ID #:9498

- **Category 2A:** An immediate relative--a brother; sister; grandparent **or** other close relatives (aunt, uncle, first cousin) who previously served as the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage, and half-siblings).
- **Category 2B:** An immediate relative-- including aunt, uncle, or first cousin who was not previously the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage).
- **Category 3:** Other sponsor, such as distant relatives and unrelated adult individuals
- **Category 4:** No sponsors identified

Although ORR gives preference to a parent or legal guardian when determining release plans, there are instances when ORR does not release an unaccompanied alien child to a parent or legal guardian. These include:

- There has been a court ordered termination of parental rights over the child.
- There is substantial evidence that the child would be at risk of harm if released to the parent or legal guardian.

In some cases, an unaccompanied alien child enters the United States with her biological child. In those cases, ORR identifies a sponsor for the unaccompanied alien child as well as for the infant or toddler. In most instances, it is in the best interest of the unaccompanied alien child and her biological child to be released to the same sponsor. For case processing purposes, the sponsor is assigned the same category for the infant as for the UAC mother. This is true even if the potential sponsor would be assigned a different category (based on their relationship status) if he or she were to sponsor the infant alone.

*Revised 6/18/19*

## 2.2.2 Contacting Potential Sponsors

The child's **care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)** is responsible for implementing safe screening methods when contacting and communicating with potential sponsors. These methods are to ensure that a potential sponsor does not pose a risk to the unaccompanied alien child, to other children in the care provider facility or to care provider staff.

Safe screening methods include:

- Use of appropriate interpreters
- Identity of the sponsor is obtained
- Verification of family relationships
- Coordination with the unaccompanied alien child's parents, legal guardians, or closest relatives prior to contacting non-relative adult potential sponsors
- Screening for exploitation, abuse, trafficking, or other safety concerns
- Engaging the child to communicate openly with care provider staff about his or her own sense of safety

*Posted 1/27/15*

## 2.2.3 The Family Reunification Application

All potential sponsors must complete an application in order for a child to be released to them from ORR custody (the "Family Reunification Application").

Within 24 hours of identification of a potential sponsor for a child or youth, the care provider or the ORR National Call Center sends the sponsor a package with the application and related documents (called the Family Reunification Packet or FRP).

The application package includes the following documents:

- Family Reunification Packet Cover Letter
- Authorization for Release of Information
- Family Reunification Application
- Sponsor Care Agreement
- A flyer with contact information on organizations offering a Legal Orientation Program for Custodians (LOPC)
- A flyer with contact information for the UAC Sexual Abuse Hotline
- Fingerprint instructions
- Sponsor Handbook
- Letter of Designation for Care of a Minor (If parent or legal guardian wishes to specify)
- Sponsor Declaration
- A flyer warning sponsors of potential fraud schemes

**Exhibit 1**
**Page 35**

Case 2:18-cv-05741-DMG-PLA Document 272 Filed 10/02/20 Page 21 of 262 Page ID #:9499

The care provider is available to help the potential sponsor complete the application. The care provider also informs potential sponsors that they may submit additional information to support the application and reminds potential sponsors of the deadlines for completing the forms. The sponsor may also receive assistance in completing the application at some fingerprinting locations.

*Revised 6/18/19*

### 2.2.4 Required Documents for Submission with the Application for Release

In addition to completing and signing the Family Reunification Application (FRA) and the Authorization for Release of Information, potential sponsors must provide documentation of identity, address, and relationship to the child they seek to sponsor.[3] Potential sponsors must also submit documentation verifying the identity of the children they seek to sponsor, and evidence verifying the identity of all adults residing with the sponsor and all adult caregivers identified in a sponsor care plan. In addition to their use as evidence of the foregoing, all documentation submitted under this section is used as part of the overall sponsor assessment process. See **Section 2.4 Sponsor Assessment Criteria and Home Studies (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.4).** As a result, ORR may in its discretion require potential sponsors to submit additional documentation beyond the minimums specified below.

**Proof of Sponsor Identity**
To verify their identity, all potential sponsors must submit original versions or legible copies of government-issued identification documents. They may present either one selection from List A or two or more documents from List B. If a potential sponsor presents selections from list B, at least one selection must contain a legible photograph. Expired documents are acceptable for the purpose of establishing identity.

### LIST OF ACCEPTABLE DOCUMENTS

| LIST A |
|---|
| U.S. Passport or U.S. Passport Card |
| Permanent Resident Card or Alien Registration Receipt Card (Form I-551) |
| Foreign Passport that contains a photograph |
| Employment Authorization Document that contains a photograph (Form I-766) |
| U.S. Driver's License or Identification Card |

OR

| LIST B |
|---|
| U.S. Certificate of Naturalization |
| U.S. Military Identification Card |
| Birth Certificate |
| Marriage Certificate |
| Court order for name change |
| Foreign national identification card |
| Consular passport renewal receipt that contains a photograph |
| Mexican consular identification card |
| Foreign driver's license that contains a photograph |
| Foreign voter registration card that contains a photograph |
| Canadian border crossing card that contains a photograph |
| Mexican border crossing card that contains a photograph with valid Form I-94 |
| Refugee travel document that contains a photograph |
| Other similar documents |

**Proof of identify of adult household members and adult care givers identified in a sponsor care plan**
All potential sponsors must submit documentation verifying the identity of non-sponsor adults in their household or in a sponsor care plan. For all such adults, potential sponsors must submit at least one identification document that contains a photograph. The document may be from either List A or List B above, and may be an original version or a legible copy of the document. Expired documents are acceptable for the purpose of establishing identity. In addition, potential sponsors may submit an original version or legible copy of an ORR Verification of Release Form, but only to verify the identity of adults under the age of 21, and only if the form contains a photograph. ORR will not accept a Verification of Release as proof of identity if it does not contain a photograph, and/or is for anyone 21 and older.

**Exhibit 1**
**Page 36**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 22 of 262 Page ID #:9500

**Proof of Immigration Status or U.S. Citizenship**

All potential sponsors must submit at least one original version or legible copy of a non-expired government-issued document to prove their immigration status or U.S. citizenship, if applicable. For administrative purposes, ORR considers any potential sponsor who provides an expired document or is unable to provide any documents to be without status. ORR does not provide individual immigration status information to DHS.

ORR may use the macro-level information related to immigration status or presumed immigration status for statistical reporting. ORR uses individual potential sponsor immigration status information to determine whether a sponsor care plan is necessary in the event the sponsor is required to leave the United States (see **Section 2.6 Sponsor Immigration Status and Release of Unaccompanied Alien Children**).

### LIST OF ACCEPTABLE DOCUMENTS

| PROOF OF IMMIGRATION STATUS |
|---|
| Valid visa |
| Legal permanent resident card (green card) |
| Notice to Appear |
| Other Federal government issued documentation providing immigration status information |

**OR**

| PROOF OF U.S. CITIZENSHIP |
|---|
| U.S. passport |
| U.S. birth certificate |
| Naturalization certificate |
| Citizenship Certificate |
| State Department Form 240 – Report of Birth Abroad of a Citizen of the United States |
| Court order |
| Other government issued document sufficient to prove U.S. citizenship |

**Proof of Address**

All potential sponsors must submit at least one form of documentation verifying their current address. Acceptable forms of documentation include original versions or legible copies of:

- A current lease or mortgage statement dated within the last two months before submission of the FRA;
- A utility bill, addressed in the sponsor's name and dated within the last two months before submission of the FRA;
- A bank statement dated within the last two months before submission of the FRA;
- A payroll check stub issued by an employer, dated within the last two months before submission of the FRA;
- A piece of mail from a county, state, or federal agency (with the exception of ORR) with the sponsor's name and residential address and dated within the last two months before submission of the FRA;
- A notarized letter from a landlord on the business stationary of the real property owner confirming the sponsor's address; and
- Other similar documents reliably indicating that the sponsor resides at the claimed address, dated within the last two months before submission of the FRA.

ORR may use alternative methods to verify address. For example, ORR may send a letter containing specific instructions to the address given by the sponsor, and provide a timeline by which the sponsor must comply with the instructions.

**Proof of Child's Identity**

The potential sponsor or child's family must provide the unaccompanied alien child's birth certificate or a legible copy of the child's birth certificate.

**Proof of Sponsor-Child Relationship**

The potential sponsor must provide at least one form of evidence verifying the relationship claimed with the child.[4] Acceptable documents include original versions or legible copies of:

- Birth certificates;
- Marriage certificates;
- Death certificates;
- Court records;
- Guardianship records;

**Exhibit 1**
**Page 37**

Case 2:18-cv-05741-DMG-PLA  Document 272-1  Filed 10/02/20  Page 23 of 262  Page ID
#:9501

- Hospital records;
- School records;
- Written affirmation of relationship from Consulate; and
- Other similar documents.

**Category 2A potential sponsors providing evidence of "primary caregiver"**

Category 2A sponsors who are not grandparents or adult siblings must prove they are or were the UAC's primary caregiver. A primary caregiver is defined as any person who is primarily entrusted with the child's care and who lives with the child.

 If the potential sponsor has any guardianship documents or other documents from a state or foreign government they must submit this with the Family Reunification Application. ORR also accepts sworn affidavits from potential sponsors in addition to corroborating interviews the Case Manager has with the child, potential sponsor, and other family members to establish whether the potential sponsor was a primary giver to the child.

**Category 3 potential sponsors without a bona fide pre-existing relationship**

Category 3 potential sponsors who are unable to provide verifiable documentation of a familial relationship with the unaccompanied alien child must submit evidence that reliably and sufficiently demonstrates a bona fide social relationship with the child and/or the child's family that existed before the child migrated to the United States. Care providers must attain sufficient corroboration to be confident that they have received needed verification of the relationship between the potential sponsor and the child or child's family. If a Category 3 potential sponsor does not submit evidence that reliably and sufficiently demonstrates a bona fide preexisting social relationship between the potential Category 3 sponsor and the child and/or the child's family, ORR may take this into account when determining the suitability of the case for release. In such cases ORR may require that the potential Category 3 sponsor, the UAC, and the child's family, establish ongoing regular contact while the child is in ORR care, prior to a release recommendation.

**Criminal History**

If a potential sponsor has been charged with or convicted of any crime or investigated for the physical abuse, sexual abuse, neglect, or abandonment of a minor, he or she must provide related court records and police records, as well as governmental social service records or proof of rehabilitation related to the incident.

If a sponsor, household member, or adult caregiver provides any false information in the application of release and/or accompanying documents or submits fraudulent documents for the purposes of obtaining sponsorship of the child, ORR will report the incident to HHS/Office of the Inspector General (OIG) and to U.S. Immigration and Customs Enforcement's Homeland Security Investigations (HSI). Fraudulent documents include documents on which the address, identity, or other relevant information is false or documents that have been manufactured or altered without lawful authorization. ORR will deny release if it is determined that fraudulent documents were submitted during the application of release process.

*Revised 7/03/19*

**2.2.5 Legal Orientation Program for Custodians**

All potential sponsors of children and youth under the care of ORR should attend a presentation provided by the Legal Orientation Program for Custodians (LOPC). The purpose of this program is to inform potential sponsors of their responsibilities in ensuring the child's appearance at all immigration proceedings, as well as protecting the child from mistreatment, exploitation, and trafficking, as provided under the Trafficking Victims Protection Reauthorization Act of 2008. The program also provides information about possible free legal counsel (pro bono legal services) for the youth or child during the immigration court process.

The Office of Legal Access Programs (OLAP), within the Executive Office for Immigration Review (EOIR) at the U.S. Department of Justice, manages the LOPC and contracts with legal service organizations around the country to provide LOPC services to potential sponsors in their local communities or in metropolitan areas served by the program. EOIR is the entity in the federal government that is also responsible for adjudicating immigration cases by fairly, expeditiously, and uniformly interpreting and administering the nation's immigration laws.

The unaccompanied alien child's **case manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)** is responsible for informing potential sponsors about all procedures related to the child's case--including attendance at an LOPC presentation. The Family Reunification Packet (FRP) that goes to each potential sponsor includes an *Authorization for Release of Information* that the sponsor must sign before the case manager may schedule an appointment for LOPC services. All potential sponsors should submit the *Authorization for Release of Information* immediately and prior to submitting the complete FRP to ensure timely scheduling of their LOPC session.

**Exhibit 1**
**Page 38**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 24 of 262 Page ID #:9502

Upon receipt of the *Authorization*, the case manager schedules an appointment for a potential sponsor to attend a presentation with one of the LOPC providers around the country. Alternatively, the case manager contacts the **LOPC National Call Center at (888) 996-3848** and arranges for the Call Center to schedule an LOPC appointment for the potential sponsor or mail an LOPC Information Packet to the sponsor.

When evaluating family members and other potential sponsors, ORR considers whether they have attended an LOPC presentation. Attendance at an LOPC presentation is a factor in the release assessment.

*Revised 12/4/17*

### 2.2.6 Additional Questions and Answers about this Topic

**Q: Will sponsors receive the Family Reunification Packet through the mail or electronically?**
A: Case managers will work with sponsors to identify the best way to get the packets to them, whether electronically or by fax transmission or postage paid overnight mail.

**Q: Do sponsors need assistance from an attorney or a paid representative to complete the packet?**
A: No. The unaccompanied alien child's case manager will be able to help the potential sponsor complete the form and explain the process.

**Q: Is it possible for an unaccompanied alien child's spouse to be a sponsor?**
A: ORR considers release to an unaccompanied alien child's adult spouse on a case by case basis.

**Q: Is it possible for family members in the United States to proactively contact ORR about children who may have entered the country unaccompanied?**
A: Yes. Family members may call the ORR National Call Center, at (800) 203-7001.

*Posted 1/27/15*

## 2.3 Key Participants in the Release Process

ORR's sponsor assessment and release decision process requires coordination among care provider staff, nongovernmental third-party reviewers (Case Coordinators), ORR staff, other Federal agencies, stakeholders, and Child Advocates, where applicable.

**Case Managers (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)** communicate with potential sponsors, gather necessary information and documentation, talk to any relevant stakeholders, and assess sponsors to formulate a recommendation to the Case Coordinator. **Case Coordinators (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)** concurrently review all assessment information on an unaccompanied alien child and sponsor to also make a recommendation. Once Case Managers and Case Coordinators agree on a particular recommendation for release, the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** makes a final release decision. If the Case Manager and Case Coordinator cannot agree on a recommendation, the case is elevated to the ORR/FFS for further guidance.

*Revised 6/18/19*

### 2.3.1 ORR/Federal Field Specialists (ORR/FFS)

ORR/FFS are ORR's field staff located regionally throughout the country and are assigned to a group of care providers within a particular geographic region. They have the authority to approve all unaccompanied alien children transfer and release decisions; oversee care providers to ensure all services are properly provided and implemented; and serve as a local liaison to  community stakeholders, including other Federal agencies, local legal service providers, communities, Child Advocates, etc. ORR/FFS also provide guidance, direction, and technical assistance to care providers.

ORR/FFS also make final decisions as to whether home studies are conducted and/or post-release services are provided.[5] ORR/FFS coordinate all aspects of a child's case with care provider staff, Case Coordinators, stakeholders, and other Federal agencies.

*Revised 6/18/19*

### 2.3.2 Case Managers

Care provider Case Managers perform a variety of duties, including coordinating the completion of assessments of unaccompanied alien children, completing individual service plans, assessing potential sponsors, making transfer and release recommendations, and coordinating the release of a child or youth from ORR care and custody. (The care provider provides a range of services through other trained staff that are described in Section 3: Services.)

**Exhibit 1**
**Page 39**

Case 2:18-cv-05741-DMG-PLA Document 272 Filed 10/02/20 Page 25 of 262 Page ID #:9503

The role of the Case Manager within the release process is to initiate and maintain ongoing communication with the potential sponsor, gather sponsor information, and assess whether the potential sponsor is a suitable sponsor who can safely provide for the physical and mental well-being of the child or youth. When communicating with the potential sponsor, the Case Manager:

- Provides direct assistance on completing the sponsor application packet and ensuring provision of supporting documentation;
- Involves the sponsor in making a plan for individualized services for the unaccompanied alien child, as appropriate;
- Keeps the sponsor informed of the child's progress and current functioning;
- Provides the sponsor with detailed information about the child's needs in order to fully assess the sponsor's ability to provide care and services, including completing a sponsor care plan, when necessary;
- Discusses services that are available in the sponsor's community for the child; and
- Shares relevant information on the unaccompanied alien child in accordance with applicable privacy and information-sharing policies and in collaboration with the unaccompanied alien child and the child's clinician in a way that best serves the child's safety and well-being.

The Case Manager's role is also to ensure that information is gathered or shared with the appropriate staff and stakeholders during the sponsor assessment process. The Case Manager provides weekly status updates to the unaccompanied alien child's Case Coordinator and ORR/FFS on the progress in achieving a safe and timely release with family members as well as potential challenges that may delay a release. The Case Manager provides weekly status updates (monthly for children in LTFC) to the UAC on the child's case and provision of services, preferably in person. The Case Manager informs other stakeholders of the progress of a child's case, including notification that an unaccompanied alien child may not have a potential sponsor, and any final release decisions. Stakeholders may include local legal service providers and attorneys of record, other local service providers, Child Advocates, post-release and home study providers, and other Federal agencies. Case Managers, in collaboration with the ORR/FFS and Case Coordinator, will also work with law enforcement officials regarding an unaccompanied alien child's pending release if the minor has outstanding criminal charges or other issues.

*Revised 6/7/18*

## 2.3.3 Case Coordinators

Case Coordinators are non-governmental contractor field staff assigned to one or more care providers primarily to review unaccompanied alien children cases and provide transfer and release recommendations to ORR staff. The Case Coordinator is responsible for integrating all areas of assessment from the Case Manager, Child Advocates, and other stakeholders into a release plan that will provide for the unaccompanied alien child's physical and mental well-being. After staffing and reviewing a case, Case Coordinators and Case Managers must agree on a release recommendation. If there is a disagreement or a particularly complex case, then the case will be elevated to the ORR/FFS for further guidance.

- Providing timely review and assessment of potential sponsors and unaccompanied alien children to make recommendations for release to ORR in conjunction with the Case Manager;
- Assisting ORR in ensuring that children are placed in the least restrictive setting while receiving all appropriate services;
- Meeting with individual unaccompanied alien children and care provider staff at designated ORR-funded care provider sites;
- Providing targeted child welfare-based assistance to care provider staff, as directed by ORR staff;
- Making recommendations for home study and post-release services for at-risk children;
- Making placement recommendations for children who require more specialized levels of care, such as long-term foster care and residential treatment centers;
- Participating in collaborative meetings with local stakeholders; and
- Participating in staffing of cases with care providers and designated ORR staff.

*Revised 8/1/16*

## 2.3.4 Child Advocates

ORR may appoint **Child Advocates (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Child Advocate)** for victims of trafficking and other vulnerable children. Child Advocates are third parties who make independent recommendations regarding the best interests of a child. Their recommendations are based on information that is obtained from the child and other sources (e.g., the child's parents, potential sponsors, government agencies, and other stakeholders). Child Advocates formally submit their recommendations to ORR and/or the immigration court in the form of Best Interest Determinations (BIDs). ORR considers BIDs when making decisions regarding the care, placement, and release of unaccompanied alien children, but it is not bound to follow BID recommendations.

As required by the TVPRA, ORR provides Child Advocates with access to information necessary to effectively advocate for the best interests of children with whom they are working. After providing proof of appointment, Child Advocates have access both to their

**Exhibit 1**
**Page 40**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 26 of 262 Page ID #:9504

clients and to their clients' records. Child Advocates may access their clients' entire original case files at care provider facilities, or request copies from care providers.[6] Further, they may participate in case staffings.

Child Advocates and ORR maintain regular communication, informing each other of considerations or updates that impact service provision and release planning.

Child Advocates' duties include:

- Client Visits: The Child Advocate meets with the unaccompanied alien child regularly and speaks with the child's care provider staff in order to understand the child's background and current situation.
- Decision Making: The Child Advocate helps the unaccompanied alien child understand legal and care-related issues, explains the consequences of decisions made in response to those issues, and assists the child in making decisions when the child requests such help.
- Best Interests Advocacy: The Child Advocate develops a service plan containing best-interest recommendations with respect to the care, placement, and release options; and keeps the care provider, ORR, and the legal service provider or attorney of record apprised of the plan and advocacy efforts.
- Case updates: The Child Advocate collaborates and regularly communicates with the care provider, ORR, and other stakeholders in the planning and performance of advocacy efforts. For children who have been released from ORR care, Child Advocates provide timely updates as appropriate or as requested by ORR.

In most cases, ORR appoints Child Advocates while children are in its custody. However, in its discretion, ORR may appoint Child Advocates for unaccompanied alien children after their release from ORR care.

*Posted 8/1/16*

## 2.4 Sponsor Assessment Criteria and Home Studies

As noted in the **Section 2.2 Application for Safe and Timely Release of an Unaccompanied Alien Child from ORR Care**, the application process for release of an unaccompanied alien child involves a number of steps, including background checks (see **Section 2.5 ORR Policies on Requesting Background Checks**) and submission of the application by the sponsor. This section describes the criteria ORR uses to assess each potential sponsor's ability to provide for the physical and mental well-being of the unaccompanied alien child, and the role of home studies in the process.

The sponsor assessment reviews a sponsor's strengths, resources, risk factors and special concerns within the context of the unaccompanied alien child's needs, strengths, risk factors, and relationship to the sponsor. ORR also determines whether to conduct a home study, as required by the law or as necessary to ensure the welfare of the child

*Revised 3/15/16*

### 2.4.1 Assessment Criteria

ORR considers the following factors when evaluating family members and other potential sponsors:

- The nature and extent of the sponsor's previous and current relationship with the child or youth and the unaccompanied alien child's family, if a relationship exists.
- The sponsor's motivation for wanting to sponsor the child or youth.
- The unaccompanied alien child's parent or legal guardian's perspective on the release to the identified potential sponsor (for cases in which the parent or legal guardian has designated a sponsor).
- The child or youth's views on the release and whether he or she wants to be released to the individual.
- The sponsor's understanding of the unaccompanied alien child's needs, as identified by ORR and the care provider.
- The sponsor's plan to provide adequate care, supervision, access to community resources, and housing.
- The sponsor's understanding of the importance of ensuring the unaccompanied alien child's presence at all future hearings or proceedings, including immigration court proceedings, and the sponsor's attendance at a Legal Orientation Program for Custodians (LOPC) presentation. See section **2.2.5**.
- The linguistic and cultural background of the child or youth and the sponsor, including cultural, social, and communal norms and practices for the care of children.
- The sponsor's strengths, resources, and mitigating factors in relation to any risks or special concerns of the child or sponsor, such as a criminal background, history of substance abuse, mental health issues, or domestic violence and child welfare concerns.
- The unaccompanied alien child's current functioning and strengths in relation to any risk factors or special concerns, such as children or youth who are victims of human trafficking; are a parent or are pregnant; have special needs, disabilities or medical or

Exhibit 1
Page 41

mental health issues; have a history of criminal, juvenile justice, or gang involvement; or a history of behavioral issues.

*Revised 12/4/17*

**2.4.2 Home Study Requirement**

The care provider screens each case to determine whether to conduct a home study of the potential sponsor as required under the **Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) (http://www.gpo.gov/fdsys/pkg/BILLS-110hr7311enr/pdf/BILLS-110hr7311enr.pdf)**. Information about the child is collected during initial placement into an ORR facility and throughout his or her stay. The care provider then uses the information collected about and from the child in conjunction with the sponsor assessment process to determine whether to conduct a **home study (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Home Study)**. The TVPRA requires home studies under the following circumstances:

1. The child is a victim of a severe form of trafficking in persons;
2. The child is a special needs child with a disability as defined by section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102);
3. The child has been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened; or
4. The child's sponsor clearly presents a risk of abuse, maltreatment, exploitation or trafficking, to the child based on all available objective evidence.

ORR also requires a home study before releasing any child to a non-relative sponsor who is seeking to sponsor multiple children, or who has previously sponsored or sought to sponsor a child and is seeking to sponsor additional children. ORR requires a home study for children who are 12 years and under before releasing to a non-relative sponsor.

In circumstances in which a home study is not required by the TVPRA or ORR policy, the Case Manager and Case Coordinator may recommend that a home study be conducted if they agree that the home study is likely to provide additional information required to determine that the sponsor is able to care for the health, safety and well-being of the child. See **Footnote 5**.

The care provider must inform the potential sponsor whenever a home study is conducted, explaining the scope and purpose of the study and answering the potential sponsor's questions about the process. In addition, the home study report will be provided to the potential sponsor if the release request is denied. See also Section **2.7.7**.

**Home Study Report and Final Recommendation**

A home study consists of interviews, a home visit, and a written report containing the home study case worker's findings. A home study assesses the potential sponsor's ability to meet the child's needs, educates and prepares the sponsor for the child's release, and builds on the sponsor assessment conducted by the care provider staff to verify or corroborate information gathered during that process. The home study is conducted as a collaborative psycho-educational process in which the home study case worker identifies areas where additional support, resources, or information are needed to ensure a successful sponsorship, and provides corresponding psycho-educational assistance. The final recommendation must present a comprehensive and detailed assessment of the sponsor's ability to care for the needs of the child and address any additional information that emerges during the course of the home study regarding the sponsor, the sponsor's household or the child.

The home study provider must contact the care provider within 24 hours of home study referral acceptance, and must also contact the sponsor to schedule the home visit within 48 hours of referral acceptance. The home study provider makes a recommendation to ORR about release with the sponsor. The ORR Federal Field Specialist takes the home study provider's recommendation into consideration when making a release decision. ORR has final authority on release decisions.

The home study provider submits the written report within 10 business days of receipt of the referral. Any requests by the home study provider to extend beyond 10 business days or to cancel a home study must be submitted in writing to the ORR Federal Field Specialist for consideration.

All releases following home studies require post-release services.

**Must a child receive a Trafficking Eligibility or Interim Assistance Letter from HHS prior to being referred for a TVPRA-mandated home study under #1 above?**

No, a child does not need to receive a Trafficking Eligibility Letter from HHS prior to being referred for a home study. A care provider may refer a child for a home study under #1 above if, during the assessment for trafficking, the care provider determines the child is a victim of a severe form of trafficking in persons.

**Exhibit 1
Page 42**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 28 of 262 Page ID #:9506

**In determining whether a TVPRA-mandated home study is required under #3 above, care providers consider the following questions:**

#### What is physical abuse?

Physical abuse is an act that results in physical injury, such as red marks, cuts, welts, bruises, broken bones, missing or broken teeth or muscle strains. Acts of physical abuse include but are not limited to punching, beating, kicking, biting, hitting (with a hand, stick, strap or other object), burning, strangling, whipping, or the unnecessary use of physical restraint.

#### Is physical abuse intentional?

Generally, physical abuse is intentional; however, physical abuse can occur when physical punishment goes too far. In other words, an accidental injury of a child may be considered physical abuse if the act that injured the child was done intentionally as a form of punishment.

#### Must a child have physical injuries to meet the standard for physical abuse under #3?

No, in some cases, a child may not have physical injuries at the time the care provider makes an assessment. Children may be in various stages of the healing process or thoroughly healed from the physical abuse by the time they arrive in ORR care.

#### For the purposes of #3, who can physically or sexually abuse a child?

A parent, legal guardian, caregiver or other adult with a special relationship to the child can physically or sexually abuse a child.

#### Who is considered to be a caregiver or adult with a special relationship?

A caregiver is defined as any person who is entrusted with the child's care and who lives with the child. Other adults with a special relationship to the child could include a teacher, priest, or health care provider.

#### What is sexual abuse?

Sexual abuse of a child by a parent, legal guardian, caregiver or other adult with a special relationship to the child includes any of the following acts, with or without the consent of the child or youth:

- Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
- Contact between the mouth and the penis, vulva, or anus;
- Contact between the mouth and any body part where the adult has the intent to abuse, arouse, or gratify sexual desire;
- Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument where the adult has the intent to abuse, arouse, or gratify sexual desire;
- Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks where the intent is to abuse, arouse, or gratify sexual desire;
- Any attempt, threat, or request by the adult to engage in the activities described above;
- Any display by the adult of his or her uncovered genitalia, buttocks, or breast in the presence of the child; and
- Voyeurism.

State laws on statutory rape are not the standard in assessing whether a youth has been sexually abused for the purposes of #3. Care providers use the definition from the ORR rule concerning sexual abuse and harassment; however, for the purposes of determining when a home study is required, the perpetrator is limited to a parent, legal guardian, caregiver or other adult with a special relationship to the child.

#### Under what circumstances is a child's health or welfare considered to have been significantly harmed or threatened?

Care providers assess the totality of the circumstances in determining whether a child's health or welfare has been significantly harmed or threatened. In evaluating a specific case, care providers take into consideration not only the definitions of physical and sexual abuse listed

above, but also the circumstances surrounding the incident and any behaviors that the child or youth exhibits as a result of the abuse. Circumstances to consider include but are not limited to: the amount of time that has passed since the abuse, the period of time in which the abuse occurred, the cultural context in which the abuse occurred, the age of the child or youth at the time of the abuse, and the relationship between the youth and the perpetrator.

Care providers take into consideration the situations and behaviors listed below, but do not make a determination based solely on the presence or absence of one of them.

**Exhibit 1**

**Page 43**

Case 2:18-cv-05741-DMG-PLA   Document 272-1   Filed 10/02/20   Page 29 of 262   Page ID
#:9507

- The child experiences on-going medical issues from physical injuries.
- The child exhibits negative or harmful behaviors, thoughts or emotions, such as, but not limited to, excessive hostility or aggression towards others, fire setting, cutting, depression, eating disorders suicidal ideation or substance abuse.

In evaluating difficult cases, the care provider should consult with their ORR/FFS.

*Revised 1/9/17*

### 2.4.3 Additional Questions and Answers on This Topic

**Q: What happens if a new sponsor is identified during the sponsor assessment process?**
A: If there are multiple potential sponsors, the ORR-funded care provider will exhaust all efforts to facilitate a release to a parent or legal guardian while also contacting and evaluating other potential sponsors concurrently. ORR has release order preferences and will evaluate sponsors concurrently in accordance with the preference orders to determine the best placement for the child.

*Posted 1/27/15*

## 2.5 Sponsorship Assessment Background Check Investigations

One of ORR's priorities is ensuring the safe release of unaccompanied alien children to an appropriate sponsor. Consistent with ORR's mission and in compliance with requirements found at 8 U.S.C. 1232(c)(3)(A) to perform an independent finding that a potential sponsor has not engaged in any activity that would indicate a potential risk to the child, ORR requires a background check of all potential sponsors and their adult household members.

To begin the background check process, the potential sponsor and adult household members must first complete the Authorization for Release of Information form (if applicable), submit fingerprints (if required) and provide a copy of a valid government issued photo identification. Adult caregivers identified in a sponsor care plan also require background checks, as outlined in the chart at section 2.5.1. The type of background checks performed on a sponsor and adult household members is dependent in part on the sponsor's relationship, if any, with the child. See section **2.2.1 Identification of Qualified Sponsors** for a description of sponsor categories.

All potential sponsors and adult household members undergo a public records background check of criminal history and sex offender registry databases. Sponsors in Categories 2B and 3, as well as some Category 1 and 2A sponsors, adult household members, and adult caregivers identified in a sponsor care plan require fingerprint background checks that are processed through Federal partners.

ORR transmits fingerprint submissions (if required) to the U.S. Department of Justice's (DOJ) Federal Bureau of Investigation (FBI) to perform criminal history checks.[7] After completing these checks, the FBI submits the results to the Department of Health and Human Services/Program Support Center (HHS/PSC). HHS/PSC interprets the results and notifies ORR that the biometric and biographic checks conducted by DOJ are complete. HHS/PSC also provides copies of the results to ORR.

In some cases, ORR requires sponsors, adult household members, and adult caregivers to undergo a background check search of state child abuse and neglect (CA/N) registries maintained by individual states. In these cases, HHS/PSC works with the relevant state agency or directs the subject of the check to request results from the relevant state agency in compliance with state law and regulation.

*Revised 6/18/19*

### 2.5.1 Background Check Requirements

The following table lists the types of background checks performed, and explains when they are performed, based on the potential sponsor's relationship to the unaccompanied alien child and other release considerations. The table only indicates the minimum requirements for the background check process for sponsors and others. ORR may require additional checks, verifications, or procedures for sponsors and others in any category if there are any unresolved issues or questions related to the well-being of the child.

| Type of Background Check | Purpose | Persons Checked | When Performed |
|---|---|---|---|
| Public Records Check | Identifies arrests or convictions of sponsors, adult household members, or others. If a check reveals a criminal record or safety issue, it is used to evaluate the sponsor's ability to provide for a child's physical and mental well-being. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases |

**Exhibit 1**
**Page 44**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 30 of 262 Page ID #:9508

| | | Potential Sponsors in Categories 1-3. | In all cases |
|---|---|---|---|
| Sex Offender Registry Check, conducted through the U.S. Department of Justice National Sex Offender Public Website | Identifies sponsors and others that have been adjudicated as sex offenders through a national search and, if available, a local public registry search. | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | |
| FBI National Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member (as applicable) has a criminal history, has a profile in DHS IDENT, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Category 1 and Category 2A. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| | | Potential Sponsors in Categories 2B and 3. | In all cases. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| Child Abuse and Neglect (CA/N) Check, obtained on a state by state basis as no national CA/N check repository exists | Checks all localities in which the sponsor or household member has resided in the past 5 years. | Potential Sponsors in Categories 1-3 | In cases that require a home study, and cases where a special concern is identified. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In any case where a sponsor is required to undergo a CA/N check. |
| State Criminal History Repository Check and/or Local Police Check | Assists in locating police or arrest records, or other criminal offense details, as needed. | Potential Sponsors in Categories 1-3. | Used on a case-by-case basis when there is an unresolved criminal arrest or issue that is still in process. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | |

*Revised 6/18/19*

## 2.5.2 Results of Background Checks on Release Decisions

ORR uses the results from background checks to determine whether release to a potential sponsor is safe. A potential sponsor may be denied based on the results of a background check, and a release decision may remain undecided until ORR obtains the results of a potential sponsor's criminal history or child abuse and neglect reports.

The biometric and biographical information, including fingerprints, are shared with FBI to investigate criminal history through the National Criminal Information Center and may be used consistent with their authorities. Biometric and biographical information may be shared with federal, state or local law enforcement or state child welfare agencies, as necessary, to conduct criminal history searches or search for adverse child welfare findings.

### Criminal History and Adverse Child Welfare Finding Results

In the event that a background check of a potential sponsor or, if applicable, adult household member, reveals criminal history or a safety risk, the care provider and ORR evaluate this information and request the potential sponsor to provide any additional information that may demonstrate the potential sponsor's ability to provide for the child's physical and mental well-being.

If release is not barred by **Section 2.7.4**, the decision to release a child or youth to a sponsor in these circumstances is based on all the following considerations:

- The severity of the criminal and/or child abuse/neglect history;
- The length of time that has passed since the criminal act or child abuse/neglect allegation occurred;
- The relationship of the potential sponsor and other adult household members to the child or youth; and
- The evidence, if any, of rehabilitation since the criminal act or child abuse/neglect allegation occurred.

**Exhibit 1**
**Page 45**

In cases where the proposed sponsor or an adult household member has been charged with, but not convicted of, a crime, ORR may postpone a final release decision until the legal issue is resolved.

In cases where ORR has released a child and later obtains derogatory information on a sponsor or sponsor household member, ORR determines whether the information if known prior to release would have led to a denial of sponsorship or presents some other high risk child welfare concern. In these instances ORR contacts state CPS and/or local law enforcement (as necessary) with jurisdiction over the sponsor's home and provides them with ORR's findings. ORR may contact the sponsor in certain situations to inform them of child welfare concerns post release in these instances, especially where it concerns an individual in the sponsor's home.

### Summary Table of Results of Background Checks and Next Steps
The following table shows procedures following the results of background checks.

| BACKGROUND CHECK RESULTS | NEXT STEPS |
|---|---|
| No arrest record; check completed | Proceed with release decision-making process. See Section **2.7 Recommendations and Decisions on Release**. |
| Criminal arrest record and/or substantiated adverse child welfare findings; check completed | Determine whether release is barred. See Section 2.7.4 Deny Release Request. If release is not barred, elevate safety issues for third party review. For any findings that could affect safe release, care provider and/or ORR will obtain additional documents to determine current situation (e.g., sponsor is on probation, criminal charges are resolved, etc.). Final release decision shall take into account the criminal records and all other relevant information that is available. |
| Criminal history pending results; check not completed | ORR/FFS will provide instructions to care provider |
| CA/N pending results | ORR may choose to release a child pending CA/N results if there are no significant child welfare concerns associated with the sponsor or an adult in the sponsor's home, with the UAC or other children. |

*Revised 6/18/19*

### 2.5.3 Commonly Asked Questions on the ORR Background Check Process

Q1: Where can a sponsor get his or her fingerprints taken?
A1: ORR funds a network of digital fingerprint providers at locations that are not affiliated with law enforcement entities. Sponsors may also go to any local police department for paper fingerprinting services in the event a digital fingerprint provider is not conveniently located near a sponsor's location. Fingerprinting services are not available at ORR headquarters or at HHS/PSC offices.

Q2: Are potential sponsors required to disclose to the care provider that they have a record of a criminal charge or child abuse?
A2: Yes. The sponsor must immediately advise the care provider of this situation and gather detailed documentation of the charges, dispositions, police reports, and evidence of rehabilitation.

Q3: What happens if a public records or sex offender registry check returns disqualifying findings for a sponsor, adult household member, or adult caregiver identified in the sponsor care plan?
A3: The Case Manager informs the sponsor, and provides the sponsor with a copy of the results. The sponsor and household member/adult caregiver may dispute the results, and provide further evidence or information that a check was not performed correctly (e.g., the wrong date of birth was used, the individual's name was spelled incorrectly, etc.). The Case Manager reruns the check using the corrected information. If further information is required, such as additional background checks, the Case Manager contacts the sponsor and household member/adult caregiver to obtain the information, or make other arrangements so that the safety risk to the unaccompanied alien child is mitigated (e.g., taking steps so that the household member no longer resides in the sponsor's home, identifying a new adult caregiver, etc.).

Q4: What happens if an adult household member refuses to cooperate with a background check?
A4: ORR may deny release when an adult household member refuses to cooperate with a background check. In such cases, ORR considers the totality of the circumstances, including the adult household member's refusal and all other relevant and available information to determine whether the release process may continue. ORR determines the best interests of a child and does not release any child to a sponsor until ORR has determined that it is safe to do so.

Q5: Do background checks expire?
A5: Yes. The FBI National Criminal History Check, Child Abuse and Neglect (CA/N) Check, and State Criminal History Repository Check and/or Local Police Check all expire 270 days from the day results are received. The Public Records Check and Sex Offender Registry Check expire 90 days from the day ORR receives results. ORR requires new background checks if the previous results have expired prior to ORR approving the child's release; this includes obtaining a new set of fingerprints (re-fingerprinting) when applicable.

Q6: Does ORR share the results of the FBI fingerprint checks with other parties?
A6: ORR does not release the results of the FBI fingerprints to outside organizations or individuals, or to ORR care providers. The FBI searches DHS databases that may contain overlapping records. The FBI system automatically initiates a notification to the DHS system if a particular record has been searched.

**Exhibit 1**
**Page 46**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 82 of 262 Page ID #:9510

Q7: Can DHS use information gathered from the ORR background check process to enforce immigration policies against potential sponsors or others?

A7: Until September 30, 2019, DHS is restricted from using a background check subject's information for immigration enforcement actions such as placing a subject in detention, removal, referring the individual for a decision on removal, or starting removal proceedings. Generally stated, they include: certain felonies; an association with a business that employs minors and does not pay a legal wage or prevents the minor from going to school; or an association with prostitution. The felonies include: (A) an aggravated felony as defined in 8 U.S.C. 1101(a)(43)); (B) child abuse; (C) sexual violence or abuse; or (D) child pornography. An aggravated felony, is defined at 8 U.S.C. § 1101(a)(43), and includes a listing of 21 different kinds of crimes.

If the subject of a background check is concerned about having been charged or convicted of a crime, Case Managers make a request that the subject talk to an attorney about whether their criminal history would fit the definition.

*Revised 6/18/19*

## 2.6 Sponsor Immigration Status and Release of Unaccompanied Alien Children

ORR uses immigration status information to determine whether a sponsor care plan is necessary in the event the sponsor is required to leave the United States. ORR does not disqualify potential sponsors based solely on their immigration status or for law enforcement purposes.

If the sponsor has an outstanding order of removal, or a pending order of removal that is related to an underlying criminal act, the decision to release a child or youth to a sponsor in these circumstances is based on the considerations described in Section 2.5.2. ORR bars release to any unrelated individual who has an outstanding order of removal.

How does ORR obtain information about immigration status?
During the sponsor assessment process, case managers ask sponsors about their immigration status and ask them to provide documentation sufficient to prove their immigration status (see Section 2.2.4 Required Documents for Submission with the Application for Release).

What is in a sponsor care plan?
A sponsor care plan identifies the individual that will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child (see Section 2.7.6 Issues Related to Recommendations and Decisions).

*Revised 6/18/19*

## 2.7 Recommendations and Decisions on Release

ORR care providers must make a recommendation to release a child to a potential sponsor after the care provider has evaluated the sponsor, completed the background checks, and collected necessary documentation to prove the sponsor's identity and relationship to the child or youth. The recommendation must take into consideration all relevant information, including the report and recommendations from a home study, if conducted; laws governing the process; and other factors in the case. The ORR care provider makes a recommendation for release if the care provider concludes that the release is safe and the sponsor can care for the physical and mental well-being of the child.

- The care provider **Case Manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)**and the **Case Coordinator (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)**must make a recommendation to the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** on the release of the unaccompanied alien child to a particular sponsor. If the Case Manager and Case Coordinator cannot agree on a particular recommendation, or if the case is particularly complicated, they may refer the case directly to an ORR/FFS for guidance on how to proceed.
- After receiving the recommendation, the **ORR/FFS  (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)**or other **ORR/Headquarters staff (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Headquarters Staff)**reviews the recommendation.
- The ORR/FFS makes a release decision in consideration of the recommendations from the care provider, the Case Coordinator, and other stakeholders, including the home study provider and the Child Advocate, where applicable.

Only ORR (or ACF) has the authority to make the final decision on a release. The Case Manager, Case Coordinator, and other stakeholders have an important role in making recommendations. In some cases, the ORR/FFS may send a case back to the Case Coordinator and Case Manager to obtain additional information before he/she makes a release decision.

**Exhibit 1**
**Page 47**

Case 2:18-cv-05741-DMG-PLA   Document 272-1   Filed 10/02/20   Page 83 of 262   Page ID
#:9511

The ORR/FFS makes one of the following release decisions:

- Approve release to sponsor
- Approve release with post-release services
- Conduct a home study before a final release decision
- Deny release
- Remand for further information

*Revised 06/29/18*

### 2.7.1 Approve Release Decisions

A recommendation for a release without a home study or post-release services is made after a thorough assessment of the sponsor, the sponsor's family unit, and the needs of the child or youth are taken into consideration. The ORR/FFS makes this release decision when he/she determines that the release is a safe release, the sponsor can care for the health and well-being of the child, and the sponsor understands that the child is to appear for all immigration proceedings.

*Posted 1/27/15*

### 2.7.2 Approve Release with Post-Release Services

The ORR/FFS may approve a release with post-release services when the release is determined to be safe and appropriate, but the unaccompanied alien child and sponsor need additional assistance to connect them to appropriate resources in the community or to address other concerns, such as mental health or other needs that could benefit from ongoing assistance from a social welfare agency. The sponsor must consent before services may be provided and may withdraw his or her consent at any time after services have begun, since post-release services are a voluntary service. See **Section 6.2 Post Release Services (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-6#6.2)**.

*Revised 4/15/19*

### 2.7.3 Conduct a Home Study Before a Final Release Decision Can Be Made

The Case Manager and Case Coordinator will recommend to the ORR/FFS that a home study be conducted prior to making a release recommendation. If the ORR/FFS agrees, he/she will approve that a home study be conducted before a final release decision can be made. The home study provider uses a standardized template to complete the review; however, the provider may include any additional supporting documentation regarding the sponsor or the child or youth, as applicable.

Once the Case Manager and Case Coordinator receive the home study results, they will review the case in light of the home study and make a release recommendation to the ORR/FFS. (**See Section 2.4.2 Home Study Requirements. (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.4.2)**)

*Posted 1/27/15*

### 2.7.4 Deny Release Request

ORR *will* deny release to a potential sponsor if any one of the following conditions exists:

- The potential sponsor is not willing or able to provide for the child's physical or mental well-being;
- The physical environment of the home presents risks to the child's safety and well-being;
- Release of the unaccompanied alien child would present a risk to him or herself, the sponsor, household, or the community; or,

ORR may deny release to a Category 1 potential sponsor, and will deny release to a Category 2A/2B or Category 3 potential sponsor, if any one of the following conditions exists:[9]

- The potential sponsor or a member of the potential sponsor's household:
  - Has been convicted of (including plea of no contest to) a felony involving child abuse or neglect, spousal abuse; a crime against a child or children (including child pornography); or a crime involving violence, including rape, sexual assault or homicide;
  - Has been convicted within the last five years of a felony involving physical assault, battery, or drug-related offenses;
  - Has been convicted of a misdemeanor for a sex crime, an offense involving a child victim, or a drug offense that compromises the sponsor's ability to ensure the safety and well-being of the child;
  - Has been convicted of alien smuggling or a crime related to trafficking in persons; or

**Exhibit 1**
**Page 48**

- Has other criminal history or pending criminal charges or child welfare adverse findings from which one could reasonably infer that the sponsor's ability to ensure the safety and well-being of the child is compromised;

or

- A potential sponsor or a member of the potential sponsor's household has one of the following substantiated adverse child welfare findings:[11]
  - Severe or chronic abuse or neglect;
  - Sexual Abuse or other sexual offenses;
  - Abuse or neglect of other children in the household;
  - Long-term mental illness or deficiency;
  - Long-term alcohol or drug induced incapacity; or
  - Involuntary termination of the parental rights to another child.

*Revised 6/18/19*

### 2.7.5 Remand Release Request – Decision Pending

The ORR/FFS may remand the release request, which means that the ORR/FFS is sending the recommendation back to the Case Manager for additional information or additional actions before a final release decision can be made. ORR records the date of the remand and the decision will be pending further review until the documentation is provided or actions are taken.

*Posted 1/27/15*

### 2.7.6 Issues Related to Recommendations and Decisions

**Safety Plan**

Case managers, in consultation with Case Coordinators, prepare a safety plan, as needed, to address any outstanding needs the child may have after he/she is released and to ensure the child's safe and successful integration into the sponsor family unit and community. The goal of the safety plan is to ensure the child's safety. The safety plan also has guidance for sponsors on participating in post-release services and on other areas of care critical to the child's adjustment in the family and the community, such as maintaining mental health services for the unaccompanied alien child, accessing any needed special education, helping the child avoid drugs and alcohol, and using appropriate parenting techniques.

**Sponsor Care Plan**

A sponsor care plan identifies an adult caregiver who will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child. ORR requires a sponsor care plan for sponsors who may leave the United States, including all sponsors who are not U.S. citizens or lawful permanent residents (green card holders). The goal is to ensure an unaccompanied alien child has a caregiver, despite any complications resulting from the sponsor's immigration situation.
The plan:

- Identifies an adult caregiver, and their relationship to the UAC and sponsor, if any;
- Includes copies of the adult caregiver's vetting information (background check results, identifying documentation, etc.);
- Includes the adult caregiver's contact information;
- Discusses how the adult caregiver is notified that a transfer of care is required, if required;
- Provides that the adult caregiver will abide by the terms of the *Sponsor Care Agreement*;
- Includes the date the UAC's Case Manager discusses the plan with the child's sponsor and the adult caregiver identified in the plan; and,
- Includes additional information and materials (e.g., a Safety Plan), as appropriate or when required by ORR.

A copy of the sponsor care plan is maintained in the UAC's case file, provided to the sponsor, and to the adult caregiver identified in the plan.

*Revised 6/7/18*

### 2.7.7 Notification of Denial

If the ORR Director denies the reunification application of an unaccompanied alien child's parent or legal guardian, the ORR Director notifies the parent/legal guardian by sending a denial letter to the parent/legal guardian within 30 business days of receiving all the required information and documentation in a specific case.  If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the ORR Director sends a copy of the denial letter to the child.

The denial letter includes:

**Exhibit 1**
**Page 49**

- An explanation of the reason(s) for the denial;
- Instructions on how to obtain the child's case file;
- The supporting materials and information that formed the basis for ORR's decision; and
- An explanation of the process for requesting an appeal of the denial (see Section **2.7.8 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.8)**). The explanation also informs the prospective sponsor that he or she may submit additional information to support an appeal request.

If ORR denies sponsorship to a potential sponsor who is not the parent or legal guardian of the child, the care provider notifies the potential sponsor, providing the reasons for the denial verbally.  If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the Director notifies the child in writing of the reason for denial as described above.

*Revised 5/2/17*

### 2.7.8 Appeal of Release Denial

The parent/legal guardian may seek an appeal of the ORR Director's denial decision by submitting a written request to the Assistant Secretary for Children and Families within 30 business days of receipt of the final decision from the ORR Director.  The appeal request must state the basis for seeking the appeal, and may include any additional information that the requester believes is relevant to consideration of the request. The request may seek an appeal without a hearing or may seek a hearing.

Without a Hearing: If the requester seeks an appeal without a hearing, the Assistant Secretary will consider only the denial letter and the information referenced therein, as well as the appeal request and any additional supporting materials or information submitted by the requester. The Assistant Secretary will notify the requester of a decision within 30 business days of receiving the request.  If more information is needed to make a decision, or for good cause, the Assistant Secretary may stay the request until he or she has the information needed.  In these cases, the Assistant Secretary will send a written explanation to the parent/legal guardian, communicating a reasonable process and timeframe for addressing the situation and making a determination.

With a Hearing: If the requester seeks a hearing, the Assistant Secretary will schedule a teleconference or video conference, per the requester's preference, at which time the requester (or the requester's representative) may explain the reasons why he or she believes the denial was erroneous. The Assistant Secretary will consider the testimony and evidence presented at the hearing, in addition to the original denial letter and information referenced therein, to make a determination. The Assistant Secretary will notify the requester of the decision in writing within 30 business days following the hearing.

The Assistant Secretary makes a determination based on the relevant law, regulations, and policies concerning release decisions (see Section **2.7.4 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.4)** for the basis of a release denial).  Any evidence submitted to the Assistant Secretary by ORR is shared with the requester in compliance with privacy protections.  The Assistant Secretary conducts a de novo review and may affirm or overturn the ORR Director's decision, or send the case back to ORR for further action.  Appeals are recorded, and the requester may request a copy of the recording.  The Assistant Secretary's decision to affirm or overrule the ORR Director's decision to deny release to a parent/legal guardian is the final administrative decision of the agency on the application that had been under consideration.  However, if there is new information or a change in circumstances regarding the reunification application of a parent/legal guardian, or regarding the unaccompanied alien child's circumstances, a new reunification application may be submitted that highlights the change(s) and explains why such changes should alter the initial decision.  Similarly, if ORR discovers new information or becomes aware of a change in the circumstances of the parent/legal guardian and/or the unaccompanied alien child, ORR may assess the case anew.

**Denial for sole reason that the unaccompanied alien child is a danger to himself/herself or the community**

If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the unaccompanied alien child may seek an appeal of the denial as described above, provided the parent/legal guardian is not seeking an appeal.  If the child expresses a desire to seek an appeal, ORR appoints a child advocate to assist the unaccompanied alien child in seeking the appeal.  The unaccompanied alien child may seek such appeal at any time after denial of release while the child is in ORR custody.

*Revised 5/2/17*

### 2.8 Release from Office of Refugee Resettlement (ORR) Custody

Release from the ORR custody is a three-step process:

- After care planning, which occurs during the entire safe and timely release process.
- Transfer of physical custody of the child, which occurs as soon as possible once an unaccompanied alien child is approved for release.

**Exhibit 1**
**Page 50**

Case 2:18-cv-05741-DMG-PLA Document 272-1 Filed 10/02/20 Page 36 of 262 Page ID #:9514

- Closing the case file, which occurs within 24 hours of the unaccompanied alien child's discharge.

*Posted 1/27/15*

## 2.8.1 After Care Planning

Throughout the release process, care providers work with the child and sponsor so that they can plan for the child's after care needs. This involves working with the sponsor and the unaccompanied alien child to:

- Prepare them for post-ORR custody
- Assess the sponsor's ability to access community resources
- Provide guidance regarding safety planning, sponsor care plans, and accessing services for the child

Once the sponsor assessment is complete and a sponsor has been approved, the sponsor enters into an agreement with the Federal government in which he or she agrees to comply with the following provisions (see ***Sponsor Care Agreement*) (https://www.acf.hhs.gov/programs/orr/resource/unaccompanied-childrens-services#Family Reunification Packet for Sponsors)**:

- Provide for the physical and mental well-being of the child, including but not limited to, food, shelter, clothing, education, medical care and other services as needed.
- For those who are not the child's parent or legal guardian, make best efforts to establish legal guardianship with the local court within a reasonable time.
- Attend a legal orientation program provided under the Department of Justice/Executive Office for Immigration Review's (EOIR) Legal Orientation Program for Custodians (Sponsors), if available where he or she resides.
- Depending on where the unaccompanied alien child's immigration case is pending, notify the local Immigration Court or the Board of Immigration Appeals within 5 days of any change of address or phone number of the child (Form EOIR-33). (If applicable, file a Change of Venue motion on the child's behalf.[10] A "change of venue" is a legal term for moving an immigration hearing to a new location.)
- Notify the DHS/U.S. Citizenship and Immigration Services within 10 days of any change of address by filing an Alien's Change of Address Card (AR-11) or electronically at **http://www.uscis.gov/ (http://www.uscis.gov/ar-11)ar-11 (http://www.uscis.gov/ar-11)Visit (https://www.acf.hhs.gov/disclaimers) disclaimer page (https://www.acf.hhs.gov/disclaimers)**.
- Ensure the unaccompanied alien child's presence at all future proceedings before the DHS/Immigration and Customs Enforcement (ICE) and the DOJ/EOIR.
- Ensure the unaccompanied alien child reports to ICE for removal from the United States if an immigration judge issues a removal order or voluntary departure order.
- Notify local law enforcement or state or local Child Protective Services if the child has been or is at risk of being subjected to abuse, abandonment, neglect or maltreatment or if the sponsor learns that the child has been threatened, has been sexually or physically abused or assaulted, or has disappeared. (Notice should be given as soon as it is practicable or no later than 24 hours after the event or after becoming aware of the risk or threat.)
- Notify the National Center for Missing and Exploited Children at 1-800-843-5678 if the unaccompanied alien child disappears, has been kidnapped, or runs away. (Notice should be given as soon as it becomes practicable or no later than 24 hours after learning of the child's disappearance.)
- Notify ICE at 1-866-347-2423 if the unaccompanied alien child is contacted in any way by an individual(s) believed to represent an alien smuggling syndicate, organized crime, or a human trafficking organization. (Notice should be provided as soon as possible or no later than 24 hours after becoming aware of the information.)
- In case of an emergency, such as serious illness, destruction of home, etc., temporarily transfer physical custody of the child to another person who will comply with the terms of the *Sponsor Care Agreement*.
- In the event that a sponsor who is not the child's parent or legal guardian is no longer able and willing to care for the unaccompanied alien child and is unable to temporarily transfer physical custody, notify ORR using the ORR National Call Center, at 1-800-203-7001.

The agreement includes the notice that the release of the unaccompanied alien child to the sponsor's care does not grant the child any legal immigration status and that the child must present himself or herself for immigration court proceedings.

The care provider also provides the sponsor with a Sponsor Handbook that outlines the responsibilities in caring for the unaccompanied alien child's needs for education, health, obtaining legal guardianship, finding support to address traumatic stress, keeping children safe from child abuse and neglect and from trafficking and exploitation. The handbook reiterates the importance of continuing with immigration proceedings and includes links to EOIR's website and forms. The handbook discusses laws related to employment, such as the Federal law prohibiting minors under the age of 18 from working in hazardous occupations.

After care planning includes the care provider explaining the following to the unaccompanied alien child and the sponsor:

**Exhibit 1**
**Page 51**

- The U.S. child abuse and neglect standards and child protective services that are explained on the Administration for Children and Families **Child Welfare Information Gateway (https://www.childwelfare.gov/)** website.
- Human trafficking indicators and resources
- Basic safety and how to use the 9-1-1 number in emergency situations.

The care provider notifies all stakeholders of the child's discharge date and change of address and venue, as applicable. Where applicable, ORR also provides Child Advocates with access to their clients' documents and forms, and helps child advocates to remain informed about their clients' after-care plans and legal proceedings. The care provider coordinates with the legal service provider or attorney of record to help complete the necessary legal forms. Stakeholders notified of the change of address and, if applicable, request for change of venue for the immigration case include the U.S. Immigration and Customs Enforcement (ICE) Office of Chief Counsel and the U.S. Executive Office for Immigration Review (EOIR) Immigration Court Administrator.

*Revised 6/7/18*

### 2.8.2 Transfer of Physical Custody

Once ORR approves an unaccompanied alien child for release, the care provider collaborates with the sponsor to ensure physical discharge happens as quickly as possible (within 3 calendar days after ORR approves the release). The care provider notifies DHS prior to the physical release to allow DHS an opportunity to comment on the imminent release as well as time to prepare any DHS paperwork for the ICE Chief Counsel's office.

The care provider ensures that all the child's belongings—including those he or she had at the time they entered ORR custody and any they acquired during their stay—are given to the child and sponsor at time of release. The care provider also makes sure that the child and sponsor have copies of files or papers needed for the child to obtain medical, educational, legal or other services following release.

Whenever possible, sponsors are expected to come to the care provider or to an offsite location designated by the care provider for the transfer of physical custody of the child.

### Escorting Children to a Sponsor

Under extenuating circumstances (e.g., a sponsor cannot travel due to a medical condition), ORR may approve an unaccompanied alien child to be escorted to a sponsor. Similarly, if a sponsor pick-up would result in delay of a timely release of the child, ORR may approve an escort for an unaccompanied alien child.

If an unaccompanied alien child's final destination involves air travel and the sponsor will not be traveling with the child, the care provider must follow the procedures in the table below concerning care provider escorts and airline escorts.

Unaccompanied alien children who are under the age of 14 years old traveling via air may only be escorted by care provider staff, unless an ORR/FFS Supervisor has approved the use of an airline escort in advance.

The sponsor is responsible for the unaccompanied alien child's transportation costs and, if the care provider is escorting the child, for the care provider's transportation or airfare. If an airline escort is used, the sponsor is responsible for paying the airline's unaccompanied alien minor service fee.

Under no circumstances will ORR pay for the sponsor's airfare. Sponsors are not required to use a travel agent proposed or used by a care provider if they are able to find lower airfare using another agent or airline, provided escort conditions are met.

The following table summarizes procedures for each method of transfer.

| Method of Transfer | Pre-transfer Steps | At point of Transfer |
|---|---|---|
| Sponsor pick-up at care provider facility | - Case manager collaborates with the sponsor on selecting a date and time for the sponsor to pick-up the child<br>- Case manager notifies the sponsor that he/she is required to bring the same valid government issued photo identification previously submitted by the sponsor in the FRP (see Section **2.2.4**) | - Care provider checks the sponsor's identification upon arrival by comparing it to the identification previously submitted by the sponsor in the FRP (see Section **2.2.4**)<br>- If the sponsor's identification matches the identification previously submitted, care provider gives the sponsor the unaccompanied alien child's release documents and personal possessions<br>- Care provider advises the sponsor, if traveling by airplane, to check in the child at the ticket counter with a copy of the child's DHS form I-862, Notice to Appear<br>- Care provider may not release the child unless the sponsor presents the same valid government issued photo identification he or she submitted in the FRP. |

**Exhibit 1**
**Page 52**

| Care provider escort to offsite transfer location | • Case manager collaborates with the sponsor in selecting a time and location for transfer, and flights for the child and care provider escort<br>• Case manager notifies the sponsor that he/she is required to bring the same valid government issued photo identification previously submitted by the sponsor in the FRP to the transfer location<br>• Case manager arranges for the sponsor to pay for the child and care provider escort's transportation costs, including airline tickets where applicable<br>• Case manager prepares a copy of the sponsor's identification that was submitted in the FRP, for the care provider escort to take to the transfer location | • If traveling by air, at the departure airport, care provider escort checks in the child at the ticket counter with a copy of the child's DHS form I-862, Notice to Appear<br>• At the transfer location, care provider escort compares the sponsor's identification with the copy previously submitted by the sponsor in the FRP. If the identification documents correspond, care provider escort releases the child to the sponsor and provides the sponsor with the release documents and the child's personal effects and papers<br>• Care provider escort may not release the child unless the sponsor presents the same valid government issued photo identification he or she submitted in the FRP. If the sponsor does not produce valid identification, if the care provider escort has concerns regarding the sponsor's identity, or if the care provider escort has concerns regarding the safety of the situation upon meeting the sponsor, the care provider escort will return with the child to the care provider facility |
| Travel via airline's unaccompanied alien minor escort policy (only for youth 14 years of age and older) | • Case manager contacts the airline to obtain information on airline escort requirements, in order to ensure that they are adequate to protect the safety of the child, and to ensure that both the sponsor and the care provider can meet the requirements<br>• Case manager arranges for the sponsor to pay for the child's airplane ticket and for the airline unaccompanied alien minor escort fee<br>• Case manager ensures that the government issued photo identification submitted by the sponsor in the FRP will be acceptable to the airline to complete custody transfer<br>• The care provider instructs the sponsor to meet the unaccompanied alien child and escort at the airport with the identification they submitted in the FRP, and to follow the requirements of the airline's unaccompanied alien minors escort policy | • At the departure airport, care provider checks in the unaccompanied alien child at the ticket counter with a copy of the DHS form I-862, Notice to Appear, and a copy of the approved identification of the sponsor picking up the child<br>• At the departure airport, care provider gives the child their personal possessions and documents and a copy of the sponsor's approved identification, and mails an additional copy of the release documents to the sponsor<br>• At the destination airport, the sponsor arrives two hours before the child's arrival time, and contacts the care provider immediately to check in.<br>• The airline follows its standard procedures for escorting a child traveling alone to the designated parent or guardian<br>• The care provider contacts the sponsor shortly after the child's scheduled arrival time to confirm the child's transfer from the airline representative to the sponsor<br>• If the sponsor fails to arrive at the airport or fails to contact the care provider upon arrival at the airport, the care provider will notify the ORR/FFS and the Project Officer, and the child will either be returned to the care provider or taken to another nearby care provider facility. |

When arranging for children to travel with airline escorts, care providers should also refer to the U.S. Department of Transportation recommendations for unaccompanied alien minors traveling by air ("When Kids Fly Alone").

*Revised 6/18/19*

## 2.8.3 Closing the Case File

The care provider completes a Discharge Notification form within 24 hours of the physical discharge of a youth, and then emails the form to DHS and other stakeholders. Once a child is released to a sponsor, ORR's custodial relationship with the child terminates.

Although the custodial relationship ends, the care provider keeps the case file open for 30 days after the release date in order to conduct the Safety and Well Being Follow Up Call (see Section **2.8.4**) and document the results of the call in the case file. The care provider closes the case file record after completing the Safety and Well Being Follow Up Call.

*Revised 3/14/16*

### Section 2.8.4 Safety and Well Being Follow Up Call

Care providers must conduct a Safety and Well Being Follow Up Call with an unaccompanied alien child and his or her sponsor 30 days after the release date. The purpose of the follow up call is to determine whether the child is still residing with the sponsor, is enrolled in or attending school, is aware of upcoming court dates, and is safe. The care provider must document the outcome of the follow up call in the child's case file, including if the care provider is unable to contact the sponsor or child after reasonable efforts have been exhausted. If the follow up call indicates that the sponsor and/or child would benefit from additional support or services, the care

**Exhibit 1**
**Page 53**

provider must refer the sponsor or child to the ORR National Call Center and provide the sponsor or child the Call Center contact information. If the care provider believes that the child is unsafe, the care provider must comply with mandatory reporting laws, State licensing requirements, and Federal laws and regulations for reporting to local child protective agencies and/or law enforcement.

*Revised 3/14/16*

## 2.8.5 Post-Release Services for UAC with Zika Virus Disease or Infection

### Testing

ORR follows CDC guidance and recommendations for Zika virus laboratory testing. CDC recommends testing for all pregnant UAC without symptoms, but who are from or traveled through areas with ongoing Zika virus transmission and are within 2–12 weeks of arrival in the United States. Other UAC who develop two or more symptoms consistent with Zika may be tested for Zika virus upon consultation with a healthcare provider.

### Post-Release Referrals

Pregnant UAC who are diagnosed with Zika virus disease, have laboratory results compatible with Zika virus infection, or have laboratory results that cannot rule out Zika virus infection will be referred for post-release services. Similarly, UAC who delivered while in ORR care will be referred for post-release services if they were diagnosed with Zika virus disease, had laboratory results compatible with Zika virus infection, or had laboratory results that cannot rule out Zika virus infection while pregnant.

In some cases, asymptomatic pregnant UAC are released pending lab results. In those cases, ORR will communicate their test results to them and their new healthcare provider. If their results are compatible with Zika virus infection or if Zika virus infection cannot be ruled out, ORR will refer them for post-release services.

### Post-Release Services

Post-release services for eligible UAC described above include the full range of post-release services with a focus on connecting the UAC to prenatal care and maternal-child resources.

For more information about the Zika virus, please go to the CDC website at: **www.cdc.gov/zika/index.html (http://www.cdc.gov/zika/index.html)**

*Posted 5/2/16*

## 2.8.6 Release for Children with Legal Immigration Status

Some unaccompanied alien children may obtain legal immigration status while in ORR care.  ORR may also discover during the process of placing and providing services to a child that he or she already has legal immigration status or is a U.S. citizen. By law, ORR is not authorized to have custody of children with legal immigration status or U.S. citizenship. Therefore, these children cannot remain in ORR's care, and ORR must promptly release them from ORR-funded care provider facilities.

As soon as ORR determines that an unaccompanied alien child may be eligible for legal status, ORR begins development of a Post Legal Status Plan. The case manager develops the plan, and ORR approves it, tailoring it to the needs and pending immigration status of the child.

As is the case for all UAC, ORR continually makes efforts to reunify children who have promising immigration cases with family members. However, if no parent, legal guardian, relative, or other suitable adult is available, ORR and the care provider, as part of the development of the Post Legal Status Plan, identify alternative placements for the child, including specialized programs, state or county entities or licensed nonprofit organizations that will take custody of the child. In limited circumstances, children with certain types of immigration status may be eligible for release into ORR's Unaccompanied Refugee Minors (URM) Program. Placement in the URM Program is limited by type of immigration status and the availability of appropriate placement options. ORR will not release children on their own recognizance under any circumstances.

*Posted 5/8/17*

## 2.9 Bond Hearings for Unaccompanied Alien Children

Consistent with the Ninth Circuit Court of Appeals decision in Flores v. Sessions, unaccompanied alien children have the opportunity to seek a bond hearing with an immigration judge.

In a bond hearing, an immigration judge decides whether the child poses a danger to the community.[12] For the majority of children in ORR custody, ORR has determined they are not a danger and therefore has placed them in shelters, group homes, and in some cases, staff secure facilities. For these children, a bond hearing is not beneficial.

Exhibit 1
Page 54

Case 2:18-cv-05741-DMG-PLA   Document 272   Filed 10/02/20   Page 40 of 262   Page ID
#:9518

The burden is on the requestor to demonstrate that the child can be released because he or she is not a danger to the community. An immigration judge's decision that the unaccompanied alien child is not a danger to the community supersedes an ORR determination on that question, unless the immigration judge's decision is overturned by the Board of Immigration Appeals (BIA). However, even if an immigration judge decides the child is eligible for bond (meaning the child does not pose a danger to the community and need not remain in an ORR facility for that reason), in all cases release from ORR custody cannot occur until ORR has identified, evaluated and approved an appropriate sponsor in accordance with **Section 2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2)** of this policy guide.  An immigration judge does not rule on any of the following:

- release to a sponsor;
- the unaccompanied alien child's placement or conditions of placement while in ORR custody; or,
- releasing the child on his or her own recognizance.

ORR also takes into consideration the immigration judge's decision in the bond hearing about the youth's level of danger when assessing the youth's placement and conditions of placement.[13]

Although these hearings are known as "bond hearings," ORR does not require payment of any money in the event a court grants bond.

### Requesting a Bond Hearing

A request for a bond hearing may be made by the child in ORR care, by a legal representative of the child, or by parents/legal guardians on their children's behalf. These parties may submit a written request for a bond hearing to the care provider using the ORR form, *Notice of Right to Request a Bond Hearing*, or through a separate written request that provides the information requested in the form. ORR provides the *Notice of Right to Request a Bond Hearing* to UAC in secure and staff secure facilities.

A request for a bond hearing must minimally include:

- The full name and alien registration number ("A number") of the child;
- If a parent or legal guardian, or an appointed legal representative, is making the request, the parent/legal guardian's or legal representative's name;
- The location of the care provider facility;
- The date of the request; and
- The signature(s) of the requesting child, the parent/legal guardian, and/or legal representative.

There is no filing fee to submit a request for a bond hearing to the care provider.

A child (or his or her legal representative) may also request a bond hearing by making an oral request in immigration court.

### Bond Hearings Proceedings

Bond hearings are usually held at the immigration court where the request for a bond hearing is filed.

If the immigration judge finds an unaccompanied alien child eligible for bond, and ORR does not appeal, then ORR follows its sponsor assessment and release procedures as described in **Section 2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2)** of this policy guide.

### Appeals

Either party may appeal the immigration judge's decision to the BIA. Because ORR cannot release a child until it identifies a suitable sponsor, an immigration judge's finding that the unaccompanied alien child is not a danger to the community does not necessarily result in a release of the child while an appeal is pending.

### Age Outs

If an unaccompanied alien child becomes 18 years old during the pendency of a bond hearing or bond hearing appeal, ORR forwards the request for a bond hearing and any relevant information to the local DHS/ICE Office of Chief Counsel's office.

### Further Requests for Bond Hearing

If an immigration judge (or BIA, when appealed) determines that an unaccompanied alien child is ineligible for bond, such decision is final unless the child can demonstrate a material change in circumstance to support a second request for a bond hearing.

*Revised 7/19/17*

**Exhibit 1**
**Page 55**

**Footnotes**

1. As per the release order preference outlined in Flores v. Reno Stipulated Settlement Agreement, No. 85-4544-RJK (Px) (C.D. Cal., Jan 17, 1997).

2. These categories were created for program use, to help identify potential sponsors. They are not intended to replace the legal order of preference established in Flores.

3. The care provider may offer assistance to potential sponsors in securing necessary documentation, but it is ultimately the potential sponsor's responsibility to find and submit them.

4. Verification of the potential sponsor's relationship to the child is a minimum step required by the TVPRA to determine a potential sponsor's suitability and capability of providing for the child's physical and mental well-being. See 8 U.S.C. § 1232. As a result, as stated above, ORR may in its discretion require the submission of multiple forms of evidence.

5. ORR/FFS Supervisors are the final authority for approving discretionary home studies (See Section **2.4.2**)

6. Child advocates must keep the information in the case file, and information about the child's case, confidential from non-ORR grantees, contractors, and Federal staff.

7. As part of the FBI background check process, DHS databases are searched. The FBI also forwards biographic information to ICE's Law Enforcement Support Center (LESC). Neither HHS/PSC or ORR verify any records produced by DHS for background check purposes.

8. An *Authorization for Release of Information* is not required for sponsors, adult household members, or adult care givers identified in a sponsor care plan undergoing a sex offender registry check. An *Authorization for Request of Information* also is not required for sponsors, adult household members and adult caregivers identified in a sponsor care plan undergoing a public records check. However, sponsors will receive notice that public records and sex offender registry checks will be performed, and will have an opportunity to explain the results of these checks to ORR. ORR will also provide a method for disputing the results of checks.(See Section **2.5.3 (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.5.3)**, Q4)

9. ORR will also reject any sponsor care plans that identify an adult care giver who has any of the disqualifying criteria.

10. See U.S. Dept. of Health and Human Services, Children's Bureau. *Grounds for involuntary termination of parental rights*, at 2. Washington, DC: Child Welfare Information Gateway, Jan. 2013.

11. The Change of Venue motion must contain information specified by the Immigration Court. A Change of Venue motion may require the assistance of an attorney. For guidance on the "motion to change venue," see the Immigration Court Practice Manual at **www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm (http://www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm)**. For immigration case information please contact EOIR's immigration case information system at 1-800-898-7180. Visit EOIR's website for additional information at: **www.justice.gov/eoir/formslist.htm (http://www.justice.gov/eoir/formslist.htm)**.

12. Immigration judges also consider risk of flight. However, ORR does not make a determination of flight risk for the purpose of deciding whether a child is released. If an immigration judge offers an opinion about a youth's risk of flight, ORR takes the judge's opinion into consideration when assessing the child's placement and conditions of placement, but the decision does not affect release.

13. Please see footnote above concerning risk of flight.

---

**<Back (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1)** - **Next (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-3)>**

---

Last Reviewed: August 23, 2019

**Exhibit 1**
**Page 56**

# Exhibit 2

Exhibit 2
Page 57



ADMINISTRATION FOR
# CHILDREN &FAMILIES
Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

# The UAC Manual of Procedures

# (UAC MAP)

*For ORR Staff, Contractors, and Grantees*

# Section 1: Placement in ORR Care Provider Facilities

**Office of Refugee Resettlement**
**Office of the Director**
**The Division of Policy and Procedures**
**2018 (Version 2)**

Exhibit 2
Page 58

Not Confidential

GOV-00016596

# Section 1: Placement in ORR Care Provider Facilities

## Table of Contents

Section 1: Placement in ORR Care Provider Facilities ............................................................................ 2

  1.1 Summary of Procedures for Placement and Transfer of UAC ............................................. 5

  1.2 ORR Standards for Placement and Transfer .......................................................................... 8

     1.2.1 Placement Considerations ...................................................................................... 8

     1.2.2 Children with Special Needs ................................................................................... 8

     1.2.3 Safety Issues .......................................................................................................... 8

     1.2.4 Secure and Staff Secure Care Provider Facilities ................................................. 8

     1.2.5 UAC Who Pose a Risk of Escape ........................................................................... 9

     1.2.6 Long Term Foster Care .......................................................................................... 9

     1.2.7 Placing Family Members ........................................................................................ 9

  1.3 Referrals to ORR and Initial Placements ................................................................................ 9

     1.3.1 Requests for Information from Referring Federal Agency .................................... 11

     1.3.2 ORR Designates Placement ................................................................................... 12

     1.3.3 Care Provider Accepts Placement ......................................................................... 16

     1.3.4 UAC Transferred to ORR Custody ......................................................................... 17

     1.3.5 Initial Placements in the Event of an Emergency or Influx .................................. 22

  1.4 Transfers within the ORR Care Provider Network ................................................................. 22

     1.4.1 Least Restrictive Setting ........................................................................................ 33

     1.4.2 30 Day Restrictive Placement Case Review ........................................................... 33

     1.4.3 Long Term Foster Care .......................................................................................... 38

     1.4.4 Transfer to Long Term Foster Care ....................................................................... 39

     1.4.5 Group Transfers ..................................................................................................... 40

     1.4.6 Transfer to a Residential Treatment Center (RTC) ................................................ 42

**Exhibit 2**
**Page 59**

Not Confidential

1.4.7 Requesting Reconsideration of a Secure or RTC Placement Designation .................... 45

1.5 Placement Inquiries ................................................................................................. 45

1.5.1 ORR National Call Center ...................................................................................... 45

1.6 Determining the Age of an Individual without Lawful Immigration Status ...................... 46

1.6.1 UAC in HHS Custody ............................................................................................. 47

1.6.2 Instructions ........................................................................................................ 47

1.7 Placement and Operations during an Influx .................................................................. 49

1.7.1 Activation of HPCs ............................................................................................... 51

1.7.2 Placement into HPCs ............................................................................................ 51

1.7.3 Placement into Influx Care Facilities ..................................................................... 52

1.7.4 Admission and Orientation for HPCs and Influx Care Facilities .................................... 58

1.7.5 Medical Services .................................................................................................. 59

1.7.6 HPC and Influx Care Facility Services ..................................................................... 59

1.7.7 Transportation during Influx ................................................................................. 60

1.7.8 Federal Staffing Plan ........................................................................................... 60

Appendix 1.1 "Add New UAC" Screen Shot ...................................................................... 61

Appendix 1.2 Intakes Placement Checklist .................................. **Error! Bookmark not defined.**

Appendix 1.3 Notice of Placement in Restrictive Setting ...................................................... 66

Appendix 1.4 Medical Checklist for Transfers .................................................................... 68

Appendix 1.5 Screen Shot of the Transfer Request and Tracking Form .................................... 69

Appendix 1.6 Template for Summary Notes: 30 Day Restrictive Placement Case Review ...... 71

Appendix 1.7 Long Term Foster Care Placement Memo .......................................................... 72

Appendix 1.8 Request for Reconsideration of Placement .......................................................... 73

Appendix 1.9 Care Provider Checklist for Transfers to Influx Care Facilities ............................ 74

Appendix 1.10 Medical Checklist for Influx Transfers ................................................................ 76

Exhibit 2
Page 60

Not Confidential                                                                          GOV-00016598

Look for these **icons** for quick cues on what is required for a specific procedure or a reference to a particular policy in the UAC Policy Guide.

📖 **UAC Policy Guide (ORR Guide to Children Entering the United States Unaccompanied)**

✉ Email

📫 Mail

🕐 Tasks associated with a deadline

📑 Form or other template

🖱 UAC Portal

☎ Phone call

**Exhibit 2**
**Page 61**

Not Confidential                                                                                        GOV-00016599

# 1.1 Summary of Procedures for Placement and Transfer of UAC

## OVERVIEW

See Section 1.3 for detailed procedures regarding initial placement within the ORR care provider network. ORR has additional procedures to place or transfer UAC in the event of an emergency or influx to make safe and suitable placements expeditiously. ORR makes all initial placement decisions.

The U.S Department of Homeland Security (DHS) or other federal agencies, such as the U.S. Marshals Service or the FBI, refers apprehended minors who are UAC to ORR 7 days a week, 24 hours a day.

The ORR Intakes team receives referrals of UAC and designates initial placements for UAC within the ORR care provider network based on bed capacity and other considerations. After ORR Intakes notifies the designated care provider and the referring agency of a UAC's placement, the referring agency physically transports the UAC to the designated care provider, and the care provider admits the UAC into the program. **See Fig. 1.1**.

## Fig. 1.1 Federal Agency Referral and ORR Placement of UAC



| Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|--------|--------|--------|--------|--------|
| Referral | Placement Designation | Notifications | UAC Transported | UAC Admitted |

After placement, UAC may be transferred to another facility within the care provider network. See Section 1.4 for detailed procedures on transfers within the ORR care provider network.

Care providers identify UAC in need of transfer and elevate to case coordinators and other staff who will elevate the case as needed in order to identify placement options. The receiving care

Exhibit 2
Page 62

Not Confidential                                                                        GOV-00016600

provider accepts placement. Sending and receiving care providers arrange logistics and transportation and provide notifications. The receiving care provider admits the UAC into their program. ORR approves all transfers within the care provider network. **See Fig. 1.2.**

## Fig. 1.2 Transfers within the Care Provider Network



**Step 1**

UAC identified in need of transfer.

**Step 2**

Transfer Request File created.

**Step 3**

Case coordinators identify placement options.

**Step 4**

Care provider accepts placement.

**Step 5**

FFS approves transfer request.

**Step 6**

Sending and receiving care provider programs arrange logistics, update records, and notify stakeholders.

**Step 7**

UAC arrives at receiving care provider. Care provider admits UAC to program, updates records, and notifies stakeholders.

Exhibit 2
Page 63

Not Confidential                                                                                    GOV-00016601

| Key Players | Responsibilities |
|---|---|
| Care Provider Program | Depending on the procedures, the care provider staff include staff who accept UAC placements; case managers, who coordinate services, clinicians, and medical coordinators who oversee medical services and assessments of UAC. |
| ORR Staff | The major players for initial placement and transfer include the ORR Intakes staff, the first ORR point of contact for the federal agency referring UAC, and Federal Field Specialists (FFS) and FFS supervisors who oversee placement and transfer. |
| Case Coordinators | Government contractors who provide independent third party recommendations and child welfare technical assistance to programs. |

| Related Forms/Instruments | Used By |
|---|---|
| *UAC Initial Placement Referral Form* | Intakes; DHS |
| *Intakes Placement Checklist* | Intakes, FFS |
| *Notice of Placement in a Restrictive Setting* | Case Manager; Clinician; Case Coordinator; FFS |
| *Transfer Request* | Case Manager, Case Coordinator, FFS |
| *Transfer Request and Tracking Form* | Case Manager |
| *Medical Checklist for Transfers* | Medical Coordinator, Medical Staff |
| *Long Term Foster Care Placement Memo* | Case Coordinator, Care Provider |
| *Care Provider Checklist for Transfers to Influx Care Facilities* | Case Manager |
| *Medical Checklist for Influx Transfers* | Medical Coordinator, Medical Staff |
| **See Section 3 for Details About the Following Forms Mentioned in this Section:** | |
| *Notice to ICE Chief Counsel Change Address/Change of Venue* | Case Manager |
| *UAC Assessment* | Care Provider Program |
| *UAC Case Review* | Case Manager |
| *Individual Service Plan* | Case Manager |
| *Alien's Change of Address Form/Immigration Court (EOIR—33/IC)* | Case Manager |
| *Care Provider Family Reunification Checklist* | Case Manager |

ORR expects care providers and ORR staff and contractors to protect Personally Identifiable Information (PII) when communicating information about sponsors and UAC. This includes password protecting documents and limiting PII in emails, including the body of the email. Best practices for protecting PII are provided throughout the section and include sample email templates. Documents that are uploaded in the UAC Portal do **not** need password protection.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                 7 | P a g e

Exhibit 2
Page 64

Not Confidential                                                                                          GOV-00016602

# 1.2 ORR Standards for Placement and Transfer

📖 See Section 1.2 of UAC Policy Guide (ORR Guide to Children Entering the United States Unaccompanied) (UAC Policy Guide).

## 1.2.1 Placement Considerations

📖 See Section 1.2.1 of the UAC Policy Guide.

## 1.2.2 Children with Special Needs

📖 See Section 1.2.2 of the UAC Policy Guide.

## 1.2.3 Safety Issues

📖 See Section 1.2.3 of the UAC Policy Guide.

## 1.2.4 Secure and Staff Secure Care Provider Facilities

### PROCEDURES

Notice of Placement in a Restrictive Setting (Secure, Staff Secure and non-Treatment Authorization Request (TAR) Residential Treatment Center (RTC) facilities)

**Within the 48 hours of initial placement** of a UAC into a secure, staff secure, or non-TAR RTC setting (as discussed in Section 1.4.6), the case manager notifies the UAC in a language he or she understands during the explanation of their placement in a restrictive setting:

- That the UAC has an opportunity to request a *Flores* bond hearing (see 2.9).

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    8 | P a g e

Exhibit 2
Page 65

Not Confidential

GOV-00016603

- Provides the *Notice of Placement in a Restrictive Setting*. The care provider marks the appropriate box(es) noting the reason for the placement, provides a summary of the placement decision based on the evidence provided to the care provider by ORR.

- The UAC signs and dates the form. (If the UAC refuses to sign the form the care provider notes "UAC refused to sign" on the signature page of the document). The care provider scans and uploads the *Notice of Placement in a Restrictive Setting* into the UAC Portal. A copy of the *Notice of Placement in a Restrictive Setting* is maintained in the UAC's case file, and another copy is provided to the UAC to keep with their personal belongings.

- Reviews the UAC's placement **within 30 days** and at least every 30 days thereafter.

- **If the UAC is in a secure facility or RTC,** informs the UAC that they can request the ORR Director to reconsider their placement if after the 30 day case review they are not stepped-down. (See section 1.4.7.) 📖📎📖

## 1.2.5 UAC Who Pose a Risk of Escape

📖 See Section 1.2.5 of the UAC Policy Guide.

## 1.2.6 Long Term Foster Care

📖 See Section 1.2.6 of the UAC Policy Guide.

## 1.2.7 Placing Family Members

📖 See Section 1.2.7 of the UAC Policy Guide.

## 1.3 Referrals to ORR and Initial Placements

**Exhibit 2**
**Page 66**

## OVERVIEW

The tables below identify key participants in the Initial Referral/Placement process and list key forms and instruments completed during these steps. Appendices referred to in this section include forms or other templates referred to in the procedures, and are found at the end of this **UAC MAP** section.

| Key Players | Responsibilities |
|---|---|
| DHS (or other federal agency) | Operating at key points of entry near borders and across the country; responsible for referring UAC to ORR. |
| ORR Intakes Team (ORR Intakes) | Specialists in ORR headquarters who receive and process all referral requests, locate and designate appropriate placement, and document all referrals and placement designations. ORR Intakes operates 24 hours per day, seven days a week. |
| Federal Field Specialists (FFS) | Responsible for addressing any concerns or issues that arise during referral and initial placements. FFS supervisors are responsible for approving placement in special cases (such as secure placements). |
| ORR Division of Health of Unaccompanied Children (DHUC) | ORR Intakes may consult with DHUC if medical or mental health issues are involved in UAC placement considerations. |
| Care Provider Programs | ORR's network of grantees who care for UAC referred to ORR. Care provider programs must have a primary and secondary contact available 24 hours a day, 7 days a week who will respond to ORR Intakes team within one hour of ORR Intakes' request for UAC initial placement. |

| Related Forms/Instruments | Used By |
|---|---|
| The UAC Portal is the system of record for all UAC referrals and initial placements. | All parties |
| DHS referrals submitted via DHS's database provide a direct data link which automatically generates a "Pending" record with completed fields into the UAC Portal. | DHS |
| The form *UAC Initial Placement Referral Form* matches the "Add New UAC" Intakes Section of the UAC Portal and is only used when DHS does not submit UAC information via the UAC Portal. In those cases, ORR Intakes types information from the referral directly into the Portal in the "Add New UAC" Intakes tab. | DHS; ORR Intakes |

## PROCEDURES

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    10 | P a g e

**Exhibit 2**
**Page 67**

Not Confidential                                                                                           GOV-00016605

1. DHS (or other federal agency) refers UAC through UAC Portal or Intakes Hotline (orrducs_intakes@acf.hhs.gov or 202-401-5709). Referrals can take place 24/7. ✉/☎/👆

2. ORR Intakes creates record for a "Pending" UAC in the "Add New UAC" Intakes section of the UAC Portal (alternatively, auto-populated via DHS database referral). **See Fig. 1.3.** 👆

## Fig. 1.3 "Add New UAC" Tab on UAC Portal



📄 **Appendix 1.1** is a complete "Add New UAC" form in the UAC Portal.

# 1.3.1 Requests for Information from Referring Federal Agency

## PROCEDURES

ORR Intakes documents and reviews UAC's biographical and apprehension information in the UAC Portal that has been submitted by DHS (or other federal agency). (If information is missing, ORR Intakes contacts DHS.) ✉/☎👆

**UAC's biographical and apprehension information includes:**

- Health related information including, but not limited to, if the UAC is pregnant or parenting and whether there are any known physical or mental health concerns. If there are significant health concerns (i.e., the UAC is not fit for travel), ORR requests that the referring federal agency medically clear

**Exhibit 2**
**Page 68**

Not Confidential                                                                                        GOV-00016606

the child before ORR will designate placement. In its discretion, ORR may designate placement for UAC who are pending medical clearance.

- Whether the child has any medication or prescription information, including how many days' supply of the medication will be provided with the child or youth when transferred into ORR custody.
- Biographical and biometric information, such as name, gender, alien number, date of birth, country of birth and nationality, date(s) of entry and apprehension, place of entry and apprehension, manner of entry, and the child's current location.
- Any information concerning whether the child or youth is a victim of trafficking or other crimes.
- Whether the UAC was apprehended with a sibling or other relative.
- Identifying information and contact information for a parent, legal guardian, or other related adult providing care for the child or youth prior to apprehension, if known.
- If the UAC was apprehended in transit to a final destination, what the final destination was and who the child or youth planned to meet or live with at that destination, if known.
- Whether the UAC is an escape risk, and if so, the escape risk indicators.
- If the UAC was previously in ORR custody and subsequently released to a sponsor and re-apprehended by DHS on suspicion of gang affiliation (but only on gang affiliation), a copy of the Immigration Judge's *Saravia* order finding DHS had sufficient evidence to justify the arrest.
- Any information on a history of violence, juvenile or criminal background, or gang involvement known or suspected, risk of danger to self or others, state court proceedings, and probation.

## 1.3.2 ORR Designates Placement

### PROCEDURES

1. **Within 3 hours if possible but no more than 24 hours,** ORR Intakes uses placement considerations to identify a care provider. ORR Intakes attempts to place the UAC in a care provider facility as close as possible to the point of apprehension while considering the individual needs of the UAC. ORR Intakes consults with FFS

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          12 | P a g e

Exhibit 2
Page 69

Not Confidential                                                         GOV-00016607

supervisor and/or DHUC in special cases (such as a UAC with mental health or medical issues, UAC with criminal or violent background).  📖 🕐

2. ORR Intakes identifies available and appropriate bed space at a care provider by reviewing the "Capacity Management" tab in the UAC Portal which automatically updates available beds by state, facility, and types of facilities. **See Fig. 1.4.** 🕐

## Fig. 1.4 Capacity Management Tab



**NOTE:** Care provider MUST verify information in their facility on a **daily basis by 9 a.m.** so that the UAC Portal will generate an accurate report of the number of UAC in care, and number of open beds. **See Fig. 1.5**. 🕐 🕐

## Fig. 1.5 Verification Tab for Care Providers



3. ORR Intakes uses the *Intakes Placement Checklist* If the UAC has:
   - A juvenile or adult criminal history, including involvement in human trafficking or smuggling.
   - Prior acts of violence or threats in government custody
   - Gang/cartel involvement

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    13 | P a g e

Exhibit 2
Page 70

Not Confidential

GOV-00016608

- Prior escape(s) or attempted escape(s) from government custody
- Mental health concerns
- Sexual predatory behavior



**Appendix 1.2** is a copy of the LAC's *Intakes Placement Checklist*.

4. ORR Intakes inputs all available information on the UAC's criminal history or behavioral concerns into the *Intakes Placement Checklist*.

5. The on-call FFS supervisor must approve all placements when Intakes uses the *Intakes Placement Checklist* to designate placement.  The FFS supervisor decides if the recommended care provider type associated with the *Intakes Placement Checklist* is a suitable placement for the UAC. Each placement is assessed on a case-by-case basis.

6. Intakes emails the completed *Intakes Placement Checklist* to the Care Provider.

7. After receiving the *Intakes Placement Checklist* the care provider scans and uploads the form into the UAC Portal after electronically admitting the UAC into the program.

8. The care provider generates the *Notice of Placement in a Restrictive Setting* and populates the UAC biographical information and the care provider facility information.

   The care provider:

   - Marks the appropriate box noting the reason for the placement

   - Provides a summary of the placement decision based on the evidence provided to the care provider by ORR and DHS (this will be a summary of the *Intakes Placement Checklist* and any information DHS provides with the initial referral)

   - Prints out a copy of the form, which is provided to the UAC at admission into the facility.  (For more information, see section 3.)

Exhibit 2
Page 71

Not Confidential                                                                           GOV-00016609

**Fig. 1.6** is a snapshot of the *Notice of Placement in a Restrictive Setting.* See, section 1.2.4.

### Translations of the *Notice of Placement in a Restrictive Setting*

- The *Notice of Placement in a Restrictive Setting* is available in English and Spanish. At the UAC's option, the minor is provided a Spanish version of the form. However, any summary of their placement must be provided in English and Spanish if using the Spanish version of the form.

- If the child speaks a language other than English or Spanish, the care provider facility utilizes a language line or other translator that translates the relevant English portions of the form into the UAC's preferred language. This includes translation of the form's summary of placement section.

**Appendix 1.3** is the *Notice of Placement in a Restrictive Setting*.

---

## Fig. 1.6 Notice of Placement in a Restrictive Setting



---

9. ORR Intakes provides **prior notification to care provider staff** in these cases:

UAC MAP: Section 1: Placement in ORR Care Provider Facilities

**Exhibit 2**
**Page 72**

Not Confidential

GOV-00016610

- **Shelter Designation:** If UAC has special health concerns in order to determine if the care provider is able to accept the designation
- **Transitional Foster Care:** In all cases
- **RTC:** In all cases
- **Staff Secure:** In all cases
- **Secure Care**: In all cases ☎/⊠☺

## 1.3.3 Care Provider Accepts Placement

### PROCEDURES

1. ORR Intakes contacts care provider on placement. ⊠

2. The care provider must accept placement unless UAC does not meet established facility specific criteria. 📖 ⊠

3. ORR Intakes contacts DHS or other referring agency and provides the name and contact information of the designated care provider using the Placement Notification Summary email template below. ⊠

---

**⊠ Email Template from ORR Intakes to DHS (or Other Referring Federal Agency) Contact**
**Placement Notification Summary Email Template**

To: DHS (or other referring federal agency contact)
CC: [insert Care Provider intakes contact]
Subject line: "Placement Notification for UAC [include the UAC's last four digits of the "A" number]"

Please see the attached password protected document for the UAC identified above.
The password will be sent separately.
**Separate password protected document includes the following applicable fields:**
[Insert UAC name, A number; date of birth and country of origin] who was referred to ORR by [insert DHS sector or other referring federal agency] has been assigned to [insert designated care provider].
This individual has the following medical, mental health or other special concerns [insert].

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                16 | P a g e

Exhibit 2
Page 73
Not Confidential                                                          GOV-00016611

[Insert information if known about criminal background]

[Insert name of referring official] has flagged the following safety concerns: [insert].

**NOTE:  If Intakes Placement Checklist is used, include the following but DO NOT send this information to the DHS contact:**

CC:  FFS Supervisor; FFS; CFS; PO; ORR Intakes Team Lead

The following information based on the Intakes Placement Checklist may be relevant to this placement: [insert]. If a 30 Day Restrictive Placement Case Review is required for this placement, indicate "30 Day Restrictive Placement Case Review Required" in the subject line and in the body of the email.

# 1.3.4 UAC Transferred to ORR Custody

## PROCEDURES

1. ORR Intakes:
   - Requests that DHS or other referring federal agency contact the care provider to provide notice of travel arrangements, including expected arrival date and time of the UAC at the care provider's location and the contact information for the transporting officials.
   - Assists care provider and referring agency with logistics.
   - Ensures the referring federal agency has correct contact information for care provider and is aware of any limitations or restrictions to the day/time UAC can be accepted by care provider. ⊠

2. DHS transports UAC and personal belongings to receiving care provider facility at the day/time previously communicated to receiving care provider facility.

3. The care provider contacts the ORR Intakes Hotline 202-401-5709 **immediately** upon receiving a UAC with special concerns not reported in the referral and also sends ORR Intakes an email specifying the issue. ☺ ☎⊠

4. The care provider **immediately** admits the UAC to the program in the UAC Portal and offers the UAC the opportunity to contact their consulate. ☺⤴

**Exhibit 2**
**Page 74**

Not Confidential                                                                                   GOV-00016612

## Quick Glance: How to Admit UAC to Program

When a UAC arrives at a program, the user needs to log in to the UAC Portal and click on the **Admission tab** of their specific program (program name will appear in a drop-down menu). If a user has access to only one program, then the user will default to that program in the Admission tab. Users with access to multiple programs must select the correct program in the Admissions section.



To admit a UAC, the user must click on the **Alien Number** on the left-hand side of the screen.



Clicking on the "Alien No." opens up the Admission screen.  Under Status, select "Admit." If the UAC didn't arrive at the program, the user should contact ORR Intakes to confirm the UAC's placement status. If appropriate, the user should select "Cancel." Users should not select the status "Pending" as that will put the UAC back into ORR Intakes and the care provider will not be able to access the file.

The user should check the "UAC Basic Information" to confirm that it matches the DHS documentation. If the name, date of birth (DOB), country of birth, also known as ("AKA"), or gender do not match DHS documentation, the user must update the information to accurately reflect DHS records. The Alien Number should match the Alien Number in the DHS documentation. If it does not, the user must contact orrducs_intakes@acf.hhs.gov to request a change. (Include both the incorrect Alien Number and the correct Alien Number in the notice to appear (NTA).)

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          18 | P a g e

**Exhibit 2**
**Page 75**

Not Confidential                                                                                          GOV-00016613

The user should answer "Yes" to the question "By selecting Yes in this field…", and fill in the
Admission Date and Time, and then click Save. After saving the information, the UAC is
admitted to the program.

**How to update information after admissions**
Care provider staff may correct biographical information or the admission date/time after
admitting a UAC by going to the UAC's file in the case management section. 1) Click on "Go to
Admissions" link. 2) Change the information and 3) Click Save.



5.   Receiving care provider accepts UAC, his or her belongings, and supporting
     documentation that is provided by DHS.

     UAC supporting documentation includes:
     • DHS records (See **Quick Glance to DHS Records**).
     • Documents related to medical, mental health, and safety concerns
       available at time of apprehension (medical clearance and medications,
       criminal juvenile records, as applicable).
       **NOTE:** DHS does not release law enforcement documents but will provide
       ORR information about charges or convictions if known at time of referral
       or placement.
     • UAC birth certificate.  (DHS has not been releasing UAC birth certificates
       confiscated at time of apprehension. As a result, care providers must
       request the birth certificate from the UAC's family or consulate.)
       **NOTE:** Care providers must not contact consulates of a non-mandatory
       notification country[1] for birth certificates if 1) the UAC makes an asylum

---

[1] At this time the Central American countries of El Salvador, Guatemala and Honduras are not mandatory
notification countries. Mexico is not a mandatory notification country, but the United States does have a bilateral
agreement that confers similar protocols for minors, therefore Mexican consulate officials will be given access to
UAC under similar arrangements as a mandatory notification country. **See also ORR Guide: 5.4.1 Notifications to
Consulates.**📖

**Exhibit 2**
**Page 76**

Not Confidential                                                                            GOV-00016614

claim and is from a non-mandatory notification country or 2) where the UAC has a fear of persecution by their home country's government.

6. The care provider requests missing information/documents from DHS or other sources as needed. If DHS cannot provide medical/mental health/safety concerns documents, or criminal juvenile records, the care provider requests the documents from Customs and Border Patrol (DHS/CBP) and copies the assigned FFS **within 1 business day of admitting the UAC**. 📖📄🕐🖐

---

**Quick Glance: DHS Records**
ORR is working with DHS to streamline the transfer of DHS and other records obtained or generated at point of apprehension of a UAC to make sure these records are included in the UAC hard copy and electronic files.

The DHS records may include:
- DHS Form I-862 Notice to Appear or other charging document
- DHS Form I-216 Record of Person or Property Transferred
- DHS Form I-213 Record of Deportable/Inadmissible Alien
- CBP Form 93 Unaccompanied Alien Child Screening Addendum (trafficking information)
- DHS Form I-770 Notice of Rights and Request for Disposition
- DHS Form I-779 Juvenile Medical Screening and other medical paperwork
- DHS Form I-217 Information for Travel Document or Passport
- Other forms, if applicable, such as DHS Form I-200 Warrant of Arrest or DHS Form I-286 Notice of Custody Determination
- Copies of any publicly available federal, state, or local criminal records in the possession of the apprehending DHS component at the time of transfer and appropriate available documentation describing any gang, immigration, criminal, or other activity that may affect placement.

---

7. **Within 48 hours**, the care provider uploads all available documents to the UAC Portal under the case management tab, upload document section with a title that clearly identifies the type of document. A hard copy goes into the UAC case file. **See Fig. 1.7.** 🕐🖐

---

## Fig. 1.7 Case Management Upload Document Section

---

**Exhibit 2**
**Page 77**

Not Confidential                                                                                          GOV-00016615



## Quick Glance: Using UAC Portal Blank Templates and Uploading Documents

Each UAC's record in the UAC Portal includes assessments that care providers complete and update based on fillable templates in the UAC Portal, as well as other documents, notes, or other records that aren't in the database. Care providers must create, scan or upload these documents as electronic attachments to ensure UAC records are complete. (The same is true for records related to sponsor assessments.)

Blank templates may be found under "Assessments" in the UAC Portal (**Figure 1.7** and below). These *include Initial Intakes Assessment, Assessment for Risk, UAC Assessment, Sponsor Information, ISP, UAC Case Review*, and other categories highlighted below.

As indicated in Step 7 above, most documents that are uploaded are added using the "add new" button on the UAC Documents tab located at the bottom of the Assessment list.



Care providers should **not** print out UAC Portal Assessments, scan them, and then upload the assessments into the UAC Document tab.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                21 | P a g e

Exhibit 2
Page 78

**Naming Convention for Uploaded Documents**

Care providers should use only letters or numbers when assigning a document name and should use _ instead of spaces between words. Do not use any other punctuation marks in the title of a document. The title of the document should follow this naming convention: **[insert UAC A number] _[Document type: birth certificate, DHS Form (include number).etc.].**

Do **NOT** password protect any documents that are uploaded to the UAC Portal. These documents are housed in a secure environment and do not need encryption.

## 1.3.5 Initial Placements in the Event of an Emergency or Influx

📖  See Section 1.3.5 of the UAC Policy Guide.

See also **UAC MAP** Section below 1.7 Placement and Operations during an Influx.

# 1.4 Transfers within the ORR Care Provider Network

### OVERVIEW

Transfer of UAC between ORR care providers is a complicated process requiring close coordination among case managers at both the sending and receiving care facilities, sending and receiving case coordinators, the sending medical coordinator (or other medical staff), FFS staff, and other stakeholders such as attorneys and child advocates as appropriate.

| Key Players | Responsibilities |
|---|---|
| Sending Case Manager | Makes the initial recommendation for transfer based on regular assessments of UAC and prepares the Initial Transfer Request File. |
| Sending Case Coordinator | Reviews the Transfer Request File and consults with case manager and decides if a transfer to an alternate placement will better meet the UAC's individual needs. Identifies an appropriate alternative placement. |
| Sending Medical Coordinator or Medical Team | Responsible for completing the *Medical Checklist for Transfers* within 3 days of identifying a UAC in need of transfer. |
| FFS Staff | Reviews the Transfer Request File and approves or denies the request. |

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **22 |** P a g e

**Exhibit 2**
**Page 79**

Not Confidential                                                                                              GOV-00016617

| ORR Division of Health for Unaccompanied Children (DHUC) | Responsible for reviewing transfer requests if a child does not meet all the criteria for transfer as specified in the *Medical Checklist for Transfer*. |
|---|---|
| Receiving Case Coordinator | Reviews the Transfer Request File and notifies the receiving care provider. |
| Receiving Case Manager | Notifies sending care provider of acceptance and contact information and accesses UAC records in UAC Portal. |
| ORR Project Officers (PO) | Notified when group transfers are due to program closings. |
| Contract Field Specialist (CFS) | ORR contract staff who act as liaisons to provide technical assistance for transfers when needed. |

| Related Forms/Instruments |
|---|
| The sending care provider uses the *Transfer Request* form in the UAC Portal to initiate the transfer for review by case coordinators and FFS. |
| UAC transferred to secure or staff secure receive the *Notice of Placement in Secure or Staff Secure Care Provider Facility*. |
| The medical coordinator completes the *Medical Checklist for Transfers* and saves a hard copy and an electronic copy in the Health tab of the UAC Portal. |
| The Transfer Request File, which is emailed among and used by all parties, at various stages, involved in UAC transfers (i.e., case coordinators, FFS, other stakeholders). The file contains all supporting documentation related to the transfer (See the email template below). Case management records are described in ORR Policy Guide and **UAC MAP** Section 3: Services. |
| **NOTE:** Not all supporting documents for the Transfer Request File are stored on the UAC Portal. This means that all parties are required to submit emails (along with updating the *Transfer Request* in the UAC Portal) to relevant parties at key stages. |
| *Transfer Request and Tracking Form, Discharge Notification Form,* and *Change of Address/Change of Venue (COA/COV) are* three different forms used to inform immigration court and ICE chief counselor of a transfer and need for a change of venue. |
| The LTFC care provider sends ORR the *Long Term Foster Care Placement Memo* to ensure continuity of services and tracking of records for a UAC following transfer. |

📑 **Appendix 1.4** is the *Medical Checklist for Transfers*.

📑 🖰 **Appendix 1.5** is a screen shot of the *Transfer Request and Tracking form*.

## PROCEDURES

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    23 | P a g e

**Exhibit 2**
**Page 80**

Not Confidential

GOV-00016618

1. Sending case managers continuously assess UAC in their facilities' care to review whether their placements are appropriate. If a case manager recommends transferring a UAC, their assessments and any related documents (in addition to any new documentation created in Step 2 below) become part of the Transfer Request File. 📖🗐

2. If the sending case manager identifies a UAC whose placement is inappropriate under ORR Policy, he/she must perform the following steps **within 3 business days**:

   - Ensures that UAC will be medically cleared for transfer by requesting that sending medical coordinator or other medical staff completes the *Medical Checklist for Transfers.* 🗐 ⊕

     If the child does not meet all the criteria for transfer (based on the medical checklist), the medical coordinator contacts the DHUC at DCSMedical@acf.hhs.gov. DHUC responds to the case manager **within 1 business day**. If DHUC determines that the child is fit to travel despite not meeting all the criteria, DHUC will send an email to the case manager indicating that the child can travel. ⊕✉

     **NOTE:** The UAC's transfer file of hard copy documents does not include the *Medical Checklist for Transfer* because it is confidential information. 🗐✉⊕

     If DHUC determines that the child is not fit to travel, DHUC will contact the case manager explaining why the transfer has been denied and will specify a timeframe in which the care provider staff should reevaluate the UAC. ✉⊕

   - Generates the *Transfer Request* in the UAC Portal, located in the UAC Portal under the "Discharge" tab. **See Fig. 1.8.** The case manager clicks on "Add New" on the right-hand side of the screen to fill out the request. ⤵🖱

**Fig. 1.8 Transfer Request in UAC Portal**

**(A)**

Exhibit 2
Page 81

Not Confidential                                                                                          GOV-00016619



**(B)**



- Compiles the Transfer Request File, which contains attachments sent via email and is used by all parties involved (case coordinators, FFS, other programs) at various stages of transfer. The file contains all supporting documentation related to the transfer. (See the Quick Glance: Transfer Request File below.)
- Emails the Transfer Request File to the sending case coordinator (See Email Template below).

---

## Quick Glance: The Transfer Request File

The Transfer Request File includes the following:
- *UAC Assessment*
- Updated *UAC Case Review*
- *Medical Checklist for Transfers*

**Supporting Documentation**
- Case manager notes
- Intakes and admissions assessments
- Child trafficking screening results
- Clinical notes
- Psychological evaluation with diagnosis (required for therapeutic care)

---

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **25 |** P a g e

**Exhibit 2**
**Page 82**

- Health records to include medical, dental, and mental health
- List of current medications and dosages
- Educational records (assessments and report cards)
- UAC's birth certificate
- DHS and immigration court documents
- Criminal/juvenile record documentation
- Significant Incident Reports and internal incident reports
- Any other significant documentation

**For Transfers to Residential Treatment Centers include the following additional documentation:**

- Psychiatric evaluation or psychological evaluation recommending RTC placement
- Psychiatric hospitalization records and discharge summary, if applicable
- Clinical, psychological and psychiatric progress notes

---

## ✉Email Template of Transfer Request File

TO:

Subject: Transfer Request File for UAC [list last four digits of the UAC's A number]

Body:   Name and contact information of care provider staff coordinating transfer

Please see the password protected documents for the UAC identified above. The password is sent separately.

[Transfer Request File includes all attachments included from the Transfer Request file above.]

3. Based on their check of the Capacity Management tab in the UAC Portal, the sending case coordinator proposes an alternative placement and completes "Type of Program" and "Case Coordinator Proposed Program" on the *Transfer Request* in the UAC Portal. **See Fig. 1.9.** 👁‍🗨👆

---

## Fig. 1.9 Transfer Request: Case Coordinator Proposed Program

Case Coordination:
Concur with Requesting Party?      ⃝ Yes ⃝ No
If not, specify:
Type of Program Recommended:
Case Coordinator Name:



Case Coordinator Proposed Program:

---

**Exhibit 2**
**Page 83**

Not Confidential

GOV-00016621

**NOTE**: If the sending case coordinator's recommended transfer placement differs from the sending case manager's recommended level of care, the case coordinator staffs the case with the supervisory case coordinator, who makes a recommendation to the FFS. The case coordinator also staffs the case with the supervisory case coordinator if the UAC has special needs or concerns. Ultimately, the FFS resolves any disagreement in recommendations between the sending case manager and the sending case coordinator, and decides on placements for UAC with special needs or concerns. 📖

4. The receiving case coordinator contacts the proposed receiving care provider point of contact. The receiving care provider must accept the transfer request **within one business day** and notifies all case coordinators and FFS with their decision.

   If a program is unable to accept the transfer because of state licensing requirements, the receiving care program emails the sending case coordinator with the reason and the sending case coordinator re-refers the transfer to an alternative care provider. �e ✉

5. After the receiving care provider accepts the transfer request, the sending case coordinator:

   - Notifies both care providers of the accepted transfer and provides the point of contact for programs to complete the logistics of the transfer based on the email template below of the case coordinator notification of transfer acceptance. The email includes a request for the sending FFS to approve the transfer in the UAC Portal.
   - Notifies any other potential receiving care provider facilities that a placement was found.
   - **IMMEDIATELY** upon notification of acceptance (but no later than the next business day) documents his/her recommendation on the Transfer Request in the UAC Portal. �e✉🖋

---

✉**Email Template of Sending Case Coordinator Notification of Transfer Acceptance**

TO: Sending FFS; Sending Care Provider Point of Contact; Receiving Care Provider Point of Contact
Subject: Notification of Transfer Acceptance for UAC [include last four digits of A number]
Please see the attached password protected file which includes the full name and A number of the UAC above. The password will be sent separately.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **27 |** P a g e

**Exhibit 2**
**Page 84**

Not Confidential                                                                                        GOV-00016622

Please note that [insert name of receiving care provider] has accepted this UAC. This is to notify everyone involved of the actions to be taken to complete the transfer of this UAC from [sending care provider]. The *Transfer Request* has been completed by the program, and the case coordinator has entered the recommendation in the UAC Portal.  The *Transfer Request* is waiting for FFS approval in the UAC Portal. Below are the action needed to complete the transfer.

Sending FFS: [insert name]
Approve *Transfer Request* in the LAC Portal

Sending Care Provider
Coordinate logistics with receiving program to transfer UAC.
Provide transfer notifications to the following entities: DHS, Legal Service Provider, Child Advocate and sending and receiving FFS.

Receiving Care Provider
Coordinate logistics with sending program to transfer UAC.

Sending Care Provider Contact Information
Insert name of contact, address, email, phone number.

Receiving Care Provider Contact Information
Insert name of contact, address, email, phone number.

**NOTE:** The FFS may require further assessments such as psychological/psychiatric evaluation, or may further elevate the case to the FFS supervisor. In these cases, the FFS will notify the sending case manager and sending case coordinator **within 24 hours.**

6. The FFS completes the ORR Decision section of the *Transfer Request* in the UAC Portal **within 24 hours**, making sure to fill out the three fields "Decision," "Date of Decision," and "Name of ORR Decision Maker." **See Fig. 1.10.**

   FFS also replies with a follow up email to the case coordinator notification of transfer acceptance email that the final release decision was completed in the *Transfer Request* in the UAC Portal.

Exhibit 2
Page 85

Not Confidential

GOV-00016623

**NOTE:** When the FFS approves the *Transfer Request* in the UAC Portal, the status of the UAC should change from Admitted to **In-Transfer.** Unless this status changes, the *Transfer Request* was not correctly completed.

## Fig. 1.10 Transfer Request: FFS Decision



7. The sending case manager:
    - Updates the case manager portion of the *Transfer Request* in the UAC Portal.
    - Completes the change of venue section of the request form for transfers to a different immigration court jurisdiction when a UAC does not have an attorney of record.
    - For UAC represented by an attorney and NTA has been filed, completes only the notice of transfer section and informs the attorney that a change of venue motion needs to be prepared and filed by the attorney.
    - Sends to the receiving case manager and FFS any significant information received or significant incident reports that occurred after the transfer request was sent.
    - Ensures that documents are completed and uploaded to the UAC Portal.
    - Ensures that documents and items that will accompany UAC at time of transfer are secure.
    - **WITHIN 24 hours** prior to the physical transfer: emails stakeholders using the sample email template below (Email Template to Stakeholders Prior to Physical Transfer).
    - Completes the *Notice of Transfer to ICE Chief Counsel Change of Address/Change of Venue* in the UAC Portal.
    - Saves a hard copy of the completed *Transfer Request and Tracking Form* in the UAC's case file.

## ✉Email Template to Stakeholders PRIOR TO PHYSICAL TRANSFER

Exhibit 2
Page 86

Not Confidential                                                                      GOV-00016624

**NOTE**: Must be completed in 24 hours or less, depending on the circumstances (i.e., transfers that involve "step ups" to secure or UAC in need of immediate psychiatric attention may be expedited).

From: Sending Case Manager
To: Receiving Case Manager
    Sending and Receiving ICE FOJC
    ICE Office of Chief Counsel (OCC)
    EOIR Immigration Court Administrator
    UAC's Legal Service Provider or Attorney of Record
    Sending and Receiving Case Coordinator
    Sending and Receiving FFS
    VOLAG, if applicable
    Child Advocate, if applicable
 Subject line: UAC [include last four digits of A number] transfer
Please see the password protected file with information about the physical transfer of the UAC mentioned above from [include sending care facility] to [include receiving care facility.]

**The password is sent by separate email.**

**Password Protected Attachments**: *Transfer Request and Tracking Form*

**NOTE:** Do not send the *Transfer Request and Tracking Form* to ICE FOJC, ICE OCC, EOIR, or Legal Service Provider. Only send the *Notice of Transfer to ICE Chief Counsel Change of Address/Change of Venue* and *Discharge Notification Form*.

8. When the UAC is in "In-Transfer" status, the UAC is still active in the program. The sending program needs to complete the **Program Exit** to discharge the UAC from care. 🖑

9. When the FFS approves the transfer in the UAC Portal and the sending care provider discharges the UAC, the UAC Portal will automatically place the UAC in the "admission tab" of the receiving program listed under "Case Coordinator Proposed Program."(The receiving program will not be able to admit the UAC if the incorrect program is listed in this field. If the field is left blank, the FFS will not be able to complete the ORR decision piece.) 🖑

10. The sending care provider is responsible for physically transferring the UAC to the receiving care provider. If safety is a concern, particularly when transferring the UAC to RTC or secure care, the sending care provider may use trained staff or contract with a

**Exhibit 2**
**Page 87**

security transportation service to assist. The sending and receiving programs coordinate to address any safety or medical concerns.

The sending case manager:

- Notifies the UAC of the transfer.
- Ensures the *Transfer Request and Tracking Form* and the *Discharge Notification Form* are completed in the UAC Portal **immediately** after the UAC's physical transfer. **See Fig. 1.11**.
- Signs the *Transfer Request* to validate that all items listed are included in UAC's packet.
- Updates the *UAC Case Review* and *Individual Service Plan*, documenting the need for Transfer and Recommendations for placement.
- Ensures a copy of the UAC's required documents and all the UAC's belongings (i.e., clothing, medication, legal documents,) are transferred.
- Verbally notifies UAC's approved contacts of transfer.
- Offers the UAC chance to contact their consulate to notify them of the transfer. 🕐📑✉️🖊️

## Fig. 1.11 Screen Shot of Discharge Notification Form in UAC Portal



## Quick Glance: Documents that Sending Case Manager Must Complete/Upload to UAC Portal Prior to Transfer

- *Initial Intakes Assessment*
- *UAC Assessment*
- *Assessment for Risk*
- *Individual Service Plan*
- Family Reunification Forms and Supporting Documentation
- Significant Incident Reports, if applicable
- DHS Form I-862 *Notice to Appear*
- Legal Representation list acknowledgment
- Know Your Rights acknowledgment
- *Care Provider Family Reunification Checklist*

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **31 | P a g e**

**Exhibit 2**
**Page 88**

Not Confidential

GOV-00016626

- *Medical Checklist for Transfer*
- *Transfer Request and Tracking Form*
- Health records, to include medical, dental, and mental health

## Quick Glance: Items That Accompany UAC

- UAC personal belongings, including clothing, money, valuables, and items obtained during the UAC's stay at the referring care provider
- *Transfer Request and Tracking Form*
- 30-day medication supply (any exceptions must be fully discussed with sending and receiving care providers prior to transfer)
- *Care Provider Family Reunification Checklist*
- *Transfer Request*
- Health records, to include medical, dental, and mental health
- Original documents (birth certificates)

**TRANSFER LOGISTICS: Receiving and sending case managers** discuss the *UAC's Assessment*, *UAC Case Review*, *Transfer Request* and status of family reunification to ensure continuity in case planning and relationships with primary care givers and prepare the UAC for the transfer. UAC in care are not allowed to travel without a care provider staff member.


**Special Situations Regarding Transfer Logistics and Physical Transfer:**

- If there is an emergency, the sending case manager **IMMEDIATELY** emails FFS (or the FFS on-call supervisor at 202-401-5709 if it is after business hours) and indicates the name and contact information of the care provider staff responsible for coordinating the transfer, the FFS reviews the circumstances to determine if the UAC requires an emergency transfer to a more secure facility. ✉
- If the decision following the 30-day review of secure, staff secure or RTC placements is that the UAC will be transferred to an alternative program, all parties follow the procedures described for transfer placement acceptance.
- If there are any safety concerns regarding the physical transport of the UAC, the case managers consult with the FFS.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **32 |** P a g e

**Exhibit 2**
**Page 89**

Not Confidential

GOV-00016627

- If the sending and receiving care providers cannot agree on transfer logistics, the sending case manager elevates the issue to the FFS and Project Officer, documenting the disagreement and the eventual solution in the Transfer Request.

| Quick Glance: Accessing Records for UAC Who Have Been Transferred | |
|---|---|
| **1** In UAC Portal, click on **Case Management tab** and list of UAC in program will display (NOTE: Health information, such as immunizations, diagnoses, etc., are located under the **Health tab** in the UAC Portal.) | **2** Select the transferred UAC by clicking on the A#. |
| **3** Under UAC Basic Information section, see drop down menu which displays all programs in which the UAC has been admitted. | **4** Use the drop down box to change the program selection to one of the previous programs to view the documents. |
| **5** Check for documents in all previous programs. | |
| For Technical Assistance: Call UAC Help Desk at 210-858-8304 or uchelpdesk@ap-in.com. | |

## 1.4.1 Least Restrictive Setting

📖 See **Section 1.4.1** of the UAC Policy Guide.

## 1.4.2 30 Day Restrictive Placement Case Review

### OVERVIEW

ORR requires secure, RTC, and staff secure care providers, together with the case coordinator and FFS, to staff and review placement of UAC in their facilities **at least every 30 days after initial placement**.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          **33 |** P a g e

**Exhibit 2**
**Page 90**

Care providers may conduct a review sooner than 30 days if new information makes clear an alternate placement is more appropriate so that the UAC may be transferred to a more appropriate care setting without delay.

The *Notice of Placement in a Restrictive Setting* is available in English and Spanish. At the UAC's option, the minor is provided a Spanish version of the form.  However, any summary of their placement must be provided in English and Spanish if using the Spanish version of the form. If the child speaks a language other than English or Spanish, the care provider facility utilizes a language line or other translator that translates the relevant English portions of the form into the UAC's preferred language. This includes translation of the form's summary of placement section.

## PROCEDURES

Review of Restrictive Placements

*The Following 30 day Case Review is conducted for UAC in Secure, Staff Secure and RTCs. If the UAC is in an RTC as a result of a TAR placement the child's case manager at the "base" facility work with clinical staff at the RTC facility to extend the child's placement beyond 30 days.*

1. **Over the 30 day period following placement or during the 30 day period following the previous 30 Day Restrictive Placement Case Review**, ORR grantees, contractors and ORR staff perform the following:

   - Clinicians continue weekly or biweekly counseling sessions that focus, in part, on the UAC's dangerousness, threats to self, others or the community and risk of escape. The information collected or reported by the clinician, includes:

     o Clinical and psychological reports and documents, including those by medical and/or mental health providers. The Ohio Youth Assessment System is included, as applicable. See, Section 3 for more information.

     o Clinical notes maintained by the clinician, documented in accordance with ORR policy and procedure.

   - Case managers working in coordination with the FFS, obtain the following information, as applicable:

     o Attestations from law enforcement.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **34 |** P a g e

**Exhibit 2**
**Page 91**

Not Confidential                                                                                    GOV-00016629

o   Criminal history, including but not limited to police records, arrest records, court records (including *Saravia* and *Flores* hearings), probation records, etc. This may include documents retrieved from foreign governments.

o   Records pertaining to a UAC's dangerousness obtained from non-law enforcement entities, including schools, child welfare agencies or other government institutions.

o   Interviews with the UAC's family or other caregivers.

o   Track behavioral SIRs indicative of dangerousness or flight risk, this includes destruction of property and SA SIRs in which the UAC is a perpetrator.

o   Information that indicates a UAC may not be a danger, including reports from schools, counselors (including from the UAC's current placement).
        📖📔📷

2.  **Prior to UAC's 30th day of placement in a secure, staff secure, or RTC facility or prior to their 30th day Case Review**, the clinician, case manager, FFS and case coordinator staff the UAC's 30 day Case Review using the information provided at the UAC's referral/transfer request and the information gathered by the case manager/FFS as described in the proceeding step, and determine whether the UAC requires continued placement in a restrictive setting.

    •   The case manager, clinician and case coordinator make recommendations regarding the UAC's placement to the FFS during the 30 day Case Review staffing.

    •   After considering recommendations from the UAC's clinician, case manager and case coordinator, the FFS makes a final restrictive placement case review decision regarding the UAC's placement.

    •   If the UAC has resided in a secure or RTC facility for over 90 straight calendar days the FFS consults with Supervisory ORR staff on the case regarding the reasons for the UAC's continued placement, and thereafter after every 30 day restrictive placement case review (unless the UAC is stepped down or discharged).

Exhibit 2
Page 92

Not Confidential
                                                                                    GOV-00016630

- If a restrictive placement case review is not completed prior to the 30 day mark, the case manager records the reasons for the delay in summary notes regarding the placement.

- The summary notes maintained by the case manager include the following information:

    o   UAC's basic biographical information.

    o   Background information on the case.

    o   Summary of case review discussion.

    o   Summary of evidence.

    o   The care provider's recommendation, including names and titles of those making recommendations, and basis for it.

    o   The case coordinator's name, recommendation and basis for it.

    o   The FFS's name, decision and basis for it.

    o   Signature of Note Taker (typically the case manager).

    **NOTE:** ORR has provided a Summary Notes Template that care providers may use. If care providers develop their own template it must include, at a minimum, the information described above and must be signed. 🕐📄

📄 **Appendix 1.6 is the Summary Case Notes Template.**

3.  FFS Decision:

    - **Continued placements:** If the FFS decision is to continue the UAC's placement the information justifying the UAC's placement in a restrictive setting is summarized by the case manager and provided in a new *Notice of Placement in a Restrictive Setting*, with a date stamp within the "summary of placement decision or case review" section of the form. **Fig. 1.12** is the snapshot of the Summary of Placement Decision or Case Review Section of the Notice of Placement in a Restrictive Setting. The case manager marks the appropriate box noting the reason for the placement. If the case manager is unclear what the rationale for the FFS decision is, the case manager contacts the FFS for clarification and assistance in drafting language into the summary portion of the form.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    36 | P a g e

Exhibit 2
Page 93

Not Confidential

- **Step ups:** If the FFS decision is to step up the child to a more restrictive environment, the case manager working with the FFS justify the decision in the *UAC Case Review* and include this information in the *Transfer Request*. Transfers follow standard transfer policies and procedures.

- **Step downs:** If the FFS decisions is to step down the child to a less restrictive environment, the case manager works with the FFS to justify the decision in the *UAC Case Review* and include this information in the *Transfer Request*. Transfers follow standard transfer policies and procedures.

  **NOTE:** If a step down to a less restrictive environment is not completed **within 7 days** due to problems finding a suitable care provider to transfer the UAC to, the case manager explains what efforts have been undertaken to transfer the UAC in writing in updates to the *UAC Case Review* notes. The case manager provides these updates to the UAC, attorney of record, LSP and/or Child Advocate, on demand. ⏲🖥✉

**Fig. 1.12 Summary of Placement Decision or Case Review Section of the Notice of Placement in a Restrictive Setting**



4. The case manager uploads all information used in assessing the restrictive placement case review (including the signed Summary Notes) in the UAC Portal. All information used in assessing a 30-day Case Review decision is considered evidence. This information must be shared with the UAC's attorney of record, LSP or Child Advocate, on demand and does not require a prior *Authorization for Release of Records* only proof of representation. 📖🖥📄✉

5. Notice to the UAC of the 30 day Case Review:

**Exhibit 2
Page 94**

Not Confidential                                                                                              GOV-00016632

- **Continued placements:** The UAC signs and dates the new *Notice of Placement in a Restrictive Setting* form if placement continues in the current restrictive placement. (If the UAC refuses to sign the form the care provider notes "UAC refused to sign" on the signature page of the document. The care provider scans and uploads the *Notice of Placement in a Restrictive Setting* into the UAC Portal.) After the UAC signs the form, a copy is uploaded into the UAC Portal, and copies are maintained in the UAC's case file and provided to the UAC to keep with their personal belongings.

- **Step ups:** The UAC is notified **at the time of transfer** that they are being stepped up pursuant to ORR policy. The UAC is provided specific information regarding the placement decision in a language he or she understands upon arrival at the receiving care provider facility, which is included in the summary portion of the *Notice of Placement in Restrictive Setting*.

- **Step downs:** The UAC is provided notice that they are prepared for step down and given updates by their case manager on efforts made to transfer the UAC to a less restrictive environment. A summary of the information contained in the *UAC Case Review* justifying the step down is **provided to the UAC on demand** and signed and dated by the case manager.

  **NOTE:** If a step down to a less restrictive environment is not completed **within 7 days** due to problems finding a suitable care provider to transfer the UAC to, the case manager explains what efforts have been undertaken to transfer the UAC in writing in updates to the *UAC Case Review* notes. The case manager provides these updates to the UAC, attorney of record, LSP and/or Child Advocate, on demand. 🖉📑📂✉

6. Restrictive placement case review is not required to be expedited prior to 30 days based on a UAC's anticipated age out. However, FFS and care providers may initiate a restrictive placement case review prior to the 30-day mark at their discretion. 📖🕮

## 1.4.3 Long Term Foster Care

📖 See Section 1.4.3 of the UAC Policy Guide.

**Exhibit 2**
**Page 95**

Not Confidential                                                              GOV-00016633

## 1.4.4 Transfer to Long Term Foster Care

**NOTE:** Transfers to Long Term Foster Care follow standard operating procedures with the exception of these steps.

1. The sending case manager requests from the legal service provider or attorney of record confirmation of the UAC's eligibility for immigration relief, type of immigration relief, and status of court hearings or relief petitions (unless ORR authorizes the care provider to proceed without meeting this requirement).

   **NOTE:** To request permission to proceed with transfer without coordinating with the legal service provider or attorney of record, the case manager consults with the case coordinator. If the case coordinator agrees, they submit the request to the FFS, who will make the final decision. Note, there must be other circumstances which would result in a longer stay (e.g., the child's country of origin is in a state of emergency, indicating that the child will likely not be repatriated for an extended period of time). ⊠

2. Sending case coordinator:
   - Notifies the appropriate LTFC point of contact that a UAC has been identified for a transfer and provides the sending care provider's Transfer Request File;
   - Informs the LTFC point of contact if the referral is being reviewed by another care provider. ⊠

3. The receiving LTFC point of contact attempts to identity a placement **within 10 business days** of receiving the transfer request. ⊘

4. Prior to accepting the transfer, the receiving LTFC point of contact confirms from the receiving legal service provider or attorney of record that they will arrange for legal services for the UAC and that the UAC will be eligible for legal relief in the transfer jurisdiction. (ORR may waive this requirement. However, there must be other circumstances which would result in a longer stay, such as the child's country of origin is in a state of emergency, indicating that the child will likely not be repatriated for an extended period of time. To request a waiver, the case manager submits the request to the FFS, who will make the final decision.) ▢⊠⊘

**Exhibit 2**
**Page 96**

Not Confidential                                                                         GOV-00016634

5. If the LTFC provider or national VOLAG cannot identify a placement within 10 business days, they must notify the sending case coordinator with a copy to the receiving case coordinator why a placement has not been found (e.g., programs are at capacity and UAC is on waitlist, no capacity for females, and no suitable placement for a UAC's special needs). In the notification the provider indicates whether they will continue attempts to identify a placement. ✉⊕

6. If placement is identified, the LTFC provider or national VOLAG completes the *Long Term Foster Care Placement Memo* and submits it to the sending case coordinator with a copy to the receiving case coordinator (includes the name and contact information for the staff responsible for the coordination of the transfer). ✉▤

   **NOTE:** The receiving case manager must submit emergency placement changes to the case coordinator **within 24 hours** of the placement change. ✉⊕

▤ **Appendix 1.7** is the *Long Term Foster Care Placement Memo*.

7. The transfer process follows the procedures for UAC Portal updates, notifications, etc. as for other transfers within the ORR network. For example, the sending care coordinator notifies all parties of the transfer placement memo and requests the FFS to approve the transfer request in the portal. Once that is completed, the FFS notifies all parties. ✓▤✉

8. The UAC's sending care provider and receiving LTFC provider coordinate pre-placement orientation services to prepare the UAC and foster family for placement, helping the UAC understand what to expect from the foster care provider and foster parents by:
   - Utilizing agency and foster parent welcome letters, program brochures, and foster family books that may include pictures and descriptions of home, family, and community life.
   - Coordinating the pre-placement contact between the UAC and the receiving LTFC staff and foster parents.

9. The sending care provider physically transfers the UAC to the new placement.

## 1.4.5 Group Transfers

### OVERVIEW

UAC MAP: Section 1: Placement in ORR Care Provider Facilities            **40 |** P a g e

Exhibit 2
Page 97

Not Confidential                                                                                    GOV-00016635

Group transfers can occur for various reasons, including but not limited to:

- Emergency Event
- Natural Disaster
- Program Closure

A group transfer must be approved by an FFS supervisor, unless conducted according to an emergency evacuation plan that was pre-approved by an ORR Project Officer. 📖 ᵔᵔ
**(See also ORR group transfers due to influx in Section 1.7 below.)**

## PROCEDURES

**NOTE:** Group transfers follow standard operating procedures, except group transfers do not involve case coordinators. A care provider must submit a "Program Level Event" under the "events" tab of the UAC Portal if a group transfer is the result of a natural disaster.

Group transfers also differ from standard individualized transfers in the following ways:

1.  The sending care provider point of contact:
    - Identifies UAC who meet group transfer criteria (stated above).
    - Provides a Transfer Manifest of UAC meeting the group transfer criteria and emails it to the assigned CFS and FFS. **See Fig. 1.13**. 📖 📑✉

### Fig. 1.13 Transfer Manifest

| Day of Transportation Information | | Sending Facility Information | |
|---|---|---|---|
| Date: | | Facility Name: | |
| Transport POC: | | Facility POC: | |
| POC Phone Number: | | POC Phone Number: | |
| Estimated date of arrival at DARC: | | Alternate Facility POC: | |
| Estimated time of arrival at DARC: | | Alternate POC Phone Number: | |

| No. | A# | First Name | Last Name | Meds (Y/N List if Yes) | Allergies (Y/N List if Yes) |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |

Exhibit 2
Page 98

Not Confidential                                                                                    GOV-00016636

**NOTE**: If the group transfer is due to a program closing, the sending case manager sends it to his or her ORR project officer (PO).

2. FFS:

   - Reviews the proposed Transfer Manifest to ensure that it complies with ORR policies and procedures.
   - Notifies the sending case coordinator and case manager of the final approved Transfer Manifest. 📖 📑✉️

3. The sending case manager:

   - Updates the *UAC Case Review* and *ISP* for each child, and completes the *Transfer Request* and *Discharge Notification Form* in the UAC Portal, documenting the need for transfer and recommendations for placement.
   - Sends notification to the FFS that all of the approved UAC on the Transfer Manifest have been entered into the UAC Portal. 📑✉️👆

4. The FFS enters the transfer approval into the UAC Portal. **See Fig. 1.10**. 👆

5. If FFS approves the transfer the sending case manager notifies the following of the transfer approval for each child in the group:

   - ICE FOJC
   - UAC's Legal Service Provider or Attorney of Record, if applicable
   - Child Advocate, if applicable
   - Potential Sponsor of Record. ✉️

## 1.4.6 Transfer to a Residential Treatment Center (RTC)

📖 See Section 1.4.6 of the UAC Policy Guide.

### PROCEDURES

1. If a UAC exhibits significant mental health issues, the sending case manager arranges for an evaluation by a licensed psychologist or psychiatrist. 📖

**Exhibit 2**
**Page 99**

Not Confidential

2. If a licensed clinical psychologist or psychiatrist determines that the UAC requires residential treatment level of care, the care provider sends the written report and Transfer Request File to the sending case coordinator and copies the FFS. ✉🖨

3. The case coordinator reviews the Transfer Request File (which includes case management, clinical, health, and educational information) and elevates the request for RTC placement to the FFS. ✉🖨

   **NOTE:** If the FFS has any concerns about the recommendation, he/she elevates it to the FFS supervisor who may consult with the DHUC to arrange a second opinion, if necessary.

4. The sending case coordinator finds a suitable RTC placement, and sends the Transfer Request File to the receiving case coordinator. The receiving case coordinator sends the Transfer Request File to the RTC point of contact. ✉🖨

5. **Within 5 business days of receipt of the RTC transfer request**, the RTC point of contact notifies the receiving case coordinator of acceptance or denial of RTC placement. The receiving case coordinator notifies the sending case coordinator, who then notifies all parties of the decision. For accepted placements, follow standard transfer procedures.

   When accepting transfer, the RTC point of contact's email indicates the method of funding for the placement: 1) Treatment Authorization Request (TAR), or 2) ORR funded bed.

   If the RTC denies placement, the care provider must provide written justification to the receiving and sending case coordinators, and to the receiving and sending FFS. If an RTC refuses to accept the child or if there are no available beds, the case coordinator elevates the issue to the FFS and FFS supervisor and the FFS contacts DHUC. ✉🖨

   **NOTE:** Any disagreements between an RTC, a sending or receiving case coordinator are elevated to the FFS. The receiving and sending FFS would consult and resolve any issues through a staffing phone call for all involved parties. ✉☎

6. *Notification of Placement in a Restrictive Setting*
   **Non-TAR placements:** Non-TAR placements will follow the procedures set forth in the previous sub-section 1.4.2 for secure and staff secure placements, however the RTC provider marks the appropriate box in the "RTC" section of the first page of the form justifying placement into the RTC.

Exhibit 2
Page 100

**TAR Placements:** UAC placed in an RTC not affiliated with ORR through a Cooperative Agreement or contract, do not fill out the *Notice of Placement in a Restrictive Setting* form. The Clinician at the UAC's "base" care provider facility working with the FFS, mental health professionals (including those at the TAR approved RTC facility) marks the appropriate box in the "RTC" section of the first page of the form. The clinician or case manager signs the form and indicates in a parenthetical which "base" care provider they represent. The clinician provides a summary of the justification for placement in the summary section on the form and provides the form to the UAC.

- The *Notice of Placement in a Restrictive Setting* is provided to the UAC by the clinician at the "base" care provider facility prior to the UAC's transfer or by staff at the TAR approved RTC facility after the UAC's transfer.

- Clinical staff at the RTC explain the reasons for the UAC's placement at the time of admission in a language the UAC understands. 📑

7. The sending care provider arranges transfer logistics. If a psychologist or psychiatrist recommends that a UAC travel with emergency medications for treating a mental health crisis (commonly known as PRN medications) that the UAC may experience during the transfer, the case manager at the sending care provider makes arrangements for a mental health professional to accompany UAC during transport and the receiving RTC may be asked to assist with transport.

8. The RTC reviews the UAC placement **every 30 days, at a minimum**. The case manager and the clinician provide the clinical updates and placement recommendations to the case coordinator and FFS to evaluate the need for continued stay or transfer. The case manager follows the procedures set forth in 1.4.2.

   The case manager:

   - Updates the *UAC Case Review* and *Individual Service Plan* and the treatment/discharge recommendations in the UAC Portal.
   - Notifies the case coordinator that the records are ready for review. 🕐✉️🔗

9. If the RTC recommends a transfer, the FFS reviews the transfer recommendation and notifies the case coordinator of the transfer decision and all parties follow the steps for transfer. If there are any disagreements as to the time in care or transfer recommendations, the FFS must elevate to the FFS supervisor for resolution. ✉️

**Exhibit 2**
**Page 101**

Not Confidential

GOV-00016639

## 1.4.7 Requesting Reconsideration of a Secure or RTC Placement Designation

**Procedures in clearance**

**Fig. 1.14 Screen Shot of the Request for Reconsideration of Placement [to come]**

📑 **Appendix 1.8** is the *Request for Reconsideration of Placement* form [to come] .

## 1.5 Placement Inquiries

An individual looking for a UAC who may be in ORR custody may contact the **ORR National Call Center, at 1 (800) 203-7001.** ☎

## 1.5.1 ORR National Call Center

### PROCEDURES

If the UAC is in ORR custody, the call center staff does not share the child's location or placement information until communication is deemed safe and appropriate. 📖

1. The call center staff notifies the corresponding care provider with the caller's name, contact information and relationship to the unaccompanied child. ☎

2. The care provider determines whether the individual is a safe and approved contact. As deemed appropriate and following ORR's procedures, the care provider may facilitate communication between the caller and the UAC. 📖 ☎

3. The care provider contacts the individual and informs him/her that the UAC is safe and in ORR custody. ☎

Exhibit 2
Page 102

Not Confidential                                                                 GOV-00016640

# 1.6 Determining the Age of an Individual without Lawful Immigration Status

📖 See Section 1.6 of the UAC Policy Guide.

## OVERVIEW

HHS custody is restricted to UAC, i.e., minors who are under the age of 18.

HHS and DHS jointly developed policies and procedures to assist in the process of determining the correct age of individuals in custody, given the frequent lack of documents and other factors that present challenges to placement.

| Key Players | Responsibilities |
|---|---|
| DHS | Agents who apprehend individuals make the initial determination based on available documents and other evidence. If ORR determines that individual is not a minor, DHS ICE agents will be enlisted to pick up individual at care provider facility. |
| Case Manager | Responsible for obtaining documents and additional evidence, if needed and available. Provides all required documentation to the FFS, who makes final age determinations based on multiple forms of evidence. Depending on the state, responsible for writing a memo, attaching all supporting documents, and notifying ICE to request pick up of the adult at the program when the additional evidence warrants it. |
| FFS | Responsible for reviewing all documentation for age redetermination gathered by the case manager. Provides technical assistance to the case manager, elevates requests for dental exam to the FFS supervisor, and reviews and submits all documentation to ICE to request they pick up the individual if determined to be an adult. (Depending on the state, the FFS may also send a memo to ICE). Obtains FFS supervisor's approval of the memo to ICE if a dental exam was used as the basis for the age redetermination. |
| FFS Supervisor | Responsible for approving medical age assessments for UAC and approving request (and memo where necessary) to ICE to re-apprehend an individual deemed to be an adult. |
| CFS | ORR contract staff who act as liaisons for birth certificate verifications and requests between care providers and consulates. If a care provider or FFS requests the consulate interviews the UAC to help verify identity, the CFS acts as the main POC. |
| Medical | Reviews imaging technology and physical exams and the dental and |

Exhibit 2
Page 103

Not Confidential                                                                 GOV-00016641

| Professional Experienced in Age Assessment Methods | skeletal maturity assessments that calculate the estimated probability that an individual is 18 years or older. An agreement between DHS and ORR specifies that medical age assessments use only dental assessments. |
|---|---|

## 1.6.1 UAC in HHS Custody

📖 See Section 1.6.1 of the UAC Policy Guide.

## 1.6.2 Instructions

### PROCEDURES

1. The case manager requests the family send birth certificate of UAC if he/she arrives without one. If the family or the UAC refuses, the case manager contacts the consulate or CFS for assistance in obtaining the birth certificate (unless the UAC is claiming asylum). ☎ 📖

2. When requested by the case manager and with the approval of the UAC, CFS arranges for the UAC's consulate to interview him/her for help in obtaining a birth certificate or in determining the identity of the UAC. ☎ 📖

3. The case manager continues making assessment if the following occur:
   - There are concerns about the UAC's age based upon appearance and mannerisms.
   - Discrepancies in the assessment of the UAC and sponsor assessment that raises concerns about the UAC's age.
   - The information provided seems suspicious or the documents appear to be altered based on the overall appearance of the documents or photos

Exhibit 2
Page 104

Not Confidential                                                                                        GOV-00016642

on those documents (birth certificates, school records, or other ID provided).[2]

The case manager requests through the CFS to have the birth certificate verified by the consulate unless the UAC is seeking asylum due to persecution by their government.  (The consulate will provide corrected birth date, name, or parents' names to the ORR CFS if the birth certificate has been altered in any way.) 📁☎✉

4. The CFS forwards the consulate's response and attached documents to the case manager, copying the FFS. ✉

5. The case manager gathers information to support the age re-determination and additional information requested by ICE in cases involving taking custody of an adult and sends to FFS. These may include:
    - Fake birth certificate
    - Consulate's email
    - Document from the consulate, such as the actual (unaltered) birth certificate or RENAP or DPI or government issued ID
    - Immunization and TB test results (if received)
    - Any statement by an individual in ORR custody confessing their actual age or birth date
    - Statement by family member or sponsor of the UAC that provides a different date of birth, age, or identity
    - The dental forensic written report indicating the probability this individual has reached the age of 18
    - Memo by case manager documenting results of UAC Portal search for the name, date of birth, and/or documents provided by a UAC

6. The FFS writes a memo on ORR Letterhead to ICE requesting they pick up the individual and outlines the basis for the age redetermination that his individual is really an adult. If the basis uses the dental forensic, the FFS supervisor must approve of the age redetermination and approve the memo to ICE. The FFS sends the memo using password protected procedures and all supporting documentation to the FOJC providing the shelter POC to arrange for pick up.

---

[2] If there are discrepancies or concerns that the UAC may using someone else's birth certificate, the case manager may ask the consulate to interview this LAC who can also inquire about family history and provide validity to the birth certificate of the UAC.  The consulate may also be able to provide a family tree that can be used by the case manager and the consulate during the assessment and interview for any discrepancies.  The consulate may provide a statement as to any concerns he/she has in the interview and suspicion of this person using someone else's birth certificate.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    48 | P a g e

Exhibit 2
Page 105

Not Confidential                                                                                    GOV-00016643

Memo Format:
Date:
To: DHS, ICE, FOJC
From: Name, ORR DUCO FFS
Re: ADULT – Age Redetermination – Name – A# -- ORR shelter/placement name

Narrative summary of the age redetermination process completed.✉🖻

7.  If the UAC is using a verified birth certificate but there is reasonable suspicion of this
    person being an adult, the case manager emails a request to the FFS for a dental
    forensic exam.  ✉

8.  The FFS approves the dental forensic exam and copies his/her FFS supervisor. ✉

9.  The medical department at the care provider arranges for a dental exam and requests
    the examining dentist to provide an age determination report. The report must indicate
    the likelihood of this individual's age in percentage format.  If the examiner cannot write
    this report, they may take digital images and the medical department can request a TAR
    for the images to be sent to a DHUC approved providers who can review those images
    and provide the program this type of report as agreed upon between ORR and DHS ICE.

10. If the dental report indicates this individual is likely to be an adult at the 75% probability
    threshold, the FFS provides this report to the FFS supervisor for review along with all
    other efforts, concerns, and other proof. 🗐✉

11. If there is the report plus another type of proof such as a confession of using another's
    birth certificate, or confession from the family or sponsor, or the consulate's shared
    concerns, then FFS writes a memo to ICE requesting they pick up the adult. ✉🖻

12. If a UAC or a sponsor has provided fraudulent documentation to ORR for the purposes
    of sponsorship (altered birth certificates or impersonating another person), the care
    provider submits a Significant Incident Report.  ↰🖐

## 1.7 Placement and Operations during an Influx

### OVERVIEW

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **49 |** P a g e

**Exhibit 2**
**Page 106**

As stated in **UAC MAP** section 1.3.2, ORR Intakes identifies available and appropriate bed space at a care provider by reviewing the "Capacity Management" tab in the UAC Portal which automatically updates and identifies available beds by state, facility, and types of facilities on a daily basis. **See Fig. 1.4.**

The Capacity Report serves as a bellwether when the number of UAC coming into the United States exceeds the standard capabilities of ORR to process them using standard operating procedures.

The ORR Division of UAC Planning and Logistics (DPL) oversees comprehensive planning to ensure that the UAC Programs are able to accommodate the number of referrals of children to ORR care. DPL prepares plans for anticipated shelter capacity and staffing needs. DPL leads coordination with other federal agencies and management of grants and contracts. If ORR requires temporary shelters to care for UAC, DPL is the operational and logistical lead player for those efforts.

ORR arranges for influx care facilities (ICF), provides additional transportation services, and puts other operations into place to meet the need during an influx. Because certain ICF may require a 72-hour medical waiting period prior to receiving UAC, ORR activates Health Processing Centers (HPC) to initially screen and vaccinate children prior to their placement into ICF.

| Key Players | Responsibilities |
|---|---|
| ORR Intakes | Monitors bed space based on daily capacity reports and updates ORR leadership when data indicates an influx is underway. Also designates initial placement of qualified UAC into an HPC following DHS apprehension. |
| DHUC | ORR Division of medical officers, epidemiologists, and other public health experts who ensure UAC are screened and processed consistent with public health standards during an influx. |
| Division of UAC Planning and Logistics (DPL) | ORR Division that manages the influx/emergency component of business operations. Responsible for UAC program planning and operations during times of influx. |
| Designated FFS or FFS Supervisor | Approves UAC identified for an initial placement or transfer to free up bed space during an influx; approves travel plans. |
| Sending Case Manager | Identifies eligible UAC for transfers, coordinates travel plans, and manages logistics, such as notifications to stakeholders. |
| Influx Transportation Staff | Verifies that transfer checklists and documents are complete, checks UAC prior to boarding and transports UAC to Influx Care Centers. |

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **50** | P a g e

**Exhibit 2**
**Page 107**

Not Confidential                                                                                      GOV-00016645

| Related Forms/Instruments | |
|---|---|
| Transfer Manifest | Case Manager, CFS, FFS, DPL |
| *Care Provider Influx Transfer Checklist* | Case Manager |
| *Medical Checklist for Influx Transfers* | Medical Coordinator, Medical Staff, DPL |

## 1.7.1 Activation of HPCs

📖 See Section 1.7.1 of the UAC Policy Guide.

## 1.7.2 Placement into HPCs

📖 See Section 1.7.2 of the UAC Policy Guide.

### PROCEDURES

1. ORR Intakes continuously updates ORR management of the following:
   - Care provider facilities, HPCs, and ICF that have reached capacity
   - Total number of UAC pending
   - Total number of tender age UAC pending
   - Number of UAC exceeding pending placement for 24 hours or less, 48 hours, and 72 hours
   - Any special placement (e.g., medically fragile UAC)
   - List of all UAC pending placement, including initial referral information ⊕✓🗓✉

2. ORR Intakes designates placement at an HPC and contacts DHS (or other referring agency) with the contact information of the HPC using the placement notification summary below. ✉

### ✉ Email Template Initial Placement into HPC

From: ORR Intakes
To: Care Provider/HPC

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          51 | P a g e

Exhibit 2
Page 108

Not Confidential                                                        GOV-00016646

Referring DHS Sector
CC: FFS
    ORR Intakes Team Lead
    DPL
Subject: UAC [include last four digits of A number] placement into HPC
Please see the password protected document with details about the UAC's placement into an HPC. The password will be sent separately.
File includes, but is not limited to:
- Designated care provider/HPC
- UAC's name, A#, date of birth, and country of origin
- Referring DHS Sector
- Summary of any medical, mental health, or other special concerns
- Summary of any reported safety concerns and contact information for the referring official who flagged the concern.

3. Upon request, ORR Intakes may request that DHS contact the point of contact for the HPC to provide notice of travel arrangements, including expected arrival date and time of the UAC at the designated location and the contact information for the transporting officials. ✉

4. ORR Intakes ensures that DHS has correct contact information for the HPC point of contact and is aware of any limitations or restrictions to the day/time that the UAC can be accepted by the HPC. 🕒✉

# 1.7.3 Placement into Influx Care Facilities

📖 See Section 1.7.1 of the UAC Policy Guide.

## PROCEDURES

1. DPL, in conjunction with the other UAC Program Divisions, identifies HPC or care provider facility with targeted number of UAC who meet ICF transfer criteria. 📖 ⚓

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **52 |** P a g e

**Exhibit 2**
**Page 109**

Not Confidential                                                    GOV-00016647

2. Once DPL determines date of transfer and targeted number of UAC for transfer from either care provider facilities or HPCs, the referring case manager or HPC point of contact identifies individual UAC who meet ICF transfer criteria. 📖

3. The sending case manager or HPC point of contact develops a proposed Transfer Manifest with list of eligible UAC and sends it to the assigned CFS, designated FFS, FFS supervisor, and DPL Operations and Logistics Lead **no later than 72 hours prior** to the proposed transfer date. **See Fig. 1.13**.🕑📄✉

4. **Within 4 hours of receipt of the Transfer Manifest**, the designated FFS or FFS supervisor approves the proposed Transfer Manifest and notifies the sending case manager, copying the case coordinator for situational awareness, of the final approved Transfer Manifest. The FFS notifies the Data and Analysis team of group transfers for 20 or more UAC to allow for a mass transfer ORR approval via the UAC Portal. ✔🕑📄✉

   **NOTE**: No additional UAC may be added to the Transfer Manifest once it is approved by ORR.

5. **Within 4 hours of receipt of the approval** of the Transfer Manifest, the sending case manager completes the case manager section of the *Transfer Request* in the UAC Portal and as soon as possible notifies the FFS and CFS when it is complete. **See Fig. 1.7**. The case manager leaves the case coordinator section of the *Transfer Request* blank. If more than 20 UAC are on the Transfer Manifest, the case manager ONLY fills in the Requested Date field. **See Fig. 1.15**. ✔🕑📄✉

### Fig. 1.15 Case Manager Transfer Request for Transfers of 20+ UAC

| Transfer Request: | | |
|---|---|---|
| Type of Program Requested: | | Requested Date: |
| Requesting Party: | | |
| Requester Name: | | |
| Requester Title: | | |
| Requester Phone: | | |
| Case Coordination: | | |
| Concur with Requesting | ☐ Yes ☐ No | |

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          **53 |** P a g e

**Exhibit 2**
**Page 110**

Not Confidential

GOV-00016648

6. The sending case manager at the HPC or standard shelter coordinates with the Transportation Contractor, if applicable, and the DPL Operations and Logistics Lead to develop a travel plan that meets the following requirements:

- UAC must depart the HPC or standard shelter **within 48 hours of transfer approval** and arrive at the ICF no later than 5:00 p.m. If the estimated time of arrival is after 5:00 p.m. or the plan involves 8 hours or more of travel time for the UAC, the sending case manager immediately elevates the issue to the sending and receiving FFS who will staff the issue with the senior FFS supervisor for approval.
- Detailed transportation arrangements, including route, Border Patrol check points, transportation staff and driver names.
- Steps to ensure UAC travel with a supply of current medications (if applicable), his/her belongings, and transfer documentation.
- Provides for preparations for the UAC.
- Meal arrangements.
- Addresses any additional security measures in place at the ICF.
📖🕐✉/☎

7. The sending case manager provides the approved Transfer Manifest to the Transportation Point of contact and the Transportation Contractors provide the case manager with the transportation plan (routes, staff, drivers' names, etc.). ✉/☎

8. The designed sending and receiving FFS or FFS supervisor and DPL Operations Lead approve the travel plan **no later than 48 hours prior to the proposed transfer date.** 🕐✉

9. The sending case manager completes the following for each UAC on the approved Transfer Manifest:
- *Care Provider Checklist for Transfers to Influx Care Facilities*
- *Care Provider Family Reunification Checklist*
- *Transfer Request and Tracking Form*
- *Medical Checklist for Influx Transfers* 📄

📄 **Appendix 1.9** is the *Care Provider Checklist for Transfers to Influx Care Facilities.*

📄 **Appendix 1.10** is the *Medical Checklist for Influx Transfers.*

UAC MAP: Section 1: Placement in ORR Care Provider Facilities        54 | P a g e

**Exhibit 2**
**Page 111**
Not Confidential                                                     GOV-00016649

10. Sending case manager updates the Transfer Manifest to include the following:
  - Final names of UAC; A#s; date of birth; checkbox confirming that UAC has completed medical and vaccination records
  - Transportation date and time
  - Name of transport staff
  - Transfer location
  - Transportation route to transfer location
  - Estimated time of arrival to transfer location 📄

11. ORR designated staff approve the Transfer Requests in the UAC Portal **at least 24 hours prior to the physical transfer** of the UAC and notify the case manager of completion based on the sample email template below. **NOTE:** Groups of 20 or more require notification to Data and Analysis Team. 📎🔗✉️

---

### ✉️**Email Template Transfer Manifest**

To: Designated CBP Contact

    Referring and Receiving ICE FOJC
    Referring and Receiving Case Managers
    Referring and Receiving Case Coordinators
    Referring FFS
CC:  DPL team, Data and Analysis Team
Subject: Transfer Manifest
Please see the password protected Transfer Manifest for UAC. The password will be sent by separate email.

Attachments: Transfer Manifest

---

If the Transfer Manifest is for 20 or more children, the designated FFS or CFS emails the Data and Analysis Team to input the approvals in the UAC Portal based on thee email template below. 📎🔗✉️

---

### ✉️**Email Template: Transfer Manifest for Groups of 20 or More**

From: DPL
To: Designated Data and Analysis Team Contact
CC: DPL team, Data and Analysis Team

Subject: Transfer Manifest for [insert number of UAC]

UAC MAP: Section 1: Placement in ORR Care Provider Facilities

**55 |** P a g e

**Exhibit 2**
**Page 112**

Not Confidential

GOV-00016650

Please see the Transfer Manifest with detailed information about the UAC who will be transferred from [include source program name] to [insert receiving program name.] [Insert name of ORR Official approving the Transfer Request] approved this transfer request on [insert date of approval.]

The password will be sent by separate email.

Password protected attachment: Transfer Manifest

12. The sending case manager notifies legal service providers for UAC on Transfer Manifest and uploads UAC documents to the UAC Portal (see Quick Glance below).

## Quick Glance: Documents that Sending Case Manager Must Complete/Upload to UAC Portal Prior to Transfer to ICF

- *Initial Intakes Assessment*
- *UAC Assessment*
- *Assessment for Risk*
- *Individual Service Plan*
- Background Checks Table
- Family Reunification Forms and Supporting Documentation
- Significant Incident Reports, if applicable
- DHS Form I-862 Notice to Appear
- Legal Representation List acknowledgment
- Know Your Rights acknowledgment
- *Care Provider Checklist for Transfers to Influx Care Facilities*
- *Medical Checklist for Influx Transfers*
- *Transfer Request and Tracking Form*
- Copies of health records, to include medical, dental, and mental health (UAC must be clear of all contagious conditions, including scabies and lice)

13. The sending care provider prepares the UAC for transfer:
- **Within 24 hours before physical transport**, conducts lice and rash checks on all UAC on Transfer Manifest. If UAC is found to have lice or rash, removes the UAC from Manifest and immediately notifies the designated sending and receiving FFS of the change.
- Notifies the UAC of the transfer, considering the UAC and others' safety and well-being, in determining when and what information is shared and allows UAC closure with staff and peers.
- Arranges for discussion between sending and receiving case managers if there are special circumstances.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    56 | P a g e

Exhibit 2
Page 113

Not Confidential

GOV-00016651

- Gathers the documents and items which will accompany the child on the transfer. 📄🕒

---

**Quick Glance: Items That Accompany UAC on Transfer to ICF**

- UAC  personal belongings, including clothing, money, valuables, and items obtained during the UAC's stay at the sending care provider
- *Transfer Request and Tracking Form*
- 30-day medication supply (any exceptions must be fully discussed with sending and receiving care providers prior to transfer)
- *Care Provider Family Reunification Checklist*
- Transfer Manifest
- *Care Provider Checklist for Transfers to Influx Care Facilities*
- Copy of health records, to include medical, dental, and mental health
- Original documents (birth certificates, DHS form I-862 Notice to Appear)

---

14. The sending case manager ensures that transfer documentation and items are provided to the influx transportation staff for each UAC at time of transfer. 📄🕒

15. Influx transportation staff:
    - Verifies that *Care Provider Checklist for Transfers to Influx Care Facilities* is complete **no later than 2 hours prior to physical transport**.
    - Verifies that all transfer documentation and items listed on the *Transfer Request and Tracking Form* and *Care Provider Checklist for Transfers to Influx Care Facilities* for each UAC are in the transportation staff's possession in a secure manner (especially health documents and immunization records).
    - Verifies that the lice and rash check was completed.
    - **Immediately** before the UAC physically boards the vehicle, checks each UAC's temperature to ensure that it is not elevated. If a UAC has an elevated temperature, then removes the UAC from the Transfer Manifest and **IMMEDIATELY** notifies the sending care provider and receiving FFS of the change. If the UAC complains of an illness or other medical concern or the transportation staff observes an illness or other medical concern, **IMMEDIATELY** elevates the issue to the designated FFS and sending care provider and does not allow the UAC to board the vehicle. 📄🕒✉️

**Exhibit 2**
**Page 114**

Not Confidential                                                                                                    GOV-00016652

16. The sending care provider point of contact:

- **As the UAC physically boards the transport vehicle, immediately** exits each UAC in the UAC Portal (discharge type: "transfer").
- **After departure of the transport vehicle, immediately** sends notice of final number of UAC who departed and a final Transfer Manifest based on the Final Manifest Email template above. ⊙↻✉

**Special Situations Regarding Transfer Logistics and Physical Transfer:**

HPCs, ICF, and Transportation Contractors must communicate and coordinate the physical transfer of UAC and be aware of the following:

- Any special security procedures at the ICF
- Timely reporting of changes in flight, such as cancellations
- Missed flights
- Changes of UAC boarding flights or traveling by bus due to illness
- Requests for the ICF to meet the HPC transport staff at the airport to accept new placements
- When ICF requires UAC to arrive with a hard copy of his/her health records
- Any trouble encountered en route (i.e. extra paperwork necessary to bring UAC on flight, extra Border Patrol checks en route, ...)

# 1.7.4 Admission and Orientation for HPCs and Influx Care Facilities

## PROCEDURES

1. The ICF staff escorts the UAC **immediately upon arrival** into a medical intakes area. ⊙

2. The medical coordinator completes a medical intakes screening by:
   - Checking each UAC temperature to ensure that his/her temperature is not elevated.
   - Checks each UAC for lice and rash and refers for treatment and/or isolation, if necessary.
   - Reviews transfer documentation that accompanied the UAC to confirm that the UAC is medically cleared.
   - Ensures receipt of health documents, to include immunization and lab/chest x-ray documents.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **58 |** P a g e

**Exhibit 2**
**Page 115**

Not Confidential                                                                                            GOV-00016653

- Ensures receipt of sufficient medication supply and ensures a refill is obtained, if required.
- If a UAC has an elevated temperature or rash, **immediately** notifies the ICF ORR staff and sending and receiving FFS to determine whether the UAC requires further medical evaluation or whether the UAC should be safely transported back to the sending care provider or to an alternative program.
- If the UAC complains of an illness or other medical concern or if the influx transportation staff or receiving care provider observes an illness or other medical concern, **immediately** elevates the issue to the designed FFS and medical coordinator via phone and email and does not allow the UAC to mix with other UAC already in place in the facility. 🕐📄☎✉

3. ICF staff admits the UAC to care provider program in the UAC Portal. (See Quick Glance: How to Access UAC Records after Transfers in Section 1.4 above.) 🖱

## 1.7.5 Medical Services

📖 See Section 1.7.5 of the UAC Policy Guide.

## 1.7.6 HPC and Influx Care Facility Services

📖 See Section 1.7.6 of the UAC Policy Guide.

### PROCEDURES

1. **Within 4 hours of the UAC arrival**, the ICF:
   - Offers the UAC a meal and/or snack and the opportunity to shower and receive clean clothing.
   - Reviews the *Care Provider Checklist for Transfers to Influx Care Facilities* to ensure that all required documentation is in the UAC Portal.
   - Completes an inventory of the UAC's belongings, including medication, and signs the *Transfer Request and Tracking Form* and uploads it to the UAC Portal.
   - Signs the Transfer Manifest and sends a copy to the designated DPL.
   - Reviews the *Care Provider Family Reunification Checklist* to ensure that all required documentation is in the UAC Portal.

**Exhibit 2**
**Page 116**

Not Confidential                                                              GOV-00016654

**NOTE:** If any items or documents are missing, the receiving care provider contacts the sending care provider within 3 business days. If the receiving care provider does not receive the missing items within 3 days of request or receive uploaded missing documentation in the UAC Portal, the receiving care provider contacts the sending FFS to resolve. ⏱️📋 ✉️

2. **Within 24 hours of the UAC arrival**, the ICF:
   - Completes the *Initial Intakes Assessment*.
   - Facilitates contact between the UAC's family and/or potential sponsors.
   - Follows up with the UAC potential sponsor to assist in completing the family reunification packet; complete the sponsor assessment interview, if not previously completed; assess the potential sponsor's ability to provide for UAC needs; check status of completion of criminal background checks, if applicable. ⏱️📋 ✉️☎️

3. **Within 5 days of the UAC arrival**, completes the *UAC Assessment* and *ISP*. ⏱️📋 ✏️

4. The ICF holds weekly case staffing in consultation with the case coordinator regarding potential transfers in case a significant or concerning change occurs for the UAC. ⏱️📖

5. In the event that a UAC needs to be transferred all parties follow the standard transfer procedures (Section 1.4).

## 1.7.7 Transportation during Influx

📖 See Section 1.7.7 of the UAC Policy Guide.

## 1.7.8 Federal Staffing Plan

📖 See Section 1.7.8 of the UAC Policy Guide.

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    **60 |** P a g e

**Exhibit 2**
**Page 117**

# Appendix 1.1 "Add New UAC" Screen Shot

Exhibit 2
Page 118

Not Confidential                                                                                          GOV-00016656

**Entry:**

| | |
|---|---|
| Email(s): | Phone: |

| | | | | |
|---|---|---|---|---|
| **Entry:** | City and/or Location Code | State | Date/Time | |
| | Entry City and/or Location Code: Select Option | **Entry State** -- Select a State -- | Entry Date 5/30/2017 | Entry Time |
| **Apprehension:** | Apprehension City and/or Location Code: Select Option | **Apprehension State** -- Select a State -- | Apprehension Date | Apprehension Time |
| **Current Location:** | Current Location City and/or Location Code: Select Option | | Current Location Date | Current Location Time |

**Parent/Sponsor Information**

⇒ Add New Row

| Name | Phone No. | Relationship to UAC | Address |
|---|---|---|---|
| Name | Phone No. | Relationship to UAC -- Select Relationship -- | Address |
| Name | Phone No. | Relationship to UAC -- Select Relationship -- | Address |
| Name | Phone No. | Relationship to UAC -- Select Relationship -- | Address |
| Name | Phone No. | Relationship to UAC -- Select Relationship -- | Address |
| Name | Phone No. | Relationship to UAC -- Select Relationship -- | Address |

**Referral Notes**

Notes:

**Secure Placement Justification**

Justification for Secure Placement

Gang Affiliation

| Any Known Gang Affiliation: | ☐ Yes ☐ Suspect ☑ No ☐ Unknown | Name of Gang: |
|---|---|---|
| Determined by: | Self-Admission of UAC / Gang Tattoos / Gang Affiliation Summary | Gang Affiliation Summary: |

Detention Facility Information (if UAC received from a detention facility)

| Type of Detention Facility: | Adult Detention | | |
|---|---|---|---|
| Facility Name: | | Phone Number: | |
| POC: | | Fax Number: | |
| Admission Date: | | Discharge Date: | |
| Summary of Known Incident Reports During Stay at Detention Center: | | Summary of known TB tests and medical/mental health condition: | |

**Program Information**

| Program Type: | Select Program Type | Enroll in Program: | |
|---|---|---|---|

⊠ Reset    ⊠ Fast    ⊠ Non-Fast

UAC MAP: Section 1: Placement in ORR Care Provider Facilities

Exhibit 2
Page 119

Not Confidential

GOV-00016657

# Appendix 1.2 Intakes Placement Checklist

ORR staff use this *Intakes Placement Checklist* to determine the initial placement of UAC who may require placement in a restrictive setting, such as a staff secure or secure facility. An ORR Federal Field Specialist approves the final placement decision.

### 1. UAC INFORMATION

| Alien Number: | | DOB: | Previously in ORR Custody ☐ |
|---|---|---|---|
| Name (Last, First): | | | |
| Date of Referral: | | Age: | |
| Gender: | Male ☑  Female ☐ | Country of Origin: | |

### 2. PLACEMENT DETERMINATION

| Intakes Staff: | Approving FFS: |
|---|---|
| Recommended Placement:<br>Staff Secure ☐   Secure ☐   Therapeutic ☐<br><br>Shelter/TFC ☐   RTC ☐ | FFS Decision:<br><br>(select) |
| Final Placement Determination:<br>Staff Secure ☐   Secure ☐   Therapeutic ☐<br><br>Shelter/TFC ☐   RTC ☐ | Designated Placement: |
| Reason for FFS override of Intakes' recommendation, if applicable: | |

### 3. ESCAPE RISK

*Any positive indication of escape risk meets minimum requirements for designation to a staff secure facility.*

| Yes ○ | No ⊙ | Referral indicates that UAC has attempted to escape or expressed intent to escape from detention or government custody. |
|---|---|---|
| Yes ○ | No ⊙ | UAC was previously in ORR care and has SIR(s) for attempting to escape or expressing intent to escape from ORR custody. |
| Yes ○ | No ⊙ | UAC will be turning 18 years of age in the next month. |
| Yes ○ | No ⊙ | UAC has immigration history that includes: 1) a final order of removal 2) prior breach of bond 3) failure to appear before DHS or the immigration court 4) previous repatriation to home country. |

### 4. DANGER TO SELF

*Any positive indication of danger to self meets the minimum requirements for designation to a therapeutic or secure facility.*

| Yes ○ | No ⊙ | Referral indicates that UAC has committed or attempted an act of self-harm, or threatened to harm him/herself while in the custody of the referring agency. |
|---|---|---|
| Yes ○ | No ⊙ | UAC was previously in ORR care and has SIR(s) for committing, attempting or threatening to harm him/herself. |

Intakes Placement Checklist, 11/02/2018
ORR UAC/P-7

Exhibit 2
Page 120

Not Confidential                                                                                          GOV-00016658

## 5.   DANGER TO OTHERS

*UAC are not placed in a secure facility absent a determination that the child poses a danger to self, others, or has been charged with having committed a criminal offense. In assessing danger, ORR considers criminal history, gang affiliation that requires further assessment, and/or sexual predatory behavior/inappropriate sexual behavior. ORR considers certain criminal history as evidence of danger as provided below.*

## A. CRIMINAL HISTORY

*Criminal history or behavior meets the minimum requirements for placement into a secure care provider if it: 1) involved an element of violence from the outset, threat or harassment; 2) involved multiple incidents of the same offense (showing a pattern or practice of criminal activity); or, 3) involved different incidents of separate offenses. Criminal history not falling into one of these three categories does not meet the "dangerousness" requirement for placement in a secure facility, but may justify placement in a staff secure facility.*

| Yes ○  No ⊙ | The UAC has been charged with or convicted of a crime or been adjudicated delinquent; or, is subject to delinquency proceedings or other criminal proceedings. |
|---|---|
| Yes ○  No ⊙ | The referral indcates that the UAC has committed a crime or delinquent act that he/she is "chargeable" for. NOTE: "Chargeable" means that there is probable cause (based on a law enforcement oficer's judgment) that the UAC committed the specified offense. |

| Violent Offenses | UAC has criminal offenses, is chargable with, or has made threats involving violence against a victim including the following (indicate specific offenses): |
|---|---|
| Yes ○  No ⊙ <br><br> Multiple Counts/Offenses <br> Yes ○  No ⊙ | ☐ Assault/Battery <br> ☐ Kidnapping <br> ☐ Sexual Assault/Rape <br> ☐ Robbery <br> ☐ Serious Moving Violation (reckless driving) <br> ☐ Threats or behavior intended to physically harm, harass or intimidate another individual (bullying; threats while in government custody) <br><br> ☐ Possession of a deadly weapon (including use of a vehicle as a weapon) <br> ☐ Alien smuggling/trafficking in persons <br> ☐ Homicide <br> ☐ Crimes involving a minor victim (child molestation; child abuse; possession or distribution of child pornography; statutory rape) |

| Other Offenses | UAC has other criminal offenses or is chargeable with the following (indicate specific offenses): |
|---|---|
| Yes ○  No ⊙ <br><br> Multiple Counts/Offenses <br> Yes ○  No ⊙ <br><br> If YES did the multiple counts stem from different incidents in time? <br> Yes ○  No ⊙ | ☐ Burglary/ Breaking and Entering <br> ☐ Arson <br> ☐ Destruction of Property/Vandalism <br> ☐ Drug Smuggling <br> ☐ Fraud (identity theft, possession or use of fraudulent documents, grifting, forgery) <br> ☐ Drug Possession (including with intent to distribute) <br> ☐ Status Offense (A crime only a minor could commit, examples include possession of alcohol by a minor, curfew violations, truancy). <br><br> ☐ Soliciting a Prostitute <br> ☐ Pandering <br> ☐ Theft (including petty theft) <br> ☐ Shoplifting <br> ☐ Moving violation (DUI/DWI; speeding; running a stop sign) <br> ☐ Other (describe): |

Intakes Placement Checklist, 11/02/2018
ORR UAC/P-7

Exhibit 2
Page 121

### B. GANG AFFILIATION

*Absent referring agency's basis (if not n the UAC Portal) for determining gang affiliation.*

| Yes ○ | No ⊙ | Referral indicates that referring agency has identified the UAC as affiliated with a gang based on admissions by the UAC or UAC displays gang affiliation. |
|---|---|---|
| Yes ○ | No ⊙ | Referring agency suspects the UAC is affiliated with a gang. **Basis for suspicion must be included in referral notes. If the UAC was previously in ORR custody and released to a sponsor; and re-referred to ORR custody only because of the UAC's alleged gang ties, DHS must submit a copy of the *Saravia* order with the new referral.** |
| Yes ○ | No ⊙ | UAC was previously in ORR care and ORR records indicate UAC is affiliated with a gang. |

### C. SEXUAL PREDATION

*Any positive indication or history of sexual predatory behavior or engaging in inappropriate sexual behavior meets minimum requirement for placement to a therapeutic or secure facility. "Sexual predatory behavior" refers to a UAC with (1) a history of sexual assault or sexual harassment, (2) that is part of a pattern of behavior with the goal of committing a sexually based crime, and (3) that is based on a mental disorder or impulse. ORR may consider case history (e.g., law enforcement or court records, ORR custodial documents such as SIRs) and/or self-disclosures related to the UAC's history to determine whether their conduct is predatory in nature.*

| Yes ○ | No ⊙ | Referral indicates the referring agency has evidence that the UAC has a history of or displays sexual predatory behavior or engaged in inappropriate sexual behavior. |
|---|---|---|
| Yes ○ | No ⊙ | UAC was previously in ORR care and ORR records indicate the UAC has sexual predatory behavior or engaged in inappropriate sexual behavior. |

### D. CONDUCT IN ORR CUSTODY

*A UAC's conduct in ORR custody that indicates dangerousness may justify placement into a secure facility. Previous SIRs or other relevant ORR documents indicating dangerousness are submitted in support of this finding.*

| Yes ○ | No ⊙ | UAC was previously in ORR care and ORR records indicate the UAC committed, or made credible threats, to commit a violent or malicious act while in ORR custody |
|---|---|---|

Intakes Placement Checklist, 11/02/2018
ORR UAC/P-7

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          65 | P a g e

Exhibit 2
Page 122

Not Confidential

GOV-00016660

# Appendix 1.3 Notice of Placement in Restrictive Setting



Notice of Placement
in a Restrictive Setting
Office of Refugee Resettlement

You are in the custody of the Office of Refugee Resettlement (ORR), and have been placed in a restrictive setting - a secure or staff secure facility, or a Residential Treatment Center (RTC). The reason you have been placed in a restrictive setting is listed below.

If you have any questions about this placement, please discuss them with your case manager, your attorney, or an ORR-funded legal service provider.

| UAC Name | Alien Number | Country of Birth | Date of Birth | Gender |
|---|---|---|---|---|
| | | | | |

| Name of Care Provider Facility | Type of Facility |
|---|---|
| | |

**Secure Care:** ORR has determined that you pose a danger to self or others; or have been charged with having committed a criminal offense. ORR considered that you:

☐ Are charged with a crime, are chargeable with a crime, or have been convicted of a crime; or are the subject of delinquency proceedings, have been adjudicated delinquent, or are chargeable with a delinquent act[1];

☐ Have committed, or have made credible threats to commit a violent or malicious act while in ORR custody;

☐ Have committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;

☐ Have engaged in conduct that has proven to be unacceptably disruptive of the normal functioning of a staff secure facility in which you were placed such that transfer may be necessary to ensure your welfare or the welfare of others;

☐ Have self-disclosed violent criminal history prior to placement in ORR custody that requires further assessment; and/or,

☐ Have a history of or display sexual predatory behavior, or have inappropriate sexual behavior.

**Staff Secure Care:** ORR has determined that you require close supervision, but do not require placement in a secure care provider facility. ORR considered that you:

☐ Have been unacceptably disruptive to the normal functioning of a shelter care facility such that transfer is necessary to ensure the welfare of others;

☐ Are an escape risk;

☐ Have reported gang involvement (including prior to placement in ORR custody) or displayed gang affiliation while in care;[2]

☐ Have non-violent criminal or delinquent history not warranting placement in a secure care provider facility, such as isolated or petty offenses; or,

☐ Could be stepped down from a secure facility.

**Residential Treatment Center:** ORR has determined that you have a serious psychiatric or psychological issue that cannot be addressed in an outpatient setting and you are a danger to self or others. A licensed psychologist or psychiatrist has indicated that you:

☐ Have not shown reasonable progress in the alleviation of your mental health symptoms after a significant period of time in outpatient treatment;

☐ Demonstrate behavior that is a result of your underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting;

☐ Require therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent you from independent participation in the daily schedule of activities; and/or,

☐ Present a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions.

[1] Excluding: isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, etc.); or petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace, status offenses).
[2] "Displays gang affiliation" refers to any objective indication that a UAC is involved with or is a member of a gang. For example, it may refer to the presence of identifying characteristics such as gang tattoos, confirmed acts such as vandalizing property with a gang's "tag", other confirmed participation in gang activities, and/or any indications from the UAC's behavior while in government custody.

Notice of Placement in a Restrictive Setting, rev. 10/26/2018
ORR UAC/P-4

Exhibit 2
Page 123

Not Confidential                                                                 GOV-00016661

Notice of Placement in a Restrictive Setting

Summary of placement decision or case review (additional pages may be added):

ORR will review your placement, at a minimum, every 30 days to determine whether your placement in a restrictive level of care is still necessary. If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement. For more information on this process, please ask your case manager.

If you believe you have not been properly placed or that you have been treated improperly you may also ask a Federal District Court to review your case. You may call a lawyer to assist you.

UAC's acknowledgement of receipt:

_____     _____
                UAC's Signature                   Date

Care provider-issuing official:

_____     _____
                Signature                          Date

Notice of Placement in a Restrictive Setting, rev. 10/28/2018
ORR UAC/2-4

Exhibit 2
Page 124

# Appendix 1.4 Medical Checklist for Transfers

## MEDICAL CHECKLIST FOR TRANSFERS

### IDENTIFYING INFORMATION

| | |
|---|---|
| UC's Name: | Completed By(name and title): |
| A#: | Date Completed: |

### INSTRUCTIONS

- This checklist must be completed by a medical coordinator or other medical staff within three (3) business days identifying the need for a transfer.
- If "No" is checked for any of the below questions, do not transfer the child without consulting the ORR Medical Team. The FFS must also be consulted in accordance with ORR policies and procedures.
- The completed checklist should be uploaded to the UC Portal under "UAC Documents" and the paper copy stored in a secure location.
- Do not include a copy of this checklist with the child's transfer documents as it contains confidential medical information.

### CHECKLIST

| | | Meets Transfer Criteria | Does Not Meet Transfer Criteria |
|---|---|---|---|
| 1. | Has the initial medical exam been completed? | ☐ Yes | ☐ No |
| 2. | Have results from all lab tests been received? | ☐ Yes | ☐ No |
| 3. | Is the child up-to-date on immunizations? | ☐ Yes | ☐ No |
| 4. | Does the child have enough medications to last through the transfer process, plus an additional 3 days? | ☐ Yes   ☐ NA | ☐ No |
| 5. | Is the child free of all medical conditions that require specialist care (such as pregnancy, or epilepsy, or heart disease)? | ☐ Yes | ☐ No |
| 6. | Is the child currently clear of the following symptoms/conditions? | | |
| | a.  Fever | ☐ Yes | ☐ No |
| | b.  Rash | ☐ Yes | ☐ No |
| | c.  Cough | ☐ Yes | ☐ No |
| | d.  Neck stiffness/Confusion | ☐ Yes | ☐ No |
| | e.  Diarrhea/Vomiting | ☐ Yes | ☐ No |
| | f.  Scabies/Lice | ☐ Yes | ☐ No |
| 7. | Are all medical reports as complete as possible (e.g., lab results and final diagnoses entered) in the UC Portal? | ☐ Yes | ☐ No |
| 8. | Have all medical documents (e.g., Initial Medical Exam form, immunization records, lab results) been uploaded to the UC Portal? | ☐ Yes | ☐ No |

UAC MAP: Section 1: Placement in ORR Care Provider Facilities                    68 | P a g e

Exhibit 2
Page 125

Not Confidential                                                                   GOV-00016663

# Appendix 1.5 Screen Shot of the Transfer Request and Tracking Form

| Transfer Request |
|---|
| **Minor's Profile:** |
| Height(ft & inches):                                    Weight(lbs): |
| Eye Color: |
| Identification Marks: |
| **Transfer Request:** |
| Type of Program Requested:                              Requested Date: |
| Requesting Party: |
| Requester Name: |
| Requester Title: |
| Requester Phone: |
| **Case Coordination:** |
| Concur with Requesting     ☐ Yes ☐ No |
| Party? |
| If not, specify: |
| Type of Program                                         Case Coordinator Proposed |
| Recommended:                                            Program: |
| Case Coordinator Name: |
| Recommended Date: |

**Reason for Transfer Request:**

Shelter & Foster Care Only:  ☐ Standard Placement

Secure & Staff Secure Only
☐ Convicted as Adult
☐ Adjudicated Delinquent
☐ Criminal Charges
☐ Chargeable

Any Program Type:
☐ To provide a less restrictive setting (transfer only)   ☐ Disruptive Behavior
☐ To provide a more restrictive setting (transfer only)   ☐ Minor's Safety
☐ Minor's Medical Health                                  ☐ Flight Risk
☐ Minor's Mental Health                                   ☐ Emergency InFlux
☐ Violent/Threatening Behavior

Has the Minor's Attorney  ☐ Yes ☐ no
Been Contacted?                                           Attorney Phone:

**Attorney of Record:**

**Casefile Summaries**

Information Relating to
Minor's casefile
☐ Pregnancy                                  ☐ Diagnosed Behavior/Illness with no Medications
☐ Injury                                     ☐ Diagnosed Behavior/Illness with Medications
☐ Illness                                    ☐ Non-violent Conviction
☐ Non-diagnosed Behavior/Illness with no Medications   ☐ Non-violent Charge
☐ Non-diagnosed Behavior/Illness with Medications      ☐ Charge(s) Dropped

UAC MAP: Section 1: Placement in ORR Care Provider Facilities          69 | P a g e

Exhibit 2
Page 126

Not Confidential                                                        GOV-00016664

Minor's Medical/Mental
Health Summary:

Behavior Summary: (history of: flight risk, aggressive/assaultive & sexually inappropriate behaviors)

Current Status of Family
Reunification:

Immigration Court Status:

Case Manager Comments

Case Manager Name:

Case Manager Comments:

| Case Manager Suggests Transfer?: | ⃝ Yes? ⃝ No | | TMS Historical Transfer Request?: |
| --- | --- | --- | --- |

Date of Case Manager
Comments:

ORR/DCS Decision
Comments:

| Decision: | ⃝ Pending | | Date of Decision: |
| --- | --- | --- | --- |
| | ⃝ Approve | | |
| | ⃝ Disapprove | | |
| | ⃝ Remanded, please provide info as detailed in comments | | |

Name of ORR Decision Maker:

Transfer Packet (for each minor)

Good cause exists to change venue in this matter pursuant to 8 C.F.R. & 1003.20 (b) for the following reason(s):

☐ ORR has decided to relocate the respondent to an area where space is available/ appropriate services can be provided, since Juvenile detention space is limited in

☐ The minor has a special need (e.g., pregnancy of juvenile, medical needs, etc.), please specify

☐ Other, please specify

Departure/Arrival Information

| Departure Date: | | Departure Time: |
| --- | --- | --- |

Transporting Staff Name:

Transporting Staff Title:

Transporting Staff Comments:

| Arrival Date: | | Arrival Time: |
| --- | --- | --- |

Receiving Staff Name:

Receiving Staff Title:

Receiving Staff Comments:

Please follow checklist in the Transfer Procedures when completing minor's transfer packet, check the checkbox to indicate the packet is completed.
List of Minor's Belongings (be sure to include medication and explain dosage in medical/mental health summary)

COA - COV

| Request Type | ⃝ Change of Address | | Transfer Sch. to Take Place on: |
| --- | --- | --- | --- |
| | ⃝ Change of Value | | |

Next Sch. Court Appearance for
this Juvenile is:

Reason for less than 48 hours notice to ICE (if applicable) :

Exhibit 2
Page 127

Not Confidential                                                                 GOV-00016665

# Appendix 1.6 Template for Summary Notes: 30 Day Restrictive Placement Case Review

Exhibit 2
Page 128

Not Confidential                                                                    GOV-00016666

# Appendix 1.7 Long Term Foster Care Placement Memo

## LONG TERM FOSTER CARE PLACEMENT MEMO

Type of long term foster care (LTFC) placement requested: Choose an item.

| Minor's Name: Click here to enter text. | A#: Click here to enter a date |
|---|---|

*Foster care agency* has found a placement for the above minor. Please use the foster care program address and phone number for all contacts with the youth, including change of venue forms.

| Foster care program: Click here to enter text. | Program Address: Click here to enter text. |
|---|---|
| Foster care program staff responsible for transfer: Click here to enter text. | Phone #: Click here to enter text. |

Placement Type:

☐ Traditional Foster Care   ☐ Therapeutic Foster Care   ☐ Group Care   ☐ Residential Treatment Center

☐ Other (Please specify) Click here to enter text.  In Network? ☐ Yes ☐ No

| Name of Foster Family: Click here to enter text. | Address: Click here to enter text. |
|---|---|

1. Describe how this placement meets the minor's needs identified in the *Case Summary and Individual Service Plan*: Click here to enter text.

2. Describe family, household, and community setting: Click here to enter text.

3. For an initial transfer into LTFC *only* (if a change of placement for a minor already in LTFC skip and move to 4):
   a. Has a legal service provider or attorney found that the minor would be eligible for legal relief in the receiving jurisdiction? Choose an item.

   b. What is the name and contact information for the legal service provider or attorney of record who will arrange legal services for the minor at the time of placement with your organization? Click here to enter text.

4. For a change of placement for a minor already in LTFC *only* (skip if this is an initial transfer into LTFC). What are the reasons for the request? Click here to enter text.

In recommending the placement above, *foster care agency* has followed state guidelines and internal policies and procedures in recommending this placement.

Foster care program staff: _____   Date: _____

Exhibit 2
Page 129

Not Confidential                                                                    GOV-00016667

# Appendix 1.8 Request for Reconsideration of Placement

[In clearance]

**Exhibit 2**
**Page 130**

Not Confidential                                                                                           GOV-00016668

# Appendix 1.9 Care Provider Checklist for Transfers to Influx Care Facilities

## IDENTIFYING INFORMATION

| | |
|---|---|
| UC's Name: _____ | Receiving Influx Care Facility: _____ |
| A#: _____ | Referring Care Provider: _____ |
| UC's Date of Birth: _____ | UC Case Manager's Name: _____ |
| UC's Date of Admission to ORR: _____ | UC Clinician's Name: _____ |
| UC's Date of Transfer: _____ | ORR Reviewer's Name: _____ |

## ASSESSMENTS *(initial completion within 5 days of admission)*

| | Fully Completed in UAC Portal | Completion Date |
|---|---|---|
| Initial Intakes Assessment *(within 24 hours of admission)* | ☐ | |
| UC Assessment *(within 5 days of admission)* | ☐ | |
| Assessment for Risk *(within 72 hours of admission)* | ☐ | |
| Individual Service Plan *(within 5 to 6 days of admission)* | ☐ | |

## LEGAL SERVICES

| | Completed and Uploaded to UAC Portal | Completion Date |
|---|---|---|
| Legal Representation List *(signed acknowledgement within 48 hours of admission)* | ☐ | |
| Know Your Rights *(presentation and signed acknowledgement within 14 days of admission or video and signed acknowledgement within 7 days of admission)* | ☐ | |
| Legal Screening *(within 7 to 10 days of admission)* | ☐ | |

## MEDICAL SERVICES

| | Completed and Uploaded to UAC Portal | Completion Date |
|---|---|---|
| Initial Medical Exam Form | ☐ | |
| TB Screening | ☐ | |
| • Ages 13-14: PPD or IGRA | | |
| • Ages 15-17: PPD or IGRA and Chest X-ray | | |
| HIV Testing *(document if UC opts out of testing)* | ☐ | |
| Pregnancy Testing for Eligible Females *(test prior to administration of vaccines, defer live vaccines during pregnancy)* | ☐ | |
| Immunizations for 13-17 Year Olds *(according to the ACIP catch-up schedule, administered at least 72 hours prior to physical transfer)* | ☐ | |
| • Tdap *(tetanus, diphtheria, pertussis)* | | |
| • Hepatitis A | | |
| • Hepatitis B | | |
| • Varicella *(chickenpox)* | | |
| • IPV *(inactivated poliovirus vaccine)* | | |
| • MMR or MMRV *(measles, mumps, rubella)* | | |
| • MCV4 *(meningococcal disease)* | | |
| • HPV *(human papillomavirus)* | | |
| • Flu *(when seasonally available – generally, September through June)* | | |

| | Confirmed | Date Confirmed |
|---|---|---|
| Follow-up laboratory tests and consultations completed *(as indicated)* | ☐ | |
| Medical Checklist for Influx Transfers completed *(Medical Coordinator Initials: _____ )* | ☐ | |
| Child clear of all contagious conditions *(includes scabies and lice)* | ☐ | |
| No known medical, dental, or mental health issues requiring additional evaluation, treatment, or monitoring by a healthcare provider | ☐ | |

UAC MAP: Section 1: Placement in ORR Care Provider Facilities

Exhibit 2
Page 131

Not Confidential

GOV-00016669

| TRANSFER REQUEST | | Completed in UAC Portal | Completion Date |
|---|---|---|---|
| Transfer Request | | ☐ | |
| Program Exit | | ☐ | |

**TRANSFER DOCUMENTATION AND ITEMS** (*ensure the following documentation and items accompany each UC at the time of transfer in a secure manner*)

| | Confirmed at Time of Physical Transfer |
|---|---|
| UC's personal belongings including clothing, money, valuables, and items obtained during the UC's stay at the referring care provider | ☐ |
| Thirty (30) day medication supply | ☐ |
| Care Provider Family Reunification Checklist | ☐ |
| Care Provider Checklist for Transfers to Influx Care Facilities | ☐ |
| Transfer Request and Tracking Form | ☐ |
| Transfer Manifest | ☐ |
| DHS Form I-862 Notice to Appear (NTA), if available | ☐ |
| Copy of sponsor's birth certificate | ☐ |
| Copy of medical and vaccination documents | ☐ |
| All original documents (e.g., birth certificates) | ☐ |
| List any food allergies: | |

**FINAL MEDICAL CHECKS** (*done at time of physical transfer*)

| | Confirmed at Time of Physical Transfer |
|---|---|
| UC checked and determined to be clear of lice and rash (*within 24 hours of physical transport*) | ☐ |
| UC's temperature checked and found not to be elevated (*immediately before the UC boards the transport vehicle*) | ☐ |

**CASE MANAGER AFFIRMATION** (*done at time of physical transfer*)

I declare and affirm that the information contained in this checklist is true and accurate to the best of my knowledge. I attest that all assessments, legal services, medical services, and transfer request documentation have been fully and accurately completed and that they have been save in or uploaded to the UAC Portal. I attest that all transfer documentation and items have been physically provided to the UC in a secure manner. I attest that the UC was checked for lice and determined to be clear of lice within 24 hours of physical transport and that the UC did not present with an elevated temperature at the time they boarded the transport vehicle. I have noted below and given an acceptable explanation for any instances in which documentation has not been fully completed or documentation and/or items were not physically provided to the UC.

List required documentation and/or items not available and explanation:

SIGNATURE OF CASE MANAGER: _____  DATE: _____

Exhibit 2
Page 132

Not Confidential

GOV-00016670

# Appendix 1.10 Medical Checklist for Influx Transfers

## MEDICAL CHECKLIST FOR INFLUX TRANSFERS

### IDENTIFYING INFORMATION

| | |
|---|---|
| UC's Name: | Completed By (name and title): |
| A#: | Date Completed: |

### INSTRUCTIONS

- This checklist should be completed by a medical coordinator or other medical staff no later than 24 hours prior to the proposed transfer date.
- **If "No" is checked for any of the below questions, do not transfer the child to an influx care facility.**
- The completed checklist should be uploaded to the UC Portal and the paper copy stored in a secure location. Do not include a copy of this checklist with the child's transfer documents as it contains confidential medical information.
- The person completing this form should initial the *Care Provider Checklist for Transfers to Influx Care Facilities* to indicate the child is medically cleared and vaccinated.

### CHECKLIST

| | | Meets Influx Transfer Criteria | Does Not Meet Influx Transfer Criteria |
|---|---|---|---|
| 1. | Has the initial medical exam been completed? | ☐ Yes | ☐ No |
| 2. | Have results from all lab tests (e.g., STD tests) and medical consultations been received? | ☐ Yes | ☐ No |
| 3. | TB screening | | |
| | a. Does the child have a negative PPD (<10 mm) or IGRA? | ☐ Yes | ☐ No |
| | b. For 15-17 year olds, does the child have a normal chest X-ray? | ☐ Yes  ☐ NA[1] | ☐ No |
| 4. | HIV screening | | |
| | a. Was the child tested for HIV? *Check "No" if child opted out of HIV testing.* | ☐ Yes | ☐ No |
| | b. If the child was tested, was the HIV test negative? | ☐ Yes | ☐ No |
| 5. | For females, was the pregnancy test negative? | ☐ Yes  ☐ NA[1] | ☐ No |
| 6. | Did the child receive the following immunizations? | | |
| | a. Tdap (tetanus, diphtheria, pertussis) | ☐ Yes | ☐ No |
| | b. Hepatitis A | ☐ Yes | ☐ No |
| | c. Hepatitis B | ☐ Yes | ☐ No |
| | d. Varicella (chickenpox) | ☐ Yes | ☐ No |
| | e. IPV (inactivated poliovirus vaccine) | ☐ Yes | ☐ No |
| | f. MMR (measles, mumps, rubella) | ☐ Yes | ☐ No |
| | g. MCV4 (meningococcal disease) | ☐ Yes | ☐ No |
| | h. HPV (human papillomavirus) | ☐ Yes | ☐ No |
| | i. Flu, when seasonably available (generally, September through June) | ☐ Yes  ☐ NA[1] | ☐ No |
| 7. | Did the child receive all of the above immunizations more than 72 hours before the scheduled physical transfer? | ☐ Yes | ☐ No |
| 8. | Is the child currently clear of all contagious conditions, including scabies and lice?[2] | ☐ Yes | ☐ No |
| 9. | Have you confirmed the child has no known medical or dental issues requiring additional evaluation, treatment, or monitoring by a healthcare provider? | ☐ Yes | ☐ No |
| 10. | Has a clinician confirmed the child has no known mental health issues requiring additional evaluation, treatment, or monitoring? <br><br> **Clinician, please initial here:** _____ | ☐ Yes | ☐ No |
| 11. | Has the following documentation been uploaded to the Files section of the Portal Health Tab: Initial Medical Exam form, Supplemental TB Screening form, lab results, immunization record, and chest x-ray reading (for 15-17 year olds)? | ☐ Yes | ☐ No |

[1] *NA: Question is not applicable (i.e., child is <15 years, pregnancy testing for males; flu vaccine is not seasonably available).*

[2] *A lice, fever, and rash check will also be done within 24 hours of physical transfer, per the ORR Operations Guide, Section 1.2.10.*

Medical Checklist for Influx Transfers, Rev. 12/03/2018

ORR UC/M 2

Exhibit 2
Page 133

Not Confidential                                                          GOV-00016671

# Exhibit 3

Exhibit 3
Page 134



ADMINISTRATION FOR
**CHILDREN & FAMILIES**
Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.hhs.gov/programs/orr

# The UAC Manual of Procedures (UAC MAP)

## For ORR Staff, Contractors, and Grantees

# Section 2: Safe and Timely Release from ORR Care

**Office of Refugee Resettlement**
**Office of the Director**
**Division of Policy and Procedures**
**July 2019 – Version 4.1**

Exhibit 3
Page 135

GOV-00207375

# Section 2: Safe and Timely Release from ORR Care

## Table of Contents

2.1 Summary of the Safe and Timely Release Process ................................................................. 5

2.2 Sponsor Application Process ................................................................................................. 6

    2.2.1 Identification of Qualified Sponsors ............................................................................. 8

        Quick Glance: Determining Sponsor Category ......................................................... 8

    2.2.2 Contacting Potential Sponsors ................................................................................. 10

        Quick Glance: DHS Restrictions on Use of Information Obtained from ORR ...................... 12

        Quick Glance: Protecting Sponsors from Fraud Schemes .................................................. 13

        Quick Glance: How to Check for Previous Sponsorship ..................................................... 14

        Quick Glance: Requesting Records from Other Care Provider Programs ........................... 19

    2.2.3 The Family Reunification Application .......................................................................... 19

        Quick Glance: When to Flag a Sponsor, Other Adult, or Address .................................... 20

    2.2.4 Required Documents for Submission with the Application for Release ......................... 21

        Quick Glance: List of Acceptable Proof of Identity Documents .......................................... 22

        Quick Glance: List of Acceptable Proof of Immigration or U.S. Citizenship Documents ....... 25

        Quick Glance: Acceptable Proof of Address Documents .................................................. 25

        Quick Glance: Acceptable Proof of Relationship Documents ........................................... 27

    2.2.5 Legal Orientation Program for Custodians .................................................................. 32

    2.2.6 Additional Questions and Answers about This Topic .................................................... 33

2.3 Key Participants in the Release Process ................................................................................ 33

    2.3.1 ORR Federal Field Specialists (FFS) ........................................................................... 33

    2.3.2 Case Managers .......................................................................................................... 33

    2.3.3 Case Coordinators .................................................................................................... 33

    2.3.4 Child Advocates ........................................................................................................ 33

2.4 Sponsor Assessment Criteria and Home Studies ................................................................... 34

    2.4.1 Assessment Criteria .................................................................................................. 35

        Quick Glance: Tips for Interviewing Sponsors ................................................................ 36

2.4.2 Home Study Requirement ................................................................................ 38

    Quick Glance: FFS Approval for Discretionary Home Studies ............................... 41

2.4.3 Additional Questions and Answers on This Topic........................................... 43

2.5 Sponsorship Assessment Background Check Investigations ............................... 43

  2.5.1 Background Check Requirements ...................................................................... 44

    Quick Glance: Overview of Background Check Requirements............................. 45

    Quick Glance: How to Document Background Checks in UAC Portal .................. 49

    Quick Glance: Expediting Fingerprint Check Results........................................... 50

    ✉ Email Template: Fingerprint Check Requests ................................................ 52

    Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results....... 52

    Quick Glance: Requesting Status Updates for Background Check Results .......... 55

    Quick Glance: CA/N Check State Forms ............................................................. 57

    Quick Glance: Release of UAC Prior to Receiving CA/N Check Results .............. 60

  2.5.2 Results of Background Checks on Release Decisions...................................... 63

  2.5.3 Commonly Asked Questions on the ORR Background Check Process............ 64

2.6 Sponsor Immigration Status and Release of UAC.............................................. 64

2.7 Recommendations and Decisions on Release ..................................................... 64

  2.7.1 Approve Release Decisions ............................................................................. 70

  2.7.2 Approve Release with Post-Release Services................................................. 72

  2.7.3 Conduct a Home Study before a Final Decision Can be Made ..................... 73

  2.7.4 Deny Release Request..................................................................................... 73

  2.7.5 Remand Release Request—Decision Pending ............................................... 74

  2.7.6 Issues Related to Recommendations and Decisions...................................... 74

  2.7.7 Notification of Denial ..................................................................................... 75

  2.7.8 Appeal of Release Denial................................................................................ 77

2.8 Release from ORR Custody ................................................................................. 78

    Quick Glance: Items That Accompany UAC at Release ...................................... 79

  2.8.1 After Care Planning ........................................................................................ 81

  2.8.2 Transfer of Physical Custody .......................................................................... 81

Exhibit 3

Page 137

GOV-00207377

2.8.3 Closing the Case File .................................................................................................. 82

2.8.4 Safety and Well-being Follow Up Call ........................................................................ 82

    Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information ........ 82

    Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report .................................................................................................................................... 86

2.8.5 Post-Release Services for UAC with Zika Disease or Infection ........................................ 86

2.8.6 Release for Children with Legal Immigration Status ...................................................... 87

    Quick Glance: Milestones for Planning and Releasing Children with Legal Status .............. 87

2.9 Bond Hearings for Unaccompanied Alien Children ............................................................. 89

    Quick Glance: Bond Hearing Notifications ......................................................................... 91

    Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community ............. 93

Appendix 2.1 How to Protect PII and Create Password Protected Files ....................................... 94

Appendix 2.2 How to Report Potential Fraud Schemes ............................................................. 98

Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States .......................................................................................................... 103

Appendix 2.4 Child Advocate Recommendation and Appointment Form .................................. 104

Appendix 2.5 Sponsor Assessment Interviewing Guidance ...................................................... 106

Appendix 2.6 Sponsor Assessment ......................................................................................... 113

Appendix 2.7 Sponsor Check Coversheet ................................................................................ 124

Appendix 2.8 CA/N Check Coversheet ..................................................................................... 125

Appendix 2.9 Background Check Submission Requirements ...................................................... 126

Appendix 2.10 Release Request Completion Guidance ............................................................ 128

Appendix 2.11 ORR HQ Bond Hearing Procedures .................................................................. 132

    Quick Glance: Processing Bond Hearing Requests ............................................................ 133

    Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community ............ 134

    Quick Glance: Preparing for Bond Hearings ..................................................................... 135

Appendix 2.12 Legal Status Definitions ................................................................................... 137

Appendix 2.13 Fingerprint Card ............................................................................................... 139

Appendix 2.14 Fingerprinting Guidance .................................................................................. 140

    Quick Glance: Assistance Completing the *FRP* at ORR Digital Fingerprint Sites ................ 141

Exhibit 3
Page 138

GOV-00207378

Appendix 2.15 Prior Sponsorship Information Request .............................................................. 143

Look for these **icons** for quick cues on what is required for a specific procedure or a reference to a particular policy in the UAC Policy Guide.

📖  UAC Policy Guide (ORR Guide to Children Entering the United Stated Unaccompanied)
✉  Email
📪  Mail
🕐  Tasks associated with a deadline
🗊  Form or other template
🖰  UAC Portal
☎  Phone Call

# 2.1 Summary of the Safe and Timely Release Process

📖  See Section 2.1 of UAC Policy Guide

## OVERVIEW

This section includes procedures for sponsor applications, assessments and background checks of potential sponsors, the roles and responsibilities of key participants in the release process, home study requirements, recommendations and decisions on release, including notifications of denial and procedures for appealing denial by a parent/guardian or UAC, procedures for release from ORR, including release to a sponsor, release for children with legal immigration status, procedures for post-release services and a safety and well-being follow up call, and closing the case file.

ORR expects care providers and ORR staff and contractors to protect Personally Identifiable Information (PII) when communicating information about sponsors and UAC. These procedures are described in Appendix 2.1 How to Protect PII and Create Password Protected Files Documents that are uploaded in the UAC Portal do **not** need password protection.

## 2.2 Sponsor Application Process

📖 See Section 2.2 of UAC Policy Guide

### OVERVIEW

ORR and its care providers work to ensure safe and timely release of each UAC from care whenever possible. This requires care providers to identify and contact potential sponsors as quickly as possible while maintaining the safety and well-being of the child. Potential sponsors complete a *Family Reunification Application (FRA)* and other forms and submit documents that are part of the larger Family Reunification Packet (FRP) (available in English and Spanish). ORR expects potential sponsors to complete the Family Reunification Packet **within 7 calendar days of receipt of the packet.**

The Family Reunification Packet includes the following and is available on the home page of the UAC Portal and on the ORR Website under Key Documents for the UAC Program:

- *Family Reunification Packet Cover Letter*
- *Authorization for Release of Information*
- *Family Reunification Application*
- *Sponsor Care Agreement*
- *Legal Orientation Program for Custodians Overview*
- *UAC Sexual Abuse Hotline Flyer*
- *Fingerprinting Instructions*
- *Sponsor Handbook*
- *Letter of Designation for Care of a Minor* (used when a parent or legal guardian wishes to specify another person to sponsor his or her child)
- *Sponsor Declaration*
- *Privacy Notice for Sponsors*
- *Privacy Notice for Parents and Legal Guardians*
- *Fraud Warning*

The *Sponsor Handbook* includes other information and is available on the UAC Portal as well as the ORR Website.

| Key Players | Responsibilities |
|---|---|
| Case Manager | Interviews UAC and parent or legal guardian (if possible) to identify a potential sponsor and contacts caregivers in country of origin to corroborate information and rule out trafficking issues, identifies any safety concerns regarding contact with potential sponsor, contacts sponsor and explains process for safe and timely release, and assists sponsor with other steps in completing the family reunification process. |

Exhibit 3
Page 140

GOV-00207380

| Case Coordinator | Makes recommendations on family reunification cases; serves as a main contact for the care provider program when concerns arise during the assessment, and assists in concurrent planning to find a suitable sponsor. |
| FFS | Serves as the official ORR representative in the field tasked with oversight of UAC cases; provides critical policy and procedural guidance to stakeholders involved in the care, custody, and release of UACs; serves as final decision maker on family reunification cases and elevates complex cases for further ORR input as needed. |
| Contract Field Specialist (CFS) | ORR contract staff who serve as liaisons to provide technical assistance as needed. Assist care provider in obtaining documents from prior UAC care provider and assist care provider in contacting consulate to verify UAC birth certificate, and other duties. |

| Related Forms/Instruments | Used By |
|---|---|
| Family Reunification Packet (FRP) | Case Manager, Sponsor |
| Sponsor Handbook | Sponsor |

The UAC Portal has a Case Status page that appears on the Case Management tab when a user clicks on an individual UAC's A number (see Fig. 2.1). Along with capturing a snapshot of a UAC's case at any given time, the function allows ORR to monitor cases to make sure assessments and communications occur within expected timeframes. Some fields on the page are auto-populated. Other fields require manual input.

## Fig. 2.1 Case Status Page

Exhibit 3
Page 141
GOV-00207381

| Background Checks | | | | |
|---|---|---|---|---|
| Internet Criminal | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: N/A | |
| Sex Abuse Registry | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: N/A | |
| Immigration | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: N/A | |
| FBI Criminal History (fingerprint) | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: N/A | |
| CA/N | | | | |
| Sponsor: Maria Moreno | Date Requested: | N/A | Date Result Received: N/A | |
| Legal | | | | |
| Know Your Rights and Legal Screening: | Date Completed: | | | |
| Release Recommendations | | | | |
| Case Manager Release Request: | Last Updated: | | | |
| Case Coordination Release Request: | Last Updated | | | |
| ORR Release Request Decision: | Last Updated: | 11/01/2017 | Release Approved: | |

# 2.2.1 Identification of Qualified Sponsors

📖 See Section 2.2.1 of the UAC Policy Guide

## Quick Glance: Determining Sponsor Category

Potential sponsors fall into three categories, of which one has two-subgroups. Best practice in child welfare is for children to be placed with family whenever possible. The sponsor category has implications for showing proof of relationship, whether the sponsor must have a home study prior to release, and other considerations. Some close relationships that may have a strong family association in a cultural context, for example, "godparent," falls outside the definition of a "family" relationship, and are considered as a category 3 sponsor. The following table is the typical order of preference for release, but may differ depending on the results of all assessments, background checks, and/or the needs of the UAC.

In the event the sponsor is unable to complete the application process in a timely manner, the case manager may conduct concurrent case planning. Concurrent case planning means the case manager continues to work with the original applicant, but looks at other sponsor options or release options for UAC. Concurrent case planning must be reviewed with the case coordinator who would elevate the case to the FFS.

| Relationship Type | Category |
|---|---|
| Father, Mother | Category 1 |
| Step-Parent (who adopted UAC) | Category 1 |
| Legal Guardian with proof of court-ordered guardianship | Category 1 |

| Grandfather, Grandmother | Category 2A |
|---|---|
| Aunt, Uncle | Category 2A or 2B |
| Sister, Brother | Category 2A |
| Half-sibling | Category 2A |
| Step-Parent (who did not adopt UAC) | Category 2A or 2B |
| Brother-in-law, Sister-in-law | Category 2A or 2B |
| First Cousin | Category 2A or 2B |
| Adult Nephew or Niece | Category 2A or 2B |
| Other Distant Relatives | Category 3 |
| Godparent (unrelated) | Category 3 |
| Unrelated Sponsor | Category 3 |
| Institutional/Organizational Sponsor | Category 3 |

**NOTES:**

- In cases involving a UAC who enters the country with her child, ORR assigns the UAC mother's sponsor category to her child. This is true even if the potential sponsor would be assigned a different category (based on their relationship status) if he or she were to sponsor the infant alone.

- Category 2A sponsors are grandparents, adult siblings (including half-siblings and step-siblings through a legal marriage); and other close adult relatives who were a primary caregiver to the child. Category 2B sponsors are close adult relatives (non-grandparents and non-adult siblings) who were not a primary caregiver to the child.

- Case managers note whether a Category 2 sponsor is a 2A or 2B in the *Release Request* and in the *Sponsor Assessment*.

Please contact the UAC Policy Inbox (UACPolicy@acf.hhs.gov) if you need clarification regarding sponsor categories related to a particular case (i.e., distant relative cases).

## PROCEDURES

1. **Within 24 hours of placement of the UAC in ORR custody**, the case manager:

   - Reviews the Intakes tab in the UAC Portal for any notes or contact information that was entered into the DHS referral to ORR, or to determine if the UAC was separated from a parent or other relative at time of apprehension.

   - Interviews the UAC to identify who he or she was expecting to live with in the United States and anyone else the UAC knows in the United States in order to help identify a potential sponsor.

- Identifies any safety concerns for the UAC if he/she were to have contact with the family in country of origin or the potential sponsor.

- Contacts the UAC's parent or legal guardian (following safety protocols in regard to trafficking, smuggling, abuse or neglect concerns, criminal history information, or any other safety concerns) to notify them of the UAC's placement, identify family members or close friends who reside in the United States and who may have been expecting the UAC, and requests that they send the UAC's birth certificate immediately.

- Advises the UAC's parent or legal guardian that ORR may release the UAC to a qualified sponsor in the United States who completes the application process and provides documentation to show proof of the sponsor's identify and the sponsor's relationship to the UAC. 🕮 ☎ 📖

## 2.2.2 Contacting Potential Sponsors

📖 See Section 2.2.2 of the UAC Policy Guide

### PROCEDURES

1. **Within 24 hours of identification of a potential sponsor**, the case manager explains to the potential sponsor the requirements of the sponsorship process by:

   - Providing an overview of ORR's function, principal tasks and participants, and the ORR connection to U.S. immigration proceedings by:

     o Stressing the fact that ORR is a federal agency within the U.S. Department of Health and Human Services and is dedicated to the welfare of unaccompanied alien children and that ORR is not an enforcement nor an immigration agency;

     o Advising that the UAC has been placed in immigration proceedings while in ORR care;

     o Explaining the role of the care provider's organization and that all services are free of charge to the UAC and to the sponsor;

     o Explaining the role of the case manager in assisting the potential sponsor with the family reunification process (include the case manager's contact information);

     o Emphasizing that the sponsor should be aware of potential fraud schemes (See Quick Glance: Protecting Sponsors from Fraud Schemes)

**Exhibit 3**

**Page 144**

GOV-00207384

- Informing the sponsor of the ORR family reunification process and the potential sponsor's responsibilities by:

  o Reviewing the Family Reunification Packet (FRP) and all forms that are included in the packet;

  o Explaining other documentation requirements that are part of the packet, such as proof of address, proof of relationship, etc.;

  o Explaining the importance of listing all household members on the application;

  o Explaining the process for fingerprinting, if applicable. This includes notifying the sponsor that ORR will submit fingerprint information to the FBI for criminal history checks and explaining the restrictions on DHS' ability to target the subject of a fingerprint check for immigration enforcement purposes using information obtained from ORR (see Quick Glance: DHS Restrictions on Use of Information Obtained from ORR).

  o Explaining other background checks, including that internet criminal public records checks and sex offender registry checks **will** be performed for all sponsors, adult household members, and adult caregivers identified in a sponsor care plan;

  o Explaining that assistance from an attorney or any other paid representative is not required for completion of the packet;

  o Advising the sponsor to be wary of fraudulent phone calls asking for money to get the UAC released to him or her and directing their attention to the *Fraud Warning* flyer in the FRP (See Quick Glance: Protecting Sponsors from Fraud Schemes).

  o Explaining the importance of obtaining a *Letter of Designation for Care of Minor* from the UAC's parent or guardian if the potential sponsor is not a parent or legal guardian (and documenting efforts to obtain the letter if unsuccessful).

- Emphasizing the timeframes for returning the packet by:

  o Immediately submitting the *Authorization for Release of Information*;

  o Immediately submitting the sponsor's government issued photo ID;

  o Submitting the complete FRP **within 7 calendar days** (noting that the case manager can assist if the sponsor is unable to read or write in English or Spanish).

  o Scheduling fingerprinting **within 3 business days**

- Explaining ORR expectations for the potential sponsor if the UAC is released to the sponsor by:

      o  Explaining that the sponsor must attend a Legal Orientation Program for Custodians (see **2.2.5 Legal Orientation Program for Custodians**).

      o  Noting that the UAC may receive post-release services while in the care of the sponsor, should such services be warranted, and that participation in the service provision is voluntary. ☺☎

---

**Quick Glance: DHS Restrictions on Use of Information Obtained from ORR**

Case managers must convey the following information in correspondence and conversations with any potential sponsor required to undergo a fingerprint check and instruct the potential sponsor to share this information with any adult household members or adult caregivers who are also required to undergo a fingerprint check.

*"Your fingerprints and other information, such as your name and date of birth, are shared DHS as part of the ORR background check process. DHS is restricted from using your information for immigration enforcement actions, including placing you in detention, removing you from the United States, referring you for a decision on removal, or starting removal proceedings. However, there are some exceptions. DHS may be able to use your information for immigration enforcement actions if you were convicted of, charge with, or are pending charges for a serious felony; if you have ever associated with a business that employs minors and does not pay a legal wage or prevents the minor from going to school; or if you have ever had an association with prostitution. Serious felonies include child abuse; sexual violence or abuse; child pornography; and aggravated felonies as defined in the U.S. Code of Laws.*

*Congress wrote this restriction into the Consolidate Appropriations Act of 2019, which is in effect until September 30, 2019. ORR does not know if the restrictions will continue beyond that date. Congress may impase these same restrictions, different restrictions, or not restrict DHS in the future.*

*ORR recommends that anyone who is concerned that DHS may be able to use their information for immigration enforcement actions speak with an attorney about whether their criminal history falls under these exceptions."*

The case manager must offer to send the below links to the potential sponsor.

- U.S. Code section that contains the definition of an aggravated felony – 8 U.S.C. 1101(a)(43)
  http://uscode.house.gov/view.xhtml?path=&req=1101&f=treesort&fq=true&num=371&hl=true&edition=prelim

- Consolidated Appropriations Act, 2019. Pub. L. 116-6, Division A, Title II, §224.
  https://www.congress.gov/bill/116th-congress/house-joint-resolution/31/text

---

## Quick Glance: Protecting Sponsors from Fraud Schemes

Case managers and clinicians who contact potential sponsors must convey the following information in correspondence and conversations with potential sponsors to protect them from fraud schemes.

*"There are no fees associated with the processing or reunification of an unaccompanied alien child. You do not need to pay money. No one should contact you and ask you for money, your bank account number, your credit card number, or ask you to send payment or a money order to another person or account.*

*However, you are responsible for the cost of your child's transportation and, if the care provider is escorting the child, for the care provider's transportation costs. If an airline escort is used, you are responsible for paying the airline's unaccompanied minor service fee. Travel costs should only be paid directly to a company, usually the airline or the care provider facility. You are not required to use a travel agent used by the care provider. No one should ask you to pay travel costs to an individual or to a personal account.*

*If you are contacted and asked to pay or wire money for any cost other than transportation and escort fees, or if you are asked to pay or wire money to an individual or personal account, please immediately call [insert phone number of your care provider program's licensed administrator] or the ORR National Call Center Help Line at (800) 203-7001."*

See Appendix 2.2 How to Report Potential Fraud Schemes

---

2. **Within 24 hours of identification of a potential sponsor**, the case manager sends the Family Reunification Packet (FRP) to the potential sponsor by email or by sending the UAC Portal home page link (https://ucportal.acf.hhs.gov) which features the FRP. The case manager updates the UAC Portal Case Status page with the date the FRP was sent to sponsor. **NOTE:** Emailing the FRP or sending the UAC Portal link is preferred whenever possible, but case managers may send the FRP by expedited mail or fax if necessary. ⊕📄 ☎✉/✆/⊕

3. **Within 1 business day of emailing or providing the UAC Portal link** to the FRP for the potential sponsor (**within 5 business days** if the FRP is mailed), the case manager contacts the potential sponsor to:

   - Confirm receipt of the FRP.
   - Provide the potential sponsor with help in filling out the packet, if needed.

- Remind the potential sponsor and adult household members to immediately return the *Authorization for Release of Information* and a copy of the sponsor's and adult household members' government issued ID, as applicable.

- Assist the potential sponsor in scheduling an appointment for the Legal Orientation Program for Custodians (see 2.2.5 Legal Orientation Program for Custodians). **NOTE:** The case manager should capture the information about the appointment in either the *UAC Assessment* or *UAC Case Review*, depending on when the information was obtained. 📄 ✉️🗂️

4. **Within the same 1 business day timeframe,** the case manager creates a new sponsor record or updates an existing record in the UAC Portal. Prior to creating a new record, the case manager searches for the potential sponsor's name and address in the UAC Portal to check if the sponsor has previously applied for sponsorship or if the address was previously used for sponsorship (see Quick Glance: How to Check for Previous Sponsorship). A UAC may have multiple potential sponsors, but the case manager must designate one sponsor as the "primary sponsor" in the Sponsor Information section of the UAC Portal.

**NOTES:**
- Creating the sponsor record initiates the sponsor assessment process used to evaluate a sponsor. Unless there are unexpected delays (such as a wait list for fingerprint checks or a case that requires the completion of a home study), ORR expects the care provider to complete the evaluation process within these timeframes:
  - o **Cat 1 and Cat 2A:** 10 calendar days
  - o **Cat 2B:** 14 calendar days
  - o **Cat 3:** 21 calendar days 🗓️

- At this time the UAC Portal does not distinguish between Cat 2A or Cat 2B. Case managers should continue to designate these sponsors as Cat 2 for the dropdown designations but specify in the *Release Request* and other narrative documents whether the Cat 2 sponsor is designated a 2A or 2B.

## Quick Glance: How to Check for Previous Sponsorship

To check if a sponsor or adult household member had previously sponsored another UAC, go to the Case Management section of the UAC Portal, select the UAC by clicking on the A # of the UAC. On the UAC Basic Information page click on "Go to Assessments" and the subsection "Sponsor Information" which includes a "Sponsor" button.

Clicking on the sponsor button takes you to a screen where you can search for a sponsor
prior to adding a new sponsor to the system.



Fill in the name of the potential sponsor or the potential sponsor's adult household members
and then click "Search Sponsor" at the bottom. You can also do partial name searches, such
as "Mig" for Miguel under First Name.  (You should try various combinations of the name,
including upper and lower case versions).

When you click on "search sponsor," a table will populate that shows all matches. Look at all
the records and see if the sponsor already exists in the UAC Portal.



In the table, the "P" counter (P = Potential) tracks the number of UAC that the sponsor has
attempted to sponsor as a "potential sponsor." The "A" counter (A = Actual) tracks the
number of UAC who were "actually sponsored" by that sponsor. Clicking on the number
below P or A will show you the UAC associated with the sponsor. (Note: In the sponsor
information section, the number is to the right of the P and A counter. Screen shot below.)



If you need to flag a sponsor, select the sponsor and in the sponsor information section,
check "flag" and in the note specify the reason. (See the Quick Glance: When to Flag a
Sponsor, Other Adult, or Address.)

Exhibit 3
Page 149

GOV-00207389



Sponsor Information

| | | | |
|---|---|---|---|
| First Name: | FakeSponsorMiguel2 | Last Name: | FakeSponsorMiguel2 |
| SSN: | 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 | A #: | 121212121 |
| Date of Birth: | 11/05/2001 | Country of Birth: | Afghanistan |
| Does anyone in the Household have a Serious, Contagious Disease? (If yes, please explain in Comments) : | Yes No | Flag: | P Counter: 3 A Counter: 2 |
| Do any of the Occupants Have Criminal Convictions or Charges, Other Than Minor Traffic Violations? (If yes, please explain in Comments): | Yes No | Flag Note: | test test test |

Conduct a separate search of the address provided.

Search Sponsor

>| Add New Sponsor

| | | | |
|---|---|---|---|
| First Name: | | Last Name: | |
| SSN: | | A #: | |
| Address: | Main Street | City: | Birmingham |
| State: | Alabama | Country of Birth: | --Select a country-- |

>| Search Sponsor >| Cancel

| SSN/A# | First Name | Last Name | Address | City | State | P Counter | A Counter | Flag | |
|---|---|---|---|---|---|---|---|---|---|
| | Fake | Fake | 10 Main Street | Birmingham | AL | | | No | Assign Sponsor |

The address flag is located directly under the section on the sponsor name under the "Sponsor Information" section described above:

| | | | |
|---|---|---|---|
| Sponsor's Relationship to UAC: | Uncle | Background Check | Sponsor Category Type: Category 2 |
| Address: | 336 New hapshire ln | City: | St Johns |
| State: | Alabama | Zip Code: | 056235 (If Zip Code is unknown, then enter "00000".) |
| Home Phone: | | Work Phone: | |
| Email: | | Fax: | |
| Address Flag: | | | |
| Flag Address Note: | | | |
| Comments: | | | |
| Primary Sponsor?: | Yes No | | |

This search may also reveal matches with previous sponsorship. (Try various combinations of streets (i.e., "St., St, street, and Street"), city, and state.) Flag an address by clicking on the "address flag" and adding a corresponding note.

Search Sponsor

>| Add New Sp

| | | | |
|---|---|---|---|
| First Name: | | Last Name: | fake |
| SSN: | | A #: | |
| Address: | | City: | |
| State: | -- Select State -- | Country of Birth: | -- Select a country -- |

>| Search Sponsor >| Cancel

| SSN/A# | First Name | Last Name | Address | City | State | P Counter | A Counter | Flag | |
|---|---|---|---|---|---|---|---|---|---|
| 121212121 | FakeSponsorMiguel2 | FakeSponsorMiguel | niaz test new address | fakecity | KY | 3 | 2 | Yes | Assign Sponsor |
| | fake maria | fake juan | 3333 | dc | DC | 1 | 0 | N | test test test Sponsor |
| 111111111 | fake niaz | sponsor fake | 123 | egeg | AR | 2 | 1 | Yes | Assign Sponsor |
| 111111111 | fake niaz | sponsor fake | 123 | egeg | AR | 1 | 0 | Yes | Assign Sponsor |
| 123123123 | fake niaz | sponsor fake | 123 | 123 | AK | 1 | 0 | Yes | Assign Sponsor |

Exhibit 3
Page 150

GOV-00207390

**NOTE:** This search should be repeated as new information is obtained from the potential sponsor, including addresses, names of other adults in the household or adult identified in the sponsor care plan (i.e., the individual who is identified to take over the care of the UAC if the sponsor is deported, leaves the United States, or is unable to care for the UAC for another reason).

This search should also include searches of different combinations of the last names/surnames with the first names, and should include all versions of the name that the potential sponsor uses in the FRA and on their identification documents. Search all versions of the addresses that the potential sponsor uses in the FRA, identification documents, and in the proof of address documents. See **Section 2.2.3** for more information about additional checks.

5. If the potential sponsor already exists in the UAC Portal, the case manager clicks "assign sponsor" on the screen that appears following "search sponsor" and continues to search the record as new information is collected regarding sponsor's address, household members, criminal background check, etc. If the sponsor has a new address, the case manager should update the address but should not create a new sponsor entry. See <u>Fig. 2.2</u>.

## Fig. 2.2 Assign Sponsor



| SSN/FIN | First Name | Last Name | Address | City | State | Counter | Counter | |
|---|---|---|---|---|---|---|---|---|
| 111111111 | Fake | Fake | 1 Main Street | New York | NY | 2 | | No  Assign Sponsor |
| | Fake | Fake | 111 Main Street | Birmingham | AL | 1 | | No  Assign Sponsor |
| 222222222 | Fake 2 | Fake 2 | 2 Main Street | New York | NY | 2 | | No  Assign Sponsor |

6. If the sponsor is not in the system, the case manager creates a new sponsor record in the UAC Portal for each potential sponsor to whom an FRP is sent and enters the required sponsor information. See <u>Figure 2.3</u>. The case manager continues to update the record as new information is received. If the case manager identities fraud or other identified safety concerns at this time, he/she should elevate this to the FFS to determine if the person should be added to the UAC Portal in the event that the person attempts to sponsor a UAC in the future.

Exhibit 3
Page 151

GOV-00207391

## Figure 2.3 Add New Sponsor



7.  If a check for previous sponsorship indicates that a potential sponsor has previously sponsored or previously attempted to sponsor a UAC in ORR care, the case manager assesses the sponsor's compliance:

    -   For successful sponsorships, by obtaining proof that the previously sponsored UAC continues to reside with the sponsor (if still a minor), was registered in school as a minor or in accordance with state laws, attended his/her immigration court hearings (if scheduled), and the resources that the sponsor used to meet the UAC's needs.

    -   In all cases, by obtaining the following records from the care provider where the previously sponsored UAC was in care: the sponsor's *FRA* and supporting documentation; the *Sponsor Assessment*; background checks; Home Study report, if applicable; *Release Request;* and safety and well-being follow-up call notes (or related information) and whether the case was referred for post release services (PRS) and the name of the PRS provider. See the Quick Glance: Requesting Records from Other Care Provider Programs.

    The case manager reviews the information provided and compares the information to the current case noting any discrepancies or red flags and then documents the findings in the *UAC Case Review.*

## Quick Glance: Requesting Records from Other Care Provider Programs

**REQUESTING CARE PROVIDER**

**For Operational Care Provider Programs**

If a care provider program needs to obtain documents from another care provider program in order to review records related to a previous sponsorship or attempted sponsorship, the case manager emails a separate password protected document to the care provider from which the records are being requested that include the UAC name and A#, the name of the care provider program from which the records are being requested, the reason for the request, and the documents that are requested. Care providers may use the template located in Appendix 2.15 Prior Sponsorship Information Request – contact your assigned CFS for a Word version.

The subject line should read: [Name of Care Provider storing the file] File Request: [UAC's last 4 A#] for [Name of Care Provider requesting the file].

Care providers may also contact other programs directly with questions regarding a UAC's case.

**For Closed Care Provider Programs**

The case manager follows the directions above for requesting documents from another care provider, but instead of emailing the request to the program the case manager emails the request to the CFS, who forwards the request to the designated point of contact listed in the most recent version of the *Closed Program Case Files* list.

**RESPONDING CARE PROVIDER**

Within 24 hours of receiving the request, the care provider from which the documents were requested replies to all parties on the email with the requested records attached.

# 2.2.3 The Family Reunification Application

📖 See Section 2.2.6 of the UAC Policy Guide

## PROCEDURES

1. The sponsor returns the *FRA*, preferably **within 7 calendar days of receipt.** The case manager updates the Case Status page with the date the *FRA* was received and uploads the *FRA* into the UAC Portal under the UAC Documents tab. See Fig. 2.1. 🖨️📋 ✉️

Exhibit 3
Page 153

GOV-00207393

2. The case manager updates the sponsor record in the UAC Portal and conducts a new search for the name and addresses of adult household members and the adult caregiver identified in the sponsor care plan to determine if they have previously applied for sponsorship or if the address has been used previously by other sponsors (see <u>Quick Glance: How to Check for Previous Sponsorship</u>). 🖰

3. If the search for previous sponsorship and previous use of the address reveals additional information, the case manager documents the information in the Comments section of the Sponsor Information section of the UAC Portal. If the additional information is of concern and requires elevation to the case coordinator and FFS, the case manager "flags" the applicable sponsor name or address and notes the reason in the "notes" box. See the <u>Quick Glance: When to Flag a Sponsor, Other Adult, or Address</u>. The case manager elevates any findings from any of the searches to the case coordinator for relevance to the current case. 🖰⊠

## Quick Glance: When to Flag a Sponsor, Other Adult, or Address

ORR staff and care providers use the "flag" button to elevate issues of concern that arise during the sponsor assessment process.  These include (but may not be limited to):

- When a review of previous sponsorship indicates lack of compliance with the terms of release (such as failure to follow up with immigration proceedings, failure to follow through with PRS, UAC school registration, etc.).

- Finding that UAC in previous sponsorship is still a minor but no longer resides with the sponsor.

- Finding that the sponsor or other adults have used the same address in sponsorship applications numerous times.

- Finding that the sponsor, household members, or adult caregiver identified in the sponsor care plan meet the criteria for "may deny" release decisions.

- Child Abuse, child sexual abuse or neglect, trafficking, or domestic violence reported to have been perpetrated by the sponsor after the release of a UAC.

The presence of a "flag" indicates that further input from the case coordinator and FFS is needed. If a "flag" already exists in the record, the case manager or case coordinator or FFS documents the new information in the "comments" box near the bottom of the screen:



[First Name, Last Name, and Gender are required fields to save Household Information.]

**NOTE:** The UAC Portal does not allow flagging of adult household members or adult caregivers. In those cases, flag the sponsor and include the reason in the comments box.

4. **Upon receipt of a copy of the potential sponsor's, adult household members', and /or adult caregiver's photo ID(s)**, the case manager:

- Performs a criminal public records check and sex offender registry check for the potential sponsor, adult household members, and adult caregiver identified in a sponsor care plan. The case manager saves a copy and/or screenshot of these checks in the UAC Documents tab of the UAC's Assessment file in the UAC Portal. Any findings from the checks are elevated to the case coordinator and FFS. See 2.5 Sponsorship Assessment Background Check Investigations for more information.

- Initiates the fingerprinting process and assists the sponsor and household members with scheduling a fingerprint appointment, if applicable (see Appendix 2.14 Fingerprinting Requirements)

- Assists the potential sponsor in scheduling an appointment for the Legal Orientation Program for Custodians. (see 2.2.5 Legal Orientation Program for Custodians) .

# 2.2.4 Required Documents for Submission with the Application for Release

📖 See Section 2.2.4 of the UAC Policy Guide

## PROCEDURES

**Proof of Sponsor Identity**

1. Potential sponsor submits original versions or legible copies of government issued ID as evidence verifying his/her identify (see Quick Glance: List of Acceptable Proof of Identity Documents). 📱⊠/📖

2. The case manager offers guidance to potential sponsor on how to obtain the documentation, emphasizing to the sponsor that the proof of identity document will be required prior to release of the child. However, it is ultimately the potential sponsor's responsibility to find and submit documentation. ⊠/☎

3. The case manager reviews the proof of identity provided and uploads the documents to the UAC Documents tab in the UAC Portal copying all pages of the document, front and back sides. **NOTE:** The sponsor must be able to provide this ID at the time of the UAC's release; staff conducting the transfer of custody will verify the ID. 📱👆

## Quick Glance: List of Acceptable Proof of Identity Documents

All potential sponsors may present either one selection from List A or two or more documents from List B. If a potential sponsor presents selections from List A or B, at least one selection must contain a legible photograph. (Expired documents (for up to two years) are acceptable for the purpose of establishing identity.) Sponsors must submit a least one document that contains a photograph for adult household members and adults identified in a sponsor care plan.

| List A | List B |
|---|---|
| U.S. Passport or U.S. Passport Card | U.S. Certificate of Naturalization |
| Permanent Resident Card or Alien Registration Receipt Card (Form I-551) | U.S. Military Identification Card |
| Foreign Passport that contains a photograph | Birth Certificate |
| Employment Authorization Document that contains a photograph (Form I-766) | Marriage Certificate |
| U.S. Driver's License or Identification Card | Court order for name change |
| | Foreign national identification card |
| | Consular passport renewal receipt that contains a photograph |
| | Mexican consular identification card |
| | Foreign driver's license that contains a photograph |
| | Foreign voter registration card that contains a photograph |
| | Canadian border crossing card that contains a photograph |

Exhibit 3
Page 156

GOV-00207396

| | Mexican border crossing card that contains a photograph with valid Form I-94 |
|---|---|
| | Refugee travel document that contains a photograph |
| | Other similar documents |

4. The case manager confirms the identity of all potential sponsors and documents the accurate name and date of birth in the Proof of Identity section of the *Sponsor Assessment*. See 2.4.1 Assessment Criteria for more information about the *Sponsor Assessment*. The case manager updates the Case Status page with the date the Proof of Identity was completed. See Fig. 2.1. 🖻 ⌐

5. The case manager or the CFS verifies the UAC's and/or potential sponsor's birth certificates or other foreign government issued documents with the Consulate under the following circumstances:

   - The authenticity of the original birth certificate or other foreign government issued document is questionable or the document appears to be fraudulent or altered.

   - The birth certificate provided is for another individual.

   **NOTE:** The FFS supervisor determines the point of contact for each program. If the case manager is responsible, he/she will copy the FFS on the email to the Consulate. If the CFS is responsible, then the case manager will ask the CFS, copying the FFS, to contact the Consulate. 🖻 ✉

**Proof of Identity of Other Adults**

All potential sponsors must submit documentation verifying the identity of other adults in the sponsor's household or adult identified in a sponsor care plan.

1. The potential sponsor submits at least one identification document that contains a photograph for each adult household member and adult identified in a sponsor care plan. See the Quick Glance: List of Acceptable Proof of Identity Documents. The document may be an original or a legible copy. 🖻 ✉

   **NOTE:** If a member of the potential sponsor's household or an adult caregiver is a former UAC who was in ORR care, the potential sponsor may submit an original version or legible copy of the ORR *Verification of Release* form issued to the UAC at time of release. The document may only be used to verify the identity of adults under the age of 21, and only if the form contains a photograph. ORR will not accept a *Verification of*

Exhibit 3
Page 157

GOV-00207397

*Release* as proof of identity if it does not contain a photograph, and/or is for anyone 21 and older. 📱📖

2. The case manager reviews proof of identity for the adult household members and adult identified in the sponsor care plan and uploads the documents to the UAC Portal (front and back of the ID). The case manager confirms that the document is acceptable in the Proof of Identity section of the *Sponsor Assessment*. The case manager updates the Case Status page with the date the Proof of Identity review was completed. See **Fig. 2.1**. 📱🖐

**Proof of Immigration Status or U.S. Citizenship**

1. The potential sponsor submits documentation to prove their immigration status or U.S. citizenship, if applicable (see Quick Glance: List of Acceptable Proof of Immigration or U.S. Citizenship Documents). ✉️/📑

2. The case manager reviews the document(s) provided to ensure that the document(s) are sufficient to prove immigration status or U.S. citizenship and that the name, date of birth, and other identifying information in the document(s) match the identifying information contained in other documents provided by the potential sponsor and adult caregiver (e.g., birth certificate, proof of identity, address, or relationship documents, etc.).

3. If the potential sponsor provided their alien number, the case manager also calls the Executive Office for Immigration Review (EOIR) immigration court information hotline at **800-898-7180** to obtain information regarding the potential sponsor's and/or adult caregiver's immigration case. An alien number is required in order to access immigration information from the EOIR hotline.

4. The case manager uploads the document(s) to the UAC Documents section of the UAC Portal and enters the potential sponsor's immigration status in the "Legal Status" field found in the Sponsor Information section of the UAC Portal. 🖐

5. The case manager documents the potential sponsor's immigration status, what documents the potential sponsor submitted, and any information obtained from the EOIR hotline in the "Proof of Immigration Status or U.S. Citizenship" section of the *Sponsor Assessment* and the *Release Request*. 📱

6. The case manager determines if a sponsor care plan is required (see 2.7.6 Issues Related to Recommendations and Decisions).
   **NOTE:** If the potential sponsor is unable to provide documentation to prove immigration status or U.S. citizenship or is only able to provide expired documents, the potential sponsor is consider to be without status and a sponsor care plan is required.

Exhibit 3
Page 158

GOV-00207398

## Quick Glance: List of Acceptable Proof of Immigration or U.S. Citizenship Documents

Potential sponsors and adult caregivers must provide as many forms of evidence needed to verify their immigration status or U.S. citizenship. Acceptable documents include original versions or legible copies of the documents listed below.

| Proof of Immigration Status | Proof of U.S. Citizenship |
|---|---|
| • Valid visa<br>• Legal permanent resident card (green card)<br>• Notice to Appear<br>• Other Federal government issued documentation providing immigration status information | • U.S. passport<br>• U.S. birth certificate<br>• Naturalization papers<br>• Court order<br>• Other government issued document sufficient to prove U.S. citizenship |

### Proof of Address

1. The case manager ensures the proof of address submitted matches the address on the sponsor's application as well as the address that was previously searched in the UAC Portal. The case manager uploads the proof of address document provided by the potential sponsor to the UAC Portal, enters the type of document and the address on the document into the Proof of Address section of the *Sponsor Assessment,* and enters the address in the sponsor information section of the UAC Portal. See the Quick Glance: Acceptable Proof of Address Documents. 📋↺

## Quick Glance: Acceptable Proof of Address Documents

**All potential sponsors must submit at least one form of documentation verifying their current address. Acceptable forms of documentation include original versions or legible copies of:**

- A current lease or mortgage statement dated within the last two months before submission of the *Family Reunification Application* (*FRA*);

- A utility bill, addressed in the sponsor's name and dated within the last two months before submission of the *FRA*;

- A bank statement dated within the last two months before submission of the *FRA*;

- A payroll check stub issued by an employer, dated within the last two months before submission of the *FRA*;

Exhibit 3
Page 159

GOV-00207399

- A piece of mail from a county, state, or federal agency (with the exception of ORR) with the sponsor's name and residential address and dated within the last two months before submission of the *FRA*;

- A notarized letter from a landlord on the business stationary of the real property owner confirming the sponsor's address; and

- Other similar documents reliably indicating that the sponsor resides at the claimed address, dated within the last two months before submission of the *FRA*.

**If the potential sponsor is unable to submit any of the above documents, the case manager may send a letter to the potential sponsor's address following these instructions.**

Address a plain white envelope to the sponsor's address and include as the return address the case manager's name and care provider's address (do not include the care provider facility name).

Create a unique code word that is used only once and refer to the code word in the letter to the sponsor with instructions for the potential sponsor to call the case manager upon receipt of the letter and refer to the code word as evidence that the letter was delivered to the individual and address (include a copy of the letter in UAC's case file and upload a copy to the UAC Portal).

**NOTE**: The case manager may not accept a photograph or video submitted by the sponsor as proof of address.

2. The case manager verifies that the address provided by the sponsor is a residential address by:

- Entering the address into SmartyStreets.com to verify that the address is classified as residential under the RDI (Residential Delivery Indicator) category and that the address is not classified as P (post office box) under the Record Type category.

- Entering the address into Google to verify that it is a valid address in Google Maps and in Google Earth (check the camera view to ensure it is pointing at the address and not across the street or adjacent).

3. The case manager documents in the Proof of Address section of the *Sponsor Assessment* that verification of residential address has been completed through SmartyStreets, Google Maps, Google Earth, and UAC Portal search and updates the UAC Portal as needed with the results. The case manager saves the results of the search in a file that is uploaded in the UAC Documents tab. The case manager updates the Case Status page with the date the Proof of Address was completed. See Fig. 2.1. 📄🖐

4. If the sponsor does not submit an acceptable proof of address document or if the case manager cannot confirm that the address provided is a residential address or that the

Exhibit 3
Page 160

GOV-00207400

sponsor lives at that address, the case manager documents this in the Proof of Address section of the *Sponsor Assessment* and elevates the issue to the case coordinator and the FFS. 📑✉

**Proof of Sponsor-Child Relationship**

1. The case manager gathers proof of relationship between the UAC and a potential sponsor to determine the sponsor category and to determine the existence of a prior relationship between the UAC and the potential sponsor and/or the UAC's family with the potential sponsor (If a UAC does not have a birth certificate, the case manager elevates the case to the FFS). 📑

2. The case manager uploads the documents provided by the sponsor to the UAC Portal. The case manager documents all information in the Proof of Relationship section of the *Sponsor Assessment* along with confirmation that the case manager was able to verify the sponsor-UAC relationship. See <u>Quick Glance: Acceptable Proof of Relationship Documents</u>. The case manager updates the Case Status page with the date the Proof of Relationship was completed. See <u>Fig. 2.1.</u> 📑🖐

| Quick Glance: Acceptable Proof of Relationship Documents |
|---|

Potential sponsors must provide as many forms of evidence needed to verify the relationship claimed. Acceptable documents include original versions or legible copies of the list below (not an exhaustive list).

| Relationship Type | Acceptable Document |
|---|---|
| *Parent (Cat 1)* | • Birth certificates<br>• Court records<br>• Parent's valid/non-expired or expired (up to two years) government issued photo ID<br><br>**NOTE:** The FFS may approve a DNA test for a potential sponsor who says he/she is a biological parent (Cat 1). |
| *Step-parent (who has legally adopted UAC) (Cat 1)* | • Birth certificates<br>• Parent's valid/non-expired or expired government issued photo ID<br>• Step-parent's valid/non-expired or expired government issued photo ID<br>• Marriage certificate<br>• Court order documents confirming adoption or legal guardianship has been established |
| *Legal guardian (Cat 1)* | • Court order documents confirming adoption or legal guardianship<br>• Birth certificates |

Exhibit 3
Page 161

GOV-00207401

| | |
|---|---|
| | • Legal guardian's valid/ non-expired or expired government issued photo ID<br>• Guardianship records<br>• Death certificates<br>• Hospital records |
| *Other related sponsors (Cat 2A/2B or 3)* | • Birth certificates<br>• Trail of familial birth and/or death certificates showing that the UAC and the sponsor are related (this includes the UAC's birth certificate)<br>• Marriage certificates<br>• Hospital records<br>• Court records<br>• Guardianship records<br>• Baptismal certificate<br>• Primary Caregiver Affidavit (certain 2As only) |
| *Unrelated sponsors (Cat 3)*<br><br>Cat 3 unrelated potential sponsors who are unable to provide verifiable documentation of a family relationship with the UAC must submit evidence that reliably and sufficiently demonstrates a bona fide social relationship with the child and/or the child's family that existed before the UAC migrated to the United States.<br><br>The care provider should gather as many documents as needed to prove prior relationship. This table includes acceptable documents for corroboration purposes (not an exhaustive list). | • Birth certificates<br>• Birth certificate or Record Not Found (government issued document)<br>• Government issued photo ID (verify in person or via video conference that you are speaking to the correct individual)<br>• Marriage certificate<br>• UAC parent's death certificate or death certificates of other family members<br>• Baptismal certificate<br>• Hospital records<br>• School records/diploma<br>• Remittance receipts evidencing financial support of UAC<br>• For proof of recent travel or living in the UAC's family in country of origin: passport including passport stamps, land deeds of sponsor and minor's family, government issued ration cards<br>• Photographs or social media posts (labeled)<br>• Family session(s) case notes (clinician and case manager observations of interactions/conversations between UAC and potential sponsor)<br>• Consulate verification of birth certificate<br>• Assessment based on interviews with UAC, UAC's family, UAC's caregiver in home country, and sponsor's neighbors (make all efforts to conduct in-person or via video conference); explanation of potential sponsor's |

| | relationship with the UAC in the *Family Reunification Application*, confirmed by UAC's family. |
|---|---|

## Unrelated Category 3 Sponsors Who Have No Preexisting Relationship with the UAC or the UAC's Family

In cases where it has been established that there is no available relative sponsor, or sponsor with a bona fide social relationship to the unaccompanied alien child (UAC) that existed before the child migrated to the United States, an individual with no bona fide social relationship may be considered as a sponsor for release after the case manager:

1. Notifies and staffs the case with the case coordinator and the Federal Field Specialist (FFS) at or before, but no later than, the next weekly staffing meeting.

2. Completes the *Sponsor Assessment* in its entirety, obtains the potential sponsor's ID, and completes the public records check and sex offender registry check prior to step 3.

3. Facilitates regular contact between the potential sponsor, the UAC, and the UAC's family while the UAC is in ORR care, if appropriate.

4. Regularly monitors the contact between the potential sponsor, the UAC, and the UAC's family.

5. Coordinates with the FFS, case coordinator, and the child's clinician (in cases where clinical concerns are identified with the child) to determine if it is in the child's best interest to pursue release to the potential sponsor, while taking the lack of preexisting relationship and the UAC's and/or UAC's family's wishes into account when making a recommendation for release. In addition, the sponsor's motivation for sponsorship should be determined to be in good faith, absent of any potential trafficking concerns, and sponsor demonstrates the ability to provide adequate care for the UAC.

6. Documents this information in the Proof of Relationship section of the *Sponsor Assessment*, the *UAC Case Review*, and the *Release Request*.

## Evidence of being a Primary Caregiver (Category 2A sponsors who are non-grandparents/non-adult siblings only)

If the potential sponsor has any guardianship documents or other documents from a state or foreign government they must submit this with the Family Reunification Application. ORR also accepts sworn affidavits from potential sponsors in addition to corroborating interviews the Case Manager has with the child, potential sponsor, and other family members to establish whether the potential sponsor was a primary giver to the child.

1. The case manager contacts the potential Category 2A close adult relative sponsor (who is not a grandparent or adult sibling) and requests:

   a. Temporary guardianship documents (please note full legal guardianship or adoption would mean the sponsor is a Category 1) from a state or foreign government.

      **or**

   b. The case manager requests that the sponsor submit a sworn affidavit attesting that they were the child's primary caregiver. The affidavit includes the following information:

      • That the child lived in the same home with the sponsor.

      • The amount of time the child lived with the sponsor.

      • The amount of time the child lived with the sponsor, for which the sponsor claims they were the child's primary caregiver.

      • Where the child's biological parents lived at the time.

      • Why the child's biological parents were unable to provide primary care for the child.

      • Whether the child's biological parents asked/consented to the sponsor being the primary caregiver.

      • Who took the following responsibilities for the child, while the child lived with the sponsor:
        o Bathed the child
        o Fed the child
        o Made health care arrangements
        o Disciplined the child
        o Financially supported the child
        o Supervised the child
        o Consoled/Comforted the child

      • Attestation that the sponsor did not sexually or physically abuse the child, or through their negligence allow others to sexually or physically abuse the child

      • Attestation that the sponsor did not abandon or mistreat the child.

2. For purposes of 2(b) above the case manager conducts interviews with the child, the sponsor, and other family members to corroborate the information in the affidavit.

3. The case manager identifies Category 2A sponsors in the *Release Request* and in the *Sponsor Assessment*.

**Missing Documentation or Incomplete FRA**

1. If the potential sponsor does not complete the FRA or submit the required proof of identity, immigration status/U.S. citizenship, address, relationship, etc., the case manager consults with the case coordinator and the FFS. **NOTE:** In these cases, the case manager does **NOT** submit a *Release Request.* ☎/✉

2. The case manager enters the sponsor's name and information in the sponsor information section of the UAC Portal for the UAC and in the sponsor information section of the *UAC Case Review*, documenting the reason why the sponsor was pursued or attempted to sponsor a UAC and decided to withdraw or ORR decided to cancel pursuit of the sponsor.✓🖑

3. The case manager flags potential sponsors who disclose information that demonstrate a safety concern or potential risk to the child in the UAC Portal (See Quick Glance: How to Check for Previous Sponsorship and Quick Glance: When to Flag a Sponsor, Other Adult, or Address).✓🖑

**Reporting Fraudulent Information and/or Documents**

If a sponsor, household member, or adult caregiver provides fraudulent information during the sponsor assessment process for the purpose of obtaining sponsorship of a UAC, the care provider must report the incident to the U.S. Department of Health and Human Services Office of the Inspector General (UAC@oig.hhs.gov) and U.S. Immigration and Customs Enforcement Homeland Security Investigations tip line: USICE HSI Tip Line (HSITipLine.Collaboration@ice.dhs.gov). ✉

**State Issued Identity Documents**

If the case manager has evidence that a potential sponsor has submitted altered or fraudulent state-issued Identity documents (such as an ID card or driver's license), the case manager should send an email to the reporting agency for the state and copy the FFS (email addresses for the state agencies are included in Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States). All reports should include any information about the potential sponsor or the circumstances surrounding the fraud.

The U.S. Department of Health and Human Services Office of the Inspector General must be copied in the correspondence with the state agency (UAC@oig.hhs.gov). If the suspected fraud is in a state not identified as a key state in Appendix 2.3, the case manager should contact the assigned FFS and case coordinator. ☎/✉

GOV-00207405

## 2.2.5 Legal Orientation Program for Custodians

📖 See Section 2.2.5 of the UAC Policy Guide

### PROCEDURES

1. The case manager schedules the sponsor for an LOPC presentation using the LOPC's online scheduling system:

   Website: https://catholiccharitiesny.org/log-in
   In the email account section insert: **LOPC@archny.org**
   Password: **Orientation1** (case sensitive)

   **NOTE**: If the online scheduling system is unavailable, the case manager calls the LOPC Call Center for UAC at **(888) 996-3848** and arranges for the Call Center to set up an appointment for the sponsor. ☎

2. The case manager enters the sponsor's postal code or city and state in the online scheduling system to find the LOPC provider closest to the sponsor's home address. If a sponsor lives more than 60 miles from an LOPC provider or cannot travel to a provider, the case manager contacts the LOPC Call Center.

   **NOTE**: Special instructions for case managers in the Harlingen/Brownsville area: If a sponsor lives more than 60 miles from a LOPC provider in the Harlingen/Brownsville area and is unable to travel to the provider, the case manager may schedule the sponsor for an online LOPC appointment. ☎

3. The case manager provides the sponsor confirmation of the appointment time, date and location by:

   - Printing out a copy of the online confirmation and mailing the confirmation to the sponsor; or

   - Entering a valid email address for the sponsor into the appropriate field of the online scheduling system, and the system will automatically generate and send an email confirmation to the sponsor;

   - If the LOPC appointment is scheduled to take place **within 48 hours of scheduling**, calling the sponsor and documenting the phone call in the UAC case file. 🕐📱📋✉☎

**Exhibit 3**
**Page 166**

GOV-00207406

## 2.2.6 Additional Questions and Answers about This Topic

📖 See Section 2.2.6 of the UAC Policy Guide

## 2.3 Key Participants in the Release Process

📖 See Section 2.3 of the UAC Policy Guide

## 2.3.1 ORR Federal Field Specialists (FFS)

📖 See Section 2.3.1 of the UAC Policy Guide

## 2.3.2 Case Managers

📖 See Section 2.3.2 of the UAC Policy Guide

## 2.3.3 Case Coordinators

📖 See Section 2.3.3 of the UAC Policy Guide

## 2.3.4 Child Advocates

📖 See Section 2.3.4 of the UAC Policy Guide

### PROCEDURES

1. The care provider or other referring party completes Section 1 of the *Child Advocate Recommendation & Appointment Form* and sends it as an attachment to the local child advocate program by email. 🗐 ✉

2. The child advocate program makes a recommendation for an individual Child Advocate based upon availability and the individual needs of the UAC. The child advocate program completes Section 2 of the *Child Advocate Recommendation & Appointment Form*. The child advocate program emails the form as an attachment to ORR/DUCO HQ at

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)    33 | Page

Exhibit 3
Page 167
GOV-00207407

DucsConsent@acf.hhs.gov and includes the appropriate points of contact (program staff, FFS, referring party). 📄 ✉️

3. The designated ORR staff makes an appointment determination. The ORR staff documents the appointment determination by completing Section 3 of the *Child Advocate Recommendation & Appointment Form* and emails the form as a password protected attachment to the child advocate program, the care provider, and the designated ORR/FFS. The case manager uploads this appointment form to the UAC Portal as documentation. 📄 ✉️⤴️

4. The child advocate program notifies the UAC's legal service provider or attorney of record by sending the *Child Advocate Recommendotion & Appointment Form.* 📄 ✉️

Appendix 2.4 is a screenshot of the *Child Advocate Recommendation & Appointment Form.* The fillable template can be found in the UAC Portal under Forms, Checklists and Other Tools – Administration.

## 2.4 Sponsor Assessment Criteria and Home Studies

📖 See Section 2.4 of the UAC Policy Guide

### OVERVIEW

The care provider evaluates each potential sponsor's ability to provide for the physical and mental well-being of the UAC. ORR determines if additional screening procedures or services, such as a home study, are necessary to ensure the welfare of the child.

ORR may in its discretion require potential sponsors to submit additional documentation before making a release decision.

| Key Players | Responsibilities |
|---|---|
| Case manager or clinician | Responsible for interviewing potential sponsor, completing the *Sponsor Assessment*, and collecting other information to evaluate the sponsor. |
| Case coordinator | Consulted by case manager to determine if a home study is required. |
| FFS | Responsible for approving all home studies. Responsible for initiating home studies based on the results of an FBI background check. Steps in to determine if home study is needed when there is disagreement between case manager and case coordinator. |
| ORR Home Study Project Officers | Provide program oversight for referrals and work with providers who conduct home studies. |

Exhibit 3
Page 168

GOV-00207408

| Home Study/Post Release Services Provider | Conducts home study. |
|---|---|

| Related Forms/Instruments | Used By |
|---|---|
| *Sponsor Assessment Interviewing Guidance* | Case manager or clinician |
| *The Sponsor Assessment* form | Case manager or clinician |
| *The Home Study Assessment Report* | Home study provider |
| *Release Request* | Case manager, case coordinator, FFS |

## 2.4.1 Assessment Criteria

📖 See Section 2.4.1 of the UAC Policy Guide

### PROCEDURES

1. **Within five calendar days of identifying a potential sponsor,** the case manager or the clinician interviews the potential sponsor based on the *Sponsor Assessment Interviewing Guidance* (see Quick Glance: Tips for Interviewing Sponsors), completes the fillable *Sponsor Assessment* form and uploads the form to the UAC Portal. The file should be saved as **[Sponsor name]_Sponsor_Assessment_[date]**. Once the *Sponsor Assessment* form is uploaded, the case manager cannot make any changes or additions to the form.

   The case manager or the clinician who conducted the interview and completed the *Sponsor Assessment* must certify that the potential sponsor was interviewed based on the *Interviewing Guidance* and must (electronically) sign and enter his/her name, title, and the date as certification in the *Sponsor Assessment* form. The case manager updates the Case Status page with the date the *Sponsor Assessment* was completed.

   If the form is incomplete **within the 5 days due to missing information or documentation**, the case manager may save a copy for updating and upload the form later (see Step 3 below). But the case manager must complete the following sections in the initial *Sponsor Assessment* form within the **5 day timeframe** and upload it in the UAC Portal:
   - Sponsor Basic Information (**NOTE:** ORR no longer collects Social Security Numbers (SSN) of sponsors.)
   - Sponsor Cultural Information
   - Family Relationships (including family tree, if applicable)
   - Household Composition
   - Previous Sponsorship
   - Proof of Identity

Exhibit 3
Page 169

GOV-00207409

- Criminal History
- UAC Journey and Apprehension
- Human Trafficking
- Fraud ⏰☎️📋🔗

📄 **Appendix 2.5** is the *Sponsor Assessment Interviewing Guidance.*

📄 **Appendix 2.6** is the *Sponsor Assessment* form.

---

### Quick Glance: Tips for Interviewing Sponsors

- Ask all questions as stated in the guidance. But if the sponsor answers more than one question in a single response, don't ask the pre-answered question again.

- Phrase all questions in a culturally appropriate manner to engage the potential sponsor.

- Be conversational and don't just read word for word.

- Ask follow up questions if needed.

- Don't feel the need to ask interview questions in order. Allow the interview to flow naturally.

- Follow up with more research and interviews with the UAC and others to address any discrepancies or inconsistencies identified in the interview.

The following is required for UAC with distant relative Cat 3 sponsor and optional for all other sponsor categories:

Ask the potential sponsor to create a family tree (genogram) when answering questions related to proof of relationship and family relationships. Upload the family tree to the UAC's case file. (Go to http://www.genopro.com/genogram/template for a template and help in creating a family tree.)

2. If the sponsor self-discloses criminal history in the interview (or if background checks reveal criminal history or a safety risk for the potential sponsor, adult household members, and adult identified in the sponsor care plan), the case manager elevates to the case coordinator and the FFS to determine if ORR should obtain court records, police reports, proof of rehabilitation, and letters of explanation of the incident.

    If these records are no longer available because they have been expunged, the case manager should elevate to the FFS for next steps. 📋✉️

    **Figure 2.4** indicates where to upload the *Sponsor Assessment* in the UAC Portal. 📋🔗

---

Exhibit 3
Page 170

GOV-00207410

## Figure 2.4 Where to Upload the Sponsor Assessment in the UAC Portal

| Assessments | |
|---|---|
| Initial Intakes Assessment | |
| Assessment for Risk | >| Add New |
| UAC Assessment | |
| Sponsor Information | >| Sponsor |
| ISP | >| Add New |
| UAC Case Review | >| Add New |
| Historical SIR | |
| Historical Medical Record | >| Add New |
| Education | >| Add New |
| UAC Long Term Foster Care Travel Request | >| Add New |
| UAC Document(s) | >| Add New |
| Trigger Reports | |

3. If the case manager needs to update the *Sponsor Assessment* after **the 5 day timeframe,** he/she should create a new word document of the form using the following naming convention: **[Sponsor name]_Updated_Sponsor_Assessment_[date]**. The form may be updated as necessary but must be completed and uploaded to the UAC Portal **before the case manager submits the release recommendation to the case coordinator**. The number of *Sponsor Assessments* submitted per sponsor **may not** exceed two copies. Each copy must clearly indicate whether it is the initial assessment or the final version. 📷📄🗑

4. If the case manager determines during the sponsor assessment process that a sponsor or address should be flagged, the case manager should click on the editing icon highlighted in **Fig. 2.5** which opens the "Sponsor Information" tab under UAC Assessments to enter demographic, background check information, or other reason a sponsor, other adult, or address is flagged. 📷📄🗑

## Fig. 2.5 Updating or Adding a Flag to the UAC Portal

Click on the edit icon highlighted below.



5. If a case manager is conducting concurrent planning, he/she should include this information in the *UAC Assessment* and *UAC Case Review* and indicate which sponsor is designated as the "Current Sponsor" since only one individual may hold this designation

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)   37 | Page

Exhibit 3
Page 171
GOV-00207411

at any time in the *UAC Case Review* (simply click the "yes" or "no" button in the sponsor information page for each sponsor). 🖱

6. The case manager must complete the sponsor assessment process before:

- The case manager submits a home study referral.
- The case manager submits a release recommendation.

## 2.4.2 Home Study Requirement

📖 See Section 2.4.2 of the UAC Policy Guide

## PROCEDURES

1. The case manager continuously consults with the case coordinator using information collected during the UAC's initial assessment and throughout his/her stay in conjunction with the sponsor assessment process to determine if a home study of the potential sponsor is required. Home studies are **only** requested for potentially viable sponsors. ✉📑

2. **Within 2 business days** of the completion of the FRA and after consultation with the case coordinator, the case manager submits the *Release Request* with a recommendation to perform a home study and summarizes the following in the comments section (Fig. 2.6 shows a partial snapshot of the *Release Request*):

- *Initial Intakes Assessment*
- *UAC Assessment*
- FRA
- Safety Plan, if applicable
- Background check results
- Relevant SIRs
- *UAC Case Review*
- *ISP*
- For category 2A/B and 3 cases, information about the biological parents' or legal guardians' consent for release and/or provision of *Letter of Designation* for Care of a Minor
- Any additional assessments, including psychological assessments, and additional documentation on the UAC related to the release assessment (e.g., juvenile delinquency records)
- For discretionary home studies:

GOV-00207412

o   What additional information will a discretionary home study be able to provide, other than what has already been gathered via the sponsor assessment process, to mitigate concerns and create a safer release scenario for the UAC

o   What questions need to be answered by the discretionary home study

## Fig. 2.6 Case Manager Section of the Release Request



3.   If there is nonconcurrence between the case manager's recommendation and the case coordinator's recommendation on regarding the performance of a home study, the case coordinator **immediately** elevates the case to the FFS who will make a determination on whether or not to conduct a home study in the *Release Request* in the UAC Portal within **1 business day** (see **2.7 Recommendations and Decisions on Release** below for more information about the *Release Request*).

4.   The case manager goes to the referral tab in the UAC Portal (See **Fig. 2.6 Case Manager Section of the Release Request** and **Fig. 2.7 Home Study Case Referral Section**) to complete the home study referral.

## Fig. 2.7 Home Study Case Referral Section

**(A)**

**(B)**



ORR prioritizes Home Study and PRS TVPRA cases. Discretionary home study referrals
may not be posted in the UAC Portal until the FFS approves the home study. See Quick
Glance: FFS Approval for Discretionary Home Studies. 📖✉️

If a case is no longer in need of a home study or PRS, the case manager goes to the
Home Study Case Referral tab in the Discharge Section and chooses the option to
"Cancel Case Referral" for the specific case. The case manager also needs to update the
*Release Request.*

The case manager ensures that all documentation is saved in the UAC Portal. The
information includes:
- *Initial Intakes Assessment*
- *UAC Assessment*
- Sponsor Assessment
- FRP

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)  40 | Page

Exhibit 3
Page 174

GOV-00207414

- Safety Plan, if applicable
- Background check results
- Relevant SIRs (**NOTE**: Because HS/PRS providers cannot access SIRs, the case manager must send email copies to the provider.)
- *UAC Case Review*
- *ISP*
- For category 2A/B and 3 cases, information about the biological parents' or legal guardians' consent for release and/or provision of *Letter of Designation for Care of a Minor*
- Any additional assessments, including psychological assessments, medical records, and additional documentation on the UAC related to the release assessment (e.g., juvenile delinquency records)⊘▤↻⊠

## Quick Glance: FFS Approval for Discretionary Home Studies

In order to recommend a discretionary homes study, the case manager and case coordinator must have a reasonable expectation that results of the home study process (i.e., home visit, face-to-face interviews with the potential sponsor and household members) will provide additional information, other than what has already been gathered via the sponsor assessment process, which will mitigate concerns. Care providers should only request home studies for potentially viable sponsors. Concerns related to moving violations and DUI/DWIs (unless there are multiple charges in a relatively short period) unconnected to a well-founded child welfare concern are not to be used as the underlying basis for a discretionary home study.

The home study must focus on potential sponsor's ability to appropriately care for the UAC and the sponsor's ability to ensure the safety and well-being of the UAC.

The case coordinator elevates the recommendation to perform a discretionary home study to the FFS after justification for the home study recommendation has been documented in the Release Request as "Conduct Home Study—Discretionary."

If the FFS or case coordinator requests additional information, the case manager and/or case coordinator must respond within **1 business day**. If needed, the FFS may staff the case with the FFS supervisor.

The FFS sends their determination in writing within **1 business day** to the case coordinator and case manager.

5. When a case has a home study referral, the navigation tab on the UAC Portal includes a HS and PRS tab which is used by the HS/PRS provider to manage cases. See Figure 2.8 HS and PRS Tab.

Exhibit 3
Page 175

GOV-00207415

The home study provider selects cases from the National HS/PRS Referral List by clicking the accept button in the UAC Portal's Referral Tab. (This moves the referral from the "waiting" list to the accepting provider's "active" list until the home study is completed.)

**Figure 2.8 HS and PRS Tab**



**NOTE**: Each Friday, the home study provider must submit their active HS/PRS case list to DCS_HSPRS@acf.hhs.gov. The home study provider reviews all cases for duplication of services on the National Network Call on Tuesdays at 2:00 p.m. EST. If duplication is found, the providers reach a consensus to determine which provider will continue with the case.

6. The home study provider contacts the care provider to confirm acceptance and request missing (if any) referral documents (including SIRs).

7. The portal automatically removes UAC who turn 18 years of age while on the referral wait list because the UAC are no longer eligible for services.

8. **Within 2 business days of the home study provider's referral acceptance**, the home study provider reviews the *Release Request* and staffs the case with the case manager, as needed.

9. **Within 10 business days of acceptance**, the HS/PRS provider uses the *Home Study Assessment Report* template to report findings of the home study and upload the template into the UAC Portal including a recommendation to the case manager.

10. The HS/PRS provider must submit any requests to extend the home study due date **beyond 10 business days** or to cancel a home study to the FFS for approval via email. Possible criteria for extension can include:
    - Additional household members moved in after the referral.
    - Concerns about additional household members who were not present at the home visit.
    - Inability for the provider to schedule a home visit due to the sponsor's schedule.

Exhibit 3
Page 176

GOV-00207416

11. If the case manager learns new information after the home study provider has submitted their final report, the FFS has the authority to request a home study addendum to the original home study provider to gather more information for an informed release decision. Care providers must go through their FFS to request a home study addendum. The FFS may request an addendum any time after the final home study report has been submitted, but in some circumstances, it may be necessary to request a new home study if the sponsor's circumstances have significantly changed or if the home study was completed over a year prior to the current date.

Upon request by the FFS, the home study provider has **10 business days** to submit the addendum to the UAC Portal. The provider may only request one addendum per home study without FFS supervisor approval. ⊕⊠⌁ð

**NOTE:** Home studies are only **valid for one year.** ⊕

## 2.4.3 Additional Questions and Answers on This Topic

📖 See Section 2.4.3 of the UAC Policy Guide

## 2.5 Sponsorship Assessment Background Check Investigations

📖 See Section 2.5 of the UAC Policy Guide

### OVERVIEW

ORR requires background checks for all potential sponsors, adult members of the household, and adult caregivers identified in sponsor care plans (adult caregivers). This section describes the required background checks based on sponsor category and other factors, the responsible parties for completing and reporting the results, and notifications and other follow up steps to ensure safety. All potential sponsors, adult household members, and adult caregivers must undergo a public records background check of criminal history and sex offender registry databases. Sponsors in Categories 2B and 3, as well as some Category 1 and 2A sponsors, adult household members, and adult caregivers require fingerprint background checks that are processed through Federal partners.

| Key Players | Responsibilities |
|---|---|
| FFS | Reviews all fingerprint checks and provides guidance as to whether to continue assessment of a particular sponsor in light of check results. |

Exhibit 3
Page 177

GOV-00207417

| Case coordinator | Makes recommendations regarding safety planning and child welfare recommendations. |
|---|---|
| Case manager | Conducts Public Records Checks (an Internet Criminal Public Records Check and Sex Offender Registry Check) for all potential sponsors, adult household members, and adult caregivers (individuals identified by undocumented sponsors who will take over the care of the UAC if the sponsor is deported or leaves the United States). Conducts State Criminal History Repository Checks and/or Local Police Checks, as needed. |
| HHS Program Support Center, Division of Children's Services (PSC/DCS) | Conducts all Non-Public Records Checks – FBI National Criminal History Check (Fingerprint Check), FBI Biometric Services Unit (FBI/BSU) Civil Name Check, and Child Abuse and Neglect (CA/N) Check – on behalf of ORR. |

| Related Forms/Instruments | Used By |
|---|---|
| *Authorization for Release of Information* | Case manager, lead case manager, PSC/DCS |
| *Sponsor Check Coversheet* | Case manager, lead case manager, PSC/DCS |
| *CA/N Check Coversheet* | Case manager, lead case manager, PSC/DCS |
| *CA/N Check State Instructions* | Case manager, lead case manager, PSC/DCS |
| CA/N Check State Forms | Case manager, lead case manager, PSC/DCS |

## 2.5.1 Background Check Requirements

📖 See Section 2.5.1 of the UAC Policy Guide

### PROCEDURES

1. The case manager notifies all potential sponsors that an Internet Criminal Public Records Check and Sex Offender Registry Check will be performed for all sponsors, adult household members, and adult caregivers. The case manager also notifies the potential sponsor of any additional background checks that are required by ORR (see Quick Glance: Overview of Background Checks Requirements). The case manager advises adults to be truthful about criminal backgrounds before results are obtained as a lack of

information or explanation from the potential sponsor may affect the release decision. ☎/✉ 📖

**NOTE:** Adult caregivers must be entered in the Sponsor Information section of the UAC Portal. The adult caregiver should be entered under Household Information because the UAC Portal does not have a separate area to enter adult caregivers. The case manager goes to the Sponsor Information section and 1) adds a note in the Comments box indicating the category and noting whether the individual is also a household member and 2) records the name under the Household Information section. See <u>Fig. 2.9 Creating a Record for the Adult Identified in the Sponsor Care Plan</u>.

### Fig. 2.9 Creating a Record for the Adult Identified in the Sponsor Care Plan



### Quick Glance: Overview of Background Check Requirements

| Type of Background Check | Purpose | Persons Checked | When Performed |
|---|---|---|---|
| Public Records Check | Identifies arrests or convictions of sponsors, adult household members, or others. If a check reveals a criminal record or safety issue, it will be used to evaluate the sponsor's ability to provide for a child's physical and mental well-being. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In all cases. |
| Sex Offender Registry Check, conducted through the U.S. | Identifies sponsors and others that have been adjudicated as sex | Potential Sponsors in Categories 1-3. | In all cases. |

Exhibit 3
Page 179

GOV-00207419

| Department of Justice National Sex Offender Public Website | offenders through a national search and, if available, a local public registry search. | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | |
|---|---|---|---|
| FBI National Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member (as applicable) has a criminal history, has a profile in DHS IDENT, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Category 1 and 2A. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study. |
| | | Potential Sponsors in Categories 2B and 3. | In all cases. |
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study. |

GOV-00207420

| Child Abuse and Neglect (CA/N) Check, obtained on a state by state basis as no national CA/N check repository exists | Checks all localities in which the sponsor or household member has resided in the past 5 years. | Potential Sponsors in Categories 1-3. | In cases that require a home study, and cases where a special concern is identified. |
|---|---|---|---|
| | | Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | In any case where a sponsor is required to undergo a CA/N check. |
| State Criminal History Repository Check and/or Local Police Check | Assists in locating police or arrest records, or other criminal offense details, as needed. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult caregivers identified in a sponsor care plan. | Used on a case-by-case basis when there is an unresolved criminal arrest or issue that is still in process. |

2. The potential sponsor should advise the case manager immediately if he or she has any record of criminal charges, sexual offenses, or child abuse/neglect charges and if they are aware of any record of criminal charges, sexual offenses, or child abuse/neglect charges for their adult household members and/or adult caregiver. ☎/✉

3. Based on the information provided, the case manager determines what types of background checks are required for the potential sponsor, adult household members, and adult caregiver (See Quick Glance: Overview of Background Checks Requirements). The case manager should include the case coordinator and FFS in cases that involve criminal history self-disclosures. 📖✉

   NOTE: If a potential sponsor, adult household member, or adult caregiver refuses to complete a required background check, the case manager elevates the case to the FFS who will staff the case with the FFS supervisor to determine whether to deny the release based on current ORR policy and any other relevant factors. FFS notifies the case manager of the final decision. ✉

## Public Records Checks (Internet Criminal Public Records Check and Sex Offender Registry Check)

1. The case manager conducts an **Internet Criminal Public Records Check** for all potential sponsors, adult household members, and adult caregivers.

2. The case manager conducts a **national and local/state Sex Offender Registry Check** through the U.S. Department of Justice NSOPW and local/state Public Registry Sites for all potential sponsors, adult household members, and adult caregiver.

   The check must include the following:

   - Name checks (potential sponsor, adult household members, adult caregiver)

   - Address searches (using the current address that has been verified) within a one mile radius for all names – potential sponsor, household members and adult caregiver). This address search is completed to determine if there are sex offenders at the address or in close proximity to the address (**NOTE:** Some state Sex Offender Registries do not include an address check. In these cases, document that the attempt was made and what check was accomplished.) The case manager should take the results into consideration in assessing the safety plan and safety of the release.

     Local/state Sex Offender Registry Checks for all states in which the potential sponsor, adult household members, and adult caregiver resided over their entire adult lifetime. ✐📎

3. The case manager uploads the results of the public records checks (screenshots, descriptions, dates, etc.) in the UAC Documents section in the UAC Portal and completes the case manager section of the Background Check Table. The case manager staffs the case with the case coordinator in the event there is a "hit" in the search. (See Quick Glance: How to Document Background Checks in UAC Portal). ✐📎✉

   **NOTE:** Public records check results are valid for 90 days from the date results are received, as documented in the Date Results Received column of the Background Check Table in the UAC Portal. If the UAC has not been approved for release before the public records check results expire, the case manager must reprocess the checks, update the Background Check Table in the UAC Portal, and upload the results into the UAC Documents section of the UAC Portal.

   **NOTE:** ORR does not require a signed *Authorization for Release of Information* from an individual unless they are submitting fingerprints. However, many public records vendors have terms of use agreements that do require an authorization. In those

Exhibit 3
Page 182

GOV-00207422

instances, an *Authorization for Release of Information* should be obtained from the adult household member or adult caregiver.

## Quick Glance: How to Document Background Checks in UAC Portal

Go to the Background Check table in the Sponsor Information section of the UAC Portal; for both the sponsor and the household member(s) check off which background checks were requested.

For non-public records checks, do not enter data into the Date Requested, Results Received, and Results columns – PSC/DCS enters this information.

NOTE: If you do not check off which background checks were requested under the Check Requested column for non-public records checks, PSC/DCS will be unable to record the results of those checks.



## Non-Public Records Checks (Performed by PSC/DCS)

**NOTE:** PSC/DCS conducts regular in depth trainings related to non-public records checks and fingerprinting instructions. ORR headquarters staff work with CFS, FFS, and POs to notify

Exhibit 3
Page 183

GOV-00207423

programs about upcoming trainings. To request training from PSC/DCS, contact the operations
specialist listed on the PSC/DCS Contact List.

**FBI NATIONAL CRIMINAL HISTORY CHECK (FINGERPRINT CHECK)**

1. The case manager obtains an *Authorization for Release of Information (ARI)* and a copy
   of a government issued photo ID (front and back) for all relevant parties (see Quick
   Glance: List of Acceptable Proof of Identity Documents).

   **NOTE:** If needed, some ORR digital fingerprint sites offer in-person assistance
   completing the *FRP* and/or *ARI* (see Appendix 2.14 Fingerprinting Requirements). 

2. The case manager assists the potential sponsor, adult household member, and/or adult
   caregiver in scheduling a fingerprint appointment at an ORR digital fingerprint site to
   occur **within 3 business days of receiving the signed *ARI* and government issued photo
   ID** (see Appendix 2.14 Fingerprinting Requirements).

3. The case manager completes the Check Requested field in the Background Check table
   in the Sponsor Information section of the UAC Portal (see Quick Glance: How to
   Document Background Checks in UAC Portal).

4. The case manager fully completes the *Sponsor Check Coversheet*. If any of the following
   conditions apply the case manager documents the condition in the comments section of
   the *Sponsor Check Coversheet*:

   - If the case manager is requesting the fingerprint check be expedited, the reason
     must be noted (see Quick Glance: Expediting Fingerprint Check Results for full
     requirements).

   - If the case manager believes the individual previously completed a fingerprint
     check, that must be noted and the approximate date should be included.

   - If the individual is the sponsor or household member for more than one UAC, the
     name and A# of those UAC must be included.

   Appendix 2.7 is the *Sponsor Check Coversheet*.

## Quick Glance: Expediting Fingerprint Check Results

Case managers may request expedited processing for Fingerprint Checks under the following
circumstances:
   - Imminent age out (UAC aging out in 60 days or less)
   - Legal issue

Exhibit 3
Page 184

GOV-00207424

- UAC medical issue
- Cat 1 or 2A cases that require fingerprint check results before the UAC may be
  released (see Quick Glance: Release of UAC Prior to Receiving Fingerprint Check
  Results)

To request expedited processing and allow PSC/DCS to appropriately prioritize expedited
cases, the case manager must include "AGE OUT [age out date]:" on the subject line of the
email for any age out cases and "RESULTS REQUIRED:" for any cases that require results
before the UAC can be released. For all other cases, the case manager must include
"REQUEST TO EXPEDITE:" on the subject line of the email (see Email Template: Fingerprint
Check Requests). The case manager must notate the following in the Comments section of
the *Sponsor Check Coversheet*:

- Basis for the request
- Date by which results are needed
- If there are other items pending (e.g., home study) that would not allow for
  immediate release of the UAC once fingerprint check results have been received

PSC/DCS will prioritize all cases for which expedited processing is requested that fall under
the circumstances listed above, but cannot guarantee results will be available by the
requested date.

If the case manager requests expedited processing for any circumstance not listed above,
PSC/DCS will elevate the request to ORR HQ for approval.

5. The case manager reviews the *Sponsor Check Coversheet*, *ARI*, government issued photo
   ID, and paper fingerprint cards (if applicable) for accuracy, completeness, and legibility
   (see Appendix 2.9 Background Check Submission Requirements). 📄

6. If paper fingerprint cards are used, the case manager uses an express mail service (e.g.,
   UPS, FedEx) to send the following to PSC/DCS for **next morning** delivery:

   - Two original fingerprint cards (ORR does not collect Social Security Numbers and
     this field should be blacked out – see Appendix 2.13 Fingerprint Card)
   - Copy of the *Sponsor Check Coversheet*
   - Copy of the *Authorization for Release of Information* (pages 1-5)
   - Copy of the subject's government issued photo ID 📄 📑

7. The case manager formally requests the Fingerprint Check using the email template
   below. ✉️📄

---

### ☒ Email Template: Fingerprint Check Requests

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | SponsorCheck.os@hhs.gov |
| **Subject:** | Fingerprint Check Request for [sponsor's initials] |

- If requesting expedited results for an age out, add "AGE OUT [age out date]:"
- If the case requires results before the UAC may be released, add "RESULTS REQUIRED:"
- If requesting expedited results for any other reason, add "REQUEST TO EXPEDITE:"

**Attachments:**
- *Sponsor Check Coversheet*
- *Authorization for Release of Information* (pages 1-5)
- Copy of government issued photo ID (If individual is claiming U.S. citizenship, a U.S. Birth Certificate, Certificate of Naturalization or Certificate of Citizenship, or U.S. Passport is preferable)

**NOTE:** All of the documents listed above as attachments must be submitted to PSC/DCS together. The documents must be merged into one PDF.

Case managers must password protect any Personally Identifiable Information (PII) that is sent to PSC/DCS. The *Sponsor Check Cover Sheet, ARI*, and photo ID must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

---

8. The case manager determines if the UAC is eligible for release prior to receipt of background check results (see <u>Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results</u>).

    **NOTE:** The Case Manager should staff eligible cases with the FFS, or notify the FFS of an eligible case via email, as soon as possible. The Case Manager and FFS document in the *Release Request* that the case is being processed without waiting for fingerprint results because the case falls under the "December 2018 Operational Directive."

---

### Quick Glance: Release of UAC Prior to Receiving Fingerprint Check Results

A UAC may be recommended and approved for release without obtaining the Fingerprint Check <u>results</u> if:

- The sponsor is 2B

---

Exhibit 3
Page 186

GOV-00207426

- A public records check <u>did not</u> reveal possible disqualifying factors under Section 2.7.4;
- There is <u>no</u> documented risk to the safety of the unaccompanied alien child and the child is <u>not</u> considered especially vulnerable;
- The case is <u>not</u> being referred for a home study;
- All family reunification application, assessments, documentation, and other required background check results (with the exception of CA/N Check results – see <u>Quick Glance: Release of UAC Prior to Receiving CA/N Check Results</u>) needed to approve a safe release have been received and reviewed by the case manager;
- The Fingerprint Check was requested from PSC/DCS following ORR procedures, including submission of the *Sponsor Check Coversheet*, *Authorization for Release of Information*, photo ID, and fingerprints (digital or paper); and
- Receipt of the Fingerprint Check results is the only step preventing a release recommendation.

**Derogatory Information Received After Release**
In any instance where a UAC is released and possible derogatory information is later discovered after Fingerprint Check results are received, the FFS makes a case-by-case determination on what follow up is required, if any. State CPS or law enforcement may be notified if there is determined to be any immediate danger to a child's welfare. The FFS may also attempt to refer the case for post-release services.

**Unclassifiable Fingerprints**
In any case where a UAC is released and the fingerprints results are unclassifiable, the case manager must make every attempt to have the individual submit a new set of fingerprints, either at an ORR digital fingerprint site or via paper fingerprint cards. The case manager must inform PSC/DCS **within two weeks of receiving the fingerprint results** whether the individual will submit new fingerprints. If the case manager informs PSC/DCS that an individual refuses to submit new fingerprints or for any case in which PSC/DCS has not received new fingerprints **within 30 days of sending fingerprint results**, PSC/DCS will rerun the original set of fingerprints. If the original set of fingerprints remain unclassifiable (this is the most probable outcome), PSC/DCS will run an FBI/BSU Civil Name Check. ✪

**Incomplete Fingerprint Cards**
In any case where a UAC is released and an incomplete set of paper fingerprint cards was sent to PSC/DCS, the case manager must provide the missing information **within one week of receiving the request** from PSC/DCS. Fingerprint Checks cannot be run using incomplete fingerprint cards. If PSC/DCS does not receive the missing information **within 30 days of their initial request**, PSC/DCS will cancel the entire Fingerprint Check request and inform the case manage and assigned FFS via email. ✪

GOV-00207427

9. PSC/DCS reviews incoming Fingerprint Check requests for accuracy, completeness, and legibility. If any required documents are missing or the request does not comply with the requirements noted in Appendix 2.9 Background Check Submission Requirements, PSC/DCS rejects the submission and informs the case manager that the request must be resubmitted. PSC/DCS processes background checks in the order in which they are received and any requests that need to be resubmitted fall to the bottom of the queue.

10. PSC/DCS completes the Date Requested, Date Results Received, and Results fields in the Background Check table in the Sponsor Information section of the UAC Portal when the Fingerprint Check is complete and, if applicable, uploads criminal history reports to ORR Connect (SharePoint website).

11. PSC/DCS emails a spreadsheet containing Fingerprint Check results to the designated ORR staff once a day. The spreadsheet includes the following:

- FBI National Criminal Check result (i.e., whether the individual **appears clear,** the case was **referred to the assigned FFS,** or the individual had **unclassifiable fingerprints**)
- Confirmation results were entered into the UAC Portal
- Whether  criminal history record was uploaded into ORR Connect

**NOTE:** For expedited cases, PSC/DCS emails results directly to the case manager and copies the FFS instead of including the results in the spreadsheet (See Quick Glance: Expediting Fingerprint Check Results).

12. The designated ORR staff emails the Fingerprint Check results received from PSC/DCS individually to each care provider facility and copies the assigned FFS.

13. The care provider distributes Fingerprint Check results received from the designed ORR staff to the assigned case managers.

**NOTES:**
- If the prints are unclassifiable, the case manager assists the individual in scheduling a fingerprint appointment at an ORR digital fingerprint site so that a second set of prints may be obtained, even if the UAC has already been released. If the individual is unable to travel to an ORR digital fingerprint site, then paper fingerprint cards may be used (see Appendix 2.14 Fingerprinting Requirements).

- ORR federal staff and PSC/DCS do not release criminal history records produced by FBI National Criminal History Checks to ORR grantees, ORR contractors, third party reviewers, outside organizations, or individuals. ORR does not confirm or deny the existence of the records and does not share the content of a record verbally or in writing.

- Fingerprint Check results are valid for 270 days from the date results are received, which is documented in the Date Results Received column of the Background Check Table in the UAC Portal. If the UAC is not approved for release before fingerprint check results expire, the sponsor, adult household member, and/or adult caregiver must be re-fingerprinted and a new fingerprint check must be requested from PSC/DCS. Please see Appendix 2.9 Background Check Submission Requirements for additional information on requesting background checks for individuals who have previously completed a background check.

## Quick Glance: Requesting Status Updates for Background Check Results

**FINGERPRINT CHECKS**

Case managers may email PSC/DCS at SponsorCheck.os@hhs.gov to request a status update on their Fingerprint Check request. However, unless the case has been expedited, the case manager must wait at least seven business days from the time they emailed a complete Fingerprint Check request to PSC/DCS (or from the time when PSC/DCS received paper fingerprint cards if digital fingerprints were not taken) before asking for a status update.

During periods of influx or other circumstances where there is a delay in processing Fingerprint Checks, PSC/DCS may direct case managers to wait for a longer period of time before requesting a status update. In order to avoid exacerbating situations in which there are processing delays, case managers must follow any such guidance provided by PSC/DCS.

To request a status update, case manager must enter "Status Update Request for [sponsor/household member's initials]" in the subject line of the email and include the following information in a separate password-protected document:

- For All Requests: sponsor/household member name and date of birth, UAC name and A#
- For Digital Fingerprints: ORR digital fingerprint site name, date fingerprinted
- For Paper Fingerprints: courier name and tracking number, shipping date

**CA/N CHECKS**

Lead case managers (or designated care provider staff member) may email PSC/DCS at CANchecks.os@hhs.gov to request a status update on CA/N Check results after they receive notification the CA/N check request was accepted by PSC/DCS. However, the lead case manager must wait until after the state's processing time before asking for a status update (e.g., if the state's processing time is 45 days, the lead case manager must wait 45 days before requesting a status update). State processing times are found in the *CA/N Check State Form Instructions*.

To request a status update, the lead case manager (or designated care provider staff member) must enter "Status Update Request for [sponsor/household member's initials]" in

Exhibit 3
Page 189

GOV-00207429

the subject line of the email and include the following information in a separate password-protected document:

- Sponsor/household member name and date of birth
- UAC name and A#
- State name(s) for which the update is being requested

## FBI/BSU CIVIL NAME CHECK

PSC/DCS automatically runs an FBI/BSU Civil Name Check if fingerprints remain unclassifiable after a second attempt.

1. PSC/DCS completes the Date Requested, Date Results Received, and Results fields in the Background Check table in the Sponsor Information section of the UAC Portal when the Fingerprint Check is complete and, if applicable, uploads criminal history reports to ORR Connect (SharePoint website). 🖑

2. PSC/DCS enters FBI/BSU Civil Name Check results in the Fingerprint Check results spreadsheet that is emailed to the designated ORR staff once a day. PSC/DCS indicates in the notes column of the spreadsheet that an FBI/BSU Civil Name Check was run because fingerprints were unclassifiable after a second attempt.

   **NOTE:** For expedited cases, PSC/DCS sends results directly to the case manager and copies the FFS instead of including the results in the spreadsheet (See Quick Glance: Expediting Fingerprint Check Results). PSC/DCS indicates in the body of the email that an FBI/BSU Civil Name Check was run because fingerprints were unclassifiable after a second attempt. 📄 ✉

3. The designated ORR staff emails the FBI/BSU Civil Name Check results received from PSC/DCS individually to each care provider facility and copies the assigned FFS. ✉

4. The care provider distributes FBI/BSU Civil Name Check results received from the designed ORR staff to the relevant case managers. ✉

5. For cases in which the individual appears clear, the assigned FFS elevates the case to the FFS supervisor for approval to use FBI/BSU Civil Name Check results in lieu of fingerprint check results.

6. If criminal history records are uploaded to ORR Connect, the assigned FFS follows procedures in the section below Case Referrals to FFS: Case Manager and FFS Roles and Responsibilities.

   **NOTE:** FBI/BSU Civil Name Check results are valid for 270 days from the date results are received, which is documented in the Date Results Received column of the Background

**Exhibit 3**
**Page 190**

GOV-00207430

Check Table in the UAC Portal. If the UAC is not been approved for release before fingerprint check results expire, the sponsor, adult household member, and/or adult caregiver must be re-fingerprinted and a new fingerprint check must be requested from PSC/DCS. Please see Appendix 2.9 Background Check Submission Requirements for additional information on requesting background checks for individuals who have previously completed a background check.

## CHILD ABUSE AND NEGLECT (CA/N) CHECK

PSC/DCS conducts CA/N checks in coordination with individual state and/or local child abuse and neglect central registries. The length of time it takes to receive results varies by state.

Whenever possible, the CA/N check request must be submitted to PSC/DCS concurrently with the request for the FBI National Criminal History Check.

1. Immediately upon knowing that a CA/N check is required, the case manager completes the Check Requested field in the Background Check table in the Sponsor Information section of the UAC Portal (see Quick Glance: How to Document Background Checks in UAC Portal).

2. The case manager completes the *CA/N Check Coversheet*. The following must be noted in the comments section:
   - If the case manager believes the individual previously completed a CA/N Check, that must be noted and the approximate date should be included.
   - If the individual is the sponsor or household member for more than one UAC, the name and A# of those UAC must be included.

   Appendix 2.8 is the *CA/N Check Coversheet.*

3. The case manager assists the sponsor, adult household members, and adult caregiver (if applicable) in completing the CA/N Check state form(s) for each state in which the individual has resided in the past five years (see Quick Glance: CA/N Check State Forms).

### Quick Glance: CA/N Check State Forms

**DO NOT SUBMIT ANY STATE FORMS DIRECTLY TO A STATE OR LOCAL ENTITY. All CA/N checks must be requested through PSC/DCS.**

The case manager must ensure that they use the current version(s) of the relevant state form(s) and adhere to the instructions provided in the current version of the *CA/N Check State Instructions* document (found on the UAC Portal homepage). Note that some states:

- Only provide results directly to the subject of the check. In this case, the case manager, assists the potential sponsor, household member, and/or adult caregiver in requesting the CA/N check and obtains results directly from the subject of the request and emails them to PSC/DCS.

- Do not provide results at all. In these cases, the CA/N check must be requested from PSC/DCS.

- Require the state form to be completed online. When PSC/DCS observes these states listed in the five year address history section of the *ARI*, they will automatically start the process and contact the case manager with further instructions.

Do not change any fields in the form(s) that PSC has already completed.

Photographs of state forms are not acceptable. Any forms emailed to PSC must be scanned (mobile scanning apps that upload forms into pdf are acceptable). If the sponsor and/or household member does not have access to a scanner they may mail the form to their case manager.

4. The case manager reviews the *CA/N Check Coversheet*, *ARI*, government issued photo ID, and state form(s) for accuracy, completeness, and legibility (see Appendix 2.9 Background Check Submission Requirements and Quick Glance: CA/N Check State Forms).

5. The case manager submits the *CA/N Check Coversheet*, *ARI*, government issued photo ID, and state form(s) to the lead case manager (or designated care provider staff member) for a secondary quality control check.

6. The lead case manager (or designated care provider staff member) reviews each CA/N check request to ensure that the request:

  - Contains all of the following documents:

    o *CA/N Check Coversheet*

    o *Authorization for Release of Information*

    o Copy of government issued photo ID

    o State form(s) for each state in which the individual resided in the past five years

  - Complies with the requirements in Appendix 2.9 Background Check Submission Requirements and Quick Glance: CA/N Check State Forms.

7. No more than once a day, the lead case manager (or designated care provider staff member) formally requests CA/N checks for all cases they have reviewed using the email template below. ✉ 📋

---

### ✉ Email Template: CA/N Check Requests

| | |
|---|---|
| **From:** | Lead Case Manager (or designated care provider staff member) |
| **To:** | CANchecks.os@hhs.gov |
| **Cc:** | Case Manager(s) |
| **Subject:** | CA/N Check Requests for [date] from [care provider name] |

**Body:**
- Additional information required by the state(s), if applicable
- If original document(s) were mailed to PSC, include:
  - Date mailed
  - Courier name (e.g., UPS, FedEx)
  - Tracking number

**Attachments:**   For each request:
- *CA/N Check Coversheet*
- *Authorization for Release of Information*
- Copy of government issued photo ID
- State form(s) for each state in which the individual resided in the past five years (includes copies any forms for which the original mailed to PSC)
- Additional documents required by the state(s), if applicable

**NOTE:** All of the documents listed as attachments above must be submitted to PSC/DCS together. The documents must be merged into a single PDF by individual subject. Documents may be further consolidated if desired (i.e., one PDF may contain documents for more than one individual).

Lead case managers (or designated care provider staff members) must password protect any Personally Identifiable Information (PII) that is sent to PSC/DCS. The *CA/N Check Cover Sheet, ARI,* photo ID, and CA/N check state form(s) must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately.  A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

---

8. Once the CA/N check request is submitted to PSC/DCS by the lead case manager (or designated care provider staff member), the CA/N check is considered initiated and the case manager may proceed with the release request process (see Quick Glance: Release of UAC Prior to Receiving CA/N Check Results).

9. PSC/DCS reviews incoming CA/N check requests for accuracy, completeness, and legibility and notifies the lead case manager (or designated care provider staff

Exhibit 3
Page 193

GOV-00207433

members) whether their request has been accepted or rejected. Rejected requests must be resubmitted following PSC/DCS instructions.

10. PSC/DCS submits the CA/N check requests to the applicable states.

    **NOTE:** If any required documents are missing or the request does not comply with the requirements noted in Appendix 2.9 Background Check Submission Requirements and Quick Glance: CA/N Check State Forms, PSC/DCS will reject the submission and inform the lead case manager that the request must be resubmitted. PSC/DCS processes background checks in the order in which they are received and any requests that need to be resubmitted will fall to the bottom of the queue.

11. PSC/DCS notifies the lead case manager (or designated care provider staff member) when the CA/N check is complete and enters the notification date and results in the Background Check table in the Sponsor Information section of the UAC Portal. The email notification to the lead case manager (or designated care provider staff member) includes one of the following statements:

    - No record — The individual does not have a history of child abuse and neglect

    - Unsubstantiated allegations — The individual has been involved with CPS, but the allegations were not necessarily confirmed (the investigation history is not always saved in States Central Registries)

    - Record/substantiated allegations — The sponsor has a history of child abuse or neglect (if a record is available to PSC/DCS, it will be provided) 🔖

12. The lead case manager (or designated care provider staff member) forwards the CA/N Check results to the case manager.

## Quick Glance: Release of UAC Prior to Receiving CA/N Check Results

Release of a UAC may be recommended and approved without obtaining the CA/N Check results if:

- All family reunification application, assessments, documentation, other required background check results, and home study results (if applicable) needed to approve a safe release have been received and reviewed by the case manager;

- Receipt of the CA/N Check results is the only item delaying release; and

- The CA/N Check was NOT requested because a special concern was identified.

**If the CA/N Check was requested due to a special concern, the UAC must not be released until the CA/N Check results are received.**

GOV-00207434

Note that even if the case manager anticipates that CA/N check results will not be received until after the UAC is released, they must still request the CA/N check from PSC/DCS prior to submission of the *Release Request*. This includes submission of all required paperwork (*CA/N Check Coversheet, Authorization for Release of Information,* Photo ID, and state form(s). Sending an email without paperwork is not sufficient.

### PROCESSING SUBSTANTIATED CA/N CHECK RESULTS AFTER A UAC HAS BEEN RELEASED

If a UAC is released prior to receipt of the CA/N check results and substantiated allegations are found, the case manager **immediately** emails the FFS who approved the *Release Request* based on the email template below. 🕐 ✉

### ✉ Email Template: Substantiated CA/N Check Results After UAC Release

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | FFS who approved *Release Request* for UAC |
| **Cc:** | PRS Provider, if applicable |
| **Subject:** | Released UAC with CA/N Findings [last four digits of the A#] |
| **Attachments:** | In a separate password protected document(s): |

- UAC name and A#
- UAC discharge date
- City/state where UAC resides
- Care provider name UAC released from
- Sponsor category
- Word document of the original PSC/DCS CA/N check result email

The FFS who approved the *Release Request* for the UAC reviews the finding and consults with his/her FFS supervisor to determine next steps and notifications, including those to law enforcement or to CPS. 📖📞

## Cases that Appear Clear (Not Referred to the FFS)

1. If a subject of a background check by PSC/DCS has disclosed a criminal history that is a safety concern for the UAC, but PSC/DCS did not refer the case to the FFS, the case manager elevates the case to the FFS for further guidance and review.✉

2. The case manager uploads the email and/or Fingerprint Check results spreadsheet from PSC/DCS into the portal as documentation. ✉✓📎

## Case Referrals to FFS: Case Manager and FFS Roles and Responsibilities

1. If the FBI Check column of the Fingerprint Check results spreadsheet indicates that the case was referred to the assigned FFS, **within 72 hours**, the case manager emails the FFS and copies the case coordinator using the below template:

---

### ✉ Email Template: Case Referrals to FFS

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | FFS |
| **Cc:** | Case Coordinator |
| **Subject:** | Case Referred to FFS [sponsor's initials and last four digits of UAC A#] |

**Attachments:**  In a separate password protected document(s):
- Sponsor and UAC name
- Sponsor category and the relationship between the sponsor and the UAC
- Any criminal history self-disclosed by the sponsor and the supporting documents, if obtained
- Any criminal history found through the Internet Criminal Public Records Check or the Sex Offender Registry Check
- Word document of the original Fingerprint Check results email and/or the Fingerprint Check results Excel spreadsheet

**NOTE:** When emailing in situations where an FFS is providing temporary coverage, the case manager forwards the email to the covering FFS and copies the assigned FFS and case coordinator. 🕐✉

---

2. The FFS evaluates the Fingerprint Check results in conjunction with any other criminal history records, self-disclosed criminal history, and supporting documents provided by the case manager to determine how the sponsor's criminal history impacts the sponsor's ability to care for the UAC's mental and physical well-being, the overall potential risk to the UAC, and if any of the Criteria for Release Denial apply to the case (see Section 2.7.4 UAC Policy Guide).📖

3. Based on his/her evaluation, the FFS responds to the case manager's email as follows:

   - Instructs the case manager to proceed with the safe and timely release process with any clarifying conditions, such as additional information from the sponsor.

   - If the case meets requirements for a TVPRA mandatory home study category (See Section 2.4.2 UAC Policy Guide), the FFS instructs the case manager to submit the *Release Request* with a recommendation to perform a home study. **NOTE:** The FFS must not provide any information about the existence or contents of any FBI background check result to the case manager.

Exhibit 3
Page 196

GOV-00207436

- If any of the "will deny" criteria match the Criteria for Release Denial (see Section 2.7.4 UAC Policy Guide) or the FFS determines that a release must be denied based on the "may deny" criteria, the FFS instructs the case manager to submit the *Release Request* with a recommendation to deny release, citing the specific criteria, and to cancel any other ongoing background checks.

- If there is insufficient information to make a recommendation to deny or to move forward with the release process, the FFS requests additional information and advises the case manager to conduct concurrent planning.
    - o The FFS may not contact the potential sponsor directly for additional information.
    - o The FFS may not state that the request is based on an FBI background check or mention specific charges/convictions or type of charge/conviction.
    - o The FFS may cite a specific location (city, state) and date (e.g., ask the sponsor if he/she failed to mention something that happened in Houston, Texas in June 2014.)

- If the FFS, after consultation with the FFS supervisor, decides to postpone a decision as to whether to continue the process with a particular sponsor when the sponsor or adult household member has been charged with, but not convicted, of a crime until disposition has been reached on the criminal charges, then the FFS instructs the case manager to conduct concurrent planning. 📖✉

4. If the case involved an FBI/BSU Civil Name Check, the FFS determines if:

- The sponsor has submitted their fingerprints;

- The sponsor assessment process is complete;

- There are no concerns about the sponsor and the potential sponsor does not require a home study; and

- Results remain unclassifiable after a second submission/attempt.

The FFS then informs the case manager whether they have FFS approval to use the results of the FBI/BSU Civil Name Check in lieu of the FBI National Criminal History Check results. ✉

# 2.5.2 Results of Background Checks on Release Decisions

📖 See Section 2.5.2 of the UAC Policy Guide

GOV-00207437

## 2.5.3 Commonly Asked Questions on the ORR Background Check Process

📖 See Section 2.5.3 of the UAC Policy Guide

## 2.6 Sponsor Immigration Status and Release of UAC

📖 See Section 2.6 of the UAC Policy Guide

## 2.7 Recommendations and Decisions on Release

📖 See Section 2.7 of the UAC Policy Guide

### OVERVIEW

This section covers procedures for all release options for a UAC. These include 1) approve release to a sponsor 2) approve release with post-release services 3) conduct a home study before a final decision can be made 4) deny release request or 5) remand release request (decision pending).

This section also includes procedures for notifying a potential sponsor of a denial and procedures for a Category 1 sponsor to appeal the denial of release.

**NOTE:** A UAC who prevails in a *Flores* bond hearing cannot be denied release based upon the basis that the UAC is danger to the self or others. The fact that the UAC prevailed in the hearing must be included in the *Release Request*.

| Key Players | Responsibilities |
|---|---|
| Case Manager | Works with the Case Coordinator to make release recommendations, including recommendations for home study/post release services, as applicable. |
| Case Coordinator | Works with Case Manager to make release recommendations, including recommendations for home study/post release services as applicable. |
| FFS | Provides guidance on release recommendations for complex cases and reviews Case Manager and Case Coordinator recommendations and makes a final release decision. |

Exhibit 3
Page 198

GOV-00207438

| Related Forms/Instruments | Used By |
|---|---|
| *Release Request* | Case Manager, Case Coordinator, FFS |
| *Release Review Completion Guidance* | Case Manager, Case Coordinator, FFS |
| *Discharge Notification* Form | Case Manager, FFS, DHS |

## PROCEDURES

1. **Within 1 calendar day** of the completion of the FRP documentation, the Case Manager uses the *Release Request Completion Guidance* to complete the requester information, sponsor information, and Case Manager recommendation in the *Release Request*. The Case Manager creates a Word version of the *Release Review Completion Guidance* and copies and pastes it into a *Release Request*. The *Release Request* is generated in the Discharge tab of the UAC Portal. See Fig. 2.10 Partial Snapshot of *Release Request*. The Case Manager emails the Case Coordinator that the *Release Request* is ready for review.

   **NOTE:** Case Coordinators do not complete the *Release Request* for cases in which the Case Manager is recommending release to the Unaccompanied Refugee Minor (URM) Program. If the Case Manager is recommending release to the URM Program, the Case Manager bypasses the Case Coordinator and emails the FFS directly.

## Fig. 2.10 Partial Snapshot of *Release Request*



Appendix 2.10 **is the Release Request Completion Guidance.**

The UAC Case Status page includes a section on the "Release Request" which automatically posts a date when the *Release Request* is updated. See Fig. 2.11.

## Fig. 2.11 UAC Case Status Page: Release Recommendation

| Release Recommendations | | | |
|---|---|---|---|
| Case Manager Release Request: | Last Updated | | |
| Case Coordination Release Request: | Last Updated | | |
| ORR Release Request Decision: | Last Updated | 11-01-2017 | Release Approved |

If applicable, the Case Manager updates the *UAC Case Review* with any safety
planning recommendations and any additional information obtained from a home
study. Fig. 2.12 shows the Case Manager options for release recommendations.

## Fig. 2.12 Case Manager Release Recommendations Options in the *Release Request*



Case Manager
Recommendation:

If Applicable, Cancellation
Reason:

Updated User:

- Approve Straight Release
- Approve with Post-Release Only Services
- Approve Release Pending Completion of Conditions
- Conduct Home Study – TVPRA
- Conduct Home Study – Discretionary
- Conduct Home Study – ORR Mandated
- Deny Release

**NOTE:** If the Case Manager needs to cancel a *Release Request* because an individual
wants to withdraw his/her application or under other circumstances that occurred
after the *Release Request* has been submitted, the Case Manager should click on the
cancellation button on the *Release Request*. Fig. 2.13 indicates the options for the
Case Manager under the cancellation reason button. (In order for a case to move to
another sponsor once the *Release Request* is withdrawn, the FFS must select the
"denial" option and enter 'sponsor withdrawal' in the comments section. FFS should
**NOT** "dis-assign" a sponsor because ORR wants to keep a historical record of
individuals who have attempted to sponsor UAC. The "dis-assign" option (located on
the Sponsor Information tab) is only for instances when an error occurred -- a
sponsor was incorrectly assigned to a UAC—and is **only** used by ORR headquarters
staff.)

Exhibit 3
Page 200

GOV-00207440

## Fig. 2.13 Case Manager Options for Cancelling a Release Request

| 4 | Daughter | Recommendation: Approved |
|---|----------|---------------------------|
| | | Sponsor Withdrawal - Household members unwilling to be fingerprinted |
| | | Sponsor Withdrawal - Unwilling to reunify due to undocumented status |
| | | Sponsor Withdrawal - Failed to pickup UAC |
| | | Sponsor Withdrawal - Lacks interest and no longer calls the UAC (Did not formally inform staff of withdrawal) |
| | | Sponsor Withdrawal - Not willing to complete home study/post-release services process |
| nd sponsor were unable to | Sponsor Withdrawal - Refused to travel to pick up UAC |
| | Sponsor Withdrawal - Other |
| ng to her BC (verified) spe | UAC Discharge - Adult Status |
| vidence of their relationsh | UAC Discharge - Detained by local law enforcement |
| lanager | UAC Discharge - Detained by US Marshalls |
| imendation: | UAC Discharge - Ran Away |
| | UAC Discharge - Adjustment of Legal Status |
| icable, Cancellation | UAC Discharge - Removed |
| n: | Other - Sponsor detained on the way to shelter |
| | Other - UAC refused to reunify with sponsor |
| ed User: | UAC Discharge - Transferred |

2. The Case Coordinator reviews the recommendation **within 1 business day** and updates the *Release Request* with his/her recommendation. The Case Coordinator emails the Case Manager and the FFS that the *Release Request* has been completed and uploads it into the UAC Portal. Fig. 2.14 shows the Case Coordinator section of the *Release Request* which contains the same options as the Case Manager (including the option to cancel the *Release Request*). 🕐📋 ✉️🔖

## Fig. 2.14 Case Coordinator Release Recommendations in the Release Request



3. **Within 1 business day** of receipt of the Case Coordinator's release recommendation **(2 business days for home study cases)**, the FFS reviews and makes a final release decision in the UAC Portal. Fig. 2.15 is the Release Options for the FFS in the *Release Request*.

    **NOTE:** The ORR Director must review any release decision denying sponsorship to a Category 1 sponsor. The FFS must first submit a recommendation through the Case Consultation process before completing the *Release Request*. **The process is contained in the ORR internal SharePoint page (ORR Connect). Care provider staff and Case Coordinators do not have access to ORR Connect and are not directly involved in the Case Consultation process. See 2.7.4 Deny Release Request.**

Exhibit 3
Page 201
GOV-00207441

For all other cases, the FFS emails notification of the final release decision based on the template email below. **NOTE:** When the FFS approves the release decision, the UAC Portal generates a "trigger report," *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address.* See 2.8 Release from ORR Custody for procedures on this form. 🕘🔖 ✉

---

### ✉ Email Template: FFS Notification of Final Release Decision

| | |
|---|---|
| **From:** | FFS |
| **To:** | CFS, Case Manager |
| **Cc:** | Case Coordinator |
| **Subject:** | ORR Release Decision [include last four digits of UAC A#] |
| | |
| **Body:** | Password will be sent shortly. |
| | |
| **Attachments:** | Clearly written release decision |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

---

4. For cases involving review by the ORR Director, the FFS completes the FFS section of the *Release Request* after **ORR Headquarters notifies the FFS of the final decision.** The FFS then completes the email template above: FFS Notification of Final Release Decision. 🕘🔖 ✉

## Fig. 2.15 FFS Options for Release in the Release Request

Exhibit 3
Page 202

GOV-00207442

**Release of UAC Who Age Out**

Some UAC in ORR reach the age of 18 before release. ORR does not release UAC from its care on their own recognizance (ROR). Case Managers send a memo to DHS **24 hours before the youth turns 18**. The Case Manager should include a copy of the UAC's birth certificate, if available, and copy the FFS on the email.

The Case Manager should follow the process for cancelling a *Release Request* and choose the "UAC Discharge—Adult Status" option.

**Release to URM Program**

The release request process for UAC recommended for release to the URM Program may not begin until ORR issues a URM Approval Letter. The case manager must ensure that the URM program receives any significant updates regarding the UAC, including *SIRs*, following receipt of the URM Approval Letter and prior to release.

The case manager must provide the URM program with a comprehensive copy of the UAC's case file before or at the time of the UAC's release. The following documents, which are critical to the UAC's continuity of care, must be provided to the URM program as soon as possible:

- UAC birth certificate
- Medical and immunization records
- Immigration documents
- Psychological assessments
- Education records
- Family member contact information
- Original trafficking eligibility letter, if applicable

All parties must follow the procedures for a "straight release," with the exception that the Case Coordinator does not complete the *Release Request* for cases referred to the URM Program. The Case Manager selects "Reunified (Program/Facility)" in the Type of Discharge field of the *Discharge Notification* in the UAC Portal. The care provider is responsible for escorting the UAC to the URM program.

If gaps in the minor's case file are discovered after the UAC is released to the URM program, the URM program works with the sending care provider records liaison to obtain the missing information (see Quick Glance: Requesting Records from Other Care Provider Programs in Section 2.2.2).

**Exhibit 3**
**Page 203**

GOV-00207443

## 2.7.1 Approve Release Decisions

📖 See Section 2.7.1 of the UAC Policy Guide

### PROCEDURES

All parties follow the procedures described in 2.7 Recommendations and Decisions on Release on the Release Recommendation process and the procedures described below.

1. **At the same time that the Case Manager submits the *Release Request* to the Case Coordinator for review, the Case Manager:**

   - Emails separate notices of pending release to 1) ICE Field Office Juvenile Coordinator (FOJC) and 2) the legal services provider or attorney of record based on the email template below.

   - Generates the *Discharge Notification Form* in the UAC Portal by clicking on "add new" on the Discharge Notification section which is located under the "Discharge Tab." (Fig. 2.17 shows the discharge section under the Discharge Tab and the *Discharge Notification Form*). The *Discharge Notification Form* is continually updated throughout the release process. 🔒✏️📋

| ✉ Email Template: Notice of Pending Release | |
|---|---|
| **ICE FOJC Email** | |
| From: | Case Manager |
| To: | DHS/FOJC |
| Cc: | Case Coordinator, PRS Provider, if applicable |
| Subject: | [WARNING: MESSAGE ENCRYPTED] Pending Release Decision [include last four digits of UAC A#] |
| Body: | [Name of facility] is pending release decision for the minor mentioned above. See encrypted attachment with minor's information.<br><br>Password will be sent shortly. |
| Attachments: | Word document that includes:<br>• UAC Full Name<br>• A#<br>• DOB<br>• COO<br>• Facility |

Exhibit 3
Page 204

GOV-00207444

- Release Request submitted date

**Legal Service Provider or Attorney of Record Email**

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | Legal Service Provider or Attorney of Record, Child Advocate, if applicable |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Pending Release Decision [include last four digits of UAC A#] |

**Body:**      [Name of facility] is pending release decision for the minor mentioned above. See encrypted attachment with minor's information.

Password will be sent shortly.

Word document that includes:

**Attachments:**
- UAC Full Name
- A#
- DOB
- COO
- Facility
- Release Request submitted date

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

## Fig. 2.17 Discharge Section and Form

### (a) Discharge Notification Section



### (b) *Discharge Notification Form*

Exhibit 3
Page 205

GOV-00207445



2. The care provider collaborates with the sponsor to ensure the UAC is released as quickly as possible (preferably **within 3 calendar days** after ORR approves the release). 🕐☎

3. The Case Manager ensures that documents and items that will accompany the UAC at time of release are secure.  (See **2.8 Release from ORR Custody** for how the Case Manager "exits" the UAC from the program.) 📄

## 2.7.2 Approve Release with Post-Release Services

📖 See Section 2.7.2 of the UAC Policy Guide

### PROCEDURES

1. **Within 1 business day** of the FFS approval of the *Release Request* in the UAC Portal, the Case Manager makes a referral for PRS using the same referral process as described under home studies and ensures that all documents in the UAC Portal are updated. 🕐✔📄
**NOTE:** The UAC may be released from ORR custody before the PRS referral is accepted by a PRS Provider.

2. Once a PRS Provider accepts a referral in the UAC Portal and reviews the case information, the provider makes contact with the sponsor/UAC within **2 business days**. 🕐✉

3. The Case Manager ensures that documents and items that will accompany the UAC at time of release are secure. 📑

## 2.7.3 Conduct a Home Study before a Final Decision Can be Made

📖 See Section 2.7.3 of the UAC Policy Guide

### PROCEDURES

All parties follow procedures for requesting a home study that are described 2.4.2 Home Study Requirement. If the FFS approves the release following the home study report, all parties complete the release process described above for a Release with Post Release Services (see 2.7.2 Approve Release with Post-Release Services). 📖💾📬

## 2.7.4 Deny Release Request

📖 See Section 2.7.4 of the UAC Policy Guide

### PROCEDURES

The process for denying release to a sponsor varies on the sponsor category.

See 2.7.7 Notification of Denial for additional procedures. 📞☎

**Denial to Category 1 Sponsors**

1. The FFS follows the procedures outlined in the "Case Consultation" tab in ORR Connect and completes the form *Recommendation to Deny Release* which includes a section summarizing the findings, such as home study results, police report results, if applicable, and other information. The FFS includes supporting documentation, such as the home study summary, police reports, court orders, if applicable, and other information. The FFS also drafts a denial letter from the ORR Director to the Category 1 sponsor outlining the reason for the denial based on the template in ORR Connect Case Consultation tab. 📖📑

2. Once the FFS enters *the Recommendation to Deny Release* form into the ORR Connect, the request is reviewed in sequence by the FFS supervisor, the Senior Advisor for Child Well-being and Safety, the DUCO Division Director, the Deputy Director for Children's

**Exhibit 3**
**Page 207**

GOV-00207447

Programs, and the ORR Director. During the review step by the Senior Advisor for Child
Well-being and Safety, the Senior Advisor staffs a Case Review Committee, comprised of
ORR staff in headquarters, to provide additional input to the decision 📖

3. Upon notification by ORR Headquarters that the review was complete, the FFS
completes the *Release Request* and sends the email based on the Email Template:
Notification of Final Release Decision. 📖📑🖐📧

4. Assigned ORR headquarters staff complete the procedures in 2.7.7 Notification of
Denial to notify the Category 1 sponsor. 📖

**Denial for Category 2A/B or 3 Sponsors**

1. The FFS determines that the case should be denied and updates the *Release Request*
(documenting the justification for the denial) and notifies the Case Manager and the
Case Coordinator based on the email template: Notification of Final Release
Decision. 🖐📧

2. The Case Manager then notifies via email the other parties, including the legal
service provider or attorney of record, and if applicable, the child advocate and
home study provider. 👤📧🖐

# 2.7.5 Remand Release Request—Decision Pending

📖 See Section 2.7.5 of the UAC Policy Guide

## PROCEDURES

If the FFS determines that outstanding issues require a remand release decision, the FFS
documents the date of the remand in the *Release Request* with an explanation and which
party is responsible for addressing the outstanding issue.📖📑🖐

# 2.7.6 Issues Related to Recommendations and Decisions

📖 See Section 2.7.6 of the UAC Policy Guide

## 2.7.7 Notification of Denial

📖 See Section 2.7.7 of the UAC Policy Guide

### PROCEDURES

When ORR denies release to a potential sponsor, the procedures for notification vary
depending on the sponsor category.

**Notification of Denial to a Potential Category 1 Sponsor**

1. **Within 30 business days** of the potential sponsor's submission of a completed
   application and supporting documents, the sponsor receives a formal denial decision
   letter from the ORR Director.  The denial letter includes the following:
   - Reason for the denial
   - Instructions on how to obtain the UAC's case file
   - Supporting materials/information that formed the basis for the decision
   - Explanation of how to appeal the decision.

   The process for notifying the sponsor is described in the steps below. 🔁

2. **As soon as the ORR Director signs the formal denial decision letter**, the designated
   staff in the ORR Director's office sends the formal letter with any supporting materials
   to the sponsor (either through an email or through expedited mail). The designated staff
   also notifies the FFS who submitted the case for review through the Case Consultation
   process based on the email template below. 🔁 ✉/📑

---

### ✉ Email Template: ORR Headquarters Category 1 Denial Notification to FFS

| | |
|---|---|
| **From:** | Designated staff in the ORR Director's Office |
| **To:** | FFS |
| **Subject:** | Category 1 Denial [include sponsor's initials] |
| **Body:** | The ORR Director has denied sponsorship for the category 1 sponsor applicant identified in the attached password protected file. The sponsor applicant will receive the formal decision letter, any supporting documentation and an explanation of how to appeal the decision from the ORR Director. |
| | Please notify the care provider of this decision. Password will be sent shortly. |
| **Attachments:** | Word document that includes: |

---

Exhibit 3
Page 209

GOV-00207449

- Sponsor Full Name
- UAC Full Name
- A#

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

3. **Within 5 days of receiving notification of the formal denial decision,** the Case Manager notifies the UAC of a denial decision and schedules additional counseling sessions as necessary. 🕐

4. If the reason for denial is based on concerns related to the UAC (i.e., the UAC was determined to be a danger to self or others), the Case Manager provides the UAC with a copy of the ORR Director's denial letter. The Case Manager schedules an appointment with the Clinician to discuss the letter with the UAC.

**Notification of Denial to a Potential Category 2A/B or 3 Sponsor**

1. **Within two business days of the FFS denial decision**, the Case Manager notifies the potential Category 2A/B or 3 sponsor verbally that they have been denied sponsorship.

2. The Case Manager notifies the UAC of the denial after notifying the potential sponsor by phone (documenting the conversations in case management notes in the UAC case file). The Case Manager may also notify the UAC's parents.

3. If the reason for denial is because the UAC was determined to be a danger to self or others), the Case Manager provides the UAC with a letter from the ORR Director. See 2.7.4 Deny Release Request, which includes information about the UAC's ability to appeal and access to a *Flores* bond hearing. The Case Manager schedules an appointment for the clinician to discuss the letter with the UAC.

**Additional Q&As on Denial Notification**

*Q1: UAC Policy Guide Section 2.4.2 requires the potential sponsor to receive a copy of the home study report if the release request is denied. Does the care provider or ORR send the home study report?*
A1: ORR will send the home study report.

*Q2: Is the home study report sent to all denied sponsors, or only Category 1 denied sponsors?*

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)

GOV-00207450

A2: ORR sends the report only to potential Category 1 sponsors.

*Q3: The home study report may include third party information and assessments not generated by ORR. Will this information be included when sending the home study report to the denied sponsor?*

A3: The home study report is ORR property. ORR will redact PII and other private information, as applicable. ORR may include third party information or assessments in the home study report.

*Q4: Is ORR required to secure Authorizations for of Release of Information or consent from the UAC if the home study report contains information concerning adult household members or UAC 14 years old or older?*

A4: Adult household members will have already signed an *Authorization for Release of Information* as part of the background check process. ORR may release information related to their case as necessary, in accordance with applicable law. ORR will protect PII and other private information, as applicable.


## 2.7.8 Appeal of Release Denial

📖 See Section 2.7.8 of the UAC Policy Guide

## PROCEDURES

1. A parent, attorney, or child who wants to file an appeal of a release denial must request an appeal **within 30 business days of receipt of the ORR Director's denial letter** using the Appeals Request Form that is included in the Director's letter or by writing their own appeal, which must include the information requested on the form. The Appeals Request includes: the basis for the request; additional evidence, if any; and the choice of a hearing by phone, videoconferencing, or no hearing. 🕐📄✉

2. The Assistant Secretary sends an acknowledgement letter to the requester **within 5 business days of receipt of the appeal request**. The letter includes: date stamped appeal request, confirmation of a hearing or no hearing, an explanation of the appeals process, and a notice that the requester will be contacted by the Assistant Secretary's office to schedule and arrange a hearing (if requested). Whenever possible, the Assistant Secretary completes the appeals process **within 30 days**. 🕐📄✉

3. The Assistant Secretary requests information from ORR, which it must provide **in 5 business days**, determines if ORR submitted new information that the requester doesn't have and shares that with the requester to allow for a response. The Assistant Secretary then shares the file which includes what information will be considered and protocol for

Exhibit 3
Page 211

GOV-00207451

presentation of arguments, testimony and evidence with all parties concerned, and sets a hearing date, if requested. ⏰📋✉️

4.  If no hearing is requested, the Assistant Secretary reviews the case (using *de novo* review standard) and provides a final decision to either uphold or reverse the Director's decision. The Assistant Secretary sends the written decision to the requester and to ORR **within 30 business days of the appeal request whenever possible.** ⏰📋✉️

5.  If a hearing is requested, the Assistant Secretary reviews the case (using a *de novo* review standard) as well as the arguments, testimony, and evidence presented at the hearing and any follow up questions asked by the Assistant Secretary after the hearing and provides a final decision to either uphold or reverse the Director's decision. The Assistant Secretary sends the decision to the requester and to **ORR within 30 business days of the appeal request whenever possible.** ⏰📋✉️

    **NOTE:** The Assistant Secretary's decision is the final administrative decision of the agency.

    **Additional Q&A on Appeal of Release Denial**

    *Q1: According to UAC Policy Guide section 2.7.7, UACs who have been denied release solely because they are determined to be a danger to themselves or the community may appeal their release denial. Does this apply to all UAC release denials, or only to Category 1 denials?*

    A1: This policy applies to all UAC regardless of category.

# 2.8 Release from ORR Custody

📖 See Section 2.8 of the UAC Policy Guide

## OVERVIEW

Prior to physical release, the care provider explains to the UAC and the sponsor the responsibilities, rights, and resources associated with release from care. The care provider prepares for the physical release and for exiting the UAC from the program.

| Key Players | Responsibilities |
|---|---|
| Case manager | Explains to the UAC and the sponsor their rights and responsibilities. Ensures that UAC's belongings are given to the UAC and sponsor at time of release along with documents, and informs stakeholders of the discharge date. |

GOV-00207452

| Sponsor | Agrees to provisions outlined in the Sponsor Care Agreement |

| Related Forms/Instruments | Used By |
|---|---|
| Discharge Notification Form | Case manager |
| ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address | Case manager |
| Verification of Release | Case manager, UAC and sponsor |
| Sponsor Care Agreement | Sponsor |
| EOIR Change of Venue Motion and EOIR Alien's Change of Address Form/Immigration Court (EOIR - 33/IC) | Case manager, attorney of record, and sponsor |
| SWB Call Follow Up Report | Care provider, CFS |

## PROCEDURES

1. The case manager ensures that all the UAC's belongings and documents are collected and ready to provide to the UAC and sponsor at time of release (see Quick Glance: Items That Accompany UAC at Release).

### Quick Glance: Items That Accompany UAC at Release

- UAC personal belongings, including clothing, money, valuables, and items obtained during the UAC's stay at the referring care provider

- Immigration case related documents: Form I-862 Notice to Appear, other notifications, and, if applicable, original trafficking eligibility letter, I-360 approval notice, asylum letter

- Verification of Release (original copy is given to the UAC and sponsor)

- 30-day medication supply

- All health (medical, mental, and dental) records, including lab test results. immunization records, medication lists, office/ER visit notes, and Sponsor Letters (if applicable)

- Name and contact information of medical, mental health, and dental care providers so sponsor and UAC may request additional records, if needed

- Notice of any follow up medical appointments, as needed

- Original documents (birth certificates)

- Original notarized Letter of Designation for Care of a Minor, if applicable

- Educational assessments and records

- Post release safety plan as needed

- Any change of venue and change of address documents

GOV-00207453

2.  **Immediately before the UAC physically leaves the program,** the case manager:

    - "Exits" the UAC from the program in the UAC Portal which generates a "trigger report," the *Verification of Release*. The case manager prints out a copy for the UAC and sponsor upon release.

    - The care provider updates the discharge date and time on the *Discharge Notification Form.* �lock🖨️↪️

    **NOTE:** To exit the program, the case manager goes to the Discharge section of the UAC Portal and clicks on "add new" to the Program Exit form. The date of discharge will be auto-populated on the current date and the type of discharge will be populated based on the selections made in the *Discharge Notification* Form. Click "save" to discharge the UAC from the program. ↪️🔒

3.  The Case Manager coordinates with the legal service provider or attorney of record to ensure completion of the *EOIR Change of Venue Motion* and *EOIR Alien's Change of Address Form/Immigration Court (EOIR - 33/IC)*, and to provide the sponsor and UAC with instructions for filing Change of Venue Motions and Change of Address forms if the sponsor subsequently moves.

    Blank copies of each immigration court's Change of Address Form may be accessed here:

    https://www.justice.gov/eoir/form-eoir-33-eoir-immigration-court-listing

4.  **Within 24 hours after the UAC's physical release from the care provider,** the case manager sends the *Discharge Notification Form* to DHS and other stakeholders based on the template below. 🔒🖨️✉️

5.  The case manager notifies the ICE Office of Chief Counsel and EOIR Immigration Court Administrator using the trigger report, *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address*, which is stored in the UAC's file in the Portal. Fig. 2.18 is a partial snapshot of the form. There are regional variations regarding how this notice is sent, some programs send via email and mail. Other programs mail the notice. Case manager should work with their FFS if there are any questions regarding this procedure. 🖨️↪️✉️/🖨️

---

✉️ **Email Template: To Stakeholders Following Release**

| | |
|---|---|
| **From:** | Case Manager |
| **To:** | ICE/FOJC |
| | ICE Office of Chief Counsel (OCC) |
| | EOIR Immigration Court Administrator |
| | UAC's Legal Service Provider or Attorney of Record |

---

Exhibit 3
Page 214

GOV-00207454

| | VOLAG, if applicable |
| | Child Advocate, if applicable |

**Subject:** [WARNING: MESSAGE ENCRYPTED] Discharge Notification for [include last four digits of UAC A#]

**Body:** Password will be sent shortly.

**Attachments:** *Discharge Notification Form*

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

**Fig. 2.18 Partial Snapshot of the *ORR Notification to ICE Chief Counsel Release of Unaccompanied Alien Child to Sponsor and Request to Change Address***

ORR Release Notification

**ORR NOTIFICATION TO ICE CHIEF COUNSEL RELEASE OF UNACCOMPANIED ALIEN CHILD TO SPONSOR AND REQUEST TO CHANGE ADDRESS**

ORR has determined that the below Juvenile Respondent should be released to a sponsor. The Director of the Office of Refugee Resettlement, Department of Health and Human Services requests that the Chief Counsel, Immigration and Customs Enforcement, Department of Homeland Security notify the Executive Office of Immigration Review of the change of address

| Date of Request: | Name of Requestor | Title | Telephone Number |
|---|---|---|---|
| 08/03/2017 | | | |

Juvenile Respondent's Alien Number, complete name and aliases, date of birth and claimed country of origin:

# 2.8.1 After Care Planning

📖 See Section 2.8.1 of the UAC Policy Guide

# 2.8.2 Transfer of Physical Custody

📖 See Section 2.8.2 of the UAC Policy Guide

# PROCEDURES

In the event that a sponsor is not able to pay fees associated with commercial airfare, and a child's physical release would be otherwise delayed by 72 hours or more, care providers are authorized to use program funds to purchase airline tickets.  This includes the cost of an escort when required by the airline or ORR policy.

Please note that care providers cannot require a sponsor to use their own travel agent if the sponsor is able to make alternative arrangements that would promptly discharge the child within a substantially similar time period.

Care provides must consult with their assigned Project Officer if they have any questions or concerns about using program funds to purchase air travel.

## 2.8.3 Closing the Case File

📖  See Section 2.8.3 of the UAC Policy Guide

### PROCEDURES

After the care provider exits the UAC from its program, the UAC's electronic record in the UAC Portal remains open. After **45 days**, the UAC's electronic record in the Portal is closed.

## 2.8.4 Safety and Well-being Follow Up Call

📖  See Section 2.8.4 of the UAC Policy Guide

### PROCEDURES

Safety and Well-Being Follow Up Calls must be made for all UAC released to an individual sponsor. The purpose of the Safety and Well-Being Follow Up Call is to determine whether the child is still residing with the sponsor, is enrolled in or attending school (unless the child is 18 years old at the time of the call), is aware of upcoming court dates, and is safe (see Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information).

### Quick Glance: How to Check EOIR Hotline for UAC Immigration Hearing Information

The EOIR Hotline—**1-800-898-7180**—can help case managers, sponsors, and UAC check the date for an upcoming hearing and provide other details related to an immigration case. The service is available in English and Spanish.

Callers enter the UAC's A number and are given the option to 1) find out the next court date (press "1"), 2) case processing information (press "2"), or 3) find out whether a decision has been reached in a case (press "3").

1. **30 calendar days after release of a UAC**, the care provider's designated staff person calls the sponsor and the UAC to conduct the call. The care provider must make a minimum of 3 attempts to speak with both the sponsor and the UAC unless the phone is disconnected. The care provider must make all call attempts within the 7 days following the 30 day mark of the UAC's release. The care provider must not begin marking calls prior to that 30 day mark and must make the call even if the sponsor or the UAC reaches out to them independently. 🕐☎📖

2. During the call, the designated staff confirms that the sponsor still resides at the address on the *Verification of Release* form. If the sponsor has moved, the staff person documents if an updated address is provided in the UAC case file and reminds the sponsor to file a change of address with DHS. The designated staff also notifies the PRS provider about the new address if the case was designated for PRS. ☎🗂✉

3. The designated staff makes every effort to speak to the sponsor and UAC separately on the following topics:

   Sponsor Topics
   - Is the child still residing with the sponsor?
   - Is the child demonstrating any behavioral issues?
   - Do you have any concerns regarding the UAC?
   - Is the sponsor aware of upcoming court dates?
   - Did the sponsor attend an LOPC presentation?
   - Has the sponsor been contacted and asked to pay fees or wire money related to the release of the child? (See Appendix 2.1 How to Protect PII and Create Password Protected Files)
   - (If the case was release with PRS) Did PRS provider contact the sponsor?

   UAC Topics
   - Is the child still residing with the sponsor?
   - Does the child feel safe?
   - Is the child enrolled in and/or attending school? (Unless the child has aged out) What school does he/she go to? What grade is he/she in?
   - Is the child aware of upcoming court dates?
   - Has the child been contacted and asked to pay fees or wire money related to their release?
   - (If the case was release with PRS) Did PRS provider contact the child?

Exhibit 3
Page 217

GOV-00207457

- Is the child being forced to work without pay or being forced to work to pay his/her share for rent and utilities or repay a debt? 📹

**Child May be in Immediate Danger**

1. If the follow up call indicates that the child may be in immediate danger (i.e., in immediate danger of serious harm), the designated staff does the following:
   - Calls 9-1-1 immediately.
   - Stays on the phone with the child until authorities arrive.
   - Reports any emergency involving 9-1-1 to the ORR National Call Center Help Line at 1 (800) 203-7001.
   - Complies with mandatory reporting laws, state licensing requirements, and federal laws and regulations for reporting to local child protective agencies and/or law enforcement.
   - If the sponsor is the perpetrator of the allegation, flags the sponsor and provides explanation as to why the sponsor is being flagged in the UAC Portal.
   - Emails notification to the FFS who approved the release (and the PRS provider, if applicable) and includes UAC name and A number; UAC date of release; sponsor/child contact phone number; sponsor address; previous ORR placement; summary of call; actions taken (including information on reporting the incident and any associated case numbers). 🕐📞📎✉

2. The FFS who is notified that the child may be in immediate danger immediately elevates the incident to the FFS supervisor, reviews the allegation, and ensures that the incident was reported to the appropriate authority to investigate. (The FFS also elevates any identified safety trends or issues to the FFS supervisor, such as an indication that the sponsor is involved in trafficking UAC.) If the care provider's designated staff did not report the allegation correctly, the FFS provides technical assistance. 🕐✉

3. If the care provider notifies the Intakes Hotline that the follow up call indicates that the child may be in immediate danger and was reported to 9-1-1, ORR intakes immediately notifies the FFS supervisor (or on-call FSS supervisor if after hours). The FFS supervisor immediately informs the senior FFS supervisor. 🕐📞

**Child May Be Unsafe**

1. If the follow up call indicates that the child may be unsafe (but not in immediate danger) the designated staff completes the steps in #1 above under Child May Be in Immediate Danger with the exception of dialing 9-1-1 and contacting the ORR Intakes Hotline. 📞📎✉

**Exhibit 3**

**Page 218**

GOV-00207458

2. The FFS who is notified that the child may be unsafe, reviews the allegation and ensures that it was properly reported and, if it wasn't, provides technical assistance. ✉

**Child May Have Been Sexually Abused or Harassed While in ORR Care**

1. If the follow up call by the care provider indicates that the child may have been sexually abused or harassed while in ORR care, the staff must:
    - Report the incident to the appropriate entities in accordance with mandatory reporting laws, state licensing requirements, and ORR policies and procedures. (See **Section 4.10: Sexual Abuse Reporting and Follow-Up of the UAC Policy Guide.**)
    - Complete a Sexual Abuse Significant Incident Report (SA/SIR) and report it to ORR in accordance with **Section 4.10: Sexual Abuse Reporting and Follow-Up.**
    - If the sponsor is the perpetrator of the allegation, flag the sponsor and provide explanation in the UAC Portal.
    - Email notification to the PO overseeing the shelter and to the FFS who approved the release and includes UAC name and A number; UAC date of release; sponsor/child contact phone number; sponsor address; previous ORR placement; summary of call; actions taken (including information on reporting the incident and any associated case numbers). 📖📞✋✉

2. The FFS who received the notification that the child may have been sexually abused or harassed while in ORR care reviews the allegation and ensures that the incident was reported to the appropriate authority to investigate and follows up with the care provider where the alleged incident occurred to determine if the incident was previously reported and/or investigated while the UAC was in ORR care. If the allegation was **not** reported, the FFS provides technical assistance to help the care provider report the allegation, forwards the email notification to the ORR SA/SIR mailbox (psac@acf.hhs.gov) and ensures that it is appropriately investigated. ✋✉

**Additional Support Services or LOPC Appointment**

If the follow up call indicates that the sponsor and/or child would benefit from additional support or services or the sponsor has not attended an LOPC presentation, the care provider's designated staff refers the sponsor to the ORR National Call Center (800-203-7001) and emails the Call Center (information@orrncc.com) with the UAC name and A number; sponsor's name; sponsor/child contact phone number; sponsor address; date of referral; and reason for referral. 📞✉

GOV-00207459

**Documenting the Call Outcome**

The care provider's designated staff documents the results of the call in the case management notes of the UAC's case file and in the *SWB Call Follow Up Report*. See <u>Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report</u>.

## Quick Glance: Roles and Deadlines for Safety and Well-Being Follow Up Call Tracking Report

**CARE PROVIDER:** In addition to documenting the safety and well-being follow-up in case management notes, the care provider is also responsible for documenting data points for all calls in this report.

The care provider submits the completed SWB Follow-Up Call Report to its assigned FFS, CFS, and the designated CFS Report Compiler for its region **no later than 2:00pm EST on the 8th of every month for UAC released two months earlier** (e.g., if the report is due October 8th, it would include entries for all UAC who were released in August). If the 8th falls on a weekend or holiday, the report will be due the next business day.

**ASSIGNED CFS:** The assigned CFS uses the SWB Call CFS Quality Control Checklist and the UAC Portal discharge report provided by the Data Team to perform a quality control check and work with the care provider to reconcile any data discrepancies. The assigned CFS submits final SWB Follow-Up Call Reports for their assigned programs to the CFS Report Compiler **no later than 5:00pm EST on the 9th of every month.** If the 9th falls on a weekend or holiday, the report will be due the next business day.

**CFS REPORT COMPILER:** The designated CFS Report Compiler 1) cuts and pastes data (using paste value function) from the program reports for their region into the master report, located in ORR Connect, 2) completes the CFS Notes tab, and 3) performs a final quality control check. The designated CFS Report Compiler performs these steps **no later than 5:00pm EST on the 10th of every month.** If the 10th falls on a weekend or holiday, the report will be due the next business day.

# 2.8.5 Post-Release Services for UAC with Zika Disease or Infection

📖 See Section 2.8.5 of the UAC Policy Guide

Exhibit 3
Page 220

GOV-00207460

## 2.8.6 Release for Children with Legal Immigration Status

📖  See Section 2.8.6 of the UAC Policy Guide

### PROCEDURES

1. **If a care provider determines that a UAC has legal status, the case manager notifies the FFS immediately for consultation.** If a legal service provider, attorney of record, or a child advocate notifies the case manager that the UAC is on track to be granted legal status, the case manager notifies the FFS of the need for a Post Legal Status Plan. The legal service provider, attorney or record, or child advocate works with the case manager and the FFS to develop the Post Legal Status Plan. See Quick Glance: Milestones for Planning and Releasing Children with Legal Status. 🔗✉

---

**Quick Glance: Milestones for Planning and Releasing Children with Legal Status**

While abiding by attorney-client confidentiality standards, LSP or attorney of record for the child works with ORR to communicate information that may affect the child's legal status, including grant of SIJ status or notification of eligibility for benefits. The following milestones trigger the need for a Post Legal Status Plan for release.

- Child is eligible for Special Immigrant Juvenile (SIJ) status. This means a U.S. state juvenile court: makes the child dependent on the court (or places the child under the legal custody of a state agency or other individual appointed by the state); declares that the child cannot be reunited with one or both of his or her parents due to abuse, abandonment or neglect; and declares that it is not in the best interests of the child to be returned to his country of citizenship.
- UAC LSP files Form I-589, Application for Asylum and Withholding of Removal, with the local USCIS Asylum Office and has received notification of the interview date and time.
- UAC LSP files Form I-589, Application for Asylum and Withholding of Removal, in the immigration court at a master calendar hearing. This means the Immigration Judge has already set the merits hearing date (final court date).
- The UAC has filed a T visa with USCIS and attended the biometrics appointment (fingerprints) at a local USCIS office.
- The UAC has filed a U visa with USCIS and attended the biometrics appointment (fingerprints) at a local USCIS office.
- The child has been assigned a pro bono attorney.
- The child's attorney sends notice that the child has achieved a milestone.

---

2. The legal service provider, attorney of record, or child advocate works with the case manager and the FFS to develop the Post Legal Status Plan based on the template below. See Fig. 2.19 Post Legal Status Plan Template. The case manager emails the plan to the FFS supervisor for approval. The plan is tailored to the needs and pending legal status of the child. 🔗✉🗐

---

Exhibit 3
Page 221

GOV-00207461

## Fig. 2.19 Post Legal Status Plan Template

| Post Legal Status Plan | | |
|---|---|---|
| UAC name and A #: | FFS name: | Date: |
| Name of legal service provider (LSP) or attorney of record: | | |
| Name of child advocate, if applicable: | | |
| Describe the UAC's current immigration status (include reference to specific milestones or notices): | | |
| What is the expected release date for this UAC and what is his/her expected immigration status upon release? [insert date and information] | | |
| Describe the release plan based on the UAC's available options for release (i.e., release to a sponsor, licensed nonprofit, transfer to state care until age 18, URM, etc.): | | |
| Date of FFS supervisor approval: Date of UAC release: Insert entity/program/ that took custody of minor: | | |

3. The FFS supervisor approves the plan and notifies the FFS. The FFS notifies the case manager. ✉

4. The case manager works with the FFS and with all relevant parties on the logistics for release of the minor from care as soon as the minor achieves legal status. ✉/☎▤✎

5. The case manager emails the parties included in the sample email below on notifications regarding minors who achieve legal status **24 hours prior to release of a minor from ORR care** and includes a copy of the *Discharge Notification Form*. The care provider follows standard operating procedures on items and documents that

Exhibit 3
Page 222

GOV-00207462

accompany UAC upon release, such as personal belongings, health records, original documents (birth certificates), medication supply. ⊕⊠▤

| ⊠ Email Template: Notifications Regarding Minors with Legal Status | |
|---|---|
| **From:** | Case Manager |
| **To:** | LSP or Attorney of Record, Child Advocate, if applicable |
| **Cc:** | FFS, CFS, PO |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] Discharge Notification for [include last four digits of UAC A#] |
| **Body:** | See encrypted attachment with minor's information. Password will be sent shortly. |
| | On [insert date of release] [Insert UAC last name, last four digits of A number] will be released to [insert entity with responsibility for minor]. This release was due to the following change in legal status for the minor: [describe]. |
| **Attachments:** | *Discharge Notification Form* |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

6. The case manager follows standard operating procedures for release and for closing out the case files. ⊕⊠▤↰

# 2.9 Bond Hearings for Unaccompanied Alien Children

📖 See Section 2.9 of UAC Policy Guide

## OVERVIEW

Consistent with the United States Court of Appeals for the Ninth Circuit decision in *Flores v. Sessions*, unaccompanied alien children have the opportunity to seek a bond hearing before an immigration judge.

## PROCEDURES

Care providers must notify UAC of the opportunity for a bond hearing based on the procedures below. This section also covers procedures for processing requests and

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)

preparing for *Flores* Bond Hearings and includes Quick Glance guides summarizing those procedures.
See Appendix 2.11 ORR HQ Bond Hearing Procedures

**Providing Notice at Admission and Orientation**

1.  The care provider staff provides the UAC with the *Legal Resource Guide* **within 24 hours of the UAC's admission into the care provider's care and conducts an orientation for the UAC within 48 hours of UAC's admission**.

    The *Legal Resource Guide* includes the *Request for a Flores Bond Hearing* for **secure, staff secure, and Residential Treatment Center facilities only**. 🕮 🗐

    **NOTE:** A child in any other placement type (e.g., shelters, foster care) is only provided the *Request for a Flores Bond Hearing* if the UAC requests the form.

2.  The care provider staff person providing the forms reads the contents of the form to the UAC in a language the child understands. The care provider staff person explains that the UAC should consult with an attorney (such as the ORR-funded Legal Service Provider) for any legal advice or questions regarding *Flores* bond hearings. The care provider staff person informs the UAC that they may request a *Flores* bond hearing immediately, or that they can request one at a later time (including after consulting with an attorney). 🗐

3.  The UAC reviews the *Request for a Flores Bond Hearing* and checks off the appropriate boxes, and signs/dates the form. The care provider maintains the *Request* in the UAC's case file, unless the UAC declines to sign or fill out the document in which case the care provider notes in the UAC's case file that the child declined to sign or fill out the form. If the child later requests the *Request for a Flores Bond Hearing* the care provider must provide the form. 🗐

**Providing Subsequent Notice**

1.  In addition to providing notice at admission/orientation, the case manager provides the notice for:
    - Any child in any placement type if a UAC asks for a *Request for a Flores Bond Hearing* **any time after** the Admission and Orientation process. 🕮 🗐
    - Any child in any placement type, if a child is **denied** release based on a finding that the child is a danger to the community. 🗐

    In these cases, the case manager provides the *Request for a Flores Bond Hearing* when informing the UAC that his or her sponsorship has been denied. 🕮

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)

Exhibit 3
Page 224

GOV-00207464

2. The case manager informs the UAC that they may request a *Flores* bond hearing immediately, or that they can request one at a later time (including, after consulting with an attorney). The case manager explains that the UAC should consult with their attorney (if applicable) for any legal advice or questions regarding bond hearings.

3. The UAC reviews the *Request for a Flores Bond Hearing* and checks off the appropriate boxes, and signs/dates the form. The care provider maintains the *Request* in the UAC's case file, unless the UAC declines to sign or fill out the document in which case the care provider notes in the UAC's case file that the child declined to sign or fill out the form. If the child later requests the *Request for a Flores Bond Hearing* the care provider must provide the form.

**NOTE:** It is important for ORR's record keeping that the UAC provides the date he or she signs the *Notice* document.

**Quick Glance: Bond Hearing Notifications**

| When Required | Timeframe | Methods |
|---|---|---|
| UAC placed in secure, staff secure, and RTC. | **Admissions and Orientation: Within 24-48 hours of the UAC's admission into the care provider's care.** | Oral notification with signed acknowledgment of *Request for a Flores Bond Hearing* by UAC. |
| UAC placed in other shelter types who request the notice. | At time of request. | *Request for a Flores Bond Hearing* with signed acknowledgment by UAC. |
| For any UAC in any placement type, if ORR denies release based upon danger to the community. | When informing UAC of denial of sponsorship. | *Request for a Flores Bond Hearing* with signed acknowledgment by UAC; includes notification that UAC may contact an attorney with questions. |

**Processing Bond Hearing Requests**

1. After a child has completed a *Request for a Flores Bond Hearing* and requested a *Flores* Bond Hearing, the case manager completes the *ORR Motion Requesting Flores Bond Hearing for Unaccompanied Alien Child –Secure or Staff-Secure Custody* or *ORR Motion Requesting Flores Bond Hearing for Unaccompanied Alien Child (Non-Secure) Shelter Care*, depending on the child's placement type. 

2. The case manager notifies ORR of the request at
ORRBondHearings@acf.hhs.gov **within 1 business day** (absent exigent
circumstances) of the child making the request, using the email template below,
and attaches both the *Request for a Flores Bond Hearing* and the *ORR Motion
Requesting Bond Hearing for Unaccompanied Alien Child Secure or Staff-Secure
Custody/(Non-Secure) Shelter Care.* ✇⊠

---

## ⊠ Email Template: Bond Hearing Request

| | |
|---|---|
| **From:** | Care Provider |
| **To:** | ORRBondHearings@acf.hhs.gov |
| **Cc:** | FFS, local Legal Service Provider or Attorney of Record |
| **Subject:** | [WARNING: MESSAGE ENCRYPTED] [last four digits of UAC A#] Bond Hearing Request |
| **Body:** | The above named UAC A# (XXX-XX1-234) has requested a bond hearing. The UAC is placed at [name of care provider facility].<br><br>The UAC is/is not represented by an attorney [if represented include attorney's name and contact information].<br><br>Password will be sent shortly. |
| **Attachments:** | *Request for a Flores Bond Hearing; ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child Secure or Staff-Secure Custody/(Non-Secure) Shelter Care* |

**NOTE:** Case managers must password protect Personally Identifiable Information (PII).
Attached documents must be password protected. The body of the email includes the
message that the password for the attached documents will be sent separately. A second
email should include the universal UAC Password which should be used by all care providers
and ORR staff and contractors. Do not include PII in follow up emails.

---

### Preparing for *Flores* Bond Hearing Requests

1. Within **1 business day** of receiving notice that the hearing has been scheduled,
ORR HQ notifies the minor's attorney (if applicable) and care provider of the date
and time and location of the court. ✇⊠

2. The care provider and FFS respond to ORR HQ requests for information and
evidence in a timely manner. See **Quick Glance: Possible Evidentiary Sources to
Finding Danger to the Community**. ✇⊠▤

Exhibit 3
Page 226

GOV-00207466

| **Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community** |
|---|

- Juvenile court or criminal records
- Police records
- Intakes referral and placement records in the UAC Portal
- Placement Tool
- Initial Intakes Assessment
- UAC Assessment/UAC Case Review
- Relevant clinical notes
- Psychological records/reports
- Significant Incident Reports, as applicable
- 30 day Case Review(s)
- Other documents, if relevant

### *Flores* Bond Hearing Proceedings

1. The care provider follows standard immigration court transport procedures for transporting the UAC to their scheduled *Flores* bond hearing *if* there is a hearing scheduled. See Section 3.3.14 Transportation Services. 📖

2. The *Flores* bond hearing proceedings commence. After conclusion the immigration judge issues an order and delivers it to the ORR Representative. The ORR Representative keeps the original order for filing at HQ, and provides a copy to the care provider point of contact. 📄

3. The care provider saves a copy of the order in the UAC's case file (the deadline to appeal is 30 days). If the UAC was not present at the hearing, the care provider verbally informs the UAC of the decision. 🕑

# Appendix 2.1 How to Protect PII and Create Password Protected Files

ORR expects all care providers, staff and contractors to protect personally identifiable information (PII) that is transmitted via email. Files that are uploaded to the secure UAC Portal do **not** need to be password protected.

PII should be included in the subject line or body of an unencrypted email to the extent necessary for users to access the information for authorized purposes. PII should be redacted as much as possible in unprotected emails. For example, only use initials or the last four digits of an alien registration number.  Neither the subject line nor the body of an unencrypted email should contain more than one type of sensitive PII.  For example, a name and an alien registration number should not both be used.

Any document that contains PII must be password protected. The password for the document must be emailed separately. When encrypting files for attachments, all care providers, staff and contractors should use a standard password that is universally used by all parties involved in the process. Care providers should contact their PO or their FFS for questions about this password. (Do not password protect any emails.)

Emails containing PII must never be sent to personal email accounts.

## What is PII?

**Personally Identifiable Information (PII)** – Information within an IT system or online collection: (1) that directly identifies an individual (e.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.), or (2) by which an agency intends to identify specific individuals in conjunction with other data elements (i.e., indirect identification). (These data elements may include a combination of gender, race, birth date, geographic indicator, and other descriptors.)

Please note that Alien Numbers are PII.

## How to Protect PII

Password protect all **attachments** and send the ORR UAC universal acceptance password by separate email. Do not include PII in the name of the attached document (i.e., no full names or Alien Numbers in the name of the document).

Use the following format to limit any identifying information regarding sponsors and UAC in the subject line of emails: sponsors, use initials in subject line; UAC, last four digits of A number.

When sending follow-up emails do not include PII.

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)          94 | Page

Exhibit 3
Page 228

GOV-00207468

## How to Password Protect Word Files

In the 2007 Microsoft Office system: Set a password in a Word document (To encrypt your file and set a password to open it):

1. Click the Microsoft Office Button , point to Prepare, and then click Encrypt Document.



2. In the Encrypt Document dialog box, in the Password box, type the standard UAC password and then click OK.

> (By default, this feature uses AES 128-bit advanced encryption. Encryption is a standard method used to help make your file more secure.)

3. In the Confirm Password dialog box, in the Reenter password box, type the password again and then click OK.

4. To save the password, save the file.

Remove password protection from a Word document

1. Use the password to open the document.

2. Click the **Microsoft Office Button**, point to **Prepare**, and then click **Encrypt Document**.

Exhibit 3
Page 229

GOV-00207469

3. In the **Encrypt Document** dialog box, in the **Password** box, delete the encrypted password, and then click **OK**.

4. Save the file.

### Password Protection for MS Word and Excel Files 2007:
https://support.office.com/en-us/article/Password-protect-documents-workbooks-and-presentations-ef163677-3195-40ba-885a-d50fa2bb6b68

### Password Protection WinZip:
http://kb.winzip.com/help/help_actions_encrypt.htm

## How to Password Protect Adobe Files

**Step 1:** Navigate to the main Adobe website and click the yellow **Free 30-day trial** button in the upper-left corner. Then, select a save location for the resulting file and follow the on-screen installation wizard to install the program as you would any other piece of software.

**Step 2:** Launch Adobe Acrobat, click the **File** menu in the upper-left corner, and select *Open*. Afterward, choose the PDF file you want to password protect from its respective save location and click the **Open** button.

**Step 3:** Click the **File** menu again when viewing the open document, followed by **Properties** and **Security.**



**Step 4:** Click the drop-down menu to the right of **Security Method,** then select **Password Security** from the resulting list of options.

Exhibit 3
Page 230

GOV-00207470



**Step 5**: A window should appear prompting you for a password. Check the box beside **Require a password to open the document** and enter the UAC standard password into the corresponding text field.

# Appendix 2.2 How to Report Potential Fraud Schemes

*This information is also included in Section 5.7 of the UAC MAP.*

## OVERVIEW

### Types of Fraud Incidents

There are criminals who target relatives of unaccompanied children entering the United States by demanding money from sponsors and/or family members, claiming the money will cover processing, reunification, and travel expenses needed to allow the children to be reunited with their families. They may also assert that these funds will enable the UAC to be released quicker to the prospective sponsor. **ORR DOES NOT CHARGE ANY FEE TO PROSPECTIVE OR APPROVED SPONSORS AS A CONDITION OF RELEASE OF AN UNACCOMPANIED CHILD. ANY DEMAND FOR PAYMENT OF FEES IS NOT AUTHORIZED BY ORR AND SHOULD NOT BE PAID.**

For example, an individual claiming to represent a charitable/non-profit organization may contact a potential sponsor and say that s/he can assist in processing and reuniting an unaccompanied child with his or her family. In this scenario, the individual falsely tells the potential sponsor that s/he needs to pay a fee to obtain the release of the child from ORR custody. Similarly, this individual may ask the potential sponsor to wire money to unknown persons in different cities.

This type of fraud is a serious crime and ORR fully cooperates with local and federal law enforcement for the investigation and prosecution of any individual(s) participating in the fraud scheme. If the fraud scheme involves care provider staff, ORR instructs the care provider to contact local law enforcement and to follow its local licensing guidelines regarding reports of inappropriate employee behavior. The care provider should also inform its local licensing agency that the case was referred to HHS/OIG and local law enforcement for investigation. Care providers should have internal protocols in place to address fraud schemes. A care provider facility must take disciplinary action including termination of any staff for criminal behavior, including fraud.

Care providers must take steps to:

1) Prevent these or other fraudulent practices by notifying all potential sponsors that ORR, its care providers, volunteer agencies, and grantees/contractors do not collect or require fees for any services related to the release of unaccompanied children from HHS custody.

2) Care providers should have written confirmation from staff members acknowledging the "Fraud Scheme" policy to be placed in employee files.

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)                    98 | Page

Exhibit 3
Page 232

GOV-00207472

3) Immediately ensure the safety of children and sponsors by reporting any attempts to extort money or otherwise take advantage of unaccompanied children and sponsors to ORR, HHS/OIG, local law enforcement, state licensing, if Care Provider staff are involved.

## PROCEDURES

### Checking for Potential Fraud Schemes

1. The case manager includes the script that is noted in 2.2.2 Contacting Potential Sponsors and informs all potential sponsors:

   - To report any suspicious calls or other contact received (e.g., emails, letters, instant messages) to the care provider facility and ORR directly.

   - Call the ORR National Call Center Help Line at **1 (800) 203-7001**. Sponsors may call the help line to inform ORR if a person defrauds or attempts to defraud them of money.

   Case managers should document any information they provide to a sponsor regarding the reporting of suspicious contacts, to include the sponsor's identity, date, time and the information provided.

2. Prior to every release, the case manager asks the sponsor if they have been contacted and asked to pay fees/money related to the release of the UC. If the answer is yes, gathers the following information, and documents the information that the potential sponsor provides on the *Sponsor Information* section:

   - UC full name, alien number, and date of birth

   - Time and date of the report

   - Name of the ORR care provider facility and care provider address (include city/state)

   - Name, telephone number and location of the sponsor;

   - Name, phone number, and other contact information given by the person/program who filed the report

   - Description of the event
     - Date and time of the alleged incident
     - If money was asked for from the sponsor
     - Whether money was actually paid by the sponsor
     - Amount and method of any payment made (e.g., wire transfer, money order)

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)            99 | P a g e

Exhibit 3
Page 233

GOV-00207473

- o If sponsor retained receipt/proof of payment application such as PayPal, Apple Pay, Google Wallet, etc., a copy should be provided.
- o Identifying information for receiving account of any payment made to include account name, account number, routing number, or other account identifiers.
- o Name and description of any individuals or organizations involved in the incident
  - If the sponsor was contacted by someone, name, phone number, and other contact information of the person/program who contacted the sponsor
  - Location where the alleged incident occurred (include location name, address, city, state)
  - Provide any additional identifying details such as places of birth, countries of citizenship, and alien numbers
  - Detail how the individual or organization is involved in the incident
- o Name and alien number (if applicable) of any potential witnesses

- Any other details for which the caller has information. For example, if the sponsor was requested to wire funds, have the sponsor provide detailed information about the wire (name and address of recipient and whether it was money gram, western union, etc...). Many times the name and location of the caller is different than the name and address on the wire.

- Actions taken (including reports made to other individuals or entities and any associated case numbers)

## Reporting Potential Fraud Schemes

1. **Within 4 hours of the significant incident (or within 4 hours of the care provider becoming aware of the incident,** the case manager completes a Significant Incident Report (SIR) in the UAC Portal with all of the information gathered. 🕐 📋

2. The case manager notifies ORR based on the email template below and includes a copy of the SIR and notification email in the UAC's case file. ✉

| ✉ **Email Template: Care Provider Notification to ORR of Potential Fraud Scheme** |  |
|---|---|
| **From:** | Case Manager |
| **To:** | SIRHotline@acf.hhs.gov |
|  | Project Officer |
|  | FFS Supervisor |
|  | FFS |

Exhibit 3
Page 234

GOV-00207474

|  | CFS |
|  | Case Coordinator |

**Subject:** Report of Significant Incident [include the event number (e.g., "Event 12345")]

**Body:** Use Synopsis of Event from the UAC Portal and do not include UAC's full name or alien number

**Attachments:**
- *SIR*
- Relevant supporting documentation

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

3. The case manager reports the fraud allegation to local law enforcement and obtains and saves an incident report number or copy of the incident report from local law enforcement.

4. If care provider staff is involved, the case manager reports to state licensing and obtains and saves an incident report number or copy of the incident report.

5. The FFS reviews the fraud allegation in the SIR and ensures that the SIR is clearly written with all required information. (If SIR is missing information, the missing information will be submitted in an SIR Addendum.)

6. **Within 1 business day of receiving the SIR**, the FFS reports all types of fraud schemes, whether attempted or successfully perpetrated to HHS Office of the Inspector General (OIG) at UAC@oig.hhs.gov based on the email template below and instructs the case manager to save a copy of the reporting email to the UAC case file. ✇✉

### ✉ Email Template: ORR Notification to HHS OIG of Potential Fraud Scheme

| From: | FFS |
|---|---|
| To: | UAC@oig.hhs.gov |
| Subject: | Report of Fraud [include the event number (e.g., "Event 12345")] |
| Body: | Use Synopsis of Event from the UAC Portal and do not include UAC's full name or alien number |
| Attachments: | • *SIR* |

- Relevant supporting documentation

**NOTE:** Case managers must password protect Personally Identifiable Information (PII). Attached documents must be password protected. The body of the email includes the message that the password for the attached documents will be sent separately. A second email should include the universal UAC Password which should be used by all care providers and ORR staff and contractors. Do not include PII in follow up emails.

7. If HHS OIG opens an investigation for the reported allegation, the FFS notifies the FFS supervisor, PO and CFS and these parties fully cooperate with the investigation.

8. If the fraud scheme involves care provider staff, the FFS:

- Follows up with HHS OIG **within 10 business days** to determine if the reported fraud allegation will be investigated further.

- Instructs the care provider to follow their local licensing guidelines regarding reports of inappropriate employee behavior and to inform their local licensing agency that the case was referred to HHS OIG.

- Provide the care provider with technical assistance.

- If applicable, issues corrective action findings and requires the care provider to take appropriate action.

- Ensure that program submit/have internal disciplinary protocols to address Fraud Scheme involving care provider staff.

Exhibit 3
Page 236

GOV-00207476

# Appendix 2.3 Reporting Agencies for Suspected Document Fraud for Most Common ID Documents in Key States

The chart below indicates the procedures and contact information for reporting suspected cases of document fraud by state. All reports should include any information about the suspect or the circumstances surrounding the fraud. The U.S. Department of Health and Human Services Office of the Inspector General should be copied in the correspondence with the state agency (UAC@oig.hhs.gov).

| State | Reporting Agency if Suspected Fraud |
|-------|-------------------------------------|
| California | California Department of Motor Vehicles: Email dlfraud@dmv.ca.gov. |
| Maryland | Maryland Department of Transportation:  Email Eric Danz, the Director of Investigations and Security within the Office of Investigations and Internal Affairs, Maryland Motor Vehicle Administration, at edanz@mdot.state.md.us; CC: Paul Adams at padams@mdot.state.md.us. |
| Georgia | Georgia Department of Driver Services: Email reportfraud@dds.ga.gov, or call (678) 413-8766. |
| Florida | Florida Highway Safety and Motor Vehicles: Complete the "Fraud Investigation Request" form by clicking here, and email Fraud@flhsmv.gov or mail to Driver License Fraud Section, Room A327, Neil Kirkman Building, Tallahassee, Florida 32399-0570. |
| Virginia | Virginia Department of Motor Vehicles: Complete form LE 22 (use the search button to find), available at https://www.dmv.virginia.gov/forms/default.aspx, and email to zerofraud@dmv.virginia.gov. |
| New Jersey | New Jersey Motor Vehicle Commission Security & Investigations Office:  Email TOCFRLAB@mvc.nj.gov or call 609-777-3903. |
| New York | New York State Department of Motor Vehicles: Complete FI-17 Report of Unauthorized Use of License/Registration (must be notarized), available at https://dmv.ny.gov/forms/fi17andfi17i.pdf, and mail to New York State Department of Motor Vehicles, Division of Field Investigations, 6 Empire State Plaza, Albany NY 12228. Call the NYS DMV Division of Field Investigation with any questions, Tuesday, Wednesday, or Thursday from 9:00 a.m. to 4:00 p.m. at (518) 473-6464. |
| Texas | Texas Department of Public Safety, Intelligence & Counterterrorism: Email Erika Fisher, Texas Joint Crime Information Center, at Erika.Fisher@dps.texas.gov, or call (512) 462-6108. Include a brief synopsis of the event. |

Exhibit 3
Page 237

GOV-00207477

# Appendix 2.4 Child Advocate Recommendation and Appointment Form

OMB Control No: 0970-0498
Expiration date  7/31/2020



**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (HHS)**
**OFFICE OF REFUGEE RESETTLEMENT (ORR)**
*DIVISION OF UNACCOMPANIED CHILDREN OPERATIONS (DUCO)*
**CHILD ADVOCATE RECOMMENDATION AND APPOINTMENT**

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 section 235(c)(6) authorizes the Secretary of Health and Human Services to appoint "independent child advocates for child trafficking victims and other vulnerable unaccompanied children." This appointment authority has been delegated to the Office of Refugee Resettlement (ORR). ORR will use this form to determine whether a Child Advocate shall be appointed and to document the Child Advocate's appointment for UAC in ORR/DUCO care and custody.

**SECTION 1** *(To be completed by the initial referrer)*
**A. UAC INFORMATION:**

| | |
|---|---|
| Name of UAC | A#: |
| Date of Birth | Nationality: |
| Language(s) spoken by UAC: | Current location: |
| Name of referrer | Date of UAC's arrival at care provider: |
| Relationship of referrer to the UAC | Date of referral: |

**B. CHECKLIST (PLEASE CHECK ALL THAT APPLY)**

☐ Is between the ages of 0-12

☐ Is placed in a residential treatment center or therapeutic facility

☐ Is pregnant or parenting

☐ Has a physical or mental disability

☐ Is a national from a country known to traffic children

☐ Has been identified as a possible child trafficking victim (Interim Assistance Letter, Eligibility Letter, etc.)

☐ Has a criminal or delinquency history and/or is placed in a staff secure care provider or secure care provider, and there are outstanding issues impacting the UAC's release or discharge plan

☐ Has been a victim of a crime

☐ Is not proficient in a language spoken by staff at the UAC's care provider, and for whom there is no accessible interpreter routinely available

☐ Will turn 18 in less than six (6) months of placement and for whom family reunification is unlikely

☐ Is identified as being eligible for legal relief

☐ Has a credible fear of returning to their country of origin and/or are seeking voluntary departure despite concerns about their safety in their home country

☐ Lacks appropriate legal representation, or for whom there is a good faith belief that the child's legal representative has ties to child trafficking or criminal activity

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104-13) Public reporting burden for this collection of information is estimated to average .50/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number

Exhibit 3
Page 238

GOV-00207478

☐ Is expected to have a protracted stay of over 120 days in ORR/DUCO custody

☐ Whose potential sponsor is undergoing a home study

☐ Is unable to make an independent decision

☐ Any other case where the UAC is considered to be exceptionally vulnerable.  Explain here.

---

**SECTION 2** *(To be completed by the child advocate program)*

**A. Does your program recommend that ORR appoint a Child Advocate, and confirm that an individual Child Advocate is available for this UAC based on the criteria selected?**

☐ Yes          ☐ No

If No, explain here

If more information needed, explain here.

**B. Name of child advocate program official making the recommendation**

| | Date | |
|---|---|---|

**C. Name of the individual Child Advocate identified for assignment**

**SECTION 3** *(To be completed by ORR/DUCO)*

A. Is the recommendation for the appointment of a Child Advocate approved for the above named UAC?

☐ Yes          ☐ No

If No, explain here

| | Oct 3, 2017 |
|---|---|
| Signature of ORR/DUCO Division Director | Date |

THE PAPERWORK REDUCTION ACT OF 1995 (Pub. L. 104.13) Public reporting burden for this collection of information is estimated to average .50/ hour per response, including the time for reviewing instructions, gathering and maintaining the data needed, and reviewing the collection of information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

# Appendix 2.5 Sponsor Assessment Interviewing Guidance

## SPONSOR ASSESSMENT INTERVIEWING GUIDANCE

Case Managers and Clinicians must use the interview questions below when interviewing Sponsors in their assessment of a potential sponsor's suitability. Avoid reading the questions verbatim. Instead ask questions in a conversational manner and engage the sponsor. During the interview, the interviewer must ask follow-up questions based on initial responses and obtain as much detail as possible. Answers and information provided by sponsor must be documented in the *Sponsor Assessment*.

### INTERVIEW QUESTIONS

#### SPONSOR CULTURAL INFORMATION

*Use these questions to determine the Sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children. All responses must be documented in the Sponsor Cultural Information section of the Sponsor Assessment.*

- What languages and dialects do you speak?
- Are you spiritual or religious? *If yes-* What are your beliefs?
- What faith do you practice, if any? How do you practice your faith?
- Are there traditions you have practiced, through your family or in your home country, which are important to you? *If yes-* What are they?

- Are there religious or family traditions or practices that you expect the UAC to adhere to or participate in?
- Is there anything else you would like to share about your culture or background?

#### FAMILY RELATIONSHIPS

*Use these questions to determine the sponsor's familial and other significant relationships in country of origin and in the U.S. All responses must be documented in the Family and Significant Relationships section of the Sponsor Assessment. If the Case Manager has already gathered information regarding the sponsor's family, it may not be necessary to ask some of these questions. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.*

**Family in Country of Origin**
- Do you have family in your home country?
  - Who are they and how often do you have contact with them?
  - How do you contact them (phone, social media, instant messaging)?

**Family in the U.S.**
- Do you have family in the U.S.?
  - Who are they and how often do you have contact with them?
  - Where does he/she live?
  - What is his/her name and age?
  - Do you have any relatives who are or were in ORR care? Do you know where they are?

**Spouse/Partner**
- Do you currently have a partner?
  - What is your partner/spouse's name and age?
  - Where is your partner/spouse living?
  - How long have you been together?
  - What is your relationship like with your partner/spouse?
  - Is your spouse/partner supportive of the ORR family reunification process?
  - Is the spouse/partner in agreement with taking in the UAC into the home?
  - Has the spouse/partner had any contact with the UAC?
  - Would the spouse/partner contribute with support of the UAC (e.g., supervision, babysitting, financial)?

**Children**
- Are you a parent to a child?
  - What is your child's name and age?
  - Where is your child?
  - Did your child come to the U.S. with you?
  - Who is the mother/father?
  - Who is currently caring for your child?
- How do you discipline your children?
- Have you or your spouse/partner ever had Child Protective Services involvement?
- Have you ever had any child or children removed from your custody? If so, why?
- Has any household member ever had a child or children removed from their custody? If so, why?

#### HOUSEHOLD COMPOSITION

*Use these questions to determine the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease; or criminal convictions or charges. All responses must be documented in the Household Composition section of the Sponsor Assessment.*

- Who lives in the home?
- What will the sleeping arrangements be for the minor?

- ○ What is his/her name and age?
- ○ What is the household member's relationship to the minor?
- ○ What is the household member's relationship to you?
- ○ What has your relationship been like with him/her?
- ○ How long have you known him/her?
- ○ Will the household member be helping to care for the UAC or babysit?
- ○ Does the household member work and/or contribute financially to the household?
- ○ Does any person in your household have a serious contagious disease (e.g., TB, AIDS, hepatitis)? If so explain.
- Describe your home (e.g., Apartment, duplex, trailer, townhouse, running water, working electricity, swimming pool, pets, how many rooms, bathrooms).

- ○ Do you currently share your bedroom?
- ○ Will the minor be sharing the room with anyone or will the minor have his/her own room?
- How do you expect the UAC to contribute to your household?
  - ○ Financially, through wages
  - ○ Child care
- Does anyone in the household have a serious, contagious disease? If yes, explain.
- Do any of the occupants have criminal convictions or charges, other than minor traffic violations? If yes, explain.

## PREVIOUS SPONSORSHIP ATTEMPTS

*Use these questions to determine if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, use these questions to assess the safety and well-being of previously released minor to confirm the provision of physical/mental well-being, appropriate home accommodations, adequate supervision, attendance to school, accompaniment to immigration court hearings, and provision of a caring and secure/protective environment. All responses must be documented in the Previous Sponsorship section of the Sponsor Assessment.*

**Sponsor's Previous Sponsorship Attempts**
- Have you ever attempted to sponsor a child from ORR, but decided to withdraw your application?
  - ○ If yes, then why did you withdraw?
- Have you ever been denied sponsorship by ORR?
  - ○ If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Household Members Previous Sponsorship Attempts**
- Has anyone who live in your home ever attempted to sponsor a child from ORR, but decided to withdraw their application?
  - ○ If yes, then why did they withdraw?
- Were they ever denied sponsorship by ORR?
  - ○ If yes, then why did ORR deny your sponsorship application?
- How many children did you sponsor and where are they now?
- Are the children related to you? If not, how do you know them?
- Where are they from and how old are they now? If they no longer reside with you, where do they live?
- Do you have his/her current contact information?

**Former UAC's Safety and Well-Being**
- Did the sponsor undergo a home study? If so why?
- Is or has the child received Post Release Services?
- Is the child enrolled in or attending school?
- When is the child's upcoming court date?
- Do you have school enrollment records?
- Do you have physical proof that the minor is/has attended school and court?
- Did the sponsor attend an LOPC presentation?
- Have you been contacted and asked to pay fees or wire money related to the release of the child?

## PROOF OF IDENTITY

*Use these questions in conjunction with documentation provided by the sponsor to assess the Sponsor's identity. The interviewer must be cognizant of the Sponsor's familiarity with and connections with the reported country of origin; attitude; behavior; speech; affect; mood; thought process and thought content; memory and concentration; and insight and judgment during the entirety of the interview. The interviewer's assessment of these elements must be documented in the Proof of Identity section of the Sponsor Assessment.*

**Life in Home Country**
- Where did you live before you arrived in the U.S.? (If U.S. Citizen modify question to: Where did you grow up in the U.S.?)
  - ○ How long did you live there?
  - ○ With whom did you live?
- What was your experience like there?

**The Journey (If not born in the U.S.)**
- When did you first come to the U.S.?
  - ○ How old were you when you first traveled to the U.S.?
- What brought you to the U.S.?
  - ○ What were you planning on doing in the U.S.?
  - ○ Where did you live?

Sponsor Assessment Interviewing Guidance, Rev. 06/24/2019
ORR UAC/S-1

Page 2 of 7

Exhibit 3
Page 241

GOV-00207481

- Have you lived anywhere else? With whom? When and for how long?
  - With whom did you live? Did you know them?
- When did you first leave home country?
  - How long did the trip take?

## PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP

*Use these questions in conjunction with documentation provided by the sponsor to determine the Sponsor's immigration status or U.S. citizenship. The interviewer's assessment of these elements must be documented in the Proof of Immigration Status or U.S. Citizenship section of the Sponsor Assessment.*

- Are you a U.S. citizen?
- Have you ever applied for immigration relief?
  - What type of relief did you apply for?
  - What is the status of your application?
  - Were you given any forms or documents?
- Have you ever been apprehended a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?
- Have you had any other type of interaction with a U.S. immigration official?
  - What happened?
  - Were you given any forms or documents?

## PROOF OF RELATIONSHIP

*Use these questions in conjunction with documentation provided by the sponsor to probe the sponsor's familial and interpersonal relationship with the UAC in order to verify the type of relationship. All responses must be documented in the Proof of Relationship section of the Sponsor Assessment.*

- What is the sponsor's relationship with the child?
- Has the sponsor ever met the child?
- When did the sponsor first meet the child?
- When was the last time the sponsor saw the child?
- When was the last time the sponsor's partner saw the child?
- How frequently does the sponsor visit the child?
- Has the sponsor ever visited the child while he/she was living in his/her country of origin?
- When did the sponsor last visit the child's country of origin?
- How frequently does the sponsor visit the child's country of origin?
- How did the child and sponsor keep in contact? How often?
- Did the sponsor financially provide for the child? If so, amount and how often?
- Has the sponsor ever met a family member of the UAC? Can the family member be verified as related to the UAC?)
- Has the child ever lived in the same home as the sponsor?
  - How long did the child live with the sponsor?
  - Did the sponsor ever act as a primary caregiver while living with the child?
  - How long did the sponsor act as the child's primary caregiver?
  - Where were the child's biological parents at the time?
  - Why were the child's biological parents unable to provide primary care for the child?
  - Did the child's biological parents ask/consent to the sponsor being the primary caregiver?
  - Who took responsibility for the following while the child lived with the sponsor: bathing and feeding the child, health care arrangements, supervising and disciplining the child, financial support for the child, and consoling/comforting the child?
  - Did the sponsor ever sexually or physically abuse the child, or through negligence allow others to sexually or physically abuse the child?
  - Did the sponsor ever abandon or mistreat the child?
- Why does the sponsor want to sponsor the UAC?
- Does the sponsor expect the UAC to work?

## PROOF OF ADDRESS

*Use these questions to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. . The interviewer must be cognizant of the sponsor's familiarity with and connections with the reported residence. The interviewer's assessment of these elements must be documented in the Proof of Address section of the Sponsor Assessment.*

- Where do you currently live in the U.S.?
  - How long have you lived there?
  - With whom do you live?
  - Do you live in a house or apartment complex?
  - How many bedrooms does the residence have?
  - Do you own where you live or rent?
  - What is the current sleeping arrangement?
  - Do you receive your mail at a different address?
  - How many schools are in the area?
  - What is the crime level in the area?
  - How far away is the nearest hospital?
  - What is and how far away is the nearest grocery store?
- Have you lived anywhere else in the U.S.?
  - Where did you live in the U.S.?
  - When and how long did you live there?
  - With whom did you live?

## PROOF OF STABILITY

*Use these questions to assess the sponsor's ability to support and financially provide for the minor while in their care. The interviewer's assessment of these elements must be documented in the Proof of Stability section of the Sponsor Assessment.*

- Does the sponsor have a job?
- Does the sponsor have financial needs?
- Does the sponsor have adequate housing?

## SPONSOR CARE PLAN

*Use these questions to ensure that the sponsor's plan to care for the minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs. Discusses with the sponsor the UAC's criminal offenses, behaviors and concern(s) related to the victims, the community and to the UAC as well as the obligations of the UAC and sponsor to address causes of behavior and prevent recidivism by participating in post release services. Assists sponsor in identifying community service providers and programs, and encourages sponsor to become aware of and participate in applicable services such as parenting classes/services, gang prevention services, substance abuse services, other forms of psycho-education in preparation for UAC's release. All responses must be documented in the Sponsor Care Plan section of the Sponsor Assessment.*

### Care Plan

- Tell me about your plans to address the UAC's educational needs.
  - What school will the minor be attending?
  - What do you know about the school enrollment process?
  - Who will transport the UAC to and from school?
  - Who will supervise the UAC before and after school?
- Are you aware of any special needs the UAC may have that may require special attention?
  - Does the minor have any medical or mental health issues currently?
  - Does the minor have any prior medical or mental health issues?
  - How were these needs addressed in home country or previous residence?
  - Tell me about your plans to address the UAC's medical and mental health care needs and counseling needs.
  - What are the medical services in your area?
  - What are the counseling services in your area?
- Tell me about the types of community resources and services that you plan to access to address the UAC's needs.
  - What types of community resources and services to you live near?
  - What community resources do you currently utilize?
  - What types of community resources have you identified for the UAC? (e.g., school, medical clinic, mental health services agency)
  - If you needed medical assistance, where would you go? How close is that medical service to your home?
- Tell me about the minor's personality, behavior, strengths, and overall functioning.
  - How would you describe the minor's personality?
  - How does the minor get along with adults and with other children?
  - What kind of feedback or discipline does the minor best respond to?

- How do you plan to manage the minor's behaviors?
- Describe the minor's special interests, talents, hobbies, including likes and dislikes.
- Does the minor have any criminal history or behavior issues that you are aware of?
- Did you read the Sponsor Handbook and watch the Sponsor Video?
- Will you accept assistance from Post-Release Service providers, if needed?

### Safety Plan

- Explain how you plan to ensure the safety of the minor.
  - Are you aware of any abuse or any significant traumatic events?
  - Are you aware of any safety concerns for the UAC? Has anyone threatened the minor or their family? If so, what is the safety plan?
  - Are you aware of any history of gang involvement, violence, or juvenile justice history?

### Supervision Plan

- Do you have family or friends nearby that will be helping to care for the minor? If yes, list name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.
- Explain how you plan to supervise the minor.

### Alternative Caregiver Plan (only for sponsors who are not U.S. citizens or Lawful Permanent Residents)

- Who will care for the minor in the event that you need to leave the country? List name, SSN/A#, age, DOB, home address, phone number, gender, relationship to sponsor, type of identity document received, results of background check, as applicable.

## CRIMINAL HISTORY

*Use these questions to sponsor's self-disclosures of any criminal charges, sexual offenses or child abuse/neglect charges or arrests. Ask specific questions that may reveal possible disqualifying factors under Criteria for Release Denial. ➜ ORR Policy Guide, Section 2.7.4 Deny Release Request*

- Have you had any type of encounter with law enforcement (uniformed or not)?
- Have you ever been fingerprinted?

○ Have the police ever visited your home? If so, please provide details.
○ Do you have any criminal history in your country of origin?
○ Do you have any criminal history in the United States?
○ Have you ever been arrested/hand cuffed?
○ Have you ever been stopped by the police while driving a vehicle or as a passenger?
○ Were you ever in a public place/park or car drinking or in possession of an open alcoholic container which resulted in the police being called or law enforcement approaching you for your information, incarceration or citation?

• Have you ever been arrested or charged with a crime? *If yes, for each charge ask:*
○ What happened?
○ When did this happen? How old were you?
○ Where did this happen (country, state, city, local town/province/neighborhood)?
○ Who were the victims (relation to UAC, names)?
○ What was the outcome in court?
○ Have you ever been assigned to a probation/parole officer?

• Are you on probation or parole? *If yes, ask:*
○ When did probation/parole start?
○ How long will it last and in what state or country?
○ What are the conditions of your probation/parole (special classes, community service)?
○ Do you know the name and number of your probation/parole officer?

• Have you ever been detained for drinking, driving under the influence of alcohol/drugs?

• Have you ever been held in juvenile detention or adult jail? *If yes, ask:*
○ How many times?
○ Where were you held?
○ How long were you incarcerated?
○ What were the dates of incarceration, as you can best remember?

• Have you experienced any violence or threats while in government custody (local, state, DHS custody, and DCS custody)? *If yes, ask:*
○ What happened?
○ Where did this happen?
○ When did this happen?

• Have you ever had an argument with a paramour/partner/spouse that resulted in the police being called? If so, please provide details

• Have you ever been involved in a gang? *If yes, ask:*
○ What gang(s) and for how long?
○ When and how did you become involved?
○ What was your involvement in the gang? Did you have specific roles or responsibilities? What were these roles and responsibilities?
○ Did the gang encourage or require criminal behavior?
○ Do you have any gang tattoos?
○ Were you trained to build and use weapons (guns, bombs, machetes)?

• Are any of your relatives involved in gang activities? *If yes, ask:*
○ Which relative(s)?
○ What gang(s) and for how long?
○ What is their involvement in the gang?

• Have you ever committed a crime for which you were not caught? *If yes, ask:*
○ What happened?
○ When did this happen? How old were you?
○ Where did this happen (country, state, city, local town/province/neighborhood)?
○ Who were the victims (relation to UAC, names)?

• Have you ever caused bodily harm to another person(s) or animal(s)? *If yes, ask:*
○ What happened?
○ When did this happen? How old where you?
○ Where did this happen (country, state, city, local town/province/neighborhood)?
○ Who were the victims (relation to UAC, names)?

• Have you ever used a different name or date of birth?

## UAC JOURNEY AND APPREHENSION

*Use these questions to determine if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the Sponsor Assessment responses. All responses must be documented in the UAC Journey and Apprehension section of the Sponsor Assessment.*

### Life in Home Country
• Where did the minor live before arriving in the U.S.?
○ How long did the minor live there?
○ With whom did the minor live with?

• Whose decision was for the UAC to live with the said certain individuals?

• Did the UAC attend school, work, or both?

• Did the UAC have any hobbies in home country? What were they?

• Has the UAC lived anywhere else? With whom? When and for how long?

• Who was the UAC living with when he/she decided to leave his/her home country?

### The Journey
• Do you know why the UAC decided to travel to the U.S. at this time?
○ What is the UAC planning on doing in the U.S.?

• How did the UAC get to the U.S.?
○ Did anyone arrange travel for the UAC? If yes – Who? Did you arrange the UAC's travel?
○ Did the UAC travel with anyone (such as siblings, parents, family members, and children)? If so, do you know where they are now?
○ Did you provide the UAC guidance about what steps to take when planning to enter the U.S.?
○ Was a Coyote/foot guide/smuggler involved?
○ What type of transportation was used?
○ Were multiple people involved in the transportation during various legs of the journey?
○ Did the UAC have to work or exchange favors to finance the trip?
○ Were you in communication with the UAC during their journey?
○ Did the UAC share with you any hardships during the journey?

• Where was the UAC planning on living in the U.S. and with whom?

- When did the UAC leave home country?
- Who paid for the UAC's trip to the U.S.?
  - How much did the UAC's journey cost?
  - Did you pay for the UAC's travel?
  - Does the UAC or UAC's family owe money to cover the cost of the UAC's travel?
  - Do you know how the UAC or the UAC's family paid for the UAC's travel expenses?

- Did the UAC plan to come live with you? If, not, then who? If so, then why?
- What arrangements have you made for the UAC?
- Did anyone arrange for the UAC to work after arriving to the US?
- Who arranged the work?
- What type of work is the UAC expected to be doing?
- Will the UAC be paid?
- Did the UAC's parents plan for the UAC to come live with you? If, not, then who? If not, then why not? If so, then why?

**Additional Questions**
- Had the UAC been to the U.S. before this journey?
  - When did the UAC come to the U.S.?
  - Who did the UAC travel with then?
  - For how long was the UAC in the U.S.?
  - What brought the UAC here then?
  - Why did the UAC leave the U.S.?

## HUMAN TRAFFICKING

*Use these questions to assess for trafficking concerns in the sponsors country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time. All responses must be documented in the Human Trafficking section of the Sponsor Assessment.*

### Sponsor's Journey to the U.S. (if applicable)
- When and why did you decide to travel to the U.S.?
- Who planned your journey?
- Did the arrangements change during the journey? If yes, how?
- Did anyone pay for your travel to the U.S.?
  - Does that person need to be paid back?
  - Is there a plan for that person to be paid back?
  - What do you believe will happen if that person is not paid back?
- Does your family or a family friend owe money to anyone for the journey? If yes, how much?
- Did you ever have to depend upon non family members to provide basic needs such as clothes, food, and housing?
- Did you experience any challenges, trauma, or abuse by family in home country?
- Where did you first live in the U.S. and with whom?
- Have you traveled back to your country of origin since your arrival to the U.S?

### Coercion Indicators
- Did anyone threaten you or your family?  Who made the threats? What happened?
- Were you ever physically harmed? Who harmed you? What happened?
- Was anyone around you ever physically harmed? Who was harmed? What happened?
- Were you ever held against your will? Who held you? Where? What happened?
- Did anything bad happen to anyone else in this situation or anyone else who tried to leave?  What happened exactly? How many other people were in this situation?
- Did anyone ever keep/destroy your documents? Who did this and what documents?

### Debt Bondage/Labor Trafficking Indicators
- Did you perform any work or provide any services?
- Who arranged the work?
- What type of work did you perform and where?
- How often did you have to work (Hours per day, days per week, what times of day/night)?
- Did work conditions change over time?
- Is there a debt? Do you owe money? If yes, ask:
  - What is the amount of the debt?
  - Has any debt amount increased?
  - By how much?
  - When did it increase?
  - Why did it increase?
- Have you or your family ever been threatened over payment or work for the journey?  Who threatened you and how?
- What did you expect would happen if you left the job or stopped working?
- Were you ever made to work or do anything you did not want to do?
- Did you receive pay or did someone else keep the pay?
- Were you paid what was promised when you started working?
- Were expenses taken out of the pay?  What were the expenses for?
- How did you get to the work site?
- Where did you live while working? Describe your living arrangements.
- Was your freedom of movement ever restricted or closely monitored (e.g., with security cameras)?
- Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?
- Did anyone arrange for you to work after arriving in the U.S? Who arranged the work? What type of work do you expect to be doing? Will you be paid?

- Did anyone ever threaten to report you to the police/immigration? Who did this and what did they say exactly?
- Are you worried anyone might be trying to find you? Who?

**FRAUD**

*Use these questions to determine if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process. All responses must be documented in the Fraud section of the Sponsor Assessment.*

- Have you ever been contacted and asked to pay fees/money related to the release of the minor? *If yes and if applicable, ask:*
  - When did this happen (date and time)?
  - Where did this happen?
  - What name and contact information did the individual give you?
  - What specifically did they ask you to do?
  - Did you give any money to the individual? What amount?
  - How did you pay (e.g., wire transfer, money order)? Do you have proof of payment?
- Do you have any identifying information for the receiving account (e.g., account number, account name, routing number)?
- Please name and describe any individual or organizations involved in the incident.
- Are there any potential witnesses? Do you have contact and identifying information on them (e.g., name, phone number, address, SSN/A#)?
- Are there any other details you can provide?

Sponsor Assessment Interviewing Guidance, Rev. 06/14/2019
ORR UAC/S-1

Page 7 of 7

# Appendix 2.6 Sponsor Assessment

**OFFICE OF REFUGEE RESETTLEMENT**
**SPONSOR ASSESSMENT**

## UAC BASIC INFORMATION

| | | |
|---|---|---|
| First Name: | Status: | ADMITTED |
| Last Name: | AKA: | |
| Date of Birth: | Gender: | select an item |
| A #: | LOS: | |
| Age: | Current Program: | |
| Country of Birth: | Admitted Date: | |

## SPONSOR BASIC INFORMATION

| | | |
|---|---|---|
| First Name: | AKA: | |
| Last Name: | A #: | |
| Date of Birth: | Country of Birth: | |
| Age: | Country of Residency: | |
| Gender: select an item | Primary Sponsor: ☐ Yes ☐ No | |

## SPONSOR CULTURAL INFORMATION

Use this section to document the sponsor's linguistic and cultural background, including cultural, social, and communal norms and practices for the care of children.

Primary Language Spoken:                    Religious Affiliation:
Other Languages Spoken:
Additional cultural information:

## FAMILY RELATIONSHIPS

Use this section to document the sponsor's familial and other significant relationships in country of origin and in the U.S. A genogram (family tree) may be used as a tool to answer these questions and is required for distant relative Cat 3 potential sponsors.

Genogram completed? *(Required for distant relative Cat 3 sponsors)*     ☐ Yes ☐ No

**Family in Country of Origin**

Do you have family in your home country? *(if yes, describe below)*     ☐ Yes ☐ No
Additional information on family in country of origin:

**Family and Family Friends in the U.S.**

Do you have family or family friend in the U.S.? *(if yes, list below)*     ☐ Yes ☐ No

| Name | Age | DOB | Gender | Relationship to Sponsor |
|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |
| | | Click here to enter a date. | Choose an item. | Choose an item. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Do you have any relatives who are also in ORR care?     ☐ Yes ☐ No
    *If yes, do you know where they are?*
Additional information on family and family friends in the U.S.:

Sponsor Assessment, Rev. 06/24/2019                    Page 1 of 11
ORR UAC/S-5

Exhibit 3
Page 247
GOV-00207487

### Spouse/Partner

| | |
|---|---|
| Do you have a partner? (if yes, answer below questions) | ☐ Yes  ☐ No |
| What is your partner's name and age? | |
| Do you live with your partner? | ☐ Yes  ☐ No |
| If no, where does your partner live? | |
| Are you married to your partner? | ☐ Yes  ☐ No |
| Are you legally married or is the relationship a partnership or cohabitation? | |
| What is your relationship like with your spouse? | |
| Have you ever been involved in a Dissolution of Marriage case? | ☐ Yes  ☐ No |
| If yes, explain: | |
| Additional information on the sponsor's partner: | |

### Children

Do you have any children (if yes, list below)     ☐ Yes  ☐ No

| Name | Age | DOB | Gender | Current Location | Name of Mother/Father |
|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | | |
| | | Click here to enter a date. | Choose an item. | | |
| | | Click here to enter a date. | Choose an item. | | |
| | | Click here to enter a date. | Choose an item. | | |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

| | |
|---|---|
| Did any of your children come to the U.S. with you? (if not born in U.S.) | ☐ Yes  ☐ No |
| Do you have any children living in your home country? | ☐ Yes  ☐ No |
| Have any of your children ever been in ORR care? | ☐ Yes  ☐ No |
| Who is caring for your children? | |
| Additional information on the sponsor's children: | |
| How do you discipline your children and how do you plan to discipline the minor? | |
| Have you or your spouse/partner ever had Child Protective Services Involvement? | ☐ Yes  ☐ No |
| If yes, explain: | |
| Have you ever been involved in a child support case? | ☐ Yes  ☐ No |
| If yes, explain: | |
| Do you provide court ordered financial support to your children? | ☐ Yes  ☐ No |
| If yes, explain: | |
| Have you ever had a child removed from your custody? | ☐ Yes  ☐ No |
| If yes, why? (Obtain documentation) | |
| Have any of your household members ever had a child removed from his/her custody? | ☐ Yes  ☐ No |
| If yes, why? (Obtain documentation) | |

### HOUSEHOLD COMPOSITION

Use this section to document the sponsor's household composition, including the sponsor's knowledge of any household members who may have a serious, contagious disease; or criminal convictions or charges.

Does anyone else live in your home? (if yes, list below)     ☐ Yes  ☐ No

| Name | Age | DOB | Gender | Phone Number | Valid Identity Document Received | Relationship to Sponsor | Employed | Dependent on Sponsor Income | Background Checks |
|---|---|---|---|---|---|---|---|---|---|

Sponsor Assessment, Rev. 06/24/2019
ORR UAC/S-5

Page 2 of 11

Exhibit 3
Page 248

GOV-00207488

| | | Click here to enter a date. | Choose an item. | | ☐Yes ☐No | Choose an item. | ☐Yes ☐No | ☐Yes ☐No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐Yes ☐No | Choose an item. | ☐Yes ☐No | ☐Yes ☐No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐Yes ☐No | Choose an item. | ☐Yes ☐No | ☐Yes ☐No | Choose an item. |
| | | Click here to enter a date. | Choose an item. | | ☐Yes ☐No | Choose an item. | ☐Yes ☐No | ☐Yes ☐No | Choose an item. |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

Describe your home:

Describe where the minor will sleep:

How do you expect the UAC to contribute to your household?

Does anyone in the household have a serious, contagious disease?  ☐ Yes  ☐ No

   *If yes, explain:*

Do any of the occupants have criminal convictions or charges,  ☐ Yes  ☐ No
other than minor traffic violations?

   *If yes, explain:*

### PREVIOUS SPONSORSHIP

Use this section to document if the sponsor and/or the sponsor's household members have ever sponsored or attempted to sponsor another child. If the sponsor and/or the sponsor's household members did sponsor or attempt to sponsor a child, document the status of the child's safety and well-being.

Sponsor

Have you ever attempted to sponsor another child that is/was in ORR care?  ☐ Yes  ☐ No
(If yes, list below and answer the following questions)

| Name | A No. | DOB | Gender | Sponsor's Relationship to UAC | Current Location | ORR Release Decision | Date of Discharge | Discharge Program Name |
|---|---|---|---|---|---|---|---|---|
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

Have you ever attempted to sponsor a child from ORR, but  ☐ Yes  ☐ No
decided to withdraw your application?

   *If yes, then why did you withdraw?*

Have you ever been denied sponsorship by ORR?  ☐ Yes  ☐ No

   *If yes, then why did ORR deny your sponsorship*
   *application?*

How many children did you sponsor?

Is the child still residing with you?  ☐ Yes  ☐ No

   *If no, explain:*

Did you undergo a home study?  ☐ Yes  ☐ No

   *If yes, why?*

Is/has the child received Post Release Services?  ☐ Yes  ☐ No

Is the child enrolled in or attending school?  ☐ Yes  ☐ No

Sponsor Assessment, Rev. 06/24/2019
ORR UAC/S-5

When is the child's upcoming court date?

Did you attend an LOPC presentation?  ☐ Yes  ☐ No

Describe the UAC's current safety and well-being since release from ORR care to the sponsor:

### Household Members

Have any of your household members attempted to sponsor another child that is/was in ORR care?  ☐ Yes  ☐ No
*(If yes, list below and answer the following questions)*

| Name | A No. | DOB | Gender | Sponsor's Relationship to UAC | Current Location | ORR Release Decision | Date of Discharge | Discharge Program Name |
|------|-------|-----|--------|-------------------------------|------------------|----------------------|-------------------|------------------------|
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |
| | | Click here to enter a date. | Choose an item. | Choose an item. | Choose an item. | Choose an item. | Click here to enter a date. | |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Did he/she ever attempted to sponsor a child from ORR, but decided to withdraw your application?  ☐ Yes  ☐ No

*If yes, then why did he/she withdraw?*

Has he/she ever been denied sponsorship by ORR?  ☐ Yes  ☐ No

*If yes, then why did ORR deny his/her sponsorship application?*

How many children did he/she sponsor?

Is the child still residing with him/her?  ☐ Yes  ☐ No

*If no, explain:*

Did he/she undergo a home study?  ☐ Yes  ☐ No

*If yes, why?*

Is/has the child received Post Release Services?  ☐ Yes  ☐ No

Is the child enrolled in or attending school?  ☐ Yes  ☐ No

When is the child's upcoming court date?

Did he/she attend an LOPC presentation?  ☐ Yes  ☐ No

Describe the UAC's current safety and well-being since release from ORR care to the sponsor:

### PROOF OF IDENTIFY

Use this section to document information and documents provided by the sponsor to establish the sponsor's identity and confirm that the sponsor's identity was verified. If the sponsor's identity was unable to be verified, provide an explanation under the "Additional Information on Identity" section below.

### Sponsor

Sponsor's identity is verified:  ☐ Yes  ☐ No

List proof of identity documents provided:

| Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Picture ID |
|------------------------|--------------------------------|---------------------------------------|------------|
| Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| Choose an item. | Click here to enter a date. | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

Sponsor Assessment, Rev. 06/24/2019
ORR UAC/S-5

Page 4 of 11

Exhibit 3
Page 250

GOV-00207490

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

**Household Members**

Household Members' Identity is verified:  ☐ Yes  ☐ No

List proof of identity documents provided:

| Household Member Name | Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Picture ID |
|---|---|---|---|---|
| | Choose an item. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| | Choose an item. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| | Choose an item. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

**Adult Caregivers**

Adult Caregiver's Identity is verified:  ☐ Yes  ☐ No

List proof of identity documents provided:

| Adult Caregiver Name | Identity Document Type | Expiration Date (if applicable) | Document Verified by Government Agency | Picture ID |
|---|---|---|---|---|
| | Choose an item. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| | Choose an item. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| | Choose an item. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

Additional Information on Identity:

**PROOF OF IMMIGRATION STATUS OR U.S. CITIZENSHIP**

Sponsor Legal Status:      select an item

Sponsor's legal status verified with non-expired document(s):   ☐ Yes  ☐ No

List proof of immigration status or U.S. citizenship document(s) provided:

**PROOF OF RELATIONSHIP**

Use this section to document information and documents provided by the sponsor to establish the sponsor's relationship to the UAC and to confirm that the relationship was verified. If the sponsor's relationship to the UAC was unable to be verified, provide an explanation under the "Explain how the sponsor is related to or knows the UAC and/or the UAC's family" section below.

Sponsor's Relationship to UAC:     select an item               Sponsor Category:     select an item

Sponsor's Relationship to UAC is Verified:   ☐ Yes  ☐ No

List proof of relationship documents provided:

| Relationship Document Type | Expiration Date (if applicable) | Date Document Issued (if applicable) | Verified by Government Agency or Consulate | Picture ID |
|---|---|---|---|---|
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |
| Choose an item. | Click here to enter a date. | Click here to enter a date. | ☐Yes ☐No | ☐Yes ☐No |

Sponsor Assessment; Rev. 06/24/2019                                    Page 5 of 11
ORR UAC/S-5

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Explain how the sponsor is related to or knows the UAC and/or the UAC's family:

## PROOF OF ADDRESS

Use this section to document information and documents provided by the sponsor to establish that the sponsor lives at the address he/she reported to ORR and that the reported address is a residence. If the sponsor's address was unable to be verified, provide an explanation under the "Additional proof of address information" section below.

**What is your current address and contact information?** *(enter below)*

| | |
|---|---|
| Address: | Home Phone: |
| City: | Email: |
| State: | Work Phone: |
| Zip Code: | Fax: |

How long have you lived at the current address?

Describe the area/neighborhood where you reside?

Do you receive your mail at a different address?   ☐ Yes  ☐ No

*If yes, what is the address that you use to receive mail?*

Was address where the sponsor currently resides verified as a residence on Google Maps?   ☐ Yes  ☐ No

Was address where the sponsor currently resides verified as a residence on Google Earth?   ☐ Yes  ☐ No

Was address where the sponsor currently resides verified as a residence on Smarty Streets?   ☐ Yes  ☐ No

List proof of address documents provided:

| Address Document Type | Date Document Issued (if applicable) |
|---|---|
| Choose an item. | Click here to enter a date. |
| Choose an item. | Click here to enter a date. |
| Choose an item. | Click here to enter a date. |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Where else have you lived in the U.S.?

| Address | City | State | Zip Code | Date Range Resided at Address | Resided at Address Within Past 5 Years |
|---|---|---|---|---|---|
| | | | | | ☐ Yes  ☐ No |
| | | | | | ☐ Yes  ☐ No |
| | | | | | ☐ Yes  ☐ No |

*ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)*

Additional proof of address information:

## PROOF OF STABILITY

Discusses with the sponsor, his/her ability to support and financially provide for the minor while in their care.

Does the sponsor have a job? *(if yes, answer the following questions)*   ☐ Yes  ☐ No

    Name of Employer:

    Location of Employment:

    Length of Time at present employer:

    Income:

    Work Hours/Schedule:

Does the sponsor have financial needs?   ☐ Yes  ☐ No

    *If yes, explain:*

Does the sponsor have adequate housing?   ☐ Yes  ☐ No

    *If yes, explain:*

Sponsor Assessment, Rev. 06/24/2019                                         Page 6 of 11
ORR UAC/S-5

## SPONSOR CARE PLAN

Use this section to document that the sponsor's plan to care for the minor adequately addresses the care, supervision, safety, education, and resources required to meet the UAC's needs.

### Care Plan

Tell me about your plans to address the UAC's educational needs:

What school will the minor attend?

Does the sponsor know the school enrollment process? ☐ Yes ☐ No

Who will transport the UAC to and from school?

Who will supervise the UAC before and after school?

Does the minor have any medical conditions that will need treatment that you are aware of?

Tell me about your plans to address the UAC's health care needs (if the UAC is pregnant or with child, also address the health care plans for the UAC's child).

Tell me about your plans to address the UAC's mental health care and counseling needs.

What are the medical services in your area?

What are the counseling services in your area?

Tell me about the types of community resources and services that you plan to access to address the UAC's needs.

Is the potential sponsor familiar with community resources and services in the area? ☐ Yes ☐ No

(Case Manager assists sponsor in identifying community service providers and programs and encourages sponsor to participate in applicable services such as parenting, gang prevention, substance abuse psycho-education in preparation for UAC's release)

Does the minor have any criminal history or behavior issues that you are aware of?

Is there anything that would prevent the sponsor from enrolling in supportive services for the UAC's needs? ☐ Yes ☐ No

Did the sponsor watch the Sponsor Video? ☐ Yes ☐ No

Did the sponsor read the Sponsor Handbook? ☐ Yes ☐ No

Will you accept assistance from Post-Release Service providers? (If applicable) ☐ Yes ☐ No

### Safety Plan

Explain how you plan to ensure the safety of the minor:

### Supervision Plan

Does the sponsor have family or friends nearby that will be helping in caring for the minor? ☐ Yes ☐ No (If yes, list the individual(s))

| Name | SSN/A No. | Age | DOB | Gender | Home Address | Phone Number | Relationship to sponsor | Background Checks |
|------|-----------|-----|-----|--------|--------------|--------------|-------------------------|-------------------|
| | | | Click here to enter a date. | Choose an item. | | | Choose an item. | Choose an item. |
| | | | Click here to enter a date. | Choose an item. | | | Choose an item. | Choose an item. |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

Explain how you plan to supervise the minor:

### Alternate Adult Caregiver Plan

Is the sponsor a U.S. citizen or a lawful permanent resident? ☐ Yes ☐ No
If no, list the adult caregiver identified who will assume responsibility for the child if sponsor becomes unavailable to care for the minor.

Sponsor Assessment, Rev. 06/24/2019
ORR UAC/S-5

Page 7 of 11

Exhibit 3
Page 253
GOV-00207493

| Name | SSN/A No. | Age | DOB | Gender | Home Address | Phone Number | Relationship to Sponsor | Background Check |
|---|---|---|---|---|---|---|---|---|
| | | | Click here to enter a date. | Choose an item. | | | Choose an item. | Choose an item. |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

### CRIMINAL HISTORY

Use this section to document the sponsor's self-disclosures of any criminal charges, sexual offenses or child abuse/neglect charges or arrests.

Any criminal history? (If yes, list below)     ☐ Yes  ☐ No

List any felony convictions:

List any misdemeanor convictions:

List any probation/parole:

List and describe any disclosed criminal activity:

List any child abuse and neglect history:

History of Incarceration or Detention

| Crime | Date | Length of Sentence/Detainment | Location |
|---|---|---|---|
| | Click here to enter a date. | | |
| | Click here to enter a date. | | |

ADD OR DELETE ROWS AS NEEDED (you will need to copy dropdowns, date fields, etc. into your new row)

Additional information on criminal history:

### UAC JOURNEY AND APPREHENSION

Use this section to document if the UAC journeyed to the U.S. to live with this sponsor and to assess if the potential sponsor had a role in coordinating or financing the journey. Also, this section will help assess how much the potential sponsor knows about the UAC's journey, which should be compared against the UAC Assessment responses.

Describe the UAC's day to day life in home country:

Do you know why the UAC decided to travel to the U.S. at this time?

    Did the potential sponsor mention any U.S. immigration policy or practice as a factor in the UAC's decision to travel to the U.S.?     ☐ Yes  ☐ No

    Did the potential sponsor mention economic, job, or educational opportunities as a factor in the UAC's decision to travel to the U.S.?     ☐ Yes  ☐ No

When did the UAC leave his/her home country (month, day, and year)?

How long did the trip take?

Who paid for the UAC's trip to the U.S.?

How did the UAC get to the U.S.?

Where was the UAC planning on living in the U.S. and with whom?

Do you know if the UAC has ever been to the U.S. before?     ☐ Yes  ☐ No

    If yes, when?

### HUMAN TRAFFICKING

Use this section to document any trafficking concerns in the sponsor's country of origin and in the U.S. and to determine if additional services or referrals are needed. It should be explained to the sponsor that this information is not for immigration purposes, but to have a better understanding of his/her journey and any challenges they may have faced during this time.

**Sponsor's Journey to the U.S.** *(if applicable)*

Use this section to document information regarding the sponsor's journey from their country of origin will be gathered here.

**When and why did you first decide to travel to the U.S.?**

**Who planned/organized your journey?**

| | |
|---|---|
| Did the arrangements change during the journey? | ☐ Yes ☐ No |
| *If yes, how?* | |
| Did anyone pay for your travel to the U.S.? | ☐ Yes ☐ No |
| *Does that person need to be paid back?* | ☐ Yes ☐ No |
| *Is there a plan for that person to be paid back?* | ☐ Yes ☐ No ☐ N/A |
| *What do you believe will happen if that person is not paid back?* | |
| Does your family or a family friend owe money to anyone for the journey? | ☐ Yes ☐ No |
| *If yes, how much?* | |
| Did you ever have to depend upon non family members to provide basic needs such as clothes, food, and housing? | ☐ Yes ☐ No |
| Did you experience any challenges, trauma, or abuse in your family in home country? | ☐ Yes ☐ No |

**Where did you first live in the U.S. and with whom?**

**Have you traveled back to your country of origin since your arrival to the U.S.?**

**Additional information on sponsor's journey to the U.S.:**

**Coercion Indicators**

Use this section to assess for indicators of trafficking by force, fraud, or coercion in the sponsor's country of origin, during the sponsor's journey, and in the U.S.  This includes any pressure, threats, deception, or harm experienced by the sponsor or the sponsor's family members.

| | |
|---|---|
| Did anyone threaten you or your family? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Were you ever physically harmed? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Was anyone around you ever physically harmed? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Were you ever held against your will? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Did anything bad happen to anyone else in this situation or anyone else who tried to leave? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Did anyone ever keep/destroy your documents? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Did anyone ever threaten to report you to the police/immigration? | ☐ Yes ☐ No |
| *If yes, explain:* | |
| Are you worried anyone might be trying to find you? | ☐ Yes ☐ No |
| *If yes, explain:* | |

**Additional information on coercion indicators:**

**Debt Bondage/Labor Trafficking Indicators**

Use this section to assess for indicators of debt bondage and labor trafficking in the sponsor's country of origin, during the sponsor's journey, and in the U.S.  This includes any information regarding contracts, commitments, arrangements, or debt the sponsor is aware of or responsible for repaying and whether the sponsor felt unsafe or scared in their working environment.

| | |
|---|---|
| Did you perform any work or provide any services? | ☐ Yes ☐ No |
| *Who arranged the work?* | |
| *What type of work did you perform and where?* | |
| *How often did you have to work?* | |
| *Did work conditions change over time?* | |
| Is there a debt? | ☐ Yes ☐ No |
| *What is the amount of the debt?* | |
| *Has the debt amount ever increased?* | ☐ Yes ☐ No |
| *By how much?* | |

Sponsor Assessment, Rev. 06/24/2019
ORR UAC/S-S

Page 9 of 11

Exhibit 3
Page 255

GOV-00207495

*When did it increase?*

*Why did it increase?*

Have you or your family ever been threatened over payment or work for the journey?   ☐ Yes  ☐ No

*If yes, who threatened you and how?*

What did you think would happen if you left the job or stopped working?

Were you ever made to work or do anything you did not want to do?   ☐ Yes  ☐ No

*If yes, explain.*

Did you receive pay or did someone else keep the pay?

Were you paid what was promised when you started working and were those promises kept?

Were expenses taken out of the pay?   ☐ Yes  ☐ No

*If yes, what expenses?*

How did you get to the work site?

Where did you live while working?

Was your freedom of movement ever restricted or closely monitored?

Were you ever restricted from communicating or socializing with others, not allowed to speak for yourself, told what to say, or isolated from others?

Did anyone arrange for you to work after arriving in the U.S.?

*If yes, explain.*

Additional information on debt bondage/labor trafficking indicators:

**TVPRA**

Use this section to document whether the case requires a TVPRA-mandated home study based information gathered in this assessment and from any other relevant sources.

Based on the sponsor assessment, does the sponsor present signs of being abused, maltreated, exploited, or trafficked?   ☐ Yes  ☐ No

*If yes, provide a short summary:*

*Referred to OTIP?*   ☐ Yes  ☐ No

Based on the sponsor assessment, does the sponsor clearly present a risk of abuse, maltreatment, exploitation, or trafficking to the UAC?   ☐ Yes  ☐ No

If "Yes" is checked, the case must be referred for a mandatory home study.

*If yes, provide a short summary:*

**FRAUD**

Use this section to document if any individual or entity has attempted to defraud the sponsor in relation to the ORR reunification process

Have you ever been contacted and asked to pay fees/money related to the release of the minor?   ☐ Yes  ☐ No

*If yes, explain:*

Have you ever been contacted and asked to pay fees/money related to the release of a minor you previously sponsored or attempted to sponsor and not reported it to ORR?   ☐ Yes  ☐ No

*If yes, explain:*

**ADDITIONAL INFORMATION**

Use this section to report any additional information that may be pertinent to the sponsor's assessment that has not been covered in the sections above or that require further elaboration.

**CASE MANAGER'S ASSESSMENT OF SPONSOR AND CONCLUDING REMARKS**

Use this section to provide a thorough assessment of the sponsor's ability to safely care for the UAC, provide for the UAC's individual needs, and ensure the safety and well-being of the UAC.

**CERTIFICATION**

Sponsor Assessment, Rev  06/24/2019
ORR UAC/S-5

Page 10 of 11

Signature: ..........................................................   Title: ...........................

Print Name: ....................................   Date: ....................................

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)    123 | Page

Exhibit 3
Page 257

GOV-00207497

# Appendix 2.7 Sponsor Check Coversheet



**PSC/DCS/HHS Mailing Address**
Program Support Center (PSC)
Division of Children's Services (DCS)
Department of Health and Human Services (HHS)
Parklawn Building, 5600 Fishers Lane, Room 07I70,
Rockville, MD 20857     Tel: (301) 443-8571

### SUBMIT TO: SponsorCheck.os@hhs.gov

Date: _____         Facility: _____
From: _____         Email: _____
Position: _____         Phone #: _____

Includes (please check):
- [ ] ORR Authorization for Release of Information – 5 PAGES
- [ ] Paper Fingerprints (2 Per Person)  Mail Courier: _____  Tracking Number: _____
- [ ] Digital Prints Transmitted  Date: _____  Location: _____
- [ ] Copy of Photo ID
- [ ] Sponsor or ( ) Household Member (HHM)

Sponsor/HHM Name (Name Transmitted): _____

Sponsor/HHM DOB: _____  Sponsor/HHM Alien #: _____

Relationship to UAC: _____  Category: ( ) One  ( ) Two  ( ) Three

Facility: _____

Case Manager's Name: _____

Federal Field Specialist's Name: _____

Number of Minor(s): _____  Minor's Name: _____

Minor's DOB: _____  Minor's Alien #: _____

#### Contact Information (Check One)

| Security Specialist | Region | Cases | Email |
|---|---|---|---|
| ☐ Damian Kreamer | Eastern/Western | (A – F) | Damian.Kreamer@psc.hhs.gov |
| ☐ Rachael Ames | Eastern/Western | (G – M) | Rachael.Ames@psc.hhs.gov |
| ☐ Isaiah Kohn | Eastern/Western | (N – Z) | Isaiah.Kohn@psc.hhs.gov |
| ☐ Niroshi Wijeweera | Eastern/Western | AGE OUT | Niroshi.Wijeweera@psc.hhs.gov |
| ☐ Natasha Betancourt-Pagan | Central | (A – F) | Natasha.Betancourt-Pagan@psc.hhs.gov |
| ☐ MacJunioryson Bu-Fogam | Central | (G – M) | Macjunioryson.Bu-Fogam@psc.hhs.gov |
| ☐ Nicholas Biagini | Central | (N – Z) | Nicholas.Biagini@psc.hhs.gov |
| ☐ Johonna Villegas | Central | AGE OUT | Johonna.Villegas@psc.hhs.gov |

Comments:

#### PSC/DCS USE BELOW – DO NOT FILL

Received:  Date: _____  Time: _____  Carrier: _____
Tracking Information: _____
Relationship to UAC:  ☐ Sponsor     ☐ HHM     ☐ PNIP
DFS Initial: _____  Date and Time Scanned: _____
Results:  ☐ Referred to FFS _____  ☐ Appears Clear _____  ☐ 1st Unclassifiable _____  ☐ 2nd Unclassifiable
Query ID: _____  Immigration Status: ☐ USC     ☐ Appears Legal     ☐ Poss. Imm. Issues
LESC Immigration Status/Comments: _____
Missing Information/Documents: _____
_____
_____

☐ AGE OUT (Date: _____)          ☐ MINOR DISCHARGED          Rev 9/14/2019

# Appendix 2.8 CA/N Check Coversheet



**PSC/DCS CA/N Check Coversheet**
Fax: (301) 480-0292

Date: _____     Facility: _____
From: _____     Email: _____
Position: _____  Fax #: _____
Phone #: _____

Includes (please check off):
- ___ ORR/DCS Authorization for Release of Information – 5 PAGES
- ___ Copy of Sponsor ID
- ___ Sponsor or _____ Household Member (Check which applies)
- ___ Other _____

Sponsor's Name: (Name Transmitted) _____
Sponsor's DOB: _____
Sponsor's Alien # (if any): _____
Sponsor's Category (Check one):  ☐ One      ☐ Two      ☐ Three
Relationship to UAC: _____

Facility: _____
Case Manager's name: _____
Federal Field Specialist's Name: _____

(Number of Minors: ___) Minor's Alien #: _____
Minor's Name: _____
Minor's DOB: _____

### Contact Information
(Check One)

| Security Specialist | Region | Telephone | Email |
|---|---|---|---|
| ☐ Karen Morales Ceron | Eastern | (301) 443-1249 | Karen.MoralesCeron@psc.hhs.gov |
| ☐ Kemba Arthur | Central (A-L) | (301) 443-1245 | Kemba.Arthur@psc.hhs.gov |
| ☐ Sandra Sanchez | Central (M-Z) | (301) 443-9392 | Sandra.Sanchez2@psc.hhs.gov |
| ☐ Edmund Coyoy | Western | (301) 443-0037 | Edmund.Coyoy@psc.hhs.gov |

PSC/DCS/HHS Mailing Address
Program Support Center (PSC)
Division of Children's Services (DCS)
Department of Health and Human Services (HHS)
Parklawn Building
5600 Fishers Lane, Room 02E-70
Rockville, Maryland 20857
Tel.: (301) 443-8571

Comments: One page for each Sponsor
_____
_____
_____

# Appendix 2.9 Background Check Submission Requirements

*All background check submissions must adhere to the following standards.*

ORR and PSC/DCS reject background check submissions that include errors or omissions. If ORR or PSC/DCS rejects the original submission care providers must resubmit the request which significantly delays the release process.

## Send All Requests Via Email
Care providers must email fingerprint check requests to SponsorCheck.os@hhs.gov and CA/N check requests to CANchecks.os@hhs.gov. ORR does not accept documents that are faxed or mailed (EXCEPT paper fingerprint cards and original CA/N check state forms, if required).

PSC/DCS does not accept any documents or requests directly from background check subjects (e.g., Sponsors and Household Members) or digital fingerprint sites. Subjects and/or digital fingerprint sites must submit all documents to the Case Manager, who reviews the documents for completeness and accuracy prior to submission to PSC.

PSC/DCS does not accept paper fingerprint cards directly from background check subjects. Subjects must submit paper fingerprint cards to the Case Manager, who reviews the documents for completeness and accuracy prior to submission to PSC/DCS. In extenuating circumstances, PSC/DCS does accept paper fingerprint cards directly from digital fingerprint sites (see Appendix 2.14 Fingerprinting Guidance).

## Review and Inspect Sponsor Documents
Each background check request email must contain a complete *Coversheet*, *Authorization for Release of Information (ARI)* (with a May 14, 2018, revision date or later), and a copy of acceptable photo identification. See ORR Policy Guide Section 2.2.4, for a list of acceptable documents. Do not include any other supporting documents (e.g. proof of address, birth certificates) with the request.

## Send Only Complete, Accurate and Legible Documents
Care providers must ensure:
- That all fields in the *Coversheet* and *ARI* are complete and accurate and that all five pages of the *ARI* are included. The sponsor **must sign** the *ARI*.
- That the copy of the photo ID is readable - that the subject's picture is clear, and that the information on the ID is legible.
- For paper fingerprint submissions, verify in advance of submission that the sponsor has completed the descriptor/identifier and signature fields (see Appendix 2.13 Fingerprint Card). The Case Manager must also include the five page signed *ARI* and photo ID in order for PSC to match the cards to the original email request.

- For CA/N Checks, that all fields in the state forms are complete and accurate and that PSC/DCS instructions were followed.

PSC/DCS rejects copies of documents that are too dark or too light; and, those with partial, missing, or incomplete information. If the sponsor's handwriting is illegible, include the information that is unclear typed on a separate page. While pictures of documents are acceptable, PSC/DCS rejects images that are unclear or blurred.

## Include Address History on the *ARI*
The *ARI* must provide all addresses where the subject **resided in the past five years**. For non-U.S. addresses the subject enters the country in which they resided in the "City (Country)" column of the address table in the *ARI* and complete the "From date" and "To date" columns.

## Update the UAC Portal and Cancel Unnecessary Background Check Requests
Create subject records in the UAC Portal after identifying a sponsor or household member. Enter a check mark on the "Check Requested?" column next to the types of checks requested to allow PSC/DCS to record the results. These steps must be completed **before** the background check request is emailed to PSC/DCS.

Email notification to PSC within one business day if a background check requires cancellation.

## Request Background Checks for Individuals Who Have Previously Completed Background Checks
In cases where an individual has previously completed a background check, the case manager must still formally request the background check from PSC/DCS with all required paperwork (this includes a ***new** Coversheet*, a ***new** ARI*, and copy of a government issued photo ID).

PSC/DCS automatically checks to see if the potential sponsor, household member, or adult caregiver has previously sponsored a UAC and if he/she has completed any of the following background checks:
- FBI National Criminal History Check (Fingerprint Check)
- CA/N Check
- FBI/BSU Civil Name Check

PSC/DCS will forward the results of an existing check to the case manager and/or FFS if it has been 270 days or less since the background check was completed. In these cases, the individual will not need to be fingerprinted again nor will a new CA/N check request need to be sent to the state. If the background check is older than 270 days, PSC/DCS is required to conduct a new check which will require new fingerprints and/or submission of a new CA/N Check request to the state.

# Appendix 2.10 Release Request Completion Guidance

*Use a fillable version of this available on the UAC Portal.*



**Administration for Children & Families**
Office of Refugee Resettlement

## Release Request Completion Guidance

The purpose of this guidance document is to provide Case Managers, Case Coordinators, and FFS with a clear understanding of what ORR expects to be documented in a *Release Request* and a structured way of entering this information so that it is easily understood. Note that some of the items in the template below (e.g., Letter of Designation) may not apply to all cases and should be deleted if not applicable. Likewise, there may be additional information needed to make a release decision for more complicated cases. In those instances, the additional information may be entered with the caveat that it must be written clearly and concisely without re-summarizing information that is available in the UAC Portal or the UAC's case file.

The *Release Request* is a summary of the information in the UAC Portal, which shows who the sponsor is, if there are any concerns, how the concerns were mitigated, whether all reunification requirements were completed, whether it appears to be a safe release and what is being recommended in the case. Documents supporting the Case Manager's recommendation are:

- Family Reunification Packet
- UAC Assessment
- Sponsor Assessment
- UAC Case Review
- ISP, if applicable
- Background Check Results
- Home study Recommendation, if applicable
- SIR Summary, if applicable

For Case Managers, it is recommended that the templates below for *Provide Details on Relationship Including Official Documentation and Comments* be pasted into and edited in a Word document before copying the information into the *Release Request* in the UAC Portal. The templates for those two sections are long and it will be easier for the Case Manager to ensure that they have not missed any items if they are editing in a Word document. Because their sections are short, Case Coordinators and FFS may paste their templates directly into the *Release Request* in the UAC Portal and edit them there.

### Sponsor Information

**SPONSOR/UAC RELATIONSHIP:** [Ms./Mr.] [sponsor full name] [sponsor age, category, relationship with child – e.g. age 65, Category 2A, Grandmother] requests sponsorship of [UAC full name] (A# ###-###-###], [UAC gender], age [UAC age]). [Ms./Mr.] sponsor last name] currently resides in [city, state]. [INCLUDE IF APPLICABLE] The sponsor is also attempting to sponsor the UAC's sibling [UAC full name] (A# [###-###-###], [UAC gender], age [UAC age] who is in ORR custody at [ORR placement name].

*[DESCRIBE STEPS TAKEN TO VERIFY THE SPONSOR/UAC RELATIONSHIP. THIS INCLUDES BIRTH CERTIFICATE TRAILS (ALL CATS), FAMILY TREES (CAT 3). AND DOCUMENTATION PROVING A PRIMARY CAREGIVER RELATIONSHIP (CAT 2A THAT ARE NOT A GRANDPARENT, SIBLING, HALF-SIBLING, OR STEP-SIBLING THROUGH LEGAL MARRIAGE). DO NOT REFER TO THE SPONSOR AS AN UNVERIFIED RELATIVE, INSTEAD DOCUMENT THE BIRTH CERTIFICATE TRAIL AND STATE THAT YOU WERE NOT ABLE TO CONCLUSIVELY PROVE THE RELATIONSHIP. IF THERE IS NO EVIDENCE OTHER THAN STATEMENTS TO VERIFY THE RELATIONSHIP, THEN PROVIDE INFORMATION ABOUT FAMILY SESSION AND COMMUNICATION OBSERVATIONS AND CLINICIAN RECOMMENDATIONS AND CONCLUSION ABOUT THE RELATIONSHIP. (e.g., Ms. Lopez is Maria's unverified paternal aunt who reports living next to Maria's family for 10*

ORR UAC/B-5 [Rev. 06/24/2019]                                                                 Page 1 of 4

## Release Request Completion Guidance
### Office of Refugee Resettlement

*years in home country. Proof of Address was provided in order to verify the claim that they lived next to each other in home country. Maria's birth certificate did not have her father's name. However, Maria's mother and father have verbally and in writing stated that Ms. Lope is Maria's aunt. Family Skype sessions were completed on March 3, 2016 and March 7, 2016, and another is scheduled for March 18, 2016. The plan is to have these ongoing until the minor is approved for release. The Clinician reports that there was a lot of positive interaction during the sessions and they discussed the UAC attending school and old memories of family gatherings. Maria's parents provided a letter of designation for Ms. Lopez.)]*

### Case Manager Recommendation

**FRP AND SUPPORTING DOCUMENTS:**

*[INCLUDE A BRIEF PARAGRAPH ABOUT THE DAILY LIFE OF THE UAC IN COUNTRY OF ORIGIN INCLUDING WHO HE LIVED WITH, INFORMATION ABOUT SCHOOL, WHY HE OR SHE TRAVELED TO THE US, WHO TRAVELED WITH THE UAC, AND IF HE OR SHE HAS A DEBT THAT IS EXPECTED TO BE PAID BACK BY THE MINOR OR FAMILY.]*

The Case Manager received and reviewed [Ms./Mr.] [sponsor last name]'s family reunification packet, which includes: *[ONLY LIST OUT WHAT WAS ACTUALLY RECEIVED AND REVIEWED AS REQUIRED BY ORR POLICY AND PROCEDURES TO RELEASE A UAC TO THIS CATEGORY OF SPONSOR]*

--Sponsor ID: *[LIST TYPE OF ID(S)]*
--Household Member ID: *[LIST TYPE OF ID(S)]*
-- *[INCLUDE IF APPLICABLE]* Adult Caregiver ID: *[LIST TYPE OF ID(S) AND EXPIRATION DATE, IF APPLICABLE]*
--Proof of ability to provide housing, food, education. : The sponsor adequately demonstrated that he/she is able to support the minor financially.
--Proof of Address: [type of document] received on [mm/dd/yyyy], Verified through Smarty Streets on [mm/dd/yyyy], Verified through Google Maps on [mm/dd/yyyy].
--Proof of immigration/citizenship status: *[LIST TYPE OF DOCUMENT(S) PROVIDED OR REASON WHY NO DOCUMENTS WERE PROVIDED]*
-- *[INCLUDE IF APPLICABLE]* Letter of Designation: Received on [mm/dd/yyyy].
--LOPC Packet: Sent on [mm/dd/yyyy].
--Sponsor Handbook: Sponsor confirmed reading Sponsor Handbook on [mm/dd/yyyy].

**CRIMINAL:**
--As of [mm/dd/yyyy], for [Ms./Mr.] [sponsor last name]: *[DELETE ANY BULLETS BELOW THAT DO NOT APPLY]*
   --Public Records Check:  [Clear/Not Clear]
   --Sex offender Check:  [Clear/Not Clear]
   --Fingerprint Check:  Fingerprints taken: [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results: [Clear/Referred to the FFS] *[IF RESULTS WERE REFERRED TO THE FFS, THEN STATE WHETHER THE FFS INSTRUCTED THAT IT WAS SAFE TO MOVE FORWARD WITH SPONSOR AS FOLLOWS: The FFS informed this case manager that the sponsor has criminal record information that [does/does not] allow for the UAC to be safely released to the sponsor.]*
   --CA/N Check: Requested [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results: [Clear/Record Was Found]. *[IF RECORD FOUND, LIST CHARGES AND DATES]*
--As of [mm/dd/yyyy], for [Ms./Mr.] [adult household member / adult caregiver full name], [relationship to sponsor]: *[LIST THE NAME OF EVERY ADULT HOUSEHOLD MEMBER AND ADULT CAREGIVER THAT THE CHECKS WERE COMPLETED FOR]*
   -- Public records check:  [Clear/Not Clear]
   -- Sex offender check:  [Clear/Not Clear]
   -- CA/N Check: Requested [mm/dd/yyyy]. Results Required Prior to Release: [yes/no]. Results Status: [Pending/Received] Results:  [Clear/Record Was Found]. *[IF RECORD FOUND, LIST CHARGES AND DATES]*
--There are no other household members in the residence.
--Self-Disclosure: This Case Manager asked the sponsor if he/she has any criminal history on [mm/dd/yyyy]. Sponsor responded: [Yes/No]. *[IF YES, LIST CHARGES AND DATES]*

ORR UAC/R-5 [Rev. 06/24/2019]                                                                 Page 2 of 4

## Release Request Completion Guidance

Office of Refugee Resettlement

--Evidence of Rehabilitation: *[IF APPLICABLE, LIST DOCUMENTS AND EVIDENCE THAT SHOW REHABILITATION]*
--*[INCLUDE BULLET IF A HOME STUDY WAS CONDUCTED]* Due to the concerns regarding [applicable reason for home study, including who the perpetrator of the abuse is and where the abuse occurred], ORR referred the case for a TVPRA/ORR mandated/or discretionary home study. *[USE THE FOLLOWING SENTENCE IF THE HOME STUDY REASON INVOLVES PHYSICAL OR SEXUAL ABUSE:* "[Ms./Mr.] [sponsor last name] was not the perpetrator of the abuse and the perpetrator does not reside with [him/her]."] The home study worker concluded the home study with a positive recommendation on [mm/dd/yyyy]. *[SUMMARIZE ANY RECOMMENDATIONS MADE BY THE HOME STUDY PROVIDER AND IF THE SPONSOR MET THE RECOMMENDATIONS OR WILL WITH THE ASSISTANCE OF THE POST RELEASE SERVICE PROVIDER.]*
--*[INCLUDE IF THERE WERE CONCERNS THAT WERE MITIGATED]* LIST THE CONCERNS AND HOW THEY WERE MITIGATED. *{THIS WOULD BE WHERE YOU MENTION SIRS, MENTAL HEALTH OR MEDICAL ISSUES AND SPONSOR CRIMINAL HISTORY}. MENTION WHAT DOCUMENTATION WAS RECEIVED (COURT DOCUMENTS, POLICE REPORTS, MEDICAL REPORTS, SCHOOL DOCUMENTS, DNA TESTING, ETC.) AND STEPS THAT WERE TAKEN TO MITIGATE ANY OF THESE CONCERNS (FAMILY SESSION, PSYCHOLOGICAL OR PSYCHIATRIC EVALUATION, COUNSELING SESSIONS, SAFETY PLANNING, DNA TESTING, ETC.)]*

**BIRTH CERTIFICATES:** All birth certificates needed to prove the sponsor-UAC relationship were received on [mm/dd/yyyy]. Sponsor is confirmed to be the UAC's [type of relationship]. Birth certificates received are: *[LIST BIRTH CERTIFICATES PROVIDED (E.G., UAC, SPONSOR, UAC'S UNCLE, SPONSOR'S SON/UAC'S BROTHER, FAMILY FRIEND)] [STATE WHETHER THE BIRTH CERTIFICATE OF THE SPONSOR MATCHES THE OFFICIAL ID OF THE SPONSOR.]*

**PRIOR SPONSORSHIP:** *CHOOSE ONE:* [Verified on mm/dd/yyyy that the sponsor did not previously sponsor or attempt to sponsor a child.] OR [Verified on (mm/dd/yyyy) that the sponsor previously sponsors/attempted to sponsor a child.] *[IF APPLICABLE, PROVIDE DETAILS ON COMPLIANCE WITH ORR REQUIREMENTS AS IT RELATES TO THE PREVIOUS SPONSORSHIP.]*

**PRIOR ADDRESS:** Verified on (mm/dd/yyyy) that the sponsor's address (was/was not) used in a previous case. *[IF APPLICABLE, LIST CONCERNS AND MITIGATING FACTORS.]*

**CONTACT WITH PRIMARY CAREGIVER IN COO:** Spoke with [name of caregiver] on [mm/dd/yyyy]. [Name of caregiver] [was/was not] able to verify information provided by the UAC and the sponsor. *{IF APPLICABLE, LIST CONCERNS AND MITIGATING FACTORS.}*

**SPONSOR RESOURCES:** The following emergency contact information was provided to the sponsor: 911, ORR Parent and Sponsor Hotline, information regarding health care and vaccinations, Department of Family and Protective Services (in state of residence), and National Human Trafficking Resource Center.

**RELEASE RECOMMENDATION:** *[INCLUDE THE RELEASE RECOMMENDATION FOR A STRAIGHT RELEASE, RELEASE WITH PRS, RELEASE WITH A POSITIVE HOME STUDY RECOMMENDATION, OR DENIAL.]*

**HOMESTUDY AND PRS:** *[LIST THE REASONS FOR RECOMMENDING HOME STUDY, AND OR, POST RELEASE SERVICES. THE RELEASE REQUEST NEEDS TO STATE WHAT THE REASON FOR THE HOME STUDY WAS, WHAT KIND OF HOME STUDY (TVPRA OR DISCRETIONARY) IF THERE ARE ANY SPECIAL RECOMMENDATIONS/CONDITIONS FROM THE HOME STUDY PROVIDER AND IF THEY WERE COMPLETED.]*

---

### Case Coordinator Recommendation To Be Entered into the Portals Release Request

The Case Coordinator [concurs/does not concur] with the Case Manager's release recommendation.

*[IF THE CC DOES NOT CONCUR WITH THE RECOMMENDATION, NOTE THE DISCREPANT INFORMATION IDENTIFIED AND PROVIDE BRIEF JUSTIFICATION SUPPORTING A DEFERRING RECOMMENDATION WITHOUT RE-SUMMARIZING INFORMATION THAT IS ALREADY AVAILABLE IN THE UAC PORTAL AND UAC CASE FILE.]*

ORR UAC/R-5 [Rev. 06/24/2019]                                                                                   Page 3 of 4

**Release Request Completion Guidance**
Office of Refugee Resettlement

**ORR Decision To Be Entered into the Portals Release Request**

The FFS (concurs/does not concur) with the Case Manager's and Case Coordinator's release recommendation.

*IF THE FFS DOES NOT CONCUR WITH THE RECOMMENDATION, NOTE THE DISCREPANT INFORMATION IDENTIFIED AND PROVIDE BRIEF JUSTIFICATION SUPPORTING A DENIAL RECOMMENDATION WITHOUT RE-SUMMARIZING INFORMATION THAT IS ALREADY AVAILABLE IN THE UAC PORTAL AND UAC CASE FILE.]*

ORR UAC/R-5 [Rev. 06/24/2019]                                        Page 4 of 4

# Appendix 2.11 ORR HQ Bond Hearing Procedures

## Processing Bond Hearing Requests

1. Immediately upon receipt of the care provider email including signed *Request for a Flores Bond Hearing* and completed *Motion* documents, ORR HQ staff complete the following steps:

   - Logs receipt of the request on an internal Bond Hearing Request Tracker on SharePoint.

   - Saves copies of the *Request* and *Motion* documents in a shared electronic folder accessible to ORR/DPP.

   - Creates a bond hearing file for the UAC in which to save all correspondence and documentation associated with the case, and stores it in a shared electronic folder accessible to ORR/DPP. (ORR HQ staff track the case and communications, updating the bond hearing file as appropriate).

2. **Within 15 business days of receiving the care provider email,** in consultation with the ORR Representative arguing the case, ORR HQ staff file the *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child –Secure or Staff-Secure Custody* or *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child (Non-Secure) Shelter Care* (depending on the child's placement type); pre-trial brief (for cases where ORR believes the UAC is a danger); supporting evidence; and, motion for telephonic hearing (if appropriate) with the local immigration court having jurisdiction over the case. **Alternatively,** ORR staff may file the *Motion* to the court and later file a pre-trial brief with supporting evidence in order to expedite scheduling a hearing that would otherwise be delayed while the ORR Representative prepares the pre-trial brief. ✆ If a UAC in shelter care who is not a danger to the community requests a bond hearing, the ORR HQ staff provides a No Concern form letter along with the ORR Motion explaining to the immigration court that ORR does not consider the UAC a danger.

   **NOTE**: The child or the child's attorney may make an oral motion in immigration court, or file a *Motion* document with the immigration court directly requesting a *Flores* bond hearing. In these cases, ORR HQ staff will receive notice from the court itself (as opposed to the care provider) and file correspondence as indicated in Step 1. The assigned ORR Representative will either prepare a pre-file brief, with supporting evidence or file a No Concern Letter; and, file a motion for telephonic hearing (if appropriate) in response to properly served motions on ORR by the court or attorney of record.

3. After filing the motion with the immigration court, ORR HQ staff notifies the Care Provider Point of Contact; FFS and the child's attorney or local legal service provider if the child is unrepresented, that the motion has been filed with EOIR. ✉

4. The local immigration court informs ORR and the child's attorney of record (if applicable) or the care provider if the child is unrepresented that a bond hearing is scheduled. 🗂
If ORR does not receive a notice that a hearing has been scheduled with the local immigration court within 10 business days of filing the motion, ORR HQ staff contact the local immigration court's Court Administrator to determine whether a bond hearing has been scheduled. 🕑

5. **Within 1 business day of receiving notice that the hearing has been scheduled**, ORR HQ notifies the minor's attorney (if applicable) and care provider of the date and time and location of the hearing.

## Quick Glance: Processing Bond Hearing Requests

| Care Provider Staff | ORR HQ Staff | EOIR/Immigration Court |
|---|---|---|
| **1** Completes the *ORR Motion Requesting Bond Hearing for Unaccompanied Alien Child* (using the form corresponding with the child's placement level) | **3** Creates a bond hearing file for the UAC; Files *Motion* and supporting materials with the appropriate court **within 15 business days of receiving the request** (filing the No Concern letter as needed); Serves a copy of the filing on the UAC's attorney (if applicable) or on the care provider if the UAC is unrepresented. | **4** Notifies ORR HQ that a hearing has been scheduled, providing the time and location. |
| **2** Notifies ORR by email, attaching the *Request* and *Motion* documents, **within 1 business day** of the UAC request for a bond hearing | | |
| | **5** Contacts the local court administrator if there has been no notice of a scheduled hearing within **10 business days** of the ORR HQ Staff confirmation email. | |

Exhibit 3
Page 267

GOV-00207507

| | 6 Notifies Care Provider FFS and UAC's attorney (if applicable) that a hearing has been scheduled, provides the time and location of the hearing within **1 business day** of receiving the notice from the immigration court. | |
|---|---|---|

## Preparing for *Flores* Bond Hearings and Filing with the Immigration Court (ORR)

1. The ORR Representative works with the other ORR and care provider staff to gather evidence relevant to a finding that a UAC is a **danger to the community**. Evidence may include placement documents; SIRs; police reports/court records, clinical notes, psychological reports/records, etc. **prior to the hearing**. See Quick Glance: Documents Relevant to Finding Danger to the Community. 📑

   **NOTE:** The ORR Representative should collect primary, original (copies of originals are acceptable) and documents that are relevant evidence that the child is a danger to the community. The ORR Representative saves this evidence in the bond hearing file and may attach it to submissions to the immigration court.

   **NOTE:** UAC in shelter care may not require an actual hearing before the immigration judge, if ORR does not find that the child is a danger to the community. In these circumstances, the ORR HQ staff processing the motions will send the No Concern letter stating as such to the immigration court, attached to the UAC's motion for a bond hearing.

### Quick Glance: Possible Evidentiary Sources to Finding Danger to the Community

- Juvenile court or criminal records
- Police records
- Intakes referral and placement records in the UAC Portal
- Placement Tool
- Initial Intakes Assessment
- UAC Assessment/UAC Case Review
- Relevant clinical notes
- Psychological records/reports
- Significant Incident Reports, as applicable
- 30 day Case Review(s)

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)    134 | P a g e

Exhibit 3
Page 268

GOV-00207508

---

- Other documents, if relevant

---

2. ORR HQ staff submit the following materials when filing *Flores* bond hearing motions (filings must be organized in accordance with Immigration Court rules, as explained in the Immigration Court Practice Manual):

   a. Motion Requesting Bond Hearing;

   b. *Motion Requesting a Telephonic Hearing* if applicable (i.e., if the hearing is not in the Arlington, VA court and/or the attorney will not appear in person); and

   c. Pre-hearing brief with supporting exhibits (from materials collected in the bond hearing file) if ORR is contesting bond, or No-concern letter if ORR does not find the UAC to be a danger

3. In addition to serving the court, per Immigration Court rules, the ORR HQ staff must also serve a physical copy of all materials to the UAC's attorney (or to the UAC care of the care provider if the UAC is unrepresented). As a courtesy, ORR HQ staff emails scanned copies of these materials to the UAC's attorney (or to the FFS to provide to unrepresented UACs). ✉️🖱️

---

### Quick Glance: Preparing for Bond Hearings

| ORR HQ Staff | HHS HQ staff and/or Attorney |
|---|---|
| **1** Receives notice of *Flores* bond hearing request from care provider, logs the request in the internal tracker, saves copies of the *Request* and *Motion* documents on the shared drive, and creates a bond hearing file for the UAC on the shared drive. | **3** Communicates with ORR and care provider staff to collect evidence supporting ORR's position in the hearing, saving all documents to the bond hearing file. |
| **2** Notifies the assigned ORR Representative of the bond hearing case | **4** Prepares pre-trial brief and exhibits. |
| **5** In coordination with ORR representative, assembles all materials for submission to the court, obtaining ORR representative signatures as appropriate, and mails the document to the appropriate court and to the UAC's attorney (or to the UAC care of the care provider if the UAC is unrepresented). | |

---

## *Flores* Bond Hearing Proceedings

1. The care provider follows standard immigration court transport procedures for transporting the UAC to their scheduled *Flores* bond hearing *if* there is a hearing scheduled. See Section 3.3.14 Transportation Services. 📖

2. The *Flores* bond hearing proceedings commence. After conclusion the immigration judge issues an order. The ORR representative keeps the original order for filing at HQ, and provides a copy to the care provider point of contact.

3. If ORR loses the case, ORR reserves the right to appeal. OGC handles all appeals for ORR.

# Appendix 2.12 Legal Status Definitions

| IMMIGRATION STATUS/U.S. CITIZENSHIP STATUS | DEFINITION |
|---|---|
| Asylee | Sponsor was granted or has a pending case for asylum, Withholding of Removal, or Convention Against Torture protections. |
| Conditional Permanent Resident | Sponsor has a valid, non-expired Permanent Resident Card (i.e., green card) that is valid for a 2-year period. |
| Continued Presence | Sponsor has remained in the U.S. longer than allowed by their Visa without DHS ICE permission. |
| DACA | Sponsor is a Deferred Action for Childhood Arrivals (DACA) recipient. |
| Humanitarian Parole | Sponsor was paroled into the U.S. on humanitarian grounds. |
| Legal Permanent Resident | Sponsor has a valid, non-expired Permanent Resident Card (i.e., green card) that is valid for a 10-year period. |
| Non Immigrant Status | Sponsor received temporary admission into the U.S. and has a valid, non-expired Visa (e.g., exchange visitors, students, temporary workers, religious workers, business visitors tourists, victims of criminal activity or trafficking, spouse or child or a lawful permanent resident) or the sponsor received a visa-waiver from certain participating countries who can travel to the U.S. for tourism or business for 90 days or less without needing a visa. |
| Order of Removal | Sponsor was issued an Order of Removal with a 30-day window to appeal, an Order of Removal *in absentia*, or a final Order of Removal. |
| Refugee | Sponsor was admitted as a refugee with a pending or approved application for refugee status. |
| SIJS | Sponsor was granted Special Immigrant Juvenile Status. |
| Temporary Protected Status | Sponsor was granted Temporary Protected Status. |
| U.S. Citizen | Sponsor is a United States citizen through birth, naturalization, acquisition, or derivation. |
| Under Removal Proceedings | Sponsor was served an NTA to appear in front of an Immigration Judge to potentially initiate removal proceedings. |
| Other | Sponsor has an immigration status that does not fall under any of the above categories. |

| Without Status | Sponsor does not have an immigration or U.S. citizenship status. The sponsor entered without inspection, is present in the U.S. without being admitted or paroled, and/or did not enter through a border inspection station or port of entry. The sponsor does not have an order of removal and is not under removal proceedings. |
|---|---|
| Unknown – Likely With Status | Sponsor's immigration or U.S. citizenship status could not be determined. However, based on expired documentation and/or conversations with the sponsor, it is likely that the sponsor has an immigration or U.S. citizenship status. |
| Unknown – Likely Without Status | Sponsor's immigration or U.S. citizenship status could not be determined. However, based on expired documentation and/or conversations with the sponsor, it is likely that the sponsor is without status. |
| Unknown | Sponsor's immigration status or U.S. Citizenship could not be determined and it is unclear whether the sponsor is with or without status. |

GOV-00207512

## Appendix 2.13 Fingerprint Card

The subject of the fingerprint check must complete all fields highlighted in yellow for two fingerprint cards. The minor's full name and A# must be entered under "Reason Fingerprinted." The agency or vendor taking fingerprints from the subject must roll prints for all boxes and sign and date each fingerprint card (areas highlighted in blue).



Exhibit 3
Page 273

GOV-00207513

## Appendix 2.14 Fingerprinting Guidance

### DIGITAL FINGERPRINTS

1. The case manager assists the potential sponsor, adult household member, and/or adult caregiver in scheduling a fingerprint appointment at an ORR digital fingerprint site to occur **within 3 business days of receiving the signed** *ARI* **and government issued photo ID.** Unless the ORR digital site indicates that they only accept walk-ins, the case manager **must make an appointment.**⊘

2. The case manager must provide the ORR digital fingerprint site the following information and documents when making an appointment:

   - Completed and signed *ARI*

   - Copy of government issued photo ID

   - Case manager name, email, phone number, and care provider program name

   - Subject phone number, relationship to UAC, and whether they are the sponsor, household member, or adult caregiver

   - UAC name and A#

   - Reason for expedited processing, if applicable

   **NOTE:** If the individual who is being fingerprinted requires in-person assistance from the ORR digital fingerprint site completing the *FRP* and/or *ARI*, the case manager must notate that assistance is requested (see Quick Glance: Assistance Completing the *FRP* at ORR Digital Fingerprint Sites).

3. The case manager instructs the individual being fingerprinted to bring at least one form of government issued photo ID to the appointment.

   **NOTE:** ORR strongly prefers that the case manager schedule the fingerprint appointment for potential sponsors, adult household members, and adult caregivers. However, if that is not possible then the individual may contact the ORR digital fingerprint site directly to make an appointment. In those instances, digital site staff will instruct the individual to bring a completed *ARI*, at least one form of government issued photo ID, and their case manager's contact information to the appointment.

   **NOTE:** If a situation arises in which paper fingerprint cards must be used, the ORR digital fingerprint site will send the following directly to PSC/DCS via an express mail courier.

   - Two original fingerprint cards (ORR no longer collects Social Security Numbers and this field should be blacked out – see Appendix 2.13 Fingerprint Card)

- Copy of the *Sponsor Check Coversheet* (completed by the ORR digital fingerprint site)
- Copy of the *Authorization for Release of Information*
- Copy of the subject's government issued photo ID

The ORR digital fingerprint site will also email a copy of the *Sponsor Check Coversheet*, which will include the courier name and tracking number, to the case manager.

This does not take the place of the case manager's responsibility to email the required paperwork to PSC/DCS following the procedures in <u>2.5.1 Criteria for Background Check Requirements</u>.

ORR digital fingerprint sites take digital fingerprints <u>and</u> complete paper fingerprint cards for UAC who are aging out in three days or more to minimize the chances of unclassifiable fingerprints. ✉▤

## Quick Glance: Assistance Completing the *FRP* at ORR Digital Fingerprint Sites

Some ORR digital fingerprint sites offer in-person assistance completing the *FRP* and/or *ARI* to potential sponsors, adult household members, and adult caregivers.

If the case manager believes the potential sponsor, adult household member, or adult caregiver would benefit from in-person assistance completing the *FRP* and/or *ARI*, they may request this service from any ORR digital fingerprint that offers it when making an appointment.

ORR digital fingerprint site staff assist the individual(s) being fingerprinted in completing the *FRP* and/or *ARI* and email legible copies of these documents to the case manager the same day of the appointment.

The ORR digital fingerprint site does not email copies of these document to PSC/DCS on behalf of the case manager to request a Fingerprint Check. PSC/DCS does not accept documents or requests directly from ORR digital fingerprint sites. All documents are submitted from the digital site to the Case Manager who reviews the documents for completeness and accuracy prior to submission to PSC/DCS.

## PAPER FINGERPRINT CARDS

If distance or other limitations prevent the individual(s) from traveling to an ORR digital fingerprint site, the individual may have paper fingerprints taken at any local law enforcement agency or U.S. government agency.

1.  The case manager sends the following items to the individual being fingerprinted via an express mail service (e.g., UPS, FedEx, USPS Priority Mail):

    - Two paper fingerprint cards (ORR no longer collects Social Security Numbers and this field should be blacked out)

    - A prepaid priority mail service envelope addressed to the case manager

2.  The individual has their fingerprints taken on both paper fingerprint cards, completes all fields at the top of the fingerprint cards (except the Social Security Number field), signs both fingerprint cards, and mails them back to the case manager.

3.  The case manager checks to ensure that all required fields were completed (see Appendix 2.13 Fingerprint Card) and mails the original fingerprint cards with legible copies of the *ARI*, *Sponsor Check Coversheet*, and government issued photo ID to PSC/DCS for **next morning** delivery. The case manager must include the name of the courier and the tracking number on the *Sponsor Check Coversheet* when they email the Fingerprint Check request to PSC/DCS (see 2.5.1 Criteria for Background Check Requirements).

## Appendix 2.15 Prior Sponsorship Information Request

### Prior Sponsorship Information Request

**Current Minor Information:**
Name:
A#:
Facility:

**Requesting previous sponsorship information by**: (Highlight)
- Back Up Sponsor
- Sponsor

**Previously Sponsored Minor Information:**
Name:
A#:
Facility:
Discharge Date:

I would like to request the following documents. (Highlight)

| Sponsor | Back Up Sponsor |
|---|---|
| <ul><li>UC Assessment (UC Portal)</li><li>Release Request (UC Portal)</li><li>FRP & supporting documents</li><li>Latest Case Review</li><li>Sponsor Assessment</li><li>30 Day Follow Up Note (applies for minor released after 8/15/17)</li><li>PRS Acceptance (if applicable)</li><li>Home Study Report (if applicable)</li><li>Background Checks</li></ul> | <ul><li>30 Day Follow Up Note (applies for minor released after 8/17/15)</li><li>FRP & supporting documents</li><li>Release Request (UC Portal)</li></ul> |

UAC MAP Section 2: Safe and Timely Release from ORR Care (Version 4.1)    143 | Page

Exhibit 3
Page 277

GOV-00207517