# DX-66

Deposition of Michelle Ortiz, August 22, 2019
(Excerpts)

CONFIDENTIAL

1          UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

2               WESTERN DIVISION

3          CASE NO. 2:18-CV-057441-DMG-PLA

4     LUCAS R., et al.,

5          Plaintiffs,

6     vs.

7     ALEX AZAR, Secretary of U.S. Department

      of Health and Human Services, et al.,

8

           Defendants.

9     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/

10

11                    6355 NW 36th Street

                      Suite 2201

12                    Miami, Florida

                      Thursday, August 22, 2019

13                    9:35 a.m. to 2:48 p.m.

14

15

16

17                 CONFIDENTIAL

18           DEPOSITION OF MICHELLE ORTIZ

19

20

21         Taken on behalf of the Plaintiffs before Carol

22    Hill Weng, FPR, RMR, CRR, CMRS, CPE, CRI, a Notary

23    Public in and for the State of Florida at Large,

24    pursuant to Plaintiffs' Notice of Taking Deposition in

25    the above cause.

CONFIDENTIAL

Page 62

1   and His House also in operation during that

2   period?

3       A.    Yes.

4       Q.    So what's your estimate as to the

5   ability of AIJ lawyers to speak with the FFS in

6   charge of Homestead versus the FFS in charge of

7   Boys Town and His House, if you recall?

8       A.    There was not a difference.

9       Q.    So AIJ lawyers were able to speak with

10  FFSs -- had equal access to the FFSs in both

11  circumstances?

12      A.    Yes.

13      Q.    And is it your understanding that the

14  FFSs have authority to require facilities to

15  expand or -- expand the ability of children to

16  speak with lawyers at the respective facilities?

17      A.    I'm sorry.  I don't understand that

18  question.

19      Q.    Do the FFSs have any authority to, for

20  example, tell Homestead that the case managers

21  must be able to speak with children's lawyers?

22      A.    That wasn't clear to me.

23      Q.    Okay.  If you could compare and

24  contrast the degree to which children's lives,

25  their daily lives, at Boys Town and His House,

CONFIDENTIAL

Page 68

1       A.    It varied over time.  For many months

2  we were given no notice.  We would learn from

3  the census that the child was no longer there.

4            But once the FFSs had more of a

5  presence at Homestead, the FFSs would notify us

6  either that a child was going to be transferred

7  or asking us if there were any children that we

8  did not want transferred.

9            For example, if they were going to

10  move out children to make more space because

11  beds opened up somewhere else, the FFS would, on

12  occasion, ask us to provide her with a list of

13  children that we did not want transferred to

14  those facilities.

15       Q.    And so, to your recollection, were the

16  children themselves ever consulted as to their

17  wishes to be transferred or not out of

18  Homestead?

19       A.    By whom?

20       Q.    By Homestead.

21       A.    By CHS?

22       Q.    CHS.

23       A.    Not to my knowledge.

24       Q.    And in determining whether to

25  recommend or to ask that a child not be

Page 69

1    transferred out of Homestead, did SIJ lawyers

2    consult the children as to their wishes?

3        A.    Yes.  When possible.

4        Q.    So when you say "when possible," does

5    that mean that there wasn't going to be adequate

6    time or what would prevent --

7        A.    If we were provided with notice that a

8    particular child was going to be considered for

9    transfer, which rarely happened.

10       Q.    So on the rare occasions it did

11   happen, then, you would -- SIJ lawyers would

12   consult with the child about their wishes?

13       A.    Their wishes and also the impact it

14   might have on their legal case.

15       Q.    So what percentage of the time would

16   you estimate SIJ lawyers were given advance

17   notice that clients were going to be transferred

18   out of Homestead?

19       A.    It's hard to say percentage, but it

20   changed over time.  So for the majority of the

21   time we were given no notice.  Once the FFSs

22   were more involved we were given more -- we were

23   given an opportunity to request that they not

24   transfer certain children out of state.  Right?

25              Our concern was, we'd be finalizing a

CONFIDENTIAL

Page 70

1   child's asylum application or dependency case,

2   or whatever it would be, and that the child

3   would be transferred out of state, and then by

4   the time they were able to find new

5   representation, they would age out or something

6   like that.

7           So -- but that was later on once there

8   was communication between us and the FFSs as to

9   impending transfers.

10      Q.    So how long would you estimate the

11  period lasted in which you were getting

12  information from the FFSs that clients were

13  going to be transferred, how long did that go on

14  for?

15      A.    I would say that happened maybe

16  starting in March or April of 2019.

17      Q.    So from March or April of 2019 through

18  the beginning of August 2019?

19      A.    Yes.  To my knowledge.  I was not

20  supervising the program during the whole time,

21  but that's my understanding.

22      Q.    So what's your best estimate, during

23  that period, of how often AIJ lawyers would get

24  notice of impending transfer of a client?

25      A.    How often starting when they started

CONFIDENTIAL

Page 159

1          REPORTER'S DEPOSITION CERTIFICATE

2

3      I, Carol Hill Weng, FPR, RMR, CRR, CMRS, CPE, CRI,

4    certify that I was authorized to and did

5    stenographically report the deposition of Michelle

6    Ortiz, the witness herein on August 22, 2019; that a

7    review of the transcript was requested; that the

8    foregoing pages are a true and complete record of my

9    stenographic notes of the deposition of said witness;

10   and that this computer-assisted transcript was prepared

11   under my supervision.

12       I further certify that I am not a relative,

13   employee, attorney or counsel of any of the parties,

14   nor am I a relative or employee of any of the parties'

15   attorney or counsel connected with the action.

16       DATED this August 31, 2019.

17

18

19          Carol Hill Weng, FPR, RMR, CRR
            CMRS, CPE, CRI

20

21

22

23

24

25