# DX-68

Deposition of Jallyn Sualog, August 21, 2019
(Supplemental Excerpts)

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

Case No. No. 2:18-CV-05741-DMG-PLA

---

LUCAS R., et al.,                    )
    Plaintiffs,                   )
  v.                                 )
ALEX AZAR, Secretary of U.S.         )
Department of Health and             )
Human Services, et al.,              )
    Defendants.                   )
---                                  )

CONFIDENTIAL

DEPOSITION OF JALLYN SUALOG

Washington, D.C.

August 21, 2019

Reported by: BARBARA DE VICO

Job No. 166053

1  that state and local child protective services are
2  inadequate to ensure their safety or care?
3      A.   I don't know why they wouldn't.
4      Q.   Okay.
5           MR. HOLGUIN:  We can break now.
6               (Recess)
7  BY MR. HOLGUIN:
8      Q.   Okay.  What is ORR's policy with
9  respect to allowing lawyers access to case
10 managers?
11     A.   We don't have any specific policy, I
12 believe, regarding that.  But the primary point of
13 contact for attorneys are case managers.
14     Q.   Okay.  So who would decide whether a
15 lawyer gets to speak with a case manager?
16     A.   I don't -- all I can say is ORR is
17 not making those determinations.  There's nothing
18 that limits interaction between attorneys and case
19 managers or requests or any, anything that says
20 that a case manager and an attorney needs or has
21 permission to interact.
22     Q.   Does ORR have any policy to require
23 case managers to interact with children's lawyers?
24     A.   I think that ORR may have policies
25 and procedures regarding ensuring that case

1  managers or facilities update, update attorneys
2  and in my experience attorneys and case managers
3  who have been on site visits in the past
4  interacting in the facility.
5      Q.   What would be the consequence if a
6  case manager were to refuse to speak with a lawyer?
7  What action, if any, would ORR take?
8      A.   I don't know any consequences.
9      Q.   Would there be any consequence if a
10 facility as a whole were to preclude case managers
11 from speaking directly with children's lawyers?
12     A.   There would be consequences.  I
13 don't think there was anything specific in our
14 policies that would say there's, you know, specific
15 consequences for a staff at a facility level not to
16 speak to attorneys.  ORR has requirements that
17 basically mandates access to facilities, to
18 children and to the facility as a whole to legal
19 service providers.
20     Q.   Okay.  Now, would a facility's
21 obligations to allow children's lawyers access to
22 case managers, would that be included in the
23 cooperative agreement?
24     A.   No.  I don't believe it's in there.
25 If you're looking for access for legal service

1  they are trying to prove, whether or not a parent
2  needs to prove that they are fit and whether or not
3  the state can show that the parent is unfit.
4       Q.    So in your experience, it would be
5  proper for a child welfare agency to presume a
6  parent unfit until that parent proves otherwise?
7       A.    No.  I don't think I've seen that.
8  I really, as someone who's not worked for the state
9  as a child welfare, in that, exactly for the state,
10 I don't think that I could render that opinion at
11 all.
12      Q.    Okay.  How does ORR or has ORR
13 interpreted what the Trafficking Victims Protection
14 Act means when it refers to legal matters in
15 proceedings?
16           MR SHEIH:  Objection.  Calls for a
17      legal conclusion.
18      A.    I really don't understand that
19 question.
20      Q.    You're aware that the Trafficking
21 Victims Protection Act requires HHS to do
22 everything practicable to ensure that children in
23 its custody or who have been in its custody are
24 assisted by counsel in legal matters and
25 proceedings.  Is that fair to say?

Page 114

1  A. I will admit that I -- my knowledge,
2  exact knowledge of what the TVPRA is not as
3  thorough as that.
4  Q. So you've never seen a memorandum or
5  anything in writing in which ORR has interpreted
6  what legal matter, matters or proceedings are?
7  A. I don't recall looking at such a
8  document.
9  Q. Okay. In terms of the Vera
10 Institute of Justice, what is your role with
11 respect to the work that they do for ORR?
12 A. They don't have a role, specific
13 role to their work.
14 Q. Who within ORR supervises Vera
15 Institute of Justice's work?
16 A. The contracting officer
17 representative assigned to that contract would.
18 Q. And what's that person' name?
19 A. I believe currently it is Stacey
20 Terrell.
21 Q. Have you ever had occasion to
22 supervise or oversee Vera Institute of Justice's
23 contractor work?
24 A. Yes.
25 Q. When was that?

Page 232

C E R T I F I C A T E

LUCAS right.           )
    v.                 )
ALEX AZAR, et al.,     )

    I, BARBARA DeVICO, a Notary Public within and for the District of Columbia , do hereby certify:

    That JALLYN SUALOG, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony by such witness.

    I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

    IN WITNESS WHEREOF, I have hereunto set my hand this 3rd of September, 2019.

_____
BARBARA DeVICO