# DX-74

Deposition of David Fink, February 12, 2020
(Supplemental Excerpts)

```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2                    WESTERN DIVISION

 3

 4   LUCAS R., et al.,           )
                                 )
 5            Plaintiffs,        )     CASE NO.
                                 )
 6         vs.                   ) 2:18-CV-05741 DMG PLA
                                 )
 7   ALEX AZAR, Secretary of     )
     U.S. Department of Health   )
 8   and Human Services, et al., )
                                 )
 9            Defendants.        )
     _____)

10

11

12          *** C O N F I D E N T I A L ***

13

14        DEPOSITION OF DAVID R. FINK

15              Atlanta, Georgia

16        Wednesday, February 12, 2020

17

18

19

20   Reported by:

21   Judith Leitz Moran

22   CCR, RPR, RSA

23   JOB NO.: 175989

24

25
```

Page 26

1     Q    How are you influencing the policy
2    decisions that are being made at ORR?
3     A    So one of the things that I did not
4    clarify with you as part of my roles is to review
5    notice of placements.
6     Q    Uh-huh.
7     A    So step-ups and step-downs.  So we have a
8    -- Ms. Ray and myself and the special -- or field
9    office juvenile coordinator consult on the notice
10   of placements.  So we review those every month to
11   determine if programs are in compliance.
12    Q    So I will have a few questions about the
13   notice of placements moving forward.
14        But you also mentioned the juvenile
15   coordinator.  Who is that?
16    A    Aurora Miranda-Maese.
17    Q    And what is her role as the juvenile
18   coordinator?
19    A    She's a contractor with ORR, but she
20   works a lot with the special master.
21    Q    Uh-huh.
22    A    And then she also does a lot of site
23   visits to specialized placements to also look for
24   compliance and make sure that they're following
25   policy and laws.

Page 60

```
 1       A    Correct.
 2       Q    Okay.  And you've visited a number of
 3   these ORR programs, correct?
 4       A    Yes.
 5       Q    Okay.  Do you know which ones?
 6       A    Yes.
 7       Q    Okay.  Can you just identify the programs
 8   that you've personally visited?
 9       A    Yes.  Shenandoah, BCFS San Antonio,
10   Shiloh, BCFS Fairfield, Yolo, which is now closed.
11   Morrison PASO in Portland, Oregon.  Selma Carson
12   Home in Fife, Washington.  Friends of Youth,
13   Children's Village and International Youth Center
14   in Chicago.
15       Q    Thank you.
16            And so have you -- what types of
17   placements do those programs represent?
18       A    They -- so some of those are staff
19   secures.  Two of those are RTCs and one is a
20   secure.
21       Q    And have you been to non-restrictive
22   placements as well?
23       A    Yes.
24       Q    And do you recall which ones?
25       A    No, it was for a tour.
```

1  variation in terms of the types of behaviors or
2  incidents that are reflected or documented in a
3  significant incident report?
4      A   They -- they're very broad.
5      Q   In terms of -- is there variation by
6  program in terms of how programs interpret what
7  might constitute a need to document behavior in a
8  significant incident report?
9      A   Yes.
10     Q   And from ORR's perspective, is there any
11 kind of guidance or training provided in terms of
12 what types of behavior should be captured by the
13 significant incident reports?
14     A   So when we rolled out the policy, we did
15 this training, but the other piece of this that
16 makes this a little tricky is that their licensing
17 will also call for different standards of
18 reporting, too.  And so what may not be significant
19 to us might be significant to the state and vice
20 versa.
21     Q   Okay.  So there could be differences
22 between ORR reporting requirements and state
23 licensing reporting requirements?
24     A   And it may require them -- they're going
25 to report to both regardless.

Page 85

1  they're trying to find a placement or something
2  like that, they're required to update that NOP to
3  let everyone know that he or she is still in care
4  because they're still looking for placement, not
5  because of behavior.
6      Q   So setting aside sort of the instances
7  where a program might not have uploaded the
8  information.  In terms of whether youth are
9  actually meeting the minimum requirements, the
10 eligibility requirements, for a step-up to a more
11 restrictive setting, are there particular programs
12 that are more noncompliant than others?
13     A   Not so much noncompliant with the kids
14 they're accepting.  It's more noncompliance on
15 uploading and reporting the NOPs to us is what we
16 see.
17     Q   And which programs are more noncompliant
18 in terms of uploading the NOPs?
19     A   Mainly Carson Home is the one that comes
20 to mind, yes.
21     Q   Okay.  And what is the relationship then
22 between sort of the compliant -- what does ORR do
23 to ensure that programs are fully compliant with
24 all of the notice of placement?
25     A   If they're not in compliance, we hold

```
1                  DISCLOSURE OF NO CONTRACT

2

3          I, Judith L. Leitz Moran, do hereby disclose
     pursuant to Article 10.B. of the Rules and
4    Regulations of the Board of Court Reporting of the
     Judicial Council of Georgia that TSG Reporting was
5    contacted by the party taking the deposition to
     provide court reporting services for this
6    deposition and there is no contract that is
     prohibited by O.C.G.A. Sections 15-14-37(a) and (b)
7    or Article 7.C. of the Rules and Regulations of the
     Board of Court Reporting for the taking of this
8    deposition.

9          There is no contract to provide reporting
     services between TSG Reporting or any person with
10   whom TSG Reporting has a principal and agency
     relationship nor any attorney at law in this
11   action, party to this action, party having a
     financial interest in this action, or agent for an
12   attorney at law in this action, party to this
     action, or party having a financial interest in
13   this action.  Any and all financial arrangements
     beyond our usual and customary rates have been
14   disclosed and offered to all parties.

15

16         This 25th day of February 2020.

17              [signature]

18
     _____
19   Judith L. Leitz Moran, B-2312
     Georgia Certified Court Reporter
20

21

22

23

24

25
```