# DX-82

Report of Prof. Jessica Heldman, June 19, 2020

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al., | Case No.  2:18-CV-05741 DMG PLA |
| Plaintiffs, | |
| v. | EXPERT REPORT OF PROFESSOR JESSICA HELDMAN |
| ALEX AZAR, et al., | |
| Defendants. | |

EXHIBIT

240

exhibitstick.com

I.      Introduction ...................................................................................................... 3

II.     Qualifications ................................................................................................... 3

III.    Compensation .................................................................................................. 6

IV.     Methodology .................................................................................................... 6

        A.  Definitions ............................................................................................... 6

        B.  Materials Reviewed ................................................................................. 6

        C.  Method of Analysis .................................................................................. 8

V.      Summary of Opinions ..................................................................................... 9

VI.     Research and Findings Overview ................................................................. 10

        A.  Overview of Juvenile Justice and Child Welfare Policy and Procedure ................... 10
            1.  Key Overarching Policies Regarding Placement ................................. 10
            2.  Federal Policy Regarding Procedural Protections Specific to Secure and Staff
                Secure Placement ............................................................................... 11
                a.  Right to representation ................................................................... 12
                b.  Additional rights under In re Gault within juvenile proceedings: right to a
                    hearing, right to confront and cross-examine witnesses, and right to notice .. 13
            3.  Procedural requirements in state juvenile justice proceedings ............................ 13
                a.  Right to a detention hearing within a time certain in front of a neutral arbiter
                    13
                b.  Right to Notice of Detention Hearing ............................................. 15
                c.  Right to Counsel at Detention Hearing .......................................... 15
                d.  Right to an interpreter ................................................................... 16
                e.  Right to present evidence, witnesses and the opportunity to be heard .......... 16
                f.  Right to continued review ............................................................. 18
                g.  Procedural protections in adjudicatory and dispositional hearings................ 18
            4.  Procedural requirements in state child welfare proceedings............................ 19
            5.  Majority State Policy ....................................................................... 20

        B.  ORR Procedures for Secure or Staff Secure Placement ............................................ 21
            1.  ORR Policy Does Not Provide a Right to a Hearing Before a Neutral Arbiter to
                Challenge Placement in a Restrictive Setting ................................... 21
            2.  ORR Policy Does Not Provide a Right to Adequate Notice................................ 22
            3.  ORR Policy Does Not Provide a Right to Counsel.............................. 22
            4.  ORR Policy Does Not Provide an Opportunity to be Heard and the Right to
                Present Evidence ............................................................................... 23
            5.  ORR Policy Does Not Provide a Right to an Interpreter ....................................... 23
            6.  ORR Policy Does Not Provide a Right to Appeal .............................................. 24
            7.  ORR Policy Provides a Cursory Right to Continued Review of Secure Placement
                24

VII.    Analysis: Comparison of ORR Policy with Juvenile Justice and Child Welfare
        Procedures ................................................................................................... 25

Expert Report of Professor Jessica Heldman
CASE NO. 2:18-CV-05741 DMG PLA

**A.** ORR Procedures Do Not Align with Key Federal Juvenile Justice and Child Welfare Policy ........................................................................................................... 25

**B.** ORR procedures for placement in a secure or staff secure setting do not align with procedures in the majority of states ...................................................................... 25

1.  Right to a hearing before a neutral arbiter ........................................... 25

2.  Right to Counsel ................................................................................... 26

3.  Opportunity to be heard and the right to present evidence, and right to interpreter 27

4.  Right to review of placement ................................................................ 27

**VIII.  Conclusion** ........................................................................................... **28**

## I.        INTRODUCTION

I have been retained by counsel for the Plaintiffs in *Lucas R. v. Azar*, Case No. 2:18-cv-05741 (C.D. Cal.) to provide my expert opinion regarding the procedural protections afforded to children and youth in the juvenile justice and child welfare systems when placing children in secure and restrictive settings.

For this report, I have conducted a review of child welfare and juvenile justice law and policy in all 50 states and the District of Columbia related to the secure placement of youth, as well as key federal law and policy. With the results of the review and my expert knowledge of child welfare and juvenile justice systems, I have identified the procedures used by the majority of states in placing and moving children into secure settings. I have reviewed ORR written policy related to placement of children into secure settings and analyzed ORR written policy in light of federal and majority state procedures. This report summarizes my qualifications as an expert, the matters I have reviewed and subsequently opine upon, and the law and policy review I have conducted that inform my opinions. I reserve the right to revise and supplement my opinions and this report based on new information that may be obtained following the date of this report.

## II.       QUALIFICATIONS

In 2018, I was appointed to the position of Fellmeth-Peterson Professor in Residence in Child Rights at the University of San Diego School of Law (USD), a position I currently hold. I received a J.D., graduating *magna cum laude,* from the University of San Diego School of Law and received a B.S. from Northwestern University. I have received the James D. Angelo Outstanding Child Advocate Award and the USD School of Law Children's Advocacy Institute Trailblazer Award. I currently serve as Chair of the Polinsky Children's Center Advisory Board and am a member of the San Diego County Child and Family Strengthening Advisory Board,

both of which advise on and provide recommendations for policy and practice improvements within the child welfare and other child-serving systems of San Diego County.

As Professor in Residence at USD, I teach and supervise law students engaged in coursework related to juvenile dependency and juvenile delinquency law and policy. I teach a course entitled "Child Rights and Remedies," which is a broad survey course covering various topics related to children's legal rights, focusing in large part on child welfare and juvenile justice. In 2018, I co-authored a textbook of the same name with Professor Robert C. Fellmeth. This textbook, to our knowledge, is the most comprehensive text covering the topic of child rights and the system of courts in which they may be adjudicated or can obtain redress. In addition, I supervise law students participating in the USD Child Advocacy Dependency Clinic and the Child Advocacy Delinquency Clinic. In these clinics, students are placed with law firms and public agencies representing children and youth in the child welfare and juvenile justice systems. I provide students with orientation and ongoing instruction in juvenile court procedure, information on developments in state and federal juvenile justice and child welfare law and policy, and research regarding best practice in both systems.

In my position at USD, I also serve as a staff attorney for the Children's Advocacy Institute (CAI). CAI is California's premiere academic, research, and advocacy organization seeking to improve the lives of children and youth, with special emphasis on improving the child protection and foster care systems. In this role, I lead research and writing on topics related to juvenile justice and child welfare, most recently completing a report commissioned by the Chief Probation Officers of California that covered the evolution of juvenile justice law, policy, and practice over the past 25 years. I also lead CAI in legislative advocacy related to dual status youth—youth who are involved in both the child welfare and juvenile justice systems. In my

time at USD, CAI has sponsored two bills in the California legislature related to this population

of youth.

Prior to my appointment at USD, I served as the Associate Executive Director of the

Robert F. Kennedy National Resource Center for Juvenile Justice at the Robert F. Kennedy

Children's Action Corps (RFK). In this position, I led research, writing, training and provided

technical assistance on the topics of dual status youth and probation system reform. During my

time with RFK, I authored eight publications focused on juvenile justice and child welfare policy

and practice reform. I also presented more than a dozen times at various conferences, symposia,

and legislative briefings and hearings. I developed curricula for training programs on the topic of

dual status youth and probation system reform, multi-system collaboration between juvenile

court and government agencies, and juvenile court best practices. I led teams in providing

training to a wide variety of child welfare and juvenile justice professionals including judges,

attorneys, child welfare administrators, and probation chiefs. I also served as faculty for

Georgetown University's Center for Juvenile Justice Reform, providing training and technical

assistance with regards to dual status youth reform in numerous jurisdictions. I have led intensive

technical assistance and training initiatives in sixteen states, exploring dependency and

delinquency court law, policy, and practice and developing strategic plans for increased

alignment with best practice. In addition, I led a multi-state network of child welfare and juvenile

justice leaders that worked to develop models and resources in order to accelerate system

improvement nationwide.

I attach my Curriculum Vitae to this report as Appendix A. My Curriculum Vitae

includes a complete list of my publications. I have never testified as an expert at trial or by

deposition.

## III.        COMPENSATION

I am being compensated for preparation of this report at the rate of $250 per hour. Should I need to testify either at a deposition or trial, my hourly rate for testimony is $300 per hour.

## IV.        METHODOLOGY

### A.        Definitions

Throughout this report, I use the terms "secure" and "staff secure." In this report, the term "secure" is used as it is in federal juvenile justice regulations.  "Secure" is used to describe "residential facilities which include construction features designed to physically restrict the movements and activities of persons in custody such as locked rooms and buildings, fences, or other physical structures."[1] This encompasses juvenile detention and juvenile correctional facilities. "Staff secure" is used to describe residential facilities in which physical restriction is provided solely by staff.[2] This includes non-secure shelter care facilities and non-secure residential treatment centers.

### B.        Materials Reviewed

The questions guiding my research for this report were as follows: (1) What are key state and federal policies regarding placement of children within the child welfare and juvenile justice systems?; and (2) What procedural processes are required to place a child or youth in a secure or staff secure placement in child welfare and juvenile justice systems in all 50 states and the District of Columbia and how do they compare to ORR's procedures for placing a child in a restrictive setting?

---

[1] 28 C.F.R §31.304(b).
[2] *See* 28 C.F.R §31.304(b). The definition of "secure" in federal regulations specifically notes that it does not include facilities in which "physical restriction of movement or activity is provided solely through facility staff." 28 C.F.R §31.304(b).  For the purpose of this report, I use the language in this section to define "staff secure."

To answer the research questions, I reviewed federal law codified in the Social Security Act and key federal child welfare legislation, including the Child Abuse Prevention and Treatment Act (CAPTA) and the Adoption and Safe Families Act. I also reviewed the Juvenile Justice Delinquency Prevention Act (JJDPA), a key federal juvenile justice statute, and its corresponding regulations. These statutes and regulations mandate core requirements with which states must comply and some procedural protections states must provide for children and families in state systems supported by federal funds. Through a review of the text of the statutes and the use of keyword searches, I identified provisions detailing principles and policies related to secure or staff secure placements of children, as well as required procedures or limitations for placing children in such settings.

In addition, I reviewed state law and policy in all 50 states and the District of Columbia—including state statutes and court rules—related to detention and placement of children and youth in secure and staff secure settings within juvenile justice systems. I examined the table of contents for each state's code to identify code sections and court rules related to juvenile court and juvenile justice (delinquency). Using keyword searches, I examined provisions related to required processes for detaining or placing a child or youth in a secure or staff secure setting. I identified required procedural protections, specifically identifying required court hearings and whether the hearing procedures provided the child notice, an opportunity to be heard, and an opportunity for review or reconsideration by a court.

In addition to the examination of federal and state law and policy, I reviewed these materials in forming the opinions discussed herein:

- Publications from government agencies including the Government Accountability Office and the Administration for Children and Families;

- Publications from research and advocacy non-profit organizations, including the Youth Law Center and the Annie E. Casey Foundation;

- Publications from relevant trade organizations including the Child Welfare League of America and the National Council of Juvenile and Family Court Judges;

- State Profiles of juvenile procedures compiled by the National Juvenile Defender Center at https://njdc.info/practice-policy-resources/state-profiles/.

I also reviewed ORR Policy and Procedure related to placement in secure facilities. This included review of the:

- ORR Policy Guide, Section 1: Placement in ORR Care Provider Facilities;

- ORR Policy Guide, Section 3: Services;

- UAC Manual of Procedures, Section 1: Placement in ORR Care Provider Facilities (2018)

- UAC Manual of Procedures, Section 3: Services, v. 1.1 (July 2019);

- Notice of Placement in Restrictive Setting; and

- the Intake Placement Checklist.

Finally, I reviewed the Flores Settlement Agreement and the William Wilberforce Trafficking Victims Protection Reauthorization of 2008 ("TVPRA"), codified at 8 U.S.C. § 1232. I also reviewed the First Amended Complaint in *Lucas R. v. Azar*, Docket Number 81, dated September 7, 2018, as well as Defendants' First and Second Set of Responses to Requests for Admissions, provided to me by Plaintiffs' counsel.

### C.    Method of Analysis

The review of child welfare, juvenile justice, and juvenile court law, policy, and procedure, as well as secondary sources, provided the foundation for identification of key components regarding procedures for secure and staff secure placements for children in the child welfare and juvenile justice systems. To support my analysis, I created a chart documenting the

key state provisions, attached to this report as Appendix B. From this compilation, I was able to identify procedures required by at least a majority of states (26 or more). This provided the basis for the "majority state policy" in Section VI.A.5 of this report.

I reviewed ORR policy and similarly identified procedural components related to secure or staff secure placement.  I compared ORR policy to the majority state policy in order to determine whether ORR policy is in alignment with child welfare, juvenile justice and juvenile court law, policy and procedures. This comparison provided the basis for my final analysis and stated opinions.

## V.        SUMMARY OF OPINIONS

It is my opinion that the procedural protections afforded children in the juvenile justice and child welfare systems minimize the risk of erroneous and unnecessarily lengthy placements in secure and staff secure settings which can be harmful and traumatic. The most basic state law protections providing the right to a hearing, representation by an attorney, and an opportunity to be heard with testimony, witnesses and presentment of evidence in determinations regarding placement in a staff secure or secure facility exceed the procedural protections within ORR's written policies and procedures regarding the placement of children in restrictive settings.

It is my opinion that ORR's written policies are substandard when compared to state and federal law for child-serving systems. Based on my review of materials listed above as well as on my experience, knowledge, and training, and in particular, my understanding of the procedural protections afforded to children in the juvenile justice and child welfare systems, I conclude that ORR's policies and procedures for transferring and keeping children in restrictive settings are far more informal and prone to error when compared to the procedures provided in state and federal juvenile justice and child welfare statutes.

## VI.      RESEARCH AND FINDINGS OVERVIEW

In this section, I provide an overview of the key principles underlying state and federal child welfare and juvenile justice policy, followed by a brief description of federal policy regarding procedural protections afforded to juveniles and a more extensive discussion of state policy rooted in the identified key principles.

### A.      Overview of Juvenile Justice and Child Welfare Policy and Procedure

1.      <u>Key Overarching Policies Regarding Placement</u>

The key principles guiding placement in the child welfare and juvenile justice systems are: 1) that children and youth should be placed in the least restrictive setting that is in their best interest and 2) that children and youth are entitled to procedural protections when facing confinement or placement apart from their parents. These principles developed as a result of evolving due process jurisprudence as well as a growing body of research on child development and best practice. These principles form the basis of key federal and state policies guiding state and local child welfare and juvenile justice systems.

Federal child welfare policy is solidly rooted in the first principle, which is based on extensive research indicating that children simply do better in a home with a family or in a family-like setting.[3] Key federal policy directs that federally funded state systems develop a case plan for each child removed from their home as a result of abuse or neglect and placed in the custody of a child welfare agency. This case plan must ensure that they are placed in the least restrictive (most family-like) setting possible, in close proximity to his parents or guardians, consistent with his best interest and special needs.[4] Placement in any group setting should occur only if necessary to address specialized behavioral and mental health or clinical disabilities of

---

[3] *See, e.g.*, Annie E. Casey Foundation, *Every Kid Needs a Family,* 5 (May 19, 2015).
[4] 42 U.S.C. §675(5)(A); 45 C.F.R §1356.21(g)(3).

children and should only last as long as required to stabilize the youth in order for the youth to return to a less restrictive environment.

In the juvenile justice system, federal law embraces the first principle of maintaining children in the least restrictive environment possible as well, by restricting the use of secure confinement for non-criminal behavior. Specifically, the JJDPA requires states to ensure that a juvenile shall not be placed in a secure detention or correctional facility if she has not been charged with an offense and is an alien or is alleged to be dependent, neglected, or abused.[5]

The second key principle recognizes that children have liberty interests and that in order to protect against erroneous deprivation of liberty, children facing placement outside of their home, as well as their parents, are entitled to certain procedural protections. Federal and state policy detailed in Sections 2 and 3 below provide a more detailed landscape of procedural requirements that have emerged in light of this principle.

> 2. Federal Policy Regarding Procedural Protections Specific to Secure and Staff Secure Placement

The procedures in state child welfare and juvenile justice systems are established primarily by state law and policy. However, states must comply with federal requirements and guidelines in order to be eligible for federal funds to support their systems.  As such, state child welfare and juvenile justice systems must adhere to the following procedural protections required by federal law.

---

[5] 34 U.S.C.S  §11133(a)(11)(a)(ii). The law allows exception where a youth has violated a valid court order and is afforded a violation hearing with "full due process rights." 28 C.F.R. §31.303(f)(3)(i). Full due process rights in this context include: the right to have the charges in writing served upon him at a reasonable time before the hearing, the right to a violation hearing before a court no later than 72 hours following detention, the right to an explanation of the nature and consequences of the proceeding, the right to legal counsel, and the right to have such counsel appointed by the court if indigent, the right to confront witnesses, the right to present witnesses, the right to have a transcript or record of the proceedings, and the right to appeal to an appropriate court. 28 C.F.R. § 31.303(f)(3)(v)(A)-(H).

### a. *Right to representation*

In the dependency system, federal law recognizes the fundamental right of parents and children to family integrity and affords them due process rights when children are removed from their parents' custody. [6] As a result, dependency courts provide a series of federally-mandated hearings designed to ensure the required due process. Children are generally a part of such hearings and under federal law, states are required to develop plans for their child welfare systems that include "provisions and procedures requiring that in every case involving a victim of child abuse or neglect which results in a judicial proceeding, a guardian ad litem . . . who may be an attorney . . . shall be appointed to represent the child in such proceedings . . ."[7] As indicated below, most states comply with this section by entitling youth to an attorney in dependency proceedings.

In the juvenile justice system, the 1967 U.S. Supreme Court decision in *In re Gault* established the basic due process rights of juveniles in delinquency proceedings, including the right to counsel when the youth's liberty interests are at stake.[8] The ruling specifically applied to adjudicatory hearings, but as noted below, states have extended the Court's reasoning to other hearings in which the youth's liberty is at stake, including the detention hearing, dispositional hearings, and in some states, post-dispositional hearings.

---

[6] *See Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816 (1977).
[7] 42 U.S.C. §5106a(b)(2)(B)(xiii).
[8] *In re Gault*, 387 U.S. 1 (1967).

>   ### b. Additional rights under In re Gault within juvenile proceedings: right to a hearing, right to confront and cross-examine witnesses, and right to notice

The Court in *In re Gault* established that juveniles have a right to a full adjudicatory hearing on the merits of the case, including the right to confront and cross-examine witnesses. It also established the right to notice in these proceedings. Specifically, the court restated its view from an earlier case that "the hearing must measure up to the essentials of due process and fair treatment."[9] As discussed below, states have applied the Court's due process analysis and provided procedural protections outside of the adjudicatory hearing such as in detention hearings and disposition hearings, both of which impact the placement of the youth.

>   ### 3.  Procedural requirements in state juvenile justice proceedings

Federal law and policy mandate certain procedures when placing a youth in a secure or staff secure setting while state laws and court rules guide the implementation of those federal mandates, often creating additional or expanded requirements. My review of state law and policy identified state provisions on key procedural processes related to secure or staff secure placement of children. My review provided me the ability to document the number of states providing these key protections, forming the basis of a majority state policy detailed below.

>   ### a. Right to a detention hearing within a time certain in front of a neutral arbiter

In all 50 states and the District of Columbia, children and youth are entitled to a hearing when they are placed in a secure detention facility in order to determine whether they can be released. In some jurisdictions this detention hearing is held coincident with an initial hearing in the juvenile justice system, at which arraignment or a probable cause determination occurs.

---

[9] *In re* Gault, 387 U.S. 1, 30 (1967).

The detention hearing must be held within a designated period of time and must be heard by a neutral arbiter—a judge, magistrate, referee or commissioner. Nineteen states require the detention hearing to be held within 24 hours of a youth entering a secure detention facility.[10] Sixteen states require the detention hearing to be held within 48 hours of the youth entering a detention facility.[11] Twelve state require the hearing to be held within 72 hours.[12] Three additional states indicate other timeframes,[13] while Oklahoma has no state required timeframe, with local jurisdictions making the determination.[14]

Because federal law does not allow children who have not committed a crime or violated a valid court order to be placed in a secure detention facility, some states place status offenders[15] or a "child in need of services" in staff secure placements.This placement occurs as a result of a court order entered following either the above detention hearing in delinquency court or a shelter care hearing in the child welfare system.[16] My review revealed a majority of states have a child welfare statutory provision indicating a timeframe within which a shelter care hearing must be held;[17] 72 hours is most common among these states.

---

[10] Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Iowa, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, North Dakota, Rhode Island, West Virginia, Wisconsin. *See* chart at Appendix B for citations.

[11] Alaska, Arizona, California, Colorado, Georgia, Indiana, Kansas, Kentucky, Maine, Mississippi, New Mexico, South Carolina, South Dakota, Texas, Utah, Wyoming. *See* chart at Appendix B for citations.

[12] Alabama, Arkansas, Louisiana, Missouri, Nevada, New York, Ohio, Pennsylvania, Tennessee, Vermont, Virginia, Washington. *See* chart at Appendix B for citations.

[13] Oregon requires a detention hearing within 36 hours. Or. Rev. Stat. Ann. § 419C.139. Illinois requires a detention hearing within 40 hours, 705 Ill. Comp. Stat. Ann. 405/5-415(1). North Carolina requires a hearing within 5 days. N.C. Gen. Stat. Ann. § 7B-1906(a).

[14] Okla. Stat. Ann. tit. 10A § 2-2-101(B).

[15] The JJDPA defines a status offender as "a juvenile who is charged with or who has committed an offense that would not be criminal if committed by an adult." 34 U.S.C. § 11033(42).

[16] A shelter care hearing is a hearing held when placing a youth who has not committed a crime in a non-secure placement such as a shelter or other staff secure facility.

[17] Alabama, Arizona, Arkansas, California, Colorado, Delaware, D.C., Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, Wyoming. *See* chart at Appendix B for citations.

### b. *Right to Notice of Detention Hearing*

My review revealed that the majority of states have written policies—through statute, court rules, or both—indicating that all juveniles have a right to notice prior to their detention hearing.[18] In addition, the state of Washington requires notice of the detention hearing for all youth above age 12.[19] Four states that do not explicitly indicate a child's right to notice do, however, have statutory provisions requiring that the juvenile's parent or guardian receive notice before the detention hearing.[20]

### c. *Right to Counsel at Detention Hearing*

As noted above, the U.S. Supreme Court in *In re Gault* established a juvenile's right to counsel in adjudicatory hearings.[21] States have expanded this right to include representation at juvenile justice detention hearings as well. My review indicated that all 50 states and the District of Columbia have state law or court rules that provide juveniles with a right to counsel that extends beyond the *In re Gault* requirement. My review revealed that 41 states and the District of Columbia explicitly provide the right to an attorney in a detention hearing.[22] The remaining 9 states provide counsel either "at all proceedings" or "at all stages of proceedings" under the juvenile delinquency code.[23]

As noted above, federal law affords juveniles the right to counsel in probation violation hearings before a youth who has not committed a crime (i.e. a status offender) can be held in a secure detention center. Although it was not within the scope of my 50 state review to examine

---

[18] Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Iowa, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New Mexico, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Texas, Utah, Vermont, Virginia, Wisconsin, Wyoming.
[19] Wash. Rev. Code Ann. § 13.40.050(2)
[20] Florida, Hawaii, Illinois, and South Dakota.
[21] *In re Gault*, 387 U.S. 1, 36-37 (1967).
[22] *See* chart at Appendix B for citations.
[23] Georgia, Hawaii, Maine, Maryland, Nevada, Oklahoma, South Dakota, Utah, Wyoming. *See* Chart at Appendix B for citations.

state law related to status offenders, my review of secondary sources revealed that many states provide for the right to counsel for status offenders even beyond the federal requirement, automatically appointing counsel to represent status offenders at all stages of a case.[24]

### d.   Right to an interpreter

The majority of states have statutes or court rules indicating that interpreters are to be appointed for parties in civil proceedings who are of Limited English Proficiency. This policy is rooted in the principle that litigants need to be able to effectively communicate with counsel in order to support their opportunity to be heard. Ten of these state provisions specifically mention juveniles,[25] with the remaining states indicating that all civil matters are included. In addition, Alabama code states that the court may provide an interpreter in juvenile proceedings if it determines that "due process considerations require an interpreter."[26]

### e.   Right to present evidence, witnesses and the opportunity to be heard

In a delinquency case, the detention hearing in some jurisdictions is held coincident with the probable cause hearing. Where this does not occur, the probable cause hearing must be held shortly following the detention hearing. My review of state law did not include a breakdown of which states hold detention review and probable cause hearings simultaneously, nor did I review provisions specific to probable cause hearings apart from detention hearings. However, there is indication from review of secondary sources that most states provide juveniles with the right to

---

[24]  American Bar Association, *The Right to Counsel in Status Offense Cases* (2010) at https://www.americanbar.org/content/dam/aba/migrated/child/PublicDocuments/right_to_counsel_factsheet.authche ckdam.pdf.
[25] California, District of Columbia, Florida, Georgia, Maine, Nevada, New Mexico, New York, North Dakota, and Texas. *See* Chart at Appendix B for citations.
[26] Code of Ala. §15-1-3.

cross-examine witnesses at a probable cause hearing, and that state law commonly provides juveniles the right to present evidence.[27]

When reviewing state provisions regarding the opportunity to be heard in detention hearings, I categorized the provisions as 1) those that provide an explicit right or opportunity for a juvenile to present evidence; 2) those that provide an explicit right or opportunity for a juvenile to present witnesses; 3) those that do not specifically name the juvenile, but provide that the court *shall* receive any or all relevant information; and 4) those that provide an explicit right or opportunity for juveniles to confront the evidence against them.

In reviewing the above provisions, I determined that the majority of states have statutes or rules providing youth with either an opportunity to be heard or the explicit right to present evidence and/or to present witnesses. Specifically, the review of state law indicates that 16 states have a provision explicitly allowing juveniles to present evidence at a detention hearing[28] and 18 states have a provision specifically allowing juveniles to present witnesses[29] (11 of these states are the same) at a detention hearing. Absent these specific provisions, three states indicate that the youth will have an opportunity to be heard[30] and seven states have more general provisions indicating that the court *shall* receive information relevant to the determination of detention.[31]  In

---

[27] Randy Hertz, Martin Guggenheim & Anthony G. Amsterdam, *Trial Manual for Defense Attorneys in Juvenile Delinquency Cases*, 114 (2019).

[28] Alaska, California, Georgia, Iowa, Maine, Michigan, Mississippi, North Carolina, Pennsylvania, South Carolina, Tennessee, Vermont, Washington, West Virginia, Wisconsin, Wyoming. *See* chart at Appendix B for citations.

[29] Arkansas, California, Florida, Georgia, Hawaii, Illinois, Louisiana, Maine, Michigan, North Carolina, Pennsylvania, Tennessee, Utah, Vermont, Virginia, West Virginia, Wisconsin, Wyoming. *See* chart at Appendix B for citations.

[30] Florida, Indiana, Virginia. *See* chart at Appendix B for citations.

[31] Arkansas, Colorado, Delaware, Illinois, Kansas, Missouri, Kentucky. Another 7 states provide that the court *may* admit relevant evidence: Alabama, Hawaii, Connecticut, Minnesota, New Mexico, Ohio, and Utah. *See* chart at Appendix B for citations.

addition, 17 states have provisions specifically allowing juveniles to confront the evidence

against them or cross-examine witnesses.[32]

### f.   Right to continued review

My review indicated that in a majority of states, statutes or court rules explicitly ensure

that detention of a juvenile in a secure detention facility does not continue indefinitely without

court review.[33] Although the provisions vary, in the states with such provisions, detention is

either time-limited by a statutory expiration date absent rehearing or by failure to hold the next

hearing in the juvenile justice process within statutorily prescribed timeframes, or the juvenile is

entitled to a detention rehearing by the court upon request or motion. Eighteen of these states

explicitly require reconsideration of detention at a hearing within 21 days or fewer.[34]

### g.   Procedural protections in adjudicatory and dispositional hearings

Following the detention and probable cause phase of juvenile proceedings, a youth will

have an adjudicatory hearing at which all the requirements determined in *In re Gault* are

applicable. A youth cannot continue to be held in a secure facility absent an adjudication, which

is a finding that the youth committed the alleged offense. Final orders of adjudication are

appealable.[35]

If the youth is adjudicated delinquent, the court will hold a dispositional hearing at which

the court has a range of dispositional options, including the ability to order the placement or

---

[32] Alabama, California, Georgia, Illinois, Iowa, Kentucky, Michigan, Massachusetts, North Carolina, Pennsylvania, South Carolina, Tennessee, Vermont, Virginia, W. Virginia, Wisconsin, Wyoming. *See* chart at Appendix B for citations.

[33] Alabama, Alaska, Arizona, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Indiana, Iowa, Kansas, Maine, Maryland, Minnesota, Missouri, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, West Virginia, Wisconsin.

[34] Arizona, California, Connecticut, Delaware, Florida, Hawaii, Iowa , Maryland, New Jersey, New York, North Carolina, Oregon, South Carolina, Texas, Rhode Island, Indiana, Illinois, Maine, Minnesota, Ohio, Oklahoma, Pennsylvania, and Utah. *See* chart at Appendix B for citations.

[35] Although not part of the 50 state review conducted for this report, secondary sources confirm that adjudicatory judgments are appealable within all states either by statute, court rule or case law.  *See* Megan Annitto, JUVENILE JUSTICE ON APPEAL, 66 U. MIAMI L. REV. 671, 682-83 (2012).

commitment of a youth to an agency for placement in a non-secure or secure residential facility. A case will not proceed to disposition unless an adjudicatory hearing has occurred, which provides the youth with all procedural protections required by *In Re Gault*, including right to notice of the charges, right to counsel, and the right to confront and cross-examine witnesses. Juveniles are entitled to representation by counsel in disposition hearings in the majority of states.[36] In some jurisdictions, disposition hearings themselves are full evidentiary hearings, while in other jurisdictions they are non-evidentiary, but still provide an opportunity for the juvenile to be heard through written submissions or oral arguments.[37]

### 4. Procedural requirements in state child welfare proceedings

In the child welfare system, procedural protections center on the rights of parents and children to maintain the parent-child relationship. This results in the right to a hearing when a child is detained (i.e. removed from parental custody). Following this hearing, a court will hold another hearing to determine whether the child will be adjudicated dependent (i.e. whether the court takes jurisdiction over a child who has been removed from his or her parents and placed out of home). Following adjudication of the child as a dependent, the juvenile or family court in each state holds a disposition hearing at which the court determines custody and placement of the child as the family works toward reunification. The disposition hearing provides the opportunity for the court to approve recommended plans and order placements for the youth. The court also holds required post-disposition hearings in which the child's placement is regularly reviewed or can be reviewed upon motion for a change in placement hearing.

---

[36] *See* chart at Appendix B for citations.
[37] Randy Hertz, Martin Guggenheim & Anthony G. Amsterdam, Trial Manual for Defense Attorneys in Juvenile Delinquency Cases, p. 1135 (2019).

Under federal law, children in dependency proceedings are entitled to a *guardian ad litem* (GAL) who may or not be an attorney. In 34 states and the District of Columbia, state law or court rules require the GAL to be an attorney.[38] In addition, in all but 12 states, children are given party status in the dependency proceedings.[39] Party status ensures that children are afforded basic due process, including notice of all proceedings and decisions and the right to appear and fully participate in court.[40]

     5.   Majority State Policy

The following Majority State Policy[41] presents a summary of the procedural protections under federal law and the majority of state laws and policies afforded juveniles facing secure or staff secure detention.

- If a youth is detained in a secure facility, a court shall hold a detention hearing within 48 hours of the youth's detention. If a child is placed in a staff secure facility, a shelter care hearing shall be held within 72 hours of placement.

- The youth must be given notice of the detention or shelter care hearing.

- The youth has the right to counsel at the detention or shelter care hearing and an interpreter will be appointed if the child is of Limited English Proficiency.

- The detention hearing will provide the youth with the opportunity to be heard in response to the evidence presented, including the opportunity to present evidence of his own.

- Detention in a secure or staff secure facility cannot be indeterminate. A court must review the detention decision either as part of a probable cause or adjudicatory hearing at a time certain, or during a mandated detention review hearing, or upon motion of the child or his parent.

---

[38] Alabama, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, Wyoming. *See* chart at Appendix B for citations.

[39] *See* Children's Advocacy Institute & First Star Institute, *A Child's Right to Counsel*, 4th ed. (2019).

[40] *Id.* at 13.

[41] As previously stated, in reviewing the statute and code sections related to placement in secure or staff secure facilities within the juvenile justice and child welfare systems, I identified which provisions were present in a majority of states reviewed.

       Expert Report of Professor Jessica Heldman
CASE NO. 2:18-CV-05741 DMG PLA

- Before a child can be committed to a secure placement through either the juvenile justice or child welfare system, an adjudication hearing and a disposition hearing must be held in which the youth is entitled to representation by an attorney and afforded due process rights including notice and an opportunity to be heard.

### B.    ORR Procedures for Secure or Staff Secure Placement

In reviewing ORR written policy and procedures, as well as Defendant's Responses to Requests for Admissions, I identified the following procedural processes related to placement of an Unaccompanied Alien Child (UAC) in a secure or staff secure facility.

1.    <u>ORR Policy Does Not Provide a Right to a Hearing Before a Neutral Arbiter to Challenge Placement in a Restrictive Setting</u>

ORR written policy and procedures do not contain provisions affording children the right to a court hearing on the matter of placement in a secure or staff secure facility. This was confirmed in RFA No. 93 of Defendant's First Set of RFA Responses. Furthermore, in RFA No. 146 Defendants state that "ORR's placement decisions are not judicial proceedings."

ORR written policy and procedures reference that UAC's are notified that they have an opportunity to request a Flores Bond hearing.[42] In a Flores bond hearing, an immigration judge decides whether the child poses a danger to the community. In these hearings, the child has the burden to demonstrate that he or she is not a danger to the community and can be released. However, the immigration judge does not rule on the UAC's placement while the child remains in ORR custody. The determination of whether to place and maintain a UAC in a secure or staff secure facility is solely the decision of ORR staff and care providers. There is no indication that ORR considers itself bound by an immigration judge's finding that a child is not dangerous insofar as restrictive placement is concerned, but at most will take such a finding into consideration. It is unclear whether ORR gives more weight to an immigration judge's finding or

---

[42] Office of Refugee Resettlement, UAC Manual of Procedures, Version 2, Section 1.2.4 (2018)

a facility's recommendation when deciding whether to transfer or continue a child in a restrictive placement. The timing and procedures associated with this review are not indicated in ORR Policy.

### 2. ORR Policy Does Not Provide a Right to Adequate Notice

ORR written policy and procedures do not require advanced notice to a juvenile of a right to a hearing regarding placement in a secure or staff secure facility, simply because, as noted above, it provides no such hearings. ORR Policy does indicate that a youth is provided with a Notice of Placement in a Restrictive Setting in a language he or she understands explaining the reasons for placement in a secure or staff secure setting. This notice is provided within 48 hours after initial placement into a secure or staff-secure facility.[43] This Notice does indicate that the UAC can request that a Federal District Court review her case, but it is not an automatic right and it places the burden on the child to file a motion in federal court for review of his placement. Moreover, the notice does not provide specific information providing evidence of the basis for the step-up.

### 3. ORR Policy Does Not Provide a Right to Counsel

ORR written policy and procedures do not contain any reference to a child having legal representation regarding the determination of placement in a secure facility. In addition, in RFA No. 147 of Defendant's Second Set of RFA Responses, Defendant's state that contracts for ORR-funded legal services are not inclusive of legal representation regarding "step up" and "step down" decisions.

---

[43] Office of Refugee Resettlement, UAC Manual of Procedures, Version 2, Section 1.2.4 (2018).

4. <u>ORR Policy Does Not Provide an Opportunity to be Heard and the Right to Present Evidence</u>

ORR written policy and procedure do not provide an opportunity to present witnesses or provide evidence to a decision-maker regarding the determination of staff secure or secure placement. Defendants confirmed in RFA No. 99 of Defendant's Second Set of RFA Responses that a UAC does not have this opportunity. If a UAC in a secure facility disagrees with the placement, they may request a reconsideration of the placement by the ORR Director or the Director's designee.[44] However, this request can be denied and my review did not reveal any indication that the child has the opportunity to review any information regarding placement beyond that which is contained in the Notice for Placement in a Restrictive Setting. My review also did not reveal any written policy or procedures that allowed for the UAC to present evidence to support the request for reconsideration. My review further found that the request for reconsideration of placement only applies to UACs in secure and residential treatment center placements and not UACs in staff secure placements.[45]

5. <u>ORR Policy Does Not Provide a Right to an Interpreter</u>

ORR written policy and procedure do not contain provisions entitling UAC to an interpreter in conjunction with legal representation or a hearing on the matter of secure placement. The Notice of Placement in a Restrictive Setting is provided in a language he or she understands, however there is no interpreter provided to allow the UAC to be heard on the matter of his or her placement.

---

[44] Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 1, Policy 1.4.7 (January 30, 2015) at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2

[45] *See id.*

6.   <u>ORR Policy Does Not Provide a Right to Appeal</u>

ORR written policy and procedures do not include provisions for appealing the determination of secure or staff secure placement. ORR provides that after 30 days in a secure facility, a youth can request that the ORR Director or the Director's designee reconsider the placement.[46] However, the appeal suffers from the same flaws as the original determination. The child has never had the right to a fair proceeding that includes a neutral arbiter, interpretation, right to confront and present evidence and witnesses, and the right to counsel. Moreover, if the burden is on the child to request reconsideration, it presumes the child can read, write, and has sufficient notice to challenge the ORR placement decision. And as mentioned above, this option to request reconsideration is not extended to UACs in staff secure placements.

7.   <u>ORR Policy Provides a Cursory Right to Continued Review of Secure Placement</u>

ORR written policy provides that the placement of a UAC into a secure or staff secure facility is reviewed at least every 30 days until the UAC is stepped down or discharged.[47] The care provider staff documents the basis for continuing placement. This review is conducted by care provider staff, in collaboration with the Case Coordinator and the ORR/FFS. There is no review by a judge and no hearing is provided.

---

[46] Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 1, Policy 1.4.7 (January 30, 2015) at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2

[47] Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 1, Policy 1.4.2 (January 30, 2015) at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2

Expert Report of Professor Jessica Heldman
CASE No. 2:18-CV-05741 DMG PLA

VII.      **ANALYSIS: COMPARISON OF ORR POLICY WITH JUVENILE JUSTICE AND CHILD WELFARE PROCEDURES**

A.      **ORR Procedures Do Not Align with Key Federal Juvenile Justice and Child Welfare Policy**

ORR Policy is based on federal legal requirements to ensure placement of a child in the least restrictive setting appropriate for the child's needs[48] and in the best interests of the child.[49] However, ORR Policy is inconsistent with procedures afforded within the juvenile justice and child welfare system when facing placement in a secure or staff secure facility. In RFA No. 151 of Defendant's Second Set of RFA Responses, Defendants state that ORR's decisions to transfer a UAC to a more staff secure placement are not themselves "legal proceedings or matters...." This is in conflict with the federal principle and policy that requires due process for youth facing detention or placement.

B.      **ORR procedures for placement in a secure or staff secure setting do not align with procedures in the majority of states**

In comparing the majority state rule with ORR written policies and procedures, it is my opinion that ORR procedures are inconsistent with the procedures provided in the majority of states with regard to placement in secure facilities. The basis for my opinion is detailed in the following sections.

1.      Right to a hearing before a neutral arbiter

State law review revealed that all 50 states and the District of Columbia require a hearing before a neutral arbiter to be held within 48 hours of a juvenile being detained in a secure

---

[48] Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 1, Policy 1.1 (January 30, 2015) at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2

[49] Office of Refugee Resettlement, Children Entering the United States Unaccompanied: Section 1, Policy 1.2.1 (January 30, 2015) at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.2

facility. In addition, the majority of states require a hearing if a child is placed in a staff secure facility. In contrast with the procedures in jurisdictions across the nation, ORR does not provide youth with a hearing when placing or transferring UAC to a secure or staff secure facility. UAC are entitled to bond hearings, but these proceedings are not dispositive with respect to placement, nor do they include a review of the UAC's placement. The UAC may request a review by a federal court, but this is not an automatic right. A UAC child in ORR custody is not appointed counsel to assist in seeking federal court review and there is no further indication within the materials I reviewed whether this review comports with the procedural components in the majority state policy.

The placement of a youth in a secure or staff secure facility beyond temporary detention can only occur within the child welfare and juvenile justice systems following adjudicatory and dispositional hearings held in court before a neutral arbiter. ORR policy does not provide such hearings and thus does not comport with this procedural requirement.

Because ORR does not provide UAC's with the right to a hearing before a neutral arbiter upon detention in a secure facility, ORR policy is out of step with the majority state policy.

2. <u>Right to Counsel</u>

Federal case law requires youth to have legal counsel at all critical stages of juvenile proceedings where liberty is at stake. The majority of states have interpreted this to mean that youth are entitled to counsel at detention hearings and state law and policy reflect this. In addition, the majority of states share a policy which indicates that within the juvenile justice and child welfare systems, placement beyond temporary detention occurs following required adjudicatory and dispositional hearings in which the counsel is provided to the child. ORR policy does not provide UAC with legal representation in the determination of a UAC's secure or staff

secure placement, as there is no legal proceeding associated with—or as a prerequisite to—the determination of such placement.

Because ORR does not provide UAC's with legal representation in determinations related to detention or placement in a secure or staff secure facility, ORR policy is out of step with the policy that a majority of states employ.

3. <u>Opportunity to be heard and the right to present evidence, and right to interpreter</u>

In the majority of states, there is policy which provides youth with an opportunity to be heard or to present evidence at a detention hearing relevant to the determination of the appropriateness of secure confinement. There is no indication within the ORR policy and procedure I reviewed that UAC's are provided with the opportunity to be heard or present information or evidence to support discontinuation of secure placement. There is no ORR policy that indicates procedures associated with the request for reconsideration, if granted, that allow the UAC an opportunity to be heard. In addition, the majority of states require that a youth is provided with an interpreter in detention hearings to ensure understanding of the proceedings, effective representation by counsel, and an opportunity to provide relevant information. Without a hearing with assistance from an interpreter, there does not appear to be an effective right to be heard for a UAC on the matter of placement.

Because ORR does not provide UAC with an opportunity to be heard or the right to present evidence in the determination of secure or staff secure detention or placement, ORR policy is out of step with the majority state policy.

4. <u>Right to review of placement</u>

ORR policy states that a UAC's placement in a secure or staff secure facility will be reviewed within 30 days and at least every 30 days thereafter; and that if the UAC is in a secure

facility or RTC, the UAC can request the ORR Director to reconsider the placement if after the 30 day case review they are not stepped down.[50] The ability to challenge placement through reconsideration by the ORR Director is deficient as compared to the majority state policy because it does not entitle a UAC to a hearing in front of a neutral and detached decision-maker. The lack of a hearing, the lack of an opportunity to present evidence, and the lack of counsel fails to ensure the UAC an opportunity to be heard on the matter of his release.

## VIII.        CONCLUSION

Based on my review of ORR's policies and procedures and my experience and training in federal and state juvenile justice and child welfare law, I conclude that ORR's procedural process for placing children in secure and staff secure settings are deficient compared to the procedures provided in the U.S. juvenile justice and child welfare system in situations where children are held in government custody and separated from their families.

Date: June 19, 2020

_____

Jessica K. Heldman

Professor in Residence

---

[50]  Office of Refugee Resettlement, UAC Manual of Procedures, Version 2, Section 1.2.4 (2018).

# APPENDIX A: CURRICULUM VITAE

## CURRENT POSITION

**UNIVERSITY OF SAN DIEGO SCHOOL OF LAW, CHILDREN'S ADVOCACY INSTITUTE**

*AUGUST 2018-PRESENT*

*Fellmeth-Peterson Professor in Residence in Child Rights*
- Teach graduate-level child and juvenile rights-related courses, including *Child Rights and Remedies* and *Innovation for Justice: Human Trafficking*.
- Supervise upper level law students participating in Child Advocacy Clinics including Dependency Clinic, Delinquency Clinic, and Child Advocacy Policy Clinic. Provide training to law students in the representation of minor clients and in the creation and execution of research, policy, and litigation-related projects on issues related to children's interests.
- Produce child-rights related scholarship including academic articles, legal briefs, legislative/regulatory proposals, and empirical reports.
- Engage in policy advocacy as part of the Children's Advocacy Institute, including the development and support of class action litigation as well as national and state legislation benefitting children.
- Serve as faculty advisor for student law review comment development
- Serve as faculty advisor for law-student student run group advocating for children in the educational system.
- Developed curriculum for Partners for Student Success, a collaborative project with San Diego County Juvenile Court and Probation utilizing law students in assisting families of juvenile probationers in navigating the educational system.

## EDUCATION

**UNIVERSITY OF SAN DIEGO SCHOOL OF LAW**, Juris Doctor, *magna cum laude*, 2004

**Class Standing: Top 5% (16/315)**

Journal and Publication
*San Diego Law Review,* Member*, 2001-2004*
*Court Delay and the Waiting Child*, 40 San Diego L. Rev. 1001 (2003), comment author

Moot Court
**First Place**, McLennon Honors Moot Court Tournament, judged by US Supreme Court Justice **Antonin Scalia** (2004)
**Best Brief**, McLennon Honors Moot Court Tournament (2004)

Academic Honors
**Highest Grade in Class**: *Criminal Law, Civil Rights Litigation, Child Rights and Remedies, Professional Responsibility, Death Penalty Seminar*
**Honors**: *Lawyering Skills I & II, Child Advocacy Dependency Clinic I & II, Child Advocacy Policy Clinic, Special Education Clinic*, Outstanding Appellate Brief*, Lawyering Skills I*
**Scholarships**: USD School of Law Achievement Scholarship (2001-02, 2003-04); McQuiston Scholarship (2002-03)

Child Advocacy Clinics (2002-2004)
*Legal:* Represented minor clients in dependency and delinquency court proceedings.
*Policy:* Conducted research and writing on topics impacting children in the child welfare and juvenile justice systems.

Special Education Clinic (2003)
Represented parents of children with disabilities and conducted research on special education topics.

**NORTHWESTERN UNIVERSITY,** Bachelor of Science in Speech/Theatre**,** specializing in Theater Education, 1995

Dean's List/Honor Student (1991-1995)

## TEACHING AND RESEARCH INTERESTS

Primary Interests: Child Welfare Law, Juvenile Justice, Constitutional Law

Additional Interests: Class Action Litigation, Legislation

## PUBLICATIONS

*The Evolution of Juvenile Justice and Probation Practices in California*, (2020) (report with Melanie Delgado).

*Child Rights and Remedies, 4th edition* (2019) (casebook).

*Developmental Reform in Juvenile Justice: Translating the Science of Adolescent Development to Sustainable Best Practice* (2017) (brief with John A. Tuell & Kari Harp).

*Dual Status Youth Initiative Report, First Edition: Early Gains and Lessons Learned* (2016) (brief).

*Navigating the Dual Status Terrain: Tips for Juvenile Defenders* (2015) (brief with Mary Ann Scali & Christina Gilbert).

*Models for Change Information Sharing Tool Kit, 2nd ed.* (2015) (online toolkit with Juvenile Law Center).

*Dependency and Delinquency in SYNC* (2014) (article with Hon. Sheri Roberts).

*Guidebook for Juvenile Justice and Child Welfare System Coordination and Integration: A Framework for Improved Outcomes, 3rd edition* (2013) (with Janet K. Wiig & John A. Tuell).

*Dual Status Youth – Technical Assistance Workbook* (2013) (with John A. Tuell & Janet K. Wiig).

*From Conversation to Collaboration: How Child Welfare and Juvenile Justice Agencies Can Work Together to Improve Outcomes for Dual Status Youth* (2014) (white paper).

A *Guide to Legal and Policy Analysis for Systems Integration* (2006) (guidebook).

*Court Delay and the Waiting Child*, 40 San Diego L. Rev. 1001 (2003) (comment).


## PROFESSIONAL EXPERIENCE

**ROBERT F. KENNEDY CHILDREN'S ACTION CORPS, BOSTON, MA**                    *JANUARY 2012-JULY 2018*

*Associate Executive Director, Robert F. Kennedy National Resource Center for Juvenile Justice (November 2013-July 2018):* Responsible for overseeing administration and programs, in partnership with the Executive Director, of a national organization specializing in law, policy and practice reform on behalf of children, youth, and families involved with the child welfare and juvenile justice systems.

- Led teams of consultants providing technical assistance to state and local jurisdictions across the nation in the areas of dual status youth (youth involved with child welfare and juvenile justice) reform, probation system reform, multi-system coordination among juvenile court and government agencies; commercially sexually exploited children, and the legal aspects of multi-system information sharing.
- Developed curricula for Training Institute programs addressing the topics of dual status youth reform, probation system reform, juvenile court practice, and information sharing for a variety of professionals including attorneys, judges, child welfare practitioners, and juvenile justice professionals.
- Led teams of trainers in providing training sessions to state and local practitioners nationwide.
- Developed and taught an online CLE course for attorneys and judges on the topic of juvenile rights and information sharing, hosted at Florida International University.
- Developed and served as faculty for the inaugural Juvenile Probation Reform Academy for the American Probation and Parole Association in partnership with the Council of State Governments, providing training to juvenile justice practitioners regarding best practice in reducing juvenile recidivism.
- Provided expert testimony on youth involved with both the child welfare and juvenile justice systems to federal and state lawmakers, including California Legislative Subcommittees and U.S. Congressional staff.
- Advised on the development of federal legislation addressing dual status youth, including the CONNECT Act (2017), introduced by Sens. Peters (D-MI) and Grassley (R-IA), as well as provisions within the Every Student Succeeds Act (2015).
- Facilitated the State of California's Data Standards Working Group, tasked with assisting the California Judicial Council to develop recommendations for statewide data collection on youth involved with the child welfare and juvenile justice systems.
- Presented conference workshops and webinars on juvenile justice and child welfare reform topics for national organizations including the National Association of Counsel for Children, the National Juvenile Defender Center, the John D. and Catherine T. MacArthur Foundation, the Coalition for Juvenile Justice, the National Council of Juvenile and Family Court Judges, and the Council of Juvenile Correctional Administrators.

- Conducted research on legal and policy issues relevant to child welfare and juvenile justice including alternatives to detention for juveniles, best practice in juvenile courts, adolescent domestic violence, commercial sexual exploitation of children, trauma-informed practice, and data collection and reporting.
- Authored written materials including articles, toolkits, guidebooks, and curricula in the areas of dual status youth, juvenile court practice, probation system review, and information sharing.
- Served as lead editor for Center publications such as practice briefs, articles, and op-eds.
- Managed and facilitated Practice Networks comprised of child welfare and juvenile justice practitioners and experts from across the nation who meet semi-annually to identify and explore legal, policy and practice innovations related to child welfare and juvenile justice.
- Planned and executed national symposia
- Led development of strategic communication and business plans as well as grant and proposal writing.
- Manage and train Resource Center staff and consultants.

*Independent Consultant (January 2012-October 2013):* Provided consultation services to the Robert F. Kennedy Children's Action Corps

- Provided technical assistance to local jurisdictions to improve outcomes for youth and families that populate multiple youth systems including juvenile justice, child welfare, mental health, and education.
- Developed and launched the Robert F. Kennedy National Resource Center for Juvenile Justice, one of four Resource Centers supported by the John D. and Catherine T. MacArthur Foundation as part of the legacy phase of its decade-long *Models for Change* initiative to improve juvenile justice systems throughout the country.

**GEORGETOWN UNIVERSITY CENTER FOR JUVENILE JUSTICE REFORM, WASHINGTON DC**    *2012-2014*

*Consultant, Crossover Youth Practice Model:* Provided consultation regarding implementation of the Crossover Youth Practice Model in several jurisdictions throughout the United States. The practice model is a system reform effort intended to improve outcomes for youth involved with the child welfare and juvenile justice systems.

*Faculty, Information Sharing Certificate Program (2014):* Provided instruction to leaders in youth-serving systems in overcoming information sharing challenges while adhering to laws and other provisions that protect the privacy and other rights of youth and their families.

**GOLDEN & CARDONA-LOYA, LLP, SAN DIEGO, CA**    *2011-2013*

*Attorney:* Provided legal services in the areas of estate planning and consumer law.

- Drafted estate planning documents such as wills, trusts, powers of attorney and advance health care directives.
- Participated in consumer law litigation activities including conducting legal research, drafting legal pleadings, preparing discovery requests and responses, and arguing motions.

**CHILD WELFARE LEAGUE OF AMERICA, WASHINGTON, DC**    *2005-2006*

*Legal Consultant:* Provided guidance to county, city, and state governments in several U.S. states in developing and executing initiatives for integrating child welfare and juvenile justice systems.

- Conducted extensive legal research on issues of information sharing.
- Facilitated meetings of local agency and community participants and guided strategic planning activities.

**CHILDREN'S RIGHTS, INC., NEW YORK, NY**    *2003-2005*

*Research Attorney (2004-2005):* Provided legal consultation for a Child Welfare/Juvenile Justice Systems Integration Initiative in King County, WA.

- Conducted legal and policy research on multi-system information sharing.
- Led committee meetings involving attorneys, social workers and government administrators.
- Guided the drafting of a strategic plan for information sharing between government entities serving children.

*Legal Intern (Summer, 2003):* Assisted attorneys in various phases of class action suits against several state child welfare systems throughout the nation on behalf of abused and neglected foster children.

- Conducted research and wrote memoranda on substantive and procedural issues involved in federal impact litigation.
- Extensively researched settlement hearing procedures and assisted in drafting objections to unfair settlements.

**SAN DIEGO JUNIOR THEATRE, SAN DIEGO, CA**                                  *1997- 2004*

*Teaching Artist*: Taught drama classes for children ages 4-18.
- Taught acting, playwriting, improvisation, and creative play in after-school programs, summer camps, homeschool programs, court schools, homeless shelters, and facilities for abused and neglected children.
- Developed and taught curriculum-based drama in public, private, and court schools in San Diego County.
- Directed theatrical productions in low-income schools and communities in San Diego County.

*Education Program Manager*: Developed and managed theater outreach programs.
- Interviewed, hired and supervised staff.
- Led program development and fundraising for community and educational outreach.

## PRESENTATIONS AND TRAINING

*Helping Victims Become Survivors: Specialized Courts for Commercially Sexually Exploited Children (Workshop Presenter).* National Association of Counsel for Children, Annual Conference (August 2019).

*Improving Outcomes for Dual Status Youth (Workshop Presenter).* Judicial Council of California – Center for Families, Children & the Courts, Beyond the Bench Conference (December 2017).

*Dual Status Youth Reform (Training Program Developer and Trainer).* Robert F. Kennedy National Resource Center for Juvenile Justice (2016-2017).

*How Can California Best Serve the Needs of Youth Involved with Both the Dependency and Delinquency Systems? (Legislative Testimony).* California Legislature – Assembly Committees on Human Services, Judiciary and Public Safety Hearing (2017).

*Navigating the Dual Status Terrain: Special Considerations in Representation and Reform (Workshop Session).* National Association of Counsel for Children Annual Conference (2016).

*A Balancing Act: Risks and Benefits of Information Sharing in Dual Status Youth Reform (Workshop Session).* Robert F. Kennedy National Resource Center for Juvenile Justice, Dual Status Youth Symposium (2016).

*Effective Alternatives to Detention for Dual Status Youth (Workshop Session).* Robert F. Kennedy National Resource Center for Juvenile Justice, Dual Status Youth Symposium (2016).

*Interagency Challenges of Welfare and Institutions Code 241.1 and How to Overcome Them (Workshop Session).* Judicial Council of California, Judicial Conference (2016).

*Defining Measurable Goals and Outcomes for Juvenile Justice Reform (Webinar).* National Association of Counties (2016).

*Effective Cross-Systems Information Sharing in Juvenile Justice (Webinar).* National Association of Counties (2016).

*Connecting the Dots: How Interagency Collaboration Can Better Serve Vulnerable Youth (U.S. Congressional Staff Briefing).* Vera Institute of Justice (2015).

*Juvenile Probation Reform Academy (Training Program Developer and Faculty).* American Probation and Parole Association (2015).

*Information Sharing for Individual Case Planning and Decision Making (Certificate Program).* Georgetown University Center for Juvenile Justice Reform, Information Sharing Certificate Program (2014).

*Data Collection and Sharing for Law, Policy, and Program Development (Certificate Program).* Georgetown University Center for Juvenile Justice Reform, Information Sharing Certificate Program (2014).

*'Dualing' for Due Process: Working with Dual Status Youth (Workshop Session).* National Juvenile Defender Center Leadership Summit (2014).

*Sharing Information Across Systems: Improving Outcomes for Youth and Families (Training Program).* National Council of Juvenile and Family Court Judges (2014).

*Probation System Practices: Improvement and Innovation (Workshop Session).* MacArthur Foundation, Models for Change Conference (2014).

*Dual Status Youth and Their Families: Altering the Human and Fiscal Toll Through Improved Youth and System Outcomes (Webinar).* Council of Juvenile Correctional Administrators (2014) and Coalition for Juvenile Justice (2014).

*Probation System Reform: A Tool for Improved Practices and Outcomes (Workshop Session).* National Council of Juvenile and Family Court Judges, 77th Annual Conference (2014).

*Dual Status Youth: New Strategies, Tools, and Resources for Improving Outcomes in Your Jurisdiction (Workshop Session).* MacArthur Foundation, Models for Change Conference (2013).

## AWARDS AND ACTIVITIES

University of San Diego School of Law Children's Advocacy Institute Trailblazer Award (2014)

James D'Angelo Outstanding Child Advocate Award (2004)

## PROFESSIONAL AND COMMUNITY ACTIVITIES

*Member,* Dual Status Youth Practice Network (Currently)

*Member,* San Diego County Child and Family Strengthening Board (appointed in 2019)

*Chair,* Polinsky Children's Center Advisory Board (2018-present)

*Member,* National Association of Counsel for Children

*Member,* American Bar Association

*Appellate Moot Court Judge,* University of San Diego School of Law (2017)

*Member,* California Child Welfare Council CSEC Action Team (2016-2017)

*Sandy Hook Promise Leader,* Participating in local awareness building events and activities to empower and educate others on the powerful actions they can take to prevent gun violence and protect children (2017).

*Board President/Program Director, Postpartum Health Alliance (2010-2014)* Responsible for tasks related to the administration of a non-profit organization that advocates for and supports women suffering from Perinatal Mood and Anxiety Disorders.

*Adult Supporter,* California Youth Connection (2002-2004)

## PROFESSIONAL LICENSE

THE STATE BAR OF CALIFORNIA

APPENDIX B
Court Procedures Provided by State Statutes, Rules, Agency Policy
**Juvenile Justice Procedures**

| | Right to detention hearing | Right to counsel | Right to notice of hearing | Right to present evidence | Right to present witnesses | Right to interpreter | Right to confront evidence | Right to continued review | Right to counsel at disposition |
|---|---|---|---|---|---|---|---|---|---|
| AL | Ala. Code § 12-15-207 | Ala. Code §§12-15-202(f)(1); 12-15-207(c) | Ala. Code. § 12-15-207(b) | Ala. Code §12-15-207(d) ( ct. may admit relevant evidence) | | | Ala. Code §12-15-202(f) | Code of Ala. §12-15-221 (a)(1) (modification of order can be requested) | Ala. Code §§12-15-202; 12-15-221(b) |
| AK | Alaska Stat. §47.12.250<br><br>Alaska Delinq. Rule 12 | Alaska Stat. §47.12.250(c) | Alaska Delinq. R. 3 | Alaska Delinq. R. 10 | | Alaska R. of Admin. 6 | | Alaska Delinq. R. 12 | Alaska Stat. §47.12.090(a)<br><br>Alaska Delinq. R. 24(c); R. 25 |
| AZ | Ariz. Juv. Ct. R. P 23(C) | Ariz. Rev. Stat. §8-221(A) | | | | | | Ariz. Juv. Ct. R. P 23(J) (court may review upon motion of juvenile, prosecutor or court) | Ariz. Juv. Ct. R. P.10(A) |
| AR | Ark. Code Ann. § 9-27-313(d)(1)(C) | Ark. Code Ann. § 9-27-326(b)(2) | Ark. Code. Ann.§ 9-27-326(a) | Ark. Code. Ann.§ 9-27-326(d) (ct shall admit relevant evidence) | Ark. Code. Ann.§ 9-27-326(d) | | | | |
| CA | Cal. Welf. & Inst. Code §632(b) | Cal. Welf & Inst. Code §§ 633, 634 | Cal. Welf & Inst. Code §630(a) | Cal. Welf & Inst. Code §§630(b); 635(a) | Cal. Welf & Inst. Code §630(b); 635(a) | CA Const. Art. 1 §14 (in de. Hearing)<br><br>CA Evid. Code §756 | Cal. Welf & Inst. Code §§630(b); 635 | Cal. Welf & Inst. Code §636 (a) | Cal. Welf & Inst. Code §634 |
| CO | Colo. Rev. Stat. Ann. § 19-2-508(3)(a)(I) | Colo. Rev. Stat. Ann. § 19-2-508(2) | Colo. R. Juv. P. 3.7 (c) | Colo. Rev. Stat. Ann. § 19-2-508(3(a)(v) (court shall receive any probative info) | | CO Judicial Branch website | | | Colo. Rev. Stat. Ann §§ 21-1-103; 19-2-706(1) |
| CT | Conn. Gen. Stat. Ann. § 46b-133(e)<br><br>Conn. R. Super. Ct. Juv. 30-5 | Conn. R. Super. Ct. Juv. 30-3 | Conn. Practice Book §30-4 | Conn. Practice Book §30-4 (court may consider any relevant information) | | | | Conn. Gen. Stat. Ann. § 46b-133 | Conn. Gen. Stat. Ann. § 46b-135(A) |
| DE | Del. Fam. Ct. R. Crim. P. 5.1(a)(1) | Del. Fam. Ct. R. Crim. P. 5.1(a)(2) | Del. Fam. Ct. R. Crim. P. 5.2 | Del. Fam. Ct. R. Crim. P. 5.1(b) (ct. shall consider all available info) | | | | 10 Del. C. §1007(f) | Del. Fam. Ct. R. Crim. P. 44.1(a) |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | Right to detention hearing | Right to counsel | Right to notice of hearing | Right to present evidence | Right to present witnesses | Right to interpreter | Right to confront evidence | Right to continued review | Right to counsel at disposition |
|---|---|---|---|---|---|---|---|---|---|
| DC | D.C. Code § 16-2312(a)(2) | D.C. Code § 16-2304(a)<br><br>Super. Ct. Juv. R. 44(a)(1) | D.C. Code §16-2312 (b) | | | D.C. Code §2-1902 (in juvenile proceedings) | | | D.C. Code § 16-2304(a) |
| FL | Fla. Stat. Ann. § 985.255(1) | Fla. Stat. Ann. § 985.033(1)<br><br>Fla. R. Juv. P. 8.010 | Fla. R. Juv. Proced. Rule 8.010 (d) (parents noticed) | Fla. R. Juv. Proced. Rule 8.010 (a) (opportunity to be heard) | Fla. R. Juv. Proced. Rule 8.010 | Fla. R. Jud. Admin. R. 2.560 (a) (in juvenile delinquency) | | Fla Stat. §985.26 (21 days unless adjudicated) | Fla. Stat. Ann. § 985.033(1) |
| GA | Ga. Code Ann. § 15-11-506(b) | Ga. Code Ann. § 15-11-475(a) (at all proceedings) | Ga. Code Ann. §15-11-506(d) | Ga. Code Ann. § 15-11-506 (f)(5) | Ga. Code Ann. § 15-11-506 (f)(5) | GA Sup. Ct. Appx. A (V) (including juveniles) | Ga. Code Ann. § 15-11-506 (f)(5) | | Ga. Code Ann. § 15-11-475(a) |
| HI | Haw. Rev. Stat. §571-32(d) | Haw. Fam. Ct. R., r. 155. (at all stages of proceedings) | Haw. Rev. Stat. §571-32(c) (parent given notice of right to prompt hearing) | Haw. Rev. Stat. §571-32 (ct. may admit testimony or other evidence) | Haw. Rev. Stat. §571-32 (ct. may admit testimony or other evidence) | | | Hawaii Family Court Rules R. 136 (Review of detention order at least every 8 days) | |
| ID | Idaho Code §20-516(4)<br><br>Idaho Juv. R., r. 7(c) | Idaho Juv. R., r. 9(d)<br><br>Idaho Code Ann. § 20-514(1) | Idaho Juv. R., r. 9(d) | | | Idaho Code §9-205 | | | Idaho Code § 20-514(1)(a), (2) |
| IL | 705 Ill. Comp. Stat. Ann. 405/5-415(1) | 705 Ill Comp. Stat. Ann. 405/5-501 | 705 Ill. Comp. Stat. Ann. 405/5-415(2) (parents are given notice of hearing) | 705 ILCS 405/5-501 (ct. shall receive all relevant info) | 705 ILCS 405/5-501 | | 705 ILCS 405/1-5(1) | 705 ILCS 405/5-501 (7) (any party can file motion to vacate detention or shelter care order; hearing w/i 14 days) | 705 Ill. Comp. Stat. Ann. 405/1-5(1) |
| IN | Ind. Code Ann. § 31-37-6-2 | Ind. Code Ann. § 31-32-4-2 | Ind. Code Ann. §31-37-6-3 (a)(1) | Ind. Code Ann. §31-37-6-3(b) (opportunity to be heard) | | Ind. Code Ann. §34-45-1-3 | | Burns Ind. Code Ann §31-34-5-5 (May petition for additional detention hearings)<br><br>Burns Ind. Code Ann. § 31-37-11-7 (child released if petition not filed) | Ind. Code Ann. §§ 31-32-4-1, 31-32-2-2 |
| IA | Iowa Code Ann. § 232.44(1)(a) | Iowa Code Ann. § 232.11(1) | Iowa Code Ann. §232.44(3) | Iowa R. Juv. Proc. 8.16 | | Iowa Ct. R. 47.3 | Iowa R. Juv. Proc. 8.16 | Iowa Code Ann §§232.44(6); 232.44(7) | Iowa Code Ann. § 232.11(1) |
| KS | Kan. Stat. Ann. § 38-2343(a) | Kan. Stat. Ann. §§ 38-2306(a)-(b), 38-2343(e) | Kan. Stat. Ann. §38-2343(d) | Kan. Stat. Ann. §38-2343(f) (ct. shall allow contrary evidence) | | Kan. Stat. Ann §75-4351 | | Kan. Stat. Ann 38-2343(i) | Kan. Stat. Ann. §§ 38-2306(a)-(b), 38-2343(e) |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | Right to detention hearing | Right to counsel | Right to notice of hearing | Right to present evidence | Right to present witnesses | Right to interpreter | Right to confront evidence | Right to continued review | Right to counsel at disposition |
|---|---|---|---|---|---|---|---|---|---|
| KY | Ky. Rev. Stat. Ann.§§ 610.265; 610.280(1)(a) | Ky. Rev. Stat. Ann. §§ 610.290(2), 31.110. | | Ky. Rev. Stat. Ann.§610.265 (ct. shall consider information) | | Ky. Rev. Stat. §30A.410 | Ky. Rev. Stat. §610.280(1)(a)<br><br>Ky. Rev. Stat. Ann. §§ 610.060 (1)(c) | | Ky. Rev. Stat. Ann. §§ 610.060, 610.290(2), 31.110. |
| LA | La. Child. Code Ann. art. 819, 820 | La. Child. Code Ann. art. 809 | | | La Child. Code Ann. Art. 821(B) | La. Code Civ. Proc. Art 192.2 | | | La. Child. Code Ann. art. 809, 848 |
| ME | Me. Rev. Stat. Ann. tit. 15 § 3203-A(5) | Me. Rev. Stat. Ann. tit. 15 § 3306(1)(a) (at every stage of proceedings) | | Me. Rev. Stat. Ann. tit. 15 § 3203-A(5)(A) | Me. Rev. Stat. Ann. tit. 15 § 3203-A(5)(A) | Maine Sup. Ct. Admin. Order JB-06-03 (inc. juvenile actions) | | Me. Rev. Stat. Ann. tit. 15 §3203-A(11) (attny for juvenile can petition for conditional release) | Me. Rev. Stat. Ann. tit. 15 § 3306(1)(A) |
| MD | Md. Code Ann., Cts. & Jud. Proc. § 3-8A-15(d)(1), (2) | Md. Code Ann., Cts. & Jud. Proc. § 3-8A-20(a), (d) (at every stage of any proceeding)<br><br>Md. R. Juv. Causes r. 11-106(a) | Md. Code Ann., Cts. & Jud. Proc. § 3-8A-15 (d)(3) | | | Md. Rules for Courts, Judges and Attorneys, Rule 1-333 | | Md. Code Ann. Cts & Jud Proc §3-8A-15(d)(6)(2)Detention. can be extended in inc. of 14 days with hearing | Md. Code Ann., Cts. & Jud. Proc. § 3-8A-20(a), (d)<br><br>Md. R. Juv. Causes r. 11-106(a) |
| MA | Mass. Dist. Ct. Standing Order 2-88<br><br>Mass. R. Crim. P. 3.1(a) | Mass. R. Crim. P. 8 | | | | Mass. Gen. Laws ch. 221C §2 | | | |
| MI | Mich. Ct. R. 3.935(A)(1) | Mich. Comp. Laws Ann. § 712A.17c (1) ; Mich. R. Spec. P. 3.935(B)(1) | Mich. Ct. R. 3.921 | Mich. Ct. R. 3.935 (3) | Mich. Ct. R. 3.935 (3) | | Mich. Ct. R. 3.935 (3) | | Mich. Comp. Laws Ann. § 712A.17c (1); |
| MN | Minn. Stat. Ann. § 260B.178(1) | Minn. Stat. Ann. § 260B.163(4)<br><br>Minn. R. Juv. Delinq. Proc. 3.02(6) | MN Rules of Juv. Delinq. Proc. Rule 5.07 | MN Rules of Juv. Delinq. Proc. Rule 5.07 (ct. may hear any evidence) | | Minn. Stat. Ann. §546.43 | | Minn. Stat. Ann. § 260B.178 (subdiv 4) | Minn. Stat. Ann. § 260B.163(4)<br><br>Minn. R. Juv. Delinq. Proc. 3.02(1), 3.02(2), 3.02(3)) |
| MS | Miss. Code Ann. § 43-21-307 | Miss. Code Ann.§ 43-21-201(1) | Miss. Code Ann. §43-21-309(2) | Miss. Code Ann. §43-21-309(3) | | Miss Code Ann §9-21-79 | Miss. Code Ann. §43-21-309(3) | | Miss. Code Ann.§ 43-21-201(1) |
| MO | Mo. Ann. Stat. § §211.063(1); 211.061(4) | Mo. Sup. Ct. R. 128.02<br><br>Mo. Sup. Ct. R. 127.08 | Mo. Ann. Stat. § §211.061(4) | MO R JUV P Rule 127.08 (ct. shall receive evidence) | | Mo. Ann. Stat §476.803 | | MO R JUV P Rule 127.08(g) | Mo. Ann. Stat. § 211.211(6) |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | Right to detention hearing | Right to counsel | Right to notice of hearing | Right to present evidence | Right to present witnesses | Right to interpreter | Right to confront evidence | Right to continued review | Right to counsel at disposition |
|---|---|---|---|---|---|---|---|---|---|
| MT | Mont. Code Ann. § 41-5-332 (1) | Mont. Code Ann. §41-5-333 (2) | | | | | | | Mont. Code Ann. § 41-5-1413<br><br>Mont. Code Ann. § 41-5-332 |
| NE | Neb. Rev. Stat. Ann. § 43-253(3) | Neb. Rev. Stat. Ann. § 43-253(3) | | | | Neb. Rev. Stat. Ann. §25-2403 | | | Neb. Ct. R. § 6-1706(B)(1)(m) |
| NV | Nev. Rev. Stat. Ann. § 62C.040(1)(b)-(d) | Nev. Rev. Stat. Ann. § 62D.030(1) (at all stages of the proceedings) | | | | Nev. Rev. Stat. Ann. §62D.405(1)(a) (in delinquency proceedings) | | | Nev. Rev. Stat. Ann. § 62D.030(1). |
| NH | N.H. Rev. Stat. Ann. § 169-B:12(IV)(b) | N.H. Rev. Stat. Ann. § 169-B:12(IV) | | | | | | | N.H. Rev. Stat. Ann. § 169-B:12(I). |
| NJ | N.J. Ct. R. 5:21-3(a)<br><br>N.J. Stat. Ann. §§ 2A:4A-38(e) | N.J. Stat. Ann.§ §2A:4A-38(h); 2A:4A-39<br><br>N.J. Ct. R. 5:3-4(a); 5:21-3(a) | N.J. Ct. R. 5:21-3(a) | | | | | N.J. Stat. Ann. §§ 2A:4A-38(i) | N.J. Stat. Ann. § 2A:4A-39 |
| NM | N.M. Stat. Ann. § 32A-2-13(2)-(3) | N.M. Child. Ct. R. 10-223 | N.M. Stat. Ann. § 32A-2-13 (C) | N.M. Stat. Ann. § 32A-2-13 (H) (ct. may consider all relevant evidence) | | N.M. Child. Ct. R 10-167 (in children's court) | | N.M. Stat. Ann. § 32A-2-13 (J) (ct. may review) | |
| NY | N.Y. Fam. Ct. Act § 307.4(5) | N.Y. Fam. Ct. Act § 249(a) | | | | 22 N.Y. Comp. Codes R. & Reg. Part 217.1 (in family court) | | NY CLS Family Ct. Act §340.1 (1) (fact finding hearing must happen within a span of time det. By level of offense, all timeframes are within 14 days) | N.Y. Fam. Ct. Act § 249(a) |
| NC | N.C. Gen. Stat. Ann. § 7B-1906(a) | N.C. Gen. Stat. Ann. § 7B-2000(a) | | N.C. Gen. Stat. Ann. § 7B-1906(d) | N.C. Gen. Stat. Ann. § 7B-1906(d) | Standards for Language Access Services, Sect. 5, N.C. Judicial Branch | N.C. Gen. Stat. Ann. § 7B-1906(d) | N.C. Gen. Stat. Ann. § 7B-1906(b) | N.C. Gen. Stat. Ann. § 7B-2000(a) |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | Right to detention hearing | Right to counsel | Right to notice of hearing | Right to present evidence | Right to present witnesses | Right to interpreter | Right to confront evidence | Right to continued review | Right to counsel at disposition |
|---|---|---|---|---|---|---|---|---|---|
| ND | N.D. Cent. Code §27-20-17 (2)<br><br>N.D.R. Juv. P. Rule 2 (1)(A) | N.D. Cent. Code §27-20-17 (2) | N.D. Cent. Code §27-20-17 (2) | | | North Dakota Court System Policy 522 (in juvenile hearings) | | | N.D. Cent. Code Ann. § 27-20-26(1) |
| OH | Ohio Rev. Code Ann. § 2151.314(A)<br><br>OH ST JUV P Rule 7 | Ohio Rev. Code Ann. §§ 2151.314(A); 2151.352<br><br>OH ST JUV P Rule 7(F)(2) | Ohio Rev. Code Ann. § 2151.314 (A)<br><br>OH ST JUV P Rule 7(F)(1) | OH ST JUV P Rule 7(F)(3) (ct. may consider any evidence) | | | | OH ST JUV P Rule 7(F)(1) (child may file a motion requesting release, and hearing must be held within 72 hrs) | Ohio Rev. Code Ann. § 2151.352 |
| OK | Okla. Stat. Ann. tit. 10A § 2-2-101(B) | Okla. Stat. Ann. tit. 10A § 2-2-301(D) (at all proceedings) | | | | | | 10A Okl. Stat. Ann. Tit. §2-3-101 (A)(1)(b) | Okla. Stat. Ann. tit. 10A § 2-2-301(D) |
| OR | Or. Rev. Stat. Ann.  § 419C.139 | Or. Rev. Stat. Ann. § 419C.109(3)(b)(A) | Or. Rev. Stat. Ann §419C.142 | | | Or. Rev. Stat. Ann §45.275 | | Or. Rev. Stat. Ann. §419C.153<br><br>Or. Rev. Stat. Ann. §419C.150 | Or. Rev. Stat. Ann § 419C.200(1)(a) |
| PA | 42 Pa. Stat. and Cons. Stat. Ann. § 6332(a) | Pa. R. Juv. Ct. P. 242(A)(2) | 42 Pa. Stat. and Cons. Stat. Ann. § 6332(a)<br><br>PA ST JUV CT Rule 241 | PA ST JUV CT Rule 242(B)(4)(b) | PA ST JUV CT Rule 242(B)(4)(b) | 42 Pa. Cons. Stat. §4401 | PA ST JUV CT Rule 242 (B)(4)(a) | PA ST JUV CT Rule 243 | 42 Pa. Stat. and Cons. Stat. Ann. §§ 6337 |
| RI | R.I. R. Juv. Proc. 8(a) | R.I. R. Juv. Proc. 8(b) | R.I. R. Juv. Proc. 8(c) | | | | | R.I. R. Juv. Proc. 8(b) | R.I. Gen. Laws Ann. § 14-1-31 |
| SC | S.C. Code Ann. §§ 63-19-830(A); 63-7-710(A) | S.C. Fam. Ct. R.36.<br><br>S.C. Code Ann. § 63-19-830(A) | | S.C. Code Ann. §63-7-710 (D) | | S.C. Code Ann §15-27-155 | S.C. Code Ann. §63-7-710 (D) | S.C. Code Ann. § 63-19-830 (A) | S.C. Fam. Ct. R.36. |
| SD | S.D. Codified Laws § 26-7A-14 | S.D. Codified Laws §§ 26-7A-30 (in delinquency proceedings) | S.D. Codified Laws §26-7A-15 (notice to parent) | | | | | | S.D. Codified Laws §§ 26-7A-30, 26-7A-44(2) |
| TN | Tenn. Code Ann. §37-1-177 (a)(2)<br><br>Tenn. R. Juv. P. 203(b)(2) | Tenn. R. Juv. P. 203(c)(2)(c); 205(a)(1) | | Tenn. R. Juv. P. 205(b) ; 203(d)(1) | Tenn. R. Juv. P. 205(b); 203(d)(1) | | Tenn. R. Juv. P. 205(b); 203(d)(1) | | Tenn. Code Ann. § 37-1-126(a)(1) |
| TX | Tex. Fam. Code §54.01 | Tex. Fam. Code §§54.01; 51.10 | Tex. Fam. Code §54.01(b) | | | Tex. Fam. Code § 51.17 (d) (in delinquency proceedings) | | Tex. Fam. Code §54.01(h) | Tex. Fam. Code § 51.10 |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | Right to detention hearing | Right to counsel | Right to notice of hearing | Right to present evidence | Right to present witnesses | Right to interpreter | Right to confront evidence | Right to continued review | Right to counsel at disposition |
|---|---|---|---|---|---|---|---|---|---|
| UT | Utah R. Juv. P. 9(b)  Utah Code Ann. §78A-6-113(4)(a) | Utah Code Ann. §§ 78A-6-1111 (in an action filed…under this title)  Utah R. Juv. P. 9(f) (may appoint at detention hearing) | Utah R. Juv. P. 9(b) | Utah R. Juv. P. 9(e) (ct. may receive any information relevant) | Utah R. Juv. P. 9(e) | Utah Judicial Council Code of Judicial Administration, R. 3-306.04 | | Utah R. Juv. P. 9 (j) | Utah Code Ann. §§ 78A-6-1111(1)(a) & (1)(e) |
| VT | Vt. Stat. Ann. tit. 33, §5255 | Vt. Stat. Ann. tit. 33, §5225(a). | Vt. Stat. Ann. tit. 33, §5254 | Vt. Stat. Ann. tit. 33, §5255(f) | Vt. Stat. Ann. tit. 33, §5255(f) | | Vt. Stat. Ann. tit. 33, §5255 (f) | | Vt. Stat. Ann. tit. 33, § 5112(a)  Vt. R. Fam. Pro. 6. |
| VA | Va. Code Ann. § 16.1-250(A) | Va. Code Ann. § 16.1-266(B) | Va. Code Ann. § 16.1-250(c) | Va. Code Ann. § 16.1-250(d), (g) (opportunity to be heard; all relevant evidence may be admitted) | Va. Code Ann. § 16.1-250(g) | | Va. Code Ann. § 16.1-250(d) | | Va. Code Ann. § 16.1-266 (C) |
| WA | Wash. Rev. Code Ann. § 13.40.050(1)(b) | Wash. Rev. Code. Ann. § 13.40.050(3)  Wash. Juv. Ct. R. 7.4(b) | Wash. Rev. Code Ann. § 13.40.050(2) (above age 12) | Wash. Juv. Ct. R. 7.4 (c) | | Wash. Rev. Code Ann. § 4.43.040 | | | Wash. Rev. Code Ann. § 13.40.140(2) |
| WV | W. Va. Code Ann. § 49-4-705(c)(4) | W. Va. Code Ann. § 49-4-706(a) | | W. VA. Code § 49-4-701(i)(1) | W. VA. Code § 49-4-701(i)(1) | W. VA Code §57-5-7 | W. VA. Code § 49-4-701(i)(1) | W. VA Code §49-4-707 | W. Va. R. Juv. P. 5(a) |
| WI | Wis. Stat. Ann. § 938.21(1)(a) | Wis. Stat. Ann § 938.23 | Wis. Stat. Ann. § 938.21(2)(b) | Wis. Stat. Ann. § 938.21(2)(c) | Wis. Stat. Ann. § 938.21(2)(c) | Wis. Stat. Ann § 885.37 | Wis. Stat. Ann. § 938.21(2)(c) | Wis Stat §938.21  Wis Stat §938.21(2)(c) | Wis. Stat. Ann. §§ 938.21(3(1m)(a); 48.23(1m)(a) |
| WY | Wyo. Stat. Ann. § 14-6-209(a) | Wyo. Stat. Ann. § 14-6-222(a) (at every stage) | Wyo. Stat. Ann. § 14-6-209(a) | Wyo. Stat. Ann. § 14-6-209(b)(iv) | Wyo. Stat. Ann. § 14-6-209(b)(iv) | | Wyo. Stat. Ann. § 14-6-209(b)(iv) | | Wyo. Stat. Ann. § 14-6-222(a) |

**Child Welfare Proceedings**

| State | Right to hearing re. non-secure placement at a time certain | Right to Counsel |
|---|---|---|
| AL | Ala Code §12-15-304 | Ala Code §§12-15-304; 26-14-11 |
| AK | | Alaska Stat. §47.10.050(a)(discretionary) |
| AZ | Ariz. Rev. Stat. §8-824 (A) | Ariz. Rev. Stat. §8-221(I) (discretionary) |
| AR | Arkansas Code Ann. § 9-27.314 | Ark. Code Ann. §9-27-316(f)(3)(A) |
| CA | Ca. Welf. & Inst. Code §315 | Cal. Wel. & Ins. Code §317(c)(1) |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | | |
|---|---|---|
| CO | Colo. Rev. Stat. 19-3-403(2) | C.R.S. §19-3-203(1) |
| CT | | Conn, Gen. Stat § 46b-129a(2)(A) |
| DE | Del. Fam. Ct. Civ. R. 214 (a) | 13 Del. C. §2504(f) |
| DC | D.C. Code Ann. § 16-2312 (B) | D.C. Code Ann. §16-2304(b)(5) |
| FL | Fla. Stat. §39.402 | Fla. Stat. §39.01305(3) (discretionary unless child is being considered for placement in an RTC. See Fla. R. Juv. P. 8.350 (a)(3)) |
| GA | Ga. Code. Ann. §15-11-145 (a) | Ga. Code. Ann. §§15-11-103(a), 15-11-103(f) |
| HI | | HRS §§587A-16(a); 587A-4 (discretionary) |
| ID | Idaho Juv. R. 39 (48 hours) | Idaho Juv. Code §16-1614(1), required for children over 12, but exceptions allowed |
| IL | 705 ILCS 405/2-9 | 705 ILCS 405/1-5(1) (discretionary) |
| IN | Burns Ind. Code Ann §31-34-5-1 (a) | Burns Ind. Code Ann. §31-32-4-2(b) (discretionary) |
| IA | | Iowa Code §232.89(2) |
| KS | | K.S.A. §38-2205(a) |
| KY | Kansas Stat. Ann. §620.080(1) (a) (72 hrs) | Kansas Stat. Ann. §620.100(1)(a) |
| LA | La. Ch. C. Ann. Art. 624 (a) | La. Ch. C. Ann.  Art. 551 |
| ME | | 22 M.R.S. §4005(1)(A); Me. R. Guardians Ad Litem Rule 2(a)(2) (discretionary) |
| MD | Md. Code Ann., Cts. and Jud. Proc. §3-8A-15(d)(2) | Md. Code Ann., Cts. and Jud. Proc. 3- 813(d)(1) |
| MA | | Mass. Gen. Laws Ann. 119 § 29 |
| MI | Mich. Comp. Laws § 3.974 (C) | Mich. Comp. Laws § 722.630 |
| MN | Minn Stat. §260C.178 | Minn. Stat. § 260C.163(3)(d) (a right for children 10 and above) |
| MS | Miss. Code Ann. §43-21-309(3) | Miss. Code Ann. §43-21- 121(4) |
| MO | | Mo. Rev. Stat. § 210.160(1); Mo. Sup. Ct., Standards with Comments for Guardians Ad Litem in Missouri, Standard 1.0 |
| MT | | Mont. Code Anno., § 41-3-112(1) (discretionary) |
| NE | | Neb. Rev. Stat. § 43- 272(3) |
| NV | | Nev. Rev. Stat. Ann. § 432B.420(2) |
| NH | | RSA 169-C:10(I) (discretionary) |
| NJ | | N.J. Stat. Ann. §§9:6- 8.23(a); 9:6-8.21(d) |
| NM | | N.M. Stat. Ann. § 32A-4-10(C) |
| NY | | NY Family Ct Act § 249(a) |
| NC | | N.C. Gen. Stat. § 7B-601(a) |
| ND | | N.D. Cent. Code, § 27-20-26(1) (required at post-petition stages) |
| OH | Ohio Rev. Code Ann. §2151.314 | Ohio Rev. Code Ann. 2151.352 |
| OK | | Okla. St. 10A§ 1-4- 306(A)(5) |
| OR | Or. Rev. Stat. §419B.183 | Or. Rev. Stat § 419B.195) (only upon request) |
| PA | 42 Pa. Cons. Stat. § 6332 (a) | 42 Pa. Cons. Stat. § 6311(a) |
| RI | | R.I. Gen. Laws § 40-11-14(a); 2009 RI Regulation Text 3795; RI Dept. of Children, Youth and Families, Policy Manual (2018-2019), Reg. 1100.0000(A) |
| SC | S.C. Code Ann. §63-7-710 | S.C. Code Ann. § 63-7-1620(1) (GAL is entitled to counsel) |
| SD | | S.D. Codified Laws § 26-8A-18 |
| TN | Tenn. Code Ann. §37-1-117(b) | Tenn. Code Ann. § 37-1-126(a)(1); Tenn. Sup. Ct. Rules, Rule 40(b)(1) |

APPENDIX B

Court Procedures Provided by State Statutes, Rules, Agency Policy

| | | |
|---|---|---|
| TX | Tex. Fam Code §262.106(a) | Tex. Fam. Code § 107.012 |
| UT | Utah Code Ann. 78A-6-306(a) | Utah Code Ann. § 78A-6-1111(1)(d) |
| VT | | Vt. Stat. Ann. 33 § 5112(a) |
| VA | Va. Code Ann §16.1-250(a) | Va. Code Ann. § 16.1-266(A) |
| WA | Wash. Rev. Code §13.34.065 | Rev. Code Wash. § 13.34.100(7)(c) (mandated for children age 12+) |
| WV | | W. Va. Code Ann. § 49-4-601(f) |
| WI | Wis. Stat. §48.21(1)(a) | Wis. Stat. § 48.23(1m) (b) (req. for children age 12+) |
| WY | Wyo. Stat. Ann. § 14-3-409 (a) | Wyo. Stat. Ann. § 14-3-211(a) |