CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
CARLOS R. HOLGUÍN (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*

*Additional counsel listed on following pages*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALEX AZAR, et al.,<br><br>    Defendants. | Case No.  2:18-CV-05741 DMG PLA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      Dec. 11, 2020<br>Time:      3:00 p.m.<br>Place:      Courtroom 8C, 8th Floor<br><br>Complaint Filed: June 29, 2018<br>Pretrial Conference Date: March 2, 2021<br>Trial Date:  March 30, 2021<br>Judge: Hon. Dolly M. Gee |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
2   CARTER C. WHITE (164149)
Director, Civil Rights Clinic
3   DAISY O. FELT (307958)
JONATHAN P. MULLIGAN (CAL RLSA NO. 803383)
4   MONICA J. JULIAN (265075)
University of California Davis School of Law
5   One Shields Ave. TB 30
Davis, CA 95616
6   Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
7           ccwhite@ucdavis.edu
        dofelt@ucdavis.edu
8       jmulligan@ucdavis.edu
        mjulian@ucdavis.edu
9
NATIONAL CENTER FOR YOUTH LAW
10  LEECIA WELCH (208741)
NEHA DESAI (CAL. RLSA NO. 803161)
11  POONAM JUNEJA (300848)
FREYA PITTS (295878)
12  MISHAN WROE (299296)
MELISSA ADAMSON (319201)
13  1212 Broadway, Suite 600
Oakland, CA 94612
14  Telephone: (510) 835-8098
Email:  lwelch@youthlaw.org
15          ndesai@youthlaw.org
        pjuneja@youthlaw.org
16      fpitts@youthlaw.org
        mwroe@youthlaw.org
17      madamson@youthlaw.org

18  NATIONAL CENTER FOR YOUTH LAW
BRENDA SHUM *(ADMITTED PRO HAC VICE)*
19  CRYSTAL ADAMS (308638)
1313 L St. NW, Suite 130
20  Washington, DC 20005
Telephone: (202) 868-4785
21  Email:  bshum@youthlaw.org
        cadams@youthlaw.org

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

COOLEY LLP
SUMMER J. WYNN (240005)
MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
REBECCA L. TARNEJA (293461)
ALEXANDRA R. MAYHUGH (300446)
JAYME B. STATEN (317034)
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email:  swynn@cooley.com
        mmcmahon@cooley.com
        rtarneja@cooley.com
        amayhugh@cooley.com
        jstaten@cooley.com

*Attorneys for Plaintiffs*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  RES JUDICATA DOES NOT BAR ANY OF PLAINTIFFS' CLAIMS ........................................................................................................2

   A.   There Is No Identity Of Claims Because The Material Facts And Evidence In This Case Postdate The FSA. ...............................................4

   B.   There Is No Identify Of Claims Because This Case Does Not Involve Infringement Of The Same Rights At Issue In *Flores* ................6

   C.   This Action Furthers, Rather Than Impairs, The Rights And Interests The FSA Establishes...........................................................8

   D.   *Res Judicata* Does Not Preclude Claims By Absent Class Members On Issues Not Fully Addressed By The FSA. ...........................................8

III. ORR'S POLICIES AND PROCEDURES WITH RESPECT TO STEP-UP FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS ..........................................................................................11

   A.   Plaintiffs Have Protected Liberty Interests Vested By The Constitution, TVPRA, and FSA.............................................................11

      1.   Defendants concede that Plaintiffs have liberty interests protected by the Fifth Amendment. ...............................................12

      2.   Plaintiffs also have protected liberty interests stemming from the TVPRA and the FSA.....................................................17

   B.   ORR's Step-Up Policies And Procedures Deny Due Process. ...............19

      1.   The private interests at stake are significant.................................20

      2.   Additional procedural protections are needed to guard against erroneous restrictive placements. ....................................20

      3.   The government has no interest in depriving youth of due process.........................................................................................32

IV.  ORR'S POLICIES AND PROCEDURES WITH RESPECT TO CUSTODIAL VETTING FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS AND VIOLATE THE FIRST AMENDMENT ..................................................................................................34

   A.   Plaintiffs Have Protected Liberty Interests Vested By The TVPRA, The FSA, And The Constitution. ...............................................34

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

i

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF CONTENTS
(continued)

**Page**

1.  Plaintiffs have protected liberty interests stemming from the TVPRA. ...................................................................... 34

2.  Plaintiffs have protected liberty interests stemming from the FSA. .......................................................................... 36

3.  Plaintiffs have protected liberty interests stemming from the Constitution.................................................................. 37

B.  ORR's Policies And Procedures Deny Due Process. ............................. 39

1.  The private interests at stake are substantial. ............................... 40

2.  The risk of erroneous deprivation without adequate procedural safeguards is high. ....................................... 40

3.  Plaintiffs' liberty interests far outweigh the government's interest................................................................... 44

C.  Defendants Fail To Show They Are Entitled To Summary Judgment On Plaintiffs' First Amendment Claim. ................................. 46

V.  **ORR'S PRACTICES INDEPENDENTLY VIOLATE THE TVPRA AND THE APA** .......................................................... **46**

VI.  **THE UNCONTROVERTED FACTS ESTABLISH THAT ORR DENIES PLAINTIFFS THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF 8 U.S.C. § 1232(C)(5).** ..................... **48**

VII.  **CONCLUSION** .................................................................. **55**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aageson Grain & Cattle v. U.S. Dep't of Agric.*,
   500 F.3d 1038 (9th Cir. 2007) ............................................................47

*Addington v. Texas*,
   441 U.S. 418 (1979)................................................................... 16, 24

*Al Otro Lado, Inc. v. McAleenan*,
   423 F. Supp. 3d 848 (S.D. Cal. 2019) .......................................... 32, 44

*Aristotle P. v. Johnson*,
   721 F. Supp. 1002 (N.D. Ill. 1989)....................................................39

*Bell v. City of Boise*,
   709 F.3d 890 (9th Cir. 2013) .............................................................22

*Beltran v. Cardall*,
   222 F. Supp. 3d 476 (E.D. Va. 2016) ........................................*passim*

*Board of Dir. v. Rotary Club*,
   481 U.S. 537 (1987).........................................................................46

*Bowman Transp. v. Ark. Best Freight Sys.*,
   419 U.S. 281 (1974)................................................................... 19, 39

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000).........................................................................46

*Brower v. Evans*,
   257 F.3d 1058 (9th Cir. 2001) ..........................................................50

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006)...........................................................................52

*Califano v. Yamasaki*,
   442 U.S. 682,702 (1979) ..................................................................31

*Carver v. Lehman*,
   558 F.3d 869 (9th Cir. 2009) ................................................. 11, 17, 18

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Cent. Delta Water Agency v. United States,*
   306 F.3d 938 (9th Cir. 2002) ..................................................................4

*Christensen v. Harris Cnty.,*
   529 U.S. 576 (2000)..........................................................................54

*Commc'ns Telesystems Int'l v. California Pub. Util.,*
   196 F.3d 1011 (9th Cir.1999) .............................................................3

*Conn. Bd. Of Pardons v. Dumschat,*
   452 U.S. 458 (1981)..........................................................................18

*D.A.M. v. Barr,*
   2020 WL 4218003 (D.D.C. July 23, 2020) ......................................38

*Davis v. Mich. Dep't of Treasury,*
   489 U.S. 803 (1989)..........................................................................53

*Dawson v. Del.,*
   503 U.S. 159 (1992)..........................................................................46

*Demore v. Kim,*
   538 U.S. 510 (2003)....................................................................37, 38

*DHS v. Thuraissigiam,*
   140 S. Ct. 1959 (2020)................................................................37, 38

*Diouf v. Napolitano,*
   634 F.3d 1081 (9th Cir. 2011) .........................................................27

*Doe v. Gallinot,*
   486 F. Supp. 983 (C.D. Cal. 1979) .....................................15, 19, 39

*Egan v. Mut. of Omaha Ins. Co.,*
   24 Cal. 3d 809 (1979) .........................................................................8

*Flores v. Barr,*
   407 F. Supp. 3d 909 (C.D. Cal. 2019) ...............................................7

Cooley LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

**PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Flores v. Johnson,*
212 F. Supp. 3d 864 (C.D. Cal. 2015)........................................................23, 35

*Flores v. Lynch,*
828 F.3d 898 (9th Cir. 2016) .................................................................................5

*Flores v. Sessions,*
2018 WL 10162328 (C.D. Cal. July 30, 2018) ...........................................*passim*

*Flores v. Sessions,*
394 F. Supp. 3d 1041 (C.D. Cal. June 27, 2017) ....................................7, 10, 35

*Foucha v. Louisiana,*
504 U.S. 71 (1992)..................................................................................12, 16, 20

*Frank v. United Airlines, Inc.,*
216 F.3d 845 (9th Cir. 2000) ...................................................................2, 3, 5, 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000)..........................................................................................22, 23

*In re Gault,*
387 U.S. 1 (1967)...............................................................................13, 21, 28, 54

*Goldberg v. Kelly,*
397 U.S. 254 (1970).......................................................................................19, 39

*Gorbach v. Reno,*
219 F.3d 1087 (9th Cir. 2000) ............................................................................54

*Greenholtz v. Neb. Penal Inmates,*
442 U.S. 1 (1979)..........................................................................................18, 19

*Gutknecht v. United States,*
396 U.S. 295 (1970).............................................................................................24

*Hagan v. Cal. Forensic Med. Grp.,*
2009 WL 689740 (E.D. Cal. Mar. 5, 2009)........................................................22

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

v

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Haggard v. Curry*,
631 F.3d 931 (9th Cir. 2010) ............................................................................. 11

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2004) ................................................................. 14, 19, 20, 39

*Hayward v. Marshall*,
603 F.3d 546 (9th Cir. 2010) ............................................................................. 18

*Hiser v. Franklin*,
94 F.3d 1287 (9th Cir. 1996) ............................................................... 3, 6, 9, 11

*Ho by Ho v. San Francisco Unified School Dist.*,
965 F. Supp. 1316 (N.D. Cal 1997) .................................................................... 9

*Howard v. City of Coos Bay*,
871 F.3d 1032 (9th Cir. 2017) ................................................................... 3, 4, 9

*Hubbart v. Knapp*,
379 F.3d 773 (9th Cir. 2004) ............................................................................. 24

*IDK, Inc. v. Clark Cty.*,
836 F.2d 1185 (9th Cir. 1988) ........................................................................... 46

*Int'l Tech. Consultants, Inc. v. Pilkington PLC*,
137 F.3d 1382 (9th Cir. 1998) ............................................................................. 3

*J.E.C.M. v. Lloyd*,
352 F. Supp. 3d 559 (E.D. Va. 2018) ................................................................ 39

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ........................................................................... 49

*J.L. v. Cissna*,
374 F. Supp. 3d 855 (N.D. Cal. 2019) ............................................................... 14

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
409 F. Supp. 3d 367 (D. Md. 2019) ................................................................... 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kentucky Dep't of Corrections v. Thompson*,
490 U.S. 454 (1989)...................................................................49

*King v. Atiyeh*,
814 F.2d 565 (9th Cir. 1987) .....................................................31, 44

*Kremer v. Chem. Constr. Corp.*,
456 U.S. 461 (1982)......................................................................3

*L.V.M. v. Lloyd*,
318 F. Supp. 3d 601 (S.D.N.Y. 2018) .....................................11, 24, 36

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955)...................................................................6, 7, 8

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ..........................................................46

*Maldonado v. Lloyd*,
2018 WL 2089348 (S.D.N.Y. 2018) ...................................................10

*Martinez-de Bojorquez v. Ashcroft*,
365 F.3d 800 (9th Cir. 2004) ...........................................................33

*Mathews v. Eldridge*,
424 U.S. 319 (1976)...............................................................*passim*

*Me. Cmty. Health Options v. United States*,
140 S. Ct. 1308 (2020)...............................................................17, 35

*Media Rights Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019) ........................................................2, 5

*Moore v. City of E. Cleveland*,
431 U.S. 494 (1977)......................................................................39

*Morgan v. Covington Twp.*,
648 F.3d 172 (3d Cir. 2011) .............................................................4

Cooley LLP
Attorneys At Law
Los Angeles

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mpoyo v. Litton Electro-Optical Sys.*,
　　430 F.3d 985 (9th Cir. 2005) ...............................................................4

*Nadarajah v. Gonzales*,
　　443 F.3d 1069 (9th Cir. 2006) ...........................................................49

*New Hampshire v. Maine*,
　　532 U.S. 742 (2001).............................................................................2

*Norfolk S. Corp. v. Chevron, U.S.A., Inc.*,
　　371 F.3d 1285 (11th Cir. 2004) .....................................................4, 54

*Orff v. United States*,
　　358 F.3d 1137 (9th Cir. 2004) ........................................................4, 5

*Parham v. J.R.*,
　　442 U.S. 584 (1979).................................................................*passim*

*Perez-Funez v. Dist. Dir., INS*,
　　619, 619 F. Supp. 656 (C.D. Cal. 1985)...........................................49

*ProShipLine, Inc. v. Aspen Infrastructures Ltd.*,
　　609 F.3d 960 (9th Cir. 2010) ....................................................*passim*

*Quilloin v. Walcott*,
　　434 U.S. 246 (1978).........................................................................54

*R.F.M. v. Nielsen*,
　　365 F. Supp. 3d 350 (S.D.N.Y. 2019) ...............................................14

*Ratzlaf v. United States*,
　　510 U.S. 135 (1994).....................................................................50, 53

*Reno v. Flores*,
　　507 U.S. 292, 316 (1993) ........................................................12, 38, 39

*Rivera v. Cnty. of Los Angeles*,
　　2011 WL 2650006 (C.D. Cal. July 5, 2011) ......................................45

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

viii

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rodi v. Ventetuolo,*
  941 F.2d 22 (1st Cir. 1991).............................................................8, 19

*Rosenbaum v. Washoe Cty.,*
  663 F.3d 1071 (9th Cir. 2011) ...............................................................40

*Russello v. United States,*
  464 U.S. 16 (1983)..................................................................................52

*Santos v. Smith,*
  260 F. Supp. 3d 598 (W.D. Va. 2017)....................................................10

*Santosky v. Kramer,*
  455 U.S. 745 (1982)................................................................................44

*Saravia for A.H. v. Sessions,*
  905 F.3d 1137 (9th Cir. 2018) ...........................................10, 21, 29, 47

*Schall v. Martin,*
  467 U.S. 253 (1984)...................................................................12, 13, 28

*Singh v. Holder,*
  638 F.3d 1196 (9th Cir. 2011) ...............................................................24

*Smith v. Sumner,*
  994 F.2d 1401 (9th Cir. 1993) ..........................................................11, 19

*State Farm Mut. Auto. Ins. Co. v. Duel,*
  324 U.S. 154 (1945)..................................................................................6

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
  322 F.3d 1064 (9th Cir. 2003) ..................................................................3

*TRW Inc. v. Andrews,*
  534 U.S. 19 (2001)............................................................................36, 51

*United States v. Aversa,*
  984 F.2d 493 (1st Cir. 1993)...................................................................53

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

ix

**PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States v. Guzman Hernandez,*
   2020 WL 5585077 (E.D. Wash. Sept. 17, 2020).................................38

*United States v. Mead Corp.,*
   533 U.S. 218 (2001)...........................................................................54

*United States v. Salerno,*
   481 U.S. 739 (1987)...........................................................................20

*Vitek v. Jones,*
   445 U.S. 480 (1980)....................................................................21, 28

*W. Coast Life Ins. Co. v. Merced Irr. Dist.,*
   114 F.2d 654 (9th Cir. 1940) ..........................................................5, 7

*Walters v. Reno,*
   145 F.3d 1032 (9th Cir. 1998) ...........................................................33

*Weller v. Dep't of Soc. Serv. for City of Baltimore,*
   901 F.2d 387 (4th Cir. 1990) .............................................................10

*Whole Woman's Health v. Hellerstedt,*
   136 S. Ct. 2292 (2016)................................................................*passim*

*Wilkinson v. Austin,*
   545 U.S. 209 (2005)...........................................................................19

*In re Winship,*
   397 U.S. 358 (1970)...........................................................................24

*Wong Yang Sung v. McGrath,*
   339 U.S. 33 (1950).............................................................................53

*Zadvydas v. Davis,*
   533 U.S. 678 (2001)..............................................................11, 12, 40

*Zinermon v. Burch,*
   494 U.S. 113 (1990)....................................................................28, 29

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

x

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

5 U.S.C.
§ 554 ................................................................................................*passim*
§ 556 ...............................................................................................47, 48
§ 557 .....................................................................................10, 47, 51, 53

8 U.S.C.
§ 1232(c)(2)(A) ................................................................................*passim*
§ 1232(c)(3)(A) ...............................................................................35, 44
§ 1232(c)(5) ....................................................................................*passim*
§ 1362 .............................................................................................51, 52

William Wilberforce Trafficking Victims Protection Reauthorization Act
of 2008, 110 Pub. L. 457 ............................................................*passim*

**Other Authorities**

28 C.F.R. § 31.304(b) ............................................................................16

Fed. R. Civ. P.
26(e) .......................................................................................................22
54(c) .......................................................................................................31

Cooley LLP
ATTORNEYS AT LAW
LOS ANGELES

xi

**PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA**

# I.  INTRODUCTION

The Court should deny Defendants' Motion for Summary Judgment for the very reasons it should grant Plaintiffs' Motion. The Office of Refugee Resettlement ("ORR") denies children due process by (1) detaining them because their parents or other available custodians are deemed unfit; and (2) denying them licensed, non-secure placement and consigning them to juvenile jails, psychiatric facilities, and "staff-secure" facilities. (*See* ECF No. 271-1 [Plaintiffs' Motion for Partial Summary Judgment] ("Pls. MSJ") at 19–51.) Additionally, ORR restrains lawyers' ability to represent children in monumental decisions relating to their release, placement in restrictive facilities, and administration of psychotropic drugs. (*Id*. at 51–56.) Defendants' Motion (*see* ECF No. 263-1 [Defendants' Motion for Summary Judgment] ("Defs. MSJ")) has not and cannot overcome Plaintiffs' showing that vastly more process is due in these circumstances.

Defendants' argument that the settlement in *Flores v. Barr*, No. 85-4544-DMG (C.D. Cal.) ("FSA"), bars Plaintiffs' claims as a matter of *res judicata* fails. At the time the FSA was entered, Congress had not yet enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 110 Pub. L. 457 ("TVPRA")—a cornerstone of Plaintiffs' due process and right to counsel claims. Moreover, *res judicata* cannot bar the claims of Plaintiff children, none of whom had been born when the FSA was entered, much less injured by policies and practices that ORR would neither adopt nor apply against them until many years later. The FSA clearly does *not* (and could not) fully address what process is due to children whose custodians ORR declares unfit or whom it "steps-up" to restrictive placements. Moreover, the FSA says virtually nothing at all about a child's individual right to counsel. *Res judicata* is accordingly inapposite.

On the merits, the uncontroverted evidence shows that ORR's "procedure" for vetting parents and other available custodians is unacceptably opaque, unilateral, and marked by the near-absolute dominion of federal field specialists ("FFS"), who wield

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

sweeping discretion to decide whether children will be reunited with family or continued in federal custody and whether children will be denied licensed, non-secure placement; or consigned to secure facilities. ORR's system too easily tolerates inordinate delay, too strongly commits children's welfare to a single individual's discretion, and too often allows children to fall through the cracks.

When this happens, the uncontroverted facts recounted in Plaintiffs' Motion show a vicious cycle where release to sponsors is delayed or denied for reasons within ORR's sole discretion. Days of detention stretch into months, exacerbating the frustration and trauma to already vulnerable children. As a child's mental health deteriorates, step-up becomes increasingly likely, and once this occurs ORR typically protracts children's detention for weeks or months causing a substantial loss of liberty and further psychological harm. All the while, ORR sidelines Class Members' lawyers, effectively insulating decisions from effective scrutiny or accountability.

Defendants offer no reason for this Court to condone this state of affairs. No other population of children on United States soil are detained for lengthy periods of time on untested and often unfounded allegations that their parents or family members are unfit to care for them. Nor are they dispatched to psychiatric facilities or juvenile detention absent a meaningful opportunity to examine and rebut the government's case before a neutral decision-maker while represented by counsel. Plaintiffs respectfully request that the Court deny Defendants' Motion and grant judgment in favor of Plaintiffs.

## II.   RES JUDICATA DOES NOT BAR ANY OF PLAINTIFFS' CLAIMS

*Res judicata*, or claim preclusion, "prohibits 'successive litigation of the very same claim' by the same parties." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019) (quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)). Plaintiffs' claims arose

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

2

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

decades after the FSA was entered and involve new government policies and new statutory rights, therefore there is no basis for claim preclusion.

To establish *res judicata*, Defendants must prove each of the following: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)). In determining whether claims are identical, courts consider: "(1) whether the two suits arise out of *the same transactional nucleus* of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *ProShipLine, Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (citation omitted). For the reasons explained below, Defendants cannot show an identify of claims because: (1) the two suits do not arise out of the same transactional nucleus of facts as the conduct at issue here occurred decades after the FSA was entered, and thus entirely new evidence is presented in this action; (2) the two suits do not involve infringement of the same rights, particularly because the 1997 FSA could not have resolved these claims under the TVPRA, which Congress enacted eleven years later; and (3) Plaintiffs' claims further, rather than impair, rights established by the FSA.

In addition, *res judicata* does not preclude claims by absent class members on issues not fully addressed by the FSA. *Hiser v. Franklin*, 94 F.3d 1287, 1293–94 (9th Cir. 1996). *Res judicata* attaches only if the parties had a "'full and fair opportunity' to litigate the claim" in the prior action. *Commc'ns Telesystems Int'l v. California Pub. Util.*, 196 F.3d 1011, 1018 (9th Cir.1999) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480–81 (1982)). Absent class members are not bound by a prior judgment unless their specific interests were adequately represented in the previous litigation. *See Frank*, 216 F.3d at 852–53; *Hiser*, 94 F.3d at 1293–94. Further, in the case of settlement, the parties' agreement fixes the bounds of *res judicata*. *See Int'l Tech. Consultants, Inc.*

Cooley LLP
Attorneys At Law
Los Angeles

3

Plaintiffs' Opposition To Motion
For Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

*v. Pilkington PLC*, 137 F.3d 1382, 1387 (9th Cir. 1998) (evaluating *res judicata* effect of consent decree and explaining that "[a] consent decree in a private action imposes no more on the party to be bound than that party agreed to"); *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) ("res judicata effect . . . is controlled by the Settlement Agreement into which the parties entered"). As explained below, the FSA does not foreclose any of the claims now before this Court.[1]

Accordingly, Plaintiffs' claims are not barred by *res judicata* and the Court should reject Defendants' arguments to the contrary.

## A.   There Is No Identity Of Claims Because The Material Facts And Evidence In This Case Postdate The FSA.

In evaluating whether two claims are identical for purposes of *res judicata*, the "most important" criterion is "whether the two suits arise out of the same transactional nucleus of facts." *Howard*, 871 F.3d at 1039 (citations and quotation marks omitted); *see also ProShipLine, Inc.*, 609 F.3d at 968 ("Reliance on the transactional nucleus element is especially appropriate because the element is 'outcome determinative.'") (quoting *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005)). In "considering whether a prior action involved the same 'nucleus of facts' for preclusion purposes, [courts] must narrowly construe the scope of that earlier action." *Orff v. United States*, 358 F.3d 1137, 1144 (9th Cir. 2004) (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002)).

The Ninth Circuit follows other circuits that "adopt[] a bright-line rule that *res judicata* does not apply to events post-dating the filing of the initial complaint" and "confirm[ed] that for purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Howard*, 871 F.3d at 1039–40 (quoting *Morgan v. Covington Twp.*, 648 F.3d 172, 177–78 (3d Cir. 2011));

---

[1] Plaintiffs do not dispute that the FSA is a final judgment but do dispute that the FSA bars Plaintiffs' claims in this case.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

4

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

*see also Media Rights*, 922 F.3d at 1021–22; *Frank*, 216 F.3d at 851.[2] For this reason
alone, Defendants' *res judicata* argument fails as to Plaintiffs' claims. The claims in
this case are based on events beginning in 2017, more than three decades after the *Flores*
complaint was filed and two decades after the FSA entered. (*See* ECF No. 81 [First
Amended Complaint] ("FAC") ¶¶ 37, 41, 47–48, 54–55, 59, 64 (reciting the
experiences of named Plaintiffs in ORR custody starting in 2017).)

Furthermore, Plaintiffs could not have brought their current challenges to ORR's
practices regarding step-up, custodial vetting, and access to legal counsel in *Flores* for
at least three reasons. ***First***, at the time the FSA was entered, the Homeland Security
Act ("HSA") had not yet assigned ORR responsibility for the care of unaccompanied
minors. *See Flores v. Lynch*, 828 F.3d 898, 904 (9th Cir. 2016). The ORR policies and
practices challenged in this case were therefore not yet in existence. *See, e.g., Orff*, 358
F.3d at 1144 (finding no claim preclusion when second suit arose out of government
actions "that occurred long after" the first case was decided); *see also* ECF No. 81
[FAC] ¶¶ 102–116, 117–131, 143–152 (class allegations regarding ORR policies and
practices on custodial vetting, step-up, and access to counsel). ***Second***, Congress had
not yet enacted the TVPRA, upon which Plaintiffs base their claims. *See* 8 U.S.C.
§ 1232; *Flores v. Lynch*, 828 F.3d at 904; *see also W. Coast Life Ins. Co. v. Merced Irr.
Dist.*, 114 F.2d 654, 662 (9th Cir. 1940) ("enactment of a new and different statute . . .
will create a 'new situation' sufficient to justify the denial of" *res judicata*). ***Third***, none
of the named Plaintiffs could have brought their current claims in *Flores* because they
were not in ORR custody at the time that lawsuit was filed or even at the time the FSA
was entered. (*See* ECF No. 81 [FAC] ¶¶ 10–16, 24, 37, 59, 70, 78, 86.)

Given these recent factual developments, there is no identity of claims. *See
Hellerstedt*, 136 S. Ct. at 2305–06 (holding that a post-enforcement challenge to a

---

[2] Because the FSA was entered "by a federal court exercising federal-question
jurisdiction, federal common law determines whether preclusion applies." *Media Rights
Tech., Inc.*, 922 F.3d at 1021 n.6.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

5

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

statute was not precluded by a prior pre-enforcement challenge to the same law because the new case "rests in significant part upon later, concrete factual developments"); *see also id.* at 2235 (Alito, J., dissenting) (accepting "the unremarkable proposition that a prior judgment does not preclude new claims based on acts occurring after the time of the first judgment"); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955) ("That both suits involved 'essentially the same course of wrongful conduct'" does not trigger *res judicata* where "[t]he conduct presently complained of was all subsequent to the [earlier] judgment."); *see also Hiser*, 94 F.3d at 1292 ("We do not believe that all facts related to court access are part of a 'common nucleus of operative facts' and therefore create one transaction and a single claim.").

    For the same reasons, the evidence presented in this action is not "substantially the same evidence" presented in *Flores. See ProShipLine*, 609 F.3d at 968 (citation omitted). Both parties' summary judgment motions rely on evidence regarding ORR's specific policies, all of which long postdate the FSA. (*See, e.g.*, ECF No. 271-2 [Plaintiffs' Statement of Uncontroverted Facts] ("SUF") ¶¶ 1–9 (recent research and reports on harms of detention); *id.* ¶¶ 10–19, 25–26, 49–51, 85–87, 171–172 (evidence regarding experiences of named Plaintiffs); *id.* ¶¶ 27–48, 52–84, 88–170, 173–228, 234–275 (evidence regarding ORR's current policies and practices); *id.* ¶¶ 229–233 (evidence regarding HHS's contract with the Vera Institute of Justice); *see generally* ECF No. 263-2 [Defendants' Statement of Uncontroverted Facts] ("DUF").) As such, the evidence in this case clearly differs from the evidence presented in *Flores*.

**B.    There Is No Identify Of Claims Because This Case Does Not Involve Infringement Of The Same Rights At Issue In *Flores*.**

    Courts have long held that *res judicata* "is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." *State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945) (citing 2 FREEMAN ON JUDGMENTS (5th ed. 1925) § 713). The TVPRA did not exist when *Flores* was originally filed in 1985, or when the FSA was entered in

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

6

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1997. Accordingly, Plaintiffs' claim that greater process is due when ORR denies children their rights under the TVPRA—enacted 11 years *after* entry of the FSA—cannot be barred by *res judicata*. *See W. Coast Life Ins. Co.*, 114 F.2d at 662. The FSA did not exist when *Flores* was filed and Plaintiffs' instant claims based on rights under the FSA could not have been brought in that action. The two suits thus do not "involve infringement of the same right." *See ProShipLine*, 609 F.3d at 968 (citation omitted).

Defendants attempt to dodge this temporal failing by asserting that Plaintiffs' statutory claims "simply replicate their due-process challenge[.]" (Defs. MSJ at 14, 34, 51.) This position is without merit. A judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor*, 349 U.S. at 328. Nor could the FSA have resolved what process is due to protect statutory rights that Congress would not create for another eleven years, including the right to prompt placement "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).[3]

Similarly, the FSA could not have resolved Plaintiffs' wholly *substantive* TVPRA claim that ORR fails to provide children 30-day placement reviews as required under 1232(c)(2). *See* 8 U.S.C. § 1232(c)(2); *see also* Pls. MSJ at 49 n.23. Nor could the FSA have resolved Plaintiffs' *substantive* TVPRA claim that ORR fails to provide children legal representation "to the greatest extent practicable" in "legal proceedings or matters." 8 U.S.C. § 1232(c)(5); *see Flores v. Sessions*, 394 F. Supp. 3d 1041, 1071 (C.D. Cal. 2017) ("The Court notes at the outset that there is no provision of the *Flores*

---

[3] The FSA was set to terminate after five years, or some six years before enactment of the TVPRA. (Ex. 8 [FSA] ¶ 40.) In 2001, however, Defendants stipulated that the consent decree would remain in effect until 45 days following promulgation of federal regulations implementing and consistent with the agreement. (*Id.* at 612–13.) Defendants have yet to promulgate such regulations. *Flores v. Barr,* 407 F. Supp. 3d 909 (C.D. Cal. 2019), *appeal argued and submitted*, No. 19-56326 (9th Cir. May 19, 2020). Defendants' argument that the FSA precludes Plaintiffs from suing to protect their rights under the TVPRA some 18 years after the agreement was entered cannot be squared with the intended lifespan of the FSA.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

7

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1    Agreement that establishes class members' right to counsel.").

2    **C.    This Action Furthers, Rather Than Impairs, The Rights And Interests**
         **The FSA Establishes.**
3

4         Plaintiffs' due process claims seek to protect, *inter alia*, substantive rights created

5    by the FSA "that require the prompt release of alien minors to proposed custodians, the

6    placement of children in non-secure licensed facilities, and adherence to all applicable

7    state child welfare laws and regulations." (ECF No. 141 [Class Cert. Order] at 14

8    (citations omitted).) Far from destroying or impairing rights and interests under the

9    FSA, *ProShipLine*, 609 F.3d at 968, Plaintiffs' procedural due process claims aim to

10   ensure that Class Members are not wrongly denied those rights. (*See infra* at 11–44.)

11   Defendants' argument to the contrary—that the FSA somehow insulates ORR's step-

12   up and release decisions from any future constitutional challenges (Defs. MSJ at 16–

13   17, 36–37)—is meritless. *See Lawlor*, 349 U.S. at 329 (rejecting interpretation of *res*

14   *judicata* that "would in effect confer on [respondents] a partial immunity from civil

15   liability for future violations"); *see also Rodi v. Ventetuolo*, 941 F.2d 22, 28 (1st Cir.

16   1991) (holding consent decree created a cognizable "liberty interest in remaining in the

17   general prison population" permitting a subsequent procedural due process claim).[4]

18   **D.    *Res Judicata* Does Not Preclude Claims By Absent Class Members On**
         **Issues Not Fully Addressed By The FSA.**
19

20        As discussed above, the FSA could not have settled Plaintiffs' current claims

21   because they arose long after the FSA was entered. Even if there were any doubt on this

22   point, however, *res judicata* is especially inappropriate in situations where, as here, it

23   would operate to bar claims by class members who were absent from the initial litigation

24   ───────────────

25   [4] Nor is it unfair that Defendants should provide more process than the FSA requires.
     "In addition to the duties imposed on contracting parties by the express terms of their
26   agreement, the law implies in every contract a covenant of good faith and fair dealing."
     *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979). The *Flores* plaintiffs were
27   accordingly entitled to assume that the Government would respect the substantive rights
     it agreed to provide to children.
28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

8

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

on concerns not fully addressed by the prior case.[5]

As explained by the Ninth Circuit, "res judicata must be applied carefully in the class action context" because an unnamed class member may not have had a full opportunity to be heard in the prior action. *Hiser*, 94 F.3d at 1293–94; *see also Frank*, 216 F.3d at 852 n.6 ("Concerns about the adequacy of representation are heightened where the first action was a class action in which the plaintiffs in the subsequent action were unnamed, absent members."). In *Hiser*, for example, the Ninth Circuit held that a comprehensive consent decree regarding prison conditions and access to the courts did not preclude a prisoner from bringing a later class claim challenging a specific photocopying policy even though the "photocopying challenge implicates the same right of 'access to the courts.'" *Id.* at 1292–94. The court explained that claim preclusion cannot be defined to bar "all future claims by prisoners challenging an unconstitutional condition." *Id.* at 1293.[6]

Defendants' instant argument is indistinguishable from the argument rejected by the Ninth Circuit in *Hiser*. The FSA does not address children's right to be heard when ORR deems their proposed custodians are or may be unfit or when ORR decides to step them up to or maintain them in a more restrictive setting.[7] (*See* ECF No. 141 [Class

---

[5] None of the authorities cited by Defendants addresses the preclusive effect of a class-wide settlement on the rights of unnamed class members to seek procedural protections beyond what was previously settled. *See* Defs. MSJ at 14–18, 34–37, 51–53; *cf. Ho by Ho v. San Francisco Unified School Dist.*, 965 F. Supp. 1316, 1321–22 (N.D. Cal 1997) (*res judicata* did not bar claims "based on the operation of the Consent Decree in the years *after*" it was entered).

[6] The consent decree at issue in *Hiser* devoted some nine pages to class members' rights with respect to accessing the courts and "require[d] the State to provide typewriters and carbon paper to inmates," but did not include a right to photocopying. 94 F.3d at 1289, 1292 n.4. Although *Hiser* involved Alaska law, both Alaska and federal common law follow the "transactional approach" outlined in the Restatement (Second) of Judgments. *Id.* at 1292; *see also Hellerstedt*, 136 S. Ct. at 2305–07; *Howard*, 871 F.3d at 1039–40.

[7] Paragraph 24A of the FSA requires ORR to afford Class Members a bond redetermination hearing before an immigration judge, but these hearings only review

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

9

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

Cert. Order] at 10–11 ("Plaintiffs may pursue due process claims predicated on Defendants' failure to provide sufficient procedural safeguards for alien minors to exercise their *Flores* rights because Plaintiffs cannot bring those claims in the *Flores* Action."); *Flores v. Sessions*, 2018 WL 10162328, at *4 (C.D. Cal. July 30, 2018) (concluding that such claims have "no place in a motion to enforce the consent decree").) Nor does the FSA address a child's statutory right to counsel to challenge ORR's decisions relating to release, restrictive placement, and medication. *See Flores v. Sessions*, 394 F. Supp. 3d at 1071–72.

Consistent with the fact that *Flores* does not preclude challenges to ORR's policies with respect to release and placement, numerous courts have ordered ORR to afford *Flores* class members additional procedural protections. *E.g.*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1144 (9th Cir. 2018) (affirming class-wide preliminary injunction requiring prompt hearing when government re-arrests *Flores* class members and holding that "[t]he district court did not abuse its discretion in concluding that *Flores* hearings were not sufficient to protect the TVPRA rights of the members of the plaintiff class"); *Beltran*, 222 F. Supp. 3d 476 (ORR enjoined from refusing to release *Flores* class member absent due process); *Santos v. Smith*, 260 F. Supp. 3d 598 (W.D. Va. 2017) (same); *Maldonado v. Lloyd*, 2018 WL 2089348 (S.D.N.Y. 2018) (same); *cf.*

---

whether a minor is a flight risk or too dangerous to release. *Flores v. Sessions*, 862 F.3d at 879. ORR may and does continue to detain children whom immigration judges find are neither too dangerous nor too prone to flight to release. (*See* Defs. MSJ at 10 n.1.) Nor does the outcome of a bond hearing have any determinative outcome on the child's level of placement in ORR custody. (SUF ¶ 205; *see* DUF ¶ 66 ("ORR is not bound by the immigration judge's bond hearing determination[.]").) The supervisory role set out for the juvenile coordinator in FSA ¶ 23 and ¶ 28B does not address a child's right to be heard in step-up and release decisions. The FSA also includes limited provisions regarding judicial review. (Ex. 8 [FSA] ¶¶ 25B, 24C.) The availability of possible judicial review, however, does not satisfy due process. *See Beltran v. Cardall*, 222 F. Supp. 3d 476, 486 (E.D. Va. 2016) ("[H]aving determined that it would deprive Petitioner and [her child] of their fundamental right to family integrity, ORR could not adopt for itself an attitude of if you don't like it, sue.") (quoting *Weller v. Dep't of Soc. Serv. for City of Baltimore*, 901 F.2d 387, 395 (4th Cir. 1990))).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

10

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

*L.V.M. v. Lloyd*, 318 F. Supp. 3d 601 (S.D.N.Y. 2018) (enjoining policy to detain children pending director approval as violative of the TVPRA).

Not only is *res judicata* especially inapt where, as here, the subsequent case involves "unnamed, absent class member[s]," *Hiser*, 94 F.3d at 1293, but also where, as here, the claims implicate "important human values—such as the lawfulness of continuing personal disability or restraint"—where "even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought," *Hellerstedt*, 136 S. Ct. at 2305 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24, comment *f*).

Accordingly, Plaintiffs' instant claims are not barred by *res judicata*.

## III.   ORR'S POLICIES AND PROCEDURES WITH RESPECT TO STEP-UP FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS

Plaintiffs are entitled to robust procedures to protect the liberty interests afforded them by the Constitution, TVPRA, and FSA. Defendants incorrectly claim that ORR's step-up procedures satisfy due process as a matter of law. (Defs. MSJ at 18–33.) As explained below, the law and uncontroverted facts are to the contrary. The Court should grant Plaintiffs' Motion and deny Defendants' Motion.

### A.   Plaintiffs Have Protected Liberty Interests Vested By The Constitution, TVPRA, and FSA.

A procedural due process claim has "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010) (citation omitted). A constitutionally protected liberty or property interest can arise from the Constitution, a statute, or a contract, including a consent decree. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (Constitution); *Carver v. Lehman*, 558 F.3d 869, 874–75 (9th Cir. 2009) (statute); *Smith v. Sumner*, 994 F.2d 1401, 1406 (9th Cir. 1993) (consent decree); *see also* ECF No. 141 [Class Cert. Order] at 13–15. Here, Plaintiffs have independent, constitutionally protected liberty interests under the Constitution, the TVPRA, and the

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

11

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

FSA to freedom from detention and to familial association. (*See* Pls. MSJ at 20–24.)

### 1. Defendants concede that Plaintiffs have liberty interests protected by the Fifth Amendment.

Defendants do not dispute that children detained in ORR custody who are stepped up have a constitutionally protected liberty interest under the Fifth Amendment—nor could they. (*See* Defs. MSJ at 19, 21–24.) A basic precept of the U.S. Constitution is that freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Fifth Amendment Due Process Clause protects. *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992); *Zadvydas,* 533 U.S. at 690. Having conceded that a constitutional liberty interest exists, Defendants seek to minimize that interest and the requisite process necessary to guard against the erroneous deprivation of that interest. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). Their efforts fail.

***First***, Plaintiffs' liberty interests are not diminished simply because they are children. *Reno v. Flores,* 507 U.S. 292, 316 (1993) (O'Connor, J., concurring) (noting that a child's constitutional right to be free from bodily restraint is no narrower than that of an adult). Defendants incorrectly rely on a distorted and overly broad reading of *Reno v. Flores* to argue otherwise. (Defs. MSJ at 21.) There, the Supreme Court considered the constitutionality of INS shelter care for children with no available parent, close relative or legal guardian. *Reno,* 507 U.S. at 302. The immigration custody the Court specifically referenced was licensed shelters, *id*. at 298—a far cry from a jail with locked cells, limited freedoms, and surveillance. Indeed, the Court in *Reno v. Flores* emphasized that the children there were not subjected to "shackles, chains, or barred cells," *id*. at 302—some of the exact conditions endured by unaccompanied children in secure settings (Pls. MSJ at 9–12).

Defendants' reliance on *Schall v. Martin*, 467 U.S. 253 (1984) for the same proposition is similarly paradoxical. (Defs. MSJ at 21.) There, unlike here, the Court held that due process was satisfied where a juvenile pretrial detention statute embodied

numerous procedural safeguards, including a formal, prompt, and adversarial hearing and rights to counsel, cross-examination of witnesses, and specified burden of proof. *Schall*, 467 U.S. at 275, 277. Defendants do not (and cannot) claim that these same procedural safeguards are embedded in ORR's step-up policies and practices.

Defendants' position is also contrary to well-established juvenile justice and child welfare jurisprudence. *In re Gault*, 387 U.S. 1, 28 (1967) (finding juveniles are entitled to more than "a kangaroo court"); *see also* Ex. 54 [Heldman Expert Rep.] at 1349 (concluding that in all 50 states children are entitled to more process than that afforded to children in ORR custody—*e.g.*, children must be provided a hearing when they are placed in a secure facility.) Acting under the auspices of *parens patriae* provides no substitute for the fundamental procedural protections that minors are entitled to in the face of serious liberty deprivations. *In re Gault*, 387 U.S. at 17–24.

***Second***, Defendants minimize Plaintiffs' liberty interests because children can ostensibly control the duration of their ORR detention by applying for legal status or by accepting removal or voluntary departure to their home countries. (Defs. MSJ at 22.) This assumption demonstrates how little Defendants understand about the immigration relief available to children in ORR custody.[8] Waiting up to five years to obtain legal status is hardly the easy road to freedom that the government claims. Moreover, processing times to receive immigration relief are controlled entirely by the machinations of the federal government—not, as Defendants suggest, by the children

---

[8] Forms of relief include Special Immigrant Juvenile Status (youth that were abused, abandoned, or neglected by one or both parents); U-visa (victims of certain criminal acts); T-visa (victims of a severe form of human trafficking); and political asylum (fear of persecution in home country)—each of which have lengthy processing times that can take years to adjudicate. *See, e.g.*, USCIS Processing Times, *available at* https://egov.uscis.gov/processing-times (U.S. Citizenship and Immigration Services currently estimates that a U-visa will take them 57 months to process and a T-visa anywhere from 18-29 months) (last visited Nov. 4, 2020).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

13

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

in its custody.[9]

Voluntary removal or departure is not an option for many unaccompanied children given their reasons for undertaking the perilous journey to the U.S., which often include traumatic experiences of violence and threats of death. (*See, e.g.*, Ex. 66 [J.S.C.M. Decl.] ¶ 2 ("When I was eleven I left home . . . . There were a lot of gangs in my area and it was hard to defend myself. I knew that if I stayed in Honduras, I would die.").) Suggesting that a child voluntarily return to such dangerous conditions to avoid further trauma in prolonged ORR detention is as inhumane as it is absurd. Moreover, unlike children in juvenile custody, children in ORR custody are often subjected to indefinite or prolonged detention without procedural recourse. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) ("[H]istory and common sense teach us that an unchecked system of detention carries the potential to become a means for oppression and abuse . . . ."). This heightens, rather than diminishes, Plaintiffs' liberty interests.

**Third**, when children are deprived of their liberty and placed in jail-like or restrictive settings, that deprivation dictates the process required, not their custodial status. Defendants cite nothing to the contrary. (Defs. MSJ 21–25.) Youth in government custody are entitled to all the same procedural due process protections as their non-detained counterparts. (*See* Ex. 144 [Quinn Expert Report] at 2050 ("crossover" youth or "dual-system involved" children—the subject of both child

---

[9] The federal government has repeatedly attempted to place further roadblocks to legal status for unaccompanied children. *See J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367 (D. Md. 2019) (enjoining USCIS memorandum which attempted to redetermine UAC status at the time of asylum filing and thus strip USCIS of jurisdiction over UAC asylum claims); *see also J.L. v. Cissna*, 374 F. Supp. 3d 855 (N.D. Cal. 2019) (denying government's motion to dismiss following federal government unlawfully denying relief by refusing to recognize the authority of some California juvenile courts); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019) (certifying class of 18–21-year-old youth with New York State Family Court orders after USCIS denied their Special Immigrant Juvenile applications by claiming said court was not a "juvenile court" under the Immigration and Nationality Act).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

14

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

welfare and juvenile justice matters—at the very least must be provided with the legal and constitutional protections required in both kinds of cases).) And the severe physiological, emotional, and mental health impacts of secure confinement, particularly for children who have experienced trauma, create an acute interest in freedom from secure detention.[10] (SUF ¶¶ 1–9, 128, 130, 133, 136.)

**Fourth**, Defendants concede that Residential Treatment Centers ("RTCs") are **as restrictive** as secure jail-like facilities (SUF ¶¶ 118, 127–28) and their assertions that Plaintiffs stepped up to RTCs have fewer liberty interests than domestic individuals committed to mental institutions are wholly without merit. (Defs. MSJ at 23.) The uncontroverted facts show that RTCs are locked facilities where children feel compelled to take psychotropic medication.[11] (SUF ¶ 132.) Indeed, because a mental health facility "is authorized to administer drugs to [individuals] against [their] will, detention there might be considered more severe than confinement in a penal institution." *Doe v. Gallinot*, 486 F. Supp. 983, 992 (C.D. Cal. 1979). Thus, whatever distinctions Defendants attempt to make between RTCs and psychiatric hospitals are immaterial to

---

[10] *See* Justice Policy Institute, *Healing Invisible Wounds: Why Investing in Trauma Informed Care for Children Makes Sense* 1, 6 (July 2010), available at http://www.justicepolicy.org/images/upload/10-07_REP_HealingInvisibleWounds_JJ-PS.pdf ("For youth who have experienced trauma who are entering the justice system, the process of arrest and incarceration can itself represent a traumatic event. Confinement has been shown to exacerbate the symptoms of mental disorders, including PTSD, and the act of processing youth into juvenile custody (for example, using handcuffs, searches, isolation and restraints), as well as the risk of abuse by staff or other youth can be traumatizing. In particular, characteristics of correctional facilities, such as seclusion, staff insensitivity or loss of privacy, can exacerbate negative feelings created by previous victimization, especially among PTSD sufferers and girls. Youth in correctional facilities are frequently exposed to verbal and physical aggression, which can intensify fear or traumatic symptoms.") (footnote omitted).

[11] RTCs are *involuntary* inpatient treatment facilities. (SUF ¶¶ 132–134; SDF ¶ 151 (Children have reported that they did not want to be at the residential treatment center but had no choice in the matter).)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

15

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

the severe deprivation of liberty inherent in children's placements in such facilities.[12]

**Fifth**, Defendants similarly argue that Plaintiffs' interest to be free from unnecessary physical restraint is weaker for Class Members who are in staff-secure facilities. (Defs. MSJ at 24.) Yet, the characteristics of staff-secure facilities show they constitute restrictive detention.[13] Staff-secure facilities are supposed to be "residential facilities in which physical restriction is provided *solely* by staff," (Ex. 178 [Heldman Expert Report] at 315 (citing 28 C.F.R. § 31.304(b) (emphasis added))), but instead ORR staff-secure facilities impose features consistent with secure facilities. For example, staff-secure facilities are often gated, enclosed, fenced facilities designed to prevent escape. (*Id.*; SUF ¶¶ 122–124; *see also* Ex. 180 [Quinn Expert Report] at 330–333 (describing multiple ORR staff-secure facilities, some of which are characterized by security fencing, windows covered in metal mesh, and surveillance cameras permeating the rooms and halls, and described by youth as "prison-like").) Because ORR staff-secure facilities impose features similar to those found in ORR secure juvenile detention facilities, Plaintiffs' private interest in being free from unnecessary physical restraint is even more important in this context.[14] Indeed, this becomes even

---

[12] Defendants also fail to disclose that children in ORR's care can and have been placed in psychiatric hospitals involuntarily. (SDF ¶¶ 152.) Like other restrictive settings in ORR's network, psychiatric hospitalization raises significant private interest concerns. *Foucha*, 504 U.S. at 75–80 ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection") (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)); *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (there is a "substantial liberty interest in not being confined unnecessarily for medical treatment").

[13] That staff-secure facilities and shelters can and sometimes do have the same state licensing requirements (SDF ¶ 40), does not change the fact that shelters and staff-secure facilities are two different types of facilities with different criteria (*e.g.*, different staff-to-child ratio requirements) and that staff-secure facilities are more restrictive than shelters (SUF ¶ 123).

[14] That the TVPRA did not require any additional procedures for staff-secure placements is irrelevant for purposes of this action. (*See* Defs. MSJ at 24.) As Defendants note, the TVPRA requires monthly placement reviews for children in "secure" facilities. 8 U.S.C. § 1232(c)(2)(A). Here, ORR staff-secure facilities fit the "secure" rather than

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

16

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

more important when considered against the fact that many of ORR's staff secure
facilities are in remote locations, which "impedes [Class Members'] family contact and
associational freedoms." (Ex. 180 [Quinn Expert Report] at 334.)

> ### 2.   Plaintiffs also have protected liberty interests stemming from the TVPRA and the FSA.

In addition to the constitutional rights discussed above, this Court has already
recognized that Plaintiffs have statutory and contractual "rights underlying their
procedural due process claims" based in the TVPRA and the FSA. (ECF No. 141 [Class
Cert. Order] at 13–15; *see also* Pls. MSJ at 22–24.) The TVPRA, for example,
commands that:

> [A]n unaccompanied alien child in the custody of [ORR] ***shall*** be
> promptly placed in the least restrictive setting that is in the best interest of
> the child . . . . A child ***shall not*** be placed in a secure facility absent a
> determination that the child poses a danger to self or others or otherwise
> has been charged with committing a criminal offense.

8 U.S.C. § 1232(c)(2)(A) (emphases added); *see also* Ex. 8 [FSA] ¶¶ 9, 19. These
provisions "use mandatory language to prescribe the agency's duties," thereby creating
a substantive interest protected by the Due Process Clause to placement in the least
restrictive setting consistent with the best interests of the child. (ECF No. 141 [Class
Cert. Order] at 13–15 (citing *Carver*, 558 F.3d at 872–73).)

Defendants now ask this Court to reverse course, arguing that the word "shall" is
insufficient to create a mandatory duty. (*See* Defs. MSJ at 19–21.) This argument
ignores the fact that when Congress "distinguishes between 'may' and 'shall,' it is
generally clear that 'shall' imposes a mandatory duty." *Me. Cmty. Health Options v.
United States*, 140 S. Ct. 1308, 1321 (2020). And here, the TVPRA uses both "may"
and "shall" at various points to distinguish between the discretionary and mandatory

---

traditional federal law "staff-secure" definition, and as such are entitled to the
protections provided for secure facilities under the TVPRA.

Cooley LLP
Attorneys At Law
Los Angeles

17

Plaintiffs' Opposition To Motion
For Summary Judgment
Case No. 2:18-CV-05741 DMG PLA

duties imposed.[15]

None of Defendants' cited cases suggest a different outcome. *Conn. Bd. Of Pardons v. Dumschat* involved a statute using the word "shall" to confer discretionary authority to grant pardons and commute the sentences of life inmates, without any additional requirements or criteria necessary for commutations. 452 U.S. 458, 460 (1981) (noting that the statute states the "board shall have authority to grant pardons . . ."). The Court in *Dumschat* specifically distinguished the statute at issue in that case with another statute concerning release of inmates, which required the parole board to take actions—mandating that it "'shall' order the inmate's release 'unless' it decided one of four specified reasons for denial was applicable." *Id.* at 466 (citing *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 11 (1979)). Here, the TVPRA does not simply grant ORR authority to place children; it requires a specific action—*i.e.*, to promptly place children "in the least restrictive setting that is in the best interests of the child"—and further limits secure placement unless specified criteria are met. 8 U.S.C. § 1232(c)(2)(A).[16] And *Hayward v. Marshall*, 603 F.3d 546, 559–61 (9th Cir. 2010) merely held that the Due Process Clause does not provide a right to release on parole, which is not a right at issue here.

The FSA also contemplates liberty interests to freedom from detention and to family unity. (*See* ECF No. 141 [Class Cert. Order] at 14–15 (finding FSA protections "are secured by a consent decree and constitute civil rights because they are akin to . . . constitutional and statutory rights")) Like the TVPRA, the FSA uses "explicitly

---

[15] *Compare* 8 U.S.C. § 1232(c)(2)(A) (using "may" when referring to criteria the "Secretary **may** consider" when making placement decisions), *with id.* (using "shall" and "shall not" when referring to mandatory duties to place a child in the least restrictive setting and not to place a child in a secure setting absent identified criteria).

[16] Defendants attempt to obscure the relevant inquiry by focusing on other sections of the TVPRA—and not those specifically identified in the First Amended Complaint, which this Court has already recognized create substantive liberty interests. (*Compare* Defs. MSJ at 20 (citing *Carver*, 558 F.3d at 869), *with* FAC ¶ 118, *and* ECF No. 141 [Class Cert. Order] at 14.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

18

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

mandatory language" requiring that children be placed in non-secure, licensed facilities while in ORR custody. (*See* Pls. MSJ at 23–24 (citing Ex. 8 [FSA] ¶¶ 6, 19).) Defendants' argument to the contrary conflates the substantive rights created by the FSA to, *inter alia*, placement in non-secure, licensed facilities with the procedural protections sought by Plaintiffs in this lawsuit. (*See* Defs. MSJ at 20; Ex. 8 [FSA] ¶ 19.) The procedures necessary to protect those substantive rights is a separate inquiry. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) ("A liberty interest having been established, we turn to the question of what process is due."); *Greenholtz*, 442 U.S. at 12–13 (determining process due under the *Mathews* factors after finding state law created a liberty interest); *Rodi*, 941 F. 2d at 28 (having concluded that the consent decree created a liberty interest, "we turn next to the question of what process was due"). Defendants' cited authority only serves to reinforce this distinction. *See Smith*, 994 F.2d at 1406 n.6 (recognizing that appellant was advocating for a substantive interest in the right to counsel supposedly conferred by a consent decree, which was not "a question of procedural due process"); *see also* Defs. MSJ at 20.

## B. ORR's Step-Up Policies And Procedures Deny Due Process.

As shown in Plaintiffs' Motion (Pls. MSJ at 24–26), ORR's policies offend even the most basic notions of minimum due process and violate the Administrative Procedure Act ("APA") because they fail to provide children notice and a meaningful opportunity to be heard. *See Wilkinson*, 545 U.S. at 226 ("[T]he central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'") (citation omitted); *see also Hamdi*, 542 U.S. at 533; *Gallinot*, 657 F.2d at 1024; *see also Bowman Transp. v. Ark. Best Freight Sys.*, 419 U.S. 281, 288 n. 4 (1974) ("[T]he Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation"); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). On this basis alone, Defendants' Motion must be denied.

Even under the three-factor test articulated in *Mathews*, Plaintiffs are clearly

Cooley LLP
Attorneys At Law
Los Angeles

19

Plaintiffs' Opposition To Motion
For Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

entitled to procedural safeguards to protect their liberty interests. (Pls. MSJ at 28–51.)
Liberty is the most fundamental of interests and should be secured with the strongest
procedural protections, especially when deciding whether to place an unaccompanied
immigrant child into a jail or restrictive detention center. *See Foucha*, 504 U.S. at 80
("Freedom from bodily restraint has always been at the core of the liberty protected by
the Due Process Clause[.]"); *see also* Pls. MSJ at 28–51. The weightier the interest, the
more process that is due; thus, depriving a person of their fundamental interest in
freedom from detention requires substantial process. *Mathews*, 424 U.S. at 334–35;
*Hamdi*, 542 U.S. at 529–30, 533; *see also United States v. Salerno*, 481 U.S. 739, 755
(1987) ("In our society liberty is the norm, and detention prior to trial or without trial is
the carefully limited exception."). Here, detaining children in restrictive detention
without fair hearings is unconstitutional and robust procedural protections are required.

### 1. The private interests at stake are significant.

The first *Mathews* factor weighs conclusively in Plaintiffs' favor. As Defendants
have acknowledged, minors have liberty interests in freedom from detention and other
forms of physical restraint and to be placed in the least restrictive setting. (Defs. MSJ
at 19; *see also* Pls. MSJ at 37–38; *supra* at 11–19.) Defendants' attempts to minimize
the significance of these interests (Defs. MSJ at 19–25) fail.[17]

### 2. Additional procedural protections are needed to guard against erroneous restrictive placements.

Defendants improperly contend that the second *Mathews* factor strongly weighs
in their favor where ORR provides some modicum of procedure. (Defs. MSJ at 25–31.)
Defendants separately argue that additional procedures, such as right to counsel and
right to present evidence, are not properly before the Court. (*Id.* at 30–31.) The

---

[17] Defendants conflate the first procedural due process element—whether there is a
liberty interest—with the first prong of the *Mathews* test, which focuses on how
substantial that liberty interest is to a private individual. (*See* Defs. MSJ at 19–25.) As
discussed above, freedom from physical restraint constitutes the highest liberty interest
demanding robust procedural protections.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

20

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1  undisputed facts prove otherwise.

2           **a.     The notice ORR provides is inadequate and inconsistent**

3                   **with due process.**

4       Defendants' notice of placement ("NOP") does not constitute sufficient due

5  process under *Mathews*. (*See* Defs. MSJ at 26.) Notice provided *after* a deprivation of

6  liberty with no opportunity to respond is constitutionally inadequate. *In re Gault*, 387

7  U.S. at 33; *Vitek v. Jones*, 445 U.S. 480, 496 (1980); *Saravia*, 905 F.3d at 1144; *see*

8  *also* Pls. MSJ at 40–41.

9       Here, ORR does not require that children or their parents or other potential

10 custodians be provided any prior notice that they may be stepped up or the reasons for

11 step-up. (SUF ¶¶ 179, 181.)[18] Despite Defendants' efforts to suggest otherwise, it is

12 undisputed that the after-the-fact NOP does little to eliminate the risk of error where,

13 *inter alia*, children do not consistently know or understand the reasons for restrictive

14 placement, children are not consistently informed and sometimes do not understand the

15 contents of the notice, and children are not given adequate opportunity to respond to the

16 NOP. (*See* Pls. MSJ at 41 (citing SUF ¶¶ 189–190, 201–202, 204).)

17          **b.     ORR fails to provide Class Members the opportunity to**

18                  **be heard.**

19      Plaintiffs have no meaningful opportunity to be heard on the issues related to

20 step-up or step-down. While an unaccompanied minor may seek a *Flores* bond hearing

21 before an immigration judge (SDF ¶ 65), the decision does not bind ORR (SDF ¶ 66)

22 and has no determinative outcome on the child's level of placement in ORR custody

23 (SUF ¶ 205; Ex 1 [ORR Policy Guide] § 2.9 at 54 ("An immigration judge does not rule

24 on . . . the unaccompanied alien child's placement.")). As such, the *Flores* bond hearing

25 does little to reduce the risk of erroneous placement. Moreover, a *Flores* hearing fails

26 to reduce the risk of erroneous placement where it need not occur within a specific time

27 ─────────────────

28 [18] Class Representatives were stepped up without prior written notice to them or their
potential sponsors of the basis for restrictive placement. (SUF ¶¶ 180, 182.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

21

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1  frame and is not automatic. (*See* Ex. 8 [FSA] ¶ 24C.)

2  Due process requires automatic hearings to ensure ongoing confinement in

3  restrictive detention centers remains justified. (*See* Pls. MSJ at 46–47.) The undisputed

4  evidence confirms that erroneous deprivations of liberty occur without automatic

5  hearings and adequate notice. (*See* SUF ¶¶ 218, 219.) Furthermore, many Class

6  Members lack English proficiency or literacy in any language and have little or no

7  knowledge of the legal system (SUF ¶ 226) such that the onus should not be placed on

8  the child to request and prove that they should not be deprived of liberty. (Ex. 144

9  [Quinn Expert Rep.] at 2050; Ex. 32 [Quinn Dep. Tr.] at 91:1–4; Pls. MSJ at 46–47.)

10  Defendants' recently-created (in March 2020) internal administrative appeal

11  process by a Placement Review Panel ("PRP") fails to satisfy due process, and does

12  little to reduce the risk of erroneous placement. ORR has not published policies or

13  procedures regarding this process, which, until a few weeks ago was unknown to

14  Plaintiffs.[19] Regardless, this pilot program could be reversed at any time and should not

15  affect the Court's consideration of Plaintiffs' claims. "It is well settled that a defendant's

16  voluntary cessation of a challenged practice does not deprive a federal court of its power

17  to determine the legality of the practice" unless "subsequent events made it absolutely

18  clear that the allegedly wrongful behavior could not reasonably be expected to recur."

19  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)

20  (citations omitted); *see also Bell v. City of Boise*, 709 F.3d 890, 899–901 (9th Cir. 2013)

21
22  [19] Plaintiffs object to all of Defendants' facts regarding this new pilot program (*see* SDF

23  ¶¶ 67–74) because ORR had a duty to supplement discovery regarding the PRP pilot program and failed to do so. *See* Fed. R. Civ. P. 26(e); Ex. 147 [RFP Set 1] No. 48; Ex.

24  6 [RFA 2nd Set] Nos. 105, 114, 120. Plaintiffs also object to these facts because the PRP program is neither in ORR's Policy Guide nor the ORR Manual of Procedures

25  ("MAP"). Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or

26  secure facility. (*See* Ex. 1 [ORR Policy Guide] § 1 at 30; Ex. 2 [ORR MAP] § 1 at 102.)

27  Introduction of this evidence is thus improper and unduly prejudicial. *See Hagan v. Cal. Forensic Med. Grp.*, 2009 WL 689740 at *2–*3 (E.D. Cal. Mar. 5, 2009); *see also*

28  Plaintiffs' Evidentiary Objections, filed concurrently herewith at ¶¶ 1, 2.

Cooley LLP
Attorneys At Law
Los Angeles

22

Plaintiffs' Opposition To Motion
For Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

(holding that internal policy change did not satisfy Defendants' "heavy burden to make it 'absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur'") (quoting *Friends of the Earth*, 528 U.S. at 189); *Flores v. Johnson*, 212 F. Supp. 3d 864, 873 n.4 (C.D. Cal. 2015) (declining to consider recent policy changes because "Defendants could easily revert to the former challenged policy as abruptly as they adopted the new one").

Defendants' limited representations regarding this panel confirm it is insufficient to protect against the significant risk of erroneous deprivation for at least the following reasons:

1) It applies only to children placed in RTCs and secure facilities. (DUF ¶ 67.) Children placed in staff-secure, therapeutic staff-secure, or therapeutic group homes are not afforded the same opportunity;

2) There is no neutral factfinder (DUF ¶ 68);

3) There is no indication of how much time a child or his or her attorney would be given to review evidence prior to the panel hearing (DUF ¶ 69);

4) It is unclear whether children can present witnesses or evidence, or cross-examine witnesses (DUF ¶ 71); and

5) There is no timeframe by which a decision must be made (DUF ¶ 74) providing no assurance a child will avoid prolonged detention in a restrictive setting.

Accordingly, while the PRP pilot program serves as a tacit admission that current policy fails to provide Plaintiffs adequate due process, it does not go as far as the Constitution, TVPRA, and FSA require.

### c.   ORR's administrative review process prior to step-up is inadequate.

ORR's administrative review process prior to step-up is inadequate because (1) children are not a part of this process; (2) decision-makers are provided little to no guidance to aid the decision-making; (3) decision-makers rely on inaccurate

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

23

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

information and constantly changing policies; and (4) decision-makers are subjected to little to no oversight. Defendants' argument to the contrary—that their "extensive internal review procedures" before step-up eliminate or diminish the risk of error sufficiently to weigh the second *Mathews* factor in their favor (Defs. MSJ at 28)—is refuted by the uncontroverted facts.

Specifically, ORR does not use an evidentiary standard in making detention placement decisions (SUF ¶ 177);[20] does not use a standardized metric to assess danger to self or others (SUF ¶ 176); provides only limited guidance through written policies to case staff for initially placing and stepping up children, and no guidance whatsoever on how to weigh information relevant to placement decisions (SUF ¶ 178); does not ensure all FFS receive formal training on the differences between all of the different restrictive detention centers (SUF ¶ 175); does not ensure its frequently changing policies and procedures are consistent or published for public scrutiny (SUF ¶¶ 158–160); and allows FFS to make final placement decisions without interviewing the child or their potential sponsor (SUF ¶¶ 170–173), relying on inaccurate information (SUF ¶ 169), and disregarding recommendations from case staff (SUF ¶ 167) without being subject to any oversight (SUF ¶ 174). (*See* Pls. MSJ at 44–46.) This kind of unfettered discretion is inconsistent with our law-making traditions. *Gutknecht v. United States*, 396 U.S. 295, 306 (1970); *L.V.M.*, 318 F. Supp. 3d at 609, 611; *see also* Pls. MSJ at 46.

### d.    ORR's supposed requirement for a psychologist or psychiatrist recommendation prior to step-up to RTC is insufficient.

ORR's procedures for stepping up children to RTCs also fail to satisfy due

---

[20] In contrast, courts uniformly require a showing of "clear and convincing evidence" for involuntary civil commitment, *Addington v. Texas*, 441 U.S. at 432–33; *Hubbart v. Knapp*, 379 F.3d 773, 781 (9th Cir. 2004), and "proof beyond a reasonable doubt" if a juvenile is to be confined in juvenile detention. *In re Winship*, 397 U.S. 358, 368 (1970). The Ninth Circuit has also required the "clear and convincing evidence" standard of proof for prolonged immigration detention. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

24

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

process. The undisputed evidence shows that (1) ORR's policy requiring a psychologist or psychiatrist recommendation prior to step-up has not been consistently followed; (2) the receiving RTC does not conduct an adequate independent review of the placement recommendation prior to accepting the child; and (3) the RTC does not have exclusive authority to discharge the child once the child no longer meets the requirements for RTC placement.

*First*, ORR's policies for placement in an RTC are not consistently followed in practice. (SDF ¶ 46 (citing voluminous deposition testimony demonstrating that children are sometimes placed in RTCs in violation of ORR's policy requiring determination by a licensed psychologist or psychiatrist that a youth is a danger to self or others).) Further, ORR only implemented this recommendation policy several months after this Court issued an order demanding that ORR do so. *See Flores v. Sessions*, 2018 WL 10162328, at *21 (requiring a licensed psychologist or psychiatrist to determine that a child is a danger to self or others for placement at *Shiloh*) (emphasis added); *see also* Ex. 187 [RTC Placement Policy 1.4.6 as of April 2016] at 380; Ex. 132 [ORR Policy Record of Posting and Revision Dates] at 1974–83). Prior to this Court's order, ORR placed children in RTCs without any requirement for a psychologist or psychiatrist recommendation. (*See, e.g.*, ECF No. 144 [Azar Answer] ¶ 31; Ex. 162 [Murray Dep. Tr.] 152:3-15.) And because the order is limited to placement procedures at a single RTC (Shiloh), nothing prevents ORR from returning to its old policy in placing children at other in-network and out-of-network RTCs without the required recommendation. This concern is particularly pronounced where, as here, ORR frequently changes its policies without publishing a Notice of Proposed Rulemaking, thereby evading public comment and scrutiny. (SUF ¶¶ 158, 160.)

*Second*, even ORR's current policy falls considerably short of sufficient procedural due process. *See, e.g., Parham,* 442 U.S. at 614–17, 619 (finding the substantial procedural protections that the state agency provided, including three physicians independently agreeing with the admission recommendation after

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

25

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

independently examining and interviewing the child, were necessary where the state sought to confine a child to an inpatient treatment program or hospital). To start, ORR policy only requires that a licensed psychiatrist or psychologist recommend RTC placement. There is no requirement that this review be conducted by a doctor independent from ORR or that the review include an *independent examination and interview* of the child, his or her parents(s) or potential sponsor(s). (SDF ¶ 147; Ex. 1 [ORR Policy Guide] § 1.4.6 at 30; Ex. 2 [ORR MAP] at 100−01.) Indeed, the receiving care provider makes the decision whether to admit or deny placement based on the information reviewed. (Ex. 2 [ORR MAP] at 100−01.) That decision is not based on their own examination, assessment, or interviews of the child and/or the child's parent(s) or sponsor(s). (*Id.*) There is no check or balance system in place for initial admission and thus an increased risk of error. (*See* Ex. 175 [Cruise & Rasmussen Expert Rep.] at 296 ("Failure to consider community-based treatment options, particularly at lower levels of restrictive placement (e.g., shelters) indicates these ORR facilities failed to explore treatment options that could have prevented further mental health decline and avoid step up to more restrictive levels of care.").)

Moreover, unlike the statutory scheme in *Parham*, which placed an affirmative statutory duty on the superintendent to discharge a child who no longer needed inpatient care, ORR policy does not place the same affirmative duty on the program directors at ORR RTCs. (*See* Ex. 1 [ORR Policy Guide] § 1.4.7 at 30 (the policy does not say the RTC and/or the RTC program director must discharge any child who no longer meets this requirement).) ORR also does not always require a licensed psychiatrist or psychologist to determine that the child continues to be a danger to themselves or others to justify continued RTC placement. (SDF ¶ 47.) In practice, children have remained in RTCs even after a step-down recommendation from a licensed psychologist or psychiatrist. (SUF ¶ 219; Ex. 22 [Fields Dep. Tr.] at 148:8–23; Ex. 28 [Murray Dep. Tr.] 184:20-189:4; 192:18–193:4; Ex. 39 [Vergara Dep. Tr.] at 257:6–10; Ex. 168 [Vergara Dep. Tr.] at 129:15–130:17.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

26

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

Because the process for RTC initial placement falls considerably short of even the process provided in *Parham*—which generally involved parents seeking to commit their children rather than involuntary commitment by government actors, as is the case here,[21] —the *Mathews* risk of error factor weighs heavily in Plaintiffs' favor.

        **e.**     **OR's administrative periodic review after step-up is likewise insufficient.**

Periodic review can reduce the risk of the erroneous deprivation of liberty. (Pls. MSJ at 48–49 (citing *Parham*, 442 U.S. at 615, 617, 619).) Yet ORR fails to provide Plaintiffs with a meaningful opportunity to be heard regarding possible step-down. And in practice, ORR fails to comply with its own policy requiring placement review "at least every 30 days." (Ex. 1 [ORR Policy Guide] § 1.4.2; SDF ¶ 60; *see also* Ex. 163 [Ruiz Dep. Tr.] at 272:13-19 (Shiloh RTC staff unaware of 30-day review).)

Even when ORR does provide a 30-day review, the review is still constitutionally inadequate.[22] (*See* Pls. MSJ at 48 (citing *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92

---

[21] Children have reported that they did not want to be at the residential treatment center but had no choice in the matter. (SDF ¶ 151.)

[22] Defendants assert that "[b]efore a 30-day review, case managers meet with the UAC to discuss their behavior and needs, inform them of their upcoming review, and inform them of the bases for determining whether their continued placement remains warranted." (Defs. MSJ at 28; DUF ¶ 61.) Plaintiffs dispute this statement insofar as Defendants suggest that the "reasons for whether continued placement in a more restrictive setting is warranted" are provided to the child prior to the 30-day review. (SDF ¶ 61.) Defendant's own evidence proves otherwise. A child is provided reasons for continued placement *only after* the completion of the 30-day review process. (DX-02 [Biswas 30(b)(6) Dep. Tr.] 54:16-22 ("they're told *at the end of the process* what their, what the decision *has been made* regarding their placement, and they're provided a notice of the reasons for either step-down or their continued placement") (emphasis added); DX-26 [Heath Dep. Tr.] 216:25-217:11 (NOP is reviewed with the child when they are denied step-down.); DX-10 [Biswas Dec.] ¶ 48 ("Although the child does not participate in the 30-day review, they are provided with the outcome and the evidence that is relied on in determining that continued placement is warranted.").) Moreover, the lead case manager from Shenandoah secure admitted that a child is not consulted or involved in any way before a step-down decision is made. (Ex. 16 [Contreras Dep. Tr.] at 147:11–13.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

27

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

(9th Cir. 2011)).) The fact that an internal monitoring panel reviews the NOP for compliance does not eliminate the risks described above—where, like the periodic review, the monitoring panel review process is wholly one-sided. (*See* DX-10 [Biswas Dec.] ¶ 51.)

Periodic review can reduce the risk of erroneous deprivation, especially so where the child was initially referred for admission by a state agency rather than the child's parents. (Pls. MSJ at 48 (citing *Parham*, 442 U.S. at 615, 617, 619).) Indeed, recognizing the risk of prolonged or indefinite detention, a majority of states, statutes and court rules explicitly ensure that detention of a juvenile in a secure detention facility does not continue indefinitely without court review. (*Id.* (citing Ex. 54 [Heldman Expert Rep.] at 1353 & App'x B).)

### f.     The ORR Director reconsideration process is constitutionally inadequate.

The ORR Director reconsideration review process that is available to children in secure and RTC placements (Defs. MSJ at 28) fails to reduce the risk of erroneous deprivation and is constitutionally inadequate. This process does not provide an opportunity to challenge placement through an evidentiary hearing. (SUF ¶ 204.) A child is not afforded a meaningful post-deprivation opportunity to be heard where review is only available to children placed in RTCs and secure facilities, there is no opportunity to be heard by a neutral fact finder, there is no ability to inspect or rebut evidence, and there is no opportunity to present or cross-examine witnesses. (*See* Pls. MSJ at 43–44 (citing SUF ¶¶ 187, 199, 201–02, 204, 215; *Vitek*, 445 U.S. at 494–95; *Schall*, 467 U.S. at 277; *In re Gault*, 387 U.S. at 57).)

Given the deprivation of liberty, the substantial private interest at stake, the risk involved, the predictability that a child could be erroneously deprived of his or her interest, and the feasibility of providing a pre-deprivation notice and hearing, ***due process requires that a hearing occur pre-deprivation***—prior to initial placement or step-up to a restrictive setting. *See Zinermon v. Burch*, 494 U.S. 113, 127–28 (1990);

CooleY LLP
ATTORNEYS AT LAW
LOS ANGELES

28

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1  *Saravia*, 905 F.3d at 1143−45; *see also* Pls. MSJ at 42–43.[23]

2                    **g.        Defendants' remaining arguments are without merit.**

3          Each youth in ORR custody is entitled to due process prior to deprivation of their

4  liberty interest. Defendants argue that because "the probability of step-up to a more

5  restrictive facility for any individual UAC is exceedingly low, particularly when

6  compared to children in the domestic child-welfare systems," the risk of erroneous

7  deprivation is similarly low. (Defs. MSJ at 29.) But the relevant analysis is not limited

8  to the *number* of youths stepped up, because each child has an individual right to due

9  process. The relevant analysis is focused on the significant risk of erroneous deprivation

10  to each youth vulnerable to step up without due process. Here, it is undisputed that at

11  least in the November 2018 compliance review, the ***majority*** of children placed in

12  secure facilities were inappropriately placed (SDF ¶ 148), and that in January 2019,

13  over 70 percent of children in staff-secure and RTCs were placed out of compliance

14  with ORR's own policies (SDF ¶ 149). These erroneous placements and noncompliant

15  cases emphasize the need for more process and monitoring to prevent future erroneous

16  placements.

17          Defendants' argument that ORR makes some effort to prevent restrictive

18  placement because most children spent at least two months in care before step up (Defs.

19  MSJ at 29−30) is not supported by any reliable evidence. ***First***, the data Defendants rely

20  on is factually inaccurate. (*Id.*; SDF ¶ 104.) As noted by Plaintiffs' expert Dr. Ryo, the

21  ***majority*** of step-ups occur during the first two months of care. (Ex 186 [Dr. Ryo Decl.]

22  ¶ 8(g) (refuting Defendants' erroneous conclusion that 86% of custody periods

23
24  [23] Defendants argue that pre-deprivation process is not appropriate because "any delay
    in moving them . . . would put the children themselves at risk, other minors, and staff."
25  (Defs. MSJ at 32; DUF ¶¶ 77−78.) Such assertions are speculative at best. (SDF
    ¶¶ 77−78.) Additionally, to the extent some cases may warrant immediate transfer and
26  only post-deprivation process, those special cases should not prevent pre-deprivation
    process for cases where a pre-deprivation hearing is possible. Accordingly, where a
27  hearing prior to step-up is feasible, due process requires a pre-deprivation hearing. *See*
28  *Zinermon*, 494 U.S. at 127–28, 132.

including step-ups occurred after two months in custody, and showing the correct number is just 43.3%, less than half.) Regardless, the length of time before step-up does not necessarily indicate that the shelter attempted to accommodate a child's needs. It can also indicate that a child began to exhibit mental health and behavioral concerns only *after* a substantial period of time in custody because of increased distress resulting from their prolonged detention. (*See, e.g.*, SUF ¶¶ 1–4, 22.)

Further, Plaintiff Jaime D.'s case and facts leading up to his step-up and subsequent step-down from secure placement illustrate the very real risk of error. In fact, Defendants admit that Jaime D. was erroneously stepped up. (SUF ¶ 218, ECF No. 144 [Azar Answer] ¶ 75 (Defendants admitting that two weeks after transfer to Yolo, "staff were all in agreement that [Jaime] isn't appropriately placed in a secure setting.").) Had Jaime D. been provided a pre-deprivation hearing, with an opportunity to inspect, rebut adverse evidence and present evidence of his own with the assistance of counsel, he may have never been stepped up in the first place and he would not have spent nearly five weeks in a secure jail-like facility when he was just 13-years-old. (*See* DUF ¶¶ 119, 122; Ex. 54 [Heldman Expert Rep.] at 1350 (Plaintiffs' expert, Professor Jessica Heldman finding that "ORR's policies and procedures for transferring and keeping children in restrictive settings are far more informal and prone to error when compared to the procedures provided in state and federal juvenile justice and child welfare statutes.").)

Lastly, Defendants confusingly argue that Plaintiffs' available relief is limited based on the causes of action identified in the First Amended Complaint and the class definition for "step-up." (Defs. MSJ at 30–31.) Both arguments fail.

Defendants cite no relevant legal authority for their nonsensical position that Plaintiffs were required to set forth in painstaking detail the particular procedures demanded by due process. As this Court has already found in denying Defendants' motion to dismiss, however, the First Amended Complaint satisfies federal pleading standards. (ECF No. 141 [Class Cert. Order] at 27.) This includes sufficient allegations

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

30

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

concerning Defendants' failure to provide Class Members a "meaningful opportunity to be heard." (ECF No. 81 [FAC] ¶¶ 124, 126, 180, 183.) Defendants cite no authority supporting the suggestion that Plaintiffs were required to set forth their desired remedy in more detail, particularly before the engaging in discovery and further fact-finding. Indeed, the only case cited by Defendants merely states that "causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). But Defendants identify no "causes of action" alleged in Plaintiffs' original complaint which were "not alleged in an amended complaint" and Plaintiffs clearly allege the procedural remedies they seek.[24] Defendants' argument should be rejected.

Defendants also argue that Plaintiffs' relief is limited to any procedural protections explicitly set forth in the class definition. (Defs. MSJ at 31.) Again, Defendants cite no authority in support of their position. Generally, "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also* Fed. R. Civ. P. 54(c) (with the exception of default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). The idea that Plaintiffs were required to articulate the scope of injunctive relief sought prior

---

[24] Paragraphs 122 and 124 of the FAC are identical to paragraphs 96 and 98 of the original Complaint. (*Compare* ECF No. 81 [FAC] ¶¶ 122 and 124, *with* ECF No. 1 [Original Complaint] ¶¶ 96 and 98.) FAC Paragraph 122 lays out more broadly the due process requirement to provide class members a "meaningful notice and an opportunity to be heard before it placed [UACs] in RTCs, medium-secure, or secure facilities and an ongoing review with commensurate protections every thirty days." And, Paragraph 124 lays out what constitutional requirements would provide a "meaningful opportunity to be heard," which Plaintiffs alleged ORR fails to provide, including inter alia, an opportunity to present evidence and witnesses, opportunity to review and rebut adverse evidence and witnesses, and right to counsel. (FAC ¶ 124.) Paragraph 182, pertaining to the restrictive placement denial of due process claim, then specifically "incorporated by reference Paragraphs 1–178 of this Complaint as though fully set forth here." (*Id.* ¶ 182.) As such, claims for specific additional procedures, such as the ones listed in Paragraph 124 of the Amended Complaint are properly before the Court.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

31

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

to discovery, much less establishing the extent of the due process violation, is completely unsupported. Only in cases where "nationwide injunctive relief is not necessary . . . to offer complete redress" is it appropriate to limit the scope of relief "by the class definition." *See Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 878 (S.D. Cal. 2019). This Court already certified the three nationwide class actions at issue in this motion, and Defendants offer no argument as to why nationwide injunctive relief is unnecessary here.

For all the reasons stated above, the Court should find that the second *Mathews* factor weighs in Plaintiffs' favor.

> ### 3. The government has no interest in depriving youth of due process.

Plaintiffs' stake in preserving their liberty interests far outweighs any alleged inconvenience in providing further procedural protections. (Defs. MSJ at 31–32.) ***First,*** Defendants argue they have significant interests in the welfare of the children in their care—which only underscores why ORR should provide procedures that protect the vulnerable children in their custody.

***Second***, Defendants argue that ORR already provides procedural process for children who are stepped up, but as discussed above, ORR's procedures are anemic and out of step with juvenile justice practices. ORR states that as of March 2020, they piloted a Placement Review Panel—presumably to offer procedural protections—yet no advocates or counsel are even aware that their clients have this option. (SDF ¶¶ 67– 74; Ex. 185 [Enriquez Decl.] at ¶ 8.) Moreover, the very creation of this new panel undermines Defendants' arguments that their current procedures are adequate and that "any appreciable interest in administrative hearings would massively burden the agency." (Defs. MSJ at 32.)[25] The administrative logistics and initial investment have

---

[25] Defendants' attempted analogy to the Department of Homeland Security's funding for attorneys (Defs. MSJ at 32) is insincere. The Transactional Records Access Clearinghouse (TRAC) at Syracuse University found that in March and April of 2020

32

already been undertaken. Thus, procedural process is not cost prohibitive. Moreover, by Defendants' own admission, this new panel has already resulted in two children being stepped down who otherwise would not have been—thus confirming that additional process is valuable in reducing erroneous placements. (*See* DX-10 [Biswas Dec.] ¶ 59–60.)

*Third*, the government's failure to provide notice is even more egregious because it faces minimal burdens in providing adequate notice. *See Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004) (cost of written notice is "minimal"); *Walters v. Reno*, 145 F.3d 1032, 1044 (9th Cir. 1998) ("Providing constitutionally adequate notice requires only minor changes in the content of [INS] forms themselves and equally slight adaptations in the INS's method of presenting the forms."); *see* Pls. MSJ at 42.

*Fourth*, Defendants miss the point when they tout the "considerable evidence" that justifies step-up. The critical flaw is that the evidence the government references is never confronted by the child or their advocate, never put before a neutral arbiter for review, and unilaterally reviewed by Defendants without ever hearing the child's account. This is unacceptable and contrary to due process where a child's liberty depends on the veracity of the evidence at issue.

*Finally*, providing hearings would be only a minimal burden to the government. (*See* Pls. MSJ at 44.) Thus, Defendants fail to show that the third *Mathews* factor weighs in their favor and the Court should deny Defendants' Motion.

---

alone, the Executive Office of Immigration Review recorded an average of 40,000 *new* cases each month. *See More Immigrants in Limbo as Government Shutdown Due to COVID-19 Leads to Widespread Immigration Court Hearing Cancellations* (June 4, 2020), *available at* https://trac.syr.edu/immigration/reports/612/. As Plaintiffs pointed out in their Motion, during the same period—March 2020—there were a total of 91 youth in ORR restrictive placements. (*See* Pls. MSJ at 51.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

33

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

## IV. ORR'S POLICIES AND PROCEDURES WITH RESPECT TO CUSTODIAL VETTING FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS AND VIOLATE THE FIRST AMENDMENT

As shown in Plaintiffs' Motion and below, Plaintiffs have liberty interests guaranteed by the Constitution, the TVPRA, and the FSA (i) to be free from detention, (ii) to familial association, (iii) to be placed in the least restrictive setting consistent with their best interests, and (iv) to release to qualified custodians without unnecessary delay. (*See infra* at 35–40; *see also* Pls. MSJ at 20–24.) Yet, ORR's policies violate even the most basic tenets of due process by failing to provide children or their custodians with notice or a meaningful opportunity to be heard regarding release decisions. (*See infra* at 40–46; *see also* Pls. MSJ at 24–26.)[26]

Accordingly, Defendants' contention that ORR's current policies and procedures afford children all the process they are due (Defs. MSJ at 43–49) fails, and Defendants' Motion should be denied.

### A. Plaintiffs Have Protected Liberty Interests Vested By The TVPRA, The FSA, And The Constitution.

This Court has already recognized that Plaintiffs have constitutional, statutory, and contractual due process rights to be released promptly to qualified custodians (*see* ECF No. 141 [Class Cert. Order] at 13–15), and Defendants offer no reason for the Court to revisit its previous ruling.

#### 1. Plaintiffs have protected liberty interests stemming from the TVPRA.

Because the language of the TVPRA mandates that "an unaccompanied alien child in the custody of [ORR] ***shall*** be promptly placed in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A) (emphasis added), this

---

[26] As discussed in Plaintiffs' Motion, because minimum due process requires at least a hearing, ORR must adhere to the hearing procedures prescribed by the Administrative Procedure Act.  (Pls. MSJ at 26.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

34

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

Court has already recognized that the TVPRA creates a substantive interest to prompt release protected by the Due Process Clause. (*See* ECF No. 141 [Class Cert. Order] at 14 (noting that "[t]he provisions of the TVPRA upon which Plaintiffs rely use mandatory language to prescribe the agency's duties"); *Me. Cmty. Health Options*, 140 S. Ct. at 1321 (when Congress "distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty").)[27]

Defendants attempt to distance themselves from this Court's prior ruling by manufacturing a distinction between "release" decisions and "placement" decisions and arguing that the statutory mandate to "be promptly placed in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), "concerns the level of *restrictiveness* of the facility in which the minor is placed, and not when they are released (Defs. MSJ at 38–39 (emphasis in original)). This distinction ignores the fact that "placement" is used—in the TVPRA itself and in case law interpreting the statute— to refer to placement both with custodians and in licensed facilities. *See* 8 U.S.C. § 1232(c)(3)(A) (a child "may not be ***placed*** with a person or entity unless the [Secretary] makes a determination that the ***proposed custodian*** is capable of [caring for the child]") (emphasis added); *Flores v. Sessions*, 862 F.3d 863, 871 (9th Cir. 2017) (the TVPRA only authorizes ORR to continue to detain a child "in a specialized juvenile program or facility" if a suitable family member or other guardian is not available); *Flores v. Johnson*, 212 F. Supp. 3d at 885 (consistent with the FSA, the TVPRA requires that "CBP find '[s]afe and secure placements' for children 'in the least restrictive setting that is in the best interests of the child'—typically, '***a suitable family member***.'") (quotation omitted) (emphasis added). Even Defendants concede that the TVPRA

---

[27] Defendants also try to misdirect the Court by focusing on a section of the TVPRA not challenged by Plaintiffs. (Defs. MSJ at 39 ("[The TVPRA] provides that 'an unaccompanied alien child may not be placed with a person or entity unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being'").) Plaintiffs do not challenge that ORR must make this determination.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

35

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

expressly contemplates "placement" with a "suitable family member." (Defs. MSJ at 38–39.) Defendants' reliance on creative wordsmithing to disavow an obligation "to expeditiously release [children] to potential sponsors" (*id.* at 39) is directly contradicted by the plain language of the TVPRA and should be rejected.

Nor does the absence of a "maximum time frame" for when release decisions must be made (*id.*) negate Plaintiffs' liberty interest in prompt placement. Congress's decision to legislate that children "be promptly placed" cannot be ignored. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal rule of statutory construction [that] no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks and citations omitted); *cf. Flores v. Sessions*, 2018 WL 10162328, at *17 (enforcing provision of FSA requiring ORR to release children "'without unnecessary delay[]'").

Defendants' interpretation of the TVPRA would grant ORR unfettered discretion to detain children for indefinite periods of time in direct contradiction to the statute. *See e.g.*, *L.V.M.*, 318 F. Supp. 3d at 611 (disapproving of ORR policies that result in "unfettered discretion . . . to rule over the fate of vulnerable children"). The TVPRA's mandate is clear: children have a protected right to "be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Defendants' arguments do not alter that conclusion.

### 2. Plaintiffs have protected liberty interests stemming from the FSA.

This Court has also recognized that the FSA creates protected liberty interests in the right to expeditious release from detention and the right to family reunification. (*See* ECF No. 141 at 14–15 (finding FSA protections "are secured by a consent decree and constitute civil rights because they are akin to . . . constitutional and statutory rights").) Like the TVPRA, the FSA contains "explicitly mandatory language" that limits the discretion of ORR to detain children unless specified criteria are met. Paragraph 14, for example, mandates that, where detention is not necessary to secure a minor's timely

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

36

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

appearance or ensure safety of the minor or others, "*[ORR] <u>shall</u> release a minor from its custody without unnecessary delay*, in the following order of preference, to: A. a parent; B. a legal guardian; C. an adult relative (brother, sister, aunt, uncle, or grandparent) . . . E. a licensed program willing to accept legal custody; F. an adult individual or entity seeking custody . . . ." (Ex. 8 [FSA] ¶ 14 (emphasis added).)

Despite Defendants' confusing assertion to the contrary (Defs. MSJ at 40), the phrase "without unnecessary delay" does not grant ORR unchecked discretion to detain children for any reason; rather, it commands ORR to expeditiously work toward placing children with available custodians, thereby necessarily cabining ORR's authority to prolong the detention of children. (Ex. 8 [FSA] ¶ 14.) Defendants cite no authority to contradict this plain language; nor does the phrase "without unnecessary delay[]" confer free reign on Defendants to do as they see fit. *See Flores v. Sessions*, 2018 WL 10162328, at *17.

### 3. Plaintiffs have protected liberty interests stemming from the Constitution.

Defendants concede that Plaintiffs have constitutionally protected liberty interests "in being free from government custody" and "in family unity" yet argue that such interests are limited because (i) Plaintiffs are undocumented minors, and (ii) the relationships between Plaintiffs and their proposed sponsors "vary substantially." (Defs. MSJ at 40–41.) Both arguments fail.

*First*, this Court has already rejected Defendants' argument that Plaintiffs are not entitled to procedural protections based on their immigration status as "entirely without merit." (*See* ECF No. 141 [Class Cert. Order] at 13, 15; *see* Defs. MSJ at 40.) Neither *Demore v. Kim*, 538 U.S. 510, 521–22 (2003), nor *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020), provide a basis to revisit that holding.

*Demore* declined to invalidate a statute requiring the detention of certain aliens convicted of aggravated felonies for the duration of their removal hearings. 538 U.S. at 531. Children in ORR custody bear no resemblance to the small subset of individuals

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

37

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

in *Demore* whom Congress deemed categorical flight risks and dangers to the public. *Id.* at 527–28. Indeed, Congress expressed the opposite intent with respect to children in ORR custody—that they "***shall*** be promptly placed" in the least restrictive setting consistent with their best interest. 8 U.S.C. § 1232(c)(2)(A) (emphasis added).

And *Thuraissigiam* stands for the unremarkable proposition that Congress has broad "power to set the procedures to be followed in determining whether an alien should be admitted." 140 S. Ct. at 1982. Numerous courts have held that *Thuraissigiam* does not address due process rights outside of that context. *See, e.g.*, *D.A.M. v. Barr*, No. 20-cv-1321 (CRC), 2020 WL 4218003, at *10 (D.D.C. July 23, 2020) (finding that *Thuraissigiam* did not foreclose due process claims related to detention and conditions of confinement); *United States v. Guzman Hernandez*, No. 4:20-cr-06001-SMG, 2020 WL 5585077, *3 (E.D. Wash. Sept. 17, 2020) (rejecting argument that *Thuraissigiam* foreclosed due process claims brought by non-citizens). Thus, "decisions relate[d] to the admission or exclusion of aliens [] do not establish that the children in ORR's custody have no entitlement to additional procedures that limit the agency's authority to detain them, place them in certain restrictive settings, administer psychotropic medication to them against their will, or block their access to counsel." (ECF No. 141 [Class Cert. Order] at 15.)

***Second***, while Defendants concede that Plaintiffs have a liberty interest in "family unity" with "close relatives, a parent, or a legal guardian," Defendants ask the Court to discount that interest simply because some Class Members may have proposed custodians who are "distant relatives or unrelated adult individuals." (Defs. MSJ at 41 (citing *Reno*, 507 U.S. at 303).) As a threshold matter, Defendants offer no authority for their suggestion that an entire class of children should have their liberty interests discounted based on the fact that ORR presumes that some children do not have strong familial connections with their proposed sponsors.[28] Moreover, it is well-established

---

[28] ORR's own Policy Guide contemplates release to sponsors with varying degrees of

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

38

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

that a child's right to familial association extends beyond their nuclear family. *See Moore v. City of E. Cleveland*, 431 U.S. 494, 504 (1977); *J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559, 585 (E.D. Va. 2018); *Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1006 (N.D. Ill. 1989); *see also* Pls. MSJ at 22. Importantly, unlike the children in *Reno*, many Class Members have parents, close relatives and sponsors willing to receive them. *See* Ex. 181 [Dr. Ryo Expert Rep.] at 340.) Defendants' argument also ignores that Plaintiffs have protected liberty interests stemming from the TVPRA and FSA, which more than make up for any supposedly "weaker" constitutional interest in familial association for the relatively few Class Members seeking release to an adult other than a parent, legal guardian, or close family relative. (*See supra* at 35–38.)

## B.    ORR's Policies And Procedures Deny Due Process.

As addressed in Plaintiffs' Motion (Pls. MSJ at 24–26), ORR's policies offend even the most basic notions of minimum due process because they fail to provide children notice and a meaningful opportunity to be heard. *See Hamdi*, 542 U.S. at 533; *Gallinot*, 657 F.2d at 1024; *see also Bowman Transp.*, 419 U.S. at 288 n. 4 ("[T]he Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation."); *Goldberg*, 397 U.S. at 269 ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). On this basis alone, Defendants' Motion must be denied.

Plaintiffs are also entitled to procedural safeguards to protect the important liberty interests at stake under *Mathews*. (Pls. MSJ at 27–37.) Defendants' arguments to the contrary mischaracterize Plaintiffs' interests and inject unnecessary (and disputed) facts into the analysis.

---

relationship. (Ex. 1 [ORR Policy Guide] § 2.2.1 (defining categories of sponsors based on familial relationships).) Children without any proposed sponsors are, by definition, no longer members of the "unfit custodian class" because they do not have custodians requesting their release. (*See* ECF No. 141 [Class Cert. Order] at 27.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

39

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

### 1. The private interests at stake are substantial.

The first *Mathews* factor weighs conclusively in Plaintiffs' favor. [29] A minor's interests in freedom from detention, familial association, and to placement in the least restrictive setting are well-established and substantial. (Pls. MSJ at 28–29.)[30]

### 2. The risk of erroneous deprivation without adequate procedural safeguards is high.

The prejudice and risk of erroneous deprivation of Plaintiffs' constitutionally protected liberty interests without adequate procedural safeguards is high. Given the substantial interests at play and the inherent harms of detention, children are entitled to robust procedural protections. While Defendants contend that "ORR provides robust processes that safeguard the welfare of children in its care" (Defs. MSJ at 43), it is undisputed that ORR's policies and procedures fail to provide, among other procedural protections, any of the following: (i) adequate notice and an opportunity to be heard;

---

[29] Defendants confusingly weave principles of substantive due process into their arguments opposing Plaintiffs' procedural due process claims with respect to both the step-up and custodial vetting classes to argue Plaintiffs lack substantive rights to "freedom from unnecessary physical restraint" and to "family unity." (*See* Defs. MSJ at 25, 41.) This construction conflates the standards for two separate legal theories with no effort to distinguish between the two. Further, all of Defendants' cited authority arises in the context of immigration and removal proceedings. (Defs. MSJ at 42–43). These cases are wholly inapt and offer no guidance as to whether children in ORR custody have substantive rights to be free from detention or to family unity. Defendants' cursory treatment of Plaintiffs' substantive due process claims does nothing to establish they are entitled to summary judgment. To the contrary, courts recognize that substantive due process rights to freedom from physical restraint and familial association are well-established. *See Zadvydas*, 533 U.S. at 682 (freedom from physical restraint); *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (family unity); *see also* ECF No. 141 [Class Cert Order] at 15.

[30] Defendants conflate the first procedural due process element—whether there is a liberty interest—with the first prong of the *Mathews* test, which focuses on how substantial that liberty interest is to a private individual. (*See* Defs. MSJ at 38–43.) As discussed above, *see supra* at 35–40, freedom from physical restraint and to family unity constitutes the highest liberty interest demanding robust procedural protections.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

40

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

(ii) clear standards for determining custodial fitness; (iii) timelines to ensure prompt release; (iv) right to counsel; and (v) interpreters. (*See* Pls. MSJ at 29–35.)

Nor do Defendants dispute the potential consequences of prolonged detention in ORR custody. The parties agree that children in ORR custody experience separation from their parents, siblings, grandparents, and other family members, which is inimical to their well-being. (SUF ¶¶ 8–9.) The undisputed record evidence shows that Class Members have been physically and sexually abused in ORR custody. (SUF ¶¶ 6–7.) The inherent harm caused by prolonged detention means that the second *Matthews* factor weighs heavily in favor of Plaintiffs. Defendants' arguments are unpersuasive.

*First*, Defendants claim that their current processes "safeguard against erroneous and arbitrary decisionmaking" because "ORR's release process is a collaborative endeavor"—*i.e.*, multiple ORR employees and/or contractors "work together in making release decisions." (Defs. MSJ at 43.) Defendants' argument not only rests on sharply disputed facts, but it ignores that children and their proposed custodians are largely excluded from this decision-making process. (*See* SDF ¶¶ 20–27, 29, 70–80).) Perhaps the clearest example of this is the fact that the FFS—the undisputed final authority for nearly all release decisions—does not even talk to children or their proposed sponsors before deciding to grant or deny release. (SUF ¶¶ 168, 170.) This one-sided "collaboration" is plainly insufficient to protect Class Members' liberty interests. *See Beltran*, 222 F. Supp. 3d at 486 ("[D]ue process does not concern itself only with the degree to which one can trust the government to reach the right result on its own initiative; rather, due process is measure by the affected individual's opportunity to protect his or her own interests.").

*Second*, Defendants' contention that children and their proposed sponsors "are able to present their side of the story and to share any information they believe would place their case for sponsorship in the best possible light" (Defs. MSJ at 44) is controverted by the facts. In practice, case managers have unilateral authority to deny potential sponsors the opportunity to "submit any additional information for

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

41

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

consideration." (SDF ¶¶ 28, 30, 33.) Moreover, the mere opportunity to "share" information is insufficient and does not constitute an "opportunity to be heard" consistent with due process. Indeed, it is undisputed that ORR is not required to present adverse evidence to sponsors and children, nor does it give them an opportunity to rebut that evidence. (SUF ¶¶ 85; *see* SDF ¶¶ 17, 18, 22, 24.) For example, neither Plaintiff Lucas R. nor his sister were informed of the reasons for ORR's rejection of his sister's application, making it impossible for either to rebut the government's evidence or "share" the information that would help their case. (SUF ¶¶ 86–87.)

*Third*, that "ORR provides a process for appealing denial decisions" involving parents and legal guardians (Defs. MSJ at 44–45) is hardly sufficient to counterbalance Class Members' and proposed custodians' limited opportunities to participate in the decision-making process, particularly for proposed custodians who are ***not*** parents or legal guardians. Defendants fail to offer any rationale as to why a limited administrative appeal process offered to a single category of sponsor should be sufficient to make up for other, numerous due process failures.  (*See* Pls. MSJ at 28–38.)

*Finally*, Defendants' contention that "release delays" are attributable to a child's "lack of a sponsor or unresponsiveness from potential sponsors" (Defs. MSJ at 45–46) is not only self-serving, but sharply disputed by the evidence. (*See* SDF ¶ 34.) The record shows that children's release is unnecessarily delayed for a whole host of reasons entirely within Defendants' control, including *inter alia*: (i) ORR's policy of requiring all household members and adults identified in a sponsor care plan to submit fingerprints in every case involving a home study; (ii) case managers unnecessarily delaying home study requests or, worse, release recommendations altogether; (iii) ORR requiring that psychological evaluations be completed prior to release, which take at least 30 days to complete; and (iv) ORR refusing to release children to available and fit sponsors until the children have shown "good behavior" for some amount of time. (*See id.* (citing evidence); *see also* Pls. MSJ at 28–37.) Moreover, Defendants' focus on

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

42

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

*overall* statistics regarding length of stay (Defs. MSJ at 45) is misplaced.[31] The purpose of providing notice and an opportunity to be heard is to ensure that ORR is not needlessly detaining a child in a ***particular*** case. *See Flores v.* Sessions, 2018 WL 10162328, at *17 n.26 (finding "statistics relating to UACs' 'length of care' in ORR custody" "unhelpful because it is unclear how ORR's policies and practices have affected *each* UAC's length of stay") (emphasis added).

In sum, the value of additional procedural protections cannot be overstated. Under ORR's current custodial vetting process, a child's case is reviewed and decided with no opportunity for the child, proposed custodian, or the child's counsel to be heard or rebut the evidence the government relies upon in making its decision. (SUF ¶¶ 70–80, 95, 234–246.) Defendants point to no undisputed evidence supporting their arguments that additional procedural protections would be of limited value. (*See* Defs. MSJ at 46 (citing reports of two of Defendants' expert witnesses, Dr. Ryan and Dr. Earner).) Rather, there is a decisive difference of opinion between the parties' expert witnesses as to the adequacy of ORR's current processes. (*See, e.g.*, SDF ¶ 79.) And it can hardly be disputed that ***any*** unnecessary delay in releasing children inflicts grievous injury. (SUF ¶¶ 1–9.) Indeed, longer detentions often lead to increased levels of frustration and further trauma as children continue to be separated from family members—often culminating in behavior indicative of their deteriorating emotional state. As behavior deteriorates, a child is more likely to be "stepped-up." (*See supra* at

---

[31] Defendants cite what appears to be an 8-year-old non-governmental website to claim it can take "up to 6 months" to place a foster child with a relative in California. (Defs. MSJ at 45 (citing outdated website).) This seemingly outdated information refers to "licensing/certification/approval" which is "separate from" "placement." *See* California Department of Social Services, Kinship Care, *available at* https://www.cdss.ca.gov/inforesources/foster-care/kinship-care (last visited Nov. 6, 2020.) In any event, unlike ORR's policies, California law requires a social worker to "identify and locate all grandparents, parents of a sibling of the child . . . adult siblings, and other adult relatives of the child, including any other adult relatives suggested by the parents" within "30 days" after a child is removed from his or her parents. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

43

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

11–34.) And as Defendants' own data demonstrates, children who are stepped up spend weeks or months longer in detention than those who are not—creating a vicious cycle of harm leading to even further delay in release. (SUF ¶ 115.)[32]

### 3. Plaintiffs' liberty interests far outweigh the government's interest.

Plaintiffs' and Defendants' shared interest in ORR making the right release decisions does not in any way diminish Plaintiffs' interest in meaningfully participating in decisions impacting their lives and liberty. *See Santosky v. Kramer*, 455 U.S. 745, 765–67 (1982). Defendants argue their purported interest is that "an unaccompanied alien child may not be placed with a person or entity unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." (Defs. MSJ at 48.) But Plaintiffs' request for basic due process protections like notice and an opportunity to be heard foster their physical and mental well-being. (*See* Pls. MSJ at 19–38.) Defendants cite no authority to justify why the government's claimed interest outweighs Plaintiffs' indisputably substantial interests in freedom from detention and to familial association. That Defendants have an interest in complying with their statutory obligations to "determin[e] that the proposed custodian is capable of providing for the child's physical and mental well-being" is hardly disputed. *See* 8 U.S.C. § 1232(c)(3)(A). It is simply not inconsistent with the procedural protections sought by Plaintiffs. Defendants' argument also ignores the significant harm children suffer in ORR custody, both psychologically and physically (SUF ¶¶ 1–9), which must be considered when weighing the value of additional procedural protections as part of the release decisions

---

[32] As with the step-up claim, Defendants make two additional, nonsensical arguments in an attempt to limit Plaintiffs' available relief to the causes of action alleged in the First Amended Complaint and the class definition for the unfit custodian class. (Defs. MSJ at 46–48 (citing *King*, 814 F.2d at 567 and *Al Otro Lado*, 423 F. Supp. 3d at 878).) These arguments fail here for the same reasons they fail with respect to step-up. (*See supra* at 32–33.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

44

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1    themselves. (*See supra* at 41–44.)

2        Nor are Plaintiffs' substantial liberty interests outweighed by Defendants' alleged

3    interest in "safe release." (*See* Defs. MSJ at 48.) Indeed, the procedures outlined in

4    Plaintiffs' Motion are intended to ensure not only that a decision is made promptly but

5    also that is made safely. (*See* Pls. MSJ at 29–37.) And Defendants' suggestion that the

6    government's interest in safe release is "heightened" because "ORR does not maintain

7    custody of the child after release" (Defs. MSJ at 48) ignores that child protection

8    agencies are available to protect children following release from ORR custody, just as

9    they do in the child welfare context. (*See* SUF ¶¶ 98–99.)

10       Finally, Defendants' argument that "the financial burden on ORR in staffing

11   more hearings would be substantial" (Defs. MSJ at 48) is not supported by any of the

12   evidence cited by Defendants and, in fact, is directly refuted by Defendants' sworn

13   admissions in this case that the principal reason ORR fails to provide adequate

14   procedural protections is ***not*** due to any greater expense or administrative

15   inconvenience. (SDF ¶ 35.) Plaintiffs' interests in being free from detention and to

16   familial association far outweigh the government's interests—fiscal, administrative or

17   otherwise. *See Beltran*, 222 F. Supp. 3d at 488–89 (And while "true that the government

18   has an interest in protecting the welfare of children, the State registers no gain towards

19   that end when it separates children from the custody of fit parents. . . This does not

20   present a countervailing interest in not providing additional or substitute procedural

21   safeguards"); *see also Rivera v. Cnty. of Los Angeles*, 2011 WL 2650006, at *13 (C.D.

22   Cal. July 5, 2011) (slight administrative burden on agency does not outweigh plaintiff's

23   protected liberty interest).

24       Accordingly, because Defendants failed to identify any case law or

25   uncontroverted facts to support a conclusion that Plaintiffs' substantial interests

26   guaranteed by the Constitution, the TVPRA, and the FSA are outweighed by the

27   government's purported interest in denying Plaintiffs basic due process protections, the

28   Court should deny Defendants' Motion on Plaintiffs' first claim for relief.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

45

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

### C.  Defendants Fail To Show They Are Entitled To Summary Judgment On Plaintiffs' First Amendment Claim.

Defendants similarly fail to show they are entitled to summary judgment that ORR's custodial vetting policies do not violate Plaintiffs' First Amendment rights as a matter of law. (Defs. MSJ at 58.)

Plaintiffs have a long-recognized First Amendment right to familial association. *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). "[T]he First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Id.* (quoting *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987)). And the cases cited by Defendants—none of which rely on a protected familial relationship—are not to the contrary. (*See* Defs. MSJ at 50; *Dawson v. Del.*, 503 U.S. 159, 163, 165–66 (1992) (Supreme Court reversed a capital sentencing because the jury considered testimony about defendant's membership in a white supremacist prison gang that was irrelevant in light of the parties' stipulations); *IDK, Inc. v. Clark Cty.*, 836 F.2d 1185, 1193 (9th Cir. 1988) (Ninth Circuit rejected freedom of association claims made by an escort service which claimed that "dating" was protected conduct under the First Amendment); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000) (right to expressive association protected by the First Amendment).) Consequently, Defendants fail to establish that they are entitled to summary judgment on Plaintiffs' First Amendment claim.

## V.  ORR'S PRACTICES INDEPENDENTLY VIOLATE THE TVPRA AND THE APA

Defendants fail to point to any undisputed facts or case law demonstrating they are entitled to summary judgment on Plaintiffs' TVPRA and APA claims (Defs. MSJ at 33–34 (step-up), 49–50 (custodial vetting).)

***First***, this Court has already determined that Plaintiffs "may raise their TVPRA

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

46

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

claims under the APA." (ECF No. 141 [Class Cert. Order] at 12.) Defendants mischaracterize Plaintiffs' TVPRA claims as a recasting of the procedural due process claims. (Defs. MSJ at 33–34, 49–50.) But, as alleged in Plaintiffs' FAC and supported by the undisputed facts in this case, ORR's custodial vetting and step-up practices independently violate the TVPRA and Defendants point to no evidence to the contrary. (*See* ECF No. 181 [FAC] ¶ 119 ("The placement of a child in a secure facility shall be reviewed, at a minimum, on a monthly basis"), ¶ 104 (TVPRA requires children in ORR custody to be "promptly" placed in the least restrictive setting consistent with the best interests of the child); SDF ¶ 60 (citing evidence that ORR sometimes fails to review secure placements on a monthly basis); SUF ¶¶ 25 (Plaintiff Gabriela N. detained for 633 days), 26 (Plaintiff Lucas R detained for 208 days), 143 (ORR detained one Class Member for over four years.).) Accordingly, Defendants failed to carry their burden to establish they are entitled to summary judgment on Plaintiffs' TVPRA claims.

**Second**, as discussed in Plaintiffs' Motion, Defendants' policies violate the APA to the extent they fail to comply with the hearing requirements set forth therein. (*See* Pls. MSJ at 56–58.) The APA regulates federal administrative proceedings in cases where, as here, the Constitution requires a hearing. (*See* Pls. MSJ at 26–27; *see also* 5 U.S.C. §§ 554(a), 556, 557 (detailing the procedures required by the APA when a hearing is required under the Constitution); *Saravia,* 905 F.3d at 1144 (citations omitted); *see also Aageson Grain & Cattle v. U.S. Dep't of Agric.*, 500 F.3d 1038, 1043-44 (9th Cir. 2007) ("[T]he APA generally applies where an administrative hearing is required by statute *or the Constitution*.") (emphasis added).) Thus, ORR must provide children in its custody: (1) "notice" of the hearing; (2) the opportunity to present his or her "case or defense by oral or documentary evidence"; (3) the opportunity "to submit rebuttal evidence"; and (4) the opportunity "to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. §§ 554(b)–(d), 556(d). And if any agency decision "rests on official notice of a material fact not appearing in the evidence in the record," the party is "entitled to an opportunity to show

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

47

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

the contrary." 5 U.S.C § 556(e). It is undisputable that ORR's policies fail to afford these basic protections,[33] and Defendants are unable to establish they are entitled to summary judgment on Plaintiffs' APA claims.

## VI. THE UNCONTROVERTED FACTS ESTABLISH THAT ORR DENIES PLAINTIFFS THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF 8 U.S.C. § 1232(C)(5).

As discussed above, Defendants' primary argument for summary judgment against Plaintiffs' fourth claim for relief—*res judicata*—is without merit. In 2008, nearly ***11 years*** after the FSA was entered, the TVPRA was enacted, directing Defendants to "ensure, to the greatest extent practicable" that children "have counsel to represent them in legal proceedings or matters and protect them from mistreatment." 8 U.S.C. § 1232(c)(5). Defendants have failed to live up to this mandate. The FSA does not address—in any form—the relief requested in this case: that ORR ensure children have access to counsel in connection with release, step-up, and medication decisions.

Defendants offer four additional arguments for judgment against Plaintiffs' claim that ORR fails to ensure that children are represented to the full extent required by the TVPRA. First, they argue that Plaintiffs lack a constitutionally protected, standalone right to counsel. (Defs. MSJ at 53–54.) Second, Defendants contend that no evidence supports Plaintiffs' allegations that ORR routinely obstructs lawyers' efforts to advocate for children's release, non-restrictive placement, or freedom from psychotropic medication. (*Id*. at 55–56.) Third, they argue that plaintiff children are entitled to retained counsel only and not a lawyer paid for by the government. (*Id*. at 58.) Finally, Defendants insist that children's right to legal representation under the TVPRA extends only to "immigration removal proceedings" and not ORR's decisions

---

[33] Defendants' own actions point to their knowledge of this requirement, namely the Placement Review Panel supposedly created in March 2020, which they attempt to recast as an "administrative hearing." By creating this Panel and labeling its procedures an administrative hearing, ORR must comply with the APA and the procedures it requires, which, by their own admission, they do not.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

48

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

on "step-up, release, and medical care" (*Id.* at 59.) Each of Defendants' arguments fails.

Defendants' first argument is a strawman. (*See id.* at 53–54.) The TVPRA guarantees Plaintiffs a *substantive* right to "have counsel to represent them in legal proceedings or matters and protect them from mistreatment . . . ." 8 U.S.C. § 1232(c)(5).[34] This substantive guarantee is independent of the due process right to retained counsel children have with respect to release, step-up, and medication decisions. (*See* Pls. MSJ at 52–53.)[35] Defendants' reframing of the issue as one hinging on the existence of a standalone due process right to appointed counsel badly mischaracterizes Plaintiffs' claim.[36] (Defs. MSJ 52–55.)

Defendants' second argument is no better. (*See id.* at 54–56.) As discussed in Plaintiffs' Motion, the undisputed facts demonstrate that ORR frequently impedes lawyers' ability to represent children effectively with respect to release, placement, and medication decisions. (*See* Pls. MSJ at 15–17, 54–56; *see also* SUF ¶¶ 95, 234–46.)

---

[34] The TVPRA establishes substantive rights in that it includes mandatory language requiring that HHS "***shall*** ensure . . . that all unaccompanied alien children . . . have counsel to represent them in legal proceedings or matters and protect them from mistreatment." 8 U.S.C. § 1232(c)(5) (emphasis added); *see Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989); *see also* Pls. MSJ at 52-54.

[35] That said, to the extent Defendants' interpretation of the TVPRA eliminates Plaintiffs' due process right to the assistance of counsel, such an interpretation must be avoided lest it render the statute unconstitutional. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006).

[36] Defendants' cited authority is not to the contrary. (*See* Defs. MSJ at 53.) *Perez-Funez v. Dist. Dir., INS*, 619, 619 F. Supp. 656 (C.D. Cal. 1985), both predates the TVPRA and merely notes in passing that children have no right to government-provided counsel when electing to voluntarily depart the United States when Congress has not elected to appropriate funds for such representation. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016), involved "a single question: does a district court have jurisdiction over a claim that indigent minor immigrants without counsel have a right to government-appointed counsel in removal proceedings?" The court held it did not, and that a petition for review from a removal order is children's "exclusive avenue for judicial review" of their right to counsel claim. *Id.* at 1038. Here, in contrast, ORR's release, step-up, and medication decisions are wholly apart from removal proceedings, and, again, involve TVPRA violations nowhere decided in *J.E.F.M.*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

49

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

Although Defendants purport to support their argument by citing no less than 16 "undisputed facts," none controvert Plaintiffs' evidence that children's lawyers are regularly denied a meaningful opportunity to represent children with respect to these matters.  (*See* SUF ¶¶ 234–263; SDF ¶¶ 90, 94.)

Defendants' third argument again misconstrues Plaintiffs' claim. (*See* Defs. MSJ at 56–57.) Plaintiffs do not here contend that Congress *must* supply children with counsel to represent them with respect to release, placement, or medication decisions. Rather, Plaintiffs assert that ORR blocks legal aid lawyers from using funds Congress *elects* to appropriate (*see* SDF ¶¶ 88–90, 93–94), in violation of the agency's duty to "ensure, to the greatest extent practicable" that plaintiff children "have counsel to represent them in legal proceedings or matters and protect them from mistreatment[.]" 8 U.S.C. § 1232(c)(5). Defendants do not argue otherwise.

With respect to Defendants' final argument (Defs. MSJ at 58–59), the TVPRA expressly covers "legal proceedings or matters," and there can be little question that ORR's detaining children, placing them in high-security facilities like psychiatric facilities and juvenile detention centers, and administering psychotropic medication without parental consent are "legal proceedings or matters" within the meaning of the TVPRA.  (*See* Pls. MSJ at 52–53.)

The paramount rule of statutory construction provides that the meaning of a statute must be discerned, if possible, from the words of the enactment alone. *Ratzlaf v. United States,* 510 U.S. 135, 147–48 (1994). Courts "presume that the ordinary meaning of the words chosen by Congress accurately express its legislative intent." *Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001). The plain language of the TVPRA forecloses Defendants' pinched interpretation:

> The Secretary of Health and Human Services **shall ensure, to the greatest extent practicable** and consistent with section 292 of the Immigration and Nationality Act (8 U.S.C. 1362), that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security, and who are not described in subsection (a)(2)(A),

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

50

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

have ***counsel to represent them in legal proceedings or matters and
protect them from mistreatment, exploitation, and trafficking***. To the
greatest extent practicable, the Secretary of Health and Human Services
shall make every effort to utilize the services of pro bono counsel who
agree to provide representation to such children without charge.

8 U.S.C. § 1232(c)(5) (emphasis added).

Defendants' statutory construction argument centers on § 1232(c)(5)'s reference
to 8 U.S.C. § 1362, which provides: "In any removal proceedings before an immigration
judge and in any appeal proceedings before the Attorney General from any such
removal proceedings, the person concerned shall have the privilege of being represented
(at no expense to the Government) by such counsel, authorized to practice in such
proceedings, as he shall choose." Section 1232(c)(5), in turn, provides that HHS shall
provide children with counsel "consistent with" § 1362. To be "consistent with" means
to be "marked by agreement: COMPATIBLE." *See* www.merriam-webster.com/
dictionary/consistent (last visited October 21, 2020). Common antonyms for
"consistent" are "conflicting, conflictive, incompatible, incongruous, inconsistent . . ."
*Id*. Certainly, ensuring that children have effective legal representation with respect to
release, placement, or medication decisions is in no way incompatible with ensuring
children are represented in removal proceedings as well.[37]

This textual construction is further supported by all established axioms of
statutory construction. "[N]o clause, sentence, or word shall be superfluous, void, or
insignificant." *TRW Inc.*, 534 U.S. at 31. Had Congress intended that children be
represented during removal proceedings alone, it would hardly have directed HHS to

---

[37] The TVPRA's reference to § 1362 instead appears aimed at ensuring (1) that children,
and not ORR, are entitled to select a lawyer to represent them in removal proceedings;
and (2) that the federal government not be obliged to pay for children's representation
in removal proceedings. The reference in no sense bounds ORR's duty to ensure
children have legal representation to removal proceedings alone or warrants the agency
denying children lawyers Congress elects to fund from representing them with respect
to release, step-up, or medication decisions.

ensure children have counsel "to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking." Were § 1232(c)(5) to contemplate representation solely during removal proceedings, this entire clause would be superfluous.

Next, in 8 U.S.C. § 1362 Congress granted adults and children the right to retained counsel in "removal proceedings." Section 1232(c)(5), in contrast, directs HHS to ensure children have counsel to represent them "in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking." It is axiomatic that "where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Had Congress wished to limit the right to counsel to removal proceedings, it could easily have said so. It did not, and Defendants conflating "removal proceedings" with "legal proceedings or matters" does obvious violence to the words Congress chose to use in.

Seemingly recognizing as much, Defendants resort to arguing that the legislative history of the TVPRA and appropriations Congress has made in furtherance of § 1232(c)(5) support their excision of release, placement, and medication decisions from the commonsense meaning of "legal proceedings or matters." It does not. The only "legislative history" Defendants cite is a remark Sen. Dianne Feinstein made upon introducing the TVPRA in 2008: "The bill also provides for pro bono legal representation for unaccompanied alien children in their immigration matters . . . ." (Defs. MSJ at 59 (quoting 154 Cong. Rec. S10, 886-87 (daily ed. Dec. 10, 2008)).) Sen. Feinstein's unremarkable statement says nothing about *limiting* children's right to counsel under the TVPRA to removal defense. To the contrary and as discussed above, Congress could have limited the TVPRA's grant of a right to counsel to "removal proceedings." It chose not to, and instead provided broadly for counsel in "legal

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

52

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

proceedings or matters." 8 U.S.C. § 1232(c)(5).[38]

Moreover, even if Sen. Feinstein's remark could be interpreted to evidence the intent Defendants suggest (it does not), legislative history is irrelevant where, as here, Defendants' interpretation cannot be squared with the text of § 1232(c)(5) itself. *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute"); *Ratzlaf*, 510 U.S. at 147–48 ("But we do not resort to legislative history to cloud a statutory text that is clear.").[39]

Defendants' final attempt to remove ORR's release, placement, and medication decisions from the plain reach of § 1232(c)(5) is to trivialize them as "day-to-day" decisions lacking the import of "legal proceedings or matters." (Defs. MSJ at 59.) This could not be further from the truth.

Detaining children, separating them from their families, consigning them to psychiatric facilities or juvenile detention, and administering them psychotropic drugs without their parents' consent are grossly aberrant events that imperil children's long-

---

[38] The same answers apply to Defendants' reliance on House Appropriations Committee Chairwoman DeLauro's statement that "'[l]egal counsel for unaccompanied children increases the efficiency and effectiveness of immigration proceedings and significantly reduces the failure-to-appear rate of children who are released from HHS custody.'" (Defs. MSJ at 59 (quoting H.R. Rep. 116-62, 144–45, 116th Congress, 1st Sess. (May 15, 2019)).) Rep. DeLauro's statement merely sets out one, *non-exclusive* rationale for funding legal representation for plaintiff children. Moreover, the statement could only evidence intent as to Congress's *appropriation* of funds, not the TVPRA itself. In other words, even assuming *arguendo* that Congress intended to grant ORR license to deny legal counsel *payment* for representing children aggrieved by the agency's release, placement or medication decisions, any restriction on the use of appropriated funds would in no way excuse the many obstacles ORR erects against children's receiving effective legal representation through retained or pro bono counsel.

[39] Furthermore, Defendants citing Sen. Feinstein's short-hand reference to "immigration matters" does nothing to clarify the meaning of § 1232(c)(5), and the rule against resort to legislative history is therefore especially apposite. *See United States v. Aversa*, 984 F.2d 493, 500 n.8 (1st Cir. 1993) (disapproving resort to legislative history that "'is more conflicting than the [statutory] text is ambiguous'") (quoting *Wong Yang Sung v. McGrath*, 339 U.S. 33, 49 (1950)).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

53

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

term well-being. Courts and litigants have grappled with such decisions for decades, and they continue to grapple with them daily in courtrooms across the country. *E.g.*, *Beltran*, 222 F. Supp. 3d at 476 (enjoining ORR against detaining a child in lieu of release to mother); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("Due Process Clause would be offended '[if] a State were to attempt to force the breakup of a natural family . . . without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.'"); *In re Gault*, 387 U.S. at 27 ("[H]owever euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours . . . .'"). Characterizing ORR's decisions as they relate to release, placement, and medication as immune from legal challenge is meritless.

Finally, Defendants' suggestion that ORR's interpretation of the TVPRA warrants deference is likewise without merit. (*See* Defs. MSJ at 59.) An agency is only entitled to deference where "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law" and "the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). In *Christensen v. Harris Cnty.*, 529 U.S. 576, 577 (2000), the Supreme Court made clear that "interpretations contained in policy statements, agency manuals and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron* style deference."

Here, it is undisputed that ORR has never memorialized its pinched interpretation of "legal matters or proceedings" in writing—or even explained its reasons for denying children counsel to protect them from abusive detention or medicating—much less incorporated it into federal regulation. (SUF ¶ 270.) In any event, deference is not warranted where, as here, the agency's interpretation is at odds with the plain text of the statute. *Gorbach v. Reno*, 219 F.3d 1087, 1093 (9th Cir. 2000) (en banc). ORR's self-serving interpretation of the TVPRA should be rejected.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

54

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment of their First, Second, and Fourth Claims for Relief, and deny Defendants' Cross-Motion for Summary Judgment.

Dated:  November 6, 2020                COOLEY LLP


/s/ *Summer J. Wynn*
Summer J. Wynn (240005)
Attorneys for Plaintiffs
Email: swynn@cooley.com

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

55

PLAINTIFFS' OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA