1  CENTER FOR HUMAN RIGHTS
   & CONSTITUTIONAL LAW
2  CARLOS R. HOLGUIN (90754)
   256 South Occidental Boulevard
3  Los Angeles, CA 90057
   Telephone: (213) 388-8693
4  Email: crholguin@centerforhumanrights.email

5  *Attorneys for Plaintiffs*

6  *Additional counsel listed on following pages*

7

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                     WESTERN DIVISION

11

| | |
|---|---|
| 12  LUCAS R., et al., | Case No.  2:18-CV-05741 DMG PLA |
| 13          Plaintiffs, | **PLAINTIFFS' STATEMENT OF GENUINE DISPUTE OF MATERIAL FACT IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 14       v. | |
| 15  ALEX AZAR, et al., | |
| 16          Defendants. | Date:     Dec. 11, 2020 |
| 17 | Time:     3:00 p.m. |
| | Place:    Courtroom 8C, 8th Floor |
| 18 | |
| 19 | Complaint Filed: June 29, 2018 |
| 20 | Pretrial Conference Date: March 2, 2021 |
| | Trial Date:  March 30, 2021 |
| 21 | Judge: Hon. Dolly M. Gee |

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

1    HOLLY S. COOPER (197626)
     Co-Director, Immigration Law Clinic
2    CARTER C. WHITE (164149)
     Director, Civil Rights Clinic
3    DAISY O. FELT (307958)
     JONATHAN P. MULLIGAN (CAL RLSA NO. 803383)
4    MONICA J. JULIAN (265075)
     University of California Davis School of Law
5    One Shields Ave. TB 30
     Davis, CA 95616
6    Telephone: (530) 754-4833
     Email: hscooper@ucdavis.edu
7           ccwhite@ucdavis.edu
            dofelt@ucdavis.edu
8           jmulligan@ucdavis.edu
            mjulian@ucdavis.edu
9
     NATIONAL CENTER FOR YOUTH LAW
10   LEECIA WELCH (208741)
     NEHA DESAI (CAL. RLSA NO. 803161)
11   POONAM JUNEJA (300848)
     FREYA PITTS (295878)
12   MISHAN WROE (299296)
     MELISSA ADAMSON (319201)
13   1212 Broadway, Suite 600
     Oakland, CA 94612
14   Telephone: (510) 835-8098
     Email:  lwelch@youthlaw.org
15          ndesai@youthlaw.org
            pjuneja@youthlaw.org
16          fpitts@youthlaw.org
            mwroe@youthlaw.org
17          madamson@youthlaw.org

18   NATIONAL CENTER FOR YOUTH LAW
     BRENDA SHUM (ADMITTED PRO HAC VICE)
19   CRYSTAL ADAMS (308638)
     1313 L St. NW, Suite 130
20   Washington, DC 20005
     Telephone: (202) 868-4785
21   Email:  bshum@youthlaw.org
            cadams@youthlaw.org

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

COOLEY LLP
SUMMER J. WYNN (240005)
MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
REBECCA L. TARNEJA (293461)
ALEXANDRA R. MAYHUGH (300446)
JAYME B. STATEN (317034)
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email:  swynn@cooley.com
          mmcmahon@cooley.com
          rtarneja@cooley.com
          amayhugh@cooley.com
          jstaten@cooley.com

*Attorneys for Plaintiffs*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

Pursuant to Local Rule 56-1 and Rule 5.d(i) of this Court's Standing Order, Plaintiffs submit this Statement of Genuine Dispute of Material Fact in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

Plaintiffs incorporate by reference their concurrently filed Response to Defendants' Evidence and the evidentiary objections contained therein, to the extent any of Defendants' purported uncontroverted facts rely on inadmissible evidence.

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **Defendants' Uncontroverted Facts: Custody/Release** ||
| **1.** It is ORR's practice to seek the safe and timely release of unaccompanied alien children (UACs) in its care.<br><br>Antkowiak Dep. 202:4-19; Sualog Dep. 80:4-14; Vergara Dep. 215:18-22; Biswas 30(b)(6) Dep. 147:7-21; Dr. Earner Dep. 117:1-21; Dr. Mohn Dep. 116:17-22; Antkowiak Decl. ¶ 38; Biswas Decl. ¶ 63; ORR Juvenile Coord. Rep. at 1. | **Disputed.**<br>In practice, children may remain in ORR custody for a year or more. Ex. 5[1] [RFA 1st Set] No. 36 at 492; Ex. 19 [David Dep. Tr.] at 72:22–73:13[2]; Ex. 16 [Contreras Dep. Tr.] at 160:6–13. ORR has detained at least one Class Member in congregate care for at least 1,570 days, or more than four years. Ex. 122 at 1923.<br><br>ORR detained Class Representative Gabriela N. for approximately 633 days. ECF No. 62-6 [Initial Intake Form] at 2 (noting arrival date of Jan. 8, 2017); Ex. 101 at 1804 (noting departure date of Oct. 2, 2018); Ex. 141 at 2036 (length of stay at |

[1] All citations to "Ex." refer Exhibits submitted by Plaintiffs. Exhibits 1–144 were submitted in connection with the Declaration of Alexandra R. Mayhugh in Support of Plaintiffs' Partial Motion for Summary Judgment. (*See* ECF No. 272.) Exhibits 145–198 are attached to the Declaration of Alexandra R. Mayhugh filed concurrently herewith. All citations to "DX" refer to those exhibits submitted by Defendants and attached to the Declaration of W. Daniel Shieh in Support of Defendants' Motion for Summary Judgment (ECF No. 263-3) and the Declaration of Jonathan Ross in Support of Defendants' Application for Leave to File Under Seal (ECF No. 265).

[2] Citations to deposition transcripts refer to original pagination.

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Southwest Key 243 days); Ex. 140 at 2031 (noting transfer to URM on Oct. 2, 2018); Ex. 102 at 1806–07.<br><br>ORR detained Class Representative Lucas R. for approximately 208 days. Ex. 143 at 2045 (Southwest Key entry date of Feb. 11, 2018); Ex. 142 at 2040 (admitted to Shiloh Treatment center May 21, 2018 and discharged Sept. 8, 2018).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Plaintiffs' Objections to Defendants' Evidence ("Evidentiary Objections") ¶ 2. |
| **2.** It is ORR's practice to affirmatively determine potential sponsors are able to provide for the physical and mental well-being of children before release.<br><br>Biswas Dep. 173:25-174:19; Biswas 30(b)(6) Dep. 130:5-11, 131:13-15, 152:8-24, 155:14-20; Sualog Dep. 110:5-11; Vergara Dep. 193:6-9, 194:8-17; Dr. Ryan Dep. 92:16-24, 94:3-8; Dr. Earner Dep. 119:8-12; Antkowiak Decl. ¶ 55; Biswas Decl. ¶ 64; ORR Juvenile Coord. Rep. at 1. | **Disputed.**<br>Plaintiffs dispute that Defendants' cited evidence establishes a practice or that such alleged "determinations" actually determine whether a proposed sponsor is able to provide for the physical and mental well-being of a child prior to release.<br><br>Plaintiffs further dispute this statement as the cited evidence discusses policy language that is either not applicable or is not followed in practice because ORR's release determinations are sometimes arbitrary. *See, e.g.*, Ex. 30 [Ortiz Dep. Tr.] at 110:24–113:2 ("And the aunt was told she was not a viable sponsor because they didn't have the same last name . . . Once transferred to the permanent facilities, the child was released within two weeks."); Ex. 19 |

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | [David. Dep. Tr.] at 77:1–12 (discretionary home study criteria "is based on concerns other than the other mandated home study processes"); Ex. 116 at 1896 (FFS overruling positive release recommendation). |
| | | Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| 3. | It is ORR's policy and practice to seek the safety of UACs in its custody and to protect them from trafficking and other forms of exploitation, abuse, and neglect upon release from ORR's care and custody. <br><br> ORR Guide §§ 1.2.3, 2.1, 2.2.5, 3.1, 3.3.3; Biswas 30(b)(6) Dep. 147:7-14, 438:25-440:14; Sualog Dep. 160:7-25, 198:9-199:3; Husted Dep. 33:6-12, 79:13-20; Padilla Dep. 248:24-249:22; Dr. Ryan Dep. 246:11-247:7; Antkowiak Decl. ¶ 39. | **__Partially Disputed.__** <br> Plaintiffs do not dispute that the ORR Policy Guide addresses the safe release of minors in its custody vis-a-vis concerns of trafficking and other forms of exploitation, abuse, and neglect upon release from ORR's care and custody, but do dispute Defendants' application of those policies. *See, e.g.*, Ex. 53 [Edwards Expert Rep.] at 1340–42 (discussing significant shortcomings in ORR's policies). <br><br> Defendants' cited evidence does not establish a "practice", nor does it establish that the cited policy is followed in practice. *See* Ex. 37 [Sualog Dep. Tr.] at 219:1–19 (ORR does not track incidents or conduct studies related to post-release abuse or neglect). |
| 4. | The majority of UACs referred to ORR custody are apprehended after crossing the border between ports of entry without lawful admission. | **__Undisputed__** for purposes of this motion. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Antkowiak Decl. ¶ 50; Southwest Border Data. | |
| **5.** ORR's system of care is unique from the domestic child welfare context in that it provides care to an exclusively immigrant, minor population who enter ORR custody unaccompanied, and are in custody solely by reason of their lack of lawful immigration status.<br><br>Sualog Dep. 80:4-14; Antkowiak Decl. ¶ 50; Biswas Decl. ¶ 87; 2016 Senate Staff Rep.; Dr. Earner Dep. 101:12-15, 252:9-12. | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that ORR serves an immigrant, minor population who are generally in custody solely by reason of their immigration status.<br><br>Plaintiffs dispute that all children in ORR custody are there solely by reason of their lack of lawful immigration status; indeed, some children in ORR custody have legal immigration status. Ex. 46 [Heath Dep. Ex. 169] at 1270 (Minor with an approved I-485 since April 2016 still in ORR custody in March 2017); *id.* at 1272 (UAC with asylum status as of December 2016 still in ORR custody in March 2017); *id.* at 1273–74 (Minor in ORR custody despite fact that UACs mother was born in the U.S.); *id.* at 1273 (UAC with granted asylum as of January 10, 2017, still in custody on March 7, 2017).<br><br>Plaintiffs further dispute that ORR's system of care is unique because it provides care to immigrants who enter ORR custody unaccompanied; unlike children in the domestic child welfare system, UACs have not been removed from their homes and placed into congregate care due to allegations of abuse, neglect or abandonment. DX-13 [Earner Expert Rep.] ¶ 27. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

4

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **6.** UACs in ORR custody are uniquely vulnerable to trafficking and exploitation because many migrants engage with criminal gangs and organizations to facilitate the border crossing and are required to repay smuggling fees.<br><br>Dr. Earner Expert Rep. ¶¶ 25-27; Dr. Earner Dep. 120:9-22, 123:14-125:8, 125:13-25; Antkowiak Decl. ¶ 52. | **Partially Disputed.**<br>Plaintiffs do not dispute that UACs in ORR custody may be vulnerable to trafficking.<br><br>Plaintiffs dispute the asserted fact to the extent it implies that all children in ORR custody are trafficked across the United States border. *See, e.g.*, Ex. 21 [Isabella F. Dep. Tr.] at 56:9–17 (Benjamin F. crossed the border with his mother and was separated from her by the United States government).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 16. |
| **7.** Neither ORR nor the grantee care providers have any financial incentive to keep children in care longer than appropriate, as care providers are paid on a funded capacity basis regardless of whether they have minors in custody or not.<br><br>Dr. Mohn Dep. 180:2-14; Dr. Ryan Dep. 195:25-196:3; Dr. Mohn Expert Rep. ¶¶ 15-19; Antkowiak Decl. ¶ 40; Cooperative Agmt (GOV-00126506-126535). | **Disputed.**<br>Plaintiffs dispute this statement insofar as it implies transparent accounting, payment, and contract and grant award practices between ORR and care providers. *Review of Office of Refugee Resettlement's Awarding of a No-Bid Contract for the Unaccompanied Alien Children Program*, U.S. Dep't of Health and Human Services Office of Inspector General, https://oig.hhs.gov/reports-and-publications/workplan/summary/wp-summary-0000410.asp (last visited Nov. 6, 2020) ("The contract that ORR awarded to CHS was a 7-month no-bid contract totaling over $341 million"); *see also* Staff of S. Comm. on the Judiciary, 81st Cong., *Rep. on* |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

5

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | *Antitrust Law* 17 (Comm. Print 1950), available at https://www.finance.senate.gov/imo/media/doc/2019-05-09%20CEG%20RW%20to%20HHS%20ACF%20(Grantee%20Oversight).pdf ("Southwest Key paid managers and its chief executive—Juan Sanchez—excessive salaries, and engaged in self-dealing regarding property and leases in Conroe and Brownsville, Texas.") |
| 8.  ORR has established grantee relationships with a variety of state licensed grantee facilities where UACs reside and are cared for until they can be released to a sponsor.<br><br>ORR Guide §§ 3.1, 3.3.14, 4.4.1, 5.3.2, 5.5; *see* Cooperative Agmts. | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that ORR has established grantee relationships with a variety of state licensed grantee facilities where UACs reside and are cared for until release.<br><br>Plaintiffs dispute that UACs are held until released to a sponsor. Some children are released from ORR custody without being reunified. Ex. 181 [Ryo Expert Rep.] at 340 (listing 12 different discharge types, including but not limited to sponsor reunification).<br><br>Plaintiffs also dispute Defendants' statement to the extent it suggests all ORR grantee programs are licensed as required under the *Flores* Settlement Agreement ("FSA"). This Court has already determined that RTCs and juvenile detention centers are not "licensed programs" within the meaning of the FSA. *Flores v. Sessions*, No. CV 85-4544-DMG |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

6

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | (AGRx), 2018 WL 10162328, at *8-11 (C.D. Cal. July 30, 2018). |
| 9. | ORR does not directly own or operate any facilities where UACs reside and are cared for, but rather operates under cooperative agreements, which are governed by grant regulations.<br><br>ORR Guide § 3.1; De La Cruz Dep. 22:3-11; Biswas Decl. ¶ 28. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR does not own any facilities where UACs reside and are cared for, but rather operates under cooperative agreements.<br><br>Plaintiffs dispute this statement to the extent it suggests that ORR only places children in facilities where ORR has a cooperative agreement in place. ORR's procedures allow for UACs to be placed in out-of-network facilities, which do not hold cooperative agreements or contracts with ORR. Ex. 2 [ORR MAP] § 1.4.6 at 99–101 ("TAR Placements: UAC placed in an RTC not affiliated with ORR through a Cooperative Agreement or contract, do not fill out the Notice of Placement in a Restrictive Setting form."); Ex. 95 at 1754 (email from Toby Biswas to David Fink stating "See MAP section 1.4.6 which explains the procedures for administering and documenting the NOP in the case of out-of-network (TAR based) placements"). Moreover, Temporary Shelters like Homestead have held contracts rather than cooperative agreements with ORR. |
| 10. | ORR has a zero-tolerance policy for all forms of sexual abuse, sexual harassment, and inappropriate sexual behavior at all care provider facilities | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR has a "zero-tolerance policy" though Plaintiffs seek to clarify that |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

7

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| that house UACs, and ORR maintains broad reporting requirements for all care provider facilities.<br><br>ORR Guide § 4.10.6. | Defendants' "zero-tolerance policy" is located at § 4.10.2 of the Policy Guide, not § 4.10.6.<br><br>Plaintiffs dispute this statement to the extent it suggests children do not experience abuse in ORR custody. In fact, Class Members have been physically and sexually abused in ORR custody. *See* Ex. 6 [RFA 2nd Set] Nos. 43–44, 53–55, 58 at 516–18, 522–27. |
| 11. | ORR requires care provider facilities to conduct incident reviews of all allegations of sexual abuse and sexual harassment that occur in ORR care and custody.<br><br>ORR Guide § 4.11.1. | **<u>Partially Disputed.</u>**<br>Plaintiffs do not dispute that the ORR Policy Guide requires care providers to "conduct incident reviews of all allegations of sexual abuse and sexual harassment that occur in ORR care and custody." Ex. 146 [ORR Policy Guide] § 4.11.1 at 51–52.<br><br>Plaintiffs dispute the asserted fact to the extent Defendants intend to construe the phrase "ORR requires" to mean anything beyond the requirement in ORR's Policy Guide. |
| 12. | ORR does not maintain custody post-release, is not funded by Congress to do so, and has neither the ability nor the responsibility to formally track incidents of abuse or neglect by sponsors to whom UACs are released.<br><br>Sualog Dep. 198:9-199:24; 223:14-19; Dr. Earner Dep. 237:6-11; Antkowiak Decl. ¶ 50. | **<u>Partially Disputed.</u>**<br>Plaintiffs dispute this statement to the extent that it implies ORR keeps no record or conducts no follow-up with sponsors and children. While Plaintiffs do not dispute that ORR no longer has custody over children following their release from ORR detention, ORR's own policy guide details several post-release services provided to sponsors and children, many of which are designed to curtail |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

8

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | or uncover abuse and neglect. *See* Office of Refugee Resettlement, *Guide to Children Entering the United States Unaccompanied: Section 6*, §§ 6.1–6.2 (last reviewed Sept. 5, 2018), https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-6. Indeed, ORR conducts post-release services through a network of post-release service providers that it funds specifically to have the "ability" to address instances of abuse and neglect. *See id.* § 6.2. |
| **13.** It is ORR's practice that federal field specialists (FFS) approve UAC transfer and release decisions; oversee care providers to ensure all services are properly provided and implemented; serve as a local liaison to community stakeholders (including other federal agencies, local legal service providers, communities, child advocates, etc.); provide guidance, direction, and technical assistance to grantee care providers; make final decisions as to whether home studies are conducted and/or post-release services are provided; and coordinate all aspects of a child's case with care provider staff, case coordinators, and stakeholders.  Biswas Dep. 56:9-12, 65:23-66:9, 87:22-25, 121:2-7, 127:7-128:3, 209:17-21, 231:11-15; Biswas 30(b)(6) Dep. 205:13-15, 218:8-14, 404:6-13; Fink Dep. 23:9-14; Sualog Dep. 163:3-18; David Dep. 7:17-8:23; | **Partially Disputed.** Plaintiffs do not dispute that FFS may approve UAC transfer and release decisions, serve as local liaison to a limited community of stakeholders, provide guidance to care providers, make final decisions as to whether home studies are conducted and/or post release services are provided, and coordinate aspects of a child's case with care provider staff and case coordinators.  Plaintiffs dispute that Defendants' cited evidence establishes a practice that FFS "oversee care providers to ensure all services are properly provided and implemented." Ex. 165 [Treviño Dep. Tr.] at 366:18–367:2 (Treviño does not review or track if a child is receiving therapy and does not know if anyone at ORR is responsible for tracking whether children receive mental health services). |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Cook Dep. 49:7-18; Biswas Decl. ¶ 70; ORR Juvenile Coord. Rep. at 4. | Plaintiffs dispute that Defendants' cited evidence establishes a practice that FFS "serve as local liaison to a community of stakeholders" that includes "federal agencies, local legal service providers, communities, child advocates" or that this occurs in practice. Ex. 24 [Heath Dep. Tr.] at 50:20–23, 86:13–15, 241:15–17; Ex. 25 [Husted Dep. Tr.] at 176:22–25; Ex. 35 [Smith Dep. Tr.] at 46:12–47:11; Ex. 29 [Nathan-Pineau Dep. Tr.] at 18:1–15.

Plaintiffs dispute that Defendants' cited evidence establishes a practice that FFS "provide direction, and technical assistance to grantee care providers" because the cited evidence only addresses FFS decision-making authority and interactions with case managers and case coordinators. *See* Defendants' Uncontroverted Fact ("DUF") No. 13.

Plaintiffs dispute that Defendants' evidence establishes a practice that FFS "coordinate all aspects of a child case with ... stakeholders" or that this occurs in practice. *See* Ex. 29 [Nathan-Pineau Dep. Tr.] at 18:1–15; Ex. 24 [Heath Dep. Tr.] at 50:20–23, 86:13–21.

Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

10

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **14.** It is ORR's policy and practice that grantee care facilities employ case managers who are approved by ORR and are required to take 40-hours of annual training on all aspects of the UAC program.<br><br>ORR Guide §§ 2.3.2, 3.1, 4.5; ORR Juvenile Coord. Rep. at 4; Cooperative Agmt.; Biswas Decl. ¶¶ 14, 17. | **Partially Disputed.**<br>Plaintiffs do not dispute that it is ORR's policy that grantee care facilities employ case managers and that its Cooperative Agreement with grantee facilities requires 40 hours of annual training.<br><br>Plaintiffs dispute that Defendants' cited evidence establishes such a practice or that this occurs in practice. Moreover, neither policy nor practice supports Defendants' statement that all case managers must be approved by ORR. Ex. 189 [Cooperative Agreement] at 408 n.6 ("This position *may* require ORR approval if the Case Manager is conducting clinical assessments.") (emphasis added).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| **15.** It is ORR's practice that case managers coordinate the completion of UAC assessments, complete individual service plans, assess potential sponsors, communicate with potential sponsors, make transfer and release recommendations, and coordinate the release of children from ORR custody.<br><br>Biswas Dep. 253:12-254:4; Biswas 30(b)(6) Dep. 34:11-15, 128:11-18, 322:17; Contreras Dep. 58:7-20; David Dep. 53:25-54:3; Antkowiak Dep. 63:19-64:3; Eich Dep. 181:17- | **Partially Disputed.**<br>Plaintiffs do not dispute that case managers "assess potential sponsors, communicate with potential sponsors," make "release recommendations, and coordinate the release of children from ORR custody."<br><br>Plaintiffs dispute that Defendants' cited evidence establishes that case managers in practice "coordinate the completion of UAC assessments" or "complete individual services plans"; |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

11

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 24; Vasquez Dep. 78:7-79:11, 79:22-80:3; Dr. Ryan Dep. 247:25-248:11; Antkowiak Decl. ¶ 56; Biswas Decl. ¶ 67; ORR Juvenile Coord. Rep. at 4. | Defendants cited evidence describes other aspects of case managers' roles. *See* DX-15 [Biswas Dep. Tr.] at 253:12–254:4; DX-02 [Biswas 30(b)(6) Dep. Tr.] at 34:11–15, 128:11–18, 322:8–17; DX-22 [Contreras Dep. Tr.] at 58:7–20; DX-20 [David Dep. Tr.] 53:25–54:3; DX-01 [Antkowiak Dep. Tr.] at 63:19–64:3; DX-23 [Eich Dep. Tr.] at 181:17–24; DX-24 [Vasquez Dep. Tr.] at 78:7–79:11, 79:22–80:3; DX-08 [Dr. Ryan Dep. Tr.] at 247:25–248:11; DX-09 [Antkowiak Decl.] ¶ 56; DX-10 [Biswas Decl.] ¶ 67; DX-11 [ORR Juvenile Coord. Rep.] at 4.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| 16. It is ORR's practice that the case coordinator, a third party contractor, integrates all areas of assessment from the case manager, child advocates, where applicable, and other stakeholders into a release plan that provides for the child's physical and mental well-being.<br><br>Biswas Dep. 53:11-20; Biswas 30(b)(6) Dep. 118:12-24, 403:18-22; Murray Dep. 63:7-11, 124:6-12, 135:20-136:13, 212:19-213:18; *see also* GDIT Contract. | **Disputed.**<br>In practice, case coordinators rarely speak to key stakeholders such as sponsors, children, or their legal representatives. *See* Ex. 35 [Smith Dep. Tr.] at 80:15–22 (case managers rely on information in portal); Ex. 24 [Heath Dep. Tr.] at 81:23–82:25 (same); Ex. 28 [Murray Dep. Tr.] at 104:14–25, 124:1–20; Ex. 30 [Ortiz Dep. Tr.] at 32:11–22; Ex. 29 [Nathan-Pineau Dep. Tr.] at 22:16–23:9. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **17.** It is ORR's policy and practice that the UAC's views of the sponsor are taken into consideration when assessing a potential sponsor.<br><br>*Flores* Settlement ¶ 17; Biswas Dep. 98:5-12, 140:14-141:11, 142:12-19; Padilla Dep. 76:24-77:5; Heath Dep. 241:18-242:5; Biswas Decl. ¶ 80. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR's written policies provide that "ORR considers" "[t]he child's or youth's views on the release and whether he or she wants to be released to the individual" "when evaluating family members and other potential sponsors . . ." Ex. 1 [ORR Policy Guide] § 2.4.1 at 41.<br><br>Plaintiffs dispute that Defendants' cited evidence establishes such a practice or that this occurs in practice. In practice, there is no way to know what information is considered in sponsor suitability determinations as that information is not made available to children, their sponsors, or their attorneys. *See* Joint Stipulation Regarding Motion and Cross-Motion for Partial Summary Judgmet ("Joint Stip.") ECF No. 262 ¶ 17; Ex. 5 [RFA 1st Set] No. 5 at 470–71; Ex. 1 [ORR Policy Guide] §§ 2.7.7, 2.7.8 at 49–50. |
| **18.** It is ORR's practice that case managers provide weekly summaries to UACs on the child's case and provision of services.<br><br>Biswas Dep. 98:13-99:7; Husted Dep. 71:1-3; Dr. Earner Dep. 203:9-19; Sualog Dep. 105:19-106:7; Antkowiak Decl. ¶ 61. | **Disputed.**<br>Plaintiffs dispute that Defendants' cited evidence establishes such a practice. Case managers have, at times, failed to provide weekly summaries to UACs on the child's case and provision of services. *See* Ex. 66 ¶ 10 at 1452 ("Any time that I have talked to a staff member about being stepped down, I have initiated the conversation. I have to find my counselor or case manager and ask them what is going on with my case |

13

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | and when I can be stepped down."); *see also* Ex. 183 [B.D.A.C. Decl.] ¶ 7 at 351 ("No one has provided me with updates on the reunification process.").<br><br>Plaintiffs further dispute this fact to the extent Defendants seek to imply youth understand the status of their cases based on these purported "weekly summaries." *See* Ex. 64 ¶ 10 at 1441 ("My case manager has told me some details about the process, but I don't really understand what needs to happen."); Ex. 65 ¶ 14 at 1447 ("My case manager has talked to me about foster care placement, but I don't know how long it will take for me to be released.").<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 26. |
| **19.** It is ORR's policy and practice that potential sponsors must verify the identity of all adults residing with the sponsor and all adult caregivers identified in a sponsor care plan.<br><br>ORR Guide § 2.2.4; Biswas Dep. 129:3-12; Biswas 30(b)(6) Dep. 212:8-15, 361:11-17; ORR Juvenile Coord. Rep. at 3. | <u>**Undisputed**</u> for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 2. |
| **20.** It is ORR's practice that ORR immediately begins the process of finding family members and others who may be qualified to care for the UAC when the child enters ORR's | <u>**Undisputed**</u> for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 2. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| care.<br><br>Meyerstein Dep. 106:25-107:2; Biswas Dep. 112:17-113:14; Biswas 30(b)(6) Dep. 122:6-10; Biswas Decl. ¶ 66; ORR Juvenile Coord. Rep. at 2. | |
| **21.** It is ORR's practice that if there are multiple potential sponsors, the ORR grantee care provider will evaluate all potential sponsors concurrently.<br><br>Biswas 30(b)(6) Dep. 415:14-17, 415:22-416:19; Husted Dep. 147:15-25, 148:1-2; ORR Juvenile Coord. Rep. at 2. | **<u>Undisputed</u>** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 2. |
| **22.** It is ORR's practice that within 24 hours of identifying a potential sponsor, the case manager is required to explain to the potential sponsor the requirements of the sponsorship process, and the case manager must remain in regular and frequent contact with the potential sponsor.<br><br>Biswas Dep. 253:12-254:4; Biswas 30(b)(6) Dep. 231:20-232:18, 234:4-15; Contreras Dep. 59:25-60:7; Eich Dep. 146:3-147:19; Padilla Dep. 246:19-247:10; Antkowiak Decl. ¶ 55; Biswas Decl. ¶ 82; ORR Juvenile Coord. Rep. at 2. | **<u>Disputed.</u>**<br>Case managers do not always remain in regular and frequent contact with potential sponsors given that case managers can choose to cease contact with a potential sponsor without formally denying the sponsor. Ex. 162 [Murray Dep. Tr.] at 264:14–265:24 (case manager can discontinue working with potential sponsor without a denial); Ex. 150 [Biswas 30(b)(6) Dep. Tr.] at 428:20–25 (there is no policy guidance provided to case managers as to how many attempts they must make to communicate with a proposed sponsor before determining the sponsor is not viable).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **23.** It is ORR's policy and practice that within 1 calendar day of a sponsor's completion of the FRP documentation, the case manager is required to submit a release recommendation.<br><br>ORR Guide § 2.7; ORR MAP § 2.7; Biswas 30(b)(6) Dep. 231:20-232:18, 234:8-15; Antkowiak Decl. ¶ 58; Biswas Decl. ¶ 69. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR's policy provides that "[w]ithin 1 calendar day of the completion of the FRP documentation, the Case Manager uses the *Release Request Completion Guidance* to complete the requester information, sponsor information, and Case Manager recommendation in the *Release Request*." Ex. 3 [ORR MAP] at 199.<br><br>Plaintiffs dispute that this "Release Request" must include a recommendation regarding release; the case manager can instead use the Release Request to recommend that a home study be completed prior to a release decision. *See* Ex. 3 [ORR MAP] § 2.4.2 at 172–177; Ex. 160 [Lawrence Dep. Tr.] at 105:16–22; Ex. 167 [Vasquez Dep. Tr.] at 220:21–221:9.<br><br>Plaintiffs further dispute that the cited evidence establishes ORR's practice generally. *See* Ex. 167 [Vasquez Dep. Tr.] at 220:21–221:25 (no deadline to determine what type of release request to make).<br><br>Children at Shiloh RTC, for example, require a psychiatrist's approval for release even if their family reunification packet is complete. *See* Ex. 163 [Ruiz Dep. Tr] at 281:11–282:8 (no child has been released without his recommendation); Ex. 168 [Vergara Dep. Tr.] at 176:18– |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | 177:2 ("[W]e make a release decision once the child is no longer a danger to themself or others"); Ex. 162 [Murray Dep. Tr.] at 199:4–25; Ex. 160 [Lawrence Dep. Tr.] at 148:21–149:6 ("[W]e do always take Dr. Ruiz's recommendation to then be able to give our recommendation"), 243:15–245:11 (child at Shiloh is pending psych evaluation and no estimated time for completion). |
| 24. It is ORR's policy and practice that the release process is collaborative in nature and necessitates coordination between care provider staff, nongovernmental third-party reviewers (case coordinators), ORR staff, other federal agencies, legal service providers, stakeholders, and child advocates, where applicable.<br><br>ORR Guide § 2.3; Biswas Dep. 16:12-23, 56:16-19, 253:12-254:3; Antkowiak Dep. 225:4-13; Sualog Dep. 154:1-8; Trevino Dep. 382:6-383:17; Murray Dep. 240:21-241:16; Contreras Dep. 29:18-23, 62:5-63:4, 177:1-178:14; Eich Dep. 41:2-23; Heath Dep. 169:13-170:4; Fields Dep. 198:16-25; Smith Dep. 206:17-208:1; Nathan-Pineau Dep. 66:10-68:1, 79:13-25, 80:1-6; Dr. Earner Dep. 146:23-147:13, 192:4-12, 237:1-22; Dr. Mohn Dep. 126:2-18, 188:18-189:8; Biswas Decl. ¶ 70; ORR Juvenile Coord. Rep. at 3. | **Disputed.**<br>Plaintiffs dispute that "the release process is collaborate in nature." ORR's written policies do not require that ORR give children an opportunity to offer input designed to rebut a conclusion that a proposed custodian's release request should be denied. Ex. 1 [ORR Policy Guide] § 2.7 at 47–48; Ex. 3 [ORR MAP] § 2.7.4 at 48–49. ORR's written policies do not provide all proposed custodians an opportunity to inspect or rebut the evidence it relies on to declare them unfit. Ex. 1 [ORR Policy Guide] § 2.7.7 at 49–50; Ex. 3 [ORR MAP] § 2.7.7 at 209–11 (comparing denial notification requirements between different categories of sponsors). FFS can and have overruled positive release recommendations from case managers and case coordinators. *See, e.g.,* Ex. 116 [Release Request] at 1896.<br><br>Plaintiffs further dispute that the asserted fact is supported by |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

17

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | admissible evidence. *See* Evidentiary Objections ¶ 2. |
| **25.** In the release process, case managers and FFS can consult with FFS Supervisors, members of ORR's Division of Policy and Procedure, and the Deputy Director of ORR.<br><br>De La Cruz Dep. 61:8-63:18, 232:15-233:1; Vergara Dep. 26:7-19; Fink Dep. 23:15-21; Biswas Decl. ¶ 16. | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that "FFS can consult with FFS Supervisors" and "members of ORR's Division of Policy and Procedure."<br><br>Plaintiffs dispute that the cited evidence establishes that case managers can consult with the Deputy Director of ORR. *See* DX-16 [De La Cruz Dep. Tr.] at 61:8–63:18, 232:15–233:1; DX-05 [Vergara Dep. Tr.] at 26:7–19; DX-19 [Fink Dep. Tr.] at 23:15–21; DX-10 [Biswas Decl.] ¶ 16. |
| **26.** In the release process, FFS Supervisors monitor the cases of the FFS whom they supervise and assist them on tasks that require additional supervision and oversight.<br><br>De La Cruz Dep. 26:9-27:5, 61:8-63:18; Antkowiak Dep. 225:4-13; Vergara Dep. 26:7-19, 260:20-261:12; Trevino Dep. 114:13-17; Heath Dep. 20:12-23. | <u>**Disputed.**</u><br>Plaintiffs dispute that FFS Supervisors monitor every case for every FFS whom they supervise, and in practice, only assist on tasks that require additional supervision or oversight, given that FFS have discretion to elevate issues to their supervisors in some circumstances. *See* Ex. 168 [Vergara Dep. Tr.] at 28:3–24. |
| **27.** It is ORR's practice that the case manager provides weekly status updates to the case coordinator and FFS on the UAC's release status.<br><br>ORR Juvenile Coord. Rep. at 3; Antkowiak Dep. 225:4-13; Biswas 30(b)(6) Dep. 239:17-24; Dr. Ryan Dep. 250:10-251:2; Biswas Decl. ¶¶ 18, 83. | <u>**Undisputed**</u> for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 2. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

18

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **28.** It is ORR's practice that in the sponsor assessment and release process, case managers communicate with potential sponsors, gather information and documentation, and assess sponsors to formulate a recommendation to the case coordinator and the FFS.<br><br>Biswas Dep. 253:12-254:4, 262:5-9; Biswas 30(b)(6) Dep. 122:11-17, 129:22-25; David Dep. 51:24-52:15, 60:8-19; Dr. Mohn Dep. 160:1-4; Antkowiak Dep. 63:19-64:3; Biswas Decl. ¶¶ 18, 67; ORR Juvenile Coord. Rep. at 3. | **Disputed.**<br>Plaintiffs dispute that the cited evidence establishes ORR's practice generally. In practice, case managers have unilateral authority to declare a potential sponsor "non-viable," which ends the vetting process. *See e.g.*, Ex. 30 [Ortiz Dep. Tr.] at 110:24–113:2; Ex. 162 [Murray Dep. Tr.] at 264:14–265:24; Ex. 150 [Biswas 30(b)(6) Dep. Tr.] at 428:20–25. In other words, a sponsor can be effectively denied without any involvement by the case coordinator or FFS.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| **29.** It is ORR's policy and practice that in the sponsor assessment and release process, case coordinators are required to review assessment information on a UAC and the potential sponsor to make an independent recommendation concerning release.<br><br>ORR Guide §§ 2.3, 2.7; Biswas Dep. 16:12-23, 53:11-20, 57:5-58:21, 65:19-22, 107:10-108:14, 255:9-256:5; Sualog Dep. 163:3-18; Murray Dep. 31:19-23; Biswas Decl. ¶ 19. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR's written policy provides that "Case Coordinators concurrently review all assessment information on an unaccompanied alien child and sponsor to also make a recommendation" and that "the Case Coordinator must make a recommendation to the ORR/FFS on the release of the unaccompanied alien child to a particular sponsor." Ex. 1 [ORR Policy Guide] §§ 2.3, 2.7 at 39, 47.<br><br>Plaintiffs dispute that Defendants' cited evidence establishes that ORR's policy is always effectuated in practice; in practice, case managers have unilateral authority during the |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

19

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
|  | sponsor assessment process to declare a potential sponsor "non-viable," which ends the vetting process. *See e.g.*, Ex. 30 [Ortiz Dep. Tr.] at 110:24–113:2; Ex. 162 [Murray Dep. Tr.] at 264:14–265:24; Ex. 150 [Biswas 30(b)(6) Dep. Tr.] at 428:20–25. |
| **30.** ORR will reconsider release denials based upon changed circumstances or new information.<br><br>David Dep. 62:2-12; Sualog Dep. 184:5-186:5; Biswas Dep. 254:2-255:8, 265:4-266:8; Husted Dep. 102:11-24; Vergara Dep. 168:13-22, 215:18-22, 218:1-20; Vasquez Dep. 210:6-211:4; Biswas Decl. ¶ 76. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR may occasionally reconsider release denials based upon changed circumstances or new information in specific situations.<br><br>To the extent this fact implies that this is ORR's practice, Plaintiffs dispute that ORR routinely or regularly "reconsider[s] release denials based upon changed circumstances or new information," especially in light of ORR's policies which provide for appeals only by parents or legal guardians and do not require ORR to inform denied sponsors of the opportunity to present new information or evidence of changed circumstances. *See* DX-04 [Sualog Dep. Tr.] at 184:21–185:2 (Deputy Director noting no denial appeals in the last year and that appeals are a "rare occurrence"); Ex. 1 [ORR Policy Guide] § 2.7.8 at 50; Ex. 5 [RFA 1st Set] Nos. 6, 9 at 471–74; *see also* ECF No. 37-13 [Madelyn R. Decl.] ¶ 13 at 251 (Class Representative Lucas R.'s sponsor was denied following a home study and told "nothing could be done, that |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | the denial was a final decision."); Ex. 149 [Biswas Dep. Tr.] at 268:23–269:10 (ORR does not alert denied sponsor of their ability to present evidence of changed circumstances). |
| **31.** Home studies can be mandated by the TVPRA or requested by a case manager and recommended by a case coordinator on a case-by-case basis.<br><br>ORR Guide § 2.4.2; ORR MAP § 2.4.2; Biswas Decl. ¶¶ 72-74. | **Undisputed** for purposes of this motion. Plaintiffs also note that FFS make the final decision as to whether a discretionary home study will be required. Joint Stip. ¶ 11. |
| **32.** ORR allows the UAC and a potential sponsor to review a negative home study recommendation.<br><br>David Dep. 100:1-101:7; Padilla Dep. 139:4-20; Husted Dep. 100:14-22; Contreras Dep. 169:6-25; Eich Dep. 196:6-197:1; Vasquez Dep. 207:13-23; Biswas Decl. ¶ 75. | **Disputed.**<br>Defendants' cited evidence does not support this statement. Moreover, following a home study of Madelyn R., Class Representative Lucas R.'s proposed sponsor, Madelyn R. was never provided a written explanation of the reasons she was denied custody of Lucas R. ECF No. 37-13 [Madelyn R. Decl.] ¶ 13 at 251; Ex. 81 [Lucas R. Decl.] ¶ 9 at 1521 ("I'm not exactly sure why the home study was negative."). |
| **33.** ORR allows a sponsor to provide additional information in support of sponsorship after a negative home study recommendation and/or before ORR renders a release decision.<br><br>David Dep. 101:8-102:2; Padilla Dep. 143:12-144:11, 246:19-247:10; Husted Dep. 100:14-22; Vergara Dep. 167:12-169:22, 171:1-11, 215:18-22; Sualog Dep. 185:3-186:5; Trevino Dep. 217:8-12, 219:2-22; Murray Dep. 241:17-242:2; Contreras Dep. 169:6-25; Eich Dep. 196:6-197:1; | **Disputed.**<br>Madelyn R., Class Representative Lucas R.'s proposed sponsor, was denied after a negative home study. ECF No. 37-13 [Madelyn R. Decl.] ¶ 13 at 251. She was told "nothing could be done, that the denial was a final decision." *Id.*; *see also* Ex. 193 at 473 (denying Isaac N., Gabriela N.'s proposed sponsor, and discontinuing his application when documentation not provided quickly enough). |

Cooley LLP
Attorneys At Law
Los Angeles

21

Plaintiffs' Statement of Genuine
Dispute of Material Fact
Case No. 2:18-cv-05741 DMG PLA

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Vasquez Dep. 209:2-15; Biswas Decl. ¶ 76. | |
| 34. | Delays in the release process are most often attributable to the UAC's lack of an available sponsor, or the potential sponsor being unresponsive and/or failing to provide the required documentation.<br><br>Padilla Dep. 117:2-5, 247:16-25; Fields Dep. 73:20-74:8; Heath Dep. 238:25-239:15; Dr. Ryan Expert Rep. ¶ 48; Dr. Mohn Expert Rep. ¶ 45; Biswas Decl. ¶ 68. | **Disputed.**<br>Plaintiffs dispute that such delays are "most often attributable" to Defendants' cited reasons. ORR's policy of requiring all household members and adults identified in a sponsor care plan to submit fingerprints in every case involving a home study also causes "significant[] delay[]" in releasing children to available custodians. Ex. 20 [Eich Dep. Tr.] at 46:22–48:13, 184:11–185:8 (it could take "[p]otentially five weeks" to receive fingerprint results); Ex. 1 [ORR Policy § 2.5.1] at 44–45; Ex. 151 [Castaneda Dep. Tr.] at 166:18–23.<br><br>Children also have remained in custody longer than necessary because case managers have failed to timely request home studies. Ex. 162 [Murray Dep. Tr.] at 223:23–224:10 (case managers sometimes take longer than necessary to request home study); Ex. 156 [Fields Dep. Tr.] at 215:7–216:3 (some programs are proactive in determining that child will require home study, others may stagger); Ex. 24 [Heath Dep. Tr.] at 247:9–20 (home study effect on length of stay depends on how quickly case is identified as needing a home study).<br><br>ORR also delays releasing children detained at Shenandoah Valley |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Juvenile Center to available custodians until they have had a psychological evaluation, which takes at least 30 days to complete. Ex. 17 [Cook Dep. Tr.] at 209:5–211:23; Ex. 152 [Contreras Dep. Tr.] at 174:20–175:23. ORR has also delayed the release of children in other facilities pending the results of a psychological evaluation. Ex. 158 [Heath Dep. Tr.] at 256:12–18; Ex. 161 [Meyerstein Dep. Tr.] at 285:8–21 (psych eval can delay reunification as attempt to determine whether child has a disability); Ex. 160 [Lawrence Dep. Tr.] at 243:15–245:11 (child at Shiloh is pending psych evaluation and no estimated time for completion). |
| | Case Managers also have at times unnecessarily delayed issuing recommendations regarding children's release to available custodians. Ex. 25 [Husted Dep. Tr.] at 43:19–46:2. ORR has delayed releasing children to available and fit sponsors until they have shown good behavior for some amount of time. Ex. 29 [Nathan-Pineau Dep. Tr.] at 55:17–56:24. |
| 35. Preparing for and appearing at additional administrative hearings would take ORR and grantee care provider staff away from their day-to-day responsibilities and delay their ability to pursue releases. | **Disputed.** ORR denies that the principal reason it fails to provide adequate procedural protections is due to any greater expense or administrative inconvenience.  Ex. 5 [RFA 1st Set] No. 73 at 496–97. Nor does Defendants' cited evidence support the proposition that the same ORR |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

23

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Dr. Earner Dep. 133:8-23; Dr. Ryan Dep. 277:14-25; Antkowiak Decl. ¶ 53. | staff would necessarily be involved in the hearings Plaintiffs request through this action. Indeed, ORR now presents that it has set up a Placement Review Panel for step up as of March 2020. *See* DUF Nos. 67–74. Defendants refer to the process as "administrative hearings" and have not alleged that this takes grantee care provider staff away from their day-to-day responsibilities.<br><br>Plaintiffs also dispute this statement to the extent it implies additional administrative hearings would delay pursuit of release. Given that the purpose of a hearing would be to "pursue" release, the FFS and staff attendance at the hearing would be time spent in "pursuit of release."<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 17. |
| **Defendants' Uncontroverted Facts: Step-Up** ||
| 36. It is ORR's policy and practice to place a UAC in the least restrictive setting that is in the best interest of the child based on consideration of child welfare factors set forth in ORR Guide § 1.2.1.<br><br>8 U.S.C. § 1232(c)(2)(A); ORR Guide § 1.2.1; Biswas Dep. 47:7-48:5; De La Cruz Dep. 158:2-9, 233:22-234:14; ORR Juvenile Coord. Rep. at 26, 27; | **Partially Disputed.**<br>Plaintiffs do not dispute that the ORR Policy Guide and ORR MAP provide for the placement of a UAC in the least restrictive setting that is in the best interest of the child and consistent with placement considerations set forth in ORR Guide § 1.2.1.<br><br>Plaintiffs dispute that the ORR Guide (or other cited evidence) establishes |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

24

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Dr. Mohn Dep. 132:19-133:1; Antkowiak Decl. ¶¶ 7-8. | that the factors listed under ORR Policy Guide § 1.2.1 are "child welfare factors." 8 U.S.C. § 1232(c)(2)(A) (nothing in the TVPRA suggesting that the listed factors in ORR Policy Guide § 1.2.1 are child welfare factors); Ex. 1 [ORR Policy Guide] § 1.2.1 at 23 (nothing in ORR policy suggesting that the listed factors are child welfare factors); DX-15 [Biswas Dep. Tr.] at 47:7–48:5 (no testimony regarding these factors being child welfare factors); DX-16 [De La Cruz Dep. Tr.] at 158:2–9 (same), 233:22-234:14 (same); DX-11 [ORR Juvenile Coord. Rep.] at 26–27 (discussing placement criteria but no indication that these placement considerations are child welfare factors); DX-07 [Mohn Dep. Tr.] at 132:19–133:1 (regarding care provider interviews that steps are taken to only step up when there are safety concerns); DX-09 [Antkowiak Decl.] ¶¶ 7–8 (referring to ORR Policy Guide § 1.4.1 not 1.2.1). <br><br> Plaintiffs also dispute that Defendants' cited evidence establishes a "practice" of placing UACs in the least restrictive setting that is in the best interest of the child. In practice, ORR has erroneously stepped up children to restrictive placements and erroneously refused children step-down from restrictive placements. ECF No. 144 [Answer] ¶ 75; Ex. 33 [Ray Dep. Tr.] at |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

25

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | 148:16–22, 152:14–153:22, 157:10–158:17, 162:7–10, 163:14–164:12, 166:23–167:7, 170:19–23; Ex. 43 [Ray Dep. Ex. 117] at 1261–62; Ex. 139 [Ray Dep. Ex. 118] at 2028; Ex. 44 [Ray Dep. Ex. 119] at 1264; Ex. 16 [Contreras Dep. Tr.] at 71:3–12, 75:11–76:1, 76:18–77:3, 77:5–78:1, 80:2–17, 105:5–106:22, 113:12–114:17, 151:17–152:8, 155:1–5; Ex. 22 [Fields Dep. Tr.] at 123:5–16, 148:8–23, 172:7–15; Ex. 23 [Fink Dep. Tr.] at 40:13–17, 153:8–13; Ex. 24 [Heath Dep. Tr.] at 98:5–16, 99:3–7, 212:16–23; Ex. 14 [Castaneda Dep. Tr.] at 74:13-76:7; Ex. 151 [Castaneda Dep. Tr.] at 88:21–90:9; Ex. 20 [Eich Dep. Tr.] at 108:7–109:5; Ex. 96 at 1757 ("some of the minors were inappropriately placed in secure"); Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 348:12–24, 393:1–7; Ex. 35 [Smith Dep. Tr.] at 82:20–83:5, 162:16–163:8; Ex. 18 [De La Cruz Dep. Tr.] at 162:3–16, 163:7–164:5; Ex. 17 [Cook Dep. Tr.] at 197:21–25; Ex. 28 [Murray Dep. Tr.] at 193:10–17, 156:18–23, 158:6–21, 170:3–7, 184:20-189:4, 192:18–193:4; Ex. 47 [Murray Dep. Ex. 162] at 1278 ("I have several cases at yolo that are in need of RTC but our RTC keep rejecting them."); Ex. 168 [Vergara Dep. Tr.] at 129:15–130:17; Ex. 39 [Vergara Dep. Tr.] at 257:6–10; Ex. 182 [Urquiza Expert Rep.] at 346. |

Unnecessarily stepping up children
may be contrary to their best interest

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

26

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | and detrimental to their long-term psychological well-being. Ex. 6 [RFA 2nd Set] Nos. 169–70 at 542–44. Failing to step-down children who are ready for step-down can be detrimental to their long-term psychological well-being and is contrary to their best interest. *Id.*, Nos. 172–73 at 544–46; Ex. 24 [Heath Dep. Tr.] at 215:7–10. |
| **37.** Staff-secure facilities are for children who require close supervision but do not require placement in a secure facility.<br><br>ORR Guide § 1.2.4; ORR Guide to Terms; ORR Juvenile Coord. Rep. at 26-27; Biswas 30(b)(6) Dep. 12:16-22; Antkowiak Decl. ¶ 12; Biswas Decl. ¶ 30 | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR Policy provides "A staff secure facility is…for UAC who require close supervision, but do not require placement in a secure care provider facility." Ex 1 [ORR Policy Guide] § 1.2.4 at 24; *see also id.* at 21; DX-11 [ORR Juvenile Coord. Rep.] at 26–27 (summarizing ORR policy).<br><br>To the extent it is implied, Plaintiffs dispute that in practice ORR always places children in staff-secure facilities in compliance with its own policy criteria. *See* Ex. 23 [Fink Dep. Tr.] at 153:8–13; Ex. 20 [Eich Dep. Tr.] at 108:7–109:5. |
| **38.** It is ORR's policy and practice that staff-secure facilities provide a heightened level of staff supervision with a 1:4 caregiver to child ratio, increased communication, and services to control problem behavior and prevent escape.<br><br>ORR Guide § 1.2.4; Biswas 30(b)(6) Dep. 12:16-19, 28:17-22; De La Cruz Dep. 121:20-122:7, 217:2-7; Vergara | **Partially Disputed.**<br>Plaintiffs do not dispute that staff-secure facilities provide a heightened level of staff supervision and behavioral plans and that the environment and structure is guarded to prevent escape. Ex. 23 [Fink Dep. Tr.] at 53:24–54:17; Ex. 128 at 1957 (recommending gated staff-secure |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Dep. 88:18-20, 89:8-23; Antkowiak Dep. 146:2-6, 157:1-5; ORR Juvenile Coord. Rep. at 26-27; Antkowiak Decl. ¶ 12. | placement); Ex. 129 at 1960–61 (same); Ex. 130 at 1969 (same). |
|  | Plaintiffs dispute that Defendants' cited evidence establishes that staff-secure facilities provide a caregiver to child ratio of 1:4, "increased communication, and services to control problem behavior and prevent escape." *See, e.g.*, Ex. 1 [ORR Guide] § 1.2.4 at 24–25 (Section 1.2.4 does not provide guidance on staff ratio, increased communication, services to control problem behavior or prevent escape, or how to address behavior or escape risk stemming from disruptive behavior, non-violent criminal history, or reported gang involvement); DX-02 [Biswas 30(b)(6) Dep. Tr.] at 12:16–19 (mentioning a higher staff-to-child ratio but not what that ratio is), 28:17–22 (same); DX-16 [De La Cruz Dep. Tr.] at 121:20–122:7 (focusing on staff-secures having "more structure" and staff being trained to focus on behavior management, but nothing else), 217:2–7 (regarding more staff supervision); DX-05 [Vergara Dep. 88:18–20, 89:8–23 (staff-secure facilities address behavioral issues and some kids with criminal backgrounds); DX-01 [Antkowiak Dep. Tr.] at 146:2–6 (staff secures have more staff and more supervision, but no reference to actual staff ratio), 157:1-5 (staff-secures have higher ratio but doesn't |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

28

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | know the actual ratio); DX- 11 [ORR Juvenile Coord. Rep.] at 26–27 (same); DX-09 [Antkowiak Decl.] ¶ 12 (staff secures have higher ratio and provide behavioral plans); *see also* Ex. 157 [Fink Dep. Tr.] at 96:11–98:4 (behavioral management systems at staff secure facilities are not working). |
| **39.** The staff-secure atmosphere reflects a shelter facility: they are not equipped internally with multiple locked pods or cell units, physical restraints, or employ other security devices typically found in secure settings.<br><br>ORR Juvenile Coord. Rep. at 27; ORR Guide to Terms; Cook Dep. 113:5-14; Dr. Ryan Dep. 260:19-261:16; Dr. Earner Dep. 93:1-12; Antkowiak Decl. ¶ 12. | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that staff-secure facilities are not equipped internally with multiple locked pods or cell units.<br><br>Plaintiffs dispute that staff-secure facilities do not use physical restraints or security measures like gates or fencing which are typically found in secure settings. Staff-secure facilities can be gated, enclosed, fenced facilities. Ex. 23 [Fink Dep. Tr.] at 53:24–54:17; Ex. 128 at 1957 (recommending gated staff-secure placement); Ex. 129 at 1960–61 (same); Ex. 130 at 1969 (same); Ex 180 [Quinn Expert Rep.] at 330–333. |
| **40.** In almost all states, staff-secure facilities have the same state licensing requirements as shelters.<br><br>Biswas Dep. 234:24-25; Biswas 30(b)(6) Dep. 12:16-18, 28:17-22, 29:5-8; De La Cruz Dep. 136:4-8; Antkowiak Dep. 146:2-6; ORR Juvenile Coord. Rep. at 27; Antkowiak Decl. ¶ 12; Biswas Decl. ¶ 30. | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that in almost all states, staff-secure facilities have the same state licensing requirements as shelters.<br><br>Plaintiffs dispute this fact to the extent Defendants suggest the same state licensing requirements means the two different types of facilities are equally restrictive or have the |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | same criteria for admission. Joint Stip. ¶ 53 ("Staff-secure facilities are more restrictive than shelters."); Ex. 1 [ORR Policy Guide] § 1.2.4 at 24 (one criteria for staff-secure placement is being unsuitable for shelter placement); Ex. 64 [H.A.R.M. Decl.] ¶¶ 2, 6–7 at 1440–41 (describing restrictions at Children's Village staff-secure); DX-02 [Biswas 30(b)(6) Dep. Tr.] at 12:16–19 ("We have what are known as staff secure facilities, which are essentially just licensed shelters. However, the ratio of staff is higher to maintain security and prevent escape."), 28:17–22 (same); Ex. 148 [Antkowiak Dep. Tr.] at 91:22–25 ("So most of our programs are shelters. So traditional shelter beds, nonsecure beds. We have staff secure beds, which has a higher ratio of staff to kids."), 139:19–25 (children are not generally placed in a staff secure placement first. "It's usually a step-up because they have been placed in a shelter first. And then whatever behaviors are occurring in that shelter may result in their step-up to staff-secure."). |
| 41. It is ORR's policy and practice that secure facilities are for youth who require the strictest level of supervision, and must have access to specialized services for UACs with substance abuse problems, anger management issues, mental health issues, and/or other special behavioral | **Partially Disputed.** Plaintiffs do not dispute that ORR's Policy Guide states that "[s]ecure facilities are for youth who require the strictest level of supervision." Ex. 1 [ORR Policy Guide] § 1.2.4 at 24. Nor do Plaintiffs dispute that ORR funding announcements include a requirement that secure facilities have |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

30

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| needs.<br><br>ORR Guide § 1.2.4; Cook Dep. 109:7-16; Antkowiak Decl. ¶ 11. | access to specialized services for UACs with substance abuse problems, anger management issues, mental health issues, and/or other special behavioral needs. DX-09 [Antkowiak Decl.] ¶ 11.<br><br>Plaintiffs dispute that Defendants' cited evidence supports the statement that it is ORR's policy and practice to require that secure facilities have access to these "specialized services." *See, e.g.*, Ex. 153 [Cook Dep. Tr.] at 106:20–107:25 (SVJC is "not a treatment facility" and "we're not coming up with treatment plans on treating them because we're not a treatment facility."); Ex. 151 [Castaneda Dep. Tr.] at 60:24–61:5 (referrals to Yolo secure are inappropriate when mental health needs are greater than they can handle); *id*. at 62:3–10 (Yolo not equipped to house youth that require direct supervision and have self-injurious behavior); Ex. 14 [Castaneda Dep. Tr.] 74:13–75:4 (Yolo did not agree with secure placement for youth that are considered a danger to self and did not consider secure placement appropriate for those youth).<br><br>Plaintiffs also dispute that it is ORR's "practice" to only place youth who require the strictest supervision in secure facilities. In practice, ORR has erroneously stepped up children to restrictive settings, including secure |

Cooley LLP
Attorneys At Law
Los Angeles

31

Plaintiffs' Statement of Genuine
Dispute of Material Fact
Case No. 2:18-cv-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | detention facilities. Ex. 33 [Ray Dep. Tr.] at 148:16–22, 152:14–153:22 (reasons for placement in secure stated, "were not adequate or appropriate for placement in secure"), 157:10–158:17 (ORR policy analyst explained that "I couldn't tell if he met the criteria for placement in secure. I reviewed some of the significant incident reports, and from what I recall, they also did not speak to dangerousness." She also confirmed that she concluded that "the kid was more of an annoyance than an actual danger when they got stepped up to Yolo."), 162:7–10 ("In the beginning I saw noncompliance issues with kids just being inappropriately stepped up to secure where they didn't meet the criteria."), 163:14–164:12; 166:23–167:7; Ex. 43 [Ray Dep. Ex. 117] at 1261–62; Ex. 139 [Ray Dep. Ex. 118] at 2028; Ex. 44 [Ray Dep. Ex. 119] at 1264 (Email from Policy Analyst Ray to Senior Supervisory Policy Counsel for ORR, Toby Biswas, regarding a list of compliance issues she has seen with respect to secure facilities, including compliance issues with respect to ORR Policy Guide sections 1.2.4 and 1.2.5 where children have been placed "in secure based on risk of escape" or "suspected gang membership or affiliation only."); Ex. 16 [Contreras Dep. Tr.] at 71:3–12 (Secure facility lead case manager admitting that there have been situations where a youth's behavioral |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

32

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | pattern did not merit secure placement), 75:11–76:1 (Youth have been referred to Shenandoah secure based solely on nonviolent offenses where youth would better fit criteria for staff-secure placement.), 76:18–77:3, 77:5–78:1, 105:5–106:22; Ex. 24 [Heath Dep. Tr.] at 99:3–7 (In the past, when an RTC would not accept a child who had mental health needs, the child would be transferred to a secure facility.).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 3. |
| **42.** It is ORR's policy and practice that ORR may place a child in a secure facility only if the child poses a danger to self or others, has been charged with or convicted of a criminal offense, or is chargeable with such an offense.<br><br>ORR Guide § 1.2.4; Biswas 30(b)(6) Dep. 12:19-22, 265:18-266:21, 437:23-438:24; Fink Dep. 106:16-22, 118:21-25; Cook Dep. 124:20-24; ORR Juvenile Coord. Rep. at 28; Antkowiak Decl. ¶ 11. | **Partially Disputed.**<br>Plaintiffs do not dispute that it is ORR's current policy that "ORR only places an unaccompanied alien child in a secure facility if the child: 1. Poses a danger to self or others; or 2. has been charged with or convicted of a criminal offense, or is chargeable with such an offense." Ex. 1 [ORR Policy Guide] § 1.2.4 at 24.<br><br>Plaintiffs dispute that it is ORR's "practice" to "only" place children in secure facilities when the criteria under ORR Policy § 1.2.4 are satisfied. In practice, children have been detained in secure settings despite the fact that placement violates the FSA and does not meet ORR's secure placement policy requirements. Ex. 33 [Ray Dep. Tr.] at 152:14–153:22 (reasons stated for |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

33

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | placement in secure "were not adequate or appropriate for placement in secure"); 157:10–158:17 (ORR policy analyst explained that "I couldn't tell if he met the criteria for placement in secure. I reviewed some of the significant incident reports, and from what I recall, they also did not speak to dangerousness." She also confirmed that she concluded that "the kid was more of an annoyance than an actual danger when they got stepped up to Yolo."), 162:7–10 ("In the beginning I saw noncompliance issues with kids just being inappropriately stepped up to secure where they didn't meet the criteria."), 163:14–164:12 ("the majority of kids were inappropriately sheltered"); Ex. 16 [Contreras Dep. Tr.] at 71:3–12 (Secure facility lead case manager admitting that there have been situations where a youth's behavioral pattern did not merit secure placement), 80:2–17; *Flores*, 2018 WL 10162328, at *14 ("Defendants have breached the Flores Agreement insofar as ORR has placed Class Members in secure facilities solely on the basis of one or more of the italicized portions of the Notice of Placement form and absent probable cause to believe that the individual has committed a specified offense.")<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 4. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

34

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **43.** There are child welfare experts who hold the view that secure settings are not the preferred treatment environment, but are necessary for the safety and well-being of children.<br><br>Dr. Ryan Expert Rep. ¶ 36; Dr. Earner Dep. 96:18-97:10. | **<u>Partially Disputed.</u>**<br>Plaintiffs do not dispute that Defendants' purported experts hold this view, but dispute Defendants' statement to the extent it suggests Defendants purported experts are, in fact, experts qualified to render an opinion in this case or that child welfare experts hold the view that secure placements are always necessary for the safety and well-being of children. DX-06 [Earner Dep. Tr.] at 96:18–97:10 (there are instances when children are a danger to themselves and others that you do have to have secure facilities for them); Ex. 174 [Block & Farley Expert Rep.] at 284 ("A lack of effective or timely assessments also creates a higher risk of inappropriate transfer to more restrictive settings based on misunderstanding or misdiagnosis of a child's behavior…[FFF Supervisor] David Fink…testified that children with intellectual and cognitive disabilities are sometimes inappropriately placed at secure facilities because the transferring facility 'might not have the bandwidth or the capacity to evaluate [the child], so they might get misdiagnosed when they come in.'"); *id.* at 15 (consideration of dangerousness for secure placements "[f]ails to take into consideration the application of less drastic responses such as the use of additional staffing or one to one supervision"). |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

35

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **44.** A residential treatment center is a sub-acute, time limited, interdisciplinary, psycho-educational, and therapeutic 24-hour-a-day structured program with community linkages, is provided through individualized care, specialized services and interventions, and differs significantly from involuntary, acute inpatient psychiatric hospitalization.<br><br>ORR Guide to Terms; ORR Juvenile Coord. Rep. at 28; Vergara Dep. 202:12-20; Cook Dep. 113:14-114:4; De La Cruz Dep. 47:14-21; Antkowiak Decl. ¶ 14; Biswas Decl. ¶ 32. | **Disputed.**<br>Plaintiffs dispute that a residential treatment center is a subacute program. DX-02 [Biswas 30(b)(6) Dep. Tr.] at 13:7–11 ("Residential treatment centers are facilities for children with pretty severe, *acute* mental health, psychiatric problems, who are determined to be a danger to self or others by a licensed psychiatrist.") (emphasis added).<br><br>Plaintiffs dispute that a residential treatment center is a "time limited" program. DX-02 [Biswas 30(b)(6) Dep. Tr.] at 32:5–13 (no strict time limit for RTC placement); Ex. 162 [Murray Dep. Tr.] at 200:1–16 (child held at Shiloh more than a year); Ex. 163 [Ruiz Dep. Tr.] at 278:12–25 (child at Shiloh probably 18 months).<br><br>To the extent the term "community linkages" is meant to indicate that children have access to the community, Plaintiffs dispute this fact. *See* Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 14:5–9 (ORR generally thinks of RTCs as the same level of restriction as a secure placement); Ex. 160 [Lawrence Dep. Tr.] at 256:5–258:3 (explaining that it is difficult for child to step down directly from RTC to URM or LTFC because programs like to see child in "more community-based environment" first); Ex. 78 [Sirena P. Decl.] ¶ 8 at 1506 (preferred shelter because could go on field trips); Ex. 79 [P.D.O.P. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

36

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Decl.] ¶ 16 at 1511 (feels incarcerated and wants to have a life outside the facility); Ex. 69 [K.N.A.T. Decl. Dec. 1, 2017] ¶ 3 at 1466 (Shiloh is locked and no one is free to leave).<br><br>Plaintiffs dispute that a residential treatment center differs from *involuntary* inpatient care. Children have reported that they did not want to be at the residential treatment center but had no choice in the matter. Ex. 149 [Biswas Dep. Tr.] at 247:4–10 (children that are going to be transferred to an RTC are a run risk "[b]ecause I don't think most children want to be at RTC"); Ex. 168 [Vergara Dep. Tr.] at 126:21–127:7 (children get upset when told they need to stay at Shiloh); Ex. 82 [Y.A.M.S. Decl.] ¶¶ 11, 16 at 1526–1527 (child reports that he hated being at Shiloh and that he only took his medication because he was told if he did not he would not leave the facility and he wanted to leave); Ex. 67 [K.L.F. Decl.] ¶¶ 2, 3 at 1457 (children at Shiloh are not free to leave; "[t]he doctor has said I can't leave until I can control myself."); Ex. 69 [K.N.A.T. Decl.] ¶ 3 at 1466 ("the children are detained here and not free to leave"); Ex.70 [K.S.G.P. Decl.] ¶ 2 at 1470 (child stating that she does not want to be at Shiloh); Ex. 75 [M.Y.R.M. Decl.] ¶ 4 at 1495 (minor was told that if she took her |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | medication the doctor would release her so she took her medication). Plaintiffs dispute that RTCs provide individualized care, specialized services and interventions. *See* Ex. 166 [Urquiza Dep. Tr.] at 111:12–23, 134:21–135:14, 150:6–16; Ex. 175 [Cruise & Rasmussen Expert Rep.] at 296 ("Across the files we reviewed, step ups did not increase the likelihood that UACs were provided with more specialized mental health treatments that better matched their documented mental health diagnoses."). Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 6, 18. |
| 45. Residential treatment centers provide highly-customized care and services to individuals following either a community based placement or more intensive intervention, with the aim of moving individuals toward a stable, less intensive level of care or independence. ORR Guide to Terms; ORR Juvenile Coord. Rep. at 28; Sualog Dep. 76:13-18; Vergara Dep. 88:18-89:23, 105:5-12; De La Cruz Dep. 236:21-25; Dr. Lubit Dep. 51:21-52:9, 86:19-24; Antkowiak Decl. ¶ 13; Biswas Decl. ¶ 34. | **Disputed.** Plaintiffs dispute that RTCs provide "highly-customized care and services to individuals". *See* Ex. 166 [Urquiza Dep. Tr.] at 111:12–23, 134:21–135:14, 140:17–25; 150:6–16; *see* Ex. 175 [Cruise & Rasmussen Expert Rep.] at 296 ("Across the files we reviewed, step ups did not increase the likelihood that UACs were provided with more specialized mental health treatments that better matched their documented mental health diagnoses"). Some children are placed in residential treatment centers directly from Border Patrol custody. *See* Ex. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

38

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | 170 [Fields Dep. Ex. 185] at 261 (listing the "Initial Recommender for RTC Placement" for two UACs as "Border Medical"); Ex. 156 [Fields Dep. Tr.] at 189:1–193:25 (authenticating Fields Dep. Ex. 185); Ex. 191 (CBP referral to place two children into ORR; emails among ORR intakes members and other ORR officials to try to place these children directly into Shiloh RTC).<br><br>In some instances, a provider has failed to offer services or intervention before step-up. *See* Ex. 23 [Fink Dep. Tr.] at 40:13–17 (There have been times when a provider has failed to offer services or intervention prior to requesting transfer out of their program); *see also* Ex. 175 [Cruise & Rasmussen Expert Rep.] at 296 ("Step-ups justified by mental health diagnoses do not seem to be necessary to meet the UACs' needs or protect the safety of others. First, prior to step up, there is uneven implementation of recommended accommodations (aside from pharmacology). If ORR staff more consistently addressed recommended accommodations, step ups may have been prevented. Second, there is no evidence that accessing community mental health treatment services was considered during the accommodations process. Failure to consider community-based treatment options, particularly at lower levels of restrictive placement (e.g., shelters) |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

39

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | indicates these ORR facilities failed to explore treatment options that could have prevented further mental health decline and avoid step up to more restrictive levels of care.") |
| **46.** It is ORR's practice that a child may be placed at a residential treatment center only if a licensed psychologist or psychiatrist determines that the child is danger to themselves or others, and that the child requires therapeutic-based intensive supervision as a result of mental health symptoms.<br><br>Meyerstein Dep. 232:4-16, 233:7-15, 235:9-237:10; Biswas Dep. 189:17-191:9, 217:6-8, 219:18-220:5; Biswas 30(b)(6) Dep. 13:5-11, 14:20-15:5, 267:16-20; Fink Dep. 127:13-17, 147:10-25, 248:10-16; De La Cruz Dep. 211:12-23, 236:21-25; Sualog Dep. 76:13-18; Vergara Dep. 104:14-23, 105:5-12; ORR Juvenile Coord. Rep. at 27-28;  Antkowiak Decl. ¶ 14; Biswas Decl. ¶ 34. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR's policy currently states "A UAC may only be placed into an RTC if the youth is determined to be a danger to self or others by a licensed psychologist or psychiatrist…In addition, ORR will consider a transfer to an RTC only if a licensed psychologist or psychiatrist has determined" the UAC satisfies additional criteria listed in ORR Policy Guide § 1.4.6. Ex. 1 [ORR Policy Guide] § 1.4.6 at 30. However, prior to October 10, 2018, ORR did not require a recommendation from a licensed psychologist or psychiatrist in order to place a child in an RTC. Ex. 187 at 380; Ex. 132 [ORR Policy Record of Posting and Revision Dates] at 1975.<br><br>Plaintiffs do not dispute that one of the criteria in § 1.4.6 is "[t]he unaccompanied alien child requires therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent him or her from independent participation in the daily schedule of activities." Ex. 1 [ORR Policy Guide] § 1.4.6 at 30. However, Plaintiffs dispute that those policies (or any of the cited evidence) also |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

40

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | reflect ORR's practice to "only" place a child in an RTC "if the child requires therapeutic based intensive supervision as a result of mental health symptoms." Ex. 152 [Contreras Dep. Tr.] at 124:13–16 (child does not have to satisfy all four bullets of RTC placement criteria); Ex. 156 [Fields Dep. Tr.] at 242:17–243:16 (need to meet one or more bullets in RTC criteria).<br><br>Plaintiffs dispute that, to the extent ORR now has policies related to the above subject-matter, that those policies (or any of the cited evidence) also reflect ORR's past and current practices. Defendant have placed UACs in RTCs without a recommendation from a licensed psychiatrist or psychologist. ECF No. 144 [Azar Answer] ¶ 31 ("Defendants admit that ORR transferred Lucas R to Shiloh RTC at the end of May 2018 based on the recommendation of a psychiatric mental health nurse practitioner."); Ex. 162 [Murray Dep. Tr.] at 151:6–152:15.<br><br>Plaintiffs dispute that all children placed in residential treatment centers have been determined to be a danger to themselves or others by a licensed psychologist or psychiatrist. *See* Ex. 156 [Fields Dep. Tr.] at 188:9–24 (agreeing that "not all UACs are referred to Shiloh or any RTC for reasons that they pose a risk to self or |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

41

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | others"); *see also* Ex. 169 [Fields Dep. Ex. 184] at 259; Ex. 163 [Ruiz Dep. Tr.] at 259:19–25 (indicates that it is not a requirement that a child be a danger to themselves or others to be accepted at Shiloh "because they could be coming in for a different reason other than suicidality, for example, psychoses or aggression"); Ex. 160 [Lawrence Dep. Tr.] at 209:3–211:8 (cannot confirm whether RTC placement recommendation letters state that a child is a danger to themselves or others); Ex. 168 [Vergara Dep. Tr.] at 104:23–105:12 (same); Ex. 195 at 534–537 (Sept. 2019 RTC recommendation letter and approved Transfer Request; with no mention of danger to self/others).<br><br>A child who is an immediate danger to themselves or others is transferred to a hospital rather than an RTC. DX-09 [Antkowiak Decl.] ¶ 14 ("ORR only uses an RTC at the referral of a psychiatrist or psychologist. A child who required inpatient hospitalization would have to have shown some stability of symptoms to be placed at an RTC; otherwise, an RTC would not necessarily be able to meet the needs of an actively suicidal or homicidal minor."); Ex. 154 [De La Cruz Dep. Tr.] at 149:13–150:6 (child will remain in hospital until not an imminent danger to themselves). |

Cooley LLP
Attorneys At Law
Los Angeles

42

Plaintiffs' Statement of Genuine
Dispute of Material Fact
Case No. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **47.** It is ORR's practice that a child may remain in a residential treatment center placement only if a licensed psychiatrist or psychologist determines that the child continues to be a danger to themselves or others.<br><br>Biswas Dep. 199:22-200:6; Biswas 30(b)(6) Dep. 13:7-11; Fink Dep. 122:3-18; ORR Juvenile Coord. Rep. at 27, 28; Antkowiak Decl. ¶ 29; Biswas Decl. ¶ 47. | **Disputed.**<br>Plaintiffs dispute Defendants' statement insofar as Defendants misstate the evidence. Plaintiffs further dispute that ORR's practice is to keep a child in an RTC *only* if a licensed psychiatrist or psychologist determines the child continues to be a danger to themselves or others. *See* Ex. 163 [Ruiz Dep. Tr.] at 274:17–22 (assessment of whether child is a danger to themselves or others is "done whenever we meet with the patient, but it's not a requirement from ORR that something like that has to be found"); *id.* 259:19–261:23 (dangerousness assessment not required by ORR policy; will assess danger to self or others *if* that is the reason they were admitted); *id.* 270:20–272:19; *see also* Ex. 172 [Lawrence Dep. Ex. 338] at 266–269 (Lucas R. NOP, no reference to danger to self/others); Ex. 160 [Lawrence Dep. Tr.] at 227:20–231:23.<br><br>Children also remain at RTCs even after a psychiatrist or psychologist has determined that the child is ready to step down to a less restrictive placement.  Ex. 163 [Ruiz Dep. Tr.] at 278:12–279:19; Ex. 160 [Lawrence Dep. Tr.] at 238:18–239:6 (children have remained at Shiloh up to six months after step-down recommendation); Ex. 28 [Murray Dep. Tr.] at 188:20–189:20; Ex. 156 [Fields Dep. Tr.] at 148:8–150:3. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

43

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **48.** ORR's two residential treatment centers, Shiloh and MercyFirst, are based on a group home model where residents sleep without locked doors and there is a higher staff-to-minor ratio than in shelters, and are accredited by an accrediting organization.<br><br>Meyerstein Dep. 223:23-225:1; Sualog Dep. 51:20-52:5; Antkowiak Decl. ¶ 13; ORR Juvenile Coord. Rep. at 28. | **Partially Disputed.**<br>Plaintiffs do not dispute that "ORR's two residential treatment centers, Shiloh and MercyFirst" have "higher staff-to-minor ratio than in shelters, and are accredited by an accrediting organization."<br><br>Plaintiffs dispute that children detained in RTCs sleep "without locked doors." As noted by this Court, "Shiloh RTC is a locked facility with 24-hour surveillance and monitoring." *Flores*, 2018 WL 10162328, at *10 . Children detained in these ORR RTCs also report the facilities are locked facilities. Ex. 70 [K.S.G.P. Decl.] ¶ 2 at 1470; Ex. 69 [K.N.A.T. Decl. Dec. 1, 2017] ¶ 3 at 1466; Ex. 76 [M.Y.R.M. Supp. Decl.] ¶ 2 at 1498.<br><br>Moreover, Defendants have admitted that RTCs are similarly restrictive as secure facilities, the most restrictive level of detention provided by ORR. Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 14:5–9 (secure and RTCs are generally the same level of restriction); Ex. 24 [Heath Dep. Tr.] at 135:9–12 (RTCs and secure facilities are the most restrictive settings for placement); Joint Stip. ¶ 50.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 5. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **49.** It is ORR's policy and practice that when ORR transfers a UAC from one facility to another, or determines a more restrictive level of placement remains warranted, it does so only after a consultation process occurs between the case manager, the case coordinator, and the FFS.<br><br>ORR Guide § 1.4.2, *see also id.* § 1.4; Biswas Dep. 65:23-66:9, 104:16-105:9, 199:22-200:6; Sualog Dep. 45:11-16; De La Cruz Dep. 247:8-248:9; Vergara Dep. 110:13-111:4; Contreras Dep. 98:19-99:25; ORR Juvenile Coord. Rep. at 26, 27, 30; Antkowiak Decl. ¶ 15; Biswas Decl. ¶¶ 39, 45. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶¶ 7, 21. |
| **50.** It is ORR's practice that when assessing a possible transfer, care providers must consider information from assessment tools, interviews, the location of the UAC's sponsor or family in the United States, applicable records, and information from stakeholders such as the UAC's legal service provider, attorney of record, or child advocate.<br><br>Biswas Dep. 209:17-25; Biswas 30(b)(6) Dep. 71:13-17, 112:16-113:4; Contreras Dep. 61:20-62:20, 147:14-21; De La Cruz Dep. 247:8-248:9; Trevino Dep. 358:23-25; Heath Dep. 213:7-18; Smith Dep. 94:6-95:7; ORR Juvenile Coord. Rep. at 30; Antkowiak Decl. ¶ 23. | **Partially Disputed.** Plaintiffs dispute Defendants' use of the words "must" and "practice."<br><br>Plaintiffs dispute that the ORR Policy Guide § 1.4 includes the term "must" when describing factors a care provider considers in assessing a possible transfer, thereby giving discretion to consider these factors and/or other things. Ex. 1 [ORR Policy Guide] § 1.4 at 28 ("Care providers also take into consideration information from the referring Federal entity, child assessment tools, interviews, location of the child's sponsor or family in the U.S., records from local, State, and Federal agencies, and information from stakeholders, including the child's legal service provider, attorney of |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

45

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | record or Child Advocate, as applicable, when making transfer recommendations.")<br><br>Moreover, Plaintiffs dispute that the Policy Guide § 1.4, which lists factors that can be considered, as well as Defendants' cited evidence, establishes a practice of *requiring* care providers to consider all of the listed factors. *See* DX-15 [Biswas Dep. Tr.] at 209:17–25 (no indication of what factors care providers "must" consider in practice); DX-02 [Biswas 30(b)(6) Dep. Tr.] at 71:13–17 (same), 112:16-113:4 (same); DX-22 [Contreras Dep. Tr.] at 61:20–62:20, 147:14–21 (same); DX-16 [De La Cruz Dep. Tr.] at 247:8–248:9 (same); DX-18 [Treviño Dep. Tr.] at 358:23–25 (same); DX-26 [Heath Dep. Tr.] at 213:7–18 (same); DX-28 [Smith Dep. Tr.] at 94:6–95:7 (same); DX-11 [ORR Juvenile Coord. Rep.] at 30 (listing what evidence must be considered under policy but not establishing a practice of following policy); DX-09 [Antkowiak Decl.] ¶ 23 (no indication of what factors care providers "must" consider in practice). |
| 51. It is ORR's policy and practice that in assessing whether a step-up is appropriate or remains warranted, the case manager, case coordinator, and FFS staff the case and confer to determine whether the UAC's behavior, criminal history, or self-disclosures require placement in a | **Partially Disputed.**<br>Plaintiffs dispute this fact to the extent it implies self-disclosures are always voluntary or that the youth knows such statements made in the confidence of a licensed psychologist or psychiatrist or case worker are not confidential and can be used against |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| more restrictive environment, using the factors identified in the ORR Guide.<br><br>ORR Guide § 1.4.2; Biswas Dep. 53:21-25, 104:16-105:9; Biswas 30(b)(6) Dep. 117:4-7; Vergara Dep. 87:4-16, 110:13-111:4; ORR Juvenile Coord. Rep. at 27, 30; Contreras Dep. 98:19-99:25; Padilla Dep. 81:1-17; Ray Dep. 76:8-17, 150:1-11; Antkowiak Decl. ¶¶ 15-16, 24; Biswas Decl. ¶ 45. | them. *See e.g.*, Ex. 151 [Castaneda Dep. Tr.] at 110:19–111:15 (youth are likely to self-disclose gang involvement if they have built trust with somebody, but not aware if youth are told about this information being used against them); Ex. 155 [Eich Dep. Tr.] at 207:3–4 ("It's my understanding that nothing in ORR is confidential.").<br><br>Plaintiffs also dispute this statement to the extent it implies that case managers, case coordinators, and FFS have correct and sufficient information to assess the appropriateness of the step-up and continued restrictive placement, or that the ORR Policy Guide is sufficient guidance to make these determinations. Ex. 151 [Castaneda Dep. Tr.] 116:22–117:17 (misrepresented or mis-documented reports can lead to unnecessary step ups and the way things are documented can "make it seem like more than what it was"); *id.* 116:2–6 (vague criteria for step up has led to increased number of referrals to secure placements); *id.* 117:22–118:7 (misrepresentation of issues in documentation—like destruction of property being destruction of a pencil or assault was really a "shoulder bump"—"the way it was documented, it presented it as being a more larger scale problem when it probably wasn't"). |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 7, 21. |
| **52.** It is ORR's policy and practice that step ups may occur when a more restrictive level of care is in the best interests of the child and necessary for the safety of the child and others.<br><br>ORR Guide § 1.4; ORR Juvenile Coord. Rep. at 26; Padilla Dep. 81:15-19; Murray Dep. 118:5-9; Fink Dep. 40:13-41:6; Smith Dep. 109:14-17; Antkowiak Decl. ¶ 18. | **Partially Disputed.**<br>Plaintiffs do not dispute that the ORR Policy Guide and the ORR MAP provide for the placement of a UAC in the least restrictive setting that is in the best interest of the child.<br><br>Plaintiffs dispute Defendants' statement to the extent is suggests that ORR in "practice" places UACs in the least restrictive setting that is in the best interest of the child. In practice, ORR has erroneously stepped up children to restrictive placements. ECF No. 144 [Answer] ¶ 75; Ex. 33 [Ray Dep. Tr.] at 148:16–22, 152:14–153:22, 157:10–158:17, 162:7–10, 163:14–164:12, 166:23–167:7; Ex. 43 [Ray Dep. Ex. 117] at 1261–62; Ex. 139 [Ray Dep. Ex. 118] at 2028 ("the NOP was so vague and did not contain enough information to know if [minor] is an actual danger to self or others"); Ex. 44 [Ray Dep. Ex. 119] at 1264; Ex. 16 [Contreras Dep. Tr.] at 71:3–12, 75:11–76:1, 76:18–77:3, 77:5–78:1, 80:2–17, 105:5–106:22, 113:12–114:17; Ex. 22 [Fields Dep. Tr.] at 123:5–16, 172:7–15; Ex. 23 [Fink Dep. Tr.] at 40:13–17, 153:8–13; Ex. 24 [Heath Dep. Tr.] at 98:5–16, 99:3–7; Ex. 14 [Castaneda Dep. Tr.] at 74:13-76:7; Ex. 151 [Castaneda Dep. Tr.] at 88:21–90:9; Ex. 20 [Eich Dep. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Tr.] at 108:7–109:5; Ex. 96 at 1757 ("some of the minors were inappropriately placed in secure"); Ex. 182 [Urquiza Expert Rep.] at 346.<br><br>Unnecessarily stepping up children may be contrary to their best interest and detrimental to their long-term psychological well-being. Ex. 6 [RFA 2nd Set] Nos. 169–70 at 542–44.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 8. |
| **53.** In the placement process, case managers, case coordinators, and FFS can consult with the FFS Supervisor for Special Populations, the Senior Advisor for Child Well-Being, the Senior FFS Supervisor, the Division of Health and Unaccompanied Children, members of the ORR Division of Policy and Procedure, and the Deputy Director of ORR on step-up decisions.<br><br>Fink Dep. 16:1-6, 17:13-23, 23:15-21, 24:16-25:1, 78:2-20, 134:16-25, 168:1-16, 174:14-175:6; De La Cruz Dep. 232:15-233:1; Biswas Decl. ¶ 35. | **Partially Disputed.**<br>Plaintiffs do not dispute that "case managers, case coordinators, and FFS can consult with the FFS Supervisor for Special Populations Supervisor" and "members of ORR's Division of Policy and Procedure."<br><br>Plaintiffs dispute that the cited evidence establishes that case managers, case coordinators and FFS can consult with the Deputy Director of ORR or that anyone other than an FFS supervisor can consult with the Division of Health and Unaccompanied Children. *See* DX-19 [Fink Dep. Tr.] at 16:1–6 (defining special populations but not who is involved in the decision-making), 17:13–23 (only testifying that FFS supervisors can consult with the FFS Supervisor for special populations; no other consultation referenced), 23:15–21 (merely testifying that there |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

49

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | is no requirement for when an FFS must consult with an FFS Supervisor), 24:16–25:1 (testifying that the role of the FFS Supervisor of Special Populations is to consult and not make decisions), 78:2–20 (FFS or FFS supervisor can reach out to the FFS Supervisor for Special Populations), 134:16–25 (explaining that the FFS Supervisor of Special populations provides consults on out-of-network placements), 168:1–16 (FFS would reach out to his or her direct supervisor in complex cases), 174:14–175:6 (cases with conflicting recommendations might get staffed with the FFS Supervisor for Special populations and another FFS Supervisor to discuss; FFS Supervisor might reach out to the case coordinator for more details); DX-16 [De La Cruz Dep. Tr.] at 232:15–233:1 (FFS can consult with their supervisor and policy division; care provider can consult with FFS and policy division); DX-10 [Biswas Decl.] ¶ 35 (MAP provides that an FFS supervisor can consult with the Division of Health of Unaccompanied Children (DHUC)); *see also* Ex. 161 [Meyerstein Dep. Tr.] at 257:2–9 (not aware of a Health Division role in step-ups or step-downs). <br><br> Plaintiffs further dispute that anyone currently consults with the Senior Advisor for Child Well-being regarding step up decisions to secure |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

50

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | facilities. Ex. 156 [Fields Dep. Tr.] at 166:13–19 (not currently consulted on step-up to secure; prior to family separations was consulted two or three times a year). |
| **54.** It is ORR's policy and practice that when a UAC is stepped up to a more restrictive setting, he/she is provided with a Notice of Placement in Restrictive Setting (NOP) of the grounds for their placement in a language that he/she understands within a reasonable time (48 hours) either before or after the placement.<br><br>ORR Guide § 1.4.2; Ray Dep. 73:22-74:14, 86:9-87:3; De La Cruz Dep. 154:1-16; Biswas Dep. 68:23-69:15, 224:17-225:7, 229:25-230:7, 239:2-11; Biswas 30(b)(6) Dep. 65:2-6, 78:21-79:5, 126:17-127:24, 330:17-331:8, 335:2-10; Fink Dep. 83:15-24; Eich Dep. 161:3-162:1; ORR Juvenile Coord. Rep. at 5, 30; Antkowiak Decl. ¶ 26; Biswas Decl. ¶¶ 40-42. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR Policy Section 1.4.2 states "[w]hen a UAC is stepped up to a more restrictive setting (secure, staff-secure or RTC facility), he/she is provided with a Notice of Placement in Restrictive Setting in a language that he/she understands within a reasonable time either before or after ORR's placement decision."<br><br>Plaintiffs dispute that a child is always provided a NOP when he or she is stepped-up to a more restrictive setting; for example, therapeutic group homes are more restrictive than shelters but a child stepped up from a shelter to a therapeutic group home is not provided a NOP. Ex. 23 [Fink Dep. Tr.] at 38:9–12, 57:7–10; Ex. 28 [Murray Dep. Tr.] at 140:23–141:4; Ex. 197 at 570–571 (case notes from Children's Village therapeutic group home, states that minor wants to "step down to shelter" but case manager explained that "he was not ready yet"); Ex. 184 [E.A.R.S. Decl.] ¶¶ 3–4, 6–8 (no explanation for step up to Children's Village therapeutic group home, which has more security and restrictions than shelter; child wants to be stepped down to shelter). |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
|  | Plaintiffs dispute that it is ORR's practice to provide a NOP *either* 48 hours *before* or after the placement. Defendants' own evidence supports that in practice the NOP is provided only after placement in a restrictive setting, and sometimes provided after the 48-hour timeframe. DX-33 [Ray Dep. Tr.] at 196:11–14 (case manager is responsible for giving a NOP to the child within 48 hours *after* their placement); DX-19 [Fink Dep. Tr.] at 83:15–24 ("*when a child enters* one of the levels of care that requires a notice of placement, they're required to inform that minor within 48 hours of placement of why they're placed in the particular level of care" (emphasis added)); DX-11 [ORR Juvenile Coord. Rep.] at 30 ("*Once a UAC enters* a specialized level of care such as a Staff Secure, RTC, Secure, or OON placement setting, the ORR care provider must review the Notice of Placement (NOP) with the UAC within 48 hours of placement.") (emphasis added); DX-02 [Biswas 30(b)(6) Dep. Tr.] at 335:2–10 (NOPs have been late, especially when child transferred on Friday and the NOP is not signed until Monday or Tuesday). Plaintiffs dispute that ORR's written policies contemplate notice before a child's arrival at a new placement. Ex. 2 [ORR MAP] § 1.4.2 at 95 ("The UAC is provided specific information regarding the placement decision in a language he or she understands *upon arrival at the* |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

52

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | *receiving care provider facility*, which is included in the summary portion of the Notice of Placement in Restrictive Setting." (emphasis added)). |
| | | Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 19. |
| 55. | It is ORR's practice that when UACs are represented by counsel, ORR provides the NOP to counsel on demand.<br><br>De La Cruz Dep. 250:5-251:12; Biswas Dep. 233:13-20; Biswas 30(b)(6) Dep. 70:10-71:6, 272:20-23; Antkowiak Decl. ¶ 27; Biswas Decl. ¶ 44. | **Disputed.**<br>Plaintiffs dispute that the NOP is provided to counsel "on demand." In practice, ORR takes several weeks and often months to provide documents requested by a child's attorney. Ex. 29 [Nathan-Pineau Dep. Tr.] at 16:13–21.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 20. |
| 56. | It is ORR's policy and practice that the NOP explains to a UAC their ability to challenge their placement before the ORR Director or in federal court.<br><br>ORR Guide § 1.4.2; ORR MAP § 1.4.2; David Dep. 159:9-16; Contreras Dep. 116:1-22; Ray Dep. 84:24-85:11; Antkowiak Decl. ¶ 26; Biswas Decl. ¶ 58. | **Partially Disputed.**<br>Plaintiffs do not dispute that the NOP, which policy requires be provided to children in restrictive settings shortly after arrival and every thirty days thereafter, contains the following statement: "If you remain in a secure facility or RTC after 30 days, you may request that the ORR Director reconsider your placement. For more information on this process, please ask your case manager." Ex. 2 [ORR MAP] at Appendix 1.3 Notice of Placement in Restrictive Setting 123–24. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

53

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs dispute that the NOP "explains to the UAC their ability to challenge their placement" where the following occur. *First*, Plaintiff Class Members are typically indigent, speak little or no English, and have little or no knowledge of the United States' legal system. ECF No. 144 [Answer] ¶ 146; Ex. 6 [RFA 2nd Set] No. 141 at 538–39. *Second*, children in a therapeutic group home are not provided an NOP. Ex. 2 [ORR MAP] § 1.2.4 at 65–66 (no mention of whether a child in a therapeutic group home would receive a NOP); Ex. 23 [Fink Dep. Tr.] at 151:5–8. *Third*, stepped up children are not consistently informed and sometimes do not understand that they may contest restrictive placement. Ex. 33 [Ray Dep. Tr.] at 89:14–90:4, 92:8–93:5, 94:17–95:3, 95:18–96:1, 212:16–213:15, 216:7–25; 218:12–23; Ex. 40 [Ray Dep. Ex. 113] at 1220 ("No staff were aware of minor's right to challenge secure placement . . . No one has been communicating this right to minors"); Ex. 24 [Heath Dep. Tr.] at 283:21-284:15; Ex. 65 [J.M.R.R. Decl.] ¶ 4 at 1445; Ex. 67 [K.L.F. Decl.] ¶ 8 at 1457; Ex. 62 [D.S.J.L. Decl.] ¶ 4 at 1431. *Fourth*, ORR's policy does not require that the NOP include documents or other evidence supporting the step-up decision. Ex. 12 [Biswas Dep. Tr.] at 69:16–70:9; see Ex. 1 [ORR Policy Guide] § 1.2.4 at 24 (no reference to including these |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

54

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | documents or evidence); Ex. 2 [ORR MAP] § 1.2.4, at 65–66 (same); id. § 1.4.2 at 91 (same); *id.* § 1.4.2, Fig. 1.12 at 94 (evidence used for 30-day review available upon demand by UAC's attorney); *id.* at 123–24. |
| **57.** It is ORR's policy and practice that the assigned case manager at the ORR grantee care facility will review the NOP with the UAC in a language the UAC understands, which the minor is asked to sign and date.<br><br>ORR MAP § 1.4.2; Biswas 30(b)(6) Dep. 65:2-20, 79:1-14, 80:18-81:7 81:17-82:8, 83:12-23; Contreras Dep. 81:23-82:11, 116:1-22; Vasquez Dep. 145:6-15, 145:22-25, 146:15-19; Ray Dep. 98:8-99:1, 196:11-23, 197:9-14; ORR Juvenile Coord. Rep. at 30, Antkowiak Decl. ¶ 28. | **Partially Disputed.**<br>Plaintiffs do not dispute that the ORR MAP Section 1.4.2 states that a UAC is provided with a NOP in the language he/she understands and the ORR MAP lays out the procedures for the case manager to provide the NOP to the child in a language he/she understands and asks the minor to sign and date it.<br><br>Plaintiffs dispute that Defendants adhere to their policies in practice. Plaintiffs further dispute that any "review" that takes place is meaningful. In practice, stepped up children do not consistently know or understand the reasons for restrictive placement, Ex. 24 [Heath Depo. Tr.] at 283:21–284:15; Ex. 70 [K.S.G.P. Decl.] ¶ 2 at 1470; Ex. 82 [Y.A.M.S. Decl.] ¶ 42 at 1532; Ex 62 [D.S.J.L. Decl.] ¶ 4 at 1431; Ex. 44 [Ray Dep. Ex. 119] at 1264 (noting non-compliance issues of not (1) "providing a NOP every 30 days," (2) "providing a NOP written in a language the minor understands," (3) "providing a summary in the NOP," (4) "providing a summary in the NOP in a language the minor understands," and (5) "citing evidence for placement basis in NOP"), and are |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

55

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | not consistently informed and sometimes do not understand that they may contest restrictive placement, Ex. 33 [Ray Dep. Tr.] at 89:14–90:4, 92:8–93:5, 94:17–95:3, 95:18–96:1, 212:16–213:15, 216:7-25; 218:12-23; Ex. 40 [Ray Dep. Ex. 113] at 1220 ("No staff were aware of minor's right to challenge secure placement . . . No one has been communicating this right to minors"); Ex. 24 [Heath Dep. Tr.] at 283:21–284:15; Ex. 65 [J.M.R.R. Decl.] ¶ 4 at 1445; Ex. 67 [K.L.F. Decl.] ¶ 8 at 1457; Ex. 62 [D.S.J.L. Decl.] ¶ 4 at 1431. |
| **58.** It is ORR's policy and practice that ORR separately reviews each NOP at least once every 30 days through an internal monitoring panel to ensure the NOPs are compliant with ORR policy and that the placement decisions continue to meet ORR criteria for placement in a restrictive setting.<br><br>ORR Guide § 1.4.2; Fink Dep. 28:20-29:13, 84:2-7, 87:14-19; Biswas Dep. 29:23-31:7, 31:20-23, 34:2-7; Biswas 30(b)(6) Dep. 32:5-12, 33:14-34:9, 53:16-54:14, 86:23-87:5, 259:20-260:1, 313:12-20, 308:7-14; Ray Dep. 70:8-71:1; Biswas Decl. ¶ 51; ORR Juvenile Coord. Rep. at 30. | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that ORR has a compliance review work group that is tasked with reviewing NOPs at least once every 30 days.<br><br>Plaintiffs dispute that Defendants' cited evidence supports the existence of any written policy regarding an internal monitoring panel. Nor does the ORR Policy Guide or ORR MAP include any reference to an internal monitoring panel with respect to placement decisions. Ex 1 [ORR Policy Guide] at 22–33; Ex 2 [ORR MAP] at 58–133. |
| **59.** In November 2018, when ORR first started doing its compliance reviews through the monitoring panel, there were noncompliant cases, but since then, the reviews have resulted in almost 100 percent compliance for | <u>**Partially Disputed.**</u><br>Plaintiffs do not dispute that in November 2018, when ORR first started doing its compliance reviews through the monitoring panel, there were noncompliant cases. In fact, the |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

56

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| secure placements.<br><br>Ray Dep. 109:24-113:7, 115:6-116:4, 164:15-21; Biswas Decl. ¶ 52. | majority of kids placed in secure facilities were inappropriately placed. Ex 33 [Ray Dep. Tr.] at 163:19–25; Ex. 190 at 427.<br><br>Plaintiffs dispute that "the reviews have resulted in almost 100 percent compliance for secure placements." There is evidence of continued compliance issues. Ex. 139 [Ray Dep. Ex. 118] at 2028; Ex. 44 [Ray Dep. Ex. 119] at 1264; Ex 173 [Ray Dep. Ex. 121] at 272; *see also* DX-33 [Ray Dep. Tr.] at 109:24–110:25. |
| **60.** It is ORR's policy and practice that at least every 30 days, care provider staff, in collaboration with the case coordinator and FFS, reviews the placement of a UAC who is placed in a secure, staff-secure, or residential treatment center facility to determine whether a new level of care is more appropriate.<br><br>ORR Guide § 1.4.2; Biswas Dep. 198:11-14, 221:3-10; Biswas 30(b)(6) Dep. 30:14-19, 31:11-17, 32:5-13, 33:14-34:9, 51:23-52:7, 356:3-7; David Dep. 148:11-149:5; Smith Dep. 146:6-15; Contreras Dep. 136:15-25, 137:6-25; Fink Dep. 83:15-84:1, 137:1-138:4; Heath Dep. 126:2-8; ORR Juvenile Coord. Rep. at 21, 30; Antkowiak Decl. ¶¶ 15-16, 20-21. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR policy provides that "[a]t least every 30 days, the care provider staff, in collaboration with the Case Coordinator and the ORR/FFS, reviews the placement of a UAC into a secure, staff secure, or RTC facility to determine whether a new level of care is more appropriate." Ex 1 [ORR Policy Guide] § 1.4.2 at 28.<br><br>Plaintiffs dispute that it is ORR's practice to conduct 30-day placement reviews at least every 30 days. Ex. 44 [Ray Dep. Ex. 119] at 1264 (citing non-compliance issue of "[n]ot providing a NOP every 30 days"); Ex. 45 [Ray Dep. Ex. 120] at 1266 (email from policy analyst Faith Ray to FFS on November 28, 2018 regarding a UAC who had not had a case review since June 30, 2018). |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 7, 9. |
| **61.** Prior to a UAC's 30-day Restrictive Placement Case Review, the case manager meets with the UAC to discuss their behavior and needs, inform them of their upcoming 30-day review, and provide the reason for whether continued placement in a more restrictive setting is warranted.<br><br>Biswas 30(b)(6) Dep. 54:16-55:4, 64:15-20, 74:7-75:6, 88:21-25, 92:16-93:2; Vergara Dep. 116:13-21, 117:13-22; Contreras Dep. 137:17-25; Vasquez Dep. 145:6-15, 145:22-25; Heath Dep. 73:10-74:16, 75:16-20, 76:9-13, 77:11-14, 216:8-217:11; Smith Dep. 97:2-16; Biswas Decl. ¶ 48. | **Partially Disputed.**<br>Plaintiffs dispute this fact insofar as Defendants' statement suggests that the "reasons for whether continued placement in a more restrictive setting is warranted" is provided prior to the 30-day restrictive placement review. Defendant's own evidence suggests that a child is provided reasons for continued placement only after the completion of the 30-day review process. DX-02 [Biswas 30(b)(6) Dep. Tr.] at 54:16–22 ("they're told at the end of the process what their, what the decision has been made regarding their placement, and they're provided a notice of the reasons for either step-down or their continued placement"); DX-26 [Heath Dep. Tr.] at 216:25–217:11 (NOP "is reviewed with the child when they are denied step-down"); DX-10 [Biswas Dec.] ¶ 48 ("Although the child does not participate in the 30-day review, they are provided with the outcome and the evidence that is relied on in determining that continued placement is warranted.").<br><br>Plaintiffs further dispute this fact insofar as it is not supported by the cited evidence. DX-02 [Biswas 30(b)(6) Dep. Tr.] at 64:15-20 (child informed 30-day review coming up), |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | 74:7–75:6 (going over Policy Guide section 1.4.2; no reference to when basis for placement is provided to a child) , 88:21–25 (child is interviewed by the case manager prior to 30 day review), 92:16–93:2 (case manager would relay information obtained during interview with child conducted prior to 30 day review); DX-05 [Vergara Dep. Tr.] at 116:13–21 children at Shiloh have "the opportunity to discuss placement with their team whenever they want to"), 117:13–22 (children have opportunity to meet with their treatment team regarding placement); DX-22 [Contreras Dep. Tr.] at 137:17–25 (regarding fact that 30-day case reviews at Shenandoah have occurred before the 30th day); DX-24 [Vasquez Dep. Tr.] at 145:6–15 (regarding fact that case manager and clinicians inform child after a step up decision has been made), 145:22–25 (the reasons for step up are explained); DX-26 [Heath Dep. Tr.] 73:10–74:16 (discussing roles of case managers, clinicians, case coordinators and FFS in placement decisions), 75:16–20 (children are informed they are being considered for step up but no indication they are provided reasons for step up prior to final decision), 76:9–13 (when feasible, children are involved in the staffing of a step-up decision but no indication they are informed of the possible reasons for step up or continued placement prior to final |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
|  | decision), 77:11–14 (FFS testifying that it is her goal to try several behavioral modification plans with kids before they actually get stepped up); DX-28 [Smith Dep. Tr.] at 97:2–16 (case managers and clinicians communicate regularly with a child about their behaviors; child may have been on a behavioral plan or working to mitigate the need for step up, but no indication minor is informed of basis for possible step up prior to 30-day review).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 23. |
| **62.** It is ORR's practice that upon conducting the 30-day review, if it is determined that continued placement in a secure, staff-secure, or residential treatment center facility is appropriate, care provider staff document the basis for continued placement in a new NOP and provides the information to the UAC, along with the UAC's attorney of record, legal services provider, or child advocate upon request by these parties.<br><br>Biswas 30(b)(6) Dep. 69:2-6, 70:17-21; David Dep. 158:20-159:3; Vergara Dep. 221:20-25; Eich Dep. 162:10-15; Fink Dep. 196:23-197:5, Smith Dep. 39:1-20; Antkowiak Decl. ¶ 27. | **Partially Disputed.**<br>Plaintiffs do not dispute that under ORR's MAP a child is supposed to receive a NOP shortly after arriving at a restrictive placement and every 30-days thereafter. Ex. 2 [ORR MAP] § 1.2.4 at 65–66; *id.* § 1.4.2 at 93–95.<br><br>Plaintiffs dispute that the cited evidence supports the statement that "care provider staff" in practice provide a new NOP to the UAC with the basis for continued placement. Ex. 29 [Nathan-Pineau Dep. Tr.] at 60:1–10 (After receiving the notice of placement and showing them to their clients, "many of the children [they] speak with don't remember seeing the form or don't recognize it."). Ex. 44 [Ray Dep. Ex. 119] at 1264 (noting non-compliance issues of not (1) |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

60

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | "providing a NOP every 30 days," (2) "providing a summary in the NOP," and (3) citing evidence for placement basis in NOP").<br><br>Plaintiffs dispute Defendants' statement to the extent it suggests UACs understand the information on the NOP. Stepped up children do not consistently know or understand the reasons for restrictive placement. Ex. 24 [Heath Depo. Tr.] at 283:21–284:15; Ex. 70 [K.S.G.P. Decl.] ¶ 2 at 1470; Ex. 82 [Y.A.M.S. Decl.] ¶ 42 at 1532; Ex 62 [D.S.J.L. Decl.] ¶ 4 at 1431; Ex. 44 [Ray Dep. Ex. 119] at 1264 (noting non-compliance issues of not (1) "providing a NOP every 30 days," (2) "providing a NOP written in a language the minor understands," (3) "providing a summary in the NOP," (4) "providing a summary in the NOP in a language the minor understands," and (5) "citing evidence for placement basis in NOP"), and are not consistently informed and sometimes do not understand that they may contest restrictive placement. Ex. 33 [Ray Dep. Tr.] at 89:14–90:4, 92:8–93:5, 94:17–95:3, 95:18–96:1, 212:16–213:15, 216:7–25; 218:12–23; Ex. 40 [Ray Dep. Ex. 113] at 1220 ("No staff were aware of minor's right to challenge secure placement . . . No one has been communicating this right to minors"); Ex. 24 [Heath Dep. Tr.] at 283:21–284:15; Ex. 65 [J.M.R.R. Decl.] ¶ 4 at 1445; Ex. 67 |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | [K.L.F. Decl.] ¶ 8 at 1457; Ex. 62 [D.S.J.L. Decl.] ¶ 4 at 1431.<br><br>Plaintiffs also dispute Defendants' statement to the extent it suggests or implies that a new NOP is provided to a child's attorney automatically. The NOP is only provided to a child's attorney upon request and that request process can take several weeks and sometimes even a year. Ex. 29 [Nathan-Pineau Dep. Tr.] at 16:13–21 (non-expedited file requests take 3–12 months; expedited request takes 2–3 weeks). |
| **63.** A UAC may challenge placement or release at an ORR grantee care facility by seeking judicial review in federal district court.<br><br>*Flores* Settlement Agreement ¶ 24B; Biswas Dep. 225:9-14; David Dep. 159:9-16; Contreras Dep. 116:1-6, 118:13-18; Biswas Decl. ¶ 61. | **Disputed.**<br>Plaintiffs dispute that the evidence cited supports the statement that a UAC may challenge a release decision through a *Flores* 24B hearing, as that can only be used to seek judicial review of a placement decision, not a release decision. Ex. 8 [*Flores* Settlement Agreement] ¶ 24B at 578–79.<br><br>Plaintiffs also dispute that a child may challenge his or her placement or release where Plaintiff Class Members are typically indigent, speak little or no English, and have little or no knowledge of the United States' legal system. ECF No. 144 [Answer] ¶ 146; Ex. 6 [RFA 2nd Set] No. 141 at 538–39. And where ORR prohibits legal service providers from using federal funds appropriated in furtherance of the TVPRA to represent children with respect to (i) |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | release to available custodians, (ii) restrictive placement, ..." ECF No. 144 [Answer] ¶ 111; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 398:3–400:12; *see also* DX-29 [Nathan-Pineau Dep. Tr.] at 125:16-127:11 (discussing restrictions placed on Vera-funded legal service providers' ability to represent clients; Vera-funded legal service providers can't initiate representation solely for the purpose of representing a child in a bond or custody review).<br><br>Plaintiffs further dispute this fact to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 26. |
| **64.** It is ORR's policy and practice that a UAC placed in a secure facility or a residential treatment center can challenge that placement by requesting review by the ORR Director or the ORR Director's designee after 30 days of placement.<br><br>ORR Guide § 1.4.7; Biswas 30(b)(6) Dep. 77:23-78:7; David Dep. 159:9-16; Antkowiak Decl. ¶ 9; Biswas Decl. ¶ 57. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR policy states that "After 30 days of placement in a secure or RTC facility, UAC may request the ORR Director, or the Director's designee, to reconsider their placement." Ex 1 [ORR Policy Guide] § 1.4.7 at 30.<br><br>As Defendants' evidence only speaks to Defendants' alleged policies, Plaintiffs dispute that ORR's policy (or any of the cited evidence) also reflect ORR's practices. ORR Guide § 1.4.7 (ORR policy); DX-02 [Biswas 30(b)(6) Dep. Tr.] at 77:23–78:7 (referring to ORR Policy guide on request for reconsideration); DX-20 [David Dep. Tr.] at 159:9–16 (regarding notice to children of right to seek reconsideration or judicial |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

63

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | review); DX-09 [Antkowiak Decl.] ¶ 9 (referring specifically to what is provided under ORR Policy Guide section 1.4.7); DX-10 [Biswas Decl.] ¶ 57 (same). |
| 65. It is ORR's practice that a UAC may request a bond hearing where an immigration judge will assess whether the UAC poses a danger to the community, and are notified of this shortly upon entering the shelter and during their review of the NOP.<br><br>Biswas Dep. 183:20-23, 225:9-14; Biswas 30(b)(6) Dep. 106:3-7; Castaneda Dep. 81:12-23; ORR Juvenile Coord. Rep. at 31; Flores Settlement Agreement ¶ 24A; Biswas Decl. ¶¶ 53-55. | **Partially Disputed.**<br>Plaintiffs do not dispute that evidence supports the existence a policy for allowing minors to request a bond hearing and that policy states that minors are to be informed of the opportunity. However, Plaintiffs dispute that the evidence supports Defendants' statement that it is "ORR's practice" that a UAC may request a bond hearing. *See* DX-15 [Biswas Dep. Tr.] at 183:20–23 (merely stating that children have a right to a bond hearing), 225:9–14 (same); DX-02 [Biswas 30(b)(6) Dep. Tr.] at 106:3–7 (child can seek a bond hearing); DX-34 [Castaneda Dep. Tr.] at 81:12–23 (same); Dx-11 [ORR Juvenile Coord. Rep.] at 31 (same); Ex. 8 [Flores Settlement Agreement] ¶ 24A at 578 (minor has right to request a *Flores* bond hearing); DX-10 [Biswas Decl.] ¶ 53 (referring to sections 1.4.2 and 2.9 of the ORR Policy Guide; *id.* ¶¶ 54–55 (see objection).<br><br>Plaintiffs dispute that children are informed of this right where Plaintiff Class Members are typically indigent, speak little or no English, and have little or no knowledge of the United States' legal system, ECF No. 144 [Answer] ¶ 146; Ex. 6 [RFA 2nd Set] |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

64

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | No. 141 at 538–39, and stepped up children are not consistently informed and sometimes do not understand that they may contest restrictive placement. Ex. 33 [Ray Dep. Tr.] at 89:14–90:4, 92:8–93:5, 94:17–95:3, 95:18–96:1, 212:16–213:15, 216:7–25; 218:12-23; Ex. 40 [Ray Dep. Ex. 113] at 1220 ("No staff were aware of minor's right to challenge secure placement . . . No one has been communicating this right to minors"); Ex. 24 [Heath Dep. Tr.] at 283:21–284:15; Ex. 65 [J.M.R.R. Decl.] ¶ 4 at 1445; Ex. 67 [K.L.F. Decl.] ¶ 8 at 1457; Ex. 62 [D.S.J.L. Decl.] ¶ 4 at 1431.<br><br>Plaintiffs also dispute that in practice UACs are informed of their right to request a bond hearing during the review of the NOP. The NOP only refers to a minor's ability to challenge his or her placement through the ORR Director review or through Federal District Court review, not through an immigration bond hearing before an immigration judge. Ex. 2 [ORR MAP] Appendix 1.3 Notice of Placement in Restrictive Setting at 123–24.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 24–25. |
| **66.** While ORR is not bound by the immigration judge's bond hearing determination, ORR takes the | **Undisputed** for purposes of this motion. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

65

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| immigration judge's decision into consideration in determining whether the UAC should be stepped down.<br><br>Biswas Dep. 225:9-14; Biswas 30(b)(6) Dep. 106:8-13; Biswas Decl. ¶ 53. | |
| **67.** UACs seeking to challenge a placement decision in a secure or residential treatment center facility may also seek administrative review by ORR's Placement Review Panel (PRP), beginning 30 days after the child's initial placement.<br><br>ORR Juvenile Coord. Rep. at 31, 32; Biswas Decl. ¶ 59. | **Disputed.**<br>Plaintiffs dispute this fact for at least four reasons.  First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359 ("Neither I nor my staff have ever heard of the PRP's existence or are aware of any child at MercyFirst who has accessed the PRP.").<br><br>Second, despite Defendants' statement, Defendants have no actual policy implementing the alleged program, and it is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22–23; Ex. 2 [ORR MAP] § 1 at 58–133. There is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See* Ex. 1 [ORR Policy Guide] § 1; Ex. 2 [ORR MAP] § 1.<br><br>Third, the ORR's NOP form makes no reference to review by "ORR's |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

66

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Placement Review Panel (PRP)"). Ex. 2 [ORR MAP] Appendix 1.3 Notice of Placement at 123–24.<br><br>Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |
| **68.** The PRP comprises three ORR staff members with several years of experience as professionals in the fields of child welfare, mental health, and related policy.<br><br>ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | **Disputed.**<br>Plaintiffs dispute this fact for at least three reasons. First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359.<br><br>Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor it's MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See id.*<br><br>Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |
| **69.** Before the PRP is conducted, the UAC (or the UAC's attorney) is given the opportunity to review ORR's evidence | **Disputed.**<br>Plaintiffs dispute this fact for at least three reasons.  First, Plaintiffs dispute |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| in support of continued placement at a residential treatment center or secure facility.<br><br>ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359.<br><br>Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See id.*<br><br>Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |
| 70. | The UAC (or the UAC's attorney) can provide the PRP with a written statement concerning continued placement at a residential treatment center or secure facility.<br><br>ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | **Disputed.**<br>Plaintiffs dispute this fact for at least three reasons. First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359.<br><br>Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
|  | Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See id.* <br><br> Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |
| **71.** It is ORR's policy and practice that the UAC (or the UAC's attorney) can request a hearing concerning continued placement at a residential treatment center or secure facility. <br><br> ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | **Disputed.** <br> Plaintiffs dispute this fact for at least three reasons.  First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359. <br><br> Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See id.* <br><br> Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **72.** In matters pending before the PRP, where the child does not have an attorney, ORR encourages the grantee care program to seek assistance for the child from a contracted legal service provider or child advocate.<br><br>ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | **Disputed.**<br>Plaintiffs dispute this fact for at least three reasons. First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359.<br><br>Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See id.*<br><br>Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |
| **73.** In matters pending before the PRP, where the child does not have an attorney, ORR arranges for ORR's Juvenile Coordinator to act as an advocate for the child, if needed.<br><br>ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | **Disputed.**<br>Plaintiffs dispute this fact for at least three reasons. First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program. Ex. 185 [Enriquez Decl.] ¶ 8 at 359. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

70

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility. *See id.* <br><br> Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1–2. |
| **74.** In matters pending before the PRP, after reviewing the evidence, statements, and holding a hearing if the child (or child's attorney) requested one, the PRP provides the child a written decision regarding placement. <br><br> ORR Juvenile Coord. Rep. at 32; Biswas Decl. ¶ 59. | **Disputed.** <br> Plaintiffs dispute this fact for at least three reasons.  First, Plaintiffs dispute that children in RTCs may seek administrative review by ORR's Placement Review Panel where legal advocates who provide services to children in RTCs are unaware of the existence of such a program.  Ex 185 [Enriquez Decl.] ¶ 8 at 359. <br><br> Plaintiffs also dispute the statement to the extent such program is not referenced in ORR's Policy Guide nor its MAP. *See* Ex. 1 [ORR Policy Guide] § 1 at 22−33; Ex. 2 [ORR MAP] § 1 at 58−133. Indeed, there is no reference to a PRP program or a process by which a UAC and/or his attorney can request a *hearing* concerning continued placement at an RTC or secure facility.  *See id.* |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

71

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Finally, Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 1, 2. |
| **75.** ORR seeks to avoid unnecessary delay in stepping up a UAC who requires a more restrictive placement due to potential harm the delay in step-up could cause to the UAC or others at the current facility.<br><br>Biswas 30(b)(6) Dep. 325:12-20, 267:21-268:9; De La Cruz Dep. 249:12-250:4; Dr. Lubit Expert Rep. ¶ 3(b); Antkowiak Decl. ¶¶ 33-34. | **Disputed.**<br>Plaintiffs dispute that providing sufficient due process prior to step up would cause "unnecessary delay," especially considering that children who are stepped up spend, on average, more time in custody than those who are not stepped up. Ex. 57 [Ryo Expert Rep.] at 1403.<br><br>Plaintiffs further dispute Defendants' statement to the extent it implies that the determination regarding harmfulness is always correct. In practice, ORR has erroneously stepped up children. ECF No. 144 [Answer] ¶ 75; Ex. 33 [Ray Dep. Tr.] at 148:16–22, 152:14–153:22; 157:10–158:17, 162:7–10, 163:14–164:12; 166:23–167:7; Ex. 43 [Ray Dep. Ex. 117] at 1261–62; Ex. 139 [Ray Dep. Ex. 118] at 2028; Ex. 44 [Ray Dep. Ex. 119]; Ex. 16 [Contreras Dep. Tr.] at 71:3–12, 75:11–76:1, 76:18–77:3, 77:5–78:1, 80:2–17, 105:5–106:22, 113:12–114:17; Ex. 22 [Fields Dep. Tr.] at 123:5–16, 172:7–15; Ex. 23 [Fink Dep. Tr.] at 40:13–17, 153:8–13; Ex. 24 [Heath Dep. Tr.] at 98:5–16, 99:3–7; Ex. 14 [Castaneda Dep. Tr.] at 74:13-76:7, 88:21–90:9; Ex. 20 [Eich Dep. Tr.] at 108:7–109:5; Ex. 96 at 1757. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

72

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs also dispute Defendants' statement to the extent the cited evidence implies ORR makes an appropriate "dangerousness determination." Although ORR uses the criteria whether a child is a "danger to self or others" to determine step-up or step-down eligibility, ORR employs no standardized metric to determine whether a child meets this standard, i.e., the child is a danger to self or others. Ex. 24 [Heath Dep. Tr.] at 96:19–22 (not aware of the use of a specific metric to assess dangerousness), 97:23-25 (aware of OYAH tool but not trained in it), 98:1-4 (FFS testifying she is not trained in any specific criteria to assess danger to self or others before making a step-up decision); Ex. 1 [ORR Policy Guide] § 1.2.1 at 23 (placement consideration "danger to self" and "danger to the community"); *id.* § 1.2.4 at 24 (secure placement criteria includes "danger to self or others"); *id.* § 1.4.2 at 29 ("[s]tep downs may occur when ORR, in its discretion, determines the UAC no longer poses a danger to himself or others"); *id.* § 1.4.6 at 30 (RTC placement criteria – danger to self or others)). Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 12–13. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 76. Residential treatment centers are better equipped to care for youths with more serious psychiatric problems given their greater staff training levels and higher staff-to-child ratios.<br><br>Dr. Lubit Expert Rebuttal Rep. ¶ 75; Antkowiak Decl. ¶¶ 13-14. | **Partially Disputed.**<br>Plaintiffs do not dispute that residential treatment centers have higher staff-to-child ratios.<br><br>Plaintiffs dispute this statement insofar as the evidence cited does not support the statement that RTCs are "better equipped to care for youth with more serious psychiatric problems" or that RTC staff receive greater training. *See* Ex. 175 [Cruise & Rasmussen Expert Rep.] at 296 ("Across the files we reviewed, step ups did not increase the likelihood that UACs were provided with more specialized mental health treatments that better matched their documented mental health diagnoses. … trauma-informed treatments were only documented as being delivered in seven cases with this treatment service being scattered across different placement levels (i.e. shelters, a staff secure facility, and an RTC)."). Moreover, youth have stated they have experienced very poor treatment from RTC staff. *See* Ex. 60 [C.J.A.L. Decl.] ¶ 13 at 1420 ("When I feel really upset, and I feel like I might want to hurt myself, the staff do not help me."); Ex. 61 [D.D.R.O. Decl.] ¶¶ 10–12 at 1426–27; Ex. 62 [D.S.J.L. Decl.] ¶¶ 9–11 at 1432–33 ("I don't feel safe here because the staff are mainly men and because sometimes the staff scream at me. I feel afraid all the time." And |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

74

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | describing violent abusive incident with Shiloh staff).<br><br>Plaintiffs dispute the statement to the extent it implies that higher staff-to-child ratios and more training necessarily result in better care for children with serious psychiatric problems. *See* Ex. 175 [Cruise & Rasmussen Expert Rep.] at 295 (children more likely to receive trauma-informed therapy at shelter level than at RTCs); Ex. 179 [Matlow & Wang Expert Rep.] at 323–324 (children can feel better supported at less restrictive facilities); Ex. 174 [Block & Farley Expert Rep.] at 280–281, 288–289, 291 (little evidence of effectiveness of RTCs and problematic tendency to equate more restrictive settings with better care).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶¶ 5–6. |
| **77.** Requiring a hearing before being moved to a restrictive placement would likely result in delay and could increase the risk of harm to the individual and others.<br><br>Dr. Lubit Expert Rep. ¶ 61; Antkowiak Decl. ¶¶ 33, 3536. | <u>**Disputed.**</u><br>Plaintiffs dispute that a hearing could increase the risk of harm where there is harm in erroneously stepping up a child. Unnecessarily stepping up children may be contrary to their best interest and detrimental to their long-term psychological well-being. Ex. 6 [RFA 2nd Set] Nos. 169–70 at 542–44; *see also* Ex. 182 [Urquiza Expert Rep.] at 346; DX-46 [Jaime D. Transfer Request] at GOV-0008702 (explaining that Jaime D. is not |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | appropriately placed at Yolo and "[s]taff have also observed his peers provoking this youth due to his young age and size . . . This youth would greatly benefit from a more diverse placement with other youths in the same age range as him.").<br><br>Child welfare and mental health experts also hold the view that children who pose acute safety concerns can often be safely maintained in less restrictive settings with appropriate accommodations while alternative interventions are attempted.  *See* Ex. 174 [Block & Farley Expert Rep.] at 285–287; *see also* Ex. 175 [Cruise & Rasmussen Expert Rep.] at 296 ("Step-ups justified by mental health diagnoses do not seem to be necessary to meet the UACs' needs or protect the safety of others.").<br><br>Plaintiffs also dispute the statement to the extent Defendants presume the truth of their "dangerousness assessment," which is not determined based on the use of a standardized metric. Ex. 24 [Heath Dep. Tr.] at 96:19–22 (admitting she is unaware of any standardized metric used by ORR to assess whether a child is a danger to self or others), 98:1–4 (admitting she is not trained in any specific criteria to assess danger to self or others before making a step-up decision); Ex. 1 [ORR Policy Guide] § 1.2.1 at 23 (placement |

76

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | consideration "danger to self" and "danger to the community"); *id.* § 1.2.4 at 24 (secure placement criteria includes "danger to self or others"); *id.* § 1.4.2 at 29 ("[s]tep downs may occur when ORR, in its discretion, determines the UAC no longer poses a danger to himself or others"); *id.* § 1.4.6 at 30 (RTC placement criteria – danger to self or others); Ex. 1 [ORR Policy Guide] § 1 at 22–33 (providing no standardized metric to assess step down eligibility). <br><br> Plaintiffs further dispute the asserted fact to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶¶ 12, 14–15. |
| **78.** To delay step-up when it is necessary for the safety of the child and others is contrary to the way care is given to children in the U. S. in general and could increase the risk of harm to the individual and others. <br><br> Dr. Lubit Expert Rep. ¶ 61; Antkowiak Decl. ¶¶ 33-34. | **Disputed.** <br> Plaintiffs dispute that delaying step-up could increase the risk of harm where there is harm in erroneously stepping up a child. Ex. 6 [RFA 2nd Set] Nos. 169–70 at 542–44. <br><br> Child welfare best practices favor community-based services over restrictive residential placement, including for children who pose safety concerns. *See* Ex. 174 [Block & Farley Expert Rep.] at 279–282, 285–287, 290 (discussing evidence-based community-based treatment, including safety benefits); Ex.176 [Earner Expert Rep.] ¶ 49 at 301 (therapeutic foster care and Multi-Systemic Therapy are best practices proven to be more effective with |

77

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | behavioral and conduct disorders); Ex. 177 [Edwards Expert Rep.] at 307–308 (explaining that federal law disfavors congregate care placement and requires oversight of juvenile court for placements in Qualified Residential Treatment Programs).

Plaintiffs also dispute this statement to the extent Defendants presume the truth of their "dangerousness assessment," which is not determined based on the use of a standardized metric. Ex. 24 [Heath Dep. Tr.] at 96:19–22 (not aware of the use of a specific metric to assess dangerousness), 97:23–25 (aware of OYAH tool but not trained in it), 98:1–4 (FFS testifying she is not trained in any specific criteria to assess danger to self or others before making a step-up decision); Ex. 1 [ORR Policy Guide] § 1.2.1 at 23 (placement consideration "danger to self" and "danger to the community"); *id.* § 1.2.4 at 24 (secure placement criteria includes "danger to self or others"); *id.* §1.4.2 at 29 ("[s]tep downs may occur when ORR, in its discretion, determines the UAC no longer poses a danger to himself or others"); *id.* §1.4.6 at 30 (RTC placement criteria – danger to self or others)).

Finally, Plaintiffs dispute this statement to the extent that it implies ORR policy and practice are currently in line with the way care is given to |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | children in the U.S. in general and that delaying step-up in exigent or dangerous circumstances would require ORR to operate contrary to U.S. standards in general. Ex. 159 [Heldman Dep. Tr.] at 33:6–10 ("there are child welfare principles that support timely permanency and decision-making, but not at the exclusion of process and procedures established to support fundamental rights."); *id.* at 185:1–4 (even when considering risk and safety, there are "criteria that would be looked at by a judge in determining placement for a youth.").<br><br>Plaintiffs further dispute the asserted fact to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶¶ 12–13. |
| **79.** There are child welfare experts who hold the view that ORR's practice of having each child's case jointly reviewed on a regular basis by a team of program staff and supervisors in consultation with ORR federal representatives ensures that placements and transfers reflect sound clinical practice, and that it is unclear what problems would be solved by requiring ORR to consult with a child's attorney of record whenever placement and release decisions are considered.<br><br>Dr. Ryan Expert Rep. ¶¶ 46-47; Dr. Ryan Dep. 172:4-173:4, 174:19-176:6, 210:5-18, 212:2-6, 249:14-250:9, | **Partially Disputed.**<br>Plaintiffs do not dispute that Defendants' purported experts hold this view, though it is not widely held and is contradicted by Plaintiffs' expert Professor Heldman, who found that "in 41 states plus the District of Columbia, there is an explicit right to an attorney in a detention hearing; in the 9 other states, counsel is provided 'either 'at all proceedings' or 'at all stages of proceedings' under the juvenile delinquency code." Ex. 54 [Heldman Expert Rep.] at 1352. Accordingly, ORR's policy, which does not provide UAC's with legal representation in determinations related to detention or placement in |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

79

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 255:5-256:3, 277:14-25; Dr. Earner Dep. 133:8-23, 134:3-8, 141:17-142:10, 146-23-147:14, 192:4-12; Dr. Lubit Expert Rep. ¶ 54. | restrictive settings, is out of step with the policy that a majority of states employ. Ex. 178 [Heldman Expert Rep.] at 316.<br><br>Plaintiffs also dispute that it is "unclear what problem would be solved by requiring ORR to consult with a child's attorney of record whenever placement and release decision are considered." Ex. 159 [Heldman Dep. Tr.] at 192:9–25 (stating that counsel in the child welfare system leads to better outcomes and better protects the interest of children, and that there is research to that effect as well that children get permanency more quickly when counsel is involved); Ex. 177 [Edwards Expert Rep.] at 309  (describing benefits of counsel in dependency proceedings, as well as supporting this practice of right to counsel in such cases based on recent studies which "confirm that children get better results in dependency proceedings when they are represented by an attorney.").<br><br>Plaintiffs also dispute that the review of a child case by a team of staff and federal representatives "ensures that placement and transfers reflect sound clinical practice," particularly where ORR has erroneously stepped up children to restrictive placements and erroneously refused children step-down from restrictive placements. ECF No. 144 [Answer] ¶ 75; Ex. 33 |

Cooley LLP
Attorneys At Law
Los Angeles

80

Plaintiffs' Statement of Genuine
Dispute of Material Fact
Case No. 2:18-cv-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | [Ray Dep. Tr.] at 148:16–22, 152:14–153:22; 157:10–158:17, 162:7–10, 163:14–164:12; 166:23–167:7, 170:19–23; Ex. 43 [Ray Dep. Ex. 117] at 1261–62; Ex. 139 [Ray Dep. Ex. 118] at 2028; Ex. 44 [Ray Dep. Ex. 119] at 1264; Ex. 16 [Contreras Dep. Tr.] at 71:3–12, 75:11–76:1, 76:18–77:3, 77:5–78:1, 80:2–17, 105:5–106:22, 113:12–114:17, 151:17–152:8, 155:1–5; Ex. 22 [Fields Dep. Tr.] at 123:5–16, 148:8–23; 172:7–15; Ex. 23 [Fink Dep. Tr.] at 40:13–17, 153:8–13; Ex. 24 [Heath Dep. Tr.] at 98:5–16, 99:3–7, 212:16–23; Ex. 14 [Castaneda Dep. Tr.] at 74:13-76:7, 88:21–90:9; Ex. 20 [Eich Dep. Tr.] at 108:7–109:5; Ex. 96 at 1757; Ex. 13 [Biswas 30(b)(6) Dep. Tr.] at 348:12–24, 393:1–7; Ex. 35 [Smith Dep. Tr.] at 82:20–83:5, 162:16–163:8;  Ex. 18 [De La Cruz Dep. Tr.] at 162:3–16, 163:7–164:5; Ex. 17 [Cook Dep. Tr.] at 197:21–25; Ex. 28 [Murray Dep. Tr.] at 193:10–17, 156:18–23, 158:6–21, 170:3–7, 184:20-189:4, 192:18–193:4; Ex. 47 [Murray Dep. Ex. 162] at 1278 ("I have several cases at yolo that are in need of RTC but our RTC keep rejecting them."); Ex. 168 [Vergara Dep. Tr.] at 129:15–130:17, 257:6–10; Ex. 182 [Urquiza Expert Rep.] at 346. |
| 80.   Congress has not funded attorneys to represent ORR in hearings challenging routine decisionmaking, and in contrast with the Department of Homeland Security, which funds | **Partially Disputed.** Plaintiffs do not dispute that Congress has not funded attorneys to represent ORR in hearings challenging decision-making. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

81

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| approximately 1,100 attorneys and 350 personnel to support such attorneys in immigration proceedings, ORR has traditionally funded two attorneys.<br><br>Antkowiak Decl. ¶ 37. | Plaintiffs dispute statement to the extent it implies funding for 1,100 attorneys and 350 personnel would be necessary to represent ORR in hearings challenging routine decisionmaking. The number of immigration cases filed with EOIR is significantly higher than the number of possible challenges to step ups. *See* Transactional Records Access Clearinghouse (TRAC), *More Immigrants in Limbo as Government Shutdown Due to COVID-19 Leads to Widespread Immigration Court Hearing Cancellations* (June 4, 2020), https://trac.syr.edu/immigratio n/reports/612/ (in March and April of 2020 alone, EOIR recorded an average of 40,000 *new* cases filed by ICE each month), *with* Ex. 93 at Census Tab, at Row J at 1630–1745 (Program_Type) (total of 80 detained in ORR secure, RTC, staff-secure, therapeutic staff-secure, and therapeutic group home custody as of March 13, 2020) and *id*. at Out of Network Placements Tab, at Row A at 1746 (children placed in OON RTC as of March 13, 2020) (total of 11 children detained in ORR out-of-network facilities as of March 13, 2020). Similarly, the number of administrative appeals regarding release is very small. Ex. 5 [RFA 1st Set] No. 28 at 485–87 ("a relatively low proportion of proposed sponsors elect to pursue an administrative appeal process"); Ex. 7 [Defendants' |

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Supplemental Responses to Plaintiffs' Requests for Admission ("RFA Supp. Response")] No. 28 at 560. |
| **Defendants' Uncontroverted Facts: Legal Representation** | | |
| **81.** | It is ORR's policy and practice that children in ORR's care and custody are provided with legal services information, including the availability of pro bono services, a know-your-rights presentation, a legal screening, a legal resource guide (which provide a state-by-state listing of attorneys), and the right to be represented by counsel at no expense to the government. <br><br> ORR Guide § 3.3; Biswas 30(b)(6) Dep. 68:20-22, 101:24-102:11, 375:20-376:5, 399:6-10, 400:13-18; Castaneda Dep. 85:14-86:15; Contreras Dep. 80:18-81:3; De La Cruz Dep. 218:17-219:7; Sualog Dep. 116:4-13, 121:10-14; Eich Dep. 99:15-23; Dr. Earner Dep. 225:25-226:9; Biswas Decl. ¶ 88; ORR Juvenile Coord. Rep. at 11. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 2. |
| **82.** | It is ORR's policy and practice to encourage all potential sponsors to attend a Legal Orientation Program for Custodians (LOPC). <br><br> ORR Guide § 2.2.5; ORR Juvenile Coord. Rep. at 2-3. | **Partially Disputed.** Plaintiffs do not dispute that the ORR Policy Guide states that potential sponsors "should attend a presentation provided by the Legal Orientation Program for Custodians." <br><br> Plaintiffs dispute this statement insofar as the evidence cited by Defendants does not support that it is ORR's practice to encourage such attendance. *See* Ex. 1 [ORR Policy Guide] § 2.2.5 at 38 (explaining legal orientation policy); DX-11 [ORR |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

83

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Juvenile Coordinator Annual Rep.] at 2–3 (explaining how "the potential sponsor *should* attend a presentation known as the Legal Orientation Program for Custodians." (emphasis added)).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| **83.** The purpose of the LOPC is to inform potential responsibilities [sic] in ensuring the child's appearance at all immigration proceedings, as well as protecting the child from mistreatment, exploitation, and trafficking.<br><br>ORR Guide § 2.2.5; ORR Juvenile Coord. Rep. at 2-3. | **Undisputed** for purposes of this motion, except to the extent Defendants rely on inadmissible evidence, *see* Evidentiary Objections ¶ 2, and, assuming Defendants' statement is read to refer to informing potential *sponsors* of *their* responsibilities. To the extent Defendants intend a different meaning, Plaintiffs dispute the statement. |
| **84.** The LOPC provides information about possible free legal counsel (pro bono legal services) for the child during the immigration court process.<br><br>ORR Guide § 2.2.5; ORR Juvenile Coord. Rep. at 2-3. | **Partially Disputed.**<br>Plaintiffs do not dispute that the Policy Guide states that the LOPC is intended to provide this information.<br><br>Plaintiffs dispute this statement to the extent Defendants imply the LOPC does actually provide this information, which is not supported by the cited evidence. *See* Ex. 1 [ORR Policy Guide] § 2.2.5 at 38 (citing policy that "[t]he program also provides information about possible free legal counsel (pro bono legal services) for the youth or child during the immigration court process."); |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

84

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | DX-11 [ORR Juvenile Coordinator Annual Rep.] at 2–3 (same).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| **85.** ORR requires case managers to provide case updates to a child's attorney of record or legal service provider while the child is placed at a residential treatment center, staff-secure, or secure placement.<br><br>Biswas 30(b)(6) Dep. 69:7-13, 70:22-71:6; Castaneda Dep. 47:21-48:9, 81:15-82:8; Contreras Dep. 112:1-16, 147:14-21; Smith Dep. 94:6-13, 147:22-148:9; Sualog Dep. 134:22-25; Vergara Dep. 221:20-25. | **Disputed.**<br>ORR policy does not require Case Managers to inform children's lawyers of such progress. Instead, ORR policies say that "other stakeholders" "may include local legal service providers and attorneys of record," but do not require ORR to inform them. Ex. 1 [ORR Policy Guide] § 2.3.2 at 39–40. In practice, Case Managers have discretion to communicate—or not—with Class Members' lawyers. Moreover, Case Managers do not regularly provide children's legal representatives with evidence relied upon in recommending for or against release, nor do children's lawyers receive a copy of the Case Manager's recommendation for or against release. Ex. 30 [Ortiz Dep. Tr.] at 37:4–38:7. |
| **86.** It is ORR's policy and practice that ORR grantee care provider facilities provide attorneys with the ability to meet with children in ORR's care and custody.<br><br>ORR Guide § 3.3.10; Biswas 30(b)(6) Dep. 100:24-101:3; Contreras Dep. | **Disputed.**<br>ORR policy only requires that attorneys have unlimited *telephone* access to their clients. It contains no requirement that care provider facilities provide attorneys with the ability to meet with their clients. ORR Policy Guide § 3.3.10. ORR also testified that there is merely a |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

85

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | 147:14-21; De La Cruz Dep. 218:21-219:7; Sualog Dep. 126:13-127:22. | "general expectation . . . that children have access to counsel." DX-02 [Biswas 30(b)(6) Dep. Tr.] at 101:4–12. |
| 87. | It is ORR's policy and practice that attorneys representing UACs have unlimited telephone access to the children.<br><br>ORR Guide § 3.3.10; ORR Juvenile Coord. Rep. at 11; Castaneda Dep. 85:14-86:4, 87:25-88:3; Wood Dep. 146:21-147:14; Sualog Dep. 138:19-139:5; Fink Dep. 273:25-274:9, 277:10-25; Biswas Decl. ¶ 92. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 2. |
| 88. | ORR allows children to contact an attorney if they wanted to consult with an attorney regarding their placement decision.<br><br>Fink Dep. 273:2-20, 273:25-274:9, 277:10-25; Biswas 30(b)(6) Dep. 443:15-444:8; Smith Dep. 147:22-148:9; Eich Dep. 209:12-15; Biswas Decl. ¶ 91. | **Undisputed** for purposes of this motion. |
| 89. | ORR allows children to contact an attorney if they want to consult with an attorney regarding being released from ORR custody.<br><br>Fink Dep. 273:21-274:9, 277:10-25; Biswas 30(b)(6) Dep. 443:15-444:8; Biswas Decl. ¶ 91. | **Undisputed** for purposes of this motion. |
| 90. | It is ORR's policy and practice that ORR allows ORR-funded legal providers to use non-ORR funds to challenge ORR decisions, and such actions have been brought against | **Disputed.** Defendants cite no evidence that ORR permits children's attorneys to challenge ORR decisions administratively with respect to |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| ORR.<br><br>Sualog Dep. 118:2-10; Biswas 30(b)(6) Dep. 443:15:444:8; Eich Dep. 209:12-15, 210:9-13; Stuart Dep. 75:10-13; Mixon Dep. 154:2-8; Nathan-Pineau Dep. 75:19-76:11, 125:16-127:11, 129:6-10, 130:10-20; Biswas Decl. ¶ 93; ORR Juvenile Coord. Rep. at 11. | release, placement, or medication—quite the opposite. *See* DX-23 [Eich Dep. Tr.] at 210:5–8 ("Q. Has it been your experience that KIND attorneys advocate for children with respect to their release to sponsors?" A. No."); DX-39 [Mixon Dep. Tr.] at 154:2–15 ("For some reason getting involved in placement decisions on behalf of children who want a different result, I don't know anybody ever doing that successfully.").<br><br>ORR has threatened to terminate legal services providers' Vera funding should they challenge ORR's decisions regarding release or placement. *See, e.g.*, Ex. 198 [Williams Dep. Tr.] at 83:1–84:12. Defendants offer no evidence that ORR could not or would not do so again.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 2. |
| **91.** It is ORR's practice that ORR-funded legal providers may represent a child who wishes to seek a *Flores* bond hearing if representation has already been iniated [*sic*] for immigration proceedings.<br><br>Biswas Dep. 184:17-21; Nathan-Pineau Dep. 36:1-6. | <u>**Undisputed**</u> for purposes of this motion. |

87

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **92.** Mandating ORR-funded legal representation to challenge ORR placement, release, and medication decisions would divert valuable program resources currently used to connect children with legal service providers for other purposes (such as seeking immigration relief) and used to fund other essential activities.<br><br>Antkowiak Decl. ¶¶ 37, 53. | **Disputed.**<br>Defendants' cited evidence consists of a single declaration, which states only that ORR does not have "hundreds or thousands of attorneys to represent the agency in administrative hearings." DX-09 [Antkowiak Decl.] ¶ 53. Defendants' evidence says nothing about the resources of legal services providers at all, much less whether legal services providers should have the prerogative to advocate for children's licensed placement or reunification with family over other legal services delivery, should their resources in fact prove inadequate to cover all. As for diverting ORR's own resources, Defendants' cited evidence speculates, but does not establish, that ORR would need hundreds or thousands of attorneys to oppose children's lawyers in administrative hearings. Defendants also offer no evidence from which to conclude that an administrative hearing would be required each time an attorney advocates for a child's release or licensed placement.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 17. |
| **93.** ORR continues to work with attorneys after they have challenged ORR decisionmaking for UACs. | **Disputed.**<br>Defendants' cited evidence demonstrates at most that *sometimes* ORR communicates with legal service providers and that Mr. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

88

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Biswas 30(b)(6) Dep. 443:18-23; David Dep. 158:20-159:8; De La Cruz Dep. 219:11-16; Castaneda Dep. 81:15-82:8; Eich Dep. 210:9-13, 214:1-4; Heath Dep. 49:21-50:19; Smith Dep. 45:21-46:5; Trevino Dep. 382:25-383:9; Wood Dep. 76:18-77:1, 77:12-20; Williams Dep. 122:23-123:2, 123:5-9; Biswas Decl. ¶ 93. | Biswas, Senior Supervisory Policy Counsel for ORR, is not personally aware of ORR refusing to work with attorneys after they "provid[e] services to UACs." DX-10 [Biswas Decl.] ¶ 93. Defendants fail to cite a single instance of ORR continuing to work with an attorney after that attorney has advocated on behalf of a child with respect to decisions concerning release, placement, or medication.<br><br>ORR has on occasion threatened to terminate legal services providers' Vera funding should they challenge ORR's decisions regarding release or placement.  *See, e.g.*, Ex. 198 [Williams Dep. Tr.] at 83:1–84:12. Defendants offer no evidence that ORR could not or would not do so again. |
| 94. | ORR does not to cut funding for ORR-funded legal service providers for using non-ORR funding to challenge ORR decisionmaking for UACs.<br><br>Biswas 30(b)(6) Dep. 443:24-444:2; Williams Dep. 96:20-97:9; Mixon Dep. 133:16-21, 150:23-151:4; Biswas Decl. ¶ 93. | **Partially Disputed.**<br>ORR has on occasion threatened to terminate legal services providers' Vera funding should they challenge ORR's decisions regarding release or placement. *See, e.g.*, Ex. 198 [Williams Dep. Tr.] at 83:1–84:12. Defendants offer no evidence that ORR could not or would not in the future cut funding for ORR-funded legal service providers for using non-ORR funding to challenge ORR decisionmaking for UACs. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **Defendants' Uncontroverted Facts: Supporting Data** ||
| **95.** Care providers and children in care are actively monitored, and ORR runs numbers on specific care providers to determine location, average length of care, and how a particular care provider compares to other care providers: a pattern of inexplicably long length of care could lead to non-renewal or termination of the grant.<br><br>Antkowiak Decl. ¶¶ 41-43. | **Partially Disputed.**<br>Plaintiffs do not dispute that ORR monitors care providers.<br><br>Plaintiffs dispute Defendants' statement to the extent it implies that a care provider's history related to the well-being of children in their care can and/or has impacted the renewal or termination of grants. U.S. Gov't Accountability Off., GAO-20-609, *Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities* 24 (2020), https://www.gao .gov/assets/710/709402.pdf, (19 of paginated report) ("We identified some ORR grantees with a history of significant incidents related to the safety and well-being of children in their care that subsequently received new or continuation grants.").<br><br>Plaintiffs further dispute Defendants' statement to the extent it (or the cited evidence) implies "actively" monitoring actually results in ORR providing immediate or timely monitoring reports to its care providers. U.S. Gov't Accountability Off., GAO-20-609, *Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities* 39–34 (2020), https://www.gao.gov/assets/7 10/709402.pdf ("ORR policy further states that the monitoring team should send a monitoring report |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | documenting any necessary corrective actions to a facility within 30 days after the site visit, but the monitoring team did not meet this timeframe for many of the facilities that received site visits in fiscal year 2018 and 2019. . . . Our analysis of these data found that monitoring teams took more than 30 business days to send reports to 77 percent of facilities they visited in fiscal year 2018 and 78 percent of facilities they visited in fiscal year 2019. Some reports took much longer; one report for a site visit conducted in fiscal year 2018 was not sent to the facility until early 2020, well over a year after the site visit."). |
| | Plaintiffs further dispute Defendants' statement to the extent it (or the cited evidence) implies "actively" monitoring actually results in immediate or timely corrective action by the care provider.  U.S. Gov't Accountability Off., GAO-20-609, *Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities* 24 n.44 (2020), https://www.gao.gov/assets/710/709402.pdf ("we found that the grantee did not take action on many of the corrective actions until after it received the report, 8 months after the monitoring visit and 5 months after ORR awarded the grantee a new grant."); *id.* at 35 ("ORR Primarily Addresses Grantee Noncompliance by Requiring |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

91

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Corrective Actions, but Monitoring and Corrective Actions Have Not Always Been Timely"). <br><br> The cited evidence does not reflect any actual evidence of non-renewal or termination based on "inexplicably long length of care." Plaintiffs are unaware of a care provider grant ever having been denied renewal or terminated for this stated reason. |
| **96.** Data from June 2019 through March 2020 demonstrates that a child's average length of time in ORR's care and custody was 48.4 days. <br><br> ORR Juvenile Coord. Rep. at 22. | **Partially Disputed.** <br> Plaintiffs do not dispute that the ORR Juvenile Coordinator report provides a child's average length of time in ORR custody from June 2019 to March 2020 was 48.4 days. DX-11 [ORR Juvenile Coord Rep.] at 20 (Table 1). <br><br> Plaintiffs dispute this fact because the cited evidence relies on data which is unclear. For example, it is unclear whether the average length of care includes only children discharged or if it also includes children still in ORR care at the time of the data collection. In the past, ORR has reported the average length of care in inconsistent manners. For Fiscal Year 2019, ORR reported that the average length of time a UAC *remained* in ORR care was 66 days. Ex 131 [ORR Facts and Data] at 1972. For Fiscal Year 2018, ORR reports indicate that the average length of care (for those discharged) was 63.5 days, and separately indicate that the average length of care (for those still in care) |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | was 72.7 days. U.S. Dep't of Health & Human Servs., *Unaccompanied Children: Latest UAC Data– FY2018* (2019),  https://www.hhs.gov /programs/social- services/unaccompanied-alien- children/latest-uac-data- fy2018/index.html#overall-data.<br><br>Plaintiffs also dispute Defendants' statement to the extent it suggests that this data reflects the average length of care prior to reunification. Defendants' cited data captures average length of ORR custody regardless of discharge type, which generally include reunification with sponsor, voluntary departure, removal order, age out, age redetermination, as well as other discharge categories. DX-11 [ORR Juvenile Coord. Rep.] at 20; *see* Ex. 181 [Ryo Expert Rep.] at 340.<br><br>Plaintiffs also dispute Defendants' statement to the extent it is inconsistent with HHS's own published data for the same timeframe. *See* U.S. Dep't of Health & Human Servs., *Unaccompanied Children: Latest UAC Data – FY2020* (2020), https://www.hhs.gov/ programs/social- services/unaccompanied-alien- children/latest-uac-data- fy2020/index.html (HHS's reported average length of care for those discharged between October 2019 and May 2020 is higher than the ORR |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Juvenile Coordinator's reported average length of care for each month by anywhere from 9–22 days). |
| 97. | Data from June 2019 through May 2020 demonstrates that a child's average length of time in ORR's care and custody was 54 days.<br><br>ORR Juvenile Coord. Rep at 22. | **Partially Disputed.**<br>Plaintiffs do not dispute that the ORR Juvenile Coordinator report provides that a child's average length of time in ORR care and custody from June 2019 to May 2020 was 54 days. DX-11 [ORR Juvenile Coord Rep.] at 20 (Table 1).<br><br>Plaintiffs dispute this data to the extent it is unclear whether the average length of care includes data only for children discharged or also includes the average for children still in ORR care at the time of the data collection. In the past, ORR has reported the average length of care in inconsistent manners. For Fiscal Year 2019, ORR reported that the average length of time a UAC *remained* in ORR care was 66 days. *See* Ex. 131. For Fiscal Year 2018, ORR reports indicate that the average length of care (for those discharged) was 63.5 days, and separately indicate that the average length of care (for those still in care) was 72.7 days. U.S. Dep't of Health & Human Servs., *Unaccompanied Children: Latest UAC Data – FY2018* (2019), https://www.hhs.gov/programs/social-services/unaccompanied-alien-children/latest-uac-data-fy2018/index.html#overall-data. |

COOLEY LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

PLAINTIFFS' STATEMENT OF GENUINE DISPUTE OF MATERIAL FACT CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs also dispute Defendants' statement to the extent it suggests that this data reflects the average length of care prior to reunification. Defendants' cited data captures average length of ORR custody regardless of discharge type, which generally include reunification with sponsor, voluntary departure, removal order, age out, age redetermination, as well as other discharge categories. DX-11 [ORR Juvenile Coord. Rep.] at 20; *see* Ex. 181 [Ryo Expert Rep.] at 340.<br><br>Plaintiffs also dispute Defendants' statement to the extent it is inconsistent with HHS's own published data for the same timeframe. *See* U.S. Dep't of Health & Human Servs., *Unaccompanied Children: Latest UAC Data – FY2020* (2020), https://www.hhs.gov/programs/social-services/unaccompanied-alien-children/latest-uac-data-fy2020/index.html (HHS's reported average length of care for those discharged between October 2019 and May 2020 is higher than the ORR Juvenile Coordinator's reported average length of care for each month by anywhere from 9-22 days). |
| 98.   In fiscal year 2020 (through June 2020), ORR has made a total of 14,421 UAC placements.<br><br>Antkowiak Decl. ¶ 31. | **<u>Undisputed</u>** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 11. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

95

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | Plaintiffs do not dispute that the table contained in paragraph 31 of DX-09 contains this information. Plaintiffs, however, seek to clarify that "placements" in Defendants' statement refers to placements into ORR custody rather than placements with sponsors. |
| **99.** In fiscal year 2020 (through June 2020), ORR has placed a total of 156 UAC in staff-secure facilities.<br><br>Antkowiak Decl. ¶ 31. | **Partially Disputed.**<br>Plaintiffs do not dispute that the table contained in paragraph 31 of DX-09 contains this information.<br><br>Plaintiffs dispute the accuracy of the table contained in paragraph 31 of DX-09 to the extent that the evidence cited does not define "staff-secure facilities" and does not indicate whether this number includes children placed in "therapeutic staff-secure" facilities.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 11. |
| **100.** In fiscal year 2020 (through June 2020), ORR has placed a total of 24 UAC in residential treatment centers.<br><br>Antkowiak Decl. ¶ 31. | **Partially Disputed.**<br>Plaintiffs do not dispute that the table contained in paragraph 31 of DX-09 contains this information.<br><br>Plaintiffs dispute the accuracy of the table contained in paragraph 31 of DX-09 to the extent that the evidence cited does not define "residential treatment centers" and does not indicate whether this number includes children placed in "therapeutic group |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

96

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | homes" or "out-of-network" residential treatment centers.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 11. |
| **101.** In fiscal year 2020 (through June 2020), ORR has placed a total of 56 UAC in secure facilities.<br><br>Antkowiak Decl. ¶ 31. | **Partially Disputed.**<br>Plaintiffs do not dispute that the table contained in paragraph 31 of DX-09 contains this information.<br><br>Plaintiffs dispute the accuracy of the table contained in paragraph 31 of DX-09 to the extent that the evidence cited does not define "secure" facilities.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 11. |
| **102.** A separate analysis of the data provided in *Flores* similarly indicates that only a small percentage of children placed in ORR's care and custody are stepped up.<br><br>Dr. Ryan Expert Rep. ¶ 35; Dr. Ryan Dep. 102:5-11, 244:2-12. | **Partially Disputed.**<br>Plaintiffs do not dispute, for purposes of this motion, that only a small percentage of children placed in ORR's care and custody are stepped up. *See* Ex. 57 [Ryo Expert Rep.] at 1399 (out of 109,803 custody periods, only 578 related to step-ups).<br><br>Plaintiffs dispute the accuracy of Dr. Ryan's data analysis particularly given that it does not include all ORR placements from which a child may be stepped up and is therefore not reliable. *See* Ex. 164 [Ryan Dep. Tr.] at 141:5–142:2, 183:3–23, 184:5–185:18. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

97

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **103.** Approximately 14% of all children placed in domestic child welfare systems are stepped up to a more restrictive level of setting than the shelter level.<br><br>Dr. Ryan Expert Rep. ¶ 35; Dr. Ryan Dep. 102:12-103:15. | **Disputed.**<br>Plaintiffs dispute that the statement is supported by the cited evidence.  Dr. Ryan's report refers to "the risk of **congregate care** placement with children in the domestic child welfare system..." not **restrictive placements**. DX-30 ¶ 35 (emphasis added). Moreover, Dr. Ryan's cited deposition testimony refers to Michigan specifically and does not discuss the "domestic child welfare system" generally. DX-8 [Ryan Dep. Tr.] at 102:12–103:15. |
| **104.** A separate analysis of the *Flores* data indicates that 86% of all children who are placed in ORR's care and custody and who are stepped up to a more restrictive setting than the shelter level were stepped up only after they had been in ORR's care and custody for more than two months.<br><br>Dr. Ryan Expert Rebuttal Rep. ¶ 19; Dr. Ryo Expert Rep. at 9. | **Disputed.**<br>Plaintiffs dispute that Dr. Ryo's analysis concluded that "86% of all children who are placed in ORR's care and custody and who are stepped up to a more restrictive setting than the shelter level were stepped up only after they had been in ORR's care and custody for more than two months." Dr. Ryan misstates Dr. Ryo's data analysis. Table 1 of Dr. Ryo's report clearly states that of the 578 custody periods that included step-ups, 328 occurred in 59 days or less, meaning that a majority (56.7%) of step-ups occurred before a child had been in custody for at least 2 months. Ex. 186 [Ryo Decl.] ¶¶ 7–10 at 363–367; *see also* Ex. 57 [Ryo Expert Rep.] at 1401. And of the 578 custody periods that included step ups, 250 occurred after 60 days or more in custody, meaning less than half (43.3%) of step-ups occurred after 2 months in custody. *Id.* |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **Defendants' Uncontroverted Facts: Named Plaintiffs** ||
| **105.** On February 14, 2018, Lucas R. received a know-your-rights presentation from a non-profit, independent group, a list of pro bono legal service providers, and attorneys conducted a legal screening of Lucas R. and found he likely was not eligible for immigration legal relief.<br><br>De La Cruz LR Decl. ¶ 12; GOV-00010486; GOV-00010498; GOV-00009343, GOV-00009501. | **<u>Undisputed</u>** for purposes of this motion. |
| **106.** Southwest Key Sol began working with Lucas R.'s half-sister, Madelyn (who had entered the U. S. one year before) to apply as a sponsor and by March 1, 2018, she had submitted a partially complete application, but her household member, at that time, had not submitted his forms to investigate his background (until at least April 19, 2018).<br><br>De La Cruz LR Decl. ¶¶ 13, 32; GOV-00010520, GOV-00010527, GOV-00010529; GOV-00010594-10595, GOV-00010615-10616, GOV-00010620-10625. | **<u>Partially Disputed.</u>**<br>Plaintiffs do not dispute that Southwest Key Sol worked with Madelyn R. in her sponsorship application to sponsor Lucas R.<br><br>Plaintiffs dispute that the cited evidence supports the statement that Madelyn "had entered the U.S. one year before" and it is disputed that the "household member" referenced actually lived with Madelyn. *See* ECF No. 37-13 [Decl. of Madelyn R., July 19, 2018 ("Madelyn R. Decl.")] ¶¶ 3, 10. |
| **107.** In mid-March, a TVPRA-mandated home study was recommended for Lucas R. by the case manager and third-party case coordinator, and was ordered by the ORR FFS on March 17, 2018.<br><br>De La Cruz LR Decl. ¶ 21; GOV-00010563-10564. | **<u>Undisputed</u>** for purposes of this motion. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

99

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| **108.** | A home visit was conducted by a third-party non-profit home study agency for Madelyn R., with the initial visit taking place on March 22, 2018, a follow-up visit on March 30, 2018, and a third home visit on April 5, 2018, and a negative recommendation was on issued April 12, 2018, with which both the case coordinator and FFS were in agreement.<br><br>De La Cruz LR Decl. ¶¶ 22-23; GOV-00010500-10501, GOV-00010581-10583. | **Undisputed** for purposes of this motion. |
| **109.** | On May 21, 2018, Lucas R. was placed at Shiloh Residential Treatment Center at the recommendation of a qualified medical professional, and with the consultation and recommendation of ORR and shelter staff.<br><br>De La Cruz LR Decl. ¶¶ 33-45; GOV-00009222-9223, GOV-00009228, GOV-00009304-9305, GOV-00010638. | **Partially Disputed.**<br>Plaintiffs do not dispute that on May 21, 2018, Lucas R. was placed at Shiloh Residential Treatment Center.<br><br>Plaintiffs dispute that Lucas R.'s placement was "at the recommendation of a qualified medical professional" as that statement is not supported by the evidence cited. *See* DX-41 [De La Cruz LR Decl.] ¶ 33 ("ORR determined that Lucas R could not be treated through outpatient services in a shelter-setting...").<br><br>Plaintiffs further dispute this statement to the extent it implies Lucas R. was stepped up to an RTC based on the recommendation of a licensed psychologist or psychiatrist. Lucas R was stepped up based on the recommendation of a psychiatric mental health nurse practitioner, not a licensed psychologist or psychiatrist. |

100

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | *See* ECF No. 144 [Azar Answer] ¶ 31.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 29. |
| **110.** At Shiloh, Lucas R. received a know-your-rights presentation and legal screening for possible legal relief from the Cabrini Center 10 days after arrival on May 31, 2018, had his own attorney of record who entered an appearance for him as of August 9, 2018, and he had multiple meetings with counsel.<br><br>De La Cruz LR Decl. ¶ 45; GOV-00009338, GOV-00009428, GOV-00009760, GOV-00009762. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 29. |
| **111.** On June 11, 2018, Lucas R.'s half-brother was identified as a potential sponsor for Lucas R. and a family reunification packet was sent to the potential sponsor.<br><br>De La Cruz LR Decl. ¶ 47; GOV-00009506, GOV-00009591. | **Undisputed** for purposes of this motion. |
| **112.** Lucas R. stated during the course of this litigation: "Plaintiff answers that he was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody. Plaintiff further answers that to the best of his knowledge and recollection no lawyer | **Undisputed** for purposes of this motion. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

101

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| ever represented him with respect to custody, medication, placement, or release at any time while he was in ORR custody." <br><br> Plaintiff Lucas R.'s Answers at 7-8. | |
| **113.** On his first day in ORR custody, Jaime D. received a know-your-rights presentation, was legally screened by legal service provider, and was provided a list of pro bono legal service providers. <br><br> GOV-00008821-8836 | **Partially Disputed.** <br> Plaintiffs do not dispute that Jaime D. was provided a list of pro bono legal services providers. <br><br> Plaintiffs dispute the remainder of this statement as unsupported by the cited evidence. *See* DX-46 at GOV-00008821–8836 (list of legal services providers and immigration case documents). |
| **114.** On or around April 9, 2018, Jaime D. met with a clinician for an individual mental health session, where he reported he had no history of violence towards others and made no mention of any gang involvement. <br><br> Fink JD Decl. ¶ 7; GOV-00008809. | **Undisputed** for purposes of this motion. |
| **115.** On or around April 11, 2018, during an assessment, Jaime D. disclosed that he was a part of a gang in Honduras, and provided a detailed statement that while in Honduras, he killed four gang members, sold and consumed marijuana, and was observed writing gang symbols on the wall. <br><br> Fink JD Decl. ¶ 8; GOV-00008786, GOV-00008793, GOV-00008800, GOV-00008875-8876, GOV-00008879-8881. | **Partially Disputed.** <br> Plaintiffs dispute this statement to the extent it describes Jaime D.'s disclosure as "detailed" because the cited evidence does not support that characterization. <br><br> Plaintiffs further dispute that Jaime D. wrote "gang symbols" as the evidence cited does not support those statements. <br><br> Plaintiffs further dispute this fact to the extent Defendants rely on |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

102

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | inadmissible evidence. *See* Evidentiary Objections ¶ 30. |
| **116.** | On the same day Jaime D. made these disclosures, a case manager at Cayuga Centers shelter recommended that Jaime D. be transferred to a secure facility due to the risk he posed to himself and others, and the case coordinator concurred, noting that Jaime D.'s disclosures of a violent criminal history warranted an immediate transfer to guarantee the safety of the minor and others.<br><br>Fink JD Decl. ¶¶ 9-10; GOV-00008810, GOV-00008786, GOV-00008793-8794. | **Disputed.**<br>Plaintiffs dispute this fact because the evidence cited indicates the case manager recommended "transfer … to a Staff secured facility..." not a secure facility. DX-46 at GOV-00008701.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 31. |
| **117.** | On or around April 16, 2018, an ORR FFS approved Jaime D.'s transfer to Yolo County Juvenile Detention Center, a secure facility, in Woodland, California due to these disclosures.<br><br>Fink JD Decl. ¶ 11; GOV-00008794. | **Undisputed** for purposes of this motion. |
| **118.** | On or around April 19, 2018, Jaime D. received an NOP, which was provided to him in English and Spanish and contained the reasoning for his placement at Yolo, and which he signed acknowledging receipt, and he attended a know-your-rights presentation on April 25, 2018.<br><br>Fink JD Decl. ¶ 15; GOV-00008522-8525, GOV-00008594. | **Undisputed** for purposes of this motion. |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **119.** On or around April 24, 2018, after residing at Yolo for about a week, Jaime D. changed his story about his life in his home country, and reported that he had never been in a gang or murdered anyone, and that he made up the story because he believed it would help him remain in the United States.<br><br>Fink JD Decl. ¶ 18; GOV-00008666-8667. | **Disputed.**<br>The statement that Jaime D. "changed his story about his life in his home country" is not supported by the cited evidence.<br><br>Further, in discussing his prior incorrect statements, Jaime D. said he felt "very nervous" around the shelter staff and "wanted the shelter staff to stop talking to [him]." *See* Ex. 80 [Jaime D. Decl.] ¶ 5.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 32. |
| **120.** On or around May 3, 2018, after Jaime D. had recanted his account of committing violent acts in his home country, his case manager noted that Yolo staff agreed he should not be in a secure facility.<br><br>Fink JD Decl. ¶ 24; GOV-00008667. | **Undisputed** for purposes of this motion, except to the extent the fact is incomplete. The evidence cited indicates that on May 3, 2018, the case manager informed Jaime D. that "his case has been staffed with our FFS and CC, and we are all in agreement that he isn't appropriately placed in secure setting." *See* DX-46 at GOV-00008667. |
| **121.** On or about May 14, 2018, a case manager submitted a formal request that Jaime D. be transferred to a less restrictive setting, which the case coordinator concurred with on May 16, 2018, and which an ORR FFS approved that same day.<br><br>Fink JD Decl. ¶ 25; GOV-00008701-8702. | **Undisputed** for purposes of this motion, except that Plaintiffs seek to clarify that the evidence cited indicates the case manager submitted a formal request for a "Staff Secure" program. *See* DX-46 at GOV-00008701. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **122.** On or about May 24, 2018, Jaime D. arrived at Children's Village staff-secure.<br><br>Fink JD Decl. ¶ 28; GOV-00008699-8700. | **Undisputed** for purposes of this motion. |
| **123.** Jaime D. stated in a sworn interrogatory response: "Plaintiff answers that he was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody. Plaintiff further answers that to the best of his knowledge and recollection no lawyer ever represented him with respect to custody, medication, placement, or release at any time while he was in ORR custody."<br><br>Plaintiff Jaime D.'s Answers at 7-8. | **Undisputed** for purposes of this motion. |
| **124.** Daniela Marisol T. provided a signed acknowledgment that she had received a know-your-rights presentation, was legally screened by legal service provider Pro-Bar on August 8, 2016, and provided a list of pro bono legal service providers.<br><br>Vergara DMT Decl. ¶ 22; GOV-00001839, GOV-00001847-1892, GOV-00001985, GOV-00002374. | **Undisputed** for purposes of this motion, except to the extent the evidence cited provides conflicting information as to whether Daniela Marisol T. "was legally screened by legal service provider Pro-Bar on August 8," 2016 or 2017.  *Compare* DX-47 [Vergara Decl.] ¶ 22 (stating Daniela Marisol T.'s screening occurred August 6, 2017) *with* DX-49 at GOV-00002374 (stating Daniela Marisol T.'s screening occurred August 6, 2016). |

Cooley LLP
Attorneys At Law
Los Angeles

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **125.** On or around September 8, 2017, Daniela Marisol T. was placed at Shiloh at the recommendation of a qualified medical professional, and with the consultation and recommendation of ORR and shelter staff.<br><br>Vergara DMT Decl. ¶¶ 32, 36; GOV-00002145-2148, GOV-00002151-2152, GOV-00003122. | **Undisputed** for purposes of this motion. |
| **126.** At Shiloh, Daniela Marisol T. Daniela received a know-your-rights presentation, a copy of a list of pro bono legal service providers in Texas, and was referred to a child advocate on October 4, 2017.<br><br>Vergara DMT Decl. ¶ 44; GOV-00003189-3194, GOV-00003216-3222, GOV-00003282. | **Undisputed** for purposes of this motion. |
| **127.** On February 22, 2018, Daniela received a second know-your-rights presentation from Immigration Defenders Law Center, was provided a list of legal service providers, and on February 27, 2018, she received a legal screening and was found likely to be eligible for legal relief, including Special Immigrant Juvenile Status and Asylum.<br><br>Vergara DMT Decl. ¶ 58; GOV-00002948-2950, GOV-00002964. | **Undisputed** for purposes of this motion. |

Cooley LLP
Attorneys At Law
Los Angeles

**Plaintiffs' Statement of Genuine Dispute of Material Fact**
**Case No. 2:18-cv-05741 DMG PLA**

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **128.** On March 13, 2018, Daniela was informed she had been assigned a child advocate, whom she met with at the shelter on April 14 and May 12, 2018.<br><br>Vergara DMT Decl. ¶ 58; GOV-00002965, GOV-00002966, GOV-00002968. | **Undisputed** for purposes of this motion. |
| **129.** Daniela Marisol T. stated during the course of this litigation: "Plaintiff answers that she was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody.  Plaintiff further answers that to the best of her knowledge and recollection no lawyer ever represented her with respect to custody, medication, placement, or release at any time while she was in ORR custody."<br><br>Plaintiff Daniela Marisol T.'s Answers at 7-8. | **Disputed.**<br>Plaintiffs dispute this fact insofar as it misquotes the cited evidence. *See* DX-48 at 7–8. |
| **130.** On July 17, 2017, following a psychological evaluation, Miguel Angel S. was recommended and approved for a transfer for a step-up to Shiloh Residential Treatment Center due to his mental health and behavioral issues.<br><br>Fink MAS Decl. ¶¶ 16-17; GOV-00011218-11220. | **Undisputed** for purposes of this motion, except that Plaintiffs seek to clarify that the evidence cited indicates the Transfer Request noted that "Psychologist Dr. Sonia Carbonell has provided a *verbal diagnosis and recommendation* for treatment. Program is still pending the official evaluation summary." *See* DX-51 at GOV-00011219 (emphasis added). |

Cooley LLP
Attorneys At Law
Los Angeles

107

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE No. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **131.** Miguel Angel S.'s mood escalated in January 2018 and after he engaged in verbal and physical aggression against his peers and staff, Shiloh staff and the FFS met to discuss Shiloh's recommendation that Miguel Angel S. be transferred up to a higher level of case.<br><br>Fink MAS Decl. ¶¶ 23, 26; GOV-00011476, GOV-00011589, GOV-00011527-11528. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 33. |
| **132.** Miguel Angel S. was approved for transfer from Shiloh to Yolo on March 23, 2018 and, on October 11, 2018, was released from ORR custody into the custody of his sponsor.<br><br>Fink MAS Decl. ¶¶ 26, 38; GOV-00011306. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 33. |
| **133.** On January 19, 2017, Gabriela N. was provided a know-your-rights presentation by a legal services provider, Diocesan Migrant & Refugee Services, Inc.<br><br>Vergara GN Decl. ¶ 20; GOV-00006152. | **Undisputed** for purposes of this motion. |
| **134.** Isaac N. applied as a sponsor for Gabriela N. but had never previously been Gabriela N.'s primary caregiver and she had not seen him in approximately 14 years.<br><br>Vergara GN Decl. ¶¶ 79, 86; GOV-00006628, GOV-00006641-6642, GOV-00006548-6549. | **Partially Disputed.** Plaintiffs do not dispute that Isaac N. applied as a sponsor for Gabriela N. and had never previously been her primary caregiver.<br><br>Plaintiffs dispute this fact to the extent it is intended to suggest that Isaac N. and Gabriela N. did not have a close relationship. *See* Ex. 138 ¶ 4 at 2022 ("We have a very close |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

108

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | relationship. I spent a lot of time with [Gabriela N.] when we both lived in El Salvador. I came to the United States when she was five years old…"). |
| | | Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 35. |
| 135. | Isaac N. had a serious medical condition. Vergara GN Decl. ¶ 86; GOV-00006626, GOV-00006641-6642, GOV-00006548-6549. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 35. |
| 136. | Isaac N.'s household members refused to provide IDs or fingerprints. Vergara GN Decl. ¶ 80; GOV-00007610. | **Undisputed** for purposes of this motion. |
| 137. | Isaac N. disclosed prior kidnapping charges against him in his home country of El Salvador, and did not immediately provide the requested exonerating documentation. Vergara GN Decl. ¶ 81; GOV-00007276, GOV-00007618. | **Partially Disputed.** Plaintiffs do not dispute that Isaac N. disclosed prior kidnapping charges against him in his home country. Plaintiffs dispute that Isaac N. "did not immediately provide the requested exonerating documentation" to the extent it suggests he did not provide exonerating documentation as soon as he was able to and because that statement is not supported by the cited evidence. *See* Ex. 138 ¶ 8 at 2023 ("I don't remember exactly when I initially applied to be [Gabriela N's] sponsor. In the fall of 2017 I tried to submit my |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

109

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| | | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|---|
| | | | fingerprints. However, ORR told me that I needed to submit documentation (the "carta de libertad") from El Salvador that explained my time in prison. I requested the documentation from El Salvador, and it arrived one month and eight days later. I immediately submitted it to ORR, and ORR told me to go and get my fingerprints taken again."). |
| | 138. | In February 2018, ORR ordered a mandatory TVPRA home study, due to Gabriela N.'s disclosures of abuse in her home country.<br><br>Vergara GN Decl. ¶ 86; GOV-00006543-6544. | **Partially Disputed.**<br>Plaintiffs do not dispute ORR mandated a mandatory TVPRA home study.<br><br>Plaintiffs dispute that the cited evidence supports the statement that ORR ordered the mandatory TVPRA home study "In *February* 2018". *See* DX-52 ¶ 86 ("On January 10, 2018, a mandatory TVPRA Home Study was requested…"); DX-54 at GOV-00006543–6544 (no date listed).<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 35. |
| | 139. | Isaac N. received a negative home study recommendation stating that he was not a suitable sponsor.<br><br>Vergara GN Decl. ¶ 86; GOV-00006639-6642. | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible evidence. *See* Evidentiary Objections ¶ 35. |
| | 140. | On August 21, 2017, Gabriela N. was evaluated by a psychiatrist from Texas Tech University Psychiatry, and the psychiatrist recommended that she be | **Undisputed** for purposes of this motion except to the extent Defendants rely on inadmissible |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

110

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| placed in an residential treatment center to target her therapeutic needs.<br><br>Vergara GN Decl. ¶ 38; GOV-00007656, GOV-00007724, GOV-00007372-7373. | evidence. *See* Evidentiary Objections ¶ 34. |
| **141.** While placed at Shiloh, Gabriela N. received a know-your-rights presentation, received legal screenings, and met with attorneys.<br><br>Vergara GN Decl. ¶ 59; GOV-00006151, GOV-00006527, GOV-00006813-6820. | **Undisputed** for purposes of this motion. |
| **142.** Gabriela N. stated during the course of this litigation: "Plaintiff answers that she was not privy, and accordingly can neither identify nor describe, the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody. Plaintiff further answers that to the best of her knowledge and recollection no lawyer ever represented her with respect to custody, medication, placement, or release at any time while she was in ORR custody."<br><br>Plaintiff Gabriela N.'s Answers at 7-8. | **Disputed.**<br>Plaintiffs dispute this statement insofar as this fact misquotes the cited evidence. Gabriela N.'s Response to Plaintiffs' Revised First Set of Interrogatories actually states: "Plaintiff answers that she was not privy, and accordingly can neither identify nor describe, all of the factual circumstances in which Defendants blocked VERA lawyers from representing you regarding custody, medication, placement, or release from ORR custody. Plaintiff further answers that while she was placed at St. Michael's Home for Children in Houston, Texas, she asked the care provider staff on numerous occasions if she could call Paola Perez, her immigration attorney.  Plaintiff states that the staff repeatedly denied her the ability to call Ms. Perez.  Plaintiff further answers that to the best of her knowledge and recollection no |

Cooley LLP
Attorneys At Law
Los Angeles

111

Plaintiffs' Statement of Genuine
Dispute of Material Fact
Case No. 2:18-cv-05741 DMG PLA

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | lawyer ever represented her with respect to custody, medication, placement, or release except for Plaintiffs' counsel." *See* DX-53 [Gabriela N.'s Responses to Defendants' Revised First Set of Interrogatories] at 7–8. |
| **143.** While Sirena P. was at a Southwest Key facility, she was recommended and approved for placement at Shiloh Residential Treatment Center due to mood instability, self-injurious behavior, and suicidal ideation, which made her a danger to herself.<br><br>De La Cruz SP Decl. ¶¶ 11-17; GOV-00014399, GOV-00014401, GOV-00014406, GOV-00014408, GOV-00014410, GOV-00014653, GOV-00015040. | **Partially Disputed.**<br>Plaintiffs do not dispute that Sirena P. was placed at both Southwest Key facility and Shiloh Residential Treatment Center.<br><br>Plaintiffs dispute this fact insofar as none of the cited evidence supports the statement that "she was recommended and approved for placement at Shiloh Residential Treatment Center."<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 36. |
| **144.** On June 4, 2018, Sirena P. was transferred to Shiloh upon the recommendation of a licensed psychiatrist and the approval of the ORR FFS, and ORR informed her father, Eduardo P., of the transfer.<br><br>De La Cruz SP Decl. ¶ 21; GOV-00014426-14427, GOV-00014450-14460, GOV-00013742-13743, GOV-00013748; Eduardo P. Dep. 29:25-30:1-2. | **Undisputed** for purposes of this motion. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **145.** Benjamin F. was initially placed in the St. PJ's Children's Home shelter and shortly after entering, exhibited symptoms suggesting a need for a higher level of placement.<br><br>De La Cruz BF Decl. ¶¶ 5, 8, 18-19, 23-30; GOV-00000681-686; GOV-00000834, GOV-00000925-937. | **Partially Disputed.**<br>Plaintiffs do not dispute that Benjamin F. was initially placed in St. PJ's Children Home.<br><br>Plaintiffs dispute this statement insofar as the cited evidence does not support that Benjamin F. "exhibited symptoms suggesting a need for a higher level of placement." The evidence cited makes no reference of a recommendation or referral to more restrictive placement but instead states that St. PJ's Children's Home staff requested moving Benjamin F.<br><br>Plaintiffs further dispute that the asserted fact is supported by admissible evidence. *See* Evidentiary Objections ¶ 41. |
| **146.** On July 23, 2018, Benjamin F. was placed at Shiloh Residential Treatment Center at the authorization of a qualified medical professional, and with the consultation and recommendation of shelter staff.<br><br>De La Cruz BF Decl. ¶¶ 31, 32, 34; GOV-00000017-18. | **Partially Disputed.**<br>Plaintiffs do not dispute that on July 23, 2018, Benjamin F. was placed at Shiloh Residential Treatment Center.<br><br>Plaintiffs dispute that the cited evidence supports that Benjamin F.'s placement was "at the authorization of a qualified medical professional, and with the consultation and recommendation of shelter staff." *See* DX-58 [De La Cruz Decl.] ¶ 31 ("Benjamin F. transferred to Shiloh, a Residential Treatment Center that treats children with emotional disorders, as well as children with intellectual and developmental disabilities, on July 23, 2018, where he resided until September 15, 2018, |

| Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | at which time ORR released him to his grandmother-sponsor."), ¶ 32 (describing Benjamin F.'s prior medication history); ¶ 34 (describing treatment goals); GOV-00000017-18 (Shiloh intake form with treatment goals). |

Pursuant to Rule 5.d(i) of this Court's Standing Order, Plaintiffs submit the following Additional Material Facts in support of their Opposition to Defendants' Motion for Summary Judgment:

| Plaintiffs' Additional Material Facts | Supporting Evidence |
|---|---|
| Plaintiffs' Additional Material Facts | |
| 147. Neither the ORR Policy Guide nor the ORR MAP requires an independent review, such as an independent examination and interview of the child, by an admissions team at the receiving RTC. | Ex. 1 [ORR Policy Guide] § 1.4.6 at 30; Ex. 2 [ORR MAP] at 100. |
| 148. In November 2018, the majority of kids placed in secure facilities were inappropriately placed. | Ex. 33 [Ray Dep. Tr.] at 163:19–25 at 1103; Ex. 190 at 427. |
| 149. In January 2019, over 70 percent of kids in staff-secure facilities and RTCs were placed out of compliance with ORR's own policies. | Ex. 23 [Fink Dep. Tr.] at 153:8−13; Ex. 171 [Fink Dep. Ex.175] at 264. |
| 150. At Yolo secure, children are detained in small cells with concrete beds layered with only a thin mattress and pillow. | Ex. 82 [Y.A.M.S. Decl.] ¶¶ 29–30 at 1529. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

114

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA

| Plaintiffs' Additional Material Facts | Supporting Evidence |
|---|---|
| **151.** Children have reported that they did not want to be housed at an ORR residential treatment center but had no choice in the matter. | Ex. 82 [Y.A.M.S. Decl.] ¶¶ 11, 16 at 1526–27; Ex. 67 [K.L.F. Decl.] ¶¶ 2, 3, 8 at 1457; Ex. 69 [K.N.A.T. Decl.] ¶¶ 3, 6 at 1466; Ex.70 [K.S.G.P. Decl.] ¶ 2 at 1470; Ex. 75 [M.Y.R.M. Decl.] ¶ 4 at 1495. |
| **152.** Children in ORR's care can and have been placed in psychiatric hospitals involuntarily. | Ex. 13 [Biswas 30(b)(6) Dep. Tr.] 14:10-15 at 649; Ex. 154 [De La Cruz Dep. Tr.] at 131:13–21; Ex. 158 [Heath Dep. Tr.] at 103:18–25; 269:2–11; Ex. 60 [C.J.A.L. Decl.] ¶ 2 at 1418; Ex. 65 [J.M.R.R. Decl.] ¶ 5 at 1445; Ex. 66 [J.S.C.M. Decl.] ¶ 6 at 1451; Ex. 82 [Y.A.M.S. Decl.] ¶¶ 7–8 at 1525. |
| **153.** Legal advocates, that provide services to children in restrictive settings, like MercyFirst RTC, are unaware of any Placement Review Panel pilot program or any other opportunity to seek an administrative hearing to challenge restrictive placement. | *See e.g.*, Ex. 185 [Enriquez Decl.] ¶ 8 at 359. |

Dated:  November 6, 2020          COOLEY LLP


*/s/ Summer J. Wynn*
Summer J. Wynn (240005)
Attorneys for Plaintiffs
Email: swynn@cooley.com

Cooley LLP
Attorneys At Law
Los Angeles

115

PLAINTIFFS' STATEMENT OF GENUINE
DISPUTE OF MATERIAL FACT
CASE NO. 2:18-CV-05741 DMG PLA