JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
ERNESTO H. MOLINA, JR.
Deputy Director
CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General
W. DANIEL SHIEH
BENJAMIN MARK MOSS
Senior Litigation Counsel
NANCY K. CANTER (263198)
ANTHONY J. MESSURI
JONATHAN K. ROSS
Trial Attorneys
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-9802
Daniel.Shieh@usdoj.gov
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lucas R., *et. al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Alex M. Azar,<br>Secretary of U.S. Dep't of Health and Human Services, *et al.*,<br><br>*Defendants*. | Case No.: 18-cv-05741-DMG-PLA<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing:  Dec. 11, 2020, 3:00 p.m. PT<br>Location: Courtroom 8C, 8th Floor<br>350 West First Street<br>Los Angeles, CA 90012<br>Honorable Dolly M. Gee<br>United States District Judge |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.    ARGUMENT ...................................................................................... 1

    A.    Defendants are Entitled to Judgment as a Matter of Law Because
        Plaintiffs' Claims for the Step-Up, Unfit-Custodian, and Legal-
        Representation Classes are Barred by Res Judicata......................... 1

    B.    Defendants Are Entitled to Judgment as a Matter of Law on the Step-Up
        Class's Due-Process Claim. ............................................................. 8

        1)    Private interests............................................................... 8

        2)    Risk of erroneous deprivation........................................ 12

        3)    The government's interest and *Mathews* balancing............................ 18

    C.    Defendants Are Entitled to Judgment as a Matter of Law on the Unfit-
        Custodian Class's Due-Process Claim. .......................................... 20

        1)    Private interests............................................................... 20

        2)    Risk of erroneous deprivation........................................ 22

        3)    The government's interest and *Mathews* balancing............................ 25

    D.    ORR's Policies and Practices for the Step-Up and Unfit-Custodian
        Classes Comport with the TVPRA and the APA. ......................... 27

    E.    Defendants Are Entitled to Judgment as a Matter of Law on the Legal-
        Representation Class's Claim. ........................................................ 28

III.    CONCLUSION ............................................................................... 30

CERTIFICATE OF SERVICE

ii

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

# TABLE OF AUTHORITIES

## CASES

*Aageson Grain & Cattle v. U.S. Dep't of Agric.,*
500 F.3d 1038 (9th Cir. 2007) .................................................................. 28

*Al Otro Lado, Inc. v. McAleenan,*
423 F. Supp. 3d 848 (S.D. Cal. 2019) ...................................................... 18

*All. To End Represssion v. Rochford,*
565 F.2d 975 (7th Cir. 1977) .................................................................... 18

*Beltran v. Cardall,*
222 F. Supp. 3d 476 (E.D. Va. 2016) .....................................................8, 24

*Beo v. D.C.,*
44 F.3d 1026 (D.C. Cir. 1995) ............................................................. 12, 21

*Biliski v. Red Clay Consol. School Dist. Bd. of Educ.,*
574 F.3d 214 (3d Cir. 2009) ................................................................. 14, 16

*Board of Directors v. Rotary Club,*
481 U.S. (1987) ........................................................................................ 27

*Chevron U.S.A., Inc. v. NRDC,*
467 U.S. 844 (1984) ................................................................................. 30

*Cnty. Of Los Angeles v. Davis,*
440 U.S. 625 (1979) ................................................................................. 13

*Confederated Tribes and Bands of Yakama Nation v. Yakima Cnty,*
963 F.3d 982 (9th Cir. 2020) .................................................................... 21

*Environment Furniture, Inc. v. Bina,*
2010 WL 2757191 (C.D. Cal. 2018) ........................................................ 28

*Fikre v. Fed. Bureau of Investigations,*
904 F.3d 1033 (9th Cir. 2018) .................................................................. 15

*Flores v. Meese,*
    934 F.2d 991 (9th Cir. 1990).....................................................................2, 5

*Flores v. Sessions,*
    862 F.3d 863 (9th Cir. 2017)........................................................................ 13

*Flores v. Sessions,*
    2018 WL 10162328 (C.D. Cal. 2018)..........................................12, 15, 19, 21

*In re Gault,*
    387 U.S. 1 (1967)..................................................................................3, 12

*Henry v. Cty. of Shasta,*
    132 F.3d 512 (9th Cir. 1997)........................................................................ 16

*Hiser v. Franklin,*
    94 F.3d 1287 (9th Cir. 1996).......................................................................... 7

*Howard v. City of Coos Bay,*
    871 F.3d 1032 (9th Cir. 2017)................................................................. 2, 3, 5

*King v. Atiyeh,*
    814 F.2d 565 (9th Cir. 1987).......................................................................... 6

*Ky. Dep't of Corrections v. Thompson,*
    490 U.S. 454 (1989)............................................................................. 11, 20

*L.V.M. v. Lloyd,*
    318 F. Supp. 3d 601 (S.D.N.Y. 2018)............................................................. 8

*Lacey v. Maricopa Cnty.,*
    693 F.3d 896 (9th Cir. 2012).......................................................................... 6

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001)........................................................................ 27

*Maldonado v. Lloyd,*
    2018 WL 2089348 (S.D.N.Y. 2018)............................................................... 8

*Marathon Oil Co. v. EPA*,
  564 F.2d 1253 (9th Cir. 1977) ................................................................. 28

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)........................................................................... passim

*McMichael v. Napa Cnty.*,
  709 F.2d 1268 (9th Cir. 1983) .............................................................6, 18

*Orff v. United States*,
  358 F.3d 1137 (9th Cir. 2004) ................................................................. 4

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
  810 F.3d 631 (9th Cir. 2015)................................................................. 17

*Parham v. J.R.*,
  442 U.S. 584 (1979)..........................................................................3, 15

*Reno v. Flores*,
  507 U.S. 292 (1993)...................................................................9, 10, 21

*Santos v. Smith*,
  260 F. Supp. 3d 598 (W.D. Va. 2017) .................................................... 8

*Saravia v. Sessions*,
  905 F.3d 1137 (9th Cir. 2018) ................................................................ 8

*Schall v. Martin*,
  467 U.S. 253 (1984)............................................................................3, 9

*State of California ex rel. Lockyer v. F.E.R.C.*,
  329 F.3d 700 (9th Cir. 2003)................................................................8, 9

*Vitek v. Jones*,
  445 U.S. 480 (1980)............................................................................... 3

*Washington Educ. Ass'n v. Nat'l Right to Work Legal Def. Found., Inc.*,
  187 F. App'x 681 (9th Cir. 2006)........................................................... 29

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

*Whole Woman's Health v. Hellerstedt*,
   136 S. Ct. 2292 (2016) .................................................................................. 4

*Woodby v. INS*,
   385 U.S. 276 (1966).................................................................................... 19

## STATUTES

5 U.S.C. § 554(a) ........................................................................................... 28

8 U.S.C. § 1101(a)(15) .................................................................................. 30

8 U.S.C. § 1158 .............................................................................................. 30

8 U.S.C. § 1232(c)(2) ..............................................................................6, 20

8 U.S.C. § 1232(c)(3) ............................................................................. 20, 26

8 U.S.C. § 1232(c)(5) ............................................................................. 29, 30

8 U.S.C. § 1362.............................................................................................. 29

## FEDERAL REGISTER

84 Fed. Reg. 44392 (Aug. 23, 2019).......................................................... 30

## FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 201(c)(1) ................................................................................. 13

Fed. R. Evid. 803(8)(A) ................................................................................ 13

Fed. R. Evid. 902(5) ...................................................................................... 13

## MISCELLANEOUS

ORR Guide § 1.4.2 ........................................................................................ 16

ORR Guide § 1.4.7 ........................................................................................ 16

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

ORR Guide § 2.2.4 .................................................................................................... 22

ORR Guide § 3.3.7 .................................................................................................... 13

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

## I.    INTRODUCTION

As Defendants have explained, the sprawling policies and procedures that Plaintiffs seek to impose on the Office of Refugee Resettlement's (ORR) unaccompanied alien children (UAC) program through judicial mandate would improperly and dramatically alter the system that Congress entrusted to ORR and that ORR has soundly operationalized.  The claims raised by the step-up, unfit-custodian, and legal-representation classes are barred by *res judicata*, and even if the Court were to reach Plaintiffs' claims on the merits, all three fail as a matter of law.  To obtain the relief they seek, Plaintiffs must show that due process or a statute requires the procedures that Plaintiffs demand.  Plaintiffs have failed to make this showing.  This Court should grant judgment for Defendants on all three claims.

## II.   ARGUMENT

### A.    Defendants are Entitled to Judgment as a Matter of Law Because Plaintiffs' Claims for the Step-Up, Unfit-Custodian, and Legal-Representation Classes are Barred by Res Judicata.

As Defendants have explained, Defendants are entitled to judgment as a matter of law because Plaintiffs' step-up, release, and legal-representation claims are barred by *res judicata*. *See* Defs.' Br. 14-18, 34-37, 51-53; *see also* Defs.' Opp. 8-9.  In *Flores*, the parties entered into the Settlement in satisfaction of Plaintiffs' class-wide claims "challenging, *inter alia*, the *constitutionality* of Defendants' policies, practices and regulations regarding the *detention and release* of unaccompanied minors taken into the custody of the [INS]."  Settlement, p. 3 (emphasis added).  In the Settlement, the parties agreed to procedures Defendants would implement regarding step-up, release, and legal representation of UACs.  *Res judicata* precludes Plaintiffs from challenging the constitutionality of those procedures in a subsequent suit on the same due-process theory advanced in *Flores*.  Plaintiffs' arguments to the contrary, Pls.' Opp. 2-11, fail.

To start, Plaintiffs contest only the first *res judicata* factor—identity of claims.  They acknowledge that "the [Settlement] is a final judgment," Pls.' Opp. 4, n.1, and do not address *at all* whether there is privity between the parties.  Thus, Plaintiffs' *res judicata* argument rests entirely on their assertion that there is not "identity of claims," Pls.' Opp. 3, between *Flores* and

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

the present suit.  Their assertion is wrong.  Incredibly, Plaintiffs' entire *res judicata* argument, Pls.' Opp. 2-11, cites to language from the Settlement just once, *id.* at 9-10, n.7, without ever addressing what the Settlement purported to settle.

      ***First***, Plaintiffs argue that "[t]here is no identity of claims because the material facts and evidence in this case postdate the [Settlement]," and thus the two suits do not arise from the "same transactional nucleus of facts."  Pls.' Opp. 4, *see also id.* at 4-6.  In particular, they assert that the Ninth Circuit has "'adopt[ed] a bright-line rule that *res judicata* does not apply to events post-dating the filing of the initial complaint'" or to "'claims that accrue after the filing of the operative complaint.'"  Pls.' Opp. 4 (quoting *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039-40 (9th Cir. 2017)).  But the reason there was no identity of claims in *Howard*—the case they cite—was because the plaintiff "could not have brought" her claims in the earlier suit.  871 F.3d at 1040.  The plaintiff in *Howard* alleged she had been retaliated against for filing a whistleblower complaint, but the alleged retaliation in the second suit did not occur until after she had filed and twice amended her complaint in the prior suit.  *Id.* at 1038.  The Ninth Circuit thus held that the plaintiff's second suit was not precluded by the first suit because the "retaliation claims in [the second] suit arose from events that occurred after she filed her complaint" in the first suit.  *Id.* at 1040.

      That is not the situation here, where the parties entered into a settlement agreement in a prior case to resolve the same claims on the same due-process theory that Plaintiffs advance here. *Compare Flores v. Meese*, 934 F.2d 991, 995 (9th Cir. 1990) ("Flores's second claim challenged the INS's failure to provide … 'prompt, mandatory, neutral and detached' review following arrest [on suspicion that a minor may be deportable]" regarding "whether probable cause to arrest existed" and "whether any available adult was suitable to ensure the detained juvenile's well-being and appearance at future proceedings [if released]"), *and* Settlement ¶¶ 21, 23-24 (setting forth standards for when a UAC may be placed in a secure detention facility and procedures for review of secure placement decisions); *id.* ¶¶ 14, 17, 28B (setting forth standards for sponsorship and release determinations and procedures for review of such determinations), *with* Lucas R. Compl. ¶¶ 183-84 (alleging that Defendants violate due process by placing UACs "in RTCs,

2

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

secure facilities, and medium-secure facilities without affording them a meaningful opportunity to be heard"), *and id.* ¶¶ 180-81 (alleging that Defendants violate due process by "delay[ing] or refus[ing] to release children ... without affording detained minors or their proposed custodians a timely, prompt, or meaningful opportunity to be heard regarding the custodians' fitness"). Thus, not only "could" Plaintiffs have brought their claims in the prior suit, *see Howard*, 871 F.3d at 1040—they *did*.[1]  Unlike in *Howard*, Plaintiffs here are not seeking redress for entirely new claims that depend on an entirely new set of facts that occurred after the first suit was filed; rather, they are seeking *additional* relief on the same due-process claims regarding placement, release, and legal representation that the Settlement conclusively resolved.[2]

Plaintiffs contend that they "could not have brought their current challenges to ORR's practices regarding step-up, custodial vetting, and access to legal counsel in *Flores* for at least three reasons." Pls.' Opp. 5. All three reasons fail. The first reason is that "at the time the [Settlement] was entered, the [HSA] had not yet assigned ORR responsibility for the care of unaccompanied minors" and "the ORR policies and practices challenged in this case were therefore not yet in existence." *Id.* That is irrelevant. Plaintiffs argue that due process requires additional procedures *beyond* what the parties negotiated in *Flores*. Pls.' Br. 29-36, 38-49. Whether *res judicata* precludes this argument does not depend on which agency currently has responsibility over UACs or what specific procedures that agency provides, so long as the agency is bound by *Flores*. Here, there is no dispute that ORR is bound by the Settlement, as are

---

[1] Plaintiffs concede that their due-process claims are not based on any violation of procedures required by the TVPRA. *See* Pls.' Br. 2 ("neither the TVPRA nor the FSA prescribes *procedures*"). Rather, their claims are based on case law that long pre-dates the Settlement applying the Fifth Amendment to the domestic child-welfare and juvenile-justice contexts. *See generally* Pls.' Br. (relying on, *inter alia*, *In re Gault*, 387 U.S. 1 (1967); *Parham v. J.R.*, 442 U.S. 584 (1979); *Vitek v. Jones* 445 U.S. 480 (1980); *Schall v. Martin*, 467 U.S. 253 (1984)). This reinforces that Plaintiffs could have brought—and in fact did bring—the same claims in *Flores*.

[2] Further, as Defendants have explained, Defs.' Br. 18, 36-37, 52, Plaintiffs' suit rests on the same transactional nucleus of facts as *Flores*, namely, the policies and procedures Defendants are required to follow in making placement and release decisions and in enabling legal representation of UACs.

3

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

members of the Plaintiff class.  Nor are Plaintiffs challenging ORR's compliance with what *Flores does* require—to the contrary, that is the subject of a separate suit.  *See Flores v. Barr*, 2:85-cv-04544-DMG-AGR (C.D. Cal.). [3]

Plaintiffs' second reason why they could not have brought their claims in *Flores* is that, at the time of *Flores*, "Congress had not yet enacted the TVPRA."  Pls.' Opp. 5.  But as Defendants have explained, Defs.' Br. 14-18, 34-37, 51-53, the procedures Plaintiffs seek are found nowhere in the TVPRA.  Rather, if those procedures are to be created as a result of the TVPRA, they must be created by a *court* under the theory that (a) the TVPRA creates a liberty interest, and (b) due process demands the procedures Plaintiffs seek to protect that interest.  But even if the TVPRA created a liberty interest (and as Defendants have explained, Defs.' Br. 19-2138-39, 53-54, it does not), any process that attached would be no greater than the process that would exist under a *constitutionally* grounded liberty interest, and the *Flores* Settlement conclusively resolved for Plaintiffs what process is due in satisfaction of their constitutional claims in that case.

Plaintiffs' third reason why they could not have brought their claims in *Flores* is that "none of the named Plaintiffs" were "in ORR custody at the time that lawsuit was filed or even at the time the FSA was entered."  Pls.' Opp. 5.  But that is irrelevant.  Plaintiffs do not dispute that there is privity between the parties or that they are members of the certified *Flores* class and thus

---

[3] Plaintiffs' reliance on *Orff v. United States*, 358 F.3d 1137 (9th Cir. 2004), and *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), is misplaced.  *See* Pls.' Opp. 5-6.  *Orff* held that the government was not precluded from asserting sovereign immunity because "the facts the district court relied on to find a waiver of sovereign immunity in [the first case] do not apply here" and because the second case arose out of endangered species designations that "occurred long after" the first case was decided.  *Id.* at 1144.  Here, by contrast, the facts of the Settlement— which remains in force—are directly relevant to Plaintiffs' argument that due process requires *more* than what the parties agreed to in *Flores* regarding step-up, release, and legal representation.  In *Whole Woman's Health*, the Court ruled that the petitioners' as-applied challenge to an abortion statute was "not 'the very same claim' as their [prior] preenforcement facial challenge" because the petitioners' challenge rested on "later, concrete factual developments."  136 S. Ct. at 2305-06.  Here, the relevant facts are the same as in *Flores*—the procedures required by due process for challenging where minors in ORR custody are housed, when and how they are released, and the legal services they are afforded while in care.  None of the "developments" since *Flores* alters what due process requires on these subjects.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

bound by the Settlement.  They provide no reason why they should be able to enjoy the relief already provided under the Settlement while simultaneously seeking *additional* relief under the same due-process theory as in *Flores*.  Nor do they explain why the government should continue to be bound by an agreement that did not (under Plaintiffs' theory) actually resolve the certified class's due-process claims.  Importantly, Plaintiffs do not seek individualized injunctive relief based on the discrete circumstances of each named Plaintiff.  (Nor could they, since none of the named Plaintiffs remains in ORR custody.)  And Defendants do not seek summary judgment as to issues not covered by the Settlement.[4]  Rather, at issue in both parties' cross-motions for summary judgment are the claims that Defendants' policies and procedures regarding placement, release, and legal representation of UACs contravene due process.  Those claims were brought in *Flores*.  *See Flores v. Meese*, 934 F.2d at 995 ("Flores's second claim challenged the INS's failure to provide…'prompt, mandatory, neutral and detached' review following arrest [on suspicious that a minor may be deportable]" regarding "whether probable cause to arrest existed" and "whether any available adult was suitable to ensure the detained juvenile's well-being and appearance at future proceedings [if released]").

In a similar vein, Plaintiffs contend that there is not identity of claims because "the evidence presented in this action is not substantially the same evidence presented in *Flores*." Pls.' Opp. 6 (internal quotations omitted).  According to Plaintiffs, this is because "[b]oth parties' summary judgment motions rely on evidence regarding ORR's specific policies, all of which long postdate the FSA."  *Id.*  But as explained, whether due process requires *more* than the Settlement provides does not depend on ORR's current procedures, rendering that evidence inapplicable to the *res judicata* analysis.[5]  In any event, the test is not whether the evidence in the two cases is *identical*, but rather whether it is *substantially* the same.  *See Howard*, 871 F.3d at 1039.

---

[4]For example, Defendants have not argued that *res judicata* applies to the drug-administration class or the disability class, as those classes raise claims not covered by the Settlement.
[5]The evidence regarding ORR's current procedures becomes relevant only if *res judicata* does not apply and the Court evaluates the lawfulness those procedures independent of *Flores*.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

***Second***, Plaintiffs argue that "[t]here is no identity of claims because this case does not involve infringement of the same rights at issue in *Flores*." Pls.' Opp. 6; *see also id.* at 6-8. Plaintiffs contend that because "[t]he TVPRA did not exist when *Flores* was originally filed in 1985, or when the FSA was entered in 1997," their "claim that greater process is due when ORR denies children their rights under the TVPRA—enacted 11 years *after* entry of the FSA—cannot be barred by *res judicata*." Pls.' Opp. 6-7. Plaintiffs further argue that "the FSA could not have resolved Plaintiffs' wholly *substantive* TVPRA claim that ORR fails to provide children 30-day placement reviews as required under 1232(c)(2)," or their "*substantive* TVPRA claim that ORR fails to provide children legal representation 'to the greatest extent practicable' in 'legal proceedings or matters.'" Pls.' Opp. 7. These arguments all fail. To start, Plaintiffs have not argued (until now) that they are raising *substantive* claims under the TVPRA; thus, those claims are not properly before the Court. *See McMichael v. Napa Cnty.*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983) ("Because none of the state law claims were included in the complaint, we need not consider them.").[6] As to Plaintiffs' assertion that the TVPRA guarantees "greater process" for UACs, it is unclear if they mean that the TVPRA itself prescribes additional procedures or that the TVPRA creates a liberty interest that requires additional procedures. If the former, Plaintiffs have already conceded that "neither the TVPRA nor the [Settlement] prescribes *procedures*." Pls.' Br. 2. If the latter, as Defendants have explained, Defs.' Br. 19-21, 38-39, 53-54, the TVPRA does not create a liberty interest. And even if it did, that interest would not require greater procedures than a *constitutionally* grounded liberty interest, which the Settlement already resolved.[7] As to Plaintiffs' purported "substantive" TVPRA claims, the relief that Plaintiffs seek

_____

[6] Defendants withdrew their reliance on *King v. Atiyeh*, 814 F.2d 565 (1987), *overruled by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). But this does not affect the proposition that causes of action not raised in the complaint *at all* are waived. *See McMichael*, 709 F.2d at 1273.
[7] Plaintiffs argue that *Flores* could not have "resolved what process is due to protect statutory rights" created under the TVPRA, Pls.' Opp. 7, but the only "right" they identify is the TVPRA's instruction to place UACs in the "least restrictive setting that is in the best interest of the child" (subject to the Secretary's considerations of danger to self, danger to others, or risk of flight). 8 U.S.C. § 1232(c)(2)(A); *see* Pls.' Opp. 7. This is no different from the Settlement's directive that Defendants shall "place each detained minor in the least restrictive setting appropriate to the

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

on those claims—trial-like hearings every 30 days and government-funded legal representation, Pls.' Proposed Order ¶¶ 11, 16—likewise is found nowhere in the TVPRA and must be created, if at all, on the theory that due process demands those procedures.  Thus, as Defendants have explained, Defs.' Br. 33-34, 48-49, 58, Plaintiffs' TVPRA claims are simply their due-process claims recast as statutory violations, and are therefore precluded by *res judicata*.

**Third**, Plaintiffs argue that there is not identity of claims because "[t]his action furthers, rather than impairs, the rights and interests the FSA establishes." Pls.' Opp. 8.  But a settlement agreement, like any other contract, runs both ways.  Plaintiffs fail to address, let alone explain, how altering Defendants' bargained-for promise that providing certain policies and procedures with respect to placement, release, and legal representation of UACs would satisfy the *Flores* class's due-process claims would *not* impair Defendants' rights under the Settlement. *See* Defs.' Br. 16-17, 35, 52.

**Fourth**, Plaintiffs argue that "[r]es judicata does not preclude claims by absent class members on issues not fully addressed by the FSA." Pls.' Opp. 8, *see also id.* at 8-11.  This, too, is wrong.  To start, the Settlement *did* "fully address" the issues in dispute in this case.  As explained, Defs.' Br. 17-18, 35-37, 52-53, the Settlement set forth criteria for placement and release decisions, as well as procedures for challenging such decisions, and also described UACs' right to legal representation.  Plaintiffs assert that this case is "indistinguishable" from *Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996); *see* Pls.' Opp. 9, but there, the prior suit gave "no consideration" at all to the policy challenged in the subsequent suit, 84 F.3d at 1293.  Here, by contrast, the government's policies and procedures regarding placement, release, and legal representation, as well as UACs' ability to challenge placement and release decisions, are directly at issue in both suits.  And in *Hiser*, the later suit was "based on a different set of operative facts" than the prior suit and was "not merely an alternative remedy or theory of recovery." *Id.* at 1292. By contrast, this case and *Flores* arise from the same transactional nucleus of facts, and this case is, at base, an effort to obtain "an alternative remedy" beyond what Plaintiffs received under *Flores*.

minor's age and special needs." Settlement ¶ 11.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

Plaintiffs assert that "numerous courts have ordered ORR to afford *Flores* class members additional procedural protections," Pls.' Opp. 10, but the cases they cite are all inapposite. *Saravia v. Sessions*, 905 F.3d 1137, 1140-41 (9th Cir. 2018), involved the re-arrest of UACs who had *already* been placed with sponsors, a scenario not at issue in either *Flores* or this litigation. *See* Pls.' Opp. 10. *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601 (S.D.N.Y. 2018), involved a policy that required the ORR Director to separately approve the release of any child who had been stepped up, again a scenario not at issue in either *Flores* or this case. *Beltran v. Cardall*, 222 F. Supp. 3d 476 (E.D. Va. 2016), *Santos v. Smith*, 260 F. Supp. 3d 598 (W.D. Va. 2017), and *Maldonado v. Lloyd*, 2018 WL 2089348 (S.D.N.Y. 2018), in turn, all involved individual habeas petitions challenging individual release decisions, a scenario the Settlement expressly contemplates, *see* ¶ 36. *Res judicata* thus applies and precludes the claims brought by the step-up, unfit-custodian, and legal representation classes.

**B.   Defendants Are Entitled to Judgment as a Matter of Law on the Step-Up Class's Due-Process Claim.**

The Court should grant summary judgment for Defendants on the step-up class's due-process claim because ORR's policies and practices satisfy due process as a matter of law. *See* Defs.' Br. 18-33. Plaintiffs' arguments to the contrary all fail. Pls.' Opp. 11-33.

### 1) Private interests

As explained, the private interests at stake for the step-up class are limited. Defs.' Br. 19-24. Plaintiffs' arguments to the contrary, Pls.' Opp. 12-19, are unavailing.

To start, Plaintiffs argue that "Defendants concede that Plaintiffs have liberty interests protected by the Fifth Amendment," Pls.' Opp. 12, which Plaintiffs apparently understand to be different from "the first prong of the *Mathews* test, which focuses on how substantial that liberty interest is to a private individual," *see id.* at 20, n.17 ("Defendants conflate the first procedural due process element—whether there is a liberty interest—with the first prong of the *Mathews* test"). This is wrong. The first factor under *Mathews v. Eldridge*, 424 U.S. 319 (1976), simply goes to "the private interest that will be affected by the official action," *id.* at 335, and courts have both identified, and weighed, that interest together. *See, e.g.*, *State of California ex rel.*

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

*Lockyer v. F.E.R.C.*, 329 F.3d 700, 710 (9th Cir. 2003) ("The petitioners argue that the private interest affected is large and important." "The petitioners overstate the significance of their interest.").[8]

      Plaintiffs' remaining liberty-interest arguments also fail.  *See* Pls.' Opp. 12-19.

      ***First***, Plaintiffs argue that their "liberty interests are not diminished simply because they are children." Pls.' Opp. 12.  This is wrong.  Plaintiffs invoke the two-Justice view expressed in a concurrence in *Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J., concurring).  *See* Pls.' Opp. 12.  But the *Court* in *Reno* held that the "right to come and go at will" was "not at issue" in that case because "juveniles, unlike adults, are always in some form of custody." *Id.* at 302.  And the Supreme Court emphasized in *Schall*, 467 U.S. 253, that a juvenile's "interest in freedom from institutional restraints" is "qualified by the recognition that juveniles, unlike adults, are always in some form of custody." *Id.* at 265.  Plaintiffs attempt to distinguish *Schall* on the ground that there were "numerous procedural safeguards" in that case, Pls.' Opp. 12-13, but that is irrelevant to whether children have a diminished liberty interest in freedom from custody because they are children—a question *Schall* (and *Reno*) answer in the affirmative.[9]

      ***Second***, Plaintiffs argue that "Defendants minimize Plaintiffs' liberty interests because children can ostensibly control the duration of their ORR detention by applying for legal status or by accepting removal or voluntary departure to their home countries." Pls.' Opp. 13.  But Plaintiffs never refute Defendants' point that unlike minors in the domestic juvenile-justice context, UACs can obtain release from custody by identifying a suitable sponsor.  *See* Defs.' Br. 22.  Indeed, several of the named Plaintiffs themselves were released from a restrictive placement to a sponsor.  *See* DX-41 [De La Cruz LR Decl.] ¶ 55; DX-50 [Fink MAS Decl.] ¶ 38; DX-55

---

[8] To the extent that Plaintiffs imply that a "liberty interest[ ] protected by the Fifth Amendment" is the same as a substantive-due-process interest, as Defendants have explained, Defs.' Br. 24-25, Plaintiffs are wrong as a matter of law.

[9] Plaintiffs also argue that "Defendants' position is ... contrary to well-established juvenile justice and child welfare jurisprudence." *Id.*  But as Defendants have explained, Defs' Br. 22-23, Defs.' Opp. 11-12, 30-31, 35-36, ORR's policies and procedures already protect UACs in its custody and care, and the ORR context differs in important ways from the domestic context.

[De La Cruz SP Decl.] ¶ 30; DX-58 [De La Cruz BF Decl.] ¶ 61.  This alone meaningfully distinguishes the liberty interest at stake in the ORR context from the domestic juvenile-justice context.   Plaintiffs assert that "[v]oluntary removal or departure is not an option for many unaccompanied children."  Pls.' Opp. 14.  But voluntary departure does not need to be available to *all* UACs to confirm the diminished nature of Plaintiffs' asserted class-wide liberty interest. Plaintiffs also argue that the possibility of obtaining immigration relief does not meaningfully diminish Plaintiffs' asserted liberty interests because "[w]aiting up to five years to obtain legal status is hardly [an] easy road to freedom."  Pls.' Opp. 13.  But obtaining lawful immigration status often takes far less time.[10]  And in any event, the availability of alternative means of obtaining release distinguishes the ORR context from the juvenile-justice context for purposes of evaluating the strength of the liberty interest at stake.

*Third*, Plaintiffs argue that "when children are deprived of their liberty and placed in jail-like or restrictive settings, that deprivation dictates the process required, not their custodial status." Pls.' Opp. 14.  But the only evidence that Plaintiffs invoke is a single report that relies on a single internet article which does not support that (dubious) proposition, and which also does not discuss federal immigration custody.  *See* DX-88 [Quinn Expert Rep.] at 16 (citing American Youth Policy Forum (Nov. 5, 2019) Foster, Juvenile Justice, and Crossover Youth Information Hub). In any event, Plaintiffs' argument conflicts with *Reno v. Flores*, which recognized that "Congress regularly makes rules [for noncitizens] that would be unacceptable if applied to citizens."  507 U.S. at 305-06 (internal quotations omitted).

*Fourth*, Plaintiffs claim that "Defendants concede that Residential Treatment Centers ('RTCs') are ***as restrictive*** as secure jail-like facilities" and that it is undisputed that "RTCs are locked facilities where children feel compelled to take psychotropic medications."  Pls.' Opp. 15 (citation omitted).  Both points are wrong.  As Defendants have explained, Defs.' Br. 23-24,

---

[10]  Plaintiffs misread the United States Citizenship and Immigration Services data, which explains: "The first number is the time it takes to complete 50% of cases (the median). The second number is the time it takes to complete 93% of cases."  *See* https://egov.uscis.gov/processing-times/more-info (last visited Nov. 11, 2020).  Thus, for T status, half of these cases are processed in 18.5 months or *less*, not "anywhere from 18-29 months," as Plaintiffs assert, Pls.' Opp. 13.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

ORR's two residential treatment centers are based on a group home model that is not like a "secure jail-like" facility.   Defs.' Fact Response ¶ 118; *see also* Defs.' Fact Reply ¶ 44.   And Plaintiffs' claim that children at residential treatment centers feel "compelled" to take psychotropic medication is unsupported by the record.   *See* Defs.' Fact Response ¶¶ 133-34.

*Fifth*, Plaintiffs argue that "the characteristics of staff-secure facilities show they constitute restrictive detention."   Pls.' Opp. 16.   But as Defendants have explained, Defs.' Br. 24, staff-secure facilities do not have locked pods or cell units, and in almost all states they maintain an identical type of license as a non-secure care provider.   *See* Defs.' U.F. ¶¶ 39-40.   The only evidence that Plaintiffs cite in support of their claim is a report by an individual who has never visited *any* ORR facility, *see* DX-89 [Quinn Dep.] 81:21-22 ("Q. Have you ever visited an ORR facility? A. Not that I'm aware of"), and whose report states that she "was unable to find any photographs or written documents that compare the Staff Secure units with ordinary shelter facilities" at the facility she reviewed, *see* Pls.' Ex. 180 [Quinn Expert Report] at 330-333. Instead, the report relied upon "a video ... recently posted online" for a description of the facility's physical attributes.   *Id.*   Such unsupported, unverified assertions come nowhere close to creating a genuine dispute of material fact contravening Defendants' direct, first-hand evidence that staff-secure facilities are not restrictive detention.   *See* Defs.' U.F. ¶¶ 37-40; *see, e.g.*, DX-08 [Dr. Ryan Dep.] 260:19-21 ("Q. How would you compare shelters that you visited with BCFS staff secure? A. Indistinguishable.").

*Finally*, Plaintiffs argue that they "also have protected liberty interests stemming from the TVPRA and the FSA."   Pls.' Opp. 17, *see also id.* at 17-19.   But as Defendants have explained, Defs.' Br. 19-21, Plaintiffs have at most a limited interest under the TVPRA, and none under the Settlement, to the procedural remedies they seek in this case, because neither the statute nor the Settlement mandates a particular outcome.   *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989).   Plaintiffs rely on the word, "shall," but that alone is insufficient.   Rather, the inquiry is for "*relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question."   *Id.* at 464 n. 4, (emphasis in original).   Here, neither the statute nor the

11

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

Settlement contains the necessary substantive predicates that would mandate a particular outcome. *Id.* at 463. Plaintiffs suggest that this view runs afoul of the Court's class-certification order, Pls.' Opp. 17, but that order said only that "Plaintiffs have satisfactorily *identified* the substantive rights underlying their procedural due process claims," Order at 15 (emphasis added). It did not assess the strength of those asserted rights, nor did it hold that any such rights required the procedural remedies that Plaintiffs seek here. Further, as to the Settlement in particular, this Court has already declined to impose *procedural* remedies not contained in the Settlement for any *substantive* violations. *See Flores v. Sessions*, 2018 WL 10162328, at *2-3; *see also Beo v. D.C.*, 44 F.3d 1026, 1029 (D.C. Cir. 1995) (the plaintiff "cannot make out a personal protected liberty interest by virtue of the settlement agreement").

### 2) Risk of erroneous deprivation

As Defendants have explained, ORR's policies and procedures for the step-up class already minimize the risk of erroneous deprivation, and adding the procedures that Plaintiffs seek would not meaningfully reduce that risk. *See* Defs.' Br. 25-31. Plaintiffs argue otherwise. Pls.' Opp. 19-32. Their arguments fail.

To start, Plaintiffs argue that "ORR's policies offend even the most basic notions of minimum due process and violate the Administrative Procedure Act … because they fail to provide children notice and a meaningful opportunity to be heard." Pls.' Opp. 19. But as Defendants have explained, Defs.' Opp. 9-11, Plaintiffs' claim that ORR affords no process at all for the step-up class is meritless.

Plaintiffs' other arguments on the risk of erroneous deprivation fail too.

*First*, Plaintiffs argue that "[t]he notice ORR provides is inadequate and inconsistent with due process." Pls.' Opp. 21. But as Defendants have explained, Defs.' Opp. 20-22, due process does not require prior notice before the placement decision, *see In re Gault*, 387 U.S. at 33 ("notice must be given sufficiently in advance of *scheduled court proceedings*"). Plaintiffs argue that "children do not consistently know or understand the reasons for restrictive placements" and "are not consistently informed and sometimes do not understand the contents of the notice." Pls.' Opp. 21. But as Defendants have explained, Defs.' Opp. 21-22, that claim is unsupported

by the record, and refuted by ORR policy, which requires extensive translation services, ORR

Guide § 3.3.7, and case managers are required to review the Notice of Placement with the minor

in a language he or she understands, after which the minor signs the Notice to indicate he or she

understands the reason for the placement.

**Second**, Plaintiffs argue that "ORR fails to provide Class Members the opportunity to be

heard." Pls.' Opp. 21, *see also id.* at 21-23. To start, Plaintiffs assert that "the *Flores* bond

hearing does little to reduce the risk of erroneous placement." *Id.* at 21. But as Defendants have

explained, Defs.' Br. 17-18; Defs.' Opp. 10, 23-24, this argument is foreclosed by *Flores v.*

*Sessions*, 862 F.3d 863 (9th Cir. 2017), which said that a "hearing under Paragraph 24A [*i.e.*, a

*Flores* bond hearing] *provides meaningful protections*," *id.* at 868 (emphasis added), and by the

Settlement itself, which mandated bond hearings in satisfaction of the plaintiffs' due-process

claims regarding placement, *see* Settlement, pp. 3-4. Next, Plaintiffs attack the value of ORR's

internal administrative appeal process through which UACs can challenge step-up decisions

because "this pilot program could be reversed at any time." Pls.' Opp. 22.[11] But the pilot

program merely expanded an already-existing Director review process that pre-dates this

litigation, *see* Defs.' U.F. ¶ 64; DX-10 [Biswas Decl.] ¶ 59 ("ORR has a pilot project for the

Director Review to occur through the Placement Review Panel"). The fact that Defendants have

implemented Director review through a panel does not constitute "voluntary cessation," because

it is not intended to moot any "allegedly illegal conduct." *Cnty. of Los Angeles v. Davis*, 440

U.S. 625, 631 (1979). And the Director review panel is provided *in addition to Flores* bond

---

[11] Plaintiffs' objection (Dkt. 289-2, ¶ 2) to DX-11 [July 1, 2020 Juvenile Coordinator Report
(Report)] is misplaced. Fact discovery closed on March 22, 2020 (Dkt. 221), and the Report was
not issued until July 1, 2020, more than three months later. Plaintiffs' counsel, who include
*Flores* class counsel, received actual notice of the Report the same day that Defendants' counsel
learned of it, in the same public filing in *Flores*, *see* Notice of Filing of Coordinator Reports,
*Flores v. Barr*, 2:85-cv-04544-DMG-AGR (Dkt. 837, July 1, 2020). Plaintiffs identify no
prejudice from the absence of a supplemental Rule 26(e) disclosure resending a duplicate copy
in this matter, nor could they, as they received actual notice of the Report. *See* Joint Stipulation
¶¶ 102-03. Regardless, under Fed. R. Evid. 201(c)(1), the Court can take notice of the existence
of the Director review panel, as the report is admissible and self-authenticating under Fed. R.
Evid. 803(8)(A) (public record) and 902(5) (official publication).

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

hearings, review by the *Flores* compliance team, medical placement review, and internal staff review, *see* Defs.' Br. 26-29. The Director review process constitutes evidence of ORR's continual efforts to provide services to children in its care, not "a tacit admission that current policy fails to provide Plaintiffs adequate due process," Pls.' Opp. 23.  Likewise, the alleged deficiencies with the administrative appeal process are largely beside the point, because the panel is one of several avenues through which stepped-up minors can be heard.  *See* Defs.' Br. 26-29; *see also Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 221 (3d Cir. 2009) ("We apply the interest-balancing framework that the Supreme Court established in *Mathews v. Eldridge* to decide whether the *totality* of the administrative process Biliski received in connection with his termination ... satisfied the fundamental requirement of due process") (internal quotations omitted) (emphasis added).

> **Third**, Plaintiffs argue that "ORR's administrative review process prior to step-up is inadequate" based on purported deficiencies including: ORR's (alleged) lack of "an evidentiary standard" and "a standardized metric," "limited guidance ... to case staff," lack of "formal training," "frequently changing policies" that are not "published for public scrutiny," and "unfettered discretion" to ORR staff. Pls.' Opp. 23-24.  Defendants have already explained why each claim of deficiency is unavailing. Defs.' Opp. 24-26.  ORR's Policy Guide is available for "public scrutiny" on its website.  *Id.* at 25.  ORR provides hundreds of pages in its Manual of Procedures on how to implement the Guide.  *See* Pls.' Ex. 2, 3. And Plaintiffs' claim that ORR staff have "unfettered" discretion is unsupported by either the record or the operational realities of how child-welfare decisions are made.  *See* Defs.' Opp. 24-26.

> **Fourth**, Plaintiffs argue that "ORR's supposed requirement for a psychologist or psychiatrist recommendation prior to step-up to RTC is insufficient." Pls.' Opp. 24; *see also id.* at 24-27.  Specifically, Plaintiffs argue that "ORR's policies for placement in an RTC are not consistently followed in practice."  This is wrong.  Plaintiffs proffer no evidence that any placements have violated the policy since it went into effect.  *See* Pls.' Fact Response ¶ 46.  Each named Plaintiff who was placed in residential care was placed there at the recommendation of a psychologist or psychiatrist.  *See* Defs.' U.F. ¶¶ 109, 125, 140, 143-44, 145-46.  Further, the

Court in *Flores* did not order ORR to *institute* the policy, but rather to *clarify* whether a dangerousness finding was required based upon an existing policy that *already* required the recommendation of a psychiatrist or psychologist for placement at a residential treatment center. *See Flores v. Sessions*, 2018 WL 10162328, at *8 (citing the ORR Guide on "recommendation of a psychiatrist or psychologist ... for [a UAC] who poses a danger to self or others and does not require inpatient hospitalization."). Plaintiffs also argue that "because the order is limited to placement procedures at a single RTC (Shiloh), nothing prevents ORR from returning to its old policy in placing children at other in-network and out-of-network RTCs without the required recommendation." Pls. Opp. 25. But as explained, the original policy *already* required a psychiatrist or psychologist recommendation, and the notion that ORR would abandon a policy that merely expanded a pre-existing one is sheer speculation. *See Fikre v. Fed. Bureau of Investigations*, 904 F.3d 1033, 1037 (9th Cir. 2018) ("Where the party is the government we presume it acts good faith.").

Next, Plaintiffs argue that "even ORR's current policy [requiring psychologist or psychiatrist recommendation] falls considerably short of sufficient procedural due process." Pls.' Opp. 25; *see also id.* at 25-27. This argument also lacks merit. As Defendants have explained, Defs.' Br. 27, even if ORR residential treatment centers were analogous to the involuntary-hospitalization context in *Parham*, 442 U.S. 584—and they are not—ORR's policies satisfy the due-process requirements laid out in *Parham*. Plaintiffs argue that "[t]here is no requirement that this review be conducted by a doctor independent from ORR." Pls.' Opp. 26. But *Parham* held only that "some kind of inquiry should be made by a 'neutral factfinder,'" and that "a staff physician will suffice, so long as he or she is free to evaluate independently the child's mental and emotional condition and need for treatment." *Id.* at 606-07. There is no requirement that the doctor be independent *from the institution*. Plaintiffs further argue that "unlike the statutory scheme in *Parham*, which placed an affirmative statutory duty on the superintendent to discharge a child who no longer needed inpatient care, ORR policy does not place the same affirmative duty on the program directors at ORR RTCs." Pls.' Opp. 26. But *Parham* did not require the adoption of the statutory scheme in that case. To the contrary,

*Parham* stated: "Since well-established medical procedures already exist, we do not undertake to outline with specificity precisely what this investigation must involve."  442 U.S. at 607.

**Fifth**, Plaintiffs argue that ORR's "administrative periodic review after step-up is likewise insufficient."  Pls.' Opp. 27; *see also id.* at 27-28.  Plaintiffs maintain that "ORR fails to comply with its own policy requiring placement review."  *Id.* at 27.  But Plaintiffs' cited evidence, *see* Pls.' Fact Response ¶ 60, is based on cases from two years ago, and since ORR started conducting compliance reviews in November 2018, "the reviews have resulted in almost 100 percent compliance," DX-10 [Biswas Decl.] ¶ 52.  Far from establishing a practice of "being deliberately indifferent," *Henry v. Cty. of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997), ORR's swift and decisive response to noncompliant cases shows the opposite.  Plaintiffs further argue that "[e]ven when ORR does provide a 30-day review, the review is still constitutionally inadequate" because "[t]he fact that an internal monitoring panel reviews the NOP for compliance does not eliminate the risks [of error]."  Pls.' Opp. 27-28.  This is wrong.  The process involves much more than just reviewing the Notice of Placement.  ORR Guide § 1.4.2 requires the case manager, the third-party case coordinator, and the federal field specialist to "review[ ] the *placement* of a UAC into a secure, staff secure, or RTC facility to determine whether a new level of care is more appropriate."  *Id.* (emphasis added).  The case manager then "documents the basis for *continued placement* ... in the UAC's case file," while "[t]he FFS consults with the Supervisory ORR staff for UACs who have resided in a secure or RTC care facility for over 90 days."  *Id.* (emphasis added).

**Sixth**, Plaintiffs argue that "[t]he ORR Director reconsideration process is constitutionally inadequate" because it "is only available to children placed RTCs and secure facilities, there is no opportunity to be heard by a neutral fact finder, there is no ability to inspect or rebut evidence, and there is no opportunity to present or cross-examine witnesses."  Pls.' Opp. 28.  But as Defendants have explained, Defs.' Br. 28-29, ORR Director review under ORR Guide § 1.4.7 is only one of a number of extensive review procedures, which taken collectively easily satisfies due process.  *See Biliski*, 574 F.3d at 221 (looking to "the totality of the administrative process" under *Mathews*).

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

**Seventh**, Plaintiffs argue that ORR's "erroneous placements and noncompliant cases emphasize the need for more process and monitoring to prevent future erroneous placements." Pls.' Opp. 29.  In support, they cite a "November 2018 compliance review" and testimony on noncompliant cases in "January 2019."  *Id.*  Plaintiffs' arguments fail.  To start, the January 2019 data does not reference improper placements.  Pls.' Ex. 171 [Fink Dep.] 264:17-22 ("Q. Do you see where it says '93 out of 128 cases were Non-Compliant'? A. Yes. Q. Does this mean there were 93 improperly placed UACs? A. No.").  Further, the record shows that ORR's compliance and monitoring procedures have significantly reduced the risk of error since November 2018.  DX-33 [Ray Dep.] 74:11-14 ("Q. And by the end of the five months, do you have a – A. They were 100 percent compliant by then."); DX-10 [Biswas Decl.] ¶ 52 (since ORR started doing the compliance reviews, "the reviews have resulted in almost 100 percent compliance").  *Mathews* requires a weighing of "the *probable value*, if any, of *additional or substitute procedural safeguards*." 424 U.S. at 335 (emphasis added).  The success of ORR's existing compliance and review procedures negates the need for more.  Certainly it negates any need for the sort of mini-trials that Plaintiffs seek in their proposed order.  Plaintiffs also argue that Defendants' claim that "most children spend at least two months in care before step up is not supported by any reliable evidence." Pls.' Opp. 29.  This is wrong.  Both Dr. Ryan and Dr. Ryo agree that "step-up does not happen automatically," and "[d]espite some differences in denominator counts, Dr. Ryo notes that the average time to step up is 67.3 days (page 10 of the Dr. Ryo expert report) and [Dr. Ryan] notes that the median time to step up is 60 days."  *See* Defs.' Fact Reply ¶ 104 (quoting DX-92 [Dr. Ryan Decl.] at 1).  And as Defendants have explained, Defs.' Opp. 18-19, Plaintiffs' reliance on Jaime D. to illustrate risk of error is misplaced, Pls.' Opp. 30.

**Finally**, Plaintiffs argue that "Defendants cite no relevant legal authority for their nonsensical position that Plaintiffs were required to set forth in painstaking detail the particular procedures demanded by due process."  Pls.' Opp. 30; *see also id.* at 30-32.  What Defendants actually said, Defs.' Br. 30-31, is that Plaintiffs must fairly allege the relief they seek in the operative complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636-37 (9th Cir. 2015) (there must be "sufficient nexus between the claims raised in a motion for

injunctive relief and the claims set forth in the underlying complaint"); *see also McMichael*, 709 F.2d at 1273, n.4 ("Because none of the state law claims were included in the complaint, we need not consider them.").   The operative complaint says nothing about mini-trials or many of the other policy changes and added procedures that Plaintiffs now demand.

Plaintiffs also attribute to Defendants the argument that "Plaintiffs' relief is limited to any procedural protections explicitly set forth in the class definition."  Pls.' Opp. 31.   What Defendants actually said, Defs.' Br. 31, is that the members of the certified class must be entitled to the relief sought.   And here, there is a clear misalignment between the members of the step-up class (UACs in secure, staff-secure, or RTC facilities who were placed in such facilities without notice and an opportunity to be heard regarding the placement within thirty days) and the relief sought (automatic, full-blown evidentiary hearings for all UACs at such facilities, regardless of whether they received notice and an opportunity to be heard within thirty days of step-up, and for UACs at additional facilities not mentioned in the complaint).   Plaintiffs' attempt, Pls.' Opp. 32, to distinguish *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848 (S.D. Cal. 2019), fails.   Plaintiffs claim that *Al Otro Lado* held that "[o]nly in cases where 'nationwide injunctive relief is not necessary ... to offer complete redress is it appropriate to limit the scope of relief 'by the class definition.'"  Pls.' Opp. 32.   That is not what *Al Otro Lado* held.   Rather, the court stated: "[N]ationwide injunctive relief is not necessary in this case to offer complete redress. Rather, the scope of the injunctive relief is limited by the class definition."  423 F. Supp. 3d at 878 (citing *All. To End Repression v. Rochford*, 565 F.2d 975, 980 (7th Cir. 1977)).   Both statements underscore limitations on the Court's power to issue only injunctive relief that is tailored to this case.

### 3) The government's interest and *Mathews* balancing

As Defendants have explained, Defs.' Br. 31-32, the government's interests weigh heavily in favor of Defendants.   Plaintiffs' arguments to the contrary fail.   Pls.' Opp. 32-33.

***First***, Plaintiffs argue that ORR's "significant interests in the welfare of the children in [its] care" "only underscores why ORR should provide procedures that protect the vulnerable children in their custody."  Pls.' Opp. 32.   But as Defendants have explained, Defs.' Br. 31-32,

18

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

ORR already provides extensive process, and Plaintiffs' onerous proposed procedures could jeopardize the safety of other UACs and staff, and delay needed treatment and care.  Plaintiffs fail to meaningfully address *any* of the safety concerns the government raised.

      ***Second***, Plaintiffs argue that "ORR's procedures are anemic and out of step with juvenile justice practices."  Pls.' Opp. 32, *see also id.* at 32-33.  But as Defendants have explained, Defs' Br. 22-29, ORR maintains robust procedures for the step-up class.  Further, there are important differences between ORR and the juvenile-justice context, and the Supreme Court has long recognized that the procedures required in the immigration context need not parrot the constitutional standards applicable to criminal proceedings.  *See Woodby v. INS*, 385 U.S. 276, 284-85 (1966) (rejecting beyond a reasonable doubt standard because "a deportation proceeding is not a criminal prosecution").  Plaintiffs contend that the "very creation of [the] new [administrative appeal] panel undermines Defendants' arguments that their current procedures are adequate," and that because "[t]he administrative logistics and initial investment [in the panel] have already been undertaken," additional "procedural process is not cost prohibitive."  Pls.' Opp. 32.  But as explained above, ORR's efforts to provide additional services is not an admission of fault, but rather evidence of continual developments in ORR care for UACs.  In any event, Plaintiffs do not seek merely to maintain the administrative appeal panel (which they claim "is insufficient to protect against the significant risk of erroneous deprivation," Pls.' Opp. 23)— rather, they seek far more onerous procedures that would overwhelm the program.  *See* Pls.' Proposed Order ¶¶ 5-11.

      ***Third***, Plaintiffs argue that "the government's failure to provide notice is even more egregious because it faces minimal burdens in providing adequate notice."  Pls.' Opp. 33.  But as Defendants have explained, Defs.' Opp. 20-22, ORR *does* provide notice that satisfies due process, *see* Defs.' U.F. ¶¶ 54-58, and is fully consistent with what the plaintiffs negotiated in *Flores*, *see Flores v. Sessions*, 2018 WL 10162328, at *12 (the Settlement requires "notice within a reasonable time after ORR renders its placement decision").

      ***Fourth***, Plaintiffs argue that "Defendants miss the point when they tout the 'considerable evidence' that justifies step-up," because "[t]he critical flaw is that the evidence the government

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

references is never confronted by the child or their advocate, never put before a neutral arbiter for review, and unilaterally reviewed by Defendants without ever hearing the child's account." Pls.' Opp. 33.  But this argument simply restates *Plaintiffs'* interest in additional procedures, not the government's interest.  In any event, as Defendants have explained, Defs.' Br. 26-29, these claims are unsupported by the record, which demonstrates that children have multiple opportunities to be heard and present their side of the story, *see* Defs.' U.F. ¶¶ 54-74.

*Finally*, Plaintiffs argue that "providing hearings would be only a minimal burden to the government."  Pls. Opp. 33.  As Defendants have explained, Defs.' Opp. 31-33, this claim is refuted by Plaintiffs' sprawling 10-page proposed order, which includes automatic, pre-placement, trial-like evidentiary hearings for step-up to any facility, followed by another trial-like evidentiary hearing every 30 days.  Pls.' Proposed Order ¶¶ 5-11.

For all these reasons, the balance of the *Mathews* factors conclusively favors judgment as a matter of law for Defendants on the step-up claim.

### C.  Defendants Are Entitled to Judgment as a Matter of Law on the Unfit-Custodian Class's Due-Process Claim.

The Court should grant summary judgment for Defendants on the unfit-custodian class's due-process claim because ORR's policies and practices satisfy due process as a matter of law. *See* Defs.' Br. 38-49.  Plaintiffs contend otherwise, Pls.' Opp. 34-46, but their arguments fail.

#### 1)  Private interests

As Defendants have explained, Defs.' Br. 38-43, the private interests at stake for the unfit-custodian class are limited.  Plaintiffs' contrary arguments, Pls.' Opp. 39-41, lack merit.

*First,* Plaintiffs argue that the unfit-custodian class has "protected liberty interests stemming from the TVPRA."  Pls.' Opp. 34; *see also id.* at 34-36.  This argument fails.  As Defendants have explained, Defs.' Br. 38-39, 8 U.S.C. § 1232(c)(2)(A) states that UACs shall be "promptly placed in the least restrictive setting that is in the best interest of the child," concerns placement in ORR facilities, not placement with a sponsor.  The provision does not mention the criteria for "placement" with a sponsor, which is set forth in 8 U.S.C. § 1232(c)(3).  Plaintiffs argue that "[t]his distinction ignores the fact that 'placement' is used—in the TVPRA itself and

in case law interpreting the statute—to refer to placement both with custodians and in licensed facilities." Pls.' Opp. 35. But statutory interpretation "is made by reference to the language itself, the specific context in which that language is used, and the broader context of the statute or agreement." *Confederated Tribes and Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020). And here, context plainly indicates that section (c)(2) is not discussing placement with sponsors: "In making such placements, the Secretary may consider danger to self, danger to the community, and risk of flight." And even if section (c)(2) could be applied to release, it lacks the necessary predicate to create a protected liberty interest, *see Thompson*, 490 U.S. at 472-63, particularly in light of language in section (c)(3) that prohibits release without the Secretary making a suitability determination.[12] *See* Defs.' Br. 39. Finally, Plaintiffs argue that "the absence of a 'maximum time frame' for when release decisions must be made" means that ORR has "unfettered discretion to detain children for indefinite periods of time." Pls.' Opp. 36. That hollow assertion is belied by ORR's policies and procedures for UACs to challenge release decisions. *See* Defs.' U.F. ¶¶ 1-3, 8, 15, 23, 28.

**Second,** Plaintiffs argue that "Plaintiffs have protected liberty interests stemming from the FSA." Pls.' Opp. 36; *see also id.* at 36-37. But as Defendants have explained, Defs.' Br. 39-40, Plaintiffs may not seek injunctive relief under a settlement to add new procedures they never bargained for. *See Flores v. Sessions*, 2018 WL 10162328, at *2-3; *see also Beo*, 44 F.3d at 1029.

**Third**, Plaintiffs argue that "Plaintiffs have protected liberty interests stemming from the Constitution." Pls.' Opp. 37; *see also id.* at 37-39. To start, Plaintiffs assert that the Court "has already rejected Defendants' argument that Plaintiffs are not entitled to procedural protections based on their immigration status." *Id.* at 37. But Defendants do not argue that Plaintiffs are not entitled to *any* procedural protections based on their immigration status. *See* Defs.' Br. 40-41. Rather, the liberty interests of UACs in ORR care are *limited* by virtue of their immigration status, a limitation well-recognized in case law. *See, e.g.*, *Reno v. Flores*, 507 U.S. at 305-06 ("If we

---

[12] Defendants have not "concede[d] that the TVPRA expressly contemplates 'placement' with a 'suitable family member,'" Pls.' Opp. 35-36; Defendants have argued the opposite, Defs.' Br. 39.

21

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

harbored any doubts as to the constitutionality of institutional custody over unaccompanied juveniles, they would surely be eliminated as to those juveniles ... who are aliens," because "Congress regularly makes rules that would be unacceptable if applied to citizens.") (internal quotations omitted).

Next, Plaintiffs argue that "Defendants ask the Court to discount [their] interest [in family unity] simply because some Class Members may have proposed custodians who are 'distant relatives or unrelated adult individuals.'" Pls.' Opp. 38. But even if courts have recognized *some* limited liberty interest in familial association with immediate relatives beyond parents in certain circumstances, *see* Defs.' Br. 41, that does not mean due process demands the same procedural protections for every type of affected family relationship, as Plaintiffs seek. As Defendants have explained, Defs.' Opp. 37-39, 49-50; Defs.' Fact Response ¶ 92 n.4, the child's relationship with the adult seeking custody has long dictated the liberty interest at stake.[13]

Finally, Plaintiffs argue that the TVPRA and the Settlement create liberty interests that outweigh "any supposedly 'weaker' constitutional interest in familial association for the relatively few Class Members seeking release to an adult other than a parent, legal guardian, or close family relative." Pls.' Opp. 39. But as Defendants have explained, Defs.' Br. 38-40, Plaintiffs' asserted liberty interests under the TVPRA and the Settlement fail, and Plaintiffs do not show how combining other limited liberty interests can "make up" any shortfall in their family-association-related interest. Pls.' Opp. 39.

### 2) Risk of erroneous deprivation

As Defendants have explained, Defs.' Br. 43-47, ORR's policies and practices for the unfit-custodian class already minimize the risk of error, and adding the procedures Plaintiffs seek would not meaningfully reduce that risk. Plaintiffs' contrary arguments, Pls.' Opp. 39-44, fail.

---

[13] Plaintiffs also argue that "ORR presumes that some children do not have strong familial connections with their proposed sponsors." Pls.' Opp. 38. But ORR does not "presume[ ]" anything about the relationships between children and proposed sponsors. *Id.* ORR has extensive verification procedures to ascertain a child's relationship with a proposed sponsor, *see* ORR Guide § 2.2.4, which includes obtain "sworn affidavits" and "corroborating interviews."

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

To start, Plaintiffs again argue that "ORR's policies … fail to provide children notice and a meaningful opportunity to be heard" and that "[o]n this basis alone, Defendants' Motion must be denied." Pls.' Opp. 39. This is wrong. As Defendants have explained, Defs.' Opp. 9-11, Plaintiffs' claim that ORR affords no process at all for the unfit-custodian class lacks merit.[14]

Next, Plaintiffs invoke their arguments that ORR fails to provide adequate process. *See* Pls.' Opp. 40-41 (citing Pls.' Br. 29-35). But as Defendants have explained, Defs.' Opp. 44-45, 49, ORR provides each of the features that Plaintiffs claim are missing. Plaintiffs further assert that Defendants do not "dispute the potential consequences of prolonged detention in ORR custody." Pls.' Opp. 41. But Defendants *do* dispute this claim to the extent that it ignores how prior trauma and other factors also affect the child's experience and how children have also benefited from time in a structured, stable environment. *See* Defs.' Fact Response ¶¶ 1-9. Finally, Plaintiffs allege that "Class Members have been physically and sexually abused in ORR custody." Pls.' Opp. 41. But as Defendants have explained, Defs.' Opp. 36, Plaintiffs point to no evidence that the risk of harm to children is greater in ORR care than in other state-licensed facilities, and ORR maintains robust child protection procedures.

Plaintiffs also raise four additional arguments in response to points Defendants made in their summary judgment motion. *See* Pls.' Opp. 41-44. These, too, fail.

***First***, Plaintiffs challenge Defendants' contention "that their current processes 'safeguard against erroneous and arbitrary decisionmaking' because "'ORR's release process is a collaborative endeavor.'" Pls.' Opp. 41 (quoting Defs.' Br. 43). Plaintiffs argue that "children and their proposed custodians are largely excluded from" release assessments, and that federal field specialists "do[ ] not … talk to children or their proposed sponsors before deciding to grant or deny release." Pls.' Opp. 41. But as Defendants have explained, Defs.' Opp. 26, ORR policy already requires case managers to coordinate communications with *all* stakeholders, including children and proposed sponsors, and Plaintiffs fail to show, as they must, why regular

---

[14] Plaintiffs again make the (wrong) assertion that "Defendants conflate the first procedural due process element." Pls.' Opp. 40, n.30. And to the extent Plaintiffs press a substantive-due-process claim for the unfit-custodian class, Pls.' Opp. 40, n.29, as Defendants have explained, Defs.' Br. 41-43, that claim fails as a matter of law.

communication with the case manager, who works closely the federal field specialist and case coordinator, is *constitutionally* inadequate.

***Second***, Plaintiffs challenge "Defendants' contention that children and their proposed sponsors 'are able to present their side of the story.'" Pls.' Opp. 41 (quoting Defs.' Br. 44). Plaintiffs argue that case managers have "unilateral authority to deny potential sponsors the opportunity to" submit information; that the "opportunity to 'share' information does not constitute an opportunity to be heard"; and that ORR "is not required to present adverse evidence to sponsors and children" or "give them an opportunity to rebut that evidence." Pls.' Opp. 41-42.   But as Defendants have explained, Defs.' Opp. 43-44, these claims are unsupported by the record and do not reflect ORR's policy or practice, *see* Defs.' U.F. ¶¶ 15, 18, 32-33; *see also* Defs.' Fact Response ¶ 38.    Plaintiffs also claim that neither "Lucas R. nor his sister were informed of the reasons for ORR's rejection of his sister's application, making it impossible for either to rebut the government's evidence or 'share' the information that would help their case." Pls.' Opp. 42 (citing Pls.' U.F. ¶¶ 86-87).  This is wrong.  As Defendants have explained, Defs.' Opp. 44, although Lucas R. and the other unfit-custodian class representative, Gabriela N., did not receive written notice of the denial of their potential sponsors, they received actual notice.

***Third***, Plaintiffs challenge Defendants' argument that "'ORR provides a process for appealing denial decisions' involving parents and legal guardians." Pls.' Opp. 42 (quoting Defs.' Br. 44-45).  Plaintiffs argue that the right of parents and guardians to an administrative appeal "is hardly sufficient to counterbalance ... limited opportunities to participate in the decision-making process, particularly for proposed custodians who are *not* parents or legal guardians." Pls.' Opp. 42.  But as Defendants have explained, Defs.' Opp. 37-39, 49-50, the varying liberty interests at stake for parents compared to more distant relations have long dictated different procedures in the state and federal child-welfare contexts. *See Beltran v. Cardall*, 222 F. Supp. 3d 476, 489 (E.D. Va. 2016) ("[w]here no parent is seeking custody of their child, the cases [involving domestic permanency hearings] have no application").

***Finally***, Plaintiffs challenge "Defendants' contention that 'release delays' are attributable to a child's 'lack of a sponsor or unresponsiveness from potential sponsors.'" Pls.' Opp. 42

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

(quoting Defs.' Br. 45-46). Plaintiffs argue that "release is unnecessarily delayed for ... reasons entirely within Defendants' control," including: (i) "ORR's policy of requiring all household members and adults identified in a sponsor care plan to submit fingerprints in every case involving a home study"; (ii) "case managers unnecessarily delaying home study requests or ... release recommendations altogether"; (iii) "ORR requiring that psychological evaluations be completed prior to release"; and (iv) "ORR refusing to release children to available and fit sponsors until the children have shown 'good behavior' for some amount of time." Pls.' Opp. 42. These claims all fail. As to fingerprinting, it is standard practice for most state child-welfare agencies, and ORR policy no longer requires that *all* household members be fingerprinted. *See* Defs.' Fact Response ¶ 48. Plaintiffs' other complaints are unsupported by the record, *see id.* ¶¶ 44, 54, 67, 68, and in any event, to the extent that home studies, psychological evaluations, and stabilization of mental-health symptoms may affect when a child is released, those practices are well-rooted in established child-welfare principles. Next, Plaintiffs oppose reliance "on *overall* statistics regarding length of stay," Pls.' Opp. 42-43, but the fact that ORR releases children far more quickly than domestic foster care systems bears directly on Plaintiffs' claim that on a *class-wide* basis, "Defendants unreasonably and unnecessarily delay or refuse to release children," Compl. ¶ 180. Lastly, Plaintiffs argue that "Defendants point to no undisputed evidence supporting their arguments that additional procedural protections would be of limited value" because "there is a decisive difference of opinion between the parties' expert witnesses." Pls.' Opp. 43. This is incorrect. Defendants have also pointed to ORR's extensive current procedures, compared ORR length-of-stay data against domestic foster care systems, and explained important differences between ORR and the domestic child-welfare system. Defs.' Br. 43-46; Defs.' Opp. 40-50; *see also* Defs.' Fact Response ¶ 93 ("The Edwards report conflates juvenile detention, parental termination, and state foster care permanency planning hearings").

### 3) The government's interest and *Mathews* balancing

As Defendants have explained, Defs.' Br. 48-49, the Government's interests and the *Mathews* factors heavily favor Defendants. Plaintiffs' contrary arguments, Pls.' Opp. 44-45, fail.

To start, Plaintiffs argue that the parties' "shared interest in ORR making the right release decisions does not in any way diminish Plaintiffs' interest in meaningfully participating in decisions impacting their lives and liberty." Pls.' Opp. 44. But as Defendants have explained, Defs.' Br. 43-45, Defendants do not dispute that children should have a meaningful opportunity to participate in proceedings—which ORR already affords. Rather, as explained, Defs.' Opp. 50-52, Defendants take issue with the disruptive, extraordinarily intrusive procedures that Plaintiffs seek to impose on the UAC program, which would result in *added* delay *and* child endangerment. Plaintiffs also argue that the "harm children suffer in ORR custody" must be considered when weighing the value of additional procedural protections." Pls.' Opp. 44. But ORR *does* consider the risk of harm to children, which is why it works to ensure the safe and timely release of UACs in its care. *See* Defs.' U.F. ¶ 1. It is Plaintiffs who fail to weigh the (unproven) risk of harm from custody against the risk from release to an inadequately vetted sponsor. *See* Defs.' Opp. 36-37.

Next, Plaintiffs argue that their interests are not "outweighed by Defendants' alleged interest in 'safe release,'" because "child protection agencies are available to protect children following release from ORR custody." Pls.' Opp. 45. But ORR has an affirmative duty under 8 U.S.C. § 1232(c)(3)(A) to "determin[e] that the proposed custodian is capable of providing for the child's physical and mental well-being." And ORR's ability to follow up with sponsors after placement is limited by whether a sponsor answers the phone after 30 days, because, unlike domestic child-welfare agencies, ORR does not maintain custody of the child after release. *See* Defs.' U.F. ¶ 12.

Finally, Plaintiffs argue that their "interests in being free from detention and to familial association far outweigh the government's interests—fiscal, administrative or otherwise." Pls.' Opp. 45. But as Defendants have explained, Defs.' Br. 43-48, ORR already provides extensive procedures that meaningfully reduces the risk of error, and the probable value of the onerous procedures Plaintiffs seek is exceedingly low. Administrative burdens are not the "principal" reason ORR does not provide additional procedures because ORR *already* provides robust procedural protections for the unfit-custodian class, *see* Defs.' Br. 43-45, and adding the

26

procedures Plaintiffs seek would overwhelm the program with little benefit for (and even harm) children in ORR care.

For all these reasons, the balance of the *Mathews* factors conclusively favors judgment as a matter of law for Defendants on the unfit-custodian claim.

**D.    ORR's Policies and Practices for the Step-Up and Unfit-Custodian Classes Comport with the TVPRA and the APA.**

As Defendants have explained, Defs.' Br. 33-34, 49-50, ORR's policies and practices for the step-up and unfit-custodian classes comport with both the TVPRA and the APA.[15] Plaintiffs' arguments to the contrary are wrong. *See* Pls.' Opp. 46-48.

*First*, Plaintiffs argue that "this Court has already determined that Plaintiffs 'may raise their TVPRA claims under the APA'" and that "ORR's custodial vetting and step-up practices independently violate the TVPRA." Pls.' Opp. 46-47. This is wrong. Plaintiffs seek class-wide, injunctive relief in the form of additional procedures for two classes of minors. *See* Compl. ¶¶ 179-84. They do not seek individual relief for purported violations of the TVPRA, nor do they seek injunctive relief to enjoin any particular ORR practice.[16] Rather, as Defendants have explained, Defs.' Br. 33-34, 49-50, Plaintiffs seek procedural remedies under the theory that the TVPRA creates a purported liberty interest that demands additional procedures as a matter of due process. This theory fails. *See id.*; *see also* Defs.' Opp. 17-31, 40-50.

*Second*, Plaintiffs argue that "Defendants' policies violate the APA to the extent that they fail to comply with the hearing requirements set forth therein." Pls.' Opp. 48; *see also id.* 48-49. But as Defendants have explained, Defs.' Opp. 33-34, 52, the APA's formal-hearing

_____

[15]As Defendants have explained, Defs.' Br. 50-51, ORR's policies and practices for the unfit-custodian class also do not violate the First Amendment. Plaintiffs' contrary arguments, Pls.' Opp. 46, lack merit. The case that Plaintiffs cite, *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), does not suggest that any First Amendment associational interest extends to the distant relations at issue in this case, nor does the case *Lee* relied on, *Board of Directors v. Rotary Club*, 481 U.S. 545 (1987), which addressed membership at a *private club*.

[16]Nor could they, because no record evidence supports Plaintiffs' claims that any of the purported violations, even if they occurred as Plaintiffs claim, *see* Pls.' Opp. 47 ("SDF ¶ 60 (citing evidence that ORR *sometimes* fails to review secure placements on a monthly basis)"), occurred on a class-wide basis, *see* Defs.' Reply U.F. ¶ 60.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

requirements apply only in "case[s] of adjudication required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a).  Congress did not "provide for any hearing whatsoever within an administrative process" for ORR step-up and release decisions. *Marathon Oil Co. v. EPA*, 564 F.2d 1253, 1263 (9th Cir. 1977).  Plaintiffs themselves concede that the TVPRA does not "*prescribe*[ ] procedures." Pls.' Br. 2.  Thus, 5 U.S.C. § 554(a) does not require a hearing to contest ORR step-up and release decisions as a matter of law.[17]

### E.   Defendants Are Entitled to Judgment as a Matter of Law on the Legal-Representation Class's Claim.

As Defendants have explained, Defs.' Br. 57-59; Defs.' Opp. 52-54, ORR's policies and practices for the legal-representation class comport with the TVPRA.[18]  Plaintiffs arguments to the contrary, Pls.' Opp. 48-54, do not withstand scrutiny.

*First*, Plaintiffs argue that "Defendants' first argument [that UACs do not have a procedural-due-process right to counsel under *Mathews* balancing] is a strawman" because Plaintiffs are asserting a "substantive" right to counsel under the TVPRA.  Pls.' Opp. 49 (citing Defs.' Br. 53-54).  Defendants accept Plaintiffs' concession and agree that the Court cannot grant relief on a procedural-due-process ground for this claim.  *See Environment Furniture, Inc. v. Bina*, 2010 WL 2757191, *3 (C.D. Cal. 2010) ("the Court does not consider" arguments "not raised in the Motion or in the Opposition").

*Second*, Plaintiffs argue that "the undisputed facts demonstrate that ORR frequently impedes lawyers' ability to represent children effectively with respect to release, placement, and medication decisions." Pls.' Opp. 49; *see also id.* 49-50.  But as Defendants have explained, Defs.' Br. 55-56, Defs.' Opp. 55-58, there is no genuine dispute of material fact that ORR does not "block" access to counsel, which is what Plaintiffs alleged in their complaint.  *See* Compl. ¶¶

---

[17] *Aageson Grain & Cattle v. U.S. Dep't of Agric.,* 500 F.3d 1038 (9th Cir. 2007), does not establish that the APA's formal-hearing requirements apply any time a hearing is required by the Constitution.  In *Aageson*, the statute itself, not due process, required a hearing.  *Id.* at 1044.

[18] Plaintiffs do not press their legal-representation claims under the HSA, the APA, or the immigration regulations in their motion or their opposition.  Thus, those claims are waived. *See Environment Furniture*, 2010 WL 2757191, *3.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

143-52, 188-90.   Plaintiffs' attempt to re-frame their claim as access to "meaningful" representation, Pls.' Opp. 50, was not properly alleged, and in any event, none of these new allegations, even if true, establishes that ORR's procedures violate due process or any statute, *see* Defs.' Opp. 57-58.

**Third**, Plaintiffs argue that "Plaintiffs do not here contend that Congress *must* supply children with counsel to represent them with respect to release, placement, or medication decisions," but rather that "ORR blocks legal aid lawyers from using funds Congress *elects* to appropriate." Pls.' Opp. 50.   But as Defendants have explained, Defs.' Br. 59, congressional appropriations show that Congress intended to fund only access to immigration services.

**Finally**, Plaintiffs argue that "the TVPRA expressly covers 'legal proceedings or matters'" and that "ORR's detaining children, placing them in high-security facilities like psychiatric facilities and juvenile detention centers, and administering psychotropic medication without parental consent are 'legal proceedings or matters' within the meaning of the TVPRA." Pls.' Opp. 50; *see also id.* at 50-54.   This is wrong.   To start, ORR decisions with regard to release, placement, and medical care are not adversarial in nature, and thus, do not constitute either "legal proceedings" *or* "legal matters."[19]   Plaintiffs' reading also violates the TVPRA.   Title 8 U.S.C. § 1232(c)(5) must be read "consistent" with 8 U.S.C. § 1362, which states, in pertinent part, that "[i]n any removal proceedings ... the person concerned shall have the privilege of being represented (*at no expense to the Government*) by such counsel."   (Emphasis added.)   Plaintiffs argue that "[t]o be 'consistent with' means to be 'marked by agreement: COMPATIBLE.'" Pls.' Opp. 51 (quoting merriam-webster.com).   But providing legal representation at *no expense* to the Government in *immigration proceedings* is not "marked by agreement" with—and is

---

[19] "Under generally accepted rules of syntax, an initial modifier will tend to govern all elements in the series unless it is repeated for each element." *Washington Educ. Ass'n v. Nat'l Right to Work Legal Def. Found., Inc.*, 187 F. App'x 681, 682 (9th Cir. 2006) (internal quotations omitted). Thus, the word "legal" in 8 U.S.C. § 1232(c)(5) modifies both "proceedings" and "matters." *Black's Law Dictionary* defines "matter" as a "subject under consideration, esp. involving a dispute or litigation;   CASE (1) <this is the only matter on the court's docket today>." *Black's Law Dictionary* 1172 (Garner 11th ed. 2019).

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

plainly inconsistent with—providing *government-funded* counsel for challenges to routine child-welfare decisions, as the statute cannot require ORR to both pay for and not pay for legal representation.

Plaintiffs also contend that if section 1232(c)(5) contemplates representation solely during removal proceedings, then the clause "to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking" would be superfluous. Pls.' Opp. 52. But that clause encompasses not only representation, but also assisting minors to prepare for such relief, including asylum, withholding of removal, and Convention Against Torture protection, as well as T, U, and other immigration statuses that protect children from mistreatment, exploitation, and trafficking. *See, e.g.*, 8 U.S.C. §§ 1101(a)(15)(T) & (U), 1158. And while Plaintiffs challenge Defendants' reference to the statute's legislative history, Pls.' Opp. 52-53, the legislative history simply reinforces the statute's plain meaning. Plaintiffs also complain that describing ORR's release, placement, and medication decisions as "day-to-day" "is to trivialize them." Pls.' Opp. 53. That is incorrect: many day-to-day decisions are important, but that does not mean each of those decisions is a legal proceeding or legal matter. Finally, Plaintiffs argue that "Defendants' suggestion that ORR's interpretation of the TVPRA warrants deference is likewise without merit" because "ORR has never memorialized its pinched interpretation ... in writing." *Id.* at 54. But Defendants have issued regulations, 84 Fed. Reg. 44392 (Aug. 23, 2019), that, although enjoined, represent the agency's views on the meaning of the statute. *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984) ("Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."); *see also* Defs.' Fact Response ¶ 270.

Thus, Plaintiffs' claim that ORR's policies and practices on legal representation violate the TVPRA fails as a matter of law.

## III.   CONCLUSION

For these reasons, the Court should grant summary judgment for Defendants on the step-up, unfit-custodian, and legal-representation classes' claims.

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

Dated: November 20, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERNESTO H. MOLINA
Deputy Director

CHRISTOPHER A. BATES
Senior Counsel to the
Assistant Attorney General

*/s/ W. Daniel Shieh*
W. DANIEL SHIEH
BENJAMIN MARK MOSS
Senior Litigation Counsel

NANCY K. CANTER (263198)
JONATHAN K. ROSS
ANTHONY J. MESSURI
Trial Attorneys
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-9802
Email: Daniel.Shieh@usdoj.gov

*Counsel for Defendants*

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on November 20, 2020, I electronically transmitted the forgoing

3 document to the Clerk for the United States District Court for the Central District of California

4 using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF

5 users and that service will be accomplished through the CM/ECF system.

6

7        Respectfully submitted,

8        */s/ W. Daniel Shieh*

9        W. DANIEL SHIEH

10       Senior Litigation Counsel

11       Office of Immigration Litigation

        United States Department of Justice

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment