# DX-88

Report of Mae C. Quinn, June 19, 2020 (Excerpts)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ALEX AZAR, et al.,<br><br>        Defendants. | Case No. 2:18-CV-05741 DMG PLA<br><br>EXPERT REPORT OF PROFESSOR MAE QUINN |

# TABLE OF CONTENTS

I. Introduction ........................................................................................................3
II. Summary of Qualifications ................................................................................4
III. Materials and Data Reviewed ............................................................................8
IV. Compensation ...................................................................................................10
V. Bases and Underlying Analysis for Expert Opinions .......................................10
   A. Constitutional Framework and Legal Context Generally ........................10
      1. Juvenile Delinquency and Secure Detention Orders .................10
      2. Civil Commitment and Involuntary Treatment of Youth .........20
        (a) Voluntary Commitment ......................................................20
        (b) Involuntary Commitment ...................................................22
   B. ORR "Step Up" Policies, and Practices ....................................................24
      1. ORR "Step-Up" Practices, Guidelines, and Forms ...................25
        (a) ORR Policy Guide ...............................................................25
        (b) UAC Manual of Procedures and Forms .............................28
      2. Challenged Federal Regulations Relating to "Step-Up" Placements ........33
      3. Other Data Regarding "Step-Up" Practices and Placements ...37
        (a) Secure Facilities ...................................................................37
        (b) Staff Secure Facilities .........................................................42
        (c) Residential Treatment Centers ............................................46
VI. Conclusions, Expert Opinions, and Recommendations ...................................48
   A. Restrictive Setting "Step-up" for UACs Parallels Juvenile Pretrial Detention ....48
      1. Secure Facilities, Staff Secure Facilities, and Residential Treatment Centers Impose Segregation and Liberty Deprivations Akin to Detention ................................................................................................48
      2. RTCs Additionally Impose Involuntary Treatment ..................50
   B. Deficiencies in ORRs Current Regulatory, Policy, and Practice Framework ......50
      1. ORR's Regulations, Policies, Procedures, and Forms are Incoherent ......51
      2. ORR's Step Up Practices and Policies are Inconsistent with the Processes and Protection in Place in Analogous Juvenile Justice Contexts ..............52
   C. Recommended Policy and Procedure Reforms for ORR .........................52
APPENDIX A: Curriculum Vitae ................................................................................57
APPENDIX B: Documents Reviewed .........................................................................74

restraints on youth liberty. For instance, the Alaska Bar Association's guide for juvenile court involved youth explains:

> *If the court keeps you in detention after your arraignment, you will have a detention review every 30 days. These are similar to bail hearings for adults. At a detention hearing the judge will decide if you should stay confined until the next hearing but no longer than 30 days without a review. The judge will consider a number of factors, such as the seriousness of the offense you are accused of, whether keeping you confined is necessary to protect the victim or the public, and how likely it is that you will run away or not show up for your court hearings if you are released.*

*See* Alaska Bar Assoc. (2015) *Alaska Youth Law Guide: A Handbook for Teens and Young Adults* at 15 (describing implications of Alaska Juvenile Delinquency R. 12), available at: https://alaskabar.org/wp-content/uploads/Alaska-Youth-Law-Guide-PDF3.pdf; *see also e.g.,* Mo. R. Juv. Practice & Proc. 127.08(g) ("If the court orders the juvenile detained, the court shall review the order of detention every 30 days thereafter until entry of a final order of disposition.").

It is also important to note that youth placed with state child welfare agencies because of alleged abuse, neglect, or abandonment may not be unilaterally removed to juvenile detention centers based upon claims of alleged delinquency. That is, even young people who are already in government custody are entitled to due process protections prior to transfer to secure placement. *See generally* American Youth Policy Forum (Nov. 5, 2019) *Foster, Juvenile Justice, and Crossover Youth Information Hub* (providing resources regarding young person who begins her time in state care because of child welfare proceedings but then faces delinquency allegations), available at: https://www.aypf.org/resource/foster-juvenile-justice-and-crossover-youth/.

- Continued step-up to RTC must be re-evaluated by way of a meaningful hearing process also conducted before a neutral factfinder. Given the heightened concerns involved in forced mental health and medical treatment, at the very least, such hearings should be conducted every 14 days. [17]

_____

Mae C. Quinn, JD, LLM

---

[17] Although not constitutionally required, depending upon the nature of the alleged rationale for ongoing residential treatment and/or location where the child is being forcibly treated, the government may need to be held to a guilt beyond a reasonable doubt standard. See Cal. Welf. & Inst. Code § 6604; Texas Health & Safety Code § 841.003