# DX-95

Shiloh Cooperative Agreement

# COOPERATIVE AGREEMENT

## BETWEEN

## U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

## ADMINISTRATION FOR CHILDREN AND FAMILIES (ACF),

## OFFICE OF REFUGEE RESETTLEMENT (ORR)

## DIVISION OF UNACCOMPANIED CHILDREN'S OPERATIONS (DUCO)

## AND

## SHILOH TREATMENT CENTER

**SECTION I**: <u>Summary</u>

The Director of the Office of Refugee Resettlement (ORR) of the Department of Health and Human Services (HHS) has responsibility for the care and placement of unaccompanied children (UC) in accordance with Section 462 of the Homeland Security Act of 2002 (HSA of 2002), 6 U.S.C. § 279. An unaccompanied child is defined under 6 U.S.C. § 279(g)(2) as a child who is: under 18 years old, who has no lawful immigration status in the United States, and no parent or legal guardian in the United  States or no parent or legal guardian in the United States available to provide care and physical custody.

Within ORR, the Division of Unaccompanied Children's Operations (DUCO) has delegated authority for the care and placement of UC.

**Shiloh 000091**

The DUCO's primary objectives are to provide a safe, appropriate, and placement in the least restrictive environment for UC, taking into consideration the risk of harm to the UC or others, the community and the risk of flight,  while in ORR custody until they are released to a sponsor, obtain immigration legal relief, age out, or are discharged to the Department of Homeland Security (DHS).

ORR  provides residential care and services through contracts or through the competitive or non-competive grant process to organizations incorporated under State law which have demonstrated child welfare, social service, or related experience and are appropriately licensed to provide care and related services to dependent children. Recipients of ORR funding, that provide residential services for UC, must comply with State residential care licensing requirements; the Flores Settlement Agreement, Case No. CV85-4544-RJK (C.D. Cal. 1996) (Flores settlement agreement); pertinent federal laws and regulations, and all ORR policies and procedures.

Pursuant to 6 U.S.C. §279 the Director of the ORR, hereinafter called the Director, approves awards for  residential services to UC. In accordance with this award and pursuant to the aforementioned laws, **Shiloh Treatment Center** has  funding approved to provide residential services for UC, which meets the requirements in the previous paragraph.

Pursuant to the aforementioned laws, Shiloh Treatment Center, hereinafter called Shiloh Treatment Center has submitted an application and has been approved for funding to provide residential services for UC.

By signing this Cooperative Agreement, the Director agrees to make a grant award in accordance with approved annual continuation applications and quarterly reviews of program performance and financial reports for the project period of the grant.  Under the terms of this agreement, Shiloh Treatment Center will provide residential services for UC.

This Cooperative Agreement and the Terms and Conditions, listed in Shiloh Treatment Center Notice of Award (NoA), establish the  requirements and responsibilities for implementing Shiloh Treatment Center residential services for UC. Continued funding is contingent upon satisfactory

2

**Shiloh 000092**

performance, availability of funds, and determination that continuation is in the best interests of the Federal Government.


**SECTION II**: <u>Purpose and Objective</u>

The purpose of this agreement is to support the provision of residential services for UC according to the objectives and activities outlined in the application and consistent with State residential care licensing requirements.


In making decisions on placement and residential services provided to UC, the Director is governed by §462 of the HSA of 2002, 6 U.S.C. §279; § 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA of 2008), 8 U.S.C. §1232, as amended[1]; relevant portions of the Prison Rape Elimination Act of 2003 (PREA of 2003), 42 U.S.C. §15607, as amended[2]; and when it is not inconsistent with subsequent law, the <u>Flores</u> settlement agreement and the <u>Perez-Olano</u> Settlement Agreement, Case No. CV85-4544RJK (C. D. Cal. 1996) (<u>Perez-Olano</u> settlement agreement).


In December 2014, HHS released an Interim Final Rule (IFR) on standards to prevent, detect, and respond to sexual abuse and sexual harassment involving UC.  The IFR sets forth standards to prevent, detect, and respond to sexual abuse and sexual harassment in ORR care provider facilities that house unaccompanied children (UCs) in accordance with section 1101(c) of the Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4 (VAWA 2013).  VAWA 2013 directed the Secretary of the Department of Health and Human Services (HHS) to adopt national standards for the detection, prevention, reduction, and punishment of rape and sexual assault in facilities that maintain custody of UCs.  The standards apply to all ORR care provider facilities housing UCs except secure care provider facilities and individual foster care homes.  The standards build upon and enhance existing State and local laws, regulations, and licensing standards.

---

[1]  Section 235 of the TVPRA of 2008 was amended in part by section 1262 of the Violence Against Women Reauthorization Act of 2013.
[2]  Section 8 of PREA of 2003, was amended in part by section 1101(c) of the Violence Against Women Reauthorization Act of 2013.

Shiloh 000093

**SECTION III**: <u>Authority</u>

As provided by the terms of the Federal Grant and Cooperative Agreement Act of 1977 (FGCAA), 31 U.S.C. §6301, as amended, the  grant awarded establishes a Cooperative Agreement between the Office of Refugee Resettlement (ORR) and GRANTEE NAME. Pursuant to the FGCAA, this cooperative agreement (hereinafter "agreement") provides for substantial involvement and collaboration of ORR in activities related to cooperative agreements for residential services.

Furthermore, ORR is authorized to enter into this  agreement under 6 U.S.C. §279 and 8 U.S.C. §1232(i) of the TVPRA of 2008.

**SECTION IV**: <u>Description of Activities</u>

    **A.** <u>**Residential and Other Services**</u>

1. **Shiloh Treatment Center** must provide residential shelter and services for UC in compliance with respective State residential care licensing requirements, the <u>Flores</u> settlement agreement, pertinent federal laws and regulations, and the ORR policies and procedures, unless otherwise expressly waived (in writing) by authorized ORR staff.

2. Under the terms of the <u>Flores</u> settlement agreement, care providers must provide the following  services for each UC in their care:

- Proper physical care and maintenance, including suitable living accommodations, food, appropriate clothing and personal grooming items.

- Appropriate routine medical and dental care, family planning services, and emergency health care services, including a complete medical examination (including screenings for infectious disease) within 48 hours of admission, excluding weekends and holidays, unless the UC was recently examined at another ORR care provider facility; appropriate immunizations in accordance with recommendations of the U.S. Department of Health and Human Services / U.S. Public Health Service (PHS), Centers for Disease Control and Prevention (CDC) Advisory Committee on

Shiloh 000094

Immunization Practices; administration of prescribed medication and special diets; appropriate mental health interventions when necessary.

- An individualized needs assessment, which includes the various initial intake forms, collection of essential data relating to the identification and history of the child and his or her family, identification of the UC's special needs including any specific problems which appear to require immediate intervention, an educational assessment and plan, an assessment of family relationships and interaction with adults, peers and authority figures; a statement of religious preference and practice; an assessment of the unaccompanied child's personal goals, strengths and weaknesses; identifying information regarding immediate family members, other relatives, godparents or friends who may be residing in the United States and may be able to assist in connecting the child with family members.

- Educational services appropriate to the unaccompanied child's level of development and communication skills in a structured classroom setting Monday through Friday, which concentrates primarily on the development of basic academic competencies and secondarily on English Language Training. The educational program must include instruction and educational and other reading materials in such languages as needed. Basic academic areas should include Science, Social Studies, Math, Reading, Writing and Physical Education. The program must provide unaccompanied children with appropriate reading materials in languages other than English and spoken by the UC in care for use during leisure time.

- Activities according to a recreation and leisure time plan that include daily outdoor activity, weather permitting, with at least one hour per day of large muscle activity and one hour per day of structured leisure time activities (that should not include time spent watching television). Activities should be increased to a total of three hours on days when school is not in session.

- At least one individual counseling session per week conducted by trained social work staff with the specific objective of reviewing the child's progress, establishing new short term objectives, and addressing both the developmental and crisis-related needs of each child.

**Shiloh 000095**

- Group counseling sessions at least twice a week.

- Acculturation and adaptation services which include information regarding the development of social and inter-personal skills which contribute to those abilities necessary to live independently and responsibly.

- A comprehensive orientation regarding program intent, services, rules (written and verbal), expectations and the availability of legal assistance.

- Whenever possible, access to religious services of the child's choice, and in an environment that ensures children feel free to ask for such access.

- Visitation and contact with family members (regardless of their immigration status), which is structured to encourage such visitation.

- A reasonable right to privacy, which includes (1) the right to wear his or her own clothes when available, (2) retain a private space in the residential facility, group or foster home for the storage of personal belongings, (3) talk privately on the phone and visit privately with guests, as permitted by ORR policy and applicable regulations, (4) receive and send uncensored mail unless there is a reasonable belief that the mail contains contraband.

- Services designed to identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for the release of the unaccompanied child.

- Legal services information, including the availability of free legal assistance, the right to be represented by counsel at no expense to the government, the right to a removal hearing before an immigration judge, the right to apply for asylum or to request voluntary departure in lieu of deportation.

B. **Organizational Capacity and Structure**

1. **Shiloh Treatment Center** must have the infrastructure and organizational capacity (governance structure, procedures, standards, and accountability controls) to meet all

Shiloh 000096

ORR program requirements and to properly manage all program resources (finances, personnel, physical plant structures, technology) and other provisions within the scope of this agreement.

2. Unless waived by ORR, **Shiloh Treatment Center** should be accredited  by a nationally recognized accreditation organization, at ORR's discretion.[3]

3. **Shiloh Treatment Center** must have an effective program management structure that designates clear lines of authority and responsibility and promotes the effective use of organizational resources and positive outcomes, including the safe and timely release of unaccompanied children.

4. **Shiloh Treatment Center** must have internal policies and procedures in place for monitoring and evaluating their program and conducting ongoing quality assurance activities to identify areas in need of improvement and/or modification.

5.  **Shiloh Treatment Center** must provide services in a culturally sensitive and knowledgeable manner. The majority of staff responsible for direct service delivery must be bilingual in English and Spanish. Staff who routinely work with unaccompanied children who speak other languages must be proficient in that language. Care providers must have access to interpreters for other languages that unaccompanied children in their care may speak.

6. **Shiloh Treatment Center** must maintain internal policies and procedures in electronic and hard copy form and readily accessible for all care provider and ORR staff. Internal policies and procedures are subject to ORR approval and must comply with all applicable federal law, regulations, and ORR's policies and procedures. The care provider's internal policies and procedures must address the following:

---

[3] As applicable: The Council on Accreditation (COA), the Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF) or the American Correctional Association (ACA).

Shiloh 000097

- Provision of services that is specific to the type/level of care;

- State mandated placement criteria, including licensing-related restrictions;

- Population of children and youth served and facility capacity;

- Personnel policies and procedures[4], including training requirements;

- Emergency and evacuation policies and procedures;

- Physical plant requirements and maintenance policies and procedures (inspections for safety and maintenance, review of heating and cooling systems, plumbing, etc.);

- Health policies and procedures for unaccompanied children;

- Procedures for meeting mandated reporting requirements (reporting suspected neglect, maltreatment and/or abuse and sexual abuse and/or sexual harassment);

- Zero tolerance policy for sexual abuse and harassment;

- Grievance policies and procedures for both unaccompanied children and staff;

- Financial management policies and procedures (including internal controls for errors, mismanagement or fraud and provisions for regular audits performed by an outside, independent auditor)[5];

- Internal monitoring, evaluation, and continued quality assurance policies and procedures;

- Relationships with key external stakeholders; and,

---

[4] Including equal employment policies, prohibitions against nepotism and favoritism, policies on benefits, insurance protections, promotions and professional development, reporting requirements, sanctions and discipline of staff, working conditions, wage, time-off and lay off policies, activities and behaviors that require immediate suspension and possible termination.

[5] All modifications to award budgets require prior approval from both the Administration for Children and Families Office of Grants Management (ACF/OGM) and an ORR PO.

Shiloh 000098

- "Drug Free Workplace" policies.

7. **Shiloh Treatment Center** must maintain or attempt to enter into memoranda of understanding (MOUs) or other agreements with local child advocacy centers, rape crisis centers, immigrant victim service providers, and/or other community service providers to provide services to victims of sexual abuse and sexual harassment that occurred at the care provider facility.  If local service providers are not available, **Shiloh Treatment Center** must maintain or attempt to enter into MOUs or other agreements with national service provider organizations.  All agreements must have provisions that require the community or immigrant service provider to report any allegations of mistreatment or abuse to ORR.  Care provider facilities must maintain copies of its agreements or documentation showing attempts to enter into such agreements and provide copies to ORR upon request.

## C. <u>Management of Personnel and Volunteers</u>

1. **Shiloh Treatment Center** must develop, implement, and document a staffing plan based on the populations served, the scope and type of provided services, anticipated requirements, current and projected staff vacancies, and project budgets. The staffing plan must:

   a. Include staffing ratios in accordance with State licensing requirements, and as required by ORR's policies and guidelines;

   b. Include a UC to Case Manager ratio of 8:1, unless waived by ORR; and,

   c. Include a UC to Clinician ratio of 12:1, unless waived by ORR.

2. **Shiloh Treatment Center** must complete background investigations on all staff, contractors, and volunteers prior to hire to ensure the candidate is suitable for employment to work with minors in a residential setting.  Background checks must be completed in accordance with ORR's minimum standards and State licensing requirements.  The results must be included in the employee's personnel file. If State

**Shiloh 000099**

licensing requirements do not require a national criminal history fingerprint check, **Shiloh Treatment Center** must complete the check using a public or private vendor.  If there is an additional cost associated with this fingerprint check, the cost may be included in **Shiloh Treatment Center's** budget plan.

3. Requirements for all hired staff. All staff must:

   - Be at least 21 years of age;

   - Exhibit integrity and good moral character to provide appropriate care to UC;

   - Possess the relevant experience and/or qualifications to work with UC and UC  with special needs; and,

   - Be properly trained and licensed, as necessary.

4. **Shiloh Treatment Center** may not hire, continue employment, or enlist the services of any contractor or volunteer who:

   - Has engaged in any form of child abuse or neglect, including domestic violence;

   - Has been convicted of engaging or attempting to engage in sexual abuse facilitated by force, overt or implied threats of force, coercion or if the victim did not consent or was unable to consent or refused; and/or,

   - Is undergoing civil or administrative adjudication or has been civilly or administratively adjudicated for engaging in an activity listed above.

5. **Shiloh Treatment Center** must consider incidents of sexual harassment in determining whether to hire anyone or to enlist the services of any contractor or volunteer. **Shiloh Treatment Center** must ask all applicants about previous misconduct in written applications or interviews for hiring. Applicants or employees must disclose any misconduct, whether the conduct occurs on or off duty. **Shiloh Treatment Center personnel policies and procedures must provide that** material omissions regarding such misconduct or providing materially false information will be grounds for termination.

**Shiloh 000100**

6. **Shiloh Treatment Center** must have job descriptions and selection criteria for all staff positions that state the qualifications, performance standards, and responsibilities for each position. (Each job description must include a section on Essential Functions as mandated by the Americans with Disabilities Act).

7. **Shiloh Treatment Center** must obtain prior approval for the positions noted in the table below. The table also includes job descriptions and minimum qualifications for positions that require ORR approval as well as those that do not.  Exceptions to the minimum qualifications require ORR's explicit written approval prior to hire and ORR may require supervision plans and additional training.

| Positions Requiring ORR Prior Approval | | |
|---|---|---|
| **Position** | **Job Description** | **Minimum Qualifications** |
| Program Director | Overall management of the programmatic, administrative, financial, and operational systems related to the provision of care and services; provision of regular and timely reports to ORR regarding operations, services, and finances; establishing a respective and supportive workplace environment; elevating any issues or concerns to ORR. | Master's degree in social work or an equivalent degree in education, psychology, sociology, or other relevant behavioral science degree or bachelor's degree plus 5 years' experience in child welfare administration, child protective services; and, 2 years of experience in program management or as director of a licensed child care program. Possess the administrator's license for the care provider's facility. |

**Shiloh 000101**

| Assistant Program Director | Serves as secondary liaison with ORR. The need for an Assistant Program Director will vary depending on the number of unaccompanied children served at a care provider facility. | Bachelor's degree in education, psychology, sociology or other relevant behavioral science plus 5 years of progressive employment experience with a social services or childcare agency or organization. |
|---|---|---|
| Clinician | Conducts mental health assessments; provides ongoing individual and group counseling services, screens for human trafficking concerns, and provides crisis intervention services. | Master's degree in social work with clinical experience in the program, or Master's degree in psychology, sociology, or other relevant behavioral science in which direct clinical experience is a program requirement, or a bachelor's degree plus 5 years clinical employment experience. Must be licensed or eligible for licensure. |
| Lead Clinician | Coordinating clinical services, training new clinicians, and supervising the clinical staff. | Master's degree in social work, 2 years of postgraduate direct service delivery experience or a Master's degree or Ph.D. in psychology, sociology, or other relevant behavioral science in which clinical experience is a program requirement, plus 2 years of postgraduate direct service delivery experience/or bachelor's degree plus 5 years clinical employment experience in the behavioral sciences. Must have supervisory experience and be licensed to provide clinical services in the State where the care provider is located. |
| Lead Case Manager | Responsible for coordinating case management and safe and timely release services, training new case managers, and supervising the work of other case manager. | Master's degree in the behavioral sciences, human services or social services fields or bachelor's degree and at least 3 years progressive employment experience that demonstrates supervisory and case management experience. |

Shiloh 000102

| Prevention of Sexual Abuse (PSA) Compliance Manager | Oversees implementation and ongoing compliance with the Interim Final Rule on UC Sexual Abuse and Sexual Harassment standards at care provider facilities. | Bachelor's degree in behavioral sciences, human services, or social service fields and at least 1 year experience working with child welfare standards, best practices, and compliance issues. |
|---|---|---|

| Positions  NOT Requiring ORR Prior Approval | | |
|---|---|---|
| **Position** | **Job Description** | **Minimum Qualifications** |
| Case Manager[6] | Assesses the needs of unaccompanied children in care, develops Individual Service Plans, screens for human trafficking concerns, facilitates the safe and timely release or discharge of children and youth, documents the provision of services in case files. | Bachelor's degree in the behavioral sciences, human services or social services fields. Child welfare and/or case management experience is strongly encouraged. |
| Medical Coordinator | Arrange or partners with other health professionals regarding health and safety standards for out-of-home child care, child care licensing requirements, disease reporting requirements for care providers, immunizations for children, injury prevention for children, medication management and knowledge of community health and mental health resources for children. If the size of the program does not justify hiring a full time Medical Coordinator, the responsibilities may be combined with another position. | High school diploma or equivalent degree and a minimum of 1 year employment experience in the child welfare field working with children and/or adolescents in a social service setting. |

---

[6] This position may require ORR approval if the Case Manager is conducting clinical assessments.

Shiloh 000103

| | | |
|---|---|---|
| Teacher | Provides educational services and assessments, including curriculum building meeting Flores standards for education requirements. | Bachelor's degree; certification by the relevant governing authority, Teaching English as a Second Language/Teaching English to Speakers of Other Languages certification or  other appropriate accrediting body and additional training to meet the special needs of unaccompanied children. |
| Trainer | Conduct trainings, select or develop training materials; maintain records on training program attendance, trainings offered, and evaluation measures. This position does not have to be full time and the responsibilities may be combined with another position. | Bachelor's degree. |
| Youth Care Worker | Provide direct supervision of children in care, and maintain line-of-sight at all times | High school diploma or equivalent degree and a minimum of 1 year employment experience in the child welfare field working with children and/or adolescents in a social service setting. |

8. **Shiloh Treatment Center** must maintain a personnel file for each employee, whether part-time or full-time, that documents the employee's credentials, competencies, and performance, and provide access to ORR upon request. The employee personnel file must be up-to-date and must include the criteria for the employee's selection, hiring, suspension, or termination.

   a.  Personnel files must include at the minimum:

       o   Resume;

       o   Job Description

       o   Employment application;

       o   Professional references;

Shiloh 000104

o  Educational records/diploma;

o  Professional licensure (if applicable);

o  Form I-9, Employment Eligibility Verification, and appropriate identification documentation;

o  Results of medical examination (as required by State licensing, including results of TB tests and immunization records);

o  Child Abuse Mandated Reporter agreement (signed);

o  Confidentiality policy acknowledgement;

o  Most recent performance review (signed);

o  Child abuse and neglect record check results (for all jurisdictions lived in for the past 5 years);

o  National FBI criminal background check and State repository check results (for all jurisdictions lived in for the past 5 years);

o  Driver's Record and Clearance (if transporting children and youth); and,

o  Record of completion of mandated trainings and required acknowledgements.

b.  **Shiloh Treatment Center** must have policies and procedures for using and managing volunteers and interns (this includes those working in foster care).[7] This includes:

o  Establishing requirements for their selection;

o  Ensuring that each volunteer and intern complete pre-service and annual training, if applicable;

---

[7] Family and friends of the foster family may interact with unaccompanied children as they would in a normal community setting without having to complete the volunteer requirements listed above.

Shiloh 000105

o Using paid staff to supervise all volunteers and interns;

o Requiring authorization for any volunteers or interns to accompany unaccompanied children and care provider staff outside the facility for trips, medical appointments, or other visits;

o Requiring all volunteers and interns to complete a volunteer application, provide disclosures, and references; and,

o Conducting background checks on all volunteers and interns.

**D. Code of Conduct and Conflict of Interest Requirements**

1. **Code of Conduct**

   a. **Shiloh Treatment Center** must create and implement a Code of Conduct that reflects the ethical standards of a reputable professional organization, such as the National Association of Social Workers, Child Welfare League of America, or the American Public Health Human Services Association. The Code of Conduct must specifically address the employee's obligations with respect to interactions and interventions with unaccompanied children, staff, and external stakeholders.

   b. **Shiloh Treatment Center** must train all employees on the Code of Conduct and have a "whistleblower policy" that provides staff an opportunity to report suspicious unethical, inappropriate or illegal activities without negative consequence. **Shiloh Treatment Center** must include proof in the employee's file that the employee has received training in the Code of Conduct. **Shiloh Treatment Center** must have policies and procedures for the discipline or termination of personnel who violate the Code of Conduct.

   c. The Code of Conduct is required to indicate that staff must:

Shiloh 000106

o   Respect the boundaries inherent in the relationship between unaccompanied children and care provider staff both while in ORR care and after release (for example staff should not take an unaccompanied child to his or her home (with the exception of community-based foster care parents) or the home of the employee's personal acquaintances);

o   Enforce zero tolerance and other policies to prevent, detect and respond to sexual abuse and harassment by not engaging in any kind of sexual activity or personal relationship with unaccompanied children, or former unaccompanied children; or parents, guardians, or sponsors of unaccompanied children;

o   Not provide legal advice to UC;

o   Only provide therapeutic counseling if properly licensed and authorized;

o   Maintain professional standards and manner when dealing with children and youth, visitors or fellow employees by dressing appropriately and refraining from giving money or gifts, using inappropriate language, proselytizing religion or making unauthorized disclosures of confidential information, or campaigning on behalf of a political party, politician or interest group;

o   Not discriminate against any person on the basis of race, color, religion, national origin, or sex; lesbian, gay, bisexual, transgender, questioning or intersex status; veteran status, age, or disability;

o   Employ strength-based behavior management approaches and never hit, harass, humiliate or degrade an unaccompanied child or other staff member;

o   Cooperate with official investigations (Child Protective Services, State licensing, etc.) as well as other legally sanctioned investigations, such as those conducted by law enforcement;

o   Report any criminal or inappropriate conduct of other staff and never participate in the activities of a criminal gang; and,

Shiloh 000107

      o  Protect fellow care provider staff and unaccompanied children from retaliation if they disclose or threaten to disclose the existence of an illegal or unsafe practice.

2. **Shiloh Treatment Center** staff are required to timely report to care provider management any misconduct (on or off duty). Failure to report misconduct or reporting false information will be grounds for termination.

   a.  Misconduct may include but is not limited to:

      o  Any criminal arrests and/or convictions;

      o  Any child abuse and/or neglect allegations, adjudications, or convictions (whether criminal, civil or administrative); and,

      o  Any engagement or attempt to engage in sexual activities facilitated by force, overt or implied threats of force or coercion; or if the victim did not consent or was unable to consent or refuse.

   b.  Timely reporting is defined as no later than 24 hours from when a subject has knowledge of an arrest, conviction, or allegation, or earlier if the subject has unsupervised access to unaccompanied children. Other unethical conduct may also be the basis for disciplinary action and/or termination. Program Directors or other care provider management officials must report any disciplinary action and/or termination of any employee to ORR.

3. **Conflict of Interest**

   a.  **Shiloh Treatment Center** staff are prohibited from taking unfair advantage of any professional or personal relationship or from exploiting their position to further their personal, religious, political, financial, or business interests.

   b.  **Shiloh Treatment Center** must establish and maintain a written Conflict of Interest policy applicable to all staff, board members, contractors, sub-contractors, sub-grantees, volunteers, and other internal stakeholders. The policy must:

Shiloh 000108

o Identify and define conduct that creates a conflict of interest or a potential conflict of interest;

o Prohibit employees from having any direct or indirect financial interests in the transactions of services of the program;

o Require staff to recuse themselves from the decision-making process if there is a conflict of interest or a potential conflict of interest;

o Require staff to disclose any conflicts of interest prior to their involvement in a decision related to or affected by the conflict; and,

o State that failure to disclose conflicts of interest or potential conflicts of interest may result in discipline or termination of employment.

## E.  Training

1.  **Shiloh Treatment Center** must ensure all prospective employees meet all required educational and professional experience qualification and demonstate that ability to provide culturally competent services and all employees, contractors, and volunteers complete pre-service training prior to having direct contact with UC and complete the required annual training.

2.  Newly hired employees must complete pre-service training prior to having direct contact with unaccompanied children. **Shiloh Treatment Center** must provide pre-training on the following:

- ORR's Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment involving Unaccompanied Children;

- All State and local licensing requirements; and,

- State license required trainings (for example, CPR, first aid, mandatory reporting).

3.  Staff who are required to have professional certifications must abide by continuing

**Shiloh 000109**

education requirements necessary to maintain licensure. In addition, all care provider
staff must complete 40 hours of training annually of which 2 hours must involve training
on the <u>Flores</u> settlement agreement, the HSA of 2002, the TVPRA of 2008, the <u>Perez-
Olano</u> settlement agreement, and 10 hours on ORR policies and procedures.   Foster care
providers and foster families are subject to all ORR training and documentation
requirements.  In addition, the foster care providers must ensure that foster parents meet
the competencies required at the time of licensing and focus the foster parent pre-service
and ongoing training on developing these competencies.

4. **Shiloh Treatment Center** must develop annual staff trainings based on the following
   areas[8]:

   - State licensing requirements, laws, regulations, and policies relevant to the ORR UC
     Program;

   - ORR operational policies and relevant guidance[9];

   - The Safe and Timely Release process;

   - Cultural competency, including awareness of and sensitivity to different cultural
     backgrounds;

   - Prohibition against providing legal advice or counsel;

   - Strength-based behavior management approaches, such as using conflict resolution,
     problem solving skills, using rewards and consequences and de-escalation techniques
     and helping children and youth learn accountability and self-control;

   - Prohibition against conflicts of interest;

   - Crisis/intervention procedures and techniques;

   - Immigration and child welfare systems (local, national, international);

---

[8]  Care providers have two years to complete. They are not required to cover all topic areas within the same year.
[9] Care providers must have policies and procedures for the prompt dissemination, training, and implementation of
new or updated ORR policies and procedures.

**Shiloh 000110**

- Child development theory;

- Issues related to loss and family separation;

- Common health and mental health issues;

- First aid and cardiopulmonary resuscitation (CPR);

- Medication management;

- Infection control procedures and Occupational Safety and Health Administration
  (OSHA) or equivalent course that covers blood borne pathogens, airborne pathogens,
  and employee safety;

- Working with victims of human trafficking and other crimes;

- Mandatory child abuse and neglect reporting requirements: prevention, signs, and
  reporting;

- Professional boundaries;

- Emergency and disaster preparedness;

- Code of Conduct and Conflicts of Interest;

- Grievance policies and procedures; and,

- Incident reporting.

5. **Shiloh Treatment Center** must provide training to all new contractors and volunteers,
   where the level and type of training provided is based on the services they provide and
   the level of contact they have with unaccompanied children.  Contractors hired for a term
   that is expected to last one year or more must undergo the standard 40 hours of training
   required for all care provider employees. All contractors and volunteers must undergo
   pre-service training prior to having direct contact with UC.

Shiloh 000111

6. **Shiloh Treatment Center** must document all trainings completed by staff and place a copy in the staff's personnel file, including:

- The date, number of hours, and subject-matter of the employee's orientation training;

- The date and number of hours of in-service training completed by the employee in each topic area listed above;

- A confirmation that the employee understood each training that he/she completed; and,

- The name of the individual and/or entity providing the training.

F. **Grant Administration**

1. **Shiloh Treatment Center** must submit a detailed project plan of the approach, activities, staffing, and timelines which is approved by ORR and is in compliance with respective State residential care licensing requirements, the <u>Flores</u> settlement agreement, applicable federal laws and regulations, and the ORR policies and procedures. Any modifications must be discussed with the ORR Project Officer prior to implementation.

2. **Shiloh Treatment Center** must submit a program budget for ORR and ACF's Office of Grants Management (OGM) approval that accurately reflects proposed activities as described in the project plan.

3. **Shiloh Treatment Center** must notify the ORR Project Officer of any significant delays or issues regarding implementation of grant activities.

4. **Shiloh Treatment Center** must regularly consult with the ORR Project Officer and other ORR staff while implementing grant activities during each phase of the project. Consultation shall include, but is not limited to, participation in status meetings by telephone to review project implementation or as required by ORR.

Shiloh 000112

5. **Shiloh Treatment Center** must provide ORR with unrestricted access to clear, timely, and accurate information about all aspects of the program. This access includes, but is not limited to: activities, policies, and financial information; documentation on individual UC and provided services; and unrestricted physical access to **Shiloh Treatment Center's** premises, buildings, staff and UC in the programs physical custody; and any physical property on the premises, such as video monitoring equipment and footage.

6. **Shiloh Treatment Center**  must ensure that all Sub-Recipients comply with respective state residential care licensing requirements, the <u>Flores</u> settlement agreement, pertinent federal laws and regulations, and the ORR policies and procedures, unless otherwise expressly waived (in writing) by authorized ORR staff.

7. **Shiloh Treatment Center** must submit the following documents to the ORR Project Officer:

   a. All applicable State and local licensures, incorporations, and/or authorizations for **Shiloh Treatment Center** and any Sub-Recipient at the beginning of each Federal fiscal year.

   b. A description of responsibilities and activities of all organizations, individuals, or Sub- Recipients providing services to UC within 30 days of ORR's award date.  All Sub- Recipients are subject to approval by the ORR Project Officer and must include the following considerations:

   o Memoranda of Understanding (MOU) or similar instrument, with organizations or individuals selected for receipt of sub-awarded funds;

   o A detailed description of the Sub-Recipients' activities, if not adequately described in the MOUs (or similar instrument) or project plan (may include a monitoring tool jointly developed by Project Officer and Grantee);

   o Complete budget for each Sub-Recipient;

Shiloh 000113

o   Schedule for monitoring Sub-Awardees with respect to location, dates, and agenda will be reported in **Shiloh Treatment Center** quarterly reports to ORR;

o   Reports following monitoring visits of sub-awardees and immediately notifies the ORR Project Officer of any serious concerns and will submit the final report within 30 days following the monitoring visit; and,

o   Prompt notification to ORR Project Officer of any changes regarding Sub-Recipient.

c.   Report of all State defined residential care placement restrictions to be submitted within 7 days of date of ORR award.

d.   Notify the ORR Project Officer immediately but no later than 24 hours after the care provider, service provider/contractor or Sub- Recipient receives a revocation or suspension of a license, incorporation or authorization to provide services.

e.   Notify the ORR Project Officer immediately  but no later than 24 hours after the care provider, service provider/contractor or Sub-Recipient receives any citation from a State or local licensing agency or other accrediting agency and any citation for health, safety or enviornemental code violations violaitons.

f.   List of all State mandated staff trainings, including required timeline for completion dates within 30 days of date of ORR award.

g.   All materials (e.g., forms and other tools) used or created for residential services for UC.  Materials are subject to approval by ORR Project Officer and must be submitted to the Project Officer 30 days prior to being implemented.

h.   Quarterly performance and financial reports are to be uploaded into GrantSolutions unless otherwise directed by OGM or ORR..

**8.  Shiloh Treatment Center**  also agrees:

24

**Shiloh 000114**

a. To comply with HHS policy and regulations, unless otherwise expressly waived in the approved application and all other applicable Federal statutes and regulations in effect during the time that it is receiving grant funding.

b. To amend the approved project plan as needed to comply with standards, goals, and priorities established by the Director;

c. To submit quarterly performance and financial reports in a timely fashion based on the schedule that is described in Section VIII of this agreement.

d. To abide by provisions of the Service Contract Act, Code of Federal Regulations (CFR) Title 29 and abide by applicable State wage determination guidelines in its program.

**G. <u>Adherence to ACF Policy on Grants to Faith-Based Organizations</u>**

Consistent with the ACF Policy on Grants to Faith-Based, ACF is mindful that potential grantees may have religious objections to providing certain kinds of services.  ACF is committed to providing the full range of legally permissible services to people who need them, and to do so in a timely fashion and in a manner that respects the diverse religious and cultural backgrounds of those we serve. At the same time, ACF is also committed to exploring ways for organizations to partner with ACF and other grantees even if they object to providing specific services on religious grounds.

The following are ways in which organizations with such objections may be able to participate in human services programs:

- <u>Serve as subgrantees:</u>  In many cases, subgrantees do not need to provide every service for which the grantee is responsible, so long as all clients served have access to all services required under the grant in a timely and respectful manner.  Grantees must ensure that their overall program provides all of the required services, but grantees can use subgrantees to provide some services.  Under this arrangement, as

**Shiloh 000115**

long as other subgrantees are readily available to provide clients with the objected-to services, a subgrantee may participate in the grant program while declining to provide services to which they have religious objection.

- <u>Apply in a consortium</u>: A second possibility is for faith-based organizations to apply in a consortium with one or more partners.  The consortium would allow for a division of responsibility consistent with each organization's principles.  Again, as long as clients have timely access to all required services, different organizations could divide up the services provided.

- <u>Notify grantor:</u> A third possibility in some circumstances would be for the grantee to notify the federal program office responsible for the grant if a client's needs or circumstances may require services, including referrals, to which the organization has a  religious objection.  It would then be the federal agency's responsibility to follow through with the needed services, or, if appropriate, transfer the case to another provider.

ACF will consider any combination of these approaches and is open to considering other approaches that would accomplish the goal of ensuring that people have access to a full range of services while enabling qualified faith-based organizations to participate in the delivery of those services in a manner consistent with their principles.

## H.  <u>Responsibilities of ORR</u>

ORR hereby agrees to the following:

1. To confirm project plan (which includes approach, activities, timelines, and results expected) and budget, and discuss minor modifications;

2. To submit and/or review FFR SF-425 to be sure it accurately reflects proposed activities;

3. To participate in status meetings by telephone to review project implementation (monthly, or as required by the ORR Project Officer or other ORR staff);

4. To keep Shiloh Treatment Center  informed of policy, regulatory and legal developments as they affect the implementation of the project;

Shiloh 000116

5.  To review and approve Shiloh Treatment Center  Sub-awards of organizations providing
    residential services;

6.  To review and approve additions or hiring of key personnel, including those of Sub-
    Awardee of organizations providing residential services, in a timely manner;

7.  To review all internal policies, procedures, and protocols used or created for the
    residential services for DUCO in a timely fashion;

8.  To provide training and technical assistance, as needed, regarding project
    implementation, and residential service delivery; and,

9.  To promptly review written requests for prior approval of deviations from the project
    plan or approved budget.  Any changes that affect the terms and conditions of the grant
    award or revisions/amendments to the Cooperative Agreement or to the approved scope
    of activities will require prior approval by the ORR Project Officer and the Grants
    Management Specialist in the Office of Grants Management (OGM).

**SECTION V:** <u>Budget and Financial Arrangement</u>

The approved budget is reflected in the Notice of Award (NoA). The award will be based on the
ORR and the OGM approved negotiated budget and project plan.

The Government shall not be obligated to reimburse the recipient for costs incurred in excess of
the total amount allotted to this project, and the recipient shall not be obligated to continue
performance under the Agreement (including actions under the termination clause) or otherwise
to incur costs in excess of the amount allotted to this Agreement unless and until ORR and the
OGM have notified the recipient in writing that additional funds have been awarded.  No notice,
communication, or representation from any person other than the Grants Management Specialist
shall authorize the expenditure of additional funds.  The United States Government will not be
obligated for any excess costs in the absence of a written notice of authorization from the Grants
Management Officer. Changes issued pursuant to this Agreement shall not be considered an
authorization to the recipient to exceed the allotted amount of this Agreement unless specifically
stated by the Grants Management Officer.

**Shiloh 000117**

**SECTION VI:** <u>Monitoring</u>

ORR will conduct announced and unannounced monitoring activities throughout the project period.  The purpose of ORR monitoring is to ensure compliance with the <u>Flores</u> settlement agreement, pertinent federal laws and regulations, and ORR policies and procedures. Performance and compliance measures are reflected in:

- The grant application, as funded;

- Program requirements contained in the authorizing statutes;

- Program regulations and guidelines incorporated in the grant award;

- Program grant and administrative requirements contained in regulations and policy;

- Relevant public policy requirements (assurances, certifications);

- This agreememt;

- The ORR Policy Guide and relevant procedures; and,

- Special programmatic terms and conditions, if any.

ORR monitoring activities will include desk and on-site (announced and unannounced) monitoring and site visits. ORR will monitor  or conduct site visits on programs based on some of the following factors:

- Costs and Total Support – high cost projects

- Complexity – projects with multiple service components;

- Age and Experience of Program – newly established program, one receiving Federal funds for the first time, one with inexperienced key personnel, or one whose legislation has recently undergone substantial change, may require closer scrutiny than a long established program;

- Prior Indication of Compliance issues – available audit or evaluation findings, recipient requests for assistance, or data on financial stability of an organization;

Shiloh 000118

- Length of Grant – multi-year award, particularly one up for continuation awards that have never been visited may take precedent over new ones;

- Time Since Last Visit – if program has not been recently or previously visited;

- Geographic Location – proximity to other recipients, accessibility to program office;

- Agency Priority – high priority / visibility projects within the agency, high interest to Congress, the executive branch, or the public; and,

- Potential for Dissemination – programs / projects that show potential for developing exemplary practices suitable for dissemination.

ORR will provide Shiloh Treatment Center with a monitoring report following formal monitoring visits or if required site visits, that will include citations for noncompliance, recommendations, a corrective action plan if needed, timelines for reporting, and consequences for not responding.

The monitoring report is not exhaustive of all that is reviewed during the monitoring visit. Rather, the report highlights the key issues in need of attention, as determined by the monitor and based on the review of all ORR policies and procedures.  After review of the monitoring report, a formal corrective action plan should be submitted to the designated Project Officer within 30 business days.  The corrective action plan will identify objectives, specific actions, persons responsible and date of completion for each monitoring citation.

**SECTION VII:** <u>Continuation Applications</u>

Shiloh Treatment Center must submit an ORR provided continuation application by June 1, or a later date determined by ORR.   For continuation applications, Shiloh Treatment Center will provide the following information:

1. Standard Forms: SF 424 Application for Federal Assistance, SF 424A Budget Information for Non-Construction Programs, and SF 424B Assurances for Non-Construction Programs;
2. Certification Regarding Lobbying
3. Budget worksheets and narrative;

**Shiloh 000119**

4.  Program Description and Work plan;

5.  Current State Residential Care License;

6.  Proof of Insurance;

7.  Facility lease or bank mortgage note on property (as applicable);

8.  Indirect Cost Rate approval, if any;

9.  Current Program Organizational Chart;

10.  Staffing and Volunteer Roster;

11. Copy of all Child Protective Services reports, allegations and CPS investigations;

12.  Property/Inventory List;

13.  Project/Performance Site Location(s) form

Shiloh Treatment Center must use the current version of all standard applications and reporting forms.

Current versions of the forms are available at: https://www.grants.gov

**SECTION VIII:** Applicable Regulations

Shiloh Treatment Center must provide all residential services for UC in compliance with respective state residential care licensing, the Flores settlement agreement, pertinent federal laws and regulations, including Standards to Prevent, Detect, and Respond to Sexual Abuse and Sexual Harassment involving Unaccompanied Children, 45 C.F.R. 411, and ORR policies and procedures.  Other applicable federal regulations are discussed in the attached Standard Terms and Conditions.

**SECTION IX**: Records and Reports

For quarterly performance reports, Shiloh Treatment Center will use the ACF Performance Progress Report ACF-OGM SF-PPR form. Performance Reports are due quarterly based on the project period start date.

For financial status reports, Shiloh Treatment Center will use the SF-425 form, which will include report of expenditures and unliquidated obligations.  Quarterly financial reports are due every 90 days based on the project period start date..  The Annual Financial Status and

30

Performance report is due 90 days after the end of the budget period. The Final Financial Status and Performance report is due 90 days after the end of the project period.

Funds awarded under this Cooperative Agreement shall be accounted for and reported upon separately from all other grant activities.

Shiloh Treatment Center must use the current version of all reporting forms.  Current versions of the forms are available at:https://www.grants.gov

All correspondence and reports related to this agreement must include the Grant Number and should be uploaded to GrantSolutions at https://home.grantsolutions.gov/home/. Notification of submission should be sent via email to the ORR Project Officer.

**SECTION X**: Project Contacts

Shiloh Treatment Center designates the following person as project contact for this cooperative agreement:

> **Name: Luis Valdes**
> **Title: Program Administrator**
> **Address: 3926 Bahler Avenue, Manvel, TX 77578**
> **Telephone: (713) 417-8218**

ORR designates the following person as ORR Project Officer for this cooperative agreement:

> **Name:          Sathya Acevedo**
> **Address:       330 C Street, SW, Washington, DC 20201**
> **Telephone:  (202) 401-5737**
> **Fax:             (202) 401-1022**
> **Email:          Sathya.Acevedo@acf.hhs.gov**

**Shiloh 000121**

**SECTION XI**: <u>Duration of Agreement</u>

This agreement will be effective February 1, 2017- January 31, 2020. Annual continuations will be entertained on a non-competitive basis, subject to availability of funds, satisfactory performance of the project, capacity needs and a determination that continued funding is in the best interest of the Federal Government.

_____     _____

**E. Scott Lloyd**     **Date**

**Director**

**Office of Refugee Resettlement**

_____     __4/11/2017_____

**Name: Luis Valdes**     **Date**

**Title: Program Administrator**

**Shiloh Treatment Center**

**Shiloh 000122**