CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
CARLOS R. HOLGUIN (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*

*Additional counsel listed on following pages*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALEX AZAR, et al., <br><br> Defendants. | Case No.  2:18-CV-05741 DMG PLA <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:      Dec. 11, 2020 <br> Time:     3:00 p.m. <br> Place:    Courtroom 8C, 8th Floor <br><br> Complaint Filed: June 29, 2018 <br> Pretrial Conference Date: March 2, 2021 <br> Trial Date:  March 30, 2021 <br> Judge: Hon. Dolly M. Gee |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
DAISY O. FELT (307958)
JONATHAN P. MULLIGAN (CAL RLSA NO. 803383)
MONICA J. JULIAN (265075)
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu
        dofelt@ucdavis.edu
        jmulligan@ucdavis.edu
        mjulian@ucdavis.edu

NATIONAL CENTER FOR YOUTH LAW
LEECIA WELCH (208741)
NEHA DESAI (CAL. RLSA NO. 803161)
POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email:  lwelch@youthlaw.org
        ndesai@youthlaw.org
        pjuneja@youthlaw.org
        fpitts@youthlaw.org
        mwroe@youthlaw.org
        madamson@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
BRENDA SHUM *(ADMITTED PRO HAC VICE)*
CRYSTAL ADAMS (308638)
1313 L St. NW, Suite 130
Washington, DC 20005
Telephone: (202) 868-4785
Email:  bshum@youthlaw.org
        cadams@youthlaw.org

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1   COOLEY LLP
    SUMMER J. WYNN (240005)
2   MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
    REBECCA L. TARNEJA (293461)
3   ALEXANDRA R. MAYHUGH (300446)
    JAYME B. STATEN (317034)
4   1333 2nd Street, Suite 400
    Santa Monica, CA  90401
5   Telephone: (310) 883-6400
    Facsimile:  (310) 883-6500
6   Email:  swynn@cooley.com
            mmcmahon@cooley.com
7           rtarneja@cooley.com
            amayhugh@cooley.com
8           jstaten@cooley.com

9   *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. *RES JUDICATA* DOES NOT BAR ANY OF PLAINTIFFS' CLAIMS ................................................................................................ 1

III. ORR'S STEP-UP AND CUSTODIAL VETTING POLICIES AND PROCEDURES VIOLATE MINIMUM DUE PROCESS ........................... 2

    A. Due Process Requires Notice and an Opportunity to Be Heard .............. 2

    B. ORR Fails to Provide Hearings that Comport with the APA ................. 3

IV. ORR'S CUSTODIAL VETTING POLICIES AND PROCEDURES FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS ........ 4

    A. Plaintiffs Have Substantial and Well-Established Liberty Interests ........ 4

    B. The Risk of Erroneous Deprivation is High ......................................... 7

    C. Plaintiffs' Liberty Interests Far Outweigh the Government's Interest ................................................................................................ 10

V. ORR'S STEP-UP POLICIES AND PROCEDURES FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS ..................... 11

    A. Plaintiffs' Liberty Interest Is Substantial ............................................ 11

        1. Plaintiffs' liberty interest is not diminished because they are immigrant children. .................................................................. 11

        2. Restrictive placements harm children. ...................................... 13

    B. ORR's Current Policies and Procedures Are Wholly Insufficient to Guard Against Erroneous Restrictive Placements ............................ 14

        1. ORR's policies and procedures fail to provide fundamental procedural protections. ............................................................ 14

        2. ORR's policies and procedures are otherwise constitutionally inadequate. .................................................... 16

    C. Plaintiffs' Liberty Interest Outweighs The Government's Interest ........ 17

VI. THE UNCONTROVERTED EVIDENCE ESTABLISHES THAT ORR FAILS TO ENSURE ADEQUATE LEGAL REPRESENTATION ............................................................................ 17

    A. ORR Bars Legal Services Providers from Using Appropriated Funds to Represent Children in Legal Proceedings ............................. 17

    B. Plaintiffs Adequately Alleged that ORR Blocks Counsel from Representing Class Members ............................................................. 19

    C. ORR Obstructs Counsel's Ability to Represent Children "to the Greatest Extent Practicable" .............................................................. 20

VII. PLAINTIFFS ARE ENTITLED TO THE RELIEF REQUESTED ......... 23

VIII. CONCLUSION .................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aageson Grain & Cattle v. U.S. Dep't of Agric.,*
500 F.3d 1038 (9th Cir. 2007) ................................................................4

*Al Otro Lado, Inc. v. McAleenan,*
423 F. Supp. 3d 848 (S.D. Cal. 2019) ...................................................25

*ASSE Int'l, Inc. v. Kerry,*
803 F.3d 1059 (9th Cir. 2015) ................................................................3

*Bautista v. L.A. Cnty.,*
216 F.3d 837 (9th Cir. 2000) ................................................................20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..............................................................................19

*Beltran v. Cardall,*
222 F. Supp. 3d 476 (E.D. Va. 2016) ..................................................7, 8

*Boumediene v. Bush,*
553 U.S. 723 (2008) ..............................................................................12

*Bounds v. Smith,*
430 U.S. 817 (1977) ..............................................................................17

*Chevron U.S.A., Inc. v. NRDC,*
467 U.S. 837 (1984) ..............................................................................18

*City of Canton v. Harris,*
489 U.S. 378 (1989) ................................................................................9

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532 (1985) ................................................................................4

*D.B. v. Cardall,*
826 F.3d 721 (4th Cir. 2016) ..............................................................3, 5

*de Jesus Ortega Melendres v. Arpaio,*
695 F.3d 990 (9th Cir. 2012) ............................................................24, 25

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES
(continued)

**Page**

*Desertrain v. City of L.A.*,
754 F.3d 1147 (9th Cir. 2014) .................................................. 20

*East Bay Sanctuary Covenant v. Trump*,
950 F.3d 1242 (9th Cir. 2020) ............................................. 23, 25

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .............................................................. 23

*Flores v. Barr*,
407 F. Supp. 3d 909 (C.D. Cal. 2019) .................................... 21

*Flores v. Sessions*,
862 F.3d 863 (9th Cir. 2017) ................................................... 7

*Franco-Gonzalez v. Holder*,
2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) ....................... 24

*In re Gault*,
387 U.S. 1 (1967) .................................................................. 15

*Gibson v. Merced Cnty. Dep't of Human Res.*,
799 F.2d 582 (9th Cir. 1986) ................................................... 6

*Girard v. Klopfenstein*,
930 F.2d 738 (9th Cir. 1991) ................................................... 4

*Greene v. McElroy*,
360 U.S. 474 (1959) ................................................................ 8

*Ham v. Pennington Cnty. Bd. of Comm'rs*,
158 F. App'x 761 (8th Cir. 2005) ............................................ 9

*Henry v. Cnty. of Shasta*,
132 F.3d 512 (9th Cir. 1997) ................................................... 9

*Hicks v. Comm'r of Soc. Sec.*,
909 F.3d 786 (6th Cir. 2018) ................................................... 2

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1

### TABLE OF AUTHORITIES
(continued)

2

**Page**

3

4       *Howard v. City of Coos Bay*,
5          871 F.3d 1032 (9th Cir. 2017) .................................................................. 2

6       *Howey v. United States*,
           481 F.2d 1187 (9th Cir. 1973) ................................................................ 20
7

8       *Kent v. United States*,
           383 U.S. 541 (1966)................................................................................ 22

9       *King v. Atiyeh*,
10          814 F.2d 565 (9th Cir. 1987) .................................................................. 25

11      *Lawlor v. Nat'l Screen Serv. Corp.*,
12          349 U.S. 322 (1955).................................................................................. 2

13      *Marathon Oil Co. v. EPA*,
14          564 F.2d 1253 (9th Cir. 1977) .................................................................. 4

15      *Mathews v. Eldridge*,
           424 U.S. 319 (1976)........................................................................ 2, 12, 14
16

17      *Monell v. Dep't of Soc. Servs.*,
           436 U.S. 658 (1978)................................................................................... 9
18

19      *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*,
           828 F.2d 536 (9th Cir. 1987) .................................................................. 23
20

21      *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
           886 F.3d 803 (9th Cir. 2018) .................................................................. 23
22

23      *Neal v. Shimoda*,
           131 F.3d 818 (9th Cir. 1997) .................................................................. 13

24      *Orantes-Hernandez v. Smith*,
25          541 F. Supp. 351 (C.D. Cal. 1982) ........................................................... 3

26      *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
27          810 F.3d 631 (9th Cir. 2015) .................................................................. 25

28

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*Padilla v. Immigr. & Customs Enf't,*
    953 F.3d 1134 (9th Cir. 2020) ..................................................................3, 17, 24

*Padilla v. U.S. Immigr. & Customs Enf't,*
    379 F. Supp. 3d 1170 (W.D. Wash. 2019) ........................................................17

*Parham v. J.R.,*
    442 U.S. 584 (1979).............................................................................................15

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) .......................................................................24, 25

*Pension Ben. Guar. Corp. v. LTV Corp.,*
    496 U.S. 633 (1990)...............................................................................................4

*Prince v. Massachusetts,*
    321 U.S. 158 (1944)............................................................................................24

*ProtectMarriage.com v. Bowen,*
    599 F. Supp. 2d 1197 (E.D. Cal. 2009) .............................................................23

*Ramirez v. U.S. Immigr. and Customs Enf't,*
    2020 WL 3604041 (D.D.C. July 2, 2020) ...........................................................7

*Reno v. Flores,*
    507 U.S. 292 (1993)...................................................................................5, 6, 11

*Santos v. Smith,*
    260 F. Supp. 3d 598 (W.D. Va. 2017)..............................................................5, 7

*Saravia for A.H. v. Sessions,*
    905 F.3d 1137 (9th Cir. 2018) ...........................................................................24

*Smith v. Org. of Foster Families For Equal. & Reform,*
    431 U.S. 816 (1977)...............................................................................................6

*Spencer v. Knapheide Truck Equip. Co.,*
    183 F.3d 902 (8th Cir. 1999) ...............................................................................9

Cooley LLP
Attorneys At Law
Los Angeles

v

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

# TABLE OF AUTHORITIES
(continued)

**Page**

*Whole Woman's Health v. Hellerstedt,*
  136 S. Ct. 2292 (2016)................................................................25

*Wong Yang Sung v. McGrath,*
  339 U.S. 33 (1950)...............................................................3, 4

*Z Channel Ltd. Partnership v. Home Box Office,*
  931 F.2d 1338 (9th Cir. 1991) ...............................................25

*Zerezghi v. U.S. Citizenship and Immigr. Servs.,*
  955 F.3d 802 (9th Cir. 2020) ..................................................3

*Zinermon v. Burch,*
  494 U.S. 113 (1990)................................................................15

**Statutes**

5 U.S.C.
  § 554 ....................................................................................4
  § 556 ....................................................................................4
  § 557 ....................................................................................4

8 U.S.C. § 1232.............................................................*passim*

42 U.S.C. § 1983...................................................................9

Cal. Welf. & Inst. Code
  § 313 ...................................................................................10
  § 315 ...................................................................................10

**Other Authorities**

Federal Rules of Civil Procedure
  8(a) .....................................................................................19
  12(e) ...................................................................................19
  23(b) ...................................................................................24
  54(c) ...................................................................................25

Cooley LLP
Attorneys At Law
Los Angeles

vi

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-CV-05741 DMG PLA

# I.   INTRODUCTION

The uncontroverted evidence establishes that the Office of Refugee Resettlement ("ORR") fails to afford even the most basic procedural protections in decisions affecting Class Members' placement in and release from ORR custody—contrary to the Due Process Clause of the Constitution, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, codified at 8 U.S.C. § 1232 ("TVPRA"), the settlement agreement in *Flores v. Barr*, No. 2:85-cv-04544-DMG (C.D. Cal.) ("FSA"), and the Administrative Procedure Act ("APA").

The Court need look no further than a handful of Plaintiffs' undisputed facts to find that Defendants fail to provide any sort of meaningful notice or an opportunity to be heard before deeming proposed custodians unfit (thereby denying release) or stepping up children to more restrictive settings. (*See* Pls. Resp. to Defs. Statement of Genuine Dispute of Material Fact ("RDF") ¶¶ 70–72, 74–77, 79 (custodial vetting policies and procedures fail to afford notice and a hearing); *id.* ¶¶ 179–182, 194, 195, 198–200, 217 (step-up policies and procedures fail to afford notice and a hearing).)

In addition, the undisputed facts establish that ORR violates the TVPRA's mandate to ensure "to the greatest extent practicable" that children have counsel to represent them "in legal proceedings or matters" by prohibiting legal services providers from using congressionally appropriated funds to represent children in decisions relating to release, restrictive placement, and prescription of psychotropic medication. (*See* RDF ¶¶ 227, 271–272.)

The Court should grant summary judgment for Plaintiffs on their First, Second, and Fourth Claims for Relief.

# II.   *RES JUDICATA* DOES NOT BAR ANY OF PLAINTIFFS' CLAIMS

Plaintiffs' step-up, custodial vetting, and legal representation claims are not barred by *res judicata*. (ECF No. 289 ("Pls. Opp.") 2–11.) The Supreme Court has clarified that—even if two suits involve "essentially the same course of wrongful conduct"—a prior judgment "cannot be given the effect of extinguishing claims which

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES
1
PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955). The claims in this action arise out of events that occurred decades after entry of the FSA, and thus do not "arise out of the same transactional nucleus of facts" or involve "substantially the same evidence." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017); Pls. Opp. 4–8. As such, there is no identity of claims. Further, the two suits do not "involve infringement of the same right[s]." *Howard*, 871 F.3d at 1039. Plaintiffs' claims are based, in part, on rights under the TVPRA and the FSA that did not exist when *Flores* was filed and therefore could not have been raised in that action. (Pls. Opp. 6–8.) For these reasons, and those discussed in Plaintiffs' opposition, *res judicata* does not bar Plaintiffs' claims.

## III.   ORR'S STEP-UP AND CUSTODIAL VETTING POLICIES AND PROCEDURES VIOLATE MINIMUM DUE PROCESS

### A.   Due Process Requires Notice and an Opportunity to Be Heard

ORR fails to provide a hearing—under any definition of the term[1]—when it decides to reject a proposed sponsor or to step-up a child. (ECF No. 271-1 ("Pls. MSJ") 24–26; ECF No. 277 ("SUF") ¶¶ 73–76, 193–200, 215–217.) Such "baseline procedural protection[s]" cannot be "balanced away" under *Mathews v. Eldridge,* 424 U.S. 319 (1976). *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 797 (6th Cir. 2018).

Defendants attempt to distinguish this case from the Sixth Circuit's ruling in *Hicks* by arguing "there is no credible claim that Plaintiffs are denied an opportunity to be heard under current ORR procedures." (ECF No. 283 ("Defs. Opp.") 10.) Defendants' assertion is amply refuted by the law and the undisputed facts. ***First***, a *Flores* bond hearing does not adequately protect a child's due process rights because ORR maintains that it is not bound by the decision of the immigration judge. (Pls. Opp.

---

[1] A hearing is a "judicial session . . . held for the purpose of deciding issues of fact or of law" or "[a]ny setting in which an affected person presents arguments to a decision-maker." HEARING, Black's Law Dictionary (11th ed. 2019).

21; ECF No. 262 ("Joint Stip.") ¶ 83; SUF ¶ 205; ECF No. 263-2 [Defs. Uncontroverted Facts] ¶ 66; *see also D.B. v. Cardall*, 826 F.3d 721, 742–43 (4th Cir. 2016) (rejecting argument that "a brief hearing before an immigration judge" satisfies due process because ORR "possesses the sole authority to order [a child's] release").) ***Second***, habeas is not a sufficient substitute for due process. *See Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1146 (9th Cir. 2020). The fact that a child can file a petition to challenge the legality of his or her placement simply transfers the work of placement decisions to the district courts. Judicial economy would not be well-served by such a system, even assuming children have sufficient access to the courts (which they do not). *See id.* (habeas inadequate because "noncitizens such as plaintiffs are frequently pro se, have limited English skills, and lack familiarity with the legal system"); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 384 (C.D. Cal. 1982) ("incarcerated persons, though most in need of an opportunity to be heard, are least able to learn about their rights"). ***Third***, vague references to the "additional process" provided to Plaintiffs in the context of release and step-up decisions (Defs. Opp. 10–11) do not change the fact that neither children nor their sponsors are given an opportunity to inspect or rebut evidence material to ORR's decision-making. (*See* Pls. MSJ 26; SUF ¶¶ 73, 75, 197, 215.) This procedural failing on its own warrants summary judgment in Plaintiffs' favor on their First and Second Claims for Relief. *See Zerezghi v. U.S. Citizenship and Immigr. Servs.*, 955 F.3d 802, 809–13 (9th Cir. 2020); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1075–79 (9th Cir. 2015).[2]

## B.    ORR Fails to Provide Hearings that Comport with the APA

The Supreme Court has determined that an agency must adhere to the procedures set out in the APA when a hearing is required by the Constitution. *See Wong Yang Sung*

---

[2] Defendants' attempt to distinguish these cases is unpersuasive. (Defs. Opp. 10 n.2.) It remains undisputed that Plaintiffs are not provided a hearing or other opportunity to inspect and rebut evidence, as required by the Constitution. Neither occasional meetings between detained children and case managers nor ORR retaining discretion to reconsider prior decisions refutes this point. (*See* RDF ¶¶ 73, 75, 197, 216.)

Cooley LLP
Attorneys At Law
Los Angeles

3

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

*v. McGrath*, 339 U.S. 33, 50 (1950), *superseded in part by statute on other grounds*, *Ardestani v. I.N.S.*, 502 U.S. 129 (1991); *Aageson Grain & Cattle v. U.S. Dep't of Agric.*, 500 F.3d 1038, 1044 (9th Cir. 2007) ("[T]he APA generally applies where an administrative hearing is required by statute or the Constitution."); Pls. MSJ 26–27.

Defendants argue nonetheless that the APA requires a hearing only if the TVPRA (or some other statute) mandates it (Defs. Opp. 33–34), but even Defendants' cited case law contradicts their position. (*Id.* at 33 (citing *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 655–56 (1990) (agency need not provide hearings "where the Due Process Clause itself does not require them"); *see also* Pls. MSJ 26–27.) Defendants also argue that ORR custodial vetting and step-up decisions are not "adjudications" such that the APA does not apply. (Defs. Opp. 33–34.) But again, the case law is clear: adjudicatory decisions are those that "determine the specific rights of particular individuals." *Marathon Oil Co. v. EPA*, 564 F.2d 1253, 1261 (9th Cir. 1977). ORR's decisions with respect to children's placement and detention determine children's rights to liberty and family integrity, and thus are "adjudicatory" decisions.

Accordingly, the Court should order ORR to afford detained children prompt in-person hearings consistent with the procedures mandated by the APA. *See Wong Yang Sung*, 339 U.S. at 50–51, 53; 5 U.S.C. §§ 554, 556, 557.[3]

## IV.  ORR'S CUSTODIAL VETTING POLICIES AND PROCEDURES FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS

### A.  Plaintiffs Have Substantial and Well-Established Liberty Interests

Children in ORR custody have protected liberty interests vested by the

---

[3] Defendants argue that "'courts have upheld numerous procedural schemes other than the one in the APA.'" (Defs. Opp. 34.) But in each cited case, plaintiffs' rights were protected because the regulatory and statutory regimes at issue provided for hearings before impartial decision makers. *See Girard v. Klopfenstein*, 930 F.2d 738, 742–43 (9th Cir. 1991); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). Here, neither children nor their sponsors are entitled to any form of hearing to challenge adverse decisions except in the most limited circumstances. (*See supra* Section III.A.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

4

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1  Constitution, the TVPRA, and the FSA. (*See* Pls. MSJ 20–24; Pls. Opp. 11–19, 34–39.)

2  These interests include rights to be free from detention and to familial association. (Pls.

3  MSJ 20–24.) The Court should reject Defendants' attempt to minimize or limit these

4  interests in favor of ORR's unilateral and opaque release process.

5       ***First***, Plaintiffs' liberty interests are not diminished merely because they are

6  children. *Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J., concurring).

7  Defendants' distorted and overly broad reading of *Reno* to argue otherwise (Defs. Opp.

8  35–36) is unpersuasive and should be rejected. (*See* Pls. Opp. 12–13.)[4]

9       ***Second***, Plaintiffs' right to be free from detention is well-established. (*See* Pls.

10  MSJ 20–21; ECF No. 141 [Class Cert. Order] 14–15.) Defendants' argument that

11  "courts have recognized that the interest in freedom from ORR custody for [children]

12  is not the ability of the minor to live outside a state-licensed facility, but rather, 'to be

13  raised and nurtured by . . . parents'" is false. (Defs. Opp. 36.) Indeed, Defendants'

14  tortured reading is contradicted by the sole case they cite, which recognized interests in

15  freedom from "***both*** a restraint of liberty ***and*** a continued separation of a child from a

16  parent." *Santos v. Smith*, 260 F. Supp. 3d 598, 613 (W.D. Va. 2017) (emphasis added);

17  *see Reno*, 507 U.S. at 319 (O'Connor, J., concurring) ("[T]he absence of available

18  parents, close relatives, or legal guardians to care for [children in government custody]

19  does not vitiate their constitutional interest in freedom from institutional

20  confinement.").[5]

21  _____

22  [4] Moreover, with respect to procedural due process, *Reno* merely held that plaintiffs'

23  procedural due process rights were satisfied by "the *right* to a hearing before an

24  immigration judge." 507 U.S. at 308–09. This does not hold true under ORR's current policies and procedures because ORR maintains that it is not bound by the decision of the immigration judge. (Pls. Opp. 21; *Cardall*, 826 F.3d at 742–43 (such a hearing does

25  not satisfy due process where ORR "possesses the sole authority to order . . . release").)

26  [5] It is undisputed that children suffer harm in detention—generally and specifically

27  while in ORR custody—including physical and sexual abuse. (SUF ¶¶ 1-7.) That some small subset of children may benefit from temporary placement in a specialized facility

28  (Defs. Opp. 36–37), even if true, does not detract from Class Members' well-established

Cooley LLP
Attorneys At Law
Los Angeles

5

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-CV-05741 DMG PLA

*Third*, Defendants try to minimize Plaintiffs' right to familial association by arguing that some children in ORR custody seek release to "distant relatives and unrelated adults." (Defs. Opp. 37–38.) But Defendants do not dispute that a child's right to familial association extends beyond parents and legal guardians. (*See* Pls. MSJ 22; Defs. Opp. 37–38.) Importantly, unlike the children in *Reno*, many children in ORR custody have parents, legal guardians, or other close relatives who are willing to receive them. *See Flores v. Barr*, No. 2:85-cv-04544-DMG-AGR, ECF No. 746-1 at 8 (C.D. Cal. Apr. 6, 2020). And Defendants cite no authority for their suggestion that an entire class of children should lose procedural protection merely because ORR presumes that some small number of children have weaker familial connections with their proposed sponsors.[6] (*See* Pls. Opp. 38–39.)

Defendants' attempt to reframe the fundamental right to familial association as a child's supposed "interest in choosing who will become his or her custodian" (Defs. Opp. 38) should be rejected. Nor is the foster parent relationship an apt analogy. *See Smith v. Org. of Foster Families For Equal. & Reform*, 431 U.S. 816, 845–46 (1977) (contrasting fundamental rights of natural families with limited rights of state-created foster families); *Gibson v. Merced Cnty. Dep't of Human Res.*, 799 F.2d 582, 587 (9th Cir. 1986) (foster parent "knew that the arrangement was intended to be temporary and to result in [the child's] reunification with her natural mother" consistent with "an express goal of foster care in California"); Defs. Opp. 38–39 (citing same cases).

*Fourth*, contrary to Defendants' argument (Defs. Opp. 39), this Court has already recognized that the TVPRA creates a substantive interest in prompt release protected

---

liberty interests and the need for accurate placement decisions.

[6] Defendants try to discount case law extending the right to familial association beyond the parent-child relationship by pointing to differences in fact patterns and procedural postures. (Defs. Opp. 38.) None of these alleged differences, however, are meaningful. It remains undisputed that Plaintiffs have an interest in familial association extending beyond the nuclear family. (*See* Pls. MSJ 22.) Plaintiffs also have constitutional and statutory rights to be free from detention and to prompt release. (*Id*. at 20-24.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

6

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

by the Due Process Clause. (ECF No. 141 [Class Cert. Order] 14; *see* Pls. MSJ 22; Pls. Opp. 34–36.) Defendants' argument that the TVPRA's mandate is limited to "placement" decisions and not "release" decisions is also contradicted by the plain language of the statute.[7] (*See* Pls. Opp. 35–36; *see also Ramirez v. U.S. Immigr. & Customs Enf't*, 2020 WL 3604041, at \*74–76 (D.D.C. July 2, 2020) (explaining that "least restrictive setting" in the TVPRA includes "[p]lacement" with sponsors).)

*Finally*, this Court has likewise recognized that the FSA creates protected liberty interests in the right to expeditious release from detention and the right to family reunification. (*See* ECF No. 141 [Class Cert. Order] 14–15; Pls. Opp. 36–37.) Defendants' argument that the FSA does not explicitly set forth the procedural protections sought in this lawsuit (Defs. Opp. 39–40) conflates the substantive rights created by the FSA with the procedural protections required by the Constitution.

## B.   The Risk of Erroneous Deprivation is High

ORR's policies and procedures do not provide for oversight or sufficient safeguards against erroneous release decisions and unnecessarily prolonged detention and separation from family. Indeed, most of the procedures outlined in ORR's policies and Defendants' opposition consist of "internal evaluation and unilateral investigation" within ORR, which are insufficient to protect Class Members' interests. *See Beltran v. Cardall*, 222 F. Supp. 3d 476, 485–87 (E.D. Va. 2016) ("[D]ue process does not concern itself only with the degree to which one can trust the government to reach the right result on its own initiative; rather, due process is measured by the affected individual's opportunity to protect his or her own interests."). Thus, two courts have already found

---

[7] Defendants' assertion that the TVPRA requires placement with a "suitable family member" only for "child trafficking victims" misreads the statute. (Defs. Opp. 16.) The TVPRA requires that all children "be promptly placed in the least restrictive setting" and expects placement with "a suitable family member" or other "proposed custodian" when possible. 8 U.S.C. § 1232(c)(2)(A), (3)(A); *Flores v. Sessions*, 862 F.3d 863, 871 (9th Cir. 2017). The language quoted by Defendants simply provides an *additional* option for child trafficking victims without available sponsors through the Unaccompanied Refugee Minor Program. 8 U.S.C. § 1232(c)(2)(A).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

7

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

ORR's release process to violate due process. *See id.* at 485–89; *Santos*, 260 F. Supp. 3d at 614–15; *see also* Pls. MSJ 29–31.

*First*, ORR's reunification policies and procedures violate due process because they fail to provide (i) adequate notice and (ii) an opportunity to be heard. (Pls. MSJ 29–31.) Defendants do not dispute that Class Members do not receive written notice of a release denial except in the most limited of circumstances, nor do they offer any reason for limiting written notice to cases where "'the sole reason for denial of release is concern that the . . . child is a danger to himself/herself or the community.'" (Defs. Opp. 43–44; SUF ¶ 70.)[8] That case managers may meet with children in ORR custody "to discuss their cases" (Defs. Opp. 44) hardly amounts to the notice demanded by due process, which must include disclosure of "the evidence used to prove the Government's case" to enable "an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

Defendants also do not meaningfully dispute that "ORR does not provide children a hearing before a neutral factfinder before denying release." (RDF ¶ 74.) And "regular meetings between staff and sponsors" (Defs. Opp. 44), even if actually occurring, do not amount to a meaningful opportunity to be heard (for the sponsor or the child). Moreover, such "meetings" improperly place the burden on the sponsor to "change the agency's mind" or, if unable to do so, to "initiate court proceedings." *Beltran*, 222 F. Supp. 3d at 485.[9]

---

[8] It is undisputed that parents and legal guardians receive written notice of a denial (Defs. Opp. 43), but Defendants offer no reason for denying comparable notice to other custodians, including grandparents and siblings.

[9] Defendants' attempts to distinguish *Beltran*, which found ORR's reunification policies to violate due process, should be rejected. (*See* Defs. Opp. 44.) Like the parties in *Beltran*, no one here "has suggested that due process requires 'a live, trial-like proceeding.'" 222 F. Supp. 3d at 489. Defendants' repeated references to the length and supposed complexity of Plaintiffs' concurrently filed proposed order do not change this. Regardless, any argument related to the proposed order goes to the propriety of the requested remedy—not liability under the Due Process Clause.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

8

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

***Second***, ORR's failure to apply any clear standard for determining custodial fitness—much less a "clear and convincing" evidentiary standard—violates due process and fundamental fairness. (*See* Pls. MSJ 31–32.) Defendants' arguments to the contrary are unpersuasive. (*See* Defs. Opp. 44–47.) The length of the release section in ORR's Manual of Procedures ("MAP") says nothing of its substance, which only instructs case staff on the general categories of information to collect and consider, but not how to weigh information once collected. (*See* RDF ¶ 59 (Defendants unable to point to a single page in the MAP (out of the supposed 143 pages) addressing how to weigh information once collected).) And contrary to Defendants' argument, none of Plaintiffs' requested relief, including the application of clear decision-making standards, is inconsistent with the TVPRA or FSA. Rather, the requested relief is intended to ensure safe and prompt decision-making, as are the TVPRA and FSA. Moreover, Defendants cite no authority for Plaintiffs' supposed burden to prove that ORR's policy has resulted in "arbitrary, inconsistent, and shifting reasons for denial." (Defs. Opp. 46) Thus, any disputes concerning specific Class Members are immaterial to Plaintiffs' motion, which focuses on ORR's current policy. If anything, these disputes further highlight the need for adequate procedures to adjudicate the facts of individual cases.[10] (*See* Pls. MSJ 31–32.)

***Third***, Plaintiffs' motion offered numerous examples of children detained in ORR custody for significant periods of time (months and even years) despite having

---

[10] Defendants repeatedly—and mistakenly—rely on cases involving municipal liability under 42 U.S.C. § 1983 to argue that Plaintiffs have not shown "deliberate indifference" or "pervasive misconduct." (Defs. Opp. 13–15, 21, 46, 48, 59 (citing *Henry v. Cnty. of Shasta*, 132 F.3d 512 (9th Cir. 1997); *Spencer v. Knapheide Truck Equip. Co*., 183 F.3d 902 (8th Cir. 1999); *Ham v. Pennington Cnty. Bd. of Comm'rs*, 158 F. App'x 761 (8th Cir. 2005)).) This reflects a misunderstanding of Plaintiffs' claims, which allege procedural due process violations, not unconstitutional detention conditions. Moreover, the Supreme Court recognized limited municipal liability under § 1983 for reasons specific to that statute, including "serious questions of federalism." *City of Canton v. Harris*, 489 U.S. 378, 391–92 (1989); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978). Defendants' cited cases and the legal standards discussed therein have no application to this action, which involves neither § 1983 nor a municipal defendant.

Cooley LLP
Attorneys At Law
Los Angeles

9

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

available sponsors. (Pls. MSJ 33–34.) Defendants' suggestion that such egregious detention is sometimes the fault of proposed custodians is irrelevant. Transparent process is required precisely to assess the *particular* case for detaining an *individual* child. (Pls. Opp. 42–43.) There is simply no reliable way to test Defendants' contentions that release delays are attributable to sponsors because neither children nor sponsors are provided an opportunity to present their side of the story. Further, Defendants' focus on whether "foster parents [or] relative caregivers" have a right to a "fair hearing" to appeal "adverse placement decisions" is inapt. (Defs. Opp. 42.) The procedural protections at issue in this case belong to Class Members. Moreover, Defendants conveniently ignore the extensive procedural protections in place in child welfare systems, as set forth in the Expert Report of Judge Leonard Edwards. (*See* Ex. 53.) These protections are designed to avoid erroneous placement and include safeguards such as a "neutral, independent" decision-maker who is "constrained by legal standards" as well as involvement of child "advocates, including attorneys." (*Id.* at 1338.)

**Finally**, Defendants fundamentally misrepresent state child welfare practices to the extent they suggest that "permanency hearings" are the only process afforded to children in those systems. (*See* Defs. Opp. 49–50.) In California, for example, initial custody hearings take place within three days. Cal. Welf. & Inst. Code §§ 313, 315.[11]

## C. Plaintiffs' Liberty Interests Far Outweigh the Government's Interest

Plaintiffs' and Defendants' shared interest in ORR making the right release decisions does not in any way diminish Plaintiffs' interest in meaningfully participating in decisions impacting their lives and liberty. (*See* Pls. Opp. 44–45.) Further, that Defendants have an interest in complying with their statutory obligations (Defs. Opp. 51–52) is neither disputed nor inconsistent with Plaintiffs' requested relief. Defendants'

---

[11] Contrary to Defendants' argument (Defs. Opp. 48), Plaintiffs do not argue that due process demands ***government-funded*** counsel. (*See* Section VI *infra*.) And Plaintiffs' request for interpreters to aid in challenging release decisions is not addressed by ORR's Policy Guide.

Cooley LLP
Attorneys At Law
Los Angeles

10

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

hyperbolic forecast that relief would require "an evidentiary hearing for every potential sponsor" (*id.* at 50) ignores the relief actually requested, which limits hearings to cases in which a sponsor is denied or a child is still in ORR custody 30 days after submission of a family reunification packet. (*See* ECF No. 271-3 at 3–4.)[12] Finally, Defendants' argument concerning the "substantial" "financial burden on ORR in staffing more hearings" (ECF No. 263-1 ("Defs. MSJ") 48) is not supported by the evidence cited and, in fact, is directly refuted by Defendants' sworn admissions. (*See* Pls. Opp. 45.)

## V.   ORR'S STEP-UP POLICIES AND PROCEDURES FAIL TO AFFORD ADEQUATE PROCEDURAL PROTECTIONS

Defendants concede that children in ORR detention have a constitutionally protected liberty interest when they are stepped up to restrictive placements. (*See* Defs. MSJ 19, 21–24.) Notwithstanding Defendants' arguments to the contrary (Defs. Opp. 11–17), the conditions of ORR's restrictive placements and the prolonged duration of children's confinements serve to heighten their liberty interest and underscore the need for procedural protections. The only issue for this Court to decide is whether Defendants' unilateral processes sufficiently safeguard Plaintiffs' substantial liberty interest. As Plaintiffs have shown, they decidedly do not.

### A.   Plaintiffs' Liberty Interest Is Substantial

#### 1.   Plaintiffs' liberty interest is not diminished because they are immigrant children.

Plaintiffs' interest in being free from restrictive detention is not diminished by their status as immigrant children.[13] (Pls. Opp. 12–15.) ***First,*** the procedural protections

---

[12] Defendants' singular focus on the need for a hearing even where the sponsor has not submitted "a complete application" (Defs. Opp. 51) ignores that the custodial class includes only minors "whom ORR is refusing or will refuse to release to parents or other available custodians within 30 days of the proposed custodian's submission of a ***complete*** family reunification packet." (ECF No. 141 at 27 (emphasis added).)

[13] Defendants again mischaracterize the limited holding of *Reno v. Flores.* (Defs. Opp. 11.) This argument should be rejected. (*See supra* at 4–5; *see also* Pls. Opp. 12.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

11

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

required in the juvenile justice context are informative here. (Defs. Opp 11–12.)
Contrary to Defendants' misrepresentations, the right to due process and a custodial
hearing attaches the moment the government seeks to interfere with a child's liberty
interest and is not dependent on a final adjudication of delinquency. (Ex. 54 [Heldman
Expert Rep.] at 1351–52, 1356–57.)[14] *Second,* children do not hold the keys to their
own freedom. Obtaining legal status can take years, and voluntary departure is no option
for many children fleeing grave danger in their home countries. (Pls. Opp. 13–14.)
Moreover, the ability to secure release does not define the liberty interest or protections
required; rather, the threatened deprivation itself dictates the process required. *See
Mathews,* 424 U.S. at 334. *Third,* secure, staff-secure, therapeutic staff-secure,
therapeutic group homes, out-of-network placements ("OONs"), and residential
treatment centers ("RTCs") constitute restrictive detention mandating procedural
protections prior to and during confinement. (*See* Pls. MSJ 10–11, 38–39; Pls. Opp. 14–
17.) That some placements aim to provide greater supervision or more services (Defs.
Opp. 12–13), neither mitigates their restrictiveness nor diminishes Plaintiffs' interest in
freedom from restrictive detention.[15] *Finally,* Defendants do not dispute the TVPRA
affords the right to be free from restrictive detention and Plaintiffs' statutory and

---

[14] *See also Boumediene v. Bush,* 553 U.S. 723, 783 (2008) ("Where a person is detained
by executive order, rather than, say, after being tried and convicted in a court, the need
for collateral review is most pressing. A criminal conviction in the usual course occurs
after a judicial hearing before a tribunal disinterested in the outcome and committed to
procedures designed to ensure its own independence. These dynamics are not inherent
in executive detention orders or executive review procedures.").

[15] Class Members are entitled to procedural protections before being stepped up to out-
of-network RTCs, therapeutic staff secure, and therapeutic group homes. The step-up
class definition does not reference specific ORR facilities but rather includes all
children "who are or will be placed in a secure facility, medium-secure facility, or
RTC." (ECF No. 141 at 27.) Therapeutic staff-secure and therapeutic group homes are
more restrictive than shelters and are thus medium-secure facilities. (SUF ¶¶ 122, 125.)
Out-of-network facilities are often RTCs (SUF ¶ 121) and the class definition does not
distinguish between in-network and out-of-network RTCs.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

12

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

contractual rights underlying their due process claims are well-established. (ECF No. 141 [Class Cert. Order] 13–15; Pls. MSJ 22–24; Pls. Opp. 17–19.)[16]

## 2. Restrictive placements harm children.

As Plaintiffs have demonstrated, detention is inherently inimical to children's well-being (SUF ¶¶ 1–9) and the harm suffered by children in detention is exacerbated by the prolonged detention that often follows step-up to restrictive placements. (*Id.*; Pls. MSJ 8–12, 38–51.) Defendants' arguments to the contrary should be rejected.

*First,* Defendants argue that the harms of restrictive placements are "unsupported by the record" and are not a "matter of policy or practice." (Defs. Opp. 13–14). Children's sworn declarations show otherwise and, in addition to the inherent liberty restrictions of restrictive placements, Defendants concede that children in these placements have been forcibly medicated, pepper sprayed, and forced to undergo behavioral modification programs.[17] (RDF ¶¶ 130, 133–135.)

*Second*, once children are placed in restrictive settings, they face obstacles to step-down even after ORR unilaterally determines that less restrictive placement is appropriate. (*See, e.g.*, Pls. MSJ 39 (citing SUF ¶¶ 155, 218–19).)[18] Defendants try to

---

[16] Defendants' only new assertion with regard to the TVPRA is that "a suitable family member" relates to "placement of child trafficking victims" and is "not a condition for restrictive placement decisions in general." (Defs. Opp. 16.) As discussed above, that interpretation is incorrect. In any event, this does nothing to detract from the right to be free from restrictive detention afforded by the TVPRA. (Pls. Opp. 17–18.)

[17] Defendants concede that they subject children to sex offender treatment programs absent any adjudication of guilt. (Defs. Opp. 13 ("only children who have been ***charged*** with a sex offense undergo such treatment") (emphasis added); RDF ¶ 135 (evidence shows that ORR does not require a conviction of a sex offense prior to subjecting a child to a sex offender treatment program).) Requiring such treatment without an adjudication of guilt or even an adversarial hearing is wildly contrary to Ninth Circuit jurisprudence. *See Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997).

[18] It is also undisputed that children are ineligible for step-down directly to long-term foster care due to ORR's policies (*see* RDF ¶ 139), and that ORR is generally unable to place children directly into URM programs after having been in a restrictive setting (*see* RDF ¶¶ 148–149.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

13

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1    avoid this issue by placing blame on the local programs with which they contract—
2    stating that programs are often "hesitan[t]" to accept children with mental health or
3    behavior needs. (Defs. Opp. 15.) Such an argument does not address the fact that
4    children are detained in restrictive settings impacting their liberty, and ORR cannot shift
5    its constitutional and statutory responsibilities to ensure prompt and least restrictive
6    placement and periodic review of placements to its local grantees.

7    **Finally**, Defendants try to justify stepped-up children's prolonged detention by
8    arguing that any behavior leading to restrictive placement makes it less likely that
9    family members will offer to sponsor the child. (Defs. Opp. 14.) Yet Defendants offer
10   no evidence in support of this point, which even if true, would lead to a vicious cycle
11   of detention because restrictive placement itself is often the "source of the child's
12   distress and dysregulation." (Pls. MSJ 11.)

13   **B.      ORR's Current Policies and Procedures Are Wholly Insufficient to**
14   **Guard Against Erroneous Restrictive Placements**

15   The second *Mathews* factor weighs strongly in Plaintiffs' favor. (Pls. MSJ 38–
16   51; Pls. Opp. 20–32.) As just one example of how Defendants' policies and procedures
17   have failed children, 13-year-old Jaime D. spent five weeks in jail for a story he made
18   up because he was scared and because ORR affords no meaningful procedural
19   protections as part of its unilateral decision-making. (*See* Pls. MSJ 39.) Defendants'
20   explanation—that it took weeks to "corroborate his recantation" (Defs. Opp. 18–19)—
21   underscores the need for full and transparent hearings to verify the grounds for step-up.

22   **1.      ORR's policies and procedures fail to provide fundamental**
23   **procedural protections.**

24   **First,** Plaintiffs have a constitutional right to notice in advance of step-up (Pls.
25   MSJ 40–41) and the after-the-fact notice of placement ("NOP") is insufficient to protect
26   against erroneous step-up. (Pls. MSJ 41.) Defendants' argument that a NOP provides
27   sufficient opportunity to respond (Defs. Opp. 22) has already been thoroughly
28   discounted. (Pls. Opp. 21–23, 28–29.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

14

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1    **Second,** notice is meaningless without an opportunity to be heard. (Pls. MSJ 43–

2    44.) Contrary to Defendants' assertion (Defs. Opp. 22–23), Plaintiffs do not rely on *In

3    re Gault* and *Parham* for the proposition that a pre-deprivation hearing is required. (*See*

4    Pls. MSJ 42 (citing *Zinermon v. Burch*, 494 U.S. 113, 127–28 (1990).)[19] Nonetheless,

5    *In re Gault* supports Plaintiffs' position regarding process required before secure

6    juvenile detention. 387 U.S. 1, 33–34 (1967) (the notice requirement assumes juveniles

7    will be afforded a fair hearing prior to deprivation of their liberty). And in the civil

8    commitment context, *Parham* requires at a minimum an ***independent examination and

9    interview with the child by an admissions team***, which would give the child an

10   ***opportunity to be heard***. *Parham v. J.R.*, 442 U.S. 584, 614–17 (1979) (approving

11   procedures which provided for an independent examination and interview, *in addition

12   to* a recommendation from a referring clinical psychologist).[20] Plaintiffs have also

13   addressed how ORR's post-deprivation opportunities to be heard are constitutionally

14   inadequate. (*See* Pls. MSJ 43–44; Pls. Opp. 21–23.)

15   **Finally,** once a child is stepped up to restrictive detention, due process demands

16   that they be able to meaningfully participate in the 30-day review process that

17   determines whether they will continue to endure restrictive conditions and treatment,

18   and all the attendant harms associated therewith. (Pls. MSJ 48–49; Pls. Opp. 27–28.)

19   ORR's purported "periodic reviews" (Defs. Opp. 29) are insufficient because they are

20   internal, unilateral, and bereft of oversight. Furthermore, they are inconsistently

21   implemented and, even when held, do not comport with due process. (Pls. MSJ 41–42.)

22

23   [19] Defendants are likewise incorrect that Plaintiffs asserted a right to a pre-deprivation
     hearing for the first time in their motion. (*Compare* Defs. Opp. 22, *with* ECF No. 81
24   [FAC] ¶ 122 (alleging due process requires "meaningful notice and opportunity to be
     heard before" restrictive placement); *see also* ECF No. 141 [Class Cert. Order] at 27
25   (step up class includes children "who are *or will be* placed in a secure facility, medium-
     secure facility, or RTC") (emphasis added).)
26
     [20] Defendants' assertions that pre-deprivation hearings are not feasible (Defs. MSJ 23)
27   are speculative at best. (*See* Pls. Opp. 29 n.23.)
28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

15

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

### 2.   ORR's policies and procedures are otherwise constitutionally inadequate.

The uncontroverted evidence shows that ORR's policies and procedures regarding step-up and step-down lack clarity, uniformity, and certainty. (*See* Defs. Opp. 24; *see also* Pls. MSJ 44–46.) *First*, internal review processes do not reduce the risk of erroneous deprivation, despite Defendants' assertions to the contrary. (Defs. Opp. 2–3; Defs. MSJ 18, 25–31; Pls. Opp. 27–29; RDF ¶ 199, 201–202, 204.)[21] For example, the 90-day FFS supervisor consultation is meaningless where the FFS still has the ultimate decision-making power on all in-network placements and Defendants offer no evidence that the consultation is anything more than a rubber stamp. (*See* Ex. 18 [De La Cruz Dep. Tr.] 59:4–60:21; *see also* RDF ¶ 167.)

*Second*, ORR policy criteria for placement into some restrictive settings does not change the fact that ORR employs no evidentiary standard on how to assess that criteria. (RDF ¶ 177.)[22] And no standard whatsoever is provided to guide decision makers on how to assess and weigh such criteria. (*See* RDF ¶¶ 150–151, 176, 178; *see also* Ex. 1 [ORR Policy Guide] §§ 1.2.4, 1.4.6.)

*Third*, Defendants concede that FFS—the ultimate decision-makers for placement decisions—are not required to meet with children before making placement decisions. (Defs. Opp. 26.) This fact alone illustrates the high risk of erroneous deprivation of liberty—where the final authority has unfettered discretion to not only make the final decision but also to decide whether or not to even speak to the child whose future he is determining. (*See* Pls. MSJ 45–46.)

---

[21]   Similarly, ORR section 1.4.7 is an *appeals* process limited to secure and RTC placements and is not an adversarial process commensurate with the child's deprivation.

[22]   Defendants concede that they provide no evidentiary standard for restrictive placement decisions. (Defs. Opp. 24–25.) Further, Defendants' argument that the FSA itself articulates no "evidentiary standard" for placement decisions (Defs. Opp. 25), conflates Plaintiffs' private interests vested by the FSA with the procedural rights necessary to protect those rights. (*See* Pls. Opp. 18–19.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

16

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

***Finally***, Class Members' currently limited recourse—to a *Flores* bond hearing or by filing a habeas petition—does not reduce the risk of erroneous deprivation and is insufficient to absolve ORR of affording children due process under the law. *See Padilla,* 953 F.3d. at 1146; *supra* Section III.A.

      **C.**    **Plaintiffs' Liberty Interest Outweighs The Government's Interest**

Defendants' purported interests are insignificant in comparison to a child's right to freedom from physical restraint. Defendants claim they have a compelling interest in the "sound allocation of resources." (Defs. Opp. 32.) However, "the cost of protecting a constitutional right cannot justify its total denial." *Bounds v. Smith,* 430 U.S. 817, 825 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). Furthermore, courts generally "will not exalt expense over fundamental rights to liberty." *Padilla v. U.S. Immigr. & Customs Enf't,* 379 F. Supp. 3d 1170, 1180 (W.D. Wash. 2019), *vacated in part on other grounds,* 953 F.3d 1134 (9th Cir. 2020).

In any event, the uncontroverted evidence shows that ORR steps up a relatively "small percentage" of children. (Defs. Opp. 18.) Thus, contrary to what Defendants assert, the basic procedural due process protections that Plaintiffs are requesting do not "exceed any semblance of proportionality." (*Id.* at 33.) Indeed, such protections are commonly found throughout state and federal statutes and juvenile justice systems.[23] (*See* Ex. 54 [Heldman Expert Rep.] 1349–50.)

## VI.    THE UNCONTROVERTED EVIDENCE ESTABLISHES THAT ORR FAILS TO ENSURE ADEQUATE LEGAL REPRESENTATION

    **A.**    **ORR Bars Legal Services Providers from Using Appropriated Funds to Represent Children in Legal Proceedings**

Defendants misrepresent Plaintiffs' claim to the extent they argue the TVPRA does not provide for government-funded counsel. (Defs. Opp. 52–53.) Rather, Plaintiffs

---

[23] Defendants' attempts to characterize Plaintiffs' requested relief as placing "extreme burdens" on ORR (Defs. Opp. 33) is particularly suspect given ORR's recent pilot program, ostensibly implemented to provide more process to children in restrictive placements. (*See id.* at 27.)

Cooley LLP
Attorneys At Law
Los Angeles

17

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

contend that Congress separately (1) *elected* to fund legal representation for children in its custody; *and* (2) directed ORR to "ensure, to the greatest extent practicable" that children "have counsel to represent them in legal proceedings or matters and protect them from mistreatment," 8 U.S.C. § 1232(c)(5). Thus, ORR violates the TVPRA by precluding legal service providers from using appropriated funds to represent children in "legal proceedings or matters" related to release, placement, and medication decisions.

Defendants' retort—that "requiring ORR to allow legal service providers to use ORR funds . . . is no different than requiring ORR to pay for that representation directly" (Defs. Opp. 53)—fails to appreciate the distinction between (1) *ORR* denying children legal representation Congress has said they should have; and (2) Congress refusing to appropriate funds for such representation. Defendants offer *no* authority for claiming legal equivalence between the two.

Defendants further insist that this Court must defer to the agency's interpretation of "legal proceedings or matters," as used in the TVPRA. Plaintiffs have previously debunked this argument, pointing out that *Chevron* deference is inapposite because ORR's interpretation is at odds with the plain text of the statute and ORR has never memorialized its pinched interpretation of "legal matters or proceedings" in regulation or otherwise explained its reasons for denying children counsel to protect them from abusive detention or medicating. (Pls. Opp. 54.) Defendants now remonstrate that they have "issued regulations, *see* 84 Fed. Reg. 44392 (Aug. 23, 2019), which, though enjoined by this Court, represent the agency's judgment on the meaning of the statute." (Defs. Opp. 54 (citing *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984)).) This claim does not withstand the most casual scrutiny. Indeed, the phrase "legal proceedings or matters" appears nowhere in the 144 pages of commentary and regulations. Neither the commentary nor regulations set out an analysis or rationale for excising ORR's release, placement or medication decisions from § 1232(c)(5). Nowhere in Defendants' commentary or regulations do they attempt to define "mistreatment" so as to exclude

Cooley LLP
Attorneys At Law
Los Angeles

18

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-CV-05741 DMG PLA

ORR's unnecessarily detaining or drugging children, all of which are quite plainly "mistreatment" under any reasonable understanding of the word.

Defendants fail to offer any coherent reason this Court should turn a blind eye to Congress's mandate directing ORR to ensure children have counsel to represent them in legal matters *and* appropriating funds so that ORR can do so.

## B. Plaintiffs Adequately Alleged that ORR Blocks Counsel from Representing Class Members

Defendants also contend that Plaintiffs "reframe[d]" for "the first time" on summary judgment their claim that ORR unlawfully blocks legal services providers from using federal funds to represent plaintiff children aggrieved by ORR's release, placement and medication decisions. (Defs. Opp. 56.) They assert the same with respect to the myriad ways in which ORR hobbles lawyers' ability to advocate on children's behalf. (*Id.*) Defendants are incorrect.

Plaintiffs' operative pleading alleges, *inter alia*, that "ORR blocks lawyers from representing detained children with respect to placement, non-consensual administration of psychotropic medications, or release to available custodians notwithstanding that Congress has allocated funds specifically to provide such lawyers to represent children who are or have been in ORR custody in 'legal matters,' including issues related to release and least-restrictive placement." (ECF No. 81 [FAC] ¶ 4d.) [24] This alone sufficed to give Defendants fair notice of Plaintiffs' claim. [25]

To the extent Defendants desired specific details regarding Plaintiffs' claims,

---

[24] Of course, Plaintiffs' complaint alleges substantially more. (*E.g.*, ECF No. 81 [FAC] ¶ 150 ("Without *meaningful* access to counsel, Plaintiffs and those similarly situated are denied a fair chance of succeeding in legal challenges to ORR's custody, release, placement and medication decisions . . . .") (emphasis added); *see also id.*, ¶¶ 147–148.)

[25] Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only contain a "short and plain statement of the claim" and not "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If Defendants believed the pleading failed to meet that standard, Defendants were free to move for an order requiring a more definite statement of "the details desired" in the complaint. *See* Fed. R. Civ. P. 12(e).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

19

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

they were free to "obtain such detail readily through interrogatories or early depositions." *Bautista v. L.A. Cnty.*, 216 F.3d 837, 843 (9th Cir. 2000) (Reinhardt, J., concurring). The parties engaged in extensive written discovery, and Defendants noticed depositions or cross-examined five legal services providers almost exclusively with respect to Plaintiffs' counsel claim. (*See, e.g.*, DX-38; DX-39; DX-40; Ex. 30; Ex. 29.) Plaintiffs also examined, and Defendants cross-examined, *numerous* ORR staff and contractors regarding their communications and interactions with children's lawyers. (*E.g.*, Ex. 25 [Biswas Depo. Tr.] 233:13–20 (discussing ability of counsel to participate in step-up).)[26] Neither party confined their examination to whether ORR terminated or threatened to terminate funding in retaliation for lawyers representing children opposed to the agency's release, placement, or medication decisions; all liberally questioned about facilities' refusal to speak with children's lawyers and the like. (*E.g.*, Ex. 30 [Ortiz Depo. Tr.] 139:4–16; Ex. 29 [Nathan Depo. Tr.] 129:18–20.)

Finally, Defendants' cross-motion and the instant opposition demonstrate they are fully prepared to litigate the issues raised in Plaintiffs' motion. Their claim of surprise is disingenuous and no reason to deny judgment for Plaintiffs. *See Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) (no undue prejudice when defendant "fully prepared to litigate" new issues raised in amended complaint).[27]

## C. ORR Obstructs Counsel's Ability to Represent Children "to the Greatest Extent Practicable"

Defendants argue that "none of Plaintiffs' new allegations establishes that ORR's legal representation procedures violate due process, any statute, or the *Flores*

---

[26] Defendants appear to believe that Plaintiffs' "blocking" claim covers only ORR's termination of Vera funding to legal services providers. Not so. As discussed *infra*, terminating legal services providers' funding is by no means the only way ORR may unlawfully block children's legal representation. (*See infra* Section VI.C.)

[27] Even if Plaintiffs failed to raise the claim in the pleadings, "they raised it in their motion for summary judgment" and should be "allowed to incorporate it by amendment under [Rule] 15(b)." *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

20

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1   Settlement." (Defs. Opp. 57.) The uncontroverted facts—not mere allegations—
2   establish that ORR fails to ensure that plaintiff children have counsel to represent them
3   with respect to release, placement, or medication decisions.[28]

4       Defendants argue that "the ORR Guide requires case managers to coordinate
5   communications with all stakeholders throughout the time UACs are in ORR care,
6   including the UAC and UAC's attorney (if the UAC has one)." (Defs. Opp. 57 (citing
7   ORR Guide § 2.3.2).) It does not. Rather, ORR Guide § 2.3.2 provides that a case
8   manager "informs other stakeholders of the progress of a child's case" and that
9   "stakeholders *may* include local legal service providers and attorneys of record," among
10  others. (Ex. 1 at 39–40 (emphasis added).)

11      Section 2.3.2 ***does not require*** case managers to do anything. *Flores v. Barr*, 407
12  F. Supp. 3d 909, 923–24 (C.D. Cal. 2019) (descriptive statements about what ORR does
13  do not create mandatory duties). It certainly does *not* require that case managers even
14  include children's lawyers among the "stakeholders" they purportedly "inform" about
15  a child's case, much less disclose the evidence relied upon to deny release or transfer a
16  child to a restrictive placement. Nor does ORR's Policy Guide require case managers
17  to allow counsel to advocate for their clients through the submission of evidence or
18  otherwise. The Policy Guide is consistent with the uncontroverted evidence that ORR
19  leaves case managers to decide when and if they will communicate with children's
20  counsel. (*See, e.g.,* DX-38 [Sualog Depo. Tr.] 101:14–17 (ORR Deputy Director
21  testifies that ORR "is not making [] determinations" as to "whether a lawyer gets to
22  speak with a case manager"); *id.* at 102:5–8 (Sualog "do[es] not know any
23  consequences" if a case manager refuses to speak with a lawyer).)

24      Moreover, it is undisputed that FFS—not case managers—decide whether

26  [28] Defendants reprise their argument that the TVPRA's legal representation mandate
27  and congressional appropriation in furtherance thereof extend only to legal
    representation during removal or "immigration" proceedings. As Plaintiffs have
28  explained, this argument fails. (*See* Pls. Opp. 51–53.)

children will be detained in lieu of release to parents or other family and whether they will be consigned to juvenile jails or psychiatric facilities. (Joint Stip. ¶ 7.) FFS are free to veto a case manager's recommendation regarding release or placement on grounds and evidence they need not disclose to children's counsel. (*See, e.g.*, DX-2 [Biswas 30(b)(6) Depo. Tr.] 284:8–13; DX-28 [Smith Depo Tr.] 46:22–47:3.)[29]

Finally, whether or not children are constitutionally entitled to a hearing when ORR consigns them to psychiatric facilities or deems their parents unfit, Congress has directed ORR to "ensure, to the greatest extent practicable" that children have counsel to represent them in "legal proceedings or matters" and protect them from "mistreatment." 8 U.S.C. § 1232(c)(5). Thus, even were a hearing not constitutionally required (it is), ORR's counsel-blocking stratagems would remain independent violations of the TVPRA. Over five decades ago, the Supreme Court unequivocally declared that inherent in any right to counsel is the right to *effective assistance* of counsel. *Kent v. United States*, 383 U.S. 541, 561 (1966). As the Court put it, a right to counsel is "meaningless—an illusion, a mockery—unless counsel is given an opportunity to function." *Id.*

In sum, the TVPRA does not merely enjoin ORR from defunding or otherwise bludgeoning legal services providers into complicity with its release, step-up, and medication decisions—it places ORR under an affirmative duty to do the precise opposite: that is, to "ensure, to the greatest extent practicable" that children have counsel to advocate for them before actual decision-makers.

---

[29] Defendants misrepresent Toby Biswas's declaration in contending that ORR policy "requires all evidence and information that the agency relies upon in making its decisions to be provided to attorneys of record upon demand." (Defs. Opp. 58 (citing DX-10 [Biswas Decl.] ¶¶ 48, 51, 59).) Paragraph 48 addresses only the "30-day review" of restrictive placement; paragraph 51 describes only the "notice of placement" procedure; and paragraph 59 describes the placement review panel. None of the cited paragraphs makes any mention of attorney access to evidence relied upon by ORR.

Cooley LLP
Attorneys At Law
Los Angeles

22

Plaintiffs' Reply ISO
Partial Summary Judgment
Case No. 2:18-cv-05741 DMG PLA

## VII.   PLAINTIFFS ARE ENTITLED TO THE RELIEF REQUESTED

Plaintiffs are entitled to a permanent injunction because (1) they are suffering irreparable injury in Defendants' custody; (2) this harm cannot be remedied by monetary damages; (3) the balance of hardships weighs strongly in Plaintiffs' favor; and (4) the public interest supports an injunction safeguarding children's rights. (*See* Pls. MSJ 58–59; *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (outlining four-factor test for injunctive relief).)

The Court has "'considerable discretion' in crafting suitable equitable relief," which must "provide complete relief to the plaintiffs." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1282 (9th Cir. 2020). Here, complete relief requires the effective assistance of counsel, adequate notice, and a prompt and meaningful opportunity to be heard on important decisions regarding release and restrictive placement.[30]

Defendants do not contest that prolonged detention and restrictive detention conditions constitute irreparable harm; they argue instead that class-wide relief is improper because "the overwhelming majority of class members" do not suffer this harm. (Defs. Opp. 59.) But Defendants' argument ignores that the step-up and custodial vetting class definitions are limited to children who "are or will be placed" in restrictive facilities or who are denied timely release following the submission of a complete

---

[30] Reporting and monitoring provisions are necessary to ensure compliance and for complete relief. *See East Bay*, 950 F.3d at 1282; *cf. Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 825 (9th Cir. 2018) (order requiring "periodic disclosures with the court so that plaintiffs would have the option of seeking later injunctive relief if necessary"); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen,* 828 F.2d 536, 543 (9th Cir. 1987) (special master may be appointed due to "complexity of compliance" even without "a finding of earlier noncompliance"). Further, Defendants fail to explain how they would be burdened by class counsel's attendance at legally required hearings. (*See* Defs. Opp. 59.) Defendants' reliance on *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1226 (E.D. Cal. 2009), is unavailing. The district court denied a preliminary injunction in that case because it found "very little chance of success on the merits" and "minimal probability of . . . irreparable harm," not because plaintiffs were seeking a detailed injunction. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

23

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

family reunification packet. (*See* ECF No. 141 [Class Cert. Order] 27.) In other words, that some children in ORR custody are never stepped up or are timely released in no way diminishes the harm suffered by Class Members who *are* stepped up or who *do* endure protracted detention because ORR deems their parents or other custodians unfit. Defendants have no basis to complain about an injunction to the extent it requires nothing of ORR with respect to children whom it releases promptly and never steps up.[31] *See, e.g.*, *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("The Defendants cannot be harmed by an order enjoining an action they will not take.").

Moreover, all children in the custodial vetting, step-up, and legal representation classes suffer irreparable "procedural harm" due to "the absence of meaningful procedures to safeguard" their rights. *Franco-Gonzalez v. Holder*, 2013 WL 3674492, at *14–16 (C.D. Cal. Apr. 23, 2013); *see also* Fed. R. Civ. P. 23(b)(2) ("relief is appropriate respecting the class as a whole" when "the party opposing the class has acted or refused to act on grounds that apply generally to the class").[32]

Further, as has been shown, the balance of equities and public interest favor an injunction. The hardship to Plaintiffs outweighs any burden on Defendants. (*See supra* at pp. 7–10, 14–17; Pls. Opp. 32–33, 44–45; *Padilla*, 953 F.3d at 1147; *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1143 (9th Cir. 2018).) And the public interest favors "protect[ing] the welfare of children," *Prince v. Massachusetts*, 321 U.S. 158, 165

---

[31] Plaintiffs and Defendants agree that a small proportion of the children in ORR custody are stepped up and/or denied release to proposed sponsors. (*See e.g.*, Ex. 57 [Dr. Ryo Decl.] at 1398–99.) Nonetheless, over time, the number of children impacted by ORR's unconstitutional policies and procedures is substantial.

[32] Because Plaintiffs challenge ORR's policies and procedures, Defendants' focus on the specific injuries of class representatives is misplaced. (*See, e.g.*, Defs. Opp. 36 (arguing that neither custodial vetting class representative sought release to a parent).) All that is required is "that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

24

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

1  (1944), not to mention remedying violations of constitutional and statutory rights, *see*

2  *East Bay*, 950 F.3d at 1280–81; *Melendres*, 695 F.3d at 1002.

3       Finally, Defendants' repeated assertion that Plaintiffs are limited to the

4  procedural remedies set forth in the complaint and that any other relief is "*per se*"

5  overbroad is wholly unfounded. (*E.g.*, Defs. Opp. 60; *see* Pls. Opp. 30–31.) The law is

6  clear that a "final judgment should grant the relief to which each party is entitled, even

7  if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *see also*

8  *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016); *Z Channel Ltd.*

9  *Partnership v. Home Box Office*, 931 F.2d 1338, 1341 (9th Cir. 1991).[33] Thus, cases

10  addressing inadequately pled **claims** are inapposite. (*See* Pls. Opp. at 31; *cf. Pac.*

11  *Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636–37 (9th Cir. 2015);

12  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled by Lacey Maricopa Cty.*,

13  693 F.3d 896 (9th Cir. 2012).) Nor are Plaintiffs' remedies limited by the class

14  definition. (*See, e.g.*, Pls. Opp. 31–32; Defs. Opp. 19–20.) A "class certification hearing

15  is not a dress rehearsal of the trial on the merits (let alone a dress rehearsal of the remedy

16  proceedings)." *Parsons*, 754 F.3d at 689 n.35. A class definition may limit who is

17  entitled to relief, but it does not determine what relief is available. *See Al Otro Lado,*

18  *Inc. v. McAleenan*, 423 F. Supp. 3d 848, 878 (S.D. Cal. 2019).

19  **VIII.  CONCLUSION**

20       For the foregoing reasons, the Court should grant Plaintiffs' motion for partial

21  summary judgment and deny Defendants' cross-motion.

22

23

24

25

26  [33] Plaintiffs' pleading is nevertheless replete with requested procedural remedies and, in any event, also requested "such further relief as the Court deems just and proper."

27  (ECF No. 81 [FAC] ¶ 7; *see Hellerstedt*, 136 S. Ct. at 2307 (district court properly granted facial relief where complaint requested "as-applied relief" and "such other and

28  further relief as the Court may deem just, proper, and equitable")).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

25

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA

Dated:  November 20, 2020                COOLEY LLP


                                        /s/ Summer J. Wynn
                                        _____
                                        Summer J. Wynn (240005)
                                        Attorneys for Plaintiffs
                                        Email: swynn@cooley.com

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

26

PLAINTIFFS' REPLY ISO
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:18-CV-05741 DMG PLA