BRIAN BOYNTON
Principal Deputy Assistant Attorney General
ERNESTO H. MOLINA, JR. (181304)
Deputy Director
BENJAMIN MARK MOSS
Senior Litigation Counsel
NANCY K. CANTER (263198)
ANTHONY J. MESSURI
JONATHAN K. ROSS
Trial Attorneys
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-9344
Ernesto.H.Molina@usdoj.gov
Counsel for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lucas R., *et. al.*,<br><br>            *Plaintiffs*,<br><br>       v.<br><br>Alex M. Azar,<br>Secretary of U.S. Dep't of Health and<br>Human Services, *et al.*,<br><br>            *Defendants*. | Case No.: 18-cv-05741-DMG-PLA<br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION REGARDING ERRONEOUS STEP-UPS PURSUANT TO THE COURT'S DECEMBER 22, 2020 ORDER**<br><br><br>Honorable Dolly M. Gee<br>United States District Judge |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................1

ARGUMENT .................................................................................................................2

     1.    Plaintiffs' Supplemental Submission Presents Arguments  Not Permitted by the Court's December 22, 2020 Order ...........................2

     2.    Plaintiffs' Supplemental Submission Raises Arguments which are Not Properly Before the Court .....................................................10

     3.    Plaintiffs' Purported Examples of "Incidents Where a Stepped-Up Minor Was Incorrectly Found to be a Danger to Self-or Others" After July 30, 2018 are Not Supported by the Record .........13

CONCLUSION.............................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*McMichael v. Napa Cnty.*,
   709 F.2d 1268 (9th Cir. 1983) ........................................................... 3

*McSherry v. City of Long Beach*,
   584 F.3d 1129 (9th Cir. 2009) ........................................................... 8

*Sitelock LLC v. GoDaddy.com LLC*,
   2020 WL 6135189 (D. Az. Oct. 19, 2020) ...................................... 10

*Ward v. Clark Cty.*,
   285 F. App'x 412 (9th Cir. 2008) ..................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**[1]

Plaintiffs' January 8, 2021 supplemental submission does not show "incidents where a stepped-up minor was incorrectly found to be a danger to self or others that occurred after the Court's" July 30, 2018 *Flores* order (*see* ECF No. 320), nor does it show any basis to rule in Plaintiffs' favor.  Instead, the bulk of Plaintiffs' supplemental submission presents arguments beyond the scope of the Court's December 22, 2020 Order.  For instance, Plaintiffs allege that ORR failed to adhere to ORR policy for a variety of potential reasons (including ministerial reasons).  Not only are these allegations frequently based on a misunderstanding of the evidence, but they are not what the Court ordered.   Plaintiffs also acknowledge the insufficiency of their own evidence, contending that "limited evidence exists regarding whether a child is or was erroneously placed."  (ECF No. 329 at 1.) Plaintiffs' failure to adduce evidence of widespread erroneous placements, even after voluminous, discovery, shows that Plaintiffs cannot carry their burden of proof. Plaintiffs' failure to support their claims does not somehow show that "limited evidence exists."  The evidence exists—and shows that the overwhelming majority of step-ups are appropriate, and ORR provides a variety of mechanisms for children to challenge ORR's step-up decisions, including step-up hearings and procedures, and notices.  Finally, Plaintiffs identify two minors who they contend were stepped up after having been incorrectly found to be a danger to self or others after the July 30, 2018 *Flores* order, but these claims are not supported by the record.  Plaintiffs' supplemental submission fails to show any basis to rule in Plaintiffs' favor.

---

[1] Under the Court's January 14, 2021 Order (ECF No. 337), Defendants respectfully respond to Plaintiffs' January 8, 2020 Supplemental Submission (ECF No. 329) and acknowledge the Court's guidance concerning the timing of their request for leave to file this response.  (ECF No. 337.)  Should the need arise in the future, Defendants will endeavor to seek leave to file more expeditiously. Defendants appreciate the Court having granted this opportunity to respond.

## **ARGUMENT**

### 1. **Plaintiffs' Supplemental Submission Presents Arguments Not Permitted by the Court's December 22, 2020 Order**

Plaintiffs' January 8, 2020 Supplemental Submission is improper to the extent it presents arguments beyond the scope of the Court's December 22, 2020 Order. (ECF No. 320.)

On December 22, 2020, the Court ordered Plaintiffs to file "a supplemental submission *describing any incidents where a stepped-up minor was incorrectly found to be a danger to self or others.*" (ECF No. 320.) (emphasis added). Plaintiffs' supplemental submission, however, contains only two brief "alleged instances." (ECF No. 329 at 4-5 (discussing C.J.E.M.), 6-7 (discussing D.M.M.R.).) Instead, by their own admission, Plaintiffs devote the majority of their supplemental submission to re-hashing the same generalized allegations of incorrect step-up made in their Motion for Partial Summary Judgment and Statement of Undisputed Facts. (ECF No. 329 at 1 ("These instances, among others, are detailed in Section II *infra, as well as in Plaintiffs' Motion for Partial Summary Judgment ("Pls. MSJ") and Statement of Undisputed Facts.*" (emphasis added).) As these arguments are outside of the scope of the Court's December 22, 2020 order, the Court should not consider them. *See, e.g.*, L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply.").

To the extent the Court is inclined to consider these arguments, Defendants first note that Defendants have largely already responded to Plaintiffs' alleged "instances" of erroneous step up in Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Defendants' Statement of Genuine Disputes of Material Fact and Additional Material Facts. (*See* ECF No. 283, at 11-34, ECF No. 283-1, at ¶ 218.)

Second, Plaintiffs continue to conflate therapeutic group homes with staff-secure facilities, and therapeutic staff-secure facilities with residential treatment centers (RTCs). (*See* ECF No. 329 at 1-2 (contending that "therapeutic staff-secure

1  facilities…function similarly to RTCs"); ECF No. 329 n. 1 ("Plaintiffs also
2  respectfully maintain their position that Class Members stepped up to staff-secure
3  and therapeutic group homes – which are more restrictive than shelters – are likewise
4  entitled to procedural protections.").) But, as explained in Defendants' Statement of
5  Genuine Disputes of Material Fact and Additional Material Facts, "therapeutic staff
6  secure…doesn't even meet the criteria for staff-secure," (ECF No. 283-1, ¶ 125; *see
7  also* ECF No. 283-1, ¶¶ 122, 135, 142.), and therapeutic group homes are no more
8  restrictive than non-secure shelters, (ECF No. 283-1, ¶ 125). As such, Plaintiffs'
9  requests for additional procedures for therapeutic group home and therapeutic staff-
10  secure placements is, at best, unfounded and should be rejected. Regardless, as
11  Defendants have explained, therapeutic group homes and therapeutic staff-secure
12  facilities (and, for that matter, out-of-network facilities) are not alleged in the
13  operative complaint or a part of any certified class in this case, and so are beyond
14  the scope of this case. *See, e.g.*, *McMichael v. Napa Cnty.*, 709 F.2d 1268, 1273
15  n.4 (9th Cir. 1983); ECF No. 283-2, ¶ 114.

16       Further, Plaintiffs' alleged "additional instances of erroneous placements"
17  (ECF No. 329 at 4-8) are generalized allegations that ORR failed to adhere to ORR
18  policy for a variety of potential reasons (including ministerial reasons). These
19  allegations are not, as the Court ordered, "incidents where a stepped-up minor was
20  incorrectly found to be a danger to self or others." (ECF No. 320.) Nevertheless,
21  Defendants respond as follows:

22       • **December 2018**: Plaintiffs' cited evidence reflects an ORR initiative to
23         ensure children are appropriately placed through a *Flores* compliance team
24         reviewing cases, and determining, in the first week of such review, that 18 out
25         of 34 cases "were not compliant in the placement criteria and/or the Notice of
26         Placement requirement." Defendants already addressed these issues in prior
27         filings and no further briefing is required. To reiterate, however, Defendants
28         explained that far from the record showing that additional, pre-placement

hearings are required, the "record shows that ORR's compliance and monitoring procedures have significantly reduced the risk of error since November 2018." (ECF No. 304 at 20 (*citing* DX[2]-33 [Ray Dep.] 74:11-14 ("Q. And by the end of the five months, do you have a – A. They were 100 percent compliant by then.").) In addition, the review cited examined not the initial placement and whether *at the time of step-up*, the minor was a danger to self or others, but rather, whether – at the time of later review – the criteria continued to be met. (*See also* ECF No. 304-1, ¶ 52 (same).)

- **January 2019**: As with the above, this Court has already assessed evidence, and Defendants have addressed the other information Plaintiffs raise. Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others." The cited evidence states that "over 70 percent of kids in [staff-secure facilities and RTCs] were placed there out of compliance *with ORR's own policies and a standing court order specific to [Notice of Placement forms] NOPs.*" (Pls. MSJ Ex. 171 at 264 (emphasis added).) By its own terms, the cited language is discussing compliance with NOP requirements, not, as Plaintiffs appear to imply, that children were found to have been placed in staff-secure or RTCs erroneously. Indeed, at the time, for staff-secure, ORR was reviewing solely the issue of "whether a notice of placement has been timely provided," not "whether the basis" for step-up met ORR criteria. (DX-10 [Biswas Decl.] at ¶ 51; *see also* ECF No. 283-1, ¶ 188 (Defendants' Response citing Fink Deposition that noncompliance on NOPs was more about uploading the document to the ORR portal, not providing the notice itself).)

---

[2] References to exhibits "DX-01" to "DX-96" refers to exhibits submitted in support of Defendants' summary judgment briefing. In connection with this submission, Defendants submit two new exhibits, DX-97 and DX-98, both of which contain material that is confidential and thus is the subject of a contemporaneously filed request to file said exhibits under seal.

Defendants' Response to Plaintiffs' Supplemental Submission

- **January 14, 2019**:  Plaintiffs' cited evidence repeats *Flores* compliance team findings, addressed by Defendants above - in response to the December 2018 alleged evidence.  The document cited by Plaintiffs notes that "most of these issues are now being addressed by the FFS and care provider staff."  (*See* Pls. MSJ Ex. 44 [Ray Dep Ex. 119] at 1264.)

- **February 2019**: Plaintiffs cite a minor placed at Yolo, but this minor is not an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."  The minor was referred to Yolo after he was charged with possession of a forged instrument, but the charges were subsequently dropped. Thus, Ms. Ray's inquiry was concerning whether the minor's placement at Yolo continued to be appropriate in light of that development.  (*See* Pls. MSJ Ex. 43 at 1261-62.)

- **February 2019**: Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."  Ms. Ray asked for more information about the justification for a particular placement, noting that she "couldn't tell [based on the NOP and the significant incident reports she reviewed from an earlier placement] if [the minor] met the criteria for placement in secure." (Pls. MSJ Ex. 33 [Ray Dep. Tr.] at 157:12-19.)  Ms. Ray did not testify, however, that the minor was incorrectly placed.  To the contrary, Ms. Ray only testified that she did not remember whether there was any subsequent follow up that "shed more light on whether the kid was more of an annoyance than an actual danger."  (*See* Pls. MSJ Ex. 33 [Ray Dep. Tr.] at 157:12-19, 158:12-22.)

- **February 21, 2019**: Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."   As noted above, staff-secure reviews focused solely on NOP provision, not the basis for placement.

Defendants' Response to Plaintiffs' Supplemental Submission

- **March 4, 2019**: For the reasons stated above, with respect to staff-secure facilities, Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others." Rather, the review focused on NOP provision only, not the basis for placement.

- **July 2019**: Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others." The exhibit referenced during Ms. Contreras' deposition reflects that the minor "made a self-disclosure that he committed a murder in COO," but facility staff – not ORR federal staff – noted that the "information does not appear to have been confirmed nor is their [sic] probable cause to believe the crime was committed." (DX-97 [Contreras Dep. Ex. 167] at GOV-00067095.) Yolo staff then declined to accept placement of the minor, stating that it appears he displayed "child-like and immature behaviors…that would make him vulnerable in a more sophisticated environment such as a secure program." (*Id.*) In other words, the exhibit does not reflect a finding by ORR or any other federal entity that a minor was inappropriately placed at Shenandoah Valley Juvenile Center (SVJC), but Yolo staff views.  Plaintiffs also omit language from the referring provider noting that: the step-up recommendation came only after "extensive staffing," that the minor "engaged in conduct that has proven to be unacceptably disruptive of the normal functioning of a staff-secure program," that the minor "made credible threats to commit a violent or malicious act while in ORR custody," and that the minor "made verbal threats to cause bodily harm to program staff." (*Id.* at GOV-00067097.)

- **January 23, 2020:** Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."  Plaintiffs assert that the lead grantee Case Manager at a secure

Defendants' Response to Plaintiffs' Supplemental Submission

facility, Ms. Contreras, in deposition testimony, described examples of "inappropriate" justifications used to support step-up.  But Plaintiffs omit testimony from Ms. Contreras noting that she could not recall whether a minor was actually placed at Shenandoah once she elevated concerns to the FFS. (Pls. MSJ Ex. 16 [Contreras Dep. Tr.] at 76:12-14.)  Nor do Plaintiffs include the portion of the transcript in which Ms. Contreras appears to imply that while a step-up was justified, another placement might have been more fully able to meet the child's needs.   Specifically, Ms. Contreras references situations where "[r]esidents with high mental health needs or significant self-harming behavior" would be more appropriately placed at an RTC due to their mental health needs (Pls. MSJ Ex. 16 [Contreras Dep. Tr.] at 76:24-77:21.) This undermines Plaintiffs' suggestion that Ms. Contreras testified as to incidents where a stepped-up minor was incorrectly found to be a danger to self or others.   Regardless, Plaintiffs offer no specific examples that post date the Court's July 30, 2018 order.

- **January 23, 2020:** Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."    First, Plaintiffs fail to submit evidence regarding whether Ms. Contreras was discussing cases from before or after July 2018.  Second, Ms. Contreras confirmed there were instances in which children admitted to Shenandoah had their criminal charges dropped prior to their admission; but, in response to whether such children were eligible to be at Shenandoah, Ms. Contreras noted that "[a]ccording to the notice of placement, the first criteria says 'have been a subject of delinquency proceeding.'" (Pls. MSJ Ex. 16 [Contreras Dep. Tr.] at 80:8-10.)  Ms. Contreras then acknowledged that in her own "independent view" children should not be placed at Shenandoah "[i]f the *only* reason said to place them in secure is the charge that was dropped," but did not testify as to any instances in which a charge, later

7

Defendants' Response to Plaintiffs' Supplemental Submission

dropped, was the sole reason for step-up to secure juvenile detention.[3]  (Pls.' MSJ Ex. 16 [Contreras Dep. Tr.] at 80:11-15 (emphasis added).)    A hypothetical situation is not a basis upon which to find that ORR stepped up a minor based on an incorrect finding that the minor was a danger to self or others.  *See, e.g.*, *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009) (to create genuine issue of material fact, party must rely on facts, not unsupported statements).

- **February 24, 2020**: Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."  Plaintiffs appear to suggest that Marivic Fields, ORR Senior Advisor for Child Welfare and Safety, testified that children are referred to Shiloh or RTCs for reasons that do not include that the child poses a risk to self or others; however, Plaintiffs' cited evidence omits relevant information and mischaracterizes testimony.  Rather, Ms. Fields' testimony was that children should not be referred to Shiloh or any RTC solely because they pose a risk to self or others, "but primarily for safety reasons and these UACs require a higher level of care."  (Pls.' MSJ Ex. 156 [Fields Dep. Tr.] at 188:16-22; ECF No. 304-1, ¶ 46.)  Regardless, Ms. Fields's testimony does not identify any "incidents" where an erroneous finding of danger to self or others occurred following the Court's July 30, 2018 *Flores* order.

- **September 25, 2020**: Plaintiffs' cited evidence is not an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others." Plaintiffs' citations to evidence omits relevant information and

---

[3] In addition, the *Flores* settlement agreement at paragraph 21 provides: "A minor may be held in or transferred to a suitable State or county juvenile detention facility . . . whenever the District Director or Chief Patrol Agent determines that the minor: . . . has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act."

Defendants' Response to Plaintiffs' Supplemental Submission

mischaracterizes testimony.  When asked whether "in order to be admitted to Shiloh, does it – does there have to be a finding that the child is either a danger to themselves or others," Dr. Ruiz responded "Yeah, a danger to themselves or others, aggression, psychotic, complications of medical issues with psychiatric issues.  There is an array, but one of the most common ones is psychoses, aggression, self-injury, and danger to others." (Pls. MSJ Ex. 163 [Ruiz Dep. Tr.] at 261:2-13; ECF No. 304-1, ¶ 46.)  Here again, Plaintiffs have not shown any post-July 30, 2018 incident involving step-up based on an erroneous finding of danger to self or others.

- **Placement Review Panel ("PRP")**:  Plaintiffs' cited evidence is not an example of an incident in which a "stepped-up minor was incorrectly found to be a danger to self or others."  The PRP ensures that the UAC (or the minor's attorney) reviews any evidence supporting the UAC's continued placement at the secure setting and the UAC is permitted to provide the PRP with a written statement and/or request a hearing before the PRP issues a written decision regarding the UAC's placement.  (ECF No. 300-1, ¶ 204.)  While it is undisputed that two children who had hearings before the PRP were stepped down following panel review of their placement, Plaintiffs offer no evidence that the PRP limits its review solely to whether a stepped-up minor was incorrectly found to be a danger to self or others at the time of placement.  Rather, the PRP is for any UAC in a secure or RTC placement who wishes to challenge placement beginning 30 days after the initial placement.  (ECF No. 304-1, ¶ 67.)  A child could challenge continued placement on various grounds; not only could the child argue that the initial placement was not proper, but the child could also argue that an initially proper placement in a secure or RTC facility is now no longer the least restrictive setting, given changed circumstances.  Indeed, under Plaintiffs' argument, any governmental administrative review program that identifies

9

Defendants' Response to Plaintiffs' Supplemental Submission

individuals who should not *continue* in custody must inevitably result in a pre-placement review as well.  Plaintiffs cite no case law for such a proposition.

## 2.  Plaintiffs' Supplemental Submission Raises Arguments which are Not Properly Before the Court

In addition to arguments outside of the scope of the Court's December 22, 2020 Order, Plaintiffs also include arguments that are not properly before this Court for other reasons, as well.

First, Plaintiffs complain that their "access to evidence of erroneous step-ups is inherently limited" and that Plaintiffs "must rely on ORR and its contractors to identify their own errors."  (ECF No. 329 at 1.)  Plaintiffs are wrong on both counts.  As an initial matter, to the extent Plaintiffs challenge the adequacy of Defendants' discovery productions, the Court's orders establish procedures by which all discovery disputes must be resolved, including the deadline for raising any such arguments.  (ECF No. 17 at 2 ("All discovery matters have been referred to the assigned United States Magistrate Judge, who will hear all discovery disputes."); ECF No. 151 at 2 ("Any motion challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date, if the motion is granted.").)  To the extent Plaintiffs now raise a discovery related dispute well after the March 13, 2020 close of fact discovery (*e.g.*, ECF No. 204), the Court should reject it.  (*See, e.g.*, ECF No. 246 at 2 (May 13, 2020 Order of Chief Magistrate Judge Abrams, declining Plaintiffs' untimely request to order production of more case files, explaining in part that "a discovery dispute . . . is clearly untimely under the District Judge's Case Management Order, as the issue was not presented until more than six weeks after fact discovery concluded"); *see also, e.g.*, *Sitelock LLC v. GoDaddy.com LLC*, 2020 WL 6135189, at * 15 (D. Az. Oct. 19, 2020) ("GoDaddy makes no effort to respond – instead, it seemingly abandons its initial argument and seeks to raise entirely new arguments, based on new evidence, concerning the

purported incompleteness of the production. Those arguments are not properly before the Court.") (citations omitted).)

In any event, even assuming Plaintiffs' contention that they have limited access to evidence about step-ups is properly before the Court, these arguments fail. Plaintiffs were not deprived "of any meaningful opportunity to contest the basis for restrictive placement before a neutral factfinder," nor is it true that "limited evidence exists regarding whether a child is or was erroneously placed." (ECF No. 329 at 1.) Plaintiffs' failure to put forth evidence of widespread erroneous placements, even after voluminous, lengthy discovery, shows that Plaintiffs cannot carry their burden of proof. Plaintiffs' failure to support their claims does not somehow show that "limited evidence exists." Rather, the evidence exists—it just does not show what Plaintiffs want. As Defendants have already explained, Plaintiffs receive an adequate opportunity to challenge ORR's step-up decisions, including step-up hearings and procedures, and notices. (*See, e.g.*, ECF No. 263-1 at 18-33, ECF No. 304 at 6-16.) Moreover, relevant case-specific information—including information shared by a child or a child's representative opposing a placement—appears in case files, and Plaintiffs received numerous case files in discovery. Indeed, in 2019, the parties agreed that Defendants would produce 75 randomly selected case files as a compromise, balancing the burden on Defendants of producing UAC case files for thousands of class members with Plaintiffs' need for information for various class claims. Defendants complied with this agreement, and spent weeks digitizing nearly 100,000 pages of records. Thus, rather than accept that the overwhelming majority of step-ups are appropriate and that Plaintiffs failed to show evidence of widespread erroneous step-ups—and certainly not after the Court's July 20, 2018 *Flores* order—Plaintiffs argue that they had limited access to evidence. But that unsupported assertion is neither correct nor is it a showing that Plaintiffs are entitled to summary judgment. Rather, Plaintiffs have failed to show a genuine

Defendants' Response to Plaintiffs' Supplemental Submission

material factual dispute or to show widespread evidence of erroneous step-ups; Defendants are entitled to judgment as a matter of law.

Plaintiffs also allege, for the first time in their January 8, 2021 supplemental submission, that the current NOP form is inadequate as it "fails to comply with this Court's July 30, 2018 *Flores* Order because it does *not* require that a licensed psychiatrist or psychologist determine that a child poses a danger to self or others before placement at an RTC" and that the "representative NOPs are [] inadequate to protect Class Members' due process rights in that they contain boiler plate language regarding the availability of administrative and judicial review." (ECF No. 329 at 3, n. 2.)   This line of argument is improper.   "[A] party may not circumvent Rule 8's pleading requirement by asserting a new allegation in response to a motion for summary judgment." *Ward v. Clark Cty.*, 285 F. App'x 412, 412-13 (9th Cir. 2008) (unpublished).   Because the operative complaint does not allege that the NOP itself in insufficient, the Court should reject this post hoc attempt to bootstrap new allegations.   This is particularly true, where, as here: (1) the parties have not briefed whether due process requires a "danger to self or others" box on a NOP; (2) ORR's policies and procedures already require that a licensed psychiatrist or psychologist approve RTC placement (*see* ECF No. 304-1, ¶ 46); and (3) it is unclear how a formulaic box would offer children more protection.

Furthermore, while Plaintiffs critique what they call "boilerplate language regarding the availability of administrative and judicial review" (ECF No. 329 at 3 n.2), Plaintiffs overlook countervailing material evidence that ORR provides numerous opportunities for children to be heard and to avoid the risk of an erroneous placement: the frequent interactions minors have with their case managers to explain their needs and the progress of their cases; the fact that Shiloh RTC obtains parental or other relative consent prior to a minor's placement therein; the "grand round"-style reviews and staffings that occur before a step-up occurs; the 30-day multidisciplinary review that occurs at least every 30 days thereafter; the central

office monthly *Flores* compliance team review to assure placement in RTCs (and

secure juvenile detention) meets ORR standards; and the ability for the minor's child

advocate and attorney (if any) to obtain all documents associated with the step-up

without requesting the case file. (*See, e.g.* ECF No. 304-1, ¶¶ 36-80.)

### 3. Plaintiffs' Purported Examples of "Incidents Where a Stepped-Up Minor Was Incorrectly Found to be a Danger to Self-or Others" After July 30, 2018 are Not Supported by the Record

Plaintiffs' January 8, 2021 Supplemental Statement, ECF No. 329, alleges two

specific instances in which a "stepped-up minor was incorrectly found to be a danger

to self-or others."  But, for the reasons that follow, Plaintiffs' examples simply are

not instances in which a stepped-up minor was incorrectly found to be a danger to

self or others.

First, D.M.M.R.'s case is not one of a "stepped-up minor [who] was

incorrectly found to be a danger to self or others."  To the contrary, D.M.M.R.,

whose trauma history included witnessing extreme violence and sexual abuse at a

young age, had a troubled mental health history in her home country that continued

while in ORR's custody.  (*See* DX-98 at GOV-00241648.)  In Honduras, D.M.M.R.

had command auditory hallucinations telling her to kill herself, as well as self-

injurious behaviors (scratching/cutting her arm), and a suicide attempt during which

she ingested about 40 pills and drank bleach.  (*See* DX-98 at GOV-00241663.)

While in ORR's care and custody, D.M.M.R.'s serious mental health difficulties

persisted.   D.M.M.R. was psychiatrically hospitalized at Larkin Community

Hospital in South Miami, Florida when she escaped from the His House shelter, and

exhibited dangerous symptoms of depression and auditory hallucinations, and

expressed suicidal thoughts.  (*See* DX-98 at GOV-00241647.)  As detailed in a

neuropsychological evaluation completed in the hospital, D.M.M.R.'s diagnoses

included Major Depressive Disorder Recurrent Severe with Psychotic Features and

Post-Traumatic Stress Disorder.  *Id.*  D.M.M.R.'s treating psychiatrist at the hospital

and  the  doctoral-level  clinical  psychologist  who  did  the  evaluation  both  plainly

Defendants' Response to Plaintiffs' Supplemental Submission

recommended that an appropriate placement for her would be a residential treatment center. (*See* DX-98 at GOV-00241658, GOV-00241680.)  D.M.M.R. was placed at Shiloh RTC where the treating psychiatrist indicated that she has "a severe disturbance that endangers the life of self and others"; her discharge criteria included that her "behavior no longer [is] a danger to self, others or property." (*See* DX-98 at GOV-00241764, GOV-00241756.)  While D.M.M.R.'s mental health symptoms improved somewhat over time while placed at Shiloh RTC with intensive treatment and medication management, she continued to have distressing anxiety symptoms stemming from her family situation. (*See* DX-98 at GOV-00241751.)  D.M.M.R.'s treating psychiatrist at Shiloh recommended that she remain placed in the RTC until she was sufficiently stable such that her mental health symptoms could be managed safely in an outpatient setting. (*See* DX-98 at GOV-00241783-802.)

Likewise, C.J.E.M. is not a "stepped-up minor [who] was incorrectly found to be a danger to self or others." As her admission assessment at Shiloh RTC stated, C.J.E.M. was admitted on an emergency basis "due to displaying behaviors that are an immediate danger to her and she cannot be served at the transitional foster care and current shelter level."[4] (DX-98 at GOV-00157030.)  In her initial psychiatric assessment, Shiloh's treating psychiatrist indicated that C.J.E.M., who exhibited self-injurious behaviors and suicidal ideation when triggered by memories of past abuse by her father, has "a severe disturbance that endangers the life of self and others" and "incapacitating depression and/or anxiety," and that "outpatient treatment has been unsuccessful in halting/reversing the course of the psychiatric

---

[4] Defendants acknowledge that there is some ambiguity in C.J.E.M.'s case file records as to whether the recommendation by an advanced practice registered nurse (APRN) that C.J.E.M. be placed in an RTC—which was based on C.J.E.M.'s symptoms of auditory hallucinations and threats she made to harm other youth— was made under the supervision of a licensed psychiatrist or psychologist in the same outpatient behavioral services practice group. (*See* DX-98 at GOV-00159489.)

Defendants' Response to Plaintiffs' Supplemental Submission

disorder." (*See* DX-98 at GOV-00157195.)  C.J.E.M.'s psychiatric treatment plan at Shiloh included the goal, among others, that her "behavior no longer [be] dangerous to self or others." (*See* DX-98 at GOV-00157195-197.)  While at Shiloh, C.J.E.M. reportedly experienced severe anxiety and depression, daily crying episodes, mood instability, as well as urges to self-harm.  (*See* DX-98 at GOV-00157027.)  Notably, based on his review of C.J.E.M.'s medical chart, including records related to her prior emergency psychiatric hospitalization while placed at the shelter level, Defendants' psychiatric expert Dr. Lubit concluded that she had been appropriately stepped up to an RTC for more intensive mental health treatment. (*See* DX-35b, Addendum 5, pp. 18-19.)  Dr. Lubit also found significant that C.J.E.M. experienced a recurrence of auditory hallucinations (command and derogatory in nature) at Shiloh.  (*Id.* at 18.)

In other words, there is simply no merit to Plaintiffs' implication that either D.M.M.R. or C.J.E.M. were incorrectly found to be a danger to self or others and therefore were incorrectly stepped up.  (ECF No. 329 at 4-5, 6-7.)

## CONCLUSION

For these reasons,  Plaintiffs' January 8, 2021 supplemental submission does not show "incidents where a stepped-up minor was incorrectly found to be a danger to self or others that occurred after the Court's" July 30, 2018 *Flores* order, *see* ECF 320, nor does it show any basis to rule in Plaintiffs' favor.

///

///

///

Defendants' Response to Plaintiffs' Supplemental Submission

1      Respectfully submitted,

2

3                      BRIAN BOYNTON
                      Principal Deputy Assistant Attorney General

4

5                      ERNESTO H. MOLINA, JR. (181304)
                      Deputy Director

6

7                      BENJAMIN MARK MOSS
                      Senior Litigation Counsel

8

9                       */s/ Nancy K. Canter*
                      NANCY K. CANTER (263198)

10                   JONATHAN K. ROSS

11                   ANTHONY J. MESSURI

12                   Trial Attorneys
                     Office of Immigration Litigation

13                   United States Department of Justice

14                   P.O. Box 878
                     Ben Franklin Station

15                   Washington, D.C. 20044

16                   Telephone: (202) 305-7234
                     Nancy.K.Canter@usdoj.gov

17

18    Dated: January 26, 2021     Counsel for Defendants

19

20

21

22

23

24

25

26

27

28

Defendants' Response to Plaintiffs' Supplemental Submission

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2021, I electronically transmitted the forgoing document to the Clerk for the United States District Court for the Central District of California using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Respectfully submitted,

 _/s/ Nancy K. Canter_____
NANCY K. CANTER (263198)
Trial Attorney
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7234
Nancy.K.Canter@usdoj.gov