UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 1 of 52 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT [263, 271]**

    Before the Court are the cross-Motions for Partial Summary Judgment ("MSJs") filed by Plaintiffs Lucas R., Daniela Marisol T., Miguel Angel S., Gabriela N., Jaime D., Sirena P., Benjamin F., San Fernando Valley Refugee Children Center, Inc., and Unaccompanied Central American Refugee Empowerment, and Defendants Xavier Becerra, the Secretary of the U.S. Department of Health and Human Services ("HHS"), and Cindy Huang, the Director of the Office of Refugee Resettlement ("ORR"), in their official capacities.[1] [Doc. ## 263, 271.]

    For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' MSJ and **GRANTS** in part and **DENIES** in part Defendants' MSJ.

**I.**
**PROCEDURAL BACKGROUND**

    On September 7, 2018, Plaintiffs filed a First Amended Class Action Complaint for Declaratory, Injunctive, and Nominal Monetary Relief ("FAC") against Defendants. [Doc. # 81.] The FAC alleges that ORR pursues certain policies and practices relating to the detention of undocumented immigrant or refugee minors that violate: (1) the consent decree entered in *Flores v. Garland*, No. 85-4544-DMG (AGRx) (C.D. Cal.) [Doc. # 101] ("*Flores* Agreement" or "FSA"); (2) the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"); (3) the Due Process Clause of the Fifth Amendment; and (4) the Freedom of Association Clause of the First Amendment. *See* FAC at ¶¶ 2–3, 4.a–d. The FAC further alleges that ORR pursues certain policies and practices that discriminate against undocumented minors

---

    [1] Pursuant to Federal Rule of Civil Procedure 25(d), Xavier Becerra, Secretary of Health and Human Services, is automatically substituted for Alex Azar, and Cindy Huang, Director of ORR, is automatically substituted for E. Scott Lloyd. Both Defendants are sued in their official capacities. Defendant Lloyd was also sued in his individual capacity. On August 21, 2019, the Court granted Lloyd's Motion for Judgment on the Pleadings on the FAC's claims against him in his individual capacity. [Doc. # 187.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 2 of 52 |
|---|---|---|---|

on the basis of their actual or perceived disabilities, in violation of Section 504 of the Rehabilitation Act. *See id.* at ¶¶ 4.e–f, 192–94.

On September 28, 2018, Defendants filed a Motion to Dismiss or Transfer ("MTD") [Doc. # 101] and Plaintiffs filed a Motion for Class Certification. [Doc. # 97.] On November 2, 2018, the Court granted in part and denied in part Defendants' MTD, dismissing only Plaintiffs' claims to enforce the *Flores* Agreement. [Doc. # 126.] In the same Order, the Court granted Plaintiffs' Motion for Class Certification, certifying the following classes of all minors in ORR custody pursuant to the Homeland Security Act of 2002, 6 U.S.C. § 279, and/or the TVPRA, 8 U.S.C. § 1232:

a. who are or will be placed in a secure facility, medium-secure facility, or [residential treatment center ("RTC")], or whom ORR has continued to detain in any such facility for more than 30 days, without being afforded notice and an opportunity to be heard before a neutral and detached decisionmaker regarding the grounds for such placement (*i.e.*, the "step-up class");

b. whom ORR is refusing or will refuse to release to parents or other available custodians within 30 days of the proposed custodian's submission of a complete family reunification packet on the ground that the proposed custodian is or may be unfit (*i.e.*, the "unfit custodian class");

c. who are or will be prescribed or administered one or more psychotropic medications without procedural safeguards (*i.e.*, the "drug administration class");

d. who are natives of non-contiguous countries and to whom ORR is impeding or will impede legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs (*i.e.*, the "legal representation class"); and

e. who have or will have a behavioral, mental health, intellectual, and/or developmental disability as defined in 29 U.S.C. [section] 705, and who are or will be placed in a secure facility, medium-secure facility, or [RTC] because of such disabilities (*i.e.*, the "disability class").

Nov. 2, 2018 Ord. at 27–28.[2]  The Court approved the appointment of Class Counsel and appointed the following Class Representatives:

---

[2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 3 of 52 |
|---|---|---|---|---|

1. Lucas R., Miguel Angel S., Gabriela N., Jaime D., and Sirena P. shall serve as representatives of the step-up class;
2. Lucas R. and Gabriela N. shall serve as representatives of the unfit custodian class;
3. Lucas R., Daniela Marisol T., Gabriela N., Miguel Angel S., Sirena P., and Benjamin F. shall serve as representatives of the drug administration class;
4. Lucas R., Gabriela N., Daniela Marisol T., and Jaime D. shall serve as representatives of the legal representation class; and
5. Lucas R., Miguel Angel S., Gabriela N., Sirena P., and Benjamin F. shall serve as representatives of the disability class.

*Id.* at 28.[3]   Defendants filed their Answers on January 9, 2019.  [Doc. ## 144, 145.]

On October 2, 2020, Defendants filed their MSJ seeking judgment on all of the claims of the step-up class, unfit custodian class, and legal representation class.  [Doc. # 263.]  Plaintiffs' MSJ seeks judgment in their favor on the same claims, minus the unfit custodian class' First Amendment claim.  [Doc. # 271.]  Both motions are fully briefed.  [Doc. ## 283, 289, 300, 304.]

The Court issued an oral tentative ruling on the parties' cross-MSJs at a hearing on December 22, 2020.  [Doc. # 319.]  In light of the matters discussed at the hearing and the parties' ongoing mediation efforts, the Court ordered the parties to file supplemental submissions and joint status reports regarding settlement.  [Doc. # 320.]  Plaintiffs filed their supplemental submission regarding erroneous step-ups on January 8, 2021.  [Doc. # 329.]  Defendants filed a response on January 26, 2021.  [Doc. # 339.]

Because the parties' efforts have not resulted in settlement despite ample time allotted to account for changing and challenging circumstances, the Court now renders its written ruling.

**II.**
**EVIDENTIARY DISPUTES**

The parties submitted numerous evidentiary objections, and Plaintiffs filed responses to Defendants' objections.  [Doc. ## 289-2, 300-2 (under seal).]  Insofar as the Court does not rely on a given fact in rendering its decision, the Court **OVERRULES as moot** any objection to the evidence underlying it.

---

[3] The parties stipulated to remove Plaintiff Miguel Angel S. as a class representative of the step-up class, drug administration class, and disability class, and he was removed on October 15, 2019.  [Doc. ## 197, 198.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 4 of 52 |
|---|---|---|---|---|

Objections relating to the form of the evidence, including hearsay, are **OVERRULED**.
*See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t
summary judgment a district court may consider hearsay evidence submitted in an inadmissible
form, so long as the underlying evidence could be provided in an admissible form at trial . . . .");
*Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) ("At the summary judgment stage,
we do not focus on the admissibility of the evidence's form.  We instead focus on the
admissibility of its contents.").

If evidence objected to as irrelevant, lacking foundation, or argumentative is cited herein,
the objection is **OVERRULED**.  For example, Plaintiffs object to certain descriptions of the
different types of ORR custody in the declaration of Stephen Antkowiak, ORR's Director of the
Division of Unaccompanied Children Operations, as lacking foundation or personal knowledge.
*See* Pls.' Objs. ¶¶ 3–17 [Doc. # 289-2].  Antkowiak asserts, however, that his knowledge is based
on personal experience in the course of performing his official duties and review of HHS records
and information, and he cites to sources such as the ORR Policy Guide, Manual of Procedures
("MAP"), and ORR's data team.  *See* DX-09 (Antkowiak Decl.) [Doc. # 263-12].  Similarly, the
Court finds that Defendants' declarant Toby Biswas, ORR's Senior Supervisory Policy Counsel,
has worked for ORR in various positions since 2005 and established foundation and personal
knowledge of ORR's policies.  *See* Pls.' Objs. ¶¶ 18–26.  Defendants object to references to
therapeutic group homes, therapeutic staff-secure facilities, and out-of-network ("OON")
facilities as irrelevant.  *See, e.g.*, Defs.' Objs ¶¶ 114–15, 121–22, 125, 135 [Doc. # 300-2].  The
Court relies on evidence relating to therapeutic staff-secure facilities and OON facilities as
relevant to Plaintiffs' step-up class definition, but does not rely on any evidence with respect to
therapeutic group homes.

To the extent the Court relies on any writings to which Defendants object as being
incomplete based on Federal Rule of Evidence 106, the Court **SUSTAINS** those objections and
considers the writings as a whole.  *See, e.g.*, Defs.' Objs. ¶¶ 188–89.

The Court **OVERRULES** Plaintiffs' objections to descriptions of ORR's Placement
Review Panel ("PRP") Program in the declaration of Toby Biswas and the July 2020 ORR
Juvenile Coordinator Annual Report.  Pls.' Objs. ¶¶ 1–2.  Both exhibits are relevant, and
Plaintiffs are not prejudiced by either because Plaintiffs' counsel received the report and actual
notice of the PRP program through their participation in the *Flores* action.  Although
Defendants' failure to supplement their Rule 26(a) disclosures with information regarding the
new PRP program technically violates Rule 26(e), Plaintiffs have had an opportunity now to
develop arguments regarding the PRP such that exclusion of the evidence would be unwarranted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 5 of 52 |
|---|---|---|---|---|

## III.
## FACTUAL BACKGROUND[4]

Class Members are among the thousands of children under 18 years of age who enter the United States each year unaccompanied by a parent or legal guardian and without lawful immigration status. *See* PX-1 (Policy Guide Sections 1 and 2), Introduction [Doc. # 272-1].[5] These unaccompanied minors (also referred to as unaccompanied children, or "UACs")[6] are typically indigent, speak little or no English, and may have little or no knowledge of the United States' legal system. PSUF ¶ 226. Because many migrants engage with criminal gangs and organizations to facilitate the border crossing and are required to repay smuggling fees, Class Members are uniquely vulnerable to trafficking and exploitation. DSUF ¶ 6. They are all also members of the class in the related action *Flores v. Garland*, No. 85-4544-DMG (AGRx) (C.D. Cal.), and therefore parties to the *Flores* Agreement entered into in 1997, in which the Immigration and Naturalization Service ("INS"), the predecessor agency to the Office of Refugee Resettlement ("ORR"), agreed to certain standards for the care and release of migrant minors. In 2008, Congress also legislated specific protections for UACs via the TVPRA, 8 U.S.C. § 1232.

UACs apprehended without lawful immigration status are referred to the custody of ORR, a subagency of the Department of Health and Human Services ("HHS"), for temporary housing, health care, family reunification, and other services. JSF 92; DSUF ¶ 4; Policy Guide, Introduction [Doc. # 272-1]. ORR does not directly own or operate any facilities where minors reside and receive care. Instead, for the majority of minors in its custody, ORR operates under cooperative agreements with third-party care facilities, which are governed by grant regulations and temporary contracts, where UACs reside and are cared for until they can be released, generally to an adult sponsor in the United States. DSUF ¶¶ 8–9; PSUF ¶ 274. The grantee

---

[4] The summarized facts are undisputed, unless otherwise stated. Facts are drawn from Plaintiffs' Statement of Undisputed Facts ("PSUF"), as set forth in their Reply [Doc. ## 300, 307 (under seal)], and Defendants' Statement of Undisputed Facts ("DSUF"), as set forth in their Reply [Doc. # 304-1]. Many of the undisputed facts in the PSUF and DSUF are drawn from the parties' Joint Stipulation of Fact ("JSF") [Doc. # 262]. Many of both parties' purportedly disputed facts are not in fact controverted by the evidence, and the Court therefore cites to them as undisputed facts.

[5] Plaintiffs' Exhibit 1 does not include other sections of the Policy Guide, including Section 3 on the services provided to UACs, to which both parties cite. When citing to Section 3 of the Policy Guide, the Court refers to the judicially noticeable version of the document found at: https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-section-3.

[6] The Court will use "minors," "children," and "UACs" interchangeably to refer to this group of unaccompanied children under the age of 18 in ORR custody.

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 6 of 52 |
|---|---|---|---|

facilities collaborate with ORR to determine what type of placement a minor requires, evaluate a sponsor's application to take custody of the minor, and provide minors with some access to legal counsel, among other tasks and duties.

The Court provides a brief overview of ORR policies and Class Members' experiences in ORR custody, then describes specific ORR procedures in more detail in its discussion of the step-up class, unfit custodian class, and legal representation classes' claims.

**A.      Placement in restrictive facilities**

Minors can be placed in several different types of care provider facilities in ORR's network: shelter, short-term foster care, long-term foster care, group homes, therapeutic group homes, staff-secure, therapeutic staff-secure, secure, and residential treatment centers ("RTCs"). PSUF ¶ 101. ORR also places minors in facilities that are not within its grantee network, which are referred to as out-of-network ("OON") facilities. PSUF ¶ 108. OON facilities can be a type of RTC or a hospital that provides care for a minor with specific medical needs. DX-2 (Biswas Depo.) at 13:12–21 [Doc. # 263-5]; *see* Policy Guide § 3.4.5 (setting forth mandatory steps for care providers to follow in the event of a medical emergency requiring hospitalization).

Minors may be transferred from one type of facility to another, either "stepped up" to a more restrictive facility, or "stepped down" to a less restrictive facility. JSF ¶¶ 47–48; Policy Guide § 1.2.4. The placement decision is made by a minor's case management team, comprised of a Case Manager employed by the grantee care provider who meets weekly with the minor, a Case Coordinator employed by a third-party non-governmental contractor, and an ORR Federal Field Specialist ("FFS") who is assigned to work with a group of care providers within a geographic region. PSUF ¶¶ 33–35, 37; DSUF ¶ 49. This case management team may include other staff at the care facility, such as a clinician or other medical professional. Biswas Depo. at 75:7–25, 77:3–7 [Doc. # 263-5]; PX-33 (Ray Depo.) at 76:8-17 [Doc. # 273-2].

Shelters and foster-care placements are the least restrictive placements. JSF ¶ 56; *see* Policy Guide, Definitions. Staff-secure, therapeutic staff-secure, secure, RTC, and OON RTC facilities are more restrictive and are considered secure and medium-secure facilities.[7] *See* Policy Guide § 1.2.4; *Flores v. Garland*, No. CV 85-4544-DMG (AGRx), 2018 WL 10162328, at *7 (C.D. Cal. July 30, 2018) (ORR admitting that, within the meaning of the FSA, staff-secure facilities are "medium-secure" and secure juvenile detention centers and RTCs are "secure").

---

[7] Therapeutic group homes are not a part of the step-up class definition, and Plaintiffs have not established that they constitute medium-secure or secure facilities. *See* PSUF ¶ 185. The Court therefore will not consider therapeutic group homes in its analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 7 of 52 |
|---|---|---|---|

Secure juvenile detention centers, or what the parties refer to as "secure facilities,"[8] are the most restrictive level of care in ORR and are intended for minors who require the strictest level of supervision.  JSF ¶ 50; Policy Guide § 1.2.4.  For placement in a secure facility, ORR must find that the minor "poses a danger to self or others" or "has been charged with or convicted of a criminal offense, or is chargeable with such an offense."  Policy Guide § 1.2.4. Secure facilities are jail-like, with "a secure perimeter, major restraining construction inside the facility, and procedures typically associated with correctional facilities."  *Id.*  Currently, the only in-network secure juvenile detention center that ORR utilizes is Shenandoah Valley Juvenile Center ("Shenandoah") in Staunton, Virginia, but until January 2020, ORR also placed minors in Yolo County Juvenile Center ("Yolo") in Woodland, California, and until September 2017, minors were placed in Northern Virginia Juvenile Detention Center ("NOVA") in Alexandria, Virginia.  PSUF ¶¶ 119, 130–31; DSUF ¶ 150.

RTCs are as restrictive as secure juvenile detention centers, but designed for a minor with a "severe mental health issue in addition to serious behavioral concerns or criminal/delinquent history warranting placement into a restrictive level of care."  Policy Guide § 1.2.4; *see also* DX-02 (Biswas Depo.) at 13:7–11, 14:5–9 [Doc. # 263-5] (considering RTCs as restrictive as juvenile detention facilities).  A minor may only be placed into an RTC if "determined to be a danger to self or others by a licensed psychologist or psychiatrist," and the licensed psychologist or psychiatrist has determined the following:

[1] The unaccompanied alien child has not shown reasonable progress in the alleviation of his/her mental health symptoms after a significant period of time in outpatient treatment.  (Note: the amount of time within which progress should be demonstrated varies by mental health diagnosis).  [2] The child's behavior is a result of his/her underlying mental health symptoms and/or diagnosis and cannot be managed in an outpatient setting.  [3] The unaccompanied alien child requires therapeutic-based intensive supervision as a result of mental health symptoms and/or diagnosis that prevent him or her from independent participation in the daily schedule of activities.  [4] The child presents a continued and real risk of harm to self, others, or the community, despite the implementation of short-term clinical interventions (such as medications, a brief psychiatric hospitalization, intensive counseling, behavioral management techniques, 24-hour supervision, supportive services or therapeutic services).

---

[8] For clarity, the Court will use "secure facilities" to refer to all of the facilities that are at the same level of restriction:  juvenile detention centers, RTCs, and OON RTCs.  Where the parties use "secure facilities" to mean only juvenile detention centers, the Court will specify that they are juvenile detention centers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 8 of 52 |
|---|---|---|---|

Policy Guide § 1.4.6. RTCs provide 24-hour therapeutic-based intensive supervision. *Id.*; DSUF ¶ 44. ORR's two RTCs, Shiloh and MercyFirst, are based on a group home model where minors sleep without locked doors, although the whole facility is locked and under 24-hour surveillance and monitoring, and there is a higher staff-to-minor ratio than in shelters. DSUF ¶ 118.

Staff-secure facilities house minors who require close supervision because they have been unacceptably disruptive to a shelter, are an escape risk, have reported gang involvement or displayed gang affiliation, or have a non-violent criminal or delinquent history. DSUF ¶ 37; Policy Guide § 1.2.4. Staff-secure facilities provide a heightened level of staff supervision with a 1:4 caregiver to child ratio, increased communication, and services to control problem behavior and prevent escape. DSUF ¶ 38. Unlike secure facilities, staff-secure facilities are not equipped internally with multiple locked pods or cell units, physical restraints, or employ other security devices, although they may have fences around them. DSUF ¶ 39; PSUF ¶ 124. In almost all states, staff-secure facilities have the same state licensing requirements as shelters. DSUF ¶ 40.

Therapeutic staff-secure facilities are a type of staff-secure facility and thus more restrictive than shelters. PSUF ¶ 122; DSUF ¶ 99. The ORR Policy Guide and Manual of Procedures ("MAP") do not specifically differentiate a therapeutic staff-secure facility from a non-therapeutic staff-secure facility. At least one minor who ORR determined to have committed a sex offense was required to undergo a six-month sex offender treatment program at a therapeutic staff-secure facility before being placed in a shelter or long-term foster care. PSUF ¶ 135; *see* PX-24 (Heath Depo.) at 119:24–121:6 [Doc. # 272-2] (noting that the minimum time in which a child is released from a therapeutic staff-secure facility is 30 days).

The Policy Guide does not define or provide any standards for placement in OON facilities, but the MAP refers to OON RTC placements as Treatment Authorization Request ("TAR") RTC placements and provides some procedures for what notice is given to a minor when transferred to an OON RTC. PSUF ¶ 110. One FFS, Yesenia Heath, testified that a child with a developmental disability is more likely to be transferred to an OON program. Heath Depo. at 113:5–11 [Doc. # 272-2].

A very small proportion of minors in ORR custody are placed in these secure and medium-secure facilities. In fiscal year 2020 (through June 2020), ORR made a total of 14,421 UAC placements. DSUF ¶ 98. Of those minors, ORR placed a total of 24 minors in RTCs and 56 in juvenile detention centers. DSUF ¶¶ 100–01. As of March 13, 2020, 2.0% of the total ORR population were in secure or medium-secure facilities: 14 of the total 3,621 minors in ORR care were detained in a juvenile detention center, 16 were in an RTC, 28 were in a staff-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | ***Lucas R., et al. v. Xavier Becerra, et al.*** | | Page | 9 of 52 |
|---|---|---|---|---|

secure facility, and 6 were in a therapeutic staff-secure facility, and as of February 13, 2020, 11
minors were in OON RTCs. PSUF ¶¶ 223–24. The proportion of minors in secure and medium-
secure facilities between January 2017 and December 2019 was even lower, at only 0.3% of
minors. DX-30 (Ryan Expert Rep.) at ¶ 35, App. B at 44 [Doc. # 263-33].

Minors who are stepped-up to more restrictive settings spend more time in ORR custody
than minors who remain only in shelters. Data from November 2017 to March 2020 suggests an
average stay of 183.8 days in secure and medium-secure facilities, versus an average of 52.6
days in shelter facilities. PSUF ¶¶ 115, 140–41. In that time period, minors who spent any time
in medium-secure or secure placements spent the following average lengths of time in ORR
custody before release:

- 176.5 days for minors who spent time in a staff-secure facility;
- 185.9 days for minors who spent time in a juvenile detention center;
- 236.3 days for minors who spent time in an RTC;
- 246.3 days for minors who spent time in a therapeutic staff-secure facility; and
- 327.2 days for minors who spent time in OON placements.

PSUF ¶ 142. ORR has detained at least one Class Member in congregate care for at least 1,570
days, or more than four years. PSUF ¶ 27. Class Representative Gabriela N. spent
approximately 633 days in ORR custody in a shelter and Shiloh RTC, as well as brief stints in a
hospital for psychiatric treatment, before being discharged to a nonprofit-run Unaccompanied
Refugee Minors ("URM") program. PSUF ¶ 25; DX-52 (Vergara Decl.) at ¶¶ 18–70, 93-94
[Doc. # 276-4 (under seal)]. Class Representative Lucas R. spent 208 days in ORR custody in a
shelter and Shiloh RTC before release to his half-brother. PSUF ¶¶ 16, 26. Class Representative
Jaime D. spent 185 days in a shelter, Yolo juvenile detention center, and a staff-secure facility,
before being released to his aunt. Jaime D. Decl. at ¶ 12 [Doc. # 272-3 at 267]; DX-44 (Fink
Decl.) at ¶¶ 29–38 [Doc. # 276-1].

ORR's policy is to provide a Notice of Placement ("NOP") to a minor explaining the
transfer and the reasons for transfer, which in practice ORR usually provides after the minor has
already been stepped up. PSUF ¶ 183. Case Managers or other care facility staff must review
the NOP with minors in a language they understand. DSUF ¶ 67. But care providers are not
required to provide the NOP to minor's counsel or parents/guardians, and they do not provide the
NOP to other types of potential sponsors. PSUF ¶¶ 181, 191.

Some minors are erroneously stepped up or may become eligible to be stepped-down to a
less restrictive placement. PSUF ¶¶ 218–19, 222. To determine whether step-up remains

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 10 of 52 |
|---|---|---|---|

appropriate, ORR performs automatic 30-day reviews of all placements in staff-secure and secure facilities. Although minors have no formal way to participate in those automatic reviews, Case Managers generally inform minors of the reviews in their weekly meetings. DSUF ¶¶ 60–62. Additionally, minors who have spent 30 days in a secure facility may request a review by the ORR Director, which now takes place through a pilot program launched in March 2020 called the Placement Review Panel ("PRP"). Because the PRP is a pilot program, only one legal services provider and the staff of MercyFirst RTC have heard of it, and it is not described in the Policy Guide, MAP, or NOP. DSUF ¶ 67. Minors also have the right to a bond hearing in which an immigration judge assesses whether the minor poses a danger to self or community, and minors can challenge their restrictive placement in federal court. DSUF ¶¶ 63, 65.

Step-up class representatives Lucas R., Gabriela N., Sirena P., and Jaime D., and other named Plaintiffs Daniela Marisol T. and Benjamin F. were transferred to secure facilities without being provided written notice prior to step-up or an administrative hearing to challenge the step-up decision, inspect or rebut adverse evidence, or cross-examine witnesses. PSUF ¶¶ 180, 195, 198, 200.

**B.      Sponsor applications and release decisions**

The same case management team of a Case Manager, Case Coordinator, and FFS also works on the process of finding a minor's family members or others who may be qualified to care for the minor upon release. PSUF ¶ 32. Within 24 hours of identifying a potential sponsor, the Case Manager is required to explain to the potential sponsor the requirements of the sponsorship process, and the Case Manager generally must remain in regular and frequent contact with the potential sponsor. DSUF ¶ 22. If there are multiple potential sponsors, the Case Manager will evaluate all potential sponsors concurrently. DSUF ¶ 21.

All potential sponsors must complete a "family reunification application" in order for a child to be released to them from ORR custody. Policy Guide § 2.2.3. Care providers inform potential sponsors that they may submit additional information to support the application and remind potential sponsors of the deadlines for completing the forms. PSUF ¶ 40. Potential sponsors also undergo a background check and may be required to submit fingerprints, and they must verify the identity of all adults residing with the sponsor and all adult caregivers identified in a sponsor care plan. PSUF ¶ 41; DSUF ¶ 19. ORR's policy is that within 24 hours of a sponsor's completion of a family reunification application, the Case Manager is required to submit a release recommendation or request a TVPRA-mandated or discretionary home study. DSUF ¶ 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 11 of 52 |
|---|---|---|---|---|

ORR considers 10 factors when evaluating family sponsors, including the nature and extent of the sponsor's relationship with the minor; the sponsor's plan to provide adequate care; the sponsor's strengths or mitigating factors in relation to any risks or special concerns of the minor or sponsor (such as a criminal background, history of substance abuse, mental health issues, or domestic violence and child welfare concerns); and the minor's current functioning and strengths in relation to any risk factors or special concerns (such as human trafficking, being a parent or pregnant, special needs, a history of criminal involvement, or a history of behavioral issues). Policy Guide § 2.4.1. In some cases, ORR will require psychological evaluation of the minor as a prerequisite to release. PSUF ¶ 53. ORR also categorizes different types of sponsors as follows:

- Category 1: Parent or legal guardian. (This includes qualifying step-parents who have legal or joint custody of the child or teen.)
- Category 2A: An immediate relative—a brother; sister; grandparent; or other close relatives (aunt, uncle, first cousin) who previously served as the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage, and half-siblings.)
- Category 2B: An immediate relative—including aunt, uncle, or first cousin who was not previously the UAC's primary caregiver. (This includes biological relatives, relatives through legal marriage.)
- Category 3: Other sponsor, such as distant relatives and unrelated adult individuals.
- Category 4: No sponsors identified.

*Id.* § 2.2.1. The MAP suggests that unless there are unexpected delays, such as the need for a home study or a waitlist for fingerprinting, a care provider should complete the evaluation of the family reunification application within 10 calendar days for Category 1 and 2A sponsors, 14 calendar days for Category 2B sponsors, and 21 calendar days for Category 3 sponsors. ORR PX-3 (ORR MAP) § 2.2.2 [Doc. # 272-1].

If ORR denies a family reunification application, ORR provides to Category 1 sponsors written notice of denial with reasons for the denial. PSUF ¶ 72. Other sponsors are given an oral notification of denial. PSUF ¶ 181. Minors may be told the reasons for a sponsor's denial in their weekly case meetings with their Case Manager, but they are not provided a written denial unless the sole reason for the denial is a concern that the minor is a danger to self or others. PSUF ¶¶ 70–71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 12 of 52 |
|---|---|---|---|

Only Category 1 sponsors have the opportunity to administratively appeal adverse decisions regarding release and the sponsor's suitability, or to request reconsideration if new information or a change in circumstances arises.  PSUF ¶ 79; DSUF ¶ 30; Policy Guide § 2.7.8. Minors may also appeal administratively an adverse decision if the sole reason for the denial is a concern that the child is a danger to self or others, and the denied sponsor is not already appealing the decision.  PSUF ¶ 78.  The ORR MAP includes suggested deadlines for administrative appeals filed by children or Category 1 sponsors, including acknowledging the appeal within 5 business days of receipt and completing the appeal process within 30 days whenever possible.  ORR MAP § 2.7.8.  From January 1, 2017 to May 17, 2019, only one administrative appeal was filed by a child through his attorney, and there were no reversals of adverse suitability determinations.  PSUF ¶¶ 90–91.

If not released to a sponsor, minors with certain types of immigration status may be released to a local URM program run by a non-governmental entity.  PSUF ¶ 149; Policy Guide § 2.8.6.

Unfit custodian class representative Lucas R.'s potential sponsor, his sister Madelyn, was not provided any written explanation for why she was rejected, although she was orally informed of the home study worker's concerns about her ability to care for Lucas R.'s mental health and other needs.  PSUF ¶ 87.  Class representative Gabriela N.'s grandfather also was not provided written notice of his rejection or the reasons for that rejection.  PSUF ¶ 85.

C.      **Legal representation**

In short, the TVPRA requires HHS to "ensure, to the greatest extent practicable," that UACs "have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking."  8 U.S.C. § 1232(c)(5).  The TVPRA also exhorts HHS to "make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge."  *Id.*   Defendants receive Congressional appropriations to fund legal services for UACs from non-contiguous countries.  PSUF ¶ 272; *see* Further Consolidated Appropriations Act, 2020, 116 Pub. L. No. 94, Title II, 133 Stat. 2534 (2019) (appropriating $160 million for ORR to use, in furtherance of the TVPRA, for "legal services, child advocates, and post-release services.").

HHS contracts with the non-profit organization Vera Institute of Justice ("VIJ") to coordinate the delivery of free legal services to children who are or have been in ORR custody. PSUF ¶¶ 229, 232.   ORR's contract with VIJ provides funding for limited-scope direct representation for children in immigration-related matters.  PSUF ¶ 230.  VIJ in turn subcontracts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 13 of 52 |
|---|---|---|---|

with non-profit legal aid providers to counsel and represent children in immigration proceedings. PSUF ¶ 231. The vast majority of Class Members are represented in immigration proceedings, if at all, by legal services providers under subcontract with VIJ. PSUF ¶ 233.

ORR prohibits legal services providers from using federal funds appropriated in furtherance of the TVPRA to represent minors with respect to internal decisions, such as a step-up decision, a release decision, or whether it is appropriate for the minor to take psychotropic drugs. PSUF ¶ 271. It is ORR's practice that ORR-funded legal providers may represent a minor who wishes to seek a *Flores* bond hearing if representation has already been initiated for immigration proceedings. DSUF ¶ 91.

Because minors may have other legal services provided at no charge to the government, ORR and care provider facilities are required to provide minors with information about the availability of free legal assistance and their right to be represented by counsel. PSUF ¶ 228; DSUF ¶ 81. Minors are permitted to contact an attorney if they want to consult one regarding their placement decision or release process. DSUF ¶¶ 88–89. Under ORR policy, attorneys must have unlimited telephone access to their clients, and there is a general expectation at grantee care provider facilities that attorneys have the ability to meet with their clients face to face. DSUF ¶¶ 86–87; Policy Guide § 3.3.10.

Legal representatives may obtain a minor's case file only upon request, and in practice it may take weeks or even months to receive case files from ORR. PSUF ¶¶ 248–49. Those files may be provided with redactions of personal information of third parties, including potential sponsors. PSUF ¶ 250. ORR also does not require any member of the case management team to meet or speak with a minor's legal representative. PSUF ¶¶ 234, 238–39. In practice, however, some care facilities permit Case Managers to communicate regularly with minors' legal representatives and disclose the basis for step-up to a more restrictive facility or allow the representatives to collaborate in the sponsorship application process. PSUF ¶¶ 245, 273.

With regard to the right to an interpreter, ORR's written policies order care providers to "make every effort to provide comprehensive services and literature in the native language of each unaccompanied alien child [and] provide on-site staff or interpreters as needed." PSUF ¶ 264; *see also* PX-04 (ORR MAP) § 3.3.7 [Doc. # 272-2]. The MAP permits care providers to use a paid translation service, such as a telephone-accessible language line, where staff or on-site interpreters are unavailable. ORR MAP § 3.3.7.

ORR provided legal representation class representatives Lucas R., Daniela Marisol T., Gabriela N., Jaime D., and Sirena P. no legal assistance with respect to release, administration of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 14 of 52 |
|---|---|---|---|---|

psychotropic medications, or restrictive placement, beyond a know-your-rights presentation and a list of legal services providers.  PSUF ¶ 265.

**IV.**
**STANDARD OF REVIEW**

Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324; *see also Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007).  "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A court presented with cross-motions for summary judgment should review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences from the record.  *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008).

**V.**
**DISCUSSION**

The Court first addresses Defendants' argument that Plaintiffs' claims are precluded by res judicata due to the *Flores* action before turning to the classes' specific claims.

**A.     Res Judicata**

The principle of res judicata applies to bar litigation in a subsequent action of claims that were raised or could have been raised in a prior action, whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).  Plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 15 of 52 |
|---|---|---|---|

Opposition focuses on contesting the lack of identity of claims and thus concedes that the other two elements are met.  Pls.' Opp. at 2–11; *see Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011 ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

      In determining whether claims are identical, courts consider:  "(1) whether the two suits arise out of *the same transactional nucleus* of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *ProShipLine, Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (citation omitted).   These criteria are not applied "mechanistically."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017) (quoting *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016)).  But the first criterion is the most important.  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).

      **1.   The cases do not involve the same transactional nucleus of facts.**

      In "considering whether a prior action involved the same 'nucleus of facts' for preclusion purposes, [courts] must narrowly construe the scope of that earlier action." *Orff v. United States*, 358 F.3d 1137, 1144 (9th Cir. 2004) (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002)).   "[W]hether two suits arise out of the 'same transactional nucleus' depends upon whether they are related to the same set of facts and *whether they could conveniently be tried together*."   *Garity*, 828 F.3d at 855 (citation omitted) (emphasis in original).

      Defendants argue that the procedural due process claim raised in *Flores* is identical to the step-up, unfit custodian, and legal representation classes' due process claims raised here.  The facts of the claims are, however, quite different.  First, the facts of Plaintiffs' case rely on ORR policies and a statute, the TVPRA, that did not exist at the time the *Flores* suit was initially brought and settled.   Second, the current Class Members were not alive when *Flores* was litigated and settled.  Although the fact *patterns* are similar, the *transactions* at issue involve thousands of children who have never had the opportunity to bring constitutional challenges to their custody.  *See Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir. 1996) (finding that not all facts relating to one disputed right—prisoners' access to the courts—is part of a common nucleus of operative facts for res judicata purposes).  Given the 35 years between the filing of *Flores* and this lawsuit and the different contexts of the claims, including the complex ORR infrastructure

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 16 of 52 |
|---|---|---|---|

and TVPRA requirements that did not exist at the time *Flores* was litigated, the suits could not have been "conveniently tried together." *Garity*, 828 F.3d at 855

### 2.  **The cases do not require substantially the same evidence.**

The cases arise from different transactional nuclei of facts.  The voluminous record amassed herein involves the specific policies of an agency that did not yet exist in this form, medical and other records of children who were not yet alive, and allegations of violations of rights created by a statute that did not yet exist at the time of the *Flores* Agreement.

The first two elements thus weigh against finding an identity of claims.

### 3.  **Plaintiffs' proposed remedies do not impair *Flores* rights and interests.**

Defendants argue that "mandating" any remedies "beyond those provided in the *Flores* Settlement would . . . impair or destroy rights established under the Settlement."  Defs.' MSJ at 43; *see also id.* at 24, 60.  No doubt, the FSA binds the parties to a consent decree that touches on some of the issues Plaintiffs raise.  But Defendants' argument fails for several reasons.

First, in the *Flores* action, the Court specifically held that due process claims seeking relief not provided for in the FSA are "extracontractual" and therefore could not be brought in *Flores*.  July 30, 2018 Ord., 2018 WL 10162328, at *4 ("Whatever the merits of [plaintiffs' due process] claim, it has no place in a motion to enforce the consent decree.  The vindication of a constitutional right is not coterminous with the enforcement of a contractual provision.").  Moreover, to the extent Plaintiffs sought to enforce FSA rights in this action, the Court has already dismissed those claims as duplicative of the *Flores* claims.  Nov. 2, 2018 Ord. at 9–10.  In that order, however, the Court held that Plaintiffs may nonetheless "pursue due process claims predicated on Defendants' failure to provide sufficient procedural safeguards for alien minors to exercise their *Flores* rights because Plaintiffs cannot bring those claims in the *Flores* Action."  *Id.* at 10 (citing *Flores* July 30, 2018 Ord., 2018 WL 10162328, at *4).  The constitutional versus contractual rights at issue in this case and in *Flores* are clearly separable and can be independently litigated.

Second, Plaintiffs' procedural due process claims rely in part on liberty interests created by the FSA itself, as well as by the TVPRA, neither of which existed at the time *Flores* action commenced.  Defendants do not parse through Plaintiffs' claims to ascertain which remedies are connected to liberty interests created by the FSA and the TVPRA, and which are connected only to interests created by the U.S. Constitution.  In any event, ordering remedies for *new*

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | **_Lucas R., et al. v. Xavier Becerra, et al._** | Page | 17 of 52 |
|---|---|---|---|

constitutional violations would not impermissibly impair _Flores_ rights. Defendants do not cite
any authority for the proposition that Court-ordered remedies for constitutional violations may
never encroach upon contractual rights. _See, e.g._, Defs.' MSJ at 24–25. To the contrary, the
Ninth Circuit has permitted constitutional claims to proceed despite the existence of a consent
decree covering related rights. _See Hiser v. Franklin_, 94 F.3d 1287, 1294 (9th Cir. 1996); _see
also Rodi v. Ventetuolo_, 941 F.2d 22, 28 (1st Cir. 1991) (holding consent decree created a
cognizable "liberty interest in remaining in the general prison population" that supported a
subsequent procedural due process claim).

Third, Defendants argue that Plaintiffs should have negotiated the remedies they
currently seek when they settled the _Flores_ action. But the FSA does not purport to resolve
every possible due process claim or bind the parties to release future claims. To the contrary, it
states that it "constitutes a full and complete resolution of the issues raised _in this action_." FSA
Preamble (emphasis added). As discussed in more detail below, the issues raised in _Flores_ differ
from the issues raised here. Paragraph 36 of the FSA also specifies that "[n]othing in this
Agreement shall limit the rights, if any, of individual class members to preserve issues for
judicial review in the appeal of an individual case or for class members to exercise any
independent rights they may otherwise have." PX-8 (_Flores_ Agreement) ¶ 36 [Doc. # 272-2].

Fourth, Defendants argue that Exhibit 1 to the FSA provides that minors have the "right
to be represented by counsel at no expense to the government," and Plaintiffs' argument for
government-funded counsel under the TVPRA would infringe that section of the FSA. But
Congress, independent of the FSA, expressed its desire to enhance minors' rights to counsel via
the TVPRA and budget appropriations to fund such counsel. Rather than impairing the FSA
right to pro bono counsel, the TVPRA's counsel provision enhances the availability of legal
representation.

This element weighs strongly in favor of Plaintiffs.

**4. The cases involve similar, but not identical rights.**

Because the FSA resolved procedural due process claims relating to minors' opportunity
to challenge their placement and release decisions and the provision of counsel, Defendants
argue that Plaintiffs cannot bring the same due process claims again to seek additional remedies.
_See Costantini v. Trans World Airlines_, 681 F.2d 1199, 1201 (9th Cir. 1982) ("[T]he doctrine of
res judicata (or claim preclusion) 'bar(s) all grounds for recovery which could have been
asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause
of action.'") (internal citations omitted). Defendants are correct that "the _Flores_ Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 18 of 52 |
|---|---|---|---|

conclusively resolved for Plaintiffs what process is due in satisfaction of their constitutional claims *in that case*." Defs.' Reply at 9 (emphasis added). But this argument over-generalizes the rights involved here and fails to "perform a basic matching exercise" to determine if two actions involve the same right. *Garity*, 828 F.3d at 856; *see, e.g.*, *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002) (finding the rights asserted in the two actions differed because they involved infringement of different provisions of a contract).

The *Flores* plaintiffs contested whether a minor should be held *at all* during their immigration proceedings or, if released, a non-relative could *ever* be a suitable custodian. They also argued that substantive due process provided a right to "*automatic* review by an immigration judge of the initial deportability and custody determinations." *Reno v. Flores*, 507 U.S. 292, 308 (1993). The facially challenged INS regulation involved only "facilities that meet state licensing requirements for the provision of shelter care, foster care, group care, and related services to dependent children, and are operated in an open type of setting without a need for extraordinary security measures." *Id.* at 298 (internal citations and quotation marks omitted). The Supreme Court thus rejected the *Flores* plaintiffs' substantive due process argument that the right to "freedom from physical restraint" was implicated by the types of non-secure shelter facilities described in the regulation. *Id.* at 299–300. The Court also found that the plaintiffs had no interest "to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." *Id.* at 302. In light of the minimal interests at issue in the challenged INS regulation, the Court concluded that procedural due process was satisfied by giving a minor the right to a hearing before an immigration judge, where there was no evidence of undue delay. *Id.* at 309.

By contrast, Plaintiffs' procedural due process claims specifically involve freedom from physical restraint in secure facilities more akin to juvenile detention facilities and the rights of minors to associate with their close family members. The claims also implicate liberty interests created by the TVPRA and the FSA itself, which could not have been raised in *Flores*. Furthermore, as discussed above, any current rights that Plaintiffs have to enforce the FSA are purely contractual rights, whereas this action brings due process and statutory claims that are unenforceable within the *Flores* action. Finally, *Flores* did not specifically discuss the right to counsel, and the legal representation class' claims here arise primarily under the TVPRA's provisions regarding legal representation. Although there is some overlap, the asserted rights at issue in the two cases do not quite match. *See Garity*, 828 F.3d at 856.

Even if the rights are similar, however, "res judicata must be applied carefully in the class action context." *Hiser*, 94 F.3d at 1293–94; *see also Frank*, 216 F.3d at 852 n.6 ("Concerns about the adequacy of representation are heightened where the first action was a class action in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 19 of 52 |
|---|---|---|---|

which the plaintiffs in the subsequent action were unnamed, absent members."). The Ninth Circuit has held that even if a plaintiff's concerns were in fact brought in a prior class action, if "they were not given the careful consideration they deserve, [] it would be unjust to block future consideration now." *Hiser*, 94 F.3d at 1293 (citation omitted). In *Hiser*, the plaintiff brought suit arguing that a prison's refusal to photocopy his legal documents burdened his right to access the courts. *Id.* at 1292–93. Although a prior class action challenging the prison's violations of the right of prisoners' access to the courts resulted in a comprehensive consent decree three years earlier, the Ninth Circuit held that Hiser's claim was not precluded, because claim preclusion cannot be defined to bar "all future claims by prisoners challenging an unconstitutional condition." *Id.* This rationale applies to the current Class Members, who assert that they are or were unconstitutionally confined and have never had the chance to be heard regarding their deprivations of liberty. Due to the importance of the interests implicated and the need to give constitutional claims careful consideration, the FSA does not preclude Class Members' novel constitutional claims relating to their detention and release.

For the foregoing reasons, the Court **DENIES** Defendants' MSJ on the basis of claim preclusion and proceeds to the merits of the step-up class, unfit custodian class, and legal representation classes' claims.

**B.      Step-up Class Claims**

The step-up class asserts claims for violation of procedural due process and violation of the APA. Plaintiffs and Defendants each move for summary judgment on both claims.

**1.      Due Process**

"[P]rocedural due process . . . has three elements:  (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The Court first determines what liberty interests are at stake, before turning to what process is due to protect those interests. *See Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005).

**a.      Liberty interests**

A constitutionally protected interest may arise from the federal constitution itself, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), a statute, *see Carver v. Lehman*, 558 F.3d 869, 874–75 (9th Cir. 2009), or a contract, *see San Bernardino Physicians' Servs. Med. Grp. v. Cnty. of San Bernardino*, 825 F.2d 1404, 1407–08 (9th Cir. 1987); *see also Smith v. Sumner*, 994 F.2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | ***Lucas R., et al. v. Xavier Becerra, et al.*** | | Page | 20 of 52 |
|---|---|---|---|---|

1401, 1406 (9th Cir. 1993) (a consent decree can give rise to a constitutionally protected interest). Plaintiffs contend that the step-up class has protected interests from all three sources: (1) constitutional liberty interests in being free from unnecessary physical restraints and in familial association; (2) a statutory interest under the TVPRA to be placed in the "least restrictive setting"; and (3) a contractual interest under the *Flores* Agreement for the same.

### i.    Constitutional interest

It is uncontroversial that minors enjoy similar constitutional protections as adults, with some qualifications because children, "unlike adults, are always in some form of custody" and do not have "a right to come and go at will[.]" *Reno*, 507 U.S. at 302 (quoting *Schall v. Martin*, 467 U.S. 253, 265 (1984)). Therefore, due process is required before committing a minor to an institution. *In re Gault*, 387 U.S. 1, 17, 28–29 (1967); *see Reno*, 507 U.S. at 316 (O'Connor, J., concurring). Specifically, a minor has an "interest in freedom from institutional restraints," although that interest may be subordinated to the state's interest in the child's welfare. *Schall*, 467 U.S. at 265. Individuals in immigration detention still possess a constitutionally protected interest in avoiding unjustified physical restraint. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017); *see also Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). In addition, "in common with adults," minors have "a substantial liberty interest in not being confined unnecessarily for medical treatment." *Parham v. J. R.*, 442 U.S. 584, 600 (1979).

Minors also have a right to familial association with their parents and other family members, rooted in the First and Fourteenth Amendments. *See Moore v. City of E. Cleveland*, 431 U.S. 494, 504 (1977) ("Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."); *see also Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (finding that a "child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest") (citation omitted). In the immigration context, the right to familial association has been recognized to encompass a detained minor's other close relatives who seek to sponsor them, including siblings, aunts or uncles, grandparents, or first cousins. *See J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559, 585 (E.D. Va. 2018). But the right of a UAC to associate with a sponsor does not extend beyond the family. The Supreme Court has determined that minors with "no available parent, close relative, or legal guardian" do not have a constitutional right to release to a non-familial "willing-and-able private custodian rather than . . . a government-operated or government-selected child-care institution." *Reno*, 507 U.S. at 302–03.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 21 of 52 |
|---|---|---|---|---|

Class Members therefore possess interests under the Constitution to be free from unnecessary physical restraint and confinement for medical treatment, and to familial association.

### ii.      Statutory interest

A statute may create a substantive interest protected by the Due Process Clause with mandatory language that imposes an obligation on government officials. *See Arnett v. Kennedy*, 416 U.S. 134, 152 (1974); *Carver v. Lehman*, 558 F.3d 869, 872–73 (9th Cir. 2009). In addition to "explicitly mandatory language," however, the statute must also establish "specified substantive predicates" to limit discretion. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989).

The provisions of the TVPRA upon which the step-up class relies contain some mandatory and some discretionary language:

> [A]n unaccompanied alien child in the custody of the Secretary of Health and Human Services *shall* be promptly placed in the least restrictive setting that is in the best interest of the child. In making such placements, the Secretary *may* consider danger to self, danger to the community, and risk of flight. Placement of child trafficking victims may include placement in an Unaccompanied Refugee Minor program, pursuant to section 412(d) of the Immigration and Nationality Act (8 U.S.C. 1522(d)), if a suitable family member is not available to provide care. A child *shall not* be placed in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense. The placement of a child in a secure facility *shall* be reviewed, at a minimum, on a monthly basis, *in accordance with procedures prescribed by the Secretary*, to determine if such placement remains warranted.

8 U.S.C. § 1232(c)(2)(A) (emphasis added). The first statement, that a minor "shall be promptly placed in the least restrictive setting," does not contain specific substantive limits on Defendants' discretion, and in fact uses non-mandatory language to delineate what factors Defendants "may" consider in making placements. The second and third statements do contain substantive predicates: HHS must determine that a minor poses either a danger to self or others or has been charged with a criminal offense in order to be placed in a secure facility, and HHS must review the minor's placement each month. But the third statement, regarding HHS' monthly review of a minor's placement, provides the Secretary discretion to prescribe procedures for review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 22 of 52 |

Thus, the only explicitly mandatory interest created by the TVPRA for minors placed into secure facilities is the interest in having a determination of danger to self or others or criminal history before secure placement.

### iii.   *Flores* Settlement Agreement contractual interest

As the Court noted in its Class Certification Order, the FSA's requirements that Defendants place children in non-secure licensed facilities and adhere to all applicable state child welfare laws and regulations are "protections . . . secured by a consent decree and constitute civil rights because they are akin to the constitutional and statutory rights discussed above." Nov. 2, 2018 Ord. at 14–15 (citing FSA at ¶¶ 6, 14, 18–19, Ex. 1 at ¶ A); *see also Smith*, 994 F.2d at 1406 ("'[I]t would be passing strange if a consent decree, which possesses all the attributes of an ordinary contract plus the additional element of judicial approbation, were to be accorded some inferior status." (quoting *Rodi v. Venteuolo*, 941 F.2d 22, 28 (1st Cir. 1991)).

The FSA creates a constitutionally protected liberty interest in non-secure, licensed facilities with this mandatory language: "Except as provided in Paragraphs 12 or 21, such minor *shall* be placed temporarily in a licensed program until such time as release can be effected . . . or until the minor's immigration proceedings are concluded, whichever occurs earlier." Pls.' MSJ at 37 (quoting FSA ¶ 19 (emphasis added)). Further, "[a] licensed program . . . *shall* be nonsecure as required under state law" and "licensed by an appropriate State agency to provide . . . care services for dependent children." *Id.* (quoting FSA at ¶ 6) (emphasis added).

But the FSA also contains important caveats.  Paragraph 6 provides that a licensed facility for "special needs minors may maintain that level of security permitted under state law which is necessary for the protection of a minor or others in appropriate circumstances," thus permitting ORR to place minors who require greater mental health or physical treatment in a medium-secure or secure facility.  FSA at ¶ 6 (emphasis added).  Paragraph 21 also provides some restrictions on the right to be placed in a nonsecure licensed program.  "A minor may be held in or transferred to a suitable State or county juvenile detention facility or secure INS detention facility, or INS-contracted facility," when an INS District Director or Chief Patrol Agent determines that (1) the INS has probable cause to believe a minor has committed a specified offense (although "this provision *shall not* apply to any minor" whose offenses are isolated or petty);  (2) "the minor has committed or made credible threats to commit a violent or malicious act (whether directed to himself or others) while in INS legal custody or in the presence of an INS officer"; (3) the minor has engaged in "unacceptably disruptive" conduct in the licensed program and "removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program"; (4) the minor is an escape-risk, or (5) the minor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
| --- | --- | --- | --- |

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 23 of 52 |
| --- | --- | --- | --- |

"must be held in a secure facility for his or her own safety." FSA at ¶ 21; *see also Flores* July 30, 2018 Ord., 2018 WL 10162328, at *10–13 (holding that Shiloh RTC was overly secure for the care of minors, in violation of the FSA, *unless* a licensed psychologist or psychiatrist found that the minor "[p]resent[s] a continued or real risk of harm to self, others, or the community"). But because Paragraphs 6 and 21 are quite specific in their guidelines for when a minor may be placed in a secure facility, they provide "substantive predicates" to "guide [Defendants'] discretion in making the ultimate decision" regarding placement. *Kentucky Dep't of Corr.*, 490 U.S. at 464.

The FSA thus establishes a liberty interest to be placed in a nonsecure licensed facility unless the substantive predicates of Paragraphs 6 and 12 are met.

**b. Sufficiency of procedural protections**

To determine what process is due to protect Class Members' liberty interests, the Court employs the framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires consideration of the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court considers first the private interest and the government interest. It then balances those interests to determine what procedures are constitutionally required, if any, to ameliorate the risk of erroneous deprivation.

**i.      Private interest**

Minors' placement in secure juvenile detention centers or RTCs indisputably implicates their interest in freedom from institutional restraint. Some minors in ORR custody have reported significant negative experiences, including abuse by staff and other minors and jail-like conditions. PSUF ¶¶ 6–7, 128, 130. Minors in RTCs additionally face potentially unnecessary confinement for medical treatment. They have reported being compelled to take psychotropic medications or seeing other minors forced to take psychotropic medication. PSUF ¶¶ 133–34 (citing 15 Class Members' declarations, including Lucas R.'s, describing how they would get into trouble or be forced to stay at a secure facility or RTC for longer if they refused to take pills). It is also undisputed that OON RTCs are similarly restrictive to in-network RTCs. PSUF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 24 of 52 |
|---|---|---|---|

¶ 121.  The liberty interests implicated by placement in in-network RTCs and OON RTCs therefore are similar.

"The consequences of an erroneous commitment decision are more tragic where children are involved" because "[c]hildhood is a particularly vulnerable time of life and children erroneously institutionalized during their formative years may bear the scars for the rest of their lives." *Reno*, 507 U.S. at 318 (O'Connor, J., concurring) (internal citations omitted).  There have been specific instances where restrictive placements have led to a child's deterioration in mental health.  PSUF ¶ 136.  According to staff at over 45 ORR-funded facilities interviewed in a September 2019 Report by the Office of the Inspector General ("OIG"), longer stays resulted in higher levels of defiance, hopelessness, and frustration among children, along with more instances of self-harm and suicidal ideation.  PSUF ¶ 2 (citing OIG Report, Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody, available at https://oig.hhs.gov/oei/reports/oei-09-18-00431.pdf).  Numerous child welfare experts have expounded on the harm that detention causes children, particularly young children.  PSUF at ¶ 1.

Furthermore, being placed in a medium-secure or secure placement is correlated with significantly longer lengths of detention:  an average of 183.8 days in secure and medium-secure facilities, versus an average of 52.6 days in shelter facilities.  PSUF ¶¶ 115, 140–41.  These longer stays, even if justified by a finding of the minor's dangerousness to self or others or criminal history, also prolong the time that a minor spends separated from family members.  It is undisputed that being separated from family members is inimical to a child's well-being.  PSUF ¶ 9.  For example, Class Representatives Sirena P.'s and Benjamin F.'s separation from their families was a trigger for Sirena P.'s serious mental health symptoms and Benjamin F's "physical and emotional challenges."  PSUF ¶¶ 18–19.  Indeed, ORR acknowledges that the best practice, where discharge presents no risks to the health or safety of the minor, is discharge within 30 days of admission, and keeping a minor in ORR custody for no longer than 60 days.  PX-83 (December 2018 ORR Memo) at 4 [Doc. # 272-4].

Thus, placement in secure facilities implicates strong constitutional liberty interests.  Minors placed in secure facilities also have interests in receiving the requisite determinations justifying their restrictive detention under the TVPRA and FSA.

Staff-secure facilities implicate, to a lesser degree, the interest in freedom from institutional restraint.  Defendants assert that as compared with shelters, staff-secure facilities merely provide a greater staff-to-child ratio, increased communications, and more services to control problem behaviors.  DSUF ¶¶ 37–39.  Plaintiffs' only comparative evidence of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 25 of 52 |
|---|---|---|---|---|

security level of a staff-secure facility is from an expert who has never visited any ORR care provider facility and was unable to compare a staff-secure facility to a shelter. PX-144 (Quinn Expert Rep.) [Doc. # 289-5 at 64]; PX-32 (Quinn Dep.) at 81:21-22 [Doc. # 304-6]. But the parties do not dispute that staff-secure shelters are more restrictive than shelters. PSUF ¶¶ 122–23. And ORR previously admitted that staff-secure facilities are "medium-security facilities" under the *Flores* Agreement. *See Flores* July 30, 2018 Ord., 2018 WL 10162328, at *7.

In addition, at least one therapeutic staff-secure facility involves six-month sex offender treatment for minors before they can be stepped-down into a regular shelter or long-term foster care, thereby also implicating the right not to be unnecessarily confined for medical treatment. *See* PSUF ¶ 135; *see also* Heath Depo. at 119:24–121:6 [Doc. # 272-2].

## ii. Government interest

Defendants' employees and experts emphasize that when the need to step up a child arises, "time is of the essence." Antkowiak Decl. at ¶ 33 [Doc. # 263-12]; Lubit Expert Rep. at ¶ 3(b) [Doc. # 265-1 (under seal)] ("When UACs pose a threat to the health and safety of themselves or others, and the UACs cannot be maintained safely in a less restrictive setting, the UACs should go to a higher level of care. Delaying step-ups to RTCs in these situations is contrary to acceptable practice because serious avoidable harm could occur during the period of delay."). As the Director of ORR's Division of Unaccompanied Children Operations explained, "children who know they are leaving the current care provider may escalate behaviors—either because they know they will no longer be subject to the behavior plans of the current shelter, or because they disagree with the transfer." Antkowiak Decl. at ¶ 33 [Doc. # 263-12]. Further, "[i]f the minor hurts other children or staff through such behavior, this creates additional risk for the program, as well as potential liability for grantee care providers, potentially affecting their willingness to participate as licensed care providers in the program." *Id.*

Defendants also have an interest in relying on the professional expertise of the case management team in making placement decisions, particularly since the Case Manager meets with the minor every week. Defendants' expert Dr. Roy Lubit notes that a neutral decisionmaker may not be as helpful in making step-up decisions, as "[g]ood medical decisions require having a thorough knowledge of the patient's issues, preferences, and overall condition." Lubit Rep. at ¶ 33 [Doc. # 265-1 (under seal)].

Defendants also assert that the financial burden of increased process would be substantial because ORR currently funds only two attorneys, so an increase in administrative hearings in particular would burden the agency's resources. DSUF ¶ 80. But "[f]inancial cost alone is not a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 26 of 52 |
|---|---|---|---|---|

controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision." *Mathews*, 424 U.S. at 348. Furthermore, ORR has already launched the PRP, indicating that it is not administratively infeasible to provide minors in more restrictive facilities the opportunity to review evidence, provide a written statement, request a hearing, be represented by a child advocate or attorney, and receive a written notice of decision. Defendants note, however, that the administrative burdens of full trial-like hearings would place such additional demands on Case Managers that it could reduce the willingness of licensed care providers to work with ORR. *See* Antkowiak Decl. at ¶ 36 [Doc. # 263-12]. Although financial cost is not a particularly compelling interest, the adverse consequences of overburdening care facilities are important considerations.

Plaintiffs do not assert any improper motivation for Defendants to keep Plaintiffs longer in stepped-up placements, and the Court finds no evidence the professionals involved in the placement decisions "are either oblivious or indifferent to the child's welfare—or that they are incompetent." *See Parham*, 442 U.S. at 615. The Court thus ascribes significant weight to Defendants' asserted interests.

### iii.    Balancing interests with the risk of erroneous deprivation and value of additional procedures

Plaintiffs argue that ORR's policies create an impermissibly high risk of erroneous deprivation where (1) children are not given adequate notice of step-up to a restrictive placement; (2) most children have no opportunity to be heard about their placement except in a *Flores* bond hearing; (3) the administrative process prior to step-up is inadequate; (4) ORR's requirement for a medical recommendation prior to step-up to an RTC is insufficient; (5) ORR's administrative review post-step-up is insufficient; and (6) the ORR Director reconsideration process open only to some children is inadequate. Pls.' Opp. at 35–46.

ORR appears already to have addressed many of the asserted deficiencies with its procedures. It acknowledges that it has erroneously stepped up some minors to restrictive placements, and has failed to expeditiously step-down others after determining their eligibility to be placed in less restrictive facilities. PSUF ¶¶ 218–19, 222. Indeed, in November 2018, an ORR compliance work group found that the *majority* of children placed in secure facilities were inappropriately placed. DSUF ¶ 148. In January 2019, ORR found that over 70 percent of minors in staff-secure facilities and RTCs received non-compliant NOPs. DSUF ¶ 149. These numbers indicate unacceptably high risks of erroneous deprivation of Class Members' liberty interests.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 27 of 52 |
|---|---|---|---|---|

Since then, however, Defendants assert that ORR's monthly compliance reviews have found almost 100 percent compliance with ORR policies for secure placements. DSUF ¶ 59. For example, an ORR compliance analyst observed in October 2019 that by mid-2019, ORR had zero problems with compliance for the ten minors in secure facilities. DX-33 (Ray Depo.) at 109:17–110:2 [Doc. # 263-36].

Even so, Plaintiffs have identified a small number of minors who may have been inappropriately placed in or not stepped down from a secure facility more recently. Pls.' Supp. Subm. at 9–10 [Doc. # 329]. For example, in January 2020, ORR Case Manager Carina Contreras testified that some minors were placed in Shenandoah juvenile detention center for "behavioral history that was related to escape risk, which meets staff secure criteria" rather than secure criteria; a "more recent[]" situation in which a minor was placed in Shenandoah despite being charged only with a "nonviolent offense," which also meets staff-secure criteria; and minors who were admitted to Shenandoah despite having criminal charges dropped against them. PX-16 (Contreras Depo.) at 75:11–77:3, 80:2–5 [Doc. # 272-2]. Contreras also described some minors who were placed at Shenandoah despite exhibiting mental health needs that she believed would have been more appropriately treated at an RTC. *Id.* at 71:3–78:24. The record also contains ambiguity whether one minor, C.J.E.M., was found to be a danger to herself or others when she was placed in Shiloh RTC in December 2018. Another concern was that she was referred by a nurse practitioner, despite ORR's policy change to require a licensed psychologist or psychiatrist to make referrals after the Court's July 2018 ruling in *Flores. See* 2018 WL 10162328 at *10–13. Although these more recent incidents are few in number, they still indicate a noteworthy risk of erroneous deprivation of important liberties, considering the very small numbers of step-up class members: only 75 in March 2020. PSUF ¶ 223.

ORR also rarely, if ever, provides a written NOP to minors prior to their step-up, although most minors receive their NOP within 48 hours of step-up.[9] Without pre-deprivation notice, there is no opportunity for minors to be heard before being stepped-up. Minors, including Class Representative Sirena P., have reported being awakened in the middle of the night to be sent to staff-secure, secure, or RTC placements without any prior notice or explanation. PSUF ¶ 256; Sirena P. Decl. at ¶ 4 [Doc. # 272-3]. Plaintiffs cite the example of Jaime D., who was stepped up after he said he had killed people and was a member of a gang, but stepped back down after he recanted his tale. Plaintiffs argue that if Jaime D. had been notified of his step-up decision prior to transfer, he would have revealed his lie sooner and possibly avoided any time in a juvenile detention center. *See* Pls.' Opp. at 44. Pre-deprivation notice of the grounds of a step-

---

[9] The *Flores* Agreement also requires that Defendants provide minors not placed in licensed programs with a notice of reasons for housing the minor in a medium-secure or secure facility. FSA ¶ 24.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | **_Lucas R., et al. v. Xavier Becerra, et al._** | Page | 28 of 52 |
|---|---|---|---|

up decision would therefore provide some value in mitigating the risk of deprivation of minors'
liberty interests.

But in light of the important government interests at stake, as well as the safety of the
minors, full pre-deprivation notice and hearing are not constitutionally required. According to
the Supreme Court, "'[t]he necessity of quick action by the State or the impracticality of
providing any predeprivation process' may mean that a postdeprivation remedy is
constitutionally adequate.'" _Zinermon v. Burch_, 494 U.S. 113, 128 (1990) (quoting _Logan v.
Zimmerman Brush Co._, 455 U.S. 422, 436 (1982)). The record is replete with examples of
minors exhibiting suicidality or other tendencies to self-harm (including Class Representatives
Lucas R., Gabriela N., and Sirena P.) or threatening other minors or staff members (including
Jaime D.). Because minors can be stepped up to secure facilities only if they pose a danger to
self or others, have been charged with or convicted of a criminal offense, or are chargeable with
such an offense, ORR's interest in acting quickly to protect the welfare of the stepped-up child
and other children in its custody outweigh Class Members' interests in a pre-deprivation
procedure. Although one or two Class Members' cases, such as Jaime D.'s, could have benefited
from pre-step-up notice and hearing, "procedural due process rules are shaped by the risk of error
inherent in the truth-finding process as applied to the generality of cases, not the rare
exceptions." _Mathews_, 424 U.S. at 344. Plaintiffs' request for full notice and adversarial
hearing to challenge a step-up decision _prior to transfer_ fails to account for the relatively low
risk of erroneous deprivation and ORR's important interests, which also serve to protect minors.

Accordingly, pre-deprivation notice and hearing are not constitutionally required for all
Class Members, so long as Class Members have other pre-deprivation protections and adequate
access to bolstered post-deprivation remedies. The Court describes those procedures in detail
below.

_Additional pre-deprivation protections_

The Court finds only two of Plaintiffs' suggestions for additional pre-deprivation
procedures helpful to reduce risk of erroneous deprivation of Class Members' constitutional
rights, and to have determinations made in accordance with the TVPRA and FSA. _See_ Pls.'
Proposed Judgment at 5–8 [Doc. # 271-3].

First, the ORR Policy Guide lacks specific criteria for when a minor may be placed in an
OON RTC. Indeed, the Policy Guide defines "placement" as only referring to transfers of UACs
within the "ORR network of care." Although the MAP acknowledges that some minors may be
placed in an RTC "not affiliated with ORR through a Cooperative Agreement or contract" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 29 of 52 |
|---|---|---|---|---|

provides alternative procedures for provision of an NOP, it does not describe placement criteria. MAP § 1.4.6.  Treating OON RTCs similarly to in-network RTCs would reduce risks associated with unjustified or indefinite placement in those types of facilities.  But because there is limited evidence in the record about the OON RTCs, the Court orders only that ORR develop written policies for OON RTC placement so minors placed in those facilities can understand the reason for their placement.

Second, ORR should employ a "clear and convincing" evidentiary standard in deciding whether a minor should be stepped up.  "Notwithstanding the state's civil labels and good intentions," the Supreme Court has mandated the use of the "clear and convincing" standard of proof "when the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money."  *Santosky v. Kramer*, 455 U.S. 745, 756–57 (1982) (citations and internal quotation marks omitted).  In cases involving parental rights, civil commitment, deportation, and denaturalization, the Supreme Court has "deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings."  *Id.*  ORR and care provider professionals will still make decisions guided by child welfare principles and the many factors articulated in the Policy Guide and MAP, but step-up decisions must be based on clear and convincing evidence.  That evidence should be documented in the minor's file.  *See* Ray Depo. at 162:10-15 [Doc. # 272-2] (ORR analyst observing in early 2019 that some minors' folders did not contain "enough documentation for [her] to cross-check that it was an appropriate step-up.").

*Notices of placement*

According to ORR's current practice, NOPs should always be provided either before step-up or within 48 hours of transfer, as well as every 30 days the minor remains in a secure placement, in a language the minor understands and explained to the minor by a Case Manager. To ensure minors understand the basis of placement, NOPs should resemble the 2020 examples provided by the parties for minors at Shenandoah juvenile detention center and MercyFirst RTC, which clearly set forth the reason for the placement and supporting evidence.  *See* Parties' Supp. Subm. [Doc. ## 323, 324 (under seal)]; *In Re Gault*, 387 U.S. 1, 33 (1967) (notice must set forth alleged misconduct with particularity); *see also Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 811 (9th Cir. 2020) (requiring sufficient disclosure of evidence that plaintiffs should be able to refute, or attempt to refute, an adverse determination); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 485 (E.D. Va. 2016) (ORR custody case) ("It is a principle that has 'remained relatively immutable' in due process jurisprudence 'that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | **_Lucas R., et al. v. Xavier Becerra, et al._** | | Page | 30 of 52 |
|---|---|---|---|---|

opportunity to show that it is untrue.'") (quoting _Greene v. McElroy_, 360 U.S. 474, 496 (1959)). In MercyFirst's case, the NOP also states what therapeutic goals the minor should achieve before the minor can be stepped down to less intensive care, and other RTCs' NOPs should follow suit. NOPs must also contain updated language to reflect minors' increased access to post-deprivation review, as described below.

NOPs must also be provided _automatically_ to the minor's legal counsel, parents, and/or guardians of record, rather than only on demand for counsel. Notice is not an effective safeguard of liberty interests if the child does not understand his or her right. The testimony of Shenandoah Case Manager Contreras highlights that children can be confused about their right to administrative or judicial review. Contreras Depo. at 118:8–24 [Doc. # 282-2]. Under state law, children "cannot determine their own legal actions," and in the immigration relief context, the Ninth Circuit has recognized the importance of _pro bono_ or privately-retained competent legal representation for minors so that their rights may be fully protected. _Lin v. Ashcroft_, 377 F.3d 1014, 1025 (9th Cir. 2004) (citing _Johns v. County of San Diego_, 114 F.3d 874, 876–77 (9th Cir. 1997)); _see also C.J.L.G. v. Sessions_, 880 F.3d 1122, 1134-1135 (9th Cir. 2018). Without automatic involvement of parents/guardians and counsel, Plaintiffs are far less likely to understand and vindicate their procedural rights. But because it is not clear what legal rights a potential non-parent/guardian sponsor has to the child prior to the child's release, the Court will not require an NOP to be issued automatically to a non-parent/guardian adult who has applied to sponsor the child.

Prior to issuing an NOP, the case management team is not required to involve minors' counsel in the step-up decision, although any care facility, third-party contractor, or ORR employee remains welcome under ORR's policies to communicate with counsel if they wish.

_Post-deprivation review and appeal request_

The Court also will not require automatic adversarial hearings for each stepped-up minor. Plaintiffs argue that minors without counsel, who are often illiterate, are unlikely to participate in a hearing unless it is automatic, and the onus of requesting a hearing should never be on a minor. _See_ PX-32 (Quinn Dep. Tr.) at 91:1–3 [Doc. # 304-6]. But Plaintiffs' experts do not explain how minors without counsel would be able to prepare for their own automatic hearing, and Plaintiffs do not account for the relatively low risk of erroneous deprivation. _See Veterans for Common Sense v. Shinseki_, 678 F.3d 1013, 1035 (9th Cir. 2012) (noting that even where "consequences of erroneous deprivation can be devastating," the low risk of error and government's interest weighed against additional procedure). In any event, the required 30-day administrative review for all stepped-up placements, along with the more intensive 90-day review for minors in secure

---

CV-90                         **CIVIL MINUTES—GENERAL**                  Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 31 of 52 |
|---|---|---|---|---|

facilities, already provides automatic procedural safeguards for minors. *See* Biswas Depo. at 53:11–55:24, 64:1–20 [Doc. # 263-5] (describing the 30-day compliance review by a working group made up of higher-level ORR employees, with involvement by the case management team, and with the minor's knowledge). In addition, for minors in RTCs, ORR requires review every 30 days by a psychiatrist or psychologist to determine whether the minor should remain in restrictive residential care. DSUF ¶ 47; JSF ¶ 55. This is the sort of review by an independent staff physician deemed acceptable in *Parham*. *See* 442 U.S. at 607.[10]

But Class Members must be able to *request* a hearing at which they can present their own evidence, with the assistance of counsel. Class Representatives Lucas R., Gabriela N., Daniela Marisol, Sirena P., and Benjamin F. were stepped up to an RTC, and Jaime D. was stepped up to a juvenile detention center, without being provided an evidentiary hearing to challenge the step-up decision, inspect or rebut adverse evidence, or cross-examine witnesses. PSUF ¶¶ 195, 198, 200. "In almost every setting where important decisions turn on questions of fact"—such as whether Class Members constitute a danger to self or others or an escape-risk, or have a criminal history, justifying restrictive placement—"due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Perhaps in response to its prior procedural shortcoming, ORR has developed a pilot program, called the Placement Review Panel ("PRP"), through which minors in secure placements can request review after 30 days. DSUF ¶ 67.

The Court finds most of the PRP procedures sufficient to ensure a fundamentally fair hearing for the minors who may currently request it. Defendants describe the PRP panel as comprised of three ORR staff members with several years of experience as professionals in the fields of child welfare, mental health, and related policy. DSUF ¶ 68. Before the PRP review is conducted, the minor or the minor's attorney is purportedly given the opportunity to review ORR's evidence in support of continued placement at an RTC or secure facility. DSUF ¶ 69. The minor or attorney can provide the PRP with a written statement or request a hearing concerning continued placement at an RTC or juvenile detention center. DSUF ¶¶ 70–71. Where the minor does not have an attorney, Defendants assert that ORR encourages the grantee care program to seek assistance for the minor from a contracted legal services provider or child advocate, and it will arrange for ORR's Juvenile Coordinator to act as an advocate for the minor,

---

[10] The Court notes its concern that Dr. Javier Ruiz, the medical director of Shiloh RTC and responsible for all step-down determinations, was not aware of his obligation to review each step-up decision every 30 days. PX-163 (Ruiz Depo.) at 272:10-19 [Doc. # 289-4]. Because Plaintiffs have not demonstrated systematic problems with training among ORR, third-party contractor, or care facility employees, the Court declines to order specific training procedures. But it is fundamental that ORR must ensure that its policies are communicated to and implemented by those tasked with carrying them out.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 32 of 52 |
|---|---|---|---|---|

if needed.  DSUF ¶¶ 72–73.  After reviewing the evidence and statements, and holding a hearing if the minor or minor's attorney requests one, the PRP provides the minor a written decision regarding placement.  DSUF ¶ 74.  The apparent success of the PRP indicates that post-step-up administrative hearings can quickly resolve step-up disputes.  From March to September 2020, there have been six PRP requests filed by minors, all of whom were in secure juvenile detention.  In two of the cases, the minor was stepped down prior to a panel review.  In two cases, the minors did not continue to pursue review.  In the final two cases, the minor had a PRP hearing and, in both such cases, the minor was stepped down after panel review.  Biswas Decl. at ¶ 60 [Doc. # 263-13].  The PRP program is a valuable additional procedure to prevent erroneous deprivation of liberty that, in light of ORR's voluntary adoption, does not conflict with the government's interest.

In light of the *Mathews* factors, the Court makes the following adjustments to the PRP.  First, all step-up class members must have the opportunity to request affirmative review.  That includes minors placed in staff-secure, therapeutic staff-secure, secure, RTC, and OON RTC facilities, because all of these minors have interests under the Constitution, TVPRA, and FSA in accurate determinations justifying their placement in more restrictive care.  The PRP therefore must be made an agency-wide policy, rather than a mere pilot program, and be open to all minors in secure *and* medium-secure facilities.

Second, all step-up class members must be able to request affirmative review *before* they have spent 30 days in a secure or medium-secure placement, in order to be heard at a "meaningful time."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985).  Where deprivation is significant, and it is in all parties' interests to ensure that any deprivation is justified, a "prompt" hearing should "proceed and be concluded without appreciable delay."  *Barry v. Barchi*, 443 U.S. 55, 66 (1979); *see also Goss v. Lopez*, 419 U.S. 565, 582–83 (1975) (notice and hearing should follow "as soon as practicable" after the suspension of a student who poses a danger or is disruptive).  Minors should therefore be able to request a PRP review as soon as they receive an NOP, rather than only 30 days after enduring a potentially erroneous restrictive placement.

Third, minors may call live witnesses or cross-examine ORR's witnesses, if such witnesses are willing to voluntarily comply, but they will have no power to compel witnesses to attend hearings or provide testimony.  To require otherwise would impose too great an administrative strain on care providers who may frequently be called to testify, and on ORR's entire case management system.

Fourth, none of the three PRP panelists should be the FFS involved in making the original step-up decision, to ensure neutrality.  *See Girard v. Klopfenstein*, 930 F.2d 738, 743

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 33 of 52 |
|---|---|---|---|

(9th Cir. 1991) (noting that fundamental fairness requires an "impartial trier of fact," not necessarily an extra-agency neutral decisionmaker).

Fifth, ORR must also set a time frame by which a minor will receive a PRP decision. The Court suggests seven days, although the parties may agree on a different timeline. *See Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1143 (9th Cir. 2018) (affirming a preliminary injunction ordering a hearing within seven days of a minor's arrest and placement into a secure ORR facility, in order to contest the allegations that led to their arrests).

The PRP expansion is necessary to offer prompt protections to a larger number of Class Members than the *Flores* bond hearing before an immigration judge. The bond hearings are cabined only to address whether a minor is a flight risk or a danger to self or others, and may not occur expeditiously enough to provide "the opportunity to be heard 'at a meaningful time.'" *Saravia*, 905 F.3d at 1144 (quoting *Mathews*, 424 U.S. at 333). Moreover, ORR will consider the immigration judge's determination but does not consider itself "bound by the immigration judge's bond hearing determination" in considering whether a minor should be stepped down. PSUF ¶ 205. *See D.B. v. Cardall*, 826 F.3d 721, 742–43 (4th Cir. 2016) (rejecting argument that "a brief hearing before an immigration judge" satisfies due process because ORR "possesses the sole authority to order [a minor's] release").

Plaintiffs have not established that any additional procedure is necessary with respect to translation or interpretation. ORR's current policy is that care providers "make every effort to provide comprehensive services and literature in the native language of each unaccompanied alien child [and] provide on-site staff or interpreters as needed." PSUF ¶ 264; Policy Guide § 3.3.7. Plaintiffs have provided insufficient evidence that minors in fact fail to receive services in a language that they understand.

### c.  Conclusion

Because Class Members have strong interests in being free from physical restraint and unnecessary commitment for medical purposes, in familial association, and in having the requisite TVPRA and FSA determinations made justifying their restrictive placement, and there is evidence that some Class Members have been stepped-up or remained in medium-secure or secure facilities longer than necessary and/or without sufficient justification, the Court concludes that some additional process is needed to reduce the risk of erroneous deprivation. But flexible procedures are especially important in situations of great sensitivity like the ones faced by the step-up class. ORR is tasked with ensuring the safety of all minors in its care, and should be able to make expedient decisions and allocate its resources accordingly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 34 of 52 |
|---|---|---|---|---|

The Court therefore **GRANTS** in part Plaintiffs' MSJ on the step-up class' claim, because Plaintiffs have established some due process violations and are entitled to additional procedures. But the Court also **GRANTS** in part Defendants' MSJ, to the extent that Plaintiffs have not shown entitlement to all of the additional procedures sought, in light of the low risk of erroneous deprivation and the government's strong interests.

> ### 2.     TVPRA and APA

The step-up class asserts that ORR's step-up policies also violate the TVPRA and APA. First, Plaintiffs bring a claim for violation of the TVPRA under the APA as (1) contrary to a constitutional right; or (2) "otherwise not in accordance with law." Pls.' MSJ at 71 (quoting 5 U.S.C §§ 706(2)(A), (2)(B)). Second, they argue that the APA itself requires an opportunity for an agency hearing governed by trial-like procedures. *Id.* at 40 (citing 5 U.S.C. § 554(a)).

As for the first argument that Defendants have violated the TVPRA, the lack of detailed briefing is fatal to Plaintiffs' motion for summary judgment. While it is true that ORR's current procedural scheme fails in some ways to meet the hallmarks of procedural due process, it is unclear what specific final agency actions Plaintiffs assert are violations of the TVPRA. Plaintiffs' most specific briefing on this claim is that ORR has failed to "promptly" place minors in the least restrictive setting, pointing to the prolonged detention of Gabriela N. and Lucas R. *See* Pls.' Opp. at 60–61. But the Court cannot determine on the record before it what agency actions must be "h[e]ld unlawful and set aside" under the APA. *See* 5 U.S.C. § 706(2). Moreover, the Court has already found that ORR must provide additional procedural safeguards to vindicate Class Members' constitutional right to due process. Plaintiffs therefore need not prevail on a redundant TVPRA/APA claim to obtain remedies for unconstitutional agency action.

The Court also rejects Plaintiffs' second argument, that another section of the APA, 5 U.S.C. section 554(a), requires trial-like procedures for agency hearings. *See* Pls.' Opp. at 61; Pls.' Reply at 14–15. The APA procedures include entitlement to a neutral decisionmaker, a notice of hearing, and the opportunity to present evidence and examine witnesses, and must be applied "in every case of adjudication *required by statute* to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554 (emphasis added). It is undisputed that the TVPRA does not require ORR to conduct a formal adjudicatory hearing when it makes a step-up decision. Therefore, Section 554 procedures do not apply because an adjudication is not required by statute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 35 of 52 |
|---|---|---|---|

Plaintiffs argue that the APA's requirement for trial-like procedures also applies to agency hearings required by the Constitution. *See Sung v. McGrath*, 339 U.S. 33, 50 (1950) (stating that Section 554 exempts "only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by *compulsion*") (emphasis added); *see also Aageson Grain & Cattle v. U.S. Dep't of Agric.*, 500 F.3d 1038, 1043–44 (9th Cir. 2007) ("[T]he APA generally applies where an administrative hearing is required by statute or the Constitution."). Here, a post-deprivation PRP hearing is available by a minor's request and is not compulsory. The APA's requirement for trial-like procedures does not apply.

Furthermore, in procedural due process cases, the factors set forth in *Mathews*, 424 U.S. 319, are "the standard for determining whether certain challenged administrative procedures comply with the requirements of due process." *Girard v. Klopfenstein*, 930 F.2d 738, 742 (9th Cir. 1991). In *Girard*, the court declined to require an extra-agency administrative law judge preside over agency proceedings, so long as the proceedings complied with "fundamental fairness." 940 F.2d at 743. This approach is more aligned with the Supreme Court's oft-repeated exhortation that "due process is flexible and calls for such procedural protections as the particular situation demands," and counsels against rigid application of APA procedures. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Therefore, the Court **GRANTS** Defendants' MSJ on the step-up class' TVPRA and APA claims.

**C.      Unfit Custodian Class Claims**

The unfit custodian class also raises claims for violation of procedural due process and the APA, as well as a standalone First Amendment claim. Plaintiffs and Defendants each move for summary judgment on the unfit custodian class claims for violation of procedural due process and the APA, and only Defendants move for summary judgment on the First Amendment claim.

**1.      Due Process**

**a.      Liberty interest**

Like the step-up class, the unfit custodian class asserts liberty interests protected by the Constitution, TVPRA, and the FSA. Because the constitutional interests are the same for this class as for the step-up class, the Court examines only the asserted TVPRA and FSA interests.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 36 of 52 |
|---|---|---|---|---|

###   i.     Statutory interest

The TVPRA provides broad discretion to HHS to make release decisions:

> [A]n unaccompanied alien child may not be placed with a person or entity unless
> the Secretary of Health and Human Services makes a determination that the
> proposed custodian is capable of providing for the child's physical and mental
> well-being.  Such determination shall, at a minimum, include verification of the
> custodian's identity and relationship to the child, if any, as well as an independent
> finding that the individual has not engaged in any activity that would indicate a
> potential risk to the child.

8 U.S.C. § 1232(c)(3)(A) (emphasis added).  Use of the phrase "at a minimum" invests HHS
with discretion to determine what guidelines HHS may use in finding a proposed custodian to be
suitable.  The TVPRA also does not include any set timeframe for the agency to make a decision.
Without any specific substantive predicates, the TVPRA creates no liberty interest relating to
release to a custodian for the unfit-custodian class.  *See Thompson*, 490 U.S. at 462–63.

###   ii.     *Flores* Settlement Agreement contractual interest

Similarly, the FSA provides significant agency discretion to conduct a "positive
suitability assessment prior to release to any individual or program pursuant to Paragraph 14,"
which provides that ORR "*shall* release a minor from its custody without unnecessary delay." 
FSA ¶¶ 14, 17.  The suitability assessment "*may* include" a home study and "should" take the
minor's wishes into account.  *Id.* at ¶ 17.  This contractual language does not provide specific
mandatory directives.  Paragraph 18 provides that "[ORR] . . . shall make and record the prompt
and continuous efforts on its part toward family reunification and the release of the minor
pursuant to Paragraph 14 above."  *Id.* at ¶ 18.  Although mandatory, it does not contain sufficient
substantive predicates to create a liberty interest.

###   b.  Sufficiency of procedural protections

###   i.     Private interest

Class Members' private interests in freedom from physical restraint are well-established
and substantial when detained in medium-secure and secure facilities, and the only reason for
their continued detention is the determination that their sponsor was unsuitable.  This interest is
not implicated, however, for Class Members who remain in non-secure shelters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 37 of 52 |
|---|---|---|---|---|

Class Members whose potential sponsors are family members also have a strong interest in familial association. This interest is strongest for minors with Category 1 parent/guardian sponsors. But minors with Category 2 close relative sponsors also have a constitutional interest in associating with their family members. Class Representatives Lucas R., Gabriela N., Daniela Marisol T., and Jaime D. sought to be released to a sister, grandfather, sister, and aunt, respectively, all of whom are Category 2 sponsors and recognized in the right to familial association. *See Moore*, 431 U.S. at 504. They, and other Class Members whose family members seek to sponsor them, possess a significant interest in the right to familial association that is impinged when a family reunification application is denied in error, without justification.

A number of members of the unfit custodian class likely belong to neither of the above categories (*i.e.*, are not held in a restrictive setting and with no family sponsor) and have minimal interest in freedom from restraint and in familial association. Under this particular due process analysis, the interests of minors with Category 3 sponsors who are distant relatives and unrelated individuals designated by the parents, and minors without any identified sponsors, who are not detained in medium-secure and secure facilities, require little or no additional procedural protection.

### ii.    Government interest

ORR is obligated under the TVPRA and the FSA to vet potential sponsors, and it must act to reduce the risk of harm children face if released to an improperly vetted sponsor. *See* 8 U.S.C. § 1232(c); FSA ¶ 17. This interest is particularly acute where, unlike domestic child welfare agencies, ORR has neither the ability nor the responsibility to formally track incidents of abuse or neglect by sponsors to whom children are released. DSUF ¶ 12. Defendants' expert Dr. Lubit therefore asserts that it is even more important for ORR to be certain that the sponsor is adequate prior to release than it is for domestic child welfare agencies. Lubit Rep. at ¶ 47 [Doc. # 265-1]. But as another court acknowledged in the ORR family reunification context, "the private and governmental interests here converge to an extent." *J.E.C.M. by & Through His Next Friend Saravia v. Lloyd*, 352 F. Supp. 3d 559, 586 (E.D. Va. 2018). On the one hand, the government's interest is "to place a child in a home suited to the child's welfare and needs," but on the other, the government favors "'preservation, not severance, of natural familial bonds.'" *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 747 (1982)).

In addition, Defendants argue that having automatic hearings for every denied sponsor would divert ORR's limited resources from investigation of other, potentially more viable sponsors, and prolong the time a child spends in care. Defs.' Opp. at 60; *see* DX-13 (Earner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 38 of 52 |
|---|---|---|---|

Expert Rep.) at ¶ 30 [Doc. # 263-16] ("Hearings are court-like processes that create an adversarial environment and only prolong the length of time that UAC spend in care."). Again, although financial concerns alone are not controlling, the Court will consider ORR's need to prioritize limited resources and to explore more promising sponsors.

Defendants also ask that the Court "be hesitant to import rigidity of procedure" in the context of the unfit custodian class, which Defendants assert is similar to that of foster care and involves "'issues of unusual delicacy, . . . where professional judgments regarding desirable procedures are constantly and rapidly changing.'" *Gibson v. Merced Cnty. Dep't of Human Res.*, 799 F.2d 582, 589 (9th Cir. 1986) (quoting *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 855 (1977)); *see* Defs.' Opp. at 48. But the comparison to foster care actually serves to support Plaintiffs' claim—in *Gibson*, the child and her foster parents had a full court hearing before the child was removed and placed in a different foster home. 799 F.2d at 588–89. The Court recognizes, however, that ORR faces not only the typical challenges of working with minors and sometimes recalcitrant sponsors, but also the exigencies of periodic influxes of UACs, particularly across the Southwest border. Thus, despite both sides' analogies to the domestic child welfare system, ORR and UACs have unique interests and challenges in the immigration context. In purely domestic cases, children are usually removed from their parents' or guardians' homes, and would assuredly return to those homes if not for the intervention of a social worker or other government entity. By contrast, Class Members have arrived in the United States unaccompanied and may not have a clear path to safe familial custody. Due to the unique circumstances posed by Class Members' unaccompanied status, the Court accords significant weight to Defendants' interest in flexibility to exercise professional judgment.

### iii.     Balancing interests with risk of erroneous deprivation and value of additional procedure

Plaintiffs argue primarily that three different aspects of ORR's policies with respect to family reunification applications deprive the unfit custodian class members of their liberty interests. First, most proposed sponsors and minors are not provided notice of a denial of a sponsor application and an opportunity to appeal the denial, with the assistance of counsel. Second, the lack of timeframe by which ORR must decide a sponsorship application results in prolonged detention. Third, Case Managers' discretion to deny applications as "non-viable" and lack of evidentiary standard increase the likelihood that a minor remains in custody.[11]

---

[11] Plaintiffs also argue that ORR's failure to require interpreters violates due process. As discussed above, however, there is no evidence that ORR's policies regarding interpreters and translation are inadequate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 39 of 52 |
|---|---|---|---|---|

*Notice and appeal of sponsorship denials*

Perhaps because at least three courts have found ORR's prior vetting procedures for parental sponsors violate due process,[12] ORR now has a policy of providing notice to Category 1 potential sponsors of the bases for a negative home study or sponsorship denial and permitting them to appeal those decisions to ORR's Assistant Secretary for Children and Families.  DSUF ¶ 32; Policy Guide § 2.7.7.  These procedures provide the denied parent/guardian written notice, opportunity to examine the bases for denial, ability to request reconsideration and a hearing, and an opportunity to present witnesses and evidence by writing or in a hearing.  DSUF ¶¶ 69–71.  The notice provides almost all of the information Plaintiffs seek.  *See* Pls.' Proposed Judgment at 4 [Doc. # 271-3].  The suggested timeline is for ORR to acknowledge a request for appeal within five business days and to complete the appeal process within 30 days.  The hearing policies provide the fundamental hallmarks of due process, including review by a neutral factfinder who is not involved in the original denial.  The Court would only add that the notice must inform denied sponsors that they are entitled to be represented by counsel.

The balance of *Mathews* factors weighs in favor of extending this notice and appeal process to minors with Category 2 sponsors.  Requiring written notice of denial and the right to appeal will help correct any errors or miscommunication that lead to unnecessarily prolonged detention and infringement of Class Members' strong interests in familial relationships and to be free of restrictive placements.  For example, a Case Manager at the Homestead temporary influx facility purportedly rejected a minor's aunt as a proposed sponsor because the aunt and minor did not share the same last name.  Once the minor was transferred to a new facility, the issue was resolved and the minor released within two weeks.  PSUF ¶ 82.  Class representative Gabriela N. was in ORR custody for nearly two years despite her grandfather's sponsorship application, for which he never received written notice of denial.  PSUF ¶ 85.  He attempted to apply for sponsorship several times, and ORR and care providers gave varying reasons for his denial, including (1) roommates who would not agree to being fingerprinted; (2) criminal charges for

---

[12] In *Beltran v. Cardall*, 222 F. Supp. 3d 476 (E.D. Va. 2016), the court found procedural deficiencies where ORR denied a parent's sponsorship of her son due to a finding that she could not provide the structure and supervision necessary, with no further elaboration on the bases for the agency's denial.  *Id.* at 485.  The court held that despite the parent's opportunity to request reconsideration of ORR's adverse determination, ORR's failure to make her "aware of any of the evidence or factual findings upon which ORR relied" and the "unilateral nature of the proceedings before ORR," which required the parent to initiate court proceedings and assume the burden of changing ORR's mind regarding depriving her of fundamental parental rights, violated due process.  *Id.*  Courts found similar issues in *Santos v. Smith*, 260 F. Supp. 3d 598 (W.D. Va. 2017), and *Maldonado v. Lloyd*, No. CV 18-3089 (JFK), 2018 WL 2089348, at *9 (S.D.N.Y. May 4, 2018).  Because all three were individual habeas cases, the courts' remedies were to order the release of each minor plaintiff, and the courts did not opine on what procedural protections were due.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 40 of 52 |
|---|---|---|---|---|

which he claims he was exonerated; (3) inability to articulate details of Gabriela N.'s mental
health diagnosis or needs; (4) limited familial and financial resources; (5) his cancer diagnosis;
(6) his history of alcohol abuse; and (7) that his application had been denied by other facilities.
Vergara Decl. at ¶¶ 80–89 [Doc. # 276-4].  While some or all of these issues may be valid
grounds for denying his application, the FFS Supervisor reviewing Gabriela N.'s case also noted
that her grandfather took steps to address some concerns and appeared to have a good
relationship with Gabriela N.  *Id.* at ¶¶ 80, 84.  Moreover, it took *17 months* after her grandfather
first submitted his application before Gabriela N.'s Case Manager began working on potential
placement in an Unaccompanied Refugee Minors ("URM") program due to lack of a viable
sponsor.  *Id.* at ¶ 91.  An opportunity for Gabriela N. and her grandfather to be heard could have
more rapidly addressed concerns with his application—even if only to determine conclusively
that it was not viable—and expedited Gabriela N.'s eventual release.  Similarly, class
representative Lucas R.'s case also could have progressed more rapidly had his proposed
sponsor, his sister, been provided even a brief version of the 30-page home study written report
finding her to be an unsuitable sponsor in part because she minimized concerns about Lucas R.'s
mental health, was not truthful about the number of individuals living in her home, and had not
been particularly close to Lucas R. in their home country.  PSUF ¶¶ 51, 86–87.  Because only
one minor and sponsor have availed themselves of this review process in 18 months, permitting
minors and Category 2 sponsors to request hearings according to procedures already in place for
Category 1 sponsors is unlikely to result in significant additional burdens on ORR.  But the
availability of this procedure will further the agency's goal of thoroughly vetting a sponsor's
fitness and effectuating a minor's release as soon as possible, when the rare case does arise.

Importantly, the Court does not think that an *automatic* hearing is necessary, in order to
best conserve resources for identifying and approving suitable sponsors.  There are many
legitimate reasons for a home study to be negative, or a sponsor to be denied, and the Court sees
no reason to force reconsideration of a case in which a potential familial sponsor, upon receiving
a written notice of denial, cannot take the affirmative step of requesting appeal and providing
whatever evidence is required.  Furthermore, in recognition of ORR's need to serve thousands of
minors and potential sponsors and the limited liberty interests at issue for minors with no familial
sponsor, the Court will not require such notice or an opportunity to be heard for denial of a
Category 3 sponsor.  *See Reno*, 507 U.S. at 302–03 (finding no interest in release to non-familial
sponsors).

In addition, the full written notice does not need to be given directly to the minors and
minors' counsel of record, only to the proposed sponsor.  Denials of sponsorship applications can
be based on sensitive grounds, such as the criminal history of the sponsor or the sponsor's
roommates, or other grounds that could cause distress to the minor, such as the sponsor no longer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 41 of 52 |
|---|---|---|---|

being willing to take custody of the minor.  Release of such information directly to a minor or minors' counsel of record may infringe on the sponsor's privacy or cause unnecessary pain to all parties involved.  So long as a minor and minor's counsel are notified of the denial and have the opportunity to request to inspect the evidence, minors' interests are sufficiently protected.  ORR shall continue to provide written notice of denial to minors only if the sole reason for denial of release is that the minor poses a danger to self or others.  *See* Policy Guide § 2.7.7.

*Timeline for decision-making on sponsor applications*

The Court agrees with Plaintiffs and with another district court, however, that "significant" and "unexplained delay[s] in responding to [a proposed sponsor's] unification request" violate due process irrespective of other procedural defects.  *Santos v. Smith*, 260 F. Supp. 3d 598, 613–14 (W.D. Va. 2017) (finding an unexplained delay of 17 months to issue a decision on sponsor's application violated due process); *but see Beltran v. Cardall*, 222 F. Supp. 3d 476, 486 (E.D. Va. 2016) (likely no due process violation based on "delay alone" where only two months elapsed between application submission and denial).  In setting a deadline, the Court must balance Class Members' liberty interests and the well-documented deleterious effects of prolonged detention on minors against ORR's interest in conducting thorough investigations of potential sponsors.  Many delays are due to the potential sponsors' own dilatoriness or other factors outside of ORR's control, *e.g.*, closures of fingerprinting locations during the COVID-19 pandemic.  Thus, for the most part, ORR's existing timeframes are sufficient.  Case Managers must begin working on family reunification within 24 hours of receiving a minor, and a sponsorship packet should be processed for the different categories of sponsors within the following recommended timeframes: 10 calendar days for Category 1 and 2A, 14 calendar days for Category 2B, and 21 calendar days for Category 3.  ORR MAP § 2.2.2.

The only additional deadline the Court imposes to reduce the risk of prolonged detention is a 90-day review of all pending family reunification applications.  Similar to the requirement that FFS consult with ORR supervisory staff regarding placements of minors in secure facilities for over 90 days, the case management team must also consult with ORR supervisory staff about pending sponsor applications every 90 days to determine what steps are needed to accelerate the minor's safe release.  This mandatory periodic review may prevent future cases like Class Member A.N.P.C.'s, where her release to her great aunt was "placed on hold" for 13 months because she did not have a birth certificate.  PSUF ¶ 84.  This deadline also corresponds with the fact that public records checks and sex offender registry checks expire 90 days from the day ORR receives results.  ORR MAP § 2.5.3.  The need for ORR to maintain some flexibility over this complex process counsels against imposing any stricter administrative deadlines on a class-

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 42 of 52 |
|---|---|---|---|

wide basis.  In any event, in individual cases of egregious delay, minors retain the option to seek
judicial review of their continued detention.

<u>Excessive discretion and lack of evidentiary standard</u>

Plaintiffs have not proposed any specific procedures to cabin what they perceive as ORR
and care facilities' excessive discretion, and the Court does not find any are necessary.  In
addition, the Court will not require the case management team to determine that a sponsor is
suitable by a clear and convincing evidentiary standard.  *See* Pls.' Proposed Judgment at 4 [Doc.
# 271-3].  The TVPRA prohibits ORR from releasing a child to a sponsor unless ORR makes an
*affirmative* determination "that the proposed custodian is capable of providing for the child's
physical and mental well-being."  8 U.S.C. §1232(c)(3)(A) (emphasis added); *see also* FSA ¶ 17
(permitting the government to perform suitability assessments on proposed sponsors).  Due
process does not demand that the Court impose procedures that shift the burden to ORR to prove
that the sponsor is unfit.  Instead, a minor's rights are adequately protected so long as the minor
and sponsor have the opportunity to appeal a denial and submit additional evidence of a
sponsor's fitness, if necessary.

### c.  Conclusion

The Court finds sufficient evidence that additional procedures would reduce risk that
Class Members will be erroneously deprived of their interest in (1) familial association with
parents and close family members and (2) being free from physical restraint in the form of
unnecessarily prolonged detention, when a sponsor is available.  But because ORR has strong
interests and statutory and contractual mandates to protect vulnerable UACs and perform
suitability assessments of sponsors, the Court does not require the full panoply of procedures that
Plaintiffs seek.  The Court also does not require written notice and opportunity to appeal at all for
minors with Category 3 sponsors who are distantly related, or not related at all, to the minors.

The Court **GRANTS** in part Plaintiffs' MSJ on the unfit custodian class' due process
claim, because Plaintiffs have established some due process violations that require additional
procedure.  The Court also **GRANTS** in part Defendants' MSJ, to the extent that Plaintiffs have
not shown entitlement to all of the additional procedures sought.

### 2.  TVPRA and APA

The unfit custodian class' claim to have agency action set aside for violating the TVPRA
and APA fails for the same reason the step-up class' claim did:  lack of specificity and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 43 of 52 |
|---|---|---|---|

redundancy. APA procedures also are not required here, where due process is flexible and does not require compulsory adjudications. The Court therefore **GRANTS** Defendants' motion for summary judgment on the APA claim.

### 3.   First Amendment

Defendants move for summary judgment on Plaintiffs' standalone First Amendment claim, although Plaintiffs do not move for summary judgment as to that claim. Defendants argue, based on factually inapposite First Amendment freedom of association cases, that Plaintiffs' claim does not implicate the First Amendment at all. Defs.' MSJ at 59. In response, Plaintiffs cite only to *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), which recognizes that the First Amendment protects family relationships and that "unwarranted interference" with those relationships could be an actionable constitutional violation under 42 U.S.C. section 1983. *Id.* at 686. The parties have not provided the Court with a coherent framework with which to evaluate the First Amendment claim. It is also unclear how this claim would add any additional or alternative remedies to Plaintiffs' partially successful procedural due process claim.

Without the benefit of helpful briefing from the parties on the contours of the First Amendment claim, the Court **DENIES** Defendants' motion without prejudice to renewal.

### D.   Legal Representation Class Claims

The legal representation class, defined as minors "who are natives of non-contiguous countries and to whom ORR is impeding or will impede legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs," assert claims for violation of due process and the APA. Nov. 2, 2018 Ord. at 27 [Doc. # 126]. The parties each move for summary judgment on both claims.

Plaintiffs argue that Defendants violate the legal representation class' constitutional and TVPRA rights to counsel by: (1) not funding counsel for proceedings challenging ORR decisions regarding minors' placement, sponsorship applications, and/or administration of psychotropic drugs and (2) retaliating against attorneys who represent minors in such challenges of ORR's administrative decisions and blocking the effective assistance of counsel. Pls.' MSJ at 68–69. The Court addresses each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 44 of 52 |
|---|---|---|---|

### 1. Government-funded counsel

To the extent that Plaintiffs do argue they have a procedural due process right to government-funded counsel, that argument fails for lack of a liberty interest.[13]  There is no substantive constitutional right to government-funded counsel in administrative challenges.  *See, e.g.*, *Goldberg*, 397 U.S. at 270–71 (welfare recipient "must be allowed to *retain* an attorney") (emphasis added); *Lin*, 377 F.3d at 1027 ("[An alien has] no Sixth Amendment right to appointment of counsel at government expense," but due process mandates "he is entitled to counsel of his own choice at his own expense . . . .") (citation omitted).  The FSA also does not provide for government-funded counsel.

This claim therefore rides entirely on whether the TVPRA requires ORR to pay for minors' counsel.  This claim is grounded in the APA, which provides that a court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

The TVPRA requires the following under the heading "Access to counsel":

The Secretary of Health and Human Services *shall ensure, to the greatest extent practicable and consistent with section 292 of the Immigration and Nationality Act* (8 U.S.C. § 1362), *that all unaccompanied alien children who are or have been in the custody of the Secretary or the Secretary of Homeland Security, and who are not described in subsection (a)(2)(A),*[14] *have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking.*  To the greatest extent practicable, the Secretary of Health and

---

[13] The Court notes that Plaintiffs do not specifically couch their arguments in terms of procedural due process and the *Mathews* factors.  *See* Pls.' MSJ at 65–70 (not raising procedural due process arguments); Pls.' Opp. at 62–68 (not addressing Defendants' arguments based on the *Mathews* factors); Pls.' Reply at 26–31 (focusing on ORR's obligation to ensure counsel to UACs under the TVPRA).

[14] Plaintiffs defined, and the Court certified, the legal representation class as minors "who are natives of non-contiguous countries and to whom ORR is impeding or will impede legal assistance in legal matters or proceedings involving their custody, placement, release, and/or administration of psychotropic drugs."  Nov. 2, 2018 Ord. at 28.  Defendants note, however, that ORR takes custody of UACs from a contiguous country *unless* the UAC satisfies specific circumstances set forth in the TVPRA, 8 U.S.C. § 1232(a)(2)(A):  the child is not a victim of a severe form of trafficking, the child has no fear of returning to the country of nationality, and the child is able to make an independent decision to be removed.  *See* Defs.' Opp. at 65.  Accordingly, minors from contiguous countries who are not removed under the circumstances set forth in Section 1232(a)(2)(A) and enter ORR custody have the same access to legal representation as minors from non-contiguous countries.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 45 of 52 |
|---|---|---|---|---|

Human Services shall make every effort to utilize the services of pro bono
counsel who agree to provide representation to such children without charge.

8 U.S.C. § 1232(c)(5) (emphasis added).  The Homeland Security Act of 2002 ("HSA") requires
that "the Director of the Office of Refugee Resettlement shall be responsible for . . . developing a
plan to be submitted to Congress on how to ensure that qualified and independent legal counsel
is timely appointed to represent the interests of each such child."  6 U.S.C. § 279(b)(1)(A).
Congress appropriates funds for ORR to use, in furtherance of the TVPRA, for "legal services,
child advocates, and post-release services."  *See* Further Consolidated Appropriations Act, 2020,
116 Pub. L. No. 94, Title II, 133 Stat. 2534 (2019).

The parties disagree on the meaning of the TVPRA's phrase "legal proceedings or
matters."  8 U.S.C. § 1232(c)(5).  Plaintiffs argue that it requires minors' counsel to be able to
represent minors in challenging ORR administrative decisions.  Pls.' MSJ at 66–67.  Defendants
read the phrase as requiring access to counsel only for minors' immigration matters (*i.e.* removal
proceedings).  Defs.' MSJ at 66–67.

It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole,
to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous,
void, or insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks
omitted).  The Court starts with the TVPRA's command that it be implemented to the extent
practicable and consistent with Section 292 of the INA, which provides in full:

In any *removal proceedings* before an immigration judge and in any appeal
proceedings before the Attorney General from any such removal proceedings, the
person concerned shall have the privilege of being represented (at no expense to
the Government) by such counsel, authorized to practice in such proceedings, as
he shall choose.

8 U.S.C. § 1362 (emphasis added).  Defendants' reading of the TVPRA ignores that Congress
deliberately used "legal proceedings or matters" rather than "removal proceedings," the phrase
used in the cross-referenced section of the INA.  It is axiomatic that "where words differ as they
differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"
*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (quoting *Russello v. United
States*, 464 U.S. 16, 23 (1983)).  The Court therefore must read "legal proceedings or matters" in
a manner that gives due weight to their distinction from "removal proceedings."  Accordingly,
the TVPRA refers to legal proceedings or matters that encompass more than just removal
proceedings.  In addition, the TVPRA's command that UAC shall "have counsel to represent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 46 of 52 |
|---|---|---|---|

them in legal proceedings or matters" must also be examined in light of the immediately succeeding phrase: "and protect them from mistreatment, exploitation, and trafficking." 8 U.S.C. § 1232(c)(5). The use of the conjunctive "and" indicates that counsel for minors shall *both* represent minors in legal matters and *also* protect them from mistreatment, exploitation, and trafficking. The role of counsel is thus inextricably linked to protection against those enumerated harms. Taking the statutory language on its face, the TVPRA unambiguously allows counsel for minors in ORR custody to do more than represent minors in removal proceedings.

The next inquiry is whether the TVPRA language covers ORR's placement, release, and medication decisions. Courts "presume that the ordinary meaning of the words chosen by Congress accurately express its legislative intent." *Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001). The word "matter," defined as a "subject under consideration, esp. involving a dispute or litigation," Black's Law Dictionary 442 (11th ed. 2019), includes decisions regarding placement of children in secure facilities, evaluation of custodial fitness, and medicating children without parental consent. Pls.' MSJ at 67. Defendants argue that these constitute "day-to-day decisions" lacking the import of "legal proceedings or matters." Defs.' MSJ at 67. But, as described above, these decisions can implicate weighty constitutional liberty interests and other rights protected by the TVPRA and the FSA. And Defendants' practices indicate that these decisions are "legal" in nature, since they already permit pro bono counsel to assist minors in challenges to ORR administrative decisions regarding step-up and release. The Court agrees with Plaintiffs that the language unambiguously covers the type of legal matters asserted by the legal representation class.[15]

Even though the TVPRA is susceptible to Plaintiffs' interpretation, it does not specify that ORR pay for *any* counsel. It requires only that ORR ensure representation "to the greatest extent practicable." 8 U.S.C. § 1232(c)(5). In fact, TVPRA commands the Secretary to "make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge." *Id.* The natural conclusion, then, is that the TVPRA's access to counsel provision does not necessitate ORR funding for representation for minors, regardless of the type of legal proceedings or matters.

Plaintiffs argue that because Congress "separately [] elected to fund legal representation for children in its custody," "ORR violates the TVPRA by precluding legal service providers

---

[15] Defendants argue that to the extent "legal proceedings or matters" applies outside of removal proceedings, it encompasses only "assisting minors to prepare for . . . immigration relief," citing to the sections of the INA providing for special types of visas (referred to as U-visas and T-visas) for victims of human trafficking or abuse. *See* Defs.' Reply at 31 (citing 8 U.S.C. §§ 1101(a)(15)(T) & (U)). No doubt preparation to apply for such visas is also covered by the TVPRA's plain language.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 47 of 52 |
|---|---|---|---|

from using appropriated funds to represent children in 'legal proceedings or matters' related to release, placement, and medication decisions." Pls.' Reply at 27. But the language in the appropriations bill that the parties cite does not require the use of funds for representation against ORR in administrative hearings. Instead, Congress used general language to appropriate funds for ORR to use, in furtherance of the TVPRA, on "legal services, child advocates, and post-release services." *See* Further Consolidated Appropriations Act, 2020, 116 Pub. L. No. 94, Title II, 133 Stat. 2534 (2019). This appropriations bill permits ORR to use the funding for "legal services" without limitation. It does not require ORR to fund any specific type of representation. Similarly, the House Appropriations Committee specifically included an additional $30 million in funding for fiscal year 2020 "to provide qualified and independent legal services for unaccompanied children, including but not limited to know-your-rights orientations, legal screenings, court preparation and assistance, representation, and pro bono referrals." H.R. Rep. 116-62, 144-45, 116th Congress, 1st Sess. (May 15, 2019). It further noted that "legal counsel for unaccompanied children increases the efficiency and effectiveness of immigration proceedings and significantly reduces the failure-to-appear rate of children who are released from HHS custody." *Id.* While immigration proceedings are heavily emphasized, nowhere does this Committee Report mention legal counsel for minors challenging ORR's administrative decisions.

Thus, Defendants are entitled to prioritize what type of legal representation ORR supports with appropriated funds, in furtherance of the TVPRA. ORR did not act arbitrarily or capriciously, or abuse its discretion, or otherwise act not in accordance with the law by choosing to fund VIJ counsel only for minors' immigration proceedings, rather than also funding challenges to its own administrative decisions. *See* 5 U.S.C. § 706(2)(A).

Accordingly, to the extent Plaintiffs' legal representation claim seeks to impose an affirmative obligation on Defendants to fund legal representatives for minors in internal ORR challenges, the Court **GRANTS** summary judgment to Defendants.

### 2. Access to and effective assistance of counsel

Although the Constitution does not guarantee them government-funded counsel, Class Members have other important constitutional rights with respect to counsel. Where the assistance of counsel is constitutionally required to protect liberty interests, sufficient access and procedural protections must be given to effectuate that right—in essence, there is some right to effective assistance of counsel. *See Kent v. United States*, 383 U.S. 541, 561 (1966) (a right to counsel is "meaningless—an illusion, a mockery—unless counsel is given an opportunity to function."). The Court concluded that due process requires that minors have access to counsel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 48 of 52 |
|---|---|---|---|---|

when challenging step-up or release decisions. Thus, by granting remedies to the step-up class
and unfit custodian class, the Court has already ruled on certain remedies sought by the legal
representation class: (1) ORR must provide NOPs to counsel and (2) ORR must permit minors
to have the assistance of counsel for their appeals of step-up and sponsor-denial decisions. In
addition, to facilitate minors' due process right to challenge ORR's administrative decisions,
ORR should promptly deliver minors' case files to legal representatives, upon request, with any
legally required redactions. *See* PSUF ¶ 250.

The Court will not require, however, ORR, third-party, and care facility decisionmakers
to include minors' counsel of record in step-up decisions and sponsorship applications beyond
the notice and appeal procedures described above. Plaintiffs offer no evidence that the risk of
erroneous step-up or sponsor denial is so great that ORR childcare professionals must
affirmatively solicit the input of outside counsel in daily decision-making. Their expert reports
comparing ORR's practices with domestic child welfare systems do not indicate that attorneys in
dependency or juvenile detention proceedings must have greater involvement than receiving
notice and participating in hearings. *See, e.g.*, PX-53 (Leonard Expert Rep.); PX-54 (Heldman
Expert Rep.) [Doc. # 272-3]. The mandatory notice of step-up and sponsor denial and the ability
to represent minors in appeals provide sufficient access to counsel to protect minors' liberty
interests.

Thus, the Court **GRANTS in part** Plaintiffs' MSJ on the legal representation class' claim
that Defendants violate due process by failing to provide certain access to counsel, and
**GRANTS in part** Defendants' MSJ because due process does not require the level of attorney
intervention that Plaintiffs seek.

The record and briefing did not provide sufficient information about the administration of
psychotropic drugs for the Court to determine what additional process, if any, is due to the legal
representative class members for whom "ORR is impeding . . . legal assistance in legal matters
or proceedings involving . . . administration of psychotropic drugs." Nov. 2, 2018 Ord. at 27.
The Court thus cannot determine, as a matter of law, what additional access to counsel is
required for those members of the legal representation class.

In addition, the Court cannot determine, as a factual matter, that ORR actively *prevents*
legal services providers from representing minors in internal ORR challenges. Plaintiffs assert
that ORR has threatened to terminate VIJ funding if a legal services provider represents minors
challenging release, placement, or medication decisions. Pls.' Reply at 29. If ORR in fact
retaliated against VIJ-funded providers for pursuing administrative challenges *pro bono*, those
actions would contravene the TVPRA's requirement that ORR ensure representation "to the

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 49 of 52 |

greatest extent practicable" in "legal proceedings or matters," particularly *pro bono* representation. 8 U.S.C. § 1232(c)(5). ORR's actions would thus violate the APA and could be set aside by this Court. 5 U.S.C. § 706(2)(A).

Defendants deny that ORR has ever refused to work with or cut funding to attorneys who challenge ORR decisions, or blocked or otherwise discouraged attorneys from representing children in ORR's care. *See, e.g.*, DSUF ¶¶ 90, 93–94; Biswas Depo. at 443:15–444:8 [Doc. # 263-5]. Defendants assert that VIJ legal services providers contracted to provide know-your-rights trainings and representation to minors in immigration proceedings may freely use outside funding to challenge ORR decisions. DSUF ¶ 90. Plaintiffs contest this characterization with hearsay evidence from legal services providers asserting that Catholic Charities and other organizations were told that they would lose their VIJ funding if they permitted attorneys to advocate for children against ORR, such as in challenging step-up decisions. *See* DX-38 (Stuart Depo.) at 75:10-25 [Doc. # 263-41]. This evidence may be considered at summary judgment because it may be introduced in admissible form at trial. *See JL Beverage Co., LLC*, 828 F.3d at 1110. The Court may not weigh, however, the credibility or strength of the evidence at this time. The parties thus dispute the facts as to whether ORR inappropriately blocks or discourages VIJ-funded attorneys who challenge ORR administrative decisions. These material disputed facts preclude summary judgment on this aspect of Plaintiffs' claim.

Accordingly, the Court **DENIES** summary judgment for both sides on the legal representation class' claim insofar as it is based on (1) lack of access to counsel to challenge decisions regarding administration of psychotropic drugs and (2) disputes of material fact as to whether ORR in fact blocks VIJ-funded providers from also representing minors, either pro bono or using outside funding, in challenging ORR administrative decisions.

E.    **Permanent Injunction**

The only remedy Plaintiffs seek in their MSJ is a permanent injunction. There can be no doubt that all of the factors supporting injunctive relief are present here. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs have succeeded on the merits of parts of their claims and are likely to suffer irreparable harm in the form of unnecessarily restrictive or prolonged detention if the required procedures are not instituted. The balance of equities also tips in their favor, and there is a public interest in ensuring the government does not violate the procedural due process rights of minors in its custody. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *Ms. L. v. U.S Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1148 (S.D. Cal. 2018), *as modified*, 330 F.R.D. 284 (S.D. Cal. 2019). In addition, to the extent any of the relief ordered was not specifically pled in Plaintiffs' Complaint, generally, "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-5741-DMG (PLAx)** | | Date | March 11, 2022 |
|---|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | | Page | 50 of 52 |
|---|---|---|---|---|

scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also* Fed. R. Civ. P. 54(c) (with the exception of default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). The Court may order injunctive relief that is tailored to address Defendants' due process violations.

But because two class claims regarding the drug administration class and disability class remain outstanding, the Court will not issue a permanent injunction at this time. Instead, pending final resolution of all claims and remedies in this case, the parties shall submit a Proposed Preliminary Injunction in accordance with the Court's rulings, which the Court will enter, subject to its review and revisions.

**VI.**
**CONCLUSION**

In the complex, dynamic immigration context, the unique vulnerabilities of unaccompanied minors who enter ORR's custody require the government to act nimbly to protect them and to allocate limited resources to maximize child welfare. The Court recognizes the dramatic improvements ORR has made since 2018, when this case was filed, in its processes for placing minors into restrictive facilities, and its promising steps toward providing more notice and appeal rights for minors and their potential sponsors. But some minors in ORR custody have suffered deprivations of liberty from placement in jail-like facilities or potentially unnecessary medical and psychiatric treatment, or long waits for family reunification decisions, with little or no recourse. Accordingly, while due process, the TVPRA, and the APA do not require the full extent of procedural protections Plaintiffs seek, ORR's current procedures still fall short of its constitutional and statutory obligations in several specific ways.

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' MSJ and **GRANTS in part** and **DENIES in part** Defendants' MSJ, and **ORDERS** as follows:

1. With respect to the step-up class:

   a. The Court **GRANTS** partial summary judgment to Plaintiffs on the due process claim. Consistent with this decision, Defendants must: (1) provide specific criteria for when minors may be transferred to an OON RTC; (2) employ a "clear and convincing" evidentiary standard in deciding when a minor should be stepped up to a more restrictive placement; (3) provide thorough NOPs, with explanation of appeal rights, to minors within 48 hours

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 51 of 52 |
|---|---|---|---|

of step-up; (4) provide the same NOPs automatically to minors' counsel of record and any parent or legal guardian on record within 48 hours of step-up; (5) expand the PRP procedure so that any minor in a medium-secure or secure placement may request PRP review as soon as he or she receives the NOP; (6) permit minors to call and cross-examine willing witnesses at PRP review; (7) require that none of the PRP panel members are an FFS involved in making the original step-up decision; and (8) set a time frame by which PRP panel decisions will be issued.

b. The Court **GRANTS** summary judgment to Defendants on the TVPRA/APA claim.

2. With respect to the unfit custodian class:

a. The Court **GRANTS** partial summary judgment to Plaintiffs on the due process claim. Defendants must: (1) ensure that written notice to denied sponsors inform them of their right to be represented by counsel at their own expense; (2) extend existing notice and appeal rights for family reunification application denials to Category 2 sponsors; and (3) instate an automatic review every 90 days of pending family reunification applications.

b. The Court **GRANTS** summary judgment to Defendants on the TVPRA/APA claim.

c. The Court **DENIES** Defendants' summary judgment motion as to the First Amendment claim without prejudice to renewal.

3. With respect to the legal representation class:

a. The Court **GRANTS** summary judgment to Defendants on Plaintiffs' due process and TVPRA/APA claim that ORR must fund their legal representation in challenging ORR's administrative decisions regarding placement, sponsorship applications, and psychotropic medications.

b. The Court **GRANTS** partial summary judgment to Plaintiffs on the due process claim that Defendants do not provide adequate access to counsel. Defendants must: (1) provide NOPs to counsel (as described in the step-up class' remedies); (2) permit minors the assistance of counsel for their appeals

CIVIL MINUTES—GENERAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-5741-DMG (PLAx) | Date | March 11, 2022 |
|---|---|---|---|

| Title | *Lucas R., et al. v. Xavier Becerra, et al.* | Page | 52 of 52 |
|---|---|---|---|

of step-up and sponsor-denial decisions (as described in the unfit custodian class' remedies); and (3) provide case files to legal representatives, upon request, with legally required redactions if necessary.

    c. The Court **DENIES** the parties' cross-summary judgment motions as to the remainder of the legal representation class' claims that relate to access to counsel to challenge decisions regarding psychotropic drugs and whether ORR blocks counsel from representing minors in challenging ORR decisions.

4. The parties shall meet and confer and submit a Proposed Preliminary Injunction consistent with this Order by **April 1, 2022**. The Court will enter the Preliminary Injunction, subject to its revisions of the parties' proposal, which will remain in effect until final judgment is entered. Should the parties agree on additional or alternate procedures to the ones ordered by the Court, they may submit a joint status report along with the Proposed Preliminary Injunction explaining their position.

**IT IS SO ORDERED**.