BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
CHRISTOPHER P. TENORIO
Deputy Assistant Attorney General
ERNESTO H. MOLINA, JR.
Deputy Director
BENJAMIN M. MOSS
NANCY K. CANTER
Senior Litigation Counsel
JONATHAN K. ROSS
ANTHONY J. MESSURI
Trial Attorneys
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-9344
Ernesto.H.Molina@usdoj.gov
*Counsel for Respondents*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lucas R., *et. al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>Xavier Becerra,<br>Secretary of U.S. Dep't of Health and Human Services, *et al.*,<br><br>    *Defendants*. | Case No.: 18-cv-05741-DMG-PLA<br>**DEFENDANTS' STATEMENT AND PROPOSED PRELIMINARY INJUNCTION IN RESPONSE TO THE COURT'S MARCH 11, 2022 ORDER**<br>Honorable Dolly M. Gee<br>United States District Judge |

## I.   INTRODUCTION

In its March 11, 2022 Order, ECF 376, the Court directed the parties to meet and confer and to submit a proposed preliminary injunction consistent with the Court's ruling on the parties' cross motions for partial summary judgment.   The parties met and conferred on March 18, March 23, March 28, March 30, and March 31.   On April 1, 2022, Defendants contacted Plaintiffs to coordinate final filing duties of the parties' joint motion.   Plaintiffs nonetheless insisted on filing. However, at 2:34 a.m. EST, Plaintiffs informed Defendants that they were essentially on their own and that Plaintiffs would pursue a unilateral submission. Accordingly, Defendants submit this report, memorializing Plaintiffs' position on the joint filing and containing Defendants' statement and proposed preliminary injunction.   In its March 11, 2022 Order, the Court instructed the parties to meet and confer and submit a Proposed Preliminary Injunction and provided that "[s]hould the parties agree on additional or alternate procedures to the ones ordered by the Court, they may submit a joint status report along with the Proposed Preliminary Injunction explaining their position." ECF 376 at 52.   The parties met and conferred on March 18, March 23, March 28, March 30, and March 31 and were able to reach partial agreement on the terms of a proposed order.   During those conferences, the parties discussed the joint filing, including using the opportunity to present the parties' views on where the parties agree and disagree, and where to suggest modifications as warranted.

This filing includes a statement prepared by Defendants in response to Plaintiffs' Proposed Preliminary Injunction, Defendants' Proposed Preliminary Injunction (Defs.' Ex. B), which is a "clean" version (that is, no tracked changes are visible) of Defendants' proposed language, built on Plaintiffs' Proposed Preliminary Injunction, and a version of the same document with Defendants' proposed changes to Plaintiffs' proposed language visible with tracked changes, (Defs.' Ex. C.)

Defendants' Statement and Proposed Preliminary Injunction

Despite Defendants' offer to coordinate final filing duties, Plaintiffs insisted on finalizing filing and, at 2:36 a.m. EST, informed Defendants that Plaintiffs rejected Defendants' submission and that Plaintiffs would pursue a unilateral submission. Accordingly, Defendants submit this report, memorializing Plaintiffs' position on the joint filing and containing Defendants' statement and proposed preliminary injunction.

## II.   DEFENDANTS' ORIGINAL STATEMENT REGARDING THE COURT'S PRELIMINARY INJUNCTION.

In its March 11, 2022 Order, ECF 376, the Court directed the parties to meet and confer and to submit a proposed preliminary injunction consistent with the Court's ruling on the parties' cross motions for partial summary judgment.[1] The parties met and conferred on March 18, March 23, March 28, March 30, and March 31 and have reached partial agreement on the terms of a proposed order. In response to Plaintiffs' Proposed Preliminary Injunction, Defendants submit Defendants' Proposed Preliminary Injunction (Defs.' Ex. B), which is a "clean" version (that is, no tracked changes are visible) of Defendants' proposed language, built on Plaintiffs' Proposed Preliminary Injunction. Defendants also submit a version of the same document with Defendants' proposed changes to Plaintiffs' proposed language visible with tracked changes. (Defs.' Ex. C.)

Defendants' proposed preliminary injunction sufficiently defines the contours of injunctive relief that the Court outlines in its March 11 Order, while recognizing Defendants' significant interest in flexibility to exercise its

---

[1] Defendants propose the terms of this injunction on a conditional basis, preserving their right to challenge the injunction in future litigation. That is, in complying with the Court's March 11 Order requiring the parties to propose terms for an injunction, Defendants nevertheless respectfully preserve arguments made in the summary judgment briefing, object to the issuance of this injunction, and do not concede that Plaintiffs have demonstrated entitlement to an injunction, or that the terms proposed by the parties are required.

Defendants' Statement and Proposed Preliminary Injunction

professional judgment in protecting the rights to which the Court has determined Plaintiffs are entitled.  For all the reasons that follow, Defendants ask the Court to adopt their proposed preliminary injunction.

### A.    Areas of agreement

The parties agree that certain terms should appear in a preliminary injunction that implements the Court's March 11 Order.  These areas of agreement are reflected in the plain, unmarked text of the redlined draft proposed injunction attached to this filing, Defs.' Ex. C (with the revisions reflecting areas where the parties disagree).

One such area of agreement concerns who may review Category Two sponsor denials.  The Court required in part that Defendants "extend existing notice and appeal rights for family reunification application denials to Category 2 sponsors[.]"  ECF 376 at 51.  Defendants' need for operational flexibility renders wholesale application of appeal procedures for Category One denial decisions to Category Two denial decisions to be impracticable, beyond that which due process requires given the lesser liberty interest in more attenuated family relationships, and not, Defendants believe, what the Court intended to order.  *See, e.g.*, *Osborne v. Cty. of Riverside*, 385 F. Supp. 2d 1048, 1054-55 (C.D. Cal. 2005) (explaining the differing liberty interests between adults within a minor's nuclear family, extended family, and others).  At present, in recognition of the importance of the parent-child relationship, Category One sponsor denials are subject to Director review and, if requested, further review by the Assistant Secretary of HHS.  That choice was made based, in part, on expected workloads.  Defendants propose that Category Two sponsor denials be subject to review by the Director *or a designee* and, if requested, further review by the Assistant Secretary of HHS *or a designee*.  This would allow the Court's directives to be implemented both expeditiously and effectively, while recognizing Defendants' need for operational flexibility.   Plaintiffs do not appear to object to Defendants' proposal in this regard.

3

Defendants' Statement and Proposed Preliminary Injunction

Conversely, if the Court were to require review of Category One and Category Two sponsor denial decisions by only the Director and Assistant Secretary (without allowing designees to conduct that review), such a requirement would not only overlook Defendants' need for flexibility, but would necessarily take these individuals away from other essential duties and bottleneck the release process, in direct contradiction of the Court's goal of remedying long waits for family reunification decisions. *See* ECF 376 at 50. And Defendants explained that such a drastic change to the appeals process would create a whole new category of cases that require director-level review, running afoul of *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 611 (S.D.N.Y. 2018) (striking down a prior director-level review policy).

Moreover, no interest would be furthered by precluding review of Category Two sponsor denials by either the Director *or a designee* and, if requested, further review by either the Assistant Secretary of HHS *or a designee*. Absent constitutional constraints or extremely compelling circumstances, "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (quotation omitted). And as addressed above, courts should not order agencies to act in ways that that agency already does, particularly where such action would subject the agency to the court's continuing jurisdiction. *See Pub. Util. Comm'n*, 100 F.3d at 1458; *see also Hyatt v. U.S. Pat. & Trademark Off.*, 146 F. Supp. 3d 771, 783 (E.D. Va. 2015) ("there is no agency action to compel because the administrative record clearly shows that the [agency] is now doing all that it is required to do."). Thus, the Court should deem sufficient the parties' proposal regarding Category Two sponsor denials.

**B.      Areas of disagreement, and areas where Defendants believe
clarification is needed**

As noted, the parties have not been able to reach an agreement concerning
all the terms of the proposed preliminary injunction.  Defendants' proposed
language on these disputed terms is reflected in tracked changes in the redlined
draft order attached to this filing (Defs.' Ex. C).  As the Court will see, Defendants
have proposed their own draft language that they believe faithfully implements the
Court's March 11 Order subject to certain modest proposed flexibilities  noted
below.  Defendants take this opportunity to highlight  certain key areas of
disagreement and Defendants' reasoning why Defendants' proposed language is
true to the letter and spirit of the Court's Order.

**i.      The Court has already identified a number of ORR
procedures that it found adequate and the Court should not
order ORR to take actions it already takes or make the
Court's suggestions mandatory.**

Generally, courts should not order an agency to act in ways that it already
does.  Mandating an agency to continue actions it already performs is particularly
inappropriate where doing so would subject the agency to continuing court
jurisdiction and hinder the government's ability to act nimbly by providing
different but equally permissible procedures in the future.  *See, e.g.*, *Pub. Util.
Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (observing that when an
administrative agency has performed the action sought by a plaintiff in litigation,  a
federal court "lacks the ability to grant effective relief").

Indeed, the Court's March 11 Order recognized that in the "complex,
dynamic immigration context, the unique vulnerabilities of unaccompanied minors
who enter ORR's custody require the government to act nimbly to protect them
and to allocate limited resources to maximize child welfare." *See* ECF 376 at 50.
With regard to both the step-up class and the unfit custodian class, the Court has

expressly cautioned against limiting Defendants' ability to exercise its professional judgment in imposing significant additional procedures. *See, e.g.*, ECF 376 at 38 ("Due to the unique circumstances posed by Class Members' unaccompanied status, the Court accords significant weight to Defendants' interest in flexibility to exercise professional judgment."), 41 ("The need for ORR to maintain some flexibility over this complex process counsels against imposing any stricter administrative deadlines on a class-wide basis.").

And the Court's March 11 Order identified numerous instances where ORR already provides sufficient procedures. *See, e.g.*, ECF 376 at 26 ("ORR appears already to have addressed many of the asserted deficiencies with its [placement] procedures."), 29 ("According to ORR's current practice, NOPs should always be provided either before step-up or within 48 hours of transfer, as well as every 30 days the minor remains in a secure placement, in a language the minor understands and explained to the minor by a Case Manager."), 30 ("Prior to issuing an NOP, the case management team is not required to involve minors' counsel in the step-up decision, although any care facility, third-party contractor, or ORR employee remains welcome under ORR's policies to communicate with counsel if they wish."), 30-31 ("[T]he required 30-day administrative review for all stepped-up placements, along with the more intensive 90-day review for minors in secure facilities, already provides automatic procedural safeguards for minors."), 31 ("[F]or minors in RTCs, ORR requires review every 30 days by a psychiatrist or psychologist to determine whether the minor should remain in restrictive residential care. . . . This is the sort of review by an independent staff physician deemed acceptable in *Parham*."), *id.* ("The Court finds most of the PRP procedures sufficient to ensure a fundamentally fair hearing for the minors who may currently request it."), 33 ("Plaintiffs have not established that any additional procedure is necessary with respect to translation or interpretation."), 39 ("The [existing Category One sponsor denial] hearing policies provide the fundamental hallmarks

Defendants' Statement and Proposed Preliminary Injunction

of due process, including review by a neutral factfinder who is not involved in the original denial. The Court would only add that the notice must inform denied sponsors that they are entitled to be represented by counsel."), 40-41 (finding that ORR's current practices concerning provision of notice of sponsorship denials to minors are sufficient), 41 ("[F]or the most part, ORR's existing timeframes [for determinations on sponsorship applications] are sufficient."), 42 ("Plaintiffs have not proposed any specific procedures to cabin what they perceive as ORR and care facilities' excessive discretion, and the Court does not find any are necessary."), 48 ("The Court will not require . . . decisionmakers to include minors' counsel of record in step-up decisions and sponsorship applications beyond the notice and appeal procedures described above").

Yet, Plaintiffs nevertheless propose that procedures that ORR already provides, many of which the Court has deemed sufficient, must be memorialized in a preliminary injunction.  For instance, citing page 41 of the Court's March 11 Order, Plaintiffs ask the Court to order that "Case managers must begin working on family reunification within 24 hours of receiving a minor."  Pls. Proposed PI at 3 ¶ 2.  But there the Court merely described ORR's existing release procedures, noting that they already include such a requirement. And ordering ORR to perform actions it already performs not only is unnecessary and contrary to law but will hinder Defendants' ability to act nimbly in the future by providing different yet equally permissible procedures when circumstances so require.  *See* ECF 376 at 50 (acknowledging "the dramatic improvements ORR has made since 2018").  The Court should therefore reject Plaintiffs' request to order ORR to take actions that it already takes.[2]

_____

[2] Defendants submit the following additional examples of Plaintiffs proposing procedures that ORR already provides (including referencing ORR's Policy Guide and MAP): *Compare* MAP § 2.2.2 (FRAs submitted by Category 1 and Category 2A sponsors should be processed within 10 calendar days of receipt and Category 2B sponsors within 14 calendar days of receipt), *with* Pls. Proposed PI at 3 ¶ 3;

Defendants' Statement and Proposed Preliminary Injunction

It is especially critical that ORR be permitted to retain operational flexibility to respond to the myriad, unpredictable challenges it regularly confronts. In addition to seasonal fluctuations in migration patterns and recent events such as the Afghan evacuation and the war in Ukraine, shifts in public health and immigration policy could significantly impact ORR operations and may require adjustments to current ORR policy. For instance, today, the Centers for Disease Control and Prevention (CDC) issued a Public Health Determination and Order Regarding the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists ("April 1, 2022 Order"). *See* https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/Final-CDC-Order-Prohibiting-Introduction-of-Persons.pdf. The April 1, 2022 Order terminates CDC's emergency public health orders issued pursuant to 42 U.S.C. sec. 265 (i.e., Title 42) in their entirety by May 23, 2022. As a result, the U.S. Department of Homeland Security (DHS) anticipates a significant increase in the number of encounters with non-citizens. *See* DHS, FACT SHEET: DHS Preparations for a Potential Increase in Migration (Mar, 30, 2022), https://www.dhs.gov/news/2022/03/30/fact-sheet-dhs-preparations-potential-

---

*compare* Policy Guide § 2.7.7 (extending existing notice and appeal procedures afforded to Category 1 proposed custodians to Category 2 proposed custodians), *with* Pls. Proposed PI. at 4-5 ¶ 8-9; *compare* Policy Guide § 2.7.8 (Assistant Secretary conducts a de novo review of Category 1 release denials and may affirm or overturn the ORR Director's decision or send the case back to ORR for reconsideration), *with* Pls. Proposed PI at 5-6 ¶ 9 subpart g.; *compare* Policy Guide § 1.2.4, MAP §§ 1.2.4 and 1.4.3 (ORR shall provide minors with a NOP pursuant to the policy guide and MAP in effect as of the date of the Court's Order), *with* Pls. Proposed PI at 6-7 ¶ 3; *compare* Policy Guide Section 1.4.2 and MAP § 1.4.2 (30 day administrative review for all restrictive placements, 90 day review by ORR supervisors for minors in secure facilities), *with* Pls. Proposed PI at 9-10 ¶ 7 subpart a; *compare* Policy Guide 1.4.2 (Review every 30 days by a psychiatrist or psychologist to determine whether the minor should remain in restrictive residential care), *with* Pls. Proposed PI at 10 ¶ 7 subpart b.

Defendants' Statement and Proposed Preliminary Injunction

increase-migration ("DHS is implementing a comprehensive strategy to address a
potential increase in the number of border encounters."). Given the dynamic and
unpredictable nature of the challenges confronting ORR, ORR should not be
required to ossify current agency policy in granular detail in an injunction.

The Court should also decline Plaintiffs' request to convert the Court's
suggestions into obligations. For instance, the Court offered a suggested timeline
for the appeals process concerning denials of sponsorship applications: "The
*suggested* timeline is for ORR to acknowledge a request for appeal within five
business days and to complete the appeal process within 30 days." Op. at 39
(emphasis supplied). Plaintiffs' proposal would remove the agency's discretion to
consider the Court's suggestion by weighing various permissible options, and
instead would impose the Court's suggestion upon the agency by injunction. Pls.
Proposed PI at 5 ¶ 9(a). Ultimately, the Court should decline Plaintiffs' attempts to
convert any of the Court's suggestions into mandatory procedures. *See, e.g.*,
https://www.merriam-webster.com/dictionary/suggest (viewed April 1, 2022)
("Suggest" means, inter alia, "to mention or imply as a possibility").

### ii. The Court should deem sufficient Defendants' proposal regarding medium-secure facilities.

In its March 11 Order, the Court required in part that the Placement Review
Panel ("PRP") be made an agency-wide policy and expand its availability to all
minors in "a medium-secure or secure placement" facility.[3] ECF 376 at 32, 50-51.

---

[3] Defendants note that, in its December 22, 2020 oral tentative ruling, the Court
acknowledged a lack of sufficient information in the record to determine that
liberty interests are implicated in medium-secure facilities inasmuch as the only
meaningful restriction came in the form of an increase in the ratio of caregivers to
minors, and any ruling on the step-up class should be limited to juvenile detention
facilities and resident treatment centers. ECF 317 at 4:5-25. While the Court's
December 22, 2020 statements were tentative, the March 11 Order does not
explain the Court's significant departure from that tentative ruling on the topic of
medium-secure facilities. *See* ECF 376 at 20. To the extent factual issues remain

Defendants' Statement and Proposed Preliminary Injunction

Presently, the PRP is a pilot program that provides minors, who have spent 30 days in a secure facility, an opportunity to seek placement review by three ORR staff members with several years of experience as professionals in the fields of child welfare, mental health, and related policy. ECF 376 at 10, 31.

The parties agree that, merits aside, under the Court's decision, all step-up class members should be afforded the opportunity to request affirmative review upon receipt of a Notice of Placement (NOP) in a restrictive setting. Given the Court's addition of staff-secure facilities and the likelihood that many more minors will be seeking time-consuming administrative review of their step-up decisions thereby significantly increasing ORR's administrative burden, Defendants propose that ORR have the operational flexibility to have the administrative review conducted either by the PRP, or by an alternative neutral and detached decision maker who was not involved in the step-up decision, following the same (or equivalent) due process procedures as the PRP, which this Court found largely sufficient (ECF 376 at 31). Such operational flexibilities are particularly important given the ever-evolving, manifold complex challenges that ORR is facing simultaneously, as are described, *supra*, at 6.

In response, Plaintiffs seek to require significantly more expansive and restrictive injunctive relief than the Court's March 11 Order contemplates, including various strict timelines for PRP processes, which the Court not only did not actually order, but that are onerous for ORR. These tight timeframes stand in direct contrast to the flexibility the Court deemed necessary for the agency to function in the unique and complex context of caring for unaccompanied children. For example, Plaintiffs request that ORR:

---

outstanding concerning whether the conditions at ORR's grantee staff-secure facilities genuinely represent a level of physical restriction beyond that experienced in shelters such that they would implicate a liberty interest in being detained at a shelter as opposed to a medium-secure, summary judgment would be inappropriate, and the factual issue must be decided at trial.

- deliver a minor's complete case file within seven days of their request (Pls. Proposed PI at 9 ¶ 6.c), whereas the Order is silent as to timeframe and only the evidence relied upon for step-up is needed for PRP or other administrative review (*see* ECF 376 at 48);

- provide PRP hearings within seven days of a minor requesting PRP review (Pls. Proposed PI at 10 ¶ 6.h), whereas the Order is silent as to timeframe (*see* ECF 376 at 33, 51); and

- issue PRP decisions within seven days of a minor's PRP hearing (Pls. Proposed PI at 10 ¶ 6.h), whereas the Order expressly allows the parties to "agree upon a different timeline" (ECF 376 at 33, 51).

Similarly, Plaintiffs also ask the Court to impose the burden on ORR of providing by clear and convincing evidence that sufficient grounds exist for continuing to hold a minor in a restrictive placement (Pls. Proposed PI at 6 ¶ 2, where the Order only required that ORR have such an evidentiary burden as to the grounds for stepping up a minor to a restrictive placement (ECF 376 at 29).

Plaintiffs likewise urge that the preliminary injunction mandate PRP procedures that ORR already provides and that the Court deemed "sufficient to ensure a fundamentally fair hearing" (ECF 376 at 31). For example, Plaintiffs request that ORR:

- allow a minor or minor's counsel to review the evidence in support of step up before the PRP is conducted (Pls. Proposed PI at 9 ¶ 6.b);

- permit the minor an opportunity to provide the PRP with a written statement or request a hearing concerning step-up or continued placement (Pls. Proposed PI at 9 ¶ 6.d); and

- comprise the PRP of three ORR staff members with several years of experience as professionals in the fields of child welfare, mental health, and policy related to child welfare and mental health (Pls. Proposed PI at 9 ¶ 6.g).

1    Plaintiffs fail to acknowledge that these and other provisions are already

2 included in the PRP process, nor do they explain why such provisions should be

3 memorialized in a preliminary injunction.

4    Plaintiffs also ask the Court to Order ORR to provide automatic

5 administrative reviews, including a 30-day administrative review for all restrictive

6 placements and a 90-day review by ORR supervisors for minors in secure facilities

7 (Pls. Proposed PI at 10 ¶ 7.a) -- notably, reviews that ORR already conducts. As

8 discussed, *supra* at Defendants' Statement section B(i), the Court's March 11

9 Order in no way requires provisions that simply require ORR to do what is already

10 in its policies and procedures.  Finally, Plaintiffs insist that ORR need not be

11 provided operational flexibility to have some administrative reviews for step-ups to

12 staff-secure facilities be conducted by an alternative neutral and detached decision

13 maker, even though ORR would follow the same (or equivalent) due process

14 procedures as the PRP – more than amply fulfilling the spirit if not the absolute

15 letter of the Court's March 11 Order.  Pls. Proposed PI at 8, ¶ 6.

16    **iii.    The Court should frame its language concerning third**

17    **parties in terms of policies ORR is required to adopt, not in**

18    **terms of obligations imposed on case managers.**

19    Plaintiffs impermissibly seek to apply the preliminary injunction beyond

20 ORR to individuals who are not parties to this action.  For example, Plaintiffs

21 propose that the Court enjoin case managers and others to take certain

22 actions. *E.g.*, Pls.' Proposed PI at 3 ¶ 2 ("Case managers must begin working on

23 family reunification within 24 hours of receiving a minor."); *id.* at 7 ¶ 3(d) ("A

24 Case Manager shall explain the NOP to the minor, in a language the minor

25 understands.").  But, subject to exceptions, "a court generally may not issue an

26 order against a nonparty." *United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir.

27 1992).  One such exception, Rule 65(d) of the Federal Rules of Civil Procedure,

28 provides in relevant party that an "order granting an injunction . . . is binding only

upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order." Fed. R. Civ. P. 65(d). Plaintiffs' inclusion of shelters, other grantee care providers, and case managers (i.e., individuals not within ORR's immediate control) in the proposed preliminary injunction goes well beyond binding ORR's agents, employees, or persons in active concert or participation with it as Rule 65(d) permits. The text of Rule 65(d) is exclusive, stating that an injunction can permissibly bind "only" those persons listed in Rule 65(d). *See Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009); *see also South Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 168 (1999) (holding that the fact that the nonparty entities and the federal defendants share the same interests "created no special representational relationship between [them]."). In any event, Plaintiffs' proposed language is impracticable and unnecessary and possibly serves as a disincentive to participation in ORR programs based on a perceived threat of the Court's enforcement mechanism. Defendants suggest that the Court's injunctive authority is more wisely wielded in assuring that ORR takes steps to assure that it grantees and other participants are required to comply with the injunction's requisites (and ORR policy stemming therefrom).

**C.     The Court should recognize operational difficulties inherent to implementing the injunction by allowing the agency 120 days to do so.**

The Court should permit its preliminary injunction to become effective 120 days following service upon Defendants. Good cause supports this request, as the injunctive relief that the Court contemplated in its March 11 Order and will specify in its forthcoming preliminary injunction will take time to implement, particularly in response to ORR's limited resources, the changes to emergency public health orders referenced above, and ongoing global humanitarian events.

Defendants' Statement and Proposed Preliminary Injunction

**D.     Conclusion**

For the foregoing reasons, the Court should adopt Defendants' proposed preliminary injunction.

**III.   PLAINTIFFS' POSITION ON JOINT FILING**

At 11:34 p.m. PST, Plaintiffs informed Defendants of the following:

Judge Gee ordered that "[s]hould the parties agree on additional or alternate procedures to the ones ordered by the Court, they may submit a joint status report . . . ." What Defendants have prepared and sent after 11 PM, is a 12-page brief that re-argues points from the summary judgment briefing and is, for all intents and purposes, a motion for reconsideration despite Defendants now being beyond their time. Plaintiffs will not condone this sort of gamesmanship and will move ahead with a unilateral submission. Defendants are free to submit what they choose and Plaintiffs will, as needed, respond separately.

//

//

Defendants' Statement and Proposed Preliminary Injunction

Dated: April 1, 2022                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        CHRISTOPHER P. TENORIO
                                        Deputy Assistant Attorney General

                                        */s/ Ernesto H. Molina*
                                        ERNESTO H. MOLINA
                                        Deputy Director

                                        BENJAMIN M. MOSS
                                        NANCY K. CANTER
                                        Senior Litigation Counsel

                                        JONATHAN K. ROSS
                                        ANTHONY J. MESSURI
                                        Trial Attorneys
                                        Office of Immigration Litigation
                                        United States Department of Justice
                                        P.O. Box 878
                                        Ben Franklin Station
                                        Washington, D.C. 20044
                                        Telephone: (202) 616-9344
                                        Ernesto.H.Molina@usdoj.gov

                                        *Counsel for Defendants*

Defendants' Statement and Proposed Preliminary Injunction

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2022, I electronically transmitted the forgoing document to the Clerk for the United States District Court for the Central District of California using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Respectfully submitted,

*/s/ Ernesto H. Molina*
ERNESTO H. MOLINA
Deputy Director
Office of Immigration Litigation
United States Department of Justice