# ATTACHMENT A

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
CARLOS R. HOLGUÍN (90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 290-1642
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*

*Additional counsel listed on following page and signature blocks*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al., <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, et al., <br><br> Defendants. | No. 2:18-CV-05741 DMG PLA <br><br> **PLAINTIFFS' ADVISAL PENDING ISSUANCE OF PRELIMINARY INJUNCTION** <br><br> Complaint Filed: June 29, 2018 <br> Judge: Hon. Dolly M. Gee |

UNIVERSITY OF CALIFORNIA DAVIS SCHOOL OF LAW
HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
JONATHAN P. MULLIGAN (CAL RLSA NO. 803383)
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
          ccwhite@ucdavis.edu
          jmulligan@ucdavis.edu

NATIONAL CENTER FOR YOUTH LAW
NEHA DESAI (CAL. RLSA NO. 803161)
POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email:  ndesai@youthlaw.org
          pjuneja@youthlaw.org
          fpitts@youthlaw.org
          mwroe@youthlaw.org
          madamson@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
BRENDA SHUM (OR. BAR NO. 961146), *admitted pro hac vice*
CRYSTAL ADAMS (308638)
712 H Street NE, DPT #32020
Washington, DC 20002
Telephone: (202) 868-4785
Email:  bshum@youthlaw.org
        cadams@youthlaw.org

COOLEY LLP
SUMMER J. WYNN (240005)
MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
REBECCA L. TARNEJA (293461)
ALEXANDRA R. MAYHUGH (300446)
JAMIE D. ROBERTSON (326003)
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email:  swynn@cooley.com
        mmcmahon@cooley.com
        rtarneja@cooley.com
        amayhugh@cooley.com
        jdrobertson@cooley.com

*Attorneys for Plaintiffs*

ii

1    On April 1, 2022, as the Court directed in its order granting in part and denying

2 in part the parties' cross-motions for partial summary judgment (ECF No. 376),

3 Plaintiffs filed a proposed order[1] that would grant preliminary injunctive relief to

4 children who are —

5    1) "Stepped up" to a facility more restrictive than a licensed juvenile

6 shelter: *i.e.*, staff-secure, therapeutic staff-secure, secure, or residential treatment

7 center, including equivalent out-of-network placements;

8    2) Continued in a restrictive facility in lieu of being "stepped down" to a

9 licensed juvenile shelter; or

10    3) Denied release to parents or other close family members, or whose release to

11 such custodians is unreasonably delayed.

12 ECF No. 379-1.

13    Although Plaintiffs await issuance of a preliminary injunction, they would be

14 remiss in their duty to vigorously represent unnamed class members were they not to

15 apprise the Court that children are continuing to suffer irreparable injury in the

16 absence of preliminary injunctive relief.  The declarations annexed to this filing

17 illustrate the following:

18 **I.   CLASS MEMBERS STEPPED UP AND CONTINUED IN RESTRICTIVE FACILITIES**
19 **WITHOUT RECOURSE.**

20    J.A.S.G. is a 15-year-old class member who, as of June 13, 2022, ORR was

21 detaining at the Friends of Youth therapeutic staff-secure facility in Renton,

22 Washington.  Declaration of J.A.S.G., June 13, 2022, Ex. 1 ¶ 1.  He reports that upon

23 being released from a Texas treatment program, ICE agents took him into custody and

24 transported him, handcuffed and shackled, to the Shenandoah Valley Juvenile Center,

25 a secure juvenile jail in Virginia, where ORR confined him for some 54 days.  *Id.*

26 _____

27 [1] Although the Court's order contemplates that the Parties would submit a joint
proposed preliminary injunction, the Parties were unable to agree on a proposed order

28 and accordingly lodged separate proposals. (ECF Nos. 379 and 380.)

**ADVISAL PENDING ISSUANCE OF PRELIMINARY
INJUNCTION
NO. 2:18-CV-05741 DMG PLA**

¶¶ 4-5. Subsequently, ORR transferred him to the Friends of Youth staff-secure facility, where it has detained him for about a year and a half now. *Id*. ¶ 6. J.A.S.G. declares, "I have seen many other youth who arrived after me leave. I want to go to a foster home, and I believe I have been ready to do so for about five months now, because I once again feel like a normal person, but there is no committee or hearing or other way I can prove to them that I am ready to be stepped down." *Id.*

According to class member M.M.P., ORR stepped him up from a Southwest Key shelter in Phoenix, Arizona, to the Friends of Youth therapeutic staff-secure facility, where, as of as of June 13, 2022, it had detained him for about eight months. Declaration of M.M.P., June 13, 2022, Ex. 2 ¶ 5-6. He declares, "I have complied with all the classes and assignment, and am not sure why I am still here. . . . In April 2022, both my therapist and my California probation officer recommended that I be released because I have completed my program and I am not a danger." *Id.* ¶ 9.

Additionally, M. Vaneza Alvarado, a lead attorney with Refugee and Immigrant Center for Education and Legal Services (RAICES), the largest legal aid group of its kind in Texas, describes two clients for whom she would have utilized a review process to contest step-up decisions that she believes were unnecessary, including one step-up decision that resulted in the separation of a minor parent and her child. Declaration of M. Vaneza Alvarado, July 8, 2022, Ex. 7, ¶¶ 3-4, 8-15.

## II.   CLASS MEMBERS REFUSED RELEASE TO PARENTS AND OTHER CLOSE FAMILY WITHOUT DUE PROCESS.

S.S.T.P. is a 13-year-old class member whom ORR has reportedly detained at the Friends of Youth staff-secure facility since mid-July of 2021. Declaration of S.S.T.P., June 13, 2022, Ex. 3 ¶ 1. He declares, "I have complied with all the program of therapy, and for a month now I have felt ready to go back to my mom and my family. Nonetheless, I have no idea when they are going to release me. My case worker says that they've not even begun a home study or anything else of the process so I can go back with my family. I speak with my mother almost everyday, and she

ADVISAL PENDING ISSUANCE OF PRELIMINARY
INJUNCTION
NO. 2:18-CV-05741 DMG PLA

says it is not right what they are doing in my case and that she is sad because I continue to be detained and not with my family." *Id.* ¶ 3.

Similarly, ORR has reportedly detained class member E.R.C.C. for nearly five months, first at the Ft. Bliss Emergency Intake Site and then at Southwest Key Casa Franklin shelter.  Declaration of E.R.C.C., June 17, 2022, Ex. 4 ¶¶ 4-7.  He reports that he is "tired of being locked up here" and wants "to be able to go and live with [his] family."  Ex. 4 ¶ 8.  ORR refused to release E.R.C.C. to his sister, and he reports not knowing why.  *Id.* at ¶ 23. He states, "I wish there was some way I could appeal that decision because I want to live with my sister. I would like for someone to look at my sister's case again and reconsider her as a sponsor." *Id.*

Class member M.D.P, age 14, has been in ORR custody since February 2022 and hoped to reunite with his adult brother.  Declaration of M.D.P., June 16, 2022, Ex. 5 ¶¶ 2, 17-18.  But, as M.D.P. understands it, ORR refused to release him to his brother because the brother was unable to find a new place to live within the short time ORR allowed him to relocate.  *Id.* at ¶ 17.  After languishing in custody for over four months, M.D.P. reports having despaired of ever being released and has now decided to repatriate.  *Id.*  "After [rejecting my brother] they told me that I could either find another sponsor, stay in shelter care, or go back to Guatemala.  Since I don't have another option for a sponsor, . . . and I don't want to keep living here for years and years so I'm going to try and go back to Guatemala." *Id.*

## III.  CONCLUSION

The foregoing examples are representative of the treatment a relatively small, but significant, number of children in ORR custody are routinely experiencing.  The absence of due process protections is causing these children irreparable injury.  Indeed, Nadia Soledad Pérez, an accredited representative with RAICES declares: "During my time working at RAICES . . . I became aware that some of the minors in staff secure were detained there longer than a month and were not allowed to be

ADVISAL PENDING ISSUANCE OF PRELIMINARY
INJUNCTION
No. 2:18-CV-05741 DMG PLA

1   stepped down even if they behaved.  This caused the minors shelter fatigue which in
2   turn caused them to get into trouble and stay there longer or be transferred to a more
3   restrictive setting, sometimes even [] therapeutic shelters where they were prescribed
4   medications." Declaration of Nadia Soledad Pérez, June 24, 2022, Ex. 6 ¶¶ 1, 17-18.

5        While Defendants may dispute the accounts set out in the annexed declarations
6   for ORR's decisions to refuse to step down or release class members to their parents
7   and other close relatives, any such disagreement is immaterial.  The purpose of the
8   relief the Court has indicated it will order is to afford children a forum in which
9   ORR's grounds for placing them in restrictive facilities or declaring their family
10   members unfit may be transparently and fairly evaluated.

11        As Ms. Pérez observes, "In my experience, minors, even if not our clients,
12   value processes which allow them the opportunity to be heard and express their side of
13   the story.  This helps legal service providers to build trust and rapport with the minors
14   which in turn allows any legal service provider working with the minors to have a
15   better understanding of their case when evaluating for relief." *Id.* ¶ 20.

16        The foregoing illustrates that class members' need for transparency and
17   procedural protection remains unabated despite the Court's summary judgment order.
18   Plaintiffs urge the Court to issue preliminary injunctive relief giving effect to that
19   judgment at its earliest opportunity.

20   Dated:  July 18, 2022                    Respectfully submitted,

21

22                                   By: */s/ Summer J. Wynn*
23                                        Summer J. Wynn (240005)
                                         Cooley LLP
24                                        Email: swynn@cooley.com
                                         Attorneys for Plaintiffs
25

26

27

28

# EXHIBIT 1

# <u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

DECLARATION OF ███████████████

I, ████████████████████, declare and say as follows:

1. I am 15 years old. I am from Honduras. My immigration file number is ████████. I am currently detained at the Friends of Youth staff secure facility in Renton, Washington, where I have been since January 21, 2021.

2. I came to the United States after my father died in Honduras. My mother was living in Houston, and my plan was to live with her. I surrendered at the border and spent about a week in a Border Patrol station or hielera before ORR took me and sent me to Abbot House, a foster home in New York, where I stayed for about four months before they released me to go live with my mom.

3. About eight months after I began living with my mom, I got into trouble, and the police arrested me and charged me with delinquency for sexual misconduct. My therapist has told me that I engaged in this conduct because of abuse I had suffered in Honduras.  I was given probation for two years, which ended in April of 2022. A condition of my probation was that I had to go to a treatment program called Ragdale Facility, in Houston, Texas, for at least nine months. I did well at Ragdale and even learned English, and so they decided to release me after I had spent the minimum amount of time there.

4. When they released me from Ragdale, two ICE officers came for me. They handcuffed and shackled me, and put me alone into the back of a van. The two officers

rode in front, while I was handcuffed to a rail in the back of the van. I was 14 years old at the time. I now weigh about 118 pounds and am five feet and five inches tall. I was smaller then. They took me to a hotel, where I spent four or five days in a room with two large ICE agents always present.

5. I was then put on a plane and flown to Virginia. I was similarly handcuffed and shackled on the trip to the airport, on the plane, and during transport to to the Shenandoah Valley Juvenile Center, where I ended up spending about 54 days. I was never given an explanation about why I had been sent to Shenandoah, or any opportunity to show that I didn't belong there. In fact, a couple of staff members there asked why I was there, saying they didn't think I should be in a juvenile hall. My therapist there also told me that he didn't think I belonged there, and that ORR had just sent me there because they didn't know what else to do.

6. I was next sent here, to the Friends of Youth staff secure facility, where I have now been about a year and a half. I have seen many other youth who arrived after me leave. I want to go to a foster home, and I believe I have been ready to do so for about five months now, because I once again feel like a normal person, but there is no committee or hearing or other way I can prove to them that I am ready to be stepped down.

7. The treatment I get here, except for school, is pretty good, overall. I can honestly say that I have learned nothing about anything besides math in the time I've

been here. When I complain about the lack of instruction in other subject to the teacher, he scolds me and tells me to watch another video. Also, school here isn't like normal school, where there are vacations for summer or most holidays.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of June, 2022, at Renton, Washinton.

/s/ _____

███████████████████████████

Declaro bajo protesta de decir la verdad y pena de falso testimonio que toda la

información que aquí he proporcionado es correcta y completa.

Hecho el día 13 de julio del año 2022, en Renton, Washington.

_____

*III* I declare under penalty of perjury that the foregoing is true and correct.
Executed this 13th day of June, 2022, at Renton, Washington.

# EXHIBIT 2

# <u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

**DECLARATION OF** ███████████████

I, ████████████████, declare as follows:

1.      I execute this declaration based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about the following facts.

2.      I am a resident of the State of California but am currently detained in Friends of Youth in Renton, Washington. I was born in San Pedro Soloma, Huehuetenango, Guatemala on ███████, 2004. I am indigenous. I speak three languages: Spanish, Canjobal, and English. I crossed the border with my mother when I was nine years old in 2015 and have lived in ████████, California since my arrival.

3.      My mother applied for political asylum for us after we arrived in 2015 and the case has been pending ever since. We both have work permits and Social Security cards based on our pending asylum case. I am a dependent on her case and our cases consolidated.

4.      In March 2019, I was accused of an offense when I was 14 years old and had almost completed my probation and treatment for that offense. In August of 2021, I was then accused of transporting undocumented persons and brought into ORR custody. To my knowledge no criminal charges were ever filed on this.

5.      I was sent to Southwest Key in Phoenix, Arizona for about a month and then brought to Friends of Youth in Washington to re-start treatment, even though I had almost completed my course of treatment for my underlying offense in Winchester, California.

6.      I have been here in ORR custody for almost nine months. I have not had any hearing or review on my release. I have complied with the treatment plan and have completed multiple classes related to my offense. I have fully rehabilitated.

7.      My mom still lives in ████████, California and ORR contacted her to begin sponsorship papers in April 2022 to have me released to her again.

Declaration of ███████████

1

8.      ORR told my mom she must complete fingerprints, have a security plan for me, complete a home study and an interview before I can be released. She currently lives with our pastor's family in Parris, California.

9.      I don't remember receiving any notice of a step-up decision but they did tell me orally that I was being stepped up because of my 2019 offense. I was sent from a shelter placement to Friends of Youth. I have complied with all the classes and assignment, and am not sure why I am still here. I have been well-behaved. In April 2022, both my therapist and my California probation officer recommended that I be released because I have completed my program and I am not a danger.

10.     I feel sad being here and being separated from my mom for 10 months. I want to go to a normal school and graduate. I haven't seen my mom in person in 10 months, but we talk twice a day. We speak in Canjobal and it is nice to speak in my native language with her and hear her voice. I miss having the comfort of a mother.

11.     I want to be released because I have been recommended for release and feel I have complied with everything that has been asked of me. I haven't yet had any type of hearing or neutral review of my release or step-up decision. I really hope to get that type of neutral or third party review so I can be released to my mom.

12.     I am not aware of any concrete objectives I have to meet to be released or stepped down and as far as I know, probation and my therapist have recommended release.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 13 day of June, 2022, at Renton, Washington.

                                        _____

                                            ██████████████

Declaro bajo protesta de decir la verdad y pena de falso testimonio que toda la información que aquí he proporcionado es correcta y completa.

Hecho el día 13 de julio del año 2022, en Renton, Washington.

///

# EXHIBIT 3

# <u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

I, Carlos Holguín, declare and say as follows:

1. I speak, understand, read and write English and Spanish.

2. The following is a true and correct translation of the annexed Declaration of

██████████████████ :

\* \* \* \* \* \*

DECLARATION OF ██████████████████████

1. I am 13 years old. I am from Guatemala. My file number is A████████ . I am presently detained at the Friends of Youth staff secure in Renton, Washington, where I arrived on July 15, 2021.

2. I arrived in the United States in 2021, with my older sister and younger brother. Our plan was to go live with our mother. We surrendered to the officials, and then spent 3 4 days in an ice box, I am not sure because in the ice box one doesn't know if it is day or night. Then they took us to Long Beach, where they detained us for about a month together with about 800 minor children. Next the sent us to a small shelter. There I only had one problem, but I realized that I needed help, and so I agreed to come to Friends of Youth. The immigration let my siblings go live with my mother.

3. They have helped me here at Friends of Youth. I have complied with all the program of therapy, and for a month now I have felt ready to go back to my mom and my family. Nonetheless, I have no idea when they are going to release me. My case worker says that they've not even begun a home study or anything else of the process so I can go back with my family. I speak with my mother almost everyday, and she says

it is not right what they are doing in my case and that she is sad because I continue to be detained and not with my family.

4. Here the help they are giving me consists of group therapy, one hour from Monday through Friday, and individual therapy perhaps once a week. I don't take medications.

5. Apart from school, the treatment here at Friends of Youth is good. They give the North Americans here normal vacations, but to those of us detained by immigration, they give less, maybe one week, while they get two months.

I declare under duty to tell the truth and penalty of perjury that all the information I have here given is correct and complete.

Done this 13th day of june, 2022, at Renton, Washington.

/s/


* * * * * * * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of June, 2022, at Santa Clarita, California.

Carlos Holguín

DECLARATION OF ███████████████

I, ███████████████, declaro y digo lo siguiente:

1. Tengo 13 años de edad. Soy de Guatemala. Mi número de expediente es A ████████. Actualmente me encuentro detenido en Friends of Youth staff secure en Renton, Washington, donde llegué el 15 de julio, 2021.

2. Llegué a los EE.UU. en 2021, con mi hermana mayor y mi hermano menor. No me acuerdo el mes. Nuestro plan era llegar a vivir con nuestra mamá. Nos entregamos a los oficiales, y luego pasamos 3 4 días en una hielera, no estoy seguro porque en la hielera uno no sabe si es día o noche. Luego nos llevaron a Long Beach, donde nos detuvieron durante como un mes junto con unos 800 menores de edad. Luego nos mandaran a un albergue pequeño. Allí solamente tuví una problema, pero me di cuenta que necesitaba ayuda, y por eso concedí venirme a Friends of Youth. La inmigracíon dejaron a mis hermanos ir a vivir con mi mamá.

3. Me han ayudado en Friends of Youth. He cumplido con todo el programa de terápia, y desde hace un mes me he considerado listo para volver a mi mamá y mi familia. Sin embargo, no tengo idea cuando me vayan a liberar. Mi trabajadora de caso me dice que ni han comenzado el estudio de casa ni nada más de proceso para que pueda regresar con mi familia. Hablo con mi mamá casi todos los días, y ella dice que no es justo lo que están haciendo en mi caso y que está triste porque yo sigo detenido y no con mi familia.

4. Aquí la ayuda que me están proporcionando consiste en terapia de grupo, una hora lunes a viernes, y terapia individual tal vez una vez por semana. No tomo medicamentos.

5. El tratamiento aquí en Friends of Youth está bien, aparte de la escuela. A los norteamericanos detenidos aquí, les dan vacaciones normales, pero a nosotros, los detenidos por la inmigración, nos dan menos, como una semana, y a ellos, dos meses.

Declaro bajo protesta de decir la verdad y pena de falso testimonio que toda la información que aquí he proporcionado es correcta y completa.

Hecho el día 13 de julio del año 2022, en Renton, Washington.

/ s/



/ / /

Declaro bajo protesta de decir la verdad y pena de falso testimonio que toda la

información que aquí he proporcionado es correcta y completa.

Hecho el día 13 de julio del año 2022, en Renton, Washington.



///

# EXHIBIT 4

# <u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

I, ████████████, declare as follows:

1.      This testimony is based on my personal knowledge and the following facts are true to the best of my understanding and recollection.

2.      I am 17 years old and I am from Guatemala.  I arrived in the United States around January 19, 2022 near Ciudad Juarez. I came alone.

3.      I speak Spanish and Q'qechi.

Prior Placements

4.      I was with Immigration for about two days and then I was sent to Ft. Bliss.

5.      At Ft. Bliss I had to sleep on a cot in a tent with many, many other people. I don't remember exactly but I think it was between 150-200 people sleeping in my tent.

6.      After about 10 days, I was moved to this shelter. They told me I would be leaving Ft. Bliss to go to a better shelter where I would have my own bed and a room.

SWK Casa Franklin

7.      I have been at Southwest Key Casa Franklin for about 140 days.

8.      I sleep in a room with one other person. My room is comfortable. My roommate also speaks Q'eqchi so we will speak to each other in our language. Sometimes I sleep well and sometimes I don't. Sometimes I can't fall asleep until 1 or 2 in the morning. When I first got here, I was really bored, and I was wondering when I would get to leave, and I wasn't sleeping very well. I am tired of being locked up here. I want to be able to go and live with my family but I'm about to turn 18.

9.      The shelter is just one building and we do everything in this same building. We sleep, eat, and go to class in the same building. The hallways are narrow and there are only a few windows. There are only windows in our rooms. There are no windows in the dining area, classrooms, or recreational spaces.

10.     Every day we have school here from about 7:30am to 2pm. Then class ends and we'll have vocational class. My favorite thing to do here is learn English.

1

11.     During our classes we learn mathematics, English, social sciences, and natural sciences. We have classes from Monday through Friday. My classes are in the basement of the building, and we stay in the same classroom for the entire school day. We go outside for about an hour for P.E. during school if there is a teacher to take us outside.

12.     There are some days when we don't go outside at all, and we are inside the same building all day. It's boring because they don't let us breathe outside air. When I first got here it was very cold and they told us we couldn't go outside so that we wouldn't get sick. Lately, we've been able to go to the Zoo or park each weekend and also to church.

13.     We have recreation time in the evening for about three hours. The recreation happens inside the building. We'll play and have exercise and then eat. Afterward, we can play on the television and make bracelets and hats.

14.     I feel somewhat locked up here. There are locks on the doors here and there are also alarms. I can't leave yet but I'm trying to hold out so I can go be with my family.

15.     Every day here looks a bit different, but I don't get to choose what I'm going to do. I always have to be in a group and even if I have to go to the bathroom, I must be accompanied by someone. If I want to go outside, I have to wait for my P.E. class and we just have the small outside space next to the building, it's not like we can really go for a walk or anything. It's frustrating to not be able to go outside when I want.

16.     There are lots of rules here. For example, we aren't allowed to touch each other, and we have to respect others. If someone breaks the rules, the people here will scold us, and the kid gets a report. I have not had a report here because I follow all the rules, but it makes me sad when someone else gets in trouble.

17.     The staff here generally treat me well. There are some who scold us but that tends to be the newer teachers. There are currently a lot of new teachers here. There is someone in the second shift who scolds us a lot. I feel angry and sad sometimes when the teacher scolds us a lot and when I get angry, I try to take deep breaths.

18.     I only get two phone calls a week. I usually speak with my sister on Tuesdays, and I speak with my family in Guatemala on Thursdays. Each call is about 15 minutes long and someone is supervising while I make my calls.

19.     I have a counselor here and I speak to her about three times a week. It helps to speak with my counselor. When I feel sad or angry or worried, there is a room here that I can go to try and feel better. Or I could also speak to one of the counselors here.

20.     In the time that I've been here I explained to the staff that I can't see that well. I have trouble seeing letters. They've taken me to see an eye doctor and I asked for glasses, but they haven't given them to me. The doctor said I didn't need glasses but when I left my country, I was wearing glasses. They gave me eye drops that help but only for about two hours and I'm only allowed to use the drops once a day, in the morning. I'd like to be able to go to another doctor for my eyes.

Future Plans

21.     I would like to live in Dallas with my sister.

22.     I have a case manager and I meet with her once a week. When I talk to her, she tells me I have to wait until September to be released because that's when I turn 18.

23.     My sister tried to be my sponsor, but she can't take me in. I don't know why but my case worker told me that the government didn't sign off on my paperwork. She said there is something wrong with my sister, but I don't know what. I asked my sister about it and she said it was because of her age. I don't know exactly what her age is, but I think she is around 20 years old. I wish there was some way I could appeal that decision because I want to live with my sister. I would like for someone to look at my sister's case again and reconsider her as a sponsor.

24.     My case worker told me yesterday that one of my cousins has submitted their identification to potentially be my sponsor. My case worker said they are waiting for his address and then will begin the sponsorship process, but I don't know how long that will take.

25.     When I leave here I would like to study to be an aerospace engineer.

3

1  I declare under my duty to tell the truth and penalty of perjury that all the information I

2  have here given is correct and complete and I understand the legal consequences of

3  testifying falsely to the authorities.

4

5  Executed on this ____17th____ day of June, 2022, at El Paso, Texas.

6

7                                    FRCC

8  ██████████████████████████████

9

CERTIFICATE OF TRANSLATION

My name is _Soraya Morales Nuñez_ and I swear that I am fluent in both the English and Spanish languages and I translated the foregoing declaration from English to Spanish to the best of my abilities.


Dated:   June 17, 2022

# EXHIBIT 5

# <u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

I, ███████████, declare as follows:

1.      This testimony is based on my personal knowledge and the following facts are true to the best of my understanding and recollection.

2.      I am 14 years old, and I am from Guatemala.  I arrived in the United States around February 2, 2022, near Ciudad Juarez. I came by myself.

<u>SWK Trail House</u>

3.      I have been at Southwest Key Trail House for about four months and two days.

4.      I live in a small house here with 14 other boys. I sleep in a room with three other boys. In my small house there are boys that are 8-17 years old.

5.      Every day here is the same. We study, we go to the cafeteria, we go outside to play soccer.

6.      The food here is so-so. There is some food here I don't like, especially the meat. I'm not used to eating meat. I have three meals a day and three snacks a day.

7.      I go to school here Monday through Friday. We take classes in mathematics, physical education, social sciences, natural sciences, and computers. I don't really like school here. I just like English and P.E. class.

8.      On the weekends we play outside, clean our cottages, and spend time listening to music. The weekends are calm.

9.      We are allowed to play outside every day for about two hours. We also have P.E. class during school days. These days it's been too hot to play outside, so we spend time in our cottages waiting for the sun to set a little.

10.     I am currently on a 1:1 because I made a joke about escaping but they took me seriously. They didn't believe that I was joking. So now someone follows me everywhere I go for 10 days. It bothers me to have someone follow me everywhere.

1

11.     There are many, many rules here. If you break a rule, you get a report. Supposedly the reports affect our cases. My case worker told me that and they tell everyone that when they get here.

12.     The staff here treat me well and they're easy going. I have never seen them mistreat anyone.

13.     I call my mom and dad in Guatemala two times a week on Tuesdays and Fridays. I am able to talk to them for 15 minutes each time.

14.     I talk to a counselor here one or two times a week. I find it helpful to talk to my counselor. If I'm feeling sad then I can ask for a report to be sent to be able to speak to my counselor.

15.     I went to see a doctor once in El Paso and I went to have bloodwork done somewhere else. I have an illness related to my heart. There is a doctor who comes to the shelter and gives me the medication I need to keep my blood regulated.

16.     Sometimes being here feels fine, but sometimes it feels really hard. I really just want to leave to be with my family.

17.     My brother was going to sponsor me so I could go live with him in Los Angeles. But his case was rejected because he lived with someone who had a problem. So, he had to move out within two weeks and he couldn't find a new place to live in two weeks. After that they told me that I could either find another sponsor, stay in shelter care, or go back to Guatemala. Since I don't have another option for a sponsor, I really can only stay here or go to Guatemala, and I don't want to keep living here for years and years so I'm going to try and go back to Guatemala.

18.     If there were a way to reconsider my brother's application or give him more time to find an apartment, I would like to do that but that's not possible because now I've told them I want to go back to Guatemala and they're preparing to send me back now.

1   I declare under my duty to tell the truth and penalty of perjury that all the information I

2   have here given is correct and complete and I understand the legal consequences of

3   testifying falsely to the authorities.

4

5   Executed on this ___16th___ day of June, 2022, at El Paso, Texas.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF TRANSLATION

My name is _Soraya Morales Nuñez_ and I swear that I am fluent in both the English and Spanish languages and I translated the foregoing declaration from English to Spanish to the best of my abilities.


Dated:   June 16, 2022                    _Soraya Morales Nuñez_

# EXHIBIT 6

# DECLARATION OF NADIA SOLEDAD PEREZ

I, Nadia Soledad Pérez, declare as follows:

1.      I am a resident of the State of Texas, and I am over the age of 18.  I currently am an accredited representative with RAICES, a non-profit organization in the states of Texas, and hold the position of shelter lead.

2.      I execute this declaration based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about the following facts.

Refugee and Immigrant Center for Education and Legal Services (RAICES)

3.      RAICES was founded and incorporated in 1986 as a non-profit organization which provides free and low-cost legal services to underserved immigrant minors, families, and refugees.

4.      As of 2018, RAICES is the largest legal aid group of its kind in Texas servicing about 7 shelters which houses unaccompanied minors in the legal custody of the Office of Refugee Resettlement ("ORR").  This month alone RAICES has serviced approximately 442 youth in ORR custody.

Serving Youth in ORR Custody

5.      I started working for RAICES on or about April 2014 as a receptionist and became a legal assistant for the Children's Program around December 2014 at which time I started working with minors directly under the supervision of the shelter attorney.  As a legal assistant, I provided presentations and informed minors about their legal rights as well as pre-screened them for potential relief.

6.     I became an accredited representative with RAICES in October 2016.  This position allowed me to represent minors in immigration court and the United States Citizenship and Immigration Services (USCIS).

7.     In May 2019, I moved to the position of shelter lead, which means I am assigned to one of the 7 shelters for minors which RAICES services.  Part of my duties include to evaluate minors for potential relief as well as assist them with their case while at the shelter.  I also provide direct legal representation for minors who are eligible for it.

8.     In May 2022 I was assigned to service Southwest Key Casa Blanca, an ORR shelter in San Antonio, TX.

9.     As the shelter lead for Southwest Key Casa Blanca, I maintain regular contact with the youth at the facility by providing ongoing consultations to screen for potential relief as well to evaluate their case for any potential transfers to a long-term placement if necessary and given the circumstances of their case.

Step-Up Decisions without Due Process

10.    RAICES has represented many minors who have been stepped up to more restrictive "in-network" and "out-of-network (OON)" facilities such as staff secure, therapeutic staff secure, residential treatment centers, and secure placements.  RAICES has also encountered cases where the minors were not represented and were not allowed the proper due process prior to the transfer.

11.    Such is the case of two minors who were shelter at Southwest Key Casa Blanca who on or about June 21 ,2022, were stepped up to an "in-network" facility.  These minors were transferred to BCFS Staff Secure in San Antonio, TX.

12.    Southwest Key Casa Blanca staff did not communicate with me, RAICES shelter lead, that the two minors were going to transferred and for what reason.  I was not informed if the minors were aware that they would be transferred.

13.    These transfers occurred at 2:40 pm and 3:30pm; both minors were transferred to the same facility.

14.     The status of the minors transferred was as follows:  one was pending transfer to a long-term placement and the other one had a sponsor and was pending reunification here in Texas.

15.     Given that the minors were transferred without my knowledge, I was not able to meet with them to discuss if they were aware of the transfer and the reasons why the transfer was being requested by Southwest Key Casa Blanca.  I was not given the opportunity to review and evaluate their case for transfer prior to the transfer happening.

16.     The shelter did, however, send us a discharge notice for both minors, which did not contain the reason why the minors were transferred.

My experience with step-up shelters such as Staff Secure

17.     During my time working at RAICES, I serviced the staff secure shelter as a legal assistant.  During intakes with minors at this shelter, I found out that they were sometimes stepped up because they said they were going to do something which goes against the rules of the shelter, but the action never took place.  For example, a minor saying they wanted to run away but, had not made an attempt to do so.

18.     I became aware that some of the minors in staff secure were detained there longer than a month and were not allowed to be stepped down even if they behaved.  This caused the minors shelter fatigue which in turn caused them to get into trouble and stay there longer or be transferred to a more restrictive setting, sometimes even a therapeutic shelters where they were prescribed medications.

The transfers from Southwest Key Casa Blanca

19.     The examples provided in this declaration are situations where I believe it would have been beneficial to have third-party review the government's decision to place the minor in a restrictive setting prior to the transfers happening.  Even if the third-party review did not change the outcome of the step-up or had any say so on the length of time the minors will be kept in a restrictive placement, it is helpful for youth to know they

have an opportunity to be heard and to communicate their side of the story for proper due process to take place.

20.     In my experience, minors, even if not our clients, value processes which allow them the opportunity to be heard and express their side of the story.  This helps legal service providers to build trust and rapport with the minors which in turn allows any legal service provider working with the minors to have a better understanding of their case when evaluating for relief.

21.     The population we service deserves the right to a fair due process in every situation they encounter because they do not know the laws.  They deserve to be heard by legal services provides, such as RAICES, and to be given the opportunity to be assisted by the legal service provider the best way possible.

22.     It already is hard enough for these minors to trust anyone because of the hardship of the trip, the many dangers they encountered, and the situations they might have gone through while in their country.  Stepping them up without the opportunity of due process may cause these minors harm far beyond of what we can imagine.

23.     In my experience working at RAICES, I have learned that unaccompanied minors desire to find someone to advocate for them and protect them so they can live a better life and become exemplary citizens.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 24th  day of June, 2022, at San Antonio, TX.

_____
Nadia Soledad Pérez

---

Declaration of Nadia Soledad Pérez

4

# EXHIBIT 7

# DECLARATION OF M. VANEZA ALVARADO

I, M. Vaneza Alvarado, declare as follows:

1.     I am a resident of the State of Colorado, and I am over the age of 18.  I am an attorney licensed to practice in the States of Texas and Colorado.

2.     I execute this declaration based on my personal knowledge, except as to those matters based on information and belief, which I believe to be true. If called to testify in this case, I would testify competently about the following facts.

#### Experience Serving Youth in ORR Custody

3.     The Refugee and Immigrant Center for Education and Legal Services (RAICES), is a legal service provider that works primarily with immigrant youth. Since about April of 2020, I have served as Lead Staff Attorney representing unaccompanied immigrant youth at the BCFS Staff Secure facility in San Antonio, TX.

4.     As of 2018, RAICES is the largest legal aid group of its kind in Texas. RAICES has served unaccompanied children in the legal custody of the Office of Refugee Resettlement ("ORR") who have been placed by ORR at BCFS Staff Secure and other programs within the ORR network of care providers. As of June 2022, RAICES currently serves approximately 442 youth in ORR custody.

Declaration of M. Vaneza Alvarado

1

5.     As a legal service provider for ORR shelters, RAICES's attorneys and staff maintain regular contact with the youth at the facilities.  We provide ongoing consultations and presentations concerning the legal rights of detained minors. We also provide direct legal representation to youth.

Step-Up Decisions without Due Process

6.     RAICES has missed the opportunity to advocate for or provide direct legal representation to potentially hundreds of clients stepped up to more restrictive facilities. These step ups have included placements in staff secure, therapeutic staff secure, residential treatment centers, and secure placements. These step ups have included placements at out-of-network ("OON") facilities and "in-network" facilities.

7.     ORR shelter personnel do not notify or involve RAICES in potential or final decisions to step up a minor to a more restrictive setting in any of the shelters we service.

8.     ORR shelter personnel do not notify or involve me of the allegations that lead to the step-up. It is only **<u>after</u>** the minor is transferred that I may, off the record, get details of a specific incident that triggers the step-up. I am not notified after step-up of the allegations or the alleged reasons for the step-up unless I inquire directly with someone willing to share the details with me. Otherwise, I only become aware of any step-ups when the shelter shares an ORR discharge notice, which is procedurally provided to RAICES regardless of where the minor is discharged to. Often these step-ups are triggered by shelter staff members' perception of flight-risk and no actual attempt of the minor running away from the shelter. It is also common shelter practice to summon local

Declaration of M. Vaneza Alvarado

2

law enforcement if a minor causes any property damage. When the child is arrested, they are subsequently discharged from ORR custody. Minors discharged for ORR custody after being arrested are generally sent to other Staff Secure shelters or Shenandoah, VA.

9.     In one case, RAICES client, M.A.H.J., was separated from her infant, whom she was still breastfeeding, because she disclosed to a clinician self-defense claims against an attacker back in home country. She was considered a violent perpetrator and therefore, transferred to Staff Secure. For fourteen days M.A.H.J. was separated from her baby while in San Antonio Staff Secure. When I spoke with her, she was desperate and distraught. She sobbed and begged me to help her with whatever I could to reunite her with her baby. She should have never been in Staff Secure in the first place.

10.     In another recent case, my client G.M.G., had an upsetting phone call with his abusive mother who was still living in his home country. The shelter disclosed to the mother the child had been transferred to an OON facility for mental health treatment. The minor's mother understood the minor was sent to a home for "crazy people". After the upsetting phone call with his mother, the minor stated on several occasions he did not want to discuss why he was upset and requested a meeting be done later. The shelter staff insisted that they discuss what was bothering him, and did not respect the minor's wishes, which then provoked the minor to throw a chair at a window. Local law enforcement was summoned, and the minor was arrested and placed in adult detention. It took various phone calls, emails, and about ten days before I was able to make the correct jail personnel understand that my client was only sixteen years old and therefore being held

Declaration of M. Vaneza Alvarado

3

unlawfully with the adult jail population. Subsequently ORR refused to take the minor

back into custody when he was released from jail and handed over to ICE. He was held in

various hotels for approximately 20 days before I was able to advocate, he be transferred

back into ORR custody. Unfortunately, neither he nor I could participate in deciding

which secured facility he would be transferred to.  He subsequently was transferred to

another Staff Secure restrictive facility used for unaccompanied minors, in New York.

11.     ORR shelter personnel do not notify or involve me how any transfers occur.

However, often are often flown across the country to the new placement from Texas to

Virginia.

12.     I do not know whether ORR shelter personnel notify or communicate to the child

prior to the transfer about where they were going and why–or if the child understands

where they were going and why. After the transfer, I as the attorney of record, do not

receive any notice of the basis of the step-up. I am unaware of any instances that children

transferred to more secure settings are ever given written explanation for the step-up

decision.

13.     Sudden transfers to more restrictive settings disrupt stability, lead to further

distrust of caretakers, and limit access to RAICES's legal and social services.

14.     I absolutely would have utilized a review process for several step-up decisions if it

was available. Had I been notified I believe my advocacy and involvement in the review

process would have been successful in reversing a significant portion of step-up

decisions. Even if the review process was not successful in reversing a step-up decision,

.

Declaration of M. Vaneza Alvarado

4

it would have provided other benefits including, but not limited to, an opportunity for the child to feel heard and to explain their side of the story.

15.     The examples provided in this declaration are situations where I believe it would have been helpful to have third-party review of the government's decision to place a child in a restrictive setting and/or the decision to keep a child in a restrictive setting. Even if the third-party review didn't change the outcome of the step-up or the length of time the child was kept in a restrictive placement, it is helpful for youth to know they have an opportunity to be heard and to communicate their side of the story. In my experience, clients are invested in all aspects of their case and desire processes that demonstrate someone will advocate and protect their due process rights. Written notice of the allegation(s) and or evidence corroborating any allegations is necessary for me to best advocate for and advise my clients accordingly—this does not happen.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 8th day of July 2022, at San Antonio, TX.


_____

M. Vaneza Alvarado