1  CENTER FOR HUMAN RIGHTS &
2  CONSTITUTIONAL LAW
   CARLOS R. HOLGUÍN (90754)
3  256 South Occidental Boulevard
4  Los Angeles, CA 90057
   Telephone: (213) 290-1642
5  Email: crholguin@centerforhumanrights.email

6  *Attorneys for Plaintiffs*

7  *Additional counsel listed on following page and signature
8  blocks*

9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11                    WESTERN DIVISION

| | |
|---|---|
| LUCAS R., et al., | No. 2:18-CV-05741 DMG PLA |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO DEFENDANTS' *EX PARTE* APPLICATION FOR 30-DAY EXTENSION OF THE DEADLINE FOR COMPLYING WITH THE PRELIMINARY INJUNCTION ORDER |
| v. | |
| XAVIER BECERRA, et al., | |
| Defendants. | |
| | Complaint Filed: June 29, 2018<br>Judge: Hon. Dolly M. Gee |

UNIVERSITY OF CALIFORNIA DAVIS SCHOOL OF LAW
HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
JONATHAN P. MULLIGAN (CAL RLSA NO. 803383)
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
　　　　ccwhite@ucdavis.edu
　　　　jmulligan@ucdavis.edu

NATIONAL CENTER FOR YOUTH LAW
NEHA DESAI (CAL. RLSA NO. 803161)
POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email:  ndesai@youthlaw.org
　　　　pjuneja@youthlaw.org
　　　　fpitts@youthlaw.org
　　　　mwroe@youthlaw.org
　　　　madamson@youthlaw.org

NATIONAL CENTER FOR YOUTH LAW
BRENDA SHUM (OR. BAR NO. 961146), *admitted pro hac vice*
CRYSTAL ADAMS (308638)
712 H Street NE, DPT #32020
Washington, DC 20002
Telephone: (202) 868-4785
Email:  bshum@youthlaw.org
            cadams@youthlaw.org

COOLEY LLP
SUMMER J. WYNN (240005)
MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
REBECCA L. TARNEJA (293461)
ALEXANDRA R. MAYHUGH (300446)
JAMIE D. ROBERTSON (326003)
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email:  swynn@cooley.com
            mmcmahon@cooley.com
            rtarneja@cooley.com
            amayhugh@cooley.com
            jdrobertson@cooley.com

*Attorneys for Plaintiffs*

## I. INTRODUCTION

On March 11, 2022, the Court granted in part and denied in part cross motions for summary judgment and indicated it would issue a preliminary injunction after finding that Plaintiffs "are likely to suffer irreparable harm in the form of unnecessarily restrictive or prolonged detention if the required procedures are not instituted." (Order re Cross-Mots. for Summ. J. at 49, March 11, 2022 (ECF No. 376) ("Summary Judgment Order").)

On August 30, 2022, the Court issued a preliminary injunction, but delayed the effective date of the injunction for 60 days—rather than 120 days, as Defendants requested—to provide Defendants time to comply. (Prelim. Inj. at 9, August 30, 2022 (ECF No. 391); Defs.' Proposed Prelim. Inj. at 8, April 2, 2022 (ECF No. 381-1).) Defendants did not ask the Court to reconsider its order by regularly noticed motion.

Instead, on Friday, October 21, 2022—52 days after the issuance of the preliminary injunction and more than seven months after summary judgment had issued against them—Defendants, for the first time, informed Plaintiffs of their intent to seek an additional 30 days to comply with the preliminary injunction. (*See* Defs.' *Ex Parte* Appl. at 1, October 25, 2022 (ECF No. 396) ("Defs.' Appl."); Defs.' Mem. in Supp. of *Ex Parte* Appl. at 4-5, October 25, 2022 (ECF No. 396-1) ("Defs.' Mem.").) On Tuesday, October 25, 2022, Defendants filed an *ex parte* application seeking that extension of time. (*See* Defs.' Appl.)

Defendants' application should be denied because it fails to satisfy the requirements for *ex parte* relief, because Defendants' reasons for further delaying implementation of the preliminary injunction do not withstand scrutiny, and because granting Defendants' *ex parte* application will irreparably harm children whom ORR places in restrictive settings or refuses to reunite with parents or other close family members.

## II. DEFENDANTS' REQUEST FOR *EX PARTE* RELIEF IS UNJUSTIFIED.

"To justify *ex parte* relief, the moving party must make two showings: (1) 'the

evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures'; and (2) 'it must be established that *the moving party is without fault* in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.'" *Grismore v. Mercedes-Benz USA, LLC*, 2022 WL 3098714, at *1 (C.D. Cal. July 5, 2022) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)) (emphasis added); *see also WBS, Inc. v. Pearcy*, 2016 WL 11507028, at *2 (C.D. Cal. May 20, 2016) (applying same standard). Defendants have not satisfied either requirement.

**A. Defendants have not shown irreparable prejudice absent *ex parte* relief.**

Defendants argue they need an additional 30 days to implement training for grantee care providers, but they have not shown that ORR will suffer irreparable harm if it is required to implement the preliminary injunction while trainings are ongoing. (*See* Defs.' Mem. at 4.)

First, ORR officials, and not the agency's entire shelter network, are responsible for providing nearly all the relief children are to receive under the preliminary injunction. The key elements of the preliminary injunction must be implemented by ORR and HHS employees, not grantees.[1] Defendants have not shown how completing already-scheduled trainings of *grantees* prevents *ORR* from complying with its own obligations under the preliminary injunction.

---

[1] (*See, e.g.*, Prelim. Inj. at 3 ¶ 4 ("Upon determining that a minor cannot safely be released to a Category 1 or Category 2 proposed sponsor, *the ORR Director*, *or a designee* who is a neutral and detached decision maker, shall promptly provide the proposed sponsor full written notice meeting the requirements of ¶ 6 of this Order.") (emphasis added); *id.* at 4 ¶ 7.d ("The appeal shall be considered by and any Hearing conducted before the Assistant Secretary for Children and Families, or a designee who is a neutral and detached decision maker."); *id.* at 5 ¶ 2 ("ORR shall have the burden of proving by clear and convincing evidence that sufficient grounds exist for stepping up or continuing to hold a minor in a restrictive placement."); *id.* at 7 ¶ 6.g ("The PRP shall be comprised of three ORR staff members with relevant experience.").)

1     Although fully training grantees might be *preferable*, ORR implicitly acknowledges that such training is not *required* in order for it to afford constitutionally required due process to children whom it wishes to place in restrictive settings or keep apart from parents or other close family members. (*See, e.g.*, Defs.' Appl. at 1 ("[T]hese changes are *more effectively* implemented alongside a training program, which ORR anticipates completing over the next thirty days.") (emphasis added); Defs.' Mem. at 5 ("ORR believes that the changes *should* be implemented alongside a training program.") (emphasis added).) By Defendants' own account, they have "taken all appropriate steps to meet the compliance deadline" and are seemingly ready to issue and implement policies to comply with the preliminary injunction by the current deadline. (Defs.' Appl. at 1.)[2] Defendants have accordingly failed to identify *any* concrete harm the agency would experience in complying with the current deadline.[3]

Plaintiffs understand that implementation of the preliminary injunction involves a learning process for all relevant actors, and they are more than willing to work with Defendants to resolve any technical violations before resorting to Court enforcement, provided Defendants are taking all reasonable steps to comply with the preliminary injunction.[4] *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 774 F.3d

---

[2] Defendants assert that the requested *ex parte* relief "will not impact any substantive entitlement under the injunction," Defs.' Mem. at 6, and that policies implementing the injunction "would be issued and in effect during this training period," Decl. of Sarah Wilson at 1 ¶ 2, October 25, 2022 (ECF No. 396-3). Yet their proposed order seeks to stay the preliminary injunction in its entirety. (Proposed Order, October 25, 2022 (ECF No. 396-4).) Plaintiffs are unable to reconcile Defendants' proposed order with the above quoted representations.

[3] Given the dearth of substance in Defendants' request to delay due process on account of training, Plaintiffs' counsel declined to agree to further delay in ORR's complying with the Constitution because such delay would run afoul of our duty to vigorously represent our clients. (*See* October 24, 2022 Email Correspondence, Decl. of Sarah Wilson, October 25, 2022 (ECF No. 396-3).)

[4] To the extent Defendants seek an extension of time to comply based on their stated intent to file a motion to modify the preliminary injunction, that is not a reason to grant such relief. (*See* Defs.' Mem. at 5 n.1, 7.) As evident in the emails attached to Ms.

935, 945 (9th Cir. 2014).

### B. Defendants fail to justify their request for *ex parte* relief.

Defendants state that *ex parte* relief is justified because they "seek *ex parte* relief from the imminent compliance deadline." (Defendants' Application at 1.) But as has been seen, Defendants largely admit they *are* able to implement all or nearly all of the relief set out in the preliminary injunction by October 31. Moreover, any supposed crisis warranting emergency relief is a crisis entirely of Defendants own making. *See Mission Power Eng'g Co.*, 883 F. Supp. at 493 ("To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation.").

Defendants have been on notice of the compliance deadline for nearly two months. (*See* Prelim. Inj. at 9 (granting Defendants 60 days to comply with the preliminary injunction).) Defendants offer no justification for waiting over 50 days to initiate a meet and confer on this issue and to file a motion. Defendants initially requested 120 days to implement any preliminary injunction. (*See* Defendants' Proposed Prelim. Inj. at 8.) If it was truly not possible to implement the preliminary injunction within the 60 days provided by the Court, Defendants had more than enough time to file a regularly noticed motion asking for more time. *See, e.g.*, *Lum v. Mercedes-Benz USA, LLC*, 2012 WL 13012454, at *2-3 (C.D. Cal. Jan. 5, 2012) (denying *ex parte* relief based on an upcoming deadline when the moving party knew about the schedule in advance and could have filed a properly noticed motion).

---

Wilson's declaration, Plaintiffs have agreed to meet and confer with Defendants regarding Defendants' proposed modifications and have further agreed to temporary modifications to address Defendants' concerns while the parties engage in such discussions. (*See* October 24, 2022 Email Correspondence, Decl. of Sarah Wilson, October 25, 2022 (ECF No. 396-3).) There is no justification for delaying the implementation of the *entire* preliminary injunction while the parties discuss limited modifications to discrete provisions of the preliminary injunction.

Further, in explaining ORR's delay in offering trainings to grantees, ORR's declarant, Ms. Kiesler, states, "ORR first had to translate the preliminary injunction into new or revised policies, then clear those policies through various levels of agency leadership, before issuing those policies to the grantees and providing training." (Decl. of Laura Kiesler ¶ 11, October 25, 2022 (ECF No. 396-2).) Yet her declaration offers no explanation of why these policy processes were not expedited to comply with the Court's order, which binds ORR's employees as well as the agency itself. (*See* Preliminary Injunction at 2, 5, 8.) Nor does her declaration provide any details about what specific steps ORR took to implement the injunction, the dates on which it took those steps, or why ORR could not have begun planning changes in policy and practice following the entry of summary judgment some seven months ago, which clearly placed ORR on notice that it was falling short of its obligation to provide children constitutional due process. Finally, her declaration offers no explanation of how ORR's upcoming trainings prevent it from providing the due process procedures required while such trainings are taking place.[5]

"Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to 'cut in line' ahead of those litigants awaiting determination of their properly noticed and timely filed motions." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989). Defendants' motion should be denied.

### III. CLASS MEMBERS WILL SUFFER IRREPARABLE HARM IF COMPLIANCE WITH THE PRELIMINARY INJUNCTION IS FURTHER DELAYED.

---

[5] Notably, the 60-day period the Court provided for compliance in this case is substantially longer than the nine days the *Saravia* district court granted Defendants to comply with a preliminary injunction requiring new hearings for previously released minors. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1205 (N.D. Cal. 2017) (preliminary injunction issued November 20, 2017, ordering the government "to provide A.H. and all other noncitizen minors previously released to a sponsor who were rearrested and are currently in federal custody based on allegations of gang affiliation with a hearing before an immigration judge by no later than November 29, 2017").

Plaintiff children will suffer concrete and irreparable harm if relief is further delayed.

The Court held in March of this year that "Plaintiffs have succeeded on the merits of parts of their claims and are likely to suffer irreparable harm in the form of unnecessarily restrictive or prolonged detention if the required procedures are not instituted." (Summary Judgment Order at 49.) "The balance of equities also tips in [Plaintiffs'] favor, and there is a public interest in ensuring the government does not violate the procedural due process rights of minors in its custody." (*Id.*)

Children stepped up to restrictive placements or denied release to their parents or other close family should receive constitutionally adequate process without further delay. They should not be required to endure an additional month of unexamined detention to accommodate ORR's training schedule preferences. (*See, e.g.*, Summary Judgment Order at 32 (holding that "all step-up class members must be able to request affirmative review *before* they have spent 30 days in a secure or medium-secure placement, in order to be heard at a 'meaningful time'" (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985))).)

Although Defendants represent that they will adopt implementing policies by the compliance deadline, they have not shared those policies with Plaintiffs, nor have they provided any assurances that class members will have immediate access to these procedures. (*See* Defs.' Mem. at 5.) It is impossible to reconcile Defendants' proposed order requesting an extension of the compliance deadline for the entire preliminary injunction with their statement that "this motion will not impact any substantive entitlement under the injunction." (*Id.* at 6; Proposed Order, October 25, 2022 (ECF No. 396-4).)

Defendants' contradictory representations do not provide a sufficient basis to grant *ex parte* relief. If Defendants are prepared to provide class members with required notices and hearings in line with the current deadline, there is no need for an extension of time. *Cf. Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012) ("The Defendants

cannot be harmed by an order enjoining an action they will not take."). If Defendants are planning to wait an additional month before providing constitutionally required due process protections, then class members will be prejudiced as a matter of law. *See id.* ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))).

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' improper *ex parte* application.

Dated:  October 27, 2022          COOLEY LLP

By: */s/* Summer J. Wynn
Summer J. Wynn (2400056)
Attorneys for Plaintiffs
Email:  swynn@cooley.com