CARLOS R. HOLGUÍN (90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.org

*Attorneys for Plaintiffs*
*(Additional counsel listed on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCAS R., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>XAVIER BECERRA, Secretary of U.S.<br>Department of Health and Human Services, *et al.*,<br><br>    Defendants. | No. 2:18-CV-05741 DMG PLA<br><br>MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS AND APPROVAL OF CLASS NOTICES OF SETTLEMENT OF PLAINTIFFS' THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF [PSYCHOTROPIC MEDICATIONS, LEGAL REPRESENTATION, AND DISABILITY]<br><br>HEARING: JANUARY 5, 2024<br>TIME: 10:00 A.M.<br>PLACE: COURTROOM 8C, 8TH FLOOR<br><br>HON. DOLLY M. GEE |

HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
          ccwhite@ucdavis.edu

POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
DIANE de GRAMONT (324360)
National Center for Youth Law
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: pjuneja@youthlaw.org
          fpitts@youthlaw.org
          mwroe@youthlaw.org
          madamson@youthlaw.org
          ddegramont@youthlaw.org

BRENDA SHUM
   (*ADMITTED PRO HAC VICE*)
National Center for Youth Law
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4785
Email: bshum@youthlaw.org

SUMMER J. WYNN (240005)
MICHAEL J. MCMAHON
    *(ADMITTED PRO HAC VICE)*
REBECCA L. TARNEJA (293461)
ALEXANDRA R. MAYHUGH (300446)
JAMIE D. ROBERTSON (326003)
Cooley LLP
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500
Email:  swynn@cooley.com
        mmcmahon@cooley.com
        rtarneja@cooley.com
        amayhugh@cooley.com
        jdrobertson@cooley.com

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND.................................................................................1

   A.  Overview of the Litigation.................................................................1

   B.  Settlement Negotiations....................................................................5

   C.  Summary of the Settlement Agreements .........................................7

      i.   Summary of the Psychotropic Medications Agreement..................7

      ii.  Summary of the Legal Representation Agreement .........................8

      iii. Summary of the Disability Agreement...........................................9

      iv.  Monitoring and Termination of the Agreements...........................10

   D.  Attorneys' Fees and Costs ...............................................................11

II.  LEGAL ARGUMENT ...................................................................................11

   A.  Standard for Approval of a Class Action Settlement Agreement ....11

   B.  The Settlement Agreement is Appropriate for Preliminary Approval..............13

      i.   The Agreements are the Result of Informed, Non-Collusive Negotiations ...13

      ii.  The Agreements Provide Important Benefits to the Classes that Outweigh the Benefits of Continued Litigation...........................................................14

      iii. The Proposed Notices and Plan are Reasonable.............................14

   C.  The Court Should Establish a Schedule for Final Approval.............16

III. CONCLUSION..........................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Atzin v. Anthem, Inc.*,
   No. 217CV06816ODWPLAX, 2022 WL 4238053 (C.D. Cal. Sept. 14, 2022) ....... 15

*Berry v. DCOR, LLC*,
   No. CV152792RGKAJWX, 2015 WL 13918869 (C.D. Cal. Sept. 29, 2015) ......... 13

*Churchill Vill. L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................................... 11, 15

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................ 11

*Fed. Ins. Co. v. Caldera Med., Inc.*,
   No. 215CV00393SVWPJW, 2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) ........... 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................ 12

*In re Nasdaq Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................. 12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................................... 11

*In re Synocor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................................ 11

*In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................... 11

*Marshall v. Northrop Grumman Corp.*,
   469 F. Supp. 3d 942 (C.D. Cal. 2020) .................................................................... 11

*Mendoza v. United States*,
   623 F.2d 1338 (9th Cir. 1980) ................................................................................ 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 12

*Nen Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324 (N.D. Cal. 2014) ..................................................... 13

*Officers for Just. v. Civ. Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................... 11, 15

*Rodriguez v. NDCHealth Corp.*,
   No. CV 10-3522-VBF(FMOX), 2011 WL 13124037 (C.D. Cal. Oct. 17, 2011) .... 15

*Smith v. Pro. Billing & Mgmt. Servs., Inc.*,
   No. 06-4453JEI, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ................................ 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................ 12

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................ 12

**STATUTES**

8 U.S.C. § 1232(c)(5).......................................................................... 3
22 U.S.C. § 78............................................................................... 2, 3
28 U.S.C. § 2412.............................................................................. 11
29 U.S.C. § 705................................................................................ 4
29 U.S.C. § 794................................................................................ 3
45 C.F.R. § 84.4(b)(1)(ii-iv).................................................................. 3
45 C.F.R. § 84.4(b)(1)(vii)................................................................... 3
Cal. Welf. & Inst. Code § 369.5(a)(1)......................................................... 3
Cal. Welf. & Inst. Code § 730.5(a)(1)......................................................... 3
Tex. Admin. Code § 748.2001(b) ............................................................... 3
Tex. Admin. Code § 748.2253 .................................................................. 3
Tex. Admin. Code § 748.2255 .................................................................. 3
Tex. Fam. Code § 266.004(a).................................................................. 3

## RULES

Fed. R. Civ. P. 23(e) ................................................................................... 11
Fed. R. Civ. P. 23(e)(1) ............................................................................. 14
Fed. R. Civ. P. 23(e)(2) ............................................................................. 11
Fed. R. Civ. P. 23(h) ................................................................................. 11

## OTHER AUTHORITIES

Manual for Complex Litigation (Third) § 30.41 (1995) ............................. 12

The Parties hereby jointly move the Court for entry of an order preliminarily
approving their Settlement Agreements ("Agreements"), attached as Exhibits A-C to
the Declaration of Mishan Wroe in support of the Parties' Joint Motion for
Preliminary Approval ("Wroe Decl.").  The Parties respectfully request that the Court
(1) grant preliminary approval of the Agreements; (2) approve the form and manner of
the Notices of Proposed Class Action Settlement, which are attached to Wroe Decl. as
Exhibits D-F; (3) set the deadline for written submissions from Class Members or
their legal representatives or advocates who wish to be heard in favor of or in
objection to the Agreements; (4) set a schedule for Plaintiffs to file their motion for
fees and costs; and (5) set the date for a final fairness hearing pursuant to Federal Rule
of Civil Procedure 23(e)(2).

I.   FACTUAL BACKGROUND

A. Overview of the Litigation

On June 29, 2018, named Plaintiffs Lucas R., Daniela Marisol T., Gabriela N.,
Miguel Angel S., and Jaime D. and non-profit organizational Plaintiffs San Fernando
Valley Refugee Children Center, Inc. and Unaccompanied Central American Refugee
Empowerment ("Plaintiffs") filed the Complaint in the above-captioned action against
the Secretary of the U.S. Department of Health and Human Services ("HHS") and the
Director of the Office of Refugee Resettlement ("ORR") in their official capacities
(collectively "Defendants").  ECF No. 1 ¶¶ 1-20 ("Plaintiffs' Complaint").  The
individual named Plaintiffs filed the Complaint on behalf of themselves and four
proposed classes, including youth in ORR custody who have been or will be
administered psychotropic medications allegedly without procedural safeguards and
youth who are natives of non-contiguous countries to whom ORR is allegedly
impeding or will impede legal assistance in legal matters or proceedings involving
their custody, placement, release, and/or administration of psychotropic drugs.

On September 7, 2018, Plaintiffs filed their First Amended Complaint (ECF
No. 81, "FAC"), adding two named class members, Sirena P. and Benjamin F., and

adding a fifth claim for relief on behalf of a class of children in ORR custody who have, will have, or are perceived to have a behavioral, mental health, intellectual, and/or developmental disability and who are segregated and denied release solely because of their disability.  FAC ¶¶ 1-5, 15-16.

The FAC challenged, among other things, Defendants' policies and practices with respect to their administration of psychotropic medications to children in ORR custody allegedly without procedural safeguards such as, obtaining informed parental consent or other authorization prior to medicating a child, involving a neutral decisionmaker in the initial determination of whether to prescribe psychotropics to a child in ORR custody, or involving a neutral decision-maker to conduct periodic reviews of those medications as treatment continues.  *See generally* Plaintiffs' Complaint, FAC.  Additionally, Plaintiffs challenged Defendants' policies and practices with respect to accessing legal representation and assistance in legal matters or proceedings involving their custody, placement, release, and the administration of psychotropic medications.  *Id.*  Plaintiffs further challenged Defendants' policies and practices with respect to the rights of children in ORR custody who have, will have, or are perceived to have a behavioral, mental health, intellectual, and/or developmental disability.  *Id.*  Plaintiffs alleged these policies result in unjustified and harmful segregation of children with disabilities in restrictive placements that do not meet their needs.  *Id.*  Moreover, Plaintiffs alleged the release of children in ORR custody to qualified sponsors is prolonged solely because of their disabilities.

Plaintiffs alleged that Defendants failed to implement procedural safeguards when prescribing children psychotropic medications, and that this violates the rights of children in ORR custody under the United States Constitution, the *Flores* Settlement, and Section 235(c)(2) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 22 U.S.C. § 78.  Plaintiffs further alleged that Defendants violate the relevant laws of the states in which children are placed, incorporated by reference into the *Flores* Settlement, including Texas Administrative

**MEM. ISO JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS CASE NO. 2:18-CV-05741 DMG PLA**

Code sections 748.2001(b), 748.2253, and 748.2255; Texas Family Code section 266.004(a); and California Welfare and Institutions Code sections 369.5(a)(1) and 730.5(a)(1).  FAC ¶¶ 132-142.

Plaintiffs further alleged that as a matter of policy and practice, ORR routinely bars legal service providers from representing unaccompanied children from non-contiguous countries in legal proceedings involving ORR's custody, release, placement, and psychotropic medication decisions in violation of the *Flores* Settlement Agreement and the TVPRA.  *Id.* ¶¶ 143-152.

Finally, Plaintiffs alleged Defendants' policies and practices with respect to children in ORR custody who have, will have, or are perceived to have a disability violate these children's rights under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and HHS regulations implementing Section 504, 45 C.F.R. § 84.4(b)(1)(ii-iv), (vii),[1] and result in segregation of children with disabilities in restrictive facilities and delays to their release.  *Id.* ¶¶ 153-177.

To address these alleged issues, Plaintiffs sought, among other things, injunctive relief enjoining Defendants from administering psychotropic drugs to Plaintiffs or class members in non-exigent circumstances without parental consent or the lawful equivalent thereof.  *See generally* FAC.  Additionally, Plaintiffs sought to enjoin Defendants from blocking Plaintiffs from receiving legal assistance pursuant to 8 U.S.C. § 1232(c)(5) in legal proceedings or matters involving ORR's decisions regarding custody, placement, or release.  *Id.*  Plaintiffs further sought injunctive relief enjoining Defendants from, first, unnecessarily placing Plaintiffs in restrictive settings solely on the basis of disability and, second, from delaying and/or obstructing Plaintiffs' release on the basis of disability.  *Id.*  In their Answer, Defendants denied liability for Plaintiffs' claims.  ECF No. 144.

---

[1] ORR's Unaccompanied Children Program is a federal program and ORR is not itself a recipient of Federal financial assistance (unlike its care providers); ORR's actions are governed by Part 85 of HHS's Section 504 regulations, rather than Part 84.

1    Prior to filing the lawsuit, Plaintiffs' counsel undertook a lengthy research

2    process, including meeting with children in ORR custody at various facilities

3    throughout the country, speaking with children's immigration attorneys and other

4    stakeholders, analyzing case files and other records, and conducting legal research and

5    factual analysis regarding a range of potential legal issues.  Wroe Decl. ¶ 5.

6    Since the lawsuit was filed, the Parties have engaged in extensive discovery

7    efforts.  The Parties have both propounded interrogatories, requests for admission, and

8    document requests to one another.  Wroe Decl. ¶ 6.  The Parties have negotiated

9    search terms for electronically stored information and Defendants have produced more

10   than 235,000 pages of documents, which Plaintiffs have reviewed.  *Id.*  The Parties

11   have also taken more than 20 depositions of fact witnesses and completed 17 expert

12   witness depositions.  *Id.*

13   On December 27, 2018, in an amended order, the Court granted Plaintiffs'

14   motion for certification of five classes.  ECF No. 141 at 27-28.  As relevant to this

15   motion, three of the classes are defined as all minors in ORR custody: (1) who are or

16   will be prescribed or administered one or more psychotropic medications without

17   procedural safeguards ("Psychotropic Medications Class"); (2) who are natives of

18   non-contiguous countries and to whom ORR is impeding or will impede legal

19   assistance in legal matters or proceedings involving their custody, placement, release,

20   and/or administration of psychotropic medications ("Legal Representation Class");

21   and (3) who have or will have a behavioral, mental health, intellectual, and/or

22   developmental disability as defined in 29 U.S.C. § 705, and who are or will be placed

23   in a secure facility, medium-secure facility, or residential treatment center (RTC)

24   solely by reason of such disabilities ("Disability Class").  *Id.*  In its amended order the

25   Court dismissed Plaintiffs' claims under the *Flores* Agreement but permitted Plaintiffs

26   to "pursue due process claims predicated on Defendants' [alleged] failure to provide

27   sufficient procedural safeguards for alien minors to exercise their *Flores* rights

28   because Plaintiffs cannot bring those claims in the *Flores* action."  *Id.* at 10-11.

1    On March 11, 2022, the Court ruled on the Parties' cross-motions for summary

2    judgment.  ECF No. 376.  Relevant here, the Court ruled on Plaintiffs' legal

3    representation class claim and held that ORR is not affirmatively obligated to fund

4    legal representatives for minors in internal ORR challenges involving ORR decisions

5    regarding minors' placement, sponsorship applications, and/or administration of

6    psychotropic medications.  *Id.* at 47.  The Court denied summary judgment for both

7    parties regarding whether ORR retaliates against attorneys who represent minors in

8    ORR's administrative decisions and blocks the effective assistance of counsel, finding

9    that a disputed issue of material fact remained to be litigated at trial.  *Id.* at 49.

10   Neither party sought summary judgment on the Psychotropic Medications or the

11   Disability class claims, and thus the Court's partial summary judgment decision does

12   not address those claims.

13              **B. Settlement Negotiations**

14   These Agreements are the result of lengthy negotiations conducted over several

15   years.  The Parties engaged in structured negotiations focused primarily on the First,

16   Second, and Fourth Claims for Relief from approximately May 2019 through January

17   2020.  Wroe Decl. ¶ 7.  These negotiations included a settlement conference before

18   Judge Pym in June 2019.  *Id.*  Negotiations were unsuccessful and the Parties

19   subsequently completed expert discovery and filed cross-motions for summary

20   judgment addressing the First, Second, and Fourth Claims for Relief.  *Id.* ¶ 8.

21   As relevant here, in November 2020, the Parties re-engaged in negotiations

22   primarily focused on the Third and Fifth Claims for Relief relating to the Psychotropic

23   Medications Class and the Disability Class, which, as noted, were not part of the

24   cross-motions for summary judgment.  *See, e.g.*, Order re Cross-Motions for

25   Summary Judgment [ECF No. 376]; *see also* Wroe Decl. ¶ 9.  With respect to

26   settlement negotiations regarding the Third Claim for Relief, the Parties began the

27   November 2020 negotiations by utilizing draft settlement agreements that were

28   created with the assistance of *Flores* Special Monitor Andrea Ordin following nine

months of mediation to resolve Plaintiffs' Motion to Enforce in *Flores v. Sessions*, No. 2:85-cv-4544 DMG (AGRx), which addressed the administration of psychotropic medications to children held at Shiloh Residential Treatment Center in Texas.  Wroe Decl. ¶ 10.

To assist the negotiations, the Parties participated in a Settlement Conference before Judge Pym in January 2021 and also engaged a private mediator, Kathleen Noonan, Esq., beginning in 2021.  Wroe Decl. ¶ 11.  For approximately two years, the Parties engaged in a vigorous arms' length negotiation mediated by Ms. Noonan, exchanging numerous draft settlement agreements relating to the Psychotropic Medications and Disability classes, and participating in many telephonic discussions and two in-person mediations in Washington, DC.  *Id*. ¶ 12.  While the Parties were working to resolve the Third and Fifth Claims for Relief, in August 2022, the Court entered a preliminary injunction following its partial grant of summary judgment regarding Plaintiffs' First, Second, and Fourth Claims for Relief.  ECF No. 391.

Then, on February 3, 2023, the Parties filed a Joint Stipulation and Request to Continue Pretrial and Trial Schedule and informed the Court that "subject to final approval by the Department of Justice, the Parties have with the assistance of a private mediator reached tentative settlement agreements to resolve the two causes of action relating to the Psychotropic Medications Class and Disability Class."  ECF No. 402 at 1.  This Court subsequently entered an order approving the Joint Stipulation between the Parties and continued the trial date until October 24, 2023, so that the Parties could finalize their settlement negotiations regarding the Psychotropic Medications and Disability class claims.  ECF No. 403.

The Parties then began discussing a possible resolution of Plaintiffs' Fourth Claim for Relief regarding the Legal Representation Class.  Wroe Decl. ¶ 13.  After several months of telephonic discussions and exchanging several drafts of written agreements, the Parties were able to reach resolution of that claim as well.  *Id*.  On July 24, 2023, this Court entered an order continuing the trial date until April 9, 2024,

1    so that the Parties could finalize a settlement agreement regarding the Legal

2    Representation Class.  ECF No. 406.

3           The Parties have now reached Agreements resolving Plaintiffs' Third, Fourth,

4    and Fifth Claims for Relief.  These Agreements were executed by all Parties as of

5    November 2, 2023.  *See* Wroe Decl. Exhibits A-C, ¶ 14.  The Parties now submit this

6    Joint Motion for Preliminary Approval of the Agreements, along with proposed class

7    notices to inform *Lucas R.* class members of the proposed Agreements.  *See* Wroe

8    Decl., Exhibits D-F filed herewith.  The Agreements explicitly contemplate dismissal

9    of the Third, Fourth, and Fifth Claims for Relief with the Court retaining jurisdiction

10   only as provided in, and for purposes of interpreting and enforcing, if necessary, the

11   terms of the Agreements.  Wroe Decl. Exhibits A-C, ¶ 14.

12          **C. Summary of the Settlement Agreements**[2]

13          Plaintiffs continue to believe their claims are meritorious and properly

14   redressable on a class-wide basis.  Defendants deny any violations of applicable law.

15   Despite these positions, the Parties share a common desire to address the concerns

16   raised in the lawsuit in a way that benefits the children in ORR's custody.  To that

17   end, the Parties' Agreements address the issues raised in Plaintiffs' FAC related to

18   Plaintiffs' Third, Fourth, and Fifth Claims for Relief by requiring ORR to implement

19   policies and procedural protections related to the administration of psychotropic

20   medications to children in ORR custody, children's access to legal representation, and

21   the treatment of children in ORR custody who have or are perceived to have

22   disabilities.  Wroe Decl. Exhibits A-C.

23          i.   Summary of the Psychotropic Medications Agreement

24          The Agreement resolving Plaintiffs' Third Claim for Relief related to the

25   administration of psychotropic medications requires ORR to develop policies and

26   _____

27   [2] The Parties have endeavored to provide an accurate summary of many of the key
     terms of the Agreements.  In the event of a conflict between this summary and the

28   terms of the Agreements themselves, the Agreements will control.

practices to ensure a meaningful consent process prior to administering psychotropic medications and oversight mechanisms to prevent the over utilization of psychotropic medications.  For example, the Agreement requires, among other things, that when a doctor prescribes psychotropic medication to a child in ORR custody, ORR must seek consent to give the child this medication from, in order of preference, the child's parent or legal guardian, certain related sponsors (including siblings, grandparents, or any aunts, uncles, or cousins who were previously the child's primary caregiver), or from the child themselves if they are at least 16 years old.  Wroe Decl. Exhibit A.  The Agreement also requires informed consent, meaning that facility staff must explain to the consenter what the medication does, why the doctor believes it is needed, its benefits and risks, and possible alternatives to medication.  *Id.*  The Agreement further prohibits Defendants from punishing children or their consenters for refusing to give consent for any psychotropic medication or for changing their minds about giving consent.  *Id.*  Additionally, the Agreement establishes oversight mechanisms to monitor and provide guidance regarding the number of medications and dosage of medications prescribed to children in specified cases.  *Id.*

ii.   Summary of the Legal Representation Agreement

The Agreement resolving Plaintiffs' Fourth Claim for Relief regarding the Legal Representation Class affirms that children in ORR custody have the right to seek legal representation regarding decisions involving their placement, release, custody, and/or the administration of psychotropic medications, although ORR need not fund such representation.  Wroe Decl. Exhibit B.  The Agreement requires, in part, that ORR not interfere with or take adverse action against legal representatives, including those directly funded by ORR, who seek to assist children in ORR custody.  *Id.*  Specifically, the Agreement requires ORR to implement policies and procedures to ensure legal representatives receive updates on their clients' cases and access to necessary documents and information to ensure they are able to represent their clients vigorously.  *Id.*  The benefits the Agreement confers on class members do not

1  supplant, but are in addition to, counsel-related relief the Court granted on Plaintiffs'

2  First and Second Claims for Relief.  The Agreement also incorporates the Court's

3  "Legal Representation Class" requirements ordered in the preliminary injunction.

4  ECF No. 391 at 8-9.

5  iii.  Summary of the Disability Agreement

6  As detailed in the Agreement resolving Plaintiffs' Fifth Claim for Relief

7  regarding the Disability Class, the Parties have agreed on procedural protections that

8  Defendants must implement for children in ORR custody who have or are perceived

9  to have one or more disabilities.  Wroe Decl. Exhibit C.  For example, the Agreement

10  requires, in part, that ORR identify children with disabilities and provide those

11  children who need them Section 504 Service Plans to meet the children's disability-

12  related needs, to ensure that they can participate in the UC Program in the most

13  integrated setting appropriate to their needs, and to ensure they are released from

14  ORR's custody without any unnecessary delay solely due to their disability.  *Id*.  The

15  Agreement further requires ORR to place children with disabilities in the least

16  restrictive setting that is in the best interest of the child and the most integrated setting

17  appropriate to their needs.  *Id*. Additionally, if a child with a disability is placed in a

18  restrictive placement, the Agreement requires ORR to document reasons why the

19  child's needs could not be met in a more integrated and/or less restrictive setting with

20  additional supports, services, and/or accommodations.  *Id*.  This documentation must

21  be included in the child's first Notice of Placement.  *Id*.  The Agreement also includes

22  system-wide requirements, such as commitments that ORR will track data about

23  children with identified disabilities across the ORR system, that ORR will undertake a

24  system-wide needs assessment to identify any gaps in the system related to children

25  with disabilities and develop and implement a responsive disability plan, and that

26  ORR will develop and deliver mandatory trauma-informed disability-related training

27  for staff.  *Id.*

28

9

iv.  <u>Monitoring and Termination of the Agreements</u>

The Parties agree that Kathleen Noonan will be appointed as the Monitor to oversee, evaluate, report on, and certify Defendants' implementation progress and compliance with the Agreements related to the Psychotropic Medications and Disability Classes.  Wroe Decl. ¶ 15.  Every six months, Defendants will provide reports to the Monitor that detail ORR's implementation of and compliance with the Psychotropic Medications and Disability Agreements.  *Id*.  Defendants will also concurrently publish streamlined public reports online.  *Id*.  The Parties do not believe a Monitor is necessary for the Legal Representation Agreement and the Agreement does not provide for such monitoring.  Wroe Decl. ¶ 16.

The Agreements state that Defendants' obligations will terminate on the earliest of the following dates:

For the Psychotropic Medications Agreement, (1) beginning three years after the Agreement's Effective Date, Defendants may move for a Court Order permitting early termination if they can demonstrate Substantial Compliance for a continued period of six months following implementation of the Agreement nationwide, supported by certification from the Monitor; or (2) six years from the Agreement's Effective Date.  Wroe Decl. Exhibit B.

For the Disability Agreement, (1) beginning two years after Defendants implement[3] the Agreement, Defendants may move for a Court Order permitting early termination if they can demonstrate Substantial Compliance, supported by certification from the Monitor; or (2) five years after implementing the Agreement.  Wroe Decl. Exhibit C.

The Legal Representation Agreement terminates three years after its Effective Date or upon promulgation of regulations incorporating the terms of the Agreement.  Wroe Decl. Exhibit A.

---

[3] The implementation date is defined as 12 months after the date of final approval of the Agreement by the Court.

### D. Attorneys' Fees and Costs

Within thirty (30) days following entry of the final judgment in this Action, Plaintiffs will file a motion for attorney's fees and other expenses pursuant to 28 U.S.C. § 2412 and will include in that motion a request to direct notice to Class Members and an objection deadline in compliance with Federal Rule of Civil Procedure 23(h).  The Agreements require the Parties to meet and confer in a good faith effort to settle such fees and costs.

## II.    Legal Argument

### A. Standard for Approval of a Class Action Settlement Agreement

The law favors and encourages settlement, especially of class action lawsuits. *See, e.g.*, *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 948 (C.D. Cal. 2020) (noting that the Court "must … account[] for the strong judicial policy that favors settlements" in complex class action litigation); *In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014); *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation . . . particularly [] in class action suits[.]"  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Federal Rule of Civil Procedure 23 governs the settlement of class actions. "The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e). Rule 23(e) provides that a proposed settlement may be approved only after the court makes a "finding that it is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).

Rule 23(e) further sets forth the procedure for settling a class action, including that the court must direct notice in a reasonable manner to all class members who would be bound by the proposal, and that any class member may object to the proposal, stating with specificity their grounds for objection.  To determine whether the settlement is fair, adequate, and reasonable, the court must consider it "as a whole, rather than the individual component parts."  *Fed. Ins. Co. v. Caldera Med., Inc.*, No. 215CV00393SVWPJW, 2016 WL 5921245, at *3 (C.D. Cal. Jan. 25, 2016) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety."), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  In making that determination, Rule 23(e) requires the court to consider whether the class has been adequately represented by the class representatives and class counsel, whether the proposal was negotiated at arm's length, whether the relief is adequate considering the costs and risks of trial and how effective the proposed method of distributing relief will be, and the terms of any proposed award of attorney's fees.

Judicial review of a proposed class settlement typically requires a preliminary approval review and a final fairness hearing.  Preliminary approval is not a commitment to approve the final settlement; rather, it is a limited inquiry that "there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, No. 06-4453JEI, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995)).  The Court may grant preliminary approval of a settlement if the "settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls

1   within the range of possible approval." *Berry v. DCOR, LLC*, No.

2   CV152792RGKAJWX, 2015 WL 13918869, at *3 (C.D. Cal. Sept. 29, 2015) (citing

3   *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014)).

4           If the settlement is preliminarily approved by the court, notice of the proposed

5   settlement and the fairness hearing is provided to class members.  Class members may

6   object to the proposed settlement at the fairness hearing.

7           **B. The Settlement Agreement is Appropriate for Preliminary Approval**

8           The Parties' Agreements meet all the requirements for preliminary approval.

9   The Agreements are each the product of years of highly contested, arm's length

10  negotiations and will benefit current and future Class Members by requiring systemic

11  improvements to ORR's practices and policies.  Wroe Decl. ¶¶ 9-12, 17.  The

12  Agreements are fair and were not the result of collusion between the Parties.  Class

13  Counsel is experienced in similar class actions and recommends that the Agreements

14  be approved.

15                    i.   The Agreements are the Result of Informed, Non-Collusive

16                         Negotiations

17          As discussed above, the Parties engaged in extensive, non-collusive

18  negotiations over the course of several years, facilitated in part by skilled mediators

19  and neutrals.  Class Counsel has experience in similar class actions and experience in

20  the subject area of the matter.  Wroe Decl. ¶ 4.  As noted above, Class Counsel

21  thoroughly researched the issues before filing suit.  Wroe Decl. ¶ 5.  This case has

22  been pending for more than five years and litigated vigorously, including extensive

23  fact and expert discovery as well as cross-motions for summary judgment related to

24

25

26

27

28

13

1   Plaintiffs' Fourth Claim for Relief and class claims that are not the subject of

2   settlement.

3          ii.      The Agreements Provide Important Benefits to the Classes that

4                   Outweigh the Benefits of Continued Litigation

5          As discussed above, the Agreements provide important benefits to the Classes,

6   including new procedures to obtain informed consent prior to the administration of

7   psychotropic medications, additional supports and services to ensure children with

8   disabilities are placed in the least restrictive setting that is in the best interest of the

9   child and also the most integrated setting appropriate to the child's needs, and

10  procedural protections to ensure access to counsel.

11         Based on the knowledge that the Parties gained through investigation and

12  discovery, as well as Class Counsel's extensive experience in litigating similar cases,

13  Wroe Decl. ¶¶ 4-6, the Parties were able to make well-informed assessments

14  regarding the strengths and weaknesses of their respective claims and defenses, as

15  well as the costs and risks of proceeding to trial.

16         Absent settlement, the Parties anticipate significant trial preparation, including

17  pretrial motion practice and potential additional fact discovery.  This work would

18  require additional attorney time and judicial resources, as well as delay relief for Class

19  Members.  Settlement would allow Defendants to begin to implement aspects of the

20  Agreements that will require substantial development, accelerating the rate at which

21  Class Members will receive the benefits of the Agreements and avoiding the risk of

22  delayed or denied relief.

23         iii.     The Proposed Notices and Plan are Reasonable

24         Federal Rule of Civil Procedure 23(e)(1) requires that the class that would be

25  bound by a proposed settlement receive notice.  Individualized notice is not required,

26  as long as the notice "generally describes the terms of the settlement in sufficient

27  detail to alert those with adverse viewpoints to investigate and to come forward and be

28  heard." *Mendoza v. United States*, 623 F.2d 1338, 1350, 1352 (9th Cir. 1980);

14

*Rodriguez v. NDCHealth Corp.*, No. CV 10-3522-VBF(FMOX), 2011 WL 13124037, at *7 (C.D. Cal. Oct. 17, 2011) (quoting *Churchill Vill.*, 361 F.3d at 575). Notice must also be directed "in a manner that does not systematically leave any group without notice." *Atzin v. Anthem, Inc.*, No. 217CV06816ODWPLAX, 2022 WL 4238053, at *4 (C.D. Cal. Sept. 14, 2022) (quoting *Officers for Just.*, 688 F.2d at 624). Plaintiffs' proposed Notices, attached to the Declaration of Mishan Wroe as Exhibits D-F, are reasonably calculated to reach Class Members.

The proposed Notices summarize the topics addressed by the proposed Agreements, list the proposed remedies contained in the proposed Agreements, provide instructions on how to obtain full copies of the Agreements, and advise recipients what to do if they have questions. The Notices describe the procedures for persons who wish to be heard in favor of or in objection to the Agreements and will specify the date, time, and place of the formal fairness hearing to be set by the Court.

The proposed form of Notice is clear and in plain language for Class Members, their representatives, and other stakeholders who may be interested in the Agreements' terms. The Parties have provided a detailed proposal for dissemination of the Notices in the proposed notice plan. Wroe Decl. Exhibit G. The Parties' proposal would include, among other things, posting the Notices in ORR care provider facilities in English and Spanish with the opportunity to request oral interpretation in a different language if needed, and disseminating notices to ORR-funded legal service providers.

The proposed Notices comport with Rule 23 and the requirements of due process, and they should be approved.

### C.     The Court Should Establish a Schedule for Final Approval

The Parties request that the Court set a schedule for notice to the Classes and final approval of the Agreements as set forth below.

Currently there are thousands of Class Members in ORR's care and custody located throughout the country.  Transporting them to Los Angeles for the Final Approval Hearing would be impracticable and unduly burdensome on Defendants. The Parties therefore respectfully request that the Court permit Class Members who wish to do so to participate in the Final Approval Hearing remotely by video and/or telephonic means, as will be further suggested in the Parties' proposed notice plan, see Wroe Decl. Exhibit G.

| Event | Date |
|---|---|
| Court's Order on Preliminary Approval | To be determined by the Court |
| Completion of Notice Plan | Two weeks after the Court's Order of Preliminary Approval |
| Objection Deadline | 45 days after Completion of Notice Plan |
| Plaintiffs to Submit to the Court all comments or objections regarding the Settlement Agreement; Motion for Final Approval including any response(s) to comments or objections regarding the Settlement Agreement (if any) | 21 days after Objection Deadline |
| Final Approval Hearing | At least one week after Plaintiffs' Submissions at a time set by the Court[4] |

---

[4] To facilitate participation of counsel at the Final Approval Hearing, the Parties respectfully request the opportunity to communicate with the Court's deputy clerk concerning a mutually agreeable date.

16

**III.     CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court enter the accompanying joint Proposed Order granting preliminary approval of the Agreements, approving the form and manner of the Notices of Proposed Class Action Settlement, and setting deadlines and a hearing for the purpose of deciding whether to grant final approval of the Agreements.

Dated: November 14, 2023

Respectfully submitted,

*Mishan Wroe*

MISHAN WROE
*One of the attorneys for Plaintiffs*

CARLOS R. HOLGUÍN
Center for Human Rights &
Constitutional Law

HOLLY S. COOPER
CARTER C. WHITE
U.C. Davis Immigration Law Clinic
and Civil Rights Clinic

BRENDA SHUM
POONAM JUNEJA
FREYA PITTS
MISHAN WROE
MELISSA ADAMSON
DIANE DE GRAMONT
National Center for Youth Law

SUMMER J. WYNN
MICHAEL J. MCMAHON
REBECCA L. TARNEJA
ALEXANDRA R. MAYHUGH
JAMIE D. ROBERTSON
Cooley LLP

*Attorneys for Plaintiffs*

Dated: November 14, 2023

BRIAN M. BOYNTON
Principal Deputy Assist. Atty. Gen.

ERNESTO H. MOLINA, JR.
Deputy Director
Office of Immigration Litigation

BENJAMIN MARK MOSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
benjamin.m.moss2@usdoj.gov

/s/ *Benjamin Mark Moss**
Benjamin Mark Moss

NANCY K. CANTER
Senior Litigation Counsel

JONATHAN K. ROSS
ANTHONY C. MESSURI
Trial Attorneys

*Attorneys for Defendants*

*Signed with consent of counsel

19