CARLOS R. HOLGUÍN (90754)
Center for Human Rights & Constitutional Law
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Email: crholguin@centerforhumanrights.email

*Attorneys for Plaintiffs*
*(Additional counsel listed on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

LUCAS R., *et al.*,

Plaintiffs,

v.

XAVIER BECERRA, Secretary of U.S. Department of Health and Human Services, *et al.*,

Defendants.

No. 2:18-CV-05741-DMG-BFM

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENTS OF PLAINTIFFS' THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF [PSYCHOTROPIC MEDICATIONS, LEGAL REPRESENTATION, AND DISABILITY]**

Hearing: May 3, 2024
Time: 9:30 a.m.
Place: Courtroom 8C, 8th Floor

Judge: Hon. Dolly M. Gee

HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
Email: hscooper@ucdavis.edu
ccwhite@ucdavis.edu

POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
DIANE de GRAMONT (324360)
National Center for Youth Law
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: pjuneja@youthlaw.org
fpitts@youthlaw.org
mwroe@youthlaw.org
madamson@youthlaw.org
ddegramont@youthlaw.org

BRENDA SHUM
*(ADMITTED PRO HAC VICE)*
National Center for Youth Law
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4785
Email: bshum@youthlaw.org

SUMMER J. WYNN (240005)
MICHAEL J. MCMAHON
*(ADMITTED PRO HAC VICE)*
REBECCA L. TARNEJA (293461)
ALEXANDRA R. MAYHUGH (300446)
JAMIE D. ROBERTSON (326003)
Cooley LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: swynn@cooley.com
mmcmahon@cooley.com
rtarneja@cooley.com
amayhugh@cooley.com
jdrobertson@cooley.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I. Brief Overview of the Litigation .......... 2

II. Summary of the Settlement Agreements .......... 5

A. Psychotropic Medications Agreement .......... 5

B. Legal Representation Agreement .......... 6

C. Disability Agreement .......... 7

D. Monitoring and Termination of the Agreements .......... 8

E. Attorneys' Fees and Costs .......... 9

III. The Parties Provided Sufficient Notice to the Classes .......... 9

IV. The Agreements Are Fair, Reasonable, and Adequate, and Should Be Approved .......... 11

A. Class Representatives and Class Counsel Have Adequately Represented the Class. .......... 12

B. The Agreements Are the Result of Extensive Arm's-Length Negotiations Informed by Substantial Discovery .......... 13

C. The Agreements Provide Substantial Relief to the Classes that Adequately Addresses the Allegations in Plaintiffs' Complaint .......... 15

D. The Agreements Treat Class Members Identically .......... 17

E. The Agreements Received Support from Children in ORR Custody Who May Be Class Members, Weighing in Favor of Final Approval .......... 17

V. Conclusion .......... 18

# TABLE OF AUTHORITIES

## CASES

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) .......... 17

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 11

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......... 11, 12, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 11, 13

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022) .......... 9

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .......... 13

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) .......... 11

*In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .......... 14

*Lane v. Brown*, 166 F. Supp. 3d 1180 (D. Or. 2016) .......... 16

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .......... 11

*McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) .......... 11

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 16

*Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 11, 13

*Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597 (D. Colo. 1974) .......... 16

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) .......... 9

*Young v. Polo Retail, LLC*, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .......... 14

**STATUTES**

22 U.S.C. § 78 .......... 3

28 U.S.C. § 2412 .......... 9

29 U.S.C. § 705 .......... 4

29 U.S.C. § 794 .......... 3

**RULES**

Federal Rule of Civil Procedure 23 .......... passim

**REGULATIONS**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) .......... 16

Plaintiffs and Defendants (collectively, "the Parties") hereby jointly move the Court for entry of an order granting final approval of the Settlement Agreements resolving Plaintiffs' Third, Fourth, and Fifth Claims for Relief in the above-captioned action. *See* Decl. of Mishan Wroe in Supp. of Joint Mot. for Prelim. Approval of Settlements and Approval of Class Notices of Settlement, ECF No. 408-2 ("Wroe Decl. re Prelim. Approval"), Psychotropic Medications Agreement, ECF No. 408-3 ("Ex. A"); Legal Representation Agreement, ECF No. 408-4 ("Ex. B"); Disability Agreement, ECF No. 408-5 ("Ex. C") (collectively, the "Agreements").

This Court granted preliminary approval of the three Settlement Agreements on January 5, 2024, tentatively finding that "the terms of the Agreements . . . are fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e). Order re Prelim. Approval of Settlement, ECF No. 410 at 2. This Court also: (a) approved, and directed the Parties to enact, the Notice Plan; (b) scheduled the fairness hearing; and (c) directed Plaintiffs to file a motion for attorneys' fees within 30 days following entry of the final judgment in this action, if the Parties are unable to settle the issue of attorneys' fees and costs informally, as outlined in the Settlement Agreements. *Id.* at 2–4.

In accordance with the Court's Order, the Parties have fully complied with the requirements of the Notice Plan and have submitted declarations to that effect to the Court. *See* Decl. of Mishan Wroe re Compliance with Class Notice Procedures, ECF No. 411 ("Wroe Decl. re Class Notice"); Decl. of Michelle Ekanemesang, ECF No. 412-1 ("Ekanemesang Decl.").

The Parties now respectfully move this Court to enter an order that: (a) grants final approval of each of the three Agreements as fair, reasonable, and adequate resolutions of Plaintiffs' Third, Fourth, and Fifth Claims for Relief pursuant to Federal Rule of Civil Procedure 23(e)(2); (b) finds that the Agreements resulted from extensive arm's-length, good-faith negotiations between the Parties through experienced counsel; (c) incorporates the terms of the Agreements, requires the Parties

to comply with the terms of the Agreements, and provides that the Court shall retain jurisdiction for the purposes of interpreting and enforcing the Agreements until the Termination Dates; (d) dismisses Plaintiffs' Third, Fourth, and Fifth Claims with prejudice, and (e) finds that each Class Member shall be deemed to have released: (i) all claims for systemic declarative and injunctive relief presented in Plaintiffs' Third, Fourth, and Fifth Claims arising or accruing against the Defendants on or before the Termination Dates; (ii) all claims for systemic declarative and injunctive relief, arising or accruing against the Defendants on or before the Termination Dates, based on an identical factual predicate as the Third and Fourth Claims for Relief, even if such claims were not presented or might not have been presentable in this class action; and (iii) all claims for systemic declarative and injunctive relief under Section 504 of the Rehabilitation Act, arising or accruing against the Defendants on or before the Termination Date, based on an identical factual predicate as the Fifth Claim for Relief, even if such claims were not presented or might not have been presentable in this class action.

## I. BRIEF OVERVIEW OF THE LITIGATION

On June 29, 2018, Plaintiffs commenced the above-captioned action against the Secretary of the U.S. Department of Health and Human Services ("HHS") and the Director of the Office of Refugee Resettlement ("ORR") in their official capacities (collectively, "Defendants"). Compl., ECF No. 1. As amended on September 7, 2018, Plaintiffs' Complaint challenged, in part, Defendants' policies and practices with respect to: the administration of psychotropic medications to children in ORR custody; access to legal assistance in matters or proceedings involving ORR's custody, placement, release, and psychotropic medications decisions; and children in ORR custody with disabilities. *See generally* Plaintiffs' First Amended Complaint ("FAC"), ECF No. 81.

Plaintiffs alleged that Defendants failed to implement procedural safeguards when prescribing psychotropic medications in violation of children's rights under the

United States Constitution, the *Flores* Settlement, Section 235(c)(2) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 22 U.S.C. § 78, and laws of the states in which children are placed. FAC ¶¶ 132–42. Plaintiffs further alleged that ORR routinely bars legal service providers from representing children from non-contiguous countries in legal proceedings involving ORR's custody, release, placement, and psychotropic medication decisions in violation of the *Flores* Settlement Agreement and the TVPRA. *Id.* ¶¶ 143–52. Finally, Plaintiffs alleged Defendants' policies and practices with respect to children in ORR with disabilities violate these children's rights under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and result in their segregation in restrictive facilities and delays to their release. *Id.* ¶¶ 153–77.

Plaintiffs sought, among other things, injunctive relief enjoining Defendants from administering psychotropic drugs to Plaintiffs or class members in non-exigent circumstances without parental consent or the lawful equivalent thereof. *See generally* FAC. Additionally, Plaintiffs sought to enjoin Defendants from blocking Plaintiffs from receiving legal assistance in matters involving ORR's decisions regarding custody, placement, or release. *Id.* Plaintiffs further sought injunctive relief enjoining Defendants from, first, unnecessarily placing Plaintiffs in restrictive settings solely on the basis of disability and, second, from delaying and/or obstructing Plaintiffs' release on the basis of disability. *Id.* In their Answer, Defendants denied liability for Plaintiffs' claims. ECF No. 144.

On December 27, 2018, in an amended order, the Court granted Plaintiffs' motion for certification of five classes. Am. Order re Defs.' Mot. to Dismiss and Pls.' Mot. for Class Cert., ECF No. 141 at 27–28. As relevant to this motion, three of the classes are defined as all minors in ORR custody: (1) who are or will be prescribed or administered one or more psychotropic medications without procedural safeguards ("Psychotropic Medications Class"); (2) who are natives of non-contiguous countries and to whom ORR is impeding or will impede legal assistance in legal matters or

proceedings involving their custody, placement, release, and/or administration of psychotropic medications ("Legal Representation Class"); and (3) who have or will have a behavioral, mental health, intellectual, and/or developmental disability as defined in 29 U.S.C. § 705, and who are or will be placed in a secure facility, medium-secure facility, or residential treatment center solely by reason of such disabilities ("Disability Class"). *Id*.

The Parties conducted extensive fact and expert discovery, and on March 11, 2022, the Court ruled on the Parties' cross-motions for summary judgment. Order re Cross-Mots. for Summ. J., ECF No. 376. As relevant here, the Court ruled on Plaintiffs' legal representation class claim and held that ORR is not affirmatively obligated to fund legal representatives for minors in internal ORR challenges involving ORR decisions regarding minors' placement, sponsorship applications, and/or administration of psychotropic medications. *Id.* at 47. The Court denied summary judgment for both parties regarding whether ORR retaliates against attorneys who represent minors in ORR's administrative decisions and blocks the effective assistance of counsel, finding that a disputed issue of material fact remained to be litigated at trial. *Id.* at 49. Neither party sought summary judgment on the Psychotropic Medications Class or Disability Class claims, and thus the Court's partial summary judgment decision does not address those claims.

As explained in the Parties' Joint Motion for Preliminary Approval, the Parties engaged in lengthy negotiations and substantial discovery efforts over several years prior to reaching the Settlement Agreements. *See* Notice of Joint Mot. for Prelim. Approval of Settlements and Approval of Class Notices of Settlement, ECF No. 408; Wroe Decl. re Prelim. Approval ¶¶ 6–13. For example, Defendants produced more than 235,000 pages of documents, which Plaintiffs reviewed. Wroe Decl. re Prelim. Approval ¶ 6. The Parties also took more than 20 depositions of fact witnesses and completed 17 expert witness depositions. *Id.* These discovery efforts informed years of arm's-length negotiations. *Id.* ¶¶ 7–13. Prior to reaching a compromise on the

Agreements' terms, the Parties engaged in years of structured negotiations, two settlement conferences before Judge Pym, two years of negotiations with a private mediator, Kathleen Noonan, Esq., several telephonic settlement discussions, two in-person mediations in Washington, D.C., and numerous exchanges of draft settlement agreements. *Id.*

The Parties have now reached Agreements resolving Plaintiffs' Third, Fourth, and Fifth Claims for Relief. *See* Wroe Decl. re Prelim. Approval, Exs. A–C. These Agreements were executed by all Parties as of November 2, 2023. *See id.* The Agreements explicitly contemplate dismissal of the Third, Fourth, and Fifth Claims for Relief with the Court retaining jurisdiction only as provided in, and for purposes of interpreting and enforcing, if necessary, the terms of the Agreements. *Id.* This Court granted preliminary approval of the Settlement Agreements on January 5, 2024. Order re Prelim. Approval of Settlement at 2. As authorized and directed by the Court, the Parties enacted and have certified compliance with the Notice Plan. *See* Wroe Decl. re Class Notice; Ekanemesang Decl. The Parties now submit this Joint Motion for Final Approval of the Settlement Agreements.

## II. SUMMARY OF THE SETTLEMENT AGREEMENTS[1]

The Settlement Agreements address the issues raised by Plaintiffs' Third, Fourth, and Fifth Claims by requiring ORR to implement policies and procedural protections related to the administration of psychotropic medications, access to legal representation, and the placement and release of children with disabilities. *See* Wroe Decl. re Prelim. Approval, Exs. A–C.

### A. Psychotropic Medications Agreement

The Agreement resolving Plaintiffs' Third Claim for Relief related to the Psychotropic Medications Class requires ORR to develop policies and practices to

---

[1] The Parties have endeavored to provide an accurate summary of many of the key terms of the Agreements. In the event of a conflict between this summary and the terms of the Agreements themselves, the Agreements will control.

ensure a meaningful consent process prior to administering psychotropic medications and oversight mechanisms to prevent the over-utilization of psychotropic medications. Ex. A. For example, the Agreement requires, among other things, that when a doctor prescribes psychotropic medication to a child in ORR custody, ORR must seek consent to give the child this medication from, in order of preference, the child's parent or legal guardian, certain related sponsors (including siblings, grandparents, or any aunts, uncles, or cousins who were previously the child's primary caregiver), or from the child themselves if they are at least 16 years old. *Id.* at 9–18. The Agreement also requires informed consent, meaning that facility staff must explain to the consenter what the medication does, why the doctor believes it is needed, its benefits and risks, and possible alternatives to medication. *Id.* at 13–14. The Agreement further prohibits Defendants from punishing children or their consenters for refusing to give consent for any psychotropic medication or for changing their minds about giving consent. *Id.* at 17. Additionally, the Agreement establishes oversight mechanisms to monitor and provide guidance regarding the number of medications and dosage of medications prescribed to children in specified cases. *Id.* at 28–29.

### B. Legal Representation Agreement

The Agreement resolving Plaintiffs' Fourth Claim for Relief regarding the Legal Representation Class affirms that children in ORR custody have the right to seek legal representation regarding decisions involving their placement, release, custody, and/or the administration of psychotropic medications, although ORR need not fund such representation. Ex. B. The Agreement requires, in part, that ORR not interfere with or take adverse action against legal representatives, including those directly funded by ORR, who seek to assist children in ORR custody. *Id.* at 4. Specifically, the Agreement requires ORR to implement policies and procedures to ensure legal representatives receive updates on their clients' cases and access to necessary documents and information to ensure they are able to represent their clients

vigorously. *Id.* at 4–8. The benefits the Agreement confers on class members do not supplant, but are in addition to, counsel-related relief the Court granted on Plaintiffs' First and Second Claims for Relief. The Agreement also incorporates the Court's "Legal Representation Class" requirements ordered in the preliminary injunction. *See id.*; ECF No. 391 at 8–9.

**C. Disability Agreement**

As detailed in the Agreement resolving Plaintiffs' Fifth Claim for Relief regarding the Disability Class, the Parties have agreed on procedural protections that Defendants must implement for children in ORR custody who have or are perceived to have one or more disabilities. Ex. C. For example, the Agreement requires, in part, that ORR identify children with disabilities and provide those children who need them Section 504 Service Plans to meet the children's disability-related needs, to ensure that they can participate in the Unaccompanied Children ("UC") Program in the most integrated setting appropriate to their needs, and to ensure they are released from ORR's custody without any unnecessary delay solely due to their disability. *Id.* at 13–17. The Agreement further requires ORR to place children with disabilities in the least restrictive setting that is in the best interest of the child and the most integrated setting appropriate to their needs. *Id.* at 20. Additionally, if a child with a disability is placed in a restrictive placement, the Agreement requires ORR to document reasons why the child's needs could not be met in a more integrated and/or less restrictive setting with additional supports, services, and/or accommodations. *Id.* at 22. This documentation must be included in the child's first Notice of Placement. *Id*. The Agreement also includes system-wide requirements, such as commitments that ORR will track data about children with identified disabilities across the ORR system, that ORR will undertake a system-wide needs assessment to identify any gaps in the system related to children with disabilities and develop and implement a responsive disability plan, and that ORR will develop and deliver mandatory trauma-informed disability-related training for staff. *Id.* at 19–21.

**D. Monitoring and Termination of the Agreements**

The Parties agree that Kathleen Noonan, Esq. will be appointed as the Monitor to oversee, evaluate, report on, and certify Defendants' implementation progress and compliance with the Agreements related to the Psychotropic Medications and Disability Classes. Wroe Decl. re Prelim. Approval ¶ 15. Every six months, Defendants will provide reports to the Monitor that detail ORR's implementation of and compliance with the Psychotropic Medications and Disability Agreements. *Id.* Defendants will also concurrently publish streamlined public reports online. *Id*. The Parties will file a Joint Stipulation to Appoint Kathleen Noonan as Monitor after the Settlement Agreements receive final approval from the Court. Decl. of Mishan Wroe in support of the Parties' Joint Mot. for Final Approval of Settlement Agreements ¶ 11 ("Wroe Decl. re Final Approval"). The Parties do not believe a Monitor is necessary for the Legal Representation Agreement and the Agreement does not provide for such monitoring. Wroe Decl. re Prelim. Approval ¶ 16.

The Agreements state that Defendants' obligations will terminate on the earliest of the following dates:

For the Psychotropic Medications Agreement, (1) beginning three years after the Agreement's Effective Date, Defendants may move for a Court Order permitting early termination if they can demonstrate Substantial Compliance for a continued period of six months following implementation of the Agreement nationwide, supported by certification from the Monitor; or (2) six years from the Agreement's Effective Date. Ex. A.

The Legal Representation Agreement terminates three years after its Effective Date or upon promulgation of regulations incorporating the terms of the Agreement. Ex. B.

For the Disability Agreement, (1) beginning two years after Defendants implement[2] the Agreement, Defendants may move for a Court Order permitting early termination if they can demonstrate Substantial Compliance, supported by certification from the Monitor; or (2) five years after the Agreement's Implementation Date. Ex. C.

**E. Attorneys' Fees and Costs**

Plaintiffs will file a motion for attorney's fees and other expenses pursuant to 28 U.S.C. § 2412 and will include in that motion a request to direct notice to Class Members and an objection deadline in compliance with Federal Rule of Civil Procedure 23(h). A "final judgment" means "a judgment that is final and not appealable[.]" 28 U.S.C. § 2412(d)(2)(G). Therefore, a motion for fees must be filed within 30 days after the expiration of time for filing an appeal. The Agreements require, and the Parties will, meet and confer in good faith to attempt to settle such fees and costs. Wroe Decl. re Prelim. Approval, Ex. A at 38, Ex. B at 19, Ex. C at 40; Wroe Decl. re Final Approval ¶ 10.

## III. THE PARTIES PROVIDED SUFFICIENT NOTICE TO THE CLASSES

Before approving a settlement agreement under Rule 23(e), "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019)).

Here, the Court approved the Notices of the Settlement Agreements and the Notice Plan. Order re Prelim. Approval, ECF No. 410 at 2. The Court-approved Notices provided reasonable notice to the Classes because they explained, in plain

[2] The implementation date is defined as 12 months after the date of final approval of the Agreement by the Court.

language, (1) what the lawsuit was about; (2) who qualified as a class member; and (3) the terms of the Agreements. *See* Wroe Decl. re Prelim. Approval, Exs. D–F. The Notices explained how recipients can access copies of the proposed Settlement Agreements, comment on or object to the Agreements, and virtually participate in the fairness hearing. *See id.*

The Court-approved Notice Plan set out detailed steps the Parties would take to provide reasonable notice to members of the Classes. Order re Prelim. Approval 3–4. The Plan required ORR to post the Notices in English and Spanish in highly visible areas of all ORR in-network care provider facilities or programs which hold Class Members. *Id.* at 3. ORR was required to instruct care provider staff to offer to orally interpret the Notices during a regularly scheduled case management meeting during the Notice Period for children whose preferred language is not English or Spanish. *Id.* Defendants were required to post copies of the Notices on ORR's website, and to distribute the Notices by email to ORR's legal service provider contractor and ask the contractor to direct legal service providers to review the Notices with class members during Know-Your-Rights presentations. *Id.* The Notice Plan also required Class Counsel to coordinate dissemination of the Notice and copies of the Agreements to electronic fora where they are reasonably likely to reach Class Members' legal service providers, child advocates, other organizations who regularly work with children in ORR custody, and Class Members' families who seek to sponsor them. *Id.*

As specified in the Notice Plan, and in accordance with the Court's order granting preliminary approval, the Parties have certified compliance with these notice requirements. *See* Wroe Decl. re Class Notice; Ekanemesang Decl. The Parties received six comments from youth in ORR custody that were supportive of the Settlement Agreements. These comments came from children held in at least four different programs and are indicative of the Notice Plan's success in reaching potential class members. The Parties received no objections to the Settlement Agreements.

## IV. THE AGREEMENTS ARE FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED

Before approving a class action settlement, the district court must find that the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under the Federal Rules, courts consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) "the relief provided for the class is adequate; . . . and (D) the proposal treats class members equitably relative to each other." *Id.* Courts in the Ninth Circuit may also consider: "the extent of discovery completed and the stage of the proceedings;" "the experience and views of counsel;" "the presence of a governmental participant;" and "the reaction of the class members." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021) (explaining that the 2018 Rule 23(e) amendments did not supplant the Ninth Circuit "*Churchill* factors").

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019)). In deciding whether to approve a settlement, the Court must "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012). Notably, the District Court has a limited role in reviewing "what is otherwise a private consensual agreement negotiated between the parties." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Its only role in reviewing the substance of the settlement is to ensure that it is "fair, adequate, and free from collusion." *Lane*, 696 F.3d at 819 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

These Settlement Agreements clearly satisfy the requirements of Rule 23(e)(2). The Parties litigated this case over several years, engaging in substantial discovery

efforts, extensive motion practice, and prolonged arm's-length settlement negotiations. The result of the Parties' efforts are Settlement Agreements that will provide the Classes with immediate, meaningful benefits that far outweigh the risks inherent in litigating this case through trial and appeal by requiring ORR to implement policies and procedures that provide substantial relief to youth prescribed psychotropic medications, youth seeking legal assistance, and youth with disabilities. The Settlement Agreements are fair, reasonable, and adequate, and should be approved.

**A. Class Representatives and Class Counsel Have Adequately Represented the Class.**

Class Representatives and Class Counsel have "adequately represented" the best interests of the Classes during years of litigation, discovery, and negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A).

When this Court appointed Class Counsel, it noted that "[Plaintiffs' attorneys] have extensive experience and knowledge regarding complex class litigation brought on behalf of immigrant children, and they have the necessary personnel and resources to prosecute this action to final judgment." Am. Order re Defs.' Mot. to Dismiss and Pls.' Mot. for Class Cert. at 26. Collectively, Plaintiffs' counsel have litigated, settled, and implemented numerous institutional reform cases on behalf of children in government systems. *See generally* Mot. for Class Cert., ECF No. 97, Exs. 28–32. Accordingly, Class Counsel has a wealth of knowledge and experience from which to assess the strengths of Plaintiffs' claims and the value of the benefits the Settlement Agreements confer on youth in ORR custody. The "experience and views of counsel" recommending the Settlement Agreements weigh in favor of granting final approval here. *See Churchill*, 361 F.3d at 575.

Additionally, Class Counsel's extensive litigation, discovery efforts, and vigorous negotiations with Defendants, as described in more detail in the Joint Motion

for Preliminary Approval, demonstrate their adequate representation of the Classes. *See generally* Wroe Decl. re Prelim. Approval.

The Settlement Agreements clearly satisfy the adequacy of representation requirement in Federal Rule of Civil Procedure 23(e)(2)(A).

**B. The Agreements Are the Result of Extensive Arm's-Length Negotiations Informed by Substantial Discovery**

The Settlement Agreements were negotiated "at arm's length" through informed and non-collusive settlement discussions and mediations that spanned several years. *See* Fed. R. Civ. P. 23(e)(2)(B); Order re Prelim. Approval at 2 (preliminarily finding that "the Agreements resulted from arm's length negotiations [and that] there is no evidence of fraud [or] collusion"). The involvement of neutral mediators, the prolonged nature of settlement discussions, and the presence of a governmental participant are all signs that the negotiations were free from collusion. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of neutral mediator is "a factor weighing in favor of a finding of non-collusiveness"); *Officers for Just.*, 688 F.2d at 627 (finding no evidence of collusion where the parties engaged in "long and careful negotiations in which the United States was a participant"). Additionally, the completion of substantial discovery indicates "that the settlement was [not] negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims." *Hanlon*, 150 F.3d at 1027.

Here, the Parties began negotiations to resolve the claims of the Psychotropic Medications Class and the Disability Classes in November 2020. Wroe Decl. re Prelim. Approval ¶ 9. The negotiations included a settlement conference before Judge Pym and approximately two years of settlement discussions mediated by a private, neutral mediator, Kathleen Noonan, Esq. *Id.* ¶¶ 11–12. The Parties exchanged numerous draft agreements, had many telephonic settlement discussions, and participated in two in-person mediations before reaching a compromise. *Id.* On the Legal Representation Class claim, the Parties engaged in structured negotiations from

May 2019 to January 2020, including participation in a settlement conference before Judge Pym. *Id.* ¶ 7. Negotiations to resolve that claim were unsuccessful and were not restarted until early 2023. *Id.* ¶ 7, 13. After several months of telephonic discussions and exchanging drafts of the agreement, the Parties reached a resolution of the Legal Representation Class claim. *Id.* ¶ 13.

The Parties' extensive negotiations were informed by substantial discovery. Among other efforts, the Parties negotiated search terms for electronically stored information and Defendants produced more than 235,000 pages of documents, which Plaintiffs reviewed. *Id.* ¶ 6. The Parties also took more than 20 deposition of fact witnesses and completed 17 expert witness depositions. *Id.* The significant discovery completed shows that the Parties arrived at a compromise with "a clear view of the strengths and weakness of their cases." *In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (quoting *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007)). The Parties' negotiating positions were further informed by extensive motion practice related to class certification and summary judgment on Plaintiffs' First, Second, and Fourth Claims for Relief.

The length and nature of the Parties' negotiations, as informed by the significant discovery and litigation, show that the Settlement Agreements were negotiated at arm's length, satisfying the requirement of Federal Rule of Civil Procedure 23(e)(2)(B).

**C. The Agreements Provide Substantial Relief to the Classes that Adequately Addresses the Allegations in Plaintiffs' Complaint**

The Settlement Agreements provide meaningful relief to the Classes because they require ORR to comprehensively address the concerns raised in Plaintiffs' FAC through new policies and procedures.

First, the FAC alleged that ORR permits the administration of psychotropic drugs to children without procedural safeguards such as informed consent and periodic review by a neutral decision-maker (Third Claim for Relief). FAC ¶¶ 132–42. The Psychotropic Medications Agreement requires ORR to implement policies and practices to ensure a meaningful consent process prior to administration of psychotropic medications. Ex. A. Additionally, the Agreement establishes oversight mechanisms to monitor and provide guidance regarding the number of medications and dosage of medications prescribed to children in specified cases. *Id.*

Plaintiffs also alleged that ORR routinely bars children's legal representatives from representing them in proceedings involving their placement, release, custody, and/or the administration of psychotropic medications (Fourth Claim for Relief). FAC ¶¶ 143–52. The Legal Representation Agreement prohibits ORR from interfering with or taking adverse action against legal representatives assisting children in proceedings related to their placement, release, custody, and/or the administration of psychotropic medications. Ex. B. It further requires ORR to implement policies and procedures to ensure legal representatives receive updates on their clients' cases and have access to necessary documents and information. *Id.*

Finally, the FAC alleged that ORR segregates children with disabilities, unnecessarily places them in restrictive settings, and obstructs their timely release to sponsors (Fifth Claim for Relief). FAC ¶¶ 153–77. The Disability Settlement Agreement requires, in part, that ORR identify children with disabilities and provide those children who need them Section 504 Service Plans to ensure they can participate in the UC Program in the most integrated and least restrictive setting appropriate to

their needs, and ensure they are released without any unnecessary delay solely due to their disability. Ex. C. The Settlement Agreements provide adequate relief because they require ORR to take significant actions to prevent and address the conditions at the heart of Plaintiffs' allegations.

In assessing whether "the relief provided for the class is adequate," the Court also considers "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2). The court should "compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)).

Absent settlement, the Parties anticipate significant trial preparation, including pretrial motion practice and potential additional fact discovery. The losing party at trial will also have the option to appeal the decision. Litigating this case through trial and subsequent appeals would demand substantial attorney and judicial resources at the disadvantage of Class Members, who would be denied potential relief for many more years. Even if Plaintiffs ultimately won after years of litigation, there is a significant possibility that court-ordered injunctive relief would not be as comprehensive or precise as the Agreements the Parties negotiated. *See e.g.*, *Lane v. Brown*, 166 F. Supp. 3d 1180, 1189 (D. Or. 2016).

In light of these considerations, the Settlement Agreements afford the Classes substantial benefits that far outweigh the costs, risks, and delay that would result from litigating through trial and subsequent appeals.[3]

**D. The Agreements Treat Class Members Identically**

The Agreements "treat[ ] class members equitably relative to each other." *See* Fed. R. Civ. P. 23 (e)(2)(D). The Agreements do not differentiate between class members but rather require ORR to implement policies and practices that benefit all members of the Classes. The Agreements thus treat all Class Members identically.

**E. The Agreements Received Support from Children in ORR Custody Who May Be Class Members, Weighing in Favor of Final Approval**

Courts may consider "the reaction of the class members to the proposed settlement" when evaluating the fairness of a proposal. *Churchill*, 361 F.3d at 575. Here, the supportive comments received by children in ORR custody, and lack of opposition to the settlements, weigh in favor of granting final approval.

As described above, the Parties distributed Notice of the Settlement Agreements to Class Members in the manner approved by the Court. Wroe Decl. re Class Notice; Ekanemesang Decl. The Notices directed interested parties to submit written comments to Plaintiffs' Counsel for the Court's consideration. Wroe Decl. re Prelim. Approval, Exs. D–F. Additionally, during the Notice period, Plaintiffs' Counsel gave three presentations regarding the Settlement Agreements to individuals who regularly interact with Class Members: (1) a network of disability-rights protection and advocacy organizations; (2) Young Center child advocates; and (3) Acacia-contracted

---

[3] The other fairness factors in Rule 23 are not applicable here. *See* Fed. R. Civ. P. 23(e)(2)(C). The Agreements do not provide monetary relief, and there are no other agreements required to be identified. *See id.*; Exs. A–C. Additionally, the Agreements do not include awards for attorneys' fees and costs but require the Parties to meet and confer in good faith to settle such fees and costs. *See id.*; *supra* Section II.E. For the same reasons, heightened scrutiny under *Briseño v. Henderson* is not required. *See* 998 F.3d 1014, 1023 (9th Cir. 2021) (describing factors for evaluating fee awards that may indicate collusion).

legal service providers. Wroe Decl. re Final Approval ¶ 5. Ultimately, Plaintiffs' Counsel received written comments from six children in ORR custody, which were subsequently forwarded to Defendants pursuant to the Court's order. *Id.* ¶ 7. The children's comments are also being filed with the Court. *See* Wroe Decl. re Final Approval Exs. A–F.[4]

The comments from youth in ORR custody are universally supportive of the settlement agreements. *See generally id.* A 13-year-old child in ORR custody wrote a letter in support of the three agreements, saying in part, "people do not have to be isolated . . . they needed to be treated the same way, to be with the others, not shut in or be treated like they were treated." *Id.* Ex. A. Another child wrote a supportive letter, stating in part, "I would like you to support the children or persons with disabilities because all of us have rights and it is not right that because of a disability they are isolated or set aside." *Id.* Ex. B. The other letters from children in custody state simply that they support the agreement(s) or the lawsuit. *See id.* Exs. C–F. Plaintiffs' counsel did not receive any objections to the settlements. The reaction of youth in ORR custody who may be class members weighs in favor of granting final approval.

## V. CONCLUSION

As demonstrated above, the Settlement Agreements are fair, reasonable, and adequate, meet the requirements of Federal Rule of Civil Procedure 23, and should be approved. The Parties request that, following the hearing on May 3, 2024 at 9:30 a.m., the Court enter an order that: (a) grants final approval of each of the three Agreements as fair, reasonable, and adequate resolutions of Plaintiffs' Third, Fourth, and Fifth Claims for Relief pursuant to Federal Rule of Civil Procedure 23(e)(2); (b) finds that the Agreements resulted from extensive arm's-length, good-faith negotiations between the Parties through experienced counsel; (c) incorporates the

[4] Plaintiffs will, contemporaneously with this filing, file an application for leave to seal children's names from these comments.

terms of the Agreements, requires the Parties to comply with the terms of the Agreements, and provides that the Court shall retain jurisdiction over Plaintiffs' Third, Fourth, and Fifth Claims of Relief only for the purposes of interpreting and enforcing the Agreements until the Termination Dates, as specified in the Agreements; (d) dismisses Plaintiffs' Third, Fourth, and Fifth Claims for Relief with prejudice, and (e) finds that each Class Member shall be deemed to have released: (i) all claims for systemic declarative and injunctive relief presented in Plaintiffs' Third, Fourth, and Fifth Claims for Relief arising or accruing against the Defendants on or before the Termination Dates; (ii) all claims for systemic declarative and injunctive relief, arising or accruing against the Defendants on or before the Termination Dates, based on an identical factual predicate as the Third and Fourth Claims for Relief, even if such claims were not presented or might not have been presentable in this class action; and (iii) all claims for systemic declarative and injunctive relief under Section 504 of the Rehabilitation Act, arising or accruing against the Defendants on or before the Termination Date, based on an identical factual predicate as the Fifth Claim for Relief, even if such claims were not presented or might not have been presentable in this class action.

Dated: March 25, 2024

Respectfully submitted,

*/s/ Mishan Wroe*
MISHAN WROE

CARLOS R. HOLGUÍN
Center for Human Rights & Constitutional Law

HOLLY S. COOPER
CARTER C. WHITE
U.C. Davis Immigration Law Clinic and Civil Rights Clinic

BRENDA SHUM
POONAM JUNEJA
FREYA PITTS
MISHAN WROE
MELISSA ADAMSON
DIANE DE GRAMONT
National Center for Youth Law

SUMMER J. WYNN
MICHAEL J. MCMAHON
REBECCA L. TARNEJA
ALEXANDRA R. MAYHUGH
JAMIE D. ROBERTSON
Cooley LLP

*Attorneys for Plaintiffs*

Dated: March 25, 2024

BRIAN M. BOYNTON
Principal Deputy Assist. Atty. Gen.

ERNESTO H. MOLINA, JR.
Deputy Director
Office of Immigration Litigation

BENJAMIN MARK MOSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
benjamin.m.moss2@usdoj.gov

*/s/ Benjamin Mark Moss**
Benjamin Mark Moss

NANCY K. CANTER
Senior Litigation Counsel

JONATHAN K. ROSS
ANTHONY C. MESSURI
Trial Attorneys

*Attorneys for Defendants*

*Signed with consent of counsel