1

2  CARLOS R. HOLGUÍN (Cal. Bar No. 90754)
   Center for Human Rights & Constitutional Law
3  256 South Occidental Boulevard
   Los Angeles, CA 90057
4  Telephone: (213) 388-8693
   Email: crholguin@centerforhumanrights.org
5

6      *Attorneys for Plaintiffs*
       *(Additional counsel listed on next page)*
7

8

9

10

11

12

13                 UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                      WESTERN DIVISION

16

17  LUCAS R., *et al.*,                    No. 2:18-CV-05741 DMG BFM

18         Plaintiffs,
                                           COMBINED MEMORANDUM OF POINTS
19      v.                                 & AUTHORITIES IN OPPOSITION TO
                                           MOTION TO DISMISS AS MOOT AND IN
20                                         SUPPORT OF MOTION FOR
21  XAVIER BECERRA, Secretary of U.S.      DECLARATORY RELIEF AND ENTRY OF
    Department of Health and Human         FINAL JUDGMENT
22  Services, *et al.*,

23         Defendants.
                                           Hearing:    Sept. 13, 2024
24                                         Time:       2:00 p.m.
                                           Place:      Courtroom 8C, 8th floor
25

26                                         Judge:      Hon. Dolly M. Gee
27

28

HOLLY S. COOPER (197626)
Co-Director, Immigration Law Clinic
CARTER C. WHITE (164149)
Director, Civil Rights Clinic
JONATHAN P. MULLIGAN
(CAL RLSA NO. 803383)
University of California Davis School of Law
One Shields Ave. TB 30
Davis, CA 95616
Telephone: (530) 754-4833
  Email: hscooper@ucdavis.edu
        ccwhite@ucdavis.edu
        jpmulligan@ucdavis.edu


NATIONAL CENTER FOR YOUTH LAW
POONAM JUNEJA (300848)
FREYA PITTS (295878)
MISHAN WROE (299296)
MELISSA ADAMSON (319201)
DIANE DE GRAMONT (324360)
1212 Broadway, Suite 600
Oakland, CA 94612
Telephone: (510) 835-8098
Email: pjuneja@youthlaw.org
        fpitts@youthlaw.org
        mwroe@youthlaw.org
        ddegramont@youthlaw.org


NATIONAL CENTER FOR YOUTH LAW
BRENDA SHUM (*ADMITTED PRO HAC VICE*)
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
Telephone: (202) 868-4785
Email: bshum@youthlaw.org

1

2   Cooley LLP
    SUMMER J. WYNN (240005)
3   MICHAEL J. MCMAHON (*ADMITTED PRO HAC VICE*)
4   REBECCA L. TARNEJA (293461)
    ALEXANDRA R. MAYHUGH (300446)
5   JAMIE D. ROBERTSON (326003)
    1333 2nd Street, Suite 400
6   Santa Monica, CA 90401
    Telephone:   (310) 883-6400
7   Facsimile:   (310) 883-6500
    Email: swynn@cooley.com
8          mmcmahon@cooley.com
           rtarneja@cooley.com
9          amayhugh@cooley.com
           jdrobertson@cooley.com
10

11

12      *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I.   Introduction. ................................................................................................. 1

II.  Defendants' motion to dismiss should be denied because Plaintiffs'
     First and Second Claims For Relief are not moot. ...................................... 3

     A.   The record establishes a reasonable expectation that, left to their
          own devices, Defendants' will resume conduct this Court has
          held unconstitutional. ....................................................................... 3

     B.   Plaintiffs' First and Second Claims for Relief are not moot
          because the Rule provides only partial relief to some class
          members. ........................................................................................ 12

III. The Court may and should grant declaratory relief commensurate with
     its 2022 summary judgment. ...................................................................... 14

IV.  The Court's final judgment should incorporate and retain jurisdiction
     to enforce the agreements on Plaintiffs' settled claims. ............................ 17

V.   Conclusion. ................................................................................................. 18

///

### TABLE OF AUTHORITIES

**Cases**

*ACLU of Mass. v. United States Conf. of Catholic Bishops*,
   705 F.3d 44 (1st Cir. 2013) ........................................................... 14

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ................................................................... 3, 4

*Am. Cargo Transp., Inc. v. United States*,
   625 F.3d 1176 (9th Cir. 2010) ........................................................ 4

*Armster v. U.S. Dist. Court for Cent. Dist. of California*,
   806 F.2d 1347 (9th Cir. 1986) ........................................................ 9

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) .................................................................. 3

*Barrett v. Premo*,
   101 F. Supp. 3d 980 (D. Or. 2015) ................................................. 15

*Barrios Garcia v. U.S. Dep't of Homeland Sec.*,
   25 F.4th 430 (6th Cir. 2022) ........................................................ 10

*Bd. of Trs. of the Glazing Health & Welfare Trust v. Chambers*,
   941 F.3d 1195 (9th Cir. 2019) (en banc) ........................................... 5

*Bell v. City of Boise*,
   709 F.3d 890 (9th Cir. 2013) ........................................................ 4

*Bilbrey ex rel. Bilbrey v. Brown*,
   738 F.2d 1462 (9th Cir. 1984) ...................................................... 15

*BNSF Ry. Co. v. Tri-City & Olympia R.R. Co. LLC*,
   835 F. Supp. 2d 1056 (E.D. Wash. 2011) ......................................... 15

*Bresgal v. Brock*,
   637 F. Supp. 280 (D. Or. 1986) .................................................... 15

*Chafin v. Chafin*,
   568 U.S. 165 (2013) ................................................................ 13

*City of Mesquite v. Aladdin's Castle*,
   455 U.S. 283 (1982) ............................................................... 5, 6

*Cnty. of Los Angeles v. Davis*,
   440 U.S. 625 (1979) ....................................................................................... 4

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) ........................................................................ 6

*de Jesus Ortega Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ...................................................................... 16

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) .............................................................. 4, 16

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
   438 U.S. 59 (1978) ..................................................................................... 15

*Fikre v. FBI*,
   904 F.3d 1033 (9th Cir. 2018) .......................................................3, 6, 10, 12

*Flagstaff Med. Ctr., Inc. v. Sullivan*,
   962 F.2d 879 (9th Cir. 1992) .................................................................. 12, 13

*Flores v. Garland*,
   No. CV 85-4544 (C.D. Cal. 1977) ............................................................ 7, 8

*Flores v. Johnson*,
   212 F. Supp. 3d 864 (C.D. Cal. 2015) .......................................................... 10

*Flores v. Lynch*,
   392 F. Supp. 3d 1144 (C.D. Cal. 2017), *aff'd sub nom. Flores v.
   Sessions*, 862 F.3d 863 (9th Cir. 2017) ........................................................ 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................... 16

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
   23 F.3d 1071 (6th Cir. 1994) ...................................................................... 17

*Honig v. Doe*,
   484 U.S. 305 (1988) ..................................................................................... 7

*Indigenous Env't Network v. Trump*,
   541 F. Supp. 3d 1152 (D. Mont. 2021) ...............................................5, 6, 11

*Koala v. Khosla*,
  No. 17-55380, 2020 U.S. App. LEXIS 4818 (9th Cir. Feb. 14, 2020) ..............16

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ..................................................................................17

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941) ..................................................................................14

*McCormack v. Herzog*,
  788 F.3d 1017 (9th Cir. 2015)...........................................................4, 6, 10

*Mora-Albarran v. Mayorkas*,
  No. 22-0411, 2023 U.S. Dist. LEXIS 91170 (N.D. Cal. May 23, 2023) ..........10

*Murphy v. Hunt*,
  455 U.S. 478 (1982) (per curiam) ................................................................3

*Ne. Fla. Ch. of the Associated Gen. Contractors of America v. City of
  Jacksonville*,
  508 U.S. 656 (1993) ....................................................................................5

*Olagues v. Russoniello*,
  770 F.2d 791 (9th Cir. 1985)........................................................................6

*Palmetto Props., Inc. v. Cnty. of Dupage*,
  375 F.3d 542 (7th Cir. 2004)........................................................................4

*Prison Legal News v. Columbia Cty.*,
  942 F. Supp. 2d 1068 (D. Or. 2013)............................................................15

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014)..............................................................5, 6, 16

*Sammartano v. First Jud. Dist. Ct.*,
  303 F.3d 959 (9th Cir. 2002)......................................................................17

*Smith v. Univ. of Wash. Law School*,
  233 F.3d 1188 (9th Cir. 2000)......................................................................6

*Super Tire Eng'g Co. v. McCorkle*,
  416 U.S. 115 (1974) ..................................................................................14

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   582 U.S. 449 (2017) ..................................................................................11

*U.S. v. Concentrated Phosphate Export Ass'n*,
   393 U.S. 199 (1968) ..................................................................................12

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ....................................................................................4

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ....................................................................6

*Wong v. Department of State*,
   789 F.2d 1380 (9th Cir. 1986) ..................................................................12

**Statutes**

5 U.S.C. § 802 ..............................................................................................10

Administrative Procedure Act ......................................................................12

Congressional Review Act ....................................................................2, 9, 10

Declaratory Judgment Act, 28 U.S.C. § 2201 .............................................15

Homeland Security Act ..................................................................................8

Trafficking Victims Protection Reauthorization Act ....................................8

**Other Authorities**

45 C.F.R.
   § 410.1001 ................................................................................................13
   § 410.1206(g) ...........................................................................................13
   § 410.1901(b) ...........................................................................................14

63 Fed. Reg. 39,759 .......................................................................................7

67 Fed. Reg. 1670 ..........................................................................................7

83 Fed. Reg. 45,486 .......................................................................................8

84 Fed. Reg. 44,392 .......................................................................................8

89 Fed. Reg.
34,384 (*codified at* 45 C.F.R. pt. 410) .......................................................... 1, 9
34,388 ........................................................................................................... 9
34,457 ........................................................................................................... 9

13A C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE &
PROCEDURE § 3533.2 (2d ed. 1984) ................................................. 13

Notice of Proposed Rulemaking, Unaccompanied Children Program
Foundational Rule, 88 Fed. Reg. 68,908, 68,986-87 (Oct. 4, 2023) ................... 9

Order Granting Summary Judgment on Plaintiffs' First, Second, And
Fourth Claims for Relief, Oct. 2, 2020 (Doc. #271-3) ........................................ 13

S.J. Res. 94, 118th ................................................................................................. 10

I.    INTRODUCTION.

This class action now seeks declaratory relief on behalf of detained non-citizen minors who challenge policies and practices of the Office of Refugee Resettlement of the Department of Health and Human Services ("ORR") in five areas:

1) Placing children in restrictive facilities without affording notice and an opportunity to be heard regarding the grounds for such placement (the "step-up" claim);

2) Refusing to release children to parents or other available custodians on the ground that the proposed custodian is or may be unfit (the "unfit custodian" claim);

3) Administering psychotropic medications to children without procedural safeguards (the "drug administration" claim);

4) Blocking children from obtaining legal assistance with respect to their custody, placement, release, or administration of psychotropic drugs (the "legal representation" claim); and

5) Placing children in restrictive facilities and denying release to custodians because of behavioral, mental health, intellectual, and developmental disabilities (the "disability" claim).

The merits of the above claims are now resolved: the step-up and unfit custodian claims ("SJ Claims") through summary judgment and the remainder by settlement. No issues remain for trial, and this matter is ripe for final judgment.

The sole remaining dispute is whether the Court should grant Plaintiffs relief on their SJ Claims, both of which Plaintiffs won in substantial part on summary judgment.

Defendants move to dismiss these claims. They argue that ORR's incorporating the procedural protections the Court preliminarily enjoined it to provide into federal regulations, 89 Fed. Reg. 34,384 (April 30, 2024) (*codified at* 45 C.F.R. pt. 410) ("Foundational Rule" or "Rule"), renders the SJ Claims moot. Plaintiffs disagree. The

- 1-

MEMORANDUM ISO MOTION FOR DECLARATORY RELIEF, etc.
No. 2:18-CV-05741 DMG BFM

claims continue to present a justiciable case and controversy. Plaintiffs remain entitled to declaratory relief firstly because Defendants may reasonably be expected to abandon the procedural protections the Rule belatedly supplies.

ORR has never conceded that its former policies and practices were unconstitutional. Defendants' incorporating the requirements of the preliminary injunction—and no more—into regulations appears an expedient to comply with the Court's preliminary injunction.

Nor is there any barrier to Defendants' abandoning the Rule as early as next year; indeed, they may have no choice in the matter. Nearly half of the United States Senate is supporting a resolution under the Congressional Review Act ("CRA") to abrogate the Rule. Even were the CRA resolution to fail, a new administration will assume authority over ORR next year, and the long-term viability of the Rule will be uncertain at best.

Second, Defendants incorrectly assert that the Rule affords Plaintiffs complete relief from the injuries alleged in the complaint, Mot. to Dismiss at 1, 9, 11, July 12, 2024 (Doc. #440-1) ("MTD"). The Rule instead gives class members only *partial* relief on their SJ Claims: It fails to afford any class member all the process Plaintiffs claim is due and grants children whom the agency refuses to release to certain custodians—second cousins and other related and unrelated adults—no due process at all.[1]

As against the Rule's uncertain future, the constitutional imperatives of due process are a constant. In granting Plaintiffs partial summary judgment, the Court decided what procedural protections children are constitutionally due when ORR

---

[1] As discussed *post*, the Court's having ruled at interlocutory summary judgment that ORR need not provide some of the process Plaintiffs seek goes to the merits of the SJ Claims, but does not render those *claims* moot.

wishes to place them in restrictive facilities or declare their parents or other close relatives unfit. After six years of litigation, children's constitutional rights should not be abandoned to the political winds. The Court should enter a declaratory judgment incorporating its summary judgment on the SJ Claims. Doing so will provide a moderate, yet meaningful, hedge against the likelihood that ORR will return to its unconstitutional ways.

II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF ARE NOT MOOT.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Mootness is fundamentally a matter of degree: there is no precise test for ascertaining with precision whether a particular claim has become moot. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979) ("The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test."); *see also Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018) ("No bright-line rule separates cases comprehended by the voluntary cessation doctrine from those that are not[.]").

As Defendants recognize, cases are not moot when one of three recognized exceptions to mootness applies. MTD at 10. Contrary to Defendants' assertion, *id.* at 12-15, the voluntary cessation doctrine squarely applies here.

### A.   The record establishes a reasonable expectation that, left to their own devices, Defendants will resume conduct this Court has held unconstitutional.

It is axiomatic that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. *Already, LLC*, 568 U.S. at 91; *County of Los*

*Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)) ("voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot").[2] "Once a defendant has engaged in conduct the plaintiff contends is unlawful and the courts have devoted resources to determining the dispute, there is Article III jurisdiction to decide the case as long as the parties do not plainly lack a continuing interest." *Demery v. Arpaio*, 378 F.3d 1020, 1026 (9th Cir. 2004).

As this Court previously noted, "The doctrine of voluntary cessation imposes upon Defendants 'the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur.'" Order re Defs.'s Mot. to Dismiss and Mot. for J. on the Pleadings (as to Def. Lloyd) at 4 n.6, Aug. 21, 2019 (Doc. #187) (emphasis added).

Although courts "treat the voluntary cessation of challenged conduct by government officials 'with more solicitude . . . than similar action by private parties,'" *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010), it nevertheless remains Defendants' burden to demonstrate that the change in their behavior is "entrenched" or "permanent." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) (quoting *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013)); *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

Courts have, however, applied the foregoing principles inconsistently. The

---

[2] In any event, Defendants' discontinuing the conduct this Court held unconstitutional was not "voluntary." Defendants promulgated the Rule only after this Court enjoined them to afford detained children an opportunity to be heard when ORR declares their parents or other close relatives unfit or consigns them to secure placements. *See Palmetto Props., Inc. v. Cty. of Dupage*, 375 F.3d 542, 550 (7th Cir. 2004) ("To be sure, the Defendants were free to moot the case before the summary-judgment ruling, in which case the action would have been voluntary. They did not. Hence, their action is most persuasively construed as involuntary[.]").

Supreme Court has held on multiple occasions that a case is not moot despite a government actor's having repealed or amended a challenged statute or ordinance. *E.g.*, *City of Mesquite v. Aladdin's Castle,* 455 U.S. 283, 289 & n.11 (1982); *Ne. Fla. Ch. of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662-63 (1993).

In 2019, the Ninth Circuit recognized that its own "analytical approach in response to *City of Mesquite* and *Northeastern Florida* has been somewhat inconsistent." *Bd. of Trs. of the Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc). The court granted rehearing en banc in *Glazing Health* specifically to "examine and harmonize our precedent concerning the proper analytical framework to apply when determining whether the repeal, amendment, or expiration of legislation renders a lawsuit challenging the legislation moot." *Id*. at 1197.

The court held that "we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*. at 1199. A "party challenging the presumption of mootness need not show that the enactment of the same or similar legislation is a 'virtual certainty,' only that there is *a reasonable expectation* of reenactment" "founded in the record." *Id.* (emphasis added).[3]

Although the court did not in *Glazing Health* elaborate on the factors that courts should weigh in determining whether there is a "reasonable expectation" of recidivism, the following appear in other precedents:

---

[3] Here, of course, the Rule is not legislation, and Defendants are not a legislative body. They are not entitled to the presumption of good faith accorded legislative acts. *Indigenous Envt'l Network v. Trump*, 541 F. Supp. 3d 1152, 1158 (D. Mont. 2021).

1) The "form the governmental action takes": that is whether its change is incorporated into a statute that may not be changed absent the "rigors of the legislative process," rather than by unilateral "'executive action.'" *Fikre*, 904 F.3d at 1038 (quoting *McCormack,* 788 F.3d at 1025).[4]

2) Whether the change in policy "has been in place for a long time when we consider mootness." *Rosebrock,* 745 F.3d at 972.

3) "[T]he avowed rationale for governmental action": that is, whether the defendant ceased challenged activity because it concluded it was improper, or instead "continue[s] to argue vigorously that [its] actions were lawful." *Fikre*, 904 F.3d at 1038 (quoting *Olagues v. Russoniello*, 770 F.2d 791, 794 (9th Cir. 1985)).

4) Mootness is less appropriate when repeal of legislation is due to the prodding effect of litigation. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1194 (9th Cir. 2000); *City of Mesquite,* 455 U.S. at 289 (challenged ordinance might be reenacted because defendant amended it "in obvious response to the state court's judgment . . ."); *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019) ("We are particularly wary of legislative changes made in direct response to litigation."); *but see White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (agency's confessing that case was "catalyst" for new policy favors finding of mootness).

Finally, the Court need find only a *reasonable* expectation of recurrence, plainly, a standard less exacting than a probability:

> [W]e have found controversies capable of repetition based on expectations
> that, while *reasonable*, were hardly demonstrably *probable* . . . Our concern in
> these cases . . . was whether the controversy was capable of repetition and not .

---

[4] "For cases that lie between these extremes, we ask whether the government's new position 'could be easily abandoned or altered in the future.'" *Id.* (quoting *Rosebrock*, 745 F.3d at 972).

. . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not.

*Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis added) (internal citations and original emphasis omitted).

Applying the foregoing to the case at bar, it is apparent that the Rule does too little, too late, to render Plaintiffs' claims moot.

First, Defendants have historically resisted giving non-citizen children due process.

In 1998, the Government first proposed regulations aimed at sunsetting the class-wide settlement in *Flores v. Garland*, No. CV 85-4544 (C.D. Cal. 1977) ("FSA"). *See* Processing, Detention, and Release of Juveniles, 63 Fed. Reg. 39,759 (July 24, 1998). Although that proposed rule was never finalized, it offered children no procedural recourse when the former Immigration and Naturalization Service ("INS") refused release to parents or other available custodians.

As for step-up, the 1998 proposed rule would have authorized secure placement "whenever the [INS] district director or chief patrol agent determines" that the child met specified criteria; it offered children no procedural recourse to oppose needlessly restrictive placement. *Id.*[5]

After the Homeland Security Act ("HSA") transferred responsibility for the placement and release of unaccompanied minors to ORR, Defendants continued to show little appetite for affording children procedural recourse.

---

[5] In 2002, the Government reopened public comment on the proposed 1998 rule. Processing, Detention, and Release of Juveniles, 67 Fed. Reg. 1670 (Jan. 14, 2002). The notice invited public comment on several matters, but notably absent was any specific mention of giving children an opportunity to be heard when they are consigned to secure placements or refused release to available custodians. The INS again abandoned the 1998 rule.

As the Court will recall, the FSA vested children with the right to a "bond redetermination" hearing unless they affirmatively declined one. *See Flores v. Lynch*, 392 F. Supp. 3d 1144 (C.D. Cal. 2017), *aff'd sub nom. Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017). ORR unilaterally disregarded this procedural protection, asserting that the HSA and Trafficking Victims Protection Reauthorization Act "terminated the bond-hearing requirement of the *Flores* Settlement[.]" *Flores*, 862 F.3d at 867.

This Court disagreed: "Defendants want this Court to construe the TVPRA in a way that could result in the indefinite detention of unaccompanied children *without the due process protection* offered to adult detainees through a bond hearing." *Flores*, 392 F. Supp. 3d at 1151 (emphasis added). The Ninth Circuit affirmed: "Without such hearings, these children have *no meaningful forum* in which to challenge ORR's decisions regarding their detention or even to discover why those decisions have been made." 862 F.3d at 867-68 (emphasis added).

In 2018, the Government again proposed comprehensive rules on ORR's treatment of children. *See* Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 83 Fed. Reg. 45,486 (Sept. 7, 2018). Again the proposed regulations failed to afford children any procedural recourse from erroneous step-up or continued detention on the ground that available custodians are unfit. The ensuing final rule, published in 2019, likewise offered children no procedural recourse. *See* Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44,392 (Aug. 23, 2019).

And in proposing the current Rule, Defendants continued to resist affording children constitutionally due process, proposing to deny procedural recourse when ORR declares their brothers, sisters, grandparents, aunts, uncles, or first cousins unfit. *See* Notice of Proposed Rulemaking, Unaccompanied Children Program Foundational

Rule, 88 Fed. Reg. 68,908, 68,986-87 (Oct. 4, 2023).[6]

Second, "[i]t has long been recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based upon a recognition of the initial illegality of that conduct." *Armster v. U.S. Dist. Court for Cent. Dist. of California*, 806 F.2d 1347, 1359 (9th Cir. 1986). Such common sense is especially compelling here: ORR has never admitted that its pre-preliminary injunction practices were unconstitutional. Rather, as the preamble to the Rule states, the procedures it now affords spring not from some constitutional epiphany, but instead as a response to this Court's preliminary injunction. *E.g.*, 89 Fed. Reg. 34,388 ("As described herein, in this final rule, ORR intends to codify the requirements of the *Lucas R.* preliminary injunction."); *id.* at 34,439 ("For the purposes of this final rulemaking, ORR has made certain updates relevant to release of unaccompanied children, consistent with its discussion of the *Lucas R.* case . . .").

Third, there is good reason to expect that Defendants will soon jettison the Rule, regardless of what ORR's current leadership would prefer.

On June 5, 2024, 46 Senators, led by Sen. Chuck Grassley (R- Iowa), introduced a joint resolution under the CRA that would terminate the Rule entirely. S.J. Res. 94, 118th Cong. (2024), *available at* www.congress.gov/bill/118th-congress/senate-joint-resolution/94/all-actions?s=3&r=1 (last visited July 8, 2024).[7]

---

[6] Further reflecting this ingrained resistance, ORR's final Rule explicitly refuses to afford class members any process beyond what the Court enjoined to provide. *E.g.*, 89 Fed. Reg. at 34,457. ("Notably, the court in *Lucas R.* found that unaccompanied children with potential sponsors who are distant relatives or unrelated individuals designated by parents, and children without any identified sponsors, 'require little or no additional procedural protection.'").

[7] The CRA allows Congress to review and disapprove federal regulations. There is no deadline by which Congress must act on a CRA resolution. 5 U.S.C. § 802.

Given the stout support for Sen. Grassley's resolution, it would require much credulity to assume that the Rule is "entrenched" or "permanent." *McCormack,* 788 F.3d at 1025.

Finally, the CRA resolution aside, no one should be surprised were a new administration to decide to eliminate the Rule as early as next year.[8] Absent a binding judgment in this case, nothing would stop Defendants from abandoning the Rule just as easily as they adopted it.

Defendants are not a legislative body constrained by majoritarian principles. *See Mora-Albarran v. Mayorkas*, No. 22-0411, 2023 U.S. Dist. LEXIS 91170 at *11 (N.D. Cal. May 23, 2023) (quoting *Fikre,* 904 F.3d at 1039 ("'[A] voluntary change in official stance or behavior moots an action only when it is absolutely clear to the court, *considering the procedural safeguards insulating the new state of affairs from arbitrary reversal . . .*'" (emphasis added)); *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022) (claim not moot where "[a] future administration could rescind the BFD process just as easily as this administration established it.").[9]

*Indigenous Environmental Network v. Trump*, 541 F. Supp. 3d 1152 (D. Mont.

---

[8] As this Court will recall, the Government has previously sought to detain class members in order to deter others from entering the United States without authorization. *See Flores v. Johnson*, 212 F. Supp. 3d 864, 885-86 (C.D. Cal. 2015). Even assuming that under a new administration ORR were to eschew an openly blanket policy of detaining children, absent the process this Court has held constitutionally due, it would be easy to do so pretextually.

[9] Stated accurately, the Rule neither "repeals" nor "amends" an offending statute or regulation. It rather adopts for the first time the procedural protections this Court required in 2022 and which Plaintiffs had been demanding since 2018. Defendants need not "reenact" ORR's denying children process due: Free of the constraints resulting from this litigation, they need only erase what the Rule has recently adopted.

2021), is instructive in this regard. In that case, the Trump administration granted a permit to construct a cross-border section of a controversial oil pipeline; the plaintiffs sued to enjoin construction. *Id.* at 1156. Two years later, the Biden administration revoked the permit and moved to dismiss the case as moot. *Id.* at 1156-57.

The Government argued that its voluntary cessation of challenged conduct was entitled to "'more solicitude' than similar actions by private parties." *Id.* at 1158. The court disagreed, noting that the Government mistakenly relied on cases not involving the "unilateral and unchecked activities of the President." *Id.* The court held the case justiciable because "the possibility remains that [President Biden], or a future president, could issue unilaterally another permit." *Id.* at 1158 (citing *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017)).

Here, too, the Court should find that there is a reasonable expectation that Defendants may rescind the procedural protections the Rule provides for now. The record establishes such a likelihood.

To sum up, Defendants have historically opposed affording children due process. For nearly six years, ORR vigorously defended its unconstitutional practices before this Court, and it has yet to concede that it ever acted unlawfully. It belatedly included procedural protections in the Rule only because this Court held that the Constitution requires them. Whatever its current preferences, either a Congressional resolution or a new administration may oblige ORR to jettison the Rule. Defendants' prerogative to rescind class members' regulatory protections is constrained only by the requirement that they go through the formalistic rulemaking requirements of the Administrative Procedure Act.

On this record, the Court should reject the argument that Defendants' "change in [their] behavior is 'entrenched' or 'permanent.'" *Fikre,* 904 F.3d at 1037.

Constitutional rights, in contrast, are constant. They do not wax and wane with the policy preferences du jour of the Executive or Congress. The constitutional

imperatives this Court has identified should prevail regardless of the vicissitudes the future plainly portends.

**B.      Plaintiffs' First and Second Claims for Relief are not moot because the Rule provides only partial relief to some class members.**

The SJ Claims remain justiciable for an additional reason: a litigant's receiving only *part* of the relief that they seek does not render a claim moot.[10] *U.S. v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) ("new regulation may reduce the practical importance of this case, [but] it does not completely remove the controversy."); *Wong v. Department of State*, 789 F.2d 1380, 1384 (9th Cir. 1986) (citing 13A C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 3533.2 at 242-43 (2d ed. 1984); *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 885 (9th Cir. 1992) ("Partial relief in another proceeding cannot moot an action that legitimately seeks additional relief."). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

Here, Defendants err in suggesting that the Rule affords Plaintiffs complete relief from the harms alleged in the complaint. MTD at 1, 9, 11.

With respect to the unfit custodian class, Plaintiffs seek relief on behalf of all detained children for whom a custodian is available regardless of familial relation. First Am. Compl. For Inj. Relief, Declaratory Relief, and Nominal Damages at 52,

---

[10] Although Plaintiffs continue to believe that children are entitled to greater procedural protections than the Court held due, they have no reason to predict the Court would be at all inclined to revisit its summary judgment. In all events, partial relief effectuated through regulatory action does not moot the claims at issue, even when that partial relief is coterminous with the relief granted upon an interlocutory summary judgment. The Court's declining to rule wholly for Plaintiffs "goes to the merits rather than the threshold question of mootness." *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 885 (9th Cir. 1992).

Sept. 7, 2018 (Doc. #81). The Rule, in contrast, grants only those children whose close relatives seek their custody the right to challenge ORR's having declared a proposed custodian unfit. The Rule grants other children no procedural recourse when ORR declares their custodians unfit. 45 C.F.R. §§ 410.1001 (2024) (defining "close relative"); 410.1206 (2024) (providing right of administrative appeal to only denied parents, guardians and "close relative[s]").

And even with respect to children to whom it does give a right to administrative review, the Rule provides only *part* of the process Plaintiffs contend is constitutionally due.[11]

The Rule similarly fails to afford members of the step-up class all the procedural protections Plaintiffs assert are constitutionally due. For example, the Rule affords children no opportunity to be heard in advance of restrictive placement, 45 C.F.R. §§ 410.1901(b); does not require automatic placement review hearings, 410.1902(a-b), 410.1109(a)(2); and does not restrain ORR from relying on a child's step-up to "delay family reunification" or "transfer . . . to a long-term foster care. . . ," all of which Plaintiffs requested.

In sum, the Rule fails to provide the unfit custodian and step-up classes the full process Plaintiffs contend is constitutionally required. Plaintiffs' claims are plainly not moot, and the Court should accordingly deny Defendants' motion to dismiss.

---

[11] For example, Plaintiffs assert that due process requires ORR to automatically convene a hearing whenever it declares a child's proposed custodian unfit and to complete its administrative review within nine or ten days. [Proposed] Order Granting Summary Judgment on Plaintiffs' First, Second, And Fourth Claims for Relief, at 3, 4-5, Oct. 2, 2020 (Doc. #271-3). The Rule requires denied custodians to request a hearing and provides that an administrative appeal must be completed within 30 days after the hearing is requested. 45 C.F.R. § 410.1206(f) (2024).

III.   THE COURT MAY AND SHOULD GRANT DECLARATORY RELIEF COMMENSURATE WITH ITS 2022 SUMMARY JUDGMENT.

Nor is Plaintiffs' claim for declaratory relief moot.

The Supreme Court has articulated the following test to determine whether declaratory relief remains viable: "The question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 121-22 (1974) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

As has been seen, the Parties vigorously dispute whether the Rule affords detained children all the process that is constitutionally due. Their legal interests continue to be adverse, immediate, and real, and the instant controversy is anything but hypothetical. Yet even were the Rule to supply all the process that Plaintiffs contend is due, declaratory relief would remain appropriate pursuant to the voluntary cessation mootness exception discussed *ante*. *ACLU of Mass. v. United States Conf. of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013) (declaratory relief available where voluntary cessation exception to mootness doctrine applies). Nor is there any other reason to withhold declaratory relief.

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), provides in pertinent part: "[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." The DJA thus allows individuals to seek a declaration of the constitutionality of a disputed governmental action. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978).

Declaratory relief should issue "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey ex rel. Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).

A declaratory judgment would settle ORR's constitutional obligation to afford children procedural recourse when it wishes to place them in restrictive facilities or detain them on the ground their parents or other close relatives are unfit. *See, e.g.*, *Prison Legal News v. Columbia Cty.*, 942 F. Supp. 2d 1068, 1096 (D. Or. 2013) (granting declaratory judgment where such "relief will clarify the degree of constitutional protection that must be afforded to inmate mail and, accordingly, will provide guideposts to Defendants in the event they wish further to amend their [challenged policy]"); *Barrett v. Premo*, 101 F. Supp. 3d 980, 1000 (D. Or. 2015) (same); *BNSF Ry. Co. v. Tri-City & Olympia R.R. Co. LLC*, 835 F. Supp. 2d 1056, 1065 (E.D. Wash. 2011); *Bresgal v. Brock*, 637 F. Supp. 280, 281 (D. Or. 1986) (same).

First, as has been seen, it is wholly reasonable to expect that Defendants will rescind the Rule and resume their former practices without regard to the process that children are constitutionally due. A declaratory judgment incorporating the Court's summary judgment would afford vulnerable children at least some protection against that eventuality while restraining ORR in no appreciable way *provided* it does not intend to resume its former, unconstitutional conduct.

Second, a declaratory remedy is far less intrusive than injunctive or other coercive relief. So long as Defendants continue to afford children the process the Rule now requires, a declaratory judgment could impact them in no appreciable way. *Cf. de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("The Defendants cannot be harmed by an order enjoining an action they will not take."); *see*

- 15-

*also Rosebrock*, 745 F.3d at 970, 974 (amended policy "mooted the request for injunctive relief," but not for declaratory relief: "[W]e do not think it reasonably likely that the objectionable conduct will recur. If it does, Rosebrock is well-armed with his declaratory judgment and can pursue relief in a new suit."). Indeed, the only practical reason Defendants could have for opposing a declaratory judgment would be to free themselves to abandon the procedures the Rule prescribes.

Third, issuing a declaratory judgment would honor the time and effort the Court has dedicated to adjudicating complex constitutional claims. *Cf. Demery*, 378 F.3d at 1026 ("Once . . . the courts have devoted resources to determining the dispute, there is Article III jurisdiction to decide the case as long as the parties do not plainly lack a continuing interest . . . ."); *see also Koala v. Khosla,* No. 17-55380, 2020 U.S. App. LEXIS 4818, at *3 (9th Cir. Feb. 14, 2020) ("'[B]y the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal.'") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 191-92 (2000)). Defendants could have promulgated the Rule (or signaled their willingness to do so) years ago, before moving the Court to dismiss Plaintiffs' claims or obliging it to adjudicate them on summary judgment. They did not.

Finally, the public has a strong interest in having the constitutional rights of the children in ORR custody settled. To consign this question to the mercy of transitory rules and political inclinations would leave indigent children's constitutional rights amorphous and vulnerable. *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). Should Defendants abandon the procedural mechanisms the Rule belatedly supplies, there is no telling when or if such children could marshal the resources for another complex challenge to ORR's

1    unconstitutional practices.

2    IV.    THE COURT'S FINAL JUDGMENT SHOULD INCORPORATE AND RETAIN

3           JURISDICTION TO ENFORCE THE AGREEMENTS ON PLAINTIFFS' SETTLED

4           CLAIMS.

5           The Parties agree that entry of final judgment resolving this action is now

6    appropriate. The Court's final judgment should explicitly incorporate the Parties'

7    agreements resolving claims three, four, and five. *See* Psychotropic Medications

8    Agreement (Doc #408-3); Legal Representation Agreement (Doc. #408-4); Disability

9    Agreement (Doc. #408-5). The Court should also retain jurisdiction to enforce those

10   agreements, consistent with the Court's final approval order. *See Kokkonen v.*

11   *Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) (to retain jurisdiction over a

12   settlement, a federal court must "embody the settlement contract in its dismissal order

13   or, what has the same effect, retain jurisdiction over the settlement contract"); Order

14   Granting Final Approval of Settlements of Plaintiffs' Third, Fourth, and Fifth Claims

15   for Relief, May 3, 2024 (Doc. #433).

16   / / /

17

18

19

20

21

22

23

24

25

26

27

28

V.   CONCLUSION.

For the foregoing reasons, the Court should deny Defendants' motion to dismiss and enter final judgment in the form proposed herewith.

Dated: July 26, 2024.

CARLOS R. HOLGUÍN
Center for Human Rights & Constitutional Law

HOLLY S. COOPER
CARTER C. WHITE
U.C. Davis School of Law Immigration Law Clinic

BRENDA SHUM
POONAM JUNEJA
FREYA PITTS
MISHAN WROE
MELISSA ADAMSON
DIANE DE GRAMONT
National Center for Youth Law

Cooley LLP
SUMMER J. WYNN
MICHAEL J. MCMAHON
REBECCA L. TARNEJA
ALEXANDRA R. MAYHUGH
JAMIE D. ROBERTSON


 s/Carlos Holguín
CARLOS R. HOLGUÍN
*One of the Attorneys for Plaintiffs*

- 18-

CERTIFICATE OF COMPLIANCE

[L.R. 11-6.2]

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 5,188 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated _____.


Dated: July 26, 2024



  _s/Carlos Holguín_____
CARLOS R. HOLGUÍN
*One of the Attorneys for Plaintiffs*