### DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.     I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts.  I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2.     I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit 1 is my resumé.

3.     I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for nearly two decades. Additional recognition of my legal work is set out in my attached resumé.

4.     For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish

reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City.  I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates.  At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5.    As a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was at the ACLU.  Since entering private practice, I continue to survey firms each year to obtain relevant information for rates.  As part of my survey, I obtain information concerning rates for attorneys in larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6.    I also review fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing civil rights law, as well as court awards to the ACLU, Disability Rights Legal Center ("DRLC"),  Public Counsel,  Western Center on Law and Poverty ("WCLP"), and other public interest groups in Los Angeles. Because many cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I see those billing rates as well.

7.    When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these

firms.  Many of these commercial firms also serve as pro bono counsel on occasion. I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

8.      I do not charge to provide a fee declaration, although I do suggest that, if successful, the attorneys in private civil rights practices donate to a non-profit legal organization.  I believe I am extremely qualified to provide declarations for the civil rights and non-profit legal community because of my complex litigation work at the ACLU and in private practice, my adjunct teaching at Loyola Law School for the past 16 years, and my role in organizing legal representation for large-scale legal actions.  For example, at the request of the ACLU of Georgia, I organized representation of nearly 1,000 Mariel Cubans in immigration hearings after they were transferred to federal prisons in Southern California following the uprising at the Atlanta Federal Penitentiary in the late 1980s.  Ultimately, the USC Criminal Law Clinic took over responsibility; however, initially, I recruited and supervised dozens of law students from UCLA, Loyola and USC in representing the Mariel Cubans at administrative hearings.  I also organized attorneys and students to represent about 5,000 high-school students in Southern California charged as truants after they walked out of school to protest the proposed Sensenbrenner immigration bill in Congress in 2005.  Through this work, I am familiar with a significant portion of civil rights and public interest law students and lawyers in Los Angeles and able to assess their skill, experience and reputation.

9.      In addition, unlike most other attorneys providing "expert" evidence of market rates, I have extensive experience in a broad range of civil rights litigation, including, among other areas, employment law, First Amendment Church/State law, free speech and assembly, anti-SLAPP litigation, homelessness litigation, police misconduct and class actions. As my resumé demonstrates, I successfully brought landmark cases in these and other civil rights subject areas,

including a state-wide class-action on behalf of women's health-care providers in California against the anti-abortion group Operation Rescue. *National Abortion Federation, et al. v. Operation Rescue, et. al.*, 8 F.3d 680 (9th Cir. 1993). Many of these cases required novel approaches to the issues and became models for attorneys challenging similar issues around the country.

10.    For example, in *Jones v. City of Los Angeles*, 2014 U.S. App. LEXIS 6640 (9th Cir. Cal. Apr. 10, 2014), (subsequent citation on vacatur upon settlement omitted), first filed in 2003, the groundwork was laid for *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019). When *Jones* was filed, I faced three cases in the Ninth Circuit and one at the California Supreme Court, as well as multiple lawsuits across the country, all unsuccessful in striking policies criminalizing homelessness and trying to replicate *Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *aff'd*. 40 F.3d 1155 (11th Cir. 1994). In *National Abortion Federation*, the district court dismissed the action pursuant to *Bray v. Alexandria Clinic,* 506 U.S. 263 (1993), holding the first two clauses of the Ku Klux Klan Act, 42 U.S.C.S. § 1985 did not state a claim for relief. The Circuit reversed and remanded, finding Plaintiffs could move to amend to add a claim under 42 U.S.C.S. § 1985(3), the "hindrance" clause. 8 F.3d at 685-687.

11.    My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts on reasonable market rates. Recently, U.S. District Judge Bernal noted my declaration as support for the rates approved for the Law Office of Dale Galipo in *Paola French, et al. v. City of Los Angeles, et al.,* EDCV 20-0416 JGB (SPx) (February 21, 2024). In September 2023, my declaration was cited with approval for both rates and methodology in an award of attorney fees in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. CA 2023). {Doc. 484, p.7]. The motion in *Myles* was filed

in late 2022 in San Diego. Earlier in 2023, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No.: SACV 17-00278-CJC (DFMx) (C.D. CA. 2023) [Dkt. 462], and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. CA 2023) [Dkt. 280], on behalf of the Galipo law firm.  My declaration was also recently cited with approval in and *D. R., a minor v. Redondo Beach Unified School District*, Case No. 21-56033 (9th Cir. Aug. 2023).  In *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Circuit referenced my declaration in support of attorney's fees for the ACLU under the Equal Access to Justice Act ("EAJA").   In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting IDEA fees pursuant to 20 U.S.C. §1415(i)(3)(c), the Court cited my declaration as persuasive evidence of market rates.   In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), Judge Pregerson cited my declaration and Barry Litt's to support the requested rates.  *Id.* at pp. 8-9 and n.4.  Additional cases in which my declaration was cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]; and  *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr.

2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012); and *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018), awarding EAJA fees to the ACLU. In *Jochimsen*, a unanimous court held I was qualified as an expert on market rates.

12. I litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and affirming nearly $2 million in fees in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department. I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (9th Cir. 2014), establishing entitlement to fees as a "prevailing party" based on the Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

13. I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU. I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

14. In addition, I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours. Many of these cases involve multiple attorneys and law offices. In my own cases, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours. This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items. For example, in the *Tipton-*

6

*Whittingham* case cited above, it was my responsibility to review the fee records covering six years of hours for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates.  The unadorned lodestar in *Tipton* was approximately $1,900,000.

15.    In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the case.   Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable.  The fee approved in the case was $3,713,000.

16.    In all the fee declarations I prepare, I apply my understanding of the decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11.  I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See Nadarajah,* 569 F.3d at 910.

17.    I apply several additional principles to assess market rates.   First, when available, I look at rates awarded to the attorneys in previous cases because I understand such awards are viewed as strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v.*

*Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2008).

18.    Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I understand the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

19.    When the specific rate evidence identified in the preceding paragraph is available, I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market. *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

20.    I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market).

21.    Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director,*

*Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

22.    The most important factors in determining reasonable market rates are skill and experience.  The size of the firm is not a determinative factor.  In *Davis v. City & County of San Francisco*, 976 F.2d 1536, modified on other grounds, 984 F.2d 345 (9th Cir. 1993), the Court upheld rates for sole practitioners and non-profit law firm staff at those charged by "corporate attorneys of equal caliber." *Id.* at 1545; *see also Auer v. Robbins*, 519 U.S. 452 (1997) (market rates for comparably skilled attorneys not reduced based on firm size).

23.    I estimate that I review nearly 100 fee motions, fee awards, and supporting declarations in a year.   I subscribe to several websites that report legal news.  When I learn of a case where fees were awarded, I obtain copies of the relevant documents from public sources, including Court websites and PACER.  If I am preparing a declaration for a specific jurisdiction, I search for recent fee awards for comparably skilled and experienced attorneys in that legal market.

24.    To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files.  Some are now several years old, so they do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).  To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic.  *See*  http://www.bis.gov/news.release/cpi.102.htm  (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category).  For the last two years, I use a slightly higher increase of five percent to reflect higher inflation.  Even that increase is below what I observed

for increases in the Los Angeles legal market at firms doing complex litigation.

25.    In my experience, billing rates in Los Angeles at large commercial firms increase annually at more than the cost-of-living rate based on both increased experience and rises in base rates.  For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), the Court rejected the defense's argument that the rate then sought by attorney V. James DeSimone should be limited to what was approved in prior years.  "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24.  In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

26.    My rate for 2024 is $1,325 an hour.  This rate was recently approved in a lodestar crosscheck on fees in a class action settlement in *Black Lives Matter, et al. v. City of Santa Monica, et al.,* Case No.: 2-21-cv-04253 CAS-AFMx.

27.    I have not filed a contested fee motion in several years other than to seek Court approval of the fees in class-action settlements, or to settle non-class cases.   The last such application I filed applied a 2022 rate of $1,150 an hour in *Shawn Carroll, et al. v. County of Orange, et al.*, Case No. 8:19-cv-00614 DOC-DFM, a class-action challenging Orange County's regulations for determining eligibility for General Relief.

28.    In May 2019, I used the rate of $1050 an hour for the fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.) and for a lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS.  Prior to 2019, I resolved attorney fees in several cases at rates of

$900 and $975 an hour.  My last court-awarded fee in a contested motion was $875 in 2014 in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

29.    Counsel for Plaintiffs provided me with several documents that underpin this motion.  I reviewed those materials.  I understand this motion seeks fees at enhanced EAJA rates for attorney Carlos Holguin for the years 2018 through 2024 at the rates set forth in the table below.  For the years 2018 through 2021, I applied the same enhanced EAJA rates Mr. Holguin previously applied in *Flores v. Garland*, Case No. 2:85-CV-4544 DMG (C.D. Cal. 2022).  Although the prior fees in this action were resolved by the parties prior to Plaintiff's motion being ruled on by the Court, the Court did approve the settlement.  *Id.* [Doc. 1385]. I provided a fee declaration in *Flores* [Doc. 1282-1].

30.    Beginning with the year 2021 and forward, I applied current market rates in the Los Angeles legal market for each year.  This resulted in a greater increase from 2020 to 2021 and 2021 to 2022. As discussed in paragraph 25, hereinabove, this is a long-standing practice to make such adjustments to bring rates within the range of the market.  Based on the decisions and declarations I reviewed over the past year, I formed the opinion that market rates for attorneys engaged in complex litigation in Los Angeles rose between seven and 10 percent annually, if not more, the last two years.  See e.g., Exhibit 10.

31.    

| Year | Carlos Holguin |
|------|----------------|
| 2018 | $825 |
| 2019 | $855 |
| 2020 | $905 |
| 2021 | $935 |
| 2022 | $975 |
| 2023 | $1025 |

11

| 2024 | $1130 |
|------|-------|

32.     I have known Carlos Holguin for almost 50 years.  We went to the same law school and he is a year behind me. As a 1979 admittee, I believe Mr. Holguin's rates are somewhat low for an attorney of his experience and reputation whose entire practice has been in the area of complex constitutional litigation.  I provided supporting rate declarations for prior fee applications filed by him.

33.     Attached at Exhibit 2 is the Order for fees in *Trendsettah USA Inc., et al. v. Swisher Int'l Inc.*, Case No. 8:14-cv-01664-JVS (DFMx) (C.D. CA Nov. 17, 2023), 2023 U.S. Dist. LEXIS 215670.  *Trendsettah* requested fees for Gaw|Poe partners Randolph Gaw ("Gaw") and Mark Poe ("Poe") at $1,222 each and $1,000 for attorneys Victor Meng, Samuel Song, and Flora Vigo. [1]  *Id.* at 37.  Plaintiffs supported the reasonableness of the requested rates with a declaration from Gerald Knapton, who contended that the 2022 rates of $1,045 for partners and $855 for associates in the third quartile in Los Angeles in the 2022 Real Rate Report should be increased by 17 percent for 2023 rates based on the increase at opposing counsel Gibson Dunn in the past year. *Id.*  The Court rejected Mr. Knapton's argument and applied the 2022 Real Rate Report for general litigation in Los Angeles, awarding $1,045 to Messrs. Gaw and Poe.  I reviewed the biography of each attorney on the firm's website.  On that basis, I believe Messrs. Gaw and Poe are 2002 law school graduates, with 21 years of experience in 2023.

34.     Attached at Exhibit 3 is the recent order in *Law A. Int'l Corp. v.*

[1] Although the parties' filings redacted the billing rate information, including rates charged and annual increases, the Court's Order included the information and cited to the underlying declarations, particularly of Plaintiffs' expert Gerald Knapton.

*Prestige Brands Holdings, Inc.*, Case No. CV 18-609 MWF (MRWx), 2024 U.S. Dist. LEXIS 148256, 2024 WL 3839401 (C.D. Cal. Aug. 2. 2024), seeking fees to attorneys at the same attorneys at Gaw|Poe at 2024 rates of $1,314 an hour for Mssrs. Gaw and Poe and $1001 an hour for Samue Song, Victor Meng and Flora Vigo. The Court reduced the rates to slightly more than the rates approved for the same attorneys in Exhibit 2.  Even with these reductions, the approved rates in Exhibit 3 are only $60 below the 2024 rate requested for Carlos Holguin, who has approximately 30 years more experience than Mssrs. Gaw and Poe have in 2024.

35.    Attached at Exhibit 4 is the Declaration of Michael Strub filed in 2023 in support of a motion for attorney fees in *Nelson v. Phoebe Bridgers*, LASC Case No. 21STCV35635, an anti-SLAPP case.  Mr. Strub averred that he is a partner at Greenberg & Gross, a 1990 law graduate, and has a 2022 billing rate of $1,095 an hour.  Ex. 4, ¶¶1, 23.   His declaration also provides the rates for Mssrs. Greenberg and Gross, both listed as 1988 law graduates, at a 2023 rate of $1,400 an hour, approximately 25 percent above the rate requested for Mr. Holguin in 2023 and 20 percent above Mr. Holguin's requested 2024 rate. *Id.* ¶23.

36.    Attached at Exhibit 5 is a copy of the supporting fee declaration I provided for the ACLU of Southern California and Munger, Tolles & Olson, among others, in *Kidd v. Mayorkas*, 2021 U.S. Dist. LEXIS 79667 (Case No. 2:20-cv-03512 ODW-JPR). I am informed by counsel in *Kidd* that the fees were settled after the motion was filed. The 2022 rates included $855 an hour for Annie Lai, a clinical professor at UCI Law School and a 2006 law graduate.  Adjusted for inflation, the equivalent 2024 rate would be approximately $950 an hour.

37.    Attached at Exhibit 6 is the Declaration of Luke Brooks filed in support of a motion for fees on a lodestar cross-check in a class-action lawsuit, *Fleming v. Impax Laboratories, Inc.*, Case No. 4:16-cv-06557 HSG (C.D. Cal.

2022).  Mr. Brooks is an attorney with Robbins, Geller, Rudman & Dowd, LLP. Exhibit A to his declaration sets out rates for the firm's attorneys, including Darren Robbins at the 2022 rate of $1,325 an hour.  I reviewed Mr. Robbins' listing on the firm's website and, on that basis, conclude that he is a 1993 law graduate.

38.    Attached at Exhibit 7 is the order awarding fees in *Contreras v. Kelly Pipe Co.*, Case No. 21STCV17933, 2023 Cal. Super. LEXIS 64818, to attorneys at Shegerian and Associates in an employment case. The 2023 rates approved include Carney Shegerian at $1,350 an hour and Anthony Nguyen at $1,100 an hour. *Id.,* pp. 20, 28. The decision notes Mr. Shegerian has over 30 years' experience and Mr. Nguyen has almost 15 years.  *Id.* at p.20.

39.    In *Benjamin Woodhouse, et al. v. The United States Government*, 2:22-cv-00079 RGK (C.D. Cal. 2022), the Court found the 2022 rates of $1,440 and $1,310 an hour reasonable in the Los Angeles legal market for Kirstin Linsley and Austin Schwing, both attorneys at Gibson Dunn. Ex. 8, p. 3.  I reviewed the biography of each on the firm's website and, on that basis, believe that Ms. Linsley is a 1988 law graduate and Mr. Schwing is a 2000 law graduate.

40.    Attached at Exhibit 9 is a recent fee award by U.S. District Judge Marshall to the law firm of Hadsell, Stormer, Renick and Dai in *Pineda v. City of Los Angeles*, Case 2:21-cv-06470-CBM-AS (C.D. Cal. April 19, 2024) [Doc. 195]. The motion was filed in and sought 2023 rates. The Court approved $1,400 an hour for Dan Stormer, admitted in 1974; $915 an hour for Morgan Ricketts, $800 an hour for attorney Shaleen Shanbhag, and $700 an hour for David Washington. The Court's order notes that Ms. Ricketts is a 2009 law graduate, Ms. Shanbhag is a 2014 law graduate and Mr. Washington was practicing eight years (2015).  Ex.10, p. 7.  I am familiar with all three attorneys and reviewed the fee motion in *Pineda* after downloading it from PACER.

41.    Attached at Exhibit 10 is the recent award to attorneys at Manatt Phelps in an anti-SLAPP case. The Court approved both 2022 and 2023 rates for the prevailing defendants' counsel.  I reviewed the biographical material for each attorney on the firm's website.  I was already familiar with Mr. Bach from my review of fee motions filed by Gibson Dunn when Mr. Bach was an associate there. Based on my review of the Manatt firm's website, I concluded that Mr. Bach is a 2006 graduate and Mr. Chatham is a 2005 graduate,

42.    The rates in Exhibit 10 include $950 for Nathan Bach in 2022, increased to $1,065 in 2023, a 12 percent annual increase, and $900 for Mr. Chatham in 2022, increased to $1,010 in 2023, also a 12 percent increase.  Ex.10, *6-7.  Although the attorneys submitted fee awards to similarly skilled and experienced lawyers, the Court confirmed the market rates by comparison to rates in Los Angeles for "commercial" litigation in the Real Rate Report.  *Id.* at *7-8.

43.    Attached at Exhibit 11 is the order in *Ubaldo Arroyo, et al. v. United States Department of Homeland Security, et al*., Case No. 8:19-cv-00815-JGB-SHK (C.D. Cal. 2020) [Doc. 53], awarding EAJA fees for 2018 and 2019 to Ahilan Arulanantham, formerly at the ACLU of Southern California. As noted in the court's order, I provided a declaration in support of the requested rates. Ex. 11, p.7. I reviewed my declaration, which is under seal in the Court's docket. The EAJA rates approved for Mr. Arulanantham were $785 for 2018 and $810 for 2019.  I know Ahilan Arulanantham and co-counseled cases with him.  Based on my personal knowledge, I believe he is a 1999 graduate. His approved 2018 rate is $40 below the rate sought by Mr. Holguin, with more than two decades more experience than Mr. Arulanantham had in 2018 and 2019.

44.    Attached at Exhibit 12 is the Declaration of Scott Edelman, a partner at Gibson, Dunn & Crutcher in Los Angeles. The declaration was submitted in support of a fee motion in an anti-SLAPP case in the United States District Court

for the Southern District of California. It sets out customary billing rates for attorneys in 2019 and 2020, including $915 an hour for 2019 for Nathan Bach. Ex. 12, ¶ 18. As noted above, Mr. Bach is a 2006 law graduate. His customary 2020 billing rate was $960 an hour. Ex. 12, ¶ 19.  As shown in Exhibit 10, Mr. Bach's rate dropped slightly when he left Gibson Dunn and went to Manatt Phelps.  Still, his rate is higher than the rates sought by Mr. Holguin for 2019 through 2023.

45.    The chart below sets out the rates discussed in my declaration. It is organized by rate year for comparison to the EAJA rates requested in this matter.

| Ex. | Attorney | Graduation | Award | Years | Rate |
|-----|----------|------------|-------|-------|------|
| 11 | Ahilan Arulanantham | 1999 | 2018 | 19 | $   785.00 |
| 11 | Ahilan Arulanantham | 1999 | 2019 | 29 | $   810.00 |
| 12 | Nathan Bach | 2006 | 2019 | 13 | $   915.00 |
| 12 | Nathan Bach | 2006 | 2020 | 14 | $   960.00 |
| 6 | Darren Robbins | 1993 | 2021 | 29 | $1,325.00 |
| 8 | Eric Rowen | 1982 | 2021 | 39 | $1,400.00 |
| 2 | Gaw|Poe | 2002 | 2022 | 20 | $1,045.00 |
| 4 | Michael Strub | 1990 | 2022 | 32 | $1,095.00 |
| 4 | Greenberg / Gross | 1988 | 2022 | 34 | $1,400.00 |
| 5 | Annie Lai | 2006 | 2022 | 16 | $   855.00 |
| 4 | Wayne Gross | 1988 | 2022 | 34 | $1,400.00 |
| 8 | Kirstin Linsey | 1988 | 2022 | 34 | $1,440.00 |
| 8 | Austin Schwing | 2000 | 2022 | 22 | $1,310.00 |
| 10 | Nathan Bach | 2006 | 2022 | 16 | $   950.00 |
| 10 | Chatham | 2005 | 2022 | 17 | $   900.00 |
| 7 | Carney Shegerian | 1990 | 2023 | 33 | $1,350.00 |
| 7 | Anthony Nguyen | 2008 | 2023 | 15 | $1,100.00 |
| 9 | Morgan Ricketts | 2009 | 2023 | 14 | $   915,00 |
| 9 | Shaleen Shanbhag | 2014 | 2023 | 9 | $   800.00 |
| 10 | Nathan Bach | 2006 | 2023 | 17 | $1,065.00 |
| 10 | Chatham | 2005 | 2023 | 18 | $1,010.00 |
| 3 | Gaw|Poe | 2002 | 2024 | 22 | $1,070.00 |
| 3 | Song, Meng | 2007 | 2024 | 17 | $   975.00 |

46.     Based on the foregoing, I believe the rates sought by this motion are reasonable for comparably skilled and experienced attorneys in Los Angeles.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of December, 2024 at Los Angeles, California.

CAROL A. SOBEL

# EXHIBIT 1

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

LAW OFFICE OF CAROL A. SOBEL                                  APRIL, 1997 TO PRESENT
Solo civil rights law firm.

SENIOR STAFF COUNSEL                                          1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                               1985 TO 1990
*ACLU Foundation of Southern Califonria*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                           1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                         1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

California Supreme Court                                      November, 1978

United States Supreme Court                                  September, 1991

Ninth Circuit Court of Appeals                               August, 1986

U.S.D.C. Central District of California                      February, 1986

U.S.D.C.  Eastern District of California                     June, 1990

## Litigation Experience:

### Federal courts:  (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia*, advance-notice requirements  police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD). The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP *§* 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)


# Publications:
# (Partial listing)s


*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)


*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136


*Defeating Employer Defenses to Supervisor Liability*
*After* Ellerth *and* Faragher

ADVOCATE, October 1998


*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)


*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995


*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992


*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991


*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990


*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes
deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988    II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS   p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A .  June, 1968 |

## Professional and
## Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:

## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2019 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

National Lawyers Guild - Ernie Goodman Award                                        2007

Angel Award - California Lawyer Magazine Award for pro bono work                    2007

CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine    2008

Top 75 Women Litigators in California - Daily Journal                          2008, 2013

California Super Lawyers - Top 50 Women Lawyers in Southern California              2014

National Lawyers Guild, Los Angeles Law for the People Award                        2014

ACLU Lifetime Achievement Award                                                    2017

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS (DFMx) | Date | November 17, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[REDACTED] [IN CHAMBERS]** <u>Order Regarding Motion for Prejudgment Interest [767], Motion to Vacate [768], and Motion for Attorney's Fees [773]</u>

Before the Court are three motions.

Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. (collectively, "Trendsettah") move for prejudgment interest. (Mot. for Prejudgment Interest, Dkt. No. 767.) Defendant Swisher ("Swisher") opposes. (Opp'n Prejudgment Interest, Dkt. No. 778.) Trendsettah replied. (Reply Prejudgment Interest, Dkt. No. 788.)

Trendsettah moves to vacate the order awarding prevailing party attorney's fees and costs. (Mot. to Vacate, Dkt. No. 768.) Swisher opposes. (Opp'n Vacate, Dkt. No. 779.) Trendsettah replied. (Reply Vacate, Dkt. No. 789.)

Trendsettah moves for attorney's fees and expenses. (Mot. Fees, Dkt. No. 773 (redacted), 774 (unredacted).) Swisher opposes. (Opp'n Fees, Dkt. No. 782 (redacted), 781 (unredacted).) Trendsettah replied. (Reply Fees, Dkt. No. 787 (redacted), 793 (unredacted).)

For the following reasons, the Court **GRANTS in part and DENIES in part** the motion for prejudgment interest, **DENIES** the motion to vacate, and **GRANTS** the motion for attorney's fees. The Court awards Trendsettah **$10,237,493** in attorney's fees and **$613,181.32** in disbursements.

## I. BACKGROUND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:14-cv-01664-JVS-DFM                  Date   November 17, 2023

Title      Trendsettah USA Inc., et al. v. Swisher Int'l Inc.

 

      The history of this case is extensive and well known to both of the parties.  The Court provides merely a brief summary to frame the following discussion.

      On October 14, 2014, Trendsettah, a cigarillo company, sued Swisher for violation of various federal and state competition laws and breach of the Private Label Agreements ("PLAs") between the two parties.  (Compl., Dkt. No. 1.)  On March 30, 2016, the jury found in favor of Trendsettah on both its contract and antitrust claims, awarding it $9,062,679 on its contract claims and $14,815,492 on its antitrust claims.  (Dkt. Nos. 206, 207.)  Following the jury trial, judgment was entered in favor of Trendsettah on April 14, 2016, with antitrust damages automatically trebled to $44,446,482.00 and post-judgment interest set to run on that date in accordance with 28 U.S.C. § 1961.  (J., Dkt. No. 216.)  The Court subsequently awarded Trendsettah attorney's fees and costs, as provided in the PLAs.  (First Fees Order, Dkt. No. 342.)

      On August 17, 2016, the Court granted Swisher judgment as a matter of law on its monopolization claim, denied judgment as a matter of law on attempted monopolization, granted Swisher a new trial on its attempted monopolization claim, granted a conditional new trial on the monopolization claim, and denied Swisher a new trial on the contract claims.  (Dkt. No. 262.)

      On September 9, 2016, the Ninth Circuit held in Aerotec International, Inc. v. Honeywell International, Inc. that "there is only a duty not to refrain from dealing where the only conceivable rational or purpose is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition." 836 F.3d 1171, 1184 (9th Cir. 2016).  In light of the Aerotec holding, Swisher filed a motion for reconsideration of the Court's denial of its motion for summary judgment on the antitrust claims, and the Court granted it on November 9, 2016.  (Dkt. No. 274.)  The Court entered judgment for Trendsettah on the breach of contract claims and judgment for Swisher on all other claims on December 14, 2016.  (Dkt. No. 296.)

      On February 8, 2019, the Ninth Circuit reversed the grant of summary judgment to Swisher on the antitrust claims and directed the Court to reinstate the jury verdict in its entirety on remand.  Trendsettah USA, Inc. v. Swisher Int'l, Inc. (Trendsettah I), 761 Fed. App'x 714 (9th Cir. 2019).  This holding restarted the Rule 60(b) clock with respect to the antitrust claims because the Ninth Circuit "substantially altered" the Court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

judgment.  Trendsettah USA, Inc. v. Swisher Int'l, Inc. (Trendsettah II), 31 F.4th 1124, 1135 (9th Cir. 2022).

The trajectory of the case changed with the revelation on April 12, 2019, that Trendsettah's founder and then-CEO Akrum Alrahib was indicted for fraudulently evaded federal excise taxes to lower Trendsettah's costs, which thereby inflated its profits.  Because the tax evasion was not known at the time of trial, it did not factor into the expert analysis of Trendsettah's profits.

On August 19, 2019, this Court granted Swisher's motion for Rule 60(b)(2) and (b)(3) relief from the entire judgment based on newly discovered evidence and fraud.  (Rule 60 Order, Dkt. No. 426, at 18.)  On January 21, 2020, the Court certified its August 19, 2019 order for interlocutory appeal "as it presents a controlling question of law, as to which there are substantial grounds for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation."  (Order Denying Reconsideration, Dkt. No. 483, at 12.)  The Ninth Circuit subsequently denied several of Trendsettah's petitions, stating "[n]o further filings will be entertained in this closed case."  (Dkt. No. 557-1.)  The Court denied Trendsettah's motion for relief under Rule 60(b) on July 31, 2020.  (Dkt. No. 561.)  The Court then dismissed the entire action with prejudice under Rule 41(a)(2) in order to allow the Ninth Circuit to review the Court's Rule 60 rulings.  (Dkt. No. 591).  Accordingly, the Court entered a new judgment, finding in favor of Swisher on all claims.  (Judgment ¶ 1, Dkt. No. 596.)

The Ninth Circuit agreed with the Court's Rule 60 Order in part.  Trendsettah II, 31 F.4th at 1128.  It "reverse[d] the district court's dismissal of [Trendsettah]'s breach of contract claims and remand with instructions to reinstate the jury's verdict on those claims. . . . [and] affirmed the district court's grant of Rule 60(b) relief as to [Trendsettah]'s antitrust claims."  Id.  Accordingly, the Court's order vacating judgment on Trendsettah's antitrust claims was upheld, but the jury's verdict in 2016 on the contract claim would be reinstated.  See id.  The Ninth Circuit indicated that the Court's subsequent dismissal of all claims effectively put an end to the antitrust claim.  See id. at 1132 ("[H]owever we decide this appeal, the case will be over—either the jury's prior verdict will be reinstated or the district court's dismissal of Trendsettah's claims with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

prejudice will stand."). Thus, while Trendsettah "prevailed" on its contract claim, it could no longer recover on its antitrust claims.

## II. DISCUSSION

### A. *Motion for Prejudgment Interest*

We turn first to the calculation of interest on Trendsettah's contract damages. Equitable principles govern the motion at hand. To evaluate whether to exercise our discretion with regard to the prejudgment interest calculation, the Court confronts the wrongdoing that resulted in both the outcome of the litigation and its circuitous path to resolution.

#### 1. Legal Standard

State law sets the rate of prejudgment interest in diversity actions, and federal law sets the rate of post-judgment interest. Northrop Corp. v. Triad Int'l Mktg. Corp. S.A., 842 F.2d 1154, 1155 (9th Cir. 1988) (per curiam).

Under Florida law, "the general rule in contract cases is that the prevailing party receives prejudgment interest on its award." Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1297 (11th Cir. 2002). The state's "loss theory" considers prejudgment interest as an element of pecuniary damages, but courts may withhold it when "its exaction would be inequitable." Wiand v. Dancing $, LLC, 578 Fed. App'x 938, 947 (11th Cir. 2014) (quoting Wiand v. Lee, 753 F.3d 1194, 1204 (11th Cir. 2014)). The Eleventh Circuit lays out three equitable factors that guide a court's discretion in awarding prejudgment interest on a breach of contract claim under Florida law:

> (1) in matters concerning government entities, whether it would be equitable to put the burden of paying interest on the public in choosing between innocent victims; (2) whether it is equitable to allow an award of prejudgment interest when the delay between injury and judgment is the fault of the prevailing party; (3) whether it is equitable to award prejudgment interest to a party who could have, but failed to, mitigate its damages. Upon a consideration of these factors, a district court may decide not to award prejudgment interest or to reduce the amount of interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

<u>Lee</u>, 753 F.3d at 1204 (citing <u>Blasland</u>, 283 F.3d at 1297–98).

Post-judgment interest on money judgments is governed by 28 U.S.C. § 1961, which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield" for the week immediately preceding the judgment. 28 U.S.C. § 1961(a). The purpose of § 1961, as recited by the Supreme Court, "is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 835–36 (1990) (quoting <u>Poleto v. Consol. Rail Corp.</u>, 826 F.2d 1270, 1280 (3d Cir. 1985)).

    2.   <u>Discussion</u>

While the entry of judgment is the traditional dividing line between when prejudgment interest ends and post-judgment interest begins, it can be blurred by post-judgment litigation and a delay in the payment of a damages award. "The general rule is that when an appellate court reverses a judgement of the district court and directs that a money judgment in favor of a claimant be entered upon remand, prejudgment interest runs through the date of the newly-entered judgment." <u>AT&T Co. v. United Comput. Sys., Inc.</u>, 98 F.3d 1206, 1211 (9th Cir. 1996) (citing Fed. R. App. P. 37).

This general rule, however, is subject to deviation according to three considerations: (1) at what point damages are sufficiently ascertained, (2) whether the pre- or post-judgment interest rate is higher, and (3) whether the prevailing or losing party is responsible for the delay. <u>See AT&T</u>, 98 F.3d at 1210–11 (distinguishing <u>Northrop</u> because damages had been properly ascertained in a first judgment and <u>Kaiser Aluminum</u> because the post-judgment interest rate was higher than the prejudgment interest rate); <u>Barnard v. Theobald</u>, 649 Fed. App'x 414, 416 (9th Cir. 2016) (inquiring both into when damages were sufficiently ascertained and whether to more fully compensate the prevailing party).

    a.   **Ascertainment of Damages**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

Before a court can exercise its discretion in awarding pre- and post-judgment interest, the threshold inquiry asks whether there exists more than one judgment that sufficiently ascertains damages.

"Where the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended post-judgment interest to be calculated from such a judgment." Kaiser Aluminum, 494 U.S. at 836. "[A]n exception to [the general] rule is made when a legally sufficient determination of damages had been made at the time of some prior judgment, which the judgment upon remand essentially reinstates." AT&T, 98 F.3d at 1209 (citing Northrop, 842 F.2d at 1156). In Kaiser Aluminum, the Supreme Court held that post-judgment interest be calculated from the later of two judgments because the first judgment's damages award was not supported by the evidence. Kaiser Aluminum, 494 U.S. at 835–36.

By the time this Court enters its forthcoming judgment in accordance with the Ninth Circuit's mandate, there will have been three judgments entered on Trendsettah's breach of contract claims: the original 2016 judgment, the reinstatement of the judgment following Swisher's appeal in 2019, and the upcoming reinstatement of the contract judgment. Each of the three ascertain damages of the same amount—the second two consisting of reinstatements of the original judgment. Thus, there are three judgments from which the Court may calculate pre- and post-judgment interest.

**b.     Pre- and Post-Judgment Interest Calculation**

The next step in the inquiry evaluates the impact of the time and value of pre- and post-judgment interest on the prevailing party. While the parties agree that Florida law governs the prejudgment interest rate, the question of whether and when to grant prejudgment interest at all is a function of federal law. See 28 U.S.C. § 1961; Northrop, 842 F.2d at 1209 ("In diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law."). To fully ascertain the scope of the Court's discretion on the award of pre- or post-judgment interest here, we must look to the Ninth Circuit cases that set forth the controlling law.

"As between two judgments, both of which sufficiently ascertain the damages, equitable principles favor selecting the judgment which more fully compensates the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

prevailing party." Planned Parenthood v. ACLA, 518 F.3d 1013, 1021 (9th Cir. 2008) (citing AT&T, 98 F.3d at 1211). More fully compensating the prevailing party is a function of whether the pre- or post-judgment interest rate is higher and which judgment is selected. In Northrop, the Ninth Circuit reinstated an arbitration award that was previously vacated by the trial court upon a motion by the losing party, effectively establishing two judgments that ascertained the same amount of damages. The post-judgment interest rate was higher than the prejudgment interest, and the prevailing party naturally sought to have the post-judgment interest rate run from the date of the earlier judgment. The court exercised its equitable discretion under § 1961 to run the post-judgment interest rate from the earlier judgment because it more fully compensated the prevailing party and the damages had been sufficiently ascertained at that point. In AT&T, the Ninth Circuit was confronted with a similar fact pattern, but equity counseled the opposite conclusion. The prejudgment interest rate was higher than the post-judgment interest rate. To follow Northrop's approach and run post-judgment interest from the earlier judgment, the court reasoned, would be to ignore the equitable purpose behind § 1961 and not more fully compensate the prevailing party. Thus, the court ran prejudgment interest to the later judgment date and post-judgment interest after.

The federal post-judgment interest rate is 5.41% for judgments entered between October 30 and November 5, 2023.[1] The Florida prejudgment interest rate as of October 1, 2023 is 8.54%.[2] Trendsettah argues that prejudgment interest should accrue through the date of the reinstatement of the jury verdict on its breach of contract claims. (Mot. for Prejudgment Interest at 2.) Citing the Ninth Circuit's holding in AT&T, Trendsettah maintains that interest should be allocated in the way most favorable to it as the "prevailing party" because it did not receive the contract damages at the time of the

---

[1] As published by the Federal Reserve. Selected Interest Rates (Daily) - H.15, Federal Reserve (Nov. 3, 2023) https://www.federalreserve.gov/releases/h15. The United States Bankruptcy Court, Southern District of California provides a helpful calculator. Post-Judgment Interest Rates, United States Bankruptcy Court, Southern District of California, https://www.casb.uscourts.gov/post-judgment-interest-rates (last visited Nov. 3, 2023).

[2] As published by Florida Department of Financial Services. Current Judgment Interest Rates, MyFloridaCFO, https://myfloridacfo.com/division/aa/local-governments/judgement-interest-rates (last visited Nov. 3, 2023).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

original judgment in 2016, the Ninth Circuit's reinstatement of the jury verdict in 2019, or the Ninth Circuit's reinstatement of its breach of contract verdict in 2022. (Id. at 4.) Trendsettah asserts that there is "no basis to dispute the correctness of the jury's verdict" on any of its claims and that, unlike its convicted founder and CEO, its counsel and litigation funder have not committed any wrongdoing. (Id. at 5.) Although it argues that AT&T establishes a bright-line rule, Trendsettah urges the Court to balance the equities in its favor, "even if it were permissible under AT&T for a district court to just pick which party the 'equities' favor." (Id. at 4–5.)

Swisher argues that, under Florida law, the award of prejudgment interest is a matter of discretion for the court under equitable considerations and not subject to an absolute rule. (Opp'n Prejudgment Interest at 3.) Swisher contends that the equities do not support the award of prejudgment interest at all—regardless of when it runs—because Trendsettah's contract claims were based on lost profits calculations that turned out to be inaccurate due to Alrahib's fraud. (Id.) Even in light of the Court's acknowledgment that Trendsettah may have suffered some damages distinct from lost profits, Swisher argues, this is a fraction of the overall award. (Id.) In the alternative, Swisher argues that prejudgment interest should be calculated through the date of the Court's first judgment because damages had been sufficiently ascertained at that point. (Id. at 5.) Moreover, Swisher asserts that its delay in payment is due to Trendsettah's failure to disclose Alrahib's tax fraud and the necessary post-trial litigation that followed. (Id. at 7.)

Although the prejudgment interest rate is higher than the post-judgment interest rate and there exists more than one judgment at which damages were sufficiently ascertained, as in AT&T, these facts alone do not immediately end the inquiry with the same result. The running of pre- and post-judgment interest at which date of judgment cannot be completed without an examination of the equities.

### c. Prevailing Party's Delay

"Where a prior judgment awarding damages has been vacated pursuant to the actions of an ultimately losing party, equitable principles favor calculating the interest in a manner that more fully compensates the prevailing party. Any other result would penalize the prevailing party, and in certain circumstances might also encourage losing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

parties to instigate postjudgment litigation so they can reap the benefits of a low interest rate." AT&T, 98 F.3d at 1211.

The equitable principles that favored an award of the higher interest rate from the initial judgment in AT&T do not apply here. The facts of this case reveal an important distinction with AT&T. In AT&T and the similarly situated case law, delays in final judgment were the result of the losing party's actions. Under those circumstances, the policy considerations behind AT&T ring true: the court should avoid "penaliz[ing] the prevailing party" and "encourag[ing] losing parties to instigate postjudgment litigation so they can reap the benefits of a low interest rate." But when a delay in final judgment is the result of the *prevailing party's own actions*, equitable considerations do not automatically counsel an interest calculation more favorable to that party. The second Lee factor—"when the delay between injury and judgment is the fault of the prevailing party"—contemplates precisely this situation as guiding the Court's discretion in reducing or withholding prejudgment interest.

To calculate prejudgment interest through the latest judgment in this case would not "more fully compensate[] the prevailing party" but overcompensate a party for a delay of its own making. Here, the losing party did not instigate post-judgment litigation to enjoy a lower interest rate—Swisher rightfully sought to adjudicate Trendsettah's fraudulent conduct that infected the jury verdict. It was only by a technicality that Swisher could not fully redress the harm as it relates to the breach of contract claims. Especially, as is the case here, when wrongful actions were revealed after an original judgment and necessitated further litigation, the prevailing party cannot be rewarded in equity with a higher interest rate calculation that runs the length of the delay it so caused.

That said, we cannot attribute the entirety of the delay from the original judgment to Trendsettah's actions. Between the Court's original judgment on April 14, 2016, and the Ninth Circuit's opinion filed on February 8, 2019, the litigation revolved largely around Swisher's appeal in light of the Ninth Circuit's Aerotec holding. This appeal was an action of the "losing party" with respect to the breach of contract claims, and to deny Trendsettah prejudgment interest through this period would, in fact, "penalize the prevailing party." The point at which Alrahib's fraudulent activity propelled further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

litigation was the April 2019 revelation of his tax evasion. (Dkt. No. 377.) Thereafter, it was Trendsettah's wrongdoing that delayed final judgment in this case.

Equity does not counsel calculating prejudgment interest from the original judgment through the newly-entered judgment. Unlike the delay in AT&T, the delay in this case was occasioned on the fraud of the prevailing party and cannot be rewarded with a higher interest rate. To hold otherwise would upend the Ninth Circuit's rationale in AT&T. Accordingly, the Court exercises its discretion and sets prejudgment interest to run through February 8, 2019 and post-judgment interest to run thereafter.

### B. Motion to Vacate Attorney's Fees

Pursuant to Federal Rule of Civil Procedure 60(b), the court may relieve a party from a final judgment, order, or proceeding because, among other reasons, "(5) "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b). The decision to grant relief is within the discretion of the court. Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987).

The parties do not dispute that a Rule 60(b)(5) motion is a proper vehicle for vacating of attorney's fees. The case law makes this clear. See Cal. Med. Ass'n v. Shalala, 207 F.3d 575, 577–78 (9th Cir. 2000) (agreeing with other circuits that a party may seek relief from attorney's fees under Rule 60(b)(5) without having appealed the fee award); Mother Goose Nursery Schs., Inc. v. Sendak, 770 F.2d 668, 676 (7th Cir. 1985) (holding that a timely appeal of a fee award is only necessary when a party challenges the substance of the fee but not upon the reversal of the underlying merits judgment). Where the parties disagree is the extent to which the Court has discretion to vacate the prior attorney's fees award and whether it should exercise that discretion.

Trendsettah cites California Medical Association as binding Ninth Circuit precedent for the proposition that a court abuses its discretion when it does not vacate the fee award that accompanied a now-reversed merits ruling. (Mot. to Vacate at 3 (citing Cal. Med. Ass'n, 207 F.3d at 579).) Swisher argues that the case's precedent is not so narrow, and it instead holds that the reason for a court's decline of relief must be sufficient when exercising its discretion to deny a motion to vacate a fee award. (Opp'n Vacate at 3–4.) The Court agrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:14-cv-01664-JVS-DFM                    Date    November 17, 2023

Title    Trendsettah USA Inc., et al. v. Swisher Int'l Inc.

In evaluating whether a district court abused its discretion in denying a motion to vacate the attorney's fees award connected with a merits judgment reversed on appeal, the Ninth Circuit put the propriety of the moving party's conduct at the center of the equitable consideration. In California Medical Association, the director of a state health agency was sued by healthcare providers seeking higher Medicare reimbursements. Cal. Med. Ass'n, 207 F.3d at 576. The district court ruled for the providers and awarded them attorney's fees. Id. The director appealed the decision and paid the fee award, but did not simultaneously appeal the fee award. Id. The director prevailed on appeal due to an intervening clarification in the Medicare statute, and the prior judgment was reversed. Id. After the providers refused to return the attorney's fees, the director moved under Rule 60(b)(5) for relief from the fee award, "reason[ing] that the award was no longer valid because it was based on a judgment that had been vacated." Id. The district court denied the motion on the equitable grounds that the purpose of the director's appeal was to delay litigation while the statute was clarified. Id. The Ninth Circuit reversed, holding that the district court abused its discretion because "fil[ing] an appeal in the hope of keeping an issue open while favorable legislation is under consideration" was "hardly improper." Id. at 578.

Here, bad faith abounds. Trendsettah's tax evasion was extraordinarily improper. This Court's sanctions order lays that bare. (Dkt. No. 775.) "Trendsettah improperly claimed it lost profits, when [in] reality, it knew that those 'lost profits' were directly generated from fraud." (Id. at 10.) Trendsettah knowingly brought its case on a lost profits damages theory after having fraudulently inflated its profits through tax evasion. (Dkt. No. 208, at 59, 67–68; Dkt. No. 379-1.)

The fact that Trendsettah's wrongdoing occurred outside of litigation is just as relevant here as it was to the sanctions motion: "Trendsettah's bad faith 'outside-litigation' conduct was grafted into its complaint from the start." (Dkt. No. 775 at 8.)

Trendsettah's contention that there is "no basis to dispute the correctness of the jury's verdict that [Swisher] breached its contract" fails to acknowledge the very actions that led us to the present dispute. Trendsettah's CEO perpetrated a scheme to avoid federal excise taxes in such a way that Trendsettah's financials were infected with inaccuracies. This fact does not absolve Swisher of liability for its own wrongdoing, to be sure, but the full extent to which liability and damages would be apportioned will

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

never be known. The jury was never presented with this evidence at trial when it originally issued its verdict for Trendsettah.

This Court does not strain to find the contract damages just as susceptible to interference from Alrahib's fraud as the antitrust claims. Trendsettah recovered on a lost profits theory. At trial, Trendsettah's expert Dr. DeForest McDuff testified to those profits, and the jury relied on this testimony in delivering its verdict. The verdict was thus based upon a profits calculation manipulated by the fraud of Trendsettah's CEO.

To be clear, the Ninth Circuit did not reinstate Trendsettah's jury verdict on the contract claims on the merits—the time had simply run out for the Circuit to even reach them. The fact that the Federal Rules of Civil Procedure provided an escape hatch from which Trendsettah could avoid scrutiny of its breach of contract verdict does not prevent this Court from reeling it back for a closer look in equity.

While vacating an award of attorney's fees in light of a reversal of a judgment on appeal may be the ordinary course, it is by no means the mandatory outcome of a court's discretion when the prevailing party's exceptional wrongdoing tips the scale of equities so far from its favor. What the Ninth Circuit in California Medical Association shows is that a court must provide a sufficient rationale for exercising its discretion in denying relief. The circumstances of this case provide overwhelming support for not vacating the fees award. Trendsettah's fraud in this case rises to a level of impropriety that tarnished the jury's ability to deliver justice, and as such, the Court exercises its discretion to not vacate the fees award.

As Swisher acknowledges in a footnote in its opposition, the Court's previous sanctions award overlaps to some extent with the categories in the award of attorney's fees and should be offset. (Opp'n Vacate at 2.) Accordingly, the Court reduces the award to Swisher by $2,388,065.95.

### C. *Motion for Attorney's Fees*

#### 1. Standard

The parties agree that Florida law governs Trendsettah's motion. (Dkt. No. 284, at 3; Dkt. No. 300, at 2.) Florida applies the federal lodestar approach to determine attorneys' fees. Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

holding modified by <u>Standard Guarantee Ins. Co. v. Quanstrom</u>, 555 So. 2d 828 (Fla. 1990). Courts should consider the following factors:

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

<u>Id.</u> Consistent with the federal lodestar approach, courts determine the number of hours reasonably expended on the litigation. <u>Id.</u> Courts then determine "a reasonable hourly rate for the services of the prevailing party's attorney." <u>Id.</u> The party seeking fees bears the "burden of establishing the prevailing 'market rate' i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services." <u>Id.</u> at 1151.

The PLAs contain the following provisions concerning attorney's fees and costs:

In the event that either party shall bring any action upon any default in performance or observance of any covenant herein, the party judicially determined to be in such default shall indemnify the other against, or shall expeditiously reimburse such other party for, reasonable attorney's fees (including disbursements) incurred in pursuit of such judicial determination; provided, however, that if no party is judicially determined to be in default, the party bringing such action shall indemnify the other party against, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

shall expeditiously reimburse such other party for, reasonable attorneys'
fees (including disbursements) incurred in defense of such action.

(PLAs, Dkt. Nos. 25-1 § 16.3, 25-2 § 16.3.)

      2.    <u>Analysis</u>

      a.    **Discretion to Award Fees**

Trendsettah's neglect to address its wrongdoing is telling.

It would be inequitable to award attorney's fees to a party whose misconduct
occasioned a multi-year delay for which the opposing party must now pay.

Swisher argues that Florida courts permit trial courts the equitable discretion to
deny contractual attorney's fees upon a finding that there was no prevailing party under
the "significant issues" test in breach of contract litigation. <u>Trytek v. Gale Indus., Inc</u>, 3.
So. 3d 1194, 1203 n.12 (Fla. 2009). Trendsettah cites to Florida case law that
overwhelmingly stand for the proposition that courts' discretion to deny contractual
attorney's fees is significantly limited to instances where "no one won and no one lost."
<u>Merchants Bonding Co. v. City of Melbourne</u>, 832 So. 2d 184, 185–87 (Fla. Dist. Ct.
App. 2002); <u>Skylink Jets, Inc. v. Klukan</u>, 308 So. 3d 1048, 1054 (Fla. Dist. Ct. App.
2020); <u>Trytek</u>, 3 So. 3d at 1203.

The relevant provision of the PLAs reads, in part: "In the event that either
party shall bring any action upon any default in performance or observance of any
covenant herein, *the party judicially determined to be in such default* shall
indemnify the other against, or shall expeditiously reimburse such other party for,
reasonable attorneys' fees (including disbursements) incurred in pursuit of such
judicial determination." (PLAs § 16.3 (emphasis added).) Whether or not the
outcome was on the merits, the Ninth Circuit's ruling reinstating the jury verdict
against Swisher for breach of contract is a judicial determination of "default in
performance." Despite its conduct, Trendsettah is the prevailing party with
respect to the breach of contract claims. The Court thus awards Trendsettah
attorney's fees under the PLAs and proceeds to the fees calculation.

      b.    **Attorney's Fees Calculation**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

As noted, under Florida law courts determine the appropriate amount of attorney's fees by using the lodestar method. "The number of hours reasonably expended, determined in the first step, multiplied by a reasonable hourly rate, determined in the second step, produces the lodestar." Rowe, 472 So. 2d at 1151. The Court turns to each of these steps in turn.

At various stages in this litigation, the Court has awarded attorney's fees to each of the parties. (Order Granting Trendsettah Fees, Dkt. No. 341; Order Granting Swisher Fees, Dkt. No. 621 (redacted), Dkt. No. 622 (unredacted).) As the Court held in those orders, attorney's fees awarded here must not include separate time dedicated "exclusively" to antitrust issues. The Court found that Florida law supports recovery for time litigating the amount of fees. (Order Granting Trendsettah Fees at 11.) The Court also found that the PLAs allow the recovery of disbursements. (Id. at 20.)

Trendsettah seeks to recover 8,754.1 hours for work done by Gaw|Poe and 1,657.7 hours by Goldstein & Russell ("G&R") for a total of $11,760,292 through April 18, 2023. (Mot. Fees at 2.) Trendsettah supplements its request with hours billed to recover "fees on fees" since April 18, 2023: 175.3 hours by Gaw|Poe for a total of $209,421.40 and 12 hours by G&R attorney Eric Citron for a total of $18,240. (Reply Fees at 20; Poe Decl., Ex. C; Citron Decl. ¶ 3, Dkt. No. 791.) Trendsettah also seeks to recover $614,452.14 in disbursements. (Reply Fees at 21.)

Trendsettah supports its request with a declaration from expert Gerald Knapton ("Knapton"). (Knapton Decl., Ex. 1, Dkt. No. 773-5 (redacted), Dkt. No. 774-1 (unredacted).) Trendsettah also seeks to recover "disbursements" under the PLAs less half of Dr. McDuff's expert fees to account for his damages work and not his antitrust work. (Mot. Fees at 4.)

Swisher objects to Trendsettah's request for fees and seeks an 80% reduction in the lodestar and costs, resulting in an award of no more than $1,513,059 in fees and $122,635 in costs. (Opp'n Fees at 5.) Swisher cites "Swisher's successes," Trendsettah's "misconduct," and Florida's fee cap as reasons for the reduction. (Id.)

**c.      Number of Hours Reasonably Expended**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|----------|----------------------|------|-------------------|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|-------|---------------------------------------------------|

Swisher disputes 1,285.55 of the requested hours for being non-compensable, as described below. (Id. at 7–8.) Swisher also seeks a 10% adjustment of the remaining hours to account for block-billing. (Id. at 8.) The Court will take up Swisher's contentions individually.

### i.     Antitrust Work

Swisher argues that Trendsettah has not eliminated hours exclusively related to antitrust work. (Opp'n Fees at 8.) In particular, Swisher points to work done relating to the first Ninth Circuit appeal on antitrust claims and entries specifying "refusal to deal" as work on the antitrust issue. (Id.) Swisher urges the Court to remove 562.7 hours, or $739,662, from the attorney's fees calculation. (Id. at 9.)

Trendsettah acknowledges that eight hours of Gaw|Poe tasks are properly excluded. (Reply Fees at 5.) Trendsettah contends that the 554.7 hours of G&R concern the first appeal, which so intertwine the contract and antitrust issues that the time spent exclusively on antitrust claims cannot be parsed out. (Id. at 6.) As for G&R's 41.2 hours that reference "refusal to deal," Trendsettah argues that this time spent on the first appeal was still intertwined with the contract claims. (Id.)

Other than the entries that explicitly reference "refusal to deal," Swisher does not provide enough support for the separation of the contract and antitrust issues in most of the flagged 562.7 hours for the Court to realistically exclude them. Although the Court recognizes the antitrust issues took center stage on the first appeal, they are too intertwined with the contract issues to reject wholesale. Swisher itself acknowledges that the contract claims hung in the balance: "Swisher's cross-appeal was fundamentally about [Trendsettah's] antitrust claims, as Swisher sought a new trial on [Trendsettah's] contract claims because the jury was improperly influenced by, and awarded damages based upon, evidence concerning the antitrust claims." (Opp'n Fees at 9.) Given the intertwining of the contract and antitrust issues, it is a monumental task to identify work that should be excluded as exclusively related to antitrust without more. Thus, the Court excludes eight Gaw|Poe hours (for Poe) and 41.2 G&R hours (31 for Citron, 4.6 for Davis, 1.4 for Goldstein, and 4.2 for Evans) that reference the "refusal to deal" issue as excludable antitrust work.

### ii.     Wasteful or Unnecessary Work

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Swisher argues that 485.1 hours, or $603,832, be deducted from the lodestar because Trendsettah dedicated this time to unfiled or unnecessary motions during Swisher's pursuit of relief from the judgment based on Trendsettah's conduct across four categories: the May 2020 Mandamus Petition, Post-Rule 60 Discovery Disputes, Unfiled Rule 11 Motion, and Unnecessary or Excessive Hours.

**May 2020 Mandamus Petition.** Swisher argues that Trendsettah spent over 280 hours on an "exceptionally rare form of appellate relief" that was "clearly unmeritorious" and ultimately denied, especially in light of the Court's denial of reconsideration of its Rule 60 order and the Ninth Circuit's denial of interlocutory review. (Opp'n Fees at 10.) Trendsettah argues that although most mandamus petitions are denied, the petition was not "clearly unmeritorious" because it asked the Ninth Circuit to stay or deny the petition once it sought reconsideration, and the Ninth Circuit ruled that "[t]his petition for a writ of mandamus raises issues that warrant an answer." (Reply Fees at 7–8 (citing Dkt. No. 507).) Trendesttah contends that it sought reconsideration following the revelation that Swisher had "285 separate excise tax invoices from Havana 59." (Id. at 8.) Trendsettah also argues that the petition was not wasteful because it served as the "first draft of Trendsettah's opening appellate brief." (Id.)

This case's path to and from the Ninth Circuit is one rife with twists and turns, as this mandamus petition shows. Trendsettah's pursuit of the petition was interrupted by the motion for reconsideration, and there is no indication that the denial of the petition necessarily meant that it was wasteful. Thus, the Court does not exclude hours related to the mandamus petition.

**Post-Rule 60 Discovery Disputes.** Swisher argues that Trendesttah spent over 75 hours for "litigating a third-party subpoena and other discovery disputes prompted by its own resistance to this Court's discovery orders." (Opp'n Fees at 10.) Trendsettah argues that this time is appropriate because it was spent preparing for a second trial, did not concern antitrust issues, and related to a "good-faith disagreement" on the scope of discovery. (Reply Fees at 8.)

At first glance, Trendsettah's resistance to discovery in light of its own infection of the evidence seems to favor of finding the disputed time on these disputes as wasteful and unnecessary. As Judge McCormick noted, in light of Trendsettah's "misleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

financial records" which were relied upon by the damages expert and jury, "obtaining an accurate picture of [Trendsettah's] financial operations was the primary reason for reopening discovery." (Order to Compel at 3, Dkt. No. 560.) Trendsettah successfully opposed several of the requests for production, however, thereby casting doubt that the disputes were wasteful after all. It is not clear to the Court that these disputes warrant exclusion given that they represent, at least to some extent, valid concerns over the scope of discovery.

**Unfiled Rule 11 Motion.** Trendsettah acknowledges that it overlooked the challenged time spent on an unfiled Rule 11 motion and agrees that the 59.7 hours be excluded. (Reply Fees at 9.)

**Unnecessary or Excessive Hours.** Swisher argues that Trendsettah billed unnecessary or excessive hours in three instances: (1) over 33 hours billed by Victor Meng to "'[p]repare' for a meet and confer relating to Swisher's requests for production and 'research regarding same,'" (2) 29 hours billed by Meng to travel and depose Swisher's attorney, and (3) 1.5 hours for Tom Goldstein to "[f]orward Charles' research email to co-counsel and review." (Opp'n Fees at 11 (quoting Kleinbrodt Decl., Ex. A at 21–22, Ex. B at 10).) Regarding the 33 hours billed by Meng, Trendsettah contends that it cannot respond because Swisher's objection is not specific. (Reply Fees at 9.) Trendsettah argues that the 29 hours Meng billed were reasonable and allocated between 16.4 hours to travel between coasts and 12.6 hours to prepare for and take the deposition. Trendsettah argues that Goldstein was efficient in reviewing the research because the email is three pages and included three appellate opinions and a treatise excerpt. (Id.)

The Court agrees with Trendsettah that the hours disputed here are reasonable. It is reasonable, for instance, to spend eight hours traveling coast-to-coast each way, and although all depositions are different, spending 12.6 hours to prepare for a take a deposition does not strike the Court as excessive by any means.

### iii. Sanctions Opposition Work

Swisher objects to Trendsettah's request of 149.9 hours, totaling $175,438, for its unsuccessful litigation over sanctions. (Opp'n Fees at 11.) Swisher argues that attorney's fees for opposing the sanctions motion defeats the purpose of the sanctions and exceeds the scope of the PLAs. (Id. at 11–12.) Trendsettah defends this time as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

protecting against motions that would wipe out its contract damages award. (Reply Fees at 10.)

To award Trendsettah attorney's fees for opposing the sanctions motion that it ultimately lost would, in Swisher's terms, "defeat the compensatory and corrective purposes" of the sanctions. They are also far beyond what is called for in the PLAs, which concern fees relating to the breach of contract. Trendsettah's argument that its sanctions defense amounts to protecting its award conflates the two awards—the sanctions motion does not alter the Ninth Circuit's reinstatement of the jury verdict. The two are distinct, and the Court excludes hours dedicated to litigating the sanctions motion.

### iv.    Intervention Work

Trendsettah stipulates that the 19.7 hours Swisher objects to regarding Law Finance Group's intervention efforts should be excluded. (Id.)

### v.    Excessive Attendance

Swisher objects to 49.4 hours for traveling to and attending appellate arguments, with 33.1 hours for four attorneys to attend the first appellate argument in Pasadena and 16.3 hours for three attorneys to attend the second appellate argument in Orange County. (Opp'n Fees at 12.) Swisher asks the Court to apply a similar reduction to the 50% that the Court applied in its order regarding Swisher's attorney's fees for excessive attendance, especially where none of the attorneys argued the case or the argument was conducted remotely. (Id. at 12–13.) Trendsettah supports the attendance of three attorneys at the second appellate argument by pointing to the Court's previous holding that the attendance of three attorneys at a district court hearing is appropriate. (Reply Fees at 10.) Trendsettah argues that four attorneys were required to form a three-judge panel to "moot" arguments in preparation for the first appellate argument. (Id. at 10–11.)

While the Court did apply a 50% reduction in fees for excessive attendance with respect to Swisher's fees order, that reduction related to the attendance of four or five attorneys and comparatively lower-stakes status conferences. (Swisher Fees Order at 10.) The Court agrees with Trendsettah that the hours for three attorneys at a hearing and four to prepare for an appellate argument are reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

### vi. *Clerical Work*

Swisher argues that 18.8 hours of clerical work should not be compensable, particularly 15.5 to "revise" and "audit" timesheets and 0.5 hours to review "travel logistics." (Opp'n Fees at 13.) Swisher points to block-billing as making it difficult to separate compensable work from clerical work, but 18.8 hours account for work that should not be billed by an attorney. (Id.) Trendsettah agrees with excluding the 0.5 hours for "travel logistics," but contends that none of the other work in this category is "clerical." (Reply Fees at 11.)

Swisher correctly identifies entries as excludable clerical work, but three of the five disputed G&R entries block-bill additional, compensable attorney work. These three entries include clerical work like "logistical work on moot court conference," "revise timesheet," and "reschedule moot court" alongside reasonable attorney work like "intensive review of briefing and key cases" and "revise declaration." There is no need for the entries, with often wide-ranging and unrelated tasks, to lack individualized time breakdowns the way the other two disputed entries do. The Court thus excludes Gaw|Poe's 0.5 hours and 6.2 hours of non-block-billed G&R clerical work, and the Court applies a 25% reduction to account for block-billing the three remaining disputed entries. Those entries, which total 12.1 hours, are reduced to 9.1 hours (7.4 hours by Citron and 1.7 hours by Evans).

### vii. *Block Billed or Vague Entries*

Swisher argues for a 10% reduction to the hours not otherwise objected to because block-billing and vague entries prevent them from being "meaningfully analyzed." (Opp'n Fees at 13.) This would resemble the Court's prior order regarding fees. (Dkt. No. 621.) Trendsettah counters that the Court's order applied the 10% reduction where block-billing accounted for "approximately one third of the fees Swisher's counsel" recorded. (Reply Fees at 11.) Here, Trendsettah argues that the four block-billed entries out of 1,069 for Gaw|Poe that Swisher identified are negligible. (Id.) Trendsettah argues that out of the 111 entries by G&R identified by Swisher as block-billed, 22 are not block-billed because they account for 0.1 hours, represent one-second "and forward" tasks, "concern time that Trendsettah voluntarily excludes," or list just one task. (Id.) As such, Trendsettah contends that 89 of G&R's 632 entries are block-billed, which

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

amounts to 14%, and a reduction proportionate to 10% for 33% block-billing would be a 4% reduction here.  (Id.)

    In the Swisher fees order, the Court applied a percentage reduction to account for the block-billing of of Swisher's entries.  (Swisher Fees Order at 8–9.)  The Court reasoned that "block billing makes it more difficult to determine how much time was spent on particular activities."  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  "[B]lock billing itself is symptomatic of excessive billing."  United Fabrics Int'l, Inc. v. C&J Wear, Inc., 2009 WL 10655841, at *2 (C.D. Cal. Sept. 29, 2009).  As such, the Ninth Circuit has "upheld as a 'reasoned exercise of discretion' a district court's decision to reduce block-billed hours by 30%."  United States v. W. Radio Servs. Co., 671 Fed. App'x 460, 461 (9th Cir. 2016) (citing Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1222–23 (9th Cir. 2010)).  The Court followed this approach and applied a 30% reduction to the 30% of Swisher's entries that were block-billed, which equated to a 10% overall reduction in the requested hours.

    A 10% reduction across all of Trendsettah's hours as requested by Swisher here would not be appropriate given that G&R block-billed less than half the percentage of entries as Swisher's attorneys had in its fees request.  Trendsettah correctly separates 22 G&R entries as not block-billed or already excluded.  The resulting math indicates that 14% of G&R's entries (89 out of 632) are block-billed.  The same rationale behind the Court's 30% reduction in block-billed entries exists here, but it applies to a smaller portion of the overall fees request.  Applying a 30% reduction to 14%, the Court applies a 4% reduction across-the-board to G&R's fees.

### b.    Hourly Rates

    Trendsettah bears the burden of establishing a reasonable hourly rate.  Rowe, 472 So. 2d at 1151.  To meet this burden, Trendsettah provides expert testimony from Knapton.  In his testimony, Knapton first considers the 2022 Real Rate Report, but deviates from it for each firm according to the distinct characteristics of the firms.  Knapton arrives at rates after discussing the qualifications of the attorneys, including their legal education, judicial clerkships, prior law firms, and other relevant litigation experience.  (Knapton Decl. at 15–18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

Swisher argues that Trendsettah's requested rates are inflated and should be reduced to the third quartile Los Angeles litigation rates in the 2022 Real Rate Report. (Opp'n Fees at 14.) Swisher asserts that the Real Rate Report, which the Court accepted as the basis for its first order on Trendsettah's fees, represents "the prevailing 'market rate'" under Rowe. (Id. at 15.)

The Court considers each firm's rates in turn.

> ### i. Gaw|Poe Rates

Trendsettah seeks rates of $1,222 for Gaw|Poe partners Randolph Gaw ("Gaw") and Mark Poe ("Poe"). (Mot. Fees at 10.) Trendsettah seeks a rate of $1,000 for attorneys Victor Meng ("Meng"), Samuel Song ("Song"), and Flora Vigo ("Vigo"). (Id.) For Gaw|Poe's paralegal Rebecca Mance ("Mance"), Trendsettah seeks a rate of $315. (Id.)

Regarding rates for Gaw|Poe, Knapton looks to the 2022 Real Rate Report, which in Knapton's opinion reflects contemporaneous rates through June 2022. (Knapton Decl. at 19–20 (showing third quartile rates of $1,045 for partners and $855 for associates in Los Angeles).) Knapton opined that a 17% increase in the 2022 Real Rate Report third-quartile rates is reasonable in calculating Trendsettah's fees given that rates "exploded" in 2022. (Id. at 21). Knapton supports this opinion by comparison with Swisher's attorneys' fees in connection with the sanctions motion, highlighting an average 17% increase in fees charged by Gibson Dunn partners and senior associates from 2022 to 2023. (Id. at 22.) Knapton also points to the 102-month delay in payment (87 months since the jury verdict), complexity of the litigation, quality of the attorneys' work, comparatively low number of hours worked versus Swisher's, and payment on contingency fee basis. (Id.) Knapton suggests the resulting rates, such as $1,222 for Gaw and Poe and $1,000 for junior attorneys, are a reasonable 20% increase over fees found reasonable for these lawyers in a case three years ago—especially in light of ▮▮▮▮▮▮▮▮▮▮ over that same period. (Id. at 22–23.) In another comparison to Gibson Dunn, Knapton contrasts the adjusted $1,222 rate for Gaw|Poe named partners as "far below" the average 2023 rate of ▮▮▮ for Gibson Dunn partners and on par with the ▮▮▮ senior associate rate at the firm. (Id. at 23.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

Swisher rejects Knapton's comparison to Gibson Dunn's rates as unsupportive of the 17% increase and previously rejected by this Court. (Opp'n Fees at 14.) Swisher also argues that Knapton's comparison to rates awarded to Gaw|Poe by another court is not comparable because it involved a "putative class action involving a common fund" whereas this is a "non-class case in which [Trendsettah] prevailed only on breach-of-contract claims." (Id.) Moreover, Swisher contends that the 2022 Real Rate Report is appropriate because the Ninth Circuit reinstated the breach of contract verdict in 2022. (Id.)

The Court has previously resisted comparisons between Trendsettah and Swisher's attorneys' rates, noting the differences between the firms. (Trendsettah Fees Order at 15.) Trendsettah proceeds to make that very comparison when it co-opts Gibson Dunn's 17% rate increase and applies it to the 2022 Real Rate Report to calculate Gaw|Poe's rates. In the previous fees order, the Court applied the 2015 Real Rate Report third quartile rate in late February 2017. (Id. at 16.) The 2015 Report was the most up-to-date reflection of the prevailing rates available at the time, and the Court found it a sufficient north star for setting reasonable rates. This time around, less time has passed since the publication of the 2022 Real Rate Report and the consideration of this motion. It is the most current information available to the Court. Aside from proclamations about how rates have risen dramatically over the past year, Knapton's only other support for the 2022 to 2023 percentage increase is thin: he cites a single news article that presents conjecture from anonymous and geographically ambiguous "law firm leaders" about possible rate increases of 7–8% before discounting in 2023. (Knapton Decl. at 21–22.) Without a more robust showing that a rate increase is warranted, the Court finds the 2022 Real Rate Report third quartile Los Angeles rate for general litigation to be a reasonable basis for Gaw|Poe's rates. Accordingly, the rate is $1,045 for Gaw and Poe; the rate is $855 for Meng, Song, and Vigo.

### ii. G&R Rates

Trendsettah seeks the following rates for G&R attorneys: $2,180 for Thomas Goldstein ("Goldstein"); $1,520 for Kevin Russell ("Russell") and Eric Citron ("Citron"); $1,080 for Daniel Woofter ("Woofter") and Charles Davis ("Davis"); and $385 for Erica Evans ("Evans"). (Mot. Fees at 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

In assessing rates for G&R, Knapton deems the Real Rate Report, which does not report data beyond the "third quartile" of attorneys, as insufficient to capture reasonable rates for attorneys "of comparable skill, experience, and reputation." (Knapton Decl. at 23–24 (internal citations omitted).) Knapton describes G&R as "one of only a few truly elite appellate boutiques in the country" as reflected by its lawyers résumés and experience. (Id. at 24.) Knapton also notes that unlike Gaw|Poe's contingency fee practice, G&R's hourly billing makes up a greater proportion of its work, which lends support for the notion that its hourly rates are reasonable because its clients regularly pay them. (Id.) Knapton also draws a comparison with Gibson Dunn's rates, which reflect Theodore Boutrous's rate as "slightly less" than Goldstein's but "seven out of eight other Gibson Dunn partners billing at higher rates" than Russell and Citron as well as associates billing at higher rates than Woofter and Davis. (Id.)

Swisher objects to G&R's proposed rates and Knapton's arguments in support of them. (Opp'n Fees at 16.) Swisher rejects Knapton's comparison to Swisher's attorneys because, unlike G&R, Gibson Dunn is a much larger firm that can delegate work to less-expensive attorneys. (Id.) Swisher also contends that Knapton compared the firms' current rates when discussing Swisher's fee award, although its award was based on historic rates. (Id.)

Unlike Gaw|Poe, which the Court assessed in a prior fees order, G&R presents a new and distinct rate question. While comparisons between Gibson Dunn are unavailing with respect to Gaw|Poe, they are more apt when turned to G&R. Notwithstanding their stark differences in size, the firms boast attorneys with the highest levels of legal training and experience. For this reason, the 2022 Real Rate Report average rates are not helpful. Instead, because both firms predominantly charge clients by the hour, rather than on a contingency basis, we have actual rates with which to assess reasonableness in the context of this case. The Court relied on Gibson Dunn's provided rates in Swisher's fees order, and while those rates went unopposed, Swisher objects to G&R's rates here. Swisher offers no alternative to the 2022 Real Rate Report rates, and as Trendsettah notes, attorneys of similar experience levels at both firms worked similar hours (undercutting Swisher's argument that Gibson Dunn's ability to pass off work to less expensive attorneys). (Reply Fees at 14–15.) G&R's fees appear reasonable when compared side-by-side with Gibson Dunn's—they are lower than Gibson Dunn's in all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |

| | |
|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

instances except Goldstein's. Even Goldstein's relatively high rate is justifiable given his appellate experience, including extensive Supreme Court argument. It was this experience that prompted Trendsettah to hire the firm for its appeals. Accordingly, the Court accepts G&R's rates as reasonable.

### iii.    Additional Arguments for Reduction

Swisher makes two additional arguments for the reduction in Trendsettah's lodestar based on Florida law. (Id.) First, Swisher urges the Court to reduce the lodestar by 80% to reflect the "results obtained," which includes "a breach-of-contract award that was less than one-third [Trendsettah's] request to the jury" and $3.94 million in sanctions. (Id. at 16–17.) While "results obtained" is a factor under Rowe, it is not such a substantial consideration that it warrants a dramatic reduction like the one proposed by Swisher. Moreover, to the extent that Swisher bases its argument on the fact that the previous Trendsettah fees order found "significant limitations" in the trial result, this argument fails when revealing the context of that finding. After weighing the Rowe factors, the Court determined that neither a reduction nor a multiplier was warranted, as the "significant limitations" were offset by other factors like Gaw|Poe's contingent basis and financial risk that weighed in favor of an increase. (Trendsettah Fees Order at 19.) These same factors apply today and do not warrant a reduction.

Second, under Florida's cap on "all court-awarded fees at the prevailing party's fee arrangement with counsel," Swisher argues that a lodestar reduction is required. (Id. at 18.) The problem that Swisher raises in its opposition is that the fee agreements Trendsettah provided in 2019 are not current. (Id. at 18.) Trendsettah acknowledges that the Gaw|Poe agreement is "stale" and provided the Court with updated terms and calculations. (Reply Fees at 18.) The following represents the original Gaw|Poe and Trendsettah fee agreement:



For Gaw | Poe's part, their fee is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

(Opp'n Fees at 18 (quoting Gaw Decl. ¶¶ 6–7, Dkt. No. 383-1).) Trendsettah and Gaw|Poe updated their fee agreement on August 19, 2019, after the Court vacated the jury verdict, such that from August 26, 2019 forward, Gaw|Poe "would be entitled to ████ of any hourly fees that may eventually be awarded." (Reply Fees at 18.)

G&R's fee agreement, which is accurate in Swisher's opposition, is as follows:

As for Goldstein & Russell's fee agreement, I have reviewed it and am familiar with its contents. Goldstein & Russell is entitled to ████ of the $44.4 million jury verdict for its role in reinstating that verdict, as well as ████ of any attorney's fees awarded for its work.

(Opp'n Fees at 18 (quoting Gaw Decl. ¶¶ 6–7, Dkt. No. 383-1).)

The Court does not run the risk of encountering Florida's fee cap given the reductions made and percentage fee agreements, as indicated in the lodestar calculations below.

*iv. Supplemental Hours*

Trendsettah submits with its Reply a supplemental request for hours spent preparing this motion. (Reply, Poe Decl., Dkt. No. 793-2 (unredacted).) Swisher did not brief this request.

**c. Lodestar Calculation**

Table 1: Gaw|Poe Total Number of Hours

| Timekeeper | Req. Hours | Anti trust | Rule 11 | Sanc. | Interv. | Cler. | Supp. | Total |
|---|---|---|---|---|---|---|---|---|
| M. Poe | 4,189.3 | -8 | -9.3 | -107.3 | -13.4 | | 129 | 4,180.3 |
| R. Gaw | 1,197.3 | | -14.9 | -6.8 | -0.7 | -0.5 | 24.7 | 1,199.1 |
| V. Meng | 1,659.7 | | | | | | 10.9 | 1,670.6 |
| S. Song | 448.7 | | | | | | | 448.7 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:14-cv-01664-JVS-DFM          Date   November 17, 2023

Title   Trendsettah USA Inc., et al. v. Swisher Int'l Inc.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| F. Vigo | 174.9 | | -24.5 | -35.4 | | | 10.7 | 125.7 |
| Contract Attorneys | 1,079.2 | | | | | | | 1,079.2 |
| R. Mance | 5 | | | | | | | 5 |

To calculate Gaw|Poe's total number of hours, the Court started with Trendsettah's requested hours, then subtracted the excluded hours, and finally added the supplemental hours as indicated above.

Table 2: Gaw|Poe Total Fees

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| M. Poe | 4,180.3 | $1,045 | $4,368,413.50 |
| R. Gaw | 1,199.1 | $1,045 | $1,253,059.50 |
| V. Meng | 1,670.6 | $855 | $1,428,363 |
| S. Song | 448.7 | $855 | $383,638.50 |
| F. Vigo | 125.7 | $855 | $107,473.50 |
| Contract Attorneys | 1,079.2 | $400 | $431,680 |
| R. Mance | 5 | $315 | $1,575 |

Table 3: G&R Total Number of Hours

| Timekeeper | Req. Hours | Anti trust | Rule 11 | Sanc. | Interv. | Cler. | Total After Excl. | Total Minus 4% |
|---|---|---|---|---|---|---|---|---|
| T. Goldstein | 169.4 | -1.4 | | | | | 168 | 161.3 |
| K. Russell | 10 | | | | | | 10 | 9.6 |
| E. Citron | 1,185 | -31 | -11 | -0.4 | -5.6 | -13.6 | 1,123.4 | 1,078.5 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:14-cv-01664-JVS-DFM          Date   November 17, 2023

Title   Trendsettah USA Inc., et al. v. Swisher Int'l Inc.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D. Woofter | 15.8 | | | | | | | 15.8 | 15.2 |
| C. Davis | 218.3 | -4.6 | | | | | | 213.7 | 205.2 |
| E. Evans | 59.2 | -4.2 | | | | | -1.7 | 53.3 | 51.2 |

  To calculate G&R's total number of hours, the Court began with Trendsettah's requested hours, subtracted excluded time entries, and then applied a 4% reduction.

Table 4: G&R Total Fees

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| T. Goldstein | 161.3 | $2,180 | $351,634 |
| K. Russell | 9.6 | $1,520 | $14,592 |
| E. Citron | 1,078.5 | $1,520 | $1,639,320 |
| D. Woofter | 15.2 | $1,080 | $16,416 |
| C. Davis | 205.2 | $1,080 | $221,616 |
| E. Evans | 51.2 | $385 | $19,712 |

Table 5: Complete Lodestar Calculation

| Firm | Hours | Total |
|---|---|---|
| Gaw\|Poe | 8,708.6 | $7,974,203 |
| G&R | 1,520.8 | $2,263,290 |
| **Totals** | **10,229.4** | **$10,237,493** |

  2. Disbursements

  Trendsettah seeks $613,181.32 in disbursements, minus half of Dr. McDuff's fees to account for excludable antitrust work. (Mot. Fees at 12.) The PLAs allow for such a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS-DFM | Date | November 17, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

recovery. (Gaw Decl. Ex. 20 at 10, ¶ 16.3; Ex. 21 at 11, ¶ 16.3.) Swisher does not dispute the amount requested. Accordingly, the Court awards $613,181.32.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the motion for prejudgment interest, **DENIES** the motion to vacate, and **GRANTS** the motion for attorney's fees. The Court awards Trendsettah **$10,237,493** in attorney's fees and **$613,181.32** in disbursements. Trendsettah shall submit a form of judgment within seven days.

**IT IS SO ORDERED.**

EXHIBIT 2, Page 40

# EXHIBIT 3

EXHIBIT 3
Page 41

## LawA. Int'l Corp. v. Prestige Brands Holdings, Inc.

United States District Court for the Central District of California

August 2, 2024, Decided; August 2, 2024, Filed

CV 18-6809-MWF (MRWx)

**Reporter**

2024 U.S. Dist. LEXIS 148256 *; 2024 WL 3839401

L.A. International Corporation v. Prestige Brands Holdings, Inc., et al.

**Prior History:** LawA. Int'l Corp. v. Prestige Brands Holdings, Inc., 2018 U.S. Dist. LEXIS 251536, 2018 WL 11678625 (C.D. Cal., Oct. 23, 2018)

**Counsel:** [*1] For AKR Corporation, Border Cash & Carry Inc, Excel Wholesale Distributors Inc, Manhattan Wholesalers Inc, Pacific Groservice Inc, Pittsburg Wholesale Grocers Inc, Sanoor Inc., doing business as Sanoor Inc., L.A. Top Distributor, U.S. Wholesale Outlet & Distribution Inc., Valve Distributor Inc, Plaintiffs: Mark W Poe, Randolph Gaw, Victor Meng, LEAD ATTORNEYS, Gaw Poe LLP, San Francisco, CA.

For L.A. International Corp., Plaintiff: Mark W Poe, Victor Meng, LEAD ATTORNEYS, Randolph Gaw, Gaw Poe LLP, San Francisco, CA.

For Medtech Products Inc., Prestige Brands Holdings Inc., Defendants: Robert Kum, Duane Morris LLP, Los Angeles, CA; William Shotzbarger, PRO HAC VICE, Duane Morris LLP, Philadelphia, PA; Michael Louis Fox, LEAD ATTORNEY, Christine C Ross, Christopher Sean Patterson, Duane Morris LLP, San Francisco, CA.

For Walmart Inc, Interested Party: Rudy R. Perrino, Kutak Rock LLP, Los Angeles, CA.

**Judges:** MICHAEL W. FITZGERALD, United States District Judge.

**Opinion by:** MICHAEL W. FITZGERALD

# Opinion

CIVIL MINUTES—GENERAL

**Proceedings (In Chambers)**: ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS [410]

Before the Court is Plaintiffs L.A. International Corp. et al.'s Motion for Attorneys' Fees and [*2] Costs (the "Motion"), filed on June 3, 2024. (Docket No. 377). Defendants Prestige Consumer Healthcare Inc. (f/k/a "Prestige Brands Holdings, Inc.") and Medtech Products Inc. filed an Opposition on June 17, 2024. (Docket No. 384). Plaintiffs filed a Reply on June 24, 2024. (Docket No. 386).

EXHIBIT 3
Page 42

2024 U.S. Dist. LEXIS 148256, *2

The Court has read and considered the papers on the Motion and held a hearing on **July 8, 2024**.

The Motion is **GRANTED *in part***. Plaintiffs seek $7,651,766.80 in attorneys' fees and $35,546.99 in costs. In response, Defendants argue that Plaintiffs should recover no more than $2,711.197.50 in attorneys' fees and no costs. The Court considers the parties' specific arguments but rejects both parties' numerical suggestions. Instead, the Court awards **$3,142,268.45 in attorneys' fees** and **$35,546.99 in costs** based on the reasons detailed as follows:

- **Attorneys' Fees**:

  ○ The Court generally agrees with Defendants contention that the hourly rates requested by Plaintiffs are unreasonable. Based on the rates in the relevant community, Plaintiffs' counsel experience, and the complexity of this action, the Court concludes that the following hourly rates are reasonable: **$1,050** for Mr. Gaw and Mr. Poe, and **$950** for [*3] Mr. Song, Mr. Meng, and Ms. Vigo.
  ○ As for the number of reasonable hours worked, the Court has applied a modest 10% across-the-board cut to the hours to account for work billed by partners that could have been performed by associates.

  ○ Therefore, the Court awards Plaintiffs **$$3,142,268.45** [$3,307,651.00x 0.95] in attorneys' fees.

- **Costs**:

  ○ Because the costs appear reasonable and exclude any expenses incurred by the non-California Plaintiffs, the Court awards **$35,546.99** in costs.


## I. <u>BACKGROUND</u>

Because the parties are familiar with the facts and procedural history, the Court only summarizes the pertinent background.

On August 8, 2018, Plaintiffs filed this action for unlawful price discrimination and unfair competition with respect to Defendants' sale of Clear Eyes to Plaintiffs and their competitors, Costco Wholesale Corporation and Sam's Club (the "Favored Purchasers"). The First Amended Complaint alleged that Defendants violated (1) Section 2(a) of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13(a); (2) Section 2(d) of the RPA, 15 U.S.C. § 13(d); (3) the California's Unfair Practices Act ("UPA"), California Business & Professions Code section 17045; and (4) California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200. (Docket No. 10 ¶¶ 49-66).

After trial, the jury found in favor of Plaintiffs on their Section 2(a) RPA claim and the five California-based Plaintiffs (L.A. International, L.A. Top Distributor, Pitco, [*4] U.S. Wholesale, and Value Distributor) on their UPA claim. (Docket No. 329). Accordingly, the jury awarded the following damages:

| Plaintiff | Section 2(a) Damages | UPA Damages |
|---|---|---|
| AKR | $25,000 | N/A |
| Border Cash & Carry | $0 | N/A |
| Excel Wholesale | $25,000 | N/A |
| L.A. International | $95,000 | $90,000 |
| L.A. Top Distributor | $25,000 | $30,000 |
| Manhattan Wholesalers | $25,000 | N/A |

EXHIBIT 3
Page 43

2024 U.S. Dist. LEXIS 148256, *4

| Plaintiff | Section 2(a) Damages | UPA Damages |
|---|---|---|
| Pitco | $30,000 | $75,000 |
| U.S. Wholesale | $25,000 | $5,000 |
| Value Distributor | $100,000 | $130,000 |

(*Id.* at 4, 7).

Following the jury's verdict, on May 20, 2024, the Court made its Findings of Facts and Conclusions of Law on the remaining equitable issues under Section 2(d) of the RPA, the UPA, and the UCL. (Docket No. 373). The Court entered judgment on May 28, 2024. (Docket No. 374; *see also* Amended Judgment (Docket No. 380)). Plaintiffs filed the instant Motion on June 3, 2024. (Docket No. 378).

Plaintiffs now move for attorneys' fees and costs.


## II. DISCUSSION

Under the Sherman Act, an antitrust plaintiff "shall recover . . . the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a); *see also* 15 U.S.C. § 26 ("Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . . In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including [*5] a reasonable attorney's fee, to such plaintiff."). Likewise, plaintiffs who establish a violation of section 17045 of the UPA are also entitled to fees. Cal. Bus. & Prof. Code § 17082 ("[T]he plaintiff shall be awarded a reasonable attorney's fee together with the costs of suit.").

Because Plaintiffs prevailed on their RPA claims, the parties do not dispute that Plaintiffs are entitled to attorneys' fees and costs. Instead, the parties dispute what amount of fees is reasonable.


### A. Attorneys' Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," otherwise known as the "lodestar method." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018) (citation omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).

The following chart presents the final calculation of the lodestar amount for work performed from July 25, 2018, through March 19, 2024:

| Biller | Rate | Hours | Total |
|---|---|---|---|
| Randolph Gaw | $1,314 | 626.8 | $823,615.2 |
| Mark Poe | $1,314 | 1,369.0 | $1,798,866.00 |
| Samuel Song | $1,001 | 1,165.0 | $1,166,165.00 |
| Victor Meng | $1,001 [*6] | 5.8 | $5,805.80 |
| Flora Vigo | $1,001 | 31.4 | $31,431.40 |
| **Total** | | **3,198** | **$3,825,883.40** |

EXHIBIT 3
Page 44

(*See* Motion at 3, 13-14; Reply at 18-20; Supplemental Timesheet (Docket No. 386-8)).

### 1. Hourly Rate

"To determine a 'reasonable hourly rate,' the district court should consider: 'experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented.'" *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (citation omitted). "Once a fee applicant presents such evidence, the opposing party 'has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.'" *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110-11 (9th Cir. 2014*)* (citation omitted).

Here, Plaintiffs' counsel requests an hourly rate of $1,314 for Mr. Gaw and Mr. Poe and $1,001 for Mr. Song, Mr. Meng, and Ms. Vigo. (Motion at 13-14). Plaintiffs' counsel primarily rely [*7] on the declaration of Gerald G. Knapton, an attorneys' fees expert, who avers that the requested rates are reasonable based on the third-quartile rate in the 2023 Real Rate Report for Los Angeles-based partners in the "Corporate: Other" category after accounting for a 6% positive adjustment. (*See* Declaration of Gerald G. Knapton ("Knapton Decl.") (Docket No. 377-9) ¶¶ 60-61; *see also* 2023 Real Rate Report (Docket No. 377-12) at 99); 2022 Real Rate Report (Docket No. 377-3)).

Plaintiffs' counsel have also submitted declarations regarding their experience, qualifications, prior fee awards in similar cases, and the prevailing fees in the community. (*See* Declaration of Mark Poe ("Poe Decl.") (Docket No. 377-1) ¶¶ 11-24; Knapton Decl ¶¶ 13-14, 25). For instance, Plaintiffs' counsel has extensive experience litigating antitrust actions. (Poe Decl. ¶ 11). Plaintiffs' counsel have served as counsel in several RPA cases, including a class action against the country's largest liquor distributor. (*Id.* ¶¶ 18-19).

In response, Defendants argue that the requested hourly rates are inflated on several grounds. (Opp. at 3-4). Defendants point out that, in 2019, Plaintiffs proposed an hourly rate of $744 [*8] for Mr. Gaw and Mr. Poe and $510 for Mr. Song when seeking discovery sanctions. (*Id.* at 5-6). Defendants also note that the requested hourly rate is 76% higher than the highest hourly rate charged by their counsel in this litigation. (*Id.* at 6).

Defendants instead suggest that an hourly rate of $600 is more reasonable in light of the recent fee awards obtained by Plaintiffs' counsel and the Real Rate Report rate for small firms in the Los Angeles area. (*Id.* at 3-4). Further, Defendants' expert, Grant D. Stiefel, further opines that the following rates area reasonable: $1,050 for Mr. Gaw and Mr. Poe, and $950 for Mr. Song, Mr. Meng, and Ms. Vigo. (Declaration of Grant D. Stiefel ("Stiefel Decl.") (Docket No. 384-1) ¶¶ 44-45).

The Court agrees with Defendants that the requested hourly rates are unreasonable. ***First***, no district court has awarded Plaintiffs' counsel the rates requested here. *See Adtrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 U.S. Dist. LEXIS 71654, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020) ($1,000 for Mr. Poe and Mr. Gaw, and $855 for Mr. Song and Mr. Meng); *In re Outlaw Lab., LP Litig.*, No. 18-cv-840-GPC-BGS, 2023 WL 6522383, at *4 (S.D. Cal. Oct. 5, 2023) ($996 for Mr. Poe and Mr. Gaw, and

EXHIBIT 3
Page 45

$885 for Mr. Song and Ms. Vigo); *Trendsettah USA Inc. v. Swisher Int'l Inc.*, No. 14-CV-1664-JVS (DFMx), 2023 U.S. Dist. LEXIS 215670, 2023 WL 8263365, at *14 (C.D. Cal. Nov. 17, 2023) ($1,045 for Mr. Gaw and Mr. Poe, and $855 for Mr. Meng, Mr. Song, and Ms. Vigo); *Silicon Genesis Corp. v. Ev Grp. E. Thallner GmbH*, No. 22-cv-04986-JSC, at *2 (N.D. Cal. Apr. 15, 2024) ($1,000 for Mr. Poe). The Court declines to award a rate that is far above [*9]  what has previously been awarded, especially given that it could create a new benchmark for Plaintiffs' fee requests in the future.

***Second***, cases from this District that have awarded hourly rates comparable to Plaintiffs' counsel's request are inapposite. Plaintiffs point to *Trendsettah*, which deemed hourly rates between $1,520 and $2,180 reasonable for attorneys from the firm Goldstein & Russell. But in approving these rates, the district court recognized that Goldstein & Russell "boasts attorneys with the highest levels of legal training and experience" and "extensive Supreme Court argument." *Trendsettah*, 2023 WL 8263365, at *14. Even Plaintiffs' counsel concede that they "do not enjoy the national profile and ***reputation*** of Mr. Goldstein"— factors that are undisputedly important to the Court's inquiry. (Reply at 4 (emphasis added)).

The remainder of the cases on which Plaintiffs' counsel rely concern fee awards to "big law" firms representing large corporate clients. (*See* Motion at 14). For example, a recent case deemed reasonable DLA Piper's unopposed request for hourly rates ranging from $848 to $1,364.70 for its defense of Nike. *See N.T.A.A. v. Nordstrom, Inc.*, No. CV 22-398-DDP (AGRx), 2024 WL 1723524, at *4 (C.D. Cal. Apr. 19, 2024); *see also Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022) (awarding fees to Gibson Dunn attorneys); *Hope Med. Enters. Inc. v. Fagrgon Compounding Serv., LLC*, No. 19-cv-07748-CAS-PLAX, 2022 U.S. Dist. LEXIS 49151, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (awarding fees to King & Spaulding [*10]  attorneys). Notwithstanding Plaintiffs' counsel's background, accolades, and expertise in this area of the law, it is simply unreasonable to award big law rates to a four-person firm representing mom-and-pop warehouses.

In response, Plaintiffs argue that the Supreme Court and the Ninth Circuit have noted that firm size is not relevant in determining the reasonableness of hourly rates. (Reply at 2 (citing *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1120 (C.D. Cal. 2012); *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1037 n.17 (C.D. Cal. 2012))). But it is not simply the size of Plaintiffs' counsel's firm that is at issue here. It is also its reputation and its actual billing practices, for which firm size serves as a proxy. For example, big law firms usually work for large corporate entities who are generally willing and able to pay higher fees than Plaintiffs here. For similar reasons, other courts have found comparisons between Plaintiffs' counsel's firm and big law firms inapt. *See, e.g., Trendsettah USA Inc. v. Swisher Int'l Inc.*, No. SACV14-01664 JVS (DFMx), 2017 WL 11477621, at (C.D. Cal. Feb. 27, 2017) ("Gibson Dunn's or Morrison Foerster's rates are not relevant benchmarks for Gaw | Poe's rates because of differences between the firms.").

Moreover, even the 2023 Real Rate Report—on which Plaintiffs rely—recognizes that firm size is a key factor that drives rates, noting that "rates can increase if the firm is large and has various [*11] timekeeper roles at the firm. For example, the cost to work with an associate or partner at a larger firm will be higher compared to a firm that has one to two associates and a paralegal." (2023 Real Rate Report at 5). To illustrate this point, the 2023 Real Rate Report provides hourly rates between $398 and $680 for corporate litigation partners from Los Angeles-based firms of 50 lawyers or fewer. (*Id.* at 168). By contrast, corporate litigation partners from Los Angeles-based firms of more than 1,000 lawyers charge between $1,095 and $1,500. (*Id.*).

EXHIBIT 3
Page 46

2024 U.S. Dist. LEXIS 148256, *11

At the hearing, Plaintiffs' counsel argued that the Court cannot rely on the hourly rates awarded years ago. *See, e.g., AdTrader*, 2020 WL 1921774, at *8. Plaintiffs' counsel also aver that cases like *Trendsettah*, a contract dispute, were far less complicated than this action. The Court agrees that this case involved complex legal issues and relied on an underutilized provision of the Sherman Act. The Court therefore declines to adopt the rates provided in the 2023 Real Rate Report for Los Angeles-based firms of 50 lawyers or fewer. Instead, the Court relies on the rates awarded in *Trendsettah*, a 2023 decision, to which the Court applies a small upward adjustment to account for the [*12] complexity of this action and inflation since 2023.

Accordingly, based on the rates in the relevant community, Plaintiffs' counsel experience, and the complexity of this action, the Court concludes that the following hourly rates are reasonable: **$1,070** for Mr. Gaw and Mr. Poe, and **$975** for Mr. Song, Mr. Meng, and Ms. Vigo.

## 2. Hours Billed

Plaintiffs' counsel expended 3,198 hours from July 2018 through June 2024. In support of the Motion, Plaintiffs submit 47 pages of billing records, from which they deducted 304.3 hours. (*See* Docket No. 376-2; Docket No. 386-8). In response, Defendants argue that the hours billed by are unreasonable because Plaintiffs' counsel failed to delegate work to less experienced attorneys. (Opp. at 6-7).

After reviewing billing records, the Court agrees that several entries appear to be for work that could have been performed by associates. The following examples are just a handful of entries that are illustrative of this point:

| Date | Hours | Attorney | Description of Services |
|------|-------|----------|-------------------------|
| 9/13/2018 | 1 | Song | Review personal jurisdiction cases referenced by defendants' counsel and email with team regarding personal jurisdiction issues. |
| 9/13/2018 | 2.2 | Meng | Review personal jurisdiction cases referenced [*13] by defendants' counsel and email with team regarding personal jurisdiction issues. |
| 10/18/2018 | 2.5 | Song | Review Prestige's motion to dismiss and conduct fact and legal research for opposition |
| 10/26/2018 | 1 | Vigo | Review existing research regarding personal jurisdiction standards for purposes of drafting opposition to Prestige Brand's motion to dismiss on same grounds |
| 10/29/2018 | 0.9 | Gaw | Draft opposition to motion to seal complaint |
| 10/29/2019 | 0.2 | Gaw | Revise opposition to motion to seal amended complaint |
| 1/3/2019 | 2.5 | Song | Review and prepare documents for production |
| 1/4/2019 | 3.4 | Song | Review and prepare documents for production |

Initially, the Court was inclined to impose a 10% "haircut" for associate-level work performed by partners. However, the Court was somewhat persuaded by Plaintiffs' arguments that this action was litigated more efficiently ***because*** the work was completed by more experienced partners. (*See* Reply at 10-12). The Court therefore imposes a 5% haircut for the arguments raised by Defendants. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small

EXHIBIT 3
Page 47

reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.).

Accordingly, the modified lodestar is as follows: [*14]

| Biller | Rate | Hours | Total |
|--------|------|-------|-------|
| Randolph Gaw | $1,070 | 626.8 | $670,676.00 |
| Mark Poe | $1,070 | 1,369.0 | $1,464,830.00 |
| Samuel Song | $975 | 1,165.0 | $1,135,875.00 |
| Victor Meng | $975 | 5.8 | $5,655.00 |
| Flora Vigo | $975 | 31.4 | $30,615.00 |
| Total | | 3,198 | $3,307,651.00 |
| **Total after 5% Deduction** | | | **$3,142,268.45** |

### 3. Lodestar Multiplier

Next, the Court considers whether to enhance the award as requested by Plaintiffs based on the following factors set forth in *Kerr v. Screen Extras Guild, Inc.*:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d 67, 70 (9th Cir. 1975); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132, 104 Cal. Rptr. 2d 377, 17 P.3d 735 (2001) (providing similar factors under California law).

"Any reliance on factors that have been held to be subsumed in the lodestar determination will [*15] be considered an abuse of the trial court's discretion." *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020) (citation omitted). Therefore, "an enhancement can be justified only in 'rare' and 'exceptional' cases where the presumption is overcome." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, (9th Cir. 2024) (citation omitted); *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (per curiam) ("Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar 'are the exception rather than the rule.'" (citation omitted)).

Although most of the *Kerr* factors have already been subsumed in the lodestar determination, the Court will briefly address Plaintiffs' specific arguments for a 2.0 multiplier. While the Court acknowledges that the outcome in this action benefits the public and other third-party warehouses (*see* Motion at 15), none of the remaining arguments are persuasive.

Plaintiffs first contend that a multiplier is necessary to attract competent counsel to prosecute antitrust (especially RPA) cases. (Motion at 16-17). In so arguing, Plaintiffs rely on *Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016), where the plaintiffs sought only declaratory and injunctive relief under the Prison Litigation Reform Act and therefore had difficulty obtaining counsel. But the reasoning from *Kelly* is inapplicable here for obvious reasons. The circumstances [*16] presented here are a far cry from those in *Kelly* given that Plaintiffs—who are not indigent and arguably could have paid some kind of fixed fee—

EXHIBIT 3
Page 48

sought monetary damages that could be trebled under the RPA. In the Court's view, this action provided several incentives for Plaintiffs' counsel to serve as counsel and is not so undesirable as to warrant an enhancement.

Plaintiffs also point to the novelty and complexity of the case and their counsel's skill and experience. (*Id.* at 19). However, the Court has already taken these factors into account in its lodestar determination and therefore cannot rely on them to award a multiplier.

Additionally, Plaintiffs argue that the fee should be enhanced due to the contingency risk. (*Id.* at 19-20). But given the statutory nature of the fees, the fee is not truly contingent because it does not hinge in any way on the monetary value of Plaintiffs' recovery. So long as Plaintiffs were the prevailing party, counsel was guaranteed recovery of fees for the reasonable hours worked. *See Peraza v. Ford Motor Co.*, No. CV 20-8898-AB (AGRx), 2022 WL 3098062, at *1 (C.D. Cal. May 27, 2022) ("[A] fee enhancement may not be appropriate when a statutory guarantee eliminates any uncertainty about whether costs will be awarded to the prevailing party." (citation omitted)). [*17] Moreover, the Court's use of current, rather than historic, hourly rates already takes into account the deferred nature of the fee award. Moreover, the hourly rate calculation already accounts for the contingency risk and delayed payment by awarding fees based on current, rather than historic, hourly rates.

The Court also concludes that a multiplier is unwarranted under California law, which similarly considers "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132. As already noted, most of the factors have already been considered in the Court's lodestar calculation. Nor is the Court persuaded that an upward adjustment is warranted because Plaintiffs' counsel's were precluded from pursuing other employment. The cases that Plaintiffs had to forego are all RPA cases concerning the same clients in this action and likely would have involved similarly complicated legal issues, protracted years of litigation, and contingency risks. (*See* Poe Decl. ¶ 32; *see also* Motion at 19).

Accordingly, the Court [*18] declines to apply a multiplier to the lodestar figure under either federal or California law.

### 4. Reduction for Limited Success

Defendants argue that Plaintiffs' rejection of a settlement offer under Rule 68 warrants a reduction in fees. (Opp. at 11-12). Defendants aver that the $450,000 offer of judgment served in December 2019 is more than the damages secured by Plaintiffs at trial before trebling. (*Id.* at 11).

In so arguing, Defendants rely on *Haworth v. Nevada*, which held that where "a Rule 68 offer is made and a plaintiff recovers less than the amount offered in settlement . . . the district court must take into consideration the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made." 56 F.3d 1048, 1052-53 (9th Cir. 1995). However, as Plaintiffs correctly note, *Haworth* is inapplicable because, even after setting aside the injunctive relief and any potential fee award, the damages ultimately obtained by Plaintiffs at trial outweigh the Rule 68 offer. (*See* Amended Judgment).

EXHIBIT 3
Page 49

2024 U.S. Dist. LEXIS 148256, *18

Accordingly, the Motion is **GRANTED** *in part*, and the Court concludes that Plaintiffs [*19] are entitled to **$3,142,268.45** in attorneys' fees.


## B. Costs

Under the UPA, Plaintiff also seeks $35,546.99 in costs that are excluded by the Local Rules. (Motion at 21 (citing Cal. Bus. & Prof. Code § 17082; Cal. Code Civ. Proc. § 1033.5)). These costs include fees for deposition-related services and travel, trial exhibits, and trial technician services. (*Id.* at 21-22).

Defendants dispute the amount requested, arguing that Plaintiffs cannot recover all non-taxable costs "when not every Plaintiff had a UPA claim." (Opp. at 12). However, Plaintiffs' request excludes any expenses incurred for the non-California-based Plaintiffs. (*See* Poe Decl. ¶ 26).

Accordingly, the Court awards **$35,546.99** in costs.


## III. CONCLUSION

The Motion is **GRANTED** *in part*. Plaintiffs are entitled to **$3,142,268.45 in attorneys' fees** and **$35,546.99 in costs**.

IT IS SO ORDERED.

---

**End of Document**

EXHIBIT 3
Page 50

# EXHIBIT 4

EXHIBIT 4
Page 51

Electronically FILED by Superior Court of California, County of Los Angeles on 01/11/2023 07:52 PM David W. Slayton, Executive Officer/Clerk of Court, by K. Hung,Deputy Clerk

1  ALAN A. GREENBERG, State Bar No. 150827
   *AGreenberg@GGTrialLaw.com*
2  WAYNE R. GROSS, State Bar No. 138828
   *WGross@GGTrialLaw.com*
3  MICHAEL H. STRUB JR., State Bar No. 153828
   *MStrub@GGTrialLaw.com*
4  DAVID T. SHACKELFORD, State Bar No. 318149
   *DShackelford@GGTrialLaw.com*
5  GREENBERG GROSS LLP
   650 Town Center Drive, Suite 1700
6  Costa Mesa, California 92626
   Telephone: (949) 383-2800
7  Facsimile: (949) 383-2801

8  Attorneys for Defendant Phoebe Bridgers

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11

12  CHRIS NELSON, an individual,            Case No. 21STCV35635

13          Mr. Nelson,                     **DECLARATION OF MICHAEL H.
                                            STRUB, JR. IN SUPPORT OF**
14     v.                                   **DEFENDANT PHOEBE BRIDGERS'S
                                            MOTION FOR ATTORNEY'S FEES**
15  PHOEBE BRIDGERS, an individual; and
    DOES 1 to 10, inclusive,                Filed Concurrently with Notice of Motion and
16                                          Motion, Memorandum of Points and
            Defendants.                     Authorities, Declaration of Deborah S.
17                                          Mallgrave, and [Proposed] Order

18                                          Date:    March 9, 2023
                                            Time:    8:30 a.m.
19                                          Dept.:   72

20                                          Reservation No.: 013205082792

21                                          Assigned for All Purposes to:
                                            Hon. Curtis A. Kin, Dept. 72
22
                                            Action Filed:       September 28, 2021
23

24

25

26

27

28

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

EXHIBIT 4
Page 52

## DECLARATION OF MICHAEL H. STRUB JR.

I, Michael H. Strub Jr., declare as follows:

1.     I am an attorney, duly licensed to practice law in the State of California.  I am a partner with the law firm Greenberg Gross LLP, counsel of record for defendant Phoebe Bridgers in this action.  The facts stated herein are within my personal knowledge and if called upon to testify, I can truthfully and competently do so as to all matters herein.

2.     I make this declaration in support of defendant Phoebe Bridgers's Motion for Attorney's Fees (the "Motion") related to her successful special motion to strike pursuant to California Code of Civil Procedure section 425.16 (the "anti-SLAPP motion").

3.     In pursuing the anti-SLAPP motion, Ms. Bridgers has incurred attorney's fees in the amount of $585,196.50.  Ms. Bridgers also has incurred $36,902.50 in fees in connection with this motion.  Ms. Bridgers is therefore entitled to a total award of $622,099.00 in attorney's fees for successfully pursuing the anti-SLAPP motion.

4.     The attorney's fees incurred in the representation of Ms. Bridgers in this matter are reflected in the billing records of Greenberg Gross.  Attached hereto as **Exhibit A** are true and correct redacted copies of Greenberg Gross invoices through December 31, 2022 reflecting the fees that she was billed in this matter.  Reported in tenths of an hour, these invoices describe in detail the legal work that Greenberg Gross performed in pursing the anti-SLAPP motion and the resulting fees incurred.  One erroneous entry for $328.50 has been redacted from the June 2022 invoice and subtracted from the total of fees requested.

5.     Greenberg Gross was well aware of Ms. Bridgers's reputation advocating for women's rights and social justice and agreed to represent Ms. Bridgers on a partial pro bono basis given that Mr. Nelson's claims arose from Ms. Bridgers's brave choice to speak out against her former abuser.  Specifically, Greenberg Gross provided Ms. Bridgers with a 30 percent discount on its ordinary and customary billing rate.

6.     The information regarding Greenberg Gross's time and fees is taken from time and expense records prepared and maintained contemporaneously by the firm in the ordinary course of business.  I reviewed the printed billing records to confirm the accuracy of the entries on the

-2-

1    printouts as well as the reasonableness of the time and expenses in the litigation.  I also directed

2    the review and redaction of information protected by the attorney-client privilege and work

3    product doctrine from the billing records.

4    **I.**     **Hours expended in litigation**

5         7.     On February 14, 2022, Ms. Bridgers filed her anti-SLAPP motion.  There are

6    numerous published decisions interpreting and applying the anti-SLAPP statute, and the anti-

7    SLAPP motion required substantial research and analysis concerning the issues that triggered that

8    statute as applied to Mr. Nelson's complaint.  These included establishing that Instagram was a

9    public forum, that Ms. Bridgers's statements were on an issue of public interest, that Mr. Nelson

10   was a limited purpose public figure, and that Mr. Nelson had not proven actual malice by clear and

11   convincing evidence.

12        8.     Ms. Bridgers's anti-SLAPP motion was originally scheduled to be heard on

13   March 10, 2022.  On February 22, 2022, Mr. Nelson filed an *ex parte* application to take

14   discovery, including taking Ms. Bridgers's deposition.  The same day, Ms. Bridgers filed an

15   opposition to the *ex parte* application.

16        9.     On March 3, 2022, Mr. Nelson filed a noticed motion to permit the deposition of

17   Ms. Bridgers and to require her to produce documents.  Ms. Bridgers opposed the motion.

18        10.    Attached hereto as **Exhibit B** is a true and correct copy of the notice of deposition

19   and request for production of documents, which Mr. Nelson served on April 4, 2022.

20        11.    On April 5, 2022, prior to the deposition, Ms. Bridgers's and Mr. Nelson's counsel

21   executed the Protective Order, which the Court approved on April 11, 2022.

22        12.    On April 8, 2022, at her deposition, Ms. Bridgers produced 332 pages of

23   documents responsive to Mr. Nelson's discovery request.  I designated the entire deposition

24   transcript and document production as "Confidential" under the Protective Order.

25        13.    On May 11, 2022, Mr. Nelson's counsel notified Ms. Bridgers's counsel that

26   Mr. Nelson was disputing all Ms. Bridgers's confidentiality designations, and they filed an *ex*

27   *parte* application asking the Court to de-designate the deposition transcript and her text messages.

28

1    14.    On July 13, 2022, Ms. Bridgers filed a motion to uphold the confidentiality

2    designations.

3    15.    On July 26, 2022, Mr. Nelson filed his opposition to the anti-SLAPP motion.  In

4    support of his opposition, Mr. Nelson lodged conditionally under seal material designated as

5    confidential under the Protective Order.  On August 1, 2022, Mr. Nelson filed a motion to seal

6    records lodged in connection with the anti-SLAPP motion and to strike irrelevant material from

7    those records (the "Motion to Seal and Strike").  The motion was scheduled to be heard on

8    November 8, 2022, but was later continued to November 16.

9    16.    On August 11, 2022, this Court heard arguments related to the anti-SLAPP motion

10   and the motion to uphold confidentiality designations and took the matters under submission.

11   17.    On October 26, 2022, I sent an email to Mr. Hughes and Ms. Hunter of Clark Hill,

12   LLP proposing to significantly limit the scope of Ms. Bridgers's confidentiality designations in an

13   attempt to meet and confer with Mr. Nelson's counsel regarding the Motion to Seal and Strike.  As

14   part of those efforts, I agreed to multiple extensions for Mr. Nelson to file his opposition to the

15   Motion to Seal and Strike so the parties could attempt to resolve the issue.  Attached hereto as

16   **Exhibit C** is a true and correct copy of a series of email communications that I had with Mr.

17   Hughes and Ms. Hunter of Clark Hill, LLP between Wednesday, October 26, 2022, and Monday,

18   October 31, 2022.   Ultimately, Mr. Nelson's counsel refused to meet and confer on the subject of

19   the redactions and insisted that every portion of Ms. Bridgers's deposition testimony and

20   document production be included in the public record.  Attached hereto as **Exhibit D** is a true and

21   correct copy of an email that I received from Mr. Hughes on November 1, 2022.  On November 1,

22   2022, Mr. Nelson filed his opposition to Ms. Bridgers's Motion to Seal and Strike.

23   18.    On November 3, 2022, Ms. Bridgers filed her reply in support of her Motion to

24   Seal and Strike and also provided the Court with the redactions that Ms. Bridgers's counsel

25   proposed to Mr. Nelson's counsel.

26   19.    On November 16, 2022, the Court heard Ms. Bridgers's Motion to Seal and Strike.

27

28

-4-
STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

EXHIBIT 4
Page 55

## II. Explanation of fees sought by this motion

20. Throughout the case, Greenberg Gross staffed the matter leanly. I managed the case as lead counsel with the assistance primarily of one associate, Colin Quinlan, and one paralegal, Emily Long. Cheryl Winsten, my assistant, also performed a number of tasks that in my experience at my prior law firms typically are performed by paralegals. These tasks were not billed to Ms. Bridgers.

21. The time spent by my firm in this case was reasonable and necessary in light of the amount of work accomplished and the results obtained and was directly related to the anti-SLAPP motion proceedings. As demonstrated in the detailed time entries included in Exhibit A to this declaration, pursuing the anti-SLAPP motion and litigating related issues took considerable time and legal skill.

22. Ms. Bridgers's counsel's hourly rates for 2022 range from $295-$345 for paralegals and other professionals, $500-$695 for associates and counsel, and $1095-$1400 for partners. Below is a chart that summarizes the number of hours spent by professionals from my firm who performed work on this case since its inception through December 31, 2022. This chart does not include additional time spent on this Motion after December 31, 2022.

23. The chart includes the name of the professionals who worked on this case, their position at Greenberg Gross, their law school graduation year (where applicable), their standard hourly billing rates for 2022, the number of hours they spent, the resulting lodestar for each such timekeeper, and the lodestar reflecting the 30 percent courtesy discount provided to Ms. Bridgers in this matter.

| Name of Professional, Position & Law School Graduation Year | Hours (2022) | Hourly Rate (2022) | Total Fees (2022) |
|---|---|---|---|
| Alan A. Greenberg (Partner, 1988) | 3.4 | $1,400.00 | $4,760.00 |
| Wayne R. Gross (Partner, 1988) | 25.9 | $1,400.00 | $36,260.00 |
| Michael H. Strub, Jr. (Partner, 1990) | 312.1 | $1,095.00 | $341,749.50 |
| Claire-Lise Y. Kutlay (Counsel, 2015) | 9.4 | $695.00 | $6,533.00 |

-5-

| Colin V. Quinlan (Associate, 2014) | 267 | $695.00 | $185,565.00 |
| David T. Shackelford (Associate, 2017) | 39.6 | $655.00 | $25,938.00 |
| Desiree M. Murray (Associate, 2019) | 0.9 | $495.00 | $445.50 |
| Adrianna Gutierrez (Paralegal) | 0.1 | $345.00 | $34.50 |
| Emily Long (Paralegal) | 15.3 | $295.00 | $4,513.00 |
| **TOTAL (2022)** | **673.7** | | **$605,799.00** |

| Name of Professional, Position & Law School Graduation Year | Hours (2021) | Hourly Rate (2021) | Total Fees (2021) |
|---|---|---|---|
| Alan A. Greenberg (Partner, 1988) | .3 | $1,200.00 | $360.00 |
| Michael H. Strub, Jr. (Partner, 1990) | 12.8 | $985.00 | $12,608.00 |
| Colin V. Quinlan (Associate, 2014) | 5.6 | $595.00 | $3,332.00 |
| **TOTAL (2021)** | **18.7** | | **$16,300.00** |

24.     As of December 31, 2022, the number of hours spent on this case by the listed time keepers in my firm was 692.4 hours.  The total lodestar for attorney and paralegal time billed through December 31, 2022 is $622,099.00.

25.     Ms. Bridgers has incurred $36,902.50 in fees on this motion through December 31, 2022, which includes 44.7 hours by her attorneys.  That amount is included in the amount of $622,099.00.

26.     Greenberg Gross is an elite litigation firm that serves clients from offices in Los Angeles and Orange County, California; Las Vegas, Nevada; and New York, New York. Greenberg Gross is routinely retained to represent leading companies, executives, celebrities, artists, and other high-profile individuals in complex litigation matters.  Its attorneys have a great deal of experience in a wide range of areas of law, including complex litigation, fraud, business, torts, contract law, and defamation.  The firm has earned numerous accolades, including being named as one of California's Top Boutiques by the *Daily Journal*.

27.     The hourly rates in the above chart are the standard rate schedule set by my firm for its attorneys and paralegals in 2022.  Based on my experience, I believe the rates charged by my firm do not exceed the rates charged by other firms in the Los Angeles are that handle complex business litigation.  The skill and experience of each of the attorneys and legal professionals that worked on this case justifies their hourly rates.

28.     I am a partner at Greenberg Gross.  I have been litigating cases for more than 30 years in state and federal courts throughout the country.  I have regularly appeared on the list of California's Super Lawyers.  I am admitted to practice in California and the District of Columbia, and admitted to the bar of the United States Supreme Court, the Ninth Circuit Court of Appeals, every district court in California, and the United States Court of International Trade.  I earned my Bachelor of Science in Foreign Service degree from Georgetown University in 1987, and earned my juris doctorate from University of Texas School of Law, highest honors, in 1990.

29.     Alan A. Greenberg is one of the founding partners of Greenberg Gross. Mr. Greenberg has been litigating cases for more than 30 years in both state and federal court throughout the U.S., representing entities and individuals in high-profile, bet-the-company litigation and arbitration.  Two of his trial verdicts have been listed as among the Top Verdicts of the Year in California.  Mr. Greenberg has been recognized as an "Elite Boutique Trailblazer" by the *National Law Journal,* a "California Trailblazer" by *The Recorder*, a Top 100 Lawyers in California by the *Daily Journal,* and has been named to the list of The Best Lawyers in America and Super Lawyers.  Mr. Greenberg is admitted to practice in California, New York, and Nevada, as well as several federal district and appellate courts.  Mr. Greenberg earned his Bachelor of Arts degree from Cornell University in 1985, and earned his juris doctorate from Boston University, *cum laude,* in 1988.

30.     Wayne R. Gross is one of the founding partners of Greenberg Gross.  Mr. Gross has been litigating cases for more than 30 years in both state and federal court throughout the U.S., representing entities and individuals in high-profile, bet-the-company litigation and arbitration. Three of his trial verdicts have been listed as among the Top Verdicts of the Year in California. Mr. Gross has been repeatedly selected for inclusion in The Best Lawyers in America, including

1  most recently being named "Lawyer of the Year – Litigation – Regulatory Enforcement" in Los

2  Angeles by The Best Lawyers in America 2021.  He has been recognized as an "Elite Boutique

3  Trailblazer" and a "Winning Litigator" by the *National Law Journal,* has been included three

4  times as Top 100 Lawyers in California by the *Daily Journal,* and has been named to the list of

5  The Best Lawyers in America and Super Lawyers.  Mr. Gross is admitted to practice in California,

6  as well as several federal district and appellate courts.  Mr. Gross earned his Bachelor of Science

7  degree from the University of San Francisco, *cum laude,* in 1985, and earned his juris doctorate

8  from the University of California, Hastings College of Law, *magna cum laude,* in 1988.

9         31.    Claire-Lise Y. Kutlay is counsel in the Los Angeles office of Greenberg Gross, and

10  has been litigating cases for seven years in both state and federal court through the U.S.,

11  representing individuals and entities in high-profile, bet-the-company litigation and arbitration.

12  Ms. Kutlay's experience includes serving as the lead associate during two jury trials, second chair

13  in a bench trial, and lead (and sole) counsel in a bench trial and separate arbitration.  Two of her

14  trial verdicts have been listed as among the Top Verdicts of the Year in California in 2018.  In

15  each year from 2020 to 2022, Ms. Kutlay has been named a "Rising Star" for Southern California

16  by SuperLawyers—a distinction received by less than 2.5% of attorneys.  Ms. Kutlay is admitted

17  to practice in California, as well as several federal district and appellate courts.  Ms. Kutlay earned

18  her Bachelor of Arts degree in 2011 from the University of Victoria, and earned her juris doctorate

19  from the University of California, Irvine School of Law, *cum laude*, in 2015.

20         32.    Colin V. Quinlan is an associate in the Los Angeles office of Greenberg Gross, and

21  has been litigating cases for seven years in both state and federal court through the U.S.  Prior to

22  joining Greenberg Gross, Mr. Quinlan clerked for Judge James Donato of the U.S. District Court

23  for the Northern District of California.  Mr. Quinlan has represented clients in a range of high-

24  stakes matters ranging from trade secrets and intellectual property litigation to governmental

25  investigations.  Mr. Quinlan is admitted to practice in California and New York, as well as the

26  United States District Court for the Southern District of New York.  Mr. Quinlan earned his

27  Bachelor of Arts degree from the University of Chicago in 2009, and earned his juris doctorate

28  from the Columbia Law School in 2014.

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES
EXHIBIT 4
Page 59

33.    David T. Shackelford is an associate in the Los Angeles office of Greenberg Gross, and has been litigating cases for five years in both state and federal court through the U.S. His experience includes representing individuals and entities in a range of high-stake complex commercial litigation matters ranging from breach of contract disputes to intellectual property litigation. Mr. Shackelford is admitted to practice in California, as well as several federal district and appellate courts. He earned his Bachelor of Science degree from University of Utah, *magna cum laude,* in 2013, and earned his juris doctorate from Harvard Law School in 2017.

34.    Desiree N. Murray is an associate in the Orange County office of Greenberg Gross, and has been litigating cases for three years in both state and federal court. Ms. Murray is admitted to practice in California, as well as the United States District Court for the Central District of California. Ms. Murray earned her Bachelor of Arts degree in 2016 from American University, and earned her juris doctorate from the University of California, Irvine School of Law, *cum laude,* in 2019.

35.    Adrianna Gutierrez was a paralegal in the Los Angeles office of Greenberg Gross. She has been working as a civil litigation paralegal for over 17 years.

36.    Emily Long is a paralegal in the Los Angeles office of Greenberg Gross. She has been working as a civil litigation paralegal for over two years. Her work on this matter included preparing the redactions to Ms. Bridgers's deposition transcript and document production, organizing the evidence and preparing exhibits for motions.

37.    Attached hereto as **Exhibit E** is a true and correct copy of the 2017 National Law Journal Billing Survey. Each firm that I previously have been employed by raised its rates each calendar year, typically by approximately 10%.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 11, 2023



Michael H. Strub Jr.

# EXHIBIT 5

EXHIBIT 5
Page 61

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.    I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts.  I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2.    I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit 1 is my resumé.

3.    I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade. Additional recognition of my legal work is set out in my attached resumé.

4.    For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to

EXHIBIT 5
Page 62

establish reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience  at several firms throughout the City.  I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates.  At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

     5.    As a sole practitioner, I assess reasonable market rates by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as when I was employed by the ACLU.  Since entering private practice, I continue to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees.  As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller civil rights law firms.

     6.    I also review attorney fee applications and awards in cases other than my own.  Specifically, I review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles.  I do this to determine what is being sought and approved as market rates for lawyers from these firms.  Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.

     7.    When I become aware of a case where statutory fees are sought, I

EXHIBIT 5
Page 63

obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as PACER, LEXIS and Westlaw. My practice is to obtain copies of motions, supporting declarations and fee awards from public sources, including the Los Angeles Superior Court website.

8.    My practice is to obtain copies of fee applications submitted in class actions, as well, where the Court is obligated to do a lodestar review even where the award is ultimately no more than the percentages allowed by the Ninth Circuit case law. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms. Many of these commercial firms also serve as pro bono counsel on occasion.

9.    My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates in several jurisdictions but primarily in the Los Angeles legal market. For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA"). In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD Cal. 2008), granting fees pursuant to the IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (CD Cal. 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates. *Id.* at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal.

EXHIBIT 5
Page 64

Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012). The Ninth Circuit recently cited to my declaration in approving EAJA rates for the ACLU and other immigration attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018). In *Jochimsen*, a unanimous court held that I was qualified as an expert on reasonable market rates.

10. I litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and upholding almost $2 million in fees in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department. I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

11. I provide training on attorney fees best practices for civil rights

EXHIBIT 5
Page 65

and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU. I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

12. I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours. Many of these cases involve multiple attorneys and law offices. For the cases where I am counsel of record, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours. This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items. For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of litigation for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates. The unadorned lodestar in *Tipton* in 2000 was approximately $1,900,000.

13. In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007), involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for about two-dozen attorneys and support staff in the case. The case was a hybrid class action, with 300 individual plaintiffs and a residual class of several thousand persons, so the legal team was sizable. The fee approved in the case was $3,713,000.

14. With a few exceptions not relevant here, California attorney fee principles are the same as federal law. In all the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford

EXHIBIT 5
Page 66

relevant comparisons." *Id.* at 895 fn. 11. I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See Nadarajah,* 569 F. 3d at 910.

15. When available, I also look to rates awarded to the attorney in previous cases. I understand such awards to be strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F. 3d 889, 892 (9th Cir. 2008).

16. Next, I look to billing rates by attorneys engaged in similarly complex litigation to set market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895. *Blum* notes that most civil rights attorneys, including at non-profits, take cases on a contingency basis. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I use court awards setting reasonable hourly rates in a variety of cases based on my understanding that the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

17. When the specific rate evidence identified in the preceding paragraph

EXHIBIT 5
Page 67

is available, I do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of specific attorneys included in the survey and often no indication of the relevant legal market. *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where lower court relied on a national survey rather than local rates). For example, the Real Rate Report sets out "mean" rates by quartile. Although the full report provides breakdown by subject matter and legal market, the data crushes a large group of attorneys into the same box without any information about the skill, experience or reputation of specific lawyers.

18. I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers. These groups generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees. *See, e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market). *See also* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).

19. Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

20. To support my opinion in this request, I attach fee awards and declarations in cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files.

21. Where an order is two years or more older, I note that and provide a calculation of the current rate based on government data on the cost-of-living

EXHIBIT 5
Page 68

increases since the award, as explained more fully below. In *Hiken v. DOD*, the Ninth Circuit noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).

22. Prior to 2020, I applied a minimum 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles pre-pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category). For subsequent years, I apply a higher rate to reflect the increase in inflation over the past two years. These are adjustments for inflation only and do not reflect adjustments of base compensation pay scales.

23. In my experience, billing rates in Los Angeles have increased annually at more than the cost-of-living rate to reflect both increased experience and increases in the base rates. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), Judge Carter rejected the defense argument that the rate then sought by attorney V. James DeSimone should be limited to what he had received in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24. In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

24. I have not filed a contested fee motion in my cases in several years other than to seek Court approval of the reasonableness of fees in class-action

EXHIBIT 5
Page 69

settlements through a lodestar analysis, or to settle non-class cases. The last such application I filed applied a 2022 rate of $1,150 an hour in *Carroll v. Orange County*, 19-cv-00614 DOC, a class action challenging the County's regulations disqualifying formerly homeless persons from General Relief based on the improper valuation of housing placements. Final approval of the motion is pending.

25.     In May 2019, my rate of $1,000 was used to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.). In the same year, this rate was applied for the lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS. Prior to these 2019 cases, I resolved attorney fees in several matters applying rates of $900 an hour up to $975. The last court-awarded fee I received in a contested fee motion was from the Ninth Circuit, approving my 2014 rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). My current rate is $1,125 an hour, which is an increase of about 3.2 percent annually from the court-approved rate of $875 for 2014 in *CPR for Skid Row*. More recently, rates ranging from $1,000 to $1,100 have been approved for me in the context of a lodestar review of a motion for final approval of a class action.

26.     I understand counsel from the ACLU of Southern California and the UCI Law Immigrant Rights Clinic seek the following 2022 rates in this action:

| Attorney | Firm | Graduation | Experience | Rate |
|---|---|---|---|---|
| Annie Lai | UCI Law | 2006 | 16 | $855 |
| Michael Kaufman | ACLU | 2007 | 15 | $820 |
| Stephanie Padilla | ACLU | 2016 | 6 | $585 |

27.     I understand that fees are also being sought for the pro bono counsel listed below at Munger, Tolles & Olson. ("MTO")

EXHIBIT 5
Page 70

| Jacob Kreilkamp | MTO | 2003 | 19 | $1,150 |
| Anjan Choudhury | MTO | 2004 | 18 | $1,090 |
| Giovanni Saarman Gonzalez | MTO | 2016 | 6 | $ 925 |
| Brandon Teachout | MTO | 2017 | 5 | $ 875 |
| Hunter Armour | MTO | 2020 | 2 | $ 645 |

28.     In my opinion, all of the rates sought by this request are within the range of reasonable rates in the current Los Angeles legal market for attorneys of the skill, experience and reputation of the attorneys listed above.  I know both Annie Lai and Michael Kaufman and am familiar with their skill, experience and reputation.   Both are highly regarded as exceptional attorneys.   I know Mr. Kaufman the longest, having hired him as a summer clerk at the ACLU his 1L year to work on trial preparation for an immigration/civil right case I and others at the ACLU and at the Center for Constitutional Rights, as well as private counsel, had been litigating for almost 20 years at that point.  More recently, we served as co-counsel on a case challenging the City of Los Angeles' policies involving street vendors.

**ANNIE LAI - $855 AN HOUR; MICHAEL KAUFMAN - $820 AN HOUR**

29.     Annie Lai seeks a 2022 rate of $855 an hour.  As support for my opinion on the reasonableness of the requested rate, I attach several recent decisions awarding attorney fees in the Los Angeles legal market.  Attached at Exhibit 2 is the recent decision in *Duncan Roy v. County of Los Angeles,* Case No.: 2:12-cv-09012-AB (FFMx), approving fees for attorneys at several firms, including McLane, Bednarski & Litt ("MBL") and the ACLU. I provided a supporting declaration on market rates for the motion for final approval of the class

EXHIBIT 5
Page 71

settlement. Because the Court's Order did not delineate the individual rates, I also provide at Exhibit 3, Doc. 615-1 filed 04/22/21 by Barrett Litt in support of final approval of the attorney fees in the class settlement. The requested rates and experience of each attorney set out in a table at Ex. 3, p.19.

30.    Among the attorneys approved for fees in *Duncan Roy* are Lindsay Battles, of MBL, listed as a 2008 graduate with a 2021 rate of $770 an hour, Jennie Pasquarella of the ACLU, listed as a 2006 graduate with a 2021 rate of $775 an hour; and Jessica Karp Bansal, listed as a 2009 graduate with a 2021 rate of $725 an hour. I know each of these attorneys personally. *Id.*

31.    Annie Lai has one more year of experience than Ms. Pasquarella had in 2021, three years more than Lindsay Battles and four years more than Jessica Karp Bansal. The rate of $855 an hour now requested by Ms. Lai is a modest increase over the rates approved by Judge Birotte in *Duncan Roy.* Her 2022 requested rate represents slightly less than a four percent annual increase for additional experience and an adjustment for the increase in the CPI.

32.    Mr. Kaufman has two more years of experience in 2022 than did Ms. Battles in 2021, the same experience as Ms. Pasquarella had in 2021, and three more years of experience than Ms. Karp Bansal had in 2021. His requested 2022 rate is $45 above the approved 2021 rates for these three attorneys. This amounts to an increase of approximately 3.2 percent annually from the approved rate for Lindsay Battles, 4 percent annually above the rate approved for Jessica Karp Bansal, and slightly more than 5 percent above the 2021 rate approved for Ms. Pasquarella. Each of these increases is consistent with, if not below, the CPI increase for the past several years.

33.    Attached at Exhibit 4 is the order awarding fees in *Garcia v. Seltzer-Dorene Management Co., Inc.*, LASC Case BC 699421 (2021), at 2021 rates for attorneys at Shegerian & Associates, a plaintiff's-side employment discrimination

EXHIBIT 5
Page 72

firm. The Court's tentative Order, marked as Exhibit 1 to the attached Exhibit 4, sets out the specific rates approved and the Court's analysis. The final approved rates for all counsel are contained in Table C, page 13 of the tentative ruling.

34.     The Court in *Garcia* approved $900 an hour for Anthony Nguyen, identified as a 2008 law graduate and $650 an hour for Mark Lim, identified as a 2016 graduate. Ex. 4, pp. 8-9. These rates far exceed the rates requested in this matter. For example, Mr. Nguyen's 2021 approved rate is five percent above the rate requested for Annie Lai. Ms. Lai has three more years of experience. Mr. Nguyen's 2021 rate is approximately 9 percent above the rate now requested for Mr. Kaufman, who has two more years of experience than Mr. Nguyen had in 2021.

35.     Attached at Exhibit 5 is the Declaration of Eric Rowen in support of a motion for fees in *Simons v. Superior Court*, LASC Case No. 19STCP01994, awarding fees to attorneys at Greenberg Traurig. The motion sought fees at historical rates for 2018 and 2019 in a complex business matter. The Superior Court's award was upheld on appeal in an unpublished decision available at 2022 Cal. App. Unpub. LEXIS 1854. The Court of Appeal affirmed the 2019 rates of $890 an hour for Matthew Gershman and $880 an hour for Karen Bohmboldt. According to Mr. Rowen's declaration, Matthew Gershman is a 2007 law graduate. Ex. 5, p. 7. According to my review of the firm's website, I believe Karen Bohmboldt is a 2004 law graduate.

36.     The approved 2019 rate of $890 an hour for Matthew Gershman, a 2007 law graduate, and the 2019 rate of $880 an hour for Karen Bohmboldt, a 2004 law graduate then with 15 years of experience, are both higher than the 2022 rates requested for Ms. Lai and Mr. Kaufman. In 2019, Matthew Gershman had four years less experience than Ms. Lai has now and three years less than Mr. Kaufman. Karen Bohmboldt had the same experience in 2019 as Mr. Kaufman has now and one year less than Ms. Lai has in 2022.

EXHIBIT 5
Page 73

37.     After the ruling by the appellate court, Greenberg Traurig filed a motion for additional attorney fees for the appeal.  Mr. Rowen filed a declaration in support of the motion, setting out the firm's rates for 2020 and 2021.  A true and correct copy of the second Rowen declaration is submitted at Exhibit 6.  Mr. Rowen averred the 2021 rate for Mr. Gershman was $935 an hour.  Ex. 6, p.9 ¶ 37.  In 2021, Mr. Gershman had two years less experience than Ms. Lai and one year less than Mr. Kaufman have now.

38.     Attached at Exhibit 7 is a true and correct copy of the 2020 Declaration of Laurie Largent filed in *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMc).  The fees were sought based on 2019 rates.  I reviewed the information on the firm's website for each attorney to determine their years of experience.  Among the attorneys for whom fees were approved was $800 an hour for Matthew Alpert of Robbins Geller.  Based on my review of the State Bar website, I believe that Mr. Alpert is a 2005 admittee.  In 2019, Mr. Alpert had 14 years of experience, two years less experience than Ms. Lai has now and one year less than Mr. Kaufman.  His 2019 rate is 2.5 percent below Mr. Kaufman's requested 2022 rate and slightly more below Ms. Lai's rate.  Applying even a modest CPI increase of 3.1 percent, far less than the actual current CPI increase, the equivalent rate for an attorney with 14 years of experience at Robbins Geller would be approximately $875 an hour.  Applying the same analysis, Mr. Alpert's current rate, with 17 years of experience, would be approximately $935 an hour.

39.     I also reviewed a fee application and award to attorneys at Gibson Dunn in *Herring Networks, Inc. v. Maddow*, Case No. 19-cv-1713 BAS-AHG (SD CA 2021), an anti-SLAPP lawsuit.  A copy of Mr. Edelman's declaration is attached at Exhibit 8.  He averred that the 2020 rates sought in San Diego were the then customary billing rates for the firm in the Los Angeles legal market.  Among the attorneys for whom fees were sought was Nathaniel Bach.  Based on my review of

EXHIBIT 5
Page 74

the website for Mr. Bach's current employment, Manatt Phelps, I believe he is a 2006 graduate, the same year as Ms. Lai and one year prior to Mr. Kaufman. Mr. Edelman averred that the 2020 rate for Mr. Bach was $960 an hour. Ex. 8, ¶19. The district court reduced the approved 2020 rate for Mr. Bach to $720 an hour based solely on a reduction for lower rates in the San Diego legal market. The Order in *Herring* is attached at Exhibit 9.

40.    Even with this adjustment for San Diego, the reduced rates support the rates sought in this request. Ms. Lai graduated from law school in 2006. She has two additional years of experience than did Mr. Bach in 2020 but seeks a rate approximately 11 percent below Mr. Bach's customary Los Angeles legal market rate. Adjusting for the differential between San Diego and Los Angeles, as well as the two additional billing years she has, her requested rate for 2022 is slightly less than 20 percent above the San Diego 2020 rate approved for Nathaniel Bach. It would be expected that Mr. Bach's 2022 billing rate would be significantly higher than the Los Angeles-based 2020 rate of $960 an hour.

41.    By way of comparison, attached at Exhibit 10 is the Order approving fees for attorneys at Gibson, Dunn & Crutcher in *Isaacs v. USC Keck School of Medicine*, Case NO. 2:19-CV-08000-DSF-RAO (C.D. CA. 2020), an anti-SLAPP case. While the Court noted that Gibson Dunn's rates were on the "higher side," they were, nonetheless, found to be within the range of reasonable rates for the Los Angeles legal market. *Id.* at p. 3. Because the Court's order did not set out the specific rates approved, I attach at Exhibit 11 the Declaration of James Fogelman.

42.    In his declaration, Mr. Fogelman averred that he is a partner at Gibson Dunn & Crutcher. Mr. Fogelman attached the firm's time records as Exhibit A to his declaration. In *Isaacs*, the rate approved for Shannon Mader at Gibson Dunn was $915 an hour. *Id.* Based on my review of the firm's website, Mr. Mader is a 2004 law graduate. At the time of the award in *Isaccs*, Mr. Mader had the same

EXHIBIT 5
Page 75

amount of experience as Ms. Lai has now.

**STEPHANIE PADILLA**

43.    The 2019 rates approved for attorneys at Greenberg Traurig also support the reasonableness of the rate for Stephanie Padilla, a 2016 law graduate. In *Simons*, the 2019 rate for Christopher Ramos, identified as a 2014 law graduate, was $695.  For Jamie Vogel, identified as a 2015 law graduate, the approved 2019 rate was $580.  Exhibit 6, ¶ 22.  In 2019, Mssrs. Ramos and Vogel has four and five years of experience, respectively.  The 2022 rate sought for Ms. Padilla is almost exactly the rate approved for Mr. Vogel three years ago and reflects no adjustment of base rates for inflation over the course of three billing years.

44.    In *Garcia*, the Court approved the 2021 rates of $900 an hour for Anthony Nguyen and $850 an hour for William Reed.  Mr. Nguyen is identified in the Court's order as a 2008 law graduate.  Ex. 4, p.4. Their approved 2021 rates are equal to or higher than the 2022 rate requested by Professor Lai.

45.    The requested rates are also reasonable when compared to the rates approved in *Simons*.  There, the Court approved fees for associates at Greenberg Traurig at the following 2019 rates: $695 an hour for Christopher Ramos (2014 graduate), $580 an hour for Jamie Vogel (2015 graduate) and $445 an hour for Kelsey Sherman (2018 graduate).  As noted above, the graduation years for each of the Greenberg Traurig attorneys is set out in Mr. Rowen's declaration. Ex.5, p. 7.  The 2019 rate for Christopher Ramos is less than 20 percent below the rate now requested for Mr. Kaufman, who has 10 years more experience than Mr. Ramos had in 2019.  The 2021 rate for an associate with two years' experience, Layal Bishara, was $585 an hour, exactly the same rate now requested for Ms. Padilla, with four years of experience.  Ex. 6, p.9.

46.    In *Garcia*, the Court approved a rate of $650 an hour for Mark Lim,

EXHIBIT 5
Page 76

identified as a 2016 law graduate, and noted that the Hon. Victor Chavez previously approved the same rate for Mr. Lim. Ex 4, p.5 (Order).

## MUNGER, TOLLES & OLSON

47. The rates sought by MTO are in line with the customary rates billed and approved by large firms in the Los Angeles legal market. The rates are supported by the rates in Exhibit 8 and Exhibit 10 for at Gibson Dunn, and also the rates approved for attorneys at Greenberg Traurig.

48. In Exhibit 6, the 2019 rate approved for Karin Bohmboldt, was $880 an hour. Ms. Bohmboldt, like Mr. Choudhury, is a 2004 law graduate. Her approved 2019 rate is approximately 20 percent below Mr. Choudhury's 2022 rate. This averages out to an annual difference of approximately 6.5 percent, which is consistent with recent inflation data, if not slightly below it. *See* CPI Home : U.S. Bureau of Labor Statistics (bls.gov).

49. The 2021 rate for Greenberg Traurig attorney Matthew Gershman, listed as a 2007 graduate, is $935 an hour. Ex. 6. In 2021, Mr. Gershman had four years less experience than Mr. Choudhury. Mr. Gershman's approved 2021 rate is little more than ten percent below the rate now requested for Mr. Choudhury, which amounts to an annual difference of 2.5 percent, far less than the rate of inflation.

50. In Exhibit 9, the customary billing rate in the Los Angeles legal market for Nathaniel Bach, a 2006 law graduate at Gibson, Dunn & Crutcher, then with 14 years of experience, was $960 an hour. Mr. Bach had 5 years less experience than Mr. Kreilkamp has now. Mr. Kreilkamp's rate of $1,150 an hour is 16 percent higher, which averages out to an annual increase of approximately 3.2 percent. As noted above, 3.1 percent was the CPI increase prior to 2020, when it increased significantly, with a current rate of over seven percent a year.

51. In Exhibit 9, Marissa Moshell's customary billing rate for the Los

EXHIBIT 5
Page 77

Angeles legal market for 2020 was $740 an hour. I understand from reviewing her listing on the firm website that Ms. Moshell is a 2017 law graduate, the same year as Brandon Teachout at MTO. In 2020, Ms. Moshell had two years less experience than Mr. Teachout has now. Hunter Armour of MTO had one year less experience in 2020 than Ms. Moshell had in 2020.

52. Although I do not generally rely on surveys to support rates for the reasons stated above, I did review the 2020 Real Rate Report to assess the requested fees for MTO. A copy of the Real Rate Report 2020 Section IV: In-Depth Analysis for Select U.S. Cities (Los Angeles), is submitted at Exhibit 11. I downloaded the Report from the filing by Gibson Dunn in *Herring Networks*. The report only lists rates for attorneys in the first, second and third quartiles.

53. According to Exhibit 11, the rates sought for MTO are consistent with the rates for attorneys at large firms of more than 1,000 attorneys engaged in areas of complex litigation. For example, third quartile rates for partners engaged in finance and securities litigation, intellectual property, commercial and corporate litigation at large firms range from $1,000 to $1,200 an hour. For associates at large firms in these areas of complex litigation, the 2020 rates range from $823 to $990 an hour. The 2022 rates for MTO are consistent with these 2020 ranges.

54. The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Admission | Award | Experience | Rate |
|---|---|---|---|---|---|
| Ex.2 | Lindsay Battles | 2008 | 2021 | 13 | $ 750.00 |
| Ex.2 | Jennifer Pasquarella | 2006 | 2021 | 15 | $ 775.00 |
| Ex.2 | Jessica Karp Bansal | 2009 | 2021 | 12 | $ 725.00 |
| Ex.2 | Mark Fleming | 2006 | 2021 | 15 | $ 775.00 |
| Ex.4 | Anthony Nguyen | 2006 | 2021 | 15 | $ 900.00 |

EXHIBIT 5
Page 78

| Ex.4 | William Reed | 2006 | 2021 | 15 | $ 850.00 |
|---|---|---|---|---|---|
| Ex.4 | Mark Lim | 2016 | 2021 | 5 | $ 650.00 |
| Ex.5 | Eric Rowen | 1982 | 2021 | 39 | $1,380.00 |
| Ex.5 | Karen Bohmboldt | 2004 | 2019 | 15 | $ 880.00 |
| Ex.5 | Matthew Gershman | 2007 | 2019 | 12 | $ 890.00 |
| Ex.5 | Christopher Ramos | 2014 | 2019 | 5 | $ 695.00 |
| Ex.5 | Jamie Vogel | 2015 | 2019 | 4 | $ 580.00 |
| Ex.6 | Matthew Gershman | 2007 | 2021 | 14 | $ 935.00 |
| Ex.6 | Layal Bishara | 2019 | 2021 | 2 | $ 585.00 |
| Ex.7 | Matthew Alpert | 2005 | 2019 | 14 | $ 800.00 |
| Ex.8 | Nathaniel Bach | 2006 | 2020 | 14 | $ 915.00 |
| Ex10 | Shannon Mader | 2004 | 2020 | 16 | $ 915.00 |

55.    Based on the foregoing, my opinion is that the rates sought by this request are within the range of reasonable market rates in Los Angeles for comparably skilled and experienced attorneys.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of November, 2022, at Los Angeles, California.

*Carol Sobel*

CAROL A. SOBEL

EXHIBIT 5
Page 79

# EXHIBIT 6

EXHIBIT 6
Page 80

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
  – and –
SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
LUKE O. BROOKS (212802)
ERIC I. NIEHAUS (239023)
JEFFREY J. STEIN (265268)
ERIKA OLIVER (306614)
NATALIE F. LAKOSIL (322836)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlw.com
tedp@rgrdlaw.com
lukeb@rgrdlaw.com
eniehaus@rgrdlaw.com
jstein@rgrdlaw.com
eoliver@rgrdlaw.com
nlakosil@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GREG FLEMING, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       vs.<br><br>IMPAX LABORATORIES INC., et al.,<br><br>                              Defendants. | Case No. 4:16-cv-06557-HSG<br><br>CLASS ACTION<br><br>DECLARATION OF LUKE O. BROOKS FILED ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES<br><br>DATE:  March 31, 2022<br>TIME:  2:00 p.m.<br>CTRM:  2, 4th Floor<br>JUDGE:  Honorable Haywood S. Gilliam, Jr. |

EXHIBIT 6
Page 81

1    I, LUKE O. BROOKS, declare as follows:

2    1.    I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins

3    Geller" or the "Firm").  I am submitting this declaration in support of my Firm's application for an

4    award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in

5    the above-entitled action (the "Litigation").

6    2.    This Firm is Lead Counsel of record for Lead Plaintiff New York Hotel Trades

7    Council & Hotel Association of New York City, Inc. Pension Fund, class representative Sheet Metal

8    Workers' Pension Plan of Southern California, Arizona and Nevada and the Class herein.

9    3.    The information in this declaration regarding the Firm's time and expenses is taken

10   from time and expense reports and supporting documentation prepared and/or maintained by the

11   Firm in the ordinary course of business.  I am the partner who oversaw and/or conducted the day-to-

12   day activities in the Litigation and I reviewed these reports (and backup documentation where

13   necessary or appropriate) in connection with the preparation of this declaration.  The purpose of this

14   review was to confirm both the accuracy of the entries on the printouts as well as the necessity for,

15   and reasonableness of, the time and expenses committed to the Litigation.  As a result of this review,

16   reductions were made to both time and expenses in the exercise of billing judgment.  Based on this

17   review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation

18   and the expenses for which payment is sought herein are reasonable and were necessary for the

19   effective and efficient prosecution and resolution of the Litigation.  In addition, I believe that these

20   expenses are reasonable and were necessary for the effective and efficient prosecution and resolution

21   of the Litigation.

22   4.    After the reductions referred to above, the number of hours spent on the Litigation by

23   the Firm is 4,718.00.  A breakdown of the lodestar is provided in the attached Exhibit A.  The

24   lodestar amount for attorney/paraprofessional time based on the Firm's 2021 rates is $3,815,664.75.

25   The hourly rates shown in Exhibit A are the Firm's regular 2021 rates in contingent cases set by the

DECL OF LUKE BROOKS ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN
SUPPORT OF APP FOR AWARD OF FEES AND EXPENSES - 4:16-cv-06557-HSG
4869-4996-0199.v1                                                        - 1 -

EXHIBIT 6
Page 82

Firm for each individual. These hourly rates are consistent with hourly rates submitted by the Firm to state and federal courts during 2021 in other securities class action litigation. The Firm's rates are set based on periodic analysis of rates charged by firms performing comparable work both on the plaintiff and defense side. For personnel who are no longer employed by the Firm, the "current rate" used for the lodestar calculation is based upon the rate for that person in his or her final year of employment with the Firm.

5. The Firm seeks an award of $176,501.78 in expenses and charges in connection with the prosecution of the Litigation. Those expenses and charges are summarized by category in the attached Exhibit B.

6. The following is additional information regarding certain of these expenses:

(a) Filing, Witness and Other Fees: $2,273.35. These expenses have been paid to the Court for filing fees and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas; or (ii) obtained copies of court documents for plaintiffs. The vendors who were paid for these services are set forth in the attached Exhibit C.

(b) Transportation, Hotels & Meals: $3,834.77. In connection with the prosecution of this case, the Firm has paid for travel expenses to attend court hearings. The date, destination and purpose of each trip is set forth in the attached Exhibit D.

(c) Court Hearing Transcripts: $256.75. The vendors who were paid for these services are listed in the attached Exhibit E.

(d) Consultants/Investigators: $97,882.00.

(i) Tasta Group (dba Caliber Advisors, Inc.) ("Caliber"): $55,387.50. Lead Plaintiff retained the services of Caliber, a valuations and economic consulting firm and its managing director, Bjorn Steinholt, CFA, to assist in financial analysis of materiality, loss causation, market efficiency, and damages. Caliber specializes in financial analyses and related economic

DECL OF LUKE BROOKS ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APP FOR AWARD OF FEES AND EXPENSES - 4:16-cv-06557-HSG
4869-4996-0199.v1

- 2 -

EXHIBIT 6
Page 83

Case 2:18-cv-06557-BHG   Document 1455   Filed 01/23/24   Page 101 of 177
Case 4:16-cv-06557-HSG   Document 557   Filed 01/12/24   Page 101 of 187
Page ID #:21848

7.     The expenses pertaining to this case are reflected in the books and records of this Firm.  These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

8.     The identification and background of my Firm and its partners is attached hereto as Exhibit F.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of January, 2022, at San Diego, California.

*s/Luke O. Brooks*
LUKE O. BROOKS

consulting services with Mr. Steinholt having more than 25 years of experience providing capital markets consulting. Mr. Steinholt provided Lead Counsel with substantial assistance in its economic analysis of market efficiency, materiality, loss causation and damages. Lead Counsel worked closely with Mr. Steinholt throughout the mediation process with Judge Phillips and, after reaching the Settlement, Mr. Steinholt assisted Lead Counsel in developing the proposed plan for allocating the settlement proceeds to eligible Class Members as set forth in the Notice.

(ii)     Gryphon Investigations (dba Gryphon Strategies) ("Gryphon"): $20,665.00. Gryphon is a private investigative firm retained by Lead Counsel to assist in the factual investigation of the claims alleged in the Second Amended Complaint. Gryphon's investigators reviewed and analyzed materials in preparation for the investigation, assisted in researching, identifying, and confirming the employment status of prospective witnesses, and conducted interviews with targeted witnesses, and prepared witness interview memoranda in connection with the Second Amended Complaint.

(iii)     Fideres Partners LLP ("Fideres"): $15,000.00. Fideres is a leading provider of economic analysis with specialization in antitrust matters. Fideres assisted Lead Counsel in understanding the structure of the generic drug market, and how that structure facilitated the alleged conspiracy. Fideres also provided statistical analyses related to various aspects of the generic drug market that were used in the First and Second Amended Complaints, and assisted in quantifying the impact of the alleged conspiracy.

(iv)     Soundview Intelligence LLC ("Soundview"): $6,829.50. Soundview is a private investigative firm retained by Lead Counsel to assist in the factual investigation of the claims alleged in the First Amended Complaint. Soundview's investigator reviewed and analyzed materials in preparation for the investigation, assisted in researching, identifying, and confirming the

Case 2:18-cv-07440-DMG-JSG Document 145 Filed 01/31/24 Page 5 of 137
Case 4:16-cv-06557-HSG Document 257 Filed 01/23/24 Page 103 of 187
Page ID #:21850

employment status of prospective witnesses, conducted interviews with targeted witnesses, and prepared witness interview memoranda in connection with the First Amended Complaint.

(e) Outside Photocopies: $248.65. The Firm paid $248.65 to an outside vendor for blowback printing and coil binding.

(f) Online Legal and Financial Research: $9,556.98. This category includes vendors such as LexisNexis Products, Thomson Financial, and Westlaw. These resources were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs. This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation. The charges for these vendors vary depending upon the type of services requested. For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services. When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated. At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients. For example, the "market rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(g) Mediation Fees (Phillips ADR Enterprises, P.C.): $62,097.50. The parties retained former United States District Judge, Layn Phillips of Phillips ADR, to serve as mediator. Judge Phillips conducted a full-day mediation, followed by additional mediation sessions and negotiations leading to the settlement of the Litigation.

DECL OF LUKE BROOKS ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN
SUPPORT OF APP FOR AWARD OF FEES AND EXPENSES - 4:16-cv-06557-HSG
4869-4996-0199.v1

- 4 -

EXHIBIT 6
Page 86

# EXHIBIT A

EXHIBIT 6
Page 87

**EXHIBIT A**

*Fleming v. Impax Laboratories Inc., et al.*, Case No. 4:16-cv-06557-HSG
Robbins Geller Rudman & Dowd LLP
Inception through January 13, 2022

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Alba, Mario | (P) | 38.60 | 870 | $ 33,582.00 |
| Brooks, Luke O. | (P) | 844.80 | 945 | 798,336.00 |
| Burkholz, Spencer A. | (P) | 47.50 | 1200 | 57,000.00 |
| Daley, Joseph D. | (P) | 6.10 | 970 | 5,917.00 |
| Gusikoff Stewart, Ellen A. | (P) | 6.00 | 1080 | 6,480.00 |
| Lau, Angel P. | (P) | 908.80 | 760 | 690,688.00 |
| Love, Andrew S. | (P) | 48.50 | 1150 | 55,775.00 |
| Niehaus, Eric I. | (P) | 597.45 | 840 | 501,858.00 |
| Pintar, Theodore J. | (P) | 163.90 | 1100 | 180,290.00 |
| Robbins, Darren J. | (P) | 26.65 | 1325 | 35,311.25 |
| Stein, Jeffrey J. | (P) | 304.55 | 780 | 237,549.00 |
| Lakosil, Natalie F. | (A) | 17.10 | 425 | 7,267.50 |
| McGuire, Sean C. | (A) | 15.00 | 450 | 6,750.00 |
| Oliver, Erika L. | (A) | 446.30 | 520 | 232,076.00 |
| Tull, Joseph J. | (A) | 8.30 | 175 | 1,452.50 |
| Alexander, Susan K. | (OC) | 570.50 | 1150 | 656,075.00 |
| McCormick, Tricia | (OC) | 28.50 | 935 | 26,647.50 |
| Schroder, Stephanie M. | (OC) | 48.00 | 895 | 42,960.00 |
| Walton, David C. | (OC) | 2.50 | 1080 | 2,700.00 |
| Koelbl, Terry R. | (FA) | 159.00 | 600 | 95,400.00 |
| Barhoum, Anthony J. | (EA) | 20.20 | 430 | 8,686.00 |
| Cabusao, Reggie F. | (EA) | 18.75 | 335 | 6,281.25 |
| Uralets, Boris | (EA) | 10.20 | 415 | 4,233.00 |
| Roelen, Scott R. | (RA) | 17.80 | 295 | 5,251.00 |
| Lewis, Bradley P. | (LS) | 5.00 | 150 | 750.00 |
| Torres, Michael | (LS) | 8.60 | 375 | 3,225.00 |
| Paralegals | | 327.65 | 275-350 | 109,861.25 |
| Document Clerks | | 21.75 | 150 | 3,262.50 |
| *TOTAL* | | *4,718.00* | | *$ 3,815,664.75* |

(P) Partner                          (EA) Economic Analyst
(A) Associate                        (RA) Research Analyst
(OC) Of Counsel                      (LS) Litigation Support
(FA) Forensic Accountant

EXHIBIT 6
Page 88

# EXHIBIT 7

EXHIBIT 7
Page 89

## Contreras v. Kelly Pipe Co.

Superior Court of California, County of Los Angeles

September 20, 2023, Decided

21STCV17933

**Reporter**

2023 Cal. Super. LEXIS 64818 *

PRESCILIANO CONTRERAS v. KELLY PIPE CO., LLC, et al.

**Notice:** THIS DOCUMENT INCLUDES THE ORDER OF THE COURT. OTHER MATERIALS, SUCH AS LEGAL MEMORANDA, MAY HAVE BEEN INCLUDED BY THE COURT. DOCUMENTS THAT ARE COMBINED AND FILED AS ONE DOCUMENT BY THE COURT ARE PUBLISHED AS ONE DOCUMENT.

**Judges:** [*1] Honorable Michael P. Linfield, Judge.

**Opinion by:** Michael P. Linfield

## Opinion

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 09/20/2023 for Hearing on Motion for Judgment Notwithstanding the Verdict, now rules as follows: The Court, having taken the matter under submission on 09/20/2023 for Hearing on Motion for Attorney Fees, now rules as follows: The Court, having taken the matter under submission on 09/20/2023 for Hearing on Motion - Other Motion to Request Pre-Judgment Interest, now rules as follows: The Court, having taken the matter under submission on 09/20/2023 for Hearing on Motion for New Trial, now rules as follows:

Case Number: 21STCV17933 Hearing Date: September 20, 2023 Dept: 34

SUBJECT: Motion for Judgment Notwithstanding the Verdict

Moving Party: Defendant Kelly Pipe Co., LLC

Resp. Party: Plaintiff Presciliano Contreras

SUBJECT: Motion for New Trial

Moving Party: Defendant Kelly Pipe Co., LLC

Resp. Party: Plaintiff Presciliano Contreras

SUBJECT: Motion for an Order for Pre-Judgment Interest

Moving Party: Plaintiff Presciliano Contreras

Resp. Party: Defendant Kelly Pipe Co., LLC

SUBJECT: Motion for an Award of Attorneys' Fees

Moving Party: Plaintiff [*2] Presciliano Contreras

Resp. Party: Defendant Kelly Pipe Co., LLC

The Motion for JNOV is DENIED.

The Motion for New Trial is DENIED.

The Motion for an Order for Pre-Judgment Interest is GRANTED. Pre-Judgment interest is AWARDED in favor of Plaintiff and against Defendant in the amount of $170,204.41.

Attorneys' fees are granted in the total amount of $1,649,261.25. This comprises of a lodestar of $1,047,150.00 and a multiplier of 1.575.

BACKGROUND:

On May 12, 2021, Plaintiff Presciliano Contreras

EXHIBIT 7
Page 90

filed his Complaint against Defendants Kelly Pipe Co., LLC, JFE Shoji America, LLC, JFE Shoji America Holdings, Inc., JFE Shoji Steel American, Inc., R. Bourgeois JFE Shoji Magnetic Lamination, Inc., Art Shelton, Steve Livingston, and James Fiorillo. The causes of action arise from Plaintiff's employment with Defendants.

On September 22, 2021, by stipulation of the Parties, the Court dismissed without prejudice Defendants Art Shelton and Steve Livingston from the Complaint.

On January 18, 2022, by stipulation of the Parties, the Court dismissed without prejudice Defendants JFE Shoji America, LLC, JFE Shoji America Holdings Inc., JFE Shoji Steel America, Inc. (erroneously identified in the Complaint [*3] as JFE Shoji Steel American, Inc.), and R. Bourgeois JFE Shoji Magnetic Lamination, Inc. from the Complaint.

On January 12, 2023, the Court granted summary judgment in favor of Defendants and against Plaintiff on the fifth and sixth causes of action in the Complaint.

From June 12 to June 16, 2023, the Court held a jury trial in this matter.

On June 16, 2023, the Jury found in favor of Plaintiff and against Defendant Kelly Pipe Co. ("Defendant") on all causes of action tried: (1) age discrimination; (2) age harassment; (3) retaliation; (4) failure to prevent discrimination; (5) wrongful termination; (6) whistleblower retaliation; and (7) intentional infliction of emotional distress. The Jury further: (1) found a total of $1,300,000.00 in damages; (2) found clear and convincing evidence that Defendant acted with malice, oppression, or fraud; and (3) awarded $5,000,000.00 in punitive damages.

On July 20, 2023, Plaintiff filed: (1) Motion for an Order for Pre-Judgment Interest; and (2) Motion for an Award of Attorneys' Fees. With each of these motions, Plaintiff concurrently filed a Proposed Order. In addition, for the Motion for an Award of Attorneys' Fees, Plaintiff also filed: (1) Request [*4] for Judicial Notice; (2) Proposed Order for Request for Judicial Notice; (3) Appendix of Evidence; and (4) Notice of Lodging Federal Authorities.

On July 25, 2023, Plaintiff filed his Judicial Council Form MC-010, Memorandum of Costs (Summary).

On July 25, 2023, the Court entered Judgment in accordance with the Jury's Verdict.

On August 2, 2023, Defendant filed: (1) Statement of Non-Opposition Re: Plaintiff's Motion for an Order for Pre-Judgment Interest; and (2) Opposition to Plaintiff's Motion for an Award of Attorneys' Fees. In support of its Opposition to Plaintiff's Motion for an Award of Attorneys' Fees, Defendant concurrently filed: (1) Request for Judicial Notice; (2) Declaration of Gary Scalabrini; (3) Declaration of Michael W. Kelly; (4) Notice of Lodging Federal Authorities; and (5) Proof of Service.

On August 8, 2023, Plaintiff filed its Replies regarding the Motion for an Order for Pre-Judgment Interest and the Motion for an Award of Attorneys' Fees.

On August 9, 2023, Defendant filed: (1) Motion for Judgment Notwithstanding the Verdict ("Motion for JNOV"); and (2) Motion for New Trial. With each of the two motions, Defendant concurrently filed: (1) Declaration of Gary E. Scalabrini; [*5] (2) Proposed Order; and (3) Proof of Service.

On August 11, 2023, Defendant filed its Statement of Non-Opposition to Plaintiff's Memorandum of Costs.

On August 21, 2023, Plaintiff filed its Oppositions to the Motion for JNOV and the Motion for New Trial. With each of the Oppositions, Plaintiff concurrently filed an Appendix of Evidence.

On August 29, 2023, Defendant filed its Replies

EXHIBIT 7
Page 91

regarding the Motion for JNOV and the Motion for New Trial.

On August 29, 2023, Plaintiff filed its Objection to Defendant's Replies regarding the Motion for JNOV and the Motion for New Trial.

On September 1, 2023, Defendant filed its Reply to Plaintiff's Objection. Defendant concurrently filed: (1) Request for Judicial Notice; and (2) Proof of Service.

ANALYSIS:

I. Motion for JNOV

A. Objection and Request for Judicial Notice

Plaintiff objects to Defendant's Reply regarding the Motion for JNOV. Defendant argues that this Reply is timely and files a Request for Judicial Notice regarding a trial order in another case.

The Court agrees with Defendant that its Reply is timely. (Reply to Objection, p. 2:6-10.) Even if this Reply were untimely, the Court would still consider it in the interests of justice.

The Court DENIES [*6] as irrelevant the Request for Judicial Notice. The Court OVERRULES the Objection.

B. Legal Standard

"The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made." (Code Civ. Proc., § 629, subd. (a).)

"The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict. The trial judge cannot weigh the evidence, or judge the credibility of witnesses. If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for

judgment notwithstanding the verdict should be denied." (Hauter v. Zogarts (1975) 14 Cal.3d 104, 110, citations omitted, scrivener's error corrected.)

"A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial [*7] evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." (Brandenburg v. Pac. Gas & Elec. Co. (1946) 28 Cal.2d 282, 284, citations omitted.)

C. Discussion

Defendant moves the Court for judgment notwithstanding the Jury's Verdict on: (1) the cause of action for intentional infliction of emotional distress; and (2) punitive damages. (Motion for JNOV, p. 17:11-12.)

Defendant argues that this would be appropriate because: (1) Plaintiff presented no evidence of extreme and outrageous conduct; (2) Plaintiff presented no evidence of reckless intent to cause extreme emotional distress; (3) as a matter of law, punitive damages may not be awarded here because there was not clear and convincing evidence of malice, oppression, or fraud; and (4) the punitive damages award exceeded the constitutional maximum. (Motion for JNOV, pp. 10:20- 21, 12:14-15, 13:3, 15:15.)

Plaintiff opposes the Motion, pointing to various pieces of evidence and arguing that Defendant's cases are inapposite.

Defendant reiterates its arguments in its Reply, as well as arguing against Plaintiff's reading of case law.

The Court disagrees with Defendant's arguments.

First, Plaintiff presented evidence of (1) extreme and outrageous conduct [*8] and (2) reckless intent to cause extreme emotional distress. The Jury voted

EXHIBIT 7
Page 92

12-0 in favor of Plaintiff on his cause of action for wrongful termination; 11-1 in favor of Plaintiff on his cause of action for age harassment; and 12-0 in favor of Plaintiff on his causes of action for retaliation. The Jury was also unanimous in finding for Plaintiff on his cause of action for IIED.

There was sufficient evidence presented to uphold each of these verdicts. In addition, Plaintiff's expert witness, Anthony Reading, testified that, as a result of Defendant's conduct, Plaintiff suffered an adjustment disorder with anxiety and major depressive disorder.

The Court need not, and will not, recount all of the evidence. It is sufficient for a motion for judgment notwithstanding the verdict that some substantial evidence supports the verdict on these grounds. (Brandenburg, supra, 28 Cal.2d at p. 284.)

Second, there has been no evidence presented to show that the jury failed to consider all of the evidence presented to it by Plaintiff and Defendant. Based upon that evidence, the Jury found clear and convincing evidence of malice, oppression, or fraud. Had this been a Court trial, the Court might have found differently. But the Court cannot weigh [*9] the evidence. (Hauter, supra, 14 Cal.3d at p. 110.) It is sufficient to note that substantial evidence supports the verdict on this ground.

Finally, the Jury found $1,300,000.00 in damages and, in the second, bifurcated part of the trial, awarded Plaintiff $5,000,000.00 in punitive damages. The finding of clear and convincing evidence was unanimous. Although the finding of $5,000,000.00 in punitive damages was by a vote of 9-3, the Court has no evidence whether the three dissenting votes would have imposed a higher or lower amount of punitive damages. The punitive damages award is approximately 3.85 times larger than the damages finding. While Defendant correctly notes that there are constitutional limits on punitive damages awards, this punitive damages award does not approach that limit. Further, in the punitive damages portion of the trial, evidence was presented that Defendant had net sales of $1,000,000,000.00; a net worth in 2022 of $172,000,000.00; a net worth in 2023 of $136,000,000.00; and a revolving loan of up to $160,000,000.00. Thus, substantial evidence supports this punitive damages award.

D. Conclusion

The Motion for JNOV is DENIED.

II. Motion for New Trial

A. Objection and Request for Judicial Notice

Plaintiff [*10] objects to Defendant's Reply regarding the Motion for New Trial. Defendant argues that this Reply is timely and files a Request for Judicial Notice regarding a trial order in another case.

The Court agrees with Defendant that the Reply is timely. (Reply to Objection, p. 2:6-10.) Even if this Reply were untimely, the Court would still consider it in the interests of justice.

The Court DENIES as irrelevant the Request for Judicial Notice. The Court OVERRULES the Objection.

B. Legal Standard

"A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee." (Code Civ. Proc., § 656.)

"The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:

. . .

"5. Excessive or inadequate damages.

"6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law.

. . .

EXHIBIT 7
Page 93

"When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which **[*11]** it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.

"The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons... ."

(Code Civ. Proc., § 657.)

"In ruling on such motion, in a cause tried without a jury, the court may, on such terms as may be just, change or add to the statement of decision, **[*12]** modify the judgment, in whole or in part, vacate the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the statement of decision and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before a decision had been filed or judgment rendered. Any judgment thereafter entered shall be subject to the provisions of sections 657 and 659." (Code Civ. Proc., § 662.)

C. Discussion

Defendant moves the Court to grant a new trial if Plaintiff refuses to consent to a remittitur correcting the punitive damages award. (Motion for New Trial, p. 16:2-4.)

Defendant argues that this would be appropriate because: (1) the punitive damages award is not supported by clear and convincing evidence; and (2) the punitive damages award is excessive and unconstitutional under federal and state law. (Motion for New Trial, pp. 10:7-8, 12:2-3.)

Plaintiff disagrees, arguing that the punitive damages award is supported by such evidence and that the award is not excessive or unconstitutional.

Defendant reiterates its arguments in its Reply. **[*13]**

The Court disagrees with Defendant's arguments.

In order for the Court to grant a new trial upon the grounds of insufficiency of the evidence or excessive damages, the Court must weigh the evidence and be "convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (Code Civ. Proc., § 657.)

Upon weighing the evidence submitted in this case, the Court is not convinced that the Jury clearly should have reached a different verdict or decision. As seen by the poll of the jury, different Jurors had different opinions on various causes of action, and the Jurors did not consistently vote one way or another. (Minute Order dated June 16, 2023, pp. 4-5.) However, the jury's verdict, including its award of $5,000,000.00 in punitive damages, was supported by substantial evidence. The Court's conclusion after reviewing the entire record, including reasonable inferences therefrom, is that the jury's verdict was sound.

D. Conclusion

The Motion for New Trial is DENIED.

III. Motion for an Order for Pre-Judgment Interest

A. Legal Standard

EXHIBIT 7
Page 94

"A person who is entitled to recover damages certain, or capable of being made certain by calculation, **[\*14]** and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt… ." (Civ. Code, § 3287, subd. (a).)

"Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." (Civ. Code, § 3287, subd. (b).)

B. Discussion

Plaintiff requests that the Court award: (1) pre-judgment interest at the rate of 7% per annum on the economic damages award of $570,938.00 from June 6, 2020 to the date of entry of judgment; and (2) pre-judgment interest at the rate of 10% per annum on the noneconomic damages award of $729,062.00 from December 12, 2022 through satisfaction of the judgment. (Motion for an Order for Pre-Judgment Interest, p. 6:15-21.)

Defendant filed a Statement of Non-Opposition, clarifying Plaintiff's motion but not substantively opposing it. (See Statement of Non-Opposition, filed 8/2/2023.)

Plaintiff calculates the first set of interest **[\*15]** at $125,262.23 and the second set of interest at $44,942.18, for a total amount of $170,204.41 in pre-judgment interest. (Reply regarding Motion for an Order for Pre-Judgment Interest, p. 2:6-15.)

C. Conclusion

The Motion for an Order for Pre-Judgment Interest is GRANTED.

Pre-Judgment interest is AWARDED in favor of Plaintiff and against Defendant in the amount of $170,204.41.

IV. Motion for an Award of Attorneys' Fees

A. Request for Judicial Notice

1. Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of four declarations filed in other cases.

The Court DENIES Plaintiff's Request for Judicial Notice. These items are not judicially noticeable.

2. Defendant's Request for Judicial Notice

Defendant requests that the Court take judicial notice of: (1) a table of case filing information; (2) a printout of Plaintiff's Counsel's webpage; (3) a price history report taken from the Wall Street Journal's website; and (4) a fee request submitted in another case.

The Court DENIES Defendant's Request for Judicial Notice. These items are not judicially noticeable.

B. Legal Standard

"It is an unlawful employment practice … [f]or an employer, because of the race, religious **[\*16]** creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a).)

"In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court

EXHIBIT 7
Page 95

finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (c)(6).)

C. Discussion

1. The Parties' Arguments

Plaintiff moves the Court to award $2,457,612.50 in attorneys' fees, which would consist of: (1) $1,404,350.00 in **[*17]** lodestar attorneys' fees; and (2) a multiplier enhancement of 1.75 times the lodestar (which itself would be $1,053,263.50). (Motion for an Award of Attorneys' Fees, pp. 11:13-14, 13:19.)

Plaintiff argues: (1) that as the prevailing party, Plaintiff is entitled to attorneys' fees under the Fair Employment and Housing Act ("FEHA"); (2) that the size of the verdict should not lessen the fee award; (3) that Plaintiff's requested attorneys' fees are reasonable; and (4) that a multiplier of 1.75 times the lodestar is necessary given the contingent risk, preclusion of other work, difficulty of questions involved, and level of skill displayed in this litigation. (Motion for an Award of Attorneys' Fees, pp. 5:14, 6:1, 6:24, 11:15-16.)

Defendant disagrees, arguing: (1) that an award of attorneys' fees is not mandatory; (2) that Plaintiff's Counsel must meet its burden to demonstrate the fees requested are reasonable; (3) that Plaintiff's lodestar is substantially based on 166 "trial preparation" entries that cumulatively account for 1,030.5 attorney hours; (4) that if the Court decides to award fees, the lodestar should be reduced significantly; and (5) that the circumstances of this case do **[*18]** not justify a multiplier. (Opposition to Motion for an Award of Attorneys' Fees, pp. 5:12-13, 6:12-13, 8:23-24, 11:4.) Defendant argues in the alternative that the Court should award $819,888.24 in attorneys' fees, which would consist of: (1) $803,812.00 in lodestar attorneys' fees; and (2) a multiplier enhancement of 1.02 times the lodestar (which itself would be $16,076.24). (Id. at p. 16:23-24.)

In his Reply, Plaintiff argues: (1) that fee awards under FEHA should ordinarily be granted as a matter of legislative purpose; (2) that Defendant's misrepresentation of authority underscores the need for a fee award; (3) that Defendant makes misrepresentations and omissions from other fee awards; (4) that Plaintiff's entries are sufficient under the law; (5) that Defendant does not contest Plaintiff's requested hourly rates; and (6) that Defendant cannot overcome the compelling interests in awarding a multiplier. (Reply regarding Motion for an Award of Attorneys' Fees, pp. 2:8-9, 2:22, 4:10, 7:3, 8:9, 8:17.)

2. The Prevailing Party

a. Legal Standard

The relevant section of FEHA "grants the trial court discretion to award attorney fees to a prevailing party." (Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 976.) "This statute has been interpreted **[*19]** to mean that in a FEHA action a trial court should ordinarily award attorney fees to a prevailing plaintiff unless special circumstances would render a fee award unjust. (Ibid.)

b. Discussion

Plaintiff is indisputably the prevailing party here. The Jury found in favor of Plaintiff on all causes of action tried; found clear and convincing evidence that Defendant acted with malice, oppression, or fraud; and awarded punitive damages in favor of Plaintiff and against Defendant.

There are no circumstances here that would render a fee award unjust.

The Court exercises its discretion here to award Plaintiff attorneys' fees. (Gov. Code, § 12965, subd. (c)(6).)

3. The Method for Calculating Recovery

a. Legal Standard

"An attorney fee award under the FEHA is designed to incentivize and reward a plaintiff's attorney in a civil rights case. Trial courts first

EXHIBIT 7
Page 96

determine a lodestar amount: the hours spent times a reasonable hourly rate. Courts may then increase the amount, usually by applying a multiplier to the lodestar. The multiplier is to compensate for extrinsic factors such as the risk of nonpayment (the contingency factor), the public interest advanced by the case, the difficulty of the issues involved, and the skill of the attorneys." **[*20]** (Caldera v. Dep't of Corr. & Rehab. (2020) 48 Cal.App.5th 601, 604, citing Ketchum v. Moses (2001) 24 Cal.4th 1122, 1135.)

b. Discussion

Although Defendant argues that no fees should be awarded, neither Party disputes that the appropriate approach for calculating recovery of attorneys' fees is the lodestar adjustment method, which involves multiplying the number of hours reasonably expended by the reasonably hourly rate. (Caldera, supra, 48 Cal.App.5th at p. 604.) Nor do the Parties dispute that consideration of a multiplier is appropriate, although Defendant argues that a multiplier is ultimately not appropriate here.

The Court uses the lodestar adjustment method here and considers whether a multiplier is appropriate.

4. Reasonableness of the Fees

a. Legal Standard

"[T]he reasonable value of attorney services is variously defined as the hourly amount to which attorneys of like skill in the area would typically be entitled." (Ketchum, supra, 24 Cal.4th at p. 1133, citation and internal quotation marks omitted.)

"[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." (Ketchum, supra, at p. 1133, citation and emphases omitted.)

"The burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable. However, in challenging attorney fees as **[*21]** excessive because too many hours of work are

claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (Vines v. O'Reilly Auto Enters., LLC (2022) 74 Cal.App.5th 174, 184 [cleaned up].)

b. Discussion

i. The Hourly Rates

Plaintiff claims: (1) that Counsel Carney Shegerian charges $1,350.00 per hour; (2) that Counsel Anthony Nguyen charges $1,100.00 per hour; (3) that Counsel Mahru Madjidi charges $900.00 per hour; (4) that Counsel Bryan Kirsh charges $825.00 per hour; (5) that Counsel Iris Salem charges $600.00 per hour; (6) that Counsel Allison Norder charges $550.00 per hour; (7) that Counsel Kierston Yamamoto charges $450.00 per hour; (8) that Counsel Zalman Robles charges $450.00 per hour; and (9) that Counsel Thomas Rouston charges $450.00 per hour. (Motion for an Award of Attorneys' Fees, p. 11:7-13.

Most, but not all, of the attorneys that comprise Plaintiff's Counsel provided declarations that help explain the hourly rates they charge. (Appendix of Evidence: Decl. Shegerian, ¶ 7; Decl. Nguyen, ¶ 10; Decl. Madjidi, ¶ 11; Decl. Kirsh, ¶ 4; Decl. Norder, ¶ 4; Decl. **[*22]** Yamamoto, ¶ 4.)

Counsel Shegerian has over 30 years of experience practicing law and is considered, both by this Court and the legal community, to be an exceptional trial attorney. Counsel Nguyen has nearly 15 years of experience practicing law and has previously appeared before this Court. Counsel Madjidi has 10 years of experience practicing law. Counsel Kirsh has been an attorney for six years. Counsel Norder (who has been an attorney for less than two years) and Counsel Yamamoto (who has been an attorney for less than one year) are still entry-level attorneys. The Court does not have any information for Counsel Salem, Robles, or Rouston - even though Counsel Salem apparently charges more than Counsel Norder and Yamamoto.

EXHIBIT 7
Page 97

This Court has previously granted Attorney Shegerian fees of $1,300/hour. Understanding that top defense counsel who are partners at major law firms charge up to $1,600/hour, the Court finds Shegerian's requested rate of $1,350/hour to be reasonable. Based upon an evaluation of the declarations submitted, the Court's understanding of the prevailing rate for attorneys of comparable skill and experience in the relevant community, and the Court's personal knowledge **[*23]** of the attorneys' skills as presented in Court, the Court lowers the hourly rates allowed to reasonable rates, as shown in the chart below.

ii. The Number of Hours

Plaintiff's Counsel Anthony Nguyen declares that 1,755.5 hours of attorney time are sought in connection with this case. (Reply regarding Motion for an Award of Attorneys' Fees, Decl. Nguyen, ¶ 14.)

Defendant specifically argues that the 1,030.5 hours spent on "trial preparation" were excessive. (Opposition to Motion for Award of Attorneys' Fees, p. 6:12-13.) Defendant proposes that only 450 hours be allowed for trial preparation. (Id. at p. 9:11-14.) Defendant does not make other arguments that specifically point to issues with the hours sought by Plaintiff's Counsel.

The Court agrees with Defendant that 1,030.5 hours spent on trial preparation is excessive, but only marginally so. This was a difficult, fact-intensive case. There was no guarantee that Plaintiff would be successful in his claims, and Plaintiff's Counsel did an excellent job trying this case. The fact that Defense Counsel only spent 376.2 hours on trial preparation in the three months leading up to trial may have contributed to the jury's verdict.

The Court will **[*24]** lessen the hours of Counsel Madjidi, Nguyen, and Norder by 75 hours, 50 hours, and 25 hours, respectively, in rough accordance with their proportionate hours spent on trial preparation. (Opposition to Motion for Award of Attorneys' Fees, p. 6:13-22.)

The Court will grant the other hours sought, as Plaintiff has met his initial burden of proof on those hours and Defendant has not met its subsequent burden to show that those hours should be reduced.

5. Multiplier to the Lodestar

a. Legal Standard

"The purpose of the multiplier is to reward the prevailing attorney with an increased fee in light of the extrinsic Ketchum factors: the importance and difficulty of the litigation; the novelty of the issues involved; the risk of nonpayment for the attorney's services (the contingency factor); the skill of the attorney in presenting the case; and the magnitude of the results obtained." (Caldera, supra, 48 Cal.App.5th at p. 607, citing Ketchum, supra, 24 Cal.4th at pp. 1132-34.)

"Of course, the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." (Ketchum, supra, 24 Cal.4th at p. 1138, emphasis **[*25]** omitted.)

b. Discussion

Plaintiff requests a multiplier enhancement of 1.75. (Motion for Award of Attorneys' Fees, p. 11:15-16.)

Defendant argues that there should be no multiplier, or in the alternative only a multiplier or 1.02. (Opposition to Motion for Award of Attorneys' Fees, pp. 11:4-5, 16:19-20.)

For the reasons listed below, the Court finds that Plaintiff meets his burden regarding a multiplier enhancement.

First, Plaintiff's Counsel took this case on complete contingency. (Reply regarding Motion for Award of Attorneys' Fees, Decl. Nguyen, ¶ 16.) "The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney

EXHIBIT 7
Page 98

will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1138; accord Amaral v. Cintas Corp. No. 2 (2008) 163 Cal.App.4th 1157, 1217-18 and Taylor v. Nabors Drilling USA, LP (2014) 222 Cal.App.4th 1228, 1252.)

FEHA cases are based on statutes that are designed to protect the California consumer. If a plaintiff's attorney is paid no more than the lodestar, "competent counsel will be reluctant [*26] to accept fee award cases." (Ketchum, supra, 24 Cal.4th at p. 1133, quotation and internal quotation marks omitted.)¿

Second, the vast amount of hours reasonably incurred on this matter clearly precluded other work by Plaintiff's Counsel.

Third, discussed earlier in this Order, three members of Plaintiff's Counsel are very experienced, two of whom spent a significant amount of time on this case. Although the most experienced lawyer on the team (Counsel Shegerian) only spent 4.4 hours on this matter, Counsel Nguyen and Madjidi (who each spent hundreds of hours on this matter) are highly-skilled trial attorneys.

Fourth, there was a significant chance that Defendant would have prevailed on each of the causes of action. This was apparent from the motion for summary judgment filed in this matter, in which the Court granted summary judgment against Plaintiff on two causes of action (breach of express oral contract and breach of implied contract).

Fifth, Plaintiff's Counsel achieved excellent results for their client. Plaintiff succeeded on all causes of action tried, obtained $1,300,000.00 in damages,

and obtained $5,000,000.00 in punitive damages. The Court has no problem concluding that these results are significantly higher [*27] than they would have been without counsel of comparable skill and experience.

Sixth, in contrast to Defense Counsel, who presumably gets paid monthly, Plaintiff's Counsel have not been paid for the more than two years that this action has been pending. The normal interest rate in California is 10%, which is the equivalent of a 1.10 multiplier. Because not all of an attorney's work occurs at the beginning of any given year, the Court assumes that the work was performed more-or-less evenly throughout the course of any given year. This means a 1.05 multiplier per year is appropriate to compensate Plaintiff's Counsel for the time-value of the money that they would have been paid monthly had the case not been contingent.¿

Plaintiff's Counsel litigated this case from May 2021 through September 2023 without payment. However, at oral argument, it was indicated Plaintiff's counsel's work was not evenly distributed over the past 2½ years; rather, most of it was performed during the past year. In consideration of this delay and that the statutes under which Plaintiff sued were designed to protect workers, the Court would award a 1.075 multiplier to the lodestar indicated above just to compensate [*28] for the time value of money. This multiplier would compensate Plaintiff's Counsel for the time value of the money they would have been paid monthly had the case not been contingent.

Finally, FEHA cases are unfortunately necessary for upholding the public interest. Race and age discrimination occur far too often in our society; often such discrimination is not remedied. Our courts have long recognized the "need to encourage [attorneys] willing to challenge injustices in our society" and that "[a]dequate fee awards are perhaps the most effective means of achieving this salutary goal." (Etcheson v. FCA US LLC, (2018) 30 Cal.App.5th 831, 849, quoting Thayer v. Wells

EXHIBIT 7
Page 99

Fargo Bank, N.A. (2001) 92 Cal.App.4th 819, 839.) For that reasons, Courts should not be "unduly parsimonious in the calculation of such fees." (Thayer v. Wells Fargo Bank, N.A. (2001) 92 Cal.App.4th 819, 839.)

The Court will award a multiplier enhancement of 1.575, which this Court finds appropriate given the factors considered above.

D. Conclusion

The Motion for Award of Attorneys' Fees is GRANTED in part.

Attorneys' fees are granted in the total amount of $1,649,261.25. This comprises of a lodestar of $1,047,150.00 and a multiplier of 1.575, as shown in the spreadsheet below.

Attorney's Name

Rate Requested-Hours Requested-Total Requested-Rate Granted-Hours Granted-Total Granted Carney Shegerian-$1,350.00-4.40-$5,940.00-$1,350.00-4.40-$5,940.00 **[*29]**

Anthony   Nguyen-$1,100.00-423.40-$465,740.00-$1,000.00-373.40-$373,400.00

Mahru     Madjidi-$900.00-579.60-$521,640.00-$750.00-504.60-$378,450.00

Bryan     Kirsh-$825.00-5.80-$4,785.00-$550.00-5.80-$3,190.00

Iris     Salem-$600.00-0.70-$420.00-$300.00-0.70-$210.00

Allison     Norder-$550.00-734.80-$404,140.00-$400.00-709.80-$283,920.00

Kierston     Yamamoto-$450.00-3.70-$1,665.00-$300.00-3.70-$1,110.00

Zalman     Robles-$450.00-2.00-$900.00-$300.00-2.00-$600.00

Thomas     Rouston-$450.00-1.10-$495.00-$300.00-1.10-$330.00

Lodestar Requested-###########

Lodestar Granted-$1,047,150.00

Percentage Allowed-1

Final Lodestar-$1,047,150.00

Multiplier-1.575

Total Fees-$1,649,261.25

Total Costs-$0.00

Total Fees and Costs Granted-$1,649,261.25

Clerk is to give notice.

Certificate of Mailing is attached.

End of Document

EXHIBIT 7
Page 100

# EXHIBIT 8

EXHIBIT 8
Page 101

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS6**

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-00079-RGK | Date | August 16, 2022 |
|---|---|---|---|
| Title | **_Benjamin Woodhouse, et al v. The United States Government, et al_** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**    **(IN CHAMBERS) Order Re: Defendants' Application for Attorney Fees [DE 100]**

## I.    <u>INTRODUCTION</u>

On January 7, 2022, Benjamin Woodhouse and Havensight Capital, LLC (collectively, "Plaintiffs"), filed a First Amended Complaint ("FAC") against Alphabet, Inc., five judges of the Central District of California, and four United States Government officials. (ECF No. 10.) The FAC also names as defendants Gibson Dunn Inc. ("Gibson Dunn")[1], Meta Platforms, Inc. ("Meta"), Nike, Inc. ("Nike"), (collectively, "Moving Defendants"). (_Id._)

Plaintiffs have brought numerous lawsuits in this District since 2014 and have been the subject of several vexatious litigant orders, including one entered by the Court in this action. _See Havensight Cap. LLC v. Nike, Inc._, 2015 WL 3544111 (C.D. Cal. Apr. 22, 2015); _Havensight Cap. LLC. v. Facebook, Inc._, 2018 WL 6340757 (C.D. Cal. Sept. 24, 2018); _Woodhouse v. U.S. Gov't_, 2021 WL 6333468 (C.D. Cal. Nov. 24, 2021) (_Woodhouse I_); _Woodhouse v. U.S. Gov't_, 2022 WL 2232521 (C.D. Cal. June 10, 2022) (_Woodhouse II_). Another one of those orders was entered in _Woodhouse I_ by Judge Blumenfeld on November 24, 2021. Judge Blumenfeld's vexatious litigant order forbade Plaintiffs from filing certain claims against the Moving Defendants. However, Plaintiffs ignored the order and alleged the restricted claims against the Moving Defendants in the current action. The Court thus dismissed all three defendants due to Plaintiffs' violation of the vexatious litigant order. (_See_ Order Re: Defs.' Mot. for Relief at 3, ECF No. 64.) The Court then ordered Plaintiffs to pay the Moving Defendants' reasonable attorney's fees and costs, provided that those parties filed a timely application with documentary support. (_See_ Omnibus Order at 11, ECF No. 93.)

---

[1] Plaintiffs seemingly intended to sue Gibson, Dunn & Crutcher LLP, as that law firm has represented Nike, Inc. and Meta Platforms, Inc. in prior actions.

EXHIBIT 8
Page 102

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-00079-RGK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Benjamin Woodhouse, et al v. The United States Government, et al* | | |

Presently before the Court is Moving Defendants' Application for Attorney's Fees, which the Court **GRANTS** for the following reasons.

## II.  DISCUSSION

Nike and Meta[2] request $38,422.60 in fees, pursuant to the following hours and rates:

| Attorney Fees | Hours | |
|---|---|---|
| Kristin Linsley | 3.6 | $1,440/h |
| Austin Schwing | 25.1 | $1,310/h |
| | | **Total Attorney's Fees: $38,064.90** |
| **Expenses** | | $ 357.70 |
| **TOTAL** | | **$ 38,422.60** |

Generally, the fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Courts use the lodestar — "the product of reasonable hours times a reasonable rate"— to calculate attorney's fees. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). There is a "strong presumption" that the lodestar represents a "reasonable" fee. *Id.* The amount of fees to be awarded is ultimately within the trial court's discretion.

Plaintiffs do not dispute the hourly rates requested by the Moving Defendants, and the Court finds the rates reasonable because they appear "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("A rate determined in this way is normally deemed to be reasonable . . . .").[3] Additionally, other judges have found Gibson Dunn's hourly rates to be reasonable in similar actions against the same Plaintiffs. *See e.g., Havensight Cap., LLC*, 2018 WL 6340757, at *7. As such, the Court will use the requested rates in the lodestar calculation.

---

[2]  Gibson Dunn is not requesting attorney's fees because the firm represented itself.

[3] Another indication that the hourly rates are reasonable is that Nike and Meta, who are sophisticated corporate parties, actually paid the rates sought here. *See Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989) ("The fee quoted to the client . . . is helpful in demonstrating attorney fee expectations.") (internal quotations omitted).

EXHIBIT 8
Page 103

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-00079-RGK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Benjamin Woodhouse, et al v. The United States Government, et al* | | |

Plaintiffs also do not dispute the number of hours expended, and the Court finds that the number of hours expended is reasonable under the circumstances. A "reasonable" number of hours equals "[t]he number of hours [which] could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Here, only two attorneys worked on this case, and they divided the tasks according to their knowledge and expertise. Additionally, the Plaintiffs here were exceptionally litigious, making numerous filings to which responses were required over the short life of the case. Therefore, the Court finds the number of hours expended reasonable.

Finally, the Court finds that the requested expenses are reasonable and necessarily incurred. Moving Defendants' expenses would ordinarily be charged to a paying client, and their amounts do not appear excessive.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Application, awarding $38,064.90 in attorney's fees and $357.70 in costs for a total of $38,422.60.

The Clerk shall close this action.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      jre/a

---

EXHIBIT 8
Page 104

# EXHIBIT 9

EXHIBIT 9
Page 105

1
2
3
4
5
6
7 **UNITED STATES DISTRICT COURT**
8 **CENTRAL DISTRICT OF CALIFORNIA**
9

10 CHRISTIAN PINEDA,                    Case No.: 2:21-cv-06470-CBM-ASx
              Plaintiff,
11                                       **ORDER RE: PLAINTIFF'S**
   v.                                    **MOTION FOR ATTORNEYS' FEES**
12 CITY OF LOS ANGELES; *et al.*,        **AND NON-TAXABLE COSTS [181]**
13          Defendants.
14
15
16      The matter before the Court is Plaintiff's Motion for Attorneys' Fees and
17 Non-Taxable Costs.  (Dkt. No. 181 (the "Motion").)  The matter is fully briefed.
18 (Dkt. Nos. 182, 187.)
19               **I.      BACKGROUND**
20      On May 29, 2020, Plaintiff sustained injuries to his left side while moving
21 backwards with his arms and hands up while attending a protest in Los Angeles.
22 **A.    Complaint**
23      On August 11, 2021, Plaintiff filed this action asserting First Amendment
24 and Fourth Amendment claims under 42 U.S.C. § 1983 against the City of Los
25 Angeles, Chief Michel More, and Officer Colton Haney and seeking damages,
26 declaratory judgment and attorneys' fees.  *Id.*  (Dkt. No. 1.)  Plaintiff also brought
27 *Monell* claims against the City for unconstitutional policy, practice, or custom,
28 ratification, and failure to train, supervise, discipline, or correct.  *Id.*

1

EXHIBIT 9
Page 106

**B.      Trial and Jury Verdict**

On April 19, 2023, the Case proceeded to trial on Plaintiff's First and Fourth Amendment claims against Officer Haney and Plaintiff's *Monell* claims against the City of Los Angeles and Chief Michel Moore.  (Dkt. No. 138.)  On April 27, 2020, the jury returned its verdict.  The jury found in favor of Plaintiff on his Fourth Amendment claim and his *Monell* claim against the City for failure to properly train its officers to handle the usual and recurring situations with which they would have to deal.  (Dkt. No. 171.)  The jury awarded Plaintiff $85,000 in compensatory damages.  While the jury found that Plaintiff proved Officer Haney acted with malice, oppression, or reckless disregard for Plaintiff's rights, they did not award punitive damages.

## II.      STATEMENT OF THE LAW

Plaintiffs seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  Section 1988 provides that in a Section 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.  "The purpose of [Section] 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). (quoting H.R.Rep. No. 94-1558, p. 1 (1976)).

"The Supreme Court has instructed that [t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,' an approach commonly known as the 'lodestar.' Method." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (internal quotation marks and citation omitted).  "Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community."  *Id.* (internal quotation marks and citation omitted.)  "The hours expended and the rate should be supported by adequate documentation and other evidence." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ),

2

EXHIBIT 9
Page 107

1   *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388

2   (2011).  The party seeking an award of attorneys' fees bears the burden of

3   establishing the reasonableness of the hourly rates requested.  *Camacho v.*

4   *Bridgeport Fin., Inc.,* 523 F.3d 973, 980 (9th Cir. 2008).

5                 **III.**   **DISCUSSION**

6   **A.**   **Prevailing Party**

7       A "prevailing party 'should ordinarily recover an attorney's fee unless

8   special circumstances would render such an award unjust.'"  *Ackerley Commc'ns,*

9   *Inc. v. City of Salem, Or.,* 752 F.2d at 1394 (quoting *Newman v. Piggie Park*

10   *Enterprises, Inc*., 390 U.S. 400, 402 (1968)).  Plaintiffs "may be considered

11   'prevailing parties' for attorney's fees purposes if they succeed on any significant

12   issue in litigation which achieves some of the benefit the parties sought in

13   bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation

14   mark and citation omitted); *see also* 42 U.S.C. § 1988.  Defendants contest that

15   Plaintiff is the prevailing party, and request that the Court exercise its discretion

16   not to award attorneys' fees because Defendants prevailed on Plaintiff's First

17   Amendment claims and on all claims against Chief Michel Moore.  However,

18   Plaintiff prevailed on his Section 1983 excessive force claim against Defendant

19   Haney and his Section 1983 *Monell* claim against the City for failure to train.

20   Accordingly, Plaintiff is the prevailing party for purposes of Section 1983.

21   **B.**   **Lodestar**

22       Plaintiff seeks $1,257,522.30 in attorneys' fees.  Plaintiffs seek the

23   following:

| Attorney/Biller | | Hours | Hourly Rate | Lodestar x .9 |
|---|---|---|---|---|
| Dan Stormer | Attorney | 239.3 | $1,400 | $335,020 |
| Morgan Ricketts | Attorney | 325.8 | $915 | $298,107 |
| Shaleen Shanbhag | Attorney | 80.5 | $800 | $64,400 |

3

EXHIBIT 9
Page 108

| David Washington | Attorney | 845.6 | $700 | $591,920 |
|---|---|---|---|---|
| Tami Galindo | Paralegal | 385 | $280 | $107,800 |
| **SUBTOTAL** | | 1,876.2 | | $1,397,247 **x 90%** |
| **TOTAL** | | | | **$1,257,522.30** |
| | | | | |

### 1. Reasonable Hourly Rate

"Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community." *Vargas*, 949 F.3d at 1194 (internal quotation marks and citation omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks and citation omitted). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 980 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Thus, the district court "must base its determination" of the prevailing market hourly rate "on the *current* market rate." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (emphasis in original).

Plaintiff submits declarations from Paul Hoffman and V. James DeSimone demonstrating comparable attorneys' fee rates in the Central District for attorneys with similar experience to Plaintiff's counsel. (Declaration of Paul Hoffman ("Hoffman Decl."); Declaration of V. James DeSimone ("DeSimone Decl.").) Mr. Hoffman has practiced law in Los Angeles since 1976 and is the Director of the Civil Rights Litigation Clinic at UC Irvine Law School. (Hoffman Decl. ¶ 2.) From 1984 to 1994, Mr. Hoffman was the Legal Director of the ACLU

4

EXHIBIT 9
Page 109

Foundation of Southern California and litigated hundreds of civil rights cases. (*Id.*) Mr. Hoffman declares that over the past 47 years, he has become familiar with the rates charged by lawyers in the Los Angeles community. (*Id.* ¶ 4.) Mr. Hoffman has known Mr. Stormer for more than 40 years and has litigated cases with him. (*Id.* ¶ 5.) Mr. Hoffman declares that Mr. Stormer is one of the premier civil rights lawyers in California, and given his expertise, background and reputation, Mr. Hoffman believes $1,400 an hour is a reasonable hourly rate. (*Id.* ¶ 5.) Mr. Hoffman further declares that he has known Ms. Rickets for nearly ten years and referred a civil rights case to her when she was first beginning to practice in the field. (*Id.* ¶ 6.) Ms. Ricketts has consulted Mr. Hoffman on civil rights cases, including Ninth Circuit argument. (*Id.*) Based on Ms. Ricketts' experience, skill level, and ability as a civil rights attorney in Los Angeles, Mr. Hoffman believes an hourly rate of $915 is reasonable. (*Id.*) As to Mr. Washington, Mr. Hoffman declares that while he has not worked with Mr. Washington, he understands that Mr. Washington is a 2015 law school graduate who clerked for the District of Puerto Rico. (*Id.* ¶ 7.) Mr. Hoffman believes that a rate of $700 per hour is within the standard range of rates charged in the community for work by an attorney of this level of experience. (*Id.*)

Plaintiff also submits the declaration of V. James DeSimone who has practice law in Los Angeles since 1985. (DeSimone Decl. ¶ 2.) Mr. DeSimone declares that he has litigated civil rights cases since 1990. (*Id.* ¶¶ 2-3.) He has authored numerous articles and taught seminars on civil rights and speaks often at bar association events. (*Id.* ¶ 5.) Mr. DeSimone declares that he is familiar with the rates charged by plaintiffs' attorneys throughout California as he has had to survey them in connection with fee applications each year. (*Id.* at ¶ 8.) Mr. DeSimone further declares that rates of similarly trained attorneys for complex civil litigation such as civil rights cases vary from $350 to $1500 an hour. (*Id.* ¶ 16.) As a lawyer with thirty-five years of experience, Mr. DeSimone's hourly rate

EXHIBIT 9
Page 110

is $1,100, which he believes to be on the lower end of the range. (*Id.*) Mr. DeSimone has known Mr. Stormer for over thirty years and has co-counseled cases with him. (*Id.* ¶ 18.) Mr. DeSimone declares that Mr. Stormer's hourly rate is in line with rates currently being charged by attorneys in large firms of comparable or lesser skill and experience in specialized litigation groups. (*Id.*) Further, he declares that he is aware that attorneys with Mr. Stormer's skills, experience, and abilities charge anywhere from $1,100 to $1,800 per hour for plaintiff's side litigation. (*Id.* ¶ 19.) Mr. DeSimone has known Ms. Ricketts for about ten years and believes her hourly rate is in line with fees charged by trial attorneys in civil rights cases at her skill and experience level. (*Id.* ¶ 20.)

The Declarations of DeSimone and Hoffman evidence that Dan Stormer is considered a leading civil rights attorney. (*See* DeSimone Decl. ¶ 18; Hoffman Decl. ¶ 5.) Plaintiff also submits declarations attesting to the reputation, skill, and experience of Plaintiff's counsel. (*See e.g.,* Declaration of Dan Stormer ("Stormer Decl."); Declaration of Morgan Ricketts ("Ricketts Decl."); Declaration of Clay Washington ("Washington Decl.").) Mr. Stormer declares that he has practiced law for 49 years and is a founding partner of the law firm Hadsell Stormer Renick & Dai LLP, which practices primarily in the areas of employment discrimination, constitutional, civil rights, international human rights, and public interest law. (Stormer Decl. ¶ 2.) Among his many accolades, Mr. Stormer has co-authored three law review articles, wrote a monthly column for the Matthew Bender California Labor and Employment Bulletin, has been the subject of numerous legal media profiles, taught legal programs, and received numerous awards in recognition of his skills in civil rights cases. (*Id.* ¶¶ 6-8.) Additionally, on February 22, 2024, in *Pederson, et al. v. The County of Plumas, et al.*, 2:89-1659 (E.D. Cal. filed Dec. 4, 1989), a Court in the Eastern District of California awarded Plaintiffs attorneys' fees, including $6,000 for 4 hours billed by Mr. Stormer at his hourly rate of $1,500. (Dkt. No. 194, March 29, 2024 Declaration

6

EXHIBIT 9
Page 111

1    of David Washington ¶¶ 2, 4.)  Thus, Plaintiff's requested rate of $1,400 per hour

2    for Mr. Stormer is supported.

3        Morgan Ricketts served as counsel in the case and during trial.  Ms.

4    Ricketts graduated from the Harvard Law School in 2009,  has litigated civil rights

5    cases since 2013, and has first-chaired at least ten jury trials.  (Ricketts Decl. ¶ 2.)

6    Ms. Ricketts estimates litigating twenty to thirty plaintiff's civil rights cases.  (*Id.*)

7    Plaintiff submitted declarations attesting to her skill and experience.  (*See*

8    DeSimone Decl. ¶ 20; Hoffman Decl. ¶ 6.)  The Court finds her requested rate of

9    $915 reasonable and supported by the evidence.

10       David Washington served as counsel in the case and during trial.  Mr.

11   Washington has been practicing for eight years, first as a Federal Defender, then

12   as a Civil Rights Fellow with the Southern Poverty Law Center, where he declares

13   he litigated the largest class action lawsuit ever brought against the Alabama

14   Department of Corrections.  (Washington Decl. ¶ 6-8.)  Additionally, in *Pederson,*

15   2:89-1659 the district court awarded Plaintiffs' attorneys' fees, including

16   $110,460 for 157.8 hours billed by Mr. Washington at his 2023 hourly rate of

17   $700.  (Dkt. No. 194, March 29, 2024 Declaration of David Washington ¶¶ 2, 4.)

18   The Court finds the requested $700 per hour reasonable based on the evidence

19   presented.

20       The Court similarly finds the requested rates of $800 for attorney Shaleen

21   Shanbhag and $280 for paralegal Tami Galindo reasonable based on the evidence

22   presented in the Declarations of Dan Stormer and Morgan Rickets.  (Stormer Decl.

23   ¶ 21, Ricketts Decl. ¶ 8.)  Ms. Shanbhag is a former partner at Hadsell & Stormer

24   and graduated from law school in 2014.  (Stormer Decl. ¶ 33.)  Ms. Galindo's

25   requested hourly rate is consistent with the City's requested rate for its own

26   paralegal's time as demonstrated in a Motion for Attorney's fees filed by the City

27   of Los Angeles in February 2019.  (Ricketts Decl. ¶ 8.)

28       Defendants contend that (1) the rates requested by Mr. Washington and Ms.

EXHIBIT 9
Page 112

1   Rickets should be reduced based on their lack of experience litigating civil rights

2   cases, and (2) Mr. Stormer's rate should be reduced back on his lack of

3   involvement throughout the case, including trial.  Defendants support their

4   argument with a declaration from Gerald G. Knapton, an expert on legal fees.

5   (Declaration of Gerald G. Knapton ("Knapton Decl.").)  Mr. Knapton is a senior

6   partner with Ropers, Majeski P.C.  (*Id.* ¶ 2.)  He has qualified and testified as an

7   expert on legal fees more than sixty times.  (*Id.* ¶ 3.)  Mr. Knapton relies on the

8   2022 Real Rate Report[1] to determine non-contingent hourly rates of partners,

9   associates and paralegals based on location, experience, firm size, areas of

10  expertise, and industry, as well as specific practice areas, and is based on actual

11  legal billing and paid invoices from about 80 companies. (*Id.* ¶ 35.)  The Real Rate

12  Report shows the following data for partners, associates, and paralegals:

| Role | Timekeepers | First Quartile | Median | Third Quartile |
| --- | --- | --- | --- | --- |
| Partner | 10592 | $430 | $653 | $969 |
| Associate | 9930 | $329 | $485 | $703 |
| Paralegal | 4215 | $150 | $225 | $325 |

The numbers change slightly for attorneys in Los Angeles:

| Role | Timekeepers | First Quartile | Median | Third Quartile |
| --- | --- | --- | --- | --- |
| Partner | 40 | $410 | $835 | $995 |
| Associate | 38 | $361 | $475 | $735 |

Based on Mr. Knapton's analysis, Defendants propose reducing Plaintiff's

counsel's rates to $835 for Mr. Stormer, $835 for Ms. Ricketts, $475 for Mr.

Washington, and $225 for Ms. Galindo.

    In the Ninth Circuit, reasonable rates for civil rights cases are not based

[1] The Real Rate Report is powered by the Wolters Kluwer ELM Solutions
LegalVIEW® data warehouse and contains data on law firm rates and staffing
trends based on actual invoice data.

8

EXHIBIT 9
Page 113

only on rates offered in similar civil rights claims but rather comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir.2009) (holding that "the proper scope of comparison is not so limited" as to only other attorneys involved in prison litigation) (internal quotation marks and citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Camacho*, 523 F.3d at 980 ("[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.") (citation omitted).

The declarations filed in support of Plaintiff's Motion demonstrate that Plaintiff's counsel's requested rates are comparable to other attorneys in Los Angeles with similar skill and experience in complex litigation. The Court finds that counsel represented Plaintiff with professionalism, skill, and knowledge of the law. Thus, the Court overrules Defendants' objections to the declarations submitted by Plaintiff. The Court considers the declarations in calculating appropriate hourly rates for Mr. Stormer, Ms. Ricketts, Mr. Washington, Ms. Shahbag and Ms. Galindo.

## 2. Reasonable Hours

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Courts generally accept the reasonableness of hours supported by declarations of counsel. *See, e.g., Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359,

9

EXHIBIT 9
Page 114

396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.")

Counsel's sworn declarations and attached time records evidence the attorney and paralegal hours spent on this litigation. Counsel applied a 10% reduction across the board to account for any potential billing errors. (Stormer Decl. ¶ 33.) Plaintiff requests a total of 1,876.2 hours.

Defendants contend that Plaintiff should not be awarded fees for administrative work, duplicative work, excessively billed work, block-billed entries, and vague billing descriptions. Defendants seek a 100% reduction for "administrative work." Defendants refer to Exhibit 5A of Mr. Knapton's declaration which includes 82.10 hours of billing entries totaling $44,910.50 in fees. (Knapton Decl. ¶ 68, Exhibit 5A.) Defendants cite to *Keith v. Volpe*, 644 F. Supp. 1317, 1323 (C.D. Cal. 1986), *aff'd*, 858 F.2d 467 (9th Cir. 1988), which disallowed hours for "clerical, secretarial and similar routine work" such as "pickup copies," "Xerox/distribute memo," "tag exhibits," "file review," "organize files," and "reproduce documents." Exhibit 5A includes a large number of time entries for "Outlook/calendaring." Counsel includes time entries for 1.8, 1.6 and .8 hours of work done by Mr. Washington for "draft trial calendar," "trial related deadlines chart," and "Update case calendar," respectively. The Court finds these tasks to be appropriately billed at the paralegal hourly rate. Exhibit 5A also includes time spent to "Prepare/edit/finalize Plaintiff's complaint/initiating documents (summons/civil case cover sheet/notice of interested parties)/efile/open new case/prepare chambers copies"; and "Work with IT and client to extract data from his phone for production." On reply, Plaintiff explains that while there is staff that perform non-specialized tasks such as answering phones, mailing, and printing, tasks that require compliance with court rules such as such as determining how many copies must be delivered to chambers and by what time,

EXHIBIT 9
Page 115

filling out legal forms such as a summons, preparing proofs of service, and filing court documents – are all considered paralegal or attorney tasks, because they require familiarity with and adherence to court procedures and rules. The Court agrees that these tasks require some familiarity with court rules, and thus the Court does not reduce the fee award based on those time entries. The Court subtracts $1,764 from the requested fee award to account for attorney time spent calendaring.

Defendants request a 30% reduction for block billed entries. Defendants refer the Court to Exhibit 5B of Mr. Knapton's declaration which includes 261.50 hours of billing entries totaling $130,127.50 in fees. (Knapton Decl. ¶ 86, Exhibit 5B.) Defendants contend that the block billed entries are vague, duplicative, and unnecessary and should be reduced for failing to set forth with any degree of particularity, a breakdown of attorney time for the multiple tasks set forth in each block billed entry. However, the examples in Exhibit 5b are not examples of improper block-billing. The Ninth Circuit defines block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted). A time entry which identifies interrelated tasks performed simultaneously is not considered block billing. *See, e.g.*, *LaToya A. v. San Francisco Unified Sch. Dist.*, 2016 WL 344558, at *8 (N.D. Cal. Jan. 28, 2016) Therefore, the Court includes the time entries identified in Exhibit 5B in the fee award.

Defendants request an additional 30% reduction for vague billing entries. Defendants refer the Court to Exhibit 5C of Mr. Knapton's declaration which contains 567.30 hours of billing entries totaling $293,972 in fees. A fee applicant must submit "evidence supporting the hours worked" and "should identify the general subject matter of his time expenditures" but "is not required to record in

great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. Here, the majority of the time entries included in Exhibit 5C relate to communications with the client. On Reply, Plaintiff explains that most of the time, the subject of the call with the client is privileged and inappropriate to disclose, and that the safer practice is to simply note that there was a client communication. While the time entries referencing "call with client" are vague, each entry is less than an hour, which the Court finds to be a reasonable amount of time to discuss matters with the client. Additionally, Plaintiff requests $14,210 for time entries described as "document review" but has not provided any evidence to support this request, such as the volume or categories of documents reviewed. Without additional information, the Court finds these entries vague. Upon review of additional entries which Defendants contend are vague including "Emails/prepare/edit Plaintiff's complaint," "Discovery plan," "Leave message for Daniel Sosa," "Edit video clip for production," and "Draft discovery requests" the Court finds these entries adequate and do not warrant a reduction in the fee award. Moreover, Plaintiff's counsel has already applied a 10% across the board reduction in the attorneys' fees sought. The Court subtracts $14,210 from the requested fee award to account for unexplained time spent on "document review."

Defendants request a 100% reduction of duplicative work. Defendants refer the Court to Exhibit 5D of Mr. Knapton's declaration which contains 13.10 hours of billing entries totaling $5,647.50. (Knapton Decl. ¶ 69, Exhibit 5D.) Defendants contend that in light of counsels' experience and expertise in civil rights work, only one attorney should have been required to attend conferences with opposing counsel, depositions, and client meetings. The Ninth Circuit has held "duplicative work is not inherently inappropriate" (*see Chaudhry v*, 751 F.3d at 1112 (finding district court's reduction of fees by 88% in light of the fact that "multiple attorneys and legal assistants attended and participated in certain conferences, depositions, court hearings, and trial, doing much of the same work"

EXHIBIT 9
Page 117

and "[m]any of the law clerks billed for duplicative note-taking or for training at
trial or depositions" required a "more specific explanation than that provided by
the district court) (citing *Moreno*, 534 F.3d at 1112)), and "the participation of
more than one attorney" in case or at a hearing "does not constitute an
unnecessary duplication of effort" (*see Probe v. State Teachers' Ret. Sys.*, 780
F.2d 776, 785 (9th Cir. 1986)); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1435
n.9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not
necessarily constitute an unnecessary duplication of effort."); *Lauderdale v. City
of Long Beach*, 2010 WL 11570514, at *7 (C.D. Cal. Jan. 11, 2010) ("[H]aving
multiple attorneys attend depositions, meetings and settlement conferences
allowed counsel to contribute creative solutions, reduced the need for inter-office
communications after meetings, and ameliorated disagreements over what actually
went on at meetings."). As Plaintiff explains, it is a routine practice for more than
one attorney to attend conferences with opposing counsel, depositions, and client
meetings. Additionally, the entries in Exhibit 5D relate to conferences amongst
Plaintiff's various counsel for purposes of discussing case strategy. (*See* Ex. 5D
("Litigation strategy call w/ DS"; "Telephone call with DS and DCW re litigation
strategy"; "conf with DS, DW re: experts; "Meeting with SS, DW re experts.").)
The participation of more than one attorney was necessary to discuss the relevant
issues as provided in the time entries. Therefore, the Court the Court includes the
time entries identified in Exhibit 5D in the fee award.

Defendants request a 40% reduction of "excessively billed work."
Defendants refer the Court to Exhibit 5E of Mr. Knapton's declaration which
contains 293.10 hours of billing entries totaling $131,892.50. (Knapton Decl. ¶
72, Exhibit 5E.) Defendants identify tasks that appear to have taken more time
than necessary based on the length of the document filed with the Court. For
example, Defendants identify 11.2 hours spent by Ms. Shanbhag's entries to
"Draft initial disclosures" which were 3.5 pages in length and 13.7 hours spent by

13

EXHIBIT 9
Page 118

1   Mr. Washington's to "Draft ex parte app to compel and for sanctions" which was
2   a 4.5-page Application that was denied by the Court.  (*See* Dkt. No. 44.)  The time
3   spent on the initial disclosures and ex parte application were excessive.  Plaintiff's
4   counsel include time entries of 3 and 6 hours spent by Ms. Ricketts and Mr.
5   Washington, respectively, for "Travel to and from Court."  This time appears
6   excessive based on the location of Plaintiff's counsel's offices and the courthouse.
7   Plaintiff's counsel also include time entries of 11, 12.4, 15.8, 16.8 and 17.4 hours,
8   for "trial preparation" or trial-related tasks, without substantiating the amount
9   requested.  During trial, Court was in session with the jury for approximately five
10  hours, with about two hours spent with counsel after the jury was excused.
11  Without additional information, the Court finds these time entries excessive.  The
12  Court limits trial days to eight hours and subtracts the additional time billed.  As to
13  the other time entries identified in Exhibit 5E, the Court does not find these entries
14  excessive.  Additionally, as noted above, Plaintiff's counsel has already applied a
15  10% reduction in the attorneys' fees sought.  Therefore, the Court subtracts
16  $59,215 from the requested fee award to account for excessive time as indicated
17  above.

### 3.  Multiplier

19       Plaintiff does not request a multiplier.  However, Defendants contend that
20  Plaintiff's fee demand should be reduced based on Defendants' success on the
21  majority of the claims asserted against them.  The jury found in favor of
22  Defendants on Plaintiff's claims against Chief Moore, and on the majority of
23  claims against the City of Los Angeles with respect to *Monell* liability.
24  Defendants attempt to quantify Plaintiff's success based on a 50% success rate and
25  ask that the Court reduce Plaintiff's number of hours by 75% for their limited
26  success.
27       The Supreme Court has held: "[w]here a plaintiff has obtained excellent
28  results, his attorney should recover a fully compensatory fee. Normally this will

14

EXHIBIT 9
Page 119

encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Here, Plaintiff prevailed on his Fourth Amendment claim against Officer Haney and his *Monell* claim against the City of Los Angeles for failure to properly train its officers (Dkt. No. 171.) The jury awarded Plaintiff $85,000 in compensatory damages and found that Plaintiff proved Officer Haney acted with malice, oppression, or reckless disregard for Plaintiff's rights. The other claims asserted were related to the underlying incident and based on a common core of facts. Thus, the time spent on claims for which Plaintiff did not prevail cannot reasonably be separated from time spent on claims on which Plaintiff did prevail. *See City of Riverside v. Rivera*, 477 U.S. 561, 569-73 (1986) (holding the district court did not abuse its discretion in awarding attorney's fees for all time reasonably spent litigating the case although respondents had prevailed only on some of their claims and against only some of the defendants); *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (noting "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis.")

### 4. Costs

Plaintiff seeks reimbursement of non-taxable costs totaling $15,703.50. Section 1988 permits a prevailing party to recover as part of an attorneys' fee award "those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted); *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting same). Plaintiff's counsel declares that it is the routine and common practice of firms handling complex litigation to charge fee-paying clients

EXHIBIT 9
Page 120

separately for copying, expert or consultant fees and other necessary out-of-pocket

expenses. (Stormer Decl. ¶ 38.) In addition to the $19,080.29 in costs requested

in Plaintiff's Bill of Costs, filed on June 13, 2023, Plaintiff requests

reimbursement of $15,703.50 in non-taxable expenses. (Dkt. No. 180.) Plaintiff

includes an exhibit with documents supporting the costs requested. (Stormer

Decl. ¶ 40, Ex. 4.) Plaintiff seeks the following non-taxable costs: $600 paid to

Defendants' police practices expert, Edward Flosi, for time spent in deposition;

$10,043 in photocopying costs; $2500 in costs to prepare demonstrative video

clips for trial; and $2,560.50 in costs to prepare exhibit binders for trial.

Defendants concede that these costs are recoverable with the exception of

$10,043.10 for photocopying, which Defendants' expert declares "constitutes a

part of the firm's overhead." The Court finds reasonable photocopying costs are

generally recoverable, however Plaintiff has not adequately shown that the request

for $10,043 is reasonable. *See Harper v. City of Los Angeles*, 2006 WL 8446990,

at *11 (C.D. Cal. May 16, 2006) (finding plaintiff had not met burden of

demonstrating that photocopying costs were "reasonable and necessary for

effective and competent representation"). It is Plaintiff's burden to provide the

Court with evidence indicating the general purpose or subject matter of the

photocopies. The Court cannot determine what would be a reasonable figure

based upon this lack of evidence. Accordingly, the Court declines to award the

photocopying costs sought. As to the other costs sought and upon review of the

evidence, Plaintiff's requests appear reasonably and necessarily incurred in

advancing the interests of the client. Therefore, the Motion is **GRANTED** as to

the request for nontaxable costs, with the exception of the costs for photocopying.

/ / /

/ / /

/ / /

/ / /

16

EXHIBIT 9
Page 121

# IV.  CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees in the amount of $1,182,333.30 and $5,660.4 for nontaxable costs pursuant to 42 U.S.C. § 1988.

**IT IS SO ORDERED.**

DATED:  APRIL 19, 2024

HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

17

EXHIBIT 9
Page 122

# EXHIBIT 10

EXHIBIT 10
Page 123

 Neutral
As of: May 27, 2024 9:24 PM Z

## *Tracy Anderson Mind & Body, LLC v. Roup*

United States District Court for the Central District of California

September 11, 2023, Decided; September 11, 2023, Filed

2:22-cv-04735 PSG (Ex)

### Reporter
2023 U.S. Dist. LEXIS 189055 *; 2023 WL 6890744

Tracy Anderson Mind and Body, LLC et al. v. Megan Roup et al

**Prior History:** *Tracy Anderson Mind & Body, LLC v. Roup, 2022 U.S. Dist. LEXIS 225714, 2022 WL 17670418 (C.D. Cal., Dec. 12, 2022)*

## Core Terms

attorney's fees, anti-SLAPP, motion to dismiss, costs, spent, rates, adjusted, fee award, lodestar, hourly rate, drafting, prevailing, preparing, percent, breach of contract, motion to strike, recoverable, expended, billing, tasks

**Counsel:** **[*1]** Attorneys for Plaintiff(s): Not Present.

Attorneys for Defendant(s): Not Present.

**Judges:** Philip S. Gutierrez, United States District Judge.

**Opinion by:** Philip S. Gutierrez

## Opinion

**CIVIL MINUTES - GENERAL**

**Proceedings (In Chambers): Order GRANTING Defendants' motion for attorneys' fees and costs as adjusted.**

Before the Court is Defendants' motion for attorneys' fees and costs. *See generally* Dkt. # 37-1 ("*Mot.*"). Plaintiffs opposed, *see* Dkt. # 42 ("*Opp.*"), and Defendants replied, *see* Dkt. # 43 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See Fed. R. Civ. P. 78*; L.R. 7 15. Having considered the moving and opposing papers, the Court **GRANTS** Defendants' motion for attorneys' fees and costs as adjusted and awards Defendants $163,953.21.

### I. Background

Plaintiff Tracy Anderson ("Plaintiff Anderson") developed the Tracy Anderson Method ("TA Method") workout routines combining choreography, fitness, and cardiovascular movement after decades of research, development, testing, and investment. *See First Amended Complaint* ("*FAC*") ¶ 1, Dkt. # 12. Plaintiff Anderson is the founder and CEO of Plaintiff Tracy Anderson Mind and Body ("Plaintiff TAMB"), which consists of fitness studios that offer choreography-based fitness **[*2]** and mat movement classes. *Id.* ¶ 2. Plaintiff TAMB is the owner of registered copyrights to various media, including DVDs created by and featuring Plaintiff Anderson that express, relate to, or are based on the TA Method. *Id.*

In 2011, Plaintiff Tracy Anderson New York ("Plaintiff TANY"), which is also owned by Plaintiff Anderson and is a subsidiary of Plaintiff TAMB, employed Defendant Megan Roup ("Defendant Roup") as a trainer. *Id.* ¶ 3.

Later, in or around February 2017, Defendant Roup terminated her employment with Plaintiff TANY and founded Defendant The Sculpt Society ("Defendant TSS") the next month. *Id.* ¶ 5. Defendant TSS also offers "choreography-based fitness and mat movement classes that directly compete with Plaintiff['s classes]." *Id.* In creating and operating Defendant TSS, Defendant Roup neither references her association with Plaintiffs, nor credits Plaintiffs for training and teaching Defendant Roup. *Id.* ¶ 7.

On July 11, 2022, Plaintiffs filed this action seeking damages and injunctive relief for copyright infringement, breach of contract, violation of the Lanham Act, and unfair competition. *Id.* ¶ 10; s*ee generally* Dkt. # 1. On September 13, 2022, Plaintiffs amended their complaint, **[*3]** seeking damages and injunctive relief for Defendants' alleged breach of contract and unlawful business practices. *See generally FAC.* Plaintiffs brought four causes of action against Defendants:

Count One: Copyright infringement. *See id.* ¶¶ 50 56.

Count Two: Violation of the Lanham Act. *Id.* ¶¶ 57 63.

Count Three: Breach of contract. *Id.* ¶¶ 64 69.

Court Four: Violation of California Unfair Competition Law ("UCL"). *Id.* ¶¶ 70 73.

Defendants moved to dismiss all of Plaintiffs' claims and to strike Plaintiffs' UCL claim. *See generally* Dkt. # 15-1 ("*Initial Mot.*"). The Court dismissed Plaintiffs' Lanham Act and UCL claims with leave to amend, declined to dismiss the copyright and breach of contract claims, and deferred its ruling on the motion to strike to allow Plaintiffs to amend their complaint. *See generally* Dkt. # 20 ("*Order*").

Defendants answered Plaintiffs' FAC and later amended their answer. *See generally* Dkt. # 25 ("*Am. Ans.*"); Dkt # 21 ("*Ans.*"). Around the same time, Defendants filed their motion to dismiss Plaintiffs' Lanham Act and UCL claims with prejudice and requested a ruling on their special motion to strike. *See* Dkt. # 22.

The Court granted Defendants' motion, including their special **[*4]** motion to strike Plaintiffs' UCL claim on anti-SLAPP grounds. *See* Dkt. # 31. The Court established that Defendant Roup's statements are protected conduct, and that Plaintiffs did not state a plausible UCL claim in violation of California's anti-SLAPP statute. *See generally id.* Now, Defendants move for attorneys' fees and costs. *See Mot.*

II. Legal Standard

Under California's anti-SLAPP statute, "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." *Cal. Civ. Proc. Code § 425.16(c)* (emphasis added). "[I]t is well-settled that an award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory." *Kearney v. Foley and Lardner, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008)*. The fee provision of the anti-SLAPP statute is applied in federal court. *Metabolife Intern., Inc. v. Wornick, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002)*. Thus, California law governs attorneys' fees based on California's anti-SLAPP statute. *Graham-Sult v. Clainos, 756 F.3d 724, 751 (9th Cir. 2014)*.

Absent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours reasonably spent, including those relating solely to obtaining the fee award. *See Ketchum v. Moses, 24 Cal.4th 1122, 1133, 104 Cal. Rptr. 2d 377, 17 P.3d 735 (2001)*. "*Section 425.16(c)* does not expressly limit a fee award to 'reasonable' fees, but California courts have construed it to contain a reasonableness requirement." *Open*

EXHIBIT 10
Page 125

*Source Sec., Inc. v. Perens, No. CV 17-04002 LB, 2018 U.S. Dist. LEXIS 98169, 2018 WL 2762637, at \*2 (N.D. Cal. June 9, 2018)*; *Lunada Biomed. v. Nunez, 230 Cal. App. 4th 459, 488, 178 Cal. Rptr. 3d 784 (2014)* ("[E]ach fee application under *section 425.16, subdivision (c)* must be assessed **[\*5]** on its own merits . . . taking into account what is reasonable under the circumstances.") (cleaned up).

The customary method of determining reasonable attorneys' fees, including fee awards on anti-SLAPP motions to strike, is known as the "lodestar" method. *See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996)*; *Ketchum, 24 Cal.4th at 1131* 34. The "lodestar" method involves "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *See Morales, 96 F.3d at 363*. The resulting "lodestar" figure is presumptively reasonable. *See id. at 363 n.8*.

### III. Discussion

Defendants are entitled to recover attorneys' fees incurred in bringing their special motion to strike and their motion for attorneys' fees and costs. *See Ketchum, 24 Cal.4th at 1133*; *Metabolife Int'l, Inc., 213 F. Supp. 2d at 1223*. Defendants' proposed lodestar figure is $239,056.49. *Mot.* 6:27 28; *Decl. of Nathanial Bach*, Dkt # 37-2 ("*Bach Decl.*"), ¶¶ 27 29. The Court breaks down Defendants' proposed fees and costs in greater detail in the following table:[1]

---

[1] The Court prepared this table based on Mr. Nathaniel Bach's declaration summarizing the hours billed and fees/costs incurred in moving to strike Plaintiffs' UCL claim. *See generally Bach Decl.*. There are several errors in the proffered billing records. For example, Defendants provide that the fees charged for Ms. Moses's 2022 hours is $45,657 but applying Ms. Moses's 2022 billing rate of $855/hour results in a fee of $45,742.50. Similarly, Mr. Chatham's 2023 billing entries provide for a fee of $5,853, but if his $1,010/hour billing rate is applied the fee should be $5,757. The Court has therefore

🔲 *Go to table1*

Based on these figures, the Court addresses in turn (a) whether these rates are reasonable, (b) whether these hours are reasonable, and (c) what, if any, final adjustments need to be made.

### A. Reasonable Rate

The reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood, 729 F.3d 1196, 1200 (9th Cir. 2013)* ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community."); *Viveros v. Donahoe, CV 10-08593 MMM (Ex), 2013 U.S. Dist. LEXIS 46867, 2013 WL 1224848, at \*2 (C.D. Cal. Mar. 27, 2013)* ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Hum. Servs., 73 F.3d 895, 906 (9th Cir. 1995)*.

Here, Defendants seek the following hourly rates: $950 for Mr. Bach in 2022, which increased to $1,065 in 2023; $900 for Mr. Chatham in 2022, which increased to $1,010 in 2023; $855 for Ms. Moses in 2022, which increased to $1,000 in 2023; $760 for Mr. Castro; $620 for Ms. Gonzalez in 2022, which increased to $655 in 2023; and $395 for Practice Support Specialist **[\*7]** Ms. Gasik in 2022, which increased to $455 in 2023. *Bach Decl.* ¶¶ 13 14. These rates are supported by Mr. Bach's declaration, which details each individual's experience. *See Bach Decl.* ¶ 10. Defendants also cite various cases from this District and the billing rates of "similar firms for litigation in Los Angeles" to support their requested rates. *See Mot.* 13:20 14:25.

---

adjusted the total hours and requested fees to account for these errors.

EXHIBIT 10
Page 126

2023 U.S. Dist. LEXIS 189055, *7

However, the Court prefers to rely on the Real Rate Report as "a much better reflection of true market rates than self-reported rates in all practice areas." *See Rolex Watch USA Inc. v. Zeotec Diamonds Inc., No. CV 02-1089 PSG (VBKx), 2021 U.S. Dist. LEXIS 200238, 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021)* (quoting *Hicks v. Toys 'R' Us-Del., Inc., No. CV 13-1302 DSF (JCG), 2014 U.S. Dist. LEXIS 135596, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014)*); *Gilliam v. Levine, No. CV 18-2580 PSG (MRWx), 2022 U.S. Dist. LEXIS 25209, 2022 WL 401462, at *5 (C.D. Cal. Jan. 25, 2022)*.

The Real Rate Report does not specifically classify anti-SLAPP or unfair competition claim litigation as belonging to a certain practice area. *See 2022 Real Rate Report, The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* at 232 34. But the Report does classify breach of contract litigation as "commercial" litigation. *Id.* Based on the listed practice area definitions, the Court determines that this litigation should be classified as "commercial" litigation since this dispute centers on business competition and contractual relations. *See id.* In Los Angeles, the median hourly rate for commercial litigation attorneys is $849 for **[*8]** partners and $686 for associates, while the fee rates in the upper quartile of attorneys are $1,071 for partners and $876 for associates. *Id.* at 91. Accordingly, Defendants' requested maximum hourly rates of $1,065 for partners and $760 for associates fall between the median and upper quartile rates in the community for comparable services. Having considered Defendants' attorneys' experience and the prevailing rates in the community for comparable work, the Court approves as reasonable Defendants' attorneys' rates.

The Court declines to accept the Defendants' rate for Ms. Gasik's work. Time spent on clerical or secretarial tasks is excluded in lodestar analyses, because it is considered part of the firm's overhead. *Browne v. Am. Honda Motor Co. Inc., No. CV 09-06750 MMM (DTBx), 2010 U.S. Dist. LEXIS 144823, 2010 WL 9499073, at *8 (C.D. Cal. Oct. 5, 2010)*. While Ms. Gasik's title is a "Practice Support Specialist," Ms. Gasik's work in this litigation consisted solely of e-filing moving papers. *See generally Bach Decl. ¶ 26.* This is not substantive case-related work that is recoverable, but is unrecoverable clerical work. Accordingly, the Court declines to award any fees based on Ms. Gasik's work. *See Aarons v. BMW of N. Am., LLC, No. CV 11-7667 PSG (CWx), 2014 U.S. Dist. LEXIS 118442, 2014 WL 4090564, at *16 (C.D. Cal. Apr. 29, 2014)* (declining to award fees for work done by administrative assistant absent a showing that such work was substantive and case-related). **[*9]** The Court adjusts Ms. Gasik's 2022 and 2023 rates to $0.

B. Reasonable Hours

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency, 802 F.3d 1100, 1107 (9th Cir. 2015)* (quoting *Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992)*). "The district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley, 461 U.S. at 434* (cleaned up). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.* A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut. *See $28,000.00 in U.S. Currency, 802 F.3d at 1108*.

Here, Defendants seek attorneys' fees for 275.8 hours of work. *See Bach Decl. ¶ 27.* The Defendants group their hours into four categories: (1) "Researching and drafting the

EXHIBIT 10
Page 127

Anti-SLAPP and Dismissal Motion and supporting documents"; (2) "[r]eviewing and responding to Plaintiff's Opposition brief"; (3) "[r]eviewing and analyzing Court's Order on Motion to Dismiss & Anti-SLAPP Motion, and researching and drafting the Request for Ruling"; and (4) "[r]esearching and drafting the Attorneys' Fees Motion and supporting documents." *Id.* ¶¶ 21, 26. The Court makes several adjustments to **[*10]** the requested hours.

### i. Hours for Briefing the Motion to Dismiss and Strike and Request for Ruling

Defendants moved to dismiss at the same time they moved to strike, *see generally* Dkt. # 15, and later moved to dismiss with prejudice when requesting a ruling on their motion to strike, *see generally* Dkt. # 24. Consequently, Defendants have annotated which time entries "refer to work related to both the dismiss and anti-SLAPP motion or that include tasks that Defendants are not seeking fees on." *Bach Decl.* 11 n.1. Defendants contend that such entries have been reduced by 50 percent to reflect the work done solely on the anti-SLAPP motion. *Id.* ¶ 25. To support this percentage of reduction, Mr. Bach states that the motion to dismiss and strike was "comprised of five parts" an argument for dismissal of each of the four claims plus the anti-SLAPP portion. *Bach Decl.* ¶ 25. Defendants seek fees for parts of the motion that concerned the Lanham Act and the UCL claims, in addition to the anti-SLAPP argument, because "the factual bases for those claims are inextricably intertwined and the analyses for those claims formed the basis for Defendants' arguments" in portions of the anti-SLAPP analysis. *Id.* ¶ 22. **[*11]** Mr. Bach argues, therefore, that their fees request is "conservative" because they are "rounding down" to 50 percent of the time billed for the motion, "rather than 60% (or 3/5) of that time." *Id.* ¶ 25.

While it is possible that some of the work for the motion to dismiss may be compensable, the Court must have "substantial evidence" to support the fee award. *Kearney, 553 F. Supp. 2d at 1185*. On a motion to dismiss and strike, only "[w]ork that is inextricably intertwined with an anti-SLAPP motion is compensable." *Resolute Forest Prods. Inc. v. Greenpeace Int'l, No. CV 17-02824 JST, 2019 U.S. Dist. LEXIS 230211, 2019 WL 8377690, at *4 (N.D. Cal. Sept. 24, 2019)*. Here, the time entries often fail to distinguish whether the time was actually spent on anti-SLAPP-related issues, and instead generally state that time was spent on the motion to dismiss. *See Kearney, 553 F. Supp. 2d at 1186* (holding that "fees will not be allowed" for entries like "Prepare motion to dismiss" because the court could not discern if any time was spent on anti-SLAPP-related issues). Other times, descriptions of work on anti-SLAPP issues are intermixed with descriptions of work unrelated to the anti-SLAPP argument, and it is unclear how the time should be divided.

Further, in the Defendants' motion to dismiss and strike, Defendants' arguments to dismiss Plaintiffs' claims span seven pages while their anti-SLAPP portion spans **[*12]** two pages. *See* Dkt. # 15-2. Similarly, Defendants' reply expends fifteen pages arguing for dismissal, and less than two pages on their anti-SLAPP argument. *See* Dkt. # 18. Later, Defendants requested the Court dismiss Plaintiffs' Lanham Act and UCL claims with prejudice and rule on their motion to strike. *See* Dkt. # 22. Once again, the majority of the arguments in the three-page filing addressed dismissal with prejudice, while only a paragraph discussed the anti-SLAPP motion. *See id.* Accordingly, the Court does not find that there is "substantial evidence" that a blanket 50 percent reduction appropriately reduces the fees to represent the hours spent on the anti-SLAPP litigation.

EXHIBIT 10
Page 128

Where a fee request encompasses claims that are recoverable and nonrecoverable, it is often difficult to apportion the hours on a claim-by-claim basis, particularly where the claims "involve a 'common core of facts' or are based on 'related legal theories.'" *Cairns v. Franklin Mint Co., 292 F.3d 1139, 1157 (9th Cir. 2002)*. However, the Ninth Circuit has "cautioned . . . that the impossibility of making *an exact* apportionment . . . does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *Id.* (cleaned **[*13]** up); *see also Dow Chem. Canada Inc. v. HRD Corp., No. CA 05-023 RGA, 2013 U.S. Dist. LEXIS 105408, 2013 WL 3942052, at *1 (D. Del. July 29, 2013)* ("Where it is not reasonably possible to parse between which fees are recoverable fees from which are not, it is appropriate to award a reasoned fractioned of the total fees incurred.").

While the Court acknowledges that the amount of writing produced is not necessarily indicative of the time spent researching and drafting, the failure to specifically itemize tasks attributed to the motion to strike, particularly when counsel is aware that fees are recoverable for such motions, constitutes block billing that is properly subject to reduction. *See, e.g.*, *Havens v. Leong P'ship, 586 B.R. 760, 768 (N.D. Cal. 2018)*, *aff'd, 788 F. App'x 526 (9th Cir. 2019)* (noting that "[r]eduction of fees between 10 30% for block billing have been approved" and approving a 20 percent reduction); *Okada v. Whitehead, No. CV 15-01449 JLS (KES), 2017 U.S. Dist. LEXIS 228621, 2017 WL 2626990, at *2 (C.D. Cal. June 12, 2017)* (reducing fees by 20 percent because the block billed entries "make[] it difficult for the Court . . . to separate billable activities from those that are not billable"); *SAS v. Sawabeh Info. Servs. Co., No. CV 11-04147 MMM (MANx), 2015 U.S. Dist. LEXIS 186838, 2015 WL 12763541, at *33 (C.D. Cal. June 22, 2015)* ("The court will . . . reduce the lodestar

by 20% to account for . . . block billing."). Therefore, the Court reduces by 20 percent entries in the three identified categories relating to the motion to dismiss and strike and request for ruling[2] where the time entries do not clearly identify that all the work performed **[*14]** benefitted the anti-SLAPP motion. Defendants also provide reduced entries where the listed tasks refer to only the motion to dismiss or tasks pertaining to the motion to dismiss. *See Bach Decl.* ¶ 26. The Court declines to award fees for some of these entries[3] and has adjusted the fees as needed.

*i. Hours on the Motion Requesting Attorneys' Fees*

A "fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Ketchum, 24 Cal.4th at 1137*. In *NuVasive, Inc. v. Alphatec Holdings, Inc., No. CV 18-347 CAB (MDD), 2020 U.S. Dist. LEXIS 222117, 2020 WL 6876300, at *3 (S.D. Cal. Mar. 20, 2020)*, the court reduced the fees incurred on a fee motion because there was

---

[2] The three categories Defendants describe are: (1) "Researching and drafting the Anti-SLAPP and Dismissal Motion and supporting documents"; (2) "[r]eviewing and responding to Plaintiff's Opposition brief"; (3) "[r]eviewing and analyzing Court's Order on Motion to Dismiss & Anti-SLAPP Motion, and researching and drafting the Request for Ruling." *See Bach Decl.* ¶ 26.

[3] There are several entries where it is apparent from the surrounding entries that the entries referring to the motion to dismiss include work performed for the motion to strike. *See generally Bach Decl.* ¶ 26. For example, some entries throughout mid to late August 2022 refer solely to the motion to dismiss, yet surrounding entries by other timekeepers refer to a motion to dismiss and strike, indicating that the motion to strike was drafted simultaneously with the motion to dismiss. *Id.* The Court therefore exercises its discretion in reducing some of these entries, rather than declining to award fees for them. *See Metabolife Intern., Inc., 213 F. Supp. 2d at 1222* ("The Court has broad discretion in determining the reasonable amount of attorney fees and costs to award to a prevailing defendant.").

EXHIBIT 10
Page 129

no urgency to the fee motion, the motion was immaterial to the defendant's ability to defend itself in the case, and the court had already determined the defendant was entitled to fees so "the motion itself required little more than an accounting for the fees and costs."

Out of the $238,838.50[4] in fees that Defendants are requesting, here, $90,422 are from drafting the motion for attorneys' fees. *See generally Bach Decl.* ¶ 26. After making the above changes to the fees for the motion to dismiss and strike and the request for ruling, the adjusted lodestar is $209,027.69.[5]

If left unadjusted, the fees resulting from the instant fees motion would be nearly half of the award. Further, Defendants are claiming that they have spent 109.1 hours on this motion, while they spent 94.6 hours on drafting the motion to dismiss and strike, 38.8 hours responding the Plaintiffs' opposition, and 33.3 hours preparing and drafting their request for ruling. *See generally Bach Decl.* ¶ 26.

The Court finds it unreasonable that nearly half the fees and hours to be collected on should be for preparing this motion, especially since there was no urgency,[6] no concern for

_____

[4] This number has been corrected from $238,849.00 to account for erroneous calculations described above in note 1. *See generally [\*15] Bach Decl.* ¶ 26.

[5] Defendants' requested attorneys' fees relating to the motion to dismiss and strike and the request for ruling are adjusted as follows: (1) Mr. Bach's 2022 hours are reduced by 9.34, and his 2023 hours are reduced by .26; (2) Mr. Chatham's 2022 hours are reduced by 1.82, and his 2023 hours are reduced by .34; (3) Ms. Moses's 2022 hours are reduced by 16.88, and her 2023 hours are reduced by .72; (4) Mr. Castro's 2022 hours are reduced by 3.18 hours; (5) Ms Gonzalez's 2022 hours are reduced by .66, and her 2023 hours are reduced by .02; and (6) Ms. Gasik's 2022 and 2023 hours are entirely eliminated. Accordingly, the adjusted lodestar is $209,027.69, before addressing fees related to the motion for attorneys' fees.

[6] The Court willingly granted two joint stipulations to extend time to file a motion for attorneys' fees. *See* Dkts. # 32 35.

Defendants' ability to defend themselves, and Defendants are entitled to a fee award pursuant to California's anti-SLAPP laws. *See Cal. Civ. Proc. Code § 425.16(c)(1)*; *see also Dahn World Co. v. Chung, No. CV 05-3477 PCT (JAT), 2006 U.S. Dist. LEXIS 83047, 2006 WL 3313951, at \*6 (D. Ariz. Nov. 13, 2006)* (finding "unreasonable the fact that more time was spent on the motion [for attorneys' fees] than on all other matters" "especially considering that the issue does not involve overly complex principles of law"). This motion should have amounted to a mere accounting exercise that does not make up such a significant portion of the final fees award.

The most extreme expenditures were by Mr. Bach who spent 30.9 hours preparing this motion (compared to the 34.4 hours **[\*16]** he spent preparing the motion to dismiss and strike) and is the most expensive lawyer on the case and Ms. Gonzalez, who spent 59.1 hours on this motion. While Ms. Gonzalez is an associate and who properly spent the most time on the motion, the Court still finds the hours to be exorbitant. *See Bryant v. Cigna Healthcare of Cal., Inc., No. CV 10-9560 RGK (RZx), 2014 U.S. Dist. LEXIS 207216, 2014 WL 13020700, at \*4 (C.D. Cal. Jan. 30, 2014)*, (finding that "it was unreasonable to devote 76.2 hours to a Motion for Attorney's Fees" and "that it would only have been reasonable for experienced attorneys to devote 25 hours total to this Motion for Attorney's Fees").

The Court finds it reasonable to reduce the amount of time recoverable for preparing the briefing for the motion for attorneys' fees by 50 percent. *See Open Source, 2018 U.S. Dist. LEXIS 98169, 2018 WL 2762637 at \*7* (reducing the hours requested by O'Melveny & Myers in an anti-SLAPP case related to the motion for attorneys' fees from 242 to 109, or by 55 percent). Thus, the total hours of work that Defendants will be able to recover in

EXHIBIT 10
Page 130

regard to the instant motion is 54.25, with each attorney's hours divided in half.[7]

## C. Final Adjustments

Defendants' requested attorneys' fees are adjusted as follows: (1) Mr. Bach's 2022 hours are reduced by 9.34, and his 2023 hours are reduced by 15.71; (2) Mr. Chatham's 2022 hours are reduced by 1.82, and **[*17]** his 2023 hours are reduced by 1.84; (3) Ms. Moses's 2022 hours are reduced by 16.88, and her 2023 hours are reduced by 8.47; (4) Mr. Castro's 2022 hours are reduced by 3.18 hours; (5) Ms Gonzalez's 2022 hours are reduced by .66, and her 2023 hours are reduced by 29.57; and (6) Ms. Gasik's 2022 and 2023 hours are deducted entirely. Accordingly, the adjusted lodestar is $163,953.21, as detailed in the table below:

🗒️*Go to table2*

## D. Plaintiffs' Request to Stay Fees Award

Because the issues of breach of contract and copyright infringement remain live, Plaintiffs have requested that the Court stay a fee award as the award would not be immediately appealable. *Opp*. 15:5 25. "The Court has the discretion to stay an award of attorneys' fees." *Hallock v. Healey, No. CV 20-02726 CJC (MAAx), 2021 U.S. Dist. LEXIS 211673, 2021 WL 5000680, at *1 (C.D. Cal. Apr. 1, 2021)*. When determining whether to stay an award of attorneys' fees and costs pending appeal, courts consider:

(1) **[*18]** whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies.

*M.A. Mobile, Ltd. v. Indian Inst. of Tech. Kharagpur, No. CV 08-02658 WHO, 2019 U.S. Dist. LEXIS 209226, 2019 WL 6525752, at *2 (N.D. Cal. Dec. 4, 2019)* (quoting *Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)*); *see League for Coastal Prot. v. Kempthorne, No. C 05-0991-CW, 2007 U.S. Dist. LEXIS 51372, 2007 WL 1982778, at *2 (N.D. Cal. July 2, 2007)* (considering the above factors in determining whether "a discretionary stay may be warranted"); *see also Resolute Forest Prod., 2020 U.S. Dist. LEXIS 252061, 2020 WL 8877819 at *3* (using the above factors to deny a "motion to stay implementation of anti-SLAPP attorney's fees").

Here, Plaintiffs summarily state that it would be neither just nor efficient to have Plaintiffs pay Defendants an award, yet Plaintiffs provide no supporting reasons. *See Opp*. 5:19 25; *see also Nken v. Holder, 556 U.S. 418, 433 34, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)* ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."). Plaintiffs have made no attempt to argue that any of the above factors have been met. Plaintiffs do not claim that they will suffer irreparable harm or that they would likely succeed upon an appeal. *See Opp*. 15:5 25; *see also Resolute Forest Prod., 2020 U.S. Dist. LEXIS 252061, 2020 WL 8877819 at *3* (denying request to stay in part because the plaintiff "has neither initiated an appeal nor informed the Court of the arguments **[*19]** that such an appeal would entail"). Without providing any support other than the bare assertion that the legal standard has been met, the Court cannot grant Plaintiffs' stay request.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS**

---

[7] This number excludes the hours charged for Ms. Gasik's work, since her works consisted entirely of e-filing the instant motion.

EXHIBIT 10
Page 131

2023 U.S. Dist. LEXIS 189055, *19

Defendants' motion for attorneys' fees and costs as adjusted above and awards Defendants **$163, 953.21** in attorneys' fees and costs. The Court declines to stay its fee award and orders Plaintiffs to pay Defendants' attorneys' fees and costs within **30 days** of the entry of this order.

**IT       IS       SO       ORDERED**.

EXHIBIT 10
Page 132

2023 U.S. Dist. LEXIS 189055, *19

**Table1 (**_Return to related document text_**)**

| Name | Title | Experience | 2022 | 2022 | 2023 | 2023 | Total Fee |
|---|---|---|---|---|---|---|---|
| | | | Hours | Rate | Hours | Rate | |
| Mr. Nathaniel Bach | Partner | 15 years | 50.1 | $950 | 47.1 | $1,065 | $97,756.50 |
| Mr. Christopher Chatham | Partner | 10 years | 9.5 | $900 | 5.7 | $1,010 | $14,307.00 |
| Ms. Sarah Moses | Counsel | 15 years | 53.5 | $855 | 22.9 | $1,000 | $68,642.50 |
| Mr. Alejandro Castro | Associate | 5-6 years | 17.2 | $760 | -- | -- | $13,072.00 [*6] |
| Ms. Andrea Gonzalez | Associate | 2-3 years | 5.1 | $620 | 62.6 | $655 | $44,165.00 |
| Ms. Barbara Gasik | Practice Support Supervisor | 20+ years | 1.0 | $395 | 1.1 | $455 | $895.50 |
| Costs | -- | -- | -- | -- | -- | -- | $207.49 |
| **Totals** | -- | -- | **136.4** | -- | **139.4** | -- | **$239,045.99** |

**Table1 (**_Return to related document text_**)**

---

**Table2 (**_Return to related document text_**)**

| Name | 2022 Hours | 2022 Rate | 2023 Hours | 2023 Rate | Total Fee |
|---|---|---|---|---|---|
| Mr. Nathaniel Bach | 40.76 | $950 | 31.39 | $1,065 | $72,152.35 |
| Mr. Christopher Chatham | 7.68 | $900 | 3.86 | $1,010 | $10,810.60 |
| Ms. Sarah Moses | 36.62 | $855 | 14.43 | $1,000 | $45,740.10 |
| Mr. Alejandro Castro | 14.02 | $760 | -- | -- | $10,655.20 |
| Ms. Andrea Gonzalez | 4.44 | $620 | 33.03 | $655 | $24,387.47 |
| Ms. Barbara Gasik | 0 | $0 | 0 | $0 | $0.00 |
| Costs | -- | -- | -- | -- | $207.49 |
| **Totals** | **104.52** | -- | **138.06** | -- | **$163,953.21** |

EXHIBIT 10
Page 133

2023 U.S. Dist. LEXIS 189055, *19

**Table2 (*Return to related document text*)**

End of Document

EXHIBIT 10
Page 134

# EXHIBIT 11

EXHIBIT 11
Page 135

Case 3:18-cv-05741-DMS-RFM   Document 455-7   Filed 12/13/24   PageID.21900
Page 153 of 187

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 19-815 JGB (SHKx)** | Date | January 2, 2020 |
|---|---|---|---|
| Title | ***Ubaldo Arroyo, et al. v. United States Department of Homeland Security, et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 50); and (2) VACATING the January 6, 2020 Hearing (IN CHAMBERS)**

Before the Court is a Motion for Attorneys' Fees filed by Plaintiffs Ubaldo Arroyo, Jorge Poroj Sac, Atemnkeng Becky Njualem, Sergio Jonathan Moreno, Elieser David Blea, Santiago Guevara-Melgar, Bashir Abdi Wabare, Tanyi Ferick Awungdeu, Nguanyi Atabong Queenida, Asmerom Zemede Enabi, Public Law Center, and Public Counsel (collectively, "Plaintiffs").[1] ("Motion," Dkt. No. 50.)  The Court finds the Motion appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.  The Court vacates the hearing set for January 6, 2020.

## I.   BACKGROUND

On March 27, 2019, the Orange County Sheriff's Department ("OCSD") notified Defendant United States Immigration and Customs Enforcement ("ICE") that it would terminate its contract to house immigrant detainees.  (Motion at 2.)  Both ICE and OCSD subsequently announced that the affected detainees, including those represented by local counsel, would be moved out of the ICE Los Angeles Field Office's Area of Responsibility ("AOR") to detention facilities in San Francisco, Florida, and other states.  (Id. at 2–3.)

---

[1] Plaintiffs Arroyo, Sac, Njualem, Moreno, Blea, Guevara-Melgar, Wabare, Awungdeu, Queenida, and Enabi will be referred to collectively as "Immigrant Plaintiffs."  Public Law Center and Public Counsel will be referred to as "Organization Plaintiffs."

EXHIBIT 11
Page 136

Case 8:19-cv-00575-JGB-SHK Document 55-7 Filed 01/03/20 Page 2 of 9 Page ID #:867
Case 3:18-cv-00571-DMS-RFM Document 455-7 Filed 12/13/24 Page 154 of 187
Page ID #:21901

On May 2, 2019, Plaintiffs filed a complaint against the following Defendants: United States Department of Homeland Security ("DHS"), Kevin K. McAleenan, ICE, Ronald D. Vitello, Thomas Giles, Jennifer Herrera, Luke South, and Lisa Von Nordheim (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs' Complaint is a verified petition for writ of habeas corpus and a complaint for injunctive and declaratory relief. (Id.) The Complaint alleges that Defendants' conduct violates the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, the First Amendment (on behalf of Immigrant Plaintiffs), the First Amendment (on behalf of Organization Plaintiffs), and the Administrative Procedure Act ("APA").

On May 13, 2019, Plaintiffs moved to certify a class and for a preliminary injunction. (Dkt. Nos. 14, 17.) On June 20, 2019, the Court granted-in-part and denied-in-part those motions and provisionally certified a class of "[a]ll immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have attorneys within the ICE Los Angeles Field Office's Area of Responsibility." ("Order," Dkt. No. 46 at 33.) The Court further enjoined Defendants from "transferring immigration detainees currently held at the Theo Lacy and James A. Musick Facilities to facilities outside the ICE Los Angeles Field Office's Area of Responsibility if those detainees have attorneys within the ICE Los Angeles Field Office's Area of Responsibility." (Id.) On July 18, 2019, Federal Defendants filed a declaration stating that there were no immigration detainees housed in either facility maintained by the OCSD. (Dkt. No. 41.) Plaintiffs voluntarily dismissed their complaint on August 5, 2019. (Dkt. No. 44.)

On October 21, 2019, Plaintiffs filed this Motion. (Motion.) In support of the Motion, Plaintiffs filed the Declaration of Ahilan Arulanantham, the Declaration of Carol Sobel, and the Declaration of Jayashri Srikantiah. ("Arulanantham Declaration," Dkt. No. 50-2, "Sobel Declaration," Dkt. No. 50-4, "Srikantiah Declaration," Dkt. No. 50-6.) Defendants Thomas Giles, Jennifer Herrera, Kevin K. McAleenan, United States Department of Homeland Security, United States Immigration and Customs Enforcement, and Ronald D. Vitiello (collectively, "Federal Defendants") opposed the Motion on November 25, 2019. ("Opposition," Dkt. No. 51.) Plaintiffs replied on December 16, 2019. ("Reply," Dkt. No. 52.) In support of the Reply, Plaintiffs filed a Supplemental Declaration of Ahilan Arulanantham. ("Arulanantham Supplemental Declaration," Dkt. No. 52-1.)

## II.   LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The burden of proving the substantial justification exception to the mandatory award of fees under the EAJA lies with the government. Love v. Reilly, 924 F.2d 1492, 1495 (9th Cir. 1991). The Supreme Court has defined "substantial justification" as:

EXHIBIT 11
Page 137

Case 3:18-cv-05741-JCS-RFM   Document 455-7   Filed 01/02/24   Page 3 of   Page ID #:868
Case 8:19-cv-00571-JCS-RFM   Document 59   Filed 01/02/24   Page 3 of   Page ID #:21902
Page ID #:21902

justified in substance or in the main – that is, justified to a degree that could satisfy
a reasonable person. [This standard] is no different from the "reasonable basis in
both law and fact" formulation adopted by the Ninth Circuit and the vast majority
of other Courts of Appeals that have addressed this issue.

Pierce v. Underwood, 487 U.S. 552, 565 (1988). A position does not have to be correct to be
substantially justified; rather, the standard is satisfied if there is a "genuine dispute." Id. at 565
and 566 n.2; see also Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). In determining the
reasonableness of the government's position under the 'totality of the circumstances' test, the
district court reviews both the underlying governmental action being defended in the litigation
and the positions taken by the government in the litigation itself. 28 U.S.C. § 2412(d)(1)(B);
Gutierrez v. Barnhart, 274 F.3d 1255, 1259 (9th Cir. 2001).

"The amount of attorneys' fees awarded under EAJA must be reasonable." Nadarajah v.
Holder, 569 F.3d 906, 910 (9th Cir. 2009). Attorney's fees for hours that are not "reasonably
expended" or that are "excessive, redundant, or otherwise unnecessary" are not compensable.
See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also I.N.S. v. Jean, 496 U.S. 154, 161
(1990) (holding Hensley applies to EAJA cases). "The most useful starting point for
determining the amount of a reasonable fee is the number of hours reasonably expended on the
litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433–34. However, in
determining what constitutes a reasonable fee award under the EAJA, "courts should generally
defer to the 'winning lawyer's professional judgment as to how much time he was required to
spend on the case.'" See Costa v. Commissioner of Social Security Administration, 690 F.3d
1132, 1136 (9th Cir. 2012) (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir.
2008)).

## III. DISCUSSION

Plaintiffs argue that they are entitled to $144,876.04 in attorneys' fees and costs because
(1) they are the prevailing party[2], (2) Defendants' position was not substantially justified, and (3)
the hours they expended and the enhanced rates they seek are reasonable considering the
complexity of the issues involved. (See Motion; Reply.) Federal Defendants disagree on all
three points and argue that an award of attorneys' fees is inappropriate. (See Opposition.)

## A. Prevailing Party

A party is a "prevails" for the purposes of EAJA recovery when it achieves a "material
alteration of the legal relationship between the parties" that is "judicially sanctioned."

---

[2] Plaintiffs also argue that because Organization Plaintiffs are nonprofit organizations as
described by section 501(c)(3) of the Internal Revenue Code and Individual Plaintiffs are
individuals, all are eligible to recover attorneys' fees under EAJA. (Motion at 5.) Defendants do
not dispute this point.

EXHIBIT 11
Page 138

Case 8:19-cv-00574-JGB-SHK   Document 55   Filed 01/02/20   Page 4 of 7   Page ID #:869
Case 3:18-cv-00571-DMS-RFM   Document 455-7   Filed 12/13/24   Page 156 of 187
Page ID #:21903

<u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598, 605 (2001).  Therefore, when "the plaintiff wins a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions" the plaintiff may be the prevailing party.  <u>See</u> <u>Higher Taste, Inc. v. City of Tacoma</u>, 717 F.3d 712, 717 (9th Cir. 2013).

Federal Defendants argue that Plaintiffs did not prevail because Defendants never intended to do what Court ultimately enjoined them from doing.  (Opposition at 1–3.)  They assert that "[e]ven before Plaintiffs filed their Complaint, a pre-existing ICE policy directive prohibited Defendants from transferring any detainee with immediate family or attorney of recorded within the AOR" and "Defendants never intended to deviate from that policy."  (<u>Id.</u> at 1.)  But what Defendants intended to do is irrelevant to whether the preliminary injunction altered the legal relationship between the parties.  Before the preliminary injunction issued, Defendants were theoretically free to choose their position with respect to the represented detainees—they could (as they claim they were planning to do) choose to keep represented immigrants within the AOR.   Alternatively, they could opt to move the represented detainees to detention facilities elsewhere.  After the preliminary injunction issued, they no longer had a choice to move the represented detainees out of the AOR.  The injunction thereby altered the parties' legal relationship—even if the outcome was no different than what Defendants intended to do.

Moreover, based upon the arguments Federal Defendants asserted in the preliminary injunction briefing, the Court is skeptical that Defendants never intended to transfer the represented detainees.  (<u>See, e.g.</u>, "Preliminary Injunction Opposition," Dkt. No. 24 at 1 ("should any transfers out of the AOR be dictated by the twin realities of Congress's mandate that certain aliens be detained and the emergent need of loss of facility space in the AOR, those transfers would fully comport with ICE policy, the Immigration and Nationality Act ("INA"), and the Constitution")).  As Plaintiffs point out, "if Defendants had agreed in advance to wind down operations at the Orange County facilities without transferring represented immigrants outside the Los Angeles AOR, then Plaintiffs would not have filed this suit."  (Reply at 3.)  Accordingly, the Court concludes that Plaintiffs prevailed for the purposes of EAJA.

## B.  Substantially Justified Position

Defendants bear the burden to establish their position was substantially justified under the "totality of the circumstances."  <u>See</u> <u>Gutierrez</u>, 274 F.3d at 1259; <u>Meinhold v. U.S. Dep't of Defense</u>, 123 F.3d 1275, 1277 (9th Cir. 1997).  Federal Defendants' position includes both the underlying action being defended and the arguments advanced during the litigation.  <u>See</u> <u>Gutierrez</u>, 274 F.3d at 1259.  The underlying act here is Defendant's decision to move detainees out of the AOR.  Throughout the preliminary injunction briefing, Federal Defendants argued they were entitled to move detainees, even when those detainees had attorneys or family members within the AOR.  (<u>See, e.g.</u>, Preliminary Injunction Opposition at 1.)

Federal Defendants first argue that their position was substantially justified because the Court accepted Defendants' argument that it lacked jurisdiction to hear the claims of

EXHIBIT 11
Page 139

Case 3:18-cv-05741-DMS-RFM   Document 455-7   Filed 01/02/24   Page 157 of 187
Case 8:19-cv-00571-JCB-SHK   Document 93   Filed 01/02/24   Page 5 of 7   Page ID #:870
Page ID #:21904

unrepresented detainees.  (Opposition at 4.)  While this argument does show that some of the litigation positions taken by Defendants were substantially justified, it does not show that the underlying acts, namely the decision to move the detainees, was substantially justified.  By de

Next, Federal Defendants argue that because the Court determined Plaintiffs were not likely to succeed on the merits of their APA and First Amendment claims, their position was substantially justified.  (Opposition at 4.)  Again, this argument fails to show that the "totality of the circumstances" justify Federal Defendants' position.  While the Court did not find a likelihood of success on the APA and First Amendment claims—it did find a likelihood of success for the Due Process and INA claims.  (Preliminary Injunction Order at 25.)  The APA, First Amendment, INA, and Due Process claims arose from the same underlying act: Defendants' decision to move detainees out of the AOR.  The Court therefore found that the underlying act was likely unlawful.  That the underlying act as alleged likely violated only two rights rather than the claimed four does not make it substantially justified.

Finally, Federal Defendants argue that their position that the Court lacked jurisdiction over the claims of represented detainees was substantially justified because it was the result reached in Alvarez.  (Opposition at 5–6.)  Federal Defendants are correct—their reliance on Alvarez was substantially justified.  However, the Alvarez court found only that it lacked over jurisdiction to hear any claims regarding the right to representation in removal proceedings. Alvarez v. Sessions, 338 F. Supp 3d 1042, 1048 (N.D. Cal.).   It made no finding about whether the government's decision to move detained immigrants away from their attorneys violated that right.  In fact, the Alvarez Court explicitly noted:

> This order should not [be] interpreted as a judicial approval of ICE's decision to transfer Petitioners. While the court's application of the law compels it to dismiss this case, the law does not compel it to countenance an agency's action that is contrary to the norms of this country's justice system.

Id. at 1050–51.  Alvarez, therefore, fails to provide any support for Federal Defendants' claim that their underlying acts were substantially justified.  Quite the contrary—it is further evidence that Defendants' position contravened clearly established law and norms.

Notably, while the Opposition points to small litigation points on which Federal Defendants prevailed, it fails to explain how Federal Defendants' underlying acts—most critically, deciding to move represented detainees out of the AOR—were substantially justified. Ninth Circuit precedent is clear: the Due Process Clause guarantees that immigrants have the right to be represented by counsel of their choosing.  See Baltazar-Alcazar v. I.N.S., 386 F.3d 940, 944 (9th Cir. 2004) (citing Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004); Colindres-Aguilar v. INS, 819 F.2d 259, 261 n.1 (9th Cir. 1987) (noting an immigrant's right to counsel is a statutory right under 8 U.S.C. § 1362 as well as a right protected by the Due Process Clause)).  And that right is "fundamental"—immigration officials must respect it "in substance as well as in name."  Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir. 1990) (quoting Baires v. INS, 856 F.2d 89, 91 n.2 (9th Cir. 1988)).

---

EXHIBIT 11
Page 140

Case 3:18-cv-05741-DMS-RFM Document 455-7 Filed 01/03/24 Page 6 of 9 Page ID #:871
Case 8:19-cv-00815-JCB-SHK Document 59 Filed 01/02/20 Page 6 of 7 Page ID #:871
Page ID #:21905

Moving detainees far from their retained counsel violates immigrant detainees' right to counsel. <u>See</u> <u>Orantes</u>, 919 F.3d at 564 (affirming injunction restricting transfers because they "interfere[d] with established attorney-client relationships"). As the Court found in the Preliminary Injunction Order, the Immigrant Plaintiffs' counsel lacked the resources to represent them if they were moved out of the AOR and Immigrant Plaintiffs lacked the resources to find new counsel. (Preliminary Injunction Order at 23.) Moreover, frequent confidential in-person visits are necessary to maintain a robust attorney-client relationship in the immigration context. (<u>Id.</u>) Accordingly, the Court concludes that because moving detainees far from their counsel so clearly violates their Due Process right to counsel, Defendants' underlying acts were not substantially justified.

## C. Reasonable Attorneys' Fees

Plaintiffs seek $144,876.04 in attorneys' fees and costs.[3] (Reply at 12.) Federal Defendants argue that these numbers should be reduced (1) to reflect Plaintiffs' partial success, (2) to eliminate redundancies, and (3) to match the statutory rate rather than the enhanced rate Plaintiffs seek. (Opposition at 7–12.) None of these arguments warrant a reduction in attorneys' fees and costs.

First, Plaintiffs' counsel obtained a successful result for both represented and non-represented detainees. While the Court only enjoined the transfer of the represented detainees, Plaintiffs' counsel negotiated with Defendants to reach an agreement that Defendants would not transfer any immigrant detainees outside of the AOR. (Motion at 4.) Had Defendants declined this agreement, Plaintiffs' counsel was prepared to amend their complaint and file a discovery motion. (Reply at 8.) Federal Defendants assert that they were not planning to transfer any detainees out of the AOR, so Plaintiffs' counsel's negotiations did nothing to change the status quo. (Opposition at 2–3.) Plaintiffs however, have submitted evidence showing that Defense counsel urged Plaintiffs' counsel to delay filing the discovery motion to give Defense counsel time to obtain approval from the "East Coast" for the proposed agreement. (Reply at 9; Arulanantham Supplemental Declaration ¶ 5, Exhibit A.) This email demonstrates that it was the negotiations with Plaintiffs' counsel and the threat of continued litigation that prompted the agreement—not Defendants' alleged previous intent.

Second, Plaintiffs' hours calculation does not include any redundancies. Defendants point to one hearing and five calls where two attorneys were present and argue that "these redundant hours should be deducted." (Opposition at 9–10.) This argument is frivolous, insincere, and a waste of the Court's time. Per Ninth Circuit precedent that Federal Defendants

---

[3] The Motion requests $137,031.87. (Motion at 16.) In response to Federal Defendants' argument that the fees calculation includes less than four hours of clerical work billed by a paralegal, Plaintiffs removed those hours and reduced the remainder of that paralegal's hours by 10%. (Reply at 10.) Plaintiffs also added the time spent drafting the Reply. (<u>Id.</u> at 12.)

(continued . . . )

EXHIBIT 11
Page 141

Case 3:18-cv-05741-DMS-RFM Document 455-7 Filed 12/13/24 Page 159 of 187
Case 8:19-cv-00915-JGB-SHK Document 53 Filed 01/02/20 Page 7 of 9 Page ID #:872
Page ID #:21906

themselves cite, two attorneys present for an important call or hearing is not redundant.  <u>Probe v. State Teachers' Ret. Sys.</u>, 780 F.2d 776, 785 (9th Cir. 1986) ("In an important class action litigation [], the participation of more than one attorney does not constitute an unnecessary duplication of effort.").[4]  Moreover, Defendants had <u>three</u> attorneys present at the hearing and on almost every call.  (Supplemental Arulanantham Decl. ¶ 7.)  Unless Defense counsel agrees it wasted taxpayer resources at the hearings and on the calls, it should not level accusations of redundancies at Plaintiffs' counsel.

Third, Plaintiffs' counsel's competent representation warrants the enhanced rate they seek.  Plaintiffs have submitted the declarations of two non-parties, Professor Jayashri Srikantiah and Attorney Carol Sobel, which state that the rates Plaintiffs seek are reasonable for the work that was done no attorney would be available to do the work at the EAJA statutory rate.  (<u>See</u> Srikantiah Declaration; Sobel Declaration.)  Plaintiffs' counsel each have experience litigating complex cases involving the constitutional rights of immigrant detainees.  (Arulanantham Declaration ¶¶ 7–27.)  All three, therefore, have distinctive knowledge and specialized skill in this complex area of the law.  The Ninth Circuit has specifically recognized that Mr. Arulanantham's knowledge and skill warrant enhanced rates under the EAJA for his work litigating the constitutional rights of detained immigrants.  <u>See e.g.</u>, <u>Nadarajah v. Holder</u>, 569 F.3d 906, 914 (9th Cir. 2009).

This case required Plaintiff's counsel's specialized knowledge and expertise.  It involved unique issues of statutory jurisdiction.  When Plaintiffs' counsel received notification about the pending transfers, they immediately identified the threat to their clients' constitutional rights and quickly moved to obtain emergency relief.  (Motion at 2–3.)  It is not likely that lawyers without Plaintiffs' counsel's specialized knowledge would have been able to obtain similar results.  (<u>See also</u> Srikantiah Declaration ¶¶ 10–12.)  Accordingly, the Court finds the number of hours worked on this case by Plaintiff's counsel was reasonable and the rates Plaintiffs seek are warranted.

## IV.   CONCLUSION

For the reasons above, the Court GRANTS Plaintiffs' Motion.  Plaintiffs' counsel are awarded $144,876.04 in attorneys' fees and costs.   The January 6, 2019 hearing is VACATED.

**IT IS SO ORDERED.**

---

[4] Defense counsel cites <u>Probe</u> to support their argument that the Court should reduce Plaintiffs' fee award because two attorneys attended a hearing and five calls.  <u>Probe</u> holds the opposite—that multiple attorneys are not redundant in important cases.  <u>See</u> <u>Probe</u>, 780 F.2d 776, 785 (9th Cir. 1986).

EXHIBIT 11
Page 142

# EXHIBIT 12

EXHIBIT 12
Page 143

1    THEODORE J. BOUTROUS JR., SBN 132099
       tboutrous@gibsondunn.com
2    THEANE EVANGELIS, SBN 243570
       tevangelis@gibsondunn.com
3    NATHANIEL L. BACH, SBN 246518
       nbach@gibsondunn.com
4    MARISSA B. MOSHELL, SBN 319734
       mmoshell@gibsondunn.com
5    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue
6    Los Angeles, CA 90071-3197
     Telephone: 213.229.7000
7    Facsimile: 213.229.7520

8    SCOTT A. EDELMAN, SBN 116927
       sedelman@gibsondunn.com
9    GIBSON, DUNN & CRUTCHER LLP
     2029 Century Park East, Suite 4000
10   Los Angeles, CA 90067-3026
     Telephone: 310.552.8500
11   Facsimile: 310.551.8741

12   Attorneys for Defendants Rachel Maddow,
     MSNBC Cable L.L.C., NBCUniversal Media,
13   LLC, and Comcast Corporation

14                  UNITED STATES DISTRICT COURT

15                SOUTHERN DISTRICT OF CALIFORNIA

16

17

18   HERRING NETWORKS, INC.,            CASE NO. 19-cv-1713-BAS-AHG

19            Plaintiff,                **DECLARATION OF SCOTT A.
                                        EDELMAN IN SUPPORT OF
20       v.                             DEFENDANTS' MOTION FOR
                                        ATTORNEYS' FEES AND COSTS
21   RACHEL MADDOW; COMCAST             (Cal. Civ. Proc. Code § 425.16(c)(1))**
     CORPORATION; NBCUNIVERSAL
22   MEDIA, LLC; and MSNBC CABLE        **COURT TO ISSUE BRIEFING
     L.L.C.,                            SCHEDULE AND HEARING DATE**

23            Defendants.               Action Filed: September 9, 2019

24                                      Judge: Hon. Cynthia Bashant
                                        Magistrate Judge: Hon. Allison Goddard
25                                      Courtroom 3B

26

27

28

Gibson, Dunn &
Crutcher LLP

I, Scott A. Edelman, declare as follows:

1. I am an attorney at law licensed to practice in the State of California. I am a partner at Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and counsel of record for Defendants Rachel Maddow, Comcast Corporation, NBCUniversal Media, LLC, and MSNBC Cable L.L.C. ("Defendants"). I am one of the supervising partners in charge of the work performed on this case by the attorneys and other professionals at Gibson Dunn.

2. I submit this declaration in support of Defendants' Motion for Attorneys' Fees and Costs pursuant to California Code of Civil Procedure section 425.16(c)(1). All statements in this declaration are based upon my personal knowledge and, if called upon to testify, I could and would testify to the facts set forth herein.

### Gibson Dunn's Retention and Efforts Defending This Case

3. On September 9, 2019, Plaintiff Herring Networks, Inc. filed a Complaint for defamation in the United States District Court for the Southern District of California.

4. Gibson Dunn was retained soon thereafter, and we assembled a team of attorneys experienced in First Amendment jurisprudence, defamation actions, and anti-SLAPP practice. This team included the following individuals:

- Theodore J. Boutrous, Jr., a partner at Gibson Dunn (a true and correct copy of Mr. Boutrous' biography, showing his credentials and experience, is attached hereto as **Exhibit A**);

- Myself, Scott A. Edelman, a partner at Gibson Dunn (a true and correct copy of my biography, showing my credentials and experience, is attached hereto as **Exhibit B**);

- Nathaniel L. Bach, a senior associate at Gibson Dunn (a true and correct copy of Mr. Bach's biography, showing his credentials and experience, is attached hereto as **Exhibit C**);

1

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

EXHIBIT 12
Page 145

- Marissa B. Moshell, a mid-level associate at Gibson Dunn (a true and correct copy of Ms. Moshell's biography, showing her credentials and experience, is attached hereto as **Exhibit D**); and
- Daniel M. Rubin, a mid-level associate at Gibson Dunn (a true and correct copy of Mr. Rubin's biography, showing his credentials and experience, is attached hereto as **Exhibit E**).

5.      I believe all of the aforementioned attorneys were both necessary and reasonable for the litigation of Defendants' successful Motion to Strike and, based on my experience, I believe that Gibson Dunn staffed and litigated this case in a reasonable, efficient, and appropriate manner.

6.      Once our team was assembled, Defendants' counsel determined the best method for defeating Plaintiff's Complaint was to file a Special Motion to Strike under California Code of Civil Procedure section 425.16.

7.      I communicated our intention of filing an anti-SLAPP motion to Amnon Z. Siegel of Miller Barondess LLP, counsel for Plaintiff, on September 25, 2019.  Mr. Siegel would not agree to dismiss the Complaint.  Mr. Siegel informed me that he still wanted to move forward with discovery, which he felt was permissible at that phase of the proceedings.  As such, I had my team research the permissibility of discovery when defendants file a motion to strike based solely on the complaint and judicially noticeable materials (akin to a Rule 12(b)(6) motion to dismiss), as opposed to factual grounds.  The parties met and conferred on this issue, but did not reach agreement on the permissibility of discovery.  At no point during the meet and confer process, or anytime thereafter, did Plaintiff offer to dismiss its claim.

8.      Substantial efforts went into the preparation of this dispositive motion. Gibson Dunn attorneys researched the legal doctrine of protected opinion, which requires a totality of the circumstances test in which numerous factors may be considered, requiring significant research.  Defendants' counsel also researched the case law surrounding substantially true speech.  Further, given that Plaintiff brought its

Gibson, Dunn &
Crutcher LLP

2

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

EXHIBIT 12
Page 146

1   Complaint in federal district court, Gibson Dunn attorneys needed to research the

2   interplay between California's state anti-SLAPP statute and federal procedural law.

3   Gibson Dunn attorneys also spent time analyzing the segment of *The Rachel Maddow*

4   *Show* that was at the center of Plaintiff's lawsuit.

5       9.      Defendants filed their Special Motion to Strike on October 21, 2019.

6       10.     Defendants received Plaintiff's Opposition to their Motion to Strike on

7   December 2, 2019.  The Opposition included three declarations, one of which was

8   from an alleged linguistics expert, Professor Stefan Th. Gries.  Professor Gries

9   submitted a report with 17 single-spaced pages of analysis concerning Rachel

10  Maddow's statement.

11      11.     Gibson Dunn did not hire an expert to rebut Professor Gries' expert

12  report.  Defendants' counsel understood that evidentiary submissions of this sort were

13  improper at this stage of the proceedings, and chose not to waste time and resources

14  retaining an expert to work on a report that should not be considered.  Plaintiff's

15  improper submission did, however, compel Defendants to research the impropriety of

16  evidentiary submissions in the context of a special motion to strike submitted on a

17  legal basis only.  Defendants' counsel also conducted further research to respond to

18  Plaintiff's other arguments.

19      12.     Defendants filed their reply brief on December 9, 2019.

20      13.     The next day, Mr. Siegel contacted Defendants' counsel and informed

21  Defendants of his plan to file an *Ex Parte* Application to Supplement the Record.  Mr.

22  Siegel wanted to submit new *evidence* of a December 9, 2019 episode of *Hardball*

23  with Chris Matthews.  Defendants' counsel again told Mr. Siegel that evidentiary

24  submissions were improper at this stage, and that the video was irrelevant.  Plaintiff

25  nonetheless filed its *Ex Parte* Application on December 11, 2019.

26      14.     As a result of Plaintiff's *Ex Parte* Application, Defendants' counsel was

27  forced to undertake even further research and briefing to oppose the Application.

28  Defendants filed their Opposition on December 13, 2019.

Gibson, Dunn &
Crutcher LLP

3

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

EXHIBIT 12
Page 147

15.     The Court scheduled an oral argument on Defendants' Motion to Strike and Plaintiff's *Ex Parte* Application to Supplement the Record.  Defendants' counsel spent significant time preparing for the hearing, re-reading nearly thirty cases cited across the briefing, and drafting case summaries and oral argument outlines. Defendants' counsel also reviewed *The Rachel Maddow Show* segment and *The Daily Beast* article on which it was based.  This effort was undoubtedly made more time intensive due to Plaintiff's *Ex Parte* Application to Supplement the Record.

16.     The Court heard telephonic oral argument on May 19, 2020, and issued an Order granting Defendants' Special Motion to Strike on May 22, 2020.  A true and correct copy of the transcript of the hearing on Defendants' Special Motion to Strike is attached hereto as **Exhibit F**.

### Gibson Dunn's Fees

17.     Gibson Dunn was retained on a modified contingency fee basis—NBCU agreed to pay Defendants' counsel a rate of $100,000 for the filing and argument on the Anti-SLAPP Motion.  NBCU further agreed that, if they were successful on the Anti-SLAPP Motion and recovered from Plaintiff, they would pay Gibson Dunn any difference between the $100,00 and the fees actually incurred by counsel.

18.     At the time Gibson Dunn was retained in 2019, our standard hourly rates were as follows:

| Timekeeper | Standard 2019 Rate/Hour |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | $1,450 |
| Scott A. Edelman (Partner) | $1,335 |
| Nathaniel L. Bach (Senior Associate) | $915 |
| Marissa B. Moshell (Mid-Level Associate) | $625 |
| Daniel M. Rubin (Mid-Level Associate) | $625 |
| Lolita C. Gadberry | $460 |

| (Paralegal) | |
|---|---|
| Erin E. Kurinsky (Researcher) | $270 |
| Carla H. Jones (Researcher) | $270 |

19.     Starting in January 2020, our standard hourly rates were as follows:

| Timekeeper | Standard 2020 Rate/Hour |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | $1,525 |
| Scott A. Edelman (Partner) | $1,395 |
| Nathaniel L. Bach (Senior Associate) | $960 |
| Marissa B. Moshell (Mid-Level Associate) | $740 |
| Lolita C. Gadberry (Paralegal) | $480 |
| Duke K. Amponsah (Paralegal) | $480 |

20.     Based on my reading of the relevant case law, fee applications submitted in other district courts in California, and my overall familiarity with rates charged by my firm's competitors, it is my understanding that these rates are comparable to the rates charged by peer firms and attorneys with similar skill and experience.

· Attached hereto as **Exhibit G** is a true and correct copy of an April 2020 fee application submitted in bankruptcy court in the northern district of California, which reflects hourly billing rates for litigation partners and associates from Weil, Gotshal & Manges LLP charged in 2019 and 2020. This fee application shows that Weil charged rates up to $1,325 per hour for litigation partners, and between $595 and $1,050 for litigation associates. Ex. G at 7-9.

1    ·   Attached hereto as **Exhibit H** is a true and correct copy of an excerpt from

2      the Public Rates Report issued by Thomson Reuters on January 14, 2020.

3      The Thomson Reuters report shows the rates charged by attorneys for matters

4      in various jurisdictions, including the northern and central districts of

5      California. Exhibit H excerpts those entries pertaining to any district of

6      California entries on the report. The report shows that, in 2019, senior

7      attorneys were charging up to $1,145 per hour for work performed in the

8      northern district of California. Ex. H at 2.

9    ·   Attached hereto as **Exhibit I** is a true and correct copy of an excerpt from the

10      Public Rates Report issued by Thomson Reuters in September 2018. The

11      Thomson Reuters report shows the rates charged by attorneys for matters in

12      various jurisdictions, including California districts, from 2006 to 2015.

13      Exhibit I excerpts those entries pertaining to any district of California entries

14      on the report. The report shows that as early as 2012, eight years ago, senior

15      attorneys were charging upwards of $800 per hour in the southern district of

16      California. Ex. I at 257. As early as 2013, seven years ago, certain senior

17      attorneys were already charging over $1,000 per hour in the central district of

18      California. *Id.* at 139.

19    21.   Gibson Dunn's hourly rates are also appropriate in light of the high degree

20 of sophistication, experience, and excellence that Gibson Dunn attorneys bring to bear

21 on their work (as demonstrated by the success in the present litigation).

22    22.   I have reviewed Gibson Dunn's timekeeping records for this case, and the

23 time referenced in these records reflects the time actually worked in connection with

24 this matter. I have become very familiar with such records and the processes by which

25 the firm creates and maintains them. In the regular course of business, Gibson Dunn

26 maintains records of time spent by individual attorneys and other professionals with

27 respect to each client matter. In recording their timekeeping entries, attorneys at

28

Gibson, Dunn &
Crutcher LLP

6

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

EXHIBIT 12
Page 150

1   Gibson Dunn are required to specify the client and matter, the nature of the work

2   performed, and the amount of time that they expend on a designated task(s).

3        23.    The work performed on this matter by the attorneys and other

4   professionals at Gibson Dunn can be categorized as follows:

5   · (1) reviewing and analyzing Plaintiff's Complaint and discussing initial strategy

6       to defeat Plaintiff's defamation claim;

7   · (2) researching and drafting the Anti-SLAPP Motion and supporting documents;

8   · (3) reviewing and responding to Plaintiff's opposition brief, including Plaintiff's

9       improper evidentiary submission;

10  · (4) reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement

11      the Record;

12  · (5) preparing for and attending the hearing on the Anti-SLAPP Motion and

13      Plaintiff's *Ex Parte* Application to Supplement the Record; and

14  · (6) researching and drafting the Attorneys' Fees Motion and supporting

15      documents.

16      Set forth below are the details of the work completed by the Gibson Dunn

17  attorneys and other professionals, divided by category, through the filing of this

18  Motion for Attorneys' Fees and Costs.  This information is a true and accurate

19  reflection of our timekeeping records of amounts incurred:

| Date | Time | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| **Reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's defamation claim** | | | | |
| 9/23/2019 | 0.2 | $183 | Bach, Nathaniel L. | Call with S. Edelman re seeking extension of time to respond. |
| 9/23/2019 | 0.3 | $400.50 | Edelman, Scott A. | Address service of process. |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

EXHIBIT 12
Page 151

| 9/25/2019 | 1.4 | $875 | Moshell, Marissa B. | Call with S. Edelman re response to Plaintiffs' counsel (.2); research for T. Boutrous (.2); draft response to Plaintiffs' counsel (1.0). |
| 9/25/2019 | 0.5 | $457.50 | Bach, Nathaniel L. | Telephone conference with client, T. Boutrous, S. Edelman, T. Evangelis re initial strategy. |
| 9/25/2019 | 1.6 | $2,320 | Boutrous Jr., Theodore J. | Analyzing issues, strategy, participate in strategy call with clients. |
| 9/25/2019 | 0.3 | $400.50 | Edelman, Scott A. | Review complaint, background. |
| 9/25/2019 | 0.5 | $667.50 | Edelman, Scott A. | Research in preparation for call with client. |
| 9/25/2019 | 0.6 | $801 | Edelman, Scott A. | Review correspondence from plaintiffs regarding Rule 26 meeting (.2); correspond with team regarding same (.2); telephone conference with M. Moshell regarding same (.1); update clients (.1). |
| 9/25/2019 | 0.4 | $534 | Edelman, Scott A. | Telephone conference with M. Moshell regarding extension of time to respond. |
| 9/26/2019 | 0.6 | $162 | Kurinsky, Erin E. | Research for M. Moshell. |
| 9/26/2019 | 0.2 | $267 | Edelman, Scott A. | Correspond with client. |
| 9/26/2019 | 0.6 | $801 | Edelman, Scott A. | Address time to respond to complaint with substituted service and email A. Siegel regarding extension. |
| 9/27/2019 | 1.4 | $875 | Moshell, Marissa B. | Draft stipulation and proposed order for extension of time to respond to Plaintiff's Complaint. |

| 9/27/2019 | 0.6 | $801 | Edelman, Scott A. | Correspond with plaintiff's counsel regarding extension. |
|---|---|---|---|---|
| 9/30/2019 | 0.1 | $27 | Jones, Carla H. | Legal research for N. Bach. |
| 10/1/2019 | 0.8 | $500 | Moshell, Marissa B. | Draft corporate disclosure statement. |
| 10/1/2019 | 0.6 | $549 | Bach, Nathaniel L. | Emails with A. Jacobs re joint motion to extend time to respond to complaint (.4); email to M. Moshell re corporate disclosure statement (.2). |
| 10/2/2019 | 0.6 | $375 | Moshell, Marissa B. | Finalize stipulation and rule 7.1 statement for filing and file same. |
| 10/2/2019 | 0.7 | $640.50 | Bach, Nathaniel L. | Emails with client re joint stipulation to extend time to respond to complaint (.4); emails with A. Siegel re meet and confer (.3). |
| 10/07/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Begin preparing notices of appearance. |
| 10/08/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Prepare and file notices of appearance. |
| **Researching and drafting the Anti-SLAPP Motion and supporting documents** | | | | |
| 9/20/2019 | 0.4 | $366 | Bach, Nathaniel L. | Emails with T. Boutrous re anti-SLAPP timing. |
| 9/24/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Emails, calls with clients, analyzing issues for anti-SLAPP motion. |
| 9/24/2019 | 0.4 | $366 | Bach, Nathaniel L. | Emails with T. Boutrous re anti-SLAPP motion preparation. |
| 9/25/2019 | 0.8 | $1,068 | Edelman, Scott A. | Prepare for and conference call with clients regarding anti-SLAPP strategy. |
| 9/26/2019 | 2.6 | $1,625 | Moshell, Marissa B. | Calls with N. Bach and T. Boutrous re anti-SLAPP motion (.2); research federal |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | |
|---|---|---|---|---|
| | | | | court procedural question (1.0); research for anti-SLAPP motion (1.4). |
| 9/26/2019 | 2.6 | $2,379 | Bach, Nathaniel L. | Calls with T. Boutrous, S. Edelman, M. Moshell re anti-SLAPP brief (.2); research for and begin drafting anti-SLAPP motion to strike (2.4). |
| 9/27/2019 | 4.1 | $3,751.50 | Bach, Nathaniel L. | Research and draft outline for anti-SLAPP motion (3.6); review materials relevant to anti-SLAPP briefing (.4). |
| 9/28/2019 | 0.3 | $187.50 | Moshell, Marissa B. | Research for anti-SLAPP motion. |
| 9/29/2019 | 0.7 | $437.50 | Moshell, Marissa B. | Research for anti-SLAPP motion. |
| 10/1/2019 | 3 | $2,745 | Bach, Nathaniel L. | Research re anti-SLAPP motion to strike (2.2); prepare outline of same (.8). |
| 10/6/2019 | 2.4 | $2,196 | Bach, Nathaniel L. | Draft talking points for meet and confer call (1.2); review opinion standards re First Amendment (1.2). |
| 10/7/2019 | 4.3 | $2,687.50 | Moshell, Marissa B. | Research for anti-SLAPP motion (4.3). |
| 10/7/2019 | 2 | $1,830 | Bach, Nathaniel L. | Prepare for meet and confer with Plaintiff's counsel (.3); meet and confer call with A. Siegel re Anti-SLAPP motion (.4); emails with M. Moshell re research for anti-SLAPP motion (.5); review case law re same (.8). |
| 10/7/2019 | 1 | $1,335 | Edelman, Scott A. | Prepare for and meet and confer with plaintiff re Anti-SLAPP. |
| 10/8/2019 | 5.3 | $274.50 | Bach, Nathaniel L. | Research opinion cases for anti-SLAPP motion (3.0); |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

EXHIBIT 12
Page 154

| | | | | draft anti-SLAPP motion (2.3). |
|---|---|---|---|---|
| 10/8/2019 | 2.3 | $1,437.50 | Moshell, Marissa B. | Continue research for anti-SLAPP motion (2.3). |
| 10/9/2019 | 4.9 | $4,483.50 | Bach, Nathaniel L. | Drafting anti-SLAPP motion. |
| 10/10/2019 | 5.6 | $5,124 | Bach, Nathaniel L. | Working on anti-SLAPP special motion to strike. |
| 10/10/2019 | 1.5 | $2,175 | Boutrous Jr., Theodore J. | Reading key cases for anti-SLAPP motion. |
| 10/11/2019 | 2 | $2,900 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/11/2019 | 8 | $7,320 | Bach, Nathaniel L. | Drafting anti-SLAPP motion to strike (5.8); researching issues re same (2.2). |
| 10/12/2019 | 5 | $4,575 | Bach, Nathaniel L. | Working on draft of anti-SLAPP motion. |
| 10/13/2019 | 6.6 | $6,039 | Bach, Nathaniel L. | Emails with T. Boutrous re comments to Anti-SLAPP motion (.8); further revisions to same (5.8). |
| 10/13/2019 | 4 | $5,800 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/14/2019 | 7.7 | $7,045.50 | Bach, Nathaniel L. | Call with T. Boutrous, S. Edelman, T. Evangelis re anti-SLAPP brief (.5); further calls with T. Boutrous re same (.3); further revisions to brief (6.9). |
| 10/14/2019 | 1 | $1,335 | Edelman, Scott A. | Review anti-SLAPP brief (.5); team call re same (.5). |
| 10/14/2019 | 6 | $8,700 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/15/2019 | 2.2 | $1,375 | Rubin, Daniel M. | Revise anti-SLAPP motion. |
| 10/15/2019 | 4.9 | $4,483.50 | Bach, Nathaniel L. | Implementing further edits, revisions to anti-SLAPP draft (3.5); emails and calls |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | |
|---|---|---|---|---|
| | | | | with T. Boutrous, S. Edelman, T. Evangelis re same (.5); emails with D. Rubin re supporting motion documents (.4); emails with T. Boutrous re upcoming client meeting (.5). |
| 10/15/2019 | 1 | $625 | Rubin, Daniel M. | Draft and revise notice of anti-SLAPP motion, request for judicial notice, and proposed order. |
| 10/15/2019 | 4.5 | $6,525 | Boutrous Jr., Theodore J. | Revising, editing anti-SLAPP motion. |
| 10/15/2019 | 2.9 | $3,871.50 | Edelman, Scott A. | Review draft anti-SLAPP Motion, edit same. |
| 10/16/2019 | 7.4 | $6,771 | Bach, Nathaniel L. | Review client comments on draft anti-SLAPP motion (.6); prepare for client meeting (.5); telephonic conference with S. Weiner, T. Hoff, A. Jacobs, T. Boutrous, S. Edelman re same (.6); further revisions to anti-SLAPP motion (5.7). |
| 10/16/2019 | 2.4 | $1,500 | Rubin, Daniel M. | Draft and revise materials in support of anti-SLAPP motion. |
| 10/16/2019 | 0.7 | $934.50 | Edelman, Scott A. | Telephone conference with clients regarding anti-SLAPP motion. |
| 10/16/2019 | 3 | $4,350 | Boutrous Jr., Theodore J. | Review client comments on anti-SLAPP motion, meet with clients, work on motion. |
| 10/17/2019 | 4.7 | $4,300.50 | Bach, Nathaniel L. | Further revisions to anti-SLAPP motion (3.0); emails with T. Boutrous, client re same (.5); review and revise supporting motion documents (RJN, proposed order, notice of motion, |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

EXHIBIT 12
Page 156

| | | | | | |
|---|---|---|---|---|---|
| | | | | | notice of lodging) and send same to client (1.2). |
| 10/17/2019 | 0.2 | $125 | | Rubin, Daniel M. | Revise materials in support of anti-SLAPP motion. |
| 10/17/2019 | 2.9 | $4,205 | | Boutrous Jr., Theodore J. | Start-to-finish editing, revising of anti-SLAPP motion. |
| 10/18/2019 | 0.9 | $823.50 | | Bach, Nathaniel L. | Call with A. Jacobs re anti-SLAPP brief (.1); review further edits to same (.5); emails with D. Rubin re upcoming filing and lodging (.3). |
| 10/18/2019 | 5.1 | $3,187.50 | | Rubin, Daniel M. | Revise anti-SLAPP motion to strike Plaintiff's complaint. |
| 10/18/2019 | 0.6 | $375 | | Rubin, Daniel M. | Confer with N. Bach re filing of anti-SLAPP motion. |
| 10/18/2019 | 1 | $1,450 | | Boutrous Jr., Theodore J. | Review clients' latest changes, review, revise anti-SLAPP brief. |
| 10/20/2019 | 2.1 | $1,921.50 | | Bach, Nathaniel L. | Further revisions to anti-SLAPP motion, including cite check edits (2.0); email to client re putative final draft (.1). |
| 10/21/2019 | 4.2 | $2,625 | | Rubin, Daniel M. | Final proof and cite check of anti-SLAPP motion to strike complaint and supporting materials. |
| 10/21/2019 | 3.6 | $3,294 | | Bach, Nathaniel L. | Final review of anti-SLAPP motion, memorandum, request for judicial notice, notice of lodging, proposed order (2.7); emails with client re same (.4); emails and calls with D. Rubin re filing (.5). |
| 10/21/2019 | 0.9 | $562.50 | | Rubin, Daniel M. | Confer with N. Bach re anti-SLAPP motion to |

| | | | | |
|---|---|---|---|---|
| | | | | strike and supporting documents. |
| 10/21/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Final revisions to anti-SLAPP motion papers before filing. |
| **Reviewing and responding to Plaintiff's opposition brief, including Plaintiff's improper evidentiary submission** | | | | |
| 12/2/2019 | 4.7 | $2,937.50 | Moshell, Marissa B. | Call with N. Bach re reply brief (.1); research for reply brief (.1); review and analyze moving and opposition papers on anti-SLAPP motion (2.4); begin drafting reply in support of anti-SLAPP motion (2.1). |
| 12/2/2019 | 2.5 | $2,287.50 | Bach, Nathaniel L. | Review opposition to motion to strike and supporting documents (.8); meet with M. Moshell re drafting reply brief (.2); emails with GDC team re reply brief (.3); draft talking points for reply brief (1.2). |
| 12/3/2019 | 1.2 | $1,098 | Bach, Nathaniel L. | Call with A. Jacobs, M. Moshell re reply brief (.5); meeting with M. Moshell re same (.2); reading Plaintiff's cases (.5). |
| 12/3/2019 | 12.1 | $7,562.50 | Moshell, Marissa B. | Call with client and N. Bach re reply brief (.5); meeting with N. Bach re reply brief (.2); draft reply brief (11.4). |
| 12/3/2019 | 2.2 | $1,012 | Gadberry, Lolita C. | Review opposition brief and download cases and statutes cited in same (1.5); organize cases and statutes and forward zip file of same to M. Moshell (.7). |

14

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| 12/4/2019 | 3.5 | $2,187.50 | Moshell, Marissa B. | Continue drafting reply brief (3.2); correspond with N. Bach re reply brief (.3). |
| 12/4/2019 | 8.6 | $7,869 | Bach, Nathaniel L. | Working on draft of reply in support of motion to strike. |
| 12/5/2019 | 1 | $460 | Gadberry, Lolita C. | Assist N. Bach with organization and printing of case files for T. Boutrous. |
| 12/5/2019 | 5.5 | $5,032.50 | Bach, Nathaniel L. | Revising reply in support of anti-SLAPP motion. |
| 12/5/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Work on anti-SLAPP reply. |
| 12/6/2019 | 1.7 | $1,555.50 | Bach, Nathaniel L. | Revisions to reply brief in support of motion to strike. |
| 12/6/2019 | 0.4 | $250 | Moshell, Marissa B. | Research availability of stay of discovery pending appeal of an anti-SLAPP order. |
| 12/7/2019 | 0.7 | $437.50 | Moshell, Marissa B. | Research stays of discovery on appeal from an anti-SLAPP order. |
| 12/7/2019 | 0.8 | $732 | Bach, Nathaniel L. | Draft email memorandum to T. Boutrous re discovery stay on appeal from an anti-SLAPP order. |
| 12/7/2019 | 3.5 | $3,202.50 | Bach, Nathaniel L. | Revising reply brief in support of motion to dismiss. |
| 12/7/2019 | 1.2 | $1,740 | Boutrous Jr., Theodore J. | Work on anti-SLAPP reply. |
| 12/8/2019 | 1.5 | $1,372.50 | Bach, Nathaniel L. | Further revisions to reply in support of anti-SLAPP motion (1.0); emails with T. Boutrous, S. Weiner re discovery stay (.5). |
| 12/9/2019 | 2.8 | $1,750 | Moshell, Marissa B. | Revise and cite check reply in support of anti-SLAPP motion (2.5); file reply in support of anti-SLAPP motion (.3). |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

EXHIBIT 12
Page 159

| 12/9/2019 | 3.5 | $3,202.50 | Bach, Nathaniel L. | Final revisions to reply in support of motion to strike (2.0); emails with C. O'Hagan, S. Weiner, M. Moshell re same (.5); final proofs of motion before filing (1.0). |
|---|---|---|---|---|
| 12/9/2019 | 0.5 | $725 | Boutrous Jr., Theodore J. | Final review of anti-SLAPP reply. |
| **Reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement the Record** | | | | |
| 12/10/2019 | 0.9 | $823.50 | Bach, Nathaniel L. | Emails with A. Siegel, client team re ex parte application to supplement record (.6); call with A. Siegel re same (.2); call with S. Edelman re same (.1). |
| 12/10/2019 | 0.2 | $267 | Edelman, Scott A. | Telephone conference with N. Bach regarding ex parte application. |
| 12/11/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Research for Opposition to ex parte application. |
| 12/11/2019 | 2 | $1,830 | Bach, Nathaniel L. | Draft opposition to ex parte application to supplement evidentiary record (1.5); emails with S. Weiner, M. Moshell re same (.5). |
| 12/12/2019 | 0.3 | $435 | Boutrous Jr., Theodore J. | Review, comment on opposition to ex parte. |
| 12/12/2019 | 4.6 | $4,209 | Bach, Nathaniel L. | Further revisions to opposition to ex parte application to supplement (4.2); emails and call with T. Boutrous re same (.4). |
| 12/13/2019 | 1.2 | $1,098 | Bach, Nathaniel L. | Final revision to and proof of opposition to ex parte application. |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

EXHIBIT 12
Page 160

| | | | | |
|---|---|---|---|---|
| **Preparing for and attending the hearing on the Anti-SLAPP Motion and Plaintiff's *Ex Parte* Application to Supplement the Record** | | | | |
| 3/9/2020 | 0.2 | $192 | Bach, Nathaniel L. | Emails to M. Moshell re hearing preparation. |
| 3/12/2020 | 5.5 | $4,070 | Moshell, Marissa B. | Prepare one-pagers for oral argument on anti-SLAPP motion. |
| 3/16/2020 | 0.7 | $518 | Moshell, Marissa B. | Review and revise oral argument preparation materials. |
| 4/27/2020 | 0.8 | $768 | Bach, Nathaniel L. | Review Bashant orders re tentative rulings in other cases. |
| 4/27/2020 | 0.3 | $418.50 | Edelman, Scott A. | Correspond with client and N. Bach regarding upcoming hearing. |
| 5/4/2020 | 1 | $1,525 | Boutrous Jr., Theodore J. | Begin hearing preparation. |
| 5/7/2020 | 2.1 | $1,554 | Moshell, Marissa B. | Compile materials for T. Boutrous for hearing preparation. |
| 5/12/2020 | 6.9 | $5,106 | Moshell, Marissa B. | Review and analyze key cases and draft case summaries. |
| 5/12/2020 | 0.3 | $288 | Bach, Nathaniel L. | Reviewing outlines for hearing on anti-SLAPP motion. |
| 5/12/2020 | 1.7 | $1,632 | Bach, Nathaniel L. | Revising outline of talking points for anti-SLAPP hearing. |
| 5/12/2020 | 2.5 | $3,812.50 | Boutrous Jr., Theodore J. | Preparing for hearing on anti-SLAPP motion hearing, including studying briefs, cases |
| 5/13/2020 | 2.3 | $2,208 | Bach, Nathaniel L. | Draft mooting questions for anti-SLAPP hearing. |
| 5/13/2020 | 1.9 | $1,406 | Moshell, Marissa B. | Draft questions and answers for hearing preparation. |
| 5/13/2020 | 2.5 | $3,812.50 | Boutrous Jr., Theodore J. | Hearing preparation. |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

EXHIBIT 12
Page 161

Gibson, Dunn & Crutcher LLP

| 5/14/2020 | 2.9 | $2,146 | Moshell, Marissa B. | Meeting with team and client re hearing (.8); research and correspond with team re hearing on anti-SLAPP motion (2.1). |
| 5/14/2020 | 0.9 | $864 | Bach, Nathaniel L. | Pre-hearing call with client, T. Boutrous, S. Edelman, M. Moshell. |
| 5/14/2020 | 1 | $1,395 | Edelman, Scott A. | Review anti-SLAPP materials in preparation for moot session with client. |
| 5/14/2020 | 0.9 | $1,255.50 | Edelman, Scott A. | Moot session with client. |
| 5/14/2020 | 3.9 | $5,947.50 | Boutrous Jr., Theodore J. | Preparing for moot court, strategy session, participate in same, continue to prepare for hearing on SLAPP motion. |
| 5/15/2020 | 0.6 | $444 | Moshell, Marissa B. | Research for hearing on anti-SLAPP motion. |
| 5/16/2020 | 2 | $3,050 | Boutrous Jr., Theodore J. | Prepare for anti-SLAPP hearing. |
| 5/16/2020 | 0.3 | $222 | Moshell, Marissa B. | Research court reporting and hearing transcription for anti-SLAPP hearing. |
| 5/17/2020 | 3 | $4,575 | Boutrous Jr., Theodore J. | Preparing for hearing on anti-SLAPP motion. |
| 5/17/2020 | 0.3 | $222 | Moshell, Marissa B. | Correspond with T. Boutrous re materials for hearing preparation (.1); correspond with N. Bach and court reporter re hearing transcript (.2). |
| 5/18/2020 | 2.2 | $2,112 | Bach, Nathaniel L. | Draft one-sheets and hearing arguments. |
| 5/18/2020 | 1.3 | $962 | Moshell, Marissa B. | Draft one-pager for oral argument (1); correspond with team re hearing preparation (.3). |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

EXHIBIT 12
Page 162

| 5/18/2020 | 4.5 | $6,862.50 | Boutrous Jr., Theodore J. | Continue to prepare for hearing on Anti-SLAPP motion. |
|---|---|---|---|---|
| 5/19/2020 | 1.5 | $1,440 | Bach, Nathaniel L. | Prepare for hearing on anti-SLAPP motion (.7); telephonic hearing re same (.6); post-hearing debrief with client (.3). |
| 5/19/2020 | 1 | $740 | Moshell, Marissa B. | Attend telephonic hearing on anti-SLAPP motion (.6); call with team re hearing (.1); correspond with court reporter re hearing transcript (.3). |
| 5/19/2020 | 1.5 | $2,092.50 | Edelman, Scott A. | Attend anti-SLAPP hearing. |
| 5/19/2020 | 4.3 | $6,557.50 | Boutrous Jr., Theodore J. | Final preparations for hearing on anti-SLAPP motion, argue motion, call with clients re same, review transcript. |
| **Researching and drafting the Attorneys' Fees Motion and supporting documents** | | | | |
| 5/22/2020 | 2.2 | $1,628 | Moshell, Marissa B. | Research filing deadline for motion for attorney's fees (1); review order granting anti-SLAPP motion and draft summary (1.2). |
| 5/22/2020 | 0.5 | $480 | Bach, Nathaniel L. | Review order granting anti-SLAPP motion. |
| 5/22/2020 | 0.6 | $915 | Boutrous Jr., Theodore J. | Analyzing anti-SLAPP ruling. |
| 5/25/2020 | 0.6 | $444 | Moshell, Marissa B. | Conduct research for motion for attorneys' fees. |
| 5/26/2020 | 5.1 | $3,774 | Moshell, Marissa B. | Research for attorney fees motion and bill of costs (4); begin drafting attorney fees motion (1.1). |
| 5/27/2020 | 10.1 | $7,474 | Moshell, Marissa B. | Continue drafting and researching for motion for |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

| | | | | attorneys' fees (9.9); call with N. Bach re motion for attorneys' fees and costs (.2). |
|---|---|---|---|---|
| 5/27/2020 | 1.2 | $1,152 | Bach, Nathaniel L. | Call with M. Moshell re drafting fee motion (.3); emails with M. Moshell, S. Edelman re same (.3); reviewing fee summary for motion (.6). |
| 5/27/2020 | 1.5 | $720 | Gadberry, Lolita C. | Review and analyze accounting department billing records received from M. Moshell. |
| 5/27/2020 | 0.3 | $418.50 | Edelman, Scott A. | Emails regarding fee application. |
| 5/28/2020 | 8.2 | $6,068 | Moshell, Marissa B. | Continue drafting fees motion. |
| 5/28/2020 | 0.5 | $480 | Bach, Nathaniel L. | Meet and confer with A. Siegel re motion for fees (.3); email to clients re same (.2). |
| 5/28/2020 | 4.5 | $2,160 | Gadberry, Lolita C. | Review billing records and prepare charts of billed time pursuant to the request of M. Moshell. |
| 5/28/2020 | 0.4 | $558 | Edelman, Scott A. | Edit fees motion; emails with M. Moshell regarding research for fees motion. |
| 5/28/2020 | 1.4 | $672 | Amponsah, Duke K. | Research for fees motion and confer with M. Moshell and R. Klyman re same. |
| 5/29/2020 | 7.4 | $5,476 | Moshell, Marissa B. | Draft declaration for S. Edelman in support of attorneys' fees motion. |
| 5/29/2020 | 5.5 | $2,640 | Gadberry, Lolita C. | Review and analyze chart regarding billed time and edit and revise same (5.00); email exchange with M. Moshell regarding |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

| | | | | |
|---|---|---|---|---|
| | | | | preparation and review of motion for fees (.50). |
| 5/29/2020 | 0.5 | $697.50 | Edelman, Scott A. | Work on fee application and emails with M. Moshell regarding same. |
| 5/31/2020 | 1.5 | $1,440 | Bach, Nathaniel L. | Revising memorandum in support of fee motion. |
| 6/1/2020 | 2.3 | $1,702 | Moshell, Marissa B. | Review and revise motion for attorneys' fees and supporting declaration (1.8); correspond with team re motion for attorneys' fees (.5). |
| 6/1/2020 | 0.4 | $384 | Bach, Nathaniel L. | Emails with S. Edelman, M. Moshell re motion for fees. |
| 6/1/2020 | 1.0 | $1,395 | Edelman, Scott A. | Edit motion for attorneys' fees, declaration in support. |
| 6/2/2020 | 3.2 | $2,368 | Moshell, Marissa B. | Research for and revise motion for attorneys' fees. |
| 6/2/2020 | 3.5 | $2,590 | Moshell, Marissa B. | Call with S. Edelman and N. Bach re motion for attorneys' fees (.4); continue revising motion for attorneys' fees and supporting declaration (3.1). |
| 6/2/2020 | 1.0 | $1,395 | Edelman, Scott A. | Work on motion for attorneys' fees and telephone conference with N. Bach and M. Moshell regarding same. |
| 6/3/2020 | 3.5 | $2,590 | Moshell, Marissa B. | Revise motion for attorneys' fees and supporting declaration (2.5); compile exhibits for attorneys' fees motion (1). |
| 6/3/2020 | 0.5 | $697.50 | Edelman, Scott A. | Revise motion for attorneys' fees. |
| 6/4/2020 | 4.0 | $2,960 | Moshell, Marissa B. | Research for and revise motion for attorneys' fees and supporting declaration (3.8); call with S. Edelman |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

EXHIBIT 12
Page 165

| | | | | re attorneys' fees motion (.2). |
|---|---|---|---|---|
| **Total Hours and Fees** | | | | |
| **TOTAL** | 355.5 | $323,965 | | |

24.    Set forth below are the details of the hours expended by the Gibson Dunn attorneys and other professionals, divided by timekeeper, through the filing of this Motion for Attorneys' Fees and Costs.  This information is a true and accurate reflection of our records:

| **Timekeeper** | **Hours Worked** |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | 55.8 |
| Scott A. Edelman (Partner) | 17.5 |
| Nathaniel L. Bach (Senior Associate) | 135.1 |
| Marissa B. Moshell (Mid-Level Associate) | 113.7 |
| Daniel M. Rubin (Mid-Level Associate) | 16.6 |
| Lolita C. Gadberry (Paralegal) | 14.7 |
| Duke Amponsah (Paralegal) | 1.4 |
| Erin E. Kurinsky (Researcher) | .6 |
| Carla H. Jones (Researcher) | .1 |
| **TOTAL** | 355.5 |

25.    In sum, through the filing of this Motion for Attorneys' Fees and Costs, attorneys and other professionals collectively spent 355.5 hours working on this matter, which resulted in $323,965 in attorneys' fees.  Gibson Dunn is also seeking any

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion.

### Gibson Dunn's Costs

26.    In addition to the fees for Gibson Dunn attorneys and other professionals, Defendants incurred certain costs in connection with their Motion to Strike. I have reviewed Gibson Dunn's record of costs for this case, and I am familiar with such records and the processes by which the firm creates and maintains them. In the regular course of business, Gibson Dunn maintains records of costs incurred in connection with a particular client and matter.

27.    The costs incurred by Gibson Dunn in connection with this matter can be categorized as follows:

- ·  Courier costs;
- ·  Document retrieval service costs;
- ·  Process server costs;
- ·  Photocopying costs;
- ·  Research costs; and
- ·  Transcript costs.

Set forth below are the details of the costs incurred by Defendants, divided by category, through the filing of this Motion for Attorneys' Fees and Costs. This information is a true and accurate reflection of our records:

| Date | Cost | Description |
|---|---|---|
| **Courier Costs** | | |
| 10/21/2019 | $11.90 | UPS Delivery of DVD to Amnon Z. Siegel at Miller Barondess LLP |
| 5/8/2020 | $48.99 | Delivery of hearing preparation materials to Theodore J. Boutrous, Jr. |
| **Document Retrieval Service Costs** | | |
| 9/26/2019 | $109.72 | Dun & Bradstreet Document Retrieval Research Costs |

23

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

EXHIBIT 12
Page 167

| | | |
|---|---|---|
| 10/21/2019 | $12.30 | PACER charges for October 2019 |
| 12/9/2019 | $1.50 | PACER charges for December 2019 |
| 2/2/2020 | $25.00 | Docket tracking charges through December 2019 |
| 2/28/2020 | $2.50 | Docket tracking charges through January 2020 |
| 4/1/2020 | $15.00 | Docket tracking charges through February 2020 |
| 4/30/2020 | $10.00 | Docket tracking charges through March 2020 |
| 5/31/2020 | $5.00 | Docket tracking charges through April 2020 |
| **Process Server Costs** | | |
| 10/21/2019 | $44.12 | First Legal Network, LLC delivery of Notice of Lodging and DVD to Judge Bashant |
| 10/21/2019 | $31.35 | First Legal Network, LLC delivery of DVD to Gibson Dunn |
| **Photocopying Costs** | | |
| 10/15/2019 | $73.80 | Printing and photocopying in connection with anti-SLAPP motion |
| 10/16/2019 | $6.20 | Printing and photocopying in connection with anti-SLAPP motion |
| 10/23/2019 | $24.80 | Printing and photocopying in connection with anti-SLAPP motion |
| 12/5/2019 | $16.90 | Printing and photocopying in connection with reply brief |
| 3/4/2020 | $4.50 | Printing and photocopying in connection with oral argument preparation |
| 5/7/2020 | $60.30 | Printing and photocopying in connection with oral argument preparation |
| 5/9/2020 | $10.35 | Printing and photocopying in connection with oral argument preparation |
| 5/13/2020 | $13.10 | Printing and photocopying in connection with oral argument preparation |
| 5/18/2020 | $7.50 | Printing and photocopying in connection with oral argument preparation |
| **Research Costs** | | |

Gibson, Dunn &
Crutcher LLP

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

EXHIBIT 12
Page 168

| 9/26/2019 | $768.00 | Westlaw research costs |
|---|---|---|
| 9/28/2019 | $120.00 | Westlaw research costs |
| 9/29/2019 | $120.00 | Westlaw research costs |
| 9/30/2019 | $121.50 | Bloomberg Law research costs |
| 10/7/2019 | $1,123.20 | Westlaw research costs |
| 10/8/2019 | $120.00 | Westlaw research costs |
| 10/10/2019 | $408.00 | Westlaw research costs |
| 10/13/2019 | $201.60 | Westlaw research costs |
| 10/14/2019 | $1.60 | HeinOnline research costs |
| 10/14/2019 | $120.00 | Westlaw research costs |
| 10/15/2019 | $120.00 | Westlaw research costs |
| 10/16/2019 | $1,012.80 | Westlaw research costs |
| 10/17/2019 | $360.00 | Westlaw research costs |
| 10/18/2019 | $240.00 | Westlaw research costs |
| 10/20/2019 | $360.00 | Westlaw research costs |
| 12/4/2019 | $480.00 | Westlaw research costs |
| 12/7/2019 | $360.00 | Westlaw research costs |
| 12/11/2019 | $120.00 | Westlaw research costs |
| 5/7/2020 | $240.00 | Westlaw research costs |
| 5/14/2020 | $120.00 | Westlaw research costs |
| 5/15/2020 | $240.00 | Westlaw research costs |
| 5/22/2020 | $240.00 | Westlaw research costs |
| 5/26/2020 | $514.40 | Westlaw research costs |
| 5/27/2020 | $931.20 | Westlaw research costs |
| 5/28/2020 | $562.40 | Westlaw research costs |
| **Transcript Costs** | | |
| 5/19/2020 | $166.75 | Transcript order for hearing on anti-SLAPP motion and Plaintiff's ex parte application to supplement the record |
| **Total Costs** | | |
| **TOTAL** | $9,706.28 | |

28.    In sum, through the filing of this Motion for Attorneys' Fees and Costs, Gibson Dunn incurred $9,706.28 in costs.  Gibson Dunn is also seeking any additional costs incurred in connection with preparing a Reply and attending a hearing on this Motion.

1   29. I declare under penalty of perjury under the laws of the State of California

2 that the foregoing is true and correct, and that this declaration was executed in Los

3 Angeles, California on June 5, 2020.

_____<br>Scott A. Edelman

**EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Gibson, Dunn &
Crutcher LLP

EXHIBIT 12
Page 170